## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THIMES SOLUTIONS INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 19-CV-4970 (VEC)** |
| | ) | |
| v. | ) | |
| | ) | |
| TP-LINK USA CORPORATION, | ) | |
| MIKHAIL FIKHMAN DBA AMAZZIA, | ) | |
| PREVAGEN, INC. | ) | |
| | ) | |
| | ) | **AMENDED COMPLAINT** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| AUCTION BROTHERS, INC. | ) | |
| dba AMAZZIA | ) | |
| c/o Mikhail J. Fikhman, Registered Agent | ) | |
| 19528 Ventura Blvd. | ) | |
| Tarzana, CA 91356-2917 | ) | |
| | ) | |
| | ) | |
| New Party Defendant | ) | |

Plaintiff Thimes Solutions, Inc. dba Universal Goods & Sales ("TSI"), alleges on knowledge as to itself, but otherwise on information and belief, as follows:

## INTRODUCTION

1.  This case is about greed disguised as "brand protection."  With the advent of

    Amazon has come a fight for the right (or wrong) to display goods in the

    ecommerce space owned and controlled by Amazon, i.e. amazon.com.  A former

    Investigation Specialist for Amazon's Seller Performance team, Chris McCabe,

    has written about the misuse of the Amazon rights reporting system.  In his

    article, "Have you noticed How Unpredictable Amazon's Notice Infringement

    teams are now?" https://www.ecommercechris.com/have-you-noticed-how-

    unpredictable-amazons-notice-infringement-teams-are-now/(February 21, 2019),

    Mr. McCabe observes (Exhibit 1):

    - Amazon's Notice Claim of Infringement Teams exist in theory to
      process intellectual property violations on the Amazon
      Marketplace at amazon.com;
    - In practice, trademark and other violations can come from
      anywhere, allege anything, and are rife with abuse;
    - The work of the Notice teams, though attempting to combat
      rampant abuse, has backslided of late to the point where Amazon's
      response to contested Intellectual Property Complaints makes
      "little to no sense;"
    - Amazon harshly enforces the brand owner complaints of
      counterfeiting by requiring at most that brand owners attest to
      having "test bought" the allegedly counterfeit product from the
      alleged counterfeiter;
    - Suspensions and expulsions from the Marketplace follow "bizarre
      behavior" on Amazon's part, where the reasons for adverse actions
      are highly mercurial, *re*stated repeatedly, and often have nothing to
      do with the reason for the suspension or expulsion; and
    - Accused sellers—in particular those with a history of notice claims
      (as many sellers have)--are left in a virtual "twilight zone" where
      they are not told and cannot learn the true reasons for harsh—at
      times lethal—action taken against their businesses.

2. Unscrupulous brand owners, well aware of the above Notice Infringement landscape, take unilateral action and use "brand protection services" to assist them in "knocking off unwanted sellers." *Id.*

3. Plaintiff Thimes Solutions Inc. dba Universal Goods & Sales ("TSI") is a Suffern, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy.  Succinctly, the model is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount.  Manufacturers, their "authorized distributors," and their "brand protectors" often seek means— some unlawful-- to eliminate such niche market competition.[1]

4. Plaintiff TSI ordinarily buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale.

---

[1]A copyright or trademark holder enjoys a "distribution right" and may initially sell, or not sell, copies of a copyrighted or trademarked item to others on such terms as he or she sees fit. However, the IP holder's exclusive distribution right is limited to the first sale of the coyprighted or trademarked item. Under the "first sale" docrine, codified at 17 U.S.C. § 109(a) "the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of such copies."  The Fair Use Doctrine, similar to the First Sale Doctrine, permits a seller to use a another's trademark to identify the former's goods, provided that no likelihood of confusion results as to the source of the product or the trademark holder's sponsorship or affiliation.  15 U.S.C. §115(b)(5)(A)-(C). The First Sale Doctrine [also] protects resellers of genuine trademarked goods from claims of infringement. *Davidoff & CIE, S.A. v. PLD Int'l. Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Hidalgo Corp. v. J. Kugel Designs, Inc*., No. 05-20476-CIV-JORDAN/TORRES, 2006 U.S. Dist. LEXIS 96647, at *12 (S.D. Fla. 2006)

5. TSI brings this suit following its commercial and financial ruination resulting from Defendants' libelous statements to Amazon and consequential tortious interference with Plaintiff's existing and prospective business relationship with Amazon Services LLC.

6. TSI became a third-party seller on Amazon in 2016. To become an Amazon seller TSI signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate TSI as a seller for any reason or for no reason at all.

7. TSI sold over 175,000 products to customers on Amazon with a 98% lifetime positive feedback rating. Plaintiff reached $2 million in sales during the first six months of 2018. As of its expulsion from Amazon, TSI was selling around $400,000-500,000 per month on amazon.com. Net margins were roughly 20%. Now . . . there is only ruin.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. 2201 to declare the legal relations of the parties hereto vis-a-viz Plaintiff's right to sell online goods with respect to which defendants or their privies hold trademarks and other intellectual properties.

9.  The alleged acts of libel and tortious interference directed at TSI effected an "injury that would be felt by [the plaintiff] in the State in which []he lives and works,  *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487 (1984), and Defendants' "allegedly tortious actions were expressly aimed at" New York. *Lopez v. Shopify, Inc.*, 2017 U.S. Dist. LEXIS 77708, at *23 (SDNY 2017)

10. Personal jurisdiction by this Court over Defendants is also proper pursuant to CPLR § 302(a)(1) because Defendants all (i) transacted business or contracted to supply goods or services in New York, and (ii) such activities had a substantial relationship to, or an articulable nexus with, the claims asserted by TSI against each Defendant.  The transaction of business by Defendants in New York supportive of personal jurisdiction is elaborated *infra* in ¶ 29 as to TP-Link and ¶50 as to Prevagen. Further, each Defendant has a regular flow of sales into New York, i.e. minimum contacts.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in the Southern District of New York, namely, Plaintiff's listing of products on, receipt of notices, and permanent expulsion from amazon.com.

### FACTS

### A. TP-LINK USA, TP-LINK NORTH AMERICA, TOM LEI AND AUCTION BROTHERS, INC. dba AMAZZIA

12. TP-Link USA, Inc. ("TP-Link" or "USA" at times), with its principal place of business at 145 South State College Blvd., Suite 400, Brea, California, 92821 operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese

parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 161 million products around the globe during 2016.

13.  USA was originally a subsidiary of TPC but is now a subsidiary of TP-Link UK Limited.  It was founded in 2008 and is based in Orange County, California.  It manufactures and supplies networking products for home and small business, known as SOHO and SMB.  Examples are switches, routers, and components for wireless systems.

14.  TP-Link USA's products are available at substantially all major electronics retailers, online and in-store, in New York, including, amazon.com, jet.com, Best Buy, COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target, and Walmart.[2]

15.  TP-Link USA regularly ships its products to large purchasers in New York, e.g. Target Corporation, employs a sales agent in New York, contracts with three (3) New York distributors, and maintains personnel in California that conduct "test purchasing" in New York from downstream sellers of its TP-Link branded products, to determine—and in some cases fabricate-- whether such sellers are marketing counterfeit TP-Link products.

16.  TP-Link North America ("TPN" or "North America" at times) functions as an alter ego of USA and its business offices are located at the latter's principal address in Brea, CA, while it handles TP-Link warehousing a few miles away in Fontana, CA.

---

[2] https://www.tp-link.com/us/where-to-buy

17. USA has lately represented North America to be merely a fictitious name it uses. Fictitious name filings have been made in two California counties while TPN does in fact exist as a duly formed California corporation.  In light of the foregoing, TPN will be an unnamed wrongdoer hereunder but not joined as of commencement.

18. TP-Link's Linkedin page has listed at least two (2) dual positions, believed to be at issue here, held under simultaneous employment by TPU and TPN:

- Director of E-commerce at TP-Link North America, Inc.
  Greater Los Angeles Area
  Current: Senior Channel Strategy Manager,B2B at **TP-Link USA** Corporation[3]

- ChannelStrategy Manager, Ecom at TP-Link USA Corporation
  Hangzhou, Zhejiang, China
  Current: Channel Strategy Manager, Ecom at TP-Link North America, Inc.[4]

19. TPU and TPN (collectively "TP-Link") published written complaints to Amazon, libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise infringing a trademark (on one occasion)  ("IP Complaints").[5]

---

[3] https://www.linkedin.com/company/tp-link/ at **See all 78 employees on LinkedIn**, Screen 1 (last visited on June 3, 2018)

[4] *Id.* at Screen 8.

[5] Plaintiff is informed and believes that IP complaints are prepared with an online system that does not provide the complainant with a completed copy.  See https://www.amazon.com/gp/help/reports/infringement  Amazon provides the accused

20. TP-Link's fraudulent IP Complaints directly caused Plaintiff's suspension from the Marketplace in May 2018 and also caused TSI's permanent expulsion as a seller on the Amazon website, effective on or about August 27, 2018.

21. Defendant Mikhail J. Fikhman, dba Amazzia (hereinafter referred to at times collectively as "Amazzia"), is engaged in the business of "Amazon brand protection."  Amazzia is a fictitious business name of Auction Brothers, Inc., duly registered in the Office of the Los Angeles County Registrar-Recorder on October 10, 2017 as Document No. 2017293058. All of Amazzia's actions hereinafter alleged were done at the direction and authority, directly or indirectly, of Mikhail Fikhman, individually and/or as CEO of Auction Brothers, Inc.

22. TP-Link retained Amazzia, to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.

23. Amazzia describes itself as follows:

> As your dedicated partner, we keep your brand safe from unauthorized agents, ensure Amazon compliant distribution and amazing growth through price protection, optimization and targeted marketing.
>
> . . . .

---

with an edited and redacted version of the allegations in an email from the Seller Support group of Amazon. The allegations of the emailed version include the word "counterfeit", or "infringement," the Amazon Stock Identification Number(s) ("ASINs") allegedly counterfeited or infringed, an Amazon complaint ID number, the complainant company name, and an email address to contact with a view to resolution.   The entire text of the allegations and the signature of the person or entity who filed the complaint are not disclosed.

*Removing Un-Authorized Sellers*

Effective and proven strategies to report and remove Un-Authorized Resellers from your listings

24.  Amazzia's primary focus is removing lawful Amazon offerings from the

Marketplace:

Unauthorized resellers corrupt the online marketplace with reckless, self-serving tactics, causing price erosion and negatively impacting your brand's image.

Under these circumstances your legitimate brick & mortar retailers are unable to compete with online prices and may refuse to carry your brand.

25.  Amazzia's Vice-President of Brand Protection William Samuel articulates his role

quite simply:[6]

As the Vice President of Brand Protection at Amazzia, I ensure the protection of my clients' brands by identifying and eliminating unauthorized Amazon sellers. **The increasing number of MAP violators in the Amazon marketplace is astounding!** Rogue marketplace sellers can damage your brand and undercut your bottom line by selling products at extremely low discounted rates.  (emphasis added)

26.  Amazzia makes clear in publicly available promotions that the real problem with

third-party sellers is that that they may *try* to compete on price:

Not all third-party sellers are ethical, and some may try to undercut you and misrepresent your brand. **The main risk involves companies deviating from your minimum advertised price.** This results in having your brand's value lowered. There's also the risk of bad brand representation if consumers experience poor customer service with any unauthorized third-party sellers. As a result, customers associate those bad experiences with your brand.

. . . .

**Amazzia can protect your brand by preventing MAP violations** . . . (emphasis added)

---

[6] https://www.linkedin.com/in/william-samuel-0825a071/

27. Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon" (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% .of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) Amazzia promised TP-Link "full access to our team for any questions regarding the cleanup project."

28. Unable to eliminate TSI sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting and, to a lesser extent, trademark infringement, at all times acting in concert with and on behalf of TP-Link, and with the latter's actual authority and instructions.

29. Amazzia  directly caused Plaintiff's May suspension and permanent expulsion from the Amazon Marketplace  in coordination with the following scheme:

- On January 8, 2018 Plaintiff purchased 360 TP-Link AC5400 Routers from a reputable supplier with which Plaintiff has dealt extensively. Plaintiff has possession of approximately 100 of these items to date, all of which are authentic and not counterfeit.  Amazon continues to hold a number of Plaintiff's TP-Link AC5400 Routers.

- One Tom Lei (Screen name "amazon91773"), a TP-Link  employee, operates out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related competition to TPU from competitors that are not so-called Authorized Resellers.

- Mr. Lei's purchases of TP-Link products from TSI, in his own name (using USA funding or reimbursement) and without disclosure of TP-Link involvement,  was on January 18, 2018 (2 AC5400 Routers)  and March 5,

2018 (6 AC1200 Routers in three (3) separate transactions).  Exhibit 2 hereto.  He received the items at Defendants' Fontana CA warehouse, examined the products, and knew from such examinations that the products were authentic and not counterfeit.    Notwithstanding this knowledge, Mr. Lei or those acting in concert with him libeled TSI *27 times* during January-June 2018 for selling counterfeit TPU products and otherwise infringing TP-Link's intellectual property.

- Mr. Lei's initial purchase of two (2) AC 5400's establishes that TP-Link's sole intent *ab initio* was to eliminate Plaintiff's sales of TP-Link products from the competitive marketplace, as the circumstances of the initial January 19th complaint alleging counterfeit goods proves:

  o The complaint addressed an ASIN: B01DXVK3KY, TP-Link AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router
  o Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018
  o Amazon lodged the Router with UPS for delivery to TP-Link on January 19, 2018 (Exhibit 3)
  o The Router was not delivered to Mr. Lei until January 22, 2018, three days *after* swearing to Amazon that the Router was test-purchased and found to be counterfeit (Exhibit 4).

TP-Link *targeted* TSI for elimination and in its haste lodged its libelous IP complaint before receiving the Routers![7]

30. During 2018 TP-Link complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting:

> Jan 19th: us-compliance@tp-link.com
> Jan 21st: us-compliance@tp-link.com
> Jan 26th: us-compliance@tp-link.com
> Feb 14th: compliance-us@tp-link.com
> Feb 21th: compliance-us@tp-link.com
> Feb 28th: compliance-us@tp-link.com[8]
> Mar 2nd: compliance-us@tp-link.com
> Mar 3rd: compliance-us@tp-link.com
> Mar 10th: compliance-us@tp-link.com

---

[7] After receiving the first TP-Link-instigated Notice from Amazon, Plaintiff researched its sales of the TP-Link AC 5400 Router and searched the purchaser's address on Google, thereby identifying TP-Link as the purchaser of two (2) AC5400 Routers.

[8] On this instance alone, TP-Link claimed trademark infringement, but not counterfeiting.

Mar 13th: compliance-us@tp-link.com
Mar 21st: compliance-us@tp-link.com
Mar 31st: compliance-usa@tp-link.com
Apr 2nd: compliance-usa@tp-link.com
Apr 5th: compliance-usa@tp-link.com
Apr 6th: compliance-usa@tp-link.com
Apt 7th: compliance-usa@tp-link.com
Apr 9th: compliance-usa@tp-link.com
Apr 10th: compliance-usa@tp-link.com
Apr 11th: compliance-usa@tp-link.com
Apr 12th: compliance-usa@tp-link.com
Apr 24th: compliance-usa@tp-link.com
Apr 25th: compliance-usa@tp-link.com
Apr 26th: compliance-usa@tp-link.com
Apr 30th: compliance-usa@tp-link.com
May 28th: compliance-usa@tp-link.com
May 30th: compliance-usa@tp-link.com
Jun 7th: compliance-us@tp-link.com
June 21st: compliance.usa@tp-link.com

31. TP-Link used four (4) different identities in complaining to Amazon, indicating a coordinated assault by TP-Link, Amazzia and others, to wit:  compliance-us@tp link.com, compliance-usa@tp-link.com, us-compliance@tp-link.com and  compliance.usa@tp-link.com[9]  The only email address available to Amazzia was compliance-usa@tp-link.com.

32. Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing is (along with T P-Link) subject to punitive damages herein.

---

[9] TP-Link has admitted in other litigation Amazzia's use of compliance-usa@tp-link.com.

33. Immediately upon receipt of the first IP-complaint of January 19, 2018

Plaintiff emailed TP-Link at the designated address in an effort to satisfy TP-

Link that TSI's product was authentic and not counterfeit (Exhibit 5):



We received an email from Amazon today stating that TP-Link is asserting that items sold by us (under the storefront "Universal Goods and Sales", merchant ID A1Q1VKNP5VVQEY, ASIN B01DXVK3KY, Complaint ID: 1359628881 ) are counterfeit. We take all reports of Intellectual Property Rights Infringement seriously.

These items were purchased from a reputable distributor and are not counterfeit.

Please be aware that Amazon has stated that our account is under review as a result of the allegations. If we suffer damages as a result of your incorrect allegations, you may be liable.

We respectfully request for a retraction to be sent to notice-dispute@amazon.com stating that the original allegations were made in error. If you believe the allegations are correct, please provide us with all evidence you have obtained to support your claim of infringement. We are aware of one purchase by TP-link of 2 of our units that were offered; as of the time of this email, Jan 19th, this has not been delivered and is currently in transit. Please advise if any other units have been purchased by TP-link.

34. TP-Link did not respond to Plaintiff's letter, Exhibit 5; nor did Amazzia.

35. Plaintiff then engaged expert Amazon counsel who emailed a letter to TP-Link on

February 1, 2018 (Exhibit 6):

In accordance with Amazon policy, in order to report an item is counterfeit, a
test buy must be performed in order to verify the claimed differences are

present between the accused product and the rights owner's product. As such, we are writing to request the specific basis for your counterfeit claims, including the test buy purchase information provided to Amazon to support your claims.

TP-Link did not respond to counsel's letter.

36.  On May 7, 2018 Plaintiff was suspended (with appeal rights) from selling on

Amazon by reason of TP-Link's IP complaints (Exhibit 7):

> You have listings that infringe on the intellectual property rights of others. This is against our policies. The removed items can be seen on the Performance Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

37.  Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link

continued its onslaught on May 28 and 30, and on June 14 and 21.  Exhibit 8.

38.  The record of TP-Link complaints, together with other and, to a lesser extent, IP

complaints of Defendants Prevagen, caused Plaintiff's permanent expulsion

(without appeal rights) from the Amazon Marketplace on August 27, 2018.

39.  All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's

counterfeiting, were filed under false attestation:

> **Statements**
> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."
>
> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

40.  As the IP complaints were filed over interstate wires, their filing violated 18

U.S.C. 1343 and TP-Link thereby used criminal means to accomplish its goal of

Plaintiff's elimination.

## B. PREVAGEN, INC.

41. Prevagen, Inc., dba Sugar River Supplements, is a Wisconsin corporation with its principal place of business at 726 Heartland Trl, Ste. 300, Madison, WI 53717.

42. Prevagen manufactures and markets a supplement known as "Prevagen" to improve memory function, particularly in aging adults. It comes in both capsules and chewable tablets.  See https://www.amazon.com/Prevagen-Extra-Strength-Chewables-Tablets/dp/B01M6CEO2G.

43. Prevagen, Inc. is a subsidiary of Quincy Bioscience Manufacturing, Inc.

44. According to the Attorney General of New York, Prevagen, Inc. "[a]t all times material . . .  acting alone or in concert with others, Prevagen, Inc. has advertised, marketed, promoted, distributed, or sold Prevagen to consumers throughout the United States, including New York."[10] _

45. On April 23, 2018 Plaintiff purchased 150 units each of Prevagen capsules and tablets, thereafter offering them on the Marketplace.

46. Prevagen initially complained to Amazon, alleging Plaintiff's listing and selling of counterfeit product as follows (Exhibit 9):

- 6/9/18 . . . ASIN: B01M6CEO2G Infringement type: Counterfeit Trademark asserted: 3349744 Complaint ID: 5124904881
- 6/10/18 . . . ASIN: B00XQFE502  Infringement type: Counterfeit Trademark asserted: 3349744 Complaint ID: 5126722241

---

[10]https://www.ftc.gov/system/files/documents/cases/quincy_bioscience_complaint-filed_version.pdf

47. Per Amazon policy Prevagen would have had to state under oath that it test-purchased the product of which it complained, examined it and found it to be counterfeit.

48. In fact, Plaintiff's first sale of the said product was shipped on June 9th and, even assuming Prevagen or its test buyer to have been the purchaser, Prevagen could not possibly have examined the product and found it counterfeit on or before June 9th because even overnight delivery would require until June 10th.   Thus Prevagen targeted Plaintiff solely because Plaintiff sold the supplements and for no other reason.

49. TSI supplied a valid purchase invoice to prove its innocence, Amazon agreed that the Prevagen IP complaints were without merit, and sent the following letters reinstating TSI's listings on June 14th:

- We reviewed your appeal and reinstated the following content  ASIN: B00XQFE50  Complaint ID: 5127492371
- We reviewed your appeal and reinstated the following content ASIN(s): B01M6CEO2 Complaint ID: 5126447921

50. On June 18, 2019 Prevagen sent an infringement letter directly to TSI, demanding to know, *immediately,* confidential business information as to TSI's source of product and threatening severe penalties through Amazon for failure of compliance (Exhibit 10):

> If you do not email or call us immediately at 608-827-8000 and identify your business name and legitimate source of our products, you will be subject to the appropriate penalties by Amazon's Seller Performance and legal/copyright team(s).

51. Prevagen then complained as to the same products, in two new (2) IP complaints,

    alleging same to be counterfeit (Exhibit 11):

    - 6/21/18 ASIN: B01M6CEO2G B00XQFE502
      Infringement type: Counterfeit Trademark asserted: 3349744 Complaint
      ID: 5144410571
    - 6/23/18  ASIN: B01M6CEO2G B00XQFE502
      Infringement type: Counterfeit Trademark asserted: 3349744 Complaint
      ID: 5150645091

52. Prevagen's second round of IP Complaints of June 21 and 23, 2018 were lodged

    with *knowledge* that Amazon had found TSI's evidence of authenticity adequate

    to relist the challenged product.

53. As foretold by Prevagen, Amazon penalized Plaintiff by expelling Plaintiff from

    the Marketplace on August 27, 2018 with no right of appeal.

54. All IP complaints (i) filed by Prevagen, and (ii) alleging TSI's counterfeiting,

    were filed under false attestation:

    **Statements**
    "I have a good faith belief that the content(s) described above violate(s) my
    rights described above or those held by the rights owner, and that the use of
    such content(s) is contrary to law."

    "I declare, under penalty of perjury, that the information contained in this
    notification is correct and accurate and that I am the owner or agent of the
    owner of the rights described above."

55. All Prevagen  IP complaints were filed over interstate wires, their filing violated

    18 U.S.C. 1343 and Prevagen thereby used criminal means to accomplish its goal

    of Plaintiff's elimination.

### C.  ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

56. But for Defendants' IP complaints to Amazon TSI would not have been expelled from the Amazon Marketplace.

57. Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures.   Plaintiff was permanently expelled nonetheless.

58. By reason of the expulsion Plaintiff was unable to sell its aging inventory (at least $1.1 million) or access its funds in Amazon's hands (about $80,000).  Plaintiff was forced to hire counsel at substantial expense.

59. There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

60. The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing profit of approximately $100,000 per month just prior to expulsion.  Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.

61. Defendants actions and inactions, moreover, were calculated, willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $5,000,000, together with attorney fees to be determined by the Court.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

62. Plaintiff incorporates the allegations above as though the same were re-written at length.

63. In order to state a claim for tortious interference with prospective economic advantage, plaintiff must plead facts sufficient to demonstrate that it had "(1)...business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and  (4) defendant's acts injured the relationship." *Catskill Development L.L.C. v Park Place Entertainment Corp.,* 547 F.3d 115, 132 (2d Cir. 2008); See also *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010).

64.  As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving.

65. Defendants' accusations of counterfeiting, wrongful *per se* and made more wrongful by the use of criminal means, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's business relationship with Amazon.

66. The accusations aforesaid proximately caused Plaintiff's expulsion.

67. Discovery is necessary to identify other improper purposes, if any, for the challenged conduct.

68. Defendants' accusations were false and Defendants knew they were false at relevant times. The statements were made maliciously and with ill will, as

business entities do not lie about competitors absent a strong measure of ill will.

69. Amazon stated in writing that it took Defendant's accusations very seriously, threatened to terminate Plaintiff for repeated IP Complaints and, in fact, expelled Plaintiff as an Amazon third-party seller after receiving repeated IP Complaints.

70. Amazon stated that it would act favorably if TP-Link/Amazzia would retract their accusations; but TP-Link/Amazzia refused to engage any process calculated to lead to a retraction and ignored Plaintiff's efforts to do so.

71.  Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's business.

### CLAIM II: TORTIOUS INTERFERNCE WITH CONTRACT

72. Plaintiff incorporates the above allegations as though the same were rewritten at length.

73. In order "[t]o state a contract-interference claim under New York law, a plaintiff must demonstrate the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 124-25 (2d Cir. 2008)." *Innovative Biodefense, Inc. v. VSP Techs.*, 176 F. Supp. 3d 305, 328 (S.D.N.Y. 2016)

74. Defendants' libelous IP complaints to Amazon proximately caused Amazon to expel Plaintiff from the Marketplace on August 27, 2018 with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract with Amazon, as identified in ¶7 *supra.*

## CLAIM III: LIBEL PER SE

75. Plaintiff incorporates the allegations above as though the same were re-written at length.

76. The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege."  Under New York defamation law, the Courts have distinguished "a limited category of statements" that are considered "libelous *per se* which do not require pleading and proof of special damages." *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985).

77. Defendants' scheming accusations against Plaintiff charged Plaintiff with a serious crime or crimes, to wit: counterfeiting, a form of fraud, undertaken by means of interstate wire services, itself a Federal felony.  18 U.S.C. §1343.

78. The most recent of the subject accusations are as follows:

- TP-Link filed its 27th counterfeiting complaint on June 21, 2018; and

- Prevagen filed its fourth counterfeiting complaint on June 23, 2018.

79. Defendants' accusations against Plaintiff to Amazon directly injured Plaintiff in its business and trade because, as they knew, Amazon will not tolerate repeated counterfeiters as Amazon sellers.

80. Defendants' accusations against Plaintiff caused Plaintiff reputational injury.

81. Defendants' accusations against Plaintiff constitute libel *per se.*

82. Although injury may be presumed due to libel *per se,* Plaintiff suffered above and

beyond presumed damages, e.g. loss of profits.  See ¶7 *supra.*  Further, TSI lost

good will specific to the TSI-Amazon relationship that cannot be recovered

including, *inter alia,* Plaintiff's right to sell a broad range of products on

amazon.com, much of which entitlement was grandfathered.[11]

### CLAIM IV: DECLARATORY JUDGMENT OF NON-INFRINGEMENT

83.  Plaintiff incorporates the allegations above as though the same were re-written at

length.

84.  Claims of infringement and counterfeiting by the trademark owners, defendants

herein, present a substantial controversy of sufficient immediacy and reality to

warrant invocation of the Declaratory Judgment Act, 28 U.S.C. 2201.

85.  Plaintiff seeks to exercise its property rights and sell online products bearing

trademarks belonging to Defendants and their privies, free of threat of harassment

and harm from Defendants.

86.  Defendants have harmed Plaintiff as alleged above though claims to third parties

of trademark infringement and counterfeiting when, in fact, there were no

infringements or trading in counterfeit goods.

87.  This Court's declaration of Plaintiff's right to sell Defendants' (and privies')

trademarked goods online will clarify and settle legal relations between the

parties, terminate and afford relief from any uncertainty, insecurity or

controversy.

WHEREFORE, Plaintiff prays for relief against Defendants, jointly and severally, as

---

[11] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

follows:

     A.     Compensatory damages of at least $5,000,000;

     B.     Punitive damages of not less than $5,000,000;

     C.     A declaration that Plaintiff did not infringe the trademark or other intellectual property rights of Defendants or their privies;

     D.     Attorney fees and costs; and

     E.     Such other and further relief as the Court may order.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

                  /s/Mark Schlachet_____
                  Mark Schlachet
                  Law Offices of Mark Schlachet
                  3515 Severn Road
                  Cleveland, Ohio 44118
                  Telephone: (216) 225-7559
                  Facsimile: (216) 932-5390
                  Email:markschlachet@me.com

                  Counsel to Plaintiff Thimes Solutions Inc.

## CERTIFICATE  OF SERVICE OF AMENDED COMPLAINT

Undersigned  counsel to Plaintiff Thimes Solutions Inc. hereby certifies that on July 2, 2019 all parties entitled to service via the Court's ECF system were served accordingly, and one of the defendants not yet entitled to ECF notices was served by email, Plaintiff having earlier obtained said party's consent to email service.  Auction Brothers, Inc. has waived service of summons and will be executing an appropriate waiver in due course.

/s/Mark Schlachet_____
Mark Schlachet