# Mark Schlachet, Esq.
Tel:216-225-7559
email: markschlachet@me.com

| | |
|---|---|
| **3515 Severn Road**<br>**Cleveland, Ohio 44118**<br><br>**1249 East 35th Street**<br>**Brooklyn, New York 11210** | **9511 Collins Ave.**<br>Apt. 605<br>**Surfside, FL 33154**<br>**(Succos-Shavuos)**<br><br>**Admitted: OH, NY** |

November 25, 2019

<u>VIA CM/ECF</u>
Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

    Re: *Thimes Solutions Inc. v. TP Link USA Corporation, et al.,*
       <u>Case No. 1:19-cv-04970</u>

Dear Judge Caproni:

  We represent Plaintiff Thimes Solutions, Inc. and submit this joint letter on behalf of all remaining parties in satisfaction of the Memo Endorsement Resetting Case Management Conference (ECF No. 48):

### Brief Description of Case

  ***Plaintiff Thimes Solutions Inc.'s Position:*** This is a commercial tort case where plaintiff-business was destroyed as a direct result of defendants' publication of false accusations to Amazon.  TP-Link and Auction Brothers, Inc. dba Amazzia, libeled plaintiff to have listed--not sold—counterfeit TP-Link products.  Plaintiff tried to reason with TP-Link/Amazzia . . . but they refused to engage.   (Three

original defendants have been dismissed, to wit: Prevagen, Inc., 3PM Shield LLC and Mikhail Fikhman.)

Plaintiff's conduct in all instances of listing and selling TP-Link products was lawful under the First Sale Doctrine and Fair Use Doctrine. Under theses doctrines a trademark holder enjoys a "distribution right" and may initially sell, or not sell, trademarked items to others on such terms as he or she sees fit. However, the trademark holder's exclusive distribution right is limited to the first sale of the trademarked item. The distribution right may be exercised solely with respect to the initial disposition, not to prevent or restrict a lawful purchaser's listing, resale or further transfer of possession.

Amazon is fully aware of the foregoing and will not enforce IP complaints against a third-party seller such as plaintiff for listing or selling trademarked goods subsequent to their initial distribution. To circumvent Amazon's said limitation on IP enforcement, defendants lied to Amazon and falsely accused plaintiff of conduct Amazon does deem actionable, i.e. counterfeiting when, as is undisputed to date, defendants never had a good faith belief that plaintiff counterfeited. As a result of these lies, plaintiff was expelled from the Amazon platform and may longer sell on Amazon.

Plainitff brought the instant action (i) in libel and tortious interference with existing and prospective contract and economic relations to recover damages, and (ii) for declaratory relief to the effect that plaintiff's conduct in marketing TP-Link products was and is lawful. The Court has personal jurisdiction of TP-Link and Amazzia by reason of the activities of TP-Link's Tom Lei who, on behalf of TP-Link and in concert wth Amazzia, effected New York purchases/returns, surreptitiously, from plaintiff, which activities bear an articulable nexus and substantial relationship to the claims at suit. (FAC, ¶29). Specifically, by reason of such purchases and returns TP-Link/Amazzia is seen to have had (1) *knowledge* that plainitff's TP-Link products were authentic and (2) culpable *intent* to harm.

TP-Link's assertions that plaintiff's *damages* are mere speculation are plainly unreasonable. TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000. We use a 20% profit figure because our net profits ($368,000) derived from $1.819 MM in sales. A 20% margin is rather standard for successful operators.
https://sellercentral.amazon.com/forums/t/what-net-profit-margin-is-reasonable/326268/4 Our 20% margin is thus validated through a cross-check under the Guideline Company method, combined with a Discounted Cash Flow

Analysis. *See, e.g., In re Chemtura Corp.*, 439 B.R. 561, 573 (Bankr. S.D.N.Y. 2010) (guideline company and discounted cash flow method are standard valuation methodologies). We followed a two-step process, first creating a spreadsheet for the last six (6) months, unadjusted for TP-Link-caused suspensions. Second, we assumed a 10-year income stream for TSI, constant sales and static income of $900,000 per year, discounted at 3%. We calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000.

***Defendant TP-Link USA Corporation's Position:*** As an initial matter, plaintiff has not pleaded facts to establish, and TP-Link is not, subject to personal jurisdiction in the United States District Court for the Southern District of New York arising from the allegations set forth in the Amended Complaint. Indeed, in another case brought by plaintiff's counsel against TP-Link in the Eastern Distrcit of New York last year, the Court granted TP-Link's motion to dismiss for lack of personal jurisdiction under materially identical circumstances. *See Careful Shopper, LLC v. TP-Link USA Corp.*, Case No. 1:18-cv-03019 (Docket No. 40, October 1, 2019, E.D.N.Y.) (Order on Motion to Dismiss). Accordingly, this case should be dismissed for lack of personal jurisdiciton, and TP-Link intends to file a motion in response to the Amended Complaint to that effect. This preliminary legal issue regarding peronal jursidiction over TP-Link, should be resolved before the litigation proceeds to discovery or any other further action is undertaken.

Seperately, plaintiff has not pleaded facts sufficient to state a viable claim against TP-Link. Accordingly, to the extent that the case is not dismissed for lack of personal jurisdiction, the Amended Complaint should be dismissed, with prejudice, for failure to state a claim. In particular, the Amended Complaint fails to expressly identify any specific statements actually made by TP-Link, and the Amended Complaint fails to plead facts that would establish that any statements actually made are in fact false. To the contrary, the facts pleaded affirmatively establish that plaintiff was <u>not</u> an authorized reseller, and, accordingly, any alleged statements by defendants to Amazon questioning the genuine nature of the products were justifed because such product sales are not covered by TP-Link's express warranty and thus do not come with the full bundle of rights applicable to genuine TP-Link products. Further, while plaintiff pleads that he purchased some number of TP-Link products from "a reputable supplier," he does not allege facts to establish the application of the First Sale Doctrine or Fair Use Defense (such as, for example, the actual source of the products or identity of the supplier or that the supplier gained possesion of such products in a lawful and proper manner). The facts pleaded in the Amended Complaint further establish that plaintiff was excluded from sales on Amazon's platform by Amazon, after plaintiff was not able

to demonstrate to Amazon that plaintiff was in compliance with Amazon's policies. That is, plaintiff was not excluded from Amazon as a result of defendants conduct, but as a direct result of plaintiff's decision to continue in its sales of the products at issue even without satisfying Amazon that it was in compliance with Amazon's policies. These failures doom each and every asserted cause of action.

Plaintiff' cause of action for libel is barred by the one-year state-of-limitations because the alleged statements questioning the genuine nature of the products at issue were first made over a year before plaintiff commenced the present action. In addition, plaintiff's claim for tortious interference with contract requires, as an element, actual breach of an existing contract. However, the Amended Complaint does not plead facts to establish that Amazon, or any other third party, breached any contract with plaintiff. As such, this claim also separately fails. Finally, based on representations by plaintiff's counsel after commencement of the present action, defendants understand that plaintiff no longer seeks to sell the products at issue on Amazon, and there are no facts pleaded in the Amended Complaint to establish any actual case or controversy regarding any other distribution channels. Accordingly, there is no subject matter jurisdiction, or good faith basis, for plaintiff to pursue a separate claim for declaratory judgment.

***Defendants Auction Brothers, Inc. Position***: For similar (and additional) reasons to those set forth by TP-Link above, defendant Auction Brothers, Inc. ("Auction Brothers"), a California resident, intends to move to dismiss the Amended Complaint on the grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. Auction Brothers joins in TP-Link's position that these threshold issues should be resolved before the litigation proceeds to discovery.

## Subject Matter jurisdiction

***Plaintiff Thimes Solutions Inc.'s Position***: This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest. Plaintiff is a New York corporation while TP-Link and Auction Brothers, Inc. are California corporations. Plaintiff alleges (¶7, Am. Complt. "FAC") that it "was selling around $400,000-500,000 per month on amazon.com. Net margins were roughly 20%," but that "Defendants' acts destroyed plaintiff's relationship with Amazon, thereby causing the destruction of plaintiff's business.(*Id.* at ¶71). Compensatory damages are at least $5,000,000 (*Id.* at Prayer, ¶A.)

This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §2201 to declare the legal relations of the parties hereto vis-a-viz plaintiff's right to sell online goods with respect to which defendants or their privies hold trademarks and other intellectual properties. Although TP-Link asserts no ongoing controversy, such assertion is wrong because Plaintiff presently sells at wholesale but dares not sell TP-Link in the wholesale market; and, in the future, plaintiff may want to sell TP-Link products on non-Amazon platforms such as Walmart without uncertainty as to its legal right to do so. TP-Link's words and deeds establish its belief that plaintiff's sales on non-Amazon platforms would infringe TP-Link's IP, and that it would act against plaintiff in the event of such sales.

***Defendant TP-Link USA Corporation's Position:*** Defendant concedes that plaintiff purports to seek damages in excess of the jursdictional threshhold. TP-Link denies that plaitniff is entitled to any damages. The facts pleaded, even if accepted as true, demonstrate only historical sales and profits. The Amended Complaint does not plead facts to establish the likelihood of damages related to future, speculative profits.

## Contemplated Motions

***Defendant TP-Link USA Corporation's Position***: Defendant TP-Link USA Corporation intends to respond to the Amended Complaint by filing a motion to dismiss for lack of personal jurisdiction and failure to state a claim. In another case filed by plaintiff's counsel against TP-Link in the United States District Court for the Eastern District of New York in 2018, arising from similar claims by another plaintiff, TP-Link moved to dismiss for lack of personal jurisdiction. That motion was ultimately granted, and the case was dismissed. *See Careful Shopper, LLC v. TP-Link USA Corp.*, Case No. 1:18-cv-03019 (Docket No. 40, October 1, 2019, E.D.N.Y.) (Order on Motion to Dismiss). While plaintiff has insisted on briefing its position on personal jurisdiciton, and the *Careful Shopper* decision, in this letter, TP-Link does not believe that this letter is the proper vehicle to do so. TP-Link does note that plaintiff's counsel did not appeal the *Careful Shopper* decision, and that case was dismissed.

***Defendants Auction Brothers, Inc. Position***: As set forth above, Auction Brothers similarly intends to file a motion to dismiss.

***Plaintiff's Position as to Personal Jurisdiction in Light of Judge Dearie's Intervening Decision in Careful Shopper LLC v. TP-Link USA Corporation, et al:*** both defendants view Judge Dearie's decision in *Careful Shopper* as dispositive of

personal jurisdiction here, and view Plaintiff's resolve to remain in this Court as unreasonable. *See Careful Shopper, LLC v. TP-Link USA Corp.*, Case No. 1:18-cv-03019 (ECF No. 40, October 1, 2019, E.D.N.Y.) (Memorandum and Order). In light of Defendants' anticipated presentations at CMC, we think it best to briefly set forth here our reasons for believing that Judge Dearie's ruling is neither dispositive nor correct.[1]

    Judge Dearie misunderstood both the facts and applicable law. His Honor understood that "Plaintiff alleges . . . that all three complaints made to Amazon relate to products that were purchased from Careful Shopper's Amazon.com storefront by Tom Lei, who works for Amazzia . . . ." (Mem. at 6) As in the instant case, Plaintiff alleged that TP-Link complained of *listings,* not *purchases.* Also as this Court knows, Plaintiff alleges that Tom Lei works for TP-Link, not for Amazzia. These foundational errors had critical impact.

    Judge Dearie ruled that Tom Lei's purchases and returns at suit are not, as required by §302(a)(1) CPLR, the transaction of business in New York: "Plaintiff has presented no evidence that when Mr. Lei bought products from Careful Shopper's storefront on Amazon.com, he had any knowledge that he was purchasing goods from a New York-based company." However, Mr. Lei's knowledge is irrelevant for jurisdictional purposes because personal jurisdiction is an *objective inquiry*: "The jurisdictional inquiry under CPLR 302 (a) (1) necessarily requires examination of the particular facts in each case. And although determining what facts constitute 'purposeful availment' is an objective inquiry, it always requires a court to closely examine the defendant's contacts for their quality (*see Fischbarg v Doucet*, 9 NY3d 375, 380, 880 NE2d 22, 849 NYS2d 501 [2007]). *Licci v. Lebanese Can. Bank, SAL*, 2012 NY Slip Op 7854, ¶ 8, 20 N.Y.3d 327, 338, 960 N.Y.S.2d 695, 701-02, 984 N.E.2d 893, 899-900. If *knowledge of victim residency* were essential to "purposeful availment" as conceived by Judge Dearie, the test would be *subjective,* not *objective.* On this issue Judge Dearie may have read the word "volitional" in *Funk v. Belneftekhim*, No. 14-cv-0376 (BMC), 2017 U.S. Dist. LEXIS 192219 (E.D.N.Y. Nov. 17, 2017) to mean "with knowledge of residency;" but *Funk* expressly adopted *Licci's objective* test and did not discuss *knowledge* at all. (Importantly, even if Judge Dearie's knowledge requirement were the law, which it is not, CSC would be entitled to discovery on the issue of defendants' knowledge of plaintiff's residence prior to being dismissed for not knowing, pre-discovery, the as-yet unknowable.)

---

[1] Noteworthy, Judge Dearie denied TP-Link's motion to dismiss for want of subject matter jurisdiction, which was treated as a motion to compel arbitration.

Judge Dearie misread and/or failed to rule on two out of three arguments for an "articulable nexis" between Tom Lei's transactions and claimed infractions. The third argument, which Judge Dearie did decide, focused on the movement of a specific TP-Link item from manufacturer to NY distributor to CSC and back to Tom Lei. Judge Dearie ruled those facts too attenuated from the offenses charged to find that such offenses "arose" therefrom. We do not argue with that ruling.

The other two arguments, however, were left unexamined by Judge Dearie. Namely, that Tom Lei's purchases and returns of some 31 products from CSC were strong evidence of knowledge (of the Amazon-CSC relationship) and intent (to harm) and, hence, bore the requisite "articulable nexis" to CSC's allegations at suit. *Licci, supra.* Early in the opinion Judge Dearie well stated CSC's argument[2] . . . but he never discussed or ruled on it. It may be that Judge Dearie's belief that Tom Lei was employed by non-defendant-Amazzia[3] rendered Mr. Lei's conduct irrelevant in Judge Dearie's contemplations.

### *Deadline for Response to Complaint*

The parties have agreed to the following schedule for defendants' response to the Amended Complaint, giving attention to the possibility of jurisdictional discovery:

> December 20, 2019 – Deadline for defendants to respond to the Amended Complaint
> January 20, 2019 – Deadline for plaintiff to oppose any motions filed by defendants in response to the Amended Complaint
> February 7, 2019 – Deadline for defendants' reply briefs

Further, plaintiff reserves the right to seek limited discovery on the issue of personal jurisdiction after any motion to dismiss for lack of personal jurisdiction is filed. Defendants do not concede that jurisdictional discovery is necessary, but defendants do agree to consider limited discovery on the issue of personal jurisdiction requested by plaintiff after defendants respond to the Amended Complaint. Defendants further reserve the right to seek limited jurisdictional discovery, and additional time to file their reply briefs, after plaintiff files its opposition to defendants' motions to dismiss. Plaintiff agrees to consider any

---

[2] "Plaintiff argues that Mr. Lei's test purchases . . . articulable nexis . . . because they establish . . . knowledge . . .intent." Mem. at 6.
[3] Amazzia was not joined in *Careful Shopper* when filed because plaintiff did not then know of Amazzia's existence and role in the conspiracy.

request by defendant(s) for such limited jurisdictional discovery subsequent to filing of Plaintiff's opposition brief.

## Prospect for Settlement

During the first joint-letter process in August 2019, TP-Link noted that plaintiff had not made a settlement demand. TP-Link indicated that it was open to pursue an early settlement, if plaintiff first provided information as to identity of the source of TP-Link products to enable TP-Link to further evaluate plaintiff's claims. TP-Link was correct that plaintiff had not made a settlement demand at that time, as in *Careful Shopper* plaintiff pursued early settlement soon after commencement, but TP-Link never counter-offered. Given TP-Link's remark, however, plaintiff disclosed purchase orders to TP-Link identifying the source of the products at issue, made a settlement demand, and prepared to and did diligently pursue settlement. The Parties were referred for mediation to Magistrate-Judge Freeman. TP-Link responded to plaintiff's settlement demand with a settlement offer, and the parties engaged in multiple calls with Magistrate-Judge Freeman concerning the issues. The settlement prospects were fully vetted. The mediation was cancelled.

## Issues to be Addressed at Initial Pretrial Conference

***Plaintiff Thimes Solutions Inc.'s Position***: Plaintiff wishes to proceed with discovery per the proposed Civil Case Management Plan and Scheduling Order submitted herewith. Plaintiff agreed to stay discovery when the case was referred to Magistrate-Judge Freeman for mediation, but not otherwise. This case will be litigated whether or not TP-Link is able to replicate the result it obtained in the Eastern District of New York. TP-Link's other arguments for dismissal,, none of which were raised in *Careful Shopper,* approach frivolousness.

Indeed, the *Careful Shopper* claims were essentially refiled in CDCA as a counterclaim/third-party complaint on November 12th. Anticipating such filing, the parties had already discussed this discovery issue in their CMC letter to Judge Staton on November 1, 2019, TP-Link contended for immediate discovery, as did Careful Shopper. On November 6, 2019, in fact, TP-Link served discovery. On November 14, 2019, without delaying the case further for a CMC, Judge Staton ordered discovery cutoff dates. Plaintiff served discovery on November 15th and November 18th. There is no practical or legal justification for delaying discovery here, any more than there, where limited jurisdictional discovery is a virtual

certainty in any event and this case will be refiled in California should the Court dismiss for want of personal jurisdiction.

***Defendant TP-Link USA Corporation's Position***:  TP-Link strongly believes that the preliminary issue of jurisdiction should be resolved before the litigation proceeds to discovery or any other further action is undertaken.  Accordingly, it is TP-Link's position that the Court should refrain from entering a scheduling order until after a decision adjudicating TP-Link's motion to dismiss.  If the case is not dismissed, TP-Link would request entry of a pretrial schedule based on the Court's standard form Civil Case Management Plan and Scheduling Order.

***Defendants Auction Brothers, Inc.'s Position***: Auction Brothers joins in the position set forth by TP-Link USA above.

Respectfully yours,

/s/ Mark Schlachet

cc: All Counsel (ECF)

Enc (2):

Proposed Case Management Plan

Memorandum and Order, *Careful Shopper, LLC v. TP-Link USA Corp.*, Case No. 1:18-cv-03019 (ECF No. 40, October 1, 2019, E.D.N.Y.).