Mark Schlachet (OSB 0009881) [Admitted PHV]
markschlachet@me.com
3515 Severn Road
Cleveland, Ohio 44118
Tel: (216)225-7559 Fax: (216)932-3390
*Attorney for Defendants*

Christopher J. Hammond (SBN 150024)
chammond@bizlawpro.com
21540 Prairie Street, Unit A Chatsworth, CA 91311
Tel: (866)625-2529 Fax: (866)463-9285
*Local Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>    Plaintiff,<br><br>vs.<br><br>TP-LINK USA CORPORATION, et al<br><br>    Defendants. | **CASE NO. CV 19-10374 PA**<br><br>**MEMORANDUM OF THIMES SOLUTIONS INC. IN OPPOSITION TO DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Date:  March 9, 2013**<br><br>**Hearing Time:  1:30 PM**<br><br>**Courtroom:  9A**<br><br>**SAC Filed: January 13, 2020** |

1

2

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iv

I.    INTRODUCTION ................................................................ 1

II.   PROCEDURAL HISTORY ................................................ 2

III.  FACTS ................................................................................ 3

IV.  RULE 12(b)(6) ANALYSIS ............................................... 6

    A. The Legal Standard ....................................................... 6

    B. Defendants' Primary Defense Does Not Go to SAC Sufficiency and is Not True—Not Even a Little Bit ...................................... 7

    C. Authorities to Date Deny Rule 12 (b)(6) Motions to Dismiss Defamation and Tortious Interference Claims Following IP (Counterfeit) Complaints to Amazon ................................ 9

    D. Trade Libel ................................................................ 11

       1. Particularity ......................................................... 11

       2. Falsity ................................................................. 12

       3. Actual malice ...................................................... 13

       4. Causation ............................................................ 13

    E. Tortious Interference .................................................. 14

       1. Wrongful Act. ..................................................... 14

       2. Causation ............................................................ 14

    F. Anti-trust, Section 1-Sherman Act, Naked Restraint ........................ 14

    G. Declaratory Judgement ............................................. 19

    H. The Noerr-Pennigton Doctrine does not Shield the Sham at Issue from Antitrust Scrutiny ................................ 19

V.    RULE 12(f) ANTI-SLAPP/LITIGATION PRIVILEGE ANALYSIS . 21

    A. No litigation privilege exists absent a good faith anticipation of imminent litigation to resolve a dispute, wholly absent here ........... 21

    B. Timeliness ................................................................ 23

ii

C.  TP-Link's Challenged Conduct is not anti-SLAPP Protected  ......... 24

D.  Probability of Prevailing on Counterclaims ...................................... 24

    1.  The "Probability of Prevailing" Standard .................................. 24

CONCLUSION  .............................................................................................. 25

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION

CASE NO.: CV 19-10374 PA

# TABLE OF AUTHORITIES

**Cases**

*Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP*, 2009 U.S. Dist. LEXIS 135692, at *16 (C.D. Cal. 2009)............................................................................. 8

*Am. Needle, Inc. v. NFL*, 560 U.S. 183, 130 S. Ct. 2201 (2010)..................... 17, 18

*Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp.*, 786 F.2d 564 (3d Cir. 1986)... 18

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254 (9th Cir. 1982) .................................................................................. 21

*Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501-02 (9th Cir. 2010).................................................................................................. 14

*Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752,768 (1984) .... 15, 17

*Daar v. Oakley, Inc.*, 2018 U.S. Dist. LEXIS 231237 at **3-4 (C.D. Cal.  2018) .. 7

*Doctor's Hosp. v. Se. Med. All.*, 123 F.3d 301, 308 (5th Cir. 1997)...................... 19

*Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, 220 U.S. 373, 31 S. Ct. 376, 55 L. Ed. 502 ...................................................................................... 18, 24

*Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15 - Cal: Court of Appeal, 1st Appellate Dist., 3rd Div. 1997 ...................................................... 22

*Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, Civil Action No. 6:11-cv-00317-LED-JDL, 2013 U.S. Dist. LEXIS 191810, at *22 (E.D. Tex. 2013) ................... 21

*ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 556-57 (8th Cir. 1991) .......... 19

*Estrada v. Wal-Mart Stores, Inc.*, No. 16-cv-04091-LB, 2016 U.S. Dist. LEXIS 140089, at *8 (N.D. Cal. Oct. 6, 2016).................................................................. 22

*Eternity Mart, Inc. v. Nature's Sources, LLC* 1:19-cv-02436 (N.D. IL filed April 10, 2019) .................................................................................... 10, 24

*Films of Distinction, Inc. v. Allegro Film Prods.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998) ............................................................................................. 11

*GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2010 U.S. Dist. LEXIS 67996, at *12 (N.D. Cal. July 8, 2010) ...................................... 22

*Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)8, 15

*Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012)......... 24

iv

*Hand & Nail Harmony, Inc. v. ABC Nails & Spa Prods.*, No. SA CV 16-0969-DOC (JEMx), 2016 U.S. Dist. LEXIS 188902, at *13 (C.D. Cal. Dec. 9, 2016) . 11, 24

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 Fed. App'x 406, 407 (9th Cir. 2017) ................................................................................................... 19

*Hilton v. Hallmark Cards,* 599 F.3d 894,908 (9th Cir. 2010) ................................. 25

*In re Tableware Antitrust Litig.*, 485 F. Supp. 2d 1121, 1124 (N.D. Cal. 2007) ... 19

*Ixchel Pharma, LLC v. Biogen Inc.*, No. 2:17-00715 WBS EFB, 2018 U.S. Dist. LEXIS 13548, at *2 (E.D. Cal. Jan. 25, 2018) ....................................................... 17

*Jack Russell Terrier Network of Northern Ca. v. American Kennel Club,* 407 F.3d 1027, 1034 (9th Cir. 2005) ..................................................................................... 15

*Johnson v. Incopro, Inc. et al,* 1:18-cv-00689 (E.D. VA) ................................ 10, 24

*Johnson v. John Does,* Case No. 18-00689, ECF 34 (E.D. VA filed January 10, 2019) ............................................................................................................................ 9

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) ....................... 14

*Klor's, Inc*. v. *Broadway-Hale Stores, Inc*., 359 U.S. 207 (1959) .......................... 14

*Leegin Creative Leather Prods. v. PSKS, Inc.,* 551 U.S. 877, 888, 127 S. Ct. 2705, 2714 (2007) .......................................................................................................... 18

*Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058, 1066 (N.D. Cal. 2004) .................................................................................................................... 22

*Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S. Ct. 1464, 1471, 79 L. Ed. 2d 775 (1984) ........................................................................................... 14

*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637, 639-640, 230 Cal. Rptr. 3d 408, 413 P.3d 650 (2018) ................................. 23

*Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 1:11-CV-249 RM, 2012 U.S. Dist. LEXIS 95024, at **25, 26 (N.D. Ind. 2012) ................................................. 16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 715 (N.D. Cal. 2019). ................................................................................... 23

*Power Analytics Corp. v. Operation Tech.*, No. SA CV16-01955 JAK (FFMx), 2017 U.S. Dist. LEXIS 226665, at *65 (C.D. Cal. Dec. 7, 2017) ......................... 17

v

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) ................................................................ 20

*Rock River Communs., Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343 (9th Cir. 2014) ................................................................................................................ 12, 21

*SZS Sols., Inc. v. Brother Int'l Corp.*, 2018 U.S. Dist. LEXIS 106093 *6 (S.D. Fla. 2018) .................................................................................................................... 10

*TechnoMarine S.A. v. Giftports, Inc.*, 2012 U.S. Dist. LEXIS 130128, at *16-17 (S.D.N.Y. 2012) .......................................................................................................... 13

*Thimes Solutions Inc. v. TP Link USA Corporation et al* ("*Thimes*"), Case No. 1:19−cv−04970−VEC (SDNY). ............................................................................ 2

*Tobin v. BC Bancorp*, No. 09cv0256 DMS (CAB), 2010 U.S. Dist. LEXIS 8049, at *11 (S.D. Cal. Feb. 1, 2010) .......................................................................... 22

*Travelpass Grp. LLC v. Caesars Entm't Corp.*, No. 5:18-CV-00153-RWS-CMC, 2019 U.S. Dist. LEXIS 166542, at *5-6 (E.D. Tex. Sep. 27, 2019) ..................... 19

*U.S. v. All Star Industries,* 962 F.2d 465 (5th Cir. 1992) ...................................... 19

*U.S. v. Apple,* 791 F.3d 290, *aff'g* CV-12-2826 (S.D.N.Y.) ................................ 18

*United States* v. *General Motors Corp*, 384 U.S. 127 (1966) ................................ 14

*Vivo Per Lei, Inc., a Nevada corporation v. Gadi Bruchim, an individual, William Fikhman, an individual, et al,* CV11- 05169GW (CDCA 2011) ............................ 1

*Wolfstein v. Morgan, Lewis & Bockius LLP*, No. CV 15-7150 PA, 2016 U.S. Dist. LEXIS 14497, at *23 (C.D. Cal.  2016) .................................................................. 9

**Statutes**

NYGBL §369-b .......................................................................................................... 6

Sherman Act, 15 U.S.C. §1 et seq ......................................................................... 14

**Rules**

Cal. Civil Code § 47(b) ............................................................................................ 21

Federal Rules of Evidence, Rule 801(d)(2)(C) ...................................................... 12

Federal Rules of Civil Procedure, Rule 8 .............................................................. 12

Federal Rules of Civil Procedure, Rule12(f) .......................................... 7, 10, 14

vi

Federal Rules of Civil Procedure, Rule12(f) ......................................................... 21

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION
CASE NO.: CV 19-10374 PA

## I.    INTRODUCTION

This is a business tort case where Amazon third-party seller *Thimes Solutions Inc.* was destroyed as a direct result of defendants' publication of false counterfeiting accusations made to Amazon.  TP-Link USA Corporation ("TP-Link" or "USA") and Auction Brothers, Inc. dba Amazzia ("Amazzia") libeled plaintiff on 28 separate occasions, accusing it of listing--not selling—counterfeit TP-Link products.  Plaintiff tried to reason with TP-Link/Amazzia . . . but they refused to engage.

Plaintiff's conduct in all instances was lawful under the First Sale Doctrine.[1] Under that doctrine a trademark holder enjoys a "distribution right" and may initially sell, or not sell, trademarked items to others on such terms as he or she sees fit. However, the trademark holder's exclusive distribution right is limited to the first sale of the trademarked item. The distribution right may be exercised

---

[1] William Fikhman, CTO of Auction Brothers, Inc. dba Amazzia (according to Amazzia Rule 26(a)(1) disclosure), advocated for the First Sale Doctrine when sued under dba "Super Duper Deals" in *Vivo Per Lei, Inc., a Nevada corporation v. Gadi Bruchim, an individual, William Fikhman, an individual, et al,* CV11- 05169GW (CDCA 2011).  See "Defendant William Fikhman's Notice of Motion and Motion to Dismiss," *id.* at ECF No. 44, filed December 6, 2012, attached to Declaration of Mark Schlachet ("Schlachet Dec.") filed concurrently herewith, at Exhibit 1.

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION

CASE NO.: CV 19-10374 PA

solely with respect to the initial disposition . . . not to prevent or restrict a lawful purchaser's listing, resale or further transfer of possession.

Amazon is fully aware of the foregoing and will not enforce IP complaints against a third-party seller such as plaintiff for listing or selling trademarked goods subsequent to their initial distribution. To circumvent Amazon's limitations on IP enforcement, defendants lied to Amazon and falsely accused plaintiff of conduct Amazon does deem actionable, i.e. counterfeiting, when defendants never had a good faith belief that plaintiff counterfeited. As a result of these lies, *Thimes* was expelled from the Amazon platform and may longer sell on Amazon.

## II.    PROCEDURAL HISTORY

On May 29, 2019 Plaintiff filed this *Thimes* action before the United States District Court for the Southerrn District of New York ("SDNY") in libel and tortious interference with existing and prospective economic relations, to recover damages and for declaratory relief to the effect that plaintiff's conduct in marketing TP-Link products was and is lawful.[2]  On December 6, 2019 District Judge Valerie Caproni conducted a Case Management Conference in *Thimes* and expressed herself strongly that, because the "related case" of *Careful Shopper LLC v. TP-Link USA Corporation, et al.* was pending before Judge Staton in this United

---

[2] *Thimes Solutions Inc. v. TP Link USA Corporation et al* ("*Thimes*"), Case No. 1:19−cv−04970−VEC (SDNY).

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION
CASE NO.: CV 19-10374 PA

States District Court for the Central District of California ("CDCA"), *Thimes* should be transferred to CDCA  With Plaintiff's consent Judge Caproni entered the order transferring venue that same day.  (*Thimes,* at ECF No.51)

Following transfer of venue to this Honorable Court, Plaintiff TSI filed a Second Amended Complaint (ECF No. 78 on January 13, 2020), following Court order to comply with rules relating to the correct assertion of diversity jurisdiction. The Second Amended Complaint added a Sherman Act claim to the two state law claims of Tortious Interference with Business Relations and Trade Libel.  The two State law claims have been pled substantially *verbatim* since commencement in SDNY on May 29, 2019.

## III.   FACTS

TSI became a third-party seller on Amazon in 2016.  To become an Amazon seller TSI signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate TSI as a seller for any reason or for no reason at all.  (SAC at ¶6)  TP-Link USA Corporation operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd., a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products.  (*Id.* at ¶13)  USA retained Amazzia to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.  (*Id.*  at ¶20)

3

USA and Amazzia published 28 written complaints to Amazon charging Plaintiff with infringing TP-Link intellectual property by listing or selling on amazon.com counterfeit goods (on 27 occasions), or otherwise infringing a trademark (on one occasion)  ("IP Complaints"). (*Id.* at ¶18)  TP-Link's fraudulent IP complaints directly caused plaintiff's suspension from the Marketplace in May 2018 and also caused TSI's permanent expulsion as a seller on the Amazon website, effective on or about August 27, 2018.  (*Id.* at ¶19)

Amazzia describes itself as affording Amazon marketplace sellers "price protection" by reporting and removing third-party sellers that discount trademarked products (*Id.*  at ¶¶21-22). According to Amazzia, the "main risk involves companies deviating from your minimum advertised price."  (*Id.*  at ¶24)  Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon," and (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days."  (*Id.*  at ¶25)  Unable to eliminate TSI sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting, at all times acting in concert with TP-Link. (*Id.*  at ¶26)  During

4

2018 TP-Link/Amazzia complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting.  (*Id.*  at ¶28)  TP-Link/Amazzia coordinated their assault with four (4) different identities in complaining to Amazon, to wit:  compliance-us@tp link.com, compliance-usa@tp-link.com, us-compliance@tp-link.com and compliance.usa@tp-link.com.  (*Id.*  at ¶29)

Amazon's IP Infringement Reporting System is rife with abuse vis-à-vis unethical sellers and IP owners that "game the system" with bogus IP, trademark, copyright and patent reports.  (*Id.*  at ¶30)  TP-Link made four (4) test purchases of authentic products from TSI beginning on January 18, 2019 and, thus, all of its IP complaints for counterfeiting (the first being on January 19, 2019) were knowingly false.[3]  (*Id.* at ¶32)  Amazon nevertheless stated that it would act favorably if TP-Link/Amazzia would retract the accusations; but, despite TSI requesting a retraction and asking for evidence of TP-Link/Amazzia's claims, both directly and through counsel, TP-Link/Amazzia refused to retract the IP complaints or even respond to TSI or its counsel at all; and indeed continued to file dozens of new complaints afterwards.  (*Id.* at ¶64)  Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon

---

[3] SAC at ¶27, bullets 3 and 4.

business. TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000.  (*Id.* at ¶65)

TP-Link has no justification for its counterfeiting accusation.  It seeks to obfuscate, however, by advancing a purported justification for trademark infringement complaints, wholly irrelevant to this case.  Defendants claim that TSI could not convey TP-Link's original manufacturer's warranty to its purchasers because, the theory goes, TP-Link disclaimed its original manufacturer's warranty as to Grey Market Goods, thus rendering such goods "materially different" and subject to a trademark infringement claim under law.

However Amazon, as a matter of policy and with respect to TP-Link specifically, has refused to enforce TP-Link's claims of trademark infringement. See  SAC at ¶50n.16 and accompanying text.  TP-Link has never explained how, even if it had a good faith trademark infringement concern, it would be justified in accusing plaintiff of counterfeiting.  As to New York sellers (such as TSI) moreover, a special statutory provision (NYGBL §369-b), operative here, renders manufacturers' warranty disclaimers based on Grey Market Sales null and void. SAC at ¶40.  TP-Link never enforced any warranty disclaimer, as to any purchaser, prior to the filing of instant litigation against it.  (¶¶33, 36-40)  This entire "warranty ploy" is a hoax.

## IV.    RULE 12(b)(6) ANALYSIS

6

## A. The Legal Standard

This Court has consistently articulated the correct legal standard to adjudicate a Rule 12(b)(6) motion to dismiss. E.g., *Daar v. Oakley, Inc.*, 2018 U.S. Dist. LEXIS 231237 at **3-4 (C.D. Cal.  2018)("The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6).")  Under that standard, as all Judges looking at false counterfeit complaints to Amazon have ruled, this case is plausible if, indeed, not compelling.  See Section IV.C. *infra*.

## B.  Defendants' Primary Defense Does Not Go to SAC Sufficiency and is Not True—Not Even a Little Bit

Woven into TP-Link/Amazzia's factual statement and arguments on causation is a matter in avoidance, to wit, that, even if Defendants lied as alleged and caused TSI's expulsion and economic harm, Plaintiff has nevertheless failed to state a claim because, subsequent to being suspended and thereafter expelled from the Amazon Platform, TSI had an opportunity, which it failed to implement, to establish to Amazon's satisfaction the authenticity of its products, and thereby successfully overturn its loss of selling privileges.[4]  Thus employing a frequently-encountered defense tactic, Defendants have conjured up pleading requirements that are actually the flip side of movant's defensive matter, and have little to do with the allegations required to sufficiently state a claim and survive a Rule

---

[4] "Plaintiff does not allege that it provided any further information about the authenticity of its products." Defendants' Mem. at p. 3.

7

12(b)(6) motion.  See  *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L.

Ed. 2d 572 (1980) ("finding 'no basis for imposing on plaintiff an obligation

to anticipate [an affirmative] defense by stating it his complaint' its negative.").

This Court has opined accordingly.  *Am. Nat'l Trading Corp. v. McGladrey &*

*Pullen, LLP*, 2009 U.S. Dist. LEXIS 135692, at *16 (C.D. Cal. 2009)("The SAC

does not specify the nature of the sale of AM&G, nor is it something, in this

instance, that ANTC should be required to allege to satisfy the federal pleading

standard.")

In fact, however, TSI made extensive efforts to appeal and rectify its

Policy Violations, suspensions, and expulsion.  Although TP-Link ignores

the allegation, plaintiff has alleged that it "exhausted all possible

administrative options at Amazon, including appellate procedures."  SAC at

¶52.  For example, immediately upon receipt of the first IP-complaint of

January 19, 2018 Plaintiff emailed TP-Link at the designated address in an

effort to satisfy TP-Link that TSI's product was authentic and not

counterfeit.  SAC at ¶42 and Exhibit 5.  TP-Link refused to engage. *Id.*

Plaintiff engaged expert Amazon counsel who emailed a letter to TP-Link

on February 1, 2018, but TP-Link again did not respond to counsel's letter.

SAC at ¶44 and Exhibit 6.  Plaintiff appealed to Amazon and got reinstated

from a subsequent May 7th suspension, but TP-Link continued its onslaught

8

on May 28 and 30, and on June 14 and 21.  SAC at ¶46 and Exhibit 8.

Despite its exhaustion of internal remedies, TSI was expelled on August 27, 2018.[5]

The truth is that the key to retractions and overturning succeeding suspensions is the IP owner's voluntary action, without which a retraction and reinstatement is virtually impossible to achieve.  SAC at ¶64.[6]  There is no genuine opportunity for the accused to overturn Amazon's suspension/expulsion without the complaining IP owner's assistance, which in this case TSI sought but Defendants refused to discuss.[7]  And this whole discussion (*dehors* the pleadings) of TSI's efforts to establish its innocence *post facto* begs the question:  did TP-Link/Amazzia's false IP complaints libel TSI and tortiously interfere with TSI's business relationships in the first instance?

---

[5] Amazon advises: "Most reviews are completed within 30 days; however, we may extend the review period at our discretion . . . We will notify you of our decision when the account review is complete."  https://sellercentral.amazon.com/forums/t/how-long-does-it-take-for-amazon-to-review-your-seller-account/206457/2  See Schlachet Dec. at Exhibit 8.

[6] Amazon Expert Chris Mc Cabe's Declaration in *Johnson v. John Does,* Case No. 18-00689, ECF 34 (E.D. VA filed January 10, 2019), opines at ¶13: "[t]hat means the seller must obtain a retraction from the rights owner (or their agent) and have the rights owner contact Amazon directly to withdraw the claim against the seller."  See Declaration of Chris McCabe (McCabe Dec.), annexed to Declaration of Mark Schlachet as Exhibit 2 thereto.
[7] McCabe Dec. at ¶¶11,14.

9

### C. All Authorities to Date Deny Rule 12 (b)(6) Motions to Dismiss Defamation and Tortious Interference Claims Following IP (Counterfeit) Complaints to Amazon[8]

Three United States District Judges have adjudicated Rule 12(b)(6) motions by IP owners advancing "specificity" arguments similar to those made here.  All three Rule 12(b)(6) motions were denied, finding the statement as reported by Amazon, i.e. "counterfeit," sufficient to survive a Rule 12(b)(6) motion. In *Eternity Mart, Inc. v. Nature's Sources, LLC* 1:19-cv-02436 (N.D. IL filed April 10, 2019), the District Court denied the Motion to Dismiss, setting forth his reasoning in part as follows: "defendant falsely told Amazon that goods were counterfeit on February 6th of 2019. That's pretty specific. That's not conclusory allegations. I mean, that is one specific allegation. There's a lot more context around that."[9] Similarly, in *Johnson v. Incopro, Inc. et al,* 1:18-cv-00689 (E.D. VA) Honorable Leonie M. Brinkema denied a Rule 12(b)(6) Motion, ruling firmly that "that word 'counterfeit' is very strong  and "there's no question that there's been serious interference between Ms. Johnson's business and Amazon." [10] Further, the Court in *SZS Sols., Inc. v. Brother Int'l Corp.*, 2018 U.S. Dist. LEXIS 106093 *6 (S.D. Fla.

---

[8] "In the absence of any California authority on the issue, the Court considered persuasive authority from other jurisdictions."  *Wolfstein v. Morgan, Lewis & Bockius LLP*, No. CV 15-7150 PA, 2016 U.S. Dist. LEXIS 14497, at *23 (C.D. Cal.  2016).

[9] Transcript of Ruling annexed as Exhibit 3 to Schlachet Declaration.  See p.2, lines 13-25.
[10] Transcript of Ruling annexed as Exhibit 4 to Schlachet Declaration.  See p.7, line 10 through p.8, line 5.

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION
CASE NO.: CV 19-10374 PA

2018) (IP complaint of trademark infringement only) ruled that "[p]laintiff's original complaint satisfied the liberal pleading standard required by *Iqbal*: the Complaint described the allegedly defamatory statement and stated when it was communicated to Amazon by Brother."

This District has opined in judicial *dicta* that a false accusation of counterfeiting (which did not occur in that case but has occurred here) would satisfy the "wrongful act" element of a tortious interference claim.[11]  Beyond cavil, an accusation that a business offers counterfeit goods is an accusation of highly culpable conduct . . . easily satisfying the "specificity" and "wrongful act" requirement of both state law tort claims.

**D. Trade Libel**

Under California law, "trade libel is an intentional disparagement of the quality of property, which results in pecuniary damage." *Films of Distinction, Inc. v. Allegro Film Prods.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998).

1. Particularity

TP-Link argues that TSI's trade libel claim is insufficient alleged because TSI has failed to identify the "author or speaker, recipient, and location of each allegedly libelous statement by Defendants, and has not pled facts sufficient to

---

[11] *Hand & Nail Harmony, Inc. v. ABC Nails & Spa Prods.*, 2016 U.S. Dist. LEXIS 188902, at *13 (C.D. CA  2016).

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION

CASE NO.: CV 19-10374 PA

demonstrate the falsity of any alleged complaints to Amazon." **Not true:** TSI has

identified TP-Link/Amazzia as the speaker and Amazon the recipient. SAC ¶28

TSI lists 28 IP complaints, their dates, and email address of the IP reporter. Exhibit

8.1-8.4 are four (4) true copies of Policy Warnings TSI received from Amazon,

confirming the conspirators' "counterfeit" complaints.   Since TP-Link is in privity

of contract with Amazon, SAC at ¶38, it follows that under Evidence Rule

801(d)(2)(C) Amazon's statements to TSI are non-hearsay and admissible to prove

what TP-Link stated to Amazon, i.e. "counterfeit."

2. Falsity

As to facts demonstrating falsity, TSI plausibly alleges  (SAC at ¶49) that

[a]ll [of TSI's TP-Link products] were authentic and TP-Link has never stated to

the contrary;" and in SAC ¶27 TSI asserts that "Plaintiff has possession of

approximately 100 of these items to date, all of which are authentic and not

counterfeit."  Again, having repeatedly alleged the "counterfeit" complaints to be

false, Plaintiff need not prove authenticity at the pleading stage.  Both California

and federal law assume that people act lawfully unless proven otherwise. Federal

Rule of Civil Procedure 8 provides that illegality is an affirmative defense to be

pled in the defendant's answer.  *Rock River Communs., Inc. v. Universal Music

Grp., Inc.*, 745 F.3d 343, 350 (9th Cir. 2014)

The question is "plausibility." TP-Link has not to date, though having test

12

purchased TSI product on four (4) occasions, alleged TSI's products to be

counterfeit.  Until it does, TSI's assertions of authenticity must be taken as

unchallenged and true.  *Id.*   See also *TechnoMarine S.A. v. Giftports, Inc.*, 2012

U.S. Dist. LEXIS 130128, at *16-17 (S.D.N.Y. 2012)( ("equally plausible that

defendant . . . lawfully acquired the subject watches and is simply reselling them,

as it has a right to do.").

### 3.  Actual Malice

SAC ¶¶32, 49, 56, and 63 each allege actual malice based upon alleged facts

in yet other paragraphs of the SAC.  These allegations of malice rest upon the

sheer number of IP complaints, assertions of counterfeiting contrary to the results

of their own test purchases, refusal to engage with TSI in search of the truth, and

the actual ill will that must accompany the foregoing.  All 28 IP complaints can be

found malicious under the allegations of the SAC.

### 4. Causation.

TSI very specifically and plausibly alleged causation: "Amazon harshly

enforces brand owner complaints of counterfeiting" (SAC at ¶1, 4th bullet); TP-

Link lodged about 28 counterfeiting complaints (*Id.* at ¶28);  Amazon routinely

sent Policy Warnings (Exhibits 8.1-8.4) threatening expulsion; and Plaintiff,

unable to obtain TP-Link's cooperation, was ultimately expelled. TP-Link also

argues that Plaintiff, not TP-Link/Amazzia, is responsible for its misfortune.  As

13

shown above, such an argument is  (i) an affirmative defense, (ii) does not go to

the pleadings, (iii) at best premature and ill-suited for ruling in the Rule 12(b)(6)

context, and (i) wrong in fact.

### E. Tortious Interference

1.   Wrongful Act.

TSI has adequately addressed the highly culpable nature of

Defendants' conduct in IV.C. above: "Authorities to Date Deny Rule 12 (b)(6)

Motions"  . . . and this Court has ruled in judicial dicta that an accusation of

counterfeiting is a "wrongful act."  We incorporate that discussion at this point.

2.   Casuation.

We incorporate argument advanced in IV.B. and IV.D.4 above.

### F.  Antitrust, Section 1-Sherman Act, Naked Restraint

Plaintiff has sufficiently alleged a *per se* Section 1 Sherman Act claim.[12]

Defendants "had a conscious commitment to a common scheme designed to

achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Service Corp.*, 465

U.S. 752, 104 S. Ct. 1464, 1471, 79 L. Ed. 2d 775 (1984).  The unlawful objective

---

[12] To state a claim under Section 1, a plaintiff must allege facts that, if true, will prove: (1) the existence of a conspiracy, (2) intention on the part of the co-conspirators to restrain trade, and (3) actual injury to competition. *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir. 2008), *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501-02 (9th Cir. 2010)

14

was the "removal of MAP violators." *United States* v. *General Motors Corp*, 384 U.S. 127 (1966); *Klor's, Inc*. v. *Broadway-Hale Stores, Inc*., 359 U.S. 207 (1959).

Defendants do not contest the sufficiency of Plaintiff's Section 1 claim aside from the requirements of joint/concerted action and horizontality. Specifically, they contest being competitors capable of entering into a conspiracy to violate the antitrust laws. We agree that TP-Link's instant arguments put into play Amazzia's status as a competitor; but we suggest that meeting TP-Link's new defensive matter was not required to state a claim in the first instance. See *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) (finding "no basis for imposing on plaintiff an obligation to anticipate [an affirmative] defense by stating in his complaint" its negative.). We did not anticipate that that Defendants would claim to be a "single entity."

In making their argument TP-Link/Amazzia rely on *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752,768 (1984), as applied in *Jack Russell Terrier Network of Northern Ca. v. American Kennel Club,* 407 F.3d 1027, 1034 (9th Cir. 2005). The short answer to TP-Link is that *Jack Russell* by its own terms is inapplicable: ""where firms are not an economic unit **and are at least potential competitors**, they are usually not a single entity for anti-trust purposes." *Id.* (bold added)

In truth, Auction Brothers, Inc., dba Amazzia, dba Super Duper Deals and

perhaps other fictitious names, has long been a third-party seller—hence, a TP-Link competitor --on Amazon. Its Amazzia profile as of January 20, 2020 showed 31,080 ratings or reviews. Schlachet Dec., Exhibit 5. Author Gayle Laakman McDowell states that about .5% of purchasers post a review, although some sellers post fake reviews at a far greater rate.  https://www.quora.com/What-percentage-of-buyers-write-reviews-on-Amazon.  Assuming Amazzia is not a "fake reviewer," its review numbers suggest sales of products since 2008 as high as 6,000,000 items.  Further, as of February 9, 2020 Amazzia (i) is known in the trade as the 7,639[th] largest volume Fulfilled by Amazon seller (Schlachet Dec., Exhibit 6), and (ii) it was advertising on its own Linkedin site for marketing personnel as of January 20, 2020.  Schlachet Dec., Exhibit 7.

Plaintiff does not agree, moreover, that a service provider and brand owner may not jointly conspire and nakedly restrain competition.  In *Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 1:11-CV-249 RM, 2012 U.S. Dist. LEXIS 95024, at **25, 26 (N.D. Ind. 2012) plaintiff joined an advertising representative and station owner upon allegations of *per se* Section 1liability.  The District Court denied the motion to dismiss: "Nexstar's conspiracy claims 'plausible'. Nothing more is required at this stage of the proceedings."

And assuming *arguendo* that only competitors can conspire, plaintiff has alleged in SAC ¶41 that "Amazzia directly or indirectly sells products on Amazon

through multiple seller accounts." This allegation, ignored by TP-Link, means that Amazzia is a competitor, whether actual or potential, in the relevant market of online retail sales. TP-Link as well is an Amazon vendor. SAC at ¶38. Denomination as "actual" or "potential" competitor reflects an entity's actual or potential *entry* in the relevant market, i.e. not its inventory of products for listing or sale at given time.[13] Accordingly, Auction Brothers, Inc. is and has been TP-Link's actual competitor and potential competitor at the horizontal level.

Further, TP-Link's "single entity" assertions cannot stand in light of *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 130 S. Ct. 2201 (2010), a Section 1, controlling case that Defendants neither cited nor distinguished. The Supreme Court there discussed and applied *Copperweld* where NFL Properties, a licensing joint venture that granted an exclusive license to Reebok, was sued under Section 1 by American Needle, a former non-exclusive licensee. NFL sought to evade scrutiny as a "single entity" under *Copperweld.* The Supreme Court disagreed, finding the parties to be separate economic entities. All decision-making was held to be concerted, not independent. As for the argument that NFL Properties' concerted

---

[13] *Power Analytics Corp. v. Operation Tech.*, No. SA CV16-01955 JAK (FFMx), 2017 U.S. Dist. LEXIS 226665, at *65 (C.D. Cal. Dec. 7, 2017)( ". . . establish unreasonable barriers to entry in the future, a potential competitor might have a legitimate antitrust claim.") The usage is routine and non-controversial: *Ixchel Pharma, LLC v. Biogen Inc.*, No. 2:17-00715 WBS EFB, 2018 U.S. Dist. LEXIS 13548, at *2 (E.D. Cal. Jan. 25, 2018)(" . . . plaintiff was not a current or potential competitor in the alleged market.")

17

decision-making was in the common interests of the teams, the Court accepted the premise but explained that it made no difference: "illegal restraints often are in the common interests of the parties to the restraint, at the expense of those who are not parties." *Id.* at 198. Defendants' "single entity" argument is governed—and rejected--by *Am. Needle.*

Under circumstances of Amazzia ascendance, its promotional material and an express contract[14] followed by higher prices to consumers (SAC at ¶81), an unlawful horizontal conspiracy to maintain MAP pricing by excluding competitors may be found. *U.S. v. Apple,* 791 F.3d 290, *aff'g* CV-12-2826 (SDNY).

We acknowledge *Leegin Creative Leather Prods. v. PSKS, Inc.,* 551 U.S. 877, 888, 127 S. Ct. 2705, 2714 (2007)], where the Court rejected reliance on rules governing horizontal restraints when defining rules applicable to vertical price restraints. Specifically, *Leegin* overruled *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, 220 U.S. 373, 31 S. Ct. 376, 55 L. Ed. 502, which established a *per se* rule against a vertical agreement between a manufacturer and its distributor to set minimum resale prices.

However, *Leegin* has never been held to overrule cases such as *Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp.*, 786 F.2d 564 (3d Cir. 1986), where General Motors and its dealers, admittedly vertical parties, combined and

---

[14] SAC, Exhibit A to Exhibit 9: "a true and correct copy of TP-Link's contract with Amazzia."

18

conspired, *without* an express agreement, to restrict marketplace access.  GM was held **not** to have acted independently and was denied summary judgment.  Thus, *Leegin* does not control a *per se* challenge to a hybrid conspiracy amongst horizontal competitors to exclude discounters.[15] The instant conspiracy isn't about vertical price setting, but rather, it's about horizontal competitors destroying competition at the horizontal level and stabilizing supra-competitive price levels within the relevant market.

### G. Declaratory Judgement

Space limitations preclude a full discussion of Plaintiff's allegations in support of a declaratory judgment.  Plaintiff has set forth an adequate basis for such relief in SAC at ¶¶88-92.

### H. The Noerr-Pennigton Doctrine does not Shield the Sham at Issue from Antitrust Scrutiny

TP-Link seeks safe harbor under *Noerr-Pennington* [16] by analogizing the instant case to **non-precedential** *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*,

---

[15] See also *Doctor's Hosp. v. Se. Med. All.*, 123 F.3d 301, 308 (5th Cir. 1997)(manufacturer not acting unilaterally in best interest); *ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 556-57 (8th Cir. 1991)(though facially vertical, inducement emanated from horizontals' intent to restrain competition); *Travelpass Grp. LLC v. Caesars Entm't Corp.*, No. 5:18-CV-00153-RWS-CMC, 2019 U.S. Dist. LEXIS 166542, at *5-6 (E.D. Tex. Sep. 27, 2019)(additional horizontal secondary conspiracies); *In re Tableware Antitrust Litig.*, 485 F. Supp. 2d 1121, 1124 (N.D. Cal. 2007)(though complaints vertical, part and parcel of effort to restrain trade); *U.S. v. All Star Industries*, 962 F.2d 465 (5th Cir. 1992)(cannot escape *per se* treatment by using a middle man).
[16] *E. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523 (1961).

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION
CASE NO.: CV 19-10374 PA

691 Fed. App'x 406, 407 (9th Cir. 2017), aff'g 2014 U.S. Dist. Lexis 160980 (W.D. WA 2014), where Apple was protected in its *single infringement complaint* to Amazon.   The analogy fails, however, because, unlike the instant case, the *Hard2Find* Court found that Apple had lodged its IP complaints in good faith and plaintiff did not allege Apple's complaint to be a "sham" or baseless.   TP-Link, unlike H2F, was not in good faith; and TSI vigorously disputes, and has pleaded with particularity TP-Link's bad faith throughout.  See SAC at ¶50.

The Ninth Circuit expounded the Supreme Court's "sham exception" to *Noerr-Pennington* as follows: "'ostensibly directed toward influencing governmental action . . . is a mere sham to cover to what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.' *Noerr*, 365 U.S. at 144.  *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 534 (9th Cir. 1991)  .  Accordingly, *Noerr-Pennington* does not apply here because TP-Link's misconduct was "an attempt to interfere directly" and was not genuine petitioning conduct.  *Id.*

TSI has specifically pled, non-conclusory, the particulars of the "Sham Exception" at SAC ¶50, establishing that the 28 counterfeiting complaints were objectively baseless assertions that no reasonable seller could expect to successfully advance.  See *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993).  Indeed,

20

Amazzia's modus operandi here, i.e. of automatically filing IP complaints until removal of the MAP violator, is a scenario that the Ninth Circuit regards as "sham" as a matter of law" *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254 (9th Cir. 1982) ("Baseless protests, instituted without regard to merit, are "nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144, 81 S. Ct. at 533.

Unfortunately Defendants have misrepresented the holding of *Rock River Communs., Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343 (9th Cir. 2014), representing to the Court that "infringement notice protected by Noerr-Pennington immunity." In fact, the Ninth Circuit ruled: "The district court, however, found that triable issues of fact prevented summary adjudication of the *Noerr-Pennington* defense, and we agree." 745 F.3d at 351.

Should the Court find the record not sufficiently developed to decide whether Noerr-Pennington applies, then we respectfully suggest that decision on the matter be deferred. *Rock River, supra;* see also *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, Civil Action No. 6:11-cv-00317-LED-JDL, 2013 U.S. Dist. LEXIS 191810, at *22 (E.D. Tex. 2013)

## V.    RULE 12(f) ANTI-SLAPP/LITIGATION PRIVILEGE ANALYSIS

A. **No litigation privilege exists absent a good faith anticipation of imminent litigation to resolve a dispute, wholly absent here**.

21

Defendants' statements were not made "in anticipation of litigation", as is required for protection under Cal. Civ. Code § 47(b)'s litigation privilege. Indeed, the statements at issue did not even hint at litigation.  Despite defendants' convenient characterization of them as "functional equivalents of cease and desist letters," a patent stretch,  TP-Link cannot convert an IP complaint to Amazon into threatened litigation against Thimes:

> That is, a lawsuit or some other form of proceeding must actually be
> suggested or proposed, orally or in writing. Without some actual
> verbalization of the danger that a given controversy may turn into a lawsuit,
> there is no unmistakably objective way to detect at what point on the
> continuum between the onset of a dispute and the filing of a lawsuit the
> threat of litigation has advanced from mere possibility or subjective
> anticipation to contemplated reality.

*Edwards v. Centex Real Estate Corp*., 53 Cal. App. 4th 15 - Cal: Court of Appeal, 1st Appellate Dist., 3rd Div. 1997.[17] Defendants have nowhere alleged that a

---

[17] Cited approvingly: *Estrada v. Wal-Mart Stores, Inc.*, No. 16-cv-04091-LB, 2016 U.S. Dist. LEXIS 140089, at *8 (N.D. Cal. Oct. 6, 2016)( "'Good faith' contemplation of is a question of fact."); *GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2010 U.S. Dist. LEXIS 67996, at *12 (N.D. Cal. July 8, 2010)(no litigation privilege "until the prospect of litigation has gone from being a mere possibility to becoming a contemplated *reality.*"); *Tobin v. BC Bancorp*, No. 09cv0256 DMS (CAB), 2010 U.S. Dist. LEXIS 8049, at *11 (S.D. Cal. Feb. 1, 2010)( "facts are clearly in dispute . . . Defendants are not entitled to judgment on the pleadings on these claims.; ) *Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058, 1066 (N.D. Cal.

22

"lawsuit or some other form of proceeding" was "actually suggested or proposed",

and their litigation privilege claims fail for that reason alone.

## B. Timeliness

During the Rule 26(f) process in SDNY, on July 27, 2019, TP-Link counsel

complained that "Plaintiff has not made any settlement demand.  If plaintiff

identifies its supplier . . . TP-Link USA Corporation is open to early settlement . .

." The resultant mediation process, which lasted with intensity from August 9 to

October 25, 2019, failed to achieve its goal, when TP-Link filed a letter with

Magistrate Judge Freeman a week before mediation, requesting that further

mediation efforts be cancelled.[18]

TSI's core allegations at bar have been in litigation, substantially *verbatim*,

since May 29, 2019.  *Newport Harbor Ventures, LLC v. Morris Cerullo World*

*Evangelism*[19] adopts a "first opportunity" approach (" the anti-SLAPP statute is

designed to resolve these lawsuits early, but not to permit the abuse that delayed

---

2004)( "mere potential or bare possibility' that judicial proceedings might be instituted' in the
future is insufficient to invoke the litigation privilege.")

[18] *Id.* at ECF Nos. 45-47.
[19] 4 Cal. 5th 637, 639-640, 230 Cal. Rptr. 3d 408, 413 P.3d 650 (2018).

motions to strike might entail").  *Newport Harbor* has been followed by NDCA.[20]

That instant plaintiff filed an amended complaint is of no moment because

successive pleadings are deemed identical if, as here, the "transactional nucleus of

facts" remains unchanged.  Cf. *Kulick v. Leisure Vill. Ass'n*, 2018 U.S. Dist.

LEXIS 113771, at *4 (C.D. Cal.  2018).  Defendants anti-SLAPP motion is

untimely.

### C. TP-Link's Challenged Conduct is not anti-SLAPP Protected

Falsely accusing a business of counterfeiting is wrongful and unprotected as

"petitioning conduct."  *Eternity Mart, Incopro,* and *Hand & Nail* discussed at p.

10, *supra.*  "As Professor McCarthy notes, counterfeiting is the 'hard core' or 'first

degree' of trademark infringement that seeks to trick the consumer into believing

he or she is getting the genuine article, rather than a 'colorable imitation.'"  *Gucci*

*Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (SDNY 2012).

Thus, even assuming *arguendo* that TP-Link would be anti-SLAPP

"protected" vis-a-vis steps taken as to reporting trademark infringement to

Amazon, TSI's instant state law claims do not threaten such activity, but rather,

instant claims challenge accusations of counterfeiting.  TP-Link has not argued,

because it cannot argue, that lying about one's competitors to destroy them is

---

[20] *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 715
(N.D. Cal. 2019).

protected conduct.  There is no privilege in law to kill off the competition with lies blocking its access to the marketplace.

### D.  Probability of Prevailing on Counterclaims

1.  The "Probability of Prevailing" Standard

Where an anti-SLAPP movant shows protected activity (which TP-Link has **not** shown in fact, but which we assume *arguendo* it has), the burden shifts to the claimant to establish a "probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).  The Ninth Circuit holds that "probability" is not a likelihood of success, but rather, a somewhat minimal showing.  See *Hilton v. Hallmark Cards,* 599 F.3d 894,908 (9th Cir. 2010)( "'Reasonable probability' . . . requires only a 'minimum level of legal sufficiency and triability.")

TSI stands on its discussion in Section IV.B.-E. above to establish its probability of prevailing on its state law claims.

### CONCLUSION

Having responded to each of the many issues raised by Defendants, we pray that the Court deny the Joint Motion of Defendants in its entirety and, should any count warrant dismissal, we request leave to amend the Complaint.[21]

---

[21] The Court need "not reach  . . .  [here TP-Link's] argument that—given the horizontal aspect of the conspiracy . . .the conspiracy is subject to *per se* condemnation." *W. Penn Allegheny Health Sys. v. UPMC,* 627 F.3d 85, 101 n.10 (3d Cir. 2010), cert. denied *UPMC v. W. Penn Allegheny Health Sys.*, 565 U.S. 817, 132 S. Ct. 98 (2011).

25

**LAW OFFICE OF MARK SCHLACHET**
/s/ *Mark Schlachet*
Mark Schlachet (admitted PHV)
3515 Severn Road
Cleveland, OH 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390 Email:
markschlachet@me.com
*Attorney for Plaintiff Thimes Solutions Inc.*

**LA LAW GROUP, APLC**
/s/ *Christopher J. Hammond* Christopher J.
Hammond (SBN 150024) 21540 Prairie
Street, Unit A Chatsworth, CA 91311
Telephone: (866) 625-2529
Facsimile: (866) 463-9285
Email: chammond@bizlawpro.com
*Attorney for Plaintiff Thimes Solutions Inc.*

## CERTIFICATE OF SERVICE OF MEMORANDUM IN OPPOSITION

Undersigned counsel to Plaintiff Thimes Solutions Inc. hereby certifies that on February 14, 2020 all parties entitled to service via the Court's ECF system were served accordingly.

/s/Mark Schlachet_____
Mark Schlachet

MEMORANDUM IN OPPOSITION TO JOINT NOTICE OF MOTION
CASE NO.: CV 19-10374 PA