Mark Schlachet (OSB 0009881) [Admitted PHV]
markschlachet@me.com
3515 Severn Road
Cleveland, Ohio 44118
Tel: (216)225-7559 Fax: (216)932-5390
*Attorney for Plaintiff Thimes Solutions Inc.*

Christopher J. Hammond (SBN 150024)
chammond@bizlawpro.com
21540 Prairie Street, Unit A Chatsworth, CA 91311
Tel: (866)625-2529 Fax: (866)463-9285
*Local Counsel Plaintiff Thimes Solutions Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>       Plaintiff,<br><br>vs.<br><br>TP-LINK USA CORPORATION, et al<br><br>       Defendants. | **CASE NO. CV 19-10374 PA**<br><br>**PLAINTIFF'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF WILLIAM FIKHMAN, ECF 101-2; REQUEST THAT COURT RECEIVE SUPPLEMENTAL EVIDENCE**<br><br>**HEARING DATE:  TBD**<br><br>**COURTROOM:  9A**<br><br>**SECOND AMENDED COMPLAINT FILED JANUARY 13, 2020** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT pursuant to Rule 56(h) of the Federal Rules of Civil Procedure[1] Plaintiff Thimes Solutions Inc. ("TSI") hereby objects to the Declaration of William Fikhman, ECF 101-2 ("Declaration")[2] and, more specifically paragraphs 6-8 thereof, as stated hereunder.

Mr. Fikhman has described Amazon's Report Infringement protocols and has declared as follows:

¶6: but Amazon does not send a copy of the submission itself and Amazzia does not otherwise maintain any record of specific complaints made on Amazon's online system.

¶7:  [b]ased on the limited information available to Amazzia from Amazon's online complaint system, and consistent with Amazzia's regular practice, Amazzia does not have, nor has it ever had, copies of the specific complaints it made to Amazon regarding Universal Goods and Sales.

---

[1] See *Galvan v. Walt Disney Parks & Resorts, United States, Inc.*, 2019 U.S. Dist. LEXIS 227868, at *2-4 (C.D. Cal. 2019)(" [u]nder Federal Rule of Civil Procedure ("Rule") 56(h), if a court is 'satisfied that an affidavit or declaration under [a motion for summary judgment] is submitted in bad faith,' the court may subject the party to 'appropriate sanctions,' including striking those declarations or portions thereof."
[2] Copy annexed as Exhibit 3 hereto.

2

¶8:  [a]lthough Amazzia does not have a copy of the complaint made to Amazon regarding Universal Goods and Sales, ==based on its general business pattern and practice in connection with brand protection services for reporting counterfeit sales  to Amazon . . . Amazzia would also have provided additional comments to Amazon to the effect that: "The seller indicated herein is selling products that do not include the same bundle of rights that authentic products include. Desired Action: Immediate removal of the seller's offer of this counterfeit product."==

The highlighted matter is submitted in bad faith and must be stricken under the sham affidavit doctrine.  As will be seen below, in a prior deposition of Mr. Fikhman, he represented that Amazzia used standard language to make counterfeit reports to Amazon in the 2018 timeframe, and this language is inconsistent with the "bundle of rights" language attested.

Mr. Fikhman is one of three brothers who own Auction Brothers, Inc., dba Amazzia, and was deposed as the Amazzia "person most knowledgeable" on December 10, 2019, in a case in the Southern District of Florida.  See Deposition of William Fikhman in *Solu-Med, Inc. v. Youngblood Skin Care Products, Inc.,* Case No. 19-cv-60487 (S.D. FL) at ECF 107-1 (referred to as "F.Dep." and annexed

hereto in relevant part as Exhibit 1).  F.Dep. at 9:14-25.  The deposition transcript was first docketed on March 6, 2020.

During the course of his deposition Mr. Fikhman identified and authenticated a certain writing (Exhibit 2 hereto, see S. Dec. at ¶4), utilized by Amazzia on behalf of Youngblood, as authentic Amazzia "verbiage that may have been used when we submit a complaint to Amazon."  See F. Dep. at 86:13-87:8. The timeframe of verbiage included 2018 (S. Dec. at ¶4. first para.), which is the year that TSI was also reported by Amazzia. Mr. Fikhman affirmed that Amazzia created the language.  *Id.* at 88:7-11.  This was the first discovery of actual IP counterfeit complaint language utilized by Amazzia. Mr. Fikhman also testified that "all of our reporting processes are actually very methodical and organized and strategic." *Id.*  at 54:5-6.

We quote this communication in full:

Hello,

We have researched Youngblood's listings and found the following ASfNs are in violation of our trademark, 3812755.

• Counterfeit products are being sold on the following listings

• Please immediate action and remove these sellers currently listing counterfeit product.

According to Amazon's robust and aggressive anti-counterfeit policy, sellers must list items that match the detail pages exactly. The indicated sellers are not selling the authentic products as shown in the ASIN(s) referenced.

We know that Amazon takes product authenticity very seriously and Amazon requires sellers to list items that exactly match the detail pages. Therefore, we respectfully request that Amazon immediately and proactively remove these sellers from the mentioned ASIN(s) and prohibit these sellers from listing against these ASIN(s) in the future.

Thank You,

Youngblood

In the instant Declaration Mr. Fikhman declares or implies at ¶ 6 et seq. that Amazzia uses Amazon's template "Report Infringement" online exclusively;  does not have, nor has it ever had, copies of the specific complaints it made (¶7); based on "business pattern" would have selected "counterfeit" option, adding in the individualized comment section that "seller indicated herein is selling products that do not include the same bundle of rights that authentic products include.  Desired Action: Immediate removal of the seller's offer of this counterfeit product." (¶¶8,10); and that "Amazzia has no reason to believe that its communications with Amazon" did not reflect the aforesaid business pattern (¶10).

Noteworthy, Mr. Fikhman did not disclose any language (or the possibility of language) such as Exhibit 2 hereto, i.e. the one hard copy record we know, based upon Mr. Fikhman's sworn testimony in *Youngblood* during December 2019*, is* authentic Amazzia "verbiage that may have been used when we submit a complaint to Amazon." At the same time Mr. Fikhman swears that Amazzia used language ("bundle of rights"), without specifying any range of dates, for which no written record is proffered. We have reason to believe that "bundle of rights" is language created for use by Amazzia post-commencement of this litigation.[3]

Accordingly, Mr. Fikhman *does* have a copy of specific language—in his words "methodical and organized and strategic"—used in Amazzia counterfeit complaints. Mr. Fikhman *knows* that Amazzia's "business pattern" circa 2018 includes the aforesaid "methodical and organized and strategic" language. Mr. Fikhman *does* have reason to believe that Amazzia's communications with Amazon did not reflect the use of the "bundle of rights" language.

---

[3] We do not challenge the conduct of TP-Link counsel, whom we know to be of the highest caliber, in any way. We do believe, however, that Amazzia counsel, Burkhalter Kessler Clement & George LLP, knew or should have known of Exhibit 2 and its verbiage in preparing the at-issue declaration, because that firm represented Amazzia at Mr. Fikhman's deposition. Exhibit 1 at 2:20-21. We do recognize that the attorney present at the deposition, Andrew Cummings, Esq., left the firm in mid-February 2020. We suspect that the lapse at issue resulted from that circumstance.

CV 19-10374 P

It is appropriate to use Mr. Fikhman's deposition testimony from similar litigation, first filed in March 2020, in response to Mr. Fikhman's  wholly-conclusory declaration in reply, raising issues for the first time.  A court in this circuit has held that sworn statements made in other litigation may trigger the sham affidavit doctrine:

> As an initial matter, the sham affidavit doctrine is potentially applicable here even though Defendants seek to invoke it based on the deposition testimony that Parker provided in an *earlier* case (as opposed to the typical scenario where a party makes admissions during a deposition in the *pending* case and then seeks to sidestep those admissions by submitting a contradictory post-deposition declaration). Although the law on this point is somewhat unsettled, the general consensus seems to be that sworn statements made in prior proceedings may trigger the doctrine while unsworn statements may not.

*Parker v. Arizona*, 2019 U.S. Dist. LEXIS 77781, at *12-13 (D. Ariz. 2019).

Accordingly, Thimes Solutions Inc. requests:

1. that the court disregard Mr. Fikhman's declaration; and

2. that the court receive Exhibit 2 hereto as evidence on the pending motion for summary judgement.

CV 19-10374 P

Plaintiff's Evidentiary Objections to the Declaration of William Fikhman, ECF 101-2
Request that Court Receive Supplemental Evidence

1

2

Respectfully submitted,

3

Dated: April 8, 2020

4

/s/ Mark Schlachet
Mark Schlachet (OSB 0009881) [Admitted PHV]

5

markschlachet@me.com

6

3515 Severn Road

7

Cleveland, Ohio 44118
Tel: (216)225-7559

8

Fax: (216)932-5390

9

Christopher J. Hammond (SBN 150024)

10

chammond@bizlawpro.com

11

21540 Prairie Street, Unit A
Chatsworth, CA 91311

12

Tel: (866)625-2529
Fax: (866)463-9285

13

14

*Attorneys for Defendants Thimes Solutions Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**Exhibits to Plaintiff's Evidentiary Objections to
Declaration of William Fikhman, ECF 101-2**

Exhibit 1: Deposition of William Fikhman in Solu-Med, Inc. v. Youngblood Skin Care Products, Inc., Case No. 19-cv-60487 (S.D. FL) (relevant potions) ............................. X-2

Exhibit 2: Verbiage that may have been used when Amazzia submitted a complaint to Amazon ....................................................................................................... X-8

Exhibit 3: Declaration of William Fikhman filed March 30, 2020 in Thimes Solutions, Inc. v. TP-Link USA Corporation, et al, Case 2:19-cv-10374-PAE, ECF 101-23 ...... X-10

# EXHIBIT 1

Deposition of William Fikhman in *Solu-Med, Inc. v. Youngblood Skin Care Products, Inc.,* Case No. 19-cv-60487 (S.D. FL)
(relevant potions)

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                         December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                                        1—4

---

**Page 1**

```
 1            UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF FLORIDA
 3
 4   SOLU-MED, INC.,                 )
                                     )
 5              Plaintiff,   )Case No.
                             )0:10-cv-60487
 6        vs.                )
                             )
 7   YOUNGBLOOD SKIN CARE PRODUCTS  )
     LLC,                     )
 8                           )
              Defendants.    )
 9   _____)
10
11          * * * CONFIDENTIAL * * *
12
13       VIDEOTAPED 30(b)(6) DEPOSITION OF
14    THIRD-PARTY, AMAZZIA, BY AND THROUGH
15         PERSON MOST KNOWLEDGEABLE
16            WILLIAM FIKHMAN
17
18          DECEMBER 10, 2019
19            10:18 A.M.
20
21        16501 Ventura Boulevard
22          Encino, California
23
24
25       Susan Pobor, CSR No. 5132
```

**Page 2**

```
 1         APPEARANCES OF COUNSEL
 2
 3   ON BEHALF OF PLAINTIFF, SOLU-MED, INC.:
 4     GOODMAN & SAPERSTEIN
       BY:  STANLEY R. GOODMAN, ESQ.
 5     666 OLD COUNTRY ROAD
       SUITE 200
 6     GARDEN CITY, NEW YORK  11530
       (516) 227-2100
 7     GSESQ@AOL.COM
            -- AND --
 8     BLACK LAW,
 9     BY:  KELSEY K. BLACK, EQ.
            (Via telephone)
10     1401 East Broward Boulevard
11     Suite 204
       Fort Lauderdale, Florida  33301
12     (954) 320-6220
       Kelsey@kkbpa.com
13
14   ON BEHALF OF DEFENDANT, YOUNGBLOOD SKIN CARE
     PRODUCTS LLC:
15
       COLE, SCOTT & KISSANE, P.A.
16     BY:  JONATHAN VINE, ESQ.
       222 Lakeview Avenue
17     Suite 120
       West Palm Beach, Florida  33401
18     (561) 383-9200
       Jonathan.Vine@csklegal.com
19
20   ON BEHALF OF THIRD-PARTY, Amazzia:
21     BURKHALTER KESSLER CLEMENT & GEORGE LLP
       BY:  ANDREW M. CUMMINGS, ESQ.
22     2020 Main Street
       Suite 600
23     Irvine, California  92614
       (949) 975-7500
24     Acummings@bkcglaw.com
25
```

**Page 3**

```
 1       APPEARANCES (CONTINUED):
 2
 3   VIDEOGRAPHER:  DANIEL ROCCO
 4
 5   ALSO PRESENT:  JASON TOTH
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1            I N D E X
 2
 3   WITNESS        EXAMINATION      PAGE
 4   WILLIAM FIKHMAN   BY MR. VINE      7
 5                     BY MR. GOODMAN   108
 6                     BY MR. VINE      164
 7
 8
 9         E X H I B I T S
10   EXHIBITS       DESCRIPTION      PAGE
11   Exhibit 1   Notice of Deposition,   10
               attaching a document
12             entitled "Scheduled 'A'
               Areas of Inquiry
13
     Exhibit 2   Document entitled,   26
14             "Youngblood Skin Care
               Products, LLC
15             Distributor Agreement
16   Exhibit 3   Amazon Management Agreement   29
               between Youngblood and
17             Amazzia
18   Exhibit 4   Condition Guidelines from   42
               Amazon
19
     Exhibit 5   Document entitled,   45
20             "Cosmetics & Skin/Hair
               Care"
21
     Exhibit 6   Document entitled, Amazon   50
22             Product Authenticity and
               Quality
23
     Exhibit 7   Document entitled, "Amazon   68
24             Anti-Counterfeiting Policy"
25
```

**ESQUIRE**
DEPOSITION SOLUTIONS

**EXHIBIT 3**

*800.211.DEPO (3376)*
*EsquireSolutions.com*

Exhibit 1 to Evidentiary Objections to the Declaration of William Fikhman, p. 1

PMK WILLIAM FIKHMAN  30(b)(6), Confidential
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE

December 10, 2019

9–12

Page 9

1    Q.   Okay.
2        And, lastly, any time you need a break,
3  feel free to let your counsel know, and we can take
4  a break.
5        Okay?
6    A.   Okay.
7    Q.   Okay.  Great.
8        Can you give me your current address?
9    A.   Business or --
10    Q.   Business is fine.
11    A.   7040 Darby Avenue, Reseda, California,
12  91335.
13    Q.   Where -- Where are you employed?
14    A.   Auction Brothers, Inc. doing business as
15  Amazzia.
16    Q.   Okay.
17        And are you one of the owners of the
18  company?
19    A.   I am.
20    Q.   Okay.
21        How many owners are there at the company?
22    A.   Three.
23    Q.   And who are the owners?
24    A.   Mike Fikhman, George Fikhman and
25  William Fikhman.

Page 10

1        (Whereupon Exhibit 1 was marked
2        for identification)
3  BY MR. VINE:
4    Q.   Okay.  We've marked as Exhibit 1 -- it's a
5  Notice of Deposition with an Exhibit A with areas
6  that we seek to depose you on.
7        Can you take a look at it and tell me if
8  you've seen this before?
9    A.   Yes.
10    Q.   Okay.  If you could stay on the third page.
11        The third page is an exhibit that lists
12  areas of a potential inquiry.
13        Correct?
14    A.   Yes.
15    Q.   Okay.
16        Do you -- Are you the designee from Amazzia
17  to answer questions regarding those listed on -- in
18  Exhibit 1?
19    A.   Yes.
20    Q.   Okay.
21        Can you just give me a brief description of
22  your educational background?
23    A.   I have a bachelors in accounting and
24  business honors --
25    Q.   Okay.

Page 11

1    A.   -- from Cal State Northridge.  Cal State
2  Northridge.
3    Q.   Okay.
4        And how long have you been working at
5  Amazzia?
6    A.   The corporation is 15 years old.  So the
7  entire 15 years.
8    Q.   Okay.
9    A.   It has not always been Amazzia.
10    Q.   Okay.
11        So why -- why don't we start --
12        How -- When was -- When did Amazzia become
13  first incorporated or began?
14    A.   Amazzia became a dba of Auction Brothers
15  maybe two years ago.
16    Q.   Okay.
17        Prior to that, it was some -- it was
18  Auction Brothers?
19    A.   It was just Auction Brothers.
20    Q.   What -- What was the nature of the business
21  for Auction Brothers?
22    A.   It was Amazon reselling.
23    Q.   Amazon.
24        And -- And why --
25        About two years ago, you said, 2017?

Page 12

1        Is that correct?
2    A.   (No audible response).
3    Q.   You have to respond verbally.
4    A.   Yes.
5    Q.   Okay.
6        About two years ago?
7    A.   Yes.
8    Q.   Okay.
9        And why did it change its name to "Amazzia"
10  or use a dba?
11    A.   We created -- We pivoted the business
12  model towards more of the Amazon brand protection
13  and management model.
14        Prior to that, it was just purely
15  reselling products on Amazon without any exclusive
16  relationships with brands.
17    Q.   Okay.
18        When did you begin --
19        Strike that.
20        Would you agree with me that you handled
21  brand protection prior to converting into the name
22  of "Amazzia"?
23    A.   Yes.
24    Q.   Okay.
25        When did Auction Brothers or the

**ESQUIRE**
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Exhibit 1 to Evidentiary Objections to the Declaration of William Fikhman, p. 2

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                                    December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                                        53—56

Page 53

1  allowed by another policy, because you can't sell
2  cosmetic products as used.
3  BY MR. VINE:
4      Q.  So all --
5          And that's a great segue.
6          All these policies that Amazon has, they
7  all kind of work hand-in-hand together.
8          Correct?
9      A.  Yes.
10     Q.  And when you provide your brand protection
11  services, do you rely on these guidelines when you
12  provide advice to your clients?
13     A.  Absolutely.
14         Everything we do is based on these
15  guidelines that Amazon sets forward.
16     Q.  And you take your job very seriously.
17         Correct?
18     A.  Yes.
19     Q.  And you provide the protection to your
20  clients in a diligent way.
21         Correct?
22     MR. GOODMAN:  Objection.
23     THE WITNESS:  Correct.
24  BY MR. VINE:
25     Q.  Okay.

Page 54

1          I mean, you don't just report people for
2  the fun of reporting people to --
3      A.  Absolutely not.
4          All of our reporting processes are
5  actually very methodical and organized and
6  strategic.
7      Q.  Okay.
8          So can you talk about how they're
9  methodical and strategic for -- for the ladies and
10  gentlemen of the jury?
11     A.  Sure.
12         So -- We -- We have a directive from the
13  brand of, in this case, removing any sellers that
14  are not authorized.
15         We have a team that works daily, 24/7/365.
16         Half of our team is here in L.A., and half
17  of out team is overseas in the Philippines.  So we
18  literally have 24 coverage -- 24/7 monitoring and
19  coverage of the listings.
20         And so we are looking at pages at all
21  times of the day and taking snapshots and seeing if
22  somebody is selling and breaking these rules.  Then
23  we're moving forward to proving that to Amazon, and
24  removing them from the marketplace.
25         And if they --

Page 55

1          That's it.
2      Q.  Okay.
3          So if you look back at Exhibit 6, which is
4  the Amazon guidelines regarding product
5  authenticity and quality --
6          Why don't you read out loud for the ladies
7  and gentlemen of the jury the first sentence,
8  what's important for Amazon.
9      A.  "Customers trust that they can always buy
10  with confidence on Amazon.  As a seller it's
11  important to understand Amazon's guidelines on
12  product quality and authenticity".
13     Q.  Okay.
14         So it's important based --
15         Would you agree with me that it was
16  important for sellers such as Solu-Med to comply
17  with the Amazon product authenticity and quality
18  guidelines?
19     A.  Yes.
20     Q.  Okay.
21         And, in fact, Amazon requires that.
22         Correct?
23     A.  Yes.
24     Q.  Does this guideline indicate whether Amazon
25  enforces sellers who violate their policies?

Page 56

1      A.  It does say --
2          In the "Enforcement" section at the
3  bottom, it does say that if you violate these
4  policies, Amazon may:  Cancel your listings; limit,
5  suspend, or block your ability to sell [sic]
6  products; or suspend or block your entire [sic]
7  ability to sell on Amazon, which is what happened
8  in Solu-Med's case here.
9      Q.  Okay.
10         So if a company such as Solu-Med violated
11  Amazon's policies, Amazon reserved the right to do
12  any of those three things?
13     A.  Correct.
14     Q.  Okay.
15         And, in fact, it also indicates on the next
16  page, two other additional items.
17         Is that correct?
18     A.  Yes.
19         It can remove or dispose of your FBA
20  inventory, or withhold your payments.
21     Q.  What's FBA inventory?
22     A.  "FBA" stands for fulfilled by Amazon, and
23  it means that a seller such as Solu-Med would ship
24  their inventory into Amazon's fulfillment centers,
25  and Amazon holds the inventory in their custody and



Exhibit 1 to Evidentiary Objections to the Declaration of William Fikhman, p. 3

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                              85—88

Page 85

1       You're all set?
2    A.  Yes.  I just didn't want confusion around
3  is Solu-Med a seller.
4       We had it as Life and Health Source, and
5  that's --
6    Q.  Is Life and Health Source a seller?
7    A.  Yes.
8    Q.  And, obviously, the owner of Life and
9  Health Source, that would go -- the Seller Policy
10  and Code of Conduct would apply.
11      Correct?
12   A.  Yes.
13   Q.  Okay.
14      So the seller would be required to comply
15  with the Code of Conduct issued by Amazon?
16   A.  Absolutely.
17   Q.  And one of the items that Amazon has in the
18  first bullet point talks about providing accurate
19  information to its customers?
20   A.  Yes.
21   Q.  Would selling a product as new without a
22  warranty and a guarantee be inaccurate
23  information --
24   A.  No.
25   Q.  -- to its customers?

Page 86

1    A.  That would be a -- That would be
2  inaccurate.
3    Q.  Okay.
4       (Whereupon Exhibit 9 was marked
5       for identification.)
6  BY MR. VINE:
7    Q.  Marked as Exhibit 9 is a complaint that was
8  submitted to Amazon on behalf of Youngblood.
9       After you've had an opportunity to review
10  this, let me know when you're done.
11   A.  I'm done.
12   Q.  Okay.
13      This is a complaint --
14      What is this?
15      Sorry.
16   A.  This looks like verbiage that may have
17  been used when we submit a complaint to Amazon.
18   Q.  All right.
19      I understand when you submit it, it's on a
20  website platform?
21   A.  Correct.
22   Q.  Okay.
23      And you input information within specific
24  categories?
25   A.  Correct.  We would insert this message

Page 87

1  into the box --
2    Q.  Okay.
3    A.  -- on a -- on the platform.
4    Q.  So it says:  "We have researched
5  Youngblood's listings and found the following ASINs
6  are in violation of our trademark..."
7       Do you see that?
8    A.  Yes.
9    Q.  Okay.
10      And that's Youngblood's trademark?
11   A.  I don't know for sure, but I'm assuming.
12   Q.  Okay.
13      This is an item that was drafted by
14  Amazzia.
15      Correct?
16   A.  I don't know for sure.
17      I'm -- I'm not deny -- disputing that, but
18  I -- I would need a -- if we want to know if that
19  trademarks --
20   Q.  I'm not asking that.
21   A.  Okay.
22   Q.  I changed --
23      Youngblood hired Amazzia for brand
24  protection.
25      Correct?

Page 88

1    A.  Yes.
2    Q.  Amazzia is the one who filed the complaint
3  about Solu-Med or Life and Health Source to Amazon.
4       Correct?
5    A.  Yes.
6    Q.  Okay.
7       And so if this is the complaint that Amazon
8  relied on, this would be the document that was
9  drafted by Amazzia.
10      Correct?
11   A.  Yes.
12   Q.  Okay.
13      And if you look, it talks about
14  authenticity.
15      Do you see that?
16   A.  Yes.
17   Q.  And the request was to remove the sellers
18  from selling just this product.
19      Correct?
20   A.  Correct.
21   Q.  Okay.
22      You weren't asking that the seller's store
23  be shut down.
24      Correct?
25   A.  Correct.



Exhibit 1 to Evidentiary Objections to the Declaration of William Fikhman, p. 4

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                    December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                              169–170

Page 169

```
 1              DEPOSITION ERRATA SHEET
 2
 3   Page No.____Line No.____Change to: _____
 4   _____
 5   Reason for change: _____
 6   Page No.____Line No.____Change to: _____
 7   _____
 8   Reason for change: _____
 9   Page No.____Line No.____Change to: _____
10   _____
11   Reason for change: _____
12   Page No.____Line No.____Change to: _____
13   _____
14   Reason for change: _____
15   Page No.____Line No.____Change to: _____
16   _____
17   Reason for change: _____
18   Page No.____Line No.____Change to: _____
19   _____
20   Reason for change: _____
21   Page No.____Line No.____Change to: _____
22   _____
23   Reason for change: _____
24   SIGNATURE:_____DATE:_____
25        [WILLIAM FIKHMAN] [JOB NO. J4663289]
```

Page 170

```
 1   STATE OF CALIFORNIA  )
                          )   ss.
 2   COUNTY OF LOS ANGELES )
 3       I, SUSAN POBOR, Certified Shorthand Reporter
 4   No. 5132 for the State of California, do hereby
 5   certify:
 6       That prior to being examined, the witness named
 7   in the foregoing deposition, was duly sworn to
 8   testify the truth, the whole truth, and nothing but
 9   the truth;
10       That said deposition was taken down by me in
11   shorthand at the time and place therein named and
12   thereafter reduced by me to typewritten form and
13   that the same is a true, correct, and complete
14   transcript of said proceedings.
15       Before completion of the deposition, review of
16   the transcript [ ] was [ ] was not requested.  If
17   requested, any changes made by the deponent (and
18   provided to the reporter) during the period allowed
19   are appended hereto.
20       I further certify that I am not interested in
21   the outcome of the action.
22       Witness my hand this 15th day of December,
23   2019.
24
25           Susan Pobor, CSR No. 5132
```

ESQUIRE
DEPOSITION SOLUTIONS

Exhibit 1 to Evidentiary Objections to the Declaration of William Fikhman, p. 5

# EXHIBIT 2

Verbiage that may have been used when Amazzia submitted a complaint to Amazon

**Name and Contact Info of entity that submitted take down notice**:

Complaint ID 5518323151 submitted by RO contact: brandprotection@ybskin.com;
Brand Name Youngblood.

"Hello,

We have researched Youngblood's listings and found the following ASINs are in
violation of our trademark, 3812755.

• Counterfeit products are being sold on the following listings

• Please immediate action and remove these sellers currently listing counterfeit product.

According to Amazon's robust and aggressive anti-counterfeit policy, sellers must list
items that match the detail pages exactly. The indicated sellers are not selling the authentic
products as shown in the ASIN(s) referenced.

We know that Amazon takes product authenticity very seriously and Amazon requires
sellers to list items that exactly match the detail pages. Therefore, we respectfully request that
Amazon immediately and proactively remove these sellers from the mentioned ASIN(s) and
prohibit these sellers from listing against these ASIN(s) in the future.

Thank You,

Youngblood

Pl f5 EXHIBIT 5 FOR ID
WENDY J. WRIGHT, CSR
DATE 12-9-19
WITNESS Toth
PAGE 1 OF 1

CONFIDENTIAL AMZN_00003

X-9

# EXHIBIT 3

Declaration of William Fikhman filed March 30, 2020 in *Thimes Solutions, Inc. v. TP-Link USA Corporation, et al*, Case 2:19-cv-10374-PA-E, ECF 101-23



BURKHALTER KESSLER CLEMENT & GEORGE LLP
Alton G. Burkhalter, Esq., SBN 119594
E-mail: aburkhalter@bkcglaw.com
Joshua A. Waldman, Esq., SBN 222859
E-mail: jwaldman@bkcglaw.com
2020 Main Street, Suite 600
Irvine, California 92614
Telephone: (949) 975-7500
Facsimile: (949) 975-7501

Attorneys for Defendant Auction Brothers, Inc. dba Amazzia

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC. | CASE NO. 2:19-cv-10374-PA-Ex |
| Plaintiff, | Assigned For All Purposes To: Honorable Percy Anderson Courtroom: 9A |
| vs. | |
| TP-LINK USA CORPORATION, MIKHAIL FIKHMAN DBA AMAZZIA, PREVAGEN, INC. | |
| Defendants. | **DECLARATION OF WILLIAM FIKHMAN IN SUPPORT OF DEFENDANT AUCTION BROTHERS, INC. dba AMAZZIA'S MOTION FOR SUMMARY JUDGMENT** |
| And | |
| AUCTION BROTHERS, INC. DBA AMAZZIA c/o MIKHAIL J. FINKHAM, Registered Agent 19528 Ventura Blvd. Tarzana, CA 91356-2917 | Fed. R. Civ. P. 56 Hearing Date:   TBD Courtroom:   9A Second Amended Complaint Filed: January 13, 2020 |

DECLARATION OF WILLIAM FIKHMAN

Exhibit 3 to Evidentiary Objections to the Declaration of William Fikhman, p. 1

### DECLARATION OF WILLIAM FIKHMAN

I, William Fikhman, declare as follows:

1.      I am the Chief Strategy Officer for Defendant Auction Brothers, Inc. dba Amazzia.  I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, I could and would testify competently thereto.

2.      I have been employed by Auction Brothers, Inc. for approximately the past fifteen years, and I have worked in my current role as Chief Strategy Officer for approximately the past year.  My duties and responsibilities as Chief Strategy Officer generally include oversight of sales, management and Amazon strategy.  Prior to working in the role of Chief Strategy Officer, I worked as Vice President for approximately 14 years.  My duties and responsibilities as Vice President were generally the same as my duties and responsibilities as Chief Strategy Officer.

3.      Auction Brothers, Inc. dba Amazzia ("Amazzia") has been in the business of providing brand protection services for approximately four years. Amazzia's brand protection process generally consists of searching for its clients' products for sale on Amazon.com ("Amazon") in order to identify sellers who are not specifically authorized under a distribution agreement to purchase products directly from Amazzia's client(s) and thereafter sell such products (hereafter an "Unauthorized Reseller").  Once Amazzia identifies an Unauthorized Reseller that Amazzia knows is selling products to consumers that lack the same bundle of rights that a consumer would receive from an authorized seller, Amazzia generally notifies Amazon of the counterfeit products in the manner set forth below.

4.      One of Amazzia's clients was TP-Link USA Corporation ("TP-Link").  Amazzia has only provided brand protection services for TP-Link, and at no time has Amazzia (including any other dba or "alter ego" of Auction Brothers, Inc.) ever distributed TP-Link's products, nor does Amazzia have any intent to do so, nor

---

2

**DECLARATION OF WILLIAM FIKHMAN**

Exhibit 3 to Evidentiary Objections to the Declaration of William Fikhman, p. 2

1   does Amazzia (including any other dba or "alter ego") currently have any plans to

2   distribute any networking products.  As part of its brand protection services, Amazzia

3   discovered that a company identified on Amazon's website only as "Universal Goods

4   and Sales" was selling TP-Link's 360 TP-Link AC5400 Routers (the "Routers")

5   through Amazon. Universal Goods and Sales represented that the Routers it offered for

6   sale on Amazon were "New" products, despite the fact that Amazzia understood that

7   Universal Goods and Sales was not an authorized reseller of TP-Link's Router, and as

8   such, Amazzia understood that Universal Goods and Sales could not provide to

9   purchasers of the Routers the same bundle of rights (such as warranty and service) that

10   an authorized reseller could.  In its Amazon posting, Universal Goods and Sales did

11   not indicate that it was not an authorized distributor of TP-Link products.

12        5.    Until Thimes Solutions, Inc. initiated this litigation, Amazzia only

13   knew of this seller on Amazon as "Universal Goods and Sales" because that was the

14   name that this seller used to identify itself on Amazon.   Amazzia was unaware of the

15   true corporate name and location of Universal Goods and Sales until Amazzia came to

16   learn through this litigation that Universal Goods and Sales is apparently a dba of

17   Thimes Solutions, Inc.

18        6.    For several years, Amazon has maintained a "Report Infringement"

19   online form that enables Amazon sellers or their agents to report complaints to

20   Amazon regarding sellers who are violating intellectual property rights.  The form

21   allows the complaining party to first identify whether the complaint relates to

22   copyright concerns, patent concerns or trademark concerns.  If a complaining party

23   identifies trademark concerns, then the form provides the complaining party with three

24   options to choose from, which are: (1) "a product detail page is unlawfully using my

25   trademark (e.g., in product title, product images, product description), (2) a product or

26   packaging has my trademark in it, or (3) a product is counterfeit (the product or

27   packaging has an unlawful reproduction of a registered trademark."   A complaining

28

3
**DECLARATION OF WILLIAM FIKHMAN**

Exhibit 3 to Evidentiary Objections to the Declaration of William Fikhman, p. 3

1   party must choose from one of the three options, as Amazon does not provide any
2   alternative options.  In addition to identifying one of the three available options, the
3   form further allows the complaining party limited space to enter   additional
4   information regarding the more specific basis for the complaint.  Amazon generally
5   sends Amazzia an email through Amazon's internal e-mail communication system
6   with sellers, confirming that a complaint had been received, but Amazon does not send
7   a copy of the submission itself and Amazzia does not otherwise maintain any record of
8   specific complaints made on Amazon's online system.

9        7.   Based on the limited information available to Amazzia from
10   Amazon's online complaint system, and consistent with Amazzia's regular practice,
11   Amazzia does not have, nor has it ever had, copies of the specific complaints it made
12   to Amazon regarding Universal Goods and Sales.  Moreover, as described above,
13   Amazon did not provide Amazzia copies of the complaints.

14        8.   Although Amazzia does not have a copy of the complaint made to
15   Amazon regarding Universal Goods and Sales, based on its general business pattern
16   and practice in connection with brand protection services for reporting counterfeit sales
17   to Amazon, Amazzia would have used the Amazon Report Infringement Form to
18   inform Amazon that Universal Goods and Sales was selling "counterfeit" Routers by
19   choosing the option (3) referenced above (i.e., "a product is counterfeit (the product or
20   packaging has an unlawful reproduction of a registered trademark.") and Amazzia
21   would also have provided additional comments to Amazon to the effect that: "The
22   seller indicated herein is selling products that do not include the same bundle of rights
23   that authentic products include.  Desired Action: Immediate removal of the seller's
24   offer of this counterfeit product."

25        9.   Amazzia selects the "counterfeit" option on Amazon's Report
26   Infringement Form as its standard business practice because Amazzia understands that
27   Amazon's "Condition Guidelines" specify that a product described as "New" must,
28

4

**DECLARATION OF WILLIAM FIKHMAN**

Exhibit 3 to Evidentiary Objections to the Declaration of William Fikhman, p. 4

1  among other things, provide that the "Original manufacturer's warranty, if any, still
2  applies, with warranty details included in the listing comments." Because Amazzia
3  understands that the products that an Unauthorized Reseller like Universal Goods and
4  Sales sells lacks the original manufacturer's warranty, Amazzia deems those products
5  as counterfeit per Amazon's policies. Attached hereto as Exhibit "A" is a true and
6  correct copy of Amazon's Condition Guidelines that I understand were in effect during
7  the relevant time.

8       10.   Amazzia has no reason to believe that its communications with
9  Amazon regarding Universal Goods and Sales' sale of the unauthorized Routers were
10 inconsistent with its above described standard business pattern and practice.

11      11.   Once Amazzia submits a complaint to Amazon through its Report
12 Infringement online form that a seller of goods on Amazon is an Unauthorized Reseller
13 as described above, Amazzia has no further role in Amazon's determination regarding
14 how it will respond to the complaint (if it responds at all) and whether Amazon
15 ultimately elects to remove the Unauthorized Reseller's product from Amazon's site.
16 Consistent with the above, Amazzia had no further role in any decisions Amazon may
17 have made regarding Universal Goods and Sales' ability to sell Routers on Amazon
18 after Amazzia notified Amazon that Universal Goods and Sales sold counterfeits goods
19 as described above.

20
21      I declare, under penalty of perjury of the laws of the United States and the
22 State of California, that the foregoing is true and correct. Executed on March ___27___,
23 2020 at ___Reseda___, California.

24
25                                    WILLIAM FIKHMAN
26
27
28

                                    5
                    **DECLARATION OF WILLIAM FIKHMAN**

Exhibit 3 to Evidentiary Objections to the Declaration of William Fikhman, p. 5