UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Defendants previously filed a Motion to Dismiss and/or Strike Second Amended Complaint. (Dkt. 86.)  Defendants argued that Plaintiff's claims are entirely barred under the Noerr-Perrington doctrine, but the Court could not determine whether the doctrine applies based on the existing facts in the record.  The Court converted Defendants' 12(b)(6) motion into a Rule 56 motion, solely on the issue of whether the Noerr-Pennington doctrine applies here.  (Dkt. 99.)  The parties submitted supplemental briefing per the Court's order.  (Dkts. 100 and 101.)  The Court now has before it (1) a converted Rule 56 motion on the Noerr-Pennington issue, and (2) the remaining issues presented in the Rule 12(b)(6) motion.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

**I. Background**

Plaintiff Thimes Solutions Inc. ("Plaintiff") buys products from down-stream distributors and sells them "at a cheaper price than other sellers are selling it for."[1]  Plaintiff became a third-party seller on Amazon's website in 2016 and signed Amazon's Business Solutions Agreement that allowed Amazon to terminate Plaintiff as a seller "for any reason or for no reason at all."[2]  Defendant TP Link USA Corporation ("TP Link") is a major provider of Wi-Fi products.[3]  TP Link retained defendant Auction Brothers, Inc. d/b/a Amazzia ("Amazzia") to monitor specific TP Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP Link products outside TP Link's authorized distribution channels.[4]

On January 8, 2018, Plaintiff purchased 360 TP Link AC5400 Routers from a supplier.[5]  Plaintiff

---

[1] Dkt. 78 (Second Amended Complaint ("SAC")) ¶3.

[2] Id. at ¶6.

[3] Id. at ¶¶13.

[4] Id. at ¶20.

[5] Id. at ¶27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

was not authorized by TP Link under any agreement to purchase and resell TP Link products.[6/] Amazzia, on TP Link's behalf, submitted written complaints to Amazon that Plaintiff had infringed on TP Link's intellectual property 27 times.[7/] Plaintiff was suspended from Amazon Marketplace in May 2018, but Plaintiff appealed and was reinstated.[8/] Amazon permanently expelled Plaintiff from the Marketplace in August 2018 after Defendant sent additional complaints in May and June 2018.[9/]

Plaintiff filed this action on May 29, 2019. Plaintiff's claims for relief are (1) interference with existing and prospective business relationships, (2) trade libel, (3) per se violation of the antitrust laws, and (4) declaratory judgment of non-infringement. Defendants filed a Motion to Dismiss and/or Strike Plaintiff's Second Amended Complaint. The Court converted Defendants' motion into a motion for summary judgment, solely on the issue of whether the Noerr-Pennington doctrine applies to this action. The parties filed supplemental briefing. The Court now resolves both the converted motion for summary judgment and the remaining issues raised in Defendants' original 12(b)(6) motion.

**II.     Legal Standard**

**A.     Motion for Summary Judgment on Noerr-Pennington Issue**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325. The facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252).

---

[6/]     Id. at ¶37.

[7/]     Id. at ¶18.

[8/]     Id. at ¶¶19, 46.

[9/]     Id. at ¶¶46, 47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

### B.  California anti-SLAPP Statute

"The anti-SLAPP [Strategic Lawsuits against Public Participation] statute was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). "Under the statute, a civil defendant may move to strike a cause of action based on an 'act in furtherance of [the] right to petition or free speech.'" Id. at 839-40 (quoting Cal. Civ. P. Code § 425.16(b)). This applies to state law claims brought in federal court, but not to federal question claims brought in federal court "because such application would frustrate substantive federal rights." Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180 (N.D. Cal. 2006) (collecting cases).

The Ninth Circuit has held that "Anti-SLAPP motions are hybrids of motions to dismiss and motions for summary judgment." Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, 890 F.3d 828, 836 (9th Cir.), cert. denied Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am., 139 S. Ct. 1446 (2019). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." Id. at 834. "And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard [applies]." Id. When the Court analyzes the factual sufficiency of a claim, the Court does not make credibility determinations or compare the weight of the evidence. Flatley v. Mauro, 39 Cal. 4th 299, 326 (2006). Rather, the Court accepts as true the admissible evidence favorable to the plaintiff. Id.

### C.  Motion to Dismiss Standard for Plaintiff's Antitrust Claim

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e); see also Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted). In Twombly, however, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561 (internal quotation omitted).

Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### III. Analysis

The Court finds that Plaintiff has raised a triable issue of fact on whether the sham exception to the Noerr-Pennington doctrine applies. The converted motion for summary judgment is therefore denied. The Court then proceeds to evaluate the remaining issues raised in the original 12(b)(6) motion. First, the Court finds that Plaintiff's state law claims are stricken under California's anti-SLAPP statute. Second, Plaintiff has failed to state a viable claim for relief based on a per se violation of §1 of the Sherman Antitrust Act. This claim is dismissed with leave to amend.

### A. Converted Motion for Summary Judgment on Noerr-Pennington Issue

"The essence of the Noerr–Pennington doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." Theme Promotions, Inc. v. News America Marketing FSI, 546 F.3d 991, 1006 (9th Cir. 2008) (citing Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir.2006). "Noerr-Pennington is a label for a form of First Amendment protection; to say that one does not have Noerr-Pennington immunity is to conclude that one's petitioning activity is unprotected by the First Amendment." White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000). Courts have concluded that "Noerr immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." Gen-Probe, Inc. v. Amoco Corp., 926, 956 (S.D. Cal. Apr. 24, 1996).

Under the Noerr-Pennginton doctrine, "pre-litigation material" such as cease-and-desist letters and threats of litigation are "immune from suit unless the threatened lawsuit was a 'sham.'" Rock River Commc'ns, Inc. v. Universal Music Grp., Inc., 745 F.3d 343, 351 (9th Cir. 2014). Pre-suit infringement notices may also be protected. See Hard2Find Accessories, Inc. v. Amazon.com, Inc., 691 F. App'x 406, 407 (9th Cir. 2017) ("The infringement notice that Apple sent to Amazon is sufficiently related to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

petitioning conduct protected by the Petitions Clause."); see also EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1082-83 (C.D. Cal. 2010) (finding that "communications with licensees and its website announcements, which were intended to enforce and protect its intellectual property, are sufficiently related to petitioning activity to trigger the Noerr–Pennington doctrine."). Importantly, "the rationale underlying the extension of Noerr–Pennington immunity to cover presuit demand letters does not require that a lawsuit actually be filed." Og Intern., Ltd. v. Ubisoft Ent., 2012 WL 4809174, at *3 (N.D. Cal. Oct. 9, 2012).

The Court finds that Defendants' complaints to Amazon constitute pre-litigation material. Defendants filed 27 complaints with Amazon to inform it that Plaintiff was selling "counterfeit" TP Link products.[10] The ultimate goal was a take-down of any counterfeit products from Amazon's website.[11] The complaints were akin to an infringement notice or cease-and-desist letter, and therefore constitute pre-litigation material. If Amazon had not suspended Plaintiff's sales activity, Defendants' next logical step would have been to pursue litigation to halt Plaintiff's conduct.

The Court next evaluates whether the sham exception bars application of Noerr-Pennington. The sham exception "encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." City of Columbia v. Omni Outdoor Advertising, 499 U.S. 365, 380 (1991). Plaintiff must show the petitioning conduct was "objectively baseless" such that "no reasonable litigant could reasonably expect success on the merits." Theme, 546 F.3d at 1007. Plaintiff argues Defendants' complaints wrongly characterized Plaintiff's products as "counterfeit." Defendants contend that they had a good faith basis to complain to Amazon. Plaintiff is an unauthorized reseller of TP Link products, and so Plaintiff cannot convey the original manufacturer's warranty rights to customers.[12] TP Link "limits its warranty policy to products sold by authorized distributors or resellers so that it can monitor and insure the quality of new TP Link branded products sold under the TP Link brand."[13]

Neither party has introduced copies of the actual complaints into evidence.[14] Instead, Defendants direct the Court to a declaration from William Fikhman, Chief Strategy Officer for Amazzia, about the "standard business practice" for Amazzia's complaint process.[15] Amazon gives three options for

---

[10] Eisenberg Decl. ¶4; Ex. 1.

[11] Fikhman Decl. ¶9.

[12] SAC at ¶37; Shu Decl. ¶¶3, 6; Schlachet Decl., Ex. 5, 8.

[13] Shu Decl. ¶4; see also Schlachet Decl., Ex. 9 (email from TP Link rejecting customer's warranty claim because purchase was from unauthorized reseller).

[14] Plaintiff did not receive an actual copy of the complaints. (Eisenberg Decl. ¶6.) Amazzia declares that it does not have copies of the complaint. (Fikhman Decl. ¶7.)

[15] Fikhman Decl. at ¶9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

describing the nature of a complaint: (1) a product detail page is unlawfully using my trademark (e.g., in product title, product images, product description), (2) a product or packaging has my trademark in it, or (3) a product is counterfeit.[16] Amazzia believes that option 3 would have been "most applicable."[17] In addition, as part of the complaint, Amazzia would have "provided additional comments to Amazon to the effect that: The seller indicated herein is selling products that do not include the same bundle of rights that authentic products include. Desired Action: Immediate removal of the seller's offer of this counterfeit product."[18] Amazzia declares it "has no reason to believe that its communications with Amazon regarding [Plaintiff's] sale of the unauthorized Routers were inconsistent with [this] standard business pattern and practice."[19]

Plaintiff has raised some doubts as to whether this standard business practice was actually used.[20] Plaintiff has directed the Court to Fikhman's deposition in another lawsuit, Solu-Med, Inc. v. Youngblood Skin Care Products, Inc., where he testified about the "[v]erbiage that may have been used when Amazzia submitted a complaint to Amazon."[21] The sample complaint from Youngblood is notably different than the complaint language presented here. For example, the sample complaint from Youngblood simply states that "[c]ounterfeit products are being sold on the following listings," rather than stating that the products do not include the same bundle of rights as the authentic products.[22] In addition, the sample complaint in Youngblood provides no explanation for why the seller's products are counterfeit. Based on these stark differences, Plaintiff believes that Amazzia created the "bundle of rights" language after the commencement of this litigation.[23]

For these reasons, Plaintiff has raised a triable issue of fact as to the actual language used in Defendants' complaints to Amazon. Because the parties have not submitted true copies of Defendants' complaints into the record, the Court can cannot perform the necessary analysis to determine whether

---

[16]   Id. at ¶6.

[17]   Mot. at 9; Fikhman Decl. ¶9.

[18]   Fikhman Decl. ¶8.

[19]   Id. at ¶10.

[20]   See Dkt. 102. Plaintiff asks the Court to strike Fikhman's declaration and receive into evidence Plaintiff's Exhibit 2, which is Amazzia's sample verbiage from Youngblood. (Id. at 7.) Because the Court denies the converted Rule 56 motion, the Court denies Plaintiff's evidentiary objections, (Dkt. 102), as moot.

[21]   Id. at 3 (citing Deposition of William Fikhman in Solu-Med, Inc. v. Youngblood Skin Care Products, Inc., Case No. 19-cv-60486 (S.D. FL)).

[22]   Id. at Ex. 2.

[23]   Id. at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

Defendants' complaints were objectively baseless.[24] For these reasons, the converted motion for summary judgment is denied. See Rock River, 745 F.3d at 353 (finding "sham" exception is a question of fact and summary judgment is not appropriate if the facts are in dispute).

### B.  Special Motion to Strike under California's anti-SLAPP Statute

Because the converted motion for summary judgment is denied, the Court proceeds to evaluate the merits of Defendants' remaining arguments from the original 12(b)(6) motion to dismiss briefing. In the Court's prior order, the Court inadvertently denied Defendants' Motion to Strike pursuant to Rule 12(f), when in fact Defendants had presented a special motion to strike pursuant to California's anti-SLAPP procedure. Because this issue was fully briefed in the original papers, the Court now addresses the issue of whether Plaintiff's state claims should be barred under the anti-SLAPP statute on the merits. The Court finds that Plaintiff's state law claims for (1) interference with existing and prospective business relations, and (2) trade libel should be stricken pursuant to California's anti-SLAPP statute.

#### 1.  Timeliness

Plaintiff argues that Defendants' anti-SLAPP motion should be barred as untimely.[25] The Court disagrees. The Ninth Circuit has held that California's anti-SLAPP 60-day timing provision does not apply in federal court. See Sarver v. Chartier, 813 F.3d 891, 900 (9th Cir. 2016) ("Although section 425.16(f) does not prohibit the filing of an anti-SLAPP motion after 60 days, it certainly restricts a party's ability to do so in a way Rule 56 would not. We therefore decline to apply the statute's 60-day time frame in federal court, and we refer instead to our own rules of procedure."). Moreover, Defendants could not have presented an anti-SLAPP motion under California law before the Second Amended Complaint was filed on January 13, 2020. The case was previously in the Southern District of New York, so any such motion would have been governed by New York's anti-SLAPP statute. See Cline v. Reetz-Laiolo, 329 F. Supp. 3d 1000, 1028 (N.D. Cal. 2018) ("California's anti-SLAPP generally protects prelitigation conduct, whereas New York's anti-SLAPP does not."). For these reasons, Plaintiff has failed to establish that Defendants' anti-SLAPP argument is untimely.

#### 2.  Protected Activity

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003). "First, a defendant

---

[24] The Court previously instructed the parties about the importance of receiving these complaints into evidence. (See Dkt. 99 at 4 (noting the Court "cannot not take judicial notice of the contents of Defendants' 27 complaints to Amazon because those documents were not attached to the Second Amended Complaint.").)

[25] Dkt. 87 at 24.

Case 2:19-cv-10374-PA-E   Document 103   Filed 06/08/20   Page 8 of 12   Page ID #:866

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'" Id. (citations omitted). "The burden is on the moving defendant to demonstrate that the actions at issue fall within the definition of furthering the defendant's right of petition or free speech regarding a public issue. The defendant's burden . . . is not an onerous one." Tensor Law P.C. v. Rubin, 2019 WL 3249595, at *4 (C.D. Cal. Apr. 10, 2019) (quotations and citations omitted)). "Communications preparatory to or in anticipation of litigation fall within the Anti-SLAPP statute protections of 'written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body.'" Sparrow LLC v. Lora, 2014 WL 12573525, at *1 (C.D. Cal. Dec. 4, 2014) (quoting Cal. Code Civ. P. § 425.16(e)(2)); Tensor, 2019 WL 3249595, at *6 ("the protections for litigation activity extend to pre-litigation conduct"). "A statement is made in connection with litigation . . . 'if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.'" GWS Techs., Inc. v. Furth, 2010 WL 11520562, at *2 (C.D. Cal. Mar. 25, 2010) (citing Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1266 (2008)). Importantly, Section 425.16 is "construed broadly, to protect the right of litigants to the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions." Id. (citing Neville, 160 Cal. App. 4th at 1263.

The Court finds that Defendants' complaints to Amazon constitute prelitigation communications that fall within California's anti-SLAPP statute protections. Two analogous district court decisions are instructive here. In Fitbit, Inc. v. Laguna 2, LLC, defendants were hired to destroy or recycle Fitbit products but instead allegedly resold the Fitbit products on Groupon's website. See 2018 WL 306724, at *1 (N.D. Cal. Jan. 5, 2018), reconsideration denied, 2018 WL 620121 (N.D. Cal. Jan. 30, 2018). Fitbit informed Groupon and U.S. Customs and Border Patrol that defendants were selling "stolen" or "counterfeit" Fitbit products. Id. Fitbit filed a lawsuit against defendants for trademark infringement (among other claims), and defendants brought counterclaims that included trade libel and intentional interference with prospective economic advantage. Id. at *2. The court held that "a prelitigation communication must simply be 'reasonably relevant' to the 'subject matter' of the lawsuit (pending or contemplated) to be considered protected activity." Id. at *5 (quoting Neville, 160 Cal. App. 4th at 1266). Because the "subject matter of the lawsuit being contemplated by Fitbit was Fitbit's scrap product improperly being sold in the marketplace (however it got there)," the court concluded that "Fitbit's prelitigation communication—even regarding 'stolen' goods—is reasonably relevant to that subject matter." Id. The court therefore concluded that Fitbit's communications were protected acts taken in furtherance of Fitbit's right to petition pursuant to Section 425.16(e)(2). Id. at *4-8.

Sparrow LLC v. Lora is also instructive. See 2014 WL 12573525. The plaintiff informed third-party retailers that they should not do business with defendant because defendant was selling goods that infringed upon plaintiff's copyright and trademarks. Id. at *1. Defendant then asserted counterclaims for defamation and inference with contract and prospective business advantage. Id. at *2. The Court concluded that plaintiff's communications were protected activity covered by California's anti-SLAPP statute. Id. at *4. Communications are covered by the anti-SLAPP statute when they attempt "to prevent further misuse of [plaintiff's] [proprietary] information, and thereby mitigate . . . potential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

damage," and are "'based or related to the allegations that formed the basis of [plaintiff's] claims.'" Id. at *3 (quoting Neville, 160 Cal. App. 4th at 1267-68). The Court also found that plaintiff's letters sent to third parties "unequivocally relate to the substantive issues in the litigation against Defendants, and are directed to persons having some interest in the litigation, as [the retailers] could well serve as witnesses to Defendants' alleged wrongdoing." Id. at 4 (quoting Neville, 160 Cal. App. 4th at 1266).

The same reasoning applies here. The essence of Plaintiff's claims is that Defendants wrongly complained to Amazon that Plaintiff was selling counterfeit TP Link products. Thus, the substance of Defendant's complaints—which state that Plaintiff was selling counterfeit goods—is unequivocally related to the substantive issues of this litigation. Moreover, Defendants directed their communications to Amazon, who is a party with an interest in this litigation because this case concerns activity that Amazon facilitates on its marketplace platform. See GWS Techs., Inc., 2010 WL 11520562, at *3 ("The recipients of the information need not be potential parties to the litigation; it is enough that they may be 'unwitting participants' in the alleged misconduct.") (quoting Neville, 160 Cal. App. 4th at 1267, 1270). For these reasons, Defendants' complaints to Amazon constitute prelitigation communications that are protected activity under the anti-SLAPP statute. Plaintiff's claims for trade libel and interference with business relations arise from Defendants' acts taken in furtherance of Defendants' right to petition.

### 3. Probability of Succeeding on Claims

"[T]he burden [now] shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." Vess, 317 F.3d at 1110 (quotations and citation omitted). "If 'the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim,' the motion to strike must be denied." Id. (quoting Cal Civ. Proc. Code § 425.16(b)(1)). "To do this, the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Metabolife Int'l, Inc., 264 F.3d at 840 (quotations and citation omitted). "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (emphasis in original).

Defendants have shown that Plaintiff's claims arise from acts within the coverage of Section 425.16, which shifts the burden to Plaintiff to demonstrate a probability of success on the challenged state law claims. The Court finds that Plaintiff is unable meet its burden in light of California's litigation privilege. The California litigation privilege "afford[s] litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Flatley, 39 Cal. 4th at 321. The litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990) (collecting cases). "[C]ommunications with some relation to judicial proceedings are absolutely immune from tort liability by the litigation privilege. It is not limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." Rusheen v. Cohen, 37 Cal. 4th 1048, 1057 (2006) (quotations and citations omitted) (emphasis added). The privilege is broadly applied and may cover a communication regardless of whether it amounts to a publication, and even when it is made between private parties. See Silberg, 50 Cal. 3d at 212 (internal citations omitted); Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal. App. 4th 777, 781-83 (1996).

Defendants argue the litigation privilege applies to their communications with Amazon.[26] For the reasons explained in the Court's first step of the anti-SLAPP analysis, Defendants' communications to Amazon are reasonably related to this litigation and therefore fall under California's litigation privilege. See Fitbit, 2018 WL 306724, at *9 (finding litigation privilege applies); Microsoft Corp. v. M. Media, 2018 WL 5094969, at *7 (C.D. Cal. Mar. 13, 2018) (noting the litigation privilege frequently encompasses communications found within the scope of Section 425.16) (collecting cases). The litigation privilege is intended to protect Defendants' communication because they constitute a report of suspected wrongdoing—i.e., selling of alleged counterfeit goods that could confuse consumers and infringe on TP Link's intellectual property—to a party that is capable of halting or remedying the conduct. See Kashian v. Harriman, 98 Cal. App. 4th 892, 926 (2002) ("policy underlying the [litigation] privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing.") (quotations omitted).

Plaintiff argues that Defendants' communications to Amazon were made in bad faith, but this does not change the Court's analysis.[27] California's litigation privilege is an "absolute" privilege; it is not subject to qualification based upon the subjective motives or alleged bad faith of a party making a challenged communication. Mansell v. Otto, 108 Cal. App. 4th 265, n.47 (2003) ("Numerous decisions before and after the court's Silberg decision recognize the litigation privilege presents a bar to actions, even when based on fraudulent representations, forgery, negligent or intentional omissions, and other types of tortious communications") (collecting cases). "[T]he presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable." Id. (collecting cases); see also Silberg, 50 Cal. 3d at 214 ("[It] is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions"). Therefore, Plaintiff cannot avoid the litigation privilege by alleging that Defendants made a knowingly false complaint to Amazon. Without more, Plaintiff has failed to demonstrate the necessary probability of success of its state law claims. The Court therefore strikes Plaintiff's claims for (1) interference with existing and prospective business relations

---

[26] Mot. at 3.

[27] "[A]ny claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the second step of the analysis when the plaintiff bears the burden to show a probability of prevailing." Doe v. Gangland Prods., Inc., 730 F.3d 946, 954 (9th Cir. 2013) (quotations omitted) (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

and (2) trade libel pursuant to California's anti-SLAPP statute.

### C. Failure to State a Claim for Per Se Violation of the Sherman Act

Section 1 of the Sherman Act prohibits "agreements that unreasonably restrain trade by restricting production, raising prices, or otherwise manipulating markets to the detriment of consumers." In re Musical Instruments & Equip. Antitrust Litig., 798 F.3d 1186, 1191 (9th Cir. 2015) (citing 15 U.S.C. § 1) (collecting cases). A plaintiff must show: (1) there was an agreement, conspiracy, or combination between two or more entities, (2) the agreement was an unreasonable restraint of trade, and (3) the restraint affected interstate commerce. See Aya Healthcare Servs. v. AMN Healthcare, Inc., 2018 U.S. Dist. LEXIS 102582, at *23 (S.D. Cal. June 19, 2018) (quoting Am. Ad Mgmt. Inc. v. GTE Corp., 92 F.3d 781, 788 (9th Cir. 1996)). "Per se liability is reserved for only those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" Kamakahi v. Am. Soc'y for Reprod. Med., 2013 U.S. Dist. LEXIS 61250, at *18 (N.D. Cal. Mar. 29, 2013) (quoting Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006)). A restraint will only be considered per se unreasonable if it "always or almost always tend[s] to restrict competition and decrease output" and "lack[s] . . . any redeeming virtue." Leegin Creative Leather Prods. v. PSKS, Inc., 551 U.S. 877, 886 (2007) (citations omitted). Classic examples include "agreements among competitors to fix prices, divide markets, and refuse to deal." In re Musical Instruments, 798 F.3d at 1191.

Importantly, § 1 reaches only agreements that are "between separate entities [and] does not reach conduct that is 'wholly unilateral.'" Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 768 (1984). "[S]eparate entities with a common economic interest and without divergent interests are incapable of conspiring for § 1 purposes in other contexts." Jack Russell Terrier Network v. Am. Kennel Club, Inc., 407 F.3d 1027, 1034 (9th Cir. 2005) (collecting cases). "The crucial question is whether the entities alleged to have conspired maintain an 'economic unity,' and whether the entities were either actual or potential competitors." Id.

Plaintiff claims Defendants committed a per se violation of the Sherman Antitrust Act and have engaged in a contract or conspiracy in restraint of trade.[28] Plaintiff believes Defendants had a shared purpose of "[e]limination of discounters and discounted products from access to the Marketplace by joint collaborative action."[29] However, the Second Amended Complaint illustrates that TP-Link and Amazzia were acting as a single entity to protect TP-Link's intellectual property rights. Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon."[30] Amazzia describes itself as

---

[28]  SAC ¶¶77, 83.

[29]  Id. at ¶84.

[30]  Id. at ¶25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | June 8, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

"your dedicated partner" that will "keep your brand safe from unauthorized agents."[31] Because Amazzia worked as TP Link's agent to perform services at TP Link's direction, it appears that they shared common economic interests and therefore were incapable of committing a §1 violation. Moreover, Amazzia is in the business of providing brand protection, whereas TP Link is in the business of manufacturing Wi-Fi products. Without more, Plaintiff has failed to establish that Defendants were actual or potential competitors, or that they consummated an agreement or conspiracy that "deprives the marketplace of independent centers of decision-making that competition assumes and demands." Jack Russell Terrier Network, 407 F.3d at 1034.

"The Court need not accept Plaintiffs' legal conclusion simply because it must accept their factual assertions. Here, Plaintiffs plead no facts that are probative of an independent economic incentive." Shahinian v. Medical Staff of Los Robles Hosp. & Med. Ctr., 2016 U.S. Dist. LEXIS 190539, at *19 (C.D. Cal. Feb. 2, 2016). Plaintiff has failed to allege a plausible conspiracy or agreement within the scope of § 1 of the Sherman Act that would give rise to a viable claim for a per se violation.[32] The Court hereby dismisses this claim with leave to amend.

### Conclusion

The Court denies Defendants' converted motion for summary judgment. The Court strikes Plaintiff's claims for trade libel and interference with existing and prospective business relationships under California's anti-SLAPP statute. Plaintiff's claim for per se violation of the antitrust laws is dismissed with leave to amend. Plaintiff shall file an amended complaint, if any, no later than fourteen (14) days from the date this order is entered. No new claims may be asserted without leave from the Court. The failure to file an amended complaint by the deadline specified in this order may result, without further warning, in dismissal of this action. Finally, within twenty-eight days (28) after the date this order is entered, Defendants may submit a motion seeking fees under California's anti-SLAPP statute. Within fourteen (14) days thereafter, Plaintiff may submit a response, including any objections to the fees sought by Defendants. The Court will thereafter take the matter under submission.

IT IS SO ORDERED.

---

[31] Id. at ¶¶21, 23.

[32] Plaintiff's argument in its Opposition brief that Defendants are in fact competitors is unavailing. Plaintiff argues that Amazzia is a competitor because it has an active account on Amazon Marketplace. (Opp. 15-16.) The Court finds this is insufficient to state a viable antitrust claim. Plaintiff has failed to identify how Amazzia has acted as a competitor to TP Link, rather than as TP Link's agent.