MARK POE (S.B. #223714)
mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
markschlachet@me.com
3515 Severn Road
Cleveland, OH 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

CHRISTOPHER J. HAMMOND (S.B. #150024)
chammond@bizlawpro.com
21540 Prairie Street, Unit A
Chatsworth, CA 91311
Telephone: (866) 625-2529
Facsimile: (866) 463-9285

Attorneys for Plaintiff
Thimes Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS, INC., | Case No. 2:19-CV-10374-PA-E |
| Plaintiff, | **THIRD AMENDED COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| TP-LINK USA CORPORATION and AUCTION BROTHERS, INC. d/b/a AMAZZIA | |
| Defendants. | |

1    Plaintiff Thimes Solutions, Inc. ("TSI") alleges as follows:

2                          **JURISDICTIONAL STATEMENT**

3           1.      The Court has federal question jurisdiction pursuant to 28 U.S.C.

4    § 1331 because Plaintiff's claims arise under federal law.

5           2.      Venue is proper in this district because the parties consented to transfer

6    this case to this district.

7                               **INTRODUCTION**

8           3.      This is a case about greed disguised as "brand protection."  As the

9    Amazon e-commerce marketplace has come to dominate the purchasing habits of

10   people worldwide, manufacturers of popular consumer products have come to

11   realize that a major threat to their ability to charge supra-competitive prices comes

12   from smaller businesses re-selling their products on the Amazon Marketplace.

13          4.      Defendant TP-Link USA Corporation ("TP-Link") is one example of a

14   manufacturer that had such an epiphany.  TP-Link is the world's number one

15   provider of wireless local area network ("WLAN") products, shipping over 160

16   million such products worldwide during 2016.

17          5.      Like all manufacturers, TP-Link wants to charge prices for its products

18   that yield the highest marginal revenue for it, not necessarily the prices that result in

19   the greatest amount of sales.  Like all monopolists, TP-Link is focused on

20   maximizing its profits as opposed to maximizing the number of consumers that get

21   access to its products.

22          6.      To that end, TP-Link sets high sales prices for its products for

23   consumers that want to buy directly through its Amazon listings or from

24   "authorized" resellers.  For example, if one wanted to buy a TP-Link AX6000 WiFi

25   6 Router, they could go buy that product on Amazon directly from TP-Link for

26   $299.98.  Additionally, TP-Link requires its authorized distributors to charge

27   similar or higher prices for its products.  So, for example, PC Nation (listed as an

28   authorized "reseller partner" on TP-Link's website) charges $299.99 for the same

product on its own website.  Furthermore, TP-Link pressures its retail store re-sellers to stick to its manufacturer suggested retail price ("MSRP"), which is at or near the direct prices charged by TP-Link.  And TP-Link contractually prohibits its "authorized" re-sellers from selling its products below the minimum advertised price ("MAP").  So, for example, major retailers Best Buy and NewEgg list the AX6000 WiFi 6 Router at the price of $299.99 on their websites.

7. Opportunities do exist, however, for smaller re-sellers to profitably sell authentic, factory-sealed TP-Link products to consumers.  Businesses like TSI purchase large volumes of such products from other down-stream distributors, such as close-out purchasers, at a steep discount from TP-Link's listed prices.  TSI and other such businesses then, in turn, re-sell those same products to consumers on the Amazon marketplace at prices below the MAP.  Amazon users browsing for a TP-Link product thus see it being simultaneously offered at the higher MAP price by TP-Link, and at the lower re-sale price offered by TSI.

8. In response, opportunistic firms like defendant Auction Brothers, Inc. d/b/a ("Amazzia") have appeared on the scene to offer "brand protection" services to manufacturers.  The job of a brand protection firm is basically to scour Amazon listings to find instances in which companies like TSI are re-selling a manufacturer's product at prices below MAP.  The brand protection firm then files a complaint with Amazon on behalf of the manufacturer, using the manufacturer's e-mail domain, falsely alleging that these firms are selling counterfeit versions of the manufacturer's products.

9. Manufacturers and Amazzia take advantage of the fact that Amazon's Notice Infringement team – the internal division responsible for processing alleged intellectual property violations on the Amazon Marketplace – rubberstamps a manufacturer's allegation that a third-party is selling counterfeit versions of its products.  And they also take advantage of the fact that, if they simply file enough

complaints, Amazon will boot these rival re-sellers off of the Amazon Marketplace, crippling their business as a result.

10.    TSI was one such victim.  It enjoyed robust sales and healthy profits as numerous Amazon Marketplace customers preferring buying authentic, factory-sealed TP-Link products from TSI, at a significantly lower price, than directly from TP-Link or its distribution network at their supracompetitive prices.  TP-Link then took actions to squash the competitive threat posed by TSI.  Utilizing the services of Amazzia, the two repeatedly filed complaints with Amazon falsely alleging that TSI was selling counterfeit versions of TP-Link's products.  In response, Amazon terminated TSI's account on the Amazon Marketplace.  TSI's business died and consumers lost the option of a high quality, cheaper alternative for genuine TP-Link products, all so that TP-Link could continue profitably charging supracompetitive prices to every single consumer segment it could find.

## PARTIES

11.    Plaintiff Thimes Solutions, Inc. is a New York corporation domiciled in Rockland County, New York.

12.    Defendant TP-Link USA Corporation is a California corporation with domiciled in Orange County, California.

13.    Defendant Auction Brothers, Inc. d/b/a Amazzia is a California corporation domiciled in Los Angeles, California.

## FACTUAL ALLEGATIONS

### The Amazon Marketplace

14.    Amazon is, of course, the ubiquitous online retailer that has come to grab an overwhelmingly dominant market share of e-commerce transactions for all kinds of consumer products.

15.    Amazon's e-commerce platform is actually comprised of two separate, yet related, platforms.  Amazon is a direct seller of many products.  Amazon also operates a third-party retailer market that is integrated into its direct-selling

platform.  These third-party sellers will have their products listed and sold on Amazon alongside Amazon's direct listings.  In exchange, these sellers pay varying fees and commissions to Amazon.

16.     This third-party retailer market is referred to as the Amazon Marketplace.  According to Amazon itself, 58% of all of its sales go through the Amazon Marketplace, and third-party sales on Amazon grow at a rate of 52% per year (as compared to 25% for first-party sales by Amazon).

17.     Amazon represents the lion's share of all e-commerce consumer transactions in the country.  According to the company, it has 195 million monthly unique visitors just from the United States.

### TP-Link's Wireless Products and TSI's Business

18.     TP-Link is a subsidiary of TP-Link Technologies Co., Ltd. ("TP-Link Tech"), a corporation organized under the laws of the People's Republic of China. On November 26, 2019, TP-Link merged with a different subsidiary of TP-Link Tech called TP-Link North America, which had its principal place of busines in Brea, California.

19.     TP-Link, along with TP-Link Tech, is a manufacturer of consumer WLAN products.  According to a March 15, 2018 press release on one of TP-Link's websites, it had a 44.08% global market share for WLAN products for the year 2017 and had annual revenue of over $1 billion for its WLAN products.  In its own words, TP-Link has the "dominant position as the market leader in WLAN products for the 29th consecutive quarter."  (https://www.tp-link.com/dk/press/news/17898/)

20.     TSI became a third-party seller on the Amazon Marketplace in 2016. TSI buys and re-sells products in the manufacturer's original packaging, and does not repackage, modify, or otherwise change the product for re-sale.  TSI legally purchases large volumes of these products from other distributors who sell them at

a steep discount to the manufacturer's suggested retail price (e.g., the distributor is going out of business).

21.    TSI then re-sells these authentic, factory-sealed products on the Amazon Marketplace to consumers at a markup that still leaves its re-sale price considerably lower than the product's MSRP and MAP.  TSI's net margins on its Amazon Marketplace products were roughly 20%.

22.    TSI sold over 175,000 products to customers on the Amazon Marketplace with a 98% lifetime positive feedback rating.  TSI had $2 million in sales during the first six months of 2018.  As of its expulsion from the Amazon Marketplace, TSI was selling between $400,000 to $500,000 per month on that platform.

23.    TSI re-sold authentic, factory-sealed TP-Link WLAN products on the Amazon Marketplace.  TSI had the legal right to sell these products under the First-sale doctrine.  TSI's re-sales of TP-Link's products also conveyed the full manufacturer's warranty pursuant to New York General Business Law section 369-b, as TSI operated its business, and fulfilled orders from, the state of New York.

### TP-Link and Amazzia's Scheme to Eliminate TSI

24.    Manufacturers and brand protection specialists have known for some time now about the deficiencies within Amazon's Notice Infringement team that allow manufacturers to quickly kill off competition on the Amazon Marketplace from other re-sellers of their products.

25.    A web article written and published in April 2018 by Chris McCabe, a former Investigation Specialist for Amazon's Seller Performance team, explained the open secrets of that particular operation (https://www.webretailer.com/b/false-infringement-claims-amazon/).  As Mr. McCabe wrote, "word is out among potential Notice claim abusers that anyone can submit a form.  Amazon are not worried about additional vetting or verification processes.  Investigators merely check the form for completed content in all the right spaces, kill the listings and

1   send off the notifications.  They don't independently verify that any of the

2   information is actually correct, or valid."

3     26. Mr. McCabe further explained, "Remember that Amazon teams have

4   trouble keeping up with the number of forms coming in each day. Notice forms roll

5   in constantly, often with no definitive proof of true rights ownership. Listings are

6   cancelled, sellers are warned, top-selling ASINs drop out of active listings and

7   increasingly, sellers find themselves suspended first, with questions asked later.

8   Amazon has to avoid any chance that they could be missing reports of fake

9   products or counterfeit items, and needs to take every step possible to err on the

10   side of aggression."

11     27. TP-Link and Amazzia conspired together to abuse Amazon's Notice

12   Infringement process to eliminate re-sellers of TP-Link's WLAN products from the

13   Amazon Marketplace, as described in greater detail herein.

14     28. According to the deposition testimony of one of Amazzia's owners,

15   William Fikhman, Amazzia has been in business for over 15 years, much of it as a

16   re-seller on the Amazon Marketplace.  But in 2017, Amazzia apparently pivoted to

17   emphasize its services in offering brand protection to manufacturers.

18     29. On information and belief, TP-Link and Amazzia entered into an

19   "Amazon Brand Protection Agreement" in early 2017.  One example of an executed

20   Brand Protection Agreement between the two defendants was dated April 17, 2018,

21   and concerned the addition of five new Amazon Standard Identification Numbers

22   ("ASIN") for Amazzia to monitor.[1]  As reflected in that agreement, however, 26

23   existing ASINs corresponding to TP-Link WLAN products were already being

24   monitored by Amazzia as of that date.  Due to the incremental nature of TP-Link

25   adding ASINs for Amazzia to monitor, the contractual relationship itself necessarily

26   began in 2017, and likely began around early 2017.

27

28   [1] A copy of which was previously filed as ECF No. 78-1 in this action.

30.     The contractually stated goal of this shared enterprise was for Amazzia to cause Amazon to de-list from the Marketplace the vast majority of re-sellers of TP-Link WLAN products.  As the contract itself states:

Services:

- We will monitor all ASIN pages daily, 7 days/week
- We will report non-compliant sellers to Amazon until they are removed by Amazon
- 50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days.
- You will have full access to our team for any questions regarding the cleanup project

31.     "Non-complaint" simply means, of course, that the Amazon Marketplace third-party seller is not an "authorized" distributor or retail store partner of TP-Link that is contractually obligated to abide by its MSRP and MAP requirements.

32.     Indeed, as Mr. Fikhman acknowledged at his deposition, "We [Amazzia] have a directive from the brand of, in this case, removing any sellers that are not authorized."

33.     Amazzia also makes that goal clear on its website.  For example, on its corporate blog, it writes: "The biggest issue that plagues Amazon revolves around unauthorized third-party resellers.  These Unauthorized Resellers are defined as third-party retailers who buy your products and resell them without your permission."  It then adds, "MAP is the Minimum Advertised Price that you register with Amazon for a given product.  When an unauthorized reseller gets their hands on your product, they are able to resell them for much more or much less than your defined MAP.  If they sell a product at a higher cost, they would earn a profit off of your item, but if they sell it for a lower cost, then this can end up really hurting your business because customers always want the best deal.  You will end up losing your customers to these resellers, and may not be able to bounce back with production costs."

34.     The primary goal of this enterprise was to enable TP-Link to eliminate price competition for its WLAN products, so it could continue to profitably charge

THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

artificially inflated prices for those products.  After all, "customers always want the best deal," and they were not getting the best deal from TP-Link or the re-sellers it controlled.  Getting rid of 90% of all third-party sellers on the Amazon Marketplace that were re-selling TP-Link WLAN products, however, would allow TP-Link to achieve that goal, while forcing end consumers to pay higher prices than they would pay in the absence of Defendants' conduct.

35.     The enterprise targeted TSI because it was a (successful) third-party seller of TP-Link WLAN products on the Amazon Marketplace.  The problem faced by the enterprise, of course, was that it was completely lawful for TSI to sell its authentic, factory-sealed TP-Link WLAN products on that e-commerce platform.  Amazon would not remove a third-party seller from the Marketplace merely because a manufacturer was unhappy that its goods were being sold at sub-MSRP and sub-MAP prices, nor would it sanction TSI in response to any claims by TP-Link that TSI's sales were materially different from "authorized" sales due to the latter's inclusion of a manufacturer's warranty.

36.     To get around that problem, on information and belief, TP-Link and Amazzia resolved that they would simply report TSI for selling counterfeit TP-Link WLAN products, notwithstanding the fact that all of TSI's products were authentic and genuine.  The enterprise understood that Amazon's Notice Infringement team would simply defer to the manufacturer (especially one as large as TP-Link) with respect to such complaints and would take punitive action against TSI.

**The TP-Link/Amazzia Enterprise Remove TSI from the Amazon Marketplace**

37.     On January 8, 2018, TSI purchased 360 TP-Link AC5400 routers from a reputable supplier with which it has dealt extensively.

38.     On January 18, 2018, a person named Tom Lei (screen name: "amazon91773") purchased two of these AC5400 routers from TSI's online store at the Amazon Marketplace.  Mr. Lei was an employee of TP-Link and the products

were delivered to a TP-Link warehouse facility in Fontana, California, as TSI later found out when researching the sales of these routers.

39.     On January 19, 2018, Amazon sent a warning letter to TSI regarding the AC5400 routers it was re-selling on the Marketplace.  The warning letter stated that an intellectual property complaint that had been made by TP-Link against TSI that it was selling counterfeit versions of the AC5400 router.  Under Amazon's Notice Infringement process, that meant that Mr. Lei, who was working in conjunction with Amazzia, had filled out a statement to Amazon stating under penalty of perjury that the AC5400 router he ordered from TSI was counterfeit.

40.     None of TSI's products were counterfeit, as previously stated.  More importantly, the AC5400 routers that Mr. Lei ordered **had not yet been delivered**. As confirmed by contemporaneous UPS shipping records, the products in question were shipped to the address provided by Mr. Lei on January 22, 2018.

41.     On January 19, 2018, TSI e-mailed the TP-Link/Amazzia enterprise using the e-mail address that they used to lodge their complaint with Amazon.  TSI explained that it did not sell any counterfeit goods, and pointed out that it had not yet even delivered the AC5400 routers that TP-Link had ordered through Mr. Lei. The members of the enterprise simply ignored this e-mail.

42.     In fact, the enterprise responded by lodging a second complaint with Amazon falsely claiming under penalty of perjury that TSI was selling counterfeit TP-Link WLAN products, on January 21, 2018 (again, **before** the AC5400 routers had even arrived).  Additional, similar false complaints against TSI were made by the enterprise on these dates:

- January 26, 2018
- February 14, 2018
- February 28, 2018 (alleging trademark infringement instead of counterfeiting)
- March 2, 2018

- March 3, 2018
- March 10, 2018
- March 13, 2018
- March 21, 2018
- March 31, 2018
- April 2, 2018
- April 5, 2018
- April 6, 2018
- April 7, 2018
- April 9, 2018
- April 10, 2018
- April 11, 2018
- April 12, 2018
- April 24, 2018
- April 25, 2018
- April 26, 2018
- April 30, 2018
- May 28, 2018
- May 30, 2018
- June 7, 2018
- June 21, 2018

43.    Each complaint was lodged by enterprise members using one of the following four e-mail addresses: compliance-us@tp-link.com, compliance-usa@tp-link.com, us-compliance@tplink.com, and compliance.usa@tp-link.com.  TP-Link has already admitted via the sworn statements of one of its employees that compliance-usa@tp-link.com was utilized by Amazzia.

44.    On information and belief, all four of these e-mail addresses were jointly used by TP-Link and Amazzia employees working in furtherance of the

1
2

enterprise's objectives to eliminate TSI and other re-sellers of TP-Link's WLAN products from the Amazon Marketplace.

3

45.    TP-Link and Amazzia certainly knew for themselves that TSI was not

4
5
6
7
8
9
10

selling any counterfeit products.  On information and belief, they examined the AC5400 routers ordered by Mr. Lei and found them to be authentic, factory-sealed TP-Link products as represented.  Mr. Lei also ordered 6 TP-Link AC1200 routers from TSI through three separate transactions on March 5, 2018.  Those products were also delivered to TP-Link's Fontana warehouse where, on information and belief, TP-Link and Amazzia examined them and confirmed that they were authentic, factory-sealed TP-Link products as represented.

11

46.    The barrage of complaints filed by the TP-Link and Amazzia achieved

12
13
14

their intended effect, however.  On May 7, 2018, Amazon suspended TSI from the Amazon Marketplace because of these complaints.  TSI was able to appeal that decision, and got reinstated to the Amazon Marketplace.

15

47.    But the four additional false complaints filed by the enterprise after

16
17
18
19

TSI's reinstatement finished the job.  Amazon permanently expelled TSI from the Amazon Marketplace on August 27, 2018, due to the counterfeiting allegations brought by TP-Link and Amazzia.  TSI had exhausted all administrative options at Amazon to no avail.

20

### The TP-Link/Amazzia Enterprise's Actions Were a Sham

21

48.    The complaints filed by TP-Link and Amazzia against TSI were

22
23
24
25
26
27

objectively baseless, and known by the enterprise participants to have been baseless.  For example, the January 19 and January 21 complaints stated under penalty of perjury that TSI was selling counterfeit TP-Link AC5400 routers even before TSI had shipped those products out to Mr. Lei.  And the enterprise continued to lodge false complaints of counterfeiting against TSI even after it had received TSI's products and could see for itself that they were obviously not counterfeit.

28

49.     Moreover, Mr. Fikhman admitted during his deposition in the *Solu-Med, Inc. v. Youngblood Skin Care Products* matter that in the types of complaints submitted by Amazzia to Amazon, Amazzia simply asserted that "[c]ounterfeit products are being sold on the following listings" without providing any additional context.

50.     On information and belief, either TP-Link or Amazzia had previously filed complaints against Amazon Marketplace re-sellers alleging trademark infringement as opposed to counterfeiting, and those complaints were rejected by Amazon as non-actionable.  Therefore, the enterprise members knew that only by alleging that counterfeit goods were sold could they achieve their shared goal of expelling third-party sellers of TP-Link WLAN products from the Marketplace.

51.     The members of the enterprise also knew that Amazon would only react to counterfeiting allegations, and not to mere trademark infringement allegations, as later confirmed in statements Amazon publicly made to Congress.

        a.     Indeed, Amazon has stated that "Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand.  These include liquidation or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise.  Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store.  But, we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices." (https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf)

THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

1          b.     In other words, manufacturers have repeatedly complained to

2    Amazon that Marketplace third-party sellers should not be re-selling their goods.

3    And presumably, those manufacturers have claimed that such re-sold goods are not

4    subject to a manufacturer's warranty, because every manufacturer claims they are

5    not obligated to warranty any goods unless they are sold by their "authorized"

6    distributors.  Yet despite those complaints, Amazon has repeatedly indicated that it

7    sees nothing illegal about the actions of re-sellers like TSI.

8          52.    Amazzia is not a law firm, nor does it provide any legal services.  For

9    those complaints that it submitted on behalf of TP-Link, it had no knowledge or,

10   nor any intent to, file any legal actions on behalf of TP-Link related to those

11   complaints.  Instead, it simply set out to fulfill its contractual mandate that "50% of

12   resellers to removed in 60 days, 75% in 90 days, and 90% in 120 days" without

13   regard to whether those re-sellers' conduct was wrongful or illegal.

14         53.    Similarly, on information and belief, TP-Link did not involve any

15   external or internal lawyer in the process of preparing and submitting complaints to

16   Amazon about TSI.

17         54.    The baseless nature of the counterfeiting charges raised by TP-Link

18   and Amazzia are also evidenced by the fact that, to TSI's knowledge, TP-Link has

19   never filed any "counterfeiting" lawsuits against any businesses like TSI that re-sell

20   authentic, factory-sealed TP-Link WLAN products.  It certainly has not made such

21   claims in the concurrently proceeding *Careful Shopper v. TP-Link USA* action,

22   where it has alleged trademark infringement claims against another re-seller of TP-

23   Link WLAN products, but has carefully avoided claiming that this re-seller sold

24   counterfeit versions of those products.  The obvious reason why TP-Link does not

25   file any such counterfeiting lawsuits is because re-selling a manufacturer's product

26   by an "unauthorized" re-seller does not make that product a counterfeit one under

27   the Lanham Act.

28

THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

1

2

# FIRST CLAIM FOR RELIEF
### (Declaratory Judgment of Non-Infringement)
### (Against TP-Link and Amazzia)

3       55.    TSI hereby re-incorporates and re-alleges all the preceding paragraphs

4   as if fully set forth herein.

5       56.    Claims of infringement and counterfeiting by the trademark owners,

6   defendants herein, present a substantial controversy of sufficient immediacy and

7   reality to warrant invocation of the Declaratory Judgment Act, 28 U.S.C. § 2201.

8       57.    TSI seeks to exercise its property rights and sell online products

9   bearing trademarks belonging to TP-Link and its privies, free of threat of

10  harassment and harm from them and their agents.

11      58.    TP-Link and Amazzia have harmed TSI as previously alleged in

12  greater detail through claims to third parties of trademark infringement and

13  counterfeiting when, in fact, there were no infringements or trading in counterfeit

14  goods.

15      59.    This Court's declaration of TSI's right to sell online and at wholesale

16  TP-Link's (and its privies') trademarked goods online will clarify and settle legal

17  relations between the parties, and terminate and afford relief from any uncertainty,

18  insecurity, or controversy.

19  \\\

20  \\\

21  \\\

22

23

24

25

26

27

28

THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

## **PRAYER**

**WHEREFORE**, Plaintiff Thimes Solutions, Inc. prays for judgment as follows:

1.  For judgment against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia

2.  For declaratory relief;

3.  For costs; and

4.  For such other and further relief as the Court deems just and proper.


Dated:  July 8, 2020                         GAW | POE LLP


                                        By: _____
                                             Mark Poe

                                             Attorneys for Plaintiff
                                             Thimes Solutions, Inc.

THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

1
2
3
4

Plaintiff Thimes Solutions, Inc. hereby demand a jury trial for its claims against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia.

5       Dated:  July 8, 2020                    GAW | POE LLP

6
7                                         By:  _____
8                                              Mark Poe

9                                              Attorneys for Plaintiff
10                                             Thimes Solutions, Inc.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E