# Exhibit A

MARK POE (S.B. #223714)
 mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
markschlachet@me.com
3515 Severn Road
Cleveland, OH 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

CHRISTOPHER J. HAMMOND (S.B. #150024)
chammond@bizlawpro.com
21540 Prairie Street, Unit A
Chatsworth, CA 91311
Telephone: (866) 625-2529
Facsimile: (866) 463-9285

Attorneys for Plaintiff
Thimes Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>TP-LINK USA CORPORATION and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>                    Defendants. | Case No. 2:19-CV-10374-PA-E<br><br>**[PROPOSED] FOURTH AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

Plaintiff Thimes Solutions, Inc. ("TSI") alleges as follows:

**JURISDICTIONAL STATEMENT**

1.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

2.     Venue is proper in this district because the parties consented to transfer this case to this district.

**INTRODUCTION**

3.     This is a case about greed disguised as "brand protection."  As the Amazon e-commerce marketplace has come to dominate the purchasing habits of people worldwide, manufacturers of popular consumer products have come to realize that a major threat to their ability to charge supra-competitive prices comes from smaller businesses re-selling their products on the Amazon Marketplace.

4.     Defendant TP-Link USA Corporation ("TP-Link") is one example of a manufacturer that had such an epiphany.  TP-Link is the world's number one provider of wireless local area network ("WLAN") products, shipping over 160 million such products worldwide during 2016.

5.     Like all manufacturers, TP-Link wants to charge prices for its products that yield the highest marginal revenue for it, not necessarily the prices that result in the greatest amount of sales.  Like all monopolists, TP-Link is focused on maximizing its profits as opposed to maximizing the number of consumers that get access to its products.

6.     To that end, TP-Link sets high sales prices for its products for consumers that want to buy directly through its Amazon listings or from "authorized" resellers.  For example, if one wanted to buy a TP-Link AX6000 WiFi 6 Router, they could go buy that product on Amazon directly from TP-Link for $299.98.  Additionally, TP-Link requires its authorized distributors to charge similar or higher prices for its products.  So, for example, PC Nation (listed as an authorized "reseller partner" on TP-Link's website) charges $299.99 for the same

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

product on its own website.  Furthermore, TP-Link pressures its retail store re-sellers to stick to its manufacturer suggested retail price ("MSRP"), which is at or near the direct prices charged by TP-Link.  And TP-Link contractually prohibits its "authorized" re-sellers from selling its products below the minimum advertised price ("MAP").  So, for example, major retailers Best Buy and NewEgg list the AX6000 WiFi 6 Router at the price of $299.99 on their websites.

7.     Opportunities do exist, however, for smaller re-sellers to profitably sell authentic, factory-sealed TP-Link products to consumers.  Businesses like TSI purchase large volumes of such products from other down-stream distributors, such as close-out purchasers, at a steep discount from TP-Link's listed prices.  TSI and other such businesses then, in turn, re-sell those same products to consumers on the Amazon marketplace at prices below the MAP.  Amazon users browsing for a TP-Link product thus see it being simultaneously offered at the higher MAP price by TP-Link, and at the lower re-sale price offered by TSI.

8.     In response, opportunistic firms like defendant Auction Brothers, Inc. d/b/a ("Amazzia") have appeared on the scene to offer "brand protection" services to manufacturers.  The job of a brand protection firm is basically to scour Amazon listings to find instances in which companies like TSI are re-selling a manufacturer's product at prices below MAP.  The brand protection firm then files a complaint with Amazon on behalf of the manufacturer, using the manufacturer's e-mail domain, falsely alleging that these firms are selling counterfeit versions of the manufacturer's products.

9.     Manufacturers and Amazzia take advantage of the fact that Amazon's Notice Infringement team – the internal division responsible for processing alleged intellectual property violations on the Amazon Marketplace – rubberstamps a manufacturer's allegation that a third-party is selling counterfeit versions of its products.  And they also take advantage of the fact that, if they simply file enough

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

complaints, Amazon will boot these rival re-sellers off of the Amazon Marketplace, crippling their business as a result.

10.     TSI was one such victim.  It enjoyed robust sales and healthy profits as numerous Amazon Marketplace customers preferring buying authentic, factory-sealed TP-Link products from TSI, at a significantly lower price, than directly from TP-Link or its distribution network at their supracompetitive prices.  TP-Link then took actions to squash the competitive threat posed by TSI.  Utilizing the services of Amazzia, the two repeatedly filed complaints with Amazon falsely alleging that TSI was selling counterfeit versions of TP-Link's products.  In response, Amazon terminated TSI's account on the Amazon Marketplace.  TSI's business died and consumers lost the option of a high quality, cheaper alternative for genuine TP-Link products, all so that TP-Link could continue profitably charging supracompetitive prices to every single consumer segment it could find.

## PARTIES

11.     Plaintiff Thimes Solutions, Inc. is a New York corporation domiciled in Rockland County, New York.

12.     Defendant TP-Link USA Corporation is a California corporation domiciled in Orange County, California.

13.     Defendant Auction Brothers, Inc. d/b/a Amazzia is a California corporation domiciled in Los Angeles, California.

## FACTUAL ALLEGATIONS

### The Amazon Marketplace

14.     Amazon is, of course, the ubiquitous online retailer that has come to grab an overwhelmingly dominant market share of e-commerce transactions for all kinds of consumer products.

15.     Amazon's e-commerce platform is actually comprised of two separate, yet related, platforms.  Amazon is a direct seller of many products.  Amazon also operates a third-party retailer market that is integrated into its direct-selling

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

platform.  These third-party sellers will have their products listed and sold on Amazon alongside Amazon's direct listings.  In exchange, these sellers pay varying fees and commissions to Amazon.

16.    This third-party retailer market is referred to as the Amazon Marketplace.  According to Amazon itself, 58% of all of its sales go through the Amazon Marketplace, and third-party sales on Amazon grow at a rate of 52% per year (as compared to 25% for first-party sales by Amazon).

17.    Amazon represents the lion's share of all e-commerce consumer transactions in the country.  According to the company, it has 195 million monthly unique visitors just from the United States.

### TP-Link's Wireless Products and TSI's Business

18.    TP-Link is a subsidiary of TP-Link Technologies Co., Ltd. ("TP-Link Tech"), a corporation organized under the laws of the People's Republic of China.  On November 26, 2019, TP-Link merged with a different subsidiary of TP-Link Tech called TP-Link North America, which had its principal place of busines in Brea, California.

19.    TP-Link, along with TP-Link Tech, is a manufacturer of consumer WLAN products.  According to a March 15, 2018 press release on one of TP-Link's websites, it had a 44.08% global market share for WLAN products for the year 2017 and had annual revenue of over $1 billion for its WLAN products.  In its own words, TP-Link has the "dominant position as the market leader in WLAN products for the 29th consecutive quarter."  (https://www.tp-link.com/dk/press/news/17898/)

20.    TSI became a third-party seller on the Amazon Marketplace in 2016.  TSI buys and re-sells products in the manufacturer's original packaging, and does not repackage, modify, or otherwise change the product for re-sale.  TSI legally purchases large volumes of these products from other distributors who sell them at

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

a steep discount to the manufacturer's suggested retail price (e.g., the distributor is going out of business).

21.    TSI then re-sells these authentic, factory-sealed products on the Amazon Marketplace to consumers at a markup that still leaves its re-sale price considerably lower than the product's MSRP and MAP.  TSI's net margins on its Amazon Marketplace products were roughly 20%.

22.    TSI sold over 175,000 products to customers on the Amazon Marketplace with a 98% lifetime positive feedback rating.  TSI had $2 million in sales during the first six months of 2018.  As of its expulsion from the Amazon Marketplace, TSI was selling between $400,000 to $500,000 per month on that platform.

23.    TSI re-sold authentic, factory-sealed TP-Link WLAN products on the Amazon Marketplace.  TSI had the legal right to sell these products under the First-sale doctrine.  TSI's re-sales of TP-Link's products also conveyed the full manufacturer's warranty pursuant to New York General Business Law section 369-b, as TSI operated its business, and fulfilled orders from, the state of New York.

### TP-Link and Amazzia's Scheme to Eliminate TSI

24.    Manufacturers and brand protection specialists have known for some time now about the deficiencies within Amazon's Notice Infringement team that allow manufacturers to quickly kill off competition on the Amazon Marketplace from other re-sellers of their products.

25.    A web article written and published in April 2018 by Chris McCabe, a former Investigation Specialist for Amazon's Seller Performance team, explained the open secrets of that particular operation (https://www.webretailer.com/b/false-infringement-claims-amazon/).  As Mr. McCabe wrote, "word is out among potential Notice claim abusers that anyone can submit a form.  Amazon are not worried about additional vetting or verification processes.  Investigators merely check the form for completed content in all the right spaces, kill the listings and

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

1    send off the notifications.  They don't independently verify that any of the

2    information is actually correct, or valid."

3        26.    Mr. McCabe further explained, "Remember that Amazon teams have

4    trouble keeping up with the number of forms coming in each day. Notice forms roll

5    in constantly, often with no definitive proof of true rights ownership. Listings are

6    cancelled, sellers are warned, top-selling ASINs drop out of active listings and

7    increasingly, sellers find themselves suspended first, with questions asked later.

8    Amazon has to avoid any chance that they could be missing reports of fake

9    products or counterfeit items, and needs to take every step possible to err on the

10   side of aggression."

11       27.    TP-Link and Amazzia conspired together to abuse Amazon's Notice

12   Infringement process to eliminate re-sellers of TP-Link's WLAN products from the

13   Amazon Marketplace, as described in greater detail herein.

14       28.    According to the deposition testimony of one of Amazzia's owners,

15   William Fikhman, Amazzia has been in business for over 15 years, much of it as a

16   re-seller on the Amazon Marketplace.  But in 2017, Amazzia apparently pivoted to

17   emphasize its services in offering brand protection to manufacturers.

18       29.    On information and belief, TP-Link and Amazzia entered into an

19   "Amazon Brand Protection Agreement" in early 2017.  One example of an executed

20   Brand Protection Agreement between the two defendants was dated April 17, 2018,

21   and concerned the addition of five new Amazon Standard Identification Numbers

22   ("ASIN") for Amazzia to monitor.[1]  As reflected in that agreement, however, 26

23   existing ASINs corresponding to TP-Link WLAN products were already being

24   monitored by Amazzia as of that date.  Due to the incremental nature of TP-Link

25   adding ASINs for Amazzia to monitor, the contractual relationship itself necessarily

26   began in 2017, and likely began around early 2017.

27   _____

28   [1] A copy of which was previously filed as ECF No. 78-1 in this action.

[PROPOSED] FOURTH AMENDED COMPLAINT
                                        CASE NO. 2:19-CV-10374-PA-E

30.     The contractually stated goal of this shared enterprise was for Amazzia to cause Amazon to de-list from the Marketplace the vast majority of re-sellers of TP-Link WLAN products.  As the contract itself states:

Services:

- We will monitor all ASIN pages daily, 7 days/week
- We will report non-compliant sellers to Amazon until they are removed by Amazon
- 50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days.
- You will have full access to our team for any questions regarding the cleanup project

31.     "Non-complaint" simply means, of course, that the Amazon Marketplace third-party seller is not an "authorized" distributor or retail store partner of TP-Link that is contractually obligated to abide by its MSRP and MAP requirements.

32.     Indeed, as Mr. Fikhman acknowledged at his deposition, "We [Amazzia] have a directive from the brand of, in this case, removing any sellers that are not authorized."

33.     Amazzia also makes that goal clear on its website.  For example, on its corporate blog, it writes: "The biggest issue that plagues Amazon revolves around unauthorized third-party resellers.  These Unauthorized Resellers are defined as third-party retailers who buy your products and resell them without your permission."  It then adds, "MAP is the Minimum Advertised Price that you register with Amazon for a given product.  When an unauthorized reseller gets their hands on your product, they are able to resell them for much more or much less than your defined MAP.  If they sell a product at a higher cost, they would earn a profit off of your item, but if they sell it for a lower cost, then this can end up really hurting your business because customers always want the best deal.  You will end up losing your customers to these resellers, and may not be able to bounce back with production costs."

34.     The primary goal of this enterprise was to enable TP-Link to eliminate price competition for its WLAN products, so it could continue to profitably charge

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

artificially inflated prices for those products.  After all, "customers always want the best deal," and they were not getting the best deal from TP-Link or the re-sellers it controlled.  Getting rid of 90% of all third-party sellers on the Amazon Marketplace that were re-selling TP-Link WLAN products, however, would allow TP-Link to achieve that goal, while forcing end consumers to pay higher prices than they would pay in the absence of Defendants' conduct.

35.   The enterprise targeted TSI because it was a (successful) third-party seller of TP-Link WLAN products on the Amazon Marketplace.  The problem faced by the enterprise, of course, was that it was completely lawful for TSI to sell its authentic, factory-sealed TP-Link WLAN products on that e-commerce platform.  Amazon would not remove a third-party seller from the Marketplace merely because a manufacturer was unhappy that its goods were being sold at sub-MSRP and sub-MAP prices, nor would it sanction TSI in response to any claims by TP-Link that TSI's sales were materially different from "authorized" sales due to the latter's inclusion of a manufacturer's warranty.

36.   To get around that problem, on information and belief, TP-Link and Amazzia resolved that they would simply report TSI for selling counterfeit TP-Link WLAN products, notwithstanding the fact that all of TSI's products were authentic and genuine.  The enterprise understood that Amazon's Notice Infringement team would simply defer to the manufacturer (especially one as large as TP-Link) with respect to such complaints and would take punitive action against TSI.

**The TP-Link/Amazzia Enterprise Remove TSI from the Amazon Marketplace**

37.   On January 8, 2018, TSI purchased 360 TP-Link AC5400 routers from a reputable supplier with which it has dealt extensively.

38.   On January 18, 2018, a person named Tom Lei (screen name: "amazon91773") purchased two of these AC5400 routers from TSI's online store at the Amazon Marketplace.  Mr. Lei was an employee of TP-Link and the products

were delivered to a TP-Link warehouse facility in Fontana, California, as TSI later found out when researching the sales of these routers.

39.     On January 19, 2018, Amazon sent a warning letter to TSI regarding the AC5400 routers it was re-selling on the Marketplace.  The warning letter stated that an intellectual property complaint that had been made by TP-Link against TSI that it was selling counterfeit versions of the AC5400 router.  Under Amazon's Notice Infringement process, that meant that Mr. Lei, who was working in conjunction with Amazzia, had filled out a statement to Amazon stating under penalty of perjury that the AC5400 router he ordered from TSI was counterfeit.

40.     None of TSI's products were counterfeit, as previously stated.  More importantly, the AC5400 routers that Mr. Lei ordered **had not yet been delivered**. As confirmed by contemporaneous UPS shipping records, the products in question were shipped to the address provided by Mr. Lei on January 22, 2018.

41.     On January 19, 2018, TSI e-mailed the TP-Link/Amazzia enterprise using the e-mail address that they used to lodge their complaint with Amazon.  TSI explained that it did not sell any counterfeit goods, and pointed out that it had not yet even delivered the AC5400 routers that TP-Link had ordered through Mr. Lei. The members of the enterprise simply ignored this e-mail.

42.     In fact, the enterprise responded by lodging a second complaint with Amazon falsely claiming under penalty of perjury that TSI was selling counterfeit TP-Link WLAN products, on January 21, 2018 (again, **before** the AC5400 routers had even arrived).  Additional, similar false complaints against TSI were made by the enterprise on these dates:

- January 26, 2018
- February 14, 2018
- February 28, 2018 (alleging trademark infringement instead of counterfeiting)
- March 2, 2018

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

1        • March 3, 2018

2        • March 10, 2018

3        • March 13, 2018

4        • March 21, 2018

5        • March 31, 2018

6        • April 2, 2018

7        • April 5, 2018

8        • April 6, 2018

9        • April 7, 2018

10       • April 9, 2018

11       • April 10, 2018

12       • April 11, 2018

13       • April 12, 2018

14       • April 24, 2018

15       • April 25, 2018

16       • April 26, 2018

17       • April 30, 2018

18       • May 28, 2018

19       • May 30, 2018

20       • June 7, 2018

21       • June 21, 2018

22          43.    Each complaint was lodged by enterprise members using one of the

23       following four e-mail addresses: compliance-us@tp-link.com, compliance-usa@tp-

24       link.com, us-compliance@tplink.com, and compliance.usa@tp-link.com.  TP-Link

25       has already admitted via the sworn statements of one of its employees that

26       compliance-usa@tp-link.com was utilized by Amazzia.

27          44.    On information and belief, all four of these e-mail addresses were

28       jointly used by TP-Link and Amazzia employees working in furtherance of the

enterprise's objectives to eliminate TSI and other re-sellers of TP-Link's WLAN products from the Amazon Marketplace.

45.     TP-Link and Amazzia certainly knew for themselves that TSI was not selling any counterfeit products.  On information and belief, they examined the AC5400 routers ordered by Mr. Lei and found them to be authentic, factory-sealed TP-Link products as represented.  Mr. Lei also ordered 6 TP-Link AC1200 routers from TSI through three separate transactions on March 5, 2018.  Those products were also delivered to TP-Link's Fontana warehouse where, on information and belief, TP-Link and Amazzia examined them and confirmed that they were authentic, factory-sealed TP-Link products as represented.

46.     The barrage of complaints filed by the TP-Link and Amazzia achieved their intended effect, however.  On May 7, 2018, Amazon suspended TSI from the Amazon Marketplace because of these complaints.  TSI was able to appeal that decision, and got reinstated to the Amazon Marketplace.

47.     But the four additional false complaints filed by the enterprise after TSI's reinstatement finished the job.  Amazon permanently expelled TSI from the Amazon Marketplace on August 27, 2018, due to the counterfeiting allegations brought by TP-Link and Amazzia.  TSI had exhausted all administrative options at Amazon to no avail.

### The TP-Link/Amazzia Enterprise's Actions Were a Sham

48.     The complaints filed by TP-Link and Amazzia against TSI were objectively baseless, and known by the enterprise participants to have been baseless.  For example, the January 19 and January 21 complaints stated under penalty of perjury that TSI was selling counterfeit TP-Link AC5400 routers even before TSI had shipped those products out to Mr. Lei.  And the enterprise continued to lodge false complaints of counterfeiting against TSI even after it had received TSI's products and could see for itself that they were obviously not counterfeit.

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

49.     Moreover, Mr. Fikhman admitted during his deposition in the *Solu-Med, Inc. v. Youngblood Skin Care Products* matter that in the types of complaints submitted by Amazzia to Amazon, Amazzia simply asserted that "[c]ounterfeit products are being sold on the following listings" without providing any additional context.

50.     On information and belief, either TP-Link or Amazzia had previously filed complaints against Amazon Marketplace re-sellers alleging trademark infringement as opposed to counterfeiting, and those complaints were rejected by Amazon as non-actionable.  Therefore, the enterprise members knew that only by alleging that counterfeit goods were sold could they achieve their shared goal of expelling third-party sellers of TP-Link WLAN products from the Marketplace.

51.     The members of the enterprise also knew that Amazon would only react to counterfeiting allegations, and not to mere trademark infringement allegations, as later confirmed in statements Amazon publicly made to Congress.

a.     Indeed, Amazon has stated that "Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand.  These include liquidation or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise.  Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store.  But, we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices." (https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf)

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

b.      In other words, manufacturers have repeatedly complained to Amazon that Marketplace third-party sellers should not be re-selling their goods. And presumably, those manufacturers have claimed that such re-sold goods are not subject to a manufacturer's warranty, because every manufacturer claims they are not obligated to warranty any goods unless they are sold by their "authorized" distributors.  Yet despite those complaints, Amazon has repeatedly indicated that it sees nothing illegal about the actions of re-sellers like TSI.

52.      Amazzia is not a law firm, nor does it provide any legal services.  For those complaints that it submitted on behalf of TP-Link, it had no knowledge or, nor any intent to, file any legal actions on behalf of TP-Link related to those complaints.  Instead, it simply set out to fulfill its contractual mandate that "50% of resellers to removed in 60 days, 75% in 90 days, and 90% in 120 days" without regard to whether those re-sellers' conduct was wrongful or illegal.

53.      Similarly, on information and belief, TP-Link did not involve any external or internal lawyer in the process of preparing and submitting complaints to Amazon about TSI.

54.      The baseless nature of the counterfeiting charges raised by TP-Link and Amazzia are also evidenced by the fact that, to TSI's knowledge, TP-Link has never filed any "counterfeiting" lawsuits against any businesses like TSI that re-sell authentic, factory-sealed TP-Link WLAN products.  It certainly has not made such claims in the concurrently proceeding *Careful Shopper v. TP-Link USA* action, where it has alleged trademark infringement claims against another re-seller of TP-Link WLAN products, but has carefully avoided claiming that this re-seller sold counterfeit versions of those products.  The obvious reason why TP-Link does not file any such counterfeiting lawsuits is because re-selling a manufacturer's product by an "unauthorized" re-seller does not make that product a counterfeit one under the Lanham Act.

**FIRST CLAIM FOR RELIEF**
**(Lanham Act – False Advertising, 15 U.S.C § 1125(a)(1)(B))**
**(Against TP-Link and Amazzia)**

55.     TSI hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

56.     As previously alleged in greater detail, TP-Link, working with Amazzia, sent to Amazon, by electronic mail, complaints falsely attesting under penalty of perjury that TSI was selling counterfeit TP-Link WLAN products.  There were at least 27 such false complaints sent by e-mail, beginning on January 19, 2018 through June 21, 2018.

57.     The claims that TSI sold counterfeit TP-Link WLAN products is a false or misleading representation of fact, as opposed to an opinion.  These false complaints by TP-Link materially misrepresented the nature, characteristics, and qualities of TSI's products, as well as TP-Link's products.

58.     TP-Link and Amazzia knew that these complaints were false at the time they submitted them to Amazon.  For the complaints sent on January 19 and 21, TP-Link claimed that the AC5400 routers it purchased from TSI were counterfeit even though TSI had not even delivered those products to TP-Link until January 22.  Moreover, TP-Link examined those products and found them to be authentic, and purchased other products from TSI and found them to be authentic, yet persisted in filing complaint after complaint with Amazon alleging that TSI was selling counterfeit products.

59.     TP-Link and Amazzia's false complaints are considered to be "advertisements" under the Lanham Act.  They were commercial speech by TP-Link and TP-Link competes with TSI for direct sales to consumers of consumer WLAN products.  The core of TP-Link's speech was to unfavorably contrast the qualities of TSI's products for TP-Link's financial gain.

60.     In addition, TP-Link and Amazzia's false complaints were issued with the purpose for influencing consumers to buy its consumer WLAN products instead

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

of those products sold by TSI.  Obviously, TP-Link hoped to tar TSI's reputation by falsely claiming it sold counterfeit products, hoping that Amazon would publicly repeat that allegation in some form or another.  But more importantly, TP-Link was hoping to influence Amazon to stop transacting with TSI, and to principally transact with TP-Link instead.  Amazon, after all, is paid fees from all sellers on its Marketplace and receives a commission from all sales taking place on the Marketplace.  Removing TSI and other third-party sellers would necessarily lead to Amazon increasing its transactions with TP-Link.

61.    TP-Link and Amazzia's false complaints were disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.  Among other things, these statements to Amazon were effectively qualifying statements to all potential purchasers that use the Amazon Marketplace, but also were qualifying statements to Amazon itself, which solely controls which firms are allowed to list products for sale on the Amazon Marketplace.

62.    TP-Link and Amazzia's false complaints deceived, or were likely to deceive in a material way, Amazon and consumers.  After all, the complaints purported to come from the manufacturer itself, TP-Link's agent had attested under penalty of perjury that the products in question were counterfeit, and, on information and belief, TP-Link's agent had represented that TP-Link had purchased and examined for itself the products in question.

63.    As previously alleged in greater detail, Amazzia's conduct and intentions mean that it was a co-conspirator with TP-Link in the latter's efforts to violate the Lanham Act.  As such, Amazzia is jointly and severally liable for any violation of the Lanham Act by TP-Link.

64.    TP-Link's false advertising proximately caused damages to TSI. Because of these false complaints, Amazon permanently expelled TSI from the Marketplace.  TSI has suffered general damages because it now had products it

could no longer sell and because Amazon refused to remit to TSI money it had already earned from past sales.  TSI has also suffered special damages such as lost profits, because had it stayed on the Amazon Marketplace, it would have continued to make at least $1-2 million in annual profits for years to come from its re-sale of many different kinds of products, including TP-Link WLAN products.  TP-Link and Amazzia are jointly and severally liable for all of these damages, and in the alternative, TSI seeks disgorgement of their profits relating to this false advertising.

65.     TSI is also entitled to attorney's fees pursuant to the Lanham Act from both TP-Link and Amazzia, jointly and severally, as their conduct would qualify this action as an "exceptional case" within the meaning of that statute.

**SECOND CLAIM FOR RELIEF**
**(RICO – substantive, 18 U.S.C. § 1962(c))**
**(Against TP-Link and Amazzia)**

66.     TSI hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

67.     At all relevant times, TP-Link and Amazzia were "persons" within the meaning of 18 U.S.C. § 1961(3), because they are all "capable of holding a legal or beneficial interest in property."

68.     TP-Link and Amazzia were members of an association-in-fact RICO enterprise.  The goal of this enterprise was to eliminate all third-party sellers of TP-Link WLAN products on the Amazon Marketplace, even if those re-sellers were selling authentic, factory-sealed products, so that TP-Link could prevent anyone on Amazon from selling TP-Link WLAN products at a price lower than TP-Link's MSRP or MAP.  As previously alleged in greater detail, on information and belief, this association-in-fact enterprise began around early 2017.  Hereafter, this association-in-fact enterprise is referred to as the TP-Amazzia Enterprise.

69.     TP-Link directed the activities of the TP-Amazzia Enterprise, and authorized its employees and agents to make whatever complaints it could to Amazon in order to cause Amazon to expel all third-party sellers of TP-Link

WLAN products from the Marketplace.  TP-Link also had its employees nominally purchase sample TP-Link WLAN products from its targeted re-sellers, so that it could truthfully claim that it had bought and "tested" those products before filing complaints against those re-sellers.

70.     Amazzia carried out the day to day activities of the TP-Amazzia Enterprise.  Amazzia's employees scoured the Amazon Marketplace to find as many listings of TP-Link WLAN products as it could.  Amazzia's employees would then coordinate with TP-Link employees, as needed, to purchase samples of those products, for the reasons already described.  Amazzia's employees would also fill out and submit the complaints to Amazon's Notice Infringement team, falsely attesting that these re-sellers were selling counterfeit TP-Link WLAN products.

71.     TP-Link preserved its ability to charge supracompetitive prices for its WLAN products on Amazon by eliminating its competition.  And since the Amazon Marketplace is, by far, the largest online marketplace in the world for the sale of brand new, authentic, factory sealed consumer products, TP-Link's elimination of these re-sellers from the Amazon Marketplace preserved its ability to charge supracompetitive prices both in other online marketplaces and also at the bricks and mortar retail level.

72.     Amazzia was handsomely remunerated by TP-Link for carrying out the activities of this enterprise.

73.     The activities of TP-Amazzia Enterprise affected interstate commerce.  Amazon operates out of the state of Washington, and has customers from all over the world.  TSI operated out of the state of New York, and had customers from all over the country, and internationally.  TP-Link has its principal place of business in California, and also has customers located around the world.

74.     The members of the TP-Amazzia Enterprise engaged in multiple, predicate acts of racketeering activity.  With respect to TSI alone, the members of the enterprise engaged in wire fraud by sending to Amazon, by electronic mail,

complaints falsely attesting under penalty of perjury that TSI was selling counterfeit TP-Link WLAN products.  As previously alleged in greater detail, there were at least 27 such false complaints sent by e-mail, beginning on January 19, 2018 through June 21, 2018.

75.   The members of this enterprise knew that these complaints were false at the time they submitted them to Amazon.  For the complaints sent on January 19 and 21, TP-Link claimed that the AC5400 routers it purchased from TSI were counterfeit even though TSI had not even delivered those products to TP-Link until January 22.  Moreover, TP-Link examined those products and found them to be authentic, and purchased other products from TSI and found them to be authentic, yet persisted in filing complaint after complaint with Amazon alleging that TSI was selling counterfeit products.

76.   The members of TP-Amazzia Enterprise intended to deceive Amazon into thinking that TSI was selling counterfeit product, because they wanted to eliminate TSI along with other third-party sellers of TP-Link's WLAN products from the Amazon Marketplace.  In the alternative, the members of TP-Amazzia Enterprise were reckless in communicating to Amazon that TP-Link was selling counterfeit product because these members personally believed that any consumer good sold by an "unauthorized" distributor constituted a counterfeit good without regard to the fact that counterfeiting under the Lanham Act has a different definition.

77.   The members of the TP-Amazzia Enterprise have engaged in an open-ended pattern of predicate acts, conducted through the enterprise.  On information and belief, this enterprise has caused the expulsion of many different third-party sellers of TP-Link WLAN products from the Amazon Marketplace, such as Careful Shopper.  As alleged by Careful Shopper in its lawsuit, TP-Link and Amazzia similarly sent multiple complaints to Amazon falsely claiming that Careful Shopper was selling counterfeit TP-Link WLAN products.  And similar to TSI's experience,

TP-Link ignored Careful Shopper's efforts to communicate with TP-Link to show that all of its goods were authentic.

78.     On information and belief, TP-Link and Amazzia continued to work together to cause the expulsion of many other third-party sellers of TP-Link WLAN products from the Amazon Marketplace by lodging false complaints of counterfeiting against those re-sellers throughout 2018, 2019, and 2020.  Their efforts appear to have succeeded.  For example, on a recent search for TP-Link WLAN products on Amazon, for many of those products, the only listed sellers are either TP-Link itself, or one of TP-Link's authorized re-sellers.  And notably, it appears that very few, if any, of the businesses selling new TP-Link WLAN products on the Amazon Marketplace are doing so at a price higher than the price directly being offered by TP-Link itself on that platform.

79.     The TP-Amazzia Enterprise and its members intended to cause Amazon to rely upon their false complaints, because, as previously alleged in greater detail, the members of this enterprise knew that Amazon would not take action against third-party sellers like TSI unless there was a specific allegation of counterfeiting.  Amazon's reliance was reasonable, because the complaints purported to come from the manufacturer itself, because the TP-Link's agent had attested under penalty of perjury that the products in question were counterfeit, and because, on information and belief, TP-Link's agent had represented that TP-Link had purchased and examined for itself the products in question.

80.     The unlawful acts of TP-Amazzia Enterprise harmed TSI.  Because of the repeated false complaints filed by the members of the enterprise against TSI, Amazon permanently expelled TSI from the Marketplace.  TSI has suffered general damages because it now had products it could no longer sell and because Amazon refused to remit to TSI money it had already earned from past sales.  TSI has also suffered special damages such as lost profits, because had it stayed on the Amazon Marketplace, it would have continued to make at least $1-2 million in annual profits

for years to come from its re-sale of many different kinds of products, including TP-Link WLAN products.  TP-Link and Amazzia are jointly and severally liable for all of these damages.

81.    TSI is also entitled to treble damages and attorney's fees pursuant to the federal RICO statute from both TP-Link and Amazzia, jointly and severally.

### THIRD CLAIM FOR RELIEF
**(RICO – conspiracy, 18 U.S.C. § 1962(d))**
**(Against TP-Link and Amazzia)**

82.    TSI hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

83.    As previously alleged in greater detail, on information and belief, beginning around 2017, TP-Link and Amazzia were members of an association-in-fact enterprise that had the goal of eliminating all third-party sellers of TP-Link WLAN products on the Amazon Marketplace.  Each defendant carried out the activities of TP-Amazzia Enterprise, including the commission of a pattern of acts of racketeering, principally wire fraud.

84.    TP-Link and Amazzia's agreement to participate in a scheme whereby the two would send complaints to Amazon falsely accusing TSI, and other third-party sellers, of selling counterfeit TP-Link WLAN products was itself a substantive violation of the federal RICO statute.

85.    TP-Link and Amazzia agreed to commit, and in fact participated in, multiple acts of wire fraud whereby they sent, by electronic mail, complaints falsely attesting under penalty of perjury that TSI and other Amazon Marketplace third-party sellers were selling counterfeit TP-Link WLAN products.  On information and belief, these activities took place throughout 2017 through 2020.  For TSI specifically, these acts of wire fraud took place from January 19, 2018 through June 21, 2018.

86.    Both TSI-Link and Amazzia were aware of the essential nature and scope of TP-Amazzia Enterprise and intended to participate in it.  As previously

alleged in greater detail, both intended to submit false complaints because they were aware that Amazon would expel third-party sellers from the Marketplace only upon receiving complaints that those businesses were selling counterfeit products. And as previously alleged in greater detail, both intended to participate in this enterprise for their own, private financial gain.

87.   The conspiracy to engage in RICO violations harmed TSI.  Because of the repeated false complaints filed by the members of the enterprise against TSI, Amazon permanently expelled TSI from the Marketplace.  TSI has suffered general damages because it now had products it could no longer sell and because Amazon refused to remit to TSI money it had already earned from past sales.  TSI has also suffered special damages such as lost profits, because had it stayed on the Amazon Marketplace, it would have continued to make at least $1-2 million in annual profits for years to come from its re-sale of many different kinds of products, including TP-Link WLAN products.  TP-Link and Amazzia are jointly and severally liable for all of these damages.

88.   TSI is also entitled to treble damages and attorney's fees pursuant to the federal RICO statute from both TP-Link and Amazzia, jointly and severally.

## FOURTH CLAIM FOR RELIEF
### (Sherman Act – Section 2 – Maintenance of Monopoly, 15 U.S.C. § 2)
### (Against TP-Link)

89.   TSI hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

90.   TP-Link has monopoly power over several relevant markets:

a.   As previously alleged in greater detail, TP-Link and TP-Link Tech had a 44.08% global market share for **all** WLAN products for the year 2017 according to TP-Link itself.  TP-Link however, is better known for providing WLAN products for consumers than in the enterprise space.  Indeed, on TP-Link's YouTube and Facebook webpages, the company boasts that it "is the world's number one provider of consumer Wi-Fi networking devices."  Thus, on

1    information and belief, TP-Link and TP-Link Tech had at least a 50% global

2    market share of the market for direct-to-consumer sales of new / factory-sealed

3    consumer WLAN products during the year 2018.

4           b.     Market surveys repeatedly show that North America is the

5    largest market for consumer WLAN products, with the United States holding a

6    dominant share of this geographic region.  Given simple extrapolation from TP-

7    Link's global share numbers, and given that other geographic markets present

8    localized competition for consumer WLAN products arising from cheaper, locally-

9    produced manufacturers that are not present in the United States market, on

10   information and belief, TP-Link and TP-Link Tech had at least a 50% market share

11   of the market for direct-to-consumer sales of new / factory-sealed consumer WLAN

12   products in the United States during the year 2018, as well as the state of New

13   York.

14          c.     The ubiquity of e-commerce has also created a product market

15   consisting of the online marketplace for new / factory-sealed consumer WLAN

16   products.  (There is, of course, a separate online marketplace for used, consumer

17   WLAN products that is served by e-commerce platforms such as eBay or Craigslist,

18   but that marketplace is not relevant for this lawsuit.)  In line with TP-Link's overall

19   dominance for consumer WLAN products, on information and belief, TP-Link and

20   TP-Link Tech had at least a 50% market share of the global, United States, and

21   New York online markets for direct-to-consumer sales of new / factory-sealed

22   consumer WLAN products.

23          d.     The Amazon Marketplace is utterly dominant in e-commerce.

24   For example, Bank of America analysts in early 2020 estimated that Amazon alone

25   had a 44% share of the entire U.S. e-commerce market.  As another example,

26   TechCrunch reported that in 2018, the researchers at eMarketer estimated that

27   Amazon had a 49.1% market share of all online retail spend in the United States.

28   Thus, there also exists the product market consisting of the Amazon Marketplace

for new / factory-sealed consumer WLAN products.  In line with TP-Link's overall dominance for consumer WLAN products, on information and belief, TP-Link and TP-Link Tech had at least a 50% market share of the global, United States, and New York-centered Amazon marketplace for sales of new / factory-sealed consumer WLAN products.

91.     As previously alleged in greater detail, TP-Link willfully maintained monopoly power in the aforementioned markets by engaging in anticompetitive conduct, such as by working with Amazzia to repeatedly submit false complaints to Amazon that TSI, and other third-party sellers, were selling counterfeit TP-Link WLAN products in order to get Amazon to expel these sellers from the Amazon Marketplace.

92.     TP-Link did not have a legitimate business purpose for engaging in such anticompetitive conduct.  Put simply, there can never be a legitimate business reason for a monopolist to falsely claim that its competitors are selling counterfeit versions of its products when that monopolist actually knows, or at least strongly suspects, that such an accusation is false.

93.     As previously alleged in greater detail, TP-Link's actions affected interstate commerce.

94.     As previously alleged in greater detail, TP-Link's conduct has caused injury to competition and to consumers.  TP-Link's conduct has allowed it to charge supracompetitive prices for its consumer WLAN products.  This conduct has also allowed it to reduce the output of such products to consumers.  With TSI and numerous other third-party sellers of consumer WLAN products (i.e., its and TP-Link's competitors) having been permanently expelled from the Amazon Marketplace due to TP-Link's actions, there is now a dearth of, to use Amazon's words, "small and medium sized businesses [ ] legally selling [consumer WLAN products] in our store at competitive prices."

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

95.     Moreover, it is important to note that TSI and other third-party sellers do not limit themselves to selling only TP-Link WLAN products.  Thus, TP-Link getting these sellers expelled from the Amazon Marketplace does not merely affect its market share of selling its own consumer WLAN products.  Rather, by eliminating multiple businesses that sold a wide variety of consumer WLAN products, TP-Link also eliminated consumer choice for different consumer WLAN products, thereby leaving some consumers to settle upon buying TP-Link consumer WLAN products directly from TP-Link due to a lack of alternatives.

96.     There are high barriers to entry and high capital costs for these relevant markets.  It takes a significant amount of money and time for a re-seller to buy sufficient quantities of new, factory-sealed consumer WLAN products so that they can become even a barely visible option for consumers looking to buy such products.  For example, just for the Amazon Marketplace alone, a third-party seller can be viable in selling these products only if (1) they have sufficient quantities of product to fulfill customer orders and (2) they have a high enough customer rating to attract customers in the first place.  The latter especially can be acquired only by consistently fulfilling many orders by many different customers over many years, and then having a large number of those customers write positive reviews of the seller.  Many consumers will not choose to buy from a third-party seller that has only a few customer reviews, and certainly would not buy from a third-party seller unless it has an overwhelming amount of positive reviews.

97.     As previously alleged in greater detail, TP-Link's anticompetitive conduct caused antitrust injury to TSI.  Because of the repeated false complaints filed by the members of the TP-Amazzia Enterprise against TSI, Amazon permanently expelled TSI from the Marketplace.  TSI has suffered general damages because it now had products it could no longer sell and because Amazon refused to remit to TSI money it had already earned from past sales.  TSI has also suffered special damages such as lost profits, because had it stayed on the Amazon

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

Marketplace, it would have continued to make at least $1-2 million in annual profits for years to come from its re-sale of many different kinds of products, including TP-Link WLAN products.

98.    TSI is also entitled to treble damages and attorney's fees pursuant to the Sherman Act from TP-Link.

**FIFTH CLAIM FOR RELIEF**
**(Sherman Act – Section 2 – Attempted Monopolization, 15 U.S.C. § 2)**
**(Against TP-Link and Amazzia)**

99.    TSI hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

100.    As previously alleged in greater detail, TP-Link engaged in anticompetitive conduct towards TSI.  In addition to being anticompetitive on their face, the type of business torts repeatedly committed by TP-Link against TSI and other third-party sellers would be deemed to be violations of Section 2 of the Sherman Act pursuant to *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002).

101.    As previously alleged in greater detail, TP-Link had the specific intent to achieve monopoly power over several, different relevant markets.

102.    As previously alleged in greater detail, TP-Link did not have a legitimate business purpose for engaging in its anticompetitive conduct.

103.    There was a dangerous probability that TP-Link would achieve its goal of monopoly power over several relevant markets:

a.    As previously alleged in greater detail, TP-Link and TP-Link Tech had a 44.08% global market share for **all** WLAN products for the year 2017. By itself, this market share satisfies the attempted monopolization threshold under Ninth Circuit precedent.  Furthermore, on information and belief, TP-Link and TP-Link Tech had at least a 44% global market share of the market for direct-to-consumer sales of new / factory-sealed consumer WLAN products during the year 2018.

b.     As previously alleged in greater detail, on information and belief, TP-Link and TP-Link Tech had at least a 44% market share of the market for direct-to-consumer sales of new / factory-sealed consumer WLAN products in the United States during the year 2018, as well as the state of New York.

c.     As previously alleged in greater detail, on information and belief, TP-Link and TP-Link Tech had at least a 44% market share of the global, United States, and New York online markets for direct-to-consumer sales of new / factory-sealed consumer WLAN products.

d.     As previously alleged in greater detail, on information and belief, TP-Link and TP-Link Tech had at least a 44% market share of the global, United States, and New York-centered Amazon marketplace for sales of new / factory-sealed consumer WLAN products.

104.   As previously alleged in greater detail, TP-Link's conduct has caused injury to competition and to consumers.

105.   As previously alleged in greater detail, there are high barriers to entry and high capital costs for these relevant markets.

106.   As previously alleged in greater detail, TP-Link's anticompetitive conduct caused antitrust injury to TSI.  Because of the repeated false complaints filed by the members of the TP-Amazzia Enterprise against TSI, Amazon permanently expelled TSI from the Marketplace.  TSI has suffered general damages because it now had products it could no longer sell and because Amazon refused to remit to TSI money it had already earned from past sales.  TSI has also suffered special damages such as lost profits, because had it stayed on the Amazon Marketplace, it would have continued to make at least $1-2 million in annual profits for years to come from its re-sale of many different kinds of products, including TP-Link WLAN products.

107.   TSI is also entitled to treble damages and attorney's fees pursuant to the Sherman Act from TP-Link.

### SIXTH CLAIM FOR RELIEF
#### (Declaratory Judgment of Non-Infringement)
#### (Against TP-Link and Amazzia)

108.   TSI hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

109.   Claims of infringement and counterfeiting by the trademark owners, defendants herein, present a substantial controversy of sufficient immediacy and reality to warrant invocation of the Declaratory Judgment Act, 28 U.S.C. § 2201.

110.   TSI seeks to exercise its property rights and sell online products bearing trademarks belonging to TP-Link and its privies, free of threat of harassment and harm from them and their agents.

111.   TP-Link and Amazzia have harmed TSI as previously alleged in greater detail through claims to third parties of trademark infringement and counterfeiting when, in fact, there were no infringements or trading in counterfeit goods.

112.   This Court's declaration of TSI's right to sell online and at wholesale TP-Link's (and its privies') trademarked goods online will clarify and settle legal relations between the parties, and terminate and afford relief from any uncertainty, insecurity, or controversy.

### PRAYER

**WHEREFORE**, Plaintiff Thimes Solutions, Inc. prays for judgment as follows:

1.   For judgment against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia

2.   For compensatory damages according to proof;

3.   For disgorgement of profits;

4.   For treble damages;

5.   For attorneys' fees;

6.   For costs; and

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

7.      For such other and further relief as the Court deems just and proper.


Dated:  July 8, 2020                    GAW | POE LLP


                                        By:  _____
                                             Mark Poe

                                             Attorneys for Plaintiff
                                             Thimes Solutions, Inc.

[PROPOSED] FOURTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

1    Plaintiff Thimes Solutions, Inc. hereby demand a jury trial for its claims

2 against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a

3 Amazzia.

4

5    Dated:  July 8, 2020                    GAW | POE LLP

6

7                                            By:  _____

8                                            Mark Poe
                                             Attorneys for Plaintiff Thimes
9                                            Solutions, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FOURTH AMENDED COMPLAINT
                                          CASE NO. 2:19-CV-10374-PA-E