Stephen R. Smerek (State Bar No. 208343)
email:  ssmerek@foley.com
Tiffany Kim Sung (State Bar No. 323077)
email:  tsung@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Telephone:  (213) 972-4500
Facsimile:  (213) 486-0065

Attorneys for Defendant
TP LINK USA CORPORATION

Alton G. Burkhalter (State Bar No. 119595)
   aburkhalter@bkcglaw.com
Josh A. Waldman (State Bar No. 222859)
   jwaldman@bkcglaw.com
**BURKHALTER KESSLER
CLEMENT & GEORGE LLP**
2020 Main Street, Suite 600
Irvine, CA 92614-8336
Telephone:  (949) 375-7500
Facsimile:  (949) 975-7501

Attorneys for Defendant
AUCTION BROTHERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | Case No:  2:19-cv-10374-PA (Ex) |
| Plaintiff, | Hon. Percy Anderson |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT (DKT. 113)** |
| TP LINK USA CORPORATION, et al. | |
| Defendants. | |
| | Original Hearing Date:   August 10, 2020 |
| | New Hearing Date:        TBD by Court |
| | Hearing Time:     1:30 p.m. |
| | Courtroom:        Courtroom 9A |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL HISTORY ...................................................................................2

  A. Plaintiff Initially Brought This Case in the Incorrect Venue .........................2

  B. This Court Dismissed First Amended Complaint and Second
    Amended Complaint...................................................................................2

  C. Plaintiff Seeks New Counsel and New Legal Theories ................................3

III.  LEGAL STANDARD ............................................................................................4

IV.   ARGUMENT.........................................................................................................4

  A. Defendants Would Be Substantially Prejudiced By The Fourth
    Amended Complaint...................................................................................4

  B. Plaintiff Has Unduly Delayed in Making the Proposed Amendments
    to the Complaint ........................................................................................7

  C. Plaintiff Has Already Had Numerous Opportunities to Amend the
    Complaint ................................................................................................10

  D. Plaintiff Has Acted in Bad Faith ..............................................................11

  E. The Proposed Amendments Would Be Futile.............................................12

    1. Plaintiff fails to state a claim for false advertising under the
      Lanham Act, 15 U.S.C. § 1125(a)(1)(B). ..........................................13

      a. Plaintiff fails to allege that Defendants made any
        advertisements in a "commercial context."..............................14

      b. Plaintiff fails to demonstrate reliance and the materiality
        of the alleged misstatement. ...................................................15

      c. Plaintiff fails to allege that it has standing to sue under 15
        U.S.C. § 1125(a). ..................................................................16

    2. Plaintiff fails to allege a viable RICO claim under 18 U.S.C.
      § 1962(c). ........................................................................................16

      a. The FAC fails to allege racketeering activity...........................17

      b. Plaintiff fails to allege that Defendants' conduct was the
        proximate cause of its alleged injuries. ...................................19

    3. Plaintiff fails to allege a viable claim for RICO conspiracy
      under 18 U.S.C. § 1962(d)................................................................19

    4. Plaintiff fails to state claims under Section 2 of the Sherman

Act for maintenance of a monopoly and for attempted monopolization...................................................................20

    a.    Plaintiff fails to allege antitrust injury and thus cannot show that it has standing to bring either claim under Section 2 of the Sherman Act. ...............................21

    b.    Plaintiff fails to allege anticompetitive conduct and therefore that Defendants have willfully acquired or maintained monopoly power. ...............................22

    5.    Plaintiff fails to state a claim for declaratory judgment of non-infringement. ..............................................................23

V.    CONCLUSION......................................................................24

4834-3128-9796.4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ................................................................. 7, 10

*Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l*
   *Publ'ns*,
   108 F.3d 1147 (9th Cir. 1997) ................................................................. 22

*AmerisourceBergen Corp. v. Amerx Inc.*,
   465 F.3d 946 (9th Cir. 2006) ................................................................... 5

*California v. Neville Chem. Co.*,
   213 F. Supp. 2d 1142 (C.D. Cal. 2002) ............................................. 12, 24

*Champion Labs., Inc. v. Parker-Hannifin Corp.*,
   2011 U.S. Dist. LEXIS 52853 (E.D. Cal. May 16, 2011) ...................... 13, 15

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
   765 F. Supp. 1467 (C.D. Cal. 1991) ....................................................... 16

*Dexcom, Inc. v. AgaMatrix, Inc.*,
   No. CV 16-05947 SJO, 2017 U.S. Dist. LEXIS 174247 (C.D. Cal. Feb. 3,
   2017) ..................................................................................................... 11

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ........................................................ 16, 17, 18

*Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*,
   411 F. Supp. 3d 905 (N.D. Cal. 2019) ..................................................... 14

*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................................. 4

*Gov't Employees Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ................................................................ 23

*Hanlon v. Hartford Life & Accident Ins. Co.*,
   81 F. App'x 961 (9th Cir. 2003) ............................................................. 13

4834-3128-9796.4

*Harman Int'l Indus. Inc. v. Pro Sounds Gear, Inc.*,
  No. 17-cv-06650-ODW, 2018 WL 1989518 (C.D. Cal. Apr. 24, 2018) ..................... 18

*HM Elecs., Inc. v. R.F. Techs., Inc.*,
  No. 12-cv-2884-MMA-WMC, 2013 WL 12074966 (S.D. Cal. Oct. 3,
  2013) ................................................................................................ 18, 22

*Howard v. America Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ......................................................................... 20

*Image Tech. Servs. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ........................................................................ 23

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) ......................................................... 1, 2, 4, 6, 7

*Learjet, Inc. v. ONEOK, Inc.*,
  715 F.3d 716 (9th Cir. 2013) ..................................................................... 4, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ....................................................................................... 16

*Mai Ngoc Bui v. Ton Phi Nguyen*,
  No. 15-55116, 2017 WL 4653438 (9th Cir. Oct. 17, 2017) ......................... 17

*Mireles v. Paragon Sys.*,
  No. 13cv122 L (BGS), 2014 U.S. Dist. LEXIS 81746 (S.D. Cal. June 16,
  2014) ........................................................................................................ 11, 12

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ......................................................................... 5

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .............................................................................. 19

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015) ........................................................................ 13

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
  156 F. Supp. 3d 1094 (C.D. Cal. 2015) .................................................. 20, 21, 22

*Petzschke v. Century Aluminum Co.* (*In re Century Aluminum Co. Sec.
  Litig.*),
  729 F.3d 1104 (9th Cir. 2013) ........................................................................ 18

-iv-

4834-3128-9796.4

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ................................................................. 20

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
    179 F.3d 704 (9th Cir. 1999) .......................................................... 18, 23

*Royal Ins. Co. of Am. v. Sw. Marine*,
    194 F.3d 1009 (9th Cir. 1999) ............................................................ 8, 11

*Serra v. Lappin*,
    600 F.3d 1191 (9th Cir. 2010) ................................................................ 4

*Sky Billiards, Inc. v. WolVol, Inc.*,
    No. CV 15-02182 RGK, 2016 U.S. Dist. LEXIS 193629 (C.D. Cal. Feb.
    22, 2016) ............................................................................... 14, 15

*Valdez v. Saxon Mortg. Servs.*,
    No. 2:14-cv-03595-CAS(MANx), 2014 U.S. Dist. LEXIS 182640 (C.D.
    Cal. Sep. 29, 2014) ........................................................................ 19

*Xyratex Tech., Ltd. v. Teradyne, Inc.*,
    No. CV 08-04545 SJO, 2009 U.S. Dist. LEXIS 127028 (C.D. Cal. Apr.
    10, 2009) .................................................................................. 5

**Federal Statutes**

15 U.S.C. § 1125(a) .......................................................................... 14, 16

15 U.S.C. § 1125(a)(1)(B) ...................................................................... 13

18 U.S.C. § 1962(c) ............................................................................ 16

18 U.S.C. § 1962(d) ........................................................................ 19, 20

Fed. R. Civ. P. 9(b) ........................................................................ 17, 19

Fed. R. Civ. P. 15 ............................................................................. 1

Fed. R. Civ. P. 15(a) .......................................................................... 4

**Other State Statutes**

N.Y. Gen. Bus. Law § 369-b ................................................................... 17

**Other Authorities**

Local Rule 7-3 ..................................................................................................... 9

4834-3128-9796.4

## I.    INTRODUCTION

A year after Plaintiff first filed this suit, and only after Plaintiff's original claims were dismissed with prejudice, with an order to pay Defendants' attorneys' fees, Plaintiff seeks leave to amend to file a completely new case, with a completely new slew of federal claims never before asserted.  Moreover, as an excuse for the excessive delay, Plaintiff argues that it only just retained new counsel who came up with these new federal claims this past June—more than a year after first filing suit. Rule 15 does not condone this type of gamesmanship, allowing Plaintiff unlimited attempts to plead novel legal theories that "all stem from the same set of facts that [Plaintiff] pled in its previous complaints," when it comes up short.  (Dkt. 113, p. 4.) Plaintiff's conduct simply serves to prove the undue delay and bad faith, and Plaintiff's argument that it just retained new counsel does not excuse its conduct or give it a free pass for a legal do-over.

Defendants have already been substantially prejudiced by this case, having to defend themselves in an improper forum and having to prepare multiple motions to dismiss claims that had no basis.  Permitting Plaintiff to file a Fourth Amended Complaint would only add to this prejudice.  The proposed amendments would alter the nature of this litigation and require additional preparation and motion practice, which would substantially prejudice Defendants.  Additionally, Plaintiff's delay in adding new claims after witnesses have lost further memory has jeopardized Defendants' ability to timely investigate the new claims.  The five additional federal claims should have been brought, if at all, in one of Plaintiff's several previous complaints.

Plaintiff leans hard into the fact that leave to amend is liberally granted. However, "leave to amend is not to be granted automatically."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  Here, evaluating the factors set forth by the Supreme Court and the Ninth Circuit clearly demonstrates that leave to amend should be denied: 1) Defendants would be substantially prejudiced by permitting

4834-3128-9796.4

Plaintiff to file a Fourth Amended Complaint; 2) Plaintiff has engaged in undue delay with respect to the newly proposed claims; 3) Plaintiff has already had numerous opportunities to amend the complaint; 4) Plaintiff's own conduct demonstrates bad faith gamesmanship; and 5) Plaintiff's proposed amendments would be futile.

## II. PROCEDURAL HISTORY

### A. Plaintiff Initially Brought This Case in the Incorrect Venue

Plaintiff commenced this action on May 29, 2019, in the Southern District of New York, alleging three state law claims and a declaratory judgment claim. (Dkt. 1.) Plaintiff amended its Complaint for the first time as a matter of right on July 2, 2019, adding Auction Brothers, Inc. as a defendant, but not adding any federal claims. (Dkt. 32.) Despite numerous requests by Defendants to transfer the case to the proper venue, the Central District of California, Plaintiff delayed proceedings by pursuing the case in New York for six months before agreeing to transfer the case to avoid Defendants' motion to dismiss for lack of personal jurisdiction. Defendants were therefore forced to defend themselves in an improper venue for six months, before Plaintiff finally conceded that a transfer was appropriate. (*See* Dkt. 50.) At no point during these six months did Plaintiff make any suggestion that it intended to seek leave to amend to add any federal claims. Upon transfer to the correct venue on December 6, 2019 (*id.*), Defendant was forced to prepare new motions against Plaintiff's California law claims and newly asserted federal per se antitrust claim (*see* Dkt. 86).

### B. This Court Dismissed First Amended Complaint and Second Amended Complaint

After the case was transferred, the Court dismissed Plaintiff's First Amended Complaint sua sponte for failure to plead facts sufficient to establish complete diversity. (Dkt. 73.) The Court granted Plaintiff leave to amend, but the order only granted Plaintiff the opportunity to "attempt to establish federal subject matter jurisdiction." (*Id.*) In response, Plaintiff filed a Second Amended Complaint, adding

an entirely new claim for per se violation of the federal antitrust laws under Section 1 of the Sherman Act. (Dkt. 78.)  But, again, Plaintiff did not add, or seek leave to add, any of the new federal claims it now seeks to include in the proposed Fourth Amended Complaint.  And, before filing the Second Amended Complaint in California, including its new federal per se antitrust claim, Plaintiff retained new California counsel to assist in prosecuting its case.  Defendants spent considerable time and effort preparing motions to dismiss the Second Amended Complaint in its entirety and to strike Plaintiff's trade libel and tortious interference claims pursuant to California's anti-SLAPP statute. (Dkt. 86.)

## C.   Plaintiff Seeks New Counsel and New Legal Theories

After the Court's Order dismissing the Second Amended Complaint, Defendants agreed to an extension of time for Plaintiff to file a third amended complaint. (Dkt 104.)  Defendants believed that Plaintiff required additional time to evaluate and plead additional facts to support its previously asserted per se antitrust claim to address the shortcomings outlined in the Court's order.  That was not Plaintiff's intention.

On June 29, 2020, Defendants received an email from Plaintiff's newly retained co-counsel, Plaintiff's third set of lawyers, disclosing for the first time that Plaintiff intended to move for leave to assert several entirely new federal claims. Thereafter, on July 8, Plaintiff filed its Third Amended Complaint, but that Complaint included only a single cause of action for declaratory judgment.  Plaintiff elected not to replead its initial federal per se antitrust claim.  Instead, that same day, Plaintiff filed the instant motion for leave to file yet another amended pleading, adding a handful of additional federal claims.  Notably, in its briefing, Plaintiff expressly concedes that "the proposed new claims all stem from the same set of facts that [Plaintiff] pled in its previous complaints." (Dkt. 113, p. 4.)  Yet, there is no explanation for the undue delay in pleading these new claims, no explanation for why Plaintiff elected not to plead these claims in the original Complaint, the First

Amended Complaint, the Second Amended Complaint, or during briefing on the motion to dismiss, and no regard for the substantial prejudice caused by Plaintiff's conduct.

## III.   LEGAL STANDARD

Although the Federal Rules of Civil Procedure state that leave to amend should be freely given when justice so requires (Fed. R. Civ. P. 15(a)), "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). "The power to grant leave to amend … is entrusted to the discretion of the district court." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citation and internal quotation marks omitted). The United States Supreme Court established that motions to amend may be denied if the district court determines there has been a showing of undue delay, bad faith or dilatory motives on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit thus considers five factors in determining whether to grant a plaintiff leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Learjet, Inc. v. ONEOK, Inc.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation omitted).

## IV.   ARGUMENT

Plaintiff should not be permitted to file a Fourth Amended Complaint because of the substantial prejudice that would be imposed on Defendants, Plaintiff's undue delay, Plaintiff's repeated failure to cure deficiencies in previous amendments, Plaintiff's bad faith, and the futility of Plaintiff's amendments.

### A.   Defendants Would Be Substantially Prejudiced By The Fourth Amended Complaint

Plaintiff should not be permitted to amend the Third Amended Complaint because it will substantially prejudice Defendants. The Ninth Circuit has found

sufficient risk of prejudice where the proposed amendments would have altered the nature of the litigation and required defendants to undertake a new course of defense. *See AmerisourceBergen Corp. v. Amerx Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("Allowing [the plaintiff] to 'advance different legal theories and require proof of different facts' …would have prejudiced [the defendant]"); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of motion to amend brought nearly two years after dismissal of original complaint and which sought to bring new federal claims, including a RICO claim). "[T]he Ninth Circuit has found undue prejudice where an amendment would raise different legal theories and require proof of different facts such that additional discovery would have to be undertaken." *Xyratex Tech., Ltd. v. Teradyne, Inc.,* No. CV 08-04545 SJO (PLAx), 2009 U.S. Dist. LEXIS 127028, at *19 (C.D. Cal. Apr. 10, 2009) (citing *AmerisourceBergen Corp.*, 465 F.3d at 953).

Plaintiff's proposed amendments would add five completely new federal claims: one under the Lanham Act, two under the RICO statute, and two under Section 2 of the Sherman Act. (Dkt. 113 at "Notice of Motion.") These are new lines of legal argument as they are wholly unrelated to the previous state law and Section 1 Sherman Act claims asserted by Plaintiff. In fact, Plaintiff does not even attempt to amend the Section 1 Sherman Act claim this Court granted it leave to amend, implicitly conceding that it has no basis to bring such a claim, but instead seeks to add two completely different Sherman Act claims under Section 2. Further, the proposed false advertising claim under the Lanham Act and two RICO claims are based on entirely new statutes and involve different areas of law.

The Ninth Circuit's decision in *Morongo*, 893 F.2d at 1079, is analogous and instructive. In *Morongo*, the plaintiff sought to file an amended complaint adding several new federal claims more than a year after the case was first filed. *Id*. As in the case at hand, the plaintiff sought to add new claims under the RICO statute. *Id*. The Court explained that this would cause a "radical shift in direction." *Id*. The court

found that the new claims "would have greatly altered the nature of the litigation" and would have required the defendants to undertake "an entirely new course of defense." *Id*. The court therefore affirmed denial of leave to amend. *Id*. For the same reasons, this Court should deny Plaintiff's request for leave to amend because Plaintiff seeks to bring five new federal claims over a year after the case was first brought, most of which are under entirely new statutes, and which would require Defendants to undertake a new course of defense.

Moreover, contrary to Plaintiff's assertions, simply because the new claims are based on the same set of facts pled in previous complaints does not mean that Defendants would not "need to do anything materially different to defend themselves against these amendments." (Motion, p. 4.) Defending against these new, unsubstantiated claims would require substantial time and resources, including bringing multiple motions related to them. New claims based upon different statutes necessarily require Defendants to explore different defenses and facts that support those defenses. Further, Defendants have already lost a year in pursuing defenses against these claims, due to Plaintiff's delay. Plaintiff assumes that the facts asserted by it are the only facts that exist in this case, but the truth is that Defendants may need to assert new facts in support of its new defenses, therefore causing Defendants undue prejudice. *See Jackson*, 902 F.2d at 1387-88 (finding undue prejudice where "additional claims advance different legal theories and require proof of different facts").

Defendants would essentially need to restart much of their defense from the beginning, for a third time, all because Plaintiff failed to assert these claims from the beginning. Defendants first had to defend itself in New York, against New York state law claims. Then, after months of unnecessary litigation resulting from Plaintiff's refusal to transfer venue and threats by Plaintiff's lead counsel, Plaintiff agreed to transfer the case to California. (Dkt. 50.) Defendants then filed an amended complaint asserting, without leave from the Court, new California state law claims and

a claim for per se violation of antitrust laws.  (Dkt. 78.)  After Defendants invested substantial resources into developing their strategy and defending against these claims by filing several motions, this Court dismissed substantially all of Plaintiff's claims. (*See* Dkts. 86, 101, and 103.)  Only then, over a year after Plaintiff originally brought this case, did Plaintiff seek to add five new claims based on the same set of facts it based its previous claims on, meaning that Plaintiff could easily have asserted these federal claims in its original complaint.

Plaintiff also retained another set of new attorneys, who apparently will only handle certain matters related to this case, requiring Defendants to keep track of which counsel to contact for each matter.  Allowing Plaintiff to add these new claims would force Defendants to once again develop a new defense strategy to defend against five claims and to now work with opposing counsel from three different firms, that apparently do not intend to work together themselves.  In sum, Plaintiff's motion should be denied because allowing the amendment would substantially prejudice Defendants.

### B.   Plaintiff Has Unduly Delayed in Making the Proposed Amendments to the Complaint

In evaluating undue delay, courts in the Ninth Circuit inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388.  Here, Plaintiff concedes, "the proposed new claims all stem from the same set of facts that [Plaintiff] pled in its previous complaints."  (Motion, p. 4.)  Thus, Plaintiff's new claims for relief are based on the same transactions as the claims dismissed by this Court. Plaintiff cannot justify its failure to assert the newly asserted federal law claims in one of its previous complaints, especially when it suspected previously that it could bring claims for violation of antitrust laws.  *See Allen v. Beverly Hills,* 911 F.2d 367, 374 (9th Cir. 1990) (finding denial of leave to amend proper where "the movant presented no new facts but only 'new theories' and 'provided no satisfactory explanation for his

4834-3128-9796.4

failure to fully develop his contentions originally'" (internal citations omitted)); *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." (internal citations omitted)).

Further, while Plaintiff attempts to downplay the fact that this case been ongoing for over a year by arguing that discovery has not yet commenced, the truth is that the excessive undue delay is entirely attributable to Plaintiff's actions. To excuse its undue delay, Plaintiff argues that it only recently retained new counsel experienced in litigating antitrust claims, over a year after the case was first filed, and six months after first burdening Defendants and this Court with an ill-pleaded federal per se antitrust claim. This is the definition of undue delay, and such conduct cannot be condoned by allowing a legal do-over. Moreover, while newly appearing co-counsel was apparently only retained in June, nowhere does Plaintiff suggest that its originally retained counsel, who is still lead counsel of record, is not capable or competent, nor does Plaintiff argue the new counsel it brought into the case after transfer to the Central District is not capable or competent. The only conclusion is that Plaintiff's actions were calculated gamesmanship, not only undue delay but bad faith as well, affirmatively attempting to sandbag Defendants with delayed claims. There is simply no basis to conclude that Plaintiff has not had capable counsel from the outset of this litigation. Further, any such argument would not excuse the undue delay here; at the very least, Plaintiff should have sought "experienced antitrust counsel" when the case was transferred to California and Plaintiff first asserted its claim for per se violation of federal antitrust laws. (*See* Dkt. 78.) Only after Defendants were forced to engage in motion practice, and only after Defendants successfully dismissed most of Plaintiff's claims, did Plaintiff then seek another set of attorneys seeking to introduce a grab bag of new federal claims that Plaintiff concedes "all stem from the same set of facts that [Plaintiff] pled in its previous complaints." (Motion, p. 4.) Again, this conduct is

affirmative proof of undue delay.  And, Plaintiff cannot argue that the Court did not reach the merits of the case, where the Court essentially considered a summary judgment motion and dismissed several of Plaintiff's claims without leave to amend.

Plaintiff's argument that "the litigation did not take its current form until December 2019" only further proves Plaintiff's undue delay and bad faith. (Motion, p. 5.)  Plaintiff is the author of the complaints.  The fact that the litigation did not include any antitrust claim at all for six months after the case was first filed, is entirely Plaintiff's election.  And, Plaintiff offers no explanation regarding why it could not have pleaded its proposed Lanham Act and RICO claims at that time.  Plaintiff has unduly delayed this litigation from the beginning, refusing to transfer the case to the proper venue for six months.  Plaintiff cannot erase this undue delay, especially where it eventually conceded that the transfer was appropriate. (*See* Dkt. 50.)

And, once again, Plaintiff's arguments regarding the factual bases for its newly proposed claims only further demonstrate undue delay and evidence bad faith. Apparently seeking to minimize the delay, Plaintiff argued that some of the new allegations in the proposed Fourth Amended Complaint are based on deposition testimony in an unrelated action that only became available in January.  But, this argument completely ignores the fact that Plaintiff expressly concedes that all the new claims arise from the same factual allegations contained in its original Complaint. (Motion, p. 4.)  Further, this argument does not explain why Plaintiff did not seek leave to amend the Second Amended Complaint, or disclose to Defendants or the Court that it intended to pursue other additional federal claims in connection with Defendants' Motion to Dismiss the Second Amended Complaint.  Indeed, in accordance with the Local Rule 7-3, on January 30, 2020, Defendants met and conferred with Plaintiff regarding the basis for their Motion to Dismiss, including the reasons why Plaintiff's per se antitrust claim was not well-pleaded.  This meet and confer took place after the deposition identified by Plaintiff, but Plaintiff's counsel did

4834-3128-9796.4

not disclose that it intended to assert any other antitrust claims and made no mention of RICO or the Lanham Act.

### C.   Plaintiff Has Already Had Numerous Opportunities to Amend the Complaint

Plaintiff should not be permitted to file yet another amended complaint because it has already had multiple chances to get it right.  A district court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint." *Allen*, 911 F.2d at 373 (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)); *see Mir*, 646 F.2d at 347 ("[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims.")  "At some point, a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible grounds for relief and should be considered." *Mir*, 646 F.2d at 347.

Plaintiff's argument that it "has not had an opportunity to demonstrate the validity of its proposed claims under the Lanham Act, RICO, and Section 2 of the Sherman Antitrust Act" is plainly incorrect.  (Motion, p. 7.)  Plaintiff had the opportunity to assert its Lanham Act, RICO, and Section 2 Sherman Antitrust Act claims in any of its previously amended complaints.  For example, Plaintiff now seeks to allege that TP-Link USA and Amazzia together form an "enterprise," in violation of the RICO statutes.  (Dkt. 113-2 ("FAC"), ¶ 68.)  Thus, when Plaintiff filed its First Amended Complaint "as a matter of course" to add defendant Auction Brothers, Inc. (Motion, p. 7), Plaintiff could have asserted its RICO claims against both Defendants at that time.  Additionally, when Plaintiff amended its complaint for the second time, alleging for the first time its claim under Section 1 of the Sherman Antitrust Act (Dkt. 78), Plaintiff could have asserted the antitrust claims under Section 2 that it now seeks to add.  This is especially so because at that point, Plaintiff clearly believed there were antitrust violations.  Yet, Plaintiff failed to assert any of its newly proposed claims

during the 13 months that this case was pending.  And, if Plaintiff's excuse can be credited, Plaintiff failed to engage counsel sufficiently experienced to explore and state such antitrust claims, causing prejudice both to Defendants in defending against claims that experienced counsel has apparently concluded has no basis to replead, and the Court in hearing and resolving motions related to the baseless claims.  Plaintiff only sought to assert these entirely new federal claims after the Court dismissed substantially all of its previously asserted claims (Dkt. 103).  *See Royal Ins.,* 194 F.3d at 1017 (finding denial of leave to amend proper where plaintiff "had twice before amended its complaint and moved to amend a third time only after the district court dismissed its claims on summary judgment"); *Learjet*, 715 F.3d at 738 (finding denial of leave to amend proper where plaintiff had previously amended complaint to add additional defendants but waited until after dismissal of its claims to seek leave to amend to add a new theory of liability that plaintiff was aware of since inception of suit).  Because Plaintiff has already had numerous opportunities to amend the complaint and yet repeatedly failed to assert the newly proposed claims, this Court should deny Plaintiff leave to amend.

### D.     Plaintiff Has Acted in Bad Faith

"In the context of a motion for leave to amend, bad faith means acting with intent to deceive, harass, mislead, delay, or disrupt."  *Dexcom, Inc. v. AgaMatrix, Inc.,* No. CV 16-05947 SJO (ASx), 2017 U.S. Dist. LEXIS 174247, at *21 (C.D. Cal. Feb. 3, 2017) (internal quotations omitted).  Evidence indicating a wrongful motive is "sufficient to deny leave to amend on the basis of bad faith."  *Mireles v. Paragon Sys.*, No. 13cv122 L (BGS), 2014 U.S. Dist. LEXIS 81746, at *10 (S.D. Cal. June 16, 2014).

The *Mireles* case is analogous and instructive.  In *Mireles*, the plaintiffs were aware of the facts that gave rise to their newly proposed claim nearly seven months before they filed their motion for leave to amend.  *Mireles*, 2014 U.S. Dist. LEXIS 81746 at *7-8.  The plaintiffs had also had multiple opportunities to raise their newly

proposed claims with the judge but did not, and also offered no justification for their lack of diligence in bringing their new claims. *Id*. at *10. The court found that "there is no suggestion that plaintiffs [] acted reasonably in delaying to bring their motion to amend in a timely manner" and found "evidence indicating a wrongful motive on the part of the plaintiffs sufficient to deny leave to amend on the basis of bad faith." *Id*.

Here, as in *Mireles*, Plaintiff's substantial, unjustified delay in adding the five new federal claims is evidence of bad faith. Plaintiff was aware of the facts underlying these claims for over a year and yet failed to plead these claims initially, or in its First or Second Amended Complaints. Further, Plaintiff even asserted its Section 1 Sherman Act claim without obtaining leave of the Court or seeking experienced counsel, which affirmatively resulted in unnecessary briefing and a claim that Plaintiff has now abandoned entirely. (*See generally* FAC (absence of Section 1 Sherman Act claim).) Nowhere does Plaintiff suggest that its originally retained counsel, who is still counsel of record, was not capable. Thus, the only conclusion is that Plaintiff's lack of diligence in bringing its new claims was pure gamesmanship, indicating bad faith. Plaintiff's bad faith is also evidenced by the fact that none of these claims were mentioned in the earlier briefing for Defendants' Motion to Dismiss the Second Amended Complaint. Because Plaintiff has acted in bad faith in asserting its five new federal claims, this Court should deny leave to amend, as the court did in *Mireles*.

### E.  The Proposed Amendments Would Be Futile

As outlined above, based on the prejudice to Defendants, and the numerous other factors detailed above, Plaintiff's motion for leave should be denied without regard to the alleged merits of the newly asserted claims. However, even a cursory evaluation of the proposed new federal claims demonstrates that the motion for leave should be denied because amendment would be futile. "A proposed amendment is futile if the new claim could be defeated by a motion to dismiss or a motion for summary judgment." *California v. Neville Chem. Co.*, 213 F. Supp. 2d 1142, 1144-45

(C.D. Cal. 2002), citing *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987). "Futility alone can justify a court's refusal to grant leave to amend." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015); *Hanlon v. Hartford Life & Accident Ins. Co.*, 81 F. App'x 961, 961 (9th Cir. 2003) ("Futility of amendment, standing alone, can justify the denial of a motion for leave to amend."). The procedural posture of this Motion prevents Defendants from fulling briefing the merits of the claims (and, in particular, responding in reply to any arguments that Plaintiff may raise in response to this pleading), and Defendants reserve the right to fully brief a motion to dismiss should Plaintiff be granted leave to amend. However, as demonstrated below, each of Plaintiff's five newly proposed claims can be defeated by a motion to dismiss for failure to state a claim and Plaintiff's Motion should therefore be denied.

### 1.     Plaintiff fails to state a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

Plaintiff's first newly proposed claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) is insufficiently pled. To state a claim for false advertising under the Lanham Act, a complaint must set forth non-conclusory facts showing the existence of: (1) a false statement of fact by the defendant in a commercial advertisement about its own product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Champion Labs., Inc. v. Parker-Hannifin Corp.*, 2011 U.S. Dist. LEXIS 52853, 45-46 (E.D. Cal. May 16, 2011) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citations omitted).)

Plaintiff's claim for false advertisement under the Lanham Act is a mismatched repackaging of its state law claims and is ultimately futile because, as stated more fully in Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. 86, p. 7-9), Plaintiff has not actually pleaded any facts that demonstrate that any false statements were made.   Also, separate and apart from this, Plaintiff's efforts to shoehorn its claims into a Lanham Act claim fail because Plaintiff has failed to allege 1) that Defendants made any advertisements in a "commercial context," 2) reliance on and materiality of the alleged misstatement, and 3) that it has standing to sue under 15 U.S.C. § 1125(a).

### a.      Plaintiff fails to allege that Defendants made any advertisements in a "commercial context."

Plaintiff's assertion that Defendants' complaints "were commercial speech by TP-Link and TP-Link competes with [Plaintiff] for direct sales to consumers of consumer WLAN products" (FAC, ¶ 59) is insufficient to allege that Defendants made advertisements in a commercial context.   Plaintiff attempts to base its claim on the idea that Amazon itself is a consumer such that statements made to Amazon constitute commercial speech or that statements made to Amazon were effectively statements made to all potential users of Amazon.   (FAC, ¶¶ 60-61.)   However, courts in this district have found that representations made to Amazon, even if false, "do[] not meet the first element of the Lanham Act's false advertising claim." *Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*, 411 F. Supp. 3d 905, 925 (N.D. Cal. 2019) (quoting *Sky Billiards, Inc. v. WolVol, Inc.*, No. CV 15-02182 RGK (KKx), 2016 U.S. Dist. LEXIS 193629, at *2 (C.D. Cal. Feb. 22, 2016)).

In *Sky Billiards*, the plaintiff argued that the defendant made false allegations of intellectual property infringement to Amazon that led Amazon to remove the plaintiff's products and caused the defendant to gain an unfair economic advantage by eliminating the plaintiff's products as competition. *Sky Billiards,* 2016 U.S. Dist. LEXIS 193629, at *5.   The court found that the plaintiff did not sufficiently allege that

the misleading statement was made in a commercial advertisement "because it [did] not allege [d]efendant made a false statement to consumers." *Id*. at \*6.  The court explained:

> Nowhere in Plaintiff's complaint does it allege Defendant made any representations to consumers concerning Plaintiff's products. Plaintiff only alleges Defendant contacted Amazon and alleged thirty-two of Plaintiff's products violated Defendant's intellectual property rights.  (Pl.'s Compl. ¶ 4, ECF No. 1.)  A reasonable inference cannot be made that by contacting Amazon, Defendant has made a commercial speech for the purpose of influencing consumers.

*Id*. at \*7.  Thus, just as the court in *Sky Billiards* found that the plaintiff failed to state a claim under the Lanham Act, this Court should find that Plaintiff's proposed amendments regarding the false advertising under the Lanham Act fail to state a claim and would be futile.

### b.      Plaintiff fails to demonstrate reliance and the materiality of the alleged misstatement.

The second and third elements of a Lanham Act claim are that the allegedly false statement "actually deceived or has the tendency to deceive a substantial segment of its audience" and was "material, in that it is likely to influence the purchasing decision" of the defendant's customers.  *Champion Labs*, 2011 U.S. Dist. LEXIS 52853 at 44-46 n. 20 (quotations omitted).  In other words, a false advertising claim requires that the Plaintiff allege some facts regarding "how the consumer views the advertisement or how it directly impacts consumer choice." *Id.* at 45.  In addition to its failure to identify a statement that is false, the proposed FAC fails to set forth any specific facts as to how a purported false statement made to Amazon would reach Defendants' customers.  As discussed *infra* § IV.E.1.a., a statement made to Amazon cannot qualify as a representation to consumers.  Thus, Plaintiff has failed to plead

facts sufficient to show that any alleged statements made by Defendants influenced the purchasing decision of consumers.

### c.  Plaintiff fails to allege that it has standing to sue under 15 U.S.C. § 1125(a).

A plaintiff suing for false advertising under 15 U.S.C. § 1125(a) must (1) allege an injury to a commercial interest in reputation or sales; and (2) show that such injury was proximately caused by defendant's misrepresentations.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32, 137 (2014).  Plaintiff has not alleged that any injury it suffered was proximately caused by Defendants' statements to Amazon.  Rather, Plaintiff's allegations indicate that its injuries were caused by its own failure during the Amazon appeal process.  (FAC ¶ 46.)  Plaintiff alleges that it was able to get reinstated to the Amazon Marketplace but was later expelled.  (*Id*.)  In its proposed FAC, Plaintiff removed the details of the Amazon appeal process that were included in its previous amended complaints and that would show that Plaintiff was given an opportunity to prove the authenticity of its products, but was unable to do so.  Plaintiff's injuries were thus caused by its own failure to authenticate its products, not by Defendants' complaints to Amazon.

### 2.  Plaintiff fails to allege a viable RICO claim under 18 U.S.C. § 1962(c).

Plaintiff's claim for Civil RICO (18 U.S.C. §1962(c)) is unsupported by factual allegations in the FAC.  "In order to state a RICO claim for violation of 18 U.S.C. § 1962(c), a plaintiff must allege (1) the conduct, (2) of an 'enterprise' affecting interstate commerce, (3) through a 'pattern,' (4) of 'racketeering activity.'"  *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1473 (C.D. Cal. 1991) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496, 498 (9th Cir. 1985)).  "In addition, the conduct must be (5) the proximate cause of harm to the victim."  *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

### a. The FAC fails to allege racketeering activity.

"'Pattern of racketeering activity' is a defined term and requires at least two acts of 'racketeering activity,' the so-called predicate acts." *Salinas*, 522 U.S. at 62 (citing 18 U.S.C. § 1961(5)). When the predicate acts are alleged to be wire fraud under § 1343, Plaintiff must allege three elements: "(A) the formation of a scheme to defraud, (B) the use of the [] wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)). Also, the Ninth Circuit has made it clear that the Rule 9(b) heightened pleading standard applies to RICO claims based on wire fraud. *See Mai Ngoc Bui v. Ton Phi Nguyen*, No. 15-55116, 2017 WL 4653438, at *2 (9th Cir. Oct. 17, 2017).

Plaintiff has not plausibly alleged a scheme to defraud or that Defendants had the specific intent to defraud. The proposed FAC indicates an innocent, alternative explanation for Defendants action – protecting TP-Link USA's intellectual property interests – which would render Plaintiff's claim insufficiently pled. As the proposed FAC itself states, Amazon notified Plaintiff that "an intellectual property complaint had been made by TP-Link against [Plaintiff] that it was selling counterfeit versions of the AC5400 router." (FAC ¶ 39.) Defendants had a genuine belief that Plaintiff's products were counterfeits due to lack of warranty protection, and was simply acting to protect its intellectual property interests. Plaintiff's allegations establish that it is not an authorized reseller of TP-Link products (FAC, ¶ 35), and the proposed FAC does not plead any *facts* to establish that products sold by Plaintiff include the full bundle of rights associated with genuine TP-Link products, including the original manufacturer's warranty.[1] Thus, the facts pleaded in the FAC fail to demonstrate that

---

[1] As explained previously, Plaintiff's reliance on N.Y. Gen. Bus. Law § 369-b to support its arguments that its products came with the original manufacturer's warranty is inapposite. Further, it would be a legal conclusion that should be excluded in this determination. *Eclectic Props.*, 751 F.3d at 996 (citing *Iqbal*, 556 U.S. at 679).

the products sold by Plaintiff are not counterfeit products, materially different from those sold by authorized distributors.[2]   Accordingly, Plaintiff's allegations establish that Defendants had a good faith basis for their alleged complaints to Amazon, as opposed to an intent to defraud Amazon.  Because there is a plausible and innocuous alternative explanation for Defendants' actions, Plaintiff has not "met [its] burden to do '[s]omething more' to 'render [its] allegations plausible within the meaning of *Iqbal* and *Twombly*.'"  *Eclectic Props.*, 751 F.3d at 999 (quoting *Petzschke v. Century Aluminum Co.* (*In re Century Aluminum Co. Sec. Litig.*), 729 F.3d 1104, 1108 (9th Cir. 2013)).  "When faced with two possible explanations, only one of which can be true and only one of which results in liability, [Plaintiff] cannot offer allegations that are 'merely consistent with' [its] favored explanation but are also consistent with the alternative explanation."  *Petzschke*, 729 F.3d at 1108 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, *see Twombly*, 550 U.S. at 554, in order to render [Plaintiff's] allegations plausible within the meaning of *Iqbal* and *Twombly*."  *Id.*

Plaintiff places much emphasis on its proposed allegation that Defendants sent complaints to Amazon before Plaintiff's products were delivered to TP-Link USA. (FAC ¶ 40-42, 75.)   However, this allegation, even if true, does not show that Defendants had the specific intent to defraud.  Defendants discovered that Plaintiff,

---

[2] "Differences in warranties or services accompanying a trademarked product may constitute material differences." *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-cv-2884-MMA-WMC, 2013 WL 12074966, at *3 (S.D. Cal. Oct. 3, 2013).  The sale of materially different products constitutes trademark counterfeiting. *See, e.g., Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 707-10 (9th Cir. 1999) (finding "[w]hen an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached"); *Harman Int'l Indus. Inc. v. Pro Sounds Gear, Inc.*, No. 17-cv-06650-ODW (FFMx), 2018 WL 1989518, at *4 (C.D. Cal. Apr. 24, 2018) ("Because the distinction between using a duplication verses using an original has no relevance, where, as here, there is deceptive practices so as to create consumer confusion, the product itself becomes a counterfeit." (internal quotation marks and alteration omitted)).

4834-3128-9796.4

1   who was not an authorized reseller (FAC ¶ 35) was selling TP-Link branded products

2   on Amazon, without any notice to customers that Plaintiff's products did not carry the

3   original manufacturer's warranty that genuine TP-Link products carry.[3]   Defendants

4   did not need to inspect the actual product to determine that there was no notice

5   regarding the warranty; it would be apparent from the product listing.

6         Further, to the extent Plaintiff relies on its statements made "[o]n information

7   and belief," these allegations are unavailing.  (*See, i.e.,* ¶¶ 36, 45, 50.)  "[A] plaintiff

8   who makes allegations on information and belief must state the factual basis for the

9   belief" to comply with the Rule 9(b) heightened pleading standard.   *Neubronner v.*

10   *Milken,* 6 F.3d 666, 672 (9th Cir. 1993).   Thus, these statements do nothing to show

11   that Defendants were involved with any wrongdoing in connection with the

12   allegations in the lawsuit.

13
14           **b.**    **Plaintiff fails to allege that Defendants' conduct was the proximate cause of its alleged injuries.**

15         As explained *supra* § IV.E.1.c., Plaintiff alleges that it was able to get reinstated

16   to the Amazon Marketplace but was then expelled.  (FAC ¶ 46.) Plaintiff's allegations

17   indicate that its injuries were caused by its own failure during the Amazon appeal

18   process.  (*Id*.)  Plaintiff's injuries were thus caused by its own failure to authenticate

19   its products, not by Defendants' complaints to Amazon.

20
21           **3.**    **Plaintiff fails to allege a viable claim for RICO conspiracy under 18 U.S.C. § 1962(d).**

22         "To establish a violation of Section 1962(d), Plaintiff must allege either an

23   agreement that is a substantive violation of RICO or that the defendants agreed to

24   commit, or participated in, a violation of two predicate offenses." *Valdez v. Saxon*

25   *Mortg. Servs.*, No. 2:14-cv-03595-CAS(MANx), 2014 U.S. Dist. LEXIS 182640, at

26

27   [3] Plaintiff's allegation that its products carry the manufacturer's warranty indicates

28   that it did not give notice to its customers that the original manufacturer's warranty does not apply to its products. (FAC, ¶ 23.)

OPPOSITION TO MOTION FOR LEAVE
TO FILE FOURTH AMENDED COMPLAINT
CASE NO:  2:19-CV-10374-PA (EX)

4834-3128-9796.4

*39 (C.D. Cal. Sep. 29, 2014) (internal quotations omitted) (quoting *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)).  "At the pleading stage, a plaintiff claiming a RICO conspiracy must allege that the defendant knew about and agreed to facilitate conduct that violated RICO."  *Id*.  Plaintiff fails to allege a viable claim for RICO Conspiracy under 18 U.S.C. § 1962(d) because Plaintiff has not adequately pled a substantive violation of RICO, as explained in § IV.E.2.  *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we find that [Plaintiff] has failed to allege the requisite substantive elements of RICO, the conspiracy cause of action cannot stand.")  Further, Plaintiff has not pleaded that Defendants knew about or agreed to facilitate wire fraud.  Rather, Plaintiff has pleaded that Defendants agreed to protect TP-Link USA's intellectual property rights.  Therefore, Plaintiff has failed to sufficiently plead a claim for RICO conspiracy and Plaintiff's amendments would be futile.

4.    **Plaintiff fails to state claims under Section 2 of the Sherman Act for maintenance of a monopoly and for attempted monopolization.**

To state a claim for unlawful monopolization under § 2 of the Sherman Act, "Plaintiff must allege that: '(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury.'"  *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, 156 F. Supp. 3d 1094, 1103 (C.D. Cal. 2015) (quoting *Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996)).  To state a claim for attempted monopolization under § 2 of the Sherman Act, "Plaintiff must adequately plead: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the

4834-3128-9796.4

monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Novation*, 156 F. Supp. 3d at 1103 (quoting *Cost Mgmt.*, 99 F.3d at 949-50).

> **a.** **Plaintiff fails to allege antitrust injury and thus cannot show that it has standing to bring either claim under Section 2 of the Sherman Act.**

"To establish antitrust injury, the Ninth Circuit has held that a plaintiff must establish four elements: '(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Novation*, 156 F. Supp. 3d at 1101. Plaintiff alleges that it has suffered antitrust injury because Defendants' complaints to Amazon caused Plaintiff to be expelled from the Amazon marketplace. (FAC ¶ 97.) Plaintiff essentially alleges that it was injured as result of being foreclosed from the market. However, even if adequately pleaded, this injury is only relevant to one of the four markets Plaintiff alleges TP-Link has monopoly power over – "the global, United States, and New York-centered ***Amazon marketplace*** for sales of new / factory-sealed consumer WLAN products." (*See* FAC ¶¶ 90.d. (emphasis added).) As for the other allegedly relevant markets (direct-to-consumer sales of new / factory-sealed consumer WLAN products in the 1) global, 2) U.S. and New York, and 3) online markets), Plaintiff has not pleaded "any *facts* demonstrating that it has actually been foreclosed from the opportunity of competing in the relevant product market." *Novation*, 156 F. Supp. 3d at 1102. Plaintiff has not pleaded any facts demonstrating how Defendants alleged complaints to Amazon prevented Plaintiff from competing in the global, U.S., and online markets for WLAN products.

Plaintiff's bare allegations of "injury to competition and to consumers" from "supracompetitive prices" and the reduced output of products to consumers is similarly insufficient to establish standing. (*See* FAC ¶ 94.) First, "harm to *consumers* by way of increased prices … is not an injury-in-fact that *competitors* suffer." *Novation*, 156 F. Supp. 3d at 1101 (internal quotations omitted). Rather,

competitors benefit from an increase in market prices. Second, any alleged injury to competition resulting from Defendants' alleged complaints to Amazon would again be limited to the Amazon market for WLAN products, not any of Plaintiff's other three alleged markets.  Thus, as for the 1) global, 2) U.S. and New York, and 3) online markets), Plaintiff "has failed to identify any injury that it has suffered that is of the type that the antitrust laws were designed to prevent." *Id*. at 1102.

With regard to the Amazon market for WLAN products, as explained previously, Plaintiff's allegations show that it was Plaintiff's own failure to authenticate its products during the Amazon appeals process that resulted in its expulsion, not Defendants' alleged complaints.  Plaintiff has therefore failed to allege any antitrust injury for any of its four alleged markets and thus does not have standing to bring claims under the Sherman Act.

> **b.  Plaintiff fails to allege anticompetitive conduct and therefore that Defendants have willfully acquired or maintained monopoly power.**

For false advertising to constitute exclusionary conduct, as Plaintiff alleges, it must "overcome a presumption that the effect on competition … was de minimis." *Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns*, 108 F.3d 1147, 1152 (9th Cir. 1997).  "[A] plaintiff may overcome de minimis presumption by cumulative proof that the representations were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Id*.  (internal quotations omitted).  As explained *supra* §§ IV.A.E.1., Plaintiff has not alleged facts sufficient to show that Defendants' alleged complaints to Amazon were clearly false, material, or likely to induce reasonable reliance.  Defendants' alleged complaints that Plaintiff's products were counterfeit were not false because a lack of original manufacturer's warranty can render a product non-genuine.  *HM Elecs.*, 2013 WL

12074966, at *3; *Rolex*, 179 F.3d at 707-10.   In addition, Plaintiff's allegations demonstrate that Defendants' alleged complaints were not clearly material or likely to induce reasonable reliance because Amazon conducts its own review and appeals process before expelling a seller.  (FAC, ¶ 46.)  Further, Plaintiff has not alleged that Defendants' alleged statements were "made to buyers without knowledge of the subject matter."  Plaintiff has not alleged that Defendants made any statements to buyers whatsoever, but rather, only to Amazon.  Even if Amazon was considered a "buyer," Amazon has knowledge of the subject matter of Defendants' alleged complaints and also has the ability to investigate, as evidenced by Plaintiff's successful appeal.  (*Id.*)  Plaintiff has therefore failed to allege anticompetitive conduct, rendering the FAC futile as to the Sherman Act claims.

Further, even if Plaintiff had adequately alleged anticompetitive conduct, the FAC indicates that TP-Link USA had a legitimate business reason for making its complaints to Amazon.  (FAC, ¶ 39.)  "When a legitimate business justification supports a monopolist's exclusionary conduct, that conduct does not violate § 2 of the Sherman Act."  *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997).  TP-Link USA's legitimate business reason was to protect its intellectual property rights.

### 5. Plaintiff fails to state a claim for declaratory judgment of non-infringement.

A lawsuit seeking federal declaratory relief under the Declaratory Judgment Act cannot proceed unless the plaintiff first establishes an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution that would give it standing.  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998).  Plaintiff has failed to plead any facts that would give it standing under the Declaratory Judgment Act and its claim should therefore be dismissed, as more fully set out in Defendants' Motion to Dismiss the Third Amended Complaint. (Dkt. 118.)  Because Plaintiff's claim could be defeated by a motion to dismiss, the

1  FAC is futile and leave to amend should be denied.  *See Neville Chem. Co.*, 213 F.
2  Supp. 2d at 1144-45.

3  **V.     CONCLUSION**

4       For the foregoing reasons, Defendants respectfully request that this Court deny
5  Plaintiff's Motion for Leave to File a Fourth Amended Complaint.

<u>**ATTESTATION CLAUSE**</u>

8       Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer of this document attests that all
9  of the signatories listed, and on whose behalf the filing is submitted, concur in the
10  filing's content and have authorized the filing.

13  DATED:  August 3, 2020        **FOLEY & LARDNER LLP**

14                                */s/Stephen R. Smerek*
15                                Stephen R. Smerek
                                  Tiffany Kim Sung
16                                FOLEY & LARDNER LLP
17                                *Attorneys for Defendant*
                                  *TP Link USA Corporation*

19                                **BURKHALTER KESSLER**
                                  **  CLEMENT & GEORGE LLP**

21                                */s/Josh A. Waldman*
                                  Alton G. Burkhalter
22                                Josh A. Waldman
                                  BURKHALTER KESSLER
23                                  CLEMENT & GEORGE LLP
24                                *Attorneys for Defendant*
                                  *Auction Brothers, Inc.*