| | |
|---|---|
| MARK POE (S.B. #223714)<br>mpoe@gawpoe.com<br>RANDOLPH GAW (S.B. #223718)<br>rgaw@gawpoe.com<br>VICTOR MENG (S.B. #254102)<br>vmeng@gawpoe.com<br>GAW \| POE LLP<br>4 Embarcadero Center, Suite 1400<br>San Francisco, CA 94111<br>Telephone: (415) 766-7451<br>Facsimile: (415) 737-0642 | MARK SCHLACHET (*pro hac vice*)<br>markschlachet@me.com<br>3515 Severn Road<br>Cleveland, OH 44118<br>Telephone: (216) 225-7559<br>Facsimile: (216) 932-5390<br><br>CHRISTOPHER J. HAMMOND<br>(S.B. #150024)<br>chammond@bizlawpro.com<br>21540 Prairie Street, Unit A<br>Chatsworth, CA 91311<br>Telephone: (866) 625-2529<br>Facsimile: (866) 463-9285 |

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>    Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>    Defendant. | Case No. 2:19-cv-10374-PA-E<br><br>**THIMES SOLUTIONS INC.'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge:    The Hon. Percy Anderson<br>Courtroom:  Courtroom 9A<br>Date:    August 31, 2020<br>Time:    1:30 pm |

## INTRODUCTION

TSI has a justiciable "case or controversy" under the Declaratory Judgment Act based on its real and reasonable apprehension that TP-Link, using Amazzia to eliminate competitors under the guise of "brand protection," will do anything to prevent TSI from selling TP-Link products on the Amazon Marketplace or other distribution channels. This apprehension is amply supported by TSI's allegations. TSI bought 360 TP-Link routers and was selling them on Amazon below TP-Link's minimum advertised price. Defendants then lodged a barrage of 25+ complaints to Amazon within a six-month period falsely accusing TSI of selling counterfeit products and infringing TP-Link's trademark, despite having confirmed that the TP-Link products TSI was lawfully selling were authentic and factory-sealed. Defendants' unlawful conduct caused Amazon to expel TSI from its marketplace and prevented TSI from selling the TP-Link routers in its inventory. Given this conduct, it is reasonable for TSI apprehend that Defendants will take any means to restrict TSI from further selling TP-Link products. This matter is therefore properly before the Court, and dismissal is neither warranted nor appropriate as a matter of law. The Court should deny the motion to dismiss.

As a matter of judicial economy, Defendants' motion is also likely moot—given TSI's pending motion for leave to file a Fourth Amended Complaint (ECF No. 113), Rule 15 and the Ninth Circuit's strong presumption favoring amendments, and the lack of any evidence that would support overriding that presumption. *See* Fed. R. Civ. P. 15(a)(2) ("court should freely give leave when justice so requires."); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (policy favoring amendments should be applied with "extreme liberality"); *Harris v. Wells Fargo Bank, N.A.*, No. 16-cv-645 JGB (KKx), 2016 WL 11525309, at *5 (C.D. Cal. Aug. 18, 2016) ("Because the Court is granting in part Plaintiffs' motion for leave to file a Second Amended Complaint, Wells Fargo's motion to dismiss the First Amended Complaint is DENIED AS MOOT.").

# ARGUMENT

Under the Declaratory Judgment Act, a party to a "case of actual controversy" may petition a federal court to "declare the rights and other legal relations" of the parties to the controversy. 28 U.S.C. § 2201(a). Courts first inquire whether there is "an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). If so, the court then determines whether to exercise DJA jurisdiction by analyzing a number of prudential factors. *Id.*

The requirement for a "case of actual controversy" under the DJA is "identical to Article III's constitutional case or controversy requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). The DJA permits suit "once the adverse positions [of the parties] have crystallized and the conflict of interests is real and immediate." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The difference between an actual controversy and one seeking an impermissible advisory opinion is "'necessarily one of degree,' and is determined on the totality of the circumstances." *Sobini Films v. Tri-Star Pictures Inc.*, No. 01-cv-06615 ABC (RNBx), 2001 WL 1824039, at *2 (C.D. Cal. Nov. 21, 2001).

For intellectual property disputes in the Ninth Circuit, a case or controversy exists when, because of the defendant's actions, the plaintiff has "a real and reasonable apprehension that [it] will be subject to liability" if it continues the conduct in dispute. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555-56 (9th Cir. 1989). An explicit threat of litigation is not necessary under the real and reasonable apprehension test. *Rhoades v. Avon Prods., Inc.*, 504

F.3d 1151, 1157 (9th Cir. 2007); *San Diego County Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1155-56 (S.D. Cal. 2018). Rather, this is a "flexible approach that is oriented to the reasonable perceptions of the plaintiff." *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982). As such, "[t]he acts of the defendant [are] ... examined in view of their likely impact on competition and the risks imposed upon the plaintiff." *Id.*

### A. Defendants' Barrage of False Complaints Created an Actual Case or Controversy.

Defendants contend that TSI is seeking "an improper advisory opinion regarding past conduct or possible future conduct" because it "has not alleged any inclination to continue selling TP-Link branded products on Amazon, or that it is currently selling any TP-Link branded products online through other distribution channels." (Mot. at 6, 7.) This cannot be reconciled with TSI's allegations.

TSI is in the business of legally buying and re-selling authentic, factory-sealed products in a manufacturer's original packaging. (Third Amended Complaint ("TAC") (ECF No. 112) ¶ 20.) It has sold over 175,000 of such products on the Amazon Marketplace since 2016, with a 98% positive feedback rating. (*Id.* at ¶ 22.) TSI was generating up to $500,000 of monthly revenue before Defendants' unlawfully caused Amazon to expel TSI from its marketplace. (*Id.*) On January 8, 2018, TSI purchased 360 TP-Link routers from a reputable distributor it has dealt with extensively and offered them for sale on Amazon. (*Id.* ¶ 37.) Ten days later, a TP-Link employee bought one of the routers from TSI and—before receiving the product—lodged a complaint with Amazon under penalty of perjury falsely accusing TSI of selling counterfeit products. (*Id.* ¶¶ 38-39.) Defendants lodged another false accusation with Amazon two days later, followed by 25 more between January 21 and June 21, 2018, falsely accusing TSI of selling counterfeit products and infringing TP-Link's trademark. (*Id.* ¶¶ 39-42.) Defendants knew that their accusations were baseless because TP-Link had ordered

the products from TSI and confirmed that they were authentic and factory-sealed. (*Id.* ¶ 45.) Defendants' barrage of false complaints caused Amazon to first suspend, then expel, TSI from the Amazon Marketplace. (*Id.* ¶¶ 46-47.) Given the totality of circumstances, it is reasonable for TSI to perceive "a real and reasonable apprehension" it will be subject to liability if it continues selling the TP-Link routers in its inventory through other channels of e-commerce. *Hal Roach Studios, Inc.*, 896 F.2d at 1555-56.

Contrary to Defendants' contention, TSI's allegations do not "concern past and hypothetical future conduct." (Mot. at 8.) It defies reason to suggest that TSI, given its business model and its record of successful sales on the Amazon Marketplace, lacks the "inclination to continue selling" the TP-Link routers in its inventory through other online marketplaces. Indeed, the idea seemed so obvious that it did not even need to be stated.[1] (*Id.* at 6; TAC ¶¶ 20-22, 37.) Moreover, the Ninth Circuit requires courts to evaluate the reasonableness of **TSI's** perceptions of Defendants' conduct "to determine if the threat perceived by the plaintiff were real and reasonable." *Chesebrough-Pond's, Inc.*, 666 F.2d at 396. Here, by repeatedly and falsely accusing TSI selling counterfeit products and infringing on TP-Link's trademark, despite confirming for themselves that TSI was selling authentic, factory-sealed products (ECF 112 at ¶ 45), Defendants have shown that they will take any means to eliminate competitors like TSI from selling products, in any online channel, below TP-Link's minimum advertised price. There can be no real dispute that TSI has a "reasonable apprehension that [it] will be subject to liability" if it continues selling the products in question. *Sobini Films*, 2001 WL 1824039, at *2. Defendants' repeated and unlawful attempts to restrict TSI's legitimate sales

---

[1] If need be, TSI is willing to allege in an amended complaint that it has previously engaged in wholesale sales of products to other Amazon re-sellers and that it wants to sell its remaining TP-Link inventory to other Amazon re-sellers, but cannot do so unless TSI indemnifies these re-sellers against similar complaints of counterfeiting made by Defendants.

1  make clear that this Court is the only appropriate forum empowered to decide all of
2  the issues between these parties.

### B. Ninth Circuit Precedent Militates Against Dismissing TSI's Declaratory Judgement Claim.

The Ninth Circuit's decision in *Societe de Conditionnement en Aluminium* is instructive. 655 F.2d at 940-941, 944-945. The defendant there competed with plaintiff in manufacturing and selling metal working machinery and told a third-party buyer that plaintiff's equipment would infringe on defendant's forthcoming patent. *Id.* at 940-941. The *Societe* court held that the defendant's contacting the third-party buyer caused the plaintiff's reasonable apprehension of liability and therefore established a prima facie case or controversy. *Id.* at 945. The Ninth Circuit further held that it was irrelevant that the defendant later withdrew the threat of litigation and found it significant that the defendant did not affirmatively agree to not sue the plaintiff. *Id.* at 945.

The Ninth Circuit in *Chesebrough-Pond's, Inc.* has also held that something less than an actual threat of lawsuit can create a reasonable apprehension of liability. 666 F.2d at 397. There, the defendant sent the plaintiff a letter requesting it withdraw an application to register a trademark and stating that it would file an opposition proceeding in the Patent and Trademark Office if plaintiff did not comply. *Id.* at 396. Although the letter did not threaten suit, the Ninth Circuit still held that the plaintiff "had a real and reasonable apprehension that such action would be taken," and allowed the declaratory judgment claim to proceed. *Id.* at 397.

Under these principles, Defendants' unyielding barrage of complaints to Amazon falsely accusing TSI of selling counterfeit products was "sufficient to put [TSI] in a defensive posture with respect to its continued [sales of TP-Link products]" and instilled in TSI a real and reasonable apprehension of liability. *Societe*, 655 F.2d at 944. Further, despite complaining about "hypothetical future

1  conduct" (Mot. at 7, 8), Defendants have not affirmatively stated that it would not
2  pursue claims against TSI if it were to continue selling TP-Link products below the
3  minimum advertised price. (*See* Mot.) "Indeed, even where a party has stated that
4  it has no plans to sue for infringement, if its course of conduct demonstrates a
5  preparedness and willingness to enforce its rights otherwise, a case or controversy
6  exists." *Wong v. Hard Drive Prods., Inc.*, No. 12-cv-469-YGR, 2012 WL 1252710,
7  at *3 (N.D. Cal. Apr. 13, 2012). As noted, courts must examine Defendants'
8  conduct "in view of their likely impact on competition and the risks imposed upon
9  the plaintiff." *Chesebrough-Pond's, Inc.*, 666 F.2d at 396. Here, dismissing the
10 declaratory judgment claim would only leave TSI with the "Damoclean threat" of
11 liability hanging over its head, which is precisely what the DJA is designed to
12 relieve. *Societe*, 655 F.2d at 943 ("The Declaratory Judgment Act was designed to
13 relieve potential defendants from the Damoclean threat of impending litigation
14 which a harassing adversary might brandish, while initiating suit at his leisure or
15 never.").

16 It also does not help Defendants to contend that TSI failed to allege that its
17 "relationship with Amazon would change if Plaintiff prevailed." (Mot. at 1.)
18 Determining whether an actual controversy exists depends on the totality of the
19 circumstances." *Sobini Films*, 2001 WL 1824039, at *2. Here, TSI alleged that it
20 was expelled from Amazon because of Defendants' barrage of counterfeiting
21 accusations. (TAC ¶ 47.) Defendants have failed to cite to any authority showing
22 that, as a matter of law, one cannot infer that a judicial declaration of TSI's right to
23 lawfully sell TP-Link's products would materially affect Amazon's decision.
24 Defendants also say that TSI's allegations "affirmatively establish[] that …
25 Amazon ***permanently*** prohibited [TSI] from selling products on Amazon." (Mot. at
26 6 (emphasis original).) Not so. In context, that term juxtaposes the allegation in the
27 previous paragraph concerning TSI's suspension and reinstatement, before "the four
28 additional false complaints filed by [Defendants] after TSI's reinstatement finished

OPPOSITION TO JOINT MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

the job." (TAC ¶¶ 46-47.)

Defendants' reliance on *Sobini Films* is likewise misplaced. Plaintiff there sought a declaration of non-infringement of defendant's trademarked character, and the court held that plaintiff failed to present a justiciable case or controversy because (i) it had "not engaged in sufficient activity to constitute concrete steps to engage in present activity that could amount to infringement" and (ii) plaintiff "was not 'immediately prepared' to produce" the film containing defendant's trademarked character. *Sobini Films*, 2001 WL 1824039, at *17-18. Unlike the plaintiff in *Sobini Films*, TSI has taken "concrete steps to engage in present activity"—by having purchased 360 TP-Link routers for resale—and is "immediately prepared" to sell the products remaining in its inventory. Contrary to Defendants' assertion, the Court's resolution of TSI's declaratory judgment claim will resolve an actual controversy between the parties, and enable TSI to determine if it can continue selling its products without a "real and reasonable apprehension that [it] will be subject to liability." *Id.* at *2.

The Federal Circuit's decision in *Windsurfing Int'l, Inc. v. AMF Inc.* also does not help Defendants. 828 F.2d 755 (Fed. Cir. 1989). There, AMF alleged that it was interested in using the contested mark but had avoided using it and instructed its dealers not to use the term. *Id.* at 758. The Federal Circuit concluded that AMF's "mere desire" to use the mark did not "constitute a course of conduct placing [it] in a legally adversarial conflict" with plaintiff, and thus AMF impermissibly asked the court for an advisory opinion. *Id.* at 759. Unlike AMF, TSI is not merely "interested" in selling TP-Link products. It was actually doing so (successfully) before Defendants' unlawful conduct "put [TSI] in a defensive posture" and caused it to reasonably apprehend liability. *Societe*, 655 F.2d at 944.

### C. The Court Should Exercise Its Discretion To Settle All Aspects of the Controversy Between TSI and Defendants.

The Court's exercising DJA jurisdiction is further supported by consideration

1    of the prudential factors, which include: discouraging forum shopping, avoiding
2    duplicative litigation, determining if the declaratory action will "settle all aspects of
3    the controversy" or "is being sought merely for the purposes of procedural fencing
4    or to obtain a 'res judicata' advantage," and "the availability and relative
5    convenience of other remedies." *Principal Life Ins. Co.*, 394 F.3d at 669; *Gov't
6    Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225, n.5 (9th Cir. 1998).

7        Here, there are no state law issues, and there is no evidence of duplicative
8    litigation, forum shopping, or procedural fencing.  Indeed, Defendants concede that
9    only one of the prudential factors are at issue here.  (Mot. at 8.)  They contend that
10   TSI's claim "would not settle all aspects of the controversy" because "[TSI's]
11   allegations concern ***past*** and hypothetical ***future*** conduct that a declaratory
12   judgment of non-infringement would not resolve."  (Mot. at 8.)  As noted, there is
13   nothing "hypothetical" about whether TSI wants to sell the aging TP-Link routers in
14   its inventory or the reasonableness of its apprehension that it will be subject to
15   liability if it continues selling TP-Link routers below the minimum advertised price.
16   (*Supra* Section II.A); *Chesebrough-Pond's, Inc.*, 666 F.2d at 396 ("*Societe* thus
17   requires a flexible approach that is oriented to the reasonable perceptions of the
18   plaintiff."); *Sobini Films*, 2001 WL 1824039, at *2 ("the declaratory judgment
19   plaintiff must have a 'real and reasonable apprehension that he will be subject to
20   liability' if he commences or continues the activity in question.").

21       Furthermore, declaratory relief is appropriate in the in the Ninth Circuit
22   "(1) when the judgment will serve a useful purpose in clarifying and settling the
23   legal relations in issue, and (2) when it will terminate and afford relief from the
24   uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw-*
25   *Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966).
26   Here, a declaratory judgment will provide TSI immediate certainty regarding its
27   legal rights as to its resale of the TP-Links products.  Absent a declaratory
28   judgment, TSI will be left with the uncertainty of whether it can lawfully pursue a

OPPOSITION TO JOINT MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-PA-E

business activity that it has a right to do, *i.e.*, re-sell authentic, factory-sealed TP-Link products. This is the type of "'dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883-884 (Fed. Cir. 2008). The Court should exercise its discretion to entertain TSI's declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss TSI's Third Amended Complaint.

Dated: August 10, 2020

GAW | POE LLP

By: _____
Randolph Gaw
Attorneys for Plaintiff
Thimes Solutions Inc.