Stephen R. Smerek (State Bar No. 208343)
email:  ssmerek@foley.com
Tiffany Kim Sung (State Bar No. 323077)
email:  tsung@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Telephone:  (213) 972-4500
Facsimile:  (213) 486-0065

Attorneys for Defendant
TP LINK USA CORPORATION

Alton G. Burkhalter (State Bar No. 119595)
Email: aburkhalter@bkcglaw.com
Joshua A. Waldman (State Bar No. 222859)
Email: jwaldman@bkcglaw.com
**BURKHALTER KESSLER**
  **CLEMENT & GEORGE LLP**
2020 Main Street, Suite 600
Irvine, CA 92614-8336
Telephone:  (949) 375-7500
Facsimile:  (949) 975-7501

Attorneys for Defendant
AUCTION BROTHERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | Case No:  2:19-cv-10374-SB (Ex) |
| Plaintiff, | Hon. Stanley Blumenfeld, Jr. |
| v. | **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| TP LINK USA CORPORATION, et al. | |
| Defendants. | |
| | Fed. R. Civ. P. 12 |
| | Hearing Date:  November 9, 2020 |
| | Hearing Time:  1:30 p.m. |
| | Courtroom:  Courtroom 6C |
| | FAC Filed:  September 7, 2020 |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL HEREIN:**

**PLEASE TAKE NOTICE** that on November 9, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6C before the Honorable Stanley Blumenfeld, Jr. of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California, Defendants TP Link USA Corporation ("TP-Link") and Auction Brothers, Inc. d/b/a Amazzia ("Amazzia"), will move and hereby do move this Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for an Order dismissing each of the claims asserted in the Fourth Amended Complaint filed by Thimes Solutions, Inc. ("Plaintiff") on September 7, 2020, Dkt. No. 126.

Specifically, Defendants seek an order:

(1) Dismissing Plaintiff's claims against TP-Link for maintenance of a monopoly and attempted monopolization under 15 U.S.C. § 2 pursuant to FRCP 12(b)(6) for failing to plead facts sufficient to demonstrate: (i) a relevant product market; (ii) market power or a dangerous probability of developing market power through either direct or circumstantial evidence; and (iii) causal antitrust injury; and

(3) Dismissing Plaintiff's declaratory judgment claim pursuant to FRCP 12(b)(6) on the grounds that: (i) there is no case or controversy warranting the Court's declaratory judgment jurisdiction; and (ii) the relevant Declaratory Judgment Act factors weigh against exercise of jurisdiction.

This Motion is based upon this Notice of Motion; the attached Memorandum of Points and Authorities; the Proposed Order re Motion; the Request for Judicial Notice; and the Proposed Order re Request filed and submitted concurrently herewith; and upon such oral or documentary evidence or testimony that may be presented to this Court at or before the hearing on this Motion.

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4

**Compliance with Local Rule 7-3**

The Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on Monday, September 14, 2020.


DATED: September 29, 2020          **FOLEY & LARDNER LLP**

                                   */s/Stephen R. Smerek*
                                   Stephen R Smerek
                                   Tiffany Kim Sung
                                   FOLEY & LARDNER LLP
                                   *Attorneys for Defendant*
                                   *TP Link USA Corporation*

                                   **BURKHALTER KESSLER**
                                     **CLEMENT & GEORGE LLP**

                                   */s/Josh Waldman*
                                   Alton G. Burkhalter
                                   Josh Waldman
                                   BURKHALTER KESSLER
                                     CLEMENT & GEORGE LLP
                                   *Attorneys for Defendant*
                                   *Auction Brothers, Inc.*

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................. 1

II.  FACTUAL BACKGROUND.................................................................. 2

III. 12(b)(6) LEGAL STANDARD .............................................................. 3

IV.  ARGUMENT........................................................................................ 4

    A.   Plaintiff Fails to State a Claim for Maintenance of Monopoly or
    Attempted Monopolization Under Section 2 of the Sherman Act ................. 4

        1.   Plaintiff Fails to Adequately Allege a Relevant Product Market ........ 5

        2.   The Fourth Amended Complaint Fails to Plead Facts Sufficient
        to Show Market Power or a Dangerous Probability of
        Achieving Market Power ........................................................ 9

            a.   Plaintiff Fails to Plead Direct Evidence of Market Power ........ 9

            b.   Plaintiff Fails to Plead Circumstantial Evidence of
            Market Power...................................................... 12

        3.   Plaintiff Fails to Allege Causal Antitrust Injury ................................. 16

    B.   Plaintiff Fails to Establish that Subject Matter Jurisdiction Exists for
    Its Declaratory Judgment Cause of Action ................................... 18

        1.   There is no present case or controversy.......................................... 18

        2.   The relevant DJA factors weigh against exercise of jurisdiction. ....... 21

V.   CONCLUSION................................................................................... 22

4821-4715-2843.4

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................4

*Axiom Advisers & Consultants, Inc. v. Sch. Innovations & Advocacy, Inc.*,
   2006 U.S. Dist. LEXIS 11404 (E.D. Cal. Mar. 20, 2006)..........................14

*Bayer v. Neiman Marcus Grp.*,
   861 F.3d 853 (9th Cir. 2017) .......................................................18, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................4

*Church & Dwight Co, Inc. v. Mayer Labs., Inc.*,
   868 F. Supp. 2d 876 (N.D. Cal. 2012) ...............................................10

*Dominick v. Collectors Universe, Inc.*,
   2012 U.S. Dist. LEXIS 179703 (C.D. Cal. December 18, 2012)..........9, 10, 12, 15

*Fontana Fasteners, Inc. v. Foremost Threaded Prods.*,
   No. ED CV 16-846-SJO(AJWx), 2016 WL 9459245 .................................4

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003) ..........................................................16

*Gov't Emples. Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ........................................................22

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .......................................................5, 8

*Image Tech. Servs. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ..........................................................9

*LiveUniverse, Inc. v. MySpace, Inc.*,
   No. CV 06-6994 AHM, 2007 U.S. Dist. LEXIS 43739 (C.D. Cal. June 4, 2007) ............................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Malava, LLC v. Innovative Grp. Holdings, Inc.*,
   No. 09cv173 WQH (WVG), 2010 U.S. Dist. LEXIS 123968, 2010 WL
   4868024 (S.D. Cal. Nov. 22, 2010) .................................................................. 20

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................................... 5

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
   156 F. Supp. 3d 1094 (C.D. Cal. 2015) ....................................................... 4, 17

*O'Hagins, Inc. v. M5 Steel Mfg., Inc.*,
   276 F. Supp. 2d 1020 (N.D. Cal. 2003) ........................................................... 21

*Patent Category Corp. v. Worldwide Creations*,
   CV 06-7560 RGK FFMx, 2007 U.S. Dist. LEXIS 68685, 2007 WL
   2667428 ............................................................................................................ 14

*PNY Techs., Inc. v. SanDisk Corp.*,
   2012 U.S. Dist. LEXIS 55965 (N.D. Cal. April 20, 2012)........................... 13, 14

*Rebel Oil Co. v. Atlantic Richfield, Co.*,
   51 F.3d 1421 (9th Cir. 1995) .........................................4, 5, 7, 10, 14, 15, 16

*Sobini Films v. Tri-Star Pictures, Inc.*,
   No. CV 01-06615 ABC, 2001 U.S. Dist. LEXIS 23509 (C.D. Cal. Nov.
   21, 2001) ..................................................................................................... 18, 19

*Staley v. Gilead Scis., Inc.*,
   2020 U.S. Dist. LEXIS 36747 (N.D. Cal. March 3, 2020)............................... 6, 7

**Federal Statutes**

Fed. R. Civ. P. 12(b)(1)................................................................................... 19, 21

Fed. R. Civ. P. 12(b)(6)...................................................................................... 4, 5

4821-4715-2843.4

## I.   INTRODUCTION

Plaintiff's fifth attempt at stating a viable cause of action against Defendants fares no better than its previous attempts.  In this fifth go-around, Plaintiff asserts claims for monopolization and attempted monopolization against Defendants under Section 2 of the Sherman Act.  However, the Fourth Amended Complaint's lack of factual allegations sufficient to identify a sustainable product market or establish TP-Link's market power within that market are fatal to Plaintiff's antitrust claims.

With respect to the relevant product market, the Fourth Amended Complaint pleads that Plaintiff sold TP-Link branded AC5400 and AC1200 wireless routers, but differently defines the relevant product markets to include all "consumer WLAN products."  Notably, the Fourth Amended Complaint neither defines the identified product markets to include only the types of wireless routers Plaintiff allegedly sold, nor alleges what products Plaintiff contends constitute "consumer WLAN products." If not limited to wireless routers, what products are included?  Further, Plaintiff does not plead any facts to establish the interchangeable nature of wireless routers and the broad category of "consumer WLAN products".  This failure to adequately define a sustainable product market is fatal to both claims under Section 2 of the Sherman Act.

Separately, the facts pleaded, even if true, do not establish that TP-Link has monopoly power or that there is a dangerous probability that TP-Link will develop monopoly power over any relevant market.  The only facts pleaded regarding market power arise from a press release about the *global* market share of WLAN products. However, because Plaintiff has not sufficiently defined the consumer WLAN product market, any allegations regarding TP-Link's share of that market do not establish market power.  Further, narrowing the product market to WLAN routers, such as those sold by Plaintiff, cannot save the Fourth Amended Complaint because there are no facts alleged that, if true, would establish that TP-Link has monopoly power or that there is a dangerous probability that TP-Link will develop monopoly power in that market.

4821-4715-2843.4

As for its declaratory judgment claim for non-infringement, Plaintiff's added allegations regarding its sales of non-TP-Link products and discussions regarding *potential* sales of TP-Link products does not create a case or controversy under the Declaratory Judgment Act.  Because the Fourth Amended Complaint is devoid of any factual allegations to support Plaintiff's claims, it should be dismissed in its entirety.

## II.   FACTUAL BACKGROUND

Plaintiff alleges that TP-Link has monopoly power over "consumer WLAN products," but offers no factual allegations regarding what products actually fall within the "consumer WLAN products" market, including whether it includes or excludes enterprise or internet service provider (ISP) WLAN products.  (Dkt. 126 ("FAC") at ¶ 58.)  The only WLAN products mentioned in the Fourth Amended Complaint are two wireless routers—the TP-Link AC5400 and AC1200 routers—that Plaintiff alleges it sold on the Amazon Marketplace, and another wireless router—the TP-Link AX6000 WiFi 6 router—that  Plaintiff alleges is available on Amazon, PC Nation, Best Buy, and NewEgg.  (FAC at ¶¶ 6, 40, 47.)  The Fourth Amended Complaint does not plead any facts regarding the interchangeability of these, or any other wireless routers, and any other consumer WLAN products.[1]

The only *factual* allegation in the Fourth Amended Complaint related to market power is that a distinct, global TP-Link entity, which is not a defendant in this case, "had a 44.08% global market share for WLAN products for the year 2017."  (*Id*. at ¶ 19.)  There are no facts regarding the market share of this distinct TP-Link entity in 2018, or regarding defendant TP-Link's market share of wireless routers, such as

---

[1]  Notably, a simple search for WLAN products or wireless local area network products on the Amazon website – the platform Plaintiff references in the Fourth Amended Complaint as the basis for its claims – yields literally thousands of results including products as far ranging as WiFi adapters, antennas, range extenders, switches and hotspots, to voip phones, security cameras, doorbells, door locks, and thermostats, to desktops, laptops, and mobile handheld computers, to printers, external drives, and more.   And, yes, also wireless routers.   *See* https://www.amazon.com/s?k=wireless+local+area+network+products&ref=nb_sb_noss.

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4

1 those allegedly sold by Plaintiff.  The Fourth Amended Complaint is also devoid of

2 any factual allegations regarding TP-Link's ability to limit the supply of consumer

3 WLAN products by restricting its own output, or any entry barriers that would prevent

4 competing manufacturers from entering the consumer WLAN product market.[2]

5      Regarding its own sales, Plaintiff alleges that it purchases large volumes of

6 products from distressed sellers at steeply discounted, below-market prices (FAC at ¶

7 7) and that it purchased 360 TP-Link branded AC5400 routers from a supplier it has

8 dealt with extensively (*id*. at ¶ 39).   However, Plaintiff again does not reveal the

9 identity of the source of its purported TP-Link branded products at issue here.  Nor

10 does the Fourth Amended Complaint include the prices at which Plaintiff sold the

11 AC5400 routers.  As for specific prices, the Fourth Amended Complaint only includes

12 the MAP price of one TP-Link router, which Plaintiff does not allege that it sells.  (*Id*.

13 at ¶ 6.)   Plaintiff also again fails to actually identify any specific, registered

14 trademarks, or products, that allegedly form the basis for its request for declaratory

15 judgment of noninfringement.

16      The Fourth Amended Complaint also reveals that Plaintiff failed to satisfy

17 Amazon's request for proof that the products Plaintiff was selling were genuine

18 products in compliance with Amazon's policies.  (*Id*. at ¶¶ 48-49.)  Amazon thereafter

19 permanently expelled Plaintiff from its platform without appeal rights.  (*Id*. at ¶ 49.)

20 Plaintiff does not name Amazon as a defendant, or include any allegations that, if true,

21 would establish that declaratory judgment in favor of Plaintiff would alter the

22 permanent ban Amazon has placed on Plaintiff.

23 **III.   12(b)(6) LEGAL STANDARD**

24      Under Fed. R. Civ. P. 12(b)(6), a claim should be dismissed if the complaint

25 "fail[s] to state a claim upon which relief can be granted."  To state a claim for relief

26

27 _____
[2] Again, a simple search of the Amazon website reveals a multitude of manufacturers offering consumer WLAN products for sale, including numerous companies selling
28 wireless routers.

-3-

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

that is facially plausible, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotations omitted).  "Pleadings that contain nothing more than legal conclusions or 'a formulaic recitation of the element of a cause of action' are insufficient."  *Fontana Fasteners, Inc. v. Foremost Threaded Prods.*, No. ED CV 16-846-SJO(AJWx), 2016 WL 9459245, at *1 (quoting *Iqbal*, 556 U.S. at 678).

## IV.   ARGUMENT

### A.   Plaintiff Fails to State a Claim for Maintenance of Monopoly or Attempted Monopolization Under Section 2 of the Sherman Act

To plead a valid claim for maintenance of monopoly under § 2 of the Sherman Act, "Plaintiff must allege that: '(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury.'" *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, 156 F. Supp. 3d 1094, 1103 (C.D. Cal. 2015) (quoting *Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996)). To state a claim for attempted monopolization under section 2 of the Sherman Act, Plaintiff must sufficiently plead four elements: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil Co. v. Atlantic Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

Common to both tests, to state a valid claim for monopolization or attempted monopolization under the Sherman Act, Plaintiff must plead a "relevant market" and facts that, if true, establish either monopoly power or a dangerous probability of

4821-4715-2843.4

achieving monopoly power in that market.  *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) ("Plaintiffs must plead a relevant market to state an antitrust claim under the Sherman Act, unless they assert a per se claim.").  *See also Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 & n3 (9th Cir. 2008) ("In order to state a claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market."); *Rebel Oil*, 51 F.3d 1421 (reviewing the proposed market definition, and evidence of market power, in ruling on plaintiff's claim for attempted monopolization under Section 2 of the Sherman Act).  Plaintiff has failed to sufficiently plead either.

### 1.    Plaintiff Fails to Adequately Allege a Relevant Product Market

"'[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable.'" *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018), quoting *Newcal Indus., Inc. v. Ikon Office Sol.* 513 F.3d 1038, 1045 (9th Cir. 2008).  To adequately plead a claim under the Sherman Act, a plaintiff must plead a relevant market that includes both a product market and geographic market. *Hicks*, 897 F.3d at 1120.  The product market must encompass the product and all economic substitutes, which are products with "a reasonable interchangeability of use or sufficient cross-elasticity of demand." *Id.* (internal quotations omitted).

Plaintiff vaguely pleads four separate markets, but the product market defined by each of these is the "consumer WLAN products" market.  (FAC at ¶ 58.) However, Plaintiff provides no factual allegations regarding the reasonable interchangeability of use or cross-elasticity of demand between the different products encompassed by the "consumer WLAN products" market. *Brown Shoe,* 370 U.S. at 325 ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.").  Plaintiff has not alleged facts establishing that other

4821-4715-2843.4

consumer WLAN products are interchangeable with the routers it sells or mentions in the Fourth Amended Complaint, potentially rendering the alleged product market impermissibly broad because it encompasses non-interchangeable products.[3]

The court's decision in *Staley v. Gilead Scis., Inc.*, 2020 U.S. Dist. LEXIS 36747 (N.D. Cal. March 3, 2020) is instructive.  In *Staley*, an alleged product market was a broad market "for cART drugs generally." *Id*. at 89.  The complaint did not explain "what exactly the cART product market" was, although it explained that "cART stands for combination antiretroviral therapy, that it is the modern means of treating HIV, and that it often consists of two NRTIs and a third agent." *Id*. at 92. The court found that plaintiff did not "adequately allege a cART market" because plaintiff did not explain "how there is reasonable interchangeability of use with respect to different cART drugs." *Id*.  For instance, the plaintiff did not explain "which cART drugs are included and which are not…." *Id*. at 92, n. 31.

Like the plaintiff in *Staley*, although Plaintiff notes that "WLAN" stands for "wireless local area network" (FAC at ¶ 4), Plaintiff makes no attempt to identify which products fall into the "new/factory-sealed consumer WLAN products" market. In fact, Plaintiff's allegations fare much worse than the insufficient allegations in *Staley* because unlike in *Staley*, Plaintiff does not even explain the purpose of WLAN products or generally what they consist of.  The only products identified in the Fourth Amended Complaint are TP-Link branded wireless routers.  (FAC at ¶¶ 6, 40, 47.) However, because there are no facts pleaded regarding the purpose of WLAN products, the Fourth Amended Complaint does not state a clear market definition limited to consumer WLAN products interchangeable with wireless routers.  As set forth above, a search for WLAN products on the Amazon website reveals hundreds of products — including laptop computers, printers, voip phones, smart plugs and

---

[3] Even if Plaintiff limits its definition of the relevant product market to wireless routers, Plaintiff's claim fails because Plaintiff has not alleged any facts that demonstrate that TP-Link has market power in the wireless router market.

lightbulbs, security cameras, thermostats, door locks, and video doorbells, door locks, and thermostats — that the Fourth Amended Complaint does not, and cannot, allege are interchangeable with wireless routers.  Further, Plaintiff has not alleged that consumers would purchase one type of WLAN product, such as a smart plug or video doorbell, in place of another type of WLAN product, such as a router, nor would it be plausible to do so.  Likewise, although Plaintiff arbitrarily excludes enterprise products from its alleged market, Plaintiff does not plead any facts that could demonstrate that merely because a product is an enterprise product, it would not be interchangeable with other WLAN products.  (FAC at ¶ 58.a.)  And, the facts alleged also do not indicate whether WLAN products sold through other distribution channels, such as through internet service providers, would be included or any facts establishing that such products would not be interchangeable with other WLAN products.  Plaintiff has therefore failed to allege "how there is reasonable interchangeability of use with respect to different [WLAN products]" and Plaintiff's alleged markets therefore fail for this reason alone.  *Staley,* 2020 U.S. Dist. LEXIS 36747 at 92.

The product market must also take into account supply elasticity, which is determined by considering whether "producers of product X can readily shift their production facilities to produce product Y." *Rebel Oil,* 51 F.3d at 1436.  If so, then sales of both products should be included in the relevant market. *Id.*  An example of such products is found in *Rebel Oil*, where "full-serve gasoline" at "full-serve pumps" could easily be converted, "at virtually no cost, into self-serve, cash-only pumps." *Id*.  Here, Plaintiff has not alleged, nor is it reasonable to conclude, that producers of products such as WiFi doorbells or security cameras would be able to shift their production facilities to produce wireless routers at virtually no cost.  Plaintiff has not alleged that there is supply elasticity among the wide range of WLAN products.  Thus, Plaintiff's alleged markets, which all include "new/factory-sealed consumer WLAN products," is over-inclusive in this regard.

4821-4715-2843.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Further, the alleged product market is definitively under-inclusive to the extent Plaintiff purports to limit it by distribution channel or end user.  In *Hicks*, the court found that a market defined as live action advertising (advertising during golf tournaments) did not encompass economic substitutes because companies could simply advertise through other channels such as search engines or social media platforms. *Hicks*, 897 F.3d at 1121.  Similarly, Plaintiff's attempts to limit the product market by sales channels (i.e., to online or to the Amazon Marketplace) fails because they do not encompass economic substitutes such as physical stores or other well-known websites such those hosted by Best Buy, Newegg, or Fry's Electronics.[4]  The facts pleaded do not indicate that WLAN products sold on Amazon or other online retailers are not interchangeable with the same products sold in Best Buy brick and mortar stores, and there are therefore no facts pleaded to support excluding these products from the "consumer WLAN products" market.  And, again, there are no facts pleaded to support excluding routers, or other WLAN products, obtained from internet service providers.

The Fourth Amended Complaint also fails to plead facts to support a global or New York geographic market for "consumer WLAN products."  "The geographic market extends to the 'area of effective competition' . . . where buyers can turn for alternative sources of supply." *LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994 AHM (RZx), 2007 U.S. Dist. LEXIS 43739, at *10 (C.D. Cal. June 4, 2007).  There is no factual basis in the Fourth Amended Complaint to support a global or New York geographic market.  Taking the facts pleaded as true, consumer WLAN products like Plaintiff's wireless routers, are sold on the Amazon platform and on U.S. retailer platforms and brick and mortar stores such as Best Buy.  (FAC at p 6.)  There are no allegations that Plaintiff sold WLAN products overseas or in New York, or that the effective market to which buyers can turn for alternative sources of supply is global or

---

[4] Plaintiff itself admits that Best Buy and NewEgg offer wireless routers on their websites.  (*See* FAC at ¶ 6.)

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4

limited to New York. Specifically with regard to New York, there are no factual allegations that buyers cannot purchase WLAN products from another state if there is no supply available in New York. Thus, geographic markets limited to the global or New York markets are improper.

Because Plaintiff has only specifically identified wireless routers within the "consumer WLAN products" market (FAC at ¶¶ 6, 39, 47, and 66), and because the Fourth Amended Complaint does not allege any facts regarding the geographic market to support any market but the United States market, the only plausible market that Plaintiff might be able to plead, but has not here, would be the United States market for interchangeable wireless routers. However, as discussed *supra*, Plaintiff has failed to plead facts sufficient to establish that TP-Link owns a dominant share of this market.

### 2. The Fourth Amended Complaint Fails to Plead Facts Sufficient to Show Market Power or a Dangerous Probability of Achieving Market Power

Market power can be shown by either direct or circumstantial evidence. *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997); *Dominick v. Collectors Universe, Inc.*, 2012 U.S. Dist. LEXIS 179703, *10 (C.D. Cal. December 18, 2012). The facts pleaded in the Fourth Amended Complaint establish neither.

### a. Plaintiff Fails to Plead Direct Evidence of Market Power

Under the direct evidence test for market power, "a plaintiff must allege both restrictive output and supracompetitive prices." *Dominick*, 2012 U.S. Dist. LEXIS 179703 at *10. While the Fourth Amended Complaint parrots the legal terms, the facts pleaded, even if true, do not establish restrictive output or supracompetitive prices in the relevant market. Thus, Plaintiff has failed to plead plausible claims under Section 2 of the Sherman Act based on direct evidence of market power.

4821-4715-2843.4

### (i)   Plaintiff fails to adequately allege restrictive output.

"Restrictive output exists only when a defendant can limit **marketwide output** by reducing its own output." *Dominick*, 2012 U.S. Dist. LEXIS 179703 at *10 (emphasis added). This reduction in output must be enough to increase **marketwide prices**, because "[w]ithout market power to increase prices above competitive levels, and sustain them for an extended period, a predator's actions do not threaten consumer welfare." *Rebel Oil*, 51 F.3d at 1434. Here, Plaintiff does not allege any reduction in TP-Link's output, let alone a reduction significant enough to increase *marketwide* prices of consumer WLAN products. Plaintiff only pleads that TP-Link wrongfully prevented it from reselling TP-Link products acquired from distressed distributors without informing customers that Plaintiff is not an authorized distributor. (*See* FAC at ¶¶ 6-7, 10.) While TP-Link denies that it has engaged in any improper conduct in protecting its intellectual property rights and consumers, the facts alleged do not establish that TP-Link restricted its own output, or materially restricted output in the market for WLAN routers or consumer WLAN products. Nor does Plaintiff allege that other competitors are unable to increase their output of WLAN routers or products if TP-Link reduces its output, such that the overall marketwide output is reduced.

Even in the light most favorable to Plaintiff, Plaintiff's allegations only extend to reducing its own ability to resell TP-Link branded products purchased from distressed distributors (*id.* at ¶ 20), which is insufficient to allege restrictive output. In *Church & Dwight Co. v. Mayer Labs., Inc.*, 868 F. Supp. 2d 876, 896 (N.D. Cal. 2012), the counterclaimant claimed that the counterdefendant violated the Sherman Act through its use of planogram agreements, which "offer[ed] a percentage rebate off its wholesale price in exchange for a retailer's commitment to devote a certain percentage of [] shelf space to [the counterdefendant's] products." Although the planogram agreements drove some competitors out of the market, the court found that

4821-4715-2843.4

this was not evidence of reduced output because there was no evidence that the counterclaimant "used such a program to restrict *its own*, and hence the market's, output." *Id* (emphasis added). In the same way, at most, Plaintiff only alleges that it lost its own ability to sell on Amazon. Nowhere does Plaintiff allege that TP-Link restricted its own output. Thus, Plaintiff's allegations are insufficient to demonstrate restrictive output.

Further, Plaintiff's allegation that there is "a dearth of … 'small and medium sized businesses [] legally selling [consumer WLAN products] in [Amazon's] store at competitive prices'" is inapposite. *Id*. Even if it were true, that there are less small and medium sized businesses selling WLAN products does not necessarily equate to restricted output. The Fourth Amended Complaint does not allege any facts that, if true, demonstrate Plaintiff's inability to sell 360 AC5400 routers on Amazon led to reduced output that could not be easily met by other sellers. Likewise, Plaintiff's allegation that consumers were forced to buy TP-Link consumer WLAN products due to a lack of alternatives because TP-Link eliminated "multiple businesses that sold a wide variety of consumer WLAN products" focuses only on gray market resellers. (*See* FAC at ¶ 64.) There are no allegations that TP-Link has taken any action regarding other manufacturers or resellers of any other brands of interchangeable WLAN routers or other consumer WLAN products. There is no alleged reason why consumers would not be able to purchase another company's WLAN products from another reseller or from another company directly, just as they would purchase TP-Link products from other resellers or TP-Link directly. Thus, Plaintiff has failed to allege facts to plausibly support an inference of restrictive output.

### (ii)    Plaintiff fails to adequately allege supracompetitive prices.

Plaintiff also fails to plead any facts to support its bare allegation that TP-Link charges supracompetitive prices. Plaintiff alleges that it purchased TP-Link branded wireless routers from distressed sellers at steeply discounted, below-market prices

-11-

(FAC at ¶ 7).  Thus, the fact that TP-Link sells these products at higher prices than third parties may be able to obtain from distressed distributors (for example, those in bankruptcy), even if true, does not demonstrate supracompetiive prices.  Plaintiff offers no authority for this proposition.

Indeed, Plaintiff has offered no facts that, even if true, would establish that TP-Link's prices are "artificially high."  Plaintiff has provided no factual allegations regarding the actual pricing of WLAN products among competitors that would show that TP-Link's prices are "artificially high," let alone supracompetitive.  Plaintiff does not allege that TP-Link's prices are higher than any others in the relevant market and in fact, a search of "wireless router" on Amazon.com reveals prices ranging from less than fifty dollars to over seven hundred dollars (nearly triple the market prices Plaintiff baldly alleges are supracompetitive), with a TP-Link wireless router defining the low end of the price range.[5]  Thus, Plaintiff's conclusory allegations are insufficient to support a claim that TP-Link's prices are supracompetitive.

### b.    Plaintiff Fails to Plead Circumstantial Evidence of Market Power

"Under the circumstantial-evidence test, a plaintiff must (1) define the relevant market; (2) show that the defendant owns a dominant share of that market; and (3) show that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run."  *Dominick*, 2012 U.S. Dist. LEXIS 179703 at *11 (internal quotations omitted) (quoting *Rebel Oil*, 51 F.3d 1421 at 1434).  Plaintiff has failed to adequately plead facts to support a finding of any of the three elements of the circumstantial-evidence test and has thus failed to state a claim under Section 2 of the Sherman Act.  As discussed *supra*, Plaintiff has failed to adequately define a relevant product market.  Further, as discussed *infra*, Plaintiff has not pled any facts to support a finding of the remaining two elements required to

---

[5] *See* TP-Link's concurrently filed Request for Judicial Notice at ¶ 4 and Exhibit C.

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4

satisfy the circumstantial-evidence test of market power—dominant market share and significant barriers to entry.

**(i)**      **Plaintiff fails to adequately allege that defendants own a dominant share of any relevant markets.**

The Fourth Amended Complaint lacks factual allegations that demonstrate that TP-Link owns a *dominant* share of any of the allegedly relevant "consumer WLAN product" markets. "[G]enerally, courts require a 65% market share to establish a prima facie showing of monopolistic market power." *PNY Techs., Inc. v. SanDisk Corp.*, 2012 U.S. Dist. LEXIS 55965, *28 (N.D. Cal. April 20, 2012) (citing *Image Tech.*, 125 F.3d at 1206). Plaintiff's only factual allegation as to TP-Link's market share relies on a press release that states that the global TP-Link entity "had a 44.08% global market share for WLAN products for the year 2017." (FAC at ¶ 19.) Moreover, this market share allegation relates to a press release that does not identify the specific products, or assert that they are interchangeable, so cannot support a relevant product market, issued by a global TP-Link entity that is not named in the Fourth Amended Complaint and does not sell product in the United States. Finally, even the 44.08% global market share referenced in the press release is far less than the 65% market share generally required by courts to plead actual monopolization.

The press release relied upon by Plaintiff also falls far short regarding any dangerous probability of achieving market power in any relevant market in support of Plaintiff's attempted monopolization claim. The facts pleaded do not establish that the press release covers any relevant market, and thus the facts pleaded, even if true, do not support Plaintiff's attempted monopolization claim. First, the press release addresses market share in 2017, but Plaintiff claims that TP-Link had a monopoly in 2018. (FAC at ¶¶ 19, 58.a.) Plaintiff must therefore allege facts to show that TP-Link had a monopoly in the relevant market in 2018, but there are no facts pleaded to indicate that the 44% market share in 2017 carried over to 2018. Next, the press release addresses the "global market share," but the only relevant market is the U.S.

-13-

market.  (FAC at ¶ 19.)  Finally, the press release generally references WLAN products, and there are no facts pleaded that, if true, would demonstrate that this reference establishes a valid, sustainable product market for purposes of the Sherman Act.  As detailed above, there are no facts pleaded to support limiting the market share for all WLAN products to routers or other interchangeable products that would define a sustainable product market.  (*Id*.)[6]

### (1)   Plaintiff fails to allege a dangerous probability of monopolization.

Plaintiff's attempted monopolization claim requires Plaintiff to plead a "dangerous probability of monopolization" by Defendants.  *Rebel Oil*, 51 F.3d at 1434.  "Whether there is a dangerous probability of monopolization depends on the relevant market and the defendant's ability to lessen or destroy competition in that market."  *Patent Category Corp. v. Worldwide Creations*, CV 06-7560 RGK FFMx, 2007 U.S. Dist. LEXIS 68685, 2007 WL 2667428, *4 (C.D. Cal. May 7, 2007) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455-56 (1993)).  As explained *supra*, Plaintiff fails to set forth any non-conclusory facts to define an applicable relevant market here.

Even assuming, arguendo, Plaintiff adequately pleads a relevant market wherein TP-Link controls a high market share (it does not), **a "dangerous probability of achieving monopoly power" cannot exist in the absence of "barriers to new entry or expansion."**  See Am. Prof'l, 108 F.3d at 1154 (emphasis added).  Here, as discussed *infra*, the Fourth Amended Complaint does not include any allegations suggesting that companies wishing to enter the relevant market are unable to do so as

---

[6] Again, even a simple search on Amazon.com for wireless routers produces results for thousands of products, sold by over 20 separate providers, with prices ranging from under fifty dollars to several hundred dollars.  Any reasonably diligent, good faith investigation of relevant facts regarding the WLAN product market in United States, available from numerous third party sources, would reveal that TP-Link's U.S. dollar market share is less than 10%, with market leader Netgear controlling roughly 50% of the market, in a highly competitive marketplace with competition from brands such as Linksys, Arrus, Asus, Google, and Apple, among others.

a result of barriers to entry.  *See Axiom Advisers & Consultants, Inc. v. Sch. Innovations & Advocacy, Inc.*, 2006 U.S. Dist. LEXIS 11404, at \*20-21 (E.D. Cal. Mar. 20, 2006) (because plaintiff "failed to allege the other factors that must be considered in determining [defendant's] monopoly power", plaintiff's "bald allegation that [defendant] provides services to 70% of the school districts in California" ws insufficient to plead "a dangerous probability of achieving market power.")  Thus, Plaintiff fails to plead a dangerous probability of monopolization, which is fatal to its claim for attempted monopolization.

> ### (ii)  Plaintiff fails to adequately allege significant barriers to entry or that existing competitors lack capacity to expand output.

"[A]n antitrust plaintiff must also show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the anticompetitive conduct." *Dominick*, 2012 U.S. Dist. LEXIS 179703 at \*13.  Merely alleging substantial, or even dominant, market share alone is insufficient to allege a predatory scheme. *Rebel Oil*, 51 F.3d at 1439.  "The main sources of entry barriers are: (1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preferences for established brands; (4) capital market evaluations imposing higher capital costs on new entrants; and, in some situations, (5) economies of scale." *Id.*

The Fourth Amended Complaint contains no allegations that existing competitors lack the capacity to expand their output.  In fact, there are no allegations regarding any competitors' sales or supply of consumer WLAN products.  Indeed, even accepting all facts pleaded as true, the majority of consumer WLAN products are sold by other manufacturers[7], and there are no allegations that they lack the capacity

---

[7] *See* TP-Link's concurrently filed Request for Judicial Notice at ¶¶ 2-4 and Exhibits A-C.

4821-4715-2843.4

to expand their output, especially to cover the 360 routers Plaintiff alleges it was prohibited from selling.

Plaintiff has also failed to sufficiently allege significant barriers to entry to the consumer WLAN product market.  The only alleged barrier to entry is the "significant amount of money and time for a re-seller to buy sufficient quantities of new, factory-sealed consumer WLAN products so that they can become even a barely visible option for consumers looking to buy such products."  (FAC at ¶ 65.)   However, Plaintiff's allegation fails to support a plausible inference of a barrier to entry for several reasons.  First, Plaintiff's allegation, even if true, applies only to "re-sellers" and the alleged barriers to entry would therefore not apply to the general "consumer WLAN products" market, but rather, only the gray market for consumer WLAN products.  There are no factual allegations regarding barriers to entry that are relevant to new manufacturers of consumer WLAN products and there is no reason that a new manufacturer would not be able to enter the market, selling directly to consumers rather than through resellers.  Second, "money and time" are required to start any new business and considering such aspects "barriers to entry" would mean that every product market would inevitably have significant entry barriers.  Nevertheless, the implausibility of Plaintiff's allegations is apparent because over a dozen companies are selling wireless routers through numerous different sellers, just on Amazon alone, demonstrating that sellers are able to enter the market for consumer WLAN products.[8]

### 3.    Plaintiff Fails to Allege Causal Antitrust Injury

Plaintiff's failure to sufficiently allege causal antitrust injury—which "is an element of all antitrust suits" (*Rebel Oil*, 51 F.3d at 1433)—serves as an independent basis for dismissal.  Causal antitrust injury is made up of four elements: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes

---

[8] *See* TP-Link's concurrently filed Request for Judicial Notice at ¶ 4 and Exhibit C.

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4

the conduct unlawful, (4) that is of the type the antitrust laws were intended to prevent.  *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).

Here, putting aside Plaintiff's failure to plead a relevant market, Plaintiff has not alleged "any *facts* demonstrating that it has actually been foreclosed from the opportunity of competing in the relevant product market." *Novation*, 156 F. Supp. 3d at 1102.  Specifically, Plaintiff fails to explain how Defendants' alleged counterfeit complaints to Amazon prevent Plaintiff from competing in the global, U.S., and online markets for WLAN products—i.e., at traditional brick-and-mortar stores or other online marketplaces like eBay or Craigslist.  Not surprising, as the allegations make clear that nothing is stopping Plaintiff from selling TP-Link branded products or "electronic products" to other Amazon resellers—which Plaintiff has in fact done during this lawsuit (FAC at ¶ 80)—or through other distribution channels.

Plaintiff's bare allegations of "injury to competition and to consumers" from "supracompetitive prices" and the reduced output of products to consumers is similarly insufficient to demonstrate causal antitrust injury.  (*See* FAC at ¶ 63.)  First, "harm to *consumers* by way of increased prices . . . . is not an injury-in-fact that *competitors* suffer." *Novation*, 156 F. Supp. 3d at 1101 (internal quotations omitted). Rather, competitors benefit from an increase in market prices.  Second, any alleged injury to competition resulting from Defendants' alleged complaints to Amazon would again be limited to the alleged Amazon market for WLAN products, and not any of Plaintiff's other three alleged relevant markets.  Thus, as for the (1) global, (2) U.S. and New York, and (3) online markets, Plaintiff "has failed to identify any injury that it has suffered that is of the type that the antitrust laws were designed to prevent." *Id*. at 1102.

Additionally, with regard to the Amazon market for WLAN products, as explained previously, Plaintiff's allegations show that it was Plaintiff's own failure to authenticate its products during the Amazon appeals process that resulted in its expulsion—not Defendants' alleged complaints.  Tellingly, Plaintiff provides no

explanation for why it failed to take any concrete steps to sell its inventory through any other distribution channels after it was permanently banned from Amazon in the nine months prior to filing the instant lawsuit.  New allegations that Plaintiff has sold non-TP-Link branded products in 2020 does not cure this fatal defect.  (*See* FAC ¶ 80.)  Plaintiff has therefore failed to allege any antitrust injury for any of its four alleged relevant markets.

**B.    Plaintiff Fails to Establish that Subject Matter Jurisdiction Exists for Its Declaratory Judgment Cause of Action**

Plaintiff's claim for declaratory judgment of non-infringement should be dismissed because there is no present case or controversy warranting the Court's discretionary exercise of subject matter jurisdiction under the DJA.

**1.    There is no present case or controversy.**

Plaintiff's claim for declaratory judgement requests a declaration of non-infringement of TP-Link's trademark rights, but the Fourth Amended Complaint fails to allege any facts to demonstrate that a "case or controversy" exists.  *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 867 (9th Cir. 2017).  "To show that an actual controversy exists in declaratory judgment matter involving intellectual property, a plaintiff must show both (1) an explicit threat which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  *Sobini Films v. Tri-Star Pictures, Inc.*, No. CV 01-06615 ABC (RNBx), 2001 U.S. Dist. LEXIS 23509, at *28-29 (C.D. Cal. Nov. 21, 2001) (emphasis in original).

The California Central District Court's decision in *Sobini* is instructive here.  In *Sobini*, a plaintiff film company filed suit against defendants asserting a claim for declaratory judgment of non-infringement of defendant's trademark as it related to the production, marketing, and distribution of a filmed version of plaintiff's "treatment" of the Zorro character from the defendants' film, "The Mask of Zorro."  *Sobini*, 2001

U.S. Dist. LEXIS 23509, at *2.   Defendants filed a motion to dismiss Plaintiff's complaint on grounds that it failed to state a claim for relief and presented no justiciable case or controversy.  *Id.* at *3.  In granting defendants' FRCP 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court found it critical that plaintiff had "not engaged in sufficient activity to constitute concrete steps to engage in present activity that could amount to infringement."  *Id.* at *17.  Specifically, the court found that plaintiff was "not 'immediately prepared' to produce 'Zorro 2040'" in light of the fact that plaintiff had "not even reached 'preliminary agreements' or obtained commitments from 'key talent' such as a director and lead actors, nor ha[d] [plaintiff] even entered into a contract with a writer (or writers) to create a screenplay for 'Zorro 2040.'"  *Id.* at *18.

Here, like the plaintiff in *Sobini*, Plaintiff fails to plead that it has—or even can—take concrete steps that would constitute actionable infringement in order to demonstrate a present case or controversy.  Indeed, the Fourth Amended Complaint affirmatively establishes that on August 27, 2018, Amazon ***permanently*** prohibited Plaintiff from selling products on Amazon.  (FAC at ¶ 49.)  Assuming, *arguendo*, the Court decides in Plaintiff's favor on its claim for declaratory judgment, there are no allegations that such a judgement would affect Plaintiff's prohibition from using Amazon as a platform to sell its products.  As for other channels, Plaintiff has not alleged that TP-Link has ever taken any affirmative action to prevent Plaintiff from reselling TP-Link products in any distribution channel other than Amazon.

Plaintiff now pleads for the first time that, "[i]n 2020 alone, TSI has sold ***electronic products*** at wholesale to other third-party sellers on the Amazon Marketplace."  (FAC at ¶ 80 (emphasis added.)  Tellingly, Plaintiff has not alleged any plans to continue selling ***TP-Link branded products*** through any other distribution channels, instead alleging that it sold unspecified "electronic products at wholesale" to other third party resellers.  It is clear from the allegations that TP-Link has no interest in any other branded products Plaintiff sells, other than TP-Link-

4821-4715-2843.4

1    branded products. Therefore, there would be no reason for TP-Link to threaten

2    litigation over those sales. Nor can those sales be considered "present activity which

3    could constitute infringement or concrete steps taken with the intent to conduct such

4    activity" because TP-Link has no standing to bring suit for infringement of another's

5    intellectual property.

6         Plaintiff further alleges that it "has also had discussions with at least one other

7    third-party seller about **potentially** selling it TP-Link products at wholesale prices, for

8    that third-party seller to re-sell on the Amazon Marketplace." (FAC at ¶ 80 (emphasis

9    added).) However, there are no allegations in the Fourth Amended Complaint that

10   TP-Link has ever threatened Plaintiff as a result of such activities. TP-Link takes

11   issue with Plaintiff's resales of TP-Link branded products **to consumers** on Amazon

12   **without** notice that the products lack the original manufacturer's warranty. Plaintiff's

13   purported "discussions" about "potentially selling" TP-Link products at wholesale is

14   wholly unrelated to Plaintiff's actual sales on the Amazon Marketplace to unknowing

15   consumers.

16        Accordingly, rather than seek declaratory judgment on a present controversy,

17   Plaintiff essentially requests an improper advisory opinion regarding past conduct or

18   possible future conduct. *See, e.g., Windsurfing Int'l, Inc.*, 828 F.2d at 758 ("Rather

19   than use the mark, get sued, and fight it out in court, [defendant] was saying, 'We

20   would like to use the mark, but before we do, we want a court to say we may do so

21   safely.' Thus [defendant's] complaint and counterclaim sought an advisory opinion,

22   something a federal court may not give.") (citation omitted). "[A] declaratory

23   judgment merely adjudicating past violations of federal law—as opposed to

24   continuing or future violations of federal law—is not an appropriate exercise of

25   federal jurisdiction. The value of the judicial pronouncement—what makes it a proper

26   judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the

27   settling of some dispute *which affects the behavior of the defendant towards the*

28   *plaintiff*." *Bayer*, 861 F.3d at 868 (emphasis in original) (internal citations and

JOINT MOTION TO DISMISS
CASE NO: 2:19-CV-10374-SB (EX)

4821-4715-2843.4

quotations omitted).  *See also Malava, LLC v. Innovative Grp. Holdings, Inc.*, No. 09cv173 WQH (WVG), 2010 U.S. Dist. LEXIS 123968, 2010 WL 4868024, at *2-3 (S.D. Cal. Nov. 22, 2010) (holding that even where a party had "previously used" a mark, and a trademark infringement action had been filed, there was no case or controversy sufficient to support a declaratory judgment action where the party "had ceased using" the term and the trademark owner had sought voluntary dismissal of its trademark infringement claims).

For all of the foregoing reasons, there is no actual controversy in this lawsuit that would be resolved by a finding that Plaintiff's future sale of TP-Link branded products is non-infringing.  Accordingly, the Fourth Amended Complaint must be dismissed for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).

### 2.    The relevant DJA factors weigh against exercise of jurisdiction.

For the reasons set forth above, Plaintiff has failed to meet its burden to establish that there is an actual present case or controversy, and the Court therefore lacks subject matter jurisdiction over Defendants.  Further, even if subject matter jurisdiction existed, the exercise of such jurisdiction is within the discretion of the Court, and the relevant factors strongly weigh against exercise of jurisdiction in this case.  *O'Hagins, Inc. v. M5 Steel Mfg., Inc.,* 276 F. Supp. 2d 1020, 1025 (N.D. Cal. 2003) ("Yet even when a court determines that an actual controversy exists between the parties, the court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction.").

As set forth by the Ninth Circuit, courts consider several factors in determining whether to exercise discretion under the DJA, including: (1) "avoid[ing] needless determination of state law issues"; (2) "discourag[ing] litigants from filing declaratory actions as a means of forum shopping"; (3) "avoid[ing] duplicative litigation"; (4) "whether the declaratory action will settle all aspects of the controversy"; (5) "whether the declaratory action will serve a useful purpose in clarifying the legal relations at

-21-

issue"; (6) "whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage"; (7) "whether the use of a declaratory action will result in entanglement between the federal and state court systems"; (8) "the convenience of the parties"; and (9) "the availability and relative convenience of other remedies." *Gov't Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225, n. 5 (9th Cir. 1998). Here, these factors militate against the Court's discretionary exercise of jurisdiction over Plaintiff's declaratory judgment claim.

A declaratory judgment would not settle all aspects of the controversy or serve a useful purpose in clarifying the legal relations at issue because Plaintiff's allegations concern ***past*** and hypothetical ***future*** conduct that a declaratory judgment of non-infringement would not resolve. As detailed above, Plaintiff fails to allege any facts indicating that it is currently selling TP-Link branded products through Amazon, or that it plans to do so in the future. Plaintiff also fails to allege that Defendants have threatened or taken action to prevent Plaintiff from selling its products through other distribution channels or to other Amazon Marketplace resellers. Thus, no legal relations would be clarified by a declaratory judgment of non-infringement at this time. Therefore, this Court should decline to exercise its discretion under the DJA to provide Plaintiff with an advisory opinion regarding some speculative potential future conduct that may never occur.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss all claims against it pursuant to Rule 12(b)(6) for failure to state claims.

A Proposed Order is filed herewith.

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

1

DATED: September 29, 2020

**FOLEY & LARDNER LLP**

2

*/s/Stephen R. Smerek*

3

Stephen R. Smerek
Tiffany Kim Sung

4

FOLEY & LARDNER LLP

5

*Attorneys for Defendant*
*TP Link USA Corporation*

6

7

**BURKHALTER KESSLER**
  **CLEMENT & GEORGE LLP**

8

*/s/Josh Waldman*

9

Alton G. Burkhalter
Josh A. Waldman

10

BURKHALTER KESSLER
  CLEMENT & GEORGE LLP

11

*Attorneys for Defendant*
*Auction Brothers, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>ATTESTATION CLAUSE</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer of this document attests that all of the signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  September 29, 2020

**FOLEY & LARDNER LLP**
STEPHEN R. SMEREK
TIFFANY KIM SUNG


*/s/ Stephen R. Smerek*
Stephen R. Smerek
ATTORNEYS FOR DEFENDANT TP LINK USA
CORPORATION

JOINT MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4821-4715-2843.4