1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

11

## CENTRAL DISTRICT OF CALIFORNIA

12

## WESTERN DIVISION

13

14   THIMES SOLUTIONS INC.

Case No. 2:19-cv-10374-PA-E

15                          Plaintiffs,

**[PROPOSED] ORDER DENYING
DEFENDANTS' JOINT MOTION TO
DISMISS FOURTH AMENDED
COMPLAINT**

16       v.

17   TP-LINK USA CORPORATION,
and AUCTION BROTHERS, INC.

18   d/b/a AMAZZIA

19                          Defendant.

20
21
22
23
24
25
26
27
28

Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia jointly move to dismiss the Fourth Amended Complaint (ECF No. 130) filed by plaintiff Thimes Solutions Inc. (ECF No. 126). Having considered the papers filed in support of and in opposition to Defendants' motion and having considered the arguments of counsel offered in connection therewith, the Court hereby **DENIES** Defendants' motion and finds the following:

## I.   LEGAL STANDARDS

### A.   Motion to Dismiss

The question on a motion to dismiss is whether plaintiff has made allegations in its complaint plausibly entitling it to relief. *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to Plaintiff. *City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112, 1121-22 (9th Cir. 2020).

### B.   Pleading of Antitrust Violation

To state a monopolization claim under Section 2 of the Sherman Act, Plaintiff must state three elements: "(1) possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir. 1980).

To state an attempted monopolization claim under Section 2, Plaintiff must allege facts sufficient to demonstrate "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3)

1  a dangerous probability of achieving monopoly power." *Cascade Health Solutions*

2  *v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2007).  "[A]t this stage in the

3  proceedings, the requirements for Plaintiff's monopolization and attempted

4  monopolization claims are substantively identical." *Hurst Int'l, LLC v. Sinclair Sys.*

5  *Int'l, LLC*, No. 17-cv-8070-VAP (ASX), 2018 WL 4961908, at *2 (C.D. Cal. May

6  18, 2018).

7
8  **II.    THE FOURTH AMENDED COMPLAINT ADEQUATELY ALLEGES A RELEVANT PRODUCT MARKET.**

9      Defendants first argue that Plaintiff's antitrust claims fail because it fails to

10  adequately allege the existence of a relevant market.  (ECF No. 130 at 4-5.)  The

11  "relevant market" includes a "product" and a "geographic" component.  *Am. Ad*

12  *Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 790 (9th Cir. 1996).

13      Plaintiff alleges the product market to be "direct-to-consumer sales of new /

14  factory-sealed consumer WLAN products during the year 2018."  (ECF No. 126 ¶

15  58.)  Defendants contend that the alleged product market is "impermissibly broad,"

16  because Plaintiff did not allege facts regarding "reasonable interchangeability of use

17  or cross-elasticity of demand" and "makes no attempt to identify which products

18  fall into the 'new/factory-sealed consumer WLAN products' market."  (ECF No.

19  130 at 5-6.)

20      The Ninth Circuit applies a lenient standard on assessing whether a

21  "relevant market" is sufficiently pled.  *Newcal Indus. Inc. v. Ikon Office Solution*,

22  513 F.3d 1038, 1045 (9th Cir. 2008).  A product market includes the pool of goods

23  or services that enjoy "reasonable interchangeability of use or the cross-elasticity of

24  demand"—in other words, "the product at issue as well as all economic substitutes

25  for the product."  *Id*.  Plaintiff alleges that Defendants' anticompetitive conduct

26  barred it from selling the "TP-Link AC5400 routers" in its inventory and referenced

27  the term "router" extensively throughout the Fourth Amended Complaint.  (ECF

28  No. 130 ¶¶ 39-49, 59-61.)  Based on these allegations, it is reasonable for the Court

to infer that Plaintiff's alleged WLAN product market includes wireless routers, "all economic substitutes," and products that enjoy "reasonable interchangeability of use." *Newcal Indus. Inc.*, 513 F.3d at 1045.

In addition, Ninth Circuit precedent holds that the determination of a relevant market is a factual question that cannot be resolved at the pleading stage. *Newcal*, 513 F.3d at 1045 ("[S]ince the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial."); *Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1002 (9th Cir. 2008) ("definition of the relevant market is a question of fact for the jury.").

Defendants also challenge the adequacy of Plaintiff's proposed geographic markets, arguing that it should be limited to the United States because "[t]here are no allegations that Plaintiff sold WLAN products overseas or in New York." (ECF No. 130 at 8.)

In the Ninth Circuit, the geographic market "extends to the 'area of effective competition' . . . where buyers can turn for alternate sources of supply." *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988) (ellipsis in original). A plaintiff is not required to "be present in a geographic area for that area to be included within the relevant market definition"— "any area where companies compete to sell the relevant product … may properly be included within the definition of the relevant market." *Hurst Int'l, LLC*, 2018 WL 4961908, at *3 (rejecting argument that plaintiff's definition of nationwide relevant market is "hopelessly muddled" and "inconsistent" with state-level allegations).

Plaintiff has alleged four geographic markets: (1) global; (2) United States and New York; (3) the global, United States, and New York online markets; and (4) the global, United States, and New York Amazon Marketplaces. (ECF No. 126 ¶¶ 58.a-58.d.) The Fourth Amended Complaint alleges: (1) that TP-Link itself claims to hold "a 44.08% global market share for all WLAN products," and boasts

that it is "the world's number one provider of consumer Wi-Fi networking devices" (*id.* ¶¶ 19, 58.a); (2) that "North America is the largest market for consumer WLAN products, with the United States holding a dominant share of this geographic region," that "the ubiquity of e-commerce" has created a separate "online marketplace," and that the Amazon Marketplace is "utterly dominant in e-commerce" (*id.* ¶¶ 58.b-58.d); and (3) that TP-Link maintains "at least a 50% market share" in the four alleged markets (*id.* ¶¶ 58.a-58.d.)

Accepting these allegations as true and construing them in the light most favorable to Plaintiff, the Court finds it reasonable to infer that the "area of effective competition" includes all of Plaintiff's proposed geographic markets.

### III.   PLAINTIFF ALLEGED TP-LINK'S MARKET POWER.

Defendants next argue that Plaintiff's antitrust claims should be dismissed because it fails to adequately allege that TP-Link possesses the requisite market power.  (ECF No. 130 at 9.)

An antitrust plaintiff may establish the defendant's market power through either direct or circumstantial evidence.  *Rebel Oil*, 51 F.3d at 1434.  The Court finds that Plaintiff has adequately pled both types of evidence.

### A.   Direct Evidence of TP-Link's Market Power.

Ninth Circuit precedent holds that, "[i]f the plaintiff puts forth evidence of restricted output and supracompetitive prices, that is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power."  *Id.*  The Fourth Amended Complaint sufficiently alleges restricted output and supracompetitive prices.  Plaintiff alleges that: (1) "TP-Link's primary goal was to eliminate price competition for its WLAN products, so it could continue to profitably charge artificially inflated prices for those products" (ECF No. 126 ¶ 34); (2) TP-Link "achieve[d] that goal" by "[g]etting rid of 90% of all third-party sellers on the Amazon Marketplace that were re-selling TP-Link WLAN products" (*id.*); and (3) Defendants' anticompetitive conduct allowed them

"to reduce the output of [WLAN] products to consumers," eliminate "the option of a high quality, cheaper alternative for genuine TP-Link products" and "consumer choice for different consumer WLAN products," and "forc[e] end consumers to pay higher prices than they would pay in the absence of Defendants' conduct" (*id.* ¶¶ 10, 34, 63-64).  Plaintiff further supports its allegation of TP-Link's supracompetitive prices by alleging that Plaintiff is able to maintain a high profit margin (20% net) on its sales of TP-Link products, despite selling them at a "considerably lower" price than TP-Link's contractually enforced minimum advertised price.  (*Id.* ¶¶ 6, 21.)  Taken as true, Plaintiff's allegations show that, by eliminating the vast majority of TP-Link's competitors and restricting the choice and availability of lower priced WLAN products to consumers, Defendants forced consumers to buy TP-Link's products at supracompetitive prices.  Therefore, this Court finds that Plaintiff plausibly alleges direct evidence of TP-Link's exercise of market power.  *See*, *e.g.*, *In re ATM Fee Antitrust Litig.*, No. 04-cv-2676 CRB, 2010 WL 2557519, at *10 (N.D. Cal. June 21, 2010) ("this prolonged period of substantially-above-cost pricing provides a strong indication that the Defendants and Star possess market power in the ATM Networks market.")

Furthermore, "[t]he question of whether a party possesses monopoly power is essentially one of fact," and thus not an issue to be determined at the pleading stage. *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 950 & n.14 (9th Cir. 1996); *Oahu Gas Serv.,* 838 F.2d at 363 ("Our previous decisions establish that both market definition and market power are essentially questions of fact."); *Westlake Servs., LLC v. Credit Acceptance Corp.*, No. 15-cv-07490 SJO (MRWx), 2016 WL 3919487, at *9 (C.D. Cal. Apr. 6, 2016) ("[t]he question of whether a defendant possesses monopoly or market power is one of fact.").

## B.   Circumstantial Evidence of TP-Link's Market Power.

An antitrust plaintiff can show circumstantial evidence of market power by: "(1) defin[ing] the relevant market, (2) show[ing] that the defendant owns a

dominant share of that market, and (3) show[ing] that there are significant barriers to entry and show[ing] that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434.

As noted, Plaintiff has adequately alleged the relevant market, and Ninth Circuit precedent says that the "definition of the relevant market is a question of fact for the jury."

        1.   <u>Plaintiff Alleges That TP-Link Surpasses The Market Power Threshold In The Relevant Markets.</u>

Defendants argue that Plaintiff fails to demonstrate that "TP-Link owns a *dominant* share of any of the allegedly relevant 'consumer WLAN product' markets," because "courts generally require a 65% market share" threshold. (ECF No. 130 at 13.)

Defendants misstate the law regarding the purported "65% market share" requirement. The Ninth Circuit has held that a 45-70% share of the market was sufficient to show market power in a monopolization claim, where competitors were fragmented, and none had more than a 12% share. *Pac. Coast Agric. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1204 (9th Cir. 1975). For an attempted monopolization claim, the Ninth Circuit has held that a market share of 44% is sufficient as a matter of law to support a finding of market power. *Rebel Oil*, 51 F.3d at 1439. *See also PNY Tech. v. SanDisk Corp.*, No. C-11-04689-YGR, 2012 WL 1380271, at \*9 (N.D. Cal. April 20, 2012) (40% market share enough to establish market power for attempted monopolization claim); *Nationwide Power Solutions Inc. v. Eaton Elec. Inc.*, No. SACV 07-883-JVS, 2008 WL 11408997, at \*10 (C.D. Cal. Oct. 10, 2008) (30% market share could be sufficient to establish market power for attempted monopolization claim).

The Ninth Circuit has further held that "[n]o precise standard exists for determining when a firm … controls enough of a market that its actions might cause anticompetitive effects." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118,

1   1155 (9th Cir. 2011).  Instead, the Ninth Circuit requires courts to "carefully

2   analyz[e] certain telltale factors in the relevant market:  market share, entry barriers

3   and the capacity of existing competitors to expand output."  *Rebel Oil*, 51 F.3d at

4   1438.

5          Here, the Court finds that Plaintiff has plausibly alleged facts showing why

6   TP-Link has at least a 50% market share in all of the relevant markets.[1]  (ECF No.

7   126 ¶ 58.a-58.d.)  Plaintiff has also sufficiently alleged such "telltale factors"—*i.e.*,

8   that new entrants face significant entry barriers in the form of high capital and time

9   costs and entrenched buyer preferences favoring sellers with high customer ratings

10  (*id.* ¶ 65), and that existing competitors lack the capacity to expand because

11  Defendants' anticompetitive conduct eliminated 90% of them from the Amazon

12  Marketplace, which is by far the most dominant e-commerce platform in the world.

13  (*id.* ¶¶ 7, 14, 34, 64).

14                  2.      Plaintiff Alleges Significant Entry Barriers.

15         Defendants next argue that Plaintiff's antitrust claims fail because it failed to

16  sufficiently allege significant barriers to entry to the consumer WLAN product

17  market.  (ECF No. 130 at 14-16.)  The Court disagrees.  Plaintiff alleges that the

18  consumer WLAN products market has "high barriers to entry," including (1) "high

19  capital costs" to stock "sufficient quantities of new, factory-sealed consumer

20  WLAN products" to "become even a barely visible option for consumers," (2)

21

22  [1] Defendants also contend that the press release Plaintiff cited in the complaint refers
23  not to TP-Link but to "the global TP-Link entity."  (ECF No. 130 at 13.)  Defendants
    provide no support for this assertion, nor do they explain why the press release must
24  be interpreted to refer only to the "global TP-Link entity."  (*Id.*)  Even assuming
    *arguendo* that Defendants' press release is unclear as to which entity is referenced
25  therein, the Court must make all reasonable inferences and resolve any ambiguities
26  in Plaintiff's favor on a motion to dismiss.  *See Stransky v. Cummins Engine Co.*, 51
    F.3d 1329, 1335 (7th Cir. 1995) ("What is clear is that on a motion to dismiss we
27  should make all reasonable inferences in favor of [plaintiff] and should not resolve
28  the interpretation of the press release against [plaintiff].").

1    entrenched customer preferences that favor sellers with "an overwhelming amount

2    of positive reviews," and (3) the "many years" needed to gather a "high enough

3    customer rating to attract customers." (ECF No. 126 ¶¶ 64-65). The Court finds

4    that such allegations adequately state a claim. *See Image Tech. Servs.*, 125 F.3d at

5    1208 ("Common entry barriers include: … entrenched buyer preferences, high

6    capital entry costs and economies of scale.").

7          Defendants next contend that the alleged entry barriers are implausible

8    because extrinsic evidence suggests that "sellers are able to enter the market for

9    consumer WLAN products." (ECF No. 130 at 16.) Per the Ninth Circuit, "the fact

10   that entry has occurred does not necessarily preclude the existence of 'significant'

11   entry barriers," particularly if the new entrant lacks the capacity to take significant

12   business away from the predator." *Rebel Oil*, 51 F.3d at 1440. Plaintiff has

13   adequately alleged why new entrants or existing competitors "lack the capacity" to

14   expand their output to challenge TP-Link's anticompetitive conduct: Defendants

15   proactively eliminate the vast majority of them from the Amazon Marketplace,

16   (ECF No. 126 ¶¶ 7-10, 34, 63), which "cripple[d] the[] business[es]" of "90% of all

17   third-party sellers on the Amazon Marketplace that were re-selling TP-Link WLAN

18   products," (*id.* ¶¶ 10, 34, 63) and stripped these smaller competitors of the means to

19   generate revenue on the largest e-commerce platform in the United States and

20   globally (*id.* ¶ 58.d). Plaintiff alleges that Defendants' conduct weakened existing

21   competitors' capacity to expand their output and barring new entrants' ability to

22   overcome the "high capital entry costs" and "entrenched buyer preferences." *See*

23   *Image Tech. Servs.*, 125 F.3d 1208 ("Common entry barriers include: … entrenched

24   buyer preferences, high capital entry costs and economies of scale.")

25          Therefore, this Court finds that Plaintiff also plausibly alleges circumstantial

26   evidence of TP-Link's exercise of market power.

27

28

1    **IV.    PLAINTIFF ADEQUATELY ALLEGES ANTITRUST INJURY.**

2          Defendants finally argue that Plaintiffs has not adequately alleged antitrust

3    injury because "nothing is stopping [it] from selling TP-Link branded products …

4    to other Amazon resellers … or through other distribution channels."  (ECF No. 130

5    at 17; *see also id.* at 18 ("Plaintiff provides no explanation for why it failed to take

6    any concrete steps to sell its inventory through any other distribution channels.").)

7    The Court finds this argument unavailing for multiple reasons.

8          "To plead… antitrust injury, plaintiffs must allege that they were harmed by

9    the injury to competition.  Further, plaintiffs must allege that their harm was caused

10   directly by the antitrust violator."  *In re NFL Sunday Ticket Antitrust Litig.*, 933

11   F.3d 1136, 1156 (9th Cir. 2019).  "If the plaintiff puts forth evidence of restricted

12   output and supracompetitive prices, that is direct proof of the injury to competition .

13   . . ."  *Rebel Oil*, 51 F.3d at 1434; *see also Trendsettah USA, Inc. v. Swisher Int'l*

14   *Inc.*, No. 14-cv-01664 JVS (DFMx), 2015 WL 12765461, at *2 (C.D. Cal. May 19,

15   2015) (holding that plaintiff's allegations of defendant's conduct causing

16   supracompetitive prices and decreased output to consumers sufficiently "describe a

17   plausible injury to competition, not merely an injury to [plaintiff] alone.").  The

18   gravamen of Plaintiff's complaint is that TP-Link restricted the availability of

19   WLAN products to consumers by eliminating its lower-priced competitors, which

20   permitted it to maintain superficial demand for its contractually enforced

21   supracompetitive prices.  (ECF No. 126 ¶¶ 27, 34, 63-64.)

22         Another "form of antitrust injury is '[c]oercive activity that prevents its

23   victims from making free choices between market alternatives.'"  *Glen Holly*

24   *Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003).  Plaintiff alleges

25   that Defendants abused Amazon's Notice Infringement process—having Amazon

26   "rubberstamp" false allegations that a third-party is selling counterfeit versions of

27   its products—to eliminate 90% of re-sellers selling TP-Link products on Amazon,

28   which allowed TP-Link to illegally "reduce the output of such products to

1   consumers." (ECF No. 126 ¶¶ 8-10, 34, 63.) Because Plaintiff and other re-sellers

2   stock a variety of WLAN products, TP-Link's eliminating these resellers from

3   Amazon reduced "consumer choice for different consumer WLAN products," and

4   caused "some consumers to settle upon buying TP-Link consumer WLAN products

5   directly from TP-Link due to a lack of alternatives." (*Id.* at ¶ 64.)

6       Therefore, this Court finds that Plaintiff has sufficiently alleged the element

7   of antitrust injury.

8   **V.   PLAINTIFF HAS A JUSTICIABLE "CASE OR CONTROVERSY"
9         UNDER THE DECLARATORY JUDGMENT ACT.**

10      The Court further finds that Plaintiff has stated a claim for declaratory relief.

11  The requirement for a "case of actual controversy" under the DJA is "identical to

12  Article III's constitutional case or controversy requirement." *Am. States Ins. Co. v.*

13  *Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). For intellectual property disputes in the

14  Ninth Circuit, a case or controversy exists when, because of the defendant's actions,

15  the plaintiff has "a real and reasonable apprehension that [it] will be subject to

16  liability" if it continues the conduct in dispute. *Hal Roach Studios, Inc. v. Richard*

17  *Feiner & Co.*, 896 F.2d 1542, 1555-56 (9th Cir. 1989). An explicit threat of

18  litigation is not necessary under the real and reasonable apprehension test. *Rhoades*

19  *v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007); *San Diego County Credit*

20  *Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1155-56 (S.D.

21  Cal. 2018). Rather, this is a "flexible approach that is oriented to the reasonable

22  perceptions of the plaintiff." *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d

23  393, 396 (9th Cir. 1982). "The acts of the defendant [are] ... examined in view of

24  their likely impact on competition and the risks imposed upon the plaintiff." *Id.*

25      Under these principles, the Court finds that Defendants' unyielding barrage

26  of complaints to Amazon falsely accusing Plaintiff of selling counterfeit products

27  was "sufficient to put [Plaintiff] in a defensive posture with respect to its continued

28  [sales of TP-Link products]" and instilled in Plaintiff a real and reasonable

apprehension of liability.  *Societe*, 655 F.2d at 944.  Dismissing the declaratory

judgment claim would therefore only leave Plaintiff with the "Damoclean threat" of

liability hanging over its head, which is precisely what the DJA is designed to

relieve.  *Id.* at 943 ("The Declaratory Judgment Act was designed to relieve

potential defendants from the Damoclean threat of impending litigation which a

harassing adversary might brandish, while initiating suit at his leisure or never.").

The Court's exercising DJA jurisdiction is further supported by consideration

of the prudential factors, which include: discouraging forum shopping, avoiding

duplicative litigation, determining if the declaratory action will "settle all aspects of

the controversy" or "is being sought merely for the purposes of procedural fencing

or to obtain a 'res judicata' advantage," and "the availability and relative

convenience of other remedies."  *Principal Life Ins. Co.*, 394 F.3d at 669; *Gov't

Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225, n.5 (9th Cir. 1998).

Here, Defendants argue that only one of the prudential factors are at issue—

they contend that Plaintiff's claim "would not settle all aspects of the controversy"

because "[Plaintiff's] allegations concern ***past*** and hypothetical ***future*** conduct that

a declaratory judgment of non-infringement would not resolve."  (ECF No. 130 at

22.)  Contrary to Defendants' assertion, there is nothing "hypothetical" about

whether Plaintiff wants to continuing selling TP-Link routers.  The Court finds that

a declaratory judgment will provide Plaintiff certainty regarding its legal rights as to

its resale of the TP-Links products.  Absent a declaratory judgment, Plaintiff will be

left with the uncertainty of whether it can lawfully pursue a business activity that it

has a right to do, *i.e.*, re-sell authentic, factory-sealed TP-Link products.  This is the

type of "'dilemma that it was the very purpose of the Declaratory Judgment Act to

ameliorate.'"  *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883-884 (Fed.

Cir. 2008).

Therefore, the Court finds that Plaintiff has adequately stated a claim for

declaratory relief.

For these reasons, the Court hereby **ORDERS** that Defendants' motion is DENIED, with prejudice.

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. Stanley Blumenfeld, Jr.
United States District Court Judge