Stephen R. Smerek (State Bar No. 208343)
email:  ssmerek@foley.com
Tiffany Kim Sung (State Bar No. 323077)
email:  tsung@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Telephone:  (213) 972-4500
Facsimile:  (213) 486-0065

Attorneys for Defendant
TP LINK USA CORPORATION

Alton G. Burkhalter (State Bar No. 119595)
Email: aburkhalter@bkcglaw.com
Joshua A. Waldman (State Bar No. 222859)
Email: jwaldman@bkcglaw.com
**BURKHALTER KESSLER**
 **CLEMENT & GEORGE LLP**
2020 Main Street, Suite 600
Irvine, CA 92614-8336
Telephone:  (949) 375-7500
Facsimile:  (949) 975-7501

Attorneys for Defendant
AUCTION BROTHERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | Case No:  2:19-cv-10374-SB (Ex) |
| Plaintiff, | Hon. Stanley Blumenfeld, Jr. |
| v. | **DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT (DKT. 130)** |
| TP LINK USA CORPORATION, et al. | |
| Defendants. | Fed. R. Civ. P. 12 |
| | Hearing Date:    December 4, 2020 |
| | Hearing Time:    10:30 a.m. |
| | Courtroom:        Courtroom 6C |
| | FAC Filed:         September 7, 2020 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ....................................................................................... 2

    A.   Plaintiff Fails to State a Claim for Maintenance of Monopoly or Attempted Monopolization Under Section 2 of the Sherman Act ................. 2

        1.   Plaintiff Fails to Adequately Allege a Relevant Product Market ........ 3

        2.   Plaintiff Fails to Adequately Allege a Geographic Market ................. 5

        3.   The Fourth Amended Complaint Fails to Plead Facts Sufficient to Show Market Power or a Dangerous Probability of Achieving Market Power ................................................................ 6

            a.   Plaintiff Fails to Plead Direct Evidence of Market Power ........ 6

            b.   Plaintiff Fails to Plead Circumstantial Evidence of Market Power ............................................................... 8

        4.   Plaintiff Fails to Allege Causal Antitrust Injury ................................ 10

    B.   Plaintiff Fails to Establish that Subject Matter Jurisdiction Exists for Its Declaratory Judgment Cause of Action .................................................. 11

III. CONCLUSION .................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amarel v. Connell,*
    102 F.3d 1494 ...................................................................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................. 10

*Bayer v. Neiman Marcus Grp.,*
    861 F.3d 853 (9th Cir. 2017) ......................................................................... 11, 12

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962) ............................................................................................... 4

*Dominick v. Collectors Universe, Inc.,*
    2012 U.S. Dist. LEXIS 179703 (C.D. Cal. Dec. 18, 2012) ............................... 6, 9

*Fontana Fasteners, Inc. v. Foremost Threaded Prods.,*
    No. ED CV 16-846-SJO(AJWx), 2016 WL 9459245 ............................................ 9

*Hicks v. PGA Tour, Inc.,*
    897 F.3d 1109 (9th Cir. 2018) ........................................................................... 3, 5

*Malava, LLC v. Innovative Grp. Holdings, Inc.,*
    No. 09cv173 WQH (WVG), 2010 U.S. Dist. LEXIS 123968, 2010 WL
    4868024 (S.D. Cal. Nov. 22, 2010) ..................................................................... 12

*Newcal Indus., Inc. v. Ikon Office Sol.,*
    513 F.3d 1038 (9th Cir. 2008) ............................................................................... 3

*Novation Ventures, LLC v. J.G. Wentworth Company, LLC,*
    156 F.Supp.3d 1094 (C.D. Cal. 2015) ................................................................. 11

*Pac. Coast Agric. Exp. Ass'n v. Sunkist Growers, Inc.,*
    526 F.2d 1196 (9th Cir. 1975) ............................................................................... 9

*PNY Techs., Inc. v. SanDisk Corp.,*
    2012 U.S. Dist. LEXIS 55965 (N.D. Cal. April 20, 2012) .................................... 9

JOINT REPLY ISO MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4827-5235-2210.7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rebel Oil Co. v. Atlantic Richfield, Co.*,
    51 F.3d 1421 (9th Cir. 1995) ...............................................................3, 6, 10

*Staley v. Gilead Scis., Inc.*,
    2020 U.S. Dist. LEXIS 36747 (N.D. Cal. March 3, 2020)...............................4

**Federal Statutes**

Sherman Act........................................................................................1, 2, 3, 9

Sherman Act
    § 2 ..................................................................................................................2

Fed. Rule Civ. Proc. 12(b)(6).............................................................................3

JOINT REPLY ISO MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4827-5235-2210.7

# I.   INTRODUCTION

Plaintiff's Opposition itself confirms that Plaintiff has failed to plead any viable claim. Plaintiff leans hard on the unremarkable truism that it does not have to prove its claims now. But, Plaintiff must at least plead facts that, if true, would establish a right to relief. The Fourth Amended Complaint fails to meet this standard. Further, the new facts Plaintiff introduces for the first time in its Opposition to try to overcome TP-Link's arguments are not only procedurally improper, but they also fail to cure the fatal deficiencies that plague the Fourth Amended Complaint (Dkt. 126, "FAC").

In its Opposition, Plaintiff concedes that it is proper to dismiss Sherman Act claims where the Complaint's relevant market definition is facially unsustainable. In a futile effort to overcome TP-Link's argument that the product market alleged in the FAC is unsustainable on its face, Plaintiff wrongly asserts that the FAC pleads "a single product (wireless routers)" product market.  (Dkt. 134, "Opp." at 7). The FAC includes no such allegation, demonstrating the fatal shortcomings of the FAC and warranting dismissal. Further, Plaintiff's improper effort to plead a new product market through its Opposition cannot save its claims. As demonstrated in detail below, Plaintiff fails to plead facts sufficient to demonstrate TP-Link has the requisite market power in either the WLAN product market pleaded in the FAC or the new, narrowed wireless router product market introduced in the Opposition. Plaintiff's failure to plead a sustainable product market is fatal to both Sherman Act claims.

Further, Plaintiff's allegations regarding market power rely primarily on legal conclusions, not facts. And, the one fact pleaded to demonstrate market power – a press release issued by a different company, covering a different period, that does not identify the scope of products covered or the relevant sales channels – cannot support the weight of Plaintiff's antitrust claims. The balance of Plaintiff's allegations merely restate legal standards in the guise of factual allegations. For example, Plaintiff alleges that TP-Link charges supracompetitive prices, but the FAC does not include any facts which, if true, would establish that TP-Link's profit margin is excessive (or even as

great as the 20% profit margin Plaintiff admits to obtaining on its sales). Likewise, while Plaintiff generally alleges that there are significant barriers to competition, repeating the applicable legal standards, the FAC does not actually plead any facts to support this legal conclusion. For these reasons, the FAC fails to plead facts that, if true, would establish monopoly power, or a dangerous probability of monopoly power, and Plaintiff's Sherman Act claims both fail as a matter of law.

Plaintiff's declaratory judgment claim also fails as a matter of law because the facts pleaded fail to demonstrate that resolution of that claim will have any impact on any pending controversy. Plaintiff affirmatively pleads that it has been permanently banned from selling on the Amazon; not banned from selling TP-Link branded products, but permanently banned from selling any products. (*See* FAC at ¶ 49.) Further, there are no facts pleaded that TP-Link ever requested Amazon to permanently ban Plaintiff from the Amazon platform; according to the FAC, Amazon took this action only after affording Plaintiff the opportunity to exhaust Amazon's dispute resolution and appeals process.  Of course, Amazon is not a party to this case, there are no facts pleaded that Amazon violated any obligations owed to Plaintiff, and there are no facts pleaded to suggest that any judgment by this Court would alter Amazon's decision to permanently ban Plaintiff from its platform. Plaintiff ignores these facts, which are fatal to its declaratory judgment claim; there is no subject matter jurisdiction where there is no present case or controversy. Moreover, even if the Court did have subject matter jurisdiction, the Court should exercise its discretion to decline to use its limited resources to render what is effectively an advisory opinion regarding potential future conduct.

## II.    ARGUMENT

### A.    Plaintiff Fails to State a Claim for Maintenance of Monopoly or Attempted Monopolization Under Section 2 of the Sherman Act

Plaintiff's Opposition makes clear that the facts pleaded do not establish 1) a relevant market or 2) monopoly power or a dangerous probability of achieving

monopoly power, and Plaintiff's Sherman Act claims should therefore be dismissed. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 & n3 (9th Cir. 2008); *Rebel Oil Co. v. Atlantic Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

### 1. Plaintiff Fails to Adequately Allege a Relevant Product Market

While Plaintiff argues that the product market is a factual determination, Plaintiff concedes, as it must, that it is proper to dismiss a Sherman Act claim "under Rule 12(b)(6) where the complaint's relevant market definition is facially unsustainable." (Opp. at 4 (internal quotations omitted) (citing *Newcal*, 512 F.3d at 1045).) Based on the facts pleaded in the FAC, such is the case here.

Plaintiff's arguments confirm that the scope of the relevant product market is undefined by the FAC. In its Opposition, Plaintiff defines the product market as "wireless routers, all economic substitutes, and products that enjoy reasonable interchangeability of use" (Opp. at 5 (internal quotations omitted)); the problem for Plaintiff is that this definition is nowhere pleaded in the FAC. Tellingly, Plaintiff does not cite to the FAC and cannot, because that definition is offered for the first time in the Opposition. Plaintiff cannot now amend its pleadings through its Opposition to introduce new factual allegations. (*See* Opp. at 4 (citing to the "IDC Quarterly Wireless LAN Tracker definition of WLAN products).)[1]

Further, one product market pleaded in the FAC is the Amazon Marketplace sales of consumer WLAN products, so the fact that a search for "WLAN products" on Amazon turns up numerous additional products – not just wireless routers and economic equivalents – directly contradicts Plaintiff's argument that the product market is somehow limited to routers and interchangeable products. (*See* FAC at ¶ 58.d.) And, as demonstrated in detail below, Plaintiff's claims fail even with a

---

[1] In fact, Plaintiff states that it could amend the complaint to define the product market as "consumer-oriented WiFi routers, adapters, controllers, switches, access points, and similar products," thereby conceding that the FAC does not currently allege such a definition. (*See* Opp. at 5 n. 2.)

4827-5235-2210.7

narrower product market definition because there are no facts pleaded that would demonstrate market power within this new, narrowed product market.

Plaintiff's arguments regarding its new product market definition also independently fail because Plaintiff has pleaded no facts to demonstrate that controllers, routers, switches, and access points are interchangeable. *See Brown Shoe Co. v. United States,* 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.") Contrary to Plaintiff's representations, TP-Link has cited authority holding that the complaint must allege which products are included within the relevant product market based on a reasonable interchangeability of use.  *See* Motion at 6 (discussing *Staley v. Gilead Scis., Inc.*, 2020 U.S. Dist. LEXIS 36747 (N.D. Cal. March 3, 2020)). Thus, Plaintiff's product market would be facially unsustainable even if the FAC were amended to add the new IDC definition of WLAN products. There are simply no facts pleaded in the FAC or the Opposition, nor is there anything in the IDC definition itself, that would even suggest that wireless routers are economic substitutes for or otherwise interchangeable with switches, routers, or any other products included in the IDC definition of WLAN products.

Plaintiff's efforts to distinguish *Staley*, 446 F. Supp. 3d 578, also fall flat. Just as the court in *Staley* rejected the product market because the complaint did not explain "how there is reasonable interchangeability of use with respect to different cART drugs," Plaintiff fails to allege how different consumer WLAN products are interchangeable, or even which specific products would fall within the WLAN product market. Further, Plaintiff's attempt to amend the FAC through its Opposition to allege the product market as "consisting of a single product (wireless routers) and its economic substitutes (reasonably interchangeable consumer WLAN products)" cannot save its claims because, again, neither the FAC nor the Opposition plead facts

JOINT REPLY ISO MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4827-5235-2210.7

sufficient to demonstrate that the broad gamut of "WLAN products" that fall within the IDC definition are interchangeable with wireless routers. (*See* Opp. at 7.)

Additionally, in attempting to distinguish *Hicks,* 897 F.3d 1109, where the Court rejected a product market because the plaintiffs attempted to omit many economic substitutes, Plaintiff argues that it did not omit economic substitutes such that the "contrived nature of those proposed product markets made them not natural, artificial, and contorted to meet Plaintiffs' litigation needs." (Opp. at 8 (internal quotations omitted).) However, this is exactly what Plaintiff has done by excluding alternative WLAN products, or wireless routers, available to consumers. The FAC arbitrarily excludes WLAN products sold at physical stores or other well-known websites, as well as enterprise WLAN products sold through other distribution channels such as internet service providers. (FAC at ¶ 58.a.) This was deliberately done to meet Plaintiff's litigation needs by manipulating the product market to better fit the market for TP-Link wireless routers. Thus, the FAC fares no better than the complaint in *Hicks* and Plaintiff's antitrust claims should be dismissed for failing to define a plausible product market.

## 2. Plaintiff Fails to Adequately Allege a Geographic Market

The FAC fails to plead facts to support a global or New York geographic market for consumer WLAN products, and the Opposition makes these deficiencies clear.  As for the New York market, Plaintiff concedes that it did not allege facts as to where its past customers were geographically located, and again attempts to amend the FAC through its Opposition.  (*See* Opp. at 9.)  Thus, there are no allegations in the FAC to demonstrate that the geographic market should be limited to New York. The only factual allegations contained in the FAC regarding the global market relate to a single press release by a separate Chinese company that is not named as a defendant, and that does not sell products in the United States, while the FAC alleges that TP-Link is a U.S. entity headquartered in California. (FAC at ¶ 12.) Although Plaintiff concedes that the geographic market extends to the "area of effective competition"

JOINT REPLY ISO MOTION TO DISMISS
CASE NO:  2:19-CV-10374-SB (EX)

4827-5235-2210.7

(Opp. at 9 (citing *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988)), there are no allegations that domestic consumers can turn to products shipped globally for sales outside the United States as alternative sources of supply. Thus, contrary to Plaintiff's arguments, it is unreasonable to infer that the "area of effective competition" somehow extends globally.

   **3.**   **The Fourth Amended Complaint Fails to Plead Facts Sufficient to Show Market Power or a Dangerous Probability of Achieving Market Power**

    **a.**   **Plaintiff Fails to Plead Direct Evidence of Market Power**

  The parties agree that to plead direct evidence of market power, "a plaintiff must allege *both* restrictive output and supracompetitive prices," neither of which is established by *factual* allegations in the FAC. *Dominick v. Collectors Universe, Inc.,* 2012 U.S. Dist. LEXIS 179703, *10 (C.D. Cal. Dec. 18, 2012) (emphasis added).

    **(i)**   **Plaintiff fails to adequately allege restrictive output.**

  "Restrictive output exists only when a defendant can limit ***marketwide output by reducing its own output***," a point Plaintiff fails to allege in the FAC and refute in its Opposition. *Dominick*, 2012 U.S. Dist. LEXIS 179703 at *10 (emphasis added). This reduction in output must be enough to increase ***marketwide prices***, because "[w]ithout market power to increase prices above competitive levels, and sustain them for an extended period, a predator's actions do not threaten consumer welfare." *Rebel Oil*, 51 F.3d at 1434. There are no facts alleged that the output for all WLAN products, or all wireless routers, has been reduced to increase marketwide prices for all such products. This alone is fatal to Plaintiff's market power claims.

  The only allegations against TP-Link are that it attempted to remove unauthorized distributors who allegedly purchased merchandise through distressed channels at reduced prices. (FAC at ¶ 7.) There are no allegations that TP-Link restricted its actual output of WLAN products or wireless routers, nor are there any

allegations that TP-Link took any actions that had the effect of limiting output of other manufacturers in the relevant product market.  In sum, there are no facts pleaded that there was any reduction in the marketwide output of WLAN products, or wireless routers, sufficient to cause an increase in marketwide prices.

In its Opposition, Plaintiff argues that its allegations regarding TP-Link's alleged efforts to restrict competition from unauthorized third-party resellers of TP-Link branded products is sufficient to demonstrate restricted output. (*See* Opp. at 11-12.) However, even if accepted as true, these allegations do not establish any materially reduced output in the overall market for WLAN product or wireless routers, and they certainly do not establish reduced output sufficient to effect marketwide price increases.

### (ii)    Plaintiff fails to adequately allege supracompetitive prices.

Plaintiff's conclusory allegations regarding supracompetitive prices also independently fail. The only argument put forth in the Opposition is the fact that Plaintiff can allegedly sell its inventory with a 20% profit margin while maintaining lower prices than authorized TP-Link distributors. This allegation does not evidence supracompetitve prices. Plaintiff's own profit margins cannot support any finding of supracompetitive prices because Plaintiff alleges that it purchased TP-Link branded wireless routers from "close-out" sellers "at a steep discount." (FAC at ¶ 7.) Thus, Plaintiff's purchase costs are not necessarily tied to the manufacturing costs of the product, or indicative of profit margins on sales by the manufacturer or its authorized distributors. Thus, even if Plaintiff can maintain a 20% profit margin on its resales, this has no bearing on whether TP-link's prices are supracompetitive. There are also no allegations that TP-Link maintains a profit margin higher than 20% nor allegations regarding profit margins through normal distribution channels that would establish that TP-Link's profits are out of line with industry standards. Thus, Plaintiff has failed to adequately allege supracompetitive prices.

4827-5235-2210.7

### b.   Plaintiff Fails to Plead Circumstantial Evidence of Market Power

Stripping the FAC away from conclusory allegations demonstrates that Plaintiff also fails to plead circumstantial evidence of market power.

### (i)   Plaintiff fails to adequately allege that defendants own a dominant share of any relevant markets.

In its Opposition, Plaintiff purports to allege a new, narrowed relevant product market, limited to wireless routers and interchangeable products. (Opp. at 5.) However, there are no factual allegations in the FAC that, if true, would demonstrate that TP-Link has a dominant share of this new, narrowed product market. The sole fact alleged, upon which Plaintiff bases its entire market share argument, is a single press release.  But the press release cannot support Plaintiff's claims.

First, Defendant TP-Link USA Corporation did not issue the press release. Rather, as demonstrated on its face, the press release was issued by a wholly separate corporate entity, TP-Link Corporation Limited, a Chinese company located in Shenzhen, China. And, based on the website address, it was not issued in the United States but pulled from a Danish website. Thus, the press release cannot support any finding as to Defendant TP-Link USA Corporation.

Second, the press release does not provide any information regarding whether it covers sales in the United States; it does not identify the sales channels reflected; and, while it does generally refer to WLAN products, it does not identify the scope of products covered and clearly does not provide any information regarding the market share for wireless routers. Moreover, Plaintiff's attempt to augment the FAC to add a narrowed definition for WLAN products based on the IDC report referenced in the press release falls short because neither the FAC, nor the Opposition, include any facts that would establish the full scope of products covered by the new IDC definition, such as switches and controllers, are economic substitutes for wireless routers.[2]

---

[2] Further, Plaintiff also attempts to amend the FAC by adding new factual allegations

Third, Plaintiff's reliance on the press release also separately fails because Plaintiff seeks to prove that Defendant TP-Link USA Corporation had monopoly power, or a dangerous probability of achieving monopoly power, in 2018 (*see* FAC at ¶ 58), but the press release addresses 2017.  The FAC contains no factual allegations as to TP-Link's market share in 2018, and there are no factual allegations to indicate that market share from 2017 carried into 2018.[3]

### (ii) Plaintiff fails to adequately allege significant barriers to entry or that existing competitors lack capacity to expand output.

"[A]n antitrust plaintiff must also show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the anticompetitive conduct." *Dominick*, 2012 U.S. Dist. LEXIS 179703 at *13. Plaintiff's conclusory allegations that there are high capital costs, entrenched customer preferences, and that it takes many years to obtain high customer ratings simply restate the legal test. (*See* Opp. at 18.) Under *Iqbal/Twombly*, a plaintiff cannot just plead the legal elements of a claim or legal conclusions. *Fontana Fasteners, Inc. v. Foremost Threaded Prods*., No. ED CV 16-846-SJO(AJWx), 2016 WL 9459245, at *1 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Rather, a plaintiff must plead facts that if true, demonstrate that it is entitled to relief. *Iqbal*, 556 U.S. at 678. Here, Plaintiff merely recites what courts have stated can constitute entry barriers but

---

in the Opposition regarding the size of the Amazon Marketplace. (Opp. at 16.) However, even if accepted as true, Plaintiff's allegations fail because it has not pleaded any facts regarding the market share for wireless routers on Amazon.

[3] Notably, even the 44.08% market share noted in the press release is not sufficient to support Plaintiff's Sherman Act claims. *PNY Techs., Inc. v. SanDisk Corp.*, 2012 U.S. Dist. LEXIS 55965, *28 (N.D. Cal. April 20, 2012) ("[G]enerally, courts require a 65% market share to establish a prima facie showing of monopolistic market power."). Plaintiff argues that more recent cases have allowed for a lower standard, but the case cited in support involved a market that was fragmented, which Plaintiff has not alleged in the FAC or its Opposition. *See Pac. Coast Agric. Exp. Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196, 1204 (9th Cir. 1975) (finding a 45-70% market share sufficient where the market was fragmented and no competitor held more than a 12% market share).

4827-5235-2210.7

has not stated any facts to demonstrate that these entry barriers exist. *See Rebel Oil*, 51 F.3d at 1439 ("The main sources of entry barriers are: (1) legal license requirements; (2) control of an essential or superior resource; (3) **entrenched buyer preferences** for established brands; (4) capital market evaluations imposing **higher capital costs** on new entrants; and, in some situations, (5) economies of scale." (emphasis added)). There are no facts pleaded to demonstrate that there are high capital costs or that there are entrenched customer preferences. Thus, the FAC does not adequately plead the existence of significant barriers to entry.

Plaintiff's failure to plead that competitors in the relevant product market lack capacity to expand is another separate reason its claims fails. In its Opposition, Plaintiff argues only that TP-Link eliminated 90% of *third-party sellers* from Amazon. (Opp. at 16.) However, Plaintiff's arguments once again suffer from the fatal flaw that they relate only to third-party sellers on Amazon as existing competitors, completely disregarding other large manufacturers that sell directly to consumers or through authorized distributors. The FAC and Opposition are devoid of any facts regarding these competitors' ability to expand output.

### 4. Plaintiff Fails to Allege Causal Antitrust Injury

Plaintiff's claim that it suffered antitrust injury when "TP-Link restricted the availability of WLAN products to consumers by eliminating lower-priced competitors, which permitted it to maintain superficial demand for its contractually enforced supracompetitive prices" (Opp. at 20) fails because it lacks any factual support. As explained *supra*, Plaintiff has not alleged any facts sufficient to demonstrate that TP-Link charges supracompetitive prices for its products. Further, the FAC is devoid as to any allegations regarding TP-Link's "eliminating lower-priced competitors." At most, the FAC contains allegations as to Plaintiff's expulsion from Amazon. While Plaintiff alleges that Amazzia had a contractual mandate to remove 90% of sellers in 120 days, it does not allege any facts to demonstrate that this actually happened.

JOINT REPLY ISO MOTION TO DISMISS
CASE NO: 2:19-CV-10374-SB (EX)

4827-5235-2210.7

Plaintiff has also failed to sufficiently allege proximate causation based on lost sales (Opp. at 21), because it has failed to address the fact that it was Plaintiff's own failure to authenticate its products during the Amazon appeals process that resulted in its expulsion—not Defendants' alleged complaints. Had Plaintiff shown Amazon that its products were genuine and authentic, it would not have been expelled from the Amazon Marketplace. Thus, it was Plaintiff's own failures that caused its alleged injury. Further, Plaintiff's reliance on *Amarel v. Connell*, 102 F.3d 1494, 1590 is inapposite because that case discussed antitrust injury as a result of predatory pricing, which is not alleged here.

Specifically regarding *Novation Ventures, LLC v. J.G. Wentworth Company, LLC*, 156 F.Supp.3d 1094 (C.D. Cal. 2015), Plaintiff argues that the case does not stand for the proposition that a plaintiff must allege facts showing it was foreclosed from competing in the same relevant market and that this just happened to be the plaintiff's specific allegation of antitrust injury. (Opp. at 21-22.) However, this is exactly what Plaintiff is arguing. Plaintiff states that "it lost sales because Defendants' anticompetitive conduct caused TSI's expulsion from the Amazon Marketplace, the largest e-commerce platform in the world." (Opp. at 21.) Essentially, Plaintiff's position is that it was harmed because it could not sell consumer WLAN products on the Amazon Marketplace, and since the Amazon Marketplace is the largest e-commerce platform, it cannot otherwise effectively compete with TP-Link. Thus, *Novation's* holding is applicable and appropriate here.

### B. Plaintiff Fails to Establish that Subject Matter Jurisdiction Exists for Its Declaratory Judgment Cause of Action

Plaintiff's claim for declaratory judgment of non-infringement should be dismissed because there is no present case or controversy and therefore no subject matter jurisdiction. *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 867 (9th Cir. 2017). Plaintiff has affirmatively pleaded that it has been permanently banned from selling on the Amazon platform (*see* FAC at ¶ 49), and alleges no facts to demonstrate that it

would be able to sell TP-Link products on Amazon if this Court finds that it has not infringed. Thus, any judgment of non-infringement would not provide any redress. *See also Malava, LLC v. Innovative Grp. Holdings, Inc.*, No. 09cv173 WQH (WVG), 2010 U.S. Dist. LEXIS 123968, 2010 WL 4868024, at *2-3 (S.D. Cal. Nov. 22, 2010).  Further, the cases cited by Plaintiff are inapposite because in those cases, the plaintiff had the ability to continue the conduct complained of. (*See* Opp. at 23 (citing *Societe de Conditionnement en Aluminum*, 655 F.2d at 940-41, 944-45 and *Chesebrough-Pond's*, 666 F.2d at 397.) Here, Plaintiff has not alleged any facts indicating that it would sell or be able to sell on the Amazon Marketplace even if this Court found it was not infringing.

To the extent Plaintiff argues that it intends to sell TP-Link products through other platforms, there are no allegations in the FAC to support such an argument, and there are no allegations that TP-Link has taken any actions with respect to sales other than those on Amazon. Thus, any declaratory judgment based on this activity would be entirely speculative, hypothetical, and anticipatory. Accordingly, rather than seek declaratory judgment on a present controversy, Plaintiff essentially requests an improper advisory opinion. *See, e.g., Windsurfing Int'l, Inc.*, 828 F.2d at 758; *Bayer*, 861 F.3d at 868 (emphasis in original) (internal citations and quotations omitted). Even if the Court were to find that it has subject matter jurisdiction over Plaintiff's declaratory judgment claim, the Court should decline to use its limited resources to give what would effectively be an advisory opinion regarding conduct that has not happened but may occur in the future.

## III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss all claims against them pursuant to Rule 12(b)(6) for failure to state claims.

4827-5235-2210.7

DATED: November 20, 2020          **FOLEY & LARDNER LLP**

_/s/Stephen R. Smerek_
Stephen R. Smerek
Tiffany Kim Sung
FOLEY & LARDNER LLP
_Attorneys for Defendant_
_TP Link USA Corporation_

**BURKHALTER KESSLER
  CLEMENT & GEORGE LLP**

_/s/Josh Waldman_
Alton G. Burkhalter
Josh A. Waldman
BURKHALTER KESSLER
  CLEMENT & GEORGE LLP
_Attorneys for Defendant_
_Auction Brothers, Inc._

4827-5235-2210.7

## <u>ATTESTATION CLAUSE</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer of this document attests that all of the signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  November 20, 2020

**FOLEY & LARDNER LLP**
STEPHEN R. SMEREK
TIFFANY KIM SUNG

_/s/ Stephen R. Smerek_
Stephen R. Smerek
ATTORNEYS FOR DEFENDANT TP LINK USA
CORPORATION