UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:  2:19-cv-10374-SB (Ex) | Date:  February 17, 2021 |

| | |
|---|---|
| Title: | *Thimes Solutions, Inc. v. TP Link USA Corporation, et al.* |

| | |
|---|---|
| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
| Victor Cruz | N/A |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:   ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS (DKT. NO. 130)**

Before the Court is the Motion to Dismiss filed by Defendants TP Link USA Corporation (TP-Link) and Auction Brothers, Inc. d/b/a Amazzia's (Amazzia) (collectively, Defendants).  (Dkt. No. 130.)  Plaintiff Thimes Solutions, Inc. (TSI) opposes.  (Dkt. No. 134.)  Defendants have replied.  (Reply, Dkt. No. 135.)  For the following reasons, the Court **GRANTS** the Motion.

I.   **BACKGROUND**

   A.   **Factual Background**

TP-Link is a manufacturer of consumer wireless local area network (WLAN) products.  (Fourth Amended Complaint (4AC), ¶ 19, Dkt. No. 126.)  As of March 15, 2018, TP-Link had a 44.08% global market share for WLAN products in 2017 and had an annual revenue of over $1 billion.  (*Id.*)  TSI buys and resells products in the manufacturer's original packing and does not repackage, modify, or otherwise change the product before resale.  (*Id.* ¶ 20.)  TSI became a

third-party seller on the Amazon Marketplace in 2016.  (*Id.*)  TSI purchases large volumes of products from distributors at a deep discount (e.g., the distributor is going out of business) and then resells them on Amazon at a price that is considerably lower than the product's manufacturer suggested retail price (MSRP) and minimum advertised price (MAP).  (*Id.* ¶¶ 20-21.)  Manufacturers such as TP-Link pressure their authorized distributors to sell its products at MSRP and contractually prohibits them from selling below the MAP.  (*Id.* ¶ 6.)  TSI sold over 175,000 products (including TP-Link WLAN products) on the Amazon Marketplace and had $2 million in sales during the first half of 2018.  (*Id.* ¶ 22-23.)  Despite having the legal right to re-sell these products under the first-sale doctrine, TSI was expelled from the Amazon Marketplace.  (*Id.*)

TSI alleges that manufacturers such TP-Link hire "brand protection specialists" to monitor the Amazon Marketplace and submit claims to Amazon's Notice Infringement team.  (*Id.* ¶¶ 24-26.)  TSI further alleges that TP-Link and Amazzia entered into a brand protection agreement as part of a scheme to eliminate "non-compliant" resellers of TP-Link's WLAN products from the Amazon Marketplace.  (*Id.* ¶¶ 27-33.)  TP-Link's goal was to eliminate price competition for its WLAN products so it could continue to force end consumers to pay artificially inflated prices.  (*Id.* ¶ 34.)  TP-Link targeted TSI because it was a successful reseller on Amazon.  (*Id.* ¶ 35.)  Despite TP-Link's desire to remove TSI, Amazon would not do so solely for selling TP-Link's products at sub-MSRP and sub-MAP prices.  (*Id.*)  Defendants then decided to falsely report to Amazon that TSI was selling counterfeit goods, knowing that Amazon would accept TP-Link's representation and take punitive action against TSI.  (*Id.* ¶ 38.)

On January 8, 2018, TSI purchased 360 TP-Link AC5400 routers.  (*Id.* ¶ 39.)  Ten days later, TSI sold two AC5400 routers on the Amazon Marketplace to Tom Lei, a TP-Link employee (*Id.* ¶ 40.)  The routers were shipped to a TP-Link warehouse in Fontana, California.  (*Id.*)  The next day, Amazon sent TSI a warning letter stating that TP-Link had complained TSI was selling counterfeit versions of the AC5400 router.  (*Id.* ¶ 41.)  However, the routers Mr. Lei ordered from TSI did not reach the TP-Link warehouse until January 22, 2018.  (*Id.* ¶ 42.)  On January 19, 2018, TSI sent an email to Defendants explaining that the goods were not counterfeit and had not yet been delivered, but this email was ignored.  (*Id.* ¶ 43.)  Instead, Defendants complained again on January 21, 2018—again before the products were delivered—and 25 more times from January 26, 2018 to June 21, 2018.  (*Id.* ¶¶ 44-46.)  TSI alleges on information and belief that TP-Link inspected the two AC5400 routers ordered by Mr. Lei and found them to be authentic, factory sealed products.  (*Id.* ¶ 47.)  Mr. Lei also ordered 6 TP-Link AC1200

routers from TSI on March 5, 2018, and TSI alleges on information and belief those routers were also found to be authentic. (*Id.*)

Despite the authenticity of the products TSI shipped, Amazon suspended TSI from the Amazon Marketplace on May 7, 2018 due to the complaints; however, TSI appealed and was later reinstated. (*Id.* ¶ 48.) After TSI's reinstatement, Defendants filed four additional false complaints leading to TSI's permanent expulsion from the Amazon Marketplace. (*Id.* ¶ 49.) TSI alleges that the counterfeiting complaints were objectively baseless they were made before delivery of the products ordered on January 8, 2018 and continued even after inspecting the products and determining their authenticity. (*Id.* ¶50.)

### B. Procedural History

TSI commenced this action on May 29, 2019 in the Southern District of New York (Compl., Dkt. No. 1) and filed a First Amended Complaint (FAC) on July 2, 2019. (FAC, Dkt. No. 32.)

On December 6, 2019, the case was transferred to the Central District of California (Dkt. No. 50) and was assigned the Honorable Percy Anderson on December 10, 2019. (Dkt. No. 53.) Judge Anderson dismissed the FAC on January 7, 2020 for lack of subject matter of jurisdiction but granted leave to amend. (Dkt. No. 73.) TSI filed a Second Amended Complaint (SAC) on January 13, 2020. (SAC, Dkt. No. 78.) On February 6, 2020, Defendants moved to dismiss and/or strike the SAC. (Dkt. No. 86.) On March 9, 2020, Judge Anderson converted a portion of Defendants' motion to dismiss into a Rule 56 summary judgment motion. (Dkt. No. 99.) On June 8, 2020, Judge Anderson denied the converted summary judgment motion, but granted Defendants' motion to strike TSI's claims for trade libel and interference with existing and prospective business relations. (Dkt. No. 103.) Judge Anderson also dismissed TSI's antitrust claim under Rule 12(b)(6) but granted leave to amend those claims. (*Id.*)

TSI filed a Third Amended Complaint (TAC) on July 8, 2020. (TAC, Dkt. No. 112.) The same day, TSI filed a motion for leave to file the 4AC to assert five new causes of action. (Dkt. No. 113.) Defendants moved to dismiss the TAC on July 27, 2020. (Dkt. No. 118.) On August 31, 2018, Judge Anderson denied Defendants' motion to dismiss the TAC as moot, denied TSI leave to amend to add claims under the Lanham Act and Racketeer Influenced and Corrupt Organizations (RICO) Act but granted leave to amend to add additional claims under the Sherman Act. (Dkt. No. 125.) Plaintiffs filed the 4AC on September 7, 2020 asserting claims for relief for (1) Maintenance of Monopoly and (2) Attempted

Monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and (3) Declaratory Judgment of Non-Infringement under the Declaratory Judgment Act, 28 U.S.C. § 2201.

The case was transferred to this Court on September 28, 2020 (Dkt. No. 129) and Defendants filed the instant motion on September 29, 2020.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

### B.     Judicial Notice

A court generally may not consider material beyond the pleadings in ruling on a motion to dismiss. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).  One exception is that a court may take judicial notice of undisputed facts contained in public records. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see* Fed. R. Evid. 201(b).

Defendants ask the Court to take judicial notice of the fact that Amazon is an online platform where consumers can purchase WLAN products. (Defendants'

RJN, Dkt. No. 131.)  This is not subject to reasonable dispute, and the request is **GRANTED**.  Defendants also ask the Court to take judicial notice of Amazon search results from searches for "wireless local area network products," "WLAN products," and "wireless router."  (Defendants' RJN, Dkt. No. 131.)  Defendants suggest that these documents "are public records and capable of accurate and ready confirmation by sources that cannot be reasonably questioned."  (*Id.* (citing *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005).)  TSI objects, raising a host of factors that could change the data found in the search result printouts.  (TSI Obj., Dkt. No. 134-6 at 1.)  TSI further objects on the grounds that Defendants are improperly seeking judicial notice of the facts within the searches.  (*Id.* at 2.)  The Court agrees on both counts. Defendants' request for judicial notice of the Amazon search results is **DENIED**.

TSI also submits a request for judicial notice.  (TSI RJN, Dkt. No. 134-2.)  TSI seeks judicial notice of three documents.  First, TSI requests judicial notice of a copy of the press release issued by TP-Link on March 15, 2018, which is quoted in paragraph 19 of the 4AC.  (TSI RJN, Ex. A, Dkt. No. 134-3.)  Because this document is incorporated into the 4AC, the Court **GRANTS** judicial notice as to this document.  TSI also seeks judicial notice of "the Fact Sheet provided by IDC for its Worldwide Quarterly Wireless LAN Tracker" (TSI RJN, Ex. B, Dkt. No. 134-4) and "excerpts of the Majority Staff Report and Recommendations regarding the Investigation of Competition in Digital Markets by the Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary of the House of Representatives of the 116th United States Congress."  (TSI RJN, Ex. C, Dkt. No. 134-5.)  Defendants object, arguing that TSI may not add factual allegations to the 4AC through its RJN.  (Dkt. No. 136.)  The Court **DENIES** judicial notice of the Fact Sheet but **GRANTS** judicial notice of the House of Representatives Report.

### III.   DISCUSSION

Defendants move to dismiss TSI's antitrust claims on several grounds, arguing that TSI has failed to adequately allege a viable antitrust market, market power, and antitrust injury.[1]

---

[1] The challenge to TSI's declaratory relief claim is not separately addressed in any detail here.  The allegations in the antitrust and declaratory relief claims overlap; and a decision about the viability of the antitrust claim may bear on the Court's evaluation of the various prudential factors relevant to the decision whether to

To state an antitrust claim, a plaintiff must start by defining the relevant market. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (noting that this is a "threshold step"). A market has both product and geographic dimensions. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 n.4 (9th Cir. 2008) ("Antitrust law requires allegation of both a product market and a geographic market.") Once the relevant market is reasonably defined, a court can analyze whether the defendant has substantial power within that market and engaged in conduct that harmed competition causing antitrust injury.

While market definition is generally a fact question, a court may dismiss a complaint when "the complaint's 'relevant market' definition is facially unsustainable." *Id*. at 1045. A definition is "facially unsustainable" where the proposed market fails to include "economic substitutes for the product." *Id*. "As such, the relevant market must include 'the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business.'" *Id*. (quoting *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir.1989)).

TSI stumbles right out of the gate by proffering an ambiguous product market—namely, "consumer WLAN products." (*See* 4AC ¶ 58.)[2] But many modern electronic devices used in the home could be said to be a "consumer WLAN product." Without a more bounded definition of the product, it is also impossible to determine reasonable interchangeability of use and cross-elasticity of demand. As a result, the product market is, as Defendants argue, "impermissibly broad because it encompasses non-interchangeable products." (Mot. at 6.)

In its opposition, TSI attempts to narrow the product market, stating that "the WLAN product market has a commonsense definition of wireless routers, all economic substitutes, and products that enjoy reasonable interchangeability of use." (Opp. at 5 (internal quotations and citation omitted).) But "[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Bastidas v. Good Samaritan Hospital LP*, No. 13-cv-04388-SI, 2014 WL 6900051, *4 n.3 (N.D. Cal. Dec. 8, 2014) (collecting cases). In a footnote,

---

adjudicate the declaratory relief claim. Under these circumstances, the Court will dismiss the declaratory relief claim, allowing TSI to amend this claim as well in an attempt to provide an overall cohesive and well-pleaded complaint.

[2] Though broadly defining the market, the only products identified in the 4AC are three TP-Link routers. (4AC ¶¶ 6, 40-44, 47.)

TSI contends that it should be allowed to amend to define the product market as "consumer-oriented WiFi routers, adapters, controllers, switches, access points, and similar products." (Opp. at 5 n.2.)³  But even considering this narrowed definition, there are insufficient facts alleged in the 4AC to allow for an evaluation of substitute products.

Because of this fundamental pleading defect, it is difficult to address the other deficiencies raised by the defense, including the allegations about the relevant geographic market, TP Link's power in that market, and the purported antitrust injury.  All that can be meaningfully stated at this point is that TSI should carefully consider these challenged defects when amending its pleading.  The Court grants leave to amend because it is required by law.  "Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts[.]'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 112 (9th Cir. 2000) (en banc)); *see also* Fed. R. Civ. P. 15(a).  Although this is TSI's fifth attempt to state a viable claim, it is TSI's first attempt to bring antitrust claims under the Sherman Act.  Given the basic failure to define a product market, the Court cannot now say that amendment would be futile.  But the Court strongly advises TSI to heed all the issues raised by Defendants in the event it elects to amend yet again.

Accordingly, Defendants' Motion is **GRANTED**.  TSI's claims are **DISMISSED with leave to amend**.  TSI may file a Fifth Amended Complaint by no later than **March 10, 2021**.

---

³ At the hearing, counsel for TP-Link conceded that TSI could plausibly define the product market as wireless router products and economic substitutes that perform the function of connecting users to the Internet.  Unlike the definition in the 4AC, this one narrows the scope of the product by explaining its function.  This serves not only to better describe the product but also to identify potential substitutes.  It is unclear whether TSI's proposed definition (Opp. at 5 n.2) differs from the concededly proper definition.