MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
  markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

```
                    FILED
           CLERK, U.S. DISTRICT COURT

            May 27, 2022

         CENTRAL DISTRICT OF CALIFORNIA
         BY: _____igr_____ DEPUTY
```

Attorneys for Plaintiff
Thimes Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS, INC., | Case No. 2:19-CV-10374-SB-E |
| Plaintiff, | **AMENDED FIFTH AMENDED COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| TP-LINK USA CORPORATION and AUCTION BROTHERS, INC. d/b/a AMAZZIA | |
| Defendants. | |

Plaintiff Thimes Solutions, Inc. dba Universal Goods & Sales ("TSI"), alleges on knowledge as to itself, but otherwise on information and belief, as follows:

## INTRODUCTION

1. This case is about greed disguised as "brand protection." With the advent of Amazon has come a fight for the right (or wrong) to display goods in the ecommerce space owned and controlled by Amazon, i.e. amazon.com. A former Investigation Specialist for Amazon's Seller Performance team, Chris McCabe, has written about the misuse of the Amazon rights reporting system. In his article, "Have you noticed How Unpredictable Amazon's Notice Infringement teams are now?" https://www.ecommercechris.com/have-you-noticed-how-unpredictable-amazons-notice-infringement-teams-are-now/(February 21, 2019), Mr. McCabe observes (Exhibit 1):

- Amazon's Notice Claim of Infringement Teams exist in theory to process intellectual property violations on the Amazon Marketplace at amazon.com;

- In practice, trademark and other violations can come from anywhere, allege anything, and are rife with abuse;

- The work of the Notice teams, though attempting to combat rampant abuse, has backslided of late to the point where Amazon's response to contested Intellectual Property Complaints makes "little to no sense;"

- Amazon harshly enforces the brand owner complaints of counterfeiting by requiring at most that brand owners attest to having "test bought" the allegedly counterfeit product from the alleged counterfeiter;

- Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, *re*stated repeatedly, and often have nothing to do with the reason for the suspension or expulsion; and

- Accused sellers—in particular those with a history of notice claims (as many sellers have)--are left in a virtual "twilight zone" where they are not told and cannot learn the true reasons for harsh—at times lethal—action taken against their businesses.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

2.     Unscrupulous brand owners, well aware of the above Notice Infringement landscape, take unilateral action and use "brand protection services" to assist them in "knocking off unwanted sellers."  *Id.*

3.     Plaintiff Thimes Solutions Inc. dba Universal Goods & Sales ("TSI") is a  Suffern, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy.   Succinctly, the model is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount.  Manufacturers, their "authorized distributors," and their "brand protectors" often seek means—some unlawful-- to eliminate such niche market competition.[1]

4.     Plaintiff TSI ordinarily buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale.

5.     TSI  brings this suit following its commercial and financial ruination resulting from Defendants' libelous statements to Amazon and consequential tortious

---

[1]A copyright or trademark holder enjoys a "distribution right" and may initially sell, or not sell, copies of a copyrighted or trademarked item to others on such terms as he or she sees fit. However, the IP holder's exclusive distribution right is limited to the first sale of the coyprighted or trademarked item. Under the "first sale" docrine, codified at 17 U.S.C. § 109(a) "the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of such copies."  The Fair Use Doctrine, similar to the First Sale Doctrine, permits a seller to use a another's trademark to identify the former's goods, provided that no likelihood of confusion results as to the source of the product or the trademark holder's sponsorship or affiliation.  15 U.S.C. §115(b)(5)(A)-(C).  The First Sale Doctrine [also] protects resellers of genuine trademarked goods from claims of infringement. *Davidoff & CIE, S.A. v. PLD Int'l. Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Hidalgo Corp. v. J. Kugel Designs, Inc.,* No. 05-20476-CIV-JORDAN/TORRES, 2006 U.S. Dist. LEXIS 96647, at *12 (S.D. Fla. 2006)

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

interference with Plaintiff's existing and prospective business relationship with Amazon Services LLC.

6.     TSI became a third-party seller on Amazon in 2016.  To become an Amazon seller TSI signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate TSI as a seller for any reason or for no reason at all.

7.     TSI sold over 175,000 products to customers on Amazon with a 98% lifetime positive feedback rating.  Plaintiff reached $2 million in sales during the first six months of 2018. As of its expulsion from Amazon, TSI was selling around $400,000-500,000 per month on amazon.com. Net margins were roughly 20%.  Now . . . there is only ruin.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

9.     Thimes Solutions Inc. was duly incorporated in New York on November 21, 2016 and maintains its principal place of business at 3 Litman Lane, Suffern, New York.  TP-Link USA Corporation was duly incorporated in California on October 15, 2008 and maintains its principal place of business at 145 South College Blvd., Suite 400, in Brea, CA 92821.Auction Brothers, Inc. dba Amazzia was duly incorporated in California on May 31, 2005 and maintains its principal place of business at 19528 Ventura Blvd, #229, Tarzana, CA 91356.

10.     Defendant's activities were within the flow of, were intended to, and had a substantial effect on, interstate commerce because Plaintiff conducted business all over the country.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), (c) and (d).  A substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Amazzia and TP-Link are residents of this district and their challenged

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conduct was initiated in this district including, without limitation, the transmission of the false statement at issue.

## FACTS

### A.   TP-LINK USA, TP-LINK NORTH AMERICA, TOM LEI AND AUCTION BROTHERS, INC. dba AMAZZIA

12.   TP-Link USA Corporation ("TP-Link" or "USA" at times), operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 160 million products around the globe during 2016.

13.   USA was originally a subsidiary of TPC but is now a subsidiary of TP-Link UK Limited.  It manufactures and supplies networking products for home and small business, known as SOHO and SMB.  Examples are switches, routers, and components for wireless systems.

14.   TP-Link USA's products are available at substantially all major electronics retailers, online and in-store, throughout the country, including amazon.com, jet.com, Best Buy, COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target, and Walmart.[2]

15.   TP-Link North America ("TPN" or "North America" at times) functions as an alter ego of USA and its business offices are located at the latter's principal address in Brea, CA, while it handles TP-Link warehousing a few miles away in Fontana, CA.  TPN merged into USA on November 26, 2019.  TPN was a fictitious name, duly registered under California law, at all relevant times..

16.   TP-Link's LinkedIn page has listed at least two (2) dual positions, believed to be at issue here, held under simultaneous employment by USA and TPN:

- Director of E-commerce at TP-Link North America, Inc.
  Greater Los Angeles Area
  Current: Senior Channel Strategy Manager,B2B at **TP**

---

[2] https://www.tp-link.com/us/where-to-buy

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

**Link USA** Corporation[3]

- Channel Strategy Manager, Ecom at TP-Link USA Corporation
  Hangzhou, Zhejiang, China
  Current: Channel Strategy Manager, Ecom at **TP-Link** North
  America, Inc.[4]

17.    USA and Amazzia published written complaints to Amazon, libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise infringing a trademark (on one occasion)  ("IP Complaints").[5]

18.    TP-Link's fraudulent IP Complaints directly caused Plaintiff's suspension from the Marketplace in May 2018 and also caused TSI's permanent expulsion as a seller on the Amazon website, effective on or about August 27, 2018.

19.    TP-Link retained Amazzia, to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.

20.    Amazzia describes itself as follows:

> As your dedicated partner, we keep your brand safe from unauthorized agents, ensure Amazon compliant distribution and amazing growth through price protection, optimization and targeted marketing.
> . . . .
>
> **Removing Un-Authorized Sellers**
> Effective and proven strategies to report and remove Un-Authorized Resellers from your listings

[3] https://www.linkedin.com/company/tp-link/ at **See all 78 employees on LinkedIn**, Screen 1 (last visited on June 3, 2018)
[4] *Id.*  at Screen 8.
[5] Plaintiff is informed and believes that IP complaints are prepared with an online system that does not provide the complainant with a completed copy.   See https://www.amazon.com/gp/help/reports/infringement    Amazon provides the accused with an edited and redacted version of the allegations in an email from the Seller Support group of Amazon. The allegations of the emailed version include the word "counterfeit," or "infringement," the Amazon Stock Identification Number(s) ("ASINs") allegedly counterfeited or infringed, an Amazon complaint ID number, the complainant company name, and an email address to contact with a view to resolution.   The entire text of the allegations and the signature of the person or entity who filed the complaint are not disclosed.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

21.     Amazzia's primary focus is removing lawful Amazon offerings from the Marketplace:

Unauthorized resellers corrupt the online marketplace with reckless, self-serving tactics, causing price erosion and negatively impacting your brand's image.

Under these circumstances your legitimate brick & mortar retailers are unable to compete with online prices and may refuse to carry your brand.

22.     Amazzia's Vice-President of Brand Protection William Samuel articulates his role quite simply:[6]

As the Vice President of Brand Protection at Amazzia, I ensure the protection of my clients' brands by identifying and eliminating unauthorized Amazon sellers. **The increasing number of MAP violators in the Amazon marketplace is astounding**! Rogue marketplace sellers can damage your brand and undercut your bottom line by selling products at extremely low discounted rates.  (emphasis added)

23.     Amazzia makes clear in publicly available promotions that the real problem with third-party sellers is that that they may *try* to compete on price:

Not all third-party sellers are ethical, and some may try to undercut you and misrepresent your brand. **The main risk involves companies deviating from your minimum advertised price.** This results in having your brand's value lowered. There's also the risk of bad brand representation if consumers experience poor customer service with any unauthorized third-party sellers. As a result, customers associate those bad experiences with your brand.                           . . . .
**Amazzia can protect your brand by preventing MAP violations** . . . (emphasis added)

24.     Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon" (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% .of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) Amazzia

---

[6] https://www.linkedin.com/in/william-samuel-0825a071/

promised TP-Link "full access to our team for any questions regarding the cleanup project."  See Exhibit 9 at Exhibit A thereto.[7]

25.    Unable to eliminate TSI sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting, at all times acting in concert with and on behalf of TP-Link, and with the latter's actual authority and instructions.

26.    Amazzia  directly caused Plaintiff's May suspension and permanent expulsion from the Amazon Marketplace  in coordination with the following scheme:

- On January 8, 2018 Plaintiff purchased 360 TP-Link AC5400 Routers from a reputable supplier with which Plaintiff has dealt extensively. Plaintiff has possession of approximately 100 of these items to date, all of which are authentic and not counterfeit.  Amazon continues to hold a number of Plaintiff's TP-Link AC5400 Routers.

- One Tom Lei (Screen name "amazon91773"), a TP-Link  employee, operated out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related competition to USA from competitors that are not so-called Authorized Resellers.

- Mr. Lei's purchases of TP-Link products from TSI, in his own name (using USA funding or reimbursement) and without disclosure of TP-Link involvement,  occurred on January 18, 2018 (2 AC5400 Routers) and March 5, 2018 (6 AC1200 Routers in three (3) separate transactions).  Exhibit 2 hereto.  He received the items at Defendants' Fontana CA warehouse, examined the products, and knew from such examinations that the products were authentic and not counterfeit. Notwithstanding this knowledge, Mr. Lei or those acting in concert with him libeled TSI *27 times* during January-June 2018 for selling counterfeit USA products  and otherwise infringing TP-Link's intellectual property.

- Mr. Lei's initial purchase of two (2) AC 5400's establishes that TP-Link's sole intent *ab initio* was to eliminate Plaintiff's sales of TP-Link products from the competitive marketplace, as the circumstances of the initial  January 19th complaint alleging counterfeit goods proves:

  o      The complaint addressed an ASIN: B01DXVK3KY, TP-Link

---

[7] Exhibit 9, the Declaration of Kevin Ryu was submitted by TP-Link in *Careful Shopper*.  Exhibit A thereto was identified as "a true and correct copy of TP-Link's contract with Amazzia. *Careful Shopper LLC v. TP-Link USA Corporation*, Case 1:18-cv-03019-RJD-RML Document 35-1 Filed 02/27/19.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router

- o Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018
- o Amazon lodged the Router with UPS for delivery to TP-Link on January 19, 2018 (Exhibit 3)
- o The Router was not delivered to Mr. Lei until January 22, 2018, three days *after* swearing to Amazon that the Router was test-purchased and found to be counterfeit (Exhibit 4).

TP-Link *targeted* TSI for elimination and in its haste lodged its libelous IP complaint before receiving the Routers! [8]

27. During 2018 TP-Link complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting:

- Jan 19th: us-compliance@tp-link.com
- Jan 21st: us-compliance@tp-link.com
- Jan 26th: us-compliance@tp-link.com
- Feb 14th: compliance-us@tp-link.com
- Feb 21st: compliance-us@tp-link.com
- Feb 28th: compliance-us@tp-link.com[9]
- Mar 2nd: compliance-us@tp-link.com
- Mar 3rd: compliance-us@tp-link.com
- Mar 10th: compliance-us@tp-link.com
- Mar 13th: compliance-us@tp-link.com
- Mar 21st: compliance-us@tp-link.com
- Mar 31st: compliance-usa@tp-link.com
- Apr 2nd: compliance-usa@tp-link.com
- Apr 5th: compliance-usa@tp-link.com
- Apr 6th: compliance-usa@tp-link.com
- Apt 7th: compliance-usa@tp-link.com

---

[8] After receiving the first TP-Link-instigated Notice from Amazon, Plaintiff researched its sales of the TP-Link AC 5400 Router and searched the purchaser's address on Google, thereby identifying TP-Link as the purchaser of two (2) AC5400 Routers.

[9] On this instance alone, TP-Link claimed trademark infringement, but not counterfeiting.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Apr 9th: compliance-usa@tp-link.com
- Apr 10th: compliance-usa@tp-link.com
- Apr 11th: compliance-usa@tp-link.com
- Apr 12th: compliance-usa@tp-link.com
- Apr 24th: compliance-usa@tp-link.com
- Apr 25th: compliance-usa@tp-link.com
- Apr 26th: compliance-usa@tp-link.com
- Apr 30th: compliance-usa@tp-link.com
- May 28th: compliance-usa@tp-link.com
- May 30th: compliance-usa@tp-link.com
- Jun 7th: compliance-us@tp-link.com
- June 21st: compliance.usa@tp-link.com

28.     TP-Link/Amazzia used four (4) different identities in complaining to Amazon, indicating a combination and conspiracy, to wit:   compliance-us@tp link.com,        compliance-usa@tp-link.com,        us-compliance@tp-link.com and   compliance.usa@tp-link.com[10]   On information and belief, the only email address available to Amazzia was compliance-usa@tp-link.com.

## FALSE INFRINGEMENT CLAIMS AT AMAZON

29.     In the April 2018 article by Chris McCabe ("McCabe"), discussed *supra,* the renowned expert in Amazon Seller Performance issues, McCabe summarizes "[h]ow unethical sellers abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> **Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes

---

[10] TP-Link has admitted in other litigation Amazzia's use of compliance-usa@tp-link.com. See Exhibit 9 hereto at ¶4.

[11] McCabe is a former Investigation Specialist for Amazon's Seller Performance team.  His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

a legally-binding declaration in the form, and signs it.

30.     TP-Link/TPN/Amazzia was the unethical seller in the instant case when it falsely executed IP Complaints against TSI and, even if it issued the first complaint (1/19/18) as an honest mistake (it did not), it received a sincere offer to pursue the truth that same day . . . but did not retract its evil report; in fact, it issued some two (2) dozen additional reports and hereby sealed TSI's doom.

31.     TP-Link/TPN/Amazzia acted maliciously and intentionally in reporting to Amazon that TSI was listing counterfeit products and, in fact, about two dozen reports were issued in conscious disregard of the truth.

**THE ROLE OF TRADEMARK INFRINGEMENT IN THIS PICTURE**

32.     TP-Link sought in related litigation in this Court to justify its IP (counterfeit) complaints with a purported trademark infringement theory based on a purported disclaimer of its manufacturer's limited warranty as to Gray Market purchasers of its products, thus making products sold to Gray Market purchasers "materially different."[12]  Even if in good faith (which it was not), however, such a trademark infringement claim did not justify reporting Plaintiff to Amazon as a counterfeiter.

33.     Counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).  Trademark infringement, on the other hand, is defined as the unauthorized use of a trademark or service mark, i.e. *the same product* bearing the mark without required permission.

34.     When TP-Link complained of trademark infringement, Amazon rejected the complaint.  When TP-Link complained of "counterfeiting," Amazon expelled TSI with permanence.  Amazzia is the Amazon expert and planned this

---

[12] A "Gray market" refers to the trade of a commodity through distribution channels that are not authorized by the original manufacturer or trademark proprietor.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conspiracy with expressed knowledge and intent to "remove" Gray Market sellers.

35.     For the reasons stated in the next three (3) paragraphs hereof,  TP-Link's sole predicate for its wrongdoing, i.e. that its limited warranty did not convey to TSI purchasers (which would not justify a *counterfeit* IP complaint in any event), is a pretext , a mere illusion to justify some complaint--any complaint--with unauthorized below-MAP sellers.[13]

36.     TSI was not an "unauthorized seller" except in the commonly-understood sense that it was not specifically authorized under any distributorship agreement (or similar agreement) by TP-Link to purchase TP-Link products directly from TP-Link and thereafter resell such products.  In all other respects, TSI was "authorized" by law to sell genuine TP-Link products.

37.     TSI was authorized under its agreement with Amazon to sell TP-Link products on amazon.com; *and TP-Link consented in its agreement with Amazon to abide by Amazon's policies which authorized Gray Market sellers to resell the trademarked goods of others without restraint on the Amazon Marketplace.*

38.     Under the First Sale Doctrine TSI was fully within its rights in lawfully acquiring authentic TP-Link products, as it did in all instances of purchase of TP-link products, and listing and selling such products on Amazon.

39.     Moreover, TSI sales of TP-Link products on Amazon *did* convey the manufacturer's warranty (because under NYGBL §369-b any disclaimer was invalid); hence, such products were *not* materially different than other genuine TP-Link products, because:

- TP-Link never enforced any such disclaimer against any of its Gray Market customers prior to the advent of this litigation. Based on discovery received to date in *Careful Shopper*, TP-Link did not require, from registered owners of TP-Link products seeking warranty assistance, proof of purchase disclosing seller identity until September 2019 at the earliest.

---

[13] A **MAP price** is a minimum amount that resellers agree not to advertise below.

- • Purchasers of TP-Link products on Amazon designated (in the registration temple) their seller as Amazon. TP-Link had no way—and sought no way-- to distinguish as between Amazon purchasers of TP-Link products sourced from "authorized" and "unauthorized" sellers.

- • Most significant, as a matter of law Section 369-b of New York's General Business Law, invalidating any warranty limitation actuated because "such merchandise is sold by a particular dealer," preserved the warranty for all Careful Shopper customers. *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp.2d 208, 228 (S.D.N.Y. 2011); see also *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261 n.3 (S.D.N.Y. 2012)

40.    Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing, is (along with        TP-Link) subject to punitive damages herein.  For example upon information and belief, Amazzia directly or indirectly sells products on Amazon through multiple seller accounts, often buying them from the same brands they contract with to provide "brand protection services," and subsequently files false counterfeit complaints against their competitors on Amazon.

41.    Immediately upon receipt of the first IP-complaint of January 19, 2018 Plaintiff emailed TP-Link at the designated address in an effort to satisfy TP-Link that TSI's product was authentic and not counterfeit (Exhibit 5):

1
2
3
4
5
6
7
8
9
10
11
12
13



We received an email from Amazon today stating that TP-Link is asserting that items sold by us (under the storefront "Universal Goods and Sales", merchant ID A1Q1VKNP5VVQEY, ASIN B01DXVK3KY, Complaint ID: 1359628881 ) are counterfeit. We take all reports of Intellectual Property Rights Infringement seriously.

These items were purchased from a reputable distributor and are not counterfeit.

Please be aware that Amazon has stated that our account is under review as a result of the allegations. If we suffer damages as a result of your incorrect allegations, you may be liable.

We respectfully request for a retraction to be sent to notice-dispute@amazon.com stating that the original allegations were made in error. If you believe the allegations are correct, please provide us with all evidence you have obtained to support your claim of infringement. We are aware of one purchase by TP-link of 2 of our units that were offered; as of the time of this email, Jan 19th, this has not been delivered and is currently in transit. Please advise if any other units have been purchased by TP-link.

14
15
16
17

42.     TP-Link did not respond to Plaintiff's letter, Exhibit 5; nor did Amazzia. During this litigation TSI has disclosed its sources of product to TP-Link.  TP-Link has not challenged the reputability of Plaintiff's sources of product, although it filed a Rule 26(f) Report since being so advised.

18
19

43.     Plaintiff then engaged expert Amazon counsel who emailed a letter to TP-Link on February 1, 2018 (Exhibit 6):

20
21
22
23

> In accordance with Amazon policy, in order to report an item is counterfeit, a test buy must be performed in order to verify the claimed differences are present between the accused product and the rights owner's product. As such, we are writing to request the specific basis for your counterfeit claims, including the test buy purchase information provided to Amazon to support your claims.

24

TP-Link did not respond to counsel's letter.

25
26

44.     On May 7, 2018 Plaintiff was suspended (with appeal rights) from selling on Amazon by reason of TP-Link's IP complaints (Exhibit 7):

27
28

> You have listings that infringe on the intellectual property rights of others. This is against our policies. The removed items can be seen on the Performance

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

45.     Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link continued its onslaught on May 28 and 30, and on June 14 and 21.  Exhibit 8.

46.     The record of TP-Link complaints, subject to Amazon's algorithmic surveil, caused Plaintiff's permanent expulsion (without appeal rights) from the Amazon Marketplace on August 27, 2018.  This result from Amazzia's IP reporting was predictable to Amazon experts.  *McCabe, supra.*

47.     All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's counterfeiting, were filed under false attestation:[14]

### Statements

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

48.     Conspirators TP-Link and Amazzia had ample opportunity and did in fact, albeit surreptitiously, test purchase many of TSI's TP-Link offerings to determine authenticity. Exhibit 1 hereto.  All were authentic and TP-Link has never stated to the contrary except, of course, as necessary to incite Amazon's punitive measures upon TSI. It chose to allege TSI's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications.  Such actions were malicious.

49.     TP-Link, having sought refuge in Noerr-Pennington in Careful-Shopper, we will plead to the issue here.  The series of events pled within were a "sham" within Noerr Pennington parlance, and satisfy Noerr-Pennington's "sham

---

[14] https://www.amazon.com/gp/help/reports/infringement

exception" as follows:[15]

- TP-Links IP complaints sounding in counterfeiting were objectively baseless, and TP-Link knew they were objectively baseless.  Having made 4 test purchases through Mr. Lei, and having had opportunity to examine them, TP-Link knew of their authenticity.
- Upon information and belief, TP-Link filed IP complaints sounding in trademark infringement that were rejected by Amazon as non-actionable.
- Only by charging "counterfeiting" unendingly could TP-Link effect TSI's expulsion.
- Amazon has testified before Congress that that Rightsowners often "conflate" their IP rights with independent sellers' products' lacking authenticity; and Amazon disapproves of Rightowners so doing. [16]
- TP-Link found a "hired gun" in Amazzia and contracted to eliminate third party sellers as follows: "50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," without regard to whether such resellers' conduct was wrongful;  Exhibit 9 at Exhibit A.
- As per Amazzia's online promotional material, i.e. "Amazzia can protect your brand by preventing MAP violations," the foregoing conspiracy existed to eliminate price competition;

---

[15] Under the Noerr-Pennington doctrine, a **sham** petition is one that is ostensibly directed toward influencing governmental action but that is a mere **sham** to cover an attempt to interfere directly with the business relationships of a competitor. *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1050, 99 Cal. Rptr. 3d 661, 666 (2009)

[16] http://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf

Amazon seeks to provide its customers with the widest possible selection of products at competitive prices. One way Amazon has sought to provide this selection is by making it easy for sellers of authentic products to open selling accounts and sell a wide variety of products directly to Amazon's customers in Amazon's store. Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand. These include liquidation or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise. Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store. But, we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Such a purpose and effect of collaborative action violates the common law.
- IP complaints now defended by TP-Link serve to "conceal[] an attempt to interfere *directly* with the business relationships of a competitor," i.e. TSI.  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) (*PRE*); see also *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).
- "[N]o reasonable [Amazon seller] could realistically expect success on the merits" of the IP complaints, 508 U.S. at 60.
- The IP complaints sounding in counterfeiting were, therefore, not    [" 'communications preparatory to or in anticipation of bringing an action or other official proceeding'  and are therefore unprotected by Noerr-Pennington.

## B.    ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

50.    But for Defendants' IP complaints to Amazon TSI would not have been expelled from the Amazon Marketplace.

51.    Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures.   Plaintiff was permanently expelled nonetheless.

52.    By reason of the expulsion Plaintiff was unable to sell its aging inventory (at least $1.1 million) or access its funds in Amazon's hands (about $80,000).  Plaintiff was forced to hire counsel at substantial expense.

53.    There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

54.    The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month.  Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.

55.    Defendants' actions and inactions, moreover, were calculated, willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $5,000,000, together with attorney fees to be

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

determined by the Court.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

56.     Plaintiff incorporates the allegations above as though the same were re-written at length.

57.     "The elements of tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1153. *Fresno Motors, Ltd. Liab. Co. v. Mercedes-Benz USA, Ltd. Liab. Co.*, 852 F. Supp. 2d 1280, 1292 n.12 (E.D. Cal. 2012)

58.     As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints alleging sale of counterfeit products received by TSI from Amazon were the work of TP-Link and Amazzia.

59.     Experts believe that Amazon third-party sellers who pass a threshold of <$1MM in annual sales, known as "Top Sellers" (such as TSI), have considerable longevity in their Amazon business relationship. *See* https://www.marketplacepulse.com/articles/veteran-amazon-sellers-still-at-the-top For TSI "the sky was the limit."

60.     Defendants' accusations of counterfeiting, wrongful *per se*, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's existing and prospective business relationship with Amazon.

61.     The accusations aforesaid proximately caused Plaintiff's expulsion.

62.     The statements were made maliciously and with ill will, as business entities do not lie dozens of times and turn a stone deaf ear to pleas for moderation absent a strong measure of ill will

63.     Amazon stated that it would act favorably if TP-Link/Amazzia would retract the accusations; but, despite TSI requesting a retraction and asking for evidence of TP-Link/Amazzia's claims, both directly and through counsel, TP-Link/Amazzia refused to retract the IP Complaints or even respond to TSI or counsel at all and indeed continued to file dozens of new complaints afterwards."

64.     Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon business.  TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000. Using a 20% profit figure because our net profits ($368,000) derived from $1.819. Assuming a 10-year income stream for TSI, constant sales and static income of $900,000 per year, discounted at 3%,  we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000.

## CLAIM II:  TRADE LIBEL

65.     Plaintiff incorporates the above allegations as though the same were rewritten at length.

66.     Under California law:

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259, 217 Cal. Rptr. 3d 234 (2017) (quoting *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312, 206 Cal. Rptr. 3d 60 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." *John Doe 2*, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency

1    to injure him in his occupation." <u>Cal. Civ. Code § 45</u>.' *Schmidt v. Baldy*, No.

2    CV 16-9368-DSF (AGRx), <u>2019 U.S. Dist. LEXIS 182826, at *18</u> (C.D. Cal.

3    Oct. 19, 2019Defendants' libelous IP complaints to Amazon proximately

4    caused Amazon to expel Plaintiff from the Marketplace on August 27, 2018

5    with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract

6    with Amazon, as identified in ¶7 *supra*.

7    67.    TP-Link /Amazzia's scheming accusations falsely charged TSI with a

8    serious crime or crimes.  Advertising falsely over the interstate wires may violate 18

9    U.S.C. 1343 because members of the public part with their money by reason of

10   advertising. Moreover, this is not the only instance of defendants' scheme, to wit:

11   there is pending in this Court the case of *TP-Link USA Corporation v. Careful

12   Shopper*,[17]with counterclaims and third-party complaint premised on the same

13   essential allegations as this case.

14   68.    The Amazzia promotional material and contract evidence a high

15   probability that many more third-party sellers have fallen victim to this scheme but,

16   as the conspirators calculated, those victims are unable to mount a lawsuit against the

17   largest wi-fi manufacturer in the world, i.e. TP-Link.  Thus, on information and

18   belief, plaintiff alleges that the conspiracy alleged herein was effected through a

19   pattern of wrongful acts and conduct.

20   69.    Defendants' accusations against Plaintiff to Amazon directly injured

21   Plaintiff in its business and trade because, as they knew, Amazon will not tolerate

22   repeat counterfeiters as Amazon sellers.

23   70.    Defendants' accusations against Plaintiff constitute trade libel *per se.*

24   71.    Although injury may be presumed due to libel *per se,* Plaintiff suffered

25   above and beyond presumed damages, e.g. loss of profits.  See ¶7 *supra*.  Further,

26   TSI lost good will specific to the TSI-Amazon relationship that cannot be recovered

27   including, *inter alia,* Plaintiff's right to sell a broad range of products on

28   ───────────────
[17] CASE NO:  8:19-cv-00082-JLS-KES

AMENDED FIFTH AMENDED COMPLAINT
                                                        CASE NO. 2:19-CV-10374-SB-E

amazon.com, much of which entitlement was grandfathered.[18]

## **PRAYER**

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

      A.      Compensatory damages of at least $5,000,000;

      B.      Treble damages of $15,000,000;

      C.      Punitive damages of not less than $5,000,000;

      D.      Attorney fees and costs; and

      E.      Such other and further relief as the Court may order.

Dated:  May 23, 2022          GAW | POE LLP

                              By:    _____

                                    Mark Poe

                                    Attorneys for Plaintiff
                                    Thimes Solutions, Inc.

---

[18] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

1     Plaintiff Thimes Solutions, Inc. hereby demand a jury trial for its claims

2  against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a

3  Amazzia.

4

5     Dated:  May 23, 2022          GAW | POE LLP

6

7                                   By:  _____

8                                   Mark Poe
                                    Attorneys for Plaintiff Thimes
9                                   Solutions, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED FIFTH AMENDED COMPLAINT
                                              CASE NO. 2:19-CV-10374-SB-E