RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>Plaintiff,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>Defendant. | Case No. 2:19-cv-10374-SB-E<br><br>**DISCOVERY MATTER**<br><br>Date: July 8, 2022<br>Time: 9:30 am<br>Courtroom: 750, 7th Floor<br><br>**JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL DEFENDANT AUCTION BROTHERS TO PRODUCE DOCUMENTS**<br><br>Discovery Cutoff:    Sept. 30, 2022<br>Pretrial Conference:  Dec. 30, 2022<br>Trial Date:          Jan. 9, 2023<br><br>Complaint Filed:  May 29, 2019<br>Am. 5th Am. Com. Filed:  May 27, 2022 |

# **TABLE OF CONTENTS**

I.        PLAINTIFF'S INTRODUCTORY STATEMENT ......................................5

PLAINTIFF'S POSITION ...............................................................................5

PLAINTIFF'S PERTINENT FACTS ..............................................................6

II.       AMAZZIA'S INTRODUCTORY STATEMENT ..................................8

III.      AMAZZIA'S BOILERPLATE OBJECTIONS ARE NOT VALID. ..........12

    A.    Amazzia's "General Objections" Are Improper. ...........................12

    B.    Amazzia's Objection to the term "Relating To" Is Not Valid. ...................13

    C.    Amazzia's Objections Based on Privilege and Confidentiality Are Not Valid. ...............................................................................13

IV.       PLAINTIFF'S MOTION TO COMPEL IS PROCEDURALY FLAWED AND PREMATURE .............................................................14

    A.    AMAZZIA'S SUPPLEMENTAL RESPONSES RENDER THE ABOVE ARGUMENTS BY PLAINTIFF MOOT…………………………………16

V.        THE COURT SHOULD COMPEL Amazzia TO PRODUCE DOCUMENTS IN RESPONSE TO EACH RFP. ......................................17

    A.    RFP 1 ............................................................................................17

        1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response. ......................................................17

        2.    Reasons Why the Court Should Compel Production. ......................18

        3.    Reasons Why the Court Need Not Compel Production. ...................18

    B.    RFP 2 ............................................................................................18

        1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response. ......................................................18

        2.    Reasons Why the Court Should Compel Production. ......................19

        3.    Reasons Why the Court Need Not Compel Production. ...................19

    C.    RFP 3 ............................................................................................19

        1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response. ......................................................19

        2.    Reasons Why the Court Should Compel Production. ......................20

        3.    Reasons Why the Court Need Not Compel Production. ...................20

    D.    RFP 4 ............................................................................................21

        1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response. ......................................................21

        2.    Reasons Why the Court Should Compel Production. ......................22

        3.    Reasons Why the Court Need Not Compel Production. ...................22

    E.    RFP 5 ............................................................................................23

        1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response. ......................................................23

        2.    Reasons Why the Court Should Compel Production. ......................24

|   |   | 3. | Reasons Why the Court Need Not Compel Production. | 25 |
| F. |   | RFP 6 | | 26 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 26 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 27 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 27 |
| G. |   | RFP 7 | | 28 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 28 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 29 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 29 |
| H. |   | RFP 8 | | 30 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 30 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 31 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 31 |
| I. |   | RFP 9 | | 32 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 32 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 33 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 34 |
| J. |   | RFP 10 | | 34 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 34 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 35 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 36 |
| K. |   | RFP 11 | | 37 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 37 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 38 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 38 |
| L. |   | RFP 12 | | 39 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 39 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 40 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 40 |
| M. |   | RFP 13 | | 41 |
|   | 1. | Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response | | 41 |
|   | 2. | Reasons Why the Court Should Compel Production. | | 42 |
|   | 3. | Reasons Why the Court Need Not Compel Production. | | 43 |

N.    RFP 14 ................................................................................. 44
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 44
       2.    Reasons Why the Court Should Compel Production. ...................... 45
       3.    Reasons Why the Court Need Not Compel Production. ................... 45
O.    RFP 15 ................................................................................. 46
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 46
       2.    Reasons Why the Court Should Compel Production. ...................... 47
       3.    Reasons Why the Court Need Not Compel Production. ................... 48
P.    RFP 16 ................................................................................. 49
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 49
       2.    Reasons Why the Court Should Compel Production. ...................... 49
       3.    Reasons Why the Court Need Not Compel Production. ................... 49
Q.    RFP 17 ................................................................................. 50
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 50
       2.    Reasons Why the Court Should Compel Production. ...................... 51
       3.    Reasons Why the Court Need Not Compel Production. ................... 51
R.    RFP 18 ................................................................................. 52
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 52
       2.    Reasons Why the Court Should Compel Production. ...................... 53
       3.    Reasons Why the Court Must Not Compel Production. ................... 53
S.    RFP 19 ................................................................................. 53
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 53
       2.    Reasons Why the Court Should Compel Production. ...................... 54
       3.    Reasons Why the Court Must Not Compel Production. ................... 55
T.    RFP 20 ................................................................................. 55
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 55
       2.    Reasons Why the Court Should Compel Production. ...................... 56
       3.    Reasons Why the Court Must Not Compel Production. ................... 56
U.    RFP 21 ................................................................................. 57
       1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response ................................................................. 57
       2.    Reasons Why the Court Should Compel Production. ...................... 57
       3.    Reasons Why the Court Must Not Compel Production. ................... 57
VI.   AMAZZIA SHOULD BE REQUIRED TO COOPERATE ON ESI. ......... 58

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VII.      PLAINTIFF'S REQUEST REGARDING ESI IS MOOT. ......................... 59

VIII.     DOCUMENT PRODUCTION SHOULD FINISH BY JULY 18, 2022 ..... 60

IX.       THERE SHOULD BE NO DEADLINE BUT WHAT THE COURT HAS
          SET FOR DOCUMENT PRODUCTION ....................................................... 61

X.        PLAINTIFF IS ENTITLED TO MONETARY SANCTIONS. .................. 61

XI.       PLAINTIFF IS NOT ENTITLED TO MONETARY SANCTIONS BUT
          AMAZZIA IS. .............................................................................................. 62

Pursuant to Local Rule 37-2.1, the parties submit this Joint Stipulation Regarding Plaintiff Thimes Solutions, Inc.'s ("Plaintiff") Motion to Compel Defendant Auction Brothers d/b/a Amazzia ("Amazzia") to Produce Documents.

## I. PLAINTIFF'S INTRODUCTORY STATEMENT

**PLAINTIFF'S POSITION**

This is a lawsuit concerning claims for tortious interference and trade libel brought by Plaintiff against Defendant TP-Link USA Corp. and Amazzia. The procedural history of this case reflects that Defendants subjected Plaintiff to multiple rounds of motions to dismiss, with the case finally being dismissed with prejudice on March 24, 2021. Up to that point, Plaintiff had issued requests for production of documents to Defendants, but Defendants objected to many of the requests and had produced a total of two documents. Following a meet and confer over these RFPs, the parties agreed to an informal stay of discovery pending resolution of Defendants' latest motion to dismiss (which was subsequently granted).

On appeal, the Ninth Circuit reinstated Plaintiff's state law claims and the mandate was issued on May 10, 2022. On May 20, the District Court set the matter for trial on January 9, 2023 and imposed an accelerated fact and expert discovery deadline of September 30, 2022. The District Court also set expert disclosures for August 1, 2022. Plaintiff immediately resumed its meet and confer with Defendants over the RFPs. Defendants' primary position was that Plaintiff's RFPs are "stale" given the Ninth Circuit's affirming the dismissal of Plaintiff's antitrust claims. But Plaintiff clarified that, with the exception of RFP Nos. 18-24 that primarily concerned its antitrust claims (that Plaintiff was willing to drop), all of the remaining requests applied to Plaintiff's state law claims reinstated by the Ninth Circuit. Defendants then claimed to need 21 days to serve new responses to these RFPs and also would not commit to any date they would start producing documents, even though their original responses agreed to produce documents in response to various

requests.  Defendants also would not comment on whether they would be willing to discuss with Plaintiff the sources and custodians of electronically stored information ("ESI") they would collect from, and which search terms they would use.

Plaintiff followed up with Defendants twice over the next eight days, proposing that Defendants serve amended responses within 14 days.  Defendants ignored both emails.  When pressed for a third time, they said only they would serve amended responses (without committing to a response date or addressing which objections they would drop), now did they commit to when they would begin document production.

Plaintiff has no choice but to bring these two discovery motions (one against each Defendant) given the compressed discovery schedule and Defendants' unwillingness to provide any substantive information about their discovery obligations.  This discovery motion thus concerns three main issues.

First, Plaintiff requests an order overruling Amazzia's various objections and compelling it to produce the documents requested.

Second, Plaintiff requests an order compelling Amazzia to disclose the sources and custodians from which it is collecting ESI, as well as the search terms Amazzia is applying, and permitting Plaintiff to file a motion relating to those issues on shortened notice if the parties do not agree as to the proper measures for ESI.

Third, Plaintiff requests an order compelling Amazzia to complete its document production by July 18, 2022, so that Plaintiff can have at least two weeks to review all of TP-Link's documents prior to the initial expert disclosure deadline.

**PLAINTIFF'S PERTINENT FACTS**

As Plaintiff has alleged in its operative complaint (*see* ECF No. 178), it buys factory-sealed manufacturer's products from its authorized distributors at close-out prices and then, in turn, re-sells those products to consumers at a markup that is still lower than the manufacturer's suggested retail price.  (ECF No. 178 ¶¶ 3-4.) Consumers benefit by getting authentic products at a discount.  (*Id.*)  Plaintiff sold

such products as a third-party seller on Amazon. (*Id.* ¶ 6.)

TP-Link is a manufacturer of Wi-Fi products. (*Id.* ¶ 12.) TP-Link hired Amazzia to remove "unauthorized" sellers of its products from Amazon. (*Id.* ¶¶ 19-24.) To facilitate TP-Link's wishes, Amazzia sent 28 separate complaints to Amazon alleging that the TP-Link products sold by Plaintiff on its Amazon page were counterfeit. (*Id.* ¶¶ 25-27.) After receiving the notification from Amazon as to these accusations, Plaintiff contacted TP-Link to assure it that Plaintiff was selling only authentic TP-Link products, but TP-Link ignored Plaintiff's e-mails and letters. (*Id.* ¶¶ 41-43.) The deluge of counterfeiting complaints by Defendants eventually led Amazon to suspend and permanently expel Thimes from the Amazon Marketplace. (*Id.* ¶¶ 44-46.) That deprived Thimes of the ability to sell at least $1.1 million in inventory or access its $80,000 in cash held by Amazon. (*Id.* ¶ 52.) Prior to the expulsion, Plaintiff had been earning approximately $100,000 in monthly profits selling on Amazon. (*Id.* ¶ 54.)

On June 8, 2020, the District Court had entered an order dismissing Plaintiff's state law claims for economic interference and trade libel with prejudice. (ECF No. 103.) The District Court eventually permitted Plaintiff to amend its complaint to allege a Sherman Act claim, which it did. (ECF No. 126.) Plaintiff served requests for production of documents upon Amazzia and, on November 9, 2020, Amazzia served responses containing objections, but also agreeing to produce documents in response to various requests. (Declaration of Victor Meng, Ex. 2.) Plaintiff sent a meet and confer letter regarding Amazzia's responses on November 24, 2020. (*Id.*, Ex. 4.) The parties later agreed to an informal stay of discovery pending resolution of Defendants' motion to dismiss, which had been filed on September 29, 2020. (*Id.* ¶ 5.) The District Court subsequently granted Defendants' motion and the case was dismissed with prejudice. (ECF No. 145.)

Following an appeal, the Ninth Circuit reinstated Plaintiff's state law claims. (ECF No. 155.) The mandate issued on May 9, 2022. (ECF No. 158.) On May 20,

the District Court set the matter for trial on January 9, 2023 and imposed an accelerated fact and expert discovery deadline of September 30, 2022. (ECF No. 170 at 2.) The District Court also set expert disclosures for August 1, 2022. (*Id.*)

Plaintiff immediately resumed its meet and confer with TP-Link over its responses to the RFPs. (Meng Decl., Ex. 5.) During the telephonic conference, both Defendants took the position that they needed to serve new responses to Plaintiff's RFPs. (Meng Decl. ¶ 9.) Both Defendants also claimed to need 21 days to serve new responses and would not commit to any date for producing documents. (*Id.*) Both Defendants also stated that they would need to review the authorities Plaintiff sent on the need for the parties to cooperate regarding ESI. (*Id.*)

On May 26, 2022 and June 1, 2022, Plaintiff sent follow up e-mails regarding the subjects of the RFPs and document production. (Meng Decl., Ex. 7 at 2-3.) Defendants ignored both e-mails. (*Id* at 2.) On June 3, 2022, Plaintiff informed Defendants it would start preparing a motion to compel. (*Id* at 1-2.) Defendants responded merely by stating they would serve amended responses (without committing to a date) and would "be following the FRCP for document production" without providing any dates.[1] (*Id.* at 1.)

## II.   AMAZZIA'S INTRODUCTORY STATEMENT

Despite Plaintiff's allegations to the contrary, Amazzia has complied with its discovery obligations and will continue to do so. The reason the current discovery dispute exists is because Plaintiff propounded the document requests at issue nearly two years ago on September 25, 2020, at a time when Plaintiff's then-operative complaint alleged causes of action that are vastly different from the claims now at issue in Plaintiff's current operative complaint. When Plaintiff propounded its

---

[1] As required under Local Rule 37-2.1, a copy of the operative Complaint is attached hereto as Exhibit A. A copy of the Case Management Order is attached hereto as Exhibit B.

document requests at issue in this discovery dispute, Plaintiff's complaint then pled solely claims for alleged anti-trust violations. However, none of Plaintiff's anti-trust claims remain at issue after the Court granted Defendants' motion to dismiss. Now, approximately two years later, Plaintiff's case and the causes of action at issue are entirely different and consist solely of state claims for tortious interference and trade libel. It is axiomatic that the scope of discovery and the documents to which Plaintiff is entitled are vastly different now in connection with Plaintiff's state law common law claims than it was two years ago when Plaintiff propounded these requests in connection with Plaintiff's then-complaint asserting anti-trust claims.

Plaintiff originally filed this case in May 2019. However, because the Court granted Defendants' anti-SLAPP motion challenging Plaintiff's claim for anti-trust issues and subsequently granted Defendants' motion to dismiss, Defendants did not file an answer until May 27, 2022, following the Ninth Circuit's reversal of the Court's ruling on the anti-SLAPP motion. Plaintiff's operative Amended Fifth Amended Complaint pleads only California common law claims for interference with existing and prospective business relationships and trade libel. However, in 2020 when Plaintiff served its document requests at issue, the complaint included no state law claims and instead pled only antitrust causes of action. The parties met and conferred in 2020 regarding Plaintiff's document requests and agreed to stay discovery because the pleadings were unsettled pending a motion to dismiss and, thereafter, an appeal.

On May 20, 2022, only ten days after the Ninth Circuit issued its mandate, the District Court set this matter for trial with a discovery deadline of September 30, 2022. Ever since the Court issued its scheduling order and the case's status was finally clear, Amazzia has actively engaged in complying with discovery and moving the case forward. Specifically, the parties engaged in setting up mediation within the short time frame provided by the Court. The parties stipulated to allow Plaintiff to file an Amended Fifth Amended Complaint because its then-operative

Fifth Amended Complaint continued to include references to the dismissed antitrust claims and included an extra claim which the Court had dismissed and required removal.  On June 1, 2022, Amazzia began discovery on the case by serving a subpoena on Amazon for documents related to Plaintiff's Amazon storefront and its expulsion.  On June 7, 2022, Amazzia served its first set of discovery requests on Plaintiff.

On May 26, 2022, counsel for all parties participated in a telephone conference to discuss Plaintiff's proposal that the parties pick up from where they left off on Plaintiff's document requests from 2020.  Rohani Decl. at ¶ 2.  In the telephone conference, Amazzia's counsel expressed that while the parties must move diligently in discovery, Plaintiff should serve new document demands given that the requests Plaintiff had served in 2020 pertained to a different complaint asserting no-longer applicable causes of action and thus Amazzia's responses thereto (served in 2020) are also no longer applicable.  *Id.*  Amazzia proposed that Plaintiff serve new document demands that actually seek documents pertinent to the causes of action now at issue (rather than the parties deal with a now outdated set of document demands and responses that addressed no longer applicable anti-trust claims).  *Id.*

Counsel for Plaintiff said Plaintiff would prefer Defendants to produce documents in response to the outdated document requests, but Plaintiff would just withdraw certain specific document requests that Plaintiff conceded pertained solely to the no longer applicable anti-trust claims, including specifically, document requests numbers 18 through 23.  *Id.*  In response, counsel for Amazzia asked that it be given about three weeks to supplement its prior responses from 2020 so that Amazzia could assert proper objections and responses to account for the fact that the causes of action (and corresponding discoverability of documents) has changed dramatically since Plaintiff served its document demands, and to review for responsive documents with the new causes of actions in mind.  *Id.*  Counsel for

Amazzia explained that the previously served responses to the document requests from November 2020 were based on the prior pleadings, claims and unclear status of the case. *Id*. Counsel for Amazzia also stated that the meet and confer from 2020 does not suffice to cover whatever new objections and/or responses Amazzia may raise in its supplements. *Id*. Counsel for Plaintiff stated he will discuss the issues with his "camp" and, later that same day, communicated the position that Plaintiff would not re-serve the requests but would "agree to give defendants 14 days to serve amended response, provided that defendants agree to production of documents at that same time." Rohani Decl. at ¶¶ 2, 3.

In short, Plaintiff insisted on forcing defendants to serve new responses and produce documents under a shorter time period than the FRCP affords responding parties, without allowing Defendants reasonable time to conduct searches for responsive documents and review documents accordingly. Plaintiff demanded this unreasonable request at the same time that it argued that the parties have yet to agree on search terms.

On June 1, 2022, Plaintiff's counsel emailed Defendants' counsel to agree to the above. Rohani Decl. at ¶ 4. Two days later, Plaintiff's counsel emailed stating it would prepare "a joint stipulation to seek court relief and monetary sanctions." Rohani Decl. at ¶ 5. Amazzia's counsel responded via email to Plaintiff's counsel that same day apologizing for the short delay in responding to Plaintiff's counsel, explaining that she was caring for and quarantining two family members infected and symptomatic with Covid. Rohani Decl. at ¶ 6. Counsel for Amazzia stated that Amazzia would produce supplemental responses without the need for Plaintiff to re-serve its document demands, with document production to follow consistent with the Federal Rules of Civil Procedure. *Id*.

On June 6, 2022, counsel for Plaintiff emailed stating it would be serving joint stipulations to both Defendants regarding this motion. Rohani Decl. at ¶ 7. In response that same day, counsel for Amazzia asked for clarification as Plaintiff's

1    threatened motion appeared premature since Amazzia had agreed to serve

2    supplemental responses that Plaintiff had yet to even receive. Rohani Decl. at ¶ 8.

3    In response, Plaintiff's counsel served its portion of this joint stipulation setting forth

4    their position. Rohani Decl. at ¶ 9.

5           On June 9, 2022, Amazzia served its supplemental responses, as requested by

6    Plaintiff. Rohani Decl. at ¶ 10.   Amazzia also asked Plaintiff if Plaintiff would be

7    amending its portion of the joint stipulation to account for Amazzia's supplemental

8    responses and stated willingness to produce documents consistent with the FRCP.

9    Rohani Decl. at ¶ 11.   In response, Plaintiff's counsel said Plaintiff would not amend

10   its portion of the joint stipulation to account for Plaintiff's receipt of amended

11   responses and Amazzia's stated willingness to produce responsive documents per

12   the FRCP, but instead Plaintiff would address the supplemental responses in its

13   supplemental brief on the motion to compel. Rohani Decl. at ¶ 12.

14

15   **III.   AMAZZIA'S BOILERPLATE OBJECTIONS ARE NOT VALID.**

16          For nearly all of their responses, Amazzia asserts the same boilerplate

17   objections over and over. Plaintiff addresses these types of objections first followed

18   by a specific discussion of each RFP in the following section of this brief.

19          **A.   Amazzia's "General Objections" Are Improper.**

20          TP-Link purports to apply a series of "General Objections" to each of its

21   responses.   Such "general…objections…are not proper objections," and fail to

22   satisfy Amazzia's burden of "clarifying, explaining, and supporting its objections."

23   *U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648-649 (C.D. Cal.

24   2007).   As a rule, courts decline to consider general objections to requests for

25   production. *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc*., No. 2:10-

26   CV-1207-GEBAC, 2014 WL 5093398, at *5 (E.D. Cal. Oct. 9, 2014).   Accordingly,

27   such objections warrant no further consideration here.

28

**B.      Amazzia's Objection to the term "Relating To" Is Not Valid.**

Amazzia objected to the term "relating to" on the grounds that it is "vague, ambiguous, and over broad."  This objection fails to satisfy its discovery obligations. As the party resisting discovery, Amazzia has "the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Carson v. Experian Info. Sols., Inc*., No. 8:17-cv-02232-JVS-KESx, 2019 WL 3249617, at *2 (C.D. Cal. Apr. 19, 2019).   Courts in the Central District uniformly reject non-specific, conclusory objections to discovery because they fail to satisfy Amazzia's burden of "clarifying, explaining, and supporting its objections."  *U.S. ex rel. O'Connell*, 245 F.R.D. at 648.   Amazzia cannot merely state that a request is "vague," "overly broad," or "not proportional." Rather, it must explain why, in the context of the case and the request, the request is objectionable, and to what extent it is claimed to be so.

**C.      Amazzia's Objections Based on Privilege and Confidentiality Are Not Valid.**

Amazzia objects to every request on the grounds of attorney-client privilege and attorney work product.  Under Rule 34(b)(2)(C), a party objecting on grounds of "privilege" must "state whether any responsive materials are being withheld on the basis of that objection."  *In re Rivera*, No. CV 16-4676 JAK (SSX), 2017 WL 5163695, at *2 (C.D. Cal. Apr. 14, 2017) ("Pursuant to the revisions to the Federal Rules effective December 1, 2015, if objections are posed, the 'objection must state whether any responsive materials are being withheld on the basis of that objection.'").  If so, that party must identify responsive documents withheld via a privilege log. FRCP 26(b)(5).  Amazzia has not specified whether it withheld responsive documents on the basis of attorney-client privilege.  Nor has it produced a privilege log, thus depriving Thimes the right to evaluate the basis for and validity of Amazzia's privilege claims.  Amazzia must either promptly prepare a sufficiently detailed privilege log or withdraw this objection.

1   Amazzia has also objected to numerous requests on the grounds that they seek
2   "confidential, proprietary and trade secret information."  This is likewise an
3   inappropriate basis for withholding production because the parties have stipulated to
4   a protective order. (ECF No. 133.)  Substantively, the objection is also insufficient
5   as it fails to identify what "information," or even what categories of information, are
6   confidential, and likewise fails to explain why such information warrants protection.
7   "[C]onclusory arguments [are] insufficient to establish requested documents are
8   trade secrets and meritorious of confidential status and protection." *Hill v. Eddie*
9   *Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007)(citation omitted). To qualify for
10  protection, Amazzia must show that the information is "trade secret or other
11  confidential … commercial information," and it must show that it would be harmed
12  by the disclosure of such information. *Id.* at 561.  Amazzia makes no effort to do
13  so.

14

## IV.   PLAINTIFF'S MOTION TO COMPEL IS PROCEDURALY FLAWED AND PREMATURE.

17      Plaintiff's stipulation violates Local Rule 37-1 which requires that before
18  filing any discovery motion, "counsel for the parties must confer in a good-faith
19  effort to eliminate the necessity for hearing the motion or to eliminate as many of
20  the disputes as possible.  It is the responsibility of counsel for the moving party to
21  arrange for this conference."  This Rule further states that "[t]he moving party's
22  letter must identify each issue and/or discovery request in dispute, state briefly as to
23  each such issue/request the moving party's position (and provide any legal authority
24  the moving party believes is dispositive of the dispute as to that issue/request), and
25  specify the terms of the discovery order to be sought."
26      Here, Plaintiff's meet and confer letter discussed Amazzia's responses from
27  2020.  However, because the Plaintiff's operative pleading and causes of action had
28  entirely changed necessitating supplemental responses (provided on June 9, 2022,

as requested by Plaintiff), it was unreasonable and premature for Plaintiff to file this motion on June 7, 2022.  The parties have never met or conferred regarding the supplemental responses[2].  Plaintiff had propounded its document requests in 2020 at a time when the case was then unsettled and there was no complaint at issue.  Almost three years later, the landscape of this case has changed dramatically and now Plaintiff has alleged two common law claims.  It is, therefore, absolutely reasonable that Amazzia needed to revisit Plaintiff's outdated document demands from 2020 and respond accordingly.  Moreover, Plaintiff has failed to meet its burden under Local Rules because it never provided any "legal authority the moving party believes is dispositive of the dispute" as to why its requests are relevant to its new claims.  Plaintiff is, therefore, barred from now offering any such legal authority after the fact.

A conference regarding the supplemental responses, or at the very least, a revision of Plaintiff's portion of this stipulation to reflect the supplemental responses, was essential under the Local Rules as it would have eliminated many of the disputes that Plaintiff raises herein.  However, Plaintiff refused.  For this reason, Plaintiff's stipulation, furthermore, violates Local Rule 37-2.1 which states that the "stipulation should present the disputed issues as concisely as the subject matter permits…."

Plaintiff short-circuited the required meet-and-confer process and brought forth a motion that is not only premature, but also now moot as many of its arguments are no longer applicable given Amazzia's supplemental responses and stated willingness to produce documents in response to the requests that actually seek

---

[2] The supplemental responses are the responses that are of significance as the old responses were provided in light of causes of actions that were subject to a motion to dismiss and which have since been dismissed.  See *DC Comics v. Pac. Pictures Corp.*, No. CV10-03633 ODW (RZ), 2011 WL 13124665, at *3 (C.D. Cal. May 25, 2011) (denying the motion to compel, stating, "These [discovery requests] also were not the subject of the prior-to-filing letter.").

discoverable documents based on Plaintiff's new causes of action.  Moreover, Plaintiff is playing a game of bait and switch as Plaintiff withdrew document requests numbers 18 through 21, but has inexplicably now included them herein, thereby, even trying to expand (as opposed to eliminate) the disputes between the parties.  In short, Plaintiff brought the current motion without engaging in an adequate meet and confer "to eliminate as many of the disputes as possible" or after the required prefiling conference of counsel.  Accordingly, Plaintiff's vexatious and premature motion must be denied for failing to comply with Local Rules.

## A.    AMAZZIA'S SUPPLEMENTAL RESPONSES RENDER THE ABOVE ARGUMENTS BY PLAINTIFF MOOT.

As addressed herein, Amazzia's supplemental response render most of Plaintiff's arguments moot.  Amazzia originally asserted objections to Plaintiff's document requests in 2020 because, at that time, the state of the pleadings was unclear due to a pending motion to dismiss and, thereafter, an appeal.  Furthermore, at that time in 2020, Plaintiff's then-operative complaint asserted only anti-trust claims.  However, following the Ninth Circuit's ruling that resurrected Plaintiff's common law claims for trade libel and tortious interference, Amazzia's supplemental responses now omit many objections that Amazzia previously asserted when they applied to Plaintiff's prior complaint asserting anti-trust claims.  Therefore, Plaintiff's arguments reflected herein are moot and its motion is unnecessary.

As the moving party, Plaintiff bears the burden of informing the "Court why the information sought [in its requests] is relevant and why [Amazzia's] objections are not justified." *Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).  Because Plaintiff submitted its portion of the joint stipulation prematurely before it received Amazzia's supplemental responses (served on a date specified by Plaintiff), Plaintiff cannot meet this burden

because none of its arguments take into account the current discovery. Rather, they are based on stale pleadings and old objections and responses – a complete "waste of judicial and party resources," as aptly stated by counsel for TP-Link.

**V.   THE COURT SHOULD COMPEL AMAZZIA TO PRODUCE DOCUMENTS IN RESPONSE TO EACH RFP.**

**A.   RFP 1**

**1.   Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.**

**REQUEST NO. 1:**

All COMMUNICATIONS between YOUR employees RELATING TO TSI's re-sales of YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 1:**

Responding Party objects to this request on the grounds that it is vague, ambiguous, and overbroad as to time and as to the terms "RELATING TO," "TSI's resales" and "TP-LINK's wireless router products." Responding party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged internal communications in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Responding Party will comply with this request and, in a reasonable time of less than one month, produce communications between its employees regarding Propounding Party's re-sales of TP-Link wireless router products.

**2. Reasons Why the Court Should Compel Production.**

Amazzia has not produced any documents responsive to this Request, nor has it given a reason why it has not. Nor has Amazzia provided a good-faith reason as to why it needs to provide an amended response to this Request before producing documents.

**3. Reasons Why the Court Need Not Compel Production.**

Plaintiff has failed and refused to comply with Local Rules. The state of the case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses stating it will produce responsive documents within a period of less than one month, rendering Plaintiff's arguments regarding a motion to compel on this request moot and irrelevant.

**B. RFP 2**

**1. Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response**

**REQUEST NO. 2:**

All COMMUNICATIONS YOU sent to or received from TP-LINK RELATING TO TSI's re-sales of TP-LINK's wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this request on the grounds that it is vague, ambiguous, and overbroad as to time and as to the terms "RELATING TO," "TSI's resales" and "TP-LINK's wireless router products." Responding party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search,

Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Responding Party will comply with this request and, in a reasonable time of less than one month, produce communications between it and TP-Link regarding Propounding Party's re-sales of TP-Link wireless router products.

### 2. Reasons Why the Court Should Compel Production.

Amazzia has not produced any documents responsive to this Request, nor has it given a reason why it has not. Nor has Amazzia provided a good-faith reason as to why it needs to provide an amended response to this Request before producing documents.

### 3. Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules. The state of the case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses stating it will produce responsive documents within a period of less than one month, rendering Plaintiff's arguments regarding a motion to compel on this request moot and irrelevant.

### C. RFP 3

#### 1. Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.

**REQUEST NO. 3:**

All COMMUNICATIONS YOU sent to or received from Amazon.com, Inc. or Amazon Services LLC RELATING TO TSI's re-sales of TP-LINK's wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this request on the grounds that it is vague, ambiguous, and overbroad as to time and as to the terms "RELATING TO," "TSI's resales" and "TP-LINK's wireless router products." Responding party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from Amazon.com, Inc. or Amazon Services LLC in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Responding Party will comply with this request and, in a reasonable time of less than one month, produce communications between it and Amazon regarding Propounding Party's re-sales of TP-Link wireless router products.

### 2.    Reasons Why the Court Should Compel Production.

Amazzia has not produced any documents responsive to this Request, nor has it given a reason why it has not.  Nor has Amazzia provided a good-faith reason as to why it needs to provide an amended response to this Request before producing documents.

### 3.    Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules.  The state of the case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue.  The Amended Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses stating it will produce responsive documents within a period

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE AUCTION BROS
CASE NO. 2:19-CV-10374-SB-E

of less than one month, rendering Plaintiff's arguments regarding a motion to compel on this request moot and irrelevant.

**D.    RFP 4**

    **1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.**

**REQUEST NO. 4:**

All COMMUNICATIONS YOU sent to or received from TP-LINK RELATING TO "non-compliant sellers" of YOUR wireless router products, as that term is used in the Amazon Brand Protection Agreement(s) between YOU and TP-LINK.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous as to the terms "RELATING TO," "non-compliant sellers" and "TPLINK's wireless router products." Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Responding Party objects to this request on the grounds that the documents sought are related to Propounding Party's dismissed anti-trust claims and not relevant to the current Amended Fifth Amended Complaint's two state law claims

for interference with Propounding Party's existing and prospective business relationships and trade libel for accusations against Propounding Party. Responding Party will comply with this request and, in a reasonable time of less than one month, produce communications between it and TP-Link referencing Propounding Party as a non-complaint seller.

## 2. Reasons Why the Court Should Compel Production.

Amazzia's response does not agree to produce documents responsive to this Request at all, which plainly seeks the production of relevant documents to this lawsuit. Given TP-Link's conduct towards Thimes, it is certainly important to know whether TP-Link directed Amazzia to indiscriminately target any "unauthorized" Amazon reseller of its wireless router products, or whether TP-Link actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before asking Amazzia to target them for de-listing.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013). Plaintiff also notes that the term "non-compliant sellers" comes directly from Amazzia's own Amazon Brand Protection Agreement.

Moreover, Amazzia refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

## 3. Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules. The state of the case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended

Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed.  The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request.  Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

Further, Amazzia's supplemental response states it will produce responsive documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

**E.     RFP 5**

**1.     Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.**

**REQUEST NO. 5:**

All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees RELATING TO "non-compliant sellers," as that term is used in the Amazon Brand Protection Agreement(s) between YOU and TP-LINK.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," and "non-compliant sellers." Additionally, this request is improper to the extent it is overly broad seeking "All DOCUMENTS and

COMMUNICATIONS authored by or transmitted between YOUR employees" regardless of the allegations set forth in the operative pleading. Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged internal communications in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Responding Party objects to this request on the grounds that the documents sought are related to Propounding Party's dismissed anti-trust claims and not relevant to the current Amended Fifth Amended Complaint's two state law claims for interference with Propounding Party's existing and prospective business relationships and trade libel for accusations against Propounding Party. Responding Party will comply with this request and, in a reasonable time of less than one month, produce communications between its employees referencing Propounding Party as a non-complaint seller.

### 2.     Reasons Why the Court Should Compel Production.

Amazzia's response does not agree to produce documents responsive to this Request at all, which plainly seeks the production of relevant documents to this lawsuit. It is certainly important to know whether Amazzia decided to indiscriminately target any "unauthorized" Amazon reseller of its wireless router products merely to meet its contractual obligations with its business partners, or whether Amazzia actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before targeting those re-sellers for

1    de-listing.

2        With respect to its objection that the term "non-compliant sellers" renders the

3    request vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to

4    show such vagueness or ambiguity by demonstrating that more tools beyond mere

5    reason and common sense are necessary to attribute ordinary definitions to terms

6    and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx),

7    2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).  Plaintiff also notes that the

8    term "non-compliant sellers" comes directly from Amazzia's own Amazon Brand

9    Protection Agreement.

10       Moreover, Amazzia refuses to state when it will begin producing documents

11   responsive to this Request even for those documents that it previously agreed to

12   produce in response to this Request.

13       **3.**    **Reasons Why the Court Need Not Compel Production.**

14       Plaintiff has failed and refused to comply with Local Rules.  The state of the

15   case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document

16   requests from 2020 related to anti-trust claims no longer at issue.  The Amended

17   Fifth Amended Complaint now at issue includes new claims.  To preserve its rights

18   and objections, Amazzia insisted on, informed Plaintiff and timely served

19   supplemental responses.

20       As asserted in the supplemental response, to the extent this request seeks

21   information that was sought when the case involved antitrust claims, those claims

22   have been dismissed.   The Amended Fifth Amended Complaint contains the

23   following two claims: (1) Plaintiff's trade libel claim involving statements made

24   about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's

25   relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its

26   understanding of counterfeit law and its relevance to the request.  Plaintiff was

27   obligated under Local Rules to provide its legal authority and failed to do so.

28       Further, Amazzia's supplemental response states it will produce responsive

documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

## F.   RFP 6

### 1.   Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.

**REQUEST NO. 6:**

All COMMUNICATIONS YOU sent to or received from TP-LINK RELATING TO "the cleanup project," as that term is used in the Amazon Brand Protection Agreement(s) between YOU and TP-Link.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 6:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous as to the terms "RELATING TO," and "the cleanup project."  Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Responding Party objects to this request on the grounds that the documents sought are related to Propounding Party's dismissed anti-trust claims and not relevant to the current Amended Fifth Amended Complaint's two state law claims for interference with Propounding Party's existing and prospective business relationships and trade libel for accusations against Propounding Party. Responding

Party will comply with this request and, in a reasonable time of less than one month, produce communications between its employees referencing Propounding Party in "the cleanup project."

## 2.    Reasons Why the Court Should Compel Production.

Amazzia's response does not agree to produce documents responsive to this Request at all – "the cleanup project" is what TP-Link and Amazzia called their shared goal of removing Thimes from Amazon.  To the extent that term could refer to other re-sellers, it is certainly important to know whether TP-Link indiscriminately targeted any "unauthorized" Amazon reseller of its wireless router products, or whether TP-Link actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before asking Amazzia to target them for de-listing.

Moreover, Amazzia refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

## 3.    Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules.  The state of the case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue.  The Amended Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed.  The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its

1  understanding of counterfeit law and its relevance to the request.  Plaintiff was

2  obligated under Local Rules to provide its legal authority and failed to do so.

3      Further, Amazzia's supplemental response states it will produce responsive

4  documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's

5  arguments regarding a motion to compel on this request are moot and irrelevant.

6      **G.   RFP 7**

7          **1.     Plaintiff's   Request,   Amazzia's   Response,   Amazzia's**

8          **Supplemental Response.**

9  **REQUEST NO. 7:**

10     All  COMMUNICATIONS  YOU  sent  to  or  received  from  TP-LINK

11  RELATING TO re-sellers of TP-LINK's wireless router products on the Amazon

12  Marketplace.

13  **OBJECTIONS AND RESPONSE TO REQUEST NO. 7:**

14     Responding Party objects to this request on the grounds that it is vague,

15  ambiguous, and overbroad as to time and as to the terms "RELATING TO," "re-

16  sales" and "TP-LINK's wireless router products." Responding Party further objects

17  to this request on the ground that, as drafted, the request calls for production of

18  documents protected by the Attorney Work Product doctrine and Attorney-Client

19  privilege. Subject to, and without waiver of, the foregoing objections and its General

20  Objections, Responding Party responds as follows: after a reasonable search,

21  Responding  Party  will  comply  with  this  request  and  produce  non-privileged

22  communications sent to or received from TP-Link in its possession, custody or

23  control, if any, referencing Propounding Party, during the relevant time period.

24  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

25     Responding Party will comply with this request and, in a reasonable time of

26  less than one month, produce communications between it and TP-Link referencing

27  Propounding Party as a reseller of TP-Link's wireless router products on Amazon.

28

## 2.      Reasons Why the Court Should Compel Production.

Amazzia's response does not agree to produce documents responsive to this Request at all, which plainly seeks the production of relevant documents to this lawsuit.  Given TP-Link's conduct towards Thimes, it is certainly important to know whether TP-Link indiscriminately targeted any "unauthorized" Amazon reseller of its wireless router products, or whether TP-Link actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before asking Amazzia to target them for de-listing.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

Moreover, Amazzia refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

## 3.      Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules.  The state of the case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue.  The Amended Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed.  The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made

about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request.  Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

Further, Amazzia's supplemental response states it will produce responsive documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

### H.   RFP 8

#### 1.   Plaintiff's   Request,   Amazzia's   Response,   Amazzia's Supplemental Response.

**REQUEST NO. 8:**

All COMMUNICATIONS YOU sent to or received from Amazon.com, Inc. or Amazon Services LLC RELATING TO re-sellers of TP-LINK's wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 8:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and the terms "RELATING TO," "re-sellers" and "TP-LINK's wireless router products." Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from Amazon.com, Inc. or Amazon Services LLC in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Responding Party will comply with this request and, in a reasonable time of less than one month, produce communications between it and Amazon referencing Propounding Party as a reseller of TP-Link's wireless router products.

## 2.  Reasons Why the Court Should Compel Production.

Amazzia's response does not agree to produce documents responsive to this Request at all, which plainly seeks the production of relevant documents to this lawsuit.  Given TP-Link's conduct towards Thimes, it is certainly important to know whether TP-Link indiscriminately targeted any "unauthorized" Amazon reseller of its wireless router products, or whether TP-Link actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before asking Amazzia to target them for de-listing.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

Moreover, Amazzia refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

## 3.  Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules.  The state of the case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue.  The Amended Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

1    As asserted in the supplemental response, to the extent this request seeks
2    information that was sought when the case involved antitrust claims, those claims
3    have been dismissed.   The Amended Fifth Amended Complaint contains the
4    following two claims: (1) Plaintiff's trade libel claim involving statements made
5    about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's
6    relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its
7    understanding of counterfeit law and its relevance to the request.  Plaintiff was
8    obligated under Local Rules to provide its legal authority and failed to do so.

9    Further, Amazzia's supplemental response states it will produce responsive
10   documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's
11   arguments regarding a motion to compel on this request are moot and irrelevant.

12   **I.    RFP 9**

13   **1.    Plaintiff's   Request,   Amazzia's   Response,   Amazzia's**
14   **Supplemental Response.**

15   **REQUEST NO. 9:**

16   All COMMUNICATIONS YOU sent to or received from TP-LINK
17   RELATING TO TP-LINK's minimum advertised price for YOUR wireless router
18   products.

19   **OBJECTIONS AND RESPONSE TO REQUEST NO. 9:**

20   Responding Party objects to this request on the grounds that the documents
21   sought are overbroad, assume facts not in evidence and not described with
22   reasonable particularity. Responding Party further objects to this request on the
23   grounds that it is vague, ambiguous and overbroad as to time and as to the terms
24   "RELATING TO," "minimum advertised price" and "wireless router products."
25   Responding Party further objects to this request on the ground that, as drafted, the
26   request calls for production of documents protected by the Attorney Work Product
27   doctrine and Attorney-Client privilege. Subject to, and without waiver of, the
28   foregoing objections and its General Objections, Responding Party responds as

follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing minimum advertised price for wire router products identified in the operative pleading during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Responding Party objects to this request on the grounds that the documents sought are related to Propounding Party's dismissed anti-trust claims and not relevant to the current Amended Fifth Amended Complaint's two state law claims for interference with Propounding Party's existing and prospective business relationships and trade libel for accusations against Propounding Party.

## 2.    Reasons Why the Court Should Compel Production.

Amazzia's response artificially limits its production to the minimum advertised price for its wireless routers that Plaintiff specifically identified in its complaint. But there's no rationale as to why such a limitation is appropriate. TP-Link's criterion for deciding whether one of its products being re-sold on Amazon was "counterfeit" was largely whether the product was being sold under the minimum advertised price (since authorized distributors were not permitted to sell below that price). Given TP-Link's conduct towards Thimes, these documents could show whether TP-Link indiscriminately targeted any "unauthorized" Amazon reseller of its wireless router products, or whether TP-Link actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before asking Amazzia to target them for de-listing.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

Moreover, Amazzia refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

### 3. Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules. The state of the case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

This request seeks information that was sought when the case involved antitrust claims. Those claims have been dismissed. The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon. Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request. Plaintiff has similarly offered no legal basis showing how its request is relevant to or proportional to the needs of the pending claims of intentional interference or trade libel. Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

### J. RFP 10

### 1. Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.

### REQUEST NO. 10:

All COMMUNICATIONS YOU sent to or received from Amazon.com, Inc. or Amazon Services LLC RELATING TO TP-LINK's minimum advertised price for its wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 10:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," "minimum advertised price" and "wireless router products." Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing minimum advertised price for wire router products identified in the operative pleading during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Responding Party objects to this request on the grounds that the documents sought are related to Propounding Party's dismissed anti-trust claims and not relevant to the current Amended Fifth Amended Complaint's two state law claims for interference with Propounding Party's existing and prospective business relationships and trade libel for accusations against Propounding Party.

## 2. Reasons Why the Court Should Compel Production.

Amazzia's response artificially limits its production to the minimum advertised price for its wireless routers that Plaintiff specifically identified in its complaint. But there's no rationale as to why such a limitation is appropriate. TP-Link's criterion for deciding whether one of its products being re-sold on Amazon was "counterfeit" was largely whether the product was being sold under the minimum advertised price (since authorized distributors were not permitted to sell below that price). Given TP-Link's conduct towards Thimes, these documents could

1   show whether TP-Link indiscriminately targeted any "unauthorized" Amazon
2   reseller of its wireless router products, or whether TP-Link actually did any
3   investigation to see whether some re-sellers were selling authentic goods versus
4   counterfeit goods before asking Amazzia to target them for de-listing.

5        With respect to its objection that the terms used render the request vague and
6   ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness
7   or ambiguity by demonstrating that more tools beyond mere reason and common
8   sense are necessary to attribute ordinary definitions to terms and phrases."
9   *Local.com Corp. v. Fry's Elecs., Inc.*, No. 12-cv-0976-JGB (JPRx), 2013 WL
10  12139096, at *2 (C.D. Cal. Feb. 22, 2013).

11       Moreover, Amazzia refuses to state when it will begin producing documents
12  responsive to this Request even for those documents that it previously agreed to
13  produce in response to this Request.

14          **3.**    **Reasons Why the Court Need Not Compel Production.**

15       Plaintiff has failed and refused to comply with Local Rules. The state of the
16  case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document
17  requests from 2020 related to anti-trust claims no longer at issue. The Amended
18  Fifth Amended Complaint now at issue includes new claims. To preserve its rights
19  and objections, Amazzia insisted on, informed Plaintiff and timely served
20  supplemental responses.

21       This request seeks information that was sought when the case involved
22  antitrust claims. Those claims have been dismissed. The Amended Fifth Amended
23  Complaint contains the following two claims: (1) Plaintiff's trade libel claim
24  involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference
25  claim involving Plaintiff's relationship with Amazon. Plaintiff's meet and confer
26  lacked legal authority for its  understanding of counterfeit law and its relevance to
27  the request. Plaintiff has similarly offered no legal basis showing how its request is
28  relevant to or proportional to the needs of the pending claims of intentional

interference or trade libel.   Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

### K.   RFP 11

#### 1.   Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.

**REQUEST NO. 11:**

All COMMUNICATIONS YOU sent to or received from TP-LINK RELATING TO any price or brand protection services offered by YOU.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 11:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," and "price or brand protection services." Additionally, this request is improper to the extent it is overly broad seeking "any price or brand protection services" regardless of the allegations set forth in the operative pleading. Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing price or brand protection services, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

This request is not relevant to or proportional to the current Amended Fifth

1  Amended Complaint's two state law claims for interference with Propounding
2  Party's existing and prospective business relationships and trade libel for accusations
3  against Propounding Party. Responding Party will comply with this request and, in
4  a reasonable time of less than one month, produce communications between it and
5  TP-Link regarding price or brand protection services offered by it relating to
6  Propounding Party.

7  ### 2.   Reasons Why the Court Should Compel Production.

8  Amazzia has not produced any documents responsive to this Request, nor has
9  it given a reason why it has not.  Nor has Amazzia provided a good-faith reason as
10 to why it needs to provide an amended response to this Request before producing
11 documents.

12 ### 3.   Reasons Why the Court Need Not Compel Production.

13 Plaintiff has failed and refused to comply with Local Rules.  The state of the
14 case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document
15 requests from 2020 related to anti-trust claims no longer at issue.  The Amended
16 Fifth Amended Complaint now at issue includes new claims.  To preserve its rights
17 and objections, Amazzia insisted on, informed Plaintiff and timely served
18 supplemental responses.

19 As asserted in the supplemental response, to the extent this request seeks
20 information that was sought when the case involved antitrust claims, those claims
21 have been dismissed.  The Amended Fifth Amended Complaint contains the
22 following two claims: (1) Plaintiff's trade libel claim involving statements made
23 about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's
24 relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its
25 understanding of counterfeit law and its relevance to the request.  Plaintiff was
26 obligated under Local Rules to provide its legal authority and failed to do so.

27 Further, Amazzia's supplemental response states it will produce responsive
28 documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's

1  arguments regarding a motion to compel on this request are moot and irrelevant.

2      **L.   RFP 12**

3          **1.    Plaintiff's Request, Amazzia's Response, Amazzia's**

4          **Supplemental Response.**

5  **REQUEST NO. 12:**

6      All COMMUNICATIONS YOU sent to or received from TP-LINK

7  RELATING TO complaints YOU filed to Amazon.com, Inc. or Amazon Services

8  LLC RELATING TO TP-LINK's wireless router products.

9  **OBJECTIONS AND RESPONSE TO REQUEST NO. 12:**

10      Responding Party objects to this request on the grounds that the documents

11  sought are overbroad, assume facts not in evidence and not described with

12  reasonable particularity. Responding Party further objects to this request on the

13  grounds that it is vague, ambiguous and overbroad as to time and as to the terms

14  "RELATING TO," "complaints" and "TP-LINK's wireless router products."

15  Responding Party further objects to this request on the ground that, as drafted, the

16  request calls for production of documents protected by the Attorney Work Product

17  doctrine and Attorney-Client privilege. Subject to, and without waiver of, the

18  foregoing objections and its General Objections, Responding Party responds as

19  follows: after a reasonable search, Responding Party will comply with this request

20  and produce non-privileged communications sent to or received from TP-Link in its

21  possession, custody or control, if any, referencing Propounding Party, during the

22  relevant time period.

23  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

24      This request is not relevant to or proportional to the current Amended Fifth

25  Amended Complaint's two state law claims for interference with Propounding

26  Party's existing and prospective business relationships and trade libel for accusations

27  against Propounding Party. Responding Party will comply with this request and, in

28  a reasonable time of less than one month, produce communications between it and

1    TP-Link regarding complaints filed to Amazon referencing Propounding Party.

2              **2.    Reasons Why the Court Should Compel Production.**

3          Amazzia's response artificially limits its production to documents referencing

4    Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.  It

5    is important to know whether Amazzia advised TP-Link as to how it successfully

6    (or unsuccessfully) resolved intellectual property complaints filed against other

7    "unauthorized" re-sellers of TP-Link products because such communications would

8    show whether TP-Link deliberately set out to accuse Plaintiff of counterfeiting given

9    that other types of intellectual property complaints may not have resulted in de-

10   listing of the seller.   Counterfeiting, of course, is a very specific term and

11   Defendants' deliberate use of a false term to describe Plaintiff's conduct as opposed

12   to a more accurate term (i.e., that Plaintiff is merely not an authorized reseller) is

13   relevant towards establishing Defendants' intentional and independently wrongful

14   conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel

15   claim.

16         With respect to its objection that the terms used render the request vague and

17   ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness

18   or ambiguity by demonstrating that more tools beyond mere reason and common

19   sense are necessary to attribute ordinary definitions to terms and phrases."

20   *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL

21   12139096, at *2 (C.D. Cal. Feb. 22, 2013).

22         Moreover, Amazzia refuses to state when it will begin producing documents

23   responsive to this Request even for those documents that it previously agreed to

24   produce in response to this Request.

25              **3.    Reasons Why the Court Need Not Compel Production.**

26         Plaintiff has failed and refused to comply with Local Rules.  The state of the

27   case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document

28   requests from 2020 related to anti-trust claims no longer at issue.  The Amended

Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed. The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon. Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request. Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

Further, Amazzia's supplemental response states it will produce responsive documents referencing Plaintiff in less than one month. Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

### M.   RFP 13

####   1.   Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.

**REQUEST NO. 13:**

All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees RELATING TO YOUR policies or procedures for filing complaints to Amazon.com, Inc. or Amazon Services LLC.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 13:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," and "policies or procedures for filing complaints." Additionally, this request is improper to the extent it is overly broad seeking "All DOCUMENTS

and COMMUNICATIONS authored by or transmitted between YOUR employees"
regardless of the allegations set forth in the operative pleading. Further, this request
is objectionable to the extent it seeks discovery of confidential, proprietary and trade
secret information. Responding Party further objects to this request on the ground
that, as drafted, the request calls for production of documents protected by the
Attorney Work Product doctrine and Attorney-Client privilege. The request
furthermore seeks the production of documents and information that is irrelevant.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

This request is objectionable to the extent it seeks discovery of confidential,
proprietary and trade secret information not relevant to or proportional to the current
Amended Fifth Amended Complaint's two state law claims for interference with
Propounding Party's existing and prospective business relationships and trade libel
for accusations against Propounding Party.

## 2.    Reasons Why the Court Should Compel Production.

Amazzia's objection that this Request does not seek relevant information is
hard to take seriously.  For example, whether Amazzia had a policy of purposefully
accusing "unauthorized" re-sellers of carrying counterfeit product, in order to fulfill
its contractual obligations to de-list as many such sellers as possible, is plainly
relevant towards establishing Amazzia's intentional and independently wrongful
conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel
claim.

With respect to its objection that the terms used render the request vague and
ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness
or ambiguity by demonstrating that more tools beyond mere reason and common
sense are necessary to attribute ordinary definitions to terms and phrases."
*Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL
12139096, at *2 (C.D. Cal. Feb. 22, 2013).

### 3.      Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules.  The state of the case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue.  The Amended Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

Amazzia's policies and procedures for conducting its business are protected as confidential, proprietary and trade secret information.  *See In re Hewlett-Packard Co.  Shareholder Derivative Litig.*, 12-CV-6003, 2015 WL 8570883, at *5 (N.D. Cal. Nov. 18, 2015) (citing cases "in which internal corporate policies and procedures were sealed because the court found that they constituted trade secrets.").  Plaintiff fails to show how such information is relevant to or proportional to the current Amended Fifth Amended Complaint's two state law claims dealing with complaints placed against Plaintiff.

This request seeks information that was sought when the case involved antitrust claims.  Those claims have been dismissed.  The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request.  Plaintiff has similarly offered no legal basis showing how its request is relevant to or proportional to the needs of the pending claims of intentional interference or trade libel.   Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

**N.   RFP 14**

**1.   Plaintiff's   Request,   Amazzia's   Response,   Amazzia's Supplemental Response.**

**REQUEST NO. 14:**

All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees RELATING TO Amazon.com, Inc. or Amazon Services LLC's resolution of intellectual property complaints filed by manufacturers against unauthorized re-sellers of those manufacturer's products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 14:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," "resolution of intellectual property complaints," "unauthorized re-sellers," and "manufacturer's products." Additionally, this request is improper to the extent it is overly broad seeking "All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees" regardless of the allegations set forth in the operative pleading. Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged internal communications in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Responding Party will comply with this request and, in a reasonable time of

1   less than one month, produce internal documents between its employees relating to

2   Amazon's resolution of intellectual property complaints referencing Propounding

3   Party with regard to TP-Link.

4        **2.**      **Reasons Why the Court Should Compel Production.**

5        Amazzia's response artificially limits its production to documents referencing

6   Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.  It

7   is important to obtain Amazzia's communications as to how it successfully (or

8   unsuccessfully) resolved intellectual property complaints filed against other

9   "unauthorized" re-sellers of its' clients products because such communications

10   would show whether TP-Link deliberately set out to accuse Plaintiff of

11   counterfeiting given that other types of intellectual property complaints may not

12   have resulted in de-listing of the seller.  Counterfeiting, of course, is a very specific

13   term and Amazzia's deliberate use of a false term to describe Plaintiff's conduct as

14   opposed to a more accurate term (i.e., that Plaintiff is merely not an authorized

15   reseller) is relevant towards establishing Amazzia's intentional and independently

16   wrongful conduct for Plaintiff's economic interference claim, as well as TP-Link's

17   trade libel claim.

18        With respect to its objection that the terms used render the request vague and

19   ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness

20   or ambiguity by demonstrating that more tools beyond mere reason and common

21   sense are necessary to attribute ordinary definitions to terms and phrases."

22   *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL

23   12139096, at *2 (C.D. Cal. Feb. 22, 2013).

24   Moreover, Amazzia refuses to state when it will begin producing documents

25   responsive to this Request even for those documents that it previously agreed to

26   produce in response to this Request.

27        **3.**      **Reasons Why the Court Need Not Compel Production.**

28        Plaintiff has failed and refused to comply with Local Rules.  The state of the

- 45 -

case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed. The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon. Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request. Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

Further, Amazzia's supplemental response states it will produce responsive documents referencing Plaintiff in less than one month. Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

**O.   RFP 15**

**1.    Plaintiff's   Request,   Amazzia's   Response,   Amazzia's Supplemental Response.**

**REQUEST NO. 15:**

All COMMUNICATIONS YOU sent to or received from TP-LINK RELATING TO Amazon.com, Inc. or Amazon Services LLC's resolution of intellectual property complaints filed by manufacturers against unauthorized resellers of those manufacturer's products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 15:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the

1    grounds that it is vague, ambiguous and overbroad as to time and as to the terms

2    "RELATING TO," "resolution of intellectual property complaints," "unauthorized

3    resellers," and "manufacturer's products." Further, this request is objectionable to

4    the extent it seeks discovery of confidential, proprietary and trade secret information.

5    Responding Party further objects to this request on the ground that, as drafted, the

6    request calls for production of documents protected by the Attorney Work Product

7    doctrine and Attorney-Client privilege. Subject to, and without waiver of, the

8    foregoing objections and its General Objections, Responding Party responds as

9    follows: after a reasonable search, Responding Party will comply with this request

10   and produce non-privileged communications sent to or received from TP-Link in its

11   possession, custody or control, if any, referencing Propounding Party, during the

12   relevant time period.

13   **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

14          Responding Party will comply with this request and, in a reasonable time of

15   less than one month, produce internal documents between it and TP-Link relating to

16   Amazon's resolution of intellectual property complaints referencing Propounding

17   Party with regard to TP-Link.

18                    **2.      Reasons Why the Court Should Compel Production.**

19          Amazzia's response artificially limits its production to documents referencing

20   Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.  It

21   is important to know whether Amazzia advised TP-Link as to how it successfully

22   (or unsuccessfully) resolved intellectual property complaints filed against other

23   "unauthorized" re-sellers of its clients' products because such communications

24   would show whether TP-Link deliberately set out to accuse Plaintiff of

25   counterfeiting given that other types of intellectual property complaints may not

26   have resulted in de-listing of the seller.  Counterfeiting, of course, is a very specific

27   term and Defendants' deliberate use of a false term to describe Plaintiff's conduct as

28   opposed to a more accurate term (i.e., that Plaintiff is merely not an authorized

reseller) is relevant towards establishing Defendants' intentional and independently wrongful conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel claim.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

### 3.     Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules.  The state of the case pleadings was unclear and uncertain until May 10, 2022.  Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue.  The Amended Fifth Amended Complaint now at issue includes new claims.  To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed.  The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon.  Plaintiff's meet and confer lacked legal authority for its understanding of counterfeit law and its relevance to the request.  Plaintiff was obligated under Local Rules to provide its legal authority and failed to do so.

Further, Amazzia's supplemental response states it will produce responsive documents referencing Plaintiff in less than one month.  Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

**P.    RFP 16**

    **1.    Plaintiff's   Request,   Amazzia's   Response,   Amazzia's Supplemental Response.**

<u>**REQUEST NO. 16:**</u>

All drafts of any Amazon Brand Protection Agreements between YOU and TP-LINK.

<u>**OBJECTIONS AND RESPONSE TO REQUEST NO. 16:**</u>

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "drafts." Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. The request furthermore seeks the production of documents and information that is irrelevant.

<u>**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**</u>

Responding Party will comply with this request and, in a reasonable time of less than one month, produce drafts of Amazon Brand Protection Agreements exchanged between it and TP-Link.

    **2.    Reasons Why the Court Should Compel Production.**

Amazzia's objection that drafts of its Amazon Brand Protection Agreements with TP-Link are not relevant is not well taken.  Such drafts would obviously provide evidence as to TP-Link's intent towards Plaintiff, if not its aims and objectives in seeking to remove Plaintiff, and other similarly situated vendors, from Amazon.

    **3.    Reasons Why the Court Need Not Compel Production.**

Plaintiff has failed and refused to comply with Local Rules.  The state of the

case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

As asserted in the supplemental response, to the extent this request seeks information that was sought when the case involved antitrust claims, those claims have been dismissed. The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon. Amazzia's supplemental response states it will produce responsive documents referencing Plaintiff in less than one month. Accordingly, Plaintiff's arguments regarding a motion to compel on this request are moot and irrelevant.

**Q.   RFP 17**

> **1.   Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.**

**REQUEST NO. 17:**

All COMMUNICATIONS between YOUR employees RELATING TO YOUR negotiations with TP-LINK over Amazon Brand Protection Agreements.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 17:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," and "negotiations." Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further objects to this request on the ground that, as drafted, the

request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. The request furthermore seeks the production of documents and information that is irrelevant. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged internal communications in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

This request is not relevant to or proportional to the current Amended Fifth Amended Complaint's two state law claims for interference with Propounding Party's existing and prospective business relationships and trade libel for accusations against Propounding Party.

## 2.    Reasons Why the Court Should Compel Production.

Amazzia has not agreed to produce documents responsive to this Request, but instead is offering to produce unrelated documents that happen to reference Plaintiff. Here, the requested documents are relevant because they would provide evidence as to TP-Link's intent towards Plaintiff, if not its aims and objectives in seeking to remove Plaintiff, and other similarly situated vendors, from Amazon.

## 3.    Reasons Why the Court Need Not Compel Production.

Plaintiff has failed and refused to comply with Local Rules. The state of the case pleadings was unclear and uncertain until May 10, 2022. Plaintiff's document requests from 2020 related to anti-trust claims no longer at issue. The Amended Fifth Amended Complaint now at issue includes new claims. To preserve its rights and objections, Amazzia insisted on, informed Plaintiff and timely served supplemental responses.

The Amended Fifth Amended Complaint contains the following two claims: (1) Plaintiff's trade libel claim involving statements made about Plaintiff to Amazon

1    and (2) Plaintiff's interference claim involving Plaintiff's relationship with Amazon.

2    The request does not seek documents proportional to the pending claims as Plaintiff

3    fails to suggest how "all" communications between Amazzia's employees regarding

4    Defendants' negotiations over their agreement is relevant or proportional to its two

5    claims or "TP-Link's intent towards Plaintiff."  In fact, Plaintiff's argument above

6    admits that it seeks this information to determine "TP-Link's intent towards

7    Plaintiff" and that information would be in the custody and control of TP-Link.

8          **R.   RFP 18**

9                  **1.   Plaintiff's   Request,   Amazzia's   Response,   Amazzia's**

10                 **Supplemental Response.**

11   **REQUEST NO. 18:**

12       All COMMUNICATIONS YOU sent to or received from TP-LINK reflecting

13   negotiations over any Amazon Brand Protection Agreements.

14   **OBJECTIONS AND RESPONSE TO REQUEST NO. 18:**

15       Responding Party objects to this request on the grounds that the documents

16   sought are overbroad, assume facts not in evidence and not described with

17   reasonable particularity. Responding Party further objects to this request on the

18   grounds that it is vague, ambiguous and overbroad as to time and as to the term

19   "negotiations." Further, this request is objectionable to the extent it seeks discovery

20   of confidential, proprietary and trade secret information. Responding Party further

21   objects to this request on the ground that, as drafted, the request calls for production

22   of documents protected by the Attorney Work Product doctrine and Attorney-Client

23   privilege. Subject to, and without waiver of, the foregoing objections and its General

24   Objections, Responding Party responds as follows: after a reasonable search,

25   Responding Party will comply with this request and produce non-privileged internal

26   communications in its possession, custody or control, if any, referencing

27   Propounding Party, during the relevant time period.

28

**2.     Reasons Why the Court Should Compel Production.**

Amazzia has not agreed to produce documents responsive to this Request, but instead is offering to produce unrelated documents that happen to reference Plaintiff. Here, the requested documents are relevant because they would provide evidence as to TP-Link's intent towards Plaintiff, if not its aims and objectives in seeking to remove Plaintiff, and other similarly situated vendors, from Amazon.

**3.     Reasons Why the Court Must Not Compel Production.**

This request was withdrawn per Plaintiff's counsel's May 20, 2022, letter agreeing "Request Numbers 18 through 23 that concern Thimes's antitrust claims" are no longer outstanding.  Rohani Decl. at ¶ 13.

**S.     RFP 19**

**1.     Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.**

**REQUEST NO. 19:**

All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees RELATING TO sales of TP-LINK's wireless router products by unauthorized re-sellers on Amazon.com, Inc. or Amazon Services LLC.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 19:**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," "unauthorized resellers," and "TP-LINK's wireless router products." Additionally, this request is improper to the extent it is overly broad seeking "All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees" regardless of the allegations set forth in the operative pleading. Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further

objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged internal communications in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

## 2. Reasons Why the Court Should Compel Production.

Amazzia has not agreed to produce documents responsive to this Request, but instead is offering to produce unrelated documents that happen to reference Plaintiff. Documents authored by or transmitted between Amazzia's employees regarding the subject of sales of TP-Link's products by "unauthorized" resellers on Amazon would be relevant towards revealing whether Amazzia (or TP-Link) genuinely believed that any of these re-sellers, let alone Plaintiff, was selling counterfeit goods. Indeed, the requested documents would likely reveal that neither Amazzia's nor TP-Link's employees never once mentioned "counterfeiting" in any way in connection with Plaintiff or these other re-sellers. Among other things, the requested documents are relevant towards establishing Amazzia's intentional and independently wrongful conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel claim.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc.*, No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

### 3. Reasons Why the Court Must Not Compel Production.

This request was withdrawn per Plaintiff's counsel's May 20, 2022, letter agreeing "Request Numbers 18 through 23 that concern Thimes's antitrust claims" are no longer outstanding.  Rohani Decl. at ¶ 13.

### T. RFP 20

### 1. Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.

**<u>REQUEST NO. 20:</u>**

All DOCUMENTS and COMMUNICATIONS sent to or received from TPLINK RELATING to TP-LINK's business strategy in competing against re-sellers for sales of TP-LINK's wireless router products.

**<u>OBJECTIONS AND RESPONSE TO REQUEST NO. 20:</u>**

Responding Party objects to this request on the grounds that the documents sought are overbroad, assume facts not in evidence and not described with reasonable particularity. Responding Party further objects to this request on the grounds that it is vague, ambiguous and overbroad as to time and as to the terms "RELATING TO," "business strategy," "re-sellers," and "TP-LINK's wireless router products." Further, this request is objectionable to the extent it seeks discovery of confidential, proprietary and trade secret information. Responding Party further objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Subject to, and without waiver of, the foregoing objections and its General Objections, Responding Party responds as follows: after a reasonable search, Responding Party will comply with this request and produce non-privileged communications sent to or received from TP-Link in its possession, custody or control, if any, referencing Propounding Party, during the relevant time period.

## 2. Reasons Why the Court Should Compel Production.

Amazzia has not agreed to produce documents responsive to this Request, but instead is offering to produce unrelated documents that happen to reference Plaintiff. Documents related to TP-Link's business strategy in competing against unauthorized re-sellers of its wireless router products are relevant towards determining whether TP-Link or Amazzia genuinely believed that Plaintiff (or any other vendor) was selling counterfeit goods. Indeed, the requested documents would likely reveal that TP-Link's employees fully recognized that authentic TP-Link products were being re-sold by "unauthorized" sellers on Amazon and that these re-sales would cut into TP-Link's profits because consumers could purchase genuine TP-Link wireless router products at far lower prices, and thus TP-Link wanted to look for any opportunity to eliminate Plaintiff and similar vendors from Amazon, specifically using counterfeiting allegations as mere pretext.. Among other things, the requested documents are relevant towards establishing Defendants' intentional and independently wrongful conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel claim.

With respect to its objection that the terms used render the request vague and ambiguous, that assertion fails to satisfy Amazzia's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

## 3. Reasons Why the Court Must Not Compel Production.

This request was withdrawn per Plaintiff's counsel's May 20, 2022, letter agreeing "Request Numbers 18 through 23 that concern Thimes's antitrust claims" are no longer outstanding. Rohani Decl. at ¶ 13.

### U.    RFP 21

**1.    Plaintiff's Request, Amazzia's Response, Amazzia's Supplemental Response.**

**REQUEST NO. 21:**

All DOCUMENTS and COMMUNICATIONS that support any of YOUR affirmative defenses.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 21:**

Responding Party objects to this request as overbroad, unduly burdensome and premature and untimely. Further, Responding Party objects to this request on the ground that, as drafted, the request calls for production of documents protected by the Attorney Work Product doctrine and Attorney-Client privilege. Discovery has just begun and is on-going and Responding Party reserves all rights to supplement and produce all non-privileged responsive documents in its possession, custody or control when available and to the extend not already produced.

**2.    Reasons Why the Court Should Compel Production.**

Plaintiff is obviously not seeking to obtain Amazzia's attorney-client privileged or attorney work product materials. Any suggestion to the contrary cannot be taken seriously.

This is a fairly standard document request made in litigation — documents that support a party's specific claims or specific defenses. Plaintiff is not aware of any authority that such a request is objectionable, nor has any prior opponent ever made such a claim to Plaintiff's counsel.

**3.    Reasons Why the Court Must Not Compel Production.**

This request was withdrawn per Plaintiff's counsel's May 20, 2022, letter agreeing "Request Numbers 18 through 23 that concern Thimes's antitrust claims" are no longer outstanding. Rohani Decl. at ¶ 13.

## VI.   AMAZZIA SHOULD BE REQUIRED TO COOPERATE ON ESI.

Amazzia's intransigence on cooperating with Plaintiff with respect to ESI is puzzling.   "[T]he best solution in the entire area of electronic discovery is cooperation among counsel." *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA-CV-1500246-DOCDFMx, 2016 WL 6246384, at *1 (C.D. Cal. Feb. 23, 2016). "[T]ransparency and collaboration is essential to meaningful, cost-effective discovery." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-0630, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013); *In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*, No. MDL 2121, 2011 WL 6372826, at *3 (S.D. Cal. Dec. 19, 2011) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process.")

Additionally, it is the producing party that has the obligation to identify proper custodians. *See*, *e.g.*, *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2019 WL 4934477, at *2 (S.D. Cal. Oct. 7, 2019) ("nothing in Rule 34 requires a requesting party to identify custodians"); *California Earthquake Auth. v. Metro. W. Sec., LLC*, 2012 WL 5880345, at *5 (E.D. Cal. Nov. 21, 2012) ("the burden to identify appropriate custodians is on Evergreen, not CEA").

Thus, this Court should compel Amazzia to promptly disclose to Plaintiff the sources and custodians from which it is collecting ESI responsive to Plaintiff's document requests.   The Court should additionally compel Amazzia to disclose the search terms Amazzia is applying to that ESI to find responsive documents.

Finally, given the incredibly brief discovery period for the parties, the Court should permit Plaintiff to file a motion regarding the adequacy of Amazzia's document collection efforts on shortened notice, as the practical reality is that there may not be enough time to go through the regular process required under Local Rule 37.

### VII.   PLAINTIFF'S REQUEST REGARDING ESI IS MOOT.

Plaintiff is using a small case to fish into Amazzia's entire business and all interactions between the Defendants based on pure speculation over a decision by non-party Amazon to permanently exclude Plaintiff from its platform.   Plaintiff admits that Amazon is the only party that knows why Plaintiff's storefront was shut down.   Yet, Plaintiff has not subpoenaed any documents or information from Amazon.   Defendants, on the other hand, have both subpoenaed documents from Amazon to determine the cause of Plaintiff's storefront shut-down.  Plaintiff has also not produced *any* documents or evidence in support of its allegations or damages. The Ninth Circuit holds that the courts should not permit parties to "use discovery for fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Court for N. Dist. Cal.*, 98 F. 3d 1102, 1106 (9th Cir. 1996).

This case is about the closing of Plaintiff's Amazon storefront.  Neither claim in the Amended Fifth Amended Complaint justify production of documents beyond those referencing Plaintiff.  All claims related to antitrust have been dismissed and this case deals only with actions taken toward this Plaintiff alone.   Discovery must therefore be narrowly tailored to these claims.  *Holguin v. County of Los Angeles*, No. CV 10-8011, 2011 WL 7128640, at *2 (C.D. Cal. Oct. 12, 2011).

Plaintiff's request to compel Amazzia to disclose sources and custodians from which it is collecting ESI is moot.  At all times, Amazzia has informed Plaintiff that its search would include references to Plaintiff.  Plaintiff fails to show any need for documents beyond those agreed to be produced.  This issue is not ripe for the Court until Amazzia produces documents and Plaintiff examines the same and the parties' meet-and-confer process occurs.  *Bryant v. Mattel, Inc.*, CV 04-090049, 2007 WL 5432962, at *4 (C.D. Cal. Feb. 14, 2007)(parties must complete production and meet and confer before a motion to compel is appropriate).  Plaintiff cites no case law in support of its claim that Amazzia should provide search terms.  In fact, case law offered by Plaintiff suggests the opposite.  In *NuVasive, Inc. v. Alphatec Holdings,*

*Inc.*, the court held that "[t]he Court will not decide whether the proposed custodians are appropriate nor on the use of the requested search terms. Instead, Plaintiff must request information, regardless of how or where it is maintained by Defendants, which Defendants must address as required by Rule 34. That is discovery: a party requests information and the burden is on the producing party to locate and produce it or object legitimately to production." *Id.*

## VIII.  DOCUMENT PRODUCTION SHOULD FINISH BY JULY 18, 2022

Again, the complete discovery cutoff in this case is September 30, 2022.  But importantly, the initial expert discovery disclosure deadline is less than two months away—August 1, 2022.   And as of this moment, Amazzia has produced no documents at all.

Thus, for Plaintiff to have a fair opportunity to prepare its case for trial, document production needs to be completed soon so that Plaintiff can use them in depositions and Plaintiff's expert(s) can review those documents.  Plaintiff therefore requests that the Court order Amazzia to complete its document production in response to Plaintiff's requests by July 18, which would give Plaintiff's experts two weeks to review those materials.

Moreover, any burden to Amazzia from having to complete its document production by that date is largely of its own doing.  It issued its document responses back on November 9, 2020, and it did nothing for a month until it requested (and received) an informal stay of discovery.  The Ninth Circuit opinion reinstating Plaintiff's state law claims was issued by on April 15, 2022, so Amazzia should have been preparing to collect, review, and produce documents since then.  But instead, it has done nothing, requested a large amount of time merely to issue amended responses (with no corresponding document production), and does not even respond to repeated e-mails from Plaintiff regarding straightforward questions about document production.  By all appearances, Amazzia is just hoping to run out the

clock.   To the extent it has any complications from completing its document production by July 18, that is largely a problem of its own making.

## IX.   THERE SHOULD BE NO DEADLINE BUT WHAT THE COURT HAS SET FOR DOCUMENT PRODUCTION.

Aside from simply repeating the unfounded and incorrect self-serving and conclusory statement that Amazzia is attempting "to run out the clock," Plaintiff has offered no reason or legal basis why Amazzia should be subject to an earlier discovery cut-off date than that ordered by the Court.  Discovery cutoff in this case is September 30, 2022, and there is no reason to apply an earlier date to Amazzia.

## X.   PLAINTIFF IS ENTITLED TO MONETARY SANCTIONS.

If a motion to compel discovery is granted, "or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  Payment is not proper, however, if the movant filed the motion before attempting in good faith to get the desired results, the opposing party's opposition was substantially justified, or other circumstances make an award of expenses unjust.  *Id.*  "The losing party to a discovery motion bears the burden 'affirmatively to demonstrate that its position was substantially justified.'"  *Vargas v. Quest Diagnostics*, No. CV198108DMGMRWX, 2021 WL 4642785, at *1 (C.D. Cal. Sept. 8, 2021).

Substantial justification is lacking here.  Plaintiff's document requests are plainly relevant—and indeed, Amazzia agreed to produce responsive documents to many of them.  Yet Amazzia has produced nothing, won't discuss when it will being producing, and is insisting on first "amending" its prior responses without explaining

1   why that would be a needed prerequisite for producing documents.  There is no also

2   good faith reason for Amazzia to have delayed in even responding to Plaintiff's

3   straightforward requests to clarity on these topics, nor any good faith reason as to

4   refuse to discuss cooperation on ESI.

5        Amazzia is transparently trying to use the old defense tactic of running out the

6   clock.  Its efforts should not be rewarded, and the Court should award Plaintiff

7   monetary sanctions in the amount of $1,000 in connection with Plaintiff's attorneys'

8   fees incurred in preparing this motion to compel.  (Meng Decl. ¶ 10.)

9

10  **XI.   PLAINTIFF IS NOT ENTITLED TO MONETARY SANCTIONS BUT**

11  **AMAZZIA IS.**

12       Plaintiff refused to re-serve document requests from 2020 so that they would

13  reflect the current state of the pleadings and allow for all parties to conduct

14  themselves under the clear guidance of the Federal Rules of Civil Procedure.  It then

15  prematurely filed this motion, failing to wait for supplemental responses due on the

16  date it had chosen.  It then refused to amend this motion to reflect the supplemental

17  responses, thereby preventing compliance with Local Rule 37-1 stating that "counsel

18  for the parties must confer in a good-faith effort to eliminate as many of the disputes

19  as possible."  As of the writing of Amazzia's portion of this joint stipulation, Plaintiff

20  has not conferred with Amazzia regarding the changes that exist because of the

21  supplemental responses.  Instead, Plaintiff states that it will improperly address these

22  in its upcoming Rule 37-2.3 Supplemental Memorandum – leaving Amazzia no

23  opportunity to review or address the same until the hearing on this motion.

24       Despite all of its improper and unreasonable conduct, Plaintiff seeks sanctions

25  against Amazzia for insisting on serving supplement responses to discovery requests

26  made almost three-years ago on a pleading that is no longer at issue with claims that

27  are entirely different than what existed back then.  This is not permitted under

28  Federal Rules of Civil Procedure section 37(a)(5)(A)(i) which specifically states that

payment of expenses "must not" be ordered if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action."

Amazzia is not and never was "trying to use the old defense tactic of running out the clock."  It was trying to do as it stated: *serve objections and responses that reflect the operative pleading at issue so as to preserve its rights*.  It can not be punished for this.

Rather, it is Plaintiff that must be monetarily sanctioned.  Local Rule 37-4 states that "[t]he failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions."

Accordingly, Amazzia seeks monetary sanctions against Plaintiff in the amount of $4,500 in connection with its attorneys' fees incurred in preparing this motion to compel which includes discussion of many issues that could have been eliminated had Plaintiff conferred on the operative set of responses.  Rohani Decl. ¶¶ 14-16.

Dated:  June 14, 2022          GAW | POE LLP

                               By:    /s/ Randolph Gaw

                                      RANDOLPH GAW (S.B. #223718)
                                        rgaw@gawpoe.com
                                      GAW | POE LLP
                                      4 Embarcadero, Suite 1400
                                      San Francisco, CA 94111
                                      Telephone: (415) 766-7451
                                      Facsimile: (415) 737-0642

                                      Attorneys for Plaintiff Thimes Solutions


Dated:  June 14, 2022          BURKHALTER KESSLER CLEMENT &
                               GEORGE LLP

                               By:    /s/M. Michelle Rohani
                                      Alton G. Burkhalter, Esq.
                                      M. Michelle Rohani, Esq.
                                      Joshua A. Waldman, Esq.
                                      Attorneys for Defendant Auction Brothers,
                                      Inc. d/b/a Amazzia

# EXHIBIT A

MARK POE (S.B. #223714)
    mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
    rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
    vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
    markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions, Inc.

FILED
CLERK, U.S. DISTRICT COURT

May 27, 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ igr _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS, INC., | Case No. 2:19-CV-10374-SB-E |
| Plaintiff, | **AMENDED FIFTH AMENDED COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| TP-LINK USA CORPORATION and AUCTION BROTHERS, INC. d/b/a AMAZZIA | |
| Defendants. | |

Plaintiff Thimes Solutions, Inc. dba Universal Goods & Sales ("TSI"), alleges on knowledge as to itself, but otherwise on information and belief, as follows:

## INTRODUCTION

1.     This case is about greed disguised as "brand protection."  With the advent of Amazon has come a fight for the right (or wrong) to display goods in the ecommerce space owned and controlled by Amazon, i.e. amazon.com.  A former Investigation Specialist for Amazon's Seller Performance team, Chris McCabe, has written about the misuse of the Amazon rights reporting system.  In his article, "Have you noticed How Unpredictable Amazon's Notice Infringement teams are now?" https://www.ecommercechris.com/have-you-noticed-how-unpredictable-amazons-notice-infringement-teams-are-now/(February 21, 2019), Mr. McCabe observes (Exhibit 1):

- Amazon's Notice Claim of Infringement Teams exist in theory to process intellectual property violations on the Amazon Marketplace at amazon.com;

- In practice, trademark and other violations can come from anywhere, allege anything, and are rife with abuse;

- The work of the Notice teams, though attempting to combat rampant abuse, has backslided of late to the point where Amazon's response to contested Intellectual Property Complaints makes "little to no sense;"

- Amazon harshly enforces the brand owner complaints of counterfeiting by requiring at most that brand owners attest to having "test bought" the allegedly counterfeit product from the alleged counterfeiter;

- Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, *re*stated repeatedly, and often have nothing to do with the reason for the suspension or expulsion; and

- Accused sellers—in particular those with a history of notice claims (as many sellers have)--are left in a virtual "twilight zone" where they are not told and cannot learn the true reasons for harsh—at times lethal—action taken against their businesses.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

2.     Unscrupulous brand owners, well aware of the above Notice Infringement landscape, take unilateral action and use "brand protection services" to assist them in "knocking off unwanted sellers." *Id.*

3.     Plaintiff Thimes Solutions Inc. dba Universal Goods & Sales ("TSI") is a Suffern, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy.  Succinctly, the model is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount.  Manufacturers, their "authorized distributors," and their "brand protectors" often seek means—some unlawful-- to eliminate such niche market competition.[1]

4.     Plaintiff TSI ordinarily buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale.

5.     TSI  brings this suit following its commercial and financial ruination resulting from Defendants' libelous statements to Amazon and consequential tortious

---

[1]A copyright or trademark holder enjoys a "distribution right" and may initially sell, or not sell, copies of a copyrighted or trademarked item to others on such terms as he or she sees fit. However, the IP holder's exclusive distribution right is limited to the first sale of the coyprighted or trademarked item. Under the "first sale" docrine, codified at 17 U.S.C. § 109(a) "the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of such copies."  The Fair Use Doctrine, similar to the First Sale Doctrine, permits a seller to use a another's trademark to identify the former's goods, provided that no likelihood of confusion results as to the source of the product or the trademark holder's sponsorship or affiliation.  15 U.S.C. §115(b)(5)(A)-(C).  The First Sale Doctrine [also] protects resellers of genuine trademarked goods from claims of infringement. *Davidoff & CIE, S.A. v. PLD Int'l. Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Hidalgo Corp. v. J. Kugel Designs, Inc.*, No. 05-20476-CIV-JORDAN/TORRES, 2006 U.S. Dist. LEXIS 96647, at *12 (S.D. Fla. 2006)

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

interference with Plaintiff's existing and prospective business relationship with Amazon Services LLC.

6.     TSI became a third-party seller on Amazon in 2016.  To become an Amazon seller TSI signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate TSI as a seller for any reason or for no reason at all.

7.     TSI sold over 175,000 products to customers on Amazon with a 98% lifetime positive feedback rating.  Plaintiff reached $2 million in sales during the first six months of 2018. As of its expulsion from Amazon, TSI was selling around $400,000-500,000 per month on amazon.com. Net margins were roughly 20%.  Now . . . there is only ruin.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

9.     Thimes Solutions Inc. was duly incorporated in New York on November 21, 2016 and maintains its principal place of business at 3 Litman Lane, Suffern, New York.  TP-Link USA Corporation was duly incorporated in California on October 15, 2008 and maintains its principal place of business at 145 South College Blvd., Suite 400, in Brea, CA 92821.Auction Brothers, Inc. dba Amazzia was duly incorporated in California on May 31, 2005 and maintains its principal place of business at 19528 Ventura Blvd, #229, Tarzana, CA 91356.

10.     Defendant's activities were within the flow of, were intended to, and had a substantial effect on, interstate commerce because Plaintiff conducted business all over the country.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), (c) and (d).  A substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Amazzia and TP-Link are residents of this district and their challenged

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conduct was initiated in this district including, without limitation, the transmission of the false statement at issue.

**FACTS**

**A.**   **TP-LINK USA, TP-LINK NORTH AMERICA, TOM LEI AND AUCTION BROTHERS, INC. dba AMAZZIA**

12.    TP-Link USA Corporation ("TP-Link" or "USA" at times), operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 160 million products around the globe during 2016.

13.    USA was originally a subsidiary of TPC but is now a subsidiary of TP-Link UK Limited.  It manufactures and supplies networking products for home and small business, known as SOHO and SMB.  Examples are switches, routers, and components for wireless systems.

14.    TP-Link USA's products are available at substantially all major electronics retailers, online and in-store, throughout the country, including amazon.com, jet.com, Best Buy, COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target, and Walmart.[2]

15.    TP-Link North America ("TPN" or "North America" at times) functions as an alter ego of USA and its business offices are located at the latter's principal address in Brea, CA, while it handles TP-Link warehousing a few miles away in Fontana, CA.  TPN merged into USA on November 26, 2019.  TPN was a fictitious name, duly registered under California law, at all relevant times..

16.    TP-Link's LinkedIn page has listed at least two (2) dual positions, believed to be at issue here, held under simultaneous employment by USA and TPN:

- Director of E-commerce at TP-Link North America, Inc.
  Greater Los Angeles Area
  Current: Senior Channel Strategy Manager,B2B at **TP**

---

[2] https://www.tp-link.com/us/where-to-buy

**Link USA** Corporation[3]

- Channel Strategy Manager, Ecom at TP-Link USA Corporation
  Hangzhou, Zhejiang, China
  Current: Channel Strategy Manager, Ecom at **TP-Link** North
  America, Inc.[4]

17.     USA and Amazzia published written complaints to Amazon, libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise infringing a trademark (on one occasion)  ("IP Complaints").[5]

18.     TP-Link's fraudulent IP Complaints directly caused Plaintiff's suspension from the Marketplace in May 2018 and also caused TSI's permanent expulsion as a seller on the Amazon website, effective on or about August 27, 2018.

19.     TP-Link retained Amazzia, to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.

20.     Amazzia describes itself as follows:

> As your dedicated partner, we keep your brand safe from unauthorized agents, ensure Amazon compliant distribution and amazing growth through price protection, optimization and targeted marketing.
>
> . . . .
>
> **Removing Un-Authorized Sellers**
> Effective and proven strategies to report and remove Un-Authorized Resellers from your listings

---

[3] https://www.linkedin.com/company/tp-link/ at **See all 78 employees on LinkedIn**, Screen 1 (last visited on June 3, 2018)

[4] *Id.* at Screen 8.

[5] Plaintiff is informed and believes that IP complaints are prepared with an online system that does not provide the complainant with a completed copy.   See https://www.amazon.com/gp/help/reports/infringement   Amazon provides the accused with an edited and redacted version of the allegations in an email from the Seller Support group of Amazon. The allegations of the emailed version include the word "counterfeit," or "infringement," the Amazon Stock Identification Number(s) ("ASINs") allegedly counterfeited or infringed, an Amazon complaint ID number, the complainant company name, and an email address to contact with a view to resolution.   The entire text of the allegations and the signature of the person or entity who filed the complaint are not disclosed.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

21.    Amazzia's primary focus is removing lawful Amazon offerings from the Marketplace:

Unauthorized resellers corrupt the online marketplace with reckless, self-serving tactics, causing price erosion and negatively impacting your brand's image.

Under these circumstances your legitimate brick & mortar retailers are unable to compete with online prices and may refuse to carry your brand.

22.    Amazzia's Vice-President of Brand Protection William Samuel articulates his role quite simply:[6]

As the Vice President of Brand Protection at Amazzia, I ensure the protection of my clients' brands by identifying and eliminating unauthorized Amazon sellers. **The increasing number of MAP violators in the Amazon marketplace is astounding**! Rogue marketplace sellers can damage your brand and undercut your bottom line by selling products at extremely low discounted rates.  (emphasis added)

23.    Amazzia makes clear in publicly available promotions that the real problem with third-party sellers is that that they may *try* to compete on price:

Not all third-party sellers are ethical, and some may try to undercut you and misrepresent your brand. **The main risk involves companies deviating from your minimum advertised price.** This results in having your brand's value lowered. There's also the risk of bad brand representation if consumers experience poor customer service with any unauthorized third-party sellers. As a result, customers associate those bad experiences with your brand.                               . . . .
**Amazzia can protect your brand by preventing MAP violations** . . . (emphasis added)

24.    Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon" (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% .of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) Amazzia

---

[6] https://www.linkedin.com/in/william-samuel-0825a071/

promised TP-Link "full access to our team for any questions regarding the cleanup project."  See Exhibit 9 at Exhibit A thereto.[7]

25.     Unable to eliminate TSI sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting, at all times acting in concert with and on behalf of TP-Link, and with the latter's actual authority and instructions.

26.     Amazzia  directly caused Plaintiff's May suspension and permanent expulsion from the Amazon Marketplace  in coordination with the following scheme:

- On January 8, 2018 Plaintiff purchased 360 TP-Link AC5400 Routers from a reputable supplier with which Plaintiff has dealt extensively. Plaintiff has possession of approximately 100 of these items to date, all of which are authentic and not counterfeit.  Amazon continues to hold a number of Plaintiff's TP-Link AC5400 Routers.

- One Tom Lei (Screen name "amazon91773"), a TP-Link  employee, operated out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related competition to USA from competitors that are not so-called Authorized Resellers.

- Mr. Lei's purchases of TP-Link products from TSI, in his own name (using USA funding or reimbursement) and without disclosure of TP-Link involvement,  occurred on January 18, 2018 (2 AC5400 Routers) and March 5, 2018 (6 AC1200 Routers in three (3) separate transactions).  Exhibit 2 hereto.  He received the items at Defendants' Fontana CA warehouse, examined the products, and knew from such examinations that the products were authentic  and not counterfeit. Notwithstanding this knowledge, Mr. Lei or those acting in concert with him libeled TSI *27 times* during January-June 2018 for selling counterfeit USA products  and otherwise  infringing  TP-Link's intellectual property.

- Mr. Lei's initial purchase of two (2) AC 5400's establishes that TP-Link's sole intent *ab initio* was to eliminate Plaintiff's sales of TP-Link products from the competitive marketplace, as the circumstances of the initial  January 19th complaint alleging counterfeit goods proves:

  o     The complaint addressed an ASIN: B01DXVK3KY, TP-Link

---

[7] Exhibit 9, the Declaration of Kevin Ryu was submitted by TP-Link in *Careful Shopper*.  Exhibit A thereto was identified as "a true and correct copy of TP-Link's contract with Amazzia. *Careful Shopper LLC v. TP-Link USA Corporation*, Case 1:18-cv-03019-RJD-RML Document 35-1 Filed 02/27/19.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router

- o Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018

- o Amazon lodged the Router with UPS for delivery to TP-Link on January 19, 2018 (Exhibit 3)

- o The Router was not delivered to Mr. Lei until January 22, 2018, three days *after* swearing to Amazon that the Router was test-purchased and found to be counterfeit (Exhibit 4).

TP-Link *targeted* TSI for elimination and in its haste lodged its libelous IP complaint before receiving the Routers! [8]

27. During 2018 TP-Link complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting:

- Jan 19th: us-compliance@tp-link.com
- Jan 21st: us-compliance@tp-link.com
- Jan 26th: us-compliance@tp-link.com
- Feb 14th: compliance-us@tp-link.com
- Feb 21st: compliance-us@tp-link.com
- Feb 28th: compliance-us@tp-link.com[9]
- Mar 2nd: compliance-us@tp-link.com
- Mar 3rd: compliance-us@tp-link.com
- Mar 10th: compliance-us@tp-link.com
- Mar 13th: compliance-us@tp-link.com
- Mar 21st: compliance-us@tp-link.com
- Mar 31st: compliance-usa@tp-link.com
- Apr 2nd: compliance-usa@tp-link.com
- Apr 5th: compliance-usa@tp-link.com
- Apr 6th: compliance-usa@tp-link.com
- Apt 7th: compliance-usa@tp-link.com

---

[8] After receiving the first TP-Link-instigated Notice from Amazon, Plaintiff researched its sales of the TP-Link AC 5400 Router and searched the purchaser's address on Google, thereby identifying TP-Link as the purchaser of two (2) AC5400 Routers.
[9] On this instance alone, TP-Link claimed trademark infringement, but not counterfeiting.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Apr 9th: compliance-usa@tp-link.com
- Apr 10th: compliance-usa@tp-link.com
- Apr 11th: compliance-usa@tp-link.com
- Apr 12th: compliance-usa@tp-link.com
- Apr 24th: compliance-usa@tp-link.com
- Apr 25th: compliance-usa@tp-link.com
- Apr 26th: compliance-usa@tp-link.com
- Apr 30th: compliance-usa@tp-link.com
- May 28th: compliance-usa@tp-link.com
- May 30th: compliance-usa@tp-link.com
- Jun 7th: compliance-us@tp-link.com
- June 21st: compliance.usa@tp-link.com

28.     TP-Link/Amazzia used four (4) different identities in complaining to Amazon, indicating a combination and conspiracy, to wit:     compliance-us@tp link.com,         compliance-usa@tp-link.com,         us-compliance@tp-link.com and   compliance.usa@tp-link.com[10]   On information and belief, the only email address available to Amazzia was compliance-usa@tp-link.com.

### FALSE INFRINGEMENT CLAIMS AT AMAZON

29.     In the April 2018 article by Chris McCabe ("McCabe"), discussed *supra,* the renowned expert in Amazon Seller Performance issues, McCabe summarizes "[h]ow unethical sellers abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> **Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes

---

[10] TP-Link has admitted in other litigation Amazzia's use of compliance-usa@tp-link.com. See Exhibit 9 hereto at ¶4.

[11] McCabe is a former Investigation Specialist for Amazon's Seller Performance team.  His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/.

1  a legally-binding declaration in the form, and signs it.

2  30.  TP-Link/TPN/Amazzia was the unethical seller in the instant case when

3  it falsely executed IP Complaints against TSI and, even if it issued the first complaint

4  (1/19/18) as an honest mistake (it did not), it received a sincere offer to pursue the

5  truth that same day . . . but did not retract its evil report; in fact, it issued some two

6  (2) dozen additional reports and hereby sealed TSI's doom.

7  31.  TP-Link/TPN/Amazzia acted maliciously and intentionally in reporting

8  to Amazon that TSI was listing counterfeit products and, in fact, about two dozen

9  reports were issued in conscious disregard of the truth.

10  **THE ROLE OF TRADEMARK INFRINGEMENT IN THIS PICTURE**

11  32.  TP-Link sought in related litigation in this Court to justify its IP

12  (counterfeit) complaints with a purported trademark infringement theory based on a

13  purported disclaimer of its manufacturer's limited warranty as to Gray Market

14  purchasers of its products, thus making products sold to Gray Market purchasers

15  "materially different."[12]  Even if in good faith (which it was not), however, such a

16  trademark infringement claim did not justify reporting Plaintiff to Amazon as a

17  counterfeiter.

18  33.  Counterfeiting is the 'hard core' or 'first degree' of trademark

19  infringement that seeks to trick the consumer into believing he or she is getting the

20  genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*,

21  868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).  Trademark infringement, on the other

22  hand, is defined as the unauthorized use of a trademark or service mark, i.e. *the same*

23  *product* bearing the mark without required permission.

24  34.  When TP-Link complained of trademark infringement, Amazon

25  rejected the complaint.  When TP-Link complained of "counterfeiting," Amazon

26  expelled TSI with permanence.  Amazzia is the Amazon expert and planned this

27

28  [12] A "Gray market" refers to the trade of a commodity through distribution channels that are not authorized by the original manufacturer or trademark proprietor.

- 10 -  AMENDED FIFTH AMENDED COMPLAINT CASE NO. 2:19-CV-10374-SB-E

conspiracy with expressed knowledge and intent to "remove" Gray Market sellers.

35.    For the reasons stated in the next three (3) paragraphs hereof,  TP-Link's sole predicate for its wrongdoing, i.e. that its limited warranty did not convey to TSI purchasers (which would not justify a *counterfeit* IP complaint in any event), is a pretext , a mere illusion to justify some complaint--any complaint--with unauthorized below-MAP sellers.[13]

36.    TSI was not an "unauthorized seller" except in the commonly-understood sense that it was not specifically authorized under any distributorship agreement (or similar agreement) by TP-Link to purchase TP-Link products directly from TP-Link and thereafter resell such products.  In all other respects, TSI was "authorized" by law to sell genuine TP-Link products.

37.    TSI was authorized under its agreement with Amazon to sell TP-Link products on amazon.com; *and TP-Link consented in its agreement with Amazon to abide by Amazon's policies which authorized Gray Market sellers to resell the trademarked goods of others without restraint on the Amazon Marketplace.*

38.    Under the First Sale Doctrine TSI was fully within its rights in lawfully acquiring authentic TP-Link products, as it did in all instances of purchase of TP-link products, and listing and selling such products on Amazon.

39.    Moreover, TSI sales of TP-Link products on Amazon *did* convey the manufacturer's warranty (because under NYGBL §369-b any disclaimer was invalid); hence, such products were *not* materially different than other genuine TP-Link products, because:

- TP-Link never enforced any such disclaimer against any of its Gray Market customers prior to the advent of this litigation. Based on discovery received to date in *Careful Shopper*, TP-Link did not require, from registered owners of TP-Link products seeking warranty assistance, proof of purchase disclosing seller identity until September 2019 at the earliest.

---

[13] A **MAP price** is a minimum amount that resellers agree not to advertise below.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Purchasers of TP-Link products on Amazon designated (in the registration temple) their seller as Amazon. TP-Link had no way—and sought no way-- to distinguish as between Amazon purchasers of TP-Link products sourced from "authorized" and "unauthorized" sellers.

- Most significant, as a matter of law Section 369-b of New York's General Business Law, invalidating any warranty limitation actuated because "such merchandise is sold by a particular dealer," preserved the warranty for all Careful Shopper customers. *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp.2d 208, 228 (S.D.N.Y. 2011); see also *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261 n.3 (S.D.N.Y. 2012)

40.    Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing, is (along with          TP-Link) subject to punitive damages herein.  For example upon information and belief, Amazzia directly or indirectly sells products on Amazon through multiple seller accounts, often buying them from the same brands they contract with to provide "brand protection services," and subsequently files false counterfeit complaints against their competitors on Amazon.

41.    Immediately upon receipt of the first IP-complaint of January 19, 2018 Plaintiff emailed TP-Link at the designated address in an effort to satisfy TP-Link that TSI's product was authentic and not counterfeit (Exhibit 5):

1
2
3
4
5
6
7
8
9
10
11
12
13



14

42. TP-Link did not respond to Plaintiff's letter, Exhibit 5; nor did Amazzia.
During this litigation TSI has disclosed its sources of product to TP-Link. TP-Link
has not challenged the reputability of Plaintiff's sources of product, although it filed
a Rule 26(f) Report since being so advised.

43. Plaintiff then engaged expert Amazon counsel who emailed a letter to
TP-Link on February 1, 2018 (Exhibit 6):

> In accordance with Amazon policy, in order to report an item is counterfeit, a
> test buy must be performed in order to verify the claimed differences are
> present between the accused product and the rights owner's product. As such,
> we are writing to request the specific basis for your counterfeit claims,
> including the test buy purchase information provided to Amazon to support
> your claims.

TP-Link did not respond to counsel's letter.

44. On May 7, 2018 Plaintiff was suspended (with appeal rights) from
selling on Amazon by reason of TP-Link's IP complaints (Exhibit 7):

> You have listings that infringe on the intellectual property rights of others. This
> is against our policies. The removed items can be seen on the Performance

15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

45.     Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link continued its onslaught on May 28 and 30, and on June 14 and 21.  Exhibit 8.

46.     The record of TP-Link complaints, subject to Amazon's algorithmic surveil, caused Plaintiff's permanent expulsion (without appeal rights) from the Amazon Marketplace on August 27, 2018.  This result from Amazzia's IP reporting was predictable to Amazon experts.  *McCabe, supra.*

47.     All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's counterfeiting, were filed under false attestation:[14]

### Statements

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

48.     Conspirators TP-Link and Amazzia had ample opportunity and did in fact, albeit surreptitiously, test purchase many of TSI's TP-Link offerings to determine authenticity. Exhibit 1 hereto.  All were authentic and TP-Link has never stated to the contrary except, of course, as necessary to incite Amazon's punitive measures upon TSI. It chose to allege TSI's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications.  Such actions were malicious.

49.     TP-Link, having sought refuge in Noerr-Pennington in Careful-Shopper, we will plead to the issue here.  The series of events pled within were a "sham" within Noerr Pennington parlance, and satisfy Noerr-Pennington's "sham

---

[14] https://www.amazon.com/gp/help/reports/infringement

exception" as follows:[15]

- TP-Links IP complaints sounding in counterfeiting were objectively baseless, and TP-Link knew they were objectively baseless. Having made 4 test purchases through Mr. Lei, and having had opportunity to examine them, TP-Link knew of their authenticity.

- Upon information and belief, TP-Link filed IP complaints sounding in trademark infringement that were rejected by Amazon as non-actionable.

- Only by charging "counterfeiting" unendingly could TP-Link effect TSI's expulsion.

- Amazon has testified before Congress that that Rightsowners often "conflate" their IP rights with independent sellers' products' lacking authenticity; and Amazon disapproves of Rightowners so doing. [16]

- TP-Link found a "hired gun" in Amazzia and contracted to eliminate third party sellers as follows: "50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," without regard to whether such resellers' conduct was wrongful; Exhibit 9 at Exhibit A.

- As per Amazzia's online promotional material, i.e. "Amazzia can protect your brand by preventing MAP violations," the foregoing conspiracy existed to eliminate price competition;

---

[15] Under the Noerr-Pennington doctrine, a **sham** petition is one that is ostensibly directed toward influencing governmental action but that is a mere **sham** to cover an attempt to interfere directly with the business relationships of a competitor. *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1050, 99 Cal. Rptr. 3d 661, 666 (2009)

[16] http://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf

Amazon seeks to provide its customers with the widest possible selection of products at competitive prices. One way Amazon has sought to provide this selection is by making it easy for sellers of authentic products to open selling accounts and sell a wide variety of products directly to Amazon's customers in Amazon's store. Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand. These include liquidation or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise. Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store. But, we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- • Such a purpose and effect of collaborative action violates the common law.

- • IP complaints now defended by TP-Link serve to "conceal[] an attempt to interfere *directly* with the business relationships of a competitor," i.e. TSI.  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) (*PRE*); see also *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).

- • "[N]o reasonable [Amazon seller] could realistically expect success on the merits" of the IP complaints, 508 U.S. at 60.

- • The IP complaints sounding in counterfeiting were, therefore, not     [" 'communications preparatory to or in anticipation of bringing an action or other official proceeding'  and are therefore unprotected by Noerr-Pennington.

## B.  ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

50.    But for Defendants' IP complaints to Amazon TSI would not have been expelled from the Amazon Marketplace.

51.    Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures.   Plaintiff was permanently expelled nonetheless.

52.    By reason of the expulsion Plaintiff was unable to sell its aging inventory (at least $1.1 million) or access its funds in Amazon's hands (about $80,000).  Plaintiff was forced to hire counsel at substantial expense.

53.    There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

54.    The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month.  Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.

55.    Defendants' actions and inactions, moreover, were calculated, willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $5,000,000, together with attorney fees to be

determined by the Court.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

56.     Plaintiff incorporates the allegations above as though the same were re-written at length.

57.     "The elements of tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1153. *Fresno Motors, Ltd. Liab. Co. v. Mercedes-Benz USA, Ltd. Liab. Co.*, 852 F. Supp. 2d 1280, 1292 n.12 (E.D. Cal. 2012)

58.     As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints alleging sale of counterfeit products received by TSI from Amazon were the work of TP-Link and Amazzia.

59.     Experts believe that Amazon third-party sellers who pass a threshold of <$1MM in annual sales, known as "Top Sellers" (such as TSI), have considerable longevity in their Amazon business relationship. *See* https://www.marketplacepulse.com/articles/veteran-amazon-sellers-still-at-the-top For TSI "the sky was the limit."

60.     Defendants' accusations of counterfeiting, wrongful *per se*, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's existing and prospective business relationship with Amazon.

61.     The accusations aforesaid proximately caused Plaintiff's expulsion.

62.  The statements were made maliciously and with ill will, as business entities do not lie dozens of times and turn a stone deaf ear to pleas for moderation absent a strong measure of ill will

63.  Amazon stated that it would act favorably if TP-Link/Amazzia would retract the accusations; but, despite TSI requesting a retraction and asking for evidence of TP-Link/Amazzia's claims, both directly and through counsel, TP-Link/Amazzia refused to retract the IP Complaints or even respond to TSI or counsel at all and indeed continued to file dozens of new complaints afterwards."

64.  Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon business.  TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000.  Using a 20% profit figure because our net profits ($368,000) derived from $1.819.  Assuming a 10-year income stream for TSI, constant sales and static income of $900,000 per year, discounted at 3%,  we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000.

## CLAIM II:  TRADE LIBEL

65.  Plaintiff incorporates the above allegations as though the same were rewritten at length.

66.  Under California law:

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259, 217 Cal. Rptr. 3d 234 (2017) (quoting *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312, 206 Cal. Rptr. 3d 60 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." *John Doe 2*, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency

to injure him in his occupation." <u>Cal. Civ. Code § 45.</u>' *Schmidt v. Baldy*, No. CV 16-9368-DSF (AGRx), <u>2019 U.S. Dist. LEXIS 182826, at *18</u> (C.D. Cal. Oct. 19, 2019Defendants' libelous IP complaints to Amazon proximately caused Amazon to expel Plaintiff from the Marketplace on August 27, 2018 with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract with Amazon, as identified in ¶7 *supra.*

67.    TP-Link /Amazzia's scheming accusations falsely charged TSI with a serious crime or crimes.  Advertising falsely over the interstate wires may violate 18 U.S.C. 1343 because members of the public part with their money by reason of advertising. Moreover, this is not the only instance of defendants' scheme, to wit: there is pending in this Court the case of *TP-Link USA Corporation v. Careful Shopper,*[17] with counterclaims and third-party complaint premised on the same essential allegations as this case.

68.    The Amazzia promotional material and contract evidence a high probability that many more third-party sellers have fallen victim to this scheme but, as the conspirators calculated, those victims are unable to mount a lawsuit against the largest wi-fi manufacturer in the world, i.e. TP-Link.  Thus, on information and belief, plaintiff alleges that the conspiracy alleged herein was effected through a pattern of wrongful acts and conduct.

69.    Defendants' accusations against Plaintiff to Amazon directly injured Plaintiff in its business and trade because, as they knew, Amazon will not tolerate repeat counterfeiters as Amazon sellers.

70.    Defendants' accusations against Plaintiff constitute trade libel *per se.*

71.    Although injury may be presumed due to libel *per se,* Plaintiff suffered above and beyond presumed damages, e.g. loss of profits.  See ¶7 *supra.*  Further, TSI lost good will specific to the TSI-Amazon relationship that cannot be recovered including, *inter alia,* Plaintiff's right to sell a broad range of products on

---

[17] CASE NO:  8:19-cv-00082-JLS-KES

amazon.com, much of which entitlement was grandfathered.[18]

**<u>PRAYER</u>**

    **WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

    A.    Compensatory damages of at least $5,000,000;

    B.    Treble damages of $15,000,000;

    C.    Punitive damages of not less than $5,000,000;

    D.    Attorney fees and costs; and

    E.    Such other and further relief as the Court may order.

  Dated:  May 23, 2022        GAW | POE LLP

                By:    _____

                        Mark Poe

                        Attorneys for Plaintiff
                        Thimes Solutions, Inc.

---

[18] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

1      Plaintiff Thimes Solutions, Inc. hereby demand a jury trial for its claims

2  against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a

3  Amazzia.

4

5      Dated: May 23, 2022        GAW | POE LLP

6

7                     By: _____

8                         Mark Poe
                              Attorneys for Plaintiff Thimes

9                              Solutions, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:19-cv-10374-SB-E | Date: | May 20, 2022 |
|---|---|---|---|

Title:    *Thimes Solutions Inc. v. TP Link USA Corporation et al.*

Present: The Honorable    **STANLEY BLUMENFELD, JR., U.S. District Judge**

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:    [In Chambers] CASE MANAGEMENT ORDER**

This case was remanded to this Court from the Ninth Circuit on May 9, 2022; the Court held a status conference on May 20, 2022 and issues this case management order.  The DOE defendants remaining after July 18, 2022 are dismissed by operation of this Order and without further notice.  Defendants shall file any objection to private mediation **by no later than May 23, 2022**.

The Court has reviewed the Joint Rule 26(f) Report and sets the pretrial and trial dates noted in the table below based on an evaluation of the complexity of the case. A more complete description of these deadlines is contained in the Mandatory Scheduling Conference Order (MSC Order).  The deadlines below will *not* be continued absent *a timely showing of good cause*.  ***Good cause*** requires a specific, detailed, and non-conclusory showing of diligence from the outset of the case, describing: (i) all relevant work previously done (including when each item was completed), (ii) all relevant work that remains to be done, (iii) why the remaining work could not previously have been done (including efforts made to complete each remaining item), and (iv) why the amount of time requested is needed to complete the remaining work.  *The **Attachment to this Order** describes the*

*requirements in more detail, and failure to comply with them will result in denial of the request with prejudice.*

| | |
|---|---|
| **Trial**  ☐ Court  ☒ Jury       (Mon., 8:30 a.m.) | January 9, 2023 |
| **Pretrial Conference**          (Fri., 10:00 a.m.) (including hearing on motions in limine) | December 30, 2022 |
| **Motion to Amend Pleadings/Add Parties** (**H**earing Deadline) | July 18, 2022 |
| **Discovery Deadline – Nonexpert** | September 30, 2022 |
| **Discovery Deadline – Expert** | September 30, 2022 |
| Initial Expert Disclosure | August 1, 2022 |
| Rebuttal Expert Disclosure | August 8, 2022 |
| **Discovery Motion Hearing Deadline** | October 7, 2022 |
| **Non-Discovery Motion Hearing Deadline** | October 7, 2022 |
| **Early Mediation Deadline** | June 21, 2022 |
| **Settlement Conference Deadline** ☐  1. Mag. J. ☐  2. Panel ☒  3. Private | October 21, 2022 |
| **Post-Settlement Status Conf.**  (Fri., 8:30 a.m.): | November 4, 2022 |
| Status Report Due (7 court days before *by 9:00 a.m.*): | October 28, 2022 |
| **Trial Filings (First Set) Deadline** | December 9, 2022 |
| **Trial Filings (Second Set) Deadline** | December 16, 2022 |

All motion deadlines reflect *the last day when a motion may be heard*, and a hearing must be set on *an open hearing date*.  Consult the Court's website before scheduling a hearing to determine availability.  A party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard.

The parties should plan to complete discovery far enough in advance of the discovery deadline to allow for the filing of a discovery motion if necessary and complete the discovery allowed if relief is granted.  Delaying discovery (e.g., a deposition) until receiving other discovery (e.g., written discovery)—or deciding not to conduct a deposition remotely—generally does not constitute good cause to

continue the discovery or other deadlines.  The parties should take this risk into account when deciding whether to engage in strategic ordering of discovery or to conduct in-person depositions.

**cc:  ADR**

## ATTACHMENT

The parties should prepare this case without expecting an extension of any pretrial or trial deadline, even if the extension request is by stipulation. The Court applies the same standard of good cause for all requests (whether opposed or unopposed).

A continuance will be granted only for good cause as defined in the Order above. The showing shall be placed in a table in chronological order and shall include *all* discovery and significant procedural events from the outset of the case in the format illustrated below.

| **Completed Work** | | | |
|---|---|---|---|
| **Date** | **Pty** | **Event** | **Explanation** |
| __/__/__ | Π | Complaint | |
| __/__/__ | Δ | Answer | |
| __/__/__ | Π | Initial Disclosures | |
| __/__/__ | Δ | Initial Disclosures | |
| __/__/__ | Π | Interrog., RFPs, RFAs (Set #1)[1] | |
| __/__/__ | Δ | Interrog., RFPs, RFAs (Set #1) | |
| __/__/__ | Π | Smith Depo | |
| **Remaining Work[2]** | | | |
| __/__/__ | Π | Jones Depo | Detail: (1) why it was not already done; (2) prior efforts to complete it; and (3) why the amount of time requested is necessary. |

The requesting party/parties also must submit a proposed order *in Word format* using the exact "CMO Continuance Order template" provided on the Court's website.

### *Failure to comply with the above requirements will result in the denial of the request with prejudice.*

---

[1] Each discovery item (e.g., RFAs) must be separately listed *unless* they all occurred on the same date.

[2] Each remaining discovery item must be listed separately with a proposed date for completion in the first column, the party taking the discovery in the second column, a description of the discovery in the third column, and an explanation in the fourth column of (1) why the discovery was not already done, (2) the prior efforts to complete it, and (3) why the amount of time requested is necessary.