1
2
3
4
5
6
7
8
9
10

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiff
Thimes Solutions Inc.

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

11
12
13
14

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIMES SOLUTIONS INC.

                    Plaintiff,

        v.

TP-LINK USA CORPORATION, and
AUCTION BROTHERS, INC. d/b/a
AMAZZIA

                    Defendant.

Case No. 2:19-cv-10374-SB-E

## **DISCOVERY MATTER**

Date: July 8, 2022
Time: 9:30 am
Courtroom: 750, 7th Floor

**JOINT STIPULATION RE:
PLAINTIFF'S MOTION TO
COMPEL DEFENDANT TP-LINK
TO PRODUCE DOCUMENTS**

Discovery Cutoff:    Sept. 30, 2022
Pretrial Conference: Dec. 30, 2022
Trial Date:          Jan. 9, 2023

Complaint Filed:  May 29, 2019
Am. 5th Am. Com. Filed:  May 27, 2022

# **TABLE OF CONTENTS**

PLAINTIFF'S POSITION ..........................................................................4

I.     PLAINTIFF'S RECITATION OF PERTINENT FACTS ...............................5

II.    TP-LINK'S INTRODUCTORY STATEMENT...........................................7

III.   TP-LINK'S BOILERPLATE OBJECTIONS ARE NOT VALID. ...............10

     A.   TP-Link's "General Objections" Are Improper.............................10

     B.   TP-Link's Relevance Objection Is Improper................................11

     C.   TP-Link's Objection to the term "Relating To" Is Not Valid. ...........11

     D.   TP-Link's Objections Based on Privilege and Confidentiality Are Not Valid.........................................................................................12

IV.    TP-LINK'S RESPONSE TO THIMES'S SECTIONS IIIA-D.....................13

V.     THE COURT SHOULD COMPEL TP-LINK TO PRODUCE DOCUMENTS IN RESPONSE TO EACH RFP.........................................................13

     A.   RFP 1..........................................................................13

          1.   Plaintiff's Request and TP-Link's Response...........................13

          2.   Reasons Why the Court Should Compel Production. ...............14

          3.   TP-Link's Response: TP-Link's Supplemental Response to Request No. 1 Moots Any Dispute.............................................14

     B.   RFP 2..........................................................................15

          1.   Plaintiff's Request and TP-Link's Response...........................15

          2.   Reasons Why the Court Should Compel Production. ...............15

          3.   TP-Link's Response: TP-Link's Supplemental Response to Request No. 2 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................16

     C.   RFP 3..........................................................................18

          1.   Plaintiff's Request and TP-Link's Response...........................18

          2.   Reasons Why the Court Should Compel Production. ...............19

          3.   TP-Link's Response: TP-Link's Supplemental Response to Request No. 3 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................19

     D.   RFP 4..........................................................................19

          1.   Plaintiff's Request and TP-Link's Response...........................19

          2.   Reasons Why the Court Should Compel Production. ...............20

          3.   TP-Link's Response: TP-Link's Supplemental Response to Request No. 4 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................21

     E.   RFP 5..........................................................................21

          1.   Plaintiff's Request and TP-Link's Response...........................21

          2.   Reasons Why the Court Should Compel Production. ...............22

          3.   TP-Link's Response: TP-Link's Supplemental Response to

Request No. 5 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................23

F. RFP 6 ..................................................................................25
   1. Plaintiff's Request and TP-Link's Response. ...........................25
   2. Reasons Why the Court Should Compel Production. ...............26
   3. TP-Link's Response: TP-Link's Supplemental Response to Request No. 6 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................27

G. RFP 7 ..................................................................................29
   1. Plaintiff's Request and TP-Link's Response. ...........................29
   2. Reasons Why the Court Should Compel Production. ...............30
   3. TP-Link's Response: TP-Link's Supplemental Response to Request No. 7 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................30

H. RFP 8 ..................................................................................32
   1. Plaintiff's Request and TP-Link's Response. ...........................32
   2. Reasons Why the Court Should Compel Production. ...............33
   3. TP-Link's Response: TP-Link's Supplemental Response to Request No. 8 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................34

I. RFP 9 ..................................................................................36
   1. Plaintiff's Request and TP-Link's Response. ...........................36
   2. Reasons Why the Court Should Compel Production. ...............36
   3. TP-Link's Response: Request No. 9 is Overbroad in View of the Limited State Law Claims. ...........................................................37

J. RFP 10 ................................................................................39
   1. Plaintiff's Request and TP-Link's Response. ...........................39
   2. Reasons Why the Court Should Compel Production. ...............40
   3. TP-Link's Response: Request No. 10 is Overbroad in View of the Limited State Law Claims. ...................................................41

K. RFP 11 ................................................................................43
   1. Plaintiff's Request and TP-Link's Response. ...........................43
   2. Reasons Why the Court Should Compel Production. ...............44
   3. TP-Link's Response: TP-Link's Supplemental Response to Request No. 11 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................44

L. RFP 12 ................................................................................47
   1. Plaintiff's Request and TP-Link's Response. ...........................47
   2. Reasons Why the Court Should Compel Production. ...............47
   3. TP-Link's Response: TP-Link's Supplemental Response to Request No. 12 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. ...................................48

M. RFP 13 ................................................................................51

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | 1. | Plaintiff's Request and TP-Link's Response | 51 |
|  |  | 2. | Reasons Why the Court Should Compel Production. | 51 |
|  |  | 3. | TP-Link's Response: TP-Link's Supplemental Response to Request No. 13 Moots Any Dispute. | 52 |
|  | N. | RFP 14 |  | 52 |
|  |  | 1. | Plaintiff's Request and TP-Link's Response | 52 |
|  |  | 2. | Reasons Why the Court Should Compel Production. | 53 |
|  |  | 3. | TP-Link's Response: TP-Link's Supplemental Response to Request No. 14 Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims. | 54 |
|  | O. | RFP 15 |  | 56 |
|  |  | 1. | Plaintiff's Request and TP-Link's Response | 56 |
|  |  | 2. | Reasons Why the Court Should Compel Production. | 56 |
|  |  | 3. | TP-Link's Response: Request No. 15 is Overbroad in View of the Limited State Law Claims. | 57 |
|  | P. | RFP 16 |  | 59 |
|  |  | 1. | Plaintiff's Request and TP-Link's Response | 59 |
|  |  | 2. | Reasons Why the Court Should Compel Production. | 60 |
|  |  | 3. | TP-Link's Response: Request No. 16 is Overbroad in View of the Limited State Law Claims. | 61 |
|  | Q. | RFP 26 |  | 63 |
|  |  | 1. | Plaintiff's Request and TP-Link's Response | 63 |
|  |  | 2. | Reasons Why the Court Should Compel Production. | 64 |
|  |  | 3. | TP-Link's Response: Request No. 26 is Overbroad in View of the Limited State Law Claims. | 64 |
|  | R. | RFP 27 |  | 67 |
|  |  | 1. | Plaintiff's Request and TP-Link's Response | 67 |
|  |  | 2. | Reasons Why the Court Should Compel Production. | 67 |
|  |  | 3. | TP-Link's Response: TP-Link's Supplemental Response to Request No. 27 Moots Any Dispute. | 67 |
| VI. | TP-LINK SHOULD BE REQUIRED TO COOPERATE ON ESI. |  |  | 68 |
| VII. | THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT REQUIRE TP-LINK TO PROVIDE DISCOVERY ABOUT DISCOVERY IN RESPONDING TO DISCOVERY REQUESTS. |  |  | 69 |
| VIII. | DOCUMENT PRODUCTION SHOULD FINISH BY JUly 18, 2022 |  |  | 70 |
| IX. | TP-LINK'S SUPPLEMENTAL RESPONSES STATE THAT IT WILL PRODUCE DOCUMENT WITHIN THREE WEEKS |  |  | 71 |
| X. | PLAINTIFF IS ENTITLED TO MONETARY SANCTIONS |  |  | 71 |
| XI. | THIMES'S FAILURE TO FOLLOW L.R. 37 WARRANTS DENIAL OF ITS JOINT STIPULATION AND SANCTIONS. |  |  | 72 |

Pursuant to Local Rule 37-2.1, the parties submit this Joint Stipulation Regarding Plaintiff Thimes Solutions, Inc.'s ("Plaintiff") Motion to Compel Defendant TP-Link USA Corporation ("TP-Link") to Produce Documents.

## PLAINTIFF'S POSITION

This is a lawsuit concerning claims for tortious interference and trade libel brought by Plaintiff against TP-Link and Defendant Auction Brothers, Inc. d/b/a Amazzia ("Amazzia"). The procedural history of this case reflects that Defendants subjected Plaintiff to multiple rounds of motions to dismiss, with the case finally being dismissed with prejudice on March 24, 2021. Up to that point, Plaintiff had issued requests for production of documents to Defendants, but Defendants objected to many of the requests and had produced a total of two documents. Following a meet and confer over these RFPs, the parties agreed to an informal stay of discovery pending resolution of Defendants' latest motion to dismiss (which was subsequently granted).

On appeal, the Ninth Circuit reinstated Plaintiff's state law claims and the mandate was issued on May 10, 2022. On May 20, the District Court set the matter for trial on January 9, 2023 and imposed an accelerated fact and expert discovery deadline of September 30, 2022. The District Court also set expert disclosures for August 1, 2022. Plaintiff immediately resumed its meet and confer with Defendants over the RFPs. Defendants' primary position was that Plaintiff's RFPs are "stale" given the Ninth Circuit's affirming the dismissal of Plaintiff's antitrust claims. But Plaintiff clarified that, with the exception of RFP Nos. 18-24 that primarily concerned its antitrust claims (that Plaintiff was willing to drop), all of the remaining requests applied to Plaintiff's state law claims reinstated by the Ninth Circuit. Defendants then claimed to need 21 days to serve new responses to these RFPs and also would not commit to any date they would start producing documents, even though their original responses agreed to produce documents in

response to various requests.  Defendants also would not comment on whether they would be willing to discuss with Plaintiff the sources and custodians of electronically stored information ("ESI") they would collect from, and which search terms they would use.

Plaintiff followed up with Defendants twice over the next eight days, proposing that Defendants serve amended responses within 14 days.  Defendants ignored both emails.  When pressed for a third time, they said only they would serve amended responses (without committing to a response date or addressing which objections they would drop), now did they commit to when they would begin document production.

Plaintiff has no choice but to bring these two discovery motions (one against each Defendant) given the compressed discovery schedule and Defendants' unwillingness to provide any substantive information about their discovery obligations.  This discovery motion thus concerns three main issues.

First, Plaintiff requests an order overruling TP-Link's various objections and compelling TP-Link to produce the documents requested.

Second, Plaintiff requests an order compelling TP-Link to disclose the sources and custodians from which it is collecting ESI, as well as the search terms TP-Link is applying, and permitting Plaintiff to file a motion relating to those issues on shortened notice if the parties do not agree as to the proper measures for ESI.

Third, Plaintiff requests an order compelling TP-Link to complete its document production by July 18, 2022, so that Plaintiff can have at least two weeks to review all of TP-Link's documents prior to the initial expert disclosure deadline.

## I.   PLAINTIFF'S RECITATION OF PERTINENT FACTS

As Plaintiff has alleged in its operative complaint (*see* ECF No. 178), it buys factory-sealed manufacturer's products from its authorized distributors at close-out prices and then, in turn, re-sells those products to consumers at a markup that is still lower than the manufacturer's suggested retail price.  (ECF No. 178 ¶¶ 3-4.)

1    Consumers benefit by getting authentic products at a discount.  (*Id.*)  Plaintiff sold

2    such products as a third-party seller on Amazon.  (*Id.* ¶ 6.)

3         TP-Link is a manufacturer of Wi-Fi products.  (*Id.* ¶ 12.)  TP-Link hired

4    Amazzia to remove "unauthorized" sellers of its products from Amazon.  (*Id.* ¶¶

5    19-24.)  To facilitate TP-Link's wishes, Amazzia sent 28 separate complaints to

6    Amazon alleging that the TP-Link products sold by Plaintiff on its Amazon page

7    were counterfeit.  (*Id.* ¶¶ 25-27.)  After receiving the notification from Amazon as

8    to these accusations, Plaintiff contacted TP-Link to assure it that Plaintiff was

9    selling only authentic TP-Link products, but TP-Link ignored Plaintiff's e-mails

10   and letters.  (*Id.* ¶¶ 41-43.)  The deluge of counterfeiting complaints by Defendants

11   eventually led Amazon to suspend and permanently expel Thimes from the Amazon

12   Marketplace.  (*Id.* ¶¶ 44-46.)  That deprived Thimes of the ability to sell at least

13   $1.1 million in inventory or access its $80,000 in cash held by Amazon.  (*Id.* ¶ 52.)

14   Prior to the expulsion, Plaintiff had been earning approximately $100,000 in

15   monthly profits selling on Amazon.  (*Id.* ¶ 54.)

16        On June 8, 2020, the District Court had entered an order dismissing

17   Plaintiff's state law claims for economic interference and trade libel with prejudice.

18   (ECF No. 103.)  The District Court eventually permitted Plaintiff to amend its

19   complaint to allege a Sherman Act claim, which it did.  (ECF No. 126.)  Plaintiff

20   served requests for production of documents upon TP-Link and, on November 9,

21   2020, TP-Link served responses containing objections, but also agreeing to produce

22   documents in response to various requests.  (Declaration of Victor Meng, Ex. 1.)

23   Plaintiff sent a meet and confer letter regarding TP-Link's responses on November

24   24, 2020.  (*Id.*, Ex. 3.)  The parties later agreed to an informal stay of discovery

25   pending resolution of Defendants' motion to dismiss, which had been filed on

26   September 29, 2020.  (*Id.* ¶ 5.)  The District Court subsequently granted

27   Defendants' motion and the case was dismissed with prejudice.  (ECF No. 145.)

28        Following an appeal, the Ninth Circuit reinstated Plaintiff's state law claims.

(ECF No. 155.)  The mandate issued on May 9, 2022.  (ECF No. 158.)  On May 20, the District Court set the matter for trial on January 9, 2023 and imposed an accelerated fact and expert discovery deadline of September 30, 2022.  (ECF No. 170 at 2.)  The District Court also set expert disclosures for August 1, 2022.  (*Id.*)

Plaintiff immediately resumed its meet and confer with TP-Link over its responses to the RFPs.  (Meng Decl., Ex. 5.)  During the telephonic conference, both Defendants took the position that they needed to serve new responses to Plaintiff's RFPs.  (Meng Decl. ¶ 9.)  Both Defendants also claimed to need 21 days to serve new responses and would not commit to any date for producing documents.  (*Id.*)  Both Defendants also stated that they would need to review the authorities Plaintiff sent on the need for the parties to cooperate regarding ESI.  (*Id.*)

On May 26, 2022 and June 1, 2022, Plaintiff sent follow up e-mails regarding the subjects of the RFPs and document production.  (Meng Decl., Ex. 7 at 2-3.)  Defendants ignored both e-mails.  (*Id* at 2.)  On June 3, 2022, Plaintiff informed Defendants it would start preparing a motion to compel.  (*Id* at 1-2.)  Defendants responded merely by stating they would serve amended responses (without committing to a date) and would "be following the FRCP for document production" without providing any dates.[1]  (*Id.* at 1.)

## II.     TP-LINK'S INTRODUCTORY STATEMENT

Thimes's litigation tactic of "see what sticks" has resulted in a churn of claims against TP-Link in an effort to expand this case beyond what it is.  The fact is that Thimes was an unauthorized reseller caught selling products on Amazon in a manner designed to deceive end-customers into believing that such products were genuine.  Trademark law protects consumers from this type of conduct.  Thimes failed to heed repeated warning to stop such deceitful behavior (even after other

---

[1] As required under Local Rule 37-2.1, a copy of the operative Complaint is attached hereto as Exhibit A.  A copy of the Case Management Order is attached hereto as Exhibit B.

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

third parties had lodged similar complaints[2]), and as a result Amazon made the decision to expel Thimes from the Amazon.com marketplace.

Worse yet, Thimes has indiscriminately thrown spaghetti at the wall by asserting a variety of claims beginning over two years ago: (1) interference with existing and prospective business relationships; (2) trade libel; (3) false advertising under the Lanham Act; (4) monopoly under Section 2 of the Sherman Act; (5) attempted monopoly under Section 2 of the Sherman Act; (6) *per se* violation of Section 1 of the Sherman Act; (7) declaratory judgment of non-infringement; (8) association-in-fact enterprise under the Racketeer Influenced and Corrupt Organizations ("RICO") Act; and (8) RICO conspiracy.  TP-Link was forced into extensive motion practice.

What remains are just limited state law claims: interference with existing and prospective business relationships and trade libel—a far narrower scope than that of the dismissed claims.  On May 20, the Court issued a Case Management Order "based on an evaluation of the complexity of the case."   ECF No. 170 at 1.  Thus, while the Court set what Thimes characterizes in this stipulation as "an accelerated fact and expert discovery deadline," the schedule reflects the narrow scope of the remaining state law claims.

While TP-Link's motion to dismiss the Fourth Amended Complaint (which *only* included antitrust claims) was pending, Thimes served the at-issue discovery.  Given the claims at issue when the discovery was served, most of the discovery requests relate to the now-dismissed antitrust claims.  Accordingly, the parties agreed to stay discovery pending resolution of the motion to dismiss.  Now that discovery has resumed, Thimes should not be permitted wide latitude to seek

---

[2] Thimes original complaint named two additional defendants (3PM Shield LLC and Prevagen, Inc.) along with allegations of the complaints lodged with Amazon by those entities against Thimes; however, Thimes later inexplicably dismissed these two additional defendants.  *See* ECF No. 1.

1   discovery that is neither relevant nor proportional to the scope of its claims.

2   Thimes's motion to compel should be denied because: (1) TP-Link's

3   supplemental responses moot any dispute; (2) Thimes's requests are overbroad and

4   not relevant or proportional to the scope of the limited state law claims; (3) there is

5   no requirement that TP-Link provide its source, custodians, and search terms

6   related to the collection of ESI; and (4) Thimes violated Local Rule 37.

7   **Thimes failed to comply with Local Rule 37**.  In yet another attempt to

8   skirt the rules, Thimes failed to comply with its discovery obligations under L.R.

9   37, and on this basis alone warrants denial of any relief.  Prior to filing this motion,

10  Thimes was required set forth in a letter its positions, including "identify[ing] each

11  issue and/or discovery request in dispute" and "any legal authority the moving party

12  believes is dispositive of the dispute as to that issue/request."  Local Rule 37-1.

13  Thimes's L.R. 37-1 Letter (dated November 24, 2020) failed to cite any substantive

14  legal basis for its claim that its requests are relevant, but merely complains that TP-

15  Link did not comply with Thimes's requests because they are relevant.

16  (Declaration of Heather Auyang, ("Auyang Decl.") Exhibit A - pages 5-7).  Thimes

17  likewise offered no substantive legal support why its requests are proportional to

18  the needs of the case.  *Id*.

19  Although Thimes should not now be permitted to do so given its failure in its

20  meet and confer correspondence, Thimes also fails to cite any substantive law in its

21  joint stipulation supporting why its discovery requests are relevant and proportional

22  to it claims.

23  Thimes also prematurely served its portion of the joint stipulation.  After the

24  parties' May 26, 2022 meet and confer regarding the at-issue discovery requests,

25  Thimes proposed that TP-Link and co-defendant Amazzia supplement its responses

26  within 14 days (by June 9).  (Auyang Decl. Exhibit B - page 12).  Both parties then

27  timely served supplemental responses in which TP-Link agreed to produce

28  documents within three weeks.  (Auyang Decl. Ex. C)  On June 6, Thimes stated

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

1   that it intended to serve TP-Link and Amazzia with its joint stipulation.  (Auyang

2   Decl. Exhibit B - page 9).  That same day, Amazzia followed up seeking

3   clarification: "As for the motion to compel, I would appreciate clarification.  It

4   appears premature since we have agreed to serve the supplemental responses and

5   you have yet to see them."  (Auyang Decl. Exhibit B – pages 8-9).

6         Thimes responded by serving its joint stipulation on June 7.  (Auyang Decl.

7   Exhibit B – page 8).  Despite both Amazzia and TP-Link's requests on June 9 and

8   10, Thimes refused to revise and re-serve its joint stipulation in view of the

9   supplemental responses stating: "We don't plan to amend our portion of the joint

10  stipulation, as we're not be [*sic*] able to do that in time to keep the July 8 hearing

11  date.  We will address Defendants' supplemental responses in our supplemental

12  briefs on the motions to compel."  (Auyang Decl. Exhibit D - pages 44-45).

13  Notably, the parties did not hold any additional substantive meet and confers after

14  TP-Link and Amazzia served supplemental responses.  (Auyang Decl. ¶ 5).

15        L.R. 37-2.1 requires that the "stipulation should present the disputed issues as

16  concisely as the subject matter permits."  Thimes's joint stipulation fails to take into

17  account TP-Link's supplemental responses.  Moreover, a supplemental

18  memorandum under L.R. 37-2.3 should not be used to address issues that should

19  have been streamlined for the Court from the start.  This is simply a waste of

20  judicial and party resources, and Thimes should not be rewarded for its failure to

21  follow the rules because it desires to keep a hearing date.

22        The Court should sanction Thimes for its violation of the rules.

23  **III.    TP-LINK'S BOILERPLATE OBJECTIONS ARE NOT VALID.**

24        For nearly all of their responses, TP-Link asserts the same boilerplate

25  objections.  Plaintiff addresses these types of objections first followed by a specific

26  discussion of each RFP in the following section of this brief.

27        **A.    TP-Link's "General Objections" Are Improper.**

28        TP-Link purports to apply a series of "Objections to the Definitions and

1  Instructions" to each of its responses.  Such "general…objections…are not proper

2  objections," and fail to satisfy TP-Link's burden of "clarifying, explaining, and

3  supporting its objections."  *U.S. ex rel. O'Connell v. Chapman University*, 245

4  F.R.D. 646, 648-649 (C.D. Cal. 2007).  As a rule, courts decline to consider general

5  objections to requests for production.  *California Sportfishing Prot. All. v. Chico*

6  *Scrap Metal, Inc.*, No. 2:10-CV-1207-GEBAC, 2014 WL 5093398, at *5 (E.D. Cal.

7  Oct. 9, 2014).  Accordingly, such objections warrant no further consideration here.

8          **B.      TP-Link's Relevance Objection Is Improper.**

9          For each of the responses at issue in Plaintiff's motion to compel, TP-Link

10  has asserted a relevance objection on the basis that the term "wireless router

11  products" is undefined and not expressly identified in the complaint.  This position

12  fails as a matter of law.  To begin, parties are entitled to "obtain discovery

13  regarding any nonprivileged matter that is relevant to any party's claim or defense"

14  so long as it is "proportional to the needs of the case."  Fed. R. Civ. Proc. 26(b)(1).

15  Rule 26 does not limit the scope of discovery to matters expressly alleged in the

16  complaint, and information need not be admissible in evidence to be discoverable.

17  *Id.*  The relevance objection is also unconvincing as a matter of fact as Plaintiff has

18  alleged in the Complaint the specific TP-Link wireless products that it sold and

19  which Defendants told Amazon were counterfeit.  (*See, e.g.*, ECF No. 178 ¶ 26.)

20          **C.      TP-Link's Objection to the term "Relating To" Is Not Valid.**

21          TP-Link objected to the term "relating to" on the grounds that it is "vague,

22  ambiguous, overly broad and not proportional to the needs of the case."  This

23  objection fails to satisfy its discovery obligations.  As the party resisting discovery,

24  TP-Link has "the burden of showing that the discovery should be prohibited, and

25  the burden of clarifying, explaining or supporting its objections."  *Carson v.*

26  *Experian Info. Sols., Inc.*, No. 8:17-cv-02232-JVS-KESx, 2019 WL 3249617, at *2

27  (C.D. Cal. Apr. 19, 2019).  Courts in the Central District uniformly reject non-

28  specific, conclusory objections to discovery because they fail to satisfy TP-Link's

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

burden of "clarifying, explaining, and supporting its objections." *U.S. ex rel. O'Connell*, 245 F.R.D. at 648. TP-Link cannot merely state that a request is "vague," "overly broad," or "not proportional." Rather, it must explain why, in the context of the case and the request, the request is objectionable, and to what extent it is claimed to be so.

### D.   TP-Link's Objections Based on Privilege and Confidentiality Are Not Valid.

TP-Link also objects to Request Nos. 1-3, 5-7, 9, 11-17, and 27 on grounds that the information sought is "privileged and confidential." Under Rule 34(b)(2)(C), a party objecting on grounds of "privilege" must "state whether any responsive materials are being withheld on the basis of that objection." *In re Rivera*, No. CV 16-4676 JAK (SSX), 2017 WL 5163695, at *2 (C.D. Cal. Apr. 14, 2017) ("Pursuant to the revisions to the Federal Rules effective December 1, 2015, if objections are posed, the 'objection must state whether any responsive materials are being withheld on the basis of that objection.'"). If so, that party must identify responsive documents withheld via a privilege log. FRCP 26(b)(5). TP-Link has not specified whether it withheld responsive documents on the basis of attorney-client privilege. Nor has it produced a privilege log, thus depriving Thimes the right to evaluate the basis for and validity of TP-Link's privilege claims. TP-Link must either promptly prepare a sufficiently detailed privilege log or withdraw this objection.

TP-Link's unsupported and generalized assertion that documents are "confidential" is likewise an inappropriate basis for withholding production because the parties have stipulated to a protective order. (ECF No. 133.) Substantively, the objection is also insufficient as it fails to identify what "information," or even what categories of information, are confidential, and likewise fails to explain why such information warrants protection. "[C]onclusory arguments [are] insufficient to establish requested documents are trade secrets and meritorious of confidential

status and protection." *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007)(citation omitted). To qualify for protection, TP-Link must show that the information is "trade secret or other confidential … commercial information," and it must show that it would be harmed by the disclosure of such information. *Id.* at 561.  TP-Link makes no effort to do so.

## IV.    TP-LINK'S RESPONSE TO THIMES'S SECTIONS IIIA-D

TP-Link's supplemental responses served on June 9, 2022 (Auyang Decl. Ex. C) removed the at-issue objections and renders moot the issues raised in Thimes's Sections IIIA-D.  TP-Link's supplemental responses to each request are found below.  Accordingly, Thimes should not have included Sections IIIA-D in this stipulation.

## V.    THE COURT SHOULD COMPEL TP-LINK TO PRODUCE DOCUMENTS IN RESPONSE TO EACH RFP.

### A.   RFP 1

#### 1.    Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 1:**

All COMMUNICATIONS between YOUR employees RELATING TO TSI's re-sales of YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 1:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding "YOUR wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint. TP-Link also specifically objects to this request on the grounds that the phrase "re-sales of YOUR wireless router products" renders the

1  request vague and ambiguous and otherwise calls upon TP-Link to assume facts

2  that have not been established.  TP-Link also specifically objects to this request to

3  the extent that it seeks privileged and confidential information protected from

4  disclosure by the attorney-client privilege, the attorney work-product doctrine,

5  and/or any other privilege or protection.

6      Subject to these Specific Objections, and all Objections to the Definitions

7  and Instructions, TP-Link responds that it will produce internal communications

8  during the relevant period referencing Thimes Solutions, if any, in its possession,

9  custody, or control located after a reasonable search.

10          **2.      Reasons Why the Court Should Compel Production.**

11      TP-Link states that it will produce only its internal communications

12  referencing "Thimes Solutions," but the Amazon screen name for Plaintiff was

13  actually "Universal Goods & Sales."  TP-Link has refused to state whether they

14  will search for that name as well even though that would plainly be encompassed

15  within the scope of the RFP.  Moreover, TP-Link refuses to state when it will begin

16  producing documents responsive to this Request even for those documents that it

17  previously agreed to produce in response to this Request.

18          **3.      TP-Link's Response: TP-Link's Supplemental Response to**

19              **Request No. 1 Moots Any Dispute.**

20      On June 9, 2022, TP-Link served the following supplemental response

21  removing objections and stating that it will produce documents (including

22  documents referencing Universal Goods & Sales) within three weeks:

23          TP-Link responds that it will produce internal
            communications during the relevant period referencing
24          Thimes Solutions and Universal Goods & Sales, if any,
            in its possession, custody, or control located after a
25          reasonable search.  TP-Link will produce documents
            within three weeks.
26

27  (Auyang Decl. Exhibit C - pages 17-18).  TP-Link's supplemental response moots

28  any dispute.

### B.   RFP 2

#### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 2:**

All COMMUNICATIONS between YOUR employees RELATING TO YOUR decision to use AMAZZIA to monitor authorized sales of YOUR wireless router products on Amazon.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 2:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding "YOUR wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint.  TP-Link also specifically objects to this request on the grounds that the phrase "authorized sales of YOUR wireless router products" renders the request vague and ambiguous and otherwise calls upon TP-Link to assume facts that have not been established.    TP-Link also specifically objects to this request to the extent that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege or protection.

Subject to these Specific Objections, and all Objections to the Definitions and Instructions, TP-Link responds that it will produce internal communications during the relevant period referencing Thimes Solutions, if any, in its possession, custody, or control located after a reasonable search.

#### 2.   Reasons Why the Court Should Compel Production.

TP-Link's response does not agree to produce documents responsive to this Request at all, which plainly seeks the production of relevant documents to this

- 15 -

lawsuit.  With respect to its objection that the term "authorized sales of YOUR wireless router products" renders the request vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at \*2 (C.D. Cal. Feb. 22, 2013).

Furthermore, TP-Link states that it will produce only its internal communications referencing "Thimes Solutions," but the Amazon screen name for Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state whether they will search for that name as well even though that would clearly be encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

**3.    TP-Link's Response: TP-Link's Supplemental Response to Request No. 2 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims.**

On June 9, 2022, TP-Link served the following supplemental response removing objections and stating that it will produce documents (including documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce internal communications during the relevant period referencing Thimes Solutions and Universal Goods & Sales, if any, in its possession, custody, or control located after a reasonable search.  TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 18-19).

Thimes Rule 37-1 Letter failed to provide any legal support or substantive explanation why this request is relevant to Thimes's limited state law claims. Auyang Decl. Exhibit A - pages 5 (stating "TP-Link's response—that it would

1   produce internal communications referencing Thimes Solutions—also fails to

2   comply with the request, which seeks TP-Link's internal communications relating

3   to the decision to use Amazzia to monitor sales of TP-Link's wireless products on

4   Amazon.").

5        Likewise, Thimes's only justification in this stipulation—boilerplate

6   language that this request is relevant because it "plainly seeks the production of

7   relevant documents to this lawsuit"—is insufficient.

8        Thimes fails to provide any legal support why this request is relevant to the

9   elements for tortious interference with existing and prospective business

10  relationships or trade libel, which focus on TP-Link's alleged actions towards

11  Thimes and not towards unrelated third parties, including TP-Link's decision as to

12  why it retained Amazzia.

13       Notably, Thimes explained to the Court the "factual and legal issues" for its

14  state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

15  Amazon policy called for the expulsion of the third-party seller reported for

16  counterfeiting but not for trademark infringement; (3) whether destroyed storefronts

17  can recover damages and, if so, under what theories and showing; (4) whether

18  Section 349-b of New York's General Business Law, prohibiting manufacturers

19  from disclaiming new product warranties, applies here; (4) whether the 9th Circuit

20  permits a trademark infringement claim based on differences in warranties; (5)

21  whether, assuming there could be a trademark infringement based upon differences

22  in new product warranties, Amazon would have take [*sic*] action against an alleged

23  infringer; and (6) whether the fact that Amazon would not take such action is the

24  very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No.

25  64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis

26  why these "factual and legal issues" are relevant or proportional to this request.

27       Instead, while Thimes seeks overbroad discovery from TP-Link, it has

28  inexplicably failed to seek what it represents as "critical" information from

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

## C.   RFP 3

### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 3:**

All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO TSI's re-sales of YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 3:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding "YOUR wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint. TP-Link also specifically objects to this request on the grounds that the phrase "re-sales of YOUR wireless router products" renders the request vague and ambiguous and otherwise calls upon TP-Link to assume facts that have not been established.  TP-Link also specifically objects to this request to the extent that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege or protection.

Subject to these Specific Objections, and all Objections to the Definitions

and Instructions, TP-Link responds that it will produce communications sent to or received from Amazzia during the relevant period referencing Thimes Solutions, if any, in its possession, custody, or control located after a reasonable search.

### 2. Reasons Why the Court Should Compel Production.

TP-Link again states that it will produce only communications referencing "Thimes Solutions," but the Amazon screen name for Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state whether they will search for that name as well even though that would clearly be encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

### 3. TP-Link's Response: TP-Link's Supplemental Response to Request No. 3 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims.

On June 9, 2022, TP-Link served the following supplemental response removing objections and stating that it will produce documents (including documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce communications sent to or received from Amazzia during the relevant period referencing Thimes Solutions and Universal Goods & Sales, if any, in its possession, custody, or control located after a reasonable search.  TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 19-20).  TP-Link's supplemental response moots any dispute.

### D. RFP 4

### 1. Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 4:**

All COMMUNICATIONS YOU sent to or received from Amazon.com, Inc. or Amazon Services LLC RELATING TO TSI's re-sales of YOUR wireless router

1    products.

2    **OBJECTIONS AND RESPONSE TO REQUEST NO. 4:**

3        TP-Link specifically objects to this request on the grounds that it is vague,

4    ambiguous, overly broad and not proportional to the needs of the case based on the

5    overly broad definition of the term "RELATING TO" as used in the request.  TP-

6    Link further specifically objects to this request on the grounds that it seeks

7    production of documents not relevant to any claim to the extent that it seeks

8    discovery regarding "YOUR wireless router products," a term which is not defined

9    in the document requests and not identified as a relevant product market in the

10   Fourth Amended Complaint.  TP-Link also specifically objects to this request on

11   the grounds that the phrase "re-sales of YOUR wireless router products" renders the

12   request vague and ambiguous and otherwise calls upon TP-Link to assume facts

13   that have not been established.

14       Subject to these Specific Objections, and all Objections to the Definitions

15   and Instructions, TP-Link responds that it will produce communications sent to or

16   received from Amazon.com, Inc. or Amazon Services LLC during the relevant

17   period referencing Thimes Solutions, if any, in its possession, custody, or control

18   located after a reasonable search.

19                **2.      Reasons Why the Court Should Compel Production.**

20       TP-Link again states that it will produce only communications referencing

21   "Thimes Solutions," but the Amazon screen name for Plaintiff was actually

22   "Universal Goods & Sales."  TP-Link has refused to state whether they will search

23   for that name as well even though that would clearly be encompassed within the

24   scope of the RFP.  Moreover, TP-Link refuses to state when it will begin producing

25   documents responsive to this Request even for those documents that it previously

26   agreed to produce in response to this Request.

27

28

**3.** **TP-Link's Response: TP-Link's Supplemental Response to Request No. 4 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims.**

On June 9, 2022, TP-Link served the following supplemental response removing objections and stating that it will produce documents (including documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce communications sent to or received from Amazon.com, Inc. or Amazon Services LLC during the relevant period referencing Thimes Solutions and Universal Goods & Sales, if any, in its possession, custody, or control located after a reasonable search.  TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 20-21).  TP-Link's supplemental response moots any dispute.

## E.   RFP 5

**1.** **Plaintiff's Request and TP-Link's Response.**

**REQUEST NO. 5:**

All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO "non-compliant sellers" of YOUR wireless router products, as that term is used in the Amazon Brand Protection Agreement(s) between YOU and AMAZZIA.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 5:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it is not limited in scope to TSI or any product market alleged in the Fourth Amended Complaint.

1    TP-Link further specifically objects to this request on the grounds that it seeks

2    production of documents not relevant to any claim to the extent that it seeks

3    discovery regarding "YOUR wireless router products," a term which is not defined

4    in the document requests and not identified as a relevant product market in the

5    Fourth Amended Complaint.  TP-Link also specifically objects to this request on

6    the grounds that the request appears to make use of confidential, non-public

7    materials, obtained by plaintiff and/or plaintiff's counsel outside the scope of

8    discovery in this matter.  TP-Link also specifically objects to this request to the

9    extent that it seeks privileged and confidential information protected from

10   disclosure by the attorney-client privilege, the attorney work-product doctrine,

11   and/or any other privilege or protection.

12       Subject to these Specific Objections, and all Objections to the Definitions

13   and Instructions, TP-Link responds that it will produce communications sent to or

14   received from Amazzia during the relevant period referencing Thimes Solutions, if

15   any, in its possession, custody, or control located after a reasonable search.

16                    **2.      Reasons Why the Court Should Compel Production.**

17       TP-Link's response does not agree to produce documents responsive to this

18   Request at all, which plainly seeks the production of relevant documents to this

19   lawsuit.  Given TP-Link's conduct towards Thimes, it is certainly important to

20   know whether TP-Link indiscriminately targeted any "unauthorized" Amazon

21   reseller of its wireless router products, or whether TP-Link actually did any

22   investigation to see whether some re-sellers were selling authentic goods versus

23   counterfeit goods before asking Amazzia to target them for de-listing.

24       With respect to its objection that the term "authorized sales of YOUR

25   wireless router products" renders the request vague and ambiguous, that assertion

26   fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by

27   demonstrating that more tools beyond mere reason and common sense are

28   necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp.*

1  *v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D.
2  Cal. Feb. 22, 2013).

3        TP-Link also objects on the grounds that Thimes "appears to make use of
4  confidential, nonpublic materials, obtained by plaintiff and/or plaintiff's counsel
5  outside the scope of discovery in this matter." Thimes, however, did not obtain any
6  confidential, nonpublic materials from anywhere. It was TP-Link that voluntarily
7  made public the Amazon Brand Protection Agreement in February 2019 in the
8  *Careful Shopper, LLC* matter pending in the Eastern District of New York, No.
9  1:18-cv-03019-RJD-RML, attached as an exhibit to the supplemental declaration of
10  Kevin Ryu in support of TP-Link's motion to dismiss (ECF No. 35-1). Even if TP-
11  Link had not voluntarily disclosed that agreement publicly, there is no authority
12  suggesting that a requesting party's reliance on "nonpublic materials" is a proper
13  basis for the responding party to resist production of responsive documents.

14        Furthermore, TP-Link states that it will produce only its internal
15  communications referencing "Thimes Solutions," but the Amazon screen name for
16  Plaintiff was actually "Universal Goods & Sales." TP-Link has refused to state
17  whether they will search for that name as well even though that would clearly be
18  encompassed within the scope of the RFP. Moreover, TP-Link refuses to state
19  when it will begin producing documents responsive to this Request even for those
20  documents that it previously agreed to produce in response to this Request.

21        **3.**     **TP-Link's Response: TP-Link's Supplemental Response to**
22               **Request No. 5 Both Moots Thimes's Issues and Is Adequate in**
23               **View of the Limited State Law Claims.**

24        On June 9, 2022, TP-Link served the following supplemental response
25  removing objections and stating that it will produce documents (including
26  documents referencing Universal Goods & Sales) within three weeks:

27           TP-Link responds that it will produce communications
         sent to or received from Amazzia during the relevant
28           period referencing Thimes Solutions and Universal

Goods & Sales, if any, in its possession, custody, or control located after a reasonable search.  TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 21-22).

Thimes Rule 37-1 Letter failed to provide any legal support or substantive explanation why this request is relevant to Thimes's limited state law claims. Auyang Decl. Exhibit A - page 6 (stating "TP-Link's response—that it would produce 'communications sent to or received from Amazzia during the relevant period referencing Thimes Solutions'—does not comport with Thimes' request, which seeks communications TP-Link exchanged with Amazzia regarding 'non-compliant sellers' of TP-Link's wireless router products.  There's no basis for TP-Link to limit the scope of the request to documents referencing Thimes.")

Likewise, Thimes's justification in this stipulation—that this request is relevant because it "plainly seeks the production of relevant documents to this lawsuit" to determine TP-Link's conduct towards other unrelated third parties—is insufficient.

Thimes fails to provide any legal support why this request is relevant to the elements for tortious interference with existing and prospective business relationships or trade libel, which focus on TP-Link's alleged actions towards Thimes and not towards unrelated third parties, including other alleged "non-compliant sellers."

Notably, Thimes explained to the Court the "factual and legal issues" for its state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether Amazon policy called for the expulsion of the third-party seller reported for counterfeiting but not for trademark infringement; (3) whether destroyed storefronts can recover damages and, if so, under what theories and showing; (4) whether Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5)

whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No. 64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has inexplicably failed to seek what it represents as "critical" information from Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id.* at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

## F.   RFP 6

### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 6:**

All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO "the cleanup project," as that term is used in the Amazon Brand Protection Agreement(s) between YOU and AMAZZIA.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 6:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it is not limited

1   in scope to Thimes Solutions or any product market alleged in the Fourth Amended

2   Complaint.  TP-Link also specifically objects to this request on the grounds that the

3   request appears to make use of confidential, non-public materials, obtained by

4   plaintiff and/or plaintiff's counsel outside the scope of discovery in this matter.  TP-

5   Link also specifically objects to this request to the extent that it seeks privileged

6   and confidential information protected from disclosure by the attorney client

7   privilege, the attorney work-product doctrine, and/or any other privilege or

8   protection.

9          Subject to these Specific Objections, and all Objections to the Definitions

10  and Instructions, TP-Link responds that it will produce communications sent to or

11  received from Amazzia during the relevant period referencing Thimes Solutions, if

12  any, in its possession, custody, or control located after a reasonable search.

13              **2.      Reasons Why the Court Should Compel Production.**

14         TP-Link's response does not agree to produce documents responsive to this

15  Request at all – "the cleanup project" is what TP-Link and Amazzia called their

16  shared goal of removing Thimes from Amazon.  To the extent that term could refer

17  to other re-sellers, it is certainly important to know whether TP-Link

18  indiscriminately targeted any "unauthorized" Amazon reseller of its wireless router

19  products, or whether TP-Link actually did any investigation to see whether some re-

20  sellers were selling authentic goods versus counterfeit goods before asking

21  Amazzia to target them for de-listing.

22         TP-Link also objects on the grounds that Thimes "appears to make use of

23  confidential, nonpublic materials, obtained by plaintiff and/or plaintiff's counsel

24  outside the scope of discovery in this matter."  Thimes, however, did not obtain any

25  confidential, nonpublic materials from anywhere.  It was TP-Link that voluntarily

26  made public the Amazon Brand Protection Agreement in February 2019 in the

27  *Careful Shopper, LLC* matter pending in the Eastern District of New York, No.

28  1:18-cv-03019-RJD-RML, attached as an exhibit to the supplemental declaration of

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

1  Kevin Ryu in support of TP-Link's motion to dismiss (ECF No. 35-1). Even if TP-

2  Link had not voluntarily disclosed that agreement publicly, there is no authority

3  suggesting that a requesting party's reliance on "nonpublic materials" is a proper

4  basis for the responding party to resist production of responsive documents.

5      Furthermore, TP-Link states that it will produce only its internal

6  communications referencing "Thimes Solutions," but the Amazon screen name for

7  Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state

8  whether they will search for that name as well even though that would clearly be

9  encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state

10  when it will begin producing documents responsive to this Request even for those

11  documents that it previously agreed to produce in response to this Request.

12      **3.  TP-Link's Response: TP-Link's Supplemental Response to**

13      **Request No. 6 Both Moots Thimes's Issues and Is Adequate in**

14      **View of the Limited State Law Claims.**

15      On June 9, 2022, TP-Link served the following supplemental response

16  removing objections and stating that it will produce documents (including

17  documents referencing Universal Goods & Sales) within three weeks:

18          TP-Link responds that it will produce communications

19          sent to or received from Amazzia during the relevant
        period referencing Thimes Solutions and Universal

20          Goods & Sales, if any, in its possession, custody, or
        control located after a reasonable search.  TP-Link will

21          produce documents within three weeks.

22  (Auyang Decl. Exhibit C - pages 22-23).

23      Thimes Rule 37-1 Letter failed to provide any legal support or substantive

24  explanation why this request is relevant to Thimes's limited state law claims, rather

25  Thimes admits that the focus of this request is the dismissed antitrust claims:

26          All of these requests [Nos. 6-10 and 14] are relevant to
        Thimes's allegations that **Defendants conspired to**

27          **eliminate Thimes and other re-sellers offering TP-**
        **Link's WLAN products below the manufacturer's**

28          **minimum advertised price from Amazon**.

Auyang Decl. Exhibit A - page 6 (emphasis added).

Thimes's only justification is this stipulation is that this request is relevant because of the allegation that "'the cleanup project' is what TP-Link and Amazzia called their shared goal of removing Thimes from Amazon" and therefore discovery should also extend to third parties.

Thimes fails to provide any legal support why this request is relevant to the elements for tortious interference with existing and prospective business relationships or trade libel, which focus on TP-Link's alleged actions towards Thimes and not towards unrelated third parties, including the scope of any agreement between TP-Link and Amazzia.

Notably, Thimes explained to the Court the "factual and legal issues" for its state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether Amazon policy called for the expulsion of the third-party seller reported for counterfeiting but not for trademark infringement; (3) whether destroyed storefronts can recover damages and, if so, under what theories and showing; (4) whether Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No. 64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it inexplicably failed to seek what it represents as "critical" information from Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . .

information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

### G.  RFP 7

#### 1.  Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 7:**

All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO re-sellers of YOUR wireless router products on the Amazon Marketplace.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 7:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding "YOUR wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint.  TP-Link also specifically objects to this request on the grounds that the phrase "re-sellers of YOUR wireless router products" renders the request vague and ambiguous and otherwise calls upon TP-Link to assume facts that have not been established.  TP-Link also specifically objects to this request to the extent that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege or protection.

Subject to these Specific Objections, and all Objections to the Definitions and Instructions, TP-Link responds that it will produce communications sent to or

1  received from Amazzia during the relevant period referencing Thimes Solutions, if

2  any, in its possession, custody, or control located after a reasonable search.

3        **2.        Reasons Why the Court Should Compel Production.**

4        TP-Link's response does not agree to produce documents responsive to this

5  Request at all, which plainly seeks the production of relevant documents to this

6  lawsuit.  Given TP-Link's conduct towards Thimes, it is certainly important to

7  know whether TP-Link indiscriminately targeted any "unauthorized" Amazon

8  reseller of its wireless router products, or whether TP-Link actually did any

9  investigation to see whether some re-sellers were selling authentic goods versus

10  counterfeit goods before asking Amazzia to target them for de-listing.

11        With respect to its objection that the term "authorized sales of YOUR

12  wireless router products" renders the request vague and ambiguous, that assertion

13  fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by

14  demonstrating that more tools beyond mere reason and common sense are

15  necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp.*

16  *v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D.

17  Cal. Feb. 22, 2013).

18        Furthermore, TP-Link states that it will produce only its internal

19  communications referencing "Thimes Solutions," but the Amazon screen name for

20  Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state

21  whether they will search for that name as well even though that would clearly be

22  encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state

23  when it will begin producing documents responsive to this Request even for those

24  documents that it previously agreed to produce in response to this Request.

25        **3.        TP-Link's Response: TP-Link's Supplemental Response to**

26        **Request No. 7 Both Moots Thimes's Issues and Is Adequate in**

27        **View of the Limited State Law Claims.**

28  On June 9, 2022, TP-Link served the following supplemental response

removing objections and stating that it will produce documents (including

documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce communications
> sent to or received from Amazzia during the relevant
> period referencing Thimes Solutions and Universal
> Goods & Sales, if any, in its possession, custody, or
> control located after a reasonable search.  TP-Link will
> produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 23-24).

Thimes Rule 37-1 Letter failed to provide any legal support or substantive

explanation why this request is relevant to Thimes's limited state law claims, rather

Thimes admits that the focus of this request is the dismissed antitrust claims:

> All of these requests [Nos. 6-10 and 14] are relevant to
> Thimes's allegations that **Defendants conspired to
> eliminate Thimes and other re-sellers offering TP-
> Link's WLAN products below the manufacturer's
> minimum advertised price from Amazon**.

Auyang Decl. Exhibit A - page 6 (emphasis added).

Thimes's only justification is this stipulation—boilerplate language that this

request is relevant because it "plainly seeks the production of relevant documents to

this lawsuit" as to TP-Link's conduct towards other unrelated third parties—is

insufficient.

Thimes fails to provide any legal support why this request is relevant to the

elements for tortious interference with existing and prospective business

relationships or trade libel, which focus on TP-Link's alleged actions towards

Thimes and not towards unrelated third parties, including other re-sellers.

Notably, Thimes explained to the Court the "factual and legal issues" for its

state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

Amazon policy called for the expulsion of the third-party seller reported for

counterfeiting but not for trademark infringement; (3) whether destroyed storefronts

can recover damages and, if so, under what theories and showing; (4) whether

Section 349-b of New York's General Business Law, prohibiting manufacturers

from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No. 64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has inexplicably failed to seek what it represents as "critical" information from Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").   Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

### H.   RFP 8

#### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 8:**

All COMMUNICATIONS YOU sent to or received from Amazon.com, Inc. or Amazon Services LLC RELATING TO re-sellers of YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 8:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request. TP-Link further specifically objects to this request on the grounds that it seeks

1   production of documents not relevant to any claim to the extent that it seeks

2   discovery regarding "YOUR wireless router products," a term which is not defined

3   in the document requests and not identified as a relevant product market in the

4   Fourth Amended Complaint. TP-Link also specifically objects to this request on the

5   grounds that the phrase "re-sellers of YOUR wireless router products" renders the

6   request vague and ambiguous and otherwise calls upon TP-Link to assume facts

7   that have not been established.

8        Subject to these Specific Objections, and all Objections to the Definitions

9   and Instructions, TP-Link responds that it will produce communications sent to or

10  received from Amazon.com, Inc. or Amazon Services LLC during the relevant

11  period referencing Thimes Solutions, if any, in its possession, custody, or control

12  located after a reasonable search.

13        **2.      Reasons Why the Court Should Compel Production.**

14        TP-Link's response does not agree to produce documents responsive to this

15  Request at all, which plainly seeks the production of relevant documents to this

16  lawsuit.  Given TP-Link's conduct towards Thimes, it is certainly important to

17  know whether TP-Link indiscriminately targeted any "unauthorized" Amazon

18  reseller of its wireless router products, or whether TP-Link actually did any

19  investigation to see whether some re-sellers were selling authentic goods versus

20  counterfeit goods before asking Amazzia to target them for de-listing.

21        With respect to its objection that the term "authorized sales of YOUR

22  wireless router products" renders the request vague and ambiguous, that assertion

23  fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by

24  demonstrating that more tools beyond mere reason and common sense are

25  necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp.*

26  *v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D.

27  Cal. Feb. 22, 2013).

28        Furthermore, TP-Link states that it will produce only its internal

- 33 -

1    communications referencing "Thimes Solutions," but the Amazon screen name for

2    Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state

3    whether they will search for that name as well even though that would clearly be

4    encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state

5    when it will begin producing documents responsive to this Request even for those

6    documents that it previously agreed to produce in response to this Request.

7         **3.**     **TP-Link's Response: TP-Link's Supplemental Response to**

8              **Request No. 8 Both Moots Thimes's Issues and Is Adequate in**

9              **View of the Limited State Law Claims.**

10         On June 9, 2022, TP-Link served the following supplemental response

11    removing objections and stating that it will produce documents (including

12    documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce communications
> sent to or received from Amazon.com, Inc. or Amazon
> Services LLC during the relevant period referencing
> Thimes Solutions and Universal Goods & Sales, if any,
> in its possession, custody, or control located after a
> reasonable search.  TP-Link will produce documents
> within three weeks.

17    (Auyang Decl. Exhibit C - pages 24-25).

18         Thimes Rule 37-1 Letter failed to provide any legal support or substantive

19    explanation why this request is relevant to Thimes's limited state law claims, rather

20    Thimes admits that the focus of this request is the dismissed antitrust claims:

> All of these requests [Nos. 6-10 and 14] are relevant to
> Thimes's allegations that **Defendants conspired to**
> **eliminate Thimes and other re-sellers offering TP-**
> **Link's WLAN products below the manufacturer's**
> **minimum advertised price from Amazon**.

24    Auyang Decl. Exhibit A - page 6 (emphasis added).

25         Thimes's only justification is this stipulation—boilerplate language that this

26    request is relevant because it "plainly seeks the production of relevant documents to

27    this lawsuit" broadly relating to any reseller—is insufficient.

28         Thimes fails to provide any legal support why this request is relevant to the

elements for tortious interference with existing and prospective business relationships or trade libel, which focus on TP-Link's alleged actions towards Thimes and not towards unrelated third parties, including other re-sellers.

Notably, Thimes explained to the Court the "factual and legal issues" for its state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether Amazon policy called for the expulsion of the third-party seller reported for counterfeiting but not for trademark infringement; (3) whether destroyed storefronts can recover damages and, if so, under what theories and showing; (4) whether Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No. 64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has inexplicably failed to seek what it represents as "critical" information from Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

I.   **RFP 9**

1.   **Plaintiff's Request and TP-Link's Response.**

**REQUEST NO. 9:**

All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO YOUR minimum advertised price for YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 9:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request. TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding "YOUR wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint. TP-Link also specifically objects to this request to the extent that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege or protection.

Subject to these Specific Objections, and all Objections to the Definitions and Instructions, TP-Link responds that it will produce communications sent to or received from Amazzia during the relevant period referencing any minimum advertised price for the TP-Link wireless routers identified in the Fourth Amended Complaint, if any, in its possession, custody, or control located after a reasonable search.

2.   **Reasons Why the Court Should Compel Production.**

TP-Link's response artificially limits its production to the minimum advertised price for its wireless routers that Plaintiff specifically identified in its complaint.  But there's no rationale as to why such a limitation is appropriate.  TP-

1  Link's criterion for deciding whether one of its products being re-sold on Amazon

2  was "counterfeit" was largely whether the product was being sold under the

3  minimum advertised price (since authorized distributors were not permitted to sell

4  below that price).  Given TP-Link's conduct towards Thimes, these documents

5  could show whether TP-Link indiscriminately targeted any "unauthorized" Amazon

6  reseller of its wireless router products, or whether TP-Link actually did any

7  investigation to see whether some re-sellers were selling authentic goods versus

8  counterfeit goods before asking Amazzia to target them for de-listing.

9      With respect to its objection that the term "authorized sales of YOUR

10  wireless router products" renders the request vague and ambiguous, that assertion

11  fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by

12  demonstrating that more tools beyond mere reason and common sense are

13  necessary to attribute ordinary definitions to terms and phrases."  *Local.com Corp.*

14  *v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D.

15  Cal. Feb. 22, 2013).  Plaintiff also notes that TP-Link's response acknowledges that

16  it knows what its wireless router products are given that it offered to produce

17  documents related to the specific products identified by Plaintiff in its complaint.

18      Moreover, TP-Link refuses to state when it will begin producing documents

19  responsive to this Request even for those documents that it previously agreed to

20  produce in response to this Request.

21      **3.     TP-Link's Response: Request No. 9 is Overbroad in View of**

22          **the Limited State Law Claims.**

23      On June 9, 2022, TP-Link served the following supplemental response

24  stating that this request relates to Plaintiff's dismissed antitrust claims:

25          TP-Link specifically objects to this request on the
           grounds that it is vague, ambiguous, overly broad and not
26          proportional to the needs of the case based on the limited
           state law claims; rather, this request relates to Plaintiff's
27          now-dismissed antitrust claims.  TP-Link will not
           respond to this request.
28

1   (Auyang Decl. Exhibit C - pages 25-26).

2         Thimes Rule 37-1 Letter failed to provide any legal support or substantive

3   explanation why this request is relevant to Thimes's limited state law claims, rather

4   Thimes admits that the focus of this request is the dismissed antitrust claims:

5             All of these requests [Nos. 6-10 and 14] are relevant to
              Thimes's allegations that **Defendants conspired to**
6             **eliminate Thimes and other re-sellers offering TP-**
              **Link's WLAN products below the manufacturer's**
7             **minimum advertised price from Amazon**.

8   Auyang Decl. Exhibit A - page 6 (emphasis added).

9         Thimes's justification in this stipulation as to relevance is based on the

10  unsupported contention that "TP-Link's criterion for deciding whether one of its

11  products being re-sold on Amazon was "counterfeit" was largely whether the

12  product was being sold under the minimum advertised price (since authorized

13  distributors were not permitted to sell below that price)."  Even if this were accurate

14  (which it is not), this request seeking "All COMMUNICATIONS YOU sent to or

15  received from AMAZZIA RELATING TO YOUR minimum advertised price for

16  YOUR wireless router products" is clearly overbroad in view of the limited state

17  law claims, as is Thimes's reasoning that TP-Link's conduct towards other

18  unrelated third parties is relevant.

19        Thimes fails to provide any legal support why this request is relevant to the

20  elements for tortious interference with existing and prospective business

21  relationships or trade libel, which focus on TP-Link's alleged actions towards

22  Thimes and not towards unrelated third parties, including any minimum advertised

23  price.

24        Notably, Thimes explained to the Court the "factual and legal issues" for its

25  state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

26  Amazon policy called for the expulsion of the third-party seller reported for

27  counterfeiting but not for trademark infringement; (3) whether destroyed storefronts

28  can recover damages and, if so, under what theories and showing; (4) whether

Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting." ECF No. 64 (Thimes Notice of Related Cases) at 5-6. Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it inexplicably failed to seek what it represents as "critical" information from Amazon. ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

### J.    RFP 10

#### 1.    Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 10:**

All COMMUNICATIONS YOU sent to or received from Amazon.com, Inc. or Amazon Services LLC RELATING TO YOUR minimum advertised price for YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 10:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request. TP-

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

1  Link further specifically objects to this request on the grounds that it seeks

2  production of documents not relevant to any claim to the extent that it seeks

3  discovery regarding "YOUR wireless router products," a term which is not defined

4  in the document requests and not identified as a relevant product market in the

5  Fourth Amended Complaint.

6      Subject to these Specific Objections, and all Objections to the Definitions

7  and Instructions, TP-Link responds that it will produce communications sent to or

8  received from Amazon.com, Inc. or Amazon Services LLC during the relevant

9  period referencing any minimum advertised price for the TP-Link wireless routers

10  identified in the Fourth Amended Complaint, if any, in its possession, custody, or

11  control located after a reasonable search.

12         **2.      Reasons Why the Court Should Compel Production.**

13      TP-Link's response artificially limits its production to the minimum

14  advertised price for its wireless routers that Plaintiff specifically identified in its

15  complaint.  But there's no rationale as to why such a limitation is appropriate.  TP-

16  Link's criterion for deciding whether one of its products being re-sold on Amazon

17  was "counterfeit" was largely whether the product was being sold under the

18  minimum advertised price (since authorized distributors were not permitted to sell

19  below that price).  Given TP-Link's conduct towards Thimes, these documents

20  could show whether TP-Link indiscriminately targeted any "unauthorized" Amazon

21  reseller of its wireless router products, or whether TP-Link actually did any

22  investigation to see whether some re-sellers were selling authentic goods versus

23  counterfeit goods before asking Amazzia to target them for de-listing.

24      With respect to its objection that the term "authorized sales of YOUR

25  wireless router products" renders the request vague and ambiguous, that assertion

26  fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by

27  demonstrating that more tools beyond mere reason and common sense are

28  necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp.*

1   *v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D.

2   Cal. Feb. 22, 2013).  Plaintiff also notes that TP-Link's response acknowledges that

3   it knows what its wireless router products are given that it offered to produce

4   documents related to the specific products identified by Plaintiff in its complaint.

5     Moreover, TP-Link refuses to state when it will begin producing documents

6   responsive to this Request even for those documents that it previously agreed to

7   produce in response to this Request.

8      **3.  TP-Link's Response: Request No. 10 is Overbroad in View**

9        **of the Limited State Law Claims.**

10     On June 9, 2022, TP-Link served the following supplemental response

11   stating that this request relates to Plaintiff's dismissed antitrust claims:

12       TP-Link specifically objects to this request on the
    grounds that it is vague, ambiguous, overly broad and not

13       proportional to the needs of the case based on the limited
    state law claims; rather, this request relates to Plaintiff's

14       now-dismissed antitrust claims.  TP-Link will not
    respond to this request.

15

16   (Auyang Decl. Exhibit C - pages 26-27).

17     Thimes Rule 37-1 Letter failed to provide any legal support or substantive

18   explanation why this request is relevant to Thimes's limited state law claims, rather

19   Thimes admits that the focus of this request is the dismissed antitrust claims:

20       All of these requests [Nos. 6-10 and 14] are relevant to
    Thimes's allegations that **Defendants conspired to**

21       **eliminate Thimes and other re-sellers offering TP-
    Link's WLAN products below the manufacturer's**

22       **minimum advertised price from Amazon**.

23   Auyang Decl. Exhibit A - page 6 (emphasis added).

24     Thimes's justification in this stipulation as to relevance is based on the

25   unsupported contention that "TP-Link's criterion for deciding whether one of its

26   products being re-sold on Amazon was "counterfeit" was largely whether the

27   product was being sold under the minimum advertised price (since authorized

28   distributors were not permitted to sell below that price)."  Even if this were accurate

(which it is not), this request seeking "All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO YOUR minimum advertised price for YOUR wireless router products" is clearly overbroad in view of the limited state law claims, as is Thimes's reasoning that TP-Link's conduct towards other unrelated third parties is relevant.

Thimes fails to provide any legal support why this request is relevant to the elements for tortious interference with existing and prospective business relationships or trade libel, which focus on TP-Link's alleged actions towards Thimes and not towards unrelated third parties, including any minimum advertised price.

Notably, Thimes explained to the Court the "factual and legal issues" for its state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether Amazon policy called for the expulsion of the third-party seller reported for counterfeiting but not for trademark infringement; (3) whether destroyed storefronts can recover damages and, if so, under what theories and showing; (4) whether Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting." ECF No. 64 (Thimes Notice of Related Cases) at 5-6. Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it inexplicably failed to seek what it represents as "critical" information from Amazon. ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . .

- 42 -

information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum

## K.   RFP 11

### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 11:**

All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO complaints AMAZZIA filed to Amazon.com, Inc. or Amazon Services LLC RELATING TO YOUR wireless router products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 11:**

TP-Link specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs of the case based on the overly broad definition of the term "RELATING TO" as used in the request.  TP-Link further specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding "YOUR wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint.  TP-Link also specifically objects to this request to the extent that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege or protection.

Subject to these Specific Objections, and all Objections to the Definitions and Instructions, TP-Link responds that it will produce communications sent to or received from Amazzia during the relevant period referencing Thimes Solutions, if any, in its possession, custody, or control located after a reasonable search.

### 2.     Reasons Why the Court Should Compel Production.

TP-Link's response artificially limits its production to the minimum advertised price for its wireless routers that Plaintiff specifically identified in its complaint.  But there's no rationale as to why such a limitation is appropriate.  TP-Link's criterion for deciding whether one of its products being re-sold on Amazon was "counterfeit" was largely whether the product was being sold under the minimum advertised price (since authorized distributors were not permitted to sell below that price).  Given TP-Link's conduct towards Thimes, these documents could show whether TP-Link indiscriminately targeted any "unauthorized" Amazon reseller of its wireless router products, or whether TP-Link actually did any investigation to see whether some re-sellers were selling authentic goods versus counterfeit goods before asking Amazzia to target them for de-listing.

With respect to its objection that the term "authorized sales of YOUR wireless router products" renders the request vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).  Plaintiff also notes that TP-Link's response acknowledges that it knows what its wireless router products are given that it offered to produce documents related to the specific products identified by Plaintiff in its complaint.

Moreover, TP-Link refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

### 3.     TP-Link's Response: TP-Link's Supplemental Response to Request No. 11 Both Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims.

On June 9, 2022, TP-Link served the following supplemental response

removing objections and stating that it will produce documents (including documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce communications sent to or received from Amazzia during the relevant period referencing Thimes Solutions and Universal Goods & Sales, if any, in its possession, custody, or control located after a reasonable search. TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 27-28).

Thimes Rule 37-1 Letter failed to provide any legal support or substantive explanation why this request is relevant to Thimes's limited state law claims, rather Thimes admits that the focus of this request is the dismissed antitrust claims: "These requests are relevant to Thimes's allegations that Defendants abused Amazon's infringement notice process to eliminate TP-Link's competitors on Amazon." Auyang Decl. Exhibit A - page 6. Indeed, Thimes argues in the stipulation that this request relates to the minimum advertised price: "TP-Link's response artificially limits its production to the minimum advertised price for its wireless routers that Plaintiff specifically identified in its complaint."

Thimes's justification in this stipulation as to relevance is based on the unsupported contention that "TP-Link's criterion for deciding whether one of its products being re-sold on Amazon was "counterfeit" was largely whether the product was being sold under the minimum advertised price (since authorized distributors were not permitted to sell below that price)." Even if this were accurate (which it is not), this request seeking "All COMMUNICATIONS YOU sent to or received from AMAZZIA RELATING TO complaints AMAZZIA filed to Amazon.com, Inc. or Amazon Services LLC RELATING TO YOUR wireless router products" is clearly overbroad in view of the limited state law claims, as is Thimes's reasoning that TP-Link's conduct towards other unrelated third parties is relevant.

Thimes fails to provide any legal support why this request is relevant to the

elements for tortious interference with existing and prospective business

relationships or trade libel, which focus on TP-Link's alleged actions towards

Thimes and not towards unrelated third parties, including other resellers.

Notably, Thimes explained to the Court the "factual and legal issues" for its

state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

Amazon policy called for the expulsion of the third-party seller reported for

counterfeiting but not for trademark infringement; (3) whether destroyed storefronts

can recover damages and, if so, under what theories and showing; (4) whether

Section 349-b of New York's General Business Law, prohibiting manufacturers

from disclaiming new product warranties, applies here; (4) whether the 9th Circuit

permits a trademark infringement claim based on differences in warranties; (5)

whether, assuming there could be a trademark infringement based upon differences

in new product warranties, Amazon would have take [*sic*] action against an alleged

infringer; and (6) whether the fact that Amazon would not take such action is the

very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No.

64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis

why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has

inexplicably failed to seek what it represents as "critical" information from

Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely

critically upon information as to Amazon.com's practices and policies . . .

information that must be obtained directly from Amazon."); *see also id*. at 5

("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its

Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to

backfill these deficiencies in its supplemental memorandum.

1

###### L.   RFP 12

2

###### 1.   Plaintiff's Request and TP-Link's Response.

3

**REQUEST NO. 12:**

4

All COMMUNICATIONS YOU sent to or received from AMAZZIA

5

RELATING TO Amazon.com, Inc. or Amazon Services LLC's resolution of

6

intellectual property complaints filed by manufacturers against unauthorized re-

7

sellers of those manufacturer's products.

8

**OBJECTIONS AND RESPONSE TO REQUEST NO. 12:**

9

TP-Link specifically objects to this request on the grounds that it is vague,

10

ambiguous, overly broad and not proportional to the needs of the case based on the

11

overly broad definition of the term "RELATING TO" as used in the request. TP-

12

Link further specifically objects to this request on the grounds that it seeks

13

production of documents not relevant to any claim to the extent that it is not limited

14

in scope to Thimes Solutions or any product market alleged in the Fourth Amended

15

Complaint. TP-Link also specifically objects to this request on the grounds that the

16

term "unauthorized re-sellers of those manufacturer's products" renders the request

17

vague and ambiguous and otherwise calls upon TP-Link to assume facts that have

18

not been established. TP-Link also specifically objects to this request to the extent

19

that it seeks privileged and confidential information protected from disclosure by

20

the attorney-client privilege, the attorney work-product doctrine, and/or any other

21

privilege or protection.

22

Subject to these Specific Objections, and all Objections to the Definitions

23

and Instructions, TP-Link responds that it will produce communications sent to or

24

received from Amazzia during the relevant period referencing Thimes Solutions, if

25

any, in its possession, custody, or control located after a reasonable search.

26

###### 2.   Reasons Why the Court Should Compel Production.

27

TP-Link's response artificially limits its production to documents referencing

28

Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.  It

- 47 -

is important to know whether Amazzia advised TP-Link as to how it successfully
(or unsuccessfully) resolved intellectual property complaints filed by its other
clients because such communications would show whether TP-Link deliberately set
out to accuse Plaintiff of counterfeiting given that other types of intellectual
property complaints may not have resulted in de-listing of the seller.
Counterfeiting, of course, is a very specific term and TP-Link's deliberate use of a
false term to describe Plaintiff's conduct as opposed to a more accurate term (i.e.,
that Plaintiff is merely not an authorized reseller) is relevant towards establishing
TP-Link's intentional and independently wrongful conduct for Plaintiff's economic
interference claim, as well as TP-Link's trade libel claim.

With respect to its objection that the term "authorized re-sellers of those
manufacturer's products" renders the request vague and ambiguous, that assertion
fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by
demonstrating that more tools beyond mere reason and common sense are
necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp.
v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D.
Cal. Feb. 22, 2013).

Furthermore, TP-Link states that it will produce only its internal
communications referencing "Thimes Solutions," but the Amazon screen name for
Plaintiff was actually "Universal Goods & Sales." TP-Link has refused to state
whether they will search for that name as well even though that would clearly be
encompassed within the scope of the RFP. Moreover, TP-Link refuses to state
when it will begin producing documents responsive to this Request even for those
documents that it previously agreed to produce in response to this Request.

**3.      TP-Link's Response: TP-Link's Supplemental Response to
Request No. 12 Both Moots Thimes's Issues and Is Adequate in
View of the Limited State Law Claims.**

On June 9, 2022, TP-Link served the following supplemental response

removing objections and stating that it will produce documents (including documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce communications sent to or received from Amazzia during the relevant period referencing Thimes Solutions and Universal Goods & Sales, if any, in its possession, custody, or control located after a reasonable search.  TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 28-29).

Thimes Rule 37-1 Letter failed to provide any legal support or substantive explanation why this request is relevant to Thimes's limited state law claims, rather Thimes admits that the focus of this request is the dismissed antitrust claims: "These requests are relevant to Thimes's allegations that Defendants abused Amazon's infringement notice process to eliminate TP-Link's competitors on Amazon."  Auyang Decl. Exhibit A - page 6.

Thimes's justification in this stipulation as to relevance is based on the contention about how Amazzia advised TP-Link regarding complaints as to unrelated third parties and, in particular, if Amazzia advised other clients to lodge counterfeiting[3] complaints versus other types of complaints.

Thimes fails to provide any legal support why this request is relevant to the elements for tortious interference with existing and prospective business

---

[3] Setting aside this request's lack of relevance, a product sold by an unauthorized reseller that is materially different constitutes trademark counterfeiting.  *See, e.g., Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 707-10 (9th Cir. 1999) (finding "[w]hen an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached"); *Harman Int'l Indus. Inc. v. Pro Sounds Gear, Inc.*, No. 17-cv-06650-ODW (FFMx), 2018 WL 1989518, at *4 (C.D. Cal. Apr. 24, 2018) ("Because the distinction between using a duplication verses using an original has no relevance, where, as here, there is deceptive practices so as to create consumer confusion, the product itself becomes a counterfeit." (internal quotation marks and alteration omitted)).  TP-Link does not extend warranty coverage to products sold by unauthorized resellers like Thimes, rendering such products materially different from those sold by authorized resellers.

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

relationships or trade libel, which focus on TP-Link's alleged actions towards
Thimes and not towards unrelated third parties, including other resellers.

Notably, Thimes explained to the Court the "factual and legal issues" for its
state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether
Amazon policy called for the expulsion of the third-party seller reported for
counterfeiting but not for trademark infringement; (3) whether destroyed storefronts
can recover damages and, if so, under what theories and showing; (4) whether
Section 349-b of New York's General Business Law, prohibiting manufacturers
from disclaiming new product warranties, applies here; (4) whether the 9th Circuit
permits a trademark infringement claim based on differences in warranties; (5)
whether, assuming there could be a trademark infringement based upon differences
in new product warranties, Amazon would have take [sic] action against an alleged
infringer; and (6) whether the fact that Amazon would not take such action is the
very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No.
64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis
why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has
inexplicably failed to seek what it represents as "critical" information from
Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely
critically upon information as to Amazon.com's practices and policies . . .
information that must be obtained directly from Amazon."); *see also id.* at 5
("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its
Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to
backfill these deficiencies in its supplemental memorandum.

### M.   RFP 13

#### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 13:**

All drafts of any contracts between YOU and AMAZZIA.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 13:**

TP-Link specifically objects to this request on the grounds that it is overbroad to the extent it is not limited to contractual relationships governing complaints to Amazon put at issue in the Fourth Amended Complaint. TP-Link also specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim and not proportionate to the needs of the case to the extent it requests "All drafts of any contracts." TP-Link also specifically objects to this request to the extent that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege or protection.

Subject to these Specific Objections, and all Objections to the Definitions and Instructions, TP-Link responds that it will produce relevant agreements, if any, in its possession, custody, or control located after a reasonable search.

#### 2.   Reasons Why the Court Should Compel Production.

Plaintiff is not aware of any authority permitting a party responding to discovery to restrict production of documents to what it unilaterally determines to be "relevant."  Neither apparently is TP-Link, as it has never provided any such authority.  Given that TP-Link hired Amazzia to remove re-sellers like Plaintiff from Amazon, drafts of the Defendants' agreements are relevant to show TP-Link's state of mind with respect to the aims it had towards Plaintiff and similarly situated re-sellers.

Moreover, TP-Link refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

**3.**     **TP-Link's Response: TP-Link's Supplemental Response to**

**Request No. 13 Moots Any Dispute.**

On June 9, 2022, TP-Link served the following supplemental response

removing objections and stating that it will produce documents within three weeks:

> TP-Link responds that it will produce Amazon Brand
> Protection Agreements with Amazzia during the relevant
> period in its possession, custody, or control located after
> a reasonable search.  TP-Link will produce documents
> within three weeks.

(Auyang Decl. Exhibit C - pages 29-30).  TP-Link's supplement response moots

any dispute.

**N.     RFP 14**

**1.     Plaintiff's Request and TP-Link's Response.**

**REQUEST NO. 14:**

All DOCUMENTS and COMMUNICATIONS authored by or transmitted

between YOUR employees RELATING TO unauthorized sales of YOUR wireless

router products on Amazon.com, Inc. or Amazon Services LLC.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 14:**

TP-Link specifically objects to this request on the grounds that it is vague,

ambiguous, overly broad and not proportional to the needs of the case based on the

overly broad definition of the term "RELATING TO" as used in the request. TP-

Link further specifically objects to this request on the grounds that it seeks

production of documents not relevant to any claim to the extent that it seeks

discovery regarding "YOUR wireless router products," a term which is not defined

in the document requests and not identified as a relevant product market in the

Fourth Amended Complaint. TP-Link also specifically objects to this request on the

grounds that the phrase "unauthorized sales of YOUR wireless router products"

renders the request vague and ambiguous and otherwise calls upon TP-Link to

assume facts that have not been established. TP-Link also specifically objects to

1   this request to the extent that it seeks privileged and confidential information

2   protected from disclosure by the attorney-client privilege, the attorney work-

3   product doctrine, and/or any other privilege or protection.

4          Subject to these Specific Objections, and all Objections to the Definitions

5   and Instructions, TP-Link responds that it will produce internal communications

6   during the relevant period referencing Thimes Solutions, if any, in its possession,

7   custody, or control located after a reasonable search.

8          **2.      Reasons Why the Court Should Compel Production.**

9          TP-Link's response artificially limits its production to documents referencing

10  Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.

11  Documents exchanged between TP-Link's employees regarding the subject of

12  "unauthorized" sales of its products on Amazon, by any vendor, is relevant towards

13  determining whether TP-Link genuinely believed that Plaintiff (or any other

14  vendor) was selling counterfeit goods.  Indeed, the requested documents would

15  likely reveal that TP-Link's employees fully recognized that authentic TP-Link

16  products were being re-sold by "unauthorized" sellers on Amazon and that these re-

17  sales would cut into TP-Link's profits because consumers could purchase genuine

18  TP-Link wireless router products at far lower prices, and thus TP-Link wanted to

19  look for any opportunity to eliminate Plaintiff and similar vendors from Amazon.

20  Among other things, the requested documents are relevant towards establishing TP-

21  Link's intentional and independently wrongful conduct for Plaintiff's economic

22  interference claim, as well as TP-Link's trade libel claim.

23         With respect to its objection that the terms "YOUR wireless router products"

24  or "unauthorized sales of YOUR wireless router products" renders the request

25  vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to show

26  such vagueness or ambiguity by demonstrating that more tools beyond mere reason

27  and common sense are necessary to attribute ordinary definitions to terms and

28  phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013

WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

Furthermore, TP-Link states that it will produce only its internal communications referencing "Thimes Solutions," but the Amazon screen name for Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state whether they will search for that name as well even though that would clearly be encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

**3.     TP-Link's Response: TP-Link's Supplemental Response to Request No. 14 Moots Thimes's Issues and Is Adequate in View of the Limited State Law Claims.**

On June 9, 2022, TP-Link served the following supplemental response removing objections and stating that it will produce documents (including documents referencing Universal Goods & Sales) within three weeks:

> TP-Link responds that it will produce internal communications during the relevant period referencing Thimes Solutions and Universal Goods & Sales, if any, in its possession, custody, or control located after a reasonable search.  TP-Link will produce documents within three weeks.

(Auyang Decl. Exhibit C - pages 30-31).

Thimes Rule 37-1 Letter failed to provide any legal support or substantive explanation why this request is relevant to Thimes's limited state law claims, rather Thimes admits that the focus of this request is the dismissed antitrust claims:

> All of these requests [Nos. 6-10 and 14] are relevant to Thimes's allegations that **Defendants conspired to eliminate Thimes and other re-sellers offering TP-Link's WLAN products below the manufacturer's minimum advertised price from Amazon**.

Auyang Decl. Exhibit A - page 6 (emphasis added).

Thimes's justification in this stipulation as to relevance is based on the contention that internal TP-Link documents regarding <u>any</u> unauthorized sales of

products on Amazon is relevant towards determining whether TP-Link genuinely believed that Thimes was selling counterfeit goods.

Thimes fails to provide any legal support why this request is relevant to the elements for tortious interference with existing and prospective business relationships or trade libel, which focus on TP-Link's alleged actions towards Thimes and not towards unrelated third parties, including other resellers.

Notably, Thimes explained to the Court the "factual and legal issues" for its state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether Amazon policy called for the expulsion of the third-party seller reported for counterfeiting but not for trademark infringement; (3) whether destroyed storefronts can recover damages and, if so, under what theories and showing; (4) whether Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No. 64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has inexplicably failed to seek what it represents as "critical" information from Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to

1  backfill these deficiencies in its supplemental memorandum.

2  **O.   RFP 15**

3  **1.      Plaintiff's Request and TP-Link's Response.**

4  **REQUEST NO. 15:**

5  All DOCUMENTS and COMMUNICATIONS authored by or transmitted

6  between YOUR employees RELATING TO any impact that TSI may have on

7  either the sales or profitability of YOUR wireless router products.

8  **OBJECTIONS AND RESPONSE TO REQUEST NO. 15:**

9  TP-Link specifically objects to this request on the grounds that it is vague,

10  ambiguous, overly broad and not proportional to the needs of the case based on the

11  overly broad definition of the term "RELATING TO" as used in the request. TP-

12  Link further specifically objects to this request on the grounds that it seeks

13  production of documents not relevant to any claim to the extent that it seeks

14  discovery regarding "YOUR wireless router products," a term which is not defined

15  in the document requests and not identified as a relevant product market in the

16  Fourth Amended Complaint. TP-Link also specifically objects to this request to the

17  extent that it seeks privileged and confidential information protected from

18  disclosure by the attorney-client privilege, the attorney work-product doctrine,

19  and/or any other privilege or protection.

20  Subject to these Specific Objections, and all Objections to the Definitions

21  and Instructions, TP-Link responds that it will produce internal communications

22  during the relevant period referencing Thimes Solutions, if any, in its possession,

23  custody, or control located after a reasonable search.

24  **2.      Reasons Why the Court Should Compel Production.**

25  TP-Link's response artificially limits its production to documents referencing

26  Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.

27  Documents exchanged between TP-Link's employees regarding the subject of the

28  impact of Plaintiff upon TP-Link's sales or profitability is relevant towards

1    determining whether TP-Link genuinely believed that Plaintiff was selling

2    counterfeit goods.  Indeed, the requested documents would likely reveal that TP-

3    Link's employees never once mentioned "counterfeiting" in any way in connection

4    with Plaintiff, but instead discussed how Plaintiff's re-sales of authentic TP-Link

5    products would cut into TP-Link's profits because consumers could purchase

6    genuine TP-Link wireless router products at far lower prices, and thus TP-Link

7    wanted to look for any opportunity to eliminate Plaintiff from Amazon with using a

8    counterfeiting allegation as mere pretext.  Among other things, the requested

9    documents are relevant towards establishing TP-Link's intentional and

10   independently wrongful conduct for Plaintiff's economic interference claim, as well

11   as TP-Link's trade libel claim.

12       With respect to its objection that the term "YOUR wireless router products"

13   renders the request vague and ambiguous, that assertion fails to satisfy TP-Link's

14   burden "to show such vagueness or ambiguity by demonstrating that more tools

15   beyond mere reason and common sense are necessary to attribute ordinary

16   definitions to terms and phrases."  *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-

17   0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

18       Furthermore, TP-Link states that it will produce only its internal

19   communications referencing "Thimes Solutions," but the Amazon screen name for

20   Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state

21   whether they will search for that name as well even though that would clearly be

22   encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state

23   when it will begin producing documents responsive to this Request even for those

24   documents that it previously agreed to produce in response to this Request.

25       **3.    TP-Link's Response: Request No. 15 is Overbroad in View**

26       **of the Limited State Law Claims.**

27       On June 9, 2022, TP-Link served the following supplemental response

28   stating that this request relates to Plaintiff's dismissed antitrust claims:

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

1

2   TP-Link specifically objects to this request on the
    grounds that it is vague, ambiguous, overly broad and not
3   proportional to the needs of the case based on the limited
    state law claims; rather, this request relates to Plaintiff's
4   now-dismissed antitrust claims.  TP-Link will not
    respond to this request.

5   (Auyang Decl. Exhibit C - pages 31-32).

6        Thimes Rule 37-1 Letter failed to provide any legal support or substantive

7   explanation why this request is relevant to Thimes's limited state law claims, rather

8   Thimes admits that the focus of this request is the dismissed antitrust claims:

9        Information responsive to these requests is relevant to
         Thimes's allegations that Defendants **conspired to**
10       **eliminate Thimes** from offering TP-Link's WLAN
         products below the manufacturer's minimum advertised
11       price on Amazon.  **It is also relevant to our expert's**
         **antitrust analysis on product and geographic markets**.

12  Auyang Decl. Exhibit A - pages 6-7 (emphasis added).

13       Thimes argues in the stipulation that internal TP-Link documents are relevant

14  "towards determining whether TP-Link genuinely believed that Plaintiff was selling

15  counterfeit goods" and "TP-Link wanted to look for any opportunity to eliminate

16  Plaintiff from Amazon with using a counterfeiting allegation as mere pretext."  But

17  this request asks for too much and is duplicative of at least RFP No. 1 ("All

18  COMMUNICATIONS between YOUR employees RELATING TO TSI's re-sales

19  of YOUR wireless router products").

20       Thimes fails to provide any legal support why this request is relevant to the

21  elements for tortious interference with existing and prospective business

22  relationships or trade libel, which focus on TP-Link's alleged actions towards

23  Thimes and not on any alleged impact that Thimes may have had on TP-Link's

24  sales or profitability.

25       Notably, Thimes explained to the Court the "factual and legal issues" for its

26  state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

27  Amazon policy called for the expulsion of the third-party seller reported for

28

JOINT STIP. RE: PLAINTIFF'S
MOTION TO COMPEL RE TP-LINK
CASE NO. 2:19-CV-10374-SB-E

counterfeiting but not for trademark infringement; (3) whether destroyed storefronts can recover damages and, if so, under what theories and showing; (4) whether Section 349-b of New York's General Business Law, prohibiting manufacturers from disclaiming new product warranties, applies here; (4) whether the 9th Circuit permits a trademark infringement claim based on differences in warranties; (5) whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting." ECF No. 64 (Thimes Notice of Related Cases) at 5-6. Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it has inexplicably failed to seek what it represents as "critical" information from Amazon. ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id*. at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

### P.   RFP 16

#### 1.   Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 16:**

All DOCUMENTS and COMMUNICATIONS authored by or transmitted between YOUR employees RELATING TO any impact that unauthorized re-sellers of YOUR wireless router products, including but not limited to TSI, have on the either the supply or the demand for such products in any geographic market.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 16:**

1    TP-Link specifically objects to this request on the grounds that it is vague,

2    ambiguous, overly broad and not proportional to the needs of the case based on the

3    overly broad definition of the term "RELATING TO" as used in the request.  TP-

4    Link further specifically objects to this request on the grounds that it seeks

5    production of documents not relevant to any claim to the extent that it seeks

6    discovery regarding "YOUR wireless router products," a term which is not defined

7    in the document requests and not identified as a relevant product market in the

8    Fourth Amended Complaint.  TP-Link also specifically objects to this request on

9    the grounds that the phrase "unauthorized re-sellers of YOUR wireless router

10   products" renders the request vague and ambiguous and otherwise calls upon TP-

11   Link to assume facts that have not been established. TP-Link also specifically

12   objects to the phrase "the supply or demand for such products" is vague and

13   ambiguous as used.  TP-Link also specifically objects to this request to the extent

14   that it seeks privileged and confidential information protected from disclosure by

15   the attorney-client privilege, the attorney work-product doctrine, and/or any other

16   privilege or protection.

17          Subject to these Specific Objections, and all Objections to the Definitions

18   and Instructions, TP-Link responds that it will produce internal communications

19   during the relevant period referencing Thimes Solutions, if any, in its possession,

20   custody, or control located after a reasonable search.

21                    **2.      Reasons Why the Court Should Compel Production.**

22          TP-Link's response artificially limits its production to documents referencing

23   Plaintiff only.  But there's no rationale as to why such a limitation is appropriate.

24   Documents exchanged between TP-Link's employees regarding the subject of the

25   impact of "unauthorized" re-sellers upon TP-Link's sales or profitability is relevant

26   towards determining whether TP-Link genuinely believed that any of these re-

27   sellers, let alone Plaintiff, was selling counterfeit goods.  Indeed, the requested

28   documents would likely reveal that TP-Link's employees never once mentioned

"counterfeiting" in any way in connection with Plaintiff, but instead discussed how Plaintiff's re-sales of authentic TP-Link products would cut into TP-Link's profits because consumers could purchase genuine TP-Link wireless router products at far lower prices, and thus TP-Link wanted to look for any opportunity to eliminate Plaintiff from Amazon with using a counterfeiting allegation as mere pretext. Among other things, the requested documents are relevant towards establishing TP-Link's intentional and independently wrongful conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel claim.

With respect to its objection that the term "YOUR wireless router products" renders the request vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

Furthermore, TP-Link states that it will produce only its internal communications referencing "Thimes Solutions," but the Amazon screen name for Plaintiff was actually "Universal Goods & Sales."  TP-Link has refused to state whether they will search for that name as well even though that would clearly be encompassed within the scope of the RFP.  Moreover, TP-Link refuses to state when it will begin producing documents responsive to this Request even for those documents that it previously agreed to produce in response to this Request.

### 3.    TP-Link's Response: Request No. 16 is Overbroad in View of the Limited State Law Claims.

On June 9, 2022, TP-Link served the following supplemental response stating that this request relates to Plaintiff's dismissed antitrust claims:

> TP-Link specifically objects to this request on the
> grounds that it is vague, ambiguous, overly broad and not
> proportional to the needs of the case based on the limited
> state law claims; rather, this request relates to Plaintiff's
> now-dismissed antitrust claims.  TP-Link will not

1  respond to this request.

2  (Auyang Decl. Exhibit C - pages 32-33).

3      Thimes Rule 37-1 Letter failed to provide any legal support or substantive

4  explanation why this request is relevant to Thimes's limited state law claims, rather

5  Thimes admits that the focus of this request is the dismissed antitrust claims:

6          Information responsive to these requests is relevant to
        Thimes's allegations that Defendants **conspired to**

7          **eliminate Thimes** from offering TP-Link's WLAN
        products below the manufacturer's minimum advertised

8          price on Amazon.  **It is also relevant to our expert's**
        **antitrust analysis on product and geographic markets**.

9  Auyang Decl. Exhibit A - pages 6-7 (emphasis added).

10      Thimes argues in the stipulation that internal TP-Link documents are relevant

11  "towards determining whether TP-Link genuinely believed that any of these re-

12  sellers, let alone Plaintiff, was selling counterfeit goods" and "TP-Link wanted to

13  look for any opportunity to eliminate Plaintiff from Amazon with using a

14  counterfeiting allegation as mere pretext."

15      Thimes fails to provide any legal support why this request is relevant to the

16  elements for tortious interference with existing and prospective business

17  relationships or trade libel, which focus on TP-Link's alleged actions towards

18  Thimes and not on any supposed impact that unauthorized resellers had on "either

19  the supply or the demand for such products in any geographic market."

20      Notably, Thimes explained to the Court the "factual and legal issues" for its

21  state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

22  Amazon policy called for the expulsion of the third-party seller reported for

23  counterfeiting but not for trademark infringement; (3) whether destroyed storefronts

24  can recover damages and, if so, under what theories and showing; (4) whether

25  Section 349-b of New York's General Business Law, prohibiting manufacturers

26  from disclaiming new product warranties, applies here; (4) whether the 9th Circuit

27  permits a trademark infringement claim based on differences in warranties; (5)

28

whether, assuming there could be a trademark infringement based upon differences in new product warranties, Amazon would have take [*sic*] action against an alleged infringer; and (6) whether the fact that Amazon would not take such action is the very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No. 64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis why these "factual and legal issues" are relevant or proportional to this request.

Instead, while Thimes seeks overbroad discovery from TP-Link, it inexplicably failed to seek what it represents as "critical" information from Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely critically upon information as to Amazon.com's practices and policies . . . information that must be obtained directly from Amazon."); *see also id.* at 5 ("Amazon will be asked to produce significant amounts of information.").

Finally, given Thimes's complete lack of substantive legal support in both its Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to backfill these deficiencies in its supplemental memorandum.

**Q.  RFP 26**

**1.  Plaintiff's Request and TP-Link's Response.**

**REQUEST NO. 26:**

All DOCUMENTS and COMMUNICATIONS RELATING to YOUR business strategy in competing against unauthorized re-sellers of YOUR wireless router products for sales of those products.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 26:**

TP-Link specifically objects to this request on the grounds that it seeks production of documents not relevant to any claim to the extent that it seeks discovery regarding the "wireless router products," a term which is not defined in the document requests and not identified as a relevant product market in the Fourth Amended Complaint. TP-Link further specifically objects to this request on the grounds that it is vague, ambiguous, overly broad and not proportional to the needs

of the case based on the overly broad definition of the term "RELATING TO," and the phrase "business strategy in competing against unauthorized re-sellers of YOUR wireless router products," as used in the request.

### 2.   Reasons Why the Court Should Compel Production.

TP-Link does not even try to articulate a defensible argument as to how the requested documents are not relevant to this case.  Documents related to its business strategy in competing against unauthorized re-sellers of its wireless router products are relevant towards determining whether TP-Link genuinely believed that Plaintiff (or any other vendor) was selling counterfeit goods.  Indeed, the requested documents would likely reveal that TP-Link's employees fully recognized that authentic TP-Link products were being re-sold by "unauthorized" sellers on Amazon and that these re-sales would cut into TP-Link's profits because consumers could purchase genuine TP-Link wireless router products at far lower prices, and thus TP-Link wanted to look for any opportunity to eliminate Plaintiff and similar vendors from Amazon, specifically using counterfeiting allegations as mere pretext..  Among other things, the requested documents are relevant towards establishing TP-Link's intentional and independently wrongful conduct for Plaintiff's economic interference claim, as well as TP-Link's trade libel claim.

With respect to its objection that the term "wireless router products" renders the request vague and ambiguous, that assertion fails to satisfy TP-Link's burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

### 3.   TP-Link's Response: Request No. 26 is Overbroad in View of the Limited State Law Claims.

On June 9, 2022, TP-Link served the following supplemental response stating that this request relates to Plaintiff's dismissed antitrust claims:

1

2          TP-Link specifically objects to this request on the
           grounds that it is vague, ambiguous, overly broad and not
3          proportional to the needs of the case based on the limited
           state law claims; rather, this request relates to Plaintiff's
4          now-dismissed antitrust claims.  TP-Link will not
           respond to this request.

5    (Auyang Decl. Exhibit C - pages 39-40).

6          Thimes Rule 37-1 Letter failed to provide any legal support or substantive

7    explanation why this request is relevant to Thimes's limited state law claims, rather

8    Thimes admits that the focus of this request is the dismissed antitrust claims:

9          RFP Nos. 25-26: TP-Link's analyses of its competitors in
           the wireless router product market and communications
10         regarding the same are relevant to Thimes's allegations
           that **Defendants conspired to eliminate Thimes** and
11         other re-sellers offering TP-Link's WLAN products
           below the manufacturer's minimum advertised price
12         from Amazon.

13   Auyang Decl. Exhibit A - page 7 (bold added) (underline in original).

14         Thimes withdrew RFP No. 25 because this request related to its antitrust

15   claims.  (Auyang Decl. Ex B (May 26, 2022 email from Thimes to TP-Link)

16   ("After discussion, Thimes believes that its first set of requests (with the exception

17   of numbers 18-24) apply equally to the two state law claims, and re-serving another

18   set is not necessary.").  RFP No. 25 is similar in scope: "All DOCUMENTS and

19   COMMUNICATIONS RELATING to an analysis, evaluation or study of any kind,

20   whether formal or informal, internal or external, of YOUR competitors in the

21   wireless router product market."  RFP No. 26 should also be withdrawn as

22   overbroad in view of the limited state law claims.

23         Thimes argues in the stipulation that this request is relevant "towards

24   determining whether TP-Link genuinely believed that Plaintiff (or any other

25   vendor) was selling counterfeit goods" and "TP-Link wanted to look for any

26   opportunity to eliminate Plaintiff and similar vendors from Amazon, specifically

27   using counterfeiting allegations as mere pretext."

28         Thimes fails to provide any legal support why this request is relevant to the

1  elements for tortious interference with existing and prospective business

2  relationships or trade libel, which focus on TP-Link's alleged actions towards

3  Thimes and not on any supposed "business strategy in competing against

4  unauthorized re-sellers."

5       Notably, Thimes explained to the Court the "factual and legal issues" for its

6  state law claims: "(1) whether Amazzia/TP-Link lied to Amazon; (2) whether

7  Amazon policy called for the expulsion of the third-party seller reported for

8  counterfeiting but not for trademark infringement; (3) whether destroyed storefronts

9  can recover damages and, if so, under what theories and showing; (4) whether

10  Section 349-b of New York's General Business Law, prohibiting manufacturers

11  from disclaiming new product warranties, applies here; (4) whether the 9th Circuit

12  permits a trademark infringement claim based on differences in warranties; (5)

13  whether, assuming there could be a trademark infringement based upon differences

14  in new product warranties, Amazon would have take [*sic*] action against an alleged

15  infringer; and (6) whether the fact that Amazon would not take such action is the

16  very reason that TP-Link and Amazzia lied and claimed counterfeiting."  ECF No.

17  64 (Thimes Notice of Related Cases) at 5-6.  Thimes has provided no legal basis

18  why these "factual and legal issues" are relevant or proportional to this request.

19       Instead, while Thimes seeks overbroad discovery from TP-Link, it has

20  inexplicably failed to seek what it represents as "critical" information from

21  Amazon.  ECF No. 64 (Thimes Notice of Related Cases) at 4 (Thimes "must rely

22  critically upon information as to Amazon.com's practices and policies . . .

23  information that must be obtained directly from Amazon."); *see also id*. at 5

24  ("Amazon will be asked to produce significant amounts of information.").

25       Finally, given Thimes's complete lack of substantive legal support in both its

26  Rule 37-1 Letter and this joint stipulation, Thimes should not be permitted to

27  backfill these deficiencies in its supplemental memorandum.

28

### R.    RFP 27

#### 1.    Plaintiff's Request and TP-Link's Response.

**REQUEST NO. 27:**

All DOCUMENTS and COMMUNICATIONS that support any of YOUR affirmative defenses.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 27:**

TP-Link specifically objects to this request on the grounds that it seeks privileged and confidential information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, among other privileges and protections. TP-Link further specifically objects to this request on the grounds that it fails to adequately describe the documents sought with reasonable particularity and seeks premature disclosure of documents and things outside any scheduling order entered in this litigation.

#### 2.    Reasons Why the Court Should Compel Production.

Plaintiff is obviously not seeking to obtain TP-Link's attorney-client privileged or attorney work product materials.  Any suggestion to the contrary cannot be taken seriously.

As for the description of the requested documents being inadequate, this is a fairly standard document request made in litigation — documents that support a party's specific claims or specific defenses.  Plaintiff is not aware of any authority that such a request is objectionable, nor has any prior opponent ever made such a claim to Plaintiff's counsel.

#### 3.    TP-Link's Response: TP-Link's Supplemental Response to Request No. 27 Moots Any Dispute.

On June 9, 2022, TP-Link served the following supplemental response removing objections: "TP-Link responds that it will produce documents responsive to this request as discovery progresses."  (Auyang Decl. Exhibit C - page 40).  TP-Link's supplement response moots any dispute.

1    **VI.    TP-LINK SHOULD BE REQUIRED TO COOPERATE ON ESI.**

2           TP-Link's intransigence on cooperating with Plaintiff with respect to ESI is

3    puzzling.  "[T]he best solution in the entire area of electronic discovery is

4    cooperation among counsel."  *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA-

5    CV-1500246-DOCDFMx, 2016 WL 6246384, at *1 (C.D. Cal. Feb. 23, 2016).

6    "[T]ransparency and collaboration is essential to meaningful, cost-effective

7    discovery." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-0630, 2013 WL 1942163, at

8    *3 (N.D. Cal. May 9, 2013); *In re Nat'l Ass'n of Music Merchants, Musical*

9    *Instruments & Equip. Antitrust Litig.*, No. MDL 2121, 2011 WL 6372826, at *3

10   (S.D. Cal. Dec. 19, 2011) ("[W]hile key word searching is a recognized method to

11   winnow relevant documents from large repositories, use of this technique must be a

12   cooperative and informed process.")

13          Additionally, it is the producing party that has the obligation to identify

14   proper custodians. *See*, *e.g.*, *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2019 WL

15   4934477, at *2 (S.D. Cal. Oct. 7, 2019) ("nothing in Rule 34 requires a requesting

16   party to identify custodians"); *California Earthquake Auth. v. Metro. W. Sec., LLC*,

17   2012 WL 5880345, at *5 (E.D. Cal. Nov. 21, 2012) ("the burden to identify

18   appropriate custodians is on Evergreen, not CEA").

19          Thus, this Court should compel TP-Link to promptly disclose to Plaintiff the

20   sources and custodians from which it is collecting ESI responsive to Plaintiff's

21   document requests.  The Court should additionally compel TP-Link to disclose the

22   search terms TP-Link is applying to that ESI to find responsive documents.

23          Finally, given the incredibly brief discovery period for the parties, the Court

24   should permit Plaintiff to file a motion regarding the adequacy of TP-Link's

25   document collection efforts on shortened notice, as the practical reality is that there

26   may not be enough time to go through the regular process required under Local

27   Rule 37.

28

## VII. THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT REQUIRE TP-LINK TO PROVIDE DISCOVERY ABOUT DISCOVERY IN RESPONDING TO DISCOVERY REQUESTS.

There is no order governing production of ESI in this case and the parties have not agreed upon an ESI protocol. Thimes does not cite any legal authority which supports its request to compel TP-Link to disclose the "the sources and custodians" or search terms used to collect ESI.

Thimes relies on *NuVasive, Inc. v. Alphatec Holdings, Inc*., No. 18-cv-0347-CAB-MDD, 2019 WL 4934477 (S.D. Cal. Oct. 7, 2019) for the unremarkable proposition that nothing in Rule 34 requires a requesting party to identify custodians, but the court was also clear that Rule 34 does not likewise require TP-Link to disclose custodians (or search terms).

In *NuVasive,* the plaintiff moved to compel the defendants to use certain terms to search the electronic files of specified custodians pursuant to the Model Order Governing Discovery of Electronically Stored Information in Patent Cases ("Model ESI Order"). The court, in denying the motion, held that Rule 34 requires the requesting party to request "information" and the producing party to produce the requested information or object to the request. *NuVasive, Inc.*, 2019 WL 4934477, at *2. Citing Principle No. 6 of the Sedona Principles, the *NuVasive* court further noted that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Id.* (citing The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1, Principle 6, 118 (2018).) Thus, the court refused to enforce the Model ESI Order as it encompassed more than the requirements of Rule 34. The court also refused to decide the adequacy of the proposed custodians or the use of the requested search terms. *Id*.

*NuVasive* does not stand for the proposition that a responding party must disclose custodians to the requesting party. Rather, *NuVasive* holds that Rule 34 governs and parties will not be required to go beyond the requirements of Rule 34.

- 69 -

TP-Link has followed the requirements of Rule 34 – it agreed to produce responsive documents, subject to its objections. Thus, TP-Link should not be required to disclose "the sources and custodians" or search terms used to collect ESI.

Thimes also relies on *California Earthquake Auth. v. Metro. W. Sec*., LLC, No. 2:10–cv–0291-MCE-GGH, 2012 WL 5880345 (E.D. Cal. Nov. 21, 2012), which is similarly inapplicable. *California Earthquake Auth.* involved a third-party subpoena for documents. Although the court found the responding party (Evergreen) had the burden of identifying (*i.e*., select) the appropriate custodian (*id*. at *5), the Court did not require Evergreen to disclose the custodian, as Thimes attempts to argue here.

Thimes also seeks to require TP-Link to disclose information which exceeds the scope of permissible discovery. Thimes requests that TP-Link disclose its process for gathering responsive discovery, which is nothing more than discovery on discovery. Discovery into issues which are only collateral to relevant issues such as discovery on discovery is viewed "with skepticism and it is strongly discouraged." *Perez v. DirecTV Grp. Holdings, LLC*, No. C1601440-JLSDFMX, 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020) (citing *Fish v. Air & Liquid Sys. Corp*., 2017 WL 697663, at *17 (D. Ma. Feb. 21, 2017).)

Accordingly, the Court should deny Thimes's request.

## VIII.   DOCUMENT PRODUCTION SHOULD FINISH BY JULY 18, 2022

Again, the complete discovery cutoff in this case is September 30, 2022. But importantly, the initial expert discovery disclosure deadline is less than two months away—August 1, 2022. And as of this moment, TP-Link has produced a total of two documents totaling less than ten pages.

Thus, for Plaintiff to have a fair opportunity to prepare its case for trial, document production needs to be completed soon so that Plaintiff can use them in depositions and Plaintiff's expert(s) can review those documents. Plaintiff therefore requests that the Court order TP-Link to complete its document

1   production in response to Plaintiff's requests by July 18, which would give

2   Plaintiff's experts two weeks to review those materials.

3          Moreover, any burden to TP-Link from having to complete its document

4   production by that date is largely of its own doing.  It issued its responses back on

5   November 9, 2020, and it did nothing for a month until it requested (and received)

6   an informal stay of discovery.  The Ninth Circuit opinion reinstating Plaintiff's

7   state law claims was issued by on April 15, 2022, so TP-Link should have been

8   preparing to collect, review, and produce documents since then.  But instead, it has

9   done nothing, requested a large amount of time merely to issue amended responses

10  (with no corresponding document production), and does not even respond to

11  repeated e-mails from Plaintiff regarding straightforward questions about document

12  production.  By all appearances, TP-Link is just hoping to run out the clock.  To the

13  extent it has any complications from completing its document production by July

14  18, that is largely a problem of its own making.

15  **IX.    TP-LINK'S SUPPLEMENTAL RESPONSES STATE THAT IT WILL
16          PRODUCE DOCUMENT WITHIN THREE WEEKS**

17         TP-Link's supplemental responses state: "TP-Link will produce documents

18  within three weeks."  This resolves Thimes's complaint concerning receipt of TP-

19  Link's production.

20  **X.     PLAINTIFF IS ENTITLED TO MONETARY SANCTIONS.**

21         If a motion to compel discovery is granted, "or if the disclosure or requested

22  discovery is provided after the motion was filed--the court must, after giving an

23  opportunity to be heard, require the party or deponent whose conduct necessitated

24  the motion, the party or attorney advising that conduct, or both to pay the movant's

25  reasonable expenses incurred in making the motion, including attorney's fees."

26  Fed. R. Civ. P. 37(a)(5)(A).  Payment is not proper, however, if the movant filed

27  the motion before attempting in good faith to get the desired results, the opposing

28

party's opposition was substantially justified, or other circumstances make an award of expenses unjust.  *Id.*  "The losing party to a discovery motion bears the burden 'affirmatively to demonstrate that its position was substantially justified.'"  *Vargas v. Quest Diagnostics*, No. CV198108DMGMRWX, 2021 WL 4642785, at *1 (C.D. Cal. Sept. 8, 2021).

Substantial justification is lacking here.  Plaintiff's document requests are plainly relevant—and indeed, TP-Link agreed to produce responsive documents to many of them.  Yet TP-Link has produced a total of two documents, won't discuss when it will begin producing its remaining documents, and is insisting on first "amending" its prior responses without explaining why that is a prerequisite for producing documents.  There is no also good faith reason for TP-Link to have delayed in even responding to Plaintiff's straightforward requests to clarity on these topics, nor any good faith reason as to refuse to discuss cooperation on ESI.

TP-Link is transparently trying to run out the clock.  Its efforts should not be rewarded, and the Court should award Plaintiff monetary sanctions in the amount of $2,700 in connection with Plaintiff's attorneys' fees incurred in preparing this motion to compel.  (Meng Decl. ¶ 10.)

## XI.   THIMES'S FAILURE TO FOLLOW L.R. 37 WARRANTS DENIAL OF ITS JOINT STIPULATION AND SANCTIONS.

Thimes should not be awarded sanctions.  The at-issue discovery was served over two years ago based on now-dismissed antitrust claims.   TP-Link was substantially justified to re-assess its responses in view of the remaining limited state court claims.

Rather, sanctions should be awarded against Thimes.  Thimes rushed to manufacture discovery disputes as a means to paint TP-Link in a bad light.  As detailed in TP-Link's Introductory Statement, Thimes failed to provide a proper L.R. 37-1 letter, and its joint stipulation is premature and should not have been filed.  *See*

*Green Crush, LLC v. Paradise Splash I, Inc., et al.*, No. SACV 17-01856-CJC (JDEx), 2019 WL 8640652, at *5-6 (C.D. Cal. May 28, 2019) (providing joint stipulation before service of disputed discovery and meet and confer "defeats the very purpose" of the rule and was a "technical defect nor an oversight").

Because Thimes filed prematurely, the result is that the portions of the joint stipulation authored by Thimes do not accurately reflect the current state of the discovery disputes or TP-Link's discovery responses. Thimes does not mention or in any way account for the discovery responses that TP-Link (and Amazzia) served on June 9, which included TP-Link's Supplemental Responses to Thimes's First Set of Requests for Production of Documents. On June 9, Amazzia asked if Thimes would be amending the joint stipulation in view of the supplemental response. Auyang Decl. Exhibit D - page 45). But Thimes refused. (*Id.* ("We don't plan to amend our portion of the joint stipulation, as we're not be [*sic*] able to do that in time to keep the July 8 hearing date. We will address Defendants' supplemental responses in our supplemental briefs on the motions to compel.")). That same day, TP-Link sent a follow-up email again requesting that Thimes revise and re-serve its joint stipulation:

> Thimes's stipulation violates L.R. 37-2.1. First, L.R. 37-2.1 limits a party's introductory statement to three pages in length. Thimes's introductory statement is over three pages by its improper inclusion of "Pertinent Facts," which is little more than self-serving argument.
>
> Second, L.R. 37-2.1 states that the "stipulation should present the disputed issues as concisely as the subject matter permits." Given that TP-Link and Amazzia served supplemental responses on the agreed upon date, Thimes's stipulation was premature and fails to "present the disputed issues as concisely as the subject matter permits." Addressing TP-Link and Amazzia's supplemental responses using L.R. 37-2.3 (Supplemental Memorandum) does not obviate the requirements of L.R. 37-2.1. In fact, your email below suggests that Thimes intentionally served a premature stipulation to secure an earlier hearing date, which is plainly improper.
>
> Thimes's refusal to follow the rules is a waste of judicial and party resources. If Thimes does not revise and re-

serve its stipulation, TP-Link will seek sanctions.

Please confirm today that Thimes will revise and re-serve its stipulation.

(Auyang Decl. Exhibit D - pages 43-44).  Thimes counsel refused: "Thanks for your email.  Thimes will not revise and re-serve its portion of the joint stipulation." *Id*. at page 43.

TP-Link objects to this process but agreed to proceed under Thimes's schedule to avoid allegations that it refused to participate in the joint stipulation.  The Court should deny Thimes' discovery motion for failure to follow L.R. 37.

Finally, TP-Link asks that the Court award sanctions against Thimes in the amount of $5,000.

Dated:  June 15, 2022                    GAW | POE LLP

                                         By:    /s/ Randolph Gaw

                                                RANDOLPH GAW (S.B. #223718)
                                                  rgaw@gawpoe.com
                                                GAW | POE LLP
                                                4 Embarcadero, Suite 1400
                                                San Francisco, CA 94111
                                                Telephone: (415) 766-7451
                                                Facsimile: (415) 737-0642

                                                Attorneys for Plaintiff Thimes Solutions


Dated:  June 15, 2022                    LTL ATTORNEYS LLP

                                         By:    /s/ Heather Auyang

                                                HEATHER AUYANG (S.B. #191776)
                                                  heather.auyang@ltlattorneys.com
                                                LTL ATTORNEYS LLP
                                                300 South Grand Ave., 14th Floor
                                                Los Angeles, CA 90071
                                                Telephone: (213) 612-8900
                                                Facsimile: (213) 612-3773

                                                Attorneys for Defendant TP-Link USA
                                                Corporation

# EXHIBIT A

MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
  markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

FILED
CLERK, U.S. DISTRICT COURT

May 27, 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ igr _____ DEPUTY

Attorneys for Plaintiff
Thimes Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

THIMES SOLUTIONS, INC.,

           Plaintiff,

    v.

TP-LINK USA CORPORATION and
AUCTION BROTHERS, INC. d/b/a
AMAZZIA

           Defendants.

Case No. 2:19-CV-10374-SB-E

**AMENDED FIFTH AMENDED COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Thimes Solutions, Inc. dba Universal Goods & Sales ("TSI"), alleges on knowledge as to itself, but otherwise on information and belief, as follows:

## INTRODUCTION

1.     This case is about greed disguised as "brand protection."  With the advent of Amazon has come a fight for the right (or wrong) to display goods in the ecommerce space owned and controlled by Amazon, i.e. amazon.com.  A former Investigation Specialist for Amazon's Seller Performance team, Chris McCabe, has written about the misuse of the Amazon rights reporting system.  In his article, "Have you noticed How Unpredictable Amazon's Notice Infringement teams are now?" https://www.ecommercechris.com/have-you-noticed-how-unpredictable-amazons-notice-infringement-teams-are-now/(February 21, 2019), Mr. McCabe observes (Exhibit 1):

- Amazon's Notice Claim of Infringement Teams exist in theory to process intellectual property violations on the Amazon Marketplace at amazon.com;

- In practice, trademark and other violations can come from anywhere, allege anything, and are rife with abuse;

- The work of the Notice teams, though attempting to combat rampant abuse, has backslided of late to the point where Amazon's response to contested Intellectual Property Complaints makes "little to no sense;"

- Amazon harshly enforces the brand owner complaints of counterfeiting by requiring at most that brand owners attest to having "test bought" the allegedly counterfeit product from the alleged counterfeiter;

- Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, *re*stated repeatedly, and often have nothing to do with the reason for the suspension or expulsion; and

- Accused sellers—in particular those with a history of notice claims (as many sellers have)--are left in a virtual "twilight zone" where they are not told and cannot learn the true reasons for harsh—at times lethal—action taken against their businesses.

2.      Unscrupulous brand owners, well aware of the above Notice Infringement landscape, take unilateral action and use "brand protection services" to assist them in "knocking off unwanted sellers." *Id.*

3.      Plaintiff Thimes Solutions Inc. dba Universal Goods & Sales ("TSI") is a Suffern, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy. Succinctly, the model is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount. Manufacturers, their "authorized distributors," and their "brand protectors" often seek means—some unlawful-- to eliminate such niche market competition.[1]

4.      Plaintiff TSI ordinarily buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale.

5.      TSI brings this suit following its commercial and financial ruination resulting from Defendants' libelous statements to Amazon and consequential tortious

---

[1] A copyright or trademark holder enjoys a "distribution right" and may initially sell, or not sell, copies of a copyrighted or trademarked item to others on such terms as he or she sees fit. However, the IP holder's exclusive distribution right is limited to the first sale of the coyprighted or trademarked item. Under the "first sale" docrine, codified at 17 U.S.C. § 109(a) "the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of such copies." The Fair Use Doctrine, similar to the First Sale Doctrine, permits a seller to use a another's trademark to identify the former's goods, provided that no likelihood of confusion results as to the source of the product or the trademark holder's sponsorship or affiliation. 15 U.S.C. §115(b)(5)(A)-(C). The First Sale Doctrine [also] protects resellers of genuine trademarked goods from claims of infringement. *Davidoff & CIE, S.A. v. PLD Int'l. Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Hidalgo Corp. v. J. Kugel Designs, Inc.,* No. 05-20476-CIV-JORDAN/TORRES, 2006 U.S. Dist. LEXIS 96647, at *12 (S.D. Fla. 2006)

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

1  interference with Plaintiff's existing and prospective business relationship with
2  Amazon Services LLC.

3       6.    TSI became a third-party seller on Amazon in 2016. To become an
4  Amazon seller TSI signed Amazon's standard Business Solutions Agreement that,
5  among other things, allowed Amazon to terminate TSI as a seller for any reason or
6  for no reason at all.

7       7.    TSI sold over 175,000 products to customers on Amazon with a 98%
8  lifetime positive feedback rating. Plaintiff reached $2 million in sales during the first
9  six months of 2018. As of its expulsion from Amazon, TSI was selling around
10 $400,000-500,000 per month on amazon.com. Net margins were roughly 20%. Now
11 . . . there is only ruin.

12 <center>**JURISDICTION AND VENUE**</center>

13      8.    This Court has subject matter jurisdiction over this action pursuant to 28
14 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount
15 in controversy is in excess of $75,000, exclusive of costs and interest.

16      9.    Thimes Solutions Inc. was duly incorporated in New York on November
17 21, 2016 and maintains its principal place of business at 3 Litman Lane, Suffern, New
18 York. TP-Link USA Corporation was duly incorporated in California on October
19 15, 2008 and maintains its principal place of business at 145 South College Blvd.,
20 Suite 400, in Brea, CA 92821.Auction Brothers, Inc. dba Amazzia was duly
21 incorporated in California on May 31, 2005 and maintains its principal place of
22 business at 19528 Ventura Blvd, #229, Tarzana, CA 91356.

23      10.    Defendant's activities were within the flow of, were intended to, and
24 had a substantial effect on, interstate commerce because Plaintiff conducted business
25 all over the country.

26      11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), (c) and
27 (d). A substantial part of the events giving rise to Plaintiff's claims occurred in this
28 district, and Amazzia and TP-Link are residents of this district and their challenged

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conduct was initiated in this district including, without limitation, the transmission of the false statement at issue.

## FACTS

**A.    TP-LINK USA, TP-LINK NORTH AMERICA, TOM LEI AND AUCTION BROTHERS, INC. dba AMAZZIA**

12.    TP-Link USA Corporation ("TP-Link" or "USA" at times), operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 160 million products around the globe during 2016.

13.    USA was originally a subsidiary of TPC but is now a subsidiary of TP-Link UK Limited.  It manufactures and supplies networking products for home and small business, known as SOHO and SMB.  Examples are switches, routers, and components for wireless systems.

14.    TP-Link USA's products are available at substantially all major electronics retailers, online and in-store, throughout the country, including amazon.com, jet.com, Best Buy, COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target, and Walmart.[2]

15.    TP-Link North America ("TPN" or "North America" at times) functions as an alter ego of USA and its business offices are located at the latter's principal address in Brea, CA, while it handles TP-Link warehousing a few miles away in Fontana, CA.  TPN merged into USA on November 26, 2019.  TPN was a fictitious name, duly registered under California law, at all relevant times..

16.    TP-Link's LinkedIn page has listed at least two (2) dual positions, believed to be at issue here, held under simultaneous employment by USA and TPN:

- Director of E-commerce at TP-Link North America, Inc.
  Greater Los Angeles Area
  Current: Senior Channel Strategy Manager,B2B at **TP**

---

[2] https://www.tp-link.com/us/where-to-buy

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

**Link USA** Corporation[3]

- Channel Strategy Manager, Ecom at TP-Link USA Corporation Hangzhou, Zhejiang, China
Current: Channel Strategy Manager, Ecom at **TP-Link** North America, Inc.[4]

17.  USA and Amazzia published written complaints to Amazon, libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise infringing a trademark (on one occasion)  ("IP Complaints").[5]

18.  TP-Link's fraudulent IP Complaints directly caused Plaintiff's suspension from the Marketplace in May 2018 and also caused TSI's permanent expulsion as a seller on the Amazon website, effective on or about August 27, 2018.

19.  TP-Link retained Amazzia, to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.

20.  Amazzia describes itself as follows:

> As your dedicated partner, we keep your brand safe from unauthorized agents, ensure Amazon compliant distribution and amazing growth through price protection, optimization and targeted marketing.
>
> . . . .
>
> **Removing Un-Authorized Sellers**
> Effective and proven strategies to report and remove Un-Authorized Resellers from your listings

---

[3] https://www.linkedin.com/company/tp-link/ at **See all 78 employees on LinkedIn**, Screen 1 (last visited on June 3, 2018)

[4] *Id.*  at Screen 8.

[5] Plaintiff is informed and believes that IP complaints are prepared with an online system that does not provide the complainant with a completed copy.  See https://www.amazon.com/gp/help/reports/infringement  Amazon provides the accused with an edited and redacted version of the allegations in an email from the Seller Support group of Amazon. The allegations of the emailed version include the word "counterfeit," or "infringement," the Amazon Stock Identification Number(s) ("ASINs") allegedly counterfeited or infringed, an Amazon complaint ID number, the complainant company name, and an email address to contact with a view to resolution.  The entire text of the allegations and the signature of the person or entity who filed the complaint are not disclosed.

21.   Amazzia's primary focus is removing lawful Amazon offerings from the Marketplace:

> Unauthorized resellers corrupt the online marketplace with reckless, self-serving tactics, causing price erosion and negatively impacting your brand's image.
>
> Under these circumstances your legitimate brick & mortar retailers are unable to compete with online prices and may refuse to carry your brand.

22.   Amazzia's Vice-President of Brand Protection William Samuel articulates his role quite simply:[6]

> As the Vice President of Brand Protection at Amazzia, I ensure the protection of my clients' brands by identifying and eliminating unauthorized Amazon sellers. **The increasing number of MAP violators in the Amazon marketplace is astounding**! Rogue marketplace sellers can damage your brand and undercut your bottom line by selling products at extremely low discounted rates.  (emphasis added)

23.   Amazzia makes clear in publicly available promotions that the real problem with third-party sellers is that that they may *try* to compete on price:

> Not all third-party sellers are ethical, and some may try to undercut you and misrepresent your brand. **The main risk involves companies deviating from your minimum advertised price.** This results in having your brand's value lowered. There's also the risk of bad brand representation if consumers experience poor customer service with any unauthorized third-party sellers. As a result, customers associate those bad experiences with your brand.                 . . . .
> **Amazzia can protect your brand by preventing MAP violations** . . . (emphasis added)

24.   Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon" (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% .of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) Amazzia

---

[6] https://www.linkedin.com/in/william-samuel-0825a071/

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

promised TP-Link "full access to our team for any questions regarding the cleanup project." See Exhibit 9 at Exhibit A thereto.[7]

25.    Unable to eliminate TSI sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting, at all times acting in concert with and on behalf of TP-Link, and with the latter's actual authority and instructions.

26.    Amazzia  directly caused Plaintiff's May suspension and permanent expulsion from the Amazon Marketplace  in coordination with the following scheme:

- On January 8, 2018 Plaintiff purchased 360 TP-Link AC5400 Routers from a reputable supplier with which Plaintiff has dealt extensively. Plaintiff has possession of approximately 100 of these items to date, all of which are authentic and not counterfeit.  Amazon continues to hold a number of Plaintiff's TP-Link AC5400 Routers.

- One Tom Lei (Screen name "amazon91773"), a TP-Link  employee, operated out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related competition to USA from competitors that are not so-called Authorized Resellers.

- Mr. Lei's purchases of TP-Link products from TSI, in his own name (using USA funding or reimbursement) and without disclosure of TP-Link involvement,  occurred on January 18, 2018 (2 AC5400 Routers) and March 5, 2018 (6 AC1200 Routers in three (3) separate transactions).  Exhibit 2 hereto.  He received the items at Defendants' Fontana CA warehouse, examined the products, and knew from such examinations that the products were authentic and not counterfeit. Notwithstanding this knowledge, Mr. Lei or those acting in concert with him libeled TSI *27 times* during January-June 2018 for selling counterfeit USA products  and otherwise  infringing  TP-Link's intellectual property.

- Mr. Lei's initial purchase of two (2) AC 5400's establishes that TP-Link's sole intent *ab initio* was to eliminate Plaintiff's sales of TP-Link products from the competitive marketplace, as the circumstances of the initial  January 19th complaint alleging counterfeit goods proves:

  o      The  complaint addressed an ASIN: B01DXVK3KY, TP-Link

---

[7] Exhibit 9, the Declaration of Kevin Ryu was submitted by TP-Link in *Careful Shopper*.  Exhibit A thereto was identified as "a true and correct copy of TP-Link's contract with Amazzia. *Careful Shopper LLC v. TP-Link USA Corporation*, Case 1:18-cv-03019-RJD-RML Document 35-1 Filed 02/27/19.

AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router

- ○ Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018
- ○ Amazon lodged the Router with UPS for delivery to TP-Link on January 19, 2018 (Exhibit 3)
- ○ The Router was not delivered to Mr. Lei until January 22, 2018, three days *after* swearing to Amazon that the Router was test-purchased and found to be counterfeit (Exhibit 4).

TP-Link *targeted* TSI for elimination and in its haste lodged its libelous IP complaint before receiving the Routers![8]

27. During 2018 TP-Link complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting:

- Jan 19th: us-compliance@tp-link.com
- Jan 21st: us-compliance@tp-link.com
- Jan 26th: us-compliance@tp-link.com
- Feb 14th: compliance-us@tp-link.com
- Feb 21st: compliance-us@tp-link.com
- Feb 28th: compliance-us@tp-link.com[9]
- Mar 2nd: compliance-us@tp-link.com
- Mar 3rd: compliance-us@tp-link.com
- Mar 10th: compliance-us@tp-link.com
- Mar 13th: compliance-us@tp-link.com
- Mar 21st: compliance-us@tp-link.com
- Mar 31st: compliance-usa@tp-link.com
- Apr 2nd: compliance-usa@tp-link.com
- Apr 5th: compliance-usa@tp-link.com
- Apr 6th: compliance-usa@tp-link.com
- Apt 7th: compliance-usa@tp-link.com

---

[8] After receiving the first TP-Link-instigated Notice from Amazon, Plaintiff researched its sales of the TP-Link AC 5400 Router and searched the purchaser's address on Google, thereby identifying TP-Link as the purchaser of two (2) AC5400 Routers.

[9] On this instance alone, TP-Link claimed trademark infringement, but not counterfeiting.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Apr 9th: compliance-usa@tp-link.com
- Apr 10th: compliance-usa@tp-link.com
- Apr 11th: compliance-usa@tp-link.com
- Apr 12th: compliance-usa@tp-link.com
- Apr 24th: compliance-usa@tp-link.com
- Apr 25th: compliance-usa@tp-link.com
- Apr 26th: compliance-usa@tp-link.com
- Apr 30th: compliance-usa@tp-link.com
- May 28th: compliance-usa@tp-link.com
- May 30th: compliance-usa@tp-link.com
- Jun 7th: compliance-us@tp-link.com
- June 21st: compliance.usa@tp-link.com

28.     TP-Link/Amazzia used four (4) different identities in complaining to Amazon, indicating a combination and conspiracy, to wit:   compliance-us@tp link.com,          compliance-usa@tp-link.com,          us-compliance@tp-link.com and  compliance.usa@tp-link.com[10]   On information and belief, the only email address available to Amazzia was compliance-usa@tp-link.com.

## FALSE INFRINGEMENT CLAIMS AT AMAZON

29.     In the April 2018 article by Chris McCabe ("McCabe"), discussed *supra,* the renowned expert in Amazon Seller Performance issues, McCabe summarizes "[h]ow unethical sellers abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> **Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes

[10] TP-Link has admitted in other litigation Amazzia's use of compliance-usa@tp-link.com. See Exhibit 9 hereto at ¶4.
[11] McCabe is a former Investigation Specialist for Amazon's Seller Performance team.  His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

a legally-binding declaration in the form, and signs it.

30.     TP-Link/TPN/Amazzia was the unethical seller in the instant case when it falsely executed IP Complaints against TSI and, even if it issued the first complaint (1/19/18) as an honest mistake (it did not), it received a sincere offer to pursue the truth that same day . . .  but did not retract its evil report; in fact, it issued some two (2) dozen additional reports and hereby sealed TSI's doom.

31.     TP-Link/TPN/Amazzia acted maliciously and intentionally in reporting to Amazon that TSI was listing counterfeit products and, in fact, about two dozen reports were issued in conscious disregard of the truth.

## THE ROLE OF TRADEMARK INFRINGEMENT IN THIS PICTURE

32.     TP-Link sought in related litigation in this Court to justify its IP (counterfeit) complaints with a purported trademark infringement theory based on a purported disclaimer of its manufacturer's limited warranty as to Gray Market purchasers of its products, thus making products sold to Gray Market purchasers "materially different."[12]  Even if in good faith (which it was not), however, such a trademark infringement claim did not justify reporting Plaintiff to Amazon as a counterfeiter.

33.     Counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).  Trademark infringement, on the other hand, is defined as the unauthorized use of a trademark or service mark, i.e. *the same product* bearing the mark without required permission.

34.     When TP-Link complained of trademark infringement, Amazon rejected the complaint.  When TP-Link complained of "counterfeiting," Amazon expelled TSI with permanence.  Amazzia is the Amazon expert and planned this

---

[12] A "Gray market" refers to the trade of a commodity through distribution channels that are not authorized by the original manufacturer or trademark proprietor.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conspiracy with expressed knowledge and intent to "remove" Gray Market sellers.

35. For the reasons stated in the next three (3) paragraphs hereof, TP-Link's sole predicate for its wrongdoing, i.e. that its limited warranty did not convey to TSI purchasers (which would not justify a *counterfeit* IP complaint in any event), is a pretext , a mere illusion to justify some complaint--any complaint--with unauthorized below-MAP sellers.[13]

36. TSI was not an "unauthorized seller" except in the commonly-understood sense that it was not specifically authorized under any distributorship agreement (or similar agreement) by TP-Link to purchase TP-Link products directly from TP-Link and thereafter resell such products. In all other respects, TSI was "authorized" by law to sell genuine TP-Link products.

37. TSI was authorized under its agreement with Amazon to sell TP-Link products on amazon.com; *and TP-Link consented in its agreement with Amazon to abide by Amazon's policies which authorized Gray Market sellers to resell the trademarked goods of others without restraint on the Amazon Marketplace.*

38. Under the First Sale Doctrine TSI was fully within its rights in lawfully acquiring authentic TP-Link products, as it did in all instances of purchase of TP-link products, and listing and selling such products on Amazon.

39. Moreover, TSI sales of TP-Link products on Amazon *did* convey the manufacturer's warranty (because under NYGBL §369-b any disclaimer was invalid); hence, such products were *not* materially different than other genuine TP-Link products, because:

- TP-Link never enforced any such disclaimer against any of its Gray Market customers prior to the advent of this litigation. Based on discovery received to date in *Careful Shopper*, TP-Link did not require, from registered owners of TP-Link products seeking warranty assistance, proof of purchase disclosing seller identity until September 2019 at the earliest.

---

[13] A **MAP price** is a minimum amount that resellers agree not to advertise below.

- Purchasers of TP-Link products on Amazon designated (in the registration temple) their seller as Amazon. TP-Link had no way—and sought no way-- to distinguish as between Amazon purchasers of TP-Link products sourced from "authorized" and "unauthorized" sellers.

- Most significant, as a matter of law Section 369-b of New York's General Business Law, invalidating any warranty limitation actuated because "such merchandise is sold by a particular dealer," preserved the warranty for all Careful Shopper customers. *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp.2d 208, 228 (S.D.N.Y. 2011); see also *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261 n.3 (S.D.N.Y. 2012)

40.　Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing, is (along with　　　TP-Link) subject to punitive damages herein.　For example upon information and belief, Amazzia directly or indirectly sells products on Amazon through multiple seller accounts, often buying them from the same brands they contract with to provide "brand protection services," and subsequently files false counterfeit complaints against their competitors on Amazon.

41.　Immediately upon receipt of the first IP-complaint of January 19, 2018 Plaintiff emailed TP-Link at the designated address in an effort to satisfy TP-Link that TSI's product was authentic and not counterfeit (Exhibit 5):

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

1
2
3
4
5
6
7
8
9
10
11
12
13



Avi Eisenberg 1/19/2018
to us-compliance, notice-dispute ⌄

We received an email from Amazon today stating that TP-Link
is asserting that items sold by us (under the storefront
"Universal Goods and Sales", merchant ID A1Q1VKNP5VVQEY,
ASIN B01DXVK3KY, Complaint ID: 1359628881
) are counterfeit. We take all reports of Intellectual Property
Rights Infringement seriously.

These items were purchased from a reputable distributor and
are not counterfeit.

Please be aware that Amazon has stated that our account is
under review as a result of the allegations. If we suffer
damages as a result of your incorrect allegations, you may be
liable.

We respectfully request for a retraction to be sent to notice-
dispute@amazon.com stating that the original allegations
were made in error. If you believe the allegations are correct,
please provide us with all evidence you have obtained to
support your claim of infringement. We are aware of one
purchase by TP-link of 2 of our units that were offered; as of
the time of this email, Jan 19th, this has not been delivered
and is currently in transit. Please advise if any other units have
been purchased by TP-link.

14
15
16
17

    42.    TP-Link did not respond to Plaintiff's letter, Exhibit 5; nor did Amazzia. During this litigation TSI has disclosed its sources of product to TP-Link. TP-Link has not challenged the reputability of Plaintiff's sources of product, although it filed a Rule 26(f) Report since being so advised.

18
19

    43.    Plaintiff then engaged expert Amazon counsel who emailed a letter to TP-Link on February 1, 2018 (Exhibit 6):

20
21
22
23

> In accordance with Amazon policy, in order to report an item is counterfeit, a test buy must be performed in order to verify the claimed differences are present between the accused product and the rights owner's product. As such, we are writing to request the specific basis for your counterfeit claims, including the test buy purchase information provided to Amazon to support your claims.

24

> TP-Link did not respond to counsel's letter.

25
26

    44.    On May 7, 2018 Plaintiff was suspended (with appeal rights) from selling on Amazon by reason of TP-Link's IP complaints (Exhibit 7):

27
28

> You have listings that infringe on the intellectual property rights of others. This is against our policies. The removed items can be seen on the Performance

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

45.    Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link continued its onslaught on May 28 and 30, and on June 14 and 21. Exhibit 8.

46.    The record of TP-Link complaints, subject to Amazon's algorithmic surveil, caused Plaintiff's permanent expulsion (without appeal rights) from the Amazon Marketplace on August 27, 2018. This result from Amazzia's IP reporting was predictable to Amazon experts. *McCabe, supra.*

47.    All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's counterfeiting, were filed under false attestation:[14]

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

48.    Conspirators TP-Link and Amazzia had ample opportunity and did in fact, albeit surreptitiously, test purchase many of TSI's TP-Link offerings to determine authenticity. Exhibit 1 hereto. All were authentic and TP-Link has never stated to the contrary except, of course, as necessary to incite Amazon's punitive measures upon TSI. It chose to allege TSI's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications. Such actions were malicious.

49.    TP-Link, having sought refuge in Noerr-Pennington in Careful-Shopper, we will plead to the issue here. The series of events pled within were a "sham" within Noerr Pennington parlance, and satisfy Noerr-Pennington's "sham

---

[14] https://www.amazon.com/gp/help/reports/infringement

exception" as follows:[15]

- TP-Links IP complaints sounding in counterfeiting were objectively baseless, and TP-Link knew they were objectively baseless. Having made 4 test purchases through Mr. Lei, and having had opportunity to examine them, TP-Link knew of their authenticity.

- Upon information and belief, TP-Link filed IP complaints sounding in trademark infringement that were rejected by Amazon as non-actionable.

- Only by charging "counterfeiting" unendingly could TP-Link effect TSI's expulsion.

- Amazon has testified before Congress that that Rightsowners often "conflate" their IP rights with independent sellers' products' lacking authenticity; and Amazon disapproves of Rightowners so doing.[16]

- TP-Link found a "hired gun" in Amazzia and contracted to eliminate third party sellers as follows: "50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," without regard to whether such resellers' conduct was wrongful; Exhibit 9 at Exhibit A.

- As per Amazzia's online promotional material, i.e. "Amazzia can protect your brand by preventing MAP violations," the foregoing conspiracy existed to eliminate price competition;

---

[15] Under the Noerr-Pennington doctrine, a **sham** petition is one that is ostensibly directed toward influencing governmental action but that is a mere **sham** to cover an attempt to interfere directly with the business relationships of a competitor. *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1050, 99 Cal. Rptr. 3d 661, 666 (2009)

[16] http://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf

Amazon seeks to provide its customers with the widest possible selection of products at competitive prices. One way Amazon has sought to provide this selection is by making it easy for sellers of authentic products to open selling accounts and sell a wide variety of products directly to Amazon's customers in Amazon's store. Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand. These include liquidation or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise. Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store. But, we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Such a purpose and effect of collaborative action violates the common law.

- IP complaints now defended by TP-Link serve to "conceal[] an attempt to interfere *directly* with the business relationships of a competitor," i.e. TSI. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) (*PRE*); see also *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).

- "[N]o reasonable [Amazon seller] could realistically expect success on the merits" of the IP complaints, 508 U.S. at 60.

- The IP complaints sounding in counterfeiting were, therefore, not [" 'communications preparatory to or in anticipation of bringing an action or other official proceeding' and are therefore unprotected by Noerr-Pennington.

## B. ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

50. But for Defendants' IP complaints to Amazon TSI would not have been expelled from the Amazon Marketplace.

51. Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures. Plaintiff was permanently expelled nonetheless.

52. By reason of the expulsion Plaintiff was unable to sell its aging inventory (at least $1.1 million) or access its funds in Amazon's hands (about $80,000). Plaintiff was forced to hire counsel at substantial expense.

53. There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

54. The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month. Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.

55. Defendants' actions and inactions, moreover, were calculated, willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $5,000,000, together with attorney fees to be

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

determined by the Court.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

56.     Plaintiff incorporates the allegations above as though the same were re-written at length.

57.     "The elements of tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1153. *Fresno Motors, Ltd. Liab. Co. v. Mercedes-Benz USA, Ltd. Liab. Co.*, 852 F. Supp. 2d 1280, 1292 n.12 (E.D. Cal. 2012)

58.     As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints alleging sale of counterfeit products received by TSI from Amazon were the work of TP-Link and Amazzia.

59.     Experts believe that Amazon third-party sellers who pass a threshold of <$1MM in annual sales, known as "Top Sellers" (such as TSI), have considerable longevity in their Amazon business relationship. *See* https://www.marketplacepulse.com/articles/veteran-amazon-sellers-still-at-the-top For TSI "the sky was the limit."

60.     Defendants' accusations of counterfeiting, wrongful *per se*, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's existing and prospective business relationship with Amazon.

61.     The accusations aforesaid proximately caused Plaintiff's expulsion.

62.   The statements were made maliciously and with ill will, as business entities do not lie dozens of times and turn a stone deaf ear to pleas for moderation absent a strong measure of ill will

63.   Amazon stated that it would act favorably if TP-Link/Amazzia would retract the accusations; but, despite TSI requesting a retraction and asking for evidence of TP-Link/Amazzia's claims, both directly and through counsel, TP-Link/Amazzia refused to retract the IP Complaints or even respond to TSI or counsel at all and indeed continued to file dozens of new complaints afterwards."

64.   Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon business.  TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000. Using a 20% profit figure because our net profits ($368,000) derived from $1.819. Assuming a 10-year income stream for TSI, constant sales and static income of $900,000 per year, discounted at 3%,  we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000.

**CLAIM II:  TRADE LIBEL**

65.   Plaintiff incorporates the above allegations as though the same were rewritten at length.

66.   Under California law:

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259, 217 Cal. Rptr. 3d 234 (2017) (quoting *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312, 206 Cal. Rptr. 3d 60 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." *John Doe 2*, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

to injure him in his occupation." <u>Cal. Civ. Code § 45</u>.' *Schmidt v. Baldy*, No. CV 16-9368-DSF (AGRx), <u>2019 U.S. Dist. LEXIS 182826, at \*18</u> (C.D. Cal. Oct. 19, 2019Defendants' libelous IP complaints to Amazon proximately caused Amazon to expel Plaintiff from the Marketplace on August 27, 2018 with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract with Amazon, as identified in ¶7 *supra.*

67.   TP-Link /Amazzia's scheming accusations falsely charged TSI with a serious crime or crimes.  Advertising falsely over the interstate wires may violate 18 U.S.C. 1343 because members of the public part with their money by reason of advertising. Moreover, this is not the only instance of defendants' scheme, to wit: there is pending in this Court the case of *TP-Link USA Corporation v. Careful Shopper,*[17]with counterclaims and third-party complaint premised on the same essential allegations as this case.

68.   The Amazzia promotional material and contract evidence a high probability that many more third-party sellers have fallen victim to this scheme but, as the conspirators calculated, those victims are unable to mount a lawsuit against the largest wi-fi manufacturer in the world, i.e. TP-Link.  Thus, on information and belief, plaintiff alleges that the conspiracy alleged herein was effected through a pattern of wrongful acts and conduct.

69.   Defendants' accusations against Plaintiff to Amazon directly injured Plaintiff in its business and trade because, as they knew, Amazon will not tolerate repeat counterfeiters as Amazon sellers.

70.   Defendants' accusations against Plaintiff constitute trade libel *per se.*

71.   Although injury may be presumed due to libel *per se,* Plaintiff suffered above and beyond presumed damages, e.g. loss of profits.  See ¶7 *supra.*  Further, TSI lost good will specific to the TSI-Amazon relationship that cannot be recovered including, *inter alia,* Plaintiff's right to sell a broad range of products on

---

[17] CASE NO:  8:19-cv-00082-JLS-KES

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

amazon.com, much of which entitlement was grandfathered.[18]

## **PRAYER**

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

    A.    Compensatory damages of at least $5,000,000;

    B.    Treble damages of $15,000,000;

    C.    Punitive damages of not less than $5,000,000;

    D.    Attorney fees and costs; and

    E.    Such other and further relief as the Court may order.

Dated: May 23, 2022        GAW | POE LLP

By: _____

Mark Poe

Attorneys for Plaintiff
Thimes Solutions, Inc.

---

[18] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

1    Plaintiff Thimes Solutions, Inc. hereby demand a jury trial for its claims

2  against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a

3  Amazzia.

4

5    Dated:  May 23, 2022                    GAW | POE LLP

6

7                                            By:  _____

8                                                 Mark Poe
                                                  Attorneys for Plaintiff Thimes
9                                                 Solutions, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:   2:19-cv-10374-SB-E | Date:   May 20, 2022 |
|---|---|

| Title:   *Thimes Solutions Inc. v. TP Link USA Corporation et al.* | |

Present: The Honorable   **STANLEY BLUMENFELD, JR., U.S. District Judge**

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **[In Chambers] CASE MANAGEMENT ORDER**

This case was remanded to this Court from the Ninth Circuit on May 9, 2022; the Court held a status conference on May 20, 2022 and issues this case management order.  The DOE defendants remaining after July 18, 2022 are dismissed by operation of this Order and without further notice.  Defendants shall file any objection to private mediation **by no later than May 23, 2022**.

The Court has reviewed the Joint Rule 26(f) Report and sets the pretrial and trial dates noted in the table below based on an evaluation of the complexity of the case.  A more complete description of these deadlines is contained in the Mandatory Scheduling Conference Order (MSC Order).  The deadlines below will *not* be continued absent *a timely showing of good cause*.  **Good cause** requires a specific, detailed, and non-conclusory showing of diligence from the outset of the case, describing: (i) all relevant work previously done (including when each item was completed), (ii) all relevant work that remains to be done, (iii) why the remaining work could not previously have been done (including efforts made to complete each remaining item), and (iv) why the amount of time requested is needed to complete the remaining work.  *The **Attachment to this Order** describes the*

*requirements in more detail, and failure to comply with them will result in denial of the request with prejudice.*

| | |
|---|---|
| **Trial**   ☐ Court  ☒ Jury        (Mon., 8:30 a.m.) | January 9, 2023 |
| **Pretrial Conference**            (Fri., 10:00 a.m.) (including hearing on motions in limine) | December 30, 2022 |
| **Motion to Amend Pleadings/Add Parties** (Hearing Deadline) | July 18, 2022 |
| **Discovery Deadline – Nonexpert** | September 30, 2022 |
| **Discovery Deadline – Expert** | September 30, 2022 |
| Initial Expert Disclosure | August 1, 2022 |
| Rebuttal Expert Disclosure | August 8, 2022 |
| **Discovery Motion Hearing Deadline** | October 7, 2022 |
| **Non-Discovery Motion Hearing Deadline** | October 7, 2022 |
| **Early Mediation Deadline** | June 21, 2022 |
| **Settlement Conference Deadline** ☐ 1. Mag. J. ☐ 2. Panel ☒ 3. Private | October 21, 2022 |
| **Post-Settlement Status Conf.** (Fri., 8:30 a.m.): | November 4, 2022 |
| Status Report Due (7 court days before *by 9:00 a.m.*): | October 28, 2022 |
| **Trial Filings (First Set) Deadline** | December 9, 2022 |
| **Trial Filings (Second Set) Deadline** | December 16, 2022 |

All motion deadlines reflect *the last day when a motion may be heard*, and a hearing must be set on *an open hearing date*.  Consult the Court's website before scheduling a hearing to determine availability.  A party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard.

The parties should plan to complete discovery far enough in advance of the discovery deadline to allow for the filing of a discovery motion if necessary and complete the discovery allowed if relief is granted.  Delaying discovery (e.g., a deposition) until receiving other discovery (e.g., written discovery)—or deciding not to conduct a deposition remotely—generally does not constitute good cause to

continue the discovery or other deadlines.  The parties should take this risk into account when deciding whether to engage in strategic ordering of discovery or to conduct in-person depositions.

**cc:  ADR**

## ATTACHMENT

The parties should prepare this case without expecting an extension of any pretrial or trial deadline, even if the extension request is by stipulation.  The Court applies the same standard of good cause for all requests (whether opposed or unopposed).

A continuance will be granted only for good cause as defined in the Order above.  The showing shall be placed in a table in chronological order and shall include *all* discovery and significant procedural events from the outset of the case in the format illustrated below.

| Completed Work | | | |
|---|---|---|---|
| **Date** | **Pty** | **Event** | **Explanation** |
| __/__/__ | Π | Complaint | |
| __/__/__ | Δ | Answer | |
| __/__/__ | Π | Initial Disclosures | |
| __/__/__ | Δ | Initial Disclosures | |
| __/__/__ | Π | Interrog., RFPs, RFAs (Set #1)[1] | |
| __/__/__ | Δ | Interrog., RFPs, RFAs (Set #1) | |
| __/__/__ | Π | Smith Depo | |
| **Remaining Work[2]** | | | |
| __/__/__ | Π | Jones Depo | Detail:  (1) why it was not already done; (2) prior efforts to complete it; and (3) why the amount of time requested is necessary. |

The requesting party/parties also must submit a proposed order *in Word format* using the exact "CMO Continuance Order template" provided on the Court's website.

### *Failure to comply with the above requirements will result in the denial of the request with prejudice.*

---

[1] Each discovery item (e.g., RFAs) must be separately listed *unless* they all occurred on the same date.

[2] Each remaining discovery item must be listed separately with a proposed date for completion in the first column, the party taking the discovery in the second column, a description of the discovery in the third column, and an explanation in the fourth column of (1) why the discovery was not already done, (2) the prior efforts to complete it, and (3) why the amount of time requested is necessary.