LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel:  (213) 612-8900
Fax:  (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | CASE NO.: 2:19-cv-10374-SB-E |
| Plaintiff, | **<u>DISCOVERY MATTER</u>** |
| v. | **JOINT STIPULATION REGARDING TP-LINK USA'S MOTION TO COMPEL DISCOVERY** |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, | Date: August 26, 2022<br>Time: 9:30 a.m.<br>Courtroom: 750, 7th Floor |
| Defendants. | Discovery Cut-Off:     Sept. 30, 2022<br>Pretrial Conference:  Dec. 30, 2022<br>Trial Date:               Jan. 9, 2023 |
| | Complaint Filed:        May 29, 2019<br>Amended 5th Amended<br>Complaint Filed        May 27, 2022 |

No. 2:19-cv-10374-SB-E

TP-LINK USA CORPORATION,

      Counterclaimant,

   v.

THIMES SOLUTIONS INC.,

      Counter-Defendant.

# TABLE OF CONTENTS

I.    TP-LINK'S INTRODUCTORY STATEMENT ................................................... 1

II.   THIMES'S INTRODUCTORY STATEMENT .................................................. 3

III.  THIMES'S BOILERPLATE OBJECTIONS ARE NOT VALID ........................ 4

  A.   Thimes's "General Objections" Are Improper ................................................... 4

  B.   Thimes's "Burdensome" Objections Are Improper ........................................... 4

IV.   THIMES'S RESPONSE ................................................................................. 4

V.    THIMES SHOULD BE COMPELLED TO FULLY RESPOND TO TP-LINK'S INTERROGATORIES AND DOCUMENT REQUESTS ............................. 5

  A.  TP-Link's Requests Relevant to Thimes's Tortious Interference Claim ............. 5

    1.  Interrogatory Nos. 1, 4, and 5 ....................................................................... 5

      a)  TP-Link's Requests and Thimes's Responses ........................................... 5

      b)  Thimes Should be Compelled to Provide Complete Responses to Interrogatory Nos. 1, 4, and 5 ........................................................................ 9

      c)  Thimes's Response ............................................................................... 10

    2.  Interrogatory No. 12 and Document Request Nos. 2, 10, and 11 ................. 11

      a)  TP-Link's Requests and Thimes's Responses ......................................... 11

      b)  Thimes Should be Compelled to Provide Complete Responses to Interrogatory No. 12 and Request Nos. 2, 10, and 11 ........................... 16

      c)  Thimes's Response ............................................................................... 23

  B.  TP-Link's Requests Relevant to Damages Claims ........................................... 25

    1.  Interrogatory No. 3 and Document Request Nos. 12, 13, 17, 18, 19, 20, and 26 .......................................................................................................... 25

      a)  TP-Link's Requests and Thimes's Responses ......................................... 25

      b)  Thimes Should be Compelled to Provide Complete Responses to Interrogatory No. 3 and Document Request Nos. 12, 13, 17, 18, 19, 20, and 26 ............................................................................................ 30

      c)  Thimes's Response ................................................................ 36

C.  TP-Link's Requests Relevant to Thimes's Trade Libel Claim .......................... 40

    1.  Interrogatory No. 2 ........................................................ 40

        a)  TP-Link's Request and Thimes's Response ........................................... 40

        b)  Thimes Should be Compelled to Provide a Complete Response to Interrogatory No. 2 ................................................. 41

        c)  Thimes's Response ................................................................ 42

    2.  Interrogatory Nos. 8, 9, 10, and 11 and Document Request No. 5 .............. 43

        a)  TP-Link's Requests and Thimes's Responses .................................... 43

        b)  Thimes Should be Compelled to Provide Complete Responses to Interrogatory Nos. 8, 9, 10, and 11 and Document Request No. 5 ........ 47

        c)  Thimes's Response ................................................................ 48

    3.  Document Request No. 9 ................................................... 49

        a)  TP-Link's Request and Thimes's Response ........................................... 49

        b)  Thimes Should be Compelled to Provide a Complete Response to Document Request No. 9 ................................................. 50

        c)  Thimes's Response ................................................................ 51

D.  TP-Link's Requests Relevant to TP-Link's Lanham Act Counterclaim ........... 51

    1.  Document Request No. 1 ................................................... 51

        a)  TP-Link's Request and Thimes's Response ........................................... 51

        b)  Thimes Should be Compelled to Provide a Complete Response to Document Request No. 1 ................................................. 52

        c)  Thimes's Response ................................................................ 54

    2.  Document Request No. 3 ................................................... 54

        a)  TP-Link's Request and Thimes's Response ........................................... 54

b)   Thimes Should be Compelled to Provide a Complete Response to Document Request No. 3 ........................................................................ 55

c)   Thimes's Response ........................................................................ 55

3.   Document Request No. 4 ........................................................................ 56

a)   TP-Link's Request and Thimes's Response ............................................ 56

b)   Thimes Should be Compelled to Provide a Complete Response to Document Request No. 4 ........................................................................ 56

c)   Thimes's Response ........................................................................ 57

4.   Document Request No. 14 ........................................................................ 57

a)   TP-Link's Request and Thimes's Response ............................................ 57

b)   Thimes Should be Compelled to Provide a Complete Response to Document Request No. 14 ........................................................................ 57

c)   Thimes's Response ........................................................................ 58

5.   Document Request No. 22 ........................................................................ 59

a)   TP-Link's Request and Thimes's Response ............................................ 59

b)   Thimes Should be Compelled to Provide a Complete Response to Document Request No. 22 ........................................................................ 60

c)   Thimes's Response ........................................................................ 61

6.   Document Request No. 25 ........................................................................ 61

a)   TP-Link's Request and Thimes's Response ............................................ 61

b)   Thimes Should be Compelled to Provide a Complete Response to Document Request No. 25 ........................................................................ 61

c)   Thimes's Response ........................................................................ 62

VI.   THIMES SHOULD BE REQUIRED TO PRODUCE ESI AS IT IS KEPT IN THE USUAL COURSE OF BUSINESS, INCLUDING AS LOAD FILES WITH ORIGINAL METADATA, AS WELL AS EXPORTED FILES OF ITS BUSINESS OPERATIONS ........................................................................ 63

a)   TP-Link's position ...................................................................... 63

b)   Thimes's Response ...................................................................... 64

VII.   THIMES'S SUPPLEMENTAL RESPONSES AND DOCUMENT
PRODUCTION IN ACCORDANCE WITH THE COURT'S ORDER
SHOULD BE COMPLETED BY AUGUST 31, 2022 ............................................... 65

a)   TP-Link's position ...................................................................... 65

b)   Thimes's Response ...................................................................... 65

TABLE OF CONTENTS

# I.  TP-LINK'S INTRODUCTORY STATEMENT

Plaintiff and Counter-Defendant Thimes Solutions Inc. ("Thimes") represents its business model as "buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount."  Declaration of Heather ("Auyang Decl."), Exh. B (ECF No. 178 (underlined amended Fifth Amended Complaint ("5AC")), ¶ 3.[1]  Thimes initiated this suit based on state law claims alleging that it was wrongfully expelled from selling on the Amazon Marketplace because of supposed intellectual property complaints made only to Amazon by co-defendant Auction Brothers, Inc. d/b/a Amazzia ("Amazzia") on behalf of TP-Link USA Corporation ("TP-Link").  However, the facts demonstrate that Thimes is the only party who has engaged in actionable, wrongful conduct.

Thimes is an unauthorized reseller caught selling electronics on Amazon in a manner designed to deceive end-customers into believing that it was affiliated with TP-Link and that TP-Link sponsored such sales of electronic products, when it did not.  Consumers would then naturally believe that electronics purchased from Thimes conveyed with all the same benefits of a TP-Link product purchased from an authorized reseller, when it does not.  Trademark law protects consumers from this type of conduct.  TP-Link has numerous registered trademarks in connection with electronics, including an incontestable mark that Amazon specifically identified to Thimes and is asserted by TP-Link in this case.

Thimes failed to heed repeated warning from Amazon to stop violating its Sellers Policies (even after other third parties made similar intellectual property complaints,

---

[1] A copy of the order establishing the case schedule is attached to the Auyang Decl. as Exhibit A.

Amazon suspended Thimes's account based on other third-party complaints, and Amazon shutdown Thimes's account for violation of its Application Programming Interface). As a result, according to Thimes, it was "Amazon's algorithmic surveil [that] caused Plaintiff's permanent expulsion (without appeal rights) from the Amazon Marketplace on August 27, 2018." Auyang Decl., Exh. B (5AC), ¶ 47.

Thimes only two claims in this action for trade libel and a derivative claim for tortious interference with prospective business relationships lack merit, yet Thimes is intentionally dodging responding to relevant discovery requests to impede TP-Link's defense. Moreover, Thimes seeks (based on *less than two years* of business on the Amazon Marketplace) compensatory damages of at least $5,000,000, treble damages of $15,000,000, and punitive damages of not less than $5,000,000, as well as "attorney fees and costs." *Id*. (Prayer for Relief). This demand is based on an apparent damages model of "[a]ssuming a 10-year income stream for [Thimes], constant sales and static income of $900,000 per year, discounted at 3%, we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000." *Id*., ¶ 64.

Thimes sales began in 2015 and it is still an active corporation. Yet, Thimes refuses to produce relevant underlying documents supporting its considerable damages claim, instead it has only produced an incomplete set of tax returns, incomplete set of annual P&L statements, two 1099-Ks, and Excel summaries of supposed Amazon sales. Missing are other key documents, such as detailed balance sheets, cash flow statements, a complete set of P&L statements and tax returns, the sole shareholder and proprietor's (Avraham Eisenberg) tax returns, detailed sales transactions for all sales (not just Amazon sales), QuickBooks files, and InventoryLab files (used by Thimes to handle inventory and financials for its Amazon sales).

Format of Thimes's Production: Thimes's document production does not comply with Federal Rule of Civil Procedure 34. Thimes has not produced ESI (including emails and electronically stored documents) as it was kept in the usual

course of business.  Instead, Thimes has only produced PDFs with metadata from when the document or email was apparently collected and processed.  Moreover, Thimes's production includes emails (in PDF) with attachments embedded as images that are illegible and emails (in PDF) missing attachments.

Complying with Rule 34(B)(2)(E) is even more imperative here given that Thimes has produced documents that are highly suspect.  For example, Thimes produced two invoices sent to Amazon to "prove" that the TP-Link products were "genuine."  Both invoices have the <u>same</u> invoice number and <u>same</u> date, but were for <u>different</u> quantities of products.

Thimes should be required to produce ESI as load files with the original metadata, including any production from Thimes's Gmail account.

Thimes's motion to compel should be granted because: (1) TP-Link's requests are relevant and proportional to its claims and defenses; and (2) Thimes should follow Rule 34 and produce ESI as it is kept in the usual course of business, along with load files with the original metadata.

## II.   THIMES'S INTRODUCTORY STATEMENT

TP-Link's positions are either not supported with authority or based on misrepresentations of fact.  Many of the issues TP-Link raises are also mooted by Thimes's serving supplemental responses and producing an additional 259 documents on July 28, 2022 (bringing its total production to 474 documents, compared to TP-Link's producing only 91 documents, in defiance of this Court's June 29 order requiring TP-Link to complete its production by July 18).  TP-Link's motion is premature and a waste of judicial and party resources.

As to the points of disagreement, Thimes objected to those requests and interrogatories because of TP-Link's unduly broad formulation or inclusion of unintelligible terms.  TP-Link could have avoided motion practice had it drafted tailored requests and interrogatories seeking relevant information.  Instead, TP-Link formulated its requests and interrogatories to seek documents and information from

facets of Thimes and Mr. Eisenberg's business that have no relevance to Thimes's claims for intentional interference and trade libel, or TP-Link's trademark infringement claim.

The Court should deny TP-Link's motion to compel.

## III.   THIMES'S BOILERPLATE OBJECTIONS ARE NOT VALID

### A.   Thimes's "General Objections" Are Improper

Thimes asserts a series of "General Objections" to each of its responses. Such "general . . . objections . . . are not proper objections," and fail to satisfy Thimes's burden of "clarifying, explaining, and supporting its objections." *U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648-649 (C.D. Cal. 2007). Courts decline to consider general objections to requests for production. *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, No. 2:10-CV-1207-GEB-AC, 2014 WL 5093398, at *5 (E.D. Cal. Oct. 9, 2014). Accordingly, the Court should order such objections as disregarded and Thimes should supplement its responses and production accordingly.

### B.   Thimes's "Burdensome" Objections Are Improper

Thimes objects throughout its response as to burden, but has not demonstrated why, in fact, such requests are burdensome. Blanket, unsupported objections that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and should be disregarded. A party objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B). Accordingly, the Court should order such objections as disregarded and Thimes should supplement its responses and production accordingly.

## IV.   THIMES'S RESPONSE

Thimes served supplemental responses on July 28, 2022 that removed the General Objections, which moots this dispute. (Meng Decl. ¶ 4.)

## V.   THIMES SHOULD BE COMPELLED TO FULLY RESPOND TO TP-LINK'S INTERROGATORIES AND DOCUMENT REQUESTS

For ease of reference, TP-Link's Interrogatories and Document Requests are grouped into categories, but such groupings are not mutually exclusive, *e.g.*, requests related to Thimes's trade libel claim could also be relevant to TP-Link's counterclaim for trademark infringement.

### A.   TP-Link's Requests Relevant to Thimes's Tortious Interference Claim

#### 1.   Interrogatory Nos. 1, 4, and 5

##### a)   TP-Link's Requests and Thimes's Responses

**INTERROGATORY NO. 1**:

Describe in detail element-by-element all facts and circumstances that support or otherwise relate to YOUR claim for interference with existing and prospective business relationships.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1**:

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "that support or otherwise relate to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim. Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced. Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for interference with existing and prospective business relationships. Thimes has had an established economic relationship with Amazon since 2016, sold over 175,000

products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and had $2 million in sales during the first six months of 2018. TP-Link knew of Thimes's successful sales on the Amazon Marketplace, as evidenced by TP-Link's entering into the Amazon Brand Protection Agreement with Amazzia for the specific purpose of eliminating third-party resellers—like Thimes—of TP-Link branded products on the Amazon Marketplace. Defendants submitted 28 complaints to Amazon alleging that Thimes was selling counterfeit products for the specific purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace. Amazzia has admitted that it submitted the 28 complaints to Amazon with the goal of "[i]mmediate removal of the seller's offer of this counterfeit product." As a result of Defendants' complaints, Amazon suspended and expelled Thimes from the Amazon Marketplace. As a result of the expulsion, Thimes was unable to sell its aging inventory, access its funds stored with Amazon, and continue its profitable sales track record on the Amazon Marketplace.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

***

**INTERROGATORY NO. 4**:

Describe in detail all facts and circumstances relating to the specific conduct by TP-LINK USA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4**:

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "relating to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim. Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced. Plaintiff further objects to this Interrogatory as duplicative of Interrogatory No. 1. Plaintiff further objects to the definition of "YOU"

1  and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a
2  Universal Goods & Sales.

3      Subject to and without waiving the foregoing objections, based on information
4  reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended
5  Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's
6  claim for interference with existing and prospective business relationships.  Thimes has
7  had an established economic relationship with Amazon since 2016, sold over 175,000
8  products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and
9  had $2 million in sales during the first six months of 2018. TP-Link knew of Thimes's
10 successful sales on the Amazon Marketplace, as evidenced by TP-Link's entering into
11 the Amazon Brand Protection Agreement with Amazzia for the specific purpose of
12 eliminating third-party resellers—like Thimes—of TP-Link branded products on the
13 Amazon Marketplace. TP-Link instructed Amazzia to submit 28 complaints to Amazon
14 alleging that Thimes was selling counterfeit products for the specific purpose of
15 disrupting and stopping Thimes's sales on the Amazon Marketplace. TP-Link had no
16 reasonable basis for alleging to Amazon that Thimes sold counterfeit TP-Link branded
17 products, as TP-Link lodged such complaints before it ever received any orders of TP-
18 Link products from Thimes.  Furthermore, after TP-Link received orders of TP-Link
19 products from Thimes and had an opportunity to inspect them, it knew that these
20 products were still factory-sealed and thus unaltered in any way, yet it continued to
21 knowingly or recklessly allege to Amazon that Thimes sold counterfeit TP-Link
22 branded products. Actual disruption occurred, as Amazon suspended and expelled
23 Thimes from the Amazon Marketplace. As a result of the expulsion, Thimes was unable
24 to sell its aging inventory, access its funds stored with Amazon, and continue its
25 profitable sales track record on the Amazon Marketplace.

26     Plaintiff will supplement this Interrogatory response as appropriate after
27 discovery is substantially complete.
28 ***

**INTERROGATORY NO. 5**:

Describe in detail all facts and circumstances relating to the specific conduct by AMAZZIA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 5**:

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "relating to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim. Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced. Plaintiff further objects to this Interrogatory as duplicative of Interrogatory No. 1. Plaintiff further objects to the definition of "YOU" and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for interference with existing and prospective business relationships. Thimes has had an established economic relationship with Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and had $2 million in sales during the first six months of 2018. Amazzia knew of Thimes's successful sales on the Amazon Marketplace, as evidenced by Amazzia's entering into the Amazon Brand Protection Agreement with TP-Link for the specific purpose of eliminating third-party resellers—like Thimes—of TP-Link branded products on the Amazon Marketplace. Amazzia submitted 28 complaints to Amazon, per instruction from TP-Link, alleging that Thimes was selling counterfeit products for the specific purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace. Amazzia has admitted that it submitted the 28 complaints to Amazon with the goal of "[i]mmediate removal of the seller's offer of this counterfeit product." Amazzia had no

reasonable basis for alleging to Amazon that Thimes sold counterfeit TP-Link branded products, as Amazzia lodged such complaints before it ever received any orders of TP-Link products from Thimes.  Furthermore, after TP-Link received orders of TP-Link products from Thimes and had an opportunity to inspect them, it knew that these products were still factory-sealed and thus unaltered in any way, yet Amazzia continued to knowingly or recklessly allege to Amazon that Thimes sold counterfeit TP-Link branded products. Actual disruption occurred, as Amazon suspended and expelled Thimes from the Amazon Marketplace.  As a result of the expulsion, Thimes was unable to sell its aging inventory, access its funds stored with Amazon, and continue its profitable sales track record on the Amazon Marketplace.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

### b)   Thimes Should be Compelled to Provide Complete Responses to Interrogatory Nos. 1, 4, and 5

Thimes's responses simply refer to and copy language from its amended Fifth Amended Complaint and fail to fully respond to these interrogatories.

Under California law, interference with prospective economic advantage requires that the plaintiff allege an act that is wrongful independent of the interference itself. *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).  In other words, plaintiff must show that the defendant engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.

Thimes's response fails to identify how Defendants engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.  If Thimes is replying on its trade libel claim to satisfy this element, Thimes should amend to state this.  If Thimes cannot identify conduct that was wrongful by some legal measure other than the fact of interference itself, Thimes should amend to state that independent wrongful conduct does not exist.

### c) Thimes's Response

TP-Link's contention fails for several independent reasons.

*First*, the requirement for an independent wrongful act applies only to a claim for interference with *prospective* economic advantage, and Thimes's first cause of action alleges that TP-Link interfered with Thimes's *existing* and prospective business relationship with Amazon. *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1107–08 (9th Cir. 2007) ("The primary difference between the two torts is that, unlike intentional interference with existing contractual relations, interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself."); ECF No. 178 at ¶ 60 ("Defendants' accusations of counterfeiting … interfered with Plaintiff's existing and prospective business relationship with Amazon."). Under California law, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."' <u>San Jose Construction, Inc. v. S.B.C.C., Inc.</u>, 155 Cal. App. 4th 1528, 1544-1545 (2007).

Here, each of the 28 complaints TP-Link and Amazzia submitted to Amazon accusing Thimes of selling counterfeit products constitutes libel per se, which is defined as a statement that is "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code. § 45a; *Glob. Truss Am. LLC v. GLP German Light Prod. Inc.*, No. 11-CV-00168 SJO SSX, 2011 WL 13220296, at *15 (C.D. Cal. Dec. 1, 2011) ("The Court agrees that Plaintiff's statements are libel per se. Plaintiff's statements assert that Defendant GLP is guilty of an act of dishonesty, infringing on Plaintiff's trademark, which is defamatory on its face."). Thus, contrary to TP-Link's contention, Thimes's response does "identify how Defendants engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."

*Second*, each of TP-Link's interrogatory nos. 1, 4, and 5 seeks "facts and circumstances" relating to Thimes's claims. Thimes's response to each "furnish[ed]

the information available to [it]," as required by Federal Rule of Civil Procedure 33(b)(1)(B).  As TP-Link is aware and as the parties discussed during the July 21 Local Rule 37-1 meet and confer, Thimes did not submit the complaints to Amazon, nor does it have copies of the complaints.  (Meng Decl. ¶ 3.a.)  Thus, Thimes is not able to provide any additional detail concerning the "facts and circumstances" until it can gain access to those complaints through discovery.  The complaints submitted to Amazon are the subject of pending subpoenas issued by TP-Link and Amazzia to third party Amazon.  (*Id*.)  As shown above, each of Thimes's responses to interrogatory numbers 1, 4, and 5 state that "Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

*Third*, as to requiring Thimes to amend its response to state whether it is "replying (sic) on its trade libel claim to satisfy this [independent wrongful act] element," TP-Link cites no authority requiring a party responding to an interrogatory to state its legal positions, and Thimes is aware of none.

## 2. Interrogatory No. 12 and Document Request Nos. 2, 10, and 11

### a) TP-Link's Requests and Thimes's Responses

**INTERROGATORY NO. 12**:

Describe in detail any concerns, claims, or complaints regarding THIMES or any account run by AVRAHAM EISENBERG, including, but not limited to, intellectual property violations (trademark, patent or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings (including the "Amazon's warning letter" referred to in 5AC ¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and expulsions.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12**:

Plaintiff objects to this Interrogatory as compound. Plaintiff further objects to the terms "concerns … regarding THIMES or account run by AVRAHAM

EISENBERG," "negative customer feedback," "account issues," and "warnings" as vague and ambiguous. Plaintiff further objects to the Interrogatory to the extent it seeks information solely in the possession of third parties.  Plaintiff further objects to this Interrogatory as overbroad and unduly burdensome because it requires a description "in detail any concerns, claims or complaints" regarding Plaintiff.  Plaintiff will construe this Interrogatory as requesting Plaintiff to describe "claims, or complaints" that Plaintiff is aware of. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects that any relevance of identifying "each" communication it received from Amazon for "intellectual property violations (trademark, patent or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings, suspensions, removals, and expulsions" is minimal, is greatly outweighed by the burden of tracking down all such communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff will only identify the e-mails it received from Amazon containing warnings or complaints of intellectual property infringement (such as trademark infringement or counterfeiting), suspensions, removals, or expulsion.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Amazzia submitted complaints to Amazon on behalf of TP-Link via Amazon's Notice Infringement Process on the following dates: January 19, 2018, January 21, January 26, 2018, February 14, 2018, February 21, 2018, February 28, 2018, March 2, 2018, March 3, 2018, March 10, 2018, March 13, 2018, March 21, 2018, March 31, 2018, April 2, 2018, April 5, 2018, April 6, 2018, April 7, 2018, April 9, 2018, April 10, 2018, April 11, 2018, April 12, 2018, April 24, 2018, April 25, 2018, April 26, 2018, April 30, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 21, 2018.

Plaintiff also received an e-mail from Amazon on May 7, 2018 notifying Plaintiff about Amazon's suspension of Plaintiff for alleged infringement of intellectual property rights.

Plaintiff also received an e-mail from Amazon on August 27, 2018 notifying Plaintiff that it had been permanently expelled from the Amazon marketplace.

Plaintiff also received an e-mail from Amazon containing a Notice of Intellectual Property Rights Infringement on January 13, 2017, and a subsequent email on October 19, 2017 stating that Amazon had reinstated that content following Plaintiff's appeal. Plaintiff also received e-mails from Amazon on June 26, 2017 and May 11, 2018 containing a Notice of Intellectual Property Rights Infringement.  Plaintiff additionally received e-mails from Amazon containing a notice of trademark infringement on the following dates: May 31, 2018; June 24, 2018, and August 22, 2018. Plaintiff also received e-mails from Amazon regarding purported counterfeit Prevagen products on June 9, 2018, June 10, 2018, June 21, 2018, and June 23, 2018.

**DOCUMENT REQUEST NO. 2**:

All DOCUMENTS and COMMUNICATIONS related to any concerns, claims, or complaints regarding THIMES or any account run by AVRAHAM EISENBERG, including, but not limited to, intellectual property violations (trademark, patent, or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings (including the "Amazon's warning letter" referred to in 5AC ¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and expulsions.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 2**:

Plaintiff objects to the terms "concerns, claims, or complaints regarding Thimes or any account run by AVRAHAM EISENBERG," "negative customer feedback," "account issues," and "warnings" as vague and ambiguous. Plaintiff further objects that any relevance of "all" such documents and communications is minimal, is greatly

outweighed by the burden of tracking down those documents, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff will produce all e-mails sent to it by Amazon regarding complaints, policy warning notices, notices of intellectual property violations, or negative feedback.

**DOCUMENT REQUEST NO. 10**:

All DOCUMENTS and COMMUNICATIONS with AMAZON CONCERNING THIMES's account, including, but not limited to, the signed Amazon's standard Business Solutions Agreement (referred to in ¶ 6 of the 5AC), "appeal" (referred to in ¶ 45 of the 5AC: "Plaintiff appealed and got reinstated from the May 7th suspension."), and "administrative options" (referred to in ¶ 51 of the 5AC: "Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures.").

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 10**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all" documents and communications concerning Thimes's account. Plaintiff further objects that any relevance of "all" such documents and communications is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff will produce all e-mails that it sent to, or received from, Amazon concerning Amazon's standard Business Solutions Agreement, the appeal referred to in paragraph 45 of the Amended Fifth Amended Complaint, and the administrative options referred to in paragraph 51 of the Amended Fifth Amended Complaint.

**DOCUMENT REQUEST NO. 11**:

All DOCUMENTS and COMMUNICATIONS with AMAZON CONCERNING any account run by AVRAHAM EISENBERG (including under other names or aliases).

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 11**:

Plaintiff objects to this Request on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Mr. Eisenberg's, and any relevance of the documents requested is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "AVRAHAM EISENBERG" as overbroad, and interprets it to mean Avraham Eisenberg. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine,

or other applicable protections and privileges.

**b)      Thimes Should be Compelled to Provide Complete Responses to Interrogatory No. 12 and Request Nos. 2, 10, and 11**

These requests seek all documents and communications related to "[a]ny concerns, claims, or complaints" that could have impacted Thimes's standing with Amazon resulting in "terminat[ing] [Thimes] as a seller for any reason or for no reason at all."  Auyang Decl., Exh. B (5AC)), ¶ 6.

Thimes's refuses to meaningfully respond to these requests and instead relies on a series of improper objections and limitations, even though such requests are clearly relevant and proportional to Thimes's claim (and TP-Link's defense) for tortious interference.  Thimes should be required to withdraw these objections and limitations and fully respond.

Thimes accuses Defendants of causing its expulsion from Amazon.  However, as Thimes admits, Amazon could suspend or expel Thimes for any reason, including based on what Thimes characterizes as "bizarre behavior":

> To become an Amazon seller [Thimes] signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate [Thimes] as a seller for any reason or for no reason at all."  Auyang Decl., Exh. B (5AC), ¶ 6.
>
> *  *  *
>
> Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, restated repeatedly, and often have nothing to do with the reason for the suspension or expulsion…."  *Id.*, ¶ 1.

In response to **<u>Interrogatory No. 12</u>** and **<u>Request No. 2</u>**, Thimes improperly limits its responses based on a number of terms it considers overbroad, vague and ambiguous: (i) "concerns … regarding THIMES or account run by AVRAHAM

EISENBERG;" (ii) "negative customer feedback;" (iii) "account issues;" and (iv) "warnings."  Thimes has not satisfied its burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc.*, No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

Thimes also improperly objects to **Interrogatory No. 12** as to relevance and proportionality of identifying each "intellectual property violations (trademark, patent or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings, suspensions, removals, and expulsions."

Thimes further improperly limits its response to **Interrogatory No. 12**: "Plaintiff will only identify the e-mails it received from Amazon containing warnings or complaints of intellectual property infringement (such as trademark infringement or counterfeiting), suspensions, removals, or expulsion."  Similarly, in response to **Request No. 2**, Thimes improperly limits its response to intellectual property violations: "Plaintiff will produce all e-mails sent to it by Amazon regarding complaints, policy warning notices, notices of intellectual property violations, or negative feedback."

Likewise, for **Request No. 10**, Thimes improperly limits it response to emails related to only three specific issues: "Plaintiff will produce all e-mails that it sent to, or received from, Amazon concerning Amazon's standard Business Solutions Agreement, the appeal referred to in paragraph 45 of the Amended Fifth Amended Complaint, and the administrative options referred to in paragraph 51 of the Amended Fifth Amended Complaint."

While Thimes agreed during the parties' L.R. 37-1 conference to supplement its response to Interrogatory No. 12 to include more details (more than just dates of the listed complaints) for its current response, Thimes refuses to remove its objections and limitations and respond to the scope of the interrogatory and document requests.

Auyang Decl., ¶ 29.  Indeed, Thimes most recent July 20, 2022 document production highlights the deficiencies (*i.e.*, huge gaps) in Thimes's production, including documents related to TP-Link's alleged complaints about Thimes to Amazon, other third-party complaints about Thimes to Amazon, and Amazon's closure of Thimes's account for misuse of Amazon's API (Application Programming Interface), as well as suspension for violating the intellectual property rights of other third parties.

One example discussed during the parties' L.R. 37-1 conference was a <u>June 28, 2018</u> email from Amazon providing notification that Amazon was <u>closing</u> Thimes's account (just one month before Thimes was expelled on August 27, 2018): "Your account has been closed due to violations of our Seller Policies.  Your use of the Mobile App to extract dangerous goods (hazmat) information from our systems is prohibited by our policies."  Auyang Decl., Exh. C (Bates No. THIMES00311).  Amazon's June 28, 2018 notice also mentioned similar violations in the past:

> Because ***we have warned you about similar activities in the past***, your account has been suspended and will not be reactivated unless you acknowledge that you understand our policies, reaffirm your commitment to adhere to them, and communicate your plan of action to avoid these activities (and any similar activities) in the future. To sell on Amazon.com, please send us a plan that explains how you will address this problem.

*Id*.  Thimes only produced one <u>July 1, 2018</u> email to Amazon concerning violation of Amazon's API.  Auyang Decl., Exh. D (Bates Nos. THIMES00264-THIMES00265) ("[Thimes] received a violation regarding our use of the Amazon API on 06/29/2018.").  Thimes's July 1, 2018 email to Amazon also refers to another prior violation that involved improperly "altering" the Amazon platform: "Additionally, our former developer was responsible for testing a large volume of ASINs for safety risks and hazmat status.  ***In the past, we addressed this issue with your team and had in fact ceased any actions that may have altered the accuracy of the Amazon platform at least one year ago (shipment creation)***."  *Id*. (emphasis added).  Furthermore,

1   Thimes's July 1, 2018 email refers to working with Amazon: "We have immediately
2   ceased the use of MWS services as we work with your team to resolve this issue." *Id*.

3       Aside from the July 1, 2018 email to Amazon, Thimes has produced nothing else
4   such as the past violations mentioned in Amazon's email, the violation notice from
5   Amazon received by Thimes on 06/29/2018, Thimes work with Amazon to resolve the
6   issue (as mentioned in the email), and when and why Amazon reinstated Thimes's
7   account.  Amazon's closure of Thimes's account for a serious and recurring issue
8   unrelated to Defendants two months before Amazon expelled Thimes from the Amazon
9   Marketplace on August 27, 2018 and multiple related warnings are relevant to the
10  litigation and should be produced.

11      In a July 25, 2022 follow-up email to Thimes's counsel, TP-Link sent other non-
12  limiting examples of deficiencies in Thimes's document production.  Auyang Decl.,
13  Exh. E.

14  • **THIMES00286-THIMES00287**:  **8/22/2018 email** from Amazon to
15  avi@thimessolutions.com for Complaint ID# 5304333291 lodged by 3PM
16  Solutions notifying Thimes about a trademark infringement complaint for over **200**
17  **ASINs**.  Auyang Decl., Exh. F.  Thimes has not produced any correspondence with
18  Amazon relating to Complaint ID# 5304333291.  3PM Solutions lodged this
19  complaint just 5 days before Amazon expelled Thimes from the Amazon
20  Marketplace on 8/27/2018.

21  • **THIMES00308-THIMES00309**:  **7/20/2018 email** from Amazon to
22  avi@thimessolutions.com suspending Thimes's account for ASIN B0097BEG1C
23  (**Apple Ear Pods**) (Auyang Decl., Exh. G) to which Thimes appears to have
24  responded (*Id*., Exh. H, Bates No. THIMES00263) in a 7/21/2018 email to Amazon
25  describing *other complaints*, including: "On May 31, 2018, we replied to a *previous*
26  *inauthentic complaint* with invoices proving authenticity.  These invoices were
27  accepted on June 5th, 2018 and we were permitted to continue selling."  Thimes has
28  not produced any corresponding communications with Amazon, including

Amazon's response to Thimes's 7/21/2018 email or the "previous inauthentic complaint." Amazon suspended Thimes's account for an issue unrelated to Defendants nearly one month before Amazon expelled Thimes from the Amazon Marketplace on 8/27/2018.

- **THIMES00315**: **6/26/2017 email** from Amazon to avi@thimessolutions.com stating: "We reviewed your appeal and reinstated the following content: ASIN: B01MSITACV [**IPX7 Brand Waterproof Bluetooth Speaker**] Complaint ID: 996385701." Auyang Decl., Exh. I. Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00303**: **6/24/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 5162654761 for ASIN B00ED2OQIS (**Apple 12w USB Power Adapter**) stating: "We received a report from a rights owner that claims the items at the end of this email infringe their trademark," and requesting proof of product authenticity. Auyang Decl., Exh. J. Thimes has not produced any corresponding communications with Amazon about this Apple product, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00315**: **6/26/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 996385701 for ASIN B01MSITACV (**non-TP-Link product**) stating: "We reviewed your appeal and reinstated the following content: []." Auyang Decl., Exh. K. Thimes has not produced any corresponding communications with Amazon about this non-TP-Link product, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00318**: **10/19/2017 email** from Amazon to avi@thimessolutions.com stating: "We reviewed your appeal and reinstated the following content: ASIN: B01D1ZULK4 [**Pet Deshedder Glove**] Complaint ID: 1026446571." Auyang

Decl., Exh. L.  Thimes has not produced any corresponding communications with Amazon about this non-TP-Link product, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00354**: **1/19/2018 email** from Avi Eisenberg to us-compliance@tp-link.com, notice-dispute notice-dispute@amazon.com stating: "We received an email from Amazon today stating that TP-Link is asserting that items sold by us (under the storefront "Universal Goods and Sales", merchant ID A1Q1VKNP5VVQEY, ASIN B01DXVK3KY, Complaint ID: 1359628881) are counterfeit." Auyang Decl., Exh. M.  Thimes has not produced the referenced email received from Amazon.

- **THIMES00397**: **1/19/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1361098691 (ASIN B01DXVK3KY (TP-Link product)) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received.  Please provide the following information so that we can process your appeal: []."  Auyang Decl., Exh. N.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00398: 1/20/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1360991921 (ASIN B01DXVK3KY) stating: "We cannot accept your appeal because it does not address the claim we received. Please provide the following information so we can process your appeal: []."  Auyang Decl., Exh. O.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00405: 1/20/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1362495481 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your

appeal [].” Auyang Decl., Exh. P.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's “appeal” or Thimes's corresponding “appeal.”

- **THIMES00389: 1/25/2020 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1379227541 (ASIN B01DXVK3KY) stating: “We reviewed your appeal and reinstated the following content: ASIN: B01DXVK3KY.”  Auyang Decl., Exh. Q.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's “appeal” or Thimes's corresponding “appeal.”

- **THIMES00379: 1/26/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1362495481 (ASIN B01DXVK3KY) stating: “Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal [].” Auyang Decl., Exh. R.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's “appeal” or Thimes's corresponding “appeal.”

- **THIMES00404: 3/14/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1525794601 (ASIN B01DXVK3KY) stating: “Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal [].” Auyang Decl., Exh. S.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's “appeal” or Thimes's corresponding “appeal.”

- **THIMES00396: 4/2/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1577934581 (ASIN B01DXVK3KY) stating: “We reviewed your appeal and reinstated the following content: ASIN: B01DXVK3KY [].”  Auyang Decl., Exh. T.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's “appeal”

or Thimes's corresponding "appeal."

- **THIMES00387: 4/5/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1587479311 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []." Auyang Decl., Exh. U.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00387-THIMES00388:  4/5/2018  email** from Amazon to avi@thimessolutions.com for Complaint ID# 1587732841 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []." Auyang Decl., Exh. V.  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

    For **<u>Request No. 11</u>**—Thimes flatly refuses to respond based on relevance. However, Thimes contends complete "financial ruination" of a one-person business, *i.e.*, Mr. Eisenberg was the basically running the entire operation.  If Mr. Eisenberg was also running other Amazon accounts and committed time to other business, such facts are relevant to Thimes's lost profits claim.  Moreover, it is clear from the above examples that Mr. Eisenberg was responsible for corresponding with Amazon via the email address avi@thimessolutions.com.  Accordingly, Thimes's refusal to respond is improper.

### c)    Thimes's Response

<u>Interrogatory No. 12</u>:  Thimes objected to the terms "concerns … regarding THIMES or account run by AVRAHAM EISENBERG," "negative customer feedback," "account issues," and "warnings" because they are so broadly worded that

Thimes cannot intelligently respond.  Thimes is only able to provide information on what Amazon told Thimes about complaints submitted from brand owners.  Thus Thimes agreed to "identify the e-mails it received from Amazon containing warnings or complaints of intellectual property infringement (such as trademark infringement or counterfeiting), suspensions, removals, or expulsion."

TP-Link's motion to compel is also premature.  As discussed during the parties' July 21 conference, Thimes agreed to supplement its response to interrogatory no. 12 by "identify[ing] the complainant and the substance of the complaint, concern, or claim," as TP-Link requested in its LR 37.1 letter.  (Auyang Decl. Ex. DD at 5.)  Thimes served supplemental responses on July 28, as agreed.  (Meng Decl. ¶ 4.)   The supplemental response moots TP-Link's motion as to interrogatory no. 12.

Request No. 2:  As shown above, Thimes already agreed to produce "all e-mails sent to it by Amazon regarding complaints, policy warning notices, notices of intellectual property violations, or negative feedback."  During the July 21 conference, Thimes also agreed to ascertain whether it had additional communications concerning "account issues" and, if so, agreed to produce those communications as well by July 28. (Meng Decl. ¶ 3.b.)  Those communications are included in Thimes's supplemental production of 259 documents on July 28.  (*Id.*)  Thimes's supplemental production moots TP-Link's motion as to request no. 2.

Request No. 10:  As shown above, Thimes already agreed to produce "all e-mails that it sent to, or received from, Amazon concerning Amazon's standard Business Solutions Agreement, the appeal referred to in paragraph 45 of the Amended Fifth Amended Complaint, and the administrative options referred to in paragraph 51 of the Amended Fifth Amended Complaint."  In addition to what Thimes already agreed to produce (and did produce) in response to Request No. 2 (*see* above), Thimes also agreed during the July 21 conference to ascertain whether it had additional communications concerning "account issues" and, if so, agreed to produce those communications as well by July 28.  (Meng Decl. ¶ 3.b.)  Thimes's supplemental

production moots TP-Link's motion as to request no. 10.

Request No. 11:   in this request, TP-Link seeks "all documents and communications with Amazon" concerning "any account run by Avraham Eisenberg." Yet the only justification it provides for seeking "all" such documents is boilerplate language that this request is "relevant to Thimes's lost profits claim."  TP-Link fails to explain why "all" documents Mr. Eisenberg exchanged with Amazon concerning his businesses or accounts unrelated to Thimes are relevant, particularly given that liability on Thimes's claims turns on TP-Link's conduct, not Mr. Eisenberg's.  TP-Link also fails to provide any authority as to why "all" such documents and communications concerning "any" account run by Mr. Eisenberg are proportional to the needs of the case.

**B.    TP-Link's Requests Relevant to Damages Claims**

**1.    Interrogatory No. 3 and Document Request Nos. 12, 13, 17, 18, 19, 20, and 26**

These interrogatories and document requests seek information relevant to Thimes's damages claim for over $25 million dollars, as well as TP-Link's counterclaim for trademark infringement.  This information is relevant and discoverable under Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

**a)    TP-Link's Requests and Thimes's Responses**

**INTERROGATORY NO. 3**:

Describe in detail all facts and circumstances that support or otherwise relate to YOUR claim for compensatory damages, including YOUR damages calculations.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3**:

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "that support or otherwise relate to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim.  Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced.  Plaintiff further objects to

this Interrogatory as duplicative of Interrogatory Nos. 1 and 2. Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for compensatory damages, based on information reasonably available at this time. Specifically, TP-Link tortiously interfered with Thimes's economic relationship with Amazon by submitting to Amazon 28 complaints alleging that Thimes was selling counterfeit products, for the specific purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace. Thimes had an established economic relationship with Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and had $2 million in sales during the first six months of 2018. TP-Link knew of Thimes's successful sales on the Amazon Marketplace, and entered into the Amazon Brand Protection Agreement with Amazzia for the specific purpose of eliminating third-party resellers like Thimes of TP-Link branded products on the Amazon Marketplace.

TP-Link's conduct constitutes trade libel, as each of the 28 complaints Defendants submitted to Amazon alleging that Thimes was selling counterfeit products constitutes a disparaging statement that was published to others in writing and induced Amazon not to deal with Plaintiff, and is libel per se under California law.

As a result of TP-Link's complaints, Amazon suspended and expelled Thimes from the Amazon Marketplace. Plaintiff has been damaged by TP-Link's tortious interference because Plaintiff had to sell much of its inventory at a loss, could not access its funds stored with Amazon, and could not continue its profitable sales track record on the Amazon Marketplace.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

1 \*\*\*

2 **DOCUMENT REQUEST NO. 12**:

3     DOCUMENTS sufficient to show THIMES business activities and source of

4 income since August 27, 2018.

5 **THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 12**:

6     Plaintiff objects to the terms "business activities" and "source of income" as

7 vague and ambiguous. Plaintiff further objects to the definition of "THIMES" as

8 overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods &

9 Sales.

10     Subject to and without waiving the foregoing objection, Plaintiff states that it

11 will produce responsive, non-privileged documents in its possession, custody, or

12 control that are located after a reasonably diligent search.

13 \*\*\*

14 **DOCUMENT REQUEST NO. 13**:

15     DOCUMENTS sufficient to show AVRAHAM EISENBERG's business

16 activities and source of income since August 27, 2018.

17 **THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 13**:

18     Plaintiff objects to the terms "business activities" and "source of income" as

19 vague and ambiguous. Plaintiff further objects to this Request on grounds of relevance,

20 as liability on Plaintiff's claims turns on TP-Link's conduct, not Mr. Eisenberg's, and

21 any relevance of the documents requested is minimal, is greatly outweighed by the

22 burden of tracking down all such documents and communications, and on that ground,

23 is disproportional to the needs of the case, considering the parties' resources, the

24 importance of the discovery in resolving the issues, and whether the burden or expense

25 of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the

26 definition of "AVRAHAM EISENBERG" as overbroad, and interprets it to mean

27 Avraham Eisenberg.

28 \*\*\*

**DOCUMENT REQUEST NO. 17**:

All DOCUMENTS CONCERNING YOUR assets, including, but not limited to, funding and bank account balances, since formation.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 17**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all" documents concerning Plaintiff's finances. Plaintiff also objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's "assets" or "funding and bank account balances." Plaintiff further objects that any relevance of "all" documents is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

\*\*\*

**DOCUMENT REQUEST NO. 18**:

All DOCUMENTS, such as ledgers, invoices, or merchant account summaries, since THIMES began selling products, evidencing purchases and sales of any products that YOU advertised, marketed, promoted, or listed for sale.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 18**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS" concerning every product Plaintiff has ever "advertised, marketed, promoted, or listed for sale." Plaintiff also objects on grounds of relevance to the extent that this Request

demands documents concerning Plaintiff's purchases and sales of non-TP-Link branded products, as such documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim. Plaintiff further objects that any relevance of the requested documents is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

***

**DOCUMENT REQUEST NO. 19**:

All financial statements for THIMES, including year-end and interim balance sheets, income statements, monthly profit and loss statements, and statements of cash flow.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 19**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all" of Plaintiff's financial statements. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows: Plaintiff will produce its annual profit and loss statements and balance sheets.

***

**DOCUMENT REQUEST NO. 20**:

DOCUMENTS sufficient to show financial information CONCERNING YOUR sales, on a monthly basis, by product description, units sold, month-end inventory

1    details by product, total revenue collected, costs, gross profits, and net profits.

2    **THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 20**:

3        Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to

4    mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to

5    this Request as overbroad, unduly burdensome, and disproportional to the needs of the

6    case insofar as it seeks documents and information concerning Plaintiff's sales of non-

7    TP-Link branded products.

8    \*\*\*

9    **DOCUMENT REQUEST NO. 26**:

10        All DOCUMENTS CONCERNING YOUR formation and operation including,

11   but not limited to, articles of organization, articles of incorporation, bylaws, operating

12   agreements and amendments, statements of information, shareholder ledgers, stock

13   certificates, members units, and minutes.

14   **THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 26**:

15        Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to

16   mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to

17   this Request on grounds of relevance, as the requested documents have no possible

18   bearing on Plaintiff's claims or TP-Link's counterclaim. Plaintiff also objects to this

19   Request to the extent it calls for the production of information protected from

20   disclosure by the attorney-client privilege, the work product doctrine, or other

21   applicable protections and privileges.

22              **b)    Thimes Should be Compelled to Provide Complete**

23                     **Responses to Interrogatory No. 3 and Document**

24                     **Request Nos. 12, 13, 17, 18, 19, 20, and 26**

25        Thimes objects to **Interrogatory No. 3** as "premature because discovery only

26   recently commenced." Thimes then just recycles the same general statements about

27   Thimes's past sales and its inability to sell inventory made in the amended 5AC (*see*

28   Auyang Decl., Exh. B (5AC)) "based on reasonably available at this time."

However, Thimes filed its Original Complaint on May 29, 2019 seeking "Compensatory damages of at least $5,000,000." Thimes should have a basis for its damages claims beyond general statements (especially because Thimes was required to plead special damages for a trade libel claim) to meet its Rule 11 obligations. For example, Thimes claims complete "financial ruination" and lost profits based on constant sales and static income: "Assuming a 10-year income stream for [Thimes], constant sales and static income of $900,000 per year, discounted at 3%, we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000." Auyang Decl., Exh. B (5AC), ¶ 64. Thimes has provided no substantive basis for its damages claim, including how it devised a 3% discount.

Thimes must supplement its response to address these deficiencies.

**Request No. 12**—Thimes "objects to the terms "business activities" and "source of income" as vague and ambiguous but agrees to produce. Thimes should be required to withdraw these objections and produce.

**Request No. 13**—Thimes outright refuses to produce based on improper objections, including: "Plaintiff further objects to this Request on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Mr. Eisenberg's." This request is relevant to Thimes's damages claim. Thimes's term business model was "buying something cheaply from a down-stream distributor [] and selling it at an enhanced price point online []." Auyang Decl., Exh. B (5AC), ¶ 3. Thimes claims complete "financial ruination" and lost profits based on constant sales and static income: "Assuming a 10-year income stream for [Thimes], constant sales and static income of $900,000 per year, discounted at 3%, we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000." *Id.*, ¶ 64.

As relevant to Thimes's damages claim, this request seeks documents concerning whether Thimes (essentially a sole proprietorship run by Mr. Eisenberg) had a willingness to continue the business after Thimes was supposedly expelled from

the Amazon platform in August 2018 to support a damages model with "constant sales" and "static income." Indeed, Mr. Eisenberg found a more profitable venture by starting a cryptocurrency scheme and from December 2021 to April 2022 proceeded to defraud about 6,000 investors of $14 million dollars. *See* Auyang Decl., Exh. W (ECF No. 175, TP-Link Counterclaim), ¶ 9. This request is relevant to Thimes's damages claim that Mr. Eisenberg had no interest in continuing Thimes's operations and in fact found more profitable opportunities.

In any case, Mr. Eisenberg's sources of income are at-issue and relevant. Thimes produced documents showing sales **starting on August 23, 2015 through 2020**. Thus, Thimes had sales before it was incorporated in November 2016 and therefore such income flowed to Mr. Eisenberg. Thimes has not produced its 2015 tax return. Thimes also produced a 2017 1099-K from Amazon that was issued to Mr. Eisenberg personally (Bates Nos. THIMES00152-153). The K-1 included with Thimes's 2017 federal tax return shows that Thimes distributed the entire 2017 profit to Mr. Eisenberg as the sole shareholder (Bates Nos. THIMES00030-40).

At a minimum, Thimes must produce Mr. Eisenberg's tax returns for 2015, 2016, 2017, 2018, 2019, 2020, 2021, including supporting schedules and K-1s and 1099s from any company.

**Request No. 17**—Thimes outright refuses to produce based on improper objections. Specifically, Thimes improperly "objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's 'assets' or 'funding and bank account balances.'" However, this request is relevant to Thimes's damages claim seeking 10 years of damages and TP-Link is entitled to assess the company's overall liquidity and capital management in terms of both assets and structure.

Thimes cannot unilaterally determine what issues it will respond to and limit its response on that basis. For at least the same reasons for Interrogatory No. 3 and Document Request Nos. 13 and 18, Thimes should withdraw its objections and produce

responsive documents.

**Request No. 18**—Thimes outright refuses to produce based on improper objections, including "Plaintiff also objects on grounds of relevance to the extent that this Request demands documents concerning Plaintiff's purchases and sales of non-TP-Link branded products, as such documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim.'"

Thimes seeks at least $25 million dollars in damages for its supposed "financial ruination." Auyang Decl., Exh. B (5AC), ¶ 5; *see also* ¶ 7 ("Now . . . there is only ruin.") and ¶ 54 ("The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month. Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000."). Thus far, Thimes has only produced the following cherry-picked documents—an incomplete set of tax returns, incomplete set of annual P&L statements, two 1099-Ks, and Excel summaries of supposed Amazon sales, but no underlying supporting documents. TP-Link is entitled to challenge Thimes's lost profit claims based on more than what Thimes wants to produce. In addition, for at least the same reasons for Interrogatory No. 3 and Document Request Nos. 13 and 17, Thimes should withdraw its objections and produce responsive documents.

Indeed, the veracity of Thimes's production is questionable. For example, Thimes produced two invoices which it submitted to Amazon from The Surplus Company LLC. Auyang Decl., Exh. X (Bates Nos. THIMES00064-THIMES00065) and Exh. Y (Bates Nos. THIMES00067-THIMES00068), respectively. Both invoices have the same Invoice #33063 and date (01/08/2018), but for different quantities of products. Specifically, Bates Nos. THIMES00064-65 is Invoice #33063, dated 01/08/2018 for **480 units** of TP-Link AC5400, sent to Amazon on January 19, 2018. Auyang Decl., Exh. X. Thimes produced this invoice as a PDF (with the following metadata "Created: 6/26/2022 7:11:05 AM" and "Modified: 6/26/2022 10:01:21 AM").

Auyang Decl., ¶ 25.

In contrast, Bates Nos. THIMES00067-68 is Invoice #33063, dated 01/08/2018 for **360 units** of TP-Link AC5400, sent to Amazon on June 4, 2018.  Auyang Decl., Exh. Y.  Thimes produced this invoice as a PDF (with the following metadata "Created: 6/26/2022 8:39:44 AM" and "Modified: 6/26/2022 10:01:22 AM").  Auyang Decl., ¶ 26.

Moreover, Thimes produced three Excels showing just its Amazon sales (Bates Nos. THIMES00001, THIMES00256 and THIMES00257) from 2015 to July 2018.  However, Thimes's 2019 and 2020 P&L statements show income from sales that Thimes has not provided the sales data or evidence where it was selling post-August 2018 when Thimes was allegedly expelled from Amazon.

Thimes must produce underlying sales documentation, including, but not limited to, exporting its QuickBooks files, exporting its InventoryLab files, detailed sales transactions (like Bates No. THIMES00001) *in Excel* that show *all sales across all platforms* (and indicating the platform or other means of sales) that *tie to the profit and loss statements* for 2015 to June 30, 2022.

**Request No. 19**—Thimes limits its production to "its annual profit and loss statements and balance sheets."  It is unclear which balance sheets (*e.g.*, monthly, quarterly or yearly) Thimes has agreed to produce.  Moreover, this request seeks more than Thimes's limited production.  Thimes must also produce all financial statements without objections for the same reasons applicable to Interrogatory No. 3 and Document Request Nos. 13, 17, and 18.

Thimes produced documents showing sales starting on **August 23, 2015 and continuing through 2020**.  Thus, sales were made before Thimes was incorporated in November 2016.  At a minimum, Thimes must produce:

- detailed balance sheets in Excel (as of 12/31) for 2015, 2016, 2017, 2018, 2019, 2020, 2021, and as of 6/30/2022;
- cash flow statements in Excel (as of 12/31) for 2015, 2016, 2017, 2018,

2019, 2020, 2021, and as of 6/30/2022;

- missing P & L statements for (i) annual P&L for 2015, 2016, and 2021; (ii) monthly P&L 2015, 2016, 2019, 2020, and 2021 (in Excel); and (iii) P&L as of 6/30/2022; and

- missing tax returns for 2015, 2016, and 2021 (including supporting schedules and K-1s and 1099s).

**Request No. 20**—Thimes outright refuses to produce based on improper objections, including "Plaintiff further objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks documents and information concerning Plaintiff's sales of **non-TP-Link branded products**." Thimes must produce responsive documents without objections for the same reasons applicable to Document Request Nos. 13, 17, and 18.

**Request No. 26**—Thimes outright refuses to produce based on improper objections, including: "Plaintiff further objects to this Request on grounds of relevance, as the requested documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim."

This request is relevant to Thimes's damages claims. Thimes's business model was "buying something cheaply from a down-stream distributor [] and selling it at an enhanced price point online []." Auyang Decl., Exh. B (5AC), ¶ 3. Thimes claims complete "financial ruination" and lost profits for 10 years. This request seeks documents to examine if Thimes was essentially a sole proprietorship run by Mr. Eisenberg, in other words, was this business model entirely dependent on Mr. Eisenberg—issues relevant to Thimes's lost profit claim. Moreover, TP-Link is entitled to assess the company's overall liquidity and capital management in terms of both assets and structure.

This request is also relevant to TP-Link's counterclaim for violation of its intellectual property rights, and in particular related to piercing the corporate veil. Thimes has not provided any evidence that there are multiple shareholders. Mr.

Eisenberg, as the Founder and CEO of Thimes, is thus the sole (if not majority) owner of Thimes and cannot hide behind a corporate structure to shield his wrongdoing.

Closely held corporations are most susceptible to piercing the corporate veil, in particular if there is no real separation between the company and its single owner and the corporation is used for illegal activities, *i.e.*, to violate intellectual property rights of others. For example, commingling of assets, the corporation was inadequately capitalized and depended on personal funds from Mr. Eisenberg (*e.g.*, products purchased using personal bank accounts), Mr. Eisenberg personally guaranteed payment of the Thimes's debts/loans, Mr. Eisenberg paid bills unrelated to Thimes from the business accounts, Mr. Eisenberg deposited funds payable to Thimes into his personal bank account or a business account unrelated to Thimes, the basis for any salary or dividends paid to Mr. Eisenberg, and expenses or loans (including the documents and terms of any loans). Thimes must withdraw its objections and produce responsive documents.

### c)      Thimes's Response

Interrogatory No. 3: Thimes objected to this interrogatory on the grounds of overbreadth and undue burden because it seeks description of "all" facts "that support or otherwise relate to" Thimes's claims and damages calculations. TP-Link fails to provide any authority or reasoning why such a broadly worded request is relevant or proportional to the needs of the case. If TP-Link wanted Thimes to provide facts supporting the allegation in paragraph 64 it identified in this stipulation, TP-Link should have so stated in the interrogatory.

TP-Link's contention that "Thimes has provided no substantive basis for its damages claim" also misses the mark. Interrogatory No. 3 seeks the "facts and circumstances" for Thimes's claims for damages, and Thimes provided "the information available to [it]" as required by Rule 33(b)(1)(B). As Thimes explained during the July 21 conference, Thimes's expert will provide detailed information concerning Thimes's damages calculations. (Meng Decl. ¶ 3.c.) TP-Link will then be

able to elicit details of those calculations during its deposition of Thimes's damages expert.  Thimes's response further states that it will supplement this interrogatory as appropriate after additional discovery, and TP-Link provides no authority or justification as to why Thimes is not permitted to use the discovery period to gather additional "facts and circumstances" concerning its damages calculations.

Request No. 12:  Thimes does not know how to construe the terms "business activities" and "source of income," as TP-Link did not define them.  Nonetheless, Thimes agreed to produce responsive documents and explained during the July 21 conference that it would produce documents reflecting Thimes's income since expulsion from the Amazon Marketplace.  (Meng Decl. ¶ 3.d.)  Thimes's response and explanation moots any dispute.

Request No. 13:  Thimes objected on the grounds of relevance because liability on Thimes's claims turns on TP-Link's conduct, and not Mr. Eisenberg's.  Apart from asserting that "Mr. Eisenberg's sources of income are at-issue and relevant," TP-Link fails to provide authority supporting this contention or explain why Mr. Eisenberg's income from sources other than Thimes is relevant.  TP-Link says that the documents sought are "relevant to Thimes's damages claim that Mr. Eisenberg had no interest in continuing Thimes's operations and in fact found more profitable opportunities."  But it fails to provide any authority supporting the proposition that a plaintiff's finding "more profitable opportunities" in unrelated businesses is somehow relevant to or indicative of plaintiff's "willingness to continue the business after Thimes was supposedly expelled from the Amazon platform."  TP-Link's contention is a non-starter.

Request No. 17:  TP-Link seeks "all" documents concerning Thimes's assets "since formation," including "funding and bank account balances."  Thimes objected on grounds of relevance and proportionality.  TP-Link says that the request is relevant to Thimes's damages claim and TP-Link "is entitled to assess the company's overall liquidity and capital management in terms of both assets and structure."  As an initial

matter, TP-Link fails to provide any authority supporting its contention that a defendant is "entitled" to seek "all" documents concerning a plaintiff's assets "since formation." More importantly, Thimes will present detailed information concerning its damages calculations from its expert.  (Meng Decl. ¶ 3.c.)  There is no dispute that TP-Link is then "entitled" to challenge Thimes's expert's opinions and the basis for those opinions, including Thimes's "overall liquidity and capital management in terms of both assets and structure."

Request No. 18:  TP-Link contends that it "is entitled to challenge Thimes's lost profit claims based on more than what Thimes wants to produce."  But TP-Link's indignation glosses over the fact that Thimes's objections were necessitated by TP-Link's poorly drafted request—it seeks "all" documents "since Thimes began selling products, evidencing purchases and sales of any products" that Thimes offered for sale. Documents responsive to this request literally encompasses every document Thimes has ever received or generated.  TP-Link provides no authority suggesting that it is "entitled" to such documents.

TP-Link also tries to make a mountain out of a mole hill, questioning the "veracity" of Thimes's production by pointing to the purported discrepancy between the two invoices from The Surplus Company.  But as Thimes explained during its July 21 conference, Thimes intended to buy 480 units of TP-Link AC5400 routers from The Surplus Company, but was told that another entity had already purchased 120 units from the same lot, thus leaving Thimes with only 360 units.  (Meng Decl. ¶ 3.e.)  It is disingenuous for TP-Link to present incomplete information to the Court.

It is also disingenuous of TP-Link to complain about Thimes's production, particularly when it has intentionally defied the Court's June 29 order granting Thimes's motion to compel certain document requests and ordering TP-Link to complete its production by July 18.  (Meng Decl. ¶ 6, Ex. 3 (ordering TP-Link to complete its document production by July 18, 2022).)  For example, this Court ordered TP-Link to produce by July 18 all communications between TP-Link and Amazzia

(No. 3), TP-Link and Amazon (No. 4), and internally among TP-Link employees (No. 1) relating to Thimes's re-sales of TP-Link products.  (*Id.* at 1-2.)  TP-Link produced a total of 91 documents, only 14 of which were communications with Amazzia, and those communications were limited to the time period between April 19 and June 18, 2018.  (*Id.* ¶ 7.)  TP-Link's deficient production will be the subject of a forth coming joint stipulation.  (*Id.*)

Request No. 19:  Thimes agreed to produce "its annual profit and loss statements and balance sheets."  To date, Thimes has produced:

- balance sheets for the years 2017 through 2021,
- annual profit and loss statements for the years 2017 through 2020,
- monthly profit and loss statements for the years 2017 and 2018, and
- monthly profit and loss statements for the years 2015 through 2018, downloaded from InventoryLab.

(Meng Decl. ¶ 8).  As noted, Thimes's expert(s) will provide additional detail concerning Thimes's sales and damages.

Request No. 20:  TP-Link seeks "financial information" concerning Thimes's sales, "on a monthly basis," including details such as "product description, units sold, month-end inventory details by product, total revenue collected, costs, gross profits, and net profits."  Thimes objected on the grounds of relevance and proportionality, particularly as it relates to the non-TP-Link branded products that Thimes also sold. TP-Link does not bother providing any authority or explanation as to why such detailed information concerning Thimes's sales of non-TP-Link branded products is relevant or proportional to the needs of the case.  In any event, Thimes has already produced details sales information concerning its sales of all products on the Amazon Marketplace. (Meng Decl. ¶ 8.)  TP-Link fails to explain why such production is insufficient.

Request No. 26:   TP-Link seeks "all" documents concerning Thimes's "formation and operation."  According to TP-Link, the request is relevant "to examine if Thimes was essentially a sole proprietorship run by Mr. Eisenberg" and whether

Thimes has "multiple shareholders."  If that is the information TP-Link seeks, it should have drafted the following unobjectionable request:  "Documents sufficient to show Thimes's shareholders."  Instead, TP-Link chose to propound a request seeking "all" documents concerning Thimes's "formation and operation."  The Oxford dictionary defines the term "operation" as "an activity in which a business is involved."  (Meng Decl. ¶ 9.)  Thus, instead of a targeted request asking for documents it actually wants and purportedly needs, TP-Link chose to request "all" documents concerning Thimes's "operation," essentially seeking all documents concerning activities in which Thimes is involved.  The request is objectionable on its face.

**C.    TP-Link's Requests Relevant to Thimes's Trade Libel Claim**

**1.    Interrogatory No. 2**

**a)    TP-Link's Request and Thimes's Response**

**INTERROGATORY NO. 2**:

Describe in detail element-by-element all facts and circumstances that support or otherwise relate to YOUR claim for trade libel.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2**:

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "that support or otherwise relate to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim.  Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced.  Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for trade libel.  Each of the 28 complaints Defendants submitted to Amazon alleging that Thimes was selling counterfeit products constitutes a disparaging

statement that was published to others in writing and induced Amazon not to deal with Plaintiff. Each of Defendants' 28 complaints constitutes libel per se under California law.

In addition, Defendants' counterfeiting allegations are false, and TP-Link knew they were false. Thimes purchased the authentic, factory-sealed TP-Link AC5400 routers from The Surplus Company, a reputable supplier that Thimes had dealt with extensively, and TP-Link confirmed the authenticity of the products by purchasing eight of those routers itself. Furthermore, Defendants submitted the first complaint to Amazon on January 19, 2018, three days before the routers TP-Link purchased from Thimes on the Amazon Marketplace were even delivered to TP-Link. TP-Link then twice ignored Thimes's requests for the specific basis for TP-Link's counterfeit allegations.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

### b)  Thimes Should be Compelled to Provide a Complete Response to Interrogatory No. 2

In response to Interrogatory No. 2, Thimes fails to provide the facts that support its claim for trade libel.  To be actionable, a trade libel claim requires a claimant to, at a minimum, "identify the time and place of publication as well as the speaker, the recipient of the statement, *the substance of the statements*."  *Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13–4539 RSWL (MANx), 2013 WL 5405706, at *4 (C.D. Cal. Sept. 24, 2013) (dismissing trade libel claim when "[p]laintiff failed to identify" the specific time and location of each alleged statement) (emphasis added).  A trade libel claim is deficient when it fails to "give[] any indication of who from [defendant] made the allegedly libelous statements, to whom they made those statements, when they made the statements, *or what exactly they said*".  *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (emphasis added); *see also Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d

1068, 1081, n.8 (C.D. Cal. 1998) (In "the Ninth Circuit, a product defamation or *trade libel claim must be based on specific statements*," and "[t]he defamatory character of the language must be apparent from the words themselves.") (emphasis added).

Thimes's response fails to provide the exact statements made by any Defendant, yet identifies the statement that was made for "All IP complaints" in paragraph 47 of the 5AC (ECF No. 178):

> 47.  All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's counterfeiting, were filed under false attestation:[14]
> **Statements**
> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."
>
> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

Footnote 14 is the URL for reporting infringement to Amazon: https://www.amazon.com/gp/help/reports/infringement.

Thimes must amend its response to provide any language of the exact statement for which it is aware.  While Thimes agreed during the parties' L.R. 37-1 conference to amend its response by July 28 to include the language in Paragraph 47 of its 5AC (Auyang Decl., ¶ 27), TP-Link has yet to assess Thimes's supplemental response and has therefore included this request.  If needed, TP-Link will address this request in its L.R. 37-2.3 Supplemental Memorandum.

### c)    Thimes's Response

As discussed during the July 21 conference, Thimes did not submit the 28 counterfeiting complaints to Amazon, nor does Thimes have copies of the complaints. Indeed, the complaints are the subject of subpoenas issued on Amazon by TP-Link and Amazzia.  (Meng Decl. ¶ 3.a.)  Thus, Thimes "furnish[ed] the information available to [it]," as required by Rule 33(b)(1)(B), providing "the time and place of publication as

well as the speaker, the recipient of the statement, the substance of the statements." *See Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13–4539 RSWL (MANx), 2013 WL 5405706, at *4 (C.D. Cal. Sept. 24, 2013).

Thimes also served a supplemental response to interrogatory no. 2 on July 28, as discussed during the July 21 conference, Meng Decl. ¶ 4, Ex. 1, thus mooting any dispute.

> ### 2. Interrogatory Nos. 8, 9, 10, and 11 and Document Request No. 5
>
> #### a) TP-Link's Requests and Thimes's Responses

**INTERROGATORY NO. 8**:

Identify each customer that YOU contend did not do business with YOU due to a statement by AMAZZIA and the circumstances of that transaction.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8**:

Plaintiff objects to this Interrogatory to the extent it seeks information solely in the possession of third parties. Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous. Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Amazzia's submission of the 28 complaints on behalf of TP-Link to Amazon accusing Plaintiff of selling counterfeit goods induced Amazon to suspend and expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the Amazon Marketplace, the largest e-commerce platform in the world and where half of all online retail sales take place. Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction.

Plaintiff will supplement this Interrogatory response as appropriate after

1  discovery is substantially complete.

2  ***

3  **INTERROGATORY NO. 9**:

4      Identify each customer that YOU contend did not do business with YOU due to

5  a statement by TP-LINK USA and the circumstances of that transaction.

6  **THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9**:

7      Plaintiff objects to this Interrogatory to the extent it seeks information solely in

8  the possession of third parties. Plaintiff further objects to the term "circumstances of

9  that transaction" as vague and ambiguous. Plaintiff further objects to the definition of

10  "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal

11  Goods & Sales.

12      Subject to and without waiving the foregoing objections, Plaintiff responds as

13  follows: per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

14  accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

15  expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability

16  to market and transact on the Amazon Marketplace, the largest e-commerce platform

17  in the world and where half of all online retail sales take place. Following Amazon's

18  expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each

19  customer searching on the Amazon Marketplace for any product that Plaintiff had in

20  stock in its inventory, or would have eventually purchased for re-sale on Amazon in

21  the ordinary course of its business, is a lost transaction.

22      Plaintiff will supplement this Interrogatory response as appropriate after

23  discovery is substantially complete.

24  ***

25  **INTERROGATORY NO. 10**:

26      Identify each transaction (including sales) which YOU contend did not occur

27  due to a statement by AMAZZIA and the circumstances of that transaction.

28  **THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10**:

Plaintiff objects to this Interrogatory to the extent it seeks information concerning a "transaction" that "did not occur." Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous. Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the Amazon Marketplace, the largest e-commerce platform in the world and where half of all online retail sales take place. Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased for re-sale on Amazon in the ordinary course of its business, is a lost transaction.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

***

**INTERROGATORY NO. 11**:

Identify each transaction (including sales) which YOU contend did not occur due to a statement made by TP-LINK USA and the circumstances of that transaction.

**THIMES'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10**:

Plaintiff objects to this Interrogatory to the extent it seeks information concerning a "transaction" that "did not occur." Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous. Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as

follows: per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the Amazon Marketplace, the largest e-commerce platform in the world and where half of all online retail sales take place.  Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased for re-sale on Amazon in the ordinary course of its business, is a lost transaction.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete

***

**DOCUMENT REQUEST NO. 5**:

All DOCUMENTS and COMMUNICATIONS showing that AMAZON purchased any products as a customer of THIMES, including invoices and purchase orders.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 5**:

Plaintiff objects to the term "as a customer of THIMES" as vague and ambiguous. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff will produce all responsive, non-privileged documents in its possession, custody, or control that are located after a reasonably diligent search reflecting Plaintiff's sales of TP-Link branded wireless router products on the Amazon Marketplace.

1
2
3

      **b)**      **Thimes Should be Compelled to Provide Complete Responses to Interrogatory Nos. 8, 9, 10, and 11 and Document Request No. 5**

4
5
6
7
8
9
10
11
12
13

In order to establish a claim for trade libel, Thimes must "identify the ***particular purchasers*** who have refrained from dealing with him" and "specify the transactions of which he claims to have been deprived." *Erlich v. Etner*, 224 Cal.App.2d 69, 73 (1964) (emphasis added). Following *Erlich*, Thimes must establish that a particular customer refused to deal with it because the customer was influenced by the supposed at-issue statements made only to Amazon. *Id*. at 75. Moreover, allegations of a "general decline" in business are not sufficient to plead special damages, "even when no other cause for it is apparent." *Id*. at 73; *see also Monster Energy Co. v. Vital Pharms., Inc*., No. 18-1882-JGB (SHKx), 2019 WL 2619666, at \*13 (C.D. Cal. May 20, 2019) (citation omitted).

14
15
16
17
18
19
20
21

Thimes responses to **Interrogatory Nos. 8, 9, 10 and 11** fail to "specify the transactions of which [Thimes] claims to have been deprived." *Erlich*, 224 Cal.App.2d at 73. Specifically, Thimes's responses to **Interrogatory Nos. 8 and 9** do not identify a specific customer whose purchasing decision was impacted because that customer relied upon any statements by Defendants: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, ***each customer*** searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction."

22
23
24
25
26
27

Thimes's responses to **Interrogatory Nos. 10 and 11** suffer the same deficiencies as Thimes simply vaguely refers in general to lost transactions: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, ***each customer*** searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased for re-sale on Amazon in the ordinary course of its business, is a lost transaction."

28

If Thimes cannot identify any the specific customers and corresponding

transaction(s) for which it was deprived based on statements made by Defendants, then Thimes must amend its responses to so state.

As for **Document Request No. 5**, Thimes "objects to the term 'as a customer of THIMES' as vague and ambiguous." Thimes then limits its response to producing document for sales made *on the Amazon Marketplace* for just TP-Link products: "reflecting Plaintiff's sales of TP-Link branded wireless router products on the Amazon Marketplace." This re-write clearly does not respond to this request.

What "customer" means is clear—Merriam Webster defines customer as "one that purchases a commodity or service." Thimes has not satisfied its burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc.*, No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013).

If Thimes has no evidence that Amazon purchased any products *directly* from Thimes, then Thimes must amend its responses to so state or provide the reason why it does not possess such documents.

While Thimes agreed during the parties' L.R. 37-1 conference to amend its response by July 28 to state it does not have possession of any documents and communications evidencing Amazon directly purchased products as a customer of Thimes because Thimes does not have access to its Amazon account in order to show that Amazon placed orders with Thimes through an Amazon program called "Vendor Express" (Auyang Decl., ¶ 28), TP-Link has yet to assess Thimes's supplemental response and has therefore included this request. If needed, TP-Link will address this request in its L.R. 37-2.3 Supplemental Memorandum.

### c)  Thimes's Response

Interrogatory Nos. 8-11: TP-Link's contention regarding Thimes's purported failure to cite "particular purchasers" or "specif[ic] [] transactions" fails for two independent reasons. *First*, Thimes complied with Rule 33 by "furnish[ing]

information available to [it]."  Interrogatory numbers 8-11 ask Thimes to "identify each customer" and "identify each transaction" Thimes contends did not occur due to statements by TP-Link and Amazzia.  Thimes responded to each by stating that "each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased for re-sale on Amazon in the ordinary course of its business, is a lost transaction."  Discovery is still ongoing, and Thimes stated that it would supplement its response as appropriate after discovery is substantially complete.

*Second*, TP-Link contends that Thimes must amend its response to state that it "cannot identify any specific customers and corresponding transaction(s) for which it was deprived," but cites no authority supporting that proposition.  As stated, Rule 33 only requires the responding party to "furnish information available to the party."  Fed. R. Civ. Proc. 33(b)(1)(B).  Thimes did so.  Rule 33 does not require Thimes to state information that it does not yet know and is still uncovering during the discovery period.

Request No. 5:  Thimes explained during the July 21 conference that it did sell products directly to Amazon through Amazon's VendorExpress program.  But because of its expulsion Thimes no longer has access to its Amazon account, thus it is not in possession of any documents to show that Amazon purchased any products as a customer of Thimes.  Thimes's supplemental response served on July 28, 2022 moots the dispute as to this interrogatory.

## 3. Document Request No. 9

### a) TP-Link's Request and Thimes's Response

**DOCUMENT REQUEST NO. 9**:

DOCUMENTS sufficient to show the sourcing of THIMES's products sold on AMAZON, including any TP-Link products.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 9**:

Plaintiff objects to this Request on grounds of relevance, as the source of non-

TP-Link branded products that Plaintiff sold on the Amazon Marketplace has no bearing on any issue on Plaintiff's claims or TP-Link's counterclaim. Plaintiff further objects to the term "sourcing of Thimes's products" as vague and ambiguous. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff will produce responsive, non-privileged documents in its possession, custody, or control that are located after a reasonably diligent search reflecting Plaintiff's purchases of TP-Link products.

### b)   Thimes Should be Compelled to Provide a Complete Response to Document Request No. 9

Thimes objects based on relevance and agreed to produce only documents "reflecting Plaintiff's purchases of TP-Link products."  This unilateral narrowing is improper.

This request is relevant to Thimes's business model that forms the basis for its state law claims.  Specifically, Thimes's business model "is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount."  Auyang Decl., Exh. B (5AC), ¶ 3.  Based on this business model, Thimes claims that it only deals with "authentic" products and therefore "[TP-Link] and Amazzia published written complaints to Amazon, [were] libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise

infringing a trademark (on one occasion) ("IP Complaints")" (*Id*., ¶ 17), resulting in tortious interference with prospective business relations.

Thimes should produce documents sufficient to show the sourcing of its supposedly "authentic" products sold on Amazon to support its state law claims. This request is also relevant to TP-Link's counterclaim as Thimes's products were not genuine and therefore infringed TP-Link's intellectual property rights.

### c)   Thimes's Response

This request is not at issue – Thimes has already agreed to produce documents "reflecting Plaintiff's purchases of TP-Link products." In fact, Thimes identified the specific Bates numbers of the two invoices reflecting its purchases of all TP-Link products Thimes sold on the Amazon Marketplace. (Meng Decl. ¶ 3.f.) Thimes's production and identification of those documents squarely addresses TP-Link's contention as to why the documents sought are relevant—"to show the sourcing of its supposedly 'authentic' products sold on Amazon to support its state law claims" and "also relevant to TP-Link's counterclaim as Thimes's products were not genuine and therefore infringed TP-Link's intellectual property rights." TP-Link fails to explain how documents reflecting Thimes's purchase of non-TP-Link branded products is relevant to Thimes's claims or TP-Link's counterclaim. That's because the authenticity of ___non-___TP-Link branded products does not have any consequence in determining Thimes's claims or TP-Link's counterclaim. TP-Link's inclusion of this request is a waste of judicial and party resources.

### D.   TP-Link's Requests Relevant to TP-Link's Lanham Act Counterclaim

#### 1.   Document Request No. 1

##### a)   TP-Link's Request and Thimes's Response

**DOCUMENT REQUEST NO. 1**:

All DOCUMENTS and COMMUNICATIONS CONCERNING TP-LINK USA, including TP-Link products.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 1**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all" documents and communications concerning every TP-Link product Plaintiff has ever purchased or sold. Plaintiff also objects on grounds of relevance to the extent that this Request demands documents concerning Plaintiff's purchases of TP-Link products from sellers other than TP-Link, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's purchase of TP-Link products from other sellers. Plaintiff further objects that any relevance of "all" documents and communications is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff will produce all responsive, non-privileged documents in its possession, custody, or control that are located after a reasonably diligent search (1) reflecting Plaintiff's purchases of TP-Link products that it subsequently re-sold on Amazon or (2) reflecting Plaintiff's sales on Amazon of TP-Link products.

### b) Thimes Should be Compelled to Provide a Complete Response to Document Request No. 1

Thimes limits this request based on its nonsensical objection: "Plaintiff also objects on grounds of relevance to the extent that this Request demands documents concerning Plaintiff's purchases of TP-Link products from sellers other than TP-Link, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's purchase of TP-Link products from other sellers."

Thimes ignores TP-Link's counterclaim for trademark infringement and trademark counterfeiting. This request is relevant to (at a minimum) Thimes's intentional and willful infringement of TP-Link's Mark, Thimes's marketing/listings for TP-Link products, as well as whether Thimes informed consumers that TP-Link's original manufacturer's warranty did not convey to consumers who purchased from Thimes and that Thimes did not have authorization from TP-Link to sell any products. These issues are likewise relevant to TP-Link's defense of Thimes's state law claims.

Mr. Eisenberg has made comments on social media about his knowledge of intellectual property rights (relevant to willful infringement) in posts referring to TP-Link:



https://twitter.com/avi_eisen/status/1360755877205131268

While Thimes agreed to produce documents: "(1) reflecting Plaintiff's purchases of TP-Link products that it subsequently re-sold on Amazon or (2) reflecting Plaintiff's sales on Amazon of TP-Link products," this request is not limited to just products sold on Amazon.

Thimes should be required to withdraw its objections and produce responsive documents and communications, including, but not limited to, for TP-Link products sold in any sales channel (not just Amazon), any documents and communications (including postings from Facebook and Twitter) in which Mr. Eisenberg made any comments about TP-Link or his knowledge about intellectual property law.

### c) Thimes's Response

Thimes has already agreed to and produced documents evidencing its purchases of TP-Link products and its entire history of sales of all products on the Amazon Marketplace. (Meng Decl. ¶¶ 3.f, 8.) As Thimes explained on the July 21 conference and in its supplemental response to Request No. 22, Thimes conducted the vast majority of its sales on the Amazon Marketplace. (*Id.* ¶ 3.g.) Thimes also sold a small amount of TP-Link products through Wal-Mart. (*Id.*) But Thimes's online Wal-Mart account does not provide information concerning historical sales and, after completing a reasonably diligent search of documents in its possession, custody, or control, Thimes is not in possession of any documents concerning its listings of TP-Link products sold through Wal-Mart.

As to whether the documents sought are relevant, TP-Link does not articulate why Thimes's "inform[ing] consumers that TP-Link's original manufacturer's warranty did not convey to consumers who purchased from Thimes" is relevant to Thimes's intentional interference and trade libel claims, or TP-Link's trademark infringement claim.

Thimes also objected to the request on grounds of burden and proportionality. A search of the term "TP-Link" in Thimes's email brought back 1,042 hits. (Meng Decl. ¶ 11.) Unless TP-Link proposes some meaningful way to tailor its request to return a more reasonable number of hits, the burden of collecting and producing all 1,042 emails greatly outweighs the minimal relevance the communications represent, and is not proportional to the needs of the case.

### 2. Document Request No. 3

### a) TP-Link's Request and Thimes's Response

**DOCUMENT REQUEST NO. 3**:

All DOCUMENTS and COMMUNICATIONS between THIMES and any third-party (including, but not limited to, AMAZON and customers) CONCERNING TP-LINK USA or any TP-Link product.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 3**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS and COMMUNICATIONS" concerning every TP-Link product Plaintiff has ever purchased or sold. Plaintiff further objects that any relevance of "all" documents and communications is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges. Plaintiff further objects to this Request as duplicative of Request No. 1.

                **b)    Thimes Should be Compelled to Provide a Complete Response to Document Request No. 3**

Thimes refuses to produce on the basis that "this Request as duplicative of Request No. 1." This request is relevant to TP-Link's defense to Thimes's tortious interference claim and whether Amazon or customers had issues with TP-Link products sold by Thimes. For the same reasons detailed for Request No. 1, Thimes must supplement its production without objections.

                **c)    Thimes's Response**

TP-Link failed to articulate any valid reason how this request is not duplicative of Request No. 1. The same objections of burden and proportionality apply equally to this request.

### 3. Document Request No. 4

#### a) TP-Link's Request and Thimes's Response

**DOCUMENT REQUEST NO. 4**:

All DOCUMENTS and COMMUNICATIONS between AVRAHAM EISENBERG and any third-party (including, but not limited to, AMAZON and customers) CONCERNING TP-LINK USA or any TP-Link product.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 4**:

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS and COMMUNICATIONS" concerning every TP-Link product Plaintiff has ever purchased or sold. Plaintiff further objects that any relevance of "all" documents and communications is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "AVRAHAM EISENBERG" as overbroad, and interprets it to mean Avraham Eisenberg. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

#### b) Thimes Should be Compelled to Provide a Complete Response to Document Request No. 4

Thimes objects to this request "as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS and COMMUNICATIONS" concerning every TP-Link product Plaintiff has ever purchased or sold." Thimes simply refuses to produce any responsive documents. For the same reasons detailed for Document Request No. 1, Thimes must supplement its production to include responsive documents without objections.

**c)    Thimes's Response**

Mr. Eisenberg operated Thimes.  (Meng Decl. ¶ 10.)  The same objections on grounds of burden and proportionality apply equally to this request.

**4.    Document Request No. 14**

**a)    TP-Link's Request and Thimes's Response**

**DOCUMENT REQUEST NO. 14**:

All DOCUMENTS and COMMUNICATIONS about Fortress DAO CONCERNING investors' contention that millions of dollars in investors' funds have been improperly retained (*see* Counterclaims ¶ 9).

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 14**:

Plaintiff objects to this Request because the relevance of the documents requested is nonexistent and is also greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**b)    Thimes Should be Compelled to Provide a Complete Response to Document Request No. 14**

Plaintiff flat out objects to responding: "Plaintiff objects to this Request because the relevance of the documents requested is nonexistent" and feigns disproportionality. The Court denied Thimes's motion to strike allegations related to Fortress DAO (*see* ECF No. 194) and TP-Link should not be prevented from taking discovery regarding Mr. Eisenberg's business activities.

This request is relevant to Thimes's damages claim as it seeks documents and communications as to whether Mr. Eisenberg (apparently the sole proprietorship of Thimes) had a willingness to continue the business after Thimes was supposedly expelled from the Amazon platform in August 2018 in order to support its damages model of "constant sales" and "static income."  Indeed, Mr. Eisenberg found a more

profitable venture by starting a cryptocurrency scheme and from December 2021 to April 2022 proceeded to defraud about 6,000 investors of $14 million dollars.  *See* Auyang Decl., Exh. W, ¶ 9.  This request is relevant to Thimes's damages claim that Mr. Eisenberg had no interest in continuing Thimes's operations and in fact found more profitable opportunities.

Thimes must remove it objections and produce responsive documents.

### c)   Thimes's Response

TP-Link's broadly worded request seeks "all" documents concerning a cryptocurrency investment unrelated to Thimes, TP-Link, the TP-Link branded wireless router products, or TP-Link's trademark(s) at issue in this case.  That Mr. Eisenberg is involved in the investment is the only connection between FortressDAO and this litigation.

Despite its assertion, TP-Link cites no authority suggesting that a plaintiff's finding "more profitable opportunities" than the business a defendant destroyed is a defense (or even relevant) to claims for intentional interference and trade libel, and Thimes is aware of none.

TP-Link's position is untenable in any event.  Setting aside the fact that the TP-Link's allegations concerning FortressDAO are (1) based only on information and belief, (2) cut-and-pasted from a blog, and (3) concern unproven accusations (4) by unknown individuals, TP-Link fails to explain how the purported fraud Mr. Eisenberg carried out "from December 2021 to April 2022" could have any possible bearing on TP-Link, its mark, or its business during the first six months of 2018, the period of time in which Thimes purportedly infringed on TP-Link's mark when selling products on the Amazon Marketplace.  Nor does TP-Link articulate how consumers looking to purchase TP-Link products in 2018 could somehow be influenced by Mr. Eisenberg's "cryptocurrency scheme" based on conduct that he did not allegedly commit until four years later in December 2021.

Indeed, Judge Blumenfeld already raised doubts about the probative value of this

issue, and invited Thimes to address it "if necessary, in a discovery motion if TP-Link is being abusive and an in limine motion if TP Link insists on raising the issue at trial." (Meng Decl. ¶ 12, Ex. 4 (ECF No. 194) at 2 ("Thimes raises serious questions about whether the probative value of the challenged allegation is substantially outweighed by the potential for undue prejudice and consumption of time at trial.").)  The Court should not entertain TP-Link's fishing expedition on such a broad request with nonexistent relevance to the actual issues in this case.

### 5.   Document Request No. 22

#### a)   TP-Link's Request and Thimes's Response

**DOCUMENT REQUEST NO. 22:**

All DOCUMENTS CONCERNING any advertising, marketing, promotion, or listing for sale of any TP-Link products by YOU on any platform (including without limitation on AMAZON), including any agreements between YOU and any platform.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 22:**

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all" documents concerning every TP-Link product Plaintiff has ever purchased or sold. Plaintiff also objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's "advertising, marketing, promotion, or listing for sale" of TP-Link products. Plaintiff further objects that any relevance of "all" such documents is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine,

1   or other applicable protections and privileges.

2        Subject to and without waiving the foregoing objections, Plaintiff responds as

3   follows: Plaintiff will produce responsive, non-privileged documents in its possession,

4   custody, or control that are located after a reasonably diligent search sufficient to show

5   Plaintiff's listings of TP-Link wireless router products on the Amazon Marketplace.

6        **b)**    **Thimes Should be Compelled to Provide a Complete**

7        **Response to Document Request No. 22**

8        Thimes limits this request based on its nonsensical objection: "Plaintiff also

9   objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's

10   conduct, not Plaintiff's 'advertising, marketing, promotion, or listing for sale' of TP-

11   Link products." Thimes then improperly limits its production to documents "sufficient

12   to show Plaintiff's listings of TP-Link wireless router products on the Amazon

13   Marketplace."

14        Thimes ignores TP-Link's counterclaim for trademark infringement and

15   trademark counterfeiting. This request is relevant to (at a minimum) Thimes's

16   intentional and willful infringement of TP-Link's Mark, Thimes's marketing/listings

17   for TP-Link products, as well as whether Thimes informed consumers that TP-Link's

18   original manufacturer's warranty did not convey to consumers who purchased from

19   Thimes and that Thimes did not have authorization from TP-Link to sell any products.

20   TP-Link's counterclaims are not limited to Thimes's sales of TP-Link products sold

21   only on Amazon. Thimes also needs to produce any agreements with such platforms.

22   Thimes must withdraw its objections and produce responsive documents.

23        While Thimes agreed during the parties' L.R. 37-1 conference to amend its

24   responses by July 28 to state it does not have possession of any documents responsive

25   to this request due to Thimes's lack of access to its Amazon account (Auyang Decl.,

26   ¶ 30), TP-Link has yet to assess Thimes's supplemental response and has therefore

27   included this request. If needed, TP-Link will address this request in its L.R. 37-2.3

28   Supplemental Memorandum.

### c)  Thimes's Response

Thimes explained during the July 21 conference that: (1) the vast majority of TP-Link products Thimes sold were transacted on the Amazon Marketplace; (2) Thimes has already agreed to produce, and did produce, records of all of Thimes's sales on the Amazon Marketplace; (3) because of its expulsion from the Amazon Marketplace, Thimes no longer has access to its Amazon account, thus it is not in possession of any documents concerning its listings of TP-Link products on the Amazon Marketplace; (4) Thimes sold a small number of TP-Link products through Wal-Mart, but it is not in possession of any documents concerning those listings because Wal-Mart's online account does not provide information concerning historical sales; and (5) Thimes would state the information discussed on the July 21 conference in its supplemental response to request no. 22.  (Meng Decl. ¶¶ 3.g, 8.)  There is no dispute as to this request.

### 6.  Document Request No. 25

### a)  TP-Link's Request and Thimes's Response

**DOCUMENT REQUEST NO. 25**:

All DOCUMENTS CONCERNING any authorization YOU have to advertise, market, promote, or list for sale any product, including TP-Link products.

**THIMES'S OBJECTIONS AND RESPONSE TO REQUEST NO. 25**:

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to the term "authorization YOU have to advertise, market, promote, or list for sale any product" as vague and ambiguous. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

### b)  Thimes Should be Compelled to Provide a Complete Response to Document Request No. 25

Thimes outright refuses to produce based on improper objections, including (as

addressed above): "Plaintiff further objects to the term "authorization YOU have to advertise, market, promote, or list for sale any product" as vague and ambiguous." Thimes also inexplicably objects based on privilege.

Thimes does not make a relevance objection, which is thus waved. In any case, Thimes has admitted that it does not have authorization from rights holders to sell any products, including TP-Link products, which is relevant to TP-Link's defense and counterclaim. If Thimes has no documents, then it should amend its response to so state.

During the parties' L.R. 37-1 conference, Thimes's counsel stated that Thimes had "arrangements with other brand owners to sell products." Auyang Decl., ¶ 31. Thimes should be required to produce any such arrangements, including any agreements with brand owners.

### c)   Thimes's Response

Thimes objected to the term "authorization YOU have to advertise, market, promote, or list for sale any product" as vague and ambiguous. TP-Link failed to articulate, during the July 21 conference and in this stipulation, *what* constitutes "authorization" to list products for sale.

TP-Link then falsely asserts that "Thimes has admitted that it does not have authorization from rights holders to sell any products, including TP-Link products." TP-Link does not cite the source of any such admission, because Thimes did not so admit. Thimes's response to Amazzia's request for admission nos. 7-8 admitted only that "Plaintiff did not enter into any agreements *with TP-Link USA Corporation* concerning distribution of *TP-Link branded* wireless router products." (Meng Decl. ¶ 13, Ex. 5 at 4.) TP-Link's willingness to play fast and loose with its assertions of fact is bewildering.

## VI.   THIMES SHOULD BE REQUIRED TO PRODUCE ESI AS IT IS KEPT IN THE USUAL COURSE OF BUSINESS, INCLUDING AS LOAD FILES WITH ORIGINAL METADATA, AS WELL AS EXPORTED FILES OF ITS BUSINESS OPERATIONS

### a)   TP-Link's position

Thimes has not produced ESI (including emails and electronically stored documents) as the information and documents is kept in the usual course of business as required by Rule 34(B)(2)(E).  Instead, Thimes has only produced PDFs with metadata from when the document or email was apparently collected and processed. Thimes's production is also missing attachments to emails.  Thimes should be required to produce ESI as load files with the original metadata, including Thimes's Gmail account.

As an example, on July 20, 2022, Thimes produced an email sent on January 11, 2018 from Shmar Richler, Director of Operations at The Surplus Company, concerning purported TP-Link products—the attached invoice was not produced and the metadata shows the document was "Created: 7/1/2022 3:14:06 PM" and "Modified: 7/18/2022 10:02:28 AM."   Auyang Decl., ¶ 32, Exh. Z (Bates Nos. THIMES00313-THIMES00314).

As another example, Avi Eisenberg (President of Thimes) sent an email dated on July 21, 2018 to Amazon with the subject line "A1Q1VKNP5VVQEY - POA for inauthentic suspension"—the seven attached invoices were not produced and the metadata shows the document was "Created: 7/3/2022 7:18:15 AM" and "Modified: 7/18/2022 10:02:24 AM."  Auyang Decl., ¶ 33, Exh. AA (Bates No. THIMES00263).

Thimes should also be required to export and produce its entire QuickBooks files, as well its entire InventoryLabs' files (a company which Thimes uses to handle inventory and financials for its Amazon sales).  Thimes has produced Excels that were represented as extracted from InventoryLabs' files (Bates Nos. THIMES00001,

THIMES00256 - All FBA Sales, and THIMES00257 - All MFN Sales (all marked as Confidential and can be provided to the Court upon request).

### b)   Thimes's Response

TP-Link asserts that Rule 34(b)(2)(E) requires Thimes to produce its emails "as load files with the original metadata."  But Rule 34 contains no such requirement. Instead, Rule34(b)(2)(E) only requires a responding party to produce documents or ESI "as they are kept in the usual course of business."  Fed. R. Civ. Proc. 34(b)(2)(E). Thimes produced emails as they are kept in the ordinary course, and its production comports with the requirements under Rule 34.  To the extent an email was missing an attachment, Thimes represented during the July 21 conference that it would reproduce the emails with the missing attachment.  (Meng Decl. ¶ 3.h.)  Thereafter, Thimes reviewed its initial production for emails with missing attachments and attempted to reproduce them with attachments in its supplemental production on July 28.  (*Id.*)  To the extent any documents produced are missing attachments, Thimes will reproduce such emails along with the attachments.

Thimes does not understand the significance or relevance of TP-Link's recitation of the emails' "metadata" showing the date and time of the PDF's creation and modification.  "Created" represents the date the email was printed to PDF; "Modified" represents the date Thimes labeled the documents with a Bates number.  (Meng Decl. ¶ 14.)

TP-Link next says that Thimes should be required to "export and produce its entire QuickBooks files, as well its entire InventoryLab files."  But like most of its assertions, TP-Link cites no authority to support such a demand.

TP-LINK USA'S JOINT STIPULATION RE: MOTION TO COMPEL

## VII.   THIMES'S SUPPLEMENTAL RESPONSES AND DOCUMENT PRODUCTION IN ACCORDANCE WITH THE COURT'S ORDER SHOULD BE COMPLETED BY AUGUST 31, 2022

### a)   TP-Link's position

On July 5, 2022, Thimes served its response to TP-Link's document requests stating that it "anticipates completing its production by August 5, 2022." Auyang Decl., Exh. BB. On the same day, Thimes also served it responses to TP-Link's interrogatories. Auyang Decl., Exh. CC.

On July 13, 2022, TP-Link served its L.R. 37-1 Letter requesting Thimes complete its document production and provide amended and complete responses by July 22, 2022. Auyang Decl., Exh. DD. On July 21, 2022, the parties held a L.R. 37-1 conference. Auyang Decl., ¶ 36. During this conference, Thimes agreed to supplement its written responses to a few interrogatories and document requests by July 28, and would try to produce the agreed upon supplemental document production by July 28. *Id*. TP-Link's position stated during the L.R. 37-1 conference is that both should occur by July 28, 2022. *Id*.

As to discovery requests that Thimes refuses to fully respond, given the time for the process under L.R. 37-1 to 37-3, a hearing for this motion is scheduled for August 26, 2022, after expert reports (both opening and rebuttal) and after the moving portions for summary judgment motions are due on August 22, 2022 (with opposing portions due September 5, 2022). Fact and expert discovery cut-off are set for September 30, 2022. Given the tight deadlines, in order for TP-Link to evaluate and use the documents at deposition and for motion practice, Thimes should be required to supplement its discovery responses and complete production by August 31, 2022, which is more than one month after Thimes received TP-Link's L.R. 37-1 Letter and five days after the scheduled hearing.

### b)   Thimes's Response

Thimes does not anticipate any issues with completing its document production

by TP-Link's requested deadline of August 31, 2022.

Dated:  August 3, 2022        GAW | POE LLP

                              By:    /s/ Victor Meng
                                   _____

                                   VICTOR MENG (S.B. #254102)
                                     vmeng@gawpoe.com
                                   GAW | POE LLP
                                   4 Embarcadero, Suite 1400
                                   San Francisco, CA 94111
                                   Telephone: (415) 766-7451
                                   Facsimile: (415) 737-0642

                                   Attorneys for Plaintiff Thimes Solutions
                                   Inc.


Dated:  August 3, 2022        LTL ATTORNEYS LLP

                              By:    /s/ Heather Auyang
                                   _____

                                   HEATHER AUYANG (S.B. #191776)
                                     heather.auyang@ltlattorneys.com
                                   LTL ATTORNEYS LLP
                                   300 South Grand Ave., 14th Floor
                                   Los Angeles, CA 90071
                                   Telephone: (213) 612-8900
                                   Facsimile: (213) 612-3773

                                   Attorneys for Defendant TP-Link USA
                                   Corporation