LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel:  (213) 612-8900
Fax:  (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | CASE NO.: 2:19-cv-10374-SB-E |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **DECLARATION OF HEATHER F. AUYANG IN SUPPORT OF JOINT STIPULATION REGARDING TP-LINK USA'S MOTION TO COMPEL DISCOVERY** |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, | |
| Defendants. | Date: August 26, 2022
Time: 9:30 a.m.
Courtroom: 750, 7th Floor |

| | |
|---|---|
| Discovery Cut-Off: | Sept. 30, 2022 |
| Pretrial Conference: | Dec. 30, 2022 |
| Trial Date: | Jan. 9, 2023 |

| | |
|---|---|
| Complaint Filed: | May 29, 2019 |
| Amended 5th Amended | |

No. 2:19-cv-10374-SB-E

| | |
|---|---|
| | Complaint Filed      May 27, 2022 |
| TP-LINK USA CORPORATION, | |
| Counterclaimant, | |
| v. | |
| THIMES SOLUTIONS INC., | |
| Counter-Defendant. | |

## <u>DECLARATION OF HEATHER F. AUYANG</u>

I, Heather F. Auyang, hereby declare and state as follows:

1.      I submit this Declaration in support of TP-Link USA Corporation's Joint Stipulation Regarding Its Motion to Compel Discovery.  I am an attorney admitted to practice before this Court and am a partner with LTL Attorneys LLP, counsel of record for Defendant and Counterclaimant TP-Link USA Corporation in the above-captioned case.  I submit this Declaration based upon my personal knowledge, and if called as a witness could and would testify to the matters set forth.

2.      Attached hereto as **<u>Exhibit A</u>** is a true and correct copy of the Scheduling Order for this matter (ECF No. 170).

3.      Attached hereto as **<u>Exhibit B</u>** is a true and correct copy of Thimes's Amended Fifth Amended Complaint (ECF No. 178).

4.      Attached hereto as **<u>Exhibit C</u>** is a true and correct copy of Bates No. THIMES00311.

5.      Attached hereto as **<u>Exhibit D</u>** is a true and correct copy of Bates Nos. THIMES00264-THIMES00265.

6.      Attached hereto as **<u>Exhibit E</u>** is a true and correct copy of the email sent to Thimes's counsel on July 25, 2022.

7.      Attached hereto as **<u>Exhibit F</u>** is a true and correct copy of Bates Nos. THIMES00286-THIMES00287.

8.      Attached hereto as **<u>Exhibit G</u>** is a true and correct copy of Bates Nos. THIMES00308-THIMES00309.

9.      Attached hereto as **<u>Exhibit H</u>** is a true and correct copy of Bates No. THIMES00263.

10.      Attached hereto as **<u>Exhibit I</u>** is a true and correct copy of Bates No. THIMES00315.

11.      Attached hereto as **<u>Exhibit J</u>** is a true and correct copy of Bates No. THIMES00303.

12. Attached hereto as **Exhibit K** is a true and correct copy of Bates No. THIMES00315.

13. Attached hereto as **Exhibit L** is a true and correct copy of Bates No. THIMES00318.

14. Attached hereto as **Exhibit M** is a true and correct copy of Bates No. THIMES00354.

15. Attached hereto as **Exhibit N** is a true and correct copy of Bates No. THIMES00397.

16. Attached hereto as **Exhibit O** is a true and correct copy of Bates No. THIMES00398.

17. Attached hereto as **Exhibit P** is a true and correct copy of Bates No. THIMES00405.

18. Attached hereto as **Exhibit Q** is a true and correct copy of Bates No. THIMES00389.

19. Attached hereto as **Exhibit R** is a true and correct copy of Bates No. THIMES00379.

20. Attached hereto as **Exhibit S** is a true and correct copy of Bates No. THIMES00404.

21. Attached hereto as **Exhibit T** is a true and correct copy of Bates No. THIMES00396.

22. Attached hereto as **Exhibit U** is a true and correct copy of Bates No. THIMES00387.

23. Attached hereto as **Exhibit V** is a true and correct copy of Bates Nos. THIMES00387-THIMES00388.

24. Attached hereto as **Exhibit W** is a true and correct copy of TP-Link's Answer and Counterclaim (ECF No. 175).

25. Attached hereto as **Exhibit X** is a true and correct copy of Bates Nos. THIMES00064-THIMES00065.  Thimes produced this invoice as a PDF (with the

following metadata "Created: 6/26/2022 7:11:05 AM" and "Modified: 6/26/2022 10:01:21 AM").

26. Attached hereto as **Exhibit Y** is a true and correct copy of Bates Nos. THIMES00067-THIMES00068. Thimes produced this invoice as a PDF (with the following metadata "Created: 6/26/2022 8:39:44 AM" and "Modified: 6/26/2022 10:01:22 AM").

27. Thimes agreed during the parties' L.R. 37-1 conference to amend its response to Interrogatory No. 2 by July 28 to include the language in Paragraph 47 of its 5AC.

28. Thimes agreed during the parties' L.R. 37-1 conference to amend its response to Document Request No. 5 by July 28 to state it does not have possession of any documents and communications evidencing Amazon directly purchased products as a customer of Thimes because Thimes does not have access to its Amazon account in order to show that Amazon placed orders with Thimes through an Amazon program called "Vendor Express."

29. Thimes agreed during the parties' L.R. 37-1 conference to supplement its response to Interrogatory No. 12 to include more details (more than just dates of the listed complaints) for its current response, Thimes refuses to remove its objections and limitations and respond to the scope of the interrogatory and document requests.

30. Thimes agreed during the parties' L.R. 37-1 conference to amend its responses to Document Request No. 22 by July 28 to state it does not have possession of any documents responsive to this request due to Thimes's lack of access to its Amazon account.

31. During the parties' L.R. 37-1 conference, Thimes's counsel stated that Thimes had "arrangements with other brand owners to sell products."

32. Attached hereto as **Exhibit Z** is a true and correct copy of Bates Nos. THIMES00313-THIMES00314. Thimes produced this invoice as a PDF (with the following metadata "Created: 7/1/2022 3:14:06 PM" and "Modified: 7/18/2022

10:02:28 AM").

33.     Attached hereto as **Exhibit AA** is a true and correct copy of Bates No. THIMES00263.  Thimes produced this invoice as a PDF (with the following metadata "Created: 7/3/2022 7:18:15 AM" and "Modified: 7/18/2022 10:02:24 AM").

34.     Attached hereto as **Exhibit BB** is a true and correct copy of Thimes's Responses to TP-Link's Document Requests, Set One.

35.     Attached hereto as **Exhibit CC** is a true and correct copy of Thimes's Responses to TP-Link's Interrogatories, Set One.

36.     Attached hereto as **Exhibit DD** is a true and correct copy of TP-Link's Local Rule 37-1 Letter to Thimes concerning TP-Link's Document Requests and Interrogatories, Set One.  On July 21, 2022, the parties held a L.R. 37-1 conference. During this conference, Thimes agreed to supplement its written responses to a few interrogatories and document requests by July 28, and would try to produce the agreed upon supplemental document production by July 28.  TP-Link's position stated during the L.R. 37-1 conference is that both should occur by July 28, 2022.

I declare under penalty of perjury that the foregoing is true and correct.  Executed July 25, 2022 in Mill Valley, California.

By:  */s/ Heather F. Auyang*

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:19-cv-10374-SB-E | | Date: | May 20, 2022 |
|---|---|---|---|---|

| Title: | *Thimes Solutions Inc. v. TP Link USA Corporation et al.* |
|---|---|

Present: The Honorable   **STANLEY BLUMENFELD, JR., U.S. District Judge**

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**    **[In Chambers] CASE MANAGEMENT ORDER**

This case was remanded to this Court from the Ninth Circuit on May 9, 2022; the Court held a status conference on May 20, 2022 and issues this case management order. The DOE defendants remaining after July 18, 2022 are dismissed by operation of this Order and without further notice. Defendants shall file any objection to private mediation **by no later than May 23, 2022**.

The Court has reviewed the Joint Rule 26(f) Report and sets the pretrial and trial dates noted in the table below based on an evaluation of the complexity of the case. A more complete description of these deadlines is contained in the Mandatory Scheduling Conference Order (MSC Order). The deadlines below will *not* be continued absent *a timely showing of good cause*. **Good cause** requires a specific, detailed, and non-conclusory showing of diligence from the outset of the case, describing: (i) all relevant work previously done (including when each item was completed), (ii) all relevant work that remains to be done, (iii) why the remaining work could not previously have been done (including efforts made to complete each remaining item), and (iv) why the amount of time requested is needed to complete the remaining work. *The **Attachment to this Order** describes the*

*requirements in more detail, and failure to comply with them will result in denial of the request with prejudice.*

| Trial  ☐ Court  ☒ Jury         (Mon., 8:30 a.m.) | January 9, 2023 |
|---|---|
| **Pretrial Conference**            (Fri., 10:00 a.m.)<br>(including hearing on motions in limine) | December 30, 2022 |
| **Motion to Amend Pleadings/Add Parties**<br>(Hearing Deadline) | July 18, 2022 |
| **Discovery Deadline – Nonexpert** | September 30, 2022 |
| **Discovery Deadline – Expert** | September 30, 2022 |
| Initial Expert Disclosure | August 1, 2022 |
| Rebuttal Expert Disclosure | August 8, 2022 |
| **Discovery Motion Hearing Deadline** | October 7, 2022 |
| **Non-Discovery Motion Hearing Deadline** | October 7, 2022 |
| **Early Mediation Deadline** | June 21, 2022 |
| **Settlement Conference Deadline**<br>☐ 1. Mag. J.  ☐ 2. Panel  ☒ 3. Private | October 21, 2022 |
| **Post-Settlement Status Conf.**  (Fri., 8:30 a.m.): | November 4, 2022 |
| Status Report Due (7 court days before *by 9:00 a.m.*): | October 28, 2022 |
| **Trial Filings (First Set) Deadline** | December 9, 2022 |
| **Trial Filings (Second Set) Deadline** | December 16, 2022 |

All motion deadlines reflect *the last day when a motion may be heard*, and a hearing must be set on *an open hearing date*.  Consult the Court's website before scheduling a hearing to determine availability.  A party that waits until the last day to have a motion heard on a date that turns out to be unavailable risks having the motion stricken and not heard.

The parties should plan to complete discovery far enough in advance of the discovery deadline to allow for the filing of a discovery motion if necessary and complete the discovery allowed if relief is granted.  Delaying discovery (e.g., a deposition) until receiving other discovery (e.g., written discovery)—or deciding not to conduct a deposition remotely—generally does not constitute good cause to

continue the discovery or other deadlines.  The parties should take this risk into account when deciding whether to engage in strategic ordering of discovery or to conduct in-person depositions.

**cc:  ADR**

# ATTACHMENT

The parties should prepare this case without expecting an extension of any pretrial or trial deadline, even if the extension request is by stipulation. The Court applies the same standard of good cause for all requests (whether opposed or unopposed).

A continuance will be granted only for good cause as defined in the Order above. The showing shall be placed in a table in chronological order and shall include *all* discovery and significant procedural events from the outset of the case in the format illustrated below.

| Completed Work | | | |
|---|---|---|---|
| **Date** | **Pty** | **Event** | **Explanation** |
| __/__/__ | Π | Complaint | |
| __/__/__ | Δ | Answer | |
| __/__/__ | Π | Initial Disclosures | |
| __/__/__ | Δ | Initial Disclosures | |
| __/__/__ | Π | Interrog., RFPs, RFAs (Set #1)[1] | |
| __/__/__ | Δ | Interrog., RFPs, RFAs (Set #1) | |
| __/__/__ | Π | Smith Depo | |
| **Remaining Work[2]** | | | |
| __/__/__ | Π | Jones Depo | Detail: (1) why it was not already done; (2) prior efforts to complete it; and (3) why the amount of time requested is necessary. |

The requesting party/parties also must submit a proposed order *in Word format* using the exact "CMO Continuance Order template" provided on the Court's website.

### *Failure to comply with the above requirements will result in the denial of the request with prejudice.*

---

[1] Each discovery item (e.g., RFAs) must be separately listed *unless* they all occurred on the same date.

[2] Each remaining discovery item must be listed separately with a proposed date for completion in the first column, the party taking the discovery in the second column, a description of the discovery in the third column, and an explanation in the fourth column of (1) why the discovery was not already done, (2) the prior efforts to complete it, and (3) why the amount of time requested is necessary.

# EXHIBIT B

MARK POE (S.B. #223714)
 mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

> FILED
> CLERK, U.S. DISTRICT COURT
>
> May 27, 2022
>
> CENTRAL DISTRICT OF CALIFORNIA
> BY: jgr          DEPUTY

Attorneys for Plaintiff
Thimes Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

THIMES SOLUTIONS, INC.,

        Plaintiff,

    v.

TP-LINK USA CORPORATION and
AUCTION BROTHERS, INC. d/b/a
AMAZZIA

        Defendants.

Case No. 2:19-CV-10374-SB-E

**AMENDED FIFTH AMENDED
COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Thimes Solutions, Inc. dba Universal Goods & Sales ("TSI"), alleges on knowledge as to itself, but otherwise on information and belief, as follows:

### INTRODUCTION

1.     This case is about greed disguised as "brand protection."  With the advent of Amazon has come a fight for the right (or wrong) to display goods in the ecommerce space owned and controlled by Amazon, i.e. amazon.com.  A former Investigation Specialist for Amazon's Seller Performance team, Chris McCabe, has written about the misuse of the Amazon rights reporting system.  In his article, "Have you noticed How Unpredictable Amazon's Notice Infringement teams are now?" https://www.ecommercechris.com/have-you-noticed-how-unpredictable-amazons-notice-infringement-teams-are-now/(February 21, 2019), Mr. McCabe observes (Exhibit 1):

- Amazon's Notice Claim of Infringement Teams exist in theory to process intellectual property violations on the Amazon Marketplace at amazon.com;

- In practice, trademark and other violations can come from anywhere, allege anything, and are rife with abuse;

- The work of the Notice teams, though attempting to combat rampant abuse, has backslided of late to the point where Amazon's response to contested Intellectual Property Complaints makes "little to no sense;"

- Amazon harshly enforces the brand owner complaints of counterfeiting by requiring at most that brand owners attest to having "test bought" the allegedly counterfeit product from the alleged counterfeiter;

- Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, *re*stated repeatedly, and often have nothing to do with the reason for the suspension or expulsion; and

- Accused sellers—in particular those with a history of notice claims (as many sellers have)--are left in a virtual "twilight zone" where they are not told and cannot learn the true reasons for harsh—at times lethal—action taken against their businesses.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

2.     Unscrupulous brand owners, well aware of the above Notice Infringement landscape, take unilateral action and use "brand protection services" to assist them in "knocking off unwanted sellers." *Id.*

3.     Plaintiff Thimes Solutions Inc. dba Universal Goods & Sales ("TSI") is a Suffern, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy.  Succinctly, the model is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount.  Manufacturers, their "authorized distributors," and their "brand protectors" often seek means—some unlawful-- to eliminate such niche market competition.[1]

4.     Plaintiff TSI ordinarily buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale.

5.     TSI  brings this suit following its commercial and financial ruination resulting from Defendants' libelous statements to Amazon and consequential tortious

---

[1]A copyright or trademark holder enjoys a "distribution right" and may initially sell, or not sell, copies of a copyrighted or trademarked item to others on such terms as he or she sees fit. However, the IP holder's exclusive distribution right is limited to the first sale of the coyprighted or trademarked item. Under the "first sale" docrine, codified at 17 U.S.C. § 109(a) "the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of such copies." The Fair Use Doctrine, similar to the First Sale Doctrine, permits a seller to use a another's trademark to identify the former's goods, provided that no likelihood of confusion results as to the source of the product or the trademark holder's sponsorship or affiliation.  15 U.S.C. §115(b)(5)(A)-(C).  The First Sale Doctrine [also] protects resellers of genuine trademarked goods from claims of infringement. *Davidoff & CIE, S.A. v. PLD Int'l. Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Hidalgo Corp. v. J. Kugel Designs, Inc.,* No. 05-20476-CIV-JORDAN/TORRES, 2006 U.S. Dist. LEXIS 96647, at *12 (S.D. Fla. 2006)

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

interference with Plaintiff's existing and prospective business relationship with Amazon Services LLC.

6.    TSI became a third-party seller on Amazon in 2016. To become an Amazon seller TSI signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate TSI as a seller for any reason or for no reason at all.

7.    TSI sold over 175,000 products to customers on Amazon with a 98% lifetime positive feedback rating. Plaintiff reached $2 million in sales during the first six months of 2018. As of its expulsion from Amazon, TSI was selling around $400,000-500,000 per month on amazon.com. Net margins were roughly 20%. Now . . . there is only ruin.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

9.    Thimes Solutions Inc. was duly incorporated in New York on November 21, 2016 and maintains its principal place of business at 3 Litman Lane, Suffern, New York. TP-Link USA Corporation was duly incorporated in California on October 15, 2008 and maintains its principal place of business at 145 South College Blvd., Suite 400, in Brea, CA 92821.Auction Brothers, Inc. dba Amazzia was duly incorporated in California on May 31, 2005 and maintains its principal place of business at 19528 Ventura Blvd, #229, Tarzana, CA 91356.

10.    Defendant's activities were within the flow of, were intended to, and had a substantial effect on, interstate commerce because Plaintiff conducted business all over the country.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), (c) and (d). A substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Amazzia and TP-Link are residents of this district and their challenged

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conduct was initiated in this district including, without limitation, the transmission of the false statement at issue.

### FACTS

**A.**   **TP-LINK USA, TP-LINK NORTH AMERICA, TOM LEI AND AUCTION BROTHERS, INC. dba AMAZZIA**

12.    TP-Link USA Corporation ("TP-Link" or "USA" at times), operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 160 million products around the globe during 2016.

13.    USA was originally a subsidiary of TPC but is now a subsidiary of TP-Link UK Limited.  It manufactures and supplies networking products for home and small business, known as SOHO and SMB.  Examples are switches, routers, and components for wireless systems.

14.    TP-Link USA's products are available at substantially all major electronics retailers, online and in-store, throughout the country, including amazon.com, jet.com, Best Buy, COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target, and Walmart.[2]

15.    TP-Link North America ("TPN" or "North America" at times) functions as an alter ego of USA and its business offices are located at the latter's principal address in Brea, CA, while it handles TP-Link warehousing a few miles away in Fontana, CA.  TPN merged into USA on November 26, 2019.  TPN was a fictitious name, duly registered under California law, at all relevant times..

16.    TP-Link's LinkedIn page has listed at least two (2) dual positions, believed to be at issue here, held under simultaneous employment by USA and TPN:

- Director of E-commerce at TP-Link North America, Inc.
  Greater Los Angeles Area
  Current: Senior Channel Strategy Manager,B2B at **TP**

---

[2] https://www.tp-link.com/us/where-to-buy

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Link USA Corporation[3]

- Channel Strategy Manager, Ecom at TP-Link USA Corporation
  Hangzhou, Zhejiang, China
  Current: Channel Strategy Manager, Ecom at **TP-Link** North
  America, Inc.[4]

17.     USA and Amazzia published written complaints to Amazon, libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise infringing a trademark (on one occasion)  ("IP Complaints").[5]

18.     TP-Link's fraudulent IP Complaints directly caused Plaintiff's suspension from the Marketplace in May 2018 and also caused TSI's permanent expulsion as a seller on the Amazon website, effective on or about August 27, 2018.

19.     TP-Link retained Amazzia, to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.

20.     Amazzia describes itself as follows:

> As your dedicated partner, we keep your brand safe from unauthorized agents, ensure Amazon compliant distribution and amazing growth through price protection, optimization and targeted marketing.
>                                    . . . .

> **Removing Un-Authorized Sellers**
> Effective and proven strategies to report and remove Un-Authorized Resellers from your listings

---

[3] https://www.linkedin.com/company/tp-link/ at **See all 78 employees on LinkedIn**, Screen 1 (last visited on June 3, 2018)
[4] *Id.*  at Screen 8.
[5] Plaintiff is informed and believes that IP complaints are prepared with an online system that does not provide the complainant with a completed copy.   See https://www.amazon.com/gp/help/reports/infringement   Amazon provides  the accused with an edited and redacted version of the allegations in an email from the Seller Support group of Amazon. The allegations of the emailed version include the word "counterfeit," or "infringement," the Amazon Stock Identification Number(s) ("ASINs") allegedly counterfeited or infringed, an Amazon complaint ID number, the complainant company name, and an email address to contact with a view to resolution.   The entire text of the allegations and the signature of the person or entity who filed the complaint are not disclosed.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

21.     Amazzia's primary focus is removing lawful Amazon offerings from the Marketplace:

> Unauthorized resellers corrupt the online marketplace with reckless, self-serving tactics, causing price erosion and negatively impacting your brand's image.

> Under these circumstances your legitimate brick & mortar retailers are unable to compete with online prices and may refuse to carry your brand.

22.     Amazzia's Vice-President of Brand Protection William Samuel articulates his role quite simply:[6]

> As the Vice President of Brand Protection at Amazzia, I ensure the protection of my clients' brands by identifying and eliminating unauthorized Amazon sellers. **The increasing number of MAP violators in the Amazon marketplace is astounding**! Rogue marketplace sellers can damage your brand and undercut your bottom line by selling products at extremely low discounted rates.  (emphasis added)

23.     Amazzia makes clear in publicly available promotions that the real problem with third-party sellers is that that they may *try* to compete on price:

> Not all third-party sellers are ethical, and some may try to undercut you and misrepresent your brand. **The main risk involves companies deviating from your minimum advertised price.** This results in having your brand's value lowered. There's also the risk of bad brand representation if consumers experience poor customer service with any unauthorized third-party sellers. As a result, customers associate those bad experiences with your brand.                    . . . .
> **Amazzia can protect your brand by preventing MAP violations** . . . (emphasis added)

24.     Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon" (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% .of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) Amazzia

---

[6] https://www.linkedin.com/in/william-samuel-0825a071/

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

promised TP-Link "full access to our team for any questions regarding the cleanup project."  See Exhibit 9 at Exhibit A thereto.[7]

25.     Unable to eliminate TSI sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting, at all times acting in concert with and on behalf of TP-Link, and with the latter's actual authority and instructions.

26.     Amazzia  directly caused Plaintiff's May suspension and permanent expulsion from the Amazon Marketplace  in coordination with the following scheme:

- On January 8, 2018 Plaintiff purchased 360 TP-Link AC5400 Routers from a reputable supplier with which Plaintiff has dealt extensively. Plaintiff has possession of approximately 100 of these items to date, all of which are authentic and not counterfeit.  Amazon continues to hold a number of Plaintiff's TP-Link AC5400 Routers.

- One Tom Lei (Screen name "amazon91773"), a TP-Link  employee, operated out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related competition to USA from competitors that are not so-called Authorized Resellers.

- Mr. Lei's purchases of TP-Link products from TSI, in his own name (using USA funding or reimbursement) and without disclosure of TP-Link involvement,  occurred on January 18, 2018 (2 AC5400 Routers) and March 5, 2018 (6 AC1200 Routers in three (3) separate transactions).  Exhibit 2 hereto.  He received the items at Defendants' Fontana CA warehouse, examined the products, and knew from such examinations that the products were authentic and not counterfeit. Notwithstanding this knowledge, Mr. Lei or those acting in concert with him libeled TSI *27 times* during January-June 2018 for selling counterfeit USA products and otherwise infringing TP-Link's intellectual property.

- Mr. Lei's initial purchase of two (2) AC 5400's establishes that TP-Link's sole intent *ab initio* was to eliminate Plaintiff's sales of TP-Link products from the competitive marketplace, as the circumstances of the initial  January 19th complaint alleging counterfeit goods proves:

    o     The complaint addressed an ASIN: B01DXVK3KY, TP-Link

---

[7] Exhibit 9, the Declaration of Kevin Ryu was submitted by TP-Link in *Careful Shopper*.  Exhibit A thereto was identified as "a true and correct copy of TP-Link's contract with Amazzia. *Careful Shopper LLC v. TP-Link USA Corporation*, Case 1:18-cv-03019-RJD-RML Document 35-1 Filed 02/27/19.

AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router

    ○    Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018

    ○    Amazon lodged the Router with UPS for delivery to TP-Link on January 19, 2018 (Exhibit 3)

    ○    The Router was not delivered to Mr. Lei until January 22, 2018, three days *after* swearing to Amazon that the Router was test-purchased and found to be counterfeit (Exhibit 4).

TP-Link *targeted* TSI for elimination and in its haste lodged its libelous IP complaint before receiving the Routers![8]

27.    During 2018 TP-Link complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting:

- Jan 19th: us-compliance@tp-link.com
- Jan 21st: us-compliance@tp-link.com
- Jan 26th: us-compliance@tp-link.com
- Feb 14th: compliance-us@tp-link.com
- Feb 21st: compliance-us@tp-link.com
- Feb 28th: compliance-us@tp-link.com[9]
- Mar 2nd: compliance-us@tp-link.com
- Mar 3rd: compliance-us@tp-link.com
- Mar 10th: compliance-us@tp-link.com
- Mar 13th: compliance-us@tp-link.com
- Mar 21st: compliance-us@tp-link.com
- Mar 31st: compliance-usa@tp-link.com
- Apr 2nd: compliance-usa@tp-link.com
- Apr 5th: compliance-usa@tp-link.com
- Apr 6th: compliance-usa@tp-link.com
- Apt 7th: compliance-usa@tp-link.com

---

[8] After receiving the first TP-Link-instigated Notice from Amazon, Plaintiff researched its sales of the TP-Link AC 5400 Router and searched the purchaser's address on Google, thereby identifying TP-Link as the purchaser of two (2) AC5400 Routers.

[9] On this instance alone, TP-Link claimed trademark infringement, but not counterfeiting.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Apr 9th: compliance-usa@tp-link.com
- Apr 10th: compliance-usa@tp-link.com
- Apr 11th: compliance-usa@tp-link.com
- Apr 12th: compliance-usa@tp-link.com
- Apr 24th: compliance-usa@tp-link.com
- Apr 25th: compliance-usa@tp-link.com
- Apr 26th: compliance-usa@tp-link.com
- Apr 30th: compliance-usa@tp-link.com
- May 28th: compliance-usa@tp-link.com
- May 30th: compliance-usa@tp-link.com
- Jun 7th: compliance-us@tp-link.com
- June 21st: compliance.usa@tp-link.com

28.     TP-Link/Amazzia used four (4) different identities in complaining to Amazon, indicating a combination and conspiracy, to wit:   compliance-us@tp link.com,        compliance-usa@tp-link.com,        us-compliance@tp-link.com and   compliance.usa@tp-link.com[10]   On information and belief, the only email address available to Amazzia was compliance-usa@tp-link.com.

## FALSE INFRINGEMENT CLAIMS AT AMAZON

29.     In the April 2018 article by Chris McCabe ("McCabe"), discussed *supra,* the renowned expert in Amazon Seller Performance issues, McCabe summarizes "[h]ow unethical sellers abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> **Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes

---

[10] TP-Link has admitted in other litigation Amazzia's use of compliance-usa@tp-link.com. See Exhibit 9 hereto at ¶4.
[11] McCabe is a former Investigation Specialist for Amazon's Seller Performance team.  His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

a legally-binding declaration in the form, and signs it.

30.    TP-Link/TPN/Amazzia was the unethical seller in the instant case when it falsely executed IP Complaints against TSI and, even if it issued the first complaint (1/19/18) as an honest mistake (it did not), it received a sincere offer to pursue the truth that same day . . . but did not retract its evil report; in fact, it issued some two (2) dozen additional reports and hereby sealed TSI's doom.

31.    TP-Link/TPN/Amazzia acted maliciously and intentionally in reporting to Amazon that TSI was listing counterfeit products and, in fact, about two dozen reports were issued in conscious disregard of the truth.

## THE ROLE OF TRADEMARK INFRINGEMENT IN THIS PICTURE

32.    TP-Link sought in related litigation in this Court to justify its IP (counterfeit) complaints with a purported trademark infringement theory based on a purported disclaimer of its manufacturer's limited warranty as to Gray Market purchasers of its products, thus making products sold to Gray Market purchasers "materially different."[12]  Even if in good faith (which it was not), however, such a trademark infringement claim did not justify reporting Plaintiff to Amazon as a counterfeiter.

33.    Counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).  Trademark infringement, on the other hand, is defined as the unauthorized use of a trademark or service mark, i.e. *the same product* bearing the mark without required permission.

34.    When TP-Link complained of trademark infringement, Amazon rejected the complaint.  When TP-Link complained of "counterfeiting," Amazon expelled TSI with permanence.  Amazzia is the Amazon expert and planned this

---

[12] A "Gray market" refers to the trade of a commodity through distribution channels that are not authorized by the original manufacturer or trademark proprietor.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

conspiracy with expressed knowledge and intent to "remove" Gray Market sellers.

35.    For the reasons stated in the next three (3) paragraphs hereof, TP-Link's sole predicate for its wrongdoing, i.e. that its limited warranty did not convey to TSI purchasers (which would not justify a *counterfeit* IP complaint in any event), is a pretext , a mere illusion to justify some complaint--any complaint--with unauthorized below-MAP sellers.[13]

36.    TSI was not an "unauthorized seller" except in the commonly-understood sense that it was not specifically authorized under any distributorship agreement (or similar agreement) by TP-Link to purchase TP-Link products directly from TP-Link and thereafter resell such products.  In all other respects, TSI was "authorized" by law to sell genuine TP-Link products.

37.    TSI was authorized under its agreement with Amazon to sell TP-Link products on amazon.com; *and TP-Link consented in its agreement with Amazon to abide by Amazon's policies which authorized Gray Market sellers to resell the trademarked goods of others without restraint on the Amazon Marketplace.*

38.    Under the First Sale Doctrine TSI was fully within its rights in lawfully acquiring authentic TP-Link products, as it did in all instances of purchase of TP-link products, and listing and selling such products on Amazon.

39.    Moreover, TSI sales of TP-Link products on Amazon *did* convey the manufacturer's warranty (because under NYGBL §369-b any disclaimer was invalid); hence, such products were *not* materially different than other genuine TP-Link products, because:

- TP-Link never enforced any such disclaimer against any of its Gray Market customers prior to the advent of this litigation. Based on discovery received to date in *Careful Shopper*, TP-Link did not require, from registered owners of TP-Link products seeking warranty assistance, proof of purchase disclosing seller identity until September 2019 at the earliest.

---

[13] A **MAP price** is a minimum amount that resellers agree not to advertise below.

- • Purchasers of TP-Link products on Amazon designated (in the registration temple) their seller as Amazon. TP-Link had no way—and sought no way-- to distinguish as between Amazon purchasers of TP-Link products sourced from "authorized" and "unauthorized" sellers.

- • Most significant, as a matter of law Section 369-b of New York's General Business Law, invalidating any warranty limitation actuated because "such merchandise is sold by a particular dealer," preserved the warranty for all Careful Shopper customers. *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp.2d 208, 228 (S.D.N.Y. 2011); see also *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261 n.3 (S.D.N.Y. 2012)

40. Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing, is (along with TP-Link) subject to punitive damages herein. For example upon information and belief, Amazzia directly or indirectly sells products on Amazon through multiple seller accounts, often buying them from the same brands they contract with to provide "brand protection services," and subsequently files false counterfeit complaints against their competitors on Amazon.

41. Immediately upon receipt of the first IP-complaint of January 19, 2018 Plaintiff emailed TP-Link at the designated address in an effort to satisfy TP-Link that TSI's product was authentic and not counterfeit (Exhibit 5):

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

1
2
3
4
5
6
7
8
9
10
11
12
13



14      42.    TP-Link did not respond to Plaintiff's letter, Exhibit 5; nor did Amazzia.
15  During this litigation TSI has disclosed its sources of product to TP-Link.  TP-Link
16  has not challenged the reputability of Plaintiff's sources of product, although it filed
17  a Rule 26(f) Report since being so advised.

18      43.    Plaintiff then engaged expert Amazon counsel who emailed a letter to
19  TP-Link on February 1, 2018 (Exhibit 6):

20      In accordance with Amazon policy, in order to report an item is counterfeit, a
21      test buy must be performed in order to verify the claimed differences are
        present between the accused product and the rights owner's product. As such,
22      we are writing to request the specific basis for your counterfeit claims,
        including the test buy purchase information provided to Amazon to support
23      your claims.

24      TP-Link did not respond to counsel's letter.

25      44.    On May 7, 2018 Plaintiff was suspended (with appeal rights) from
26  selling on Amazon by reason of TP-Link's IP complaints (Exhibit 7):

27      You have listings that infringe on the intellectual property rights of others. This
        is against our policies. The removed items can be seen on the Performance
28

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

45.    Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link continued its onslaught on May 28 and 30, and on June 14 and 21.  Exhibit 8.

46.    The record of TP-Link complaints, subject to Amazon's algorithmic surveil, caused Plaintiff's permanent expulsion (without appeal rights) from the Amazon Marketplace on August 27, 2018.  This result from Amazzia's IP reporting was predictable to Amazon experts.  *McCabe, supra.*

47.    All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's counterfeiting, were filed under false attestation:[14]

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

48.    Conspirators TP-Link and Amazzia had ample opportunity and did in fact, albeit surreptitiously, test purchase many of TSI's TP-Link offerings to determine authenticity. Exhibit 1 hereto.  All were authentic and TP-Link has never stated to the contrary except, of course, as necessary to incite Amazon's punitive measures upon TSI. It chose to allege TSI's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications.  Such actions were malicious.

49.    TP-Link, having sought refuge in Noerr-Pennington in Careful-Shopper, we will plead to the issue here.  The series of events pled within were a "sham" within Noerr Pennington parlance, and satisfy Noerr-Pennington's "sham

---

[14] https://www.amazon.com/gp/help/reports/infringement

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

exception" as follows:[15]

- TP-Links IP complaints sounding in counterfeiting were objectively baseless, and TP-Link knew they were objectively baseless. Having made 4 test purchases through Mr. Lei, and having had opportunity to examine them, TP-Link knew of their authenticity.

- Upon information and belief, TP-Link filed IP complaints sounding in trademark infringement that were rejected by Amazon as non-actionable.

- Only by charging "counterfeiting" unendingly could TP-Link effect TSI's expulsion.

-  Amazon has testified before Congress that that Rightsowners often "conflate" their IP rights with independent sellers' products' lacking authenticity; and Amazon disapproves of Rightowners so doing.[16]

- TP-Link found a "hired gun" in Amazzia and contracted to eliminate third party sellers as follows: "50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," without regard to whether such resellers' conduct was wrongful;  Exhibit 9 at Exhibit A.

- As per Amazzia's online promotional material, i.e. "Amazzia can protect your brand by preventing MAP violations," the foregoing conspiracy existed to eliminate price competition;

---

[15] Under the Noerr-Pennington doctrine, a **sham** petition is one that is ostensibly directed toward influencing governmental action but that is a mere **sham** to cover an attempt to interfere directly with the business relationships of a competitor. *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1050, 99 Cal. Rptr. 3d 661, 666 (2009)

[16] http://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf

Amazon seeks to provide its customers with the widest possible selection of products at competitive prices. One way Amazon has sought to provide this selection is by making it easy for sellers of authentic products to open selling accounts and sell a wide variety of products directly to Amazon's customers in Amazon's store. Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand. These include liquidation or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise. Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store. But, we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices.

- Such a purpose and effect of collaborative action violates the common law.

- IP complaints now defended by TP-Link serve to "conceal[] an attempt to interfere *directly* with the business relationships of a competitor," i.e. TSI. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) (*PRE*); see also *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).

- "[N]o reasonable [Amazon seller] could realistically expect success on the merits" of the IP complaints, 508 U.S. at 60.

- The IP complaints sounding in counterfeiting were, therefore, not [" 'communications preparatory to or in anticipation of bringing an action or other official proceeding' and are therefore unprotected by Noerr-Pennington.

## B. ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

50. But for Defendants' IP complaints to Amazon TSI would not have been expelled from the Amazon Marketplace.

51. Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures. Plaintiff was permanently expelled nonetheless.

52. By reason of the expulsion Plaintiff was unable to sell its aging inventory (at least $1.1 million) or access its funds in Amazon's hands (about $80,000). Plaintiff was forced to hire counsel at substantial expense.

53. There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

54. The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month. Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.

55. Defendants' actions and inactions, moreover, were calculated, willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $5,000,000, together with attorney fees to be

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

determined by the Court.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

56.    Plaintiff incorporates the allegations above as though the same were re-written at length.

57.    "The elements of tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1153. *Fresno Motors, Ltd. Liab. Co. v. Mercedes-Benz USA, Ltd. Liab. Co.*, 852 F. Supp. 2d 1280, 1292 n.12 (E.D. Cal. 2012)

58.    As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints alleging sale of counterfeit products received by TSI from Amazon were the work of TP-Link and Amazzia.

59.    Experts believe that Amazon third-party sellers who pass a threshold of <$1MM in annual sales, known as "Top Sellers" (such as TSI), have considerable longevity in their Amazon business relationship. *See* https://www.marketplacepulse.com/articles/veteran-amazon-sellers-still-at-the-top For TSI "the sky was the limit."

60.    Defendants' accusations of counterfeiting, wrongful *per se*, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's existing and prospective business relationship with Amazon.

61.    The accusations aforesaid proximately caused Plaintiff's expulsion.

62. The statements were made maliciously and with ill will, as business entities do not lie dozens of times and turn a stone deaf ear to pleas for moderation absent a strong measure of ill will

63. Amazon stated that it would act favorably if TP-Link/Amazzia would retract the accusations; but, despite TSI requesting a retraction and asking for evidence of TP-Link/Amazzia's claims, both directly and through counsel, TP-Link/Amazzia refused to retract the IP Complaints or even respond to TSI or counsel at all and indeed continued to file dozens of new complaints afterwards."

64. Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon business. TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000. Using a 20% profit figure because our net profits ($368,000) derived from $1.819. Assuming a 10-year income stream for TSI, constant sales and static income of $900,000 per year, discounted at 3%, we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000.

## CLAIM II: TRADE LIBEL

65. Plaintiff incorporates the above allegations as though the same were rewritten at length.

66. Under California law:

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259, 217 Cal. Rptr. 3d 234 (2017) (quoting *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312, 206 Cal. Rptr. 3d 60 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." *John Doe 2*, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

to injure him in his occupation." <u>Cal. Civ. Code § 45.</u>' *Schmidt v. Baldy*, No. CV 16-9368-DSF (AGRx), <u>2019 U.S. Dist. LEXIS 182826, at *18</u> (C.D. Cal. Oct. 19, 2019Defendants' libelous IP complaints to Amazon proximately caused Amazon to expel_Plaintiff from the Marketplace on August 27, 2018 with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract with Amazon, as identified in ¶7 *supra.*

67.     TP-Link /Amazzia's scheming accusations falsely charged TSI with a serious crime or crimes.  Advertising falsely over the interstate wires may violate 18 U.S.C. 1343 because members of the public part with their money by reason of advertising. Moreover, this is not the only instance of defendants' scheme, to wit: there is pending in this Court the case of *TP-Link USA Corporation v. Careful Shopper*,[17]with counterclaims and third-party complaint premised on the same essential allegations as this case.

68.      The Amazzia promotional material and contract evidence a high probability that many more third-party sellers have fallen victim to this scheme but, as the conspirators calculated, those victims are unable to mount a lawsuit against the largest wi-fi manufacturer in the world, i.e. TP-Link.  Thus, on information and belief, plaintiff alleges that the conspiracy alleged herein was effected through a pattern of wrongful acts and conduct.

69.     Defendants' accusations against Plaintiff to Amazon directly injured Plaintiff in its business and trade because, as they knew, Amazon will not tolerate repeat counterfeiters as Amazon sellers.

70.     Defendants' accusations against Plaintiff constitute trade libel *per se.*

71.     Although injury may be presumed due to libel *per se,* Plaintiff suffered above and beyond presumed damages, e.g. loss of profits.  See ¶7 *supra.*  Further, TSI lost good will specific to the TSI-Amazon relationship that cannot be recovered including, *inter alia,* Plaintiff's right to sell a broad range of products on

---

[17] CASE NO:  8:19-cv-00082-JLS-KES

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

amazon.com, much of which entitlement was grandfathered.[18]

## **PRAYER**

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

A.    Compensatory damages of at least $5,000,000;

B.    Treble damages of $15,000,000;

C.    Punitive damages of not less than $5,000,000;

D.    Attorney fees and costs; and

E.    Such other and further relief as the Court may order.

Dated: May 23, 2022        GAW | POE LLP

By: _____
      Mark Poe

      Attorneys for Plaintiff
      Thimes Solutions, Inc.

---

[18] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Plaintiff Thimes Solutions, Inc. hereby demand a jury trial for its claims against Defendants TP-Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia.

Dated:  May 23, 2022           GAW | POE LLP

By: _____
Mark Poe
Attorneys for Plaintiff Thimes
Solutions, Inc.

# EXHIBIT C

Avi Eisenberg <avi@thimessolutions.com>

# Your Amazon.com Selling Privileges have been removed

**Amazon** <seller-evaluation@amazon.com>                                    Thu, Jun 28, 2018 at 8:07 PM
Reply-To: Amazon <seller-evaluation@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

Your account has been closed due to violations of our Seller Policies.
Your use of the Mobile App to extract dangerous goods (hazmat) information
from our systems is prohibited by our policies. As stated on the
Prohibited Seller Activities and Actions page in Seller Central
(https://sellercentral.amazon.com/gp/help/G200386250), if you upload excessive
amounts of data repeatedly, or otherwise use our services in an excessive
or unreasonable way, Amazon may restrict or block your access to product
feeds or any other functions that are being misused until you stop your
misuse. In addition, as stated in our Conditions of Use
(https://www.amazon.com/gp/help/customer/display.html?nodeId=508088), you are not
authorized to use any Amazon service to collect product listings or
descriptions or use data mining, robots, or similar data gathering and
extraction tools. Any derivative use of any Amazon service or its contents
is also prohibited.

Funds will not be transferred to you but will stay in your account while
we work with you to address this issue. If you have any open orders,
please ship them.

Because we have warned you about similar activities in the past, your
account has been suspended and will not be reactivated unless you
acknowledge that you understand our policies, reaffirm your commitment to
adhere to them, and communicate your plan of action to avoid these
activities (and any similar activities) in the future. To sell on
Amazon.com, please send us a plan that explains how you will address this
problem.

For help creating your plan, search for "Appeal the Removal of Selling
Privileges" in Seller Central Help. When you are ready to send us your
plan, click the Appeal button next to this message on the Performance
Notifications page in Seller Central (https://sellercentral.amazon.com/gp/customer-
experience/perf-notifications.html).

Once we receive your plan, we will review it and decide whether you may
sell on Amazon.com again. If you do not send an acceptable plan within 17
days, or if we agree to reinstate your account and later detect you
engaging in these activities (or similar activities), we may cancel your
listings and hold any funds in your account for up to 90 days.

Have questions? We can help right away. Contact us (https://sellercentral.amazon.
com/cu/contact-us/performance)

Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00311

THIMES00312

# EXHIBIT D



Avi Eisenberg <avi@thimessolutions.com>

---

## Appeal for the Reinstatement of Selling Privileges | Seller ID A1Q1VKNP5VVQEY

**Avi Eisenberg** <avi@thimessolutions.com>                                    Sun, Jul 1, 2018 at 12:44 PM
To: seller-performance@amazon.com, seller-performance-policy@amazon.com

Account Name: Universal Goods and Sales
Seller ID: A1Q1VKNP5VVQEY
Date: July 1st, 2018

Dear Team,
I am writing on behalf of seller account Universal Goods and Sales, Merchant ID A1Q1VKNP5VVQEY, to appeal the removal of our selling privileges. We received a violation regarding our use of the Amazon API on 06/29/2018.
We would like to communicate the following points to your team in this appeal for reinstatement:
1) We fully understand both the Amazon policies and MWS policies;
2) We are fully committed to practicing the utmost adherence to these policies;
3) Provide your team with the reason this violation occurred; and
4) Present our complete plan of action, which we have implemented within our business to avoid these activities and any other misuse of the Amazon services in the future

ROOT CAUSE OF VIOLATION
The violation that occurred on our account was regarding proper use of the Amazon API. The cause of this activity was due to our former developer, who carried out the violating actions by using a script on our seller account. The reason for this script was to identify hazmat status of ASINs in the catalog.
We chose to identity those particular ASINs solely so we could ensure that our items were properly shipped, prepped and packaged by our team. The data gathered when a script was used in the past to collect the hazmat status of many ASINs has never been used or intended to be used for any reason other than forecasting for our business and cross checking potential safety violations in a preventative manner.
We now acknowledge and understand that although our intentions were not harmful, this practice was still in violation of MWS policy. Our developer utilized the MWS services in a manner that violated the Amazon Conditions of Use as follows:
Conditions of Use: Prohibits any use of data mining, robots, or similar data gathering and extraction tools
Additionally, our former developer was responsible for testing a large volume of ASINs for safety risks and hazmat status. In the past, we addressed this issue with your team and had in fact ceased any actions that may have altered the accuracy of the Amazon platform at least one year ago (shipment creation).
All violating actions regarding shipment eligibility for specific ASINs and all misuse of the Amazon mobile app have been ceased in full approximately 2 weeks prior to this notice of suspension.
REASONS FOR UNINTENTIONAL MISUSE OF AWS
We had always intended to utilize the data provided by the script used by our former developer for strictly our own purposes. These business purposes included:
1) Scaling our business growth into new categories;
2) Ensuring the safety status of all ASINs that were identified as Hazmat;
3) Ensuring safe production, packing, shipping and storing methods of such products
Our former developer had failed to understand how the Amazon platform works, and we failed to ensure that he was properly trained on the Amazon Conditions of Use. As CEO of the company, I acknowledge that this practice may have caused a risk to the buyer experience overall.
CORRECTIVE ACTIONS
I did not fully understand that these changes were in fact 1) in violation of the complex Conditions of Use, 2) potentially harmful to the customer experience; and 3) potentially live in the system. I have fully re-read and can confirm my complete understanding of the MWS Developer Agreement and the Amazon Conditions of Use.
Additionally, as stated previously, I have ensured that the violating actions were immediately ceased. I have implemented the proper actions to avoid any and all MWS misuse moving forward.
Below, you will find our completed plan of action to eliminate this issue and any similar issues upon the successful reinstatement of selling privileges.

PREVENTATIVE MEASURES
We have immediately terminated the developer who had managed this account's MWS activities during the time of the violations
We have immediately ceased the use of MWS services as we work with your team to resolve this issue.
We have removed all the user permissions, and have had our account reviewed by a specialist to ensure it is 100% secure and free of all MWS activity
We have employed the assistance of a specialized team to work with us on site to review our account, ensure 100% compliance of every aspect of our account, and advise our team on compliance issues moving forward.
Our team has been instructed to print and study all of the following documents both individually and as a team. Each staff member has been required to attend a training session so they each are fully aware of the following areas of seller compliance:
Amazon Conditions of Use

THIM 000264

Policies and agreements
Product guidelines
Listing Policies
FBA Regulations
Shipment Creation Policies
MWS Agreement

Assigned a vice principal highly skilled in web development and other technology applicable to our seller account. This VP has been fully trained on how to lead our company and manage our Amazon seller account in case of future issues or absences.

All our existing and new employees have completed Amazon Seller University.

We have hired an e-commerce consulting company who specializes in Amazon account management to come and work with us on site.

As a company, we have chosen to completely eliminate the use of all MWS activity permanently, as we value our privilege to sell on the Amazon marketplace above all else

SUMMARY
This process of overhauling our prior MWS use and implementing new automation free strategies has allowed us to obtain the skills, methods and knowledge sellers need to succeed on the marketplace. We have taken the proper actions to ensure that the reason we were suspended from the marketplace was both fully understood and removed in its entirety. At the same time, we've implemented the proper preventative measures in the case another emergency situation occurs. With this thorough plan of action, we have ensured that only the best buyer experience is delivered to each and every customer.

Thank you very much for your time and understanding.

Kind regards,
Thimes Solutions Inc.
Founder & CEOs; Universal Goods and Sales
(845) 475-8642

# EXHIBIT E

| | |
|---|---|
| **From:** | Heather Auyang |
| **To:** | Victor Meng; Randolph Gaw; Joe Tuffaha; Prashanth Chennakesavan |
| **Cc:** | Mark Poe; Mark Schlachet |
| **Subject:** | RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production |
| **Date:** | Monday, July 25, 2022 3:06:45 PM |

Victor,

As a follow-up to Thimes's deficient document production discussed during the parties' L.R. 37-1 conference held on 7/21/2022, Thimes has not met its obligation to produce responsive and relevant documents.  There are huge gaps in Thimes's production, including documents responsive to Document Request Nos. 2 and 10—discovery related to any issues that may have contributed to Amazon's expulsion of Thimes from the Amazon Marketplace.

As well as the example detailed in our 7/22 email, below are additional examples of gaps in Thimes's production, including documents related to TP-Link's alleged complaints about Thimes to Amazon, other third-party complaints about Thimes to Amazon, and Amazon's closure of Thimes's account for violating Amazon's Sellers Policies, as well as suspension for violating the intellectual property rights of other third parties.

By July 28, TP-Link requests that Thimes either (i) supplement its production, or (2) supplement its discovery responses to provide the reason why such documents and communications are no longer in Thimes's possession, custody or control.

- **THIMES00286-THIMES00287**: **8/22/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 5304333291 lodged by 3PM Solutions notifying Thimes about a trademark infringement complaint for over **200 ASINs**.  Thimes has not produced any correspondence with Amazon relating to Complaint ID# 5304333291.
- **THIMES00311-THIMES00312**: **6/28/2018 email** from Amazon to avi@thimessolutions.com closing Thimes's account: "Your account has been closed due to violations of our Seller Policies. Your use of the Mobile App to extract dangerous goods (hazmat) information from our systems is prohibited by our policies."  Thimes has produced only one related email at THIMES00264-THIMES00265, and nothing else such as past violations mentioned in the email, how Thimes worked with Amazon to resolve the issue (as mentioned in the email), and when and why Amazon reinstated Thimes's account.
- **THIMES00308-THIMES00309**: **7/20/2018 email** from Amazon to avi@thimessolutions.com suspending Thimes's account for ASIN B0097BEG1C (**Apple Ear Pods**) to which it appears Thimes responded (**THIMES00309**) in a 7/21/2018 email to Amazon describing *other complaints*, including: "On May 31, 2018, we replied to a *previous inauthentic complaint* with invoices proving authenticity. These invoices were accepted on June 5th, 2018 and we were permitted to continue selling."  Thimes has not produced any corresponding communications with Amazon, including Amazon's response to Thimes's 7/21/2018 email or the "previous inauthentic complaint."
- **THIMES00315**: **6/26/2017 email** from Amazon to avi@thimessolutions.com stating: "We reviewed your appeal and reinstated the following content: ASIN: B01MSITACV [**IPX7 Waterproof Bluetooth Speaker**] Complaint ID: 996385701."  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

**THIMES00303**: **6/24/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 5162654761 for ASIN B00ED2OQIS (**Apple 12w Usb Power Adapter-Eng MD836LL/A**) stating: "We received a report from a rights owner that claims the items at the end of this email infringe their trademark," and requesting proof of product authenticity.  Thimes has not produced any corresponding communications with Amazon about this Apple product, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00315 6/26/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 996385701 for ASIN B01MSITACV (**non-TP-Link product**) stating: "We reviewed your appeal and reinstated the following content: []."  Thimes has not produced any corresponding communications with Amazon about this non-TP-Link product, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00318**: **10/19/2017 email** from Amazon to avi@thimessolutions.com stating: "We reviewed your appeal and reinstated the following content: ASIN: B01D1ZULK4 [**Pet Deshedder Glove**] Complaint ID: 1026446571."  Thimes has not produced any corresponding communications with Amazon about this non-TP-Link product, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00354**: **1/19/2018 email** from Avi Eisenberg to us-compliance@tp-link.com, notice-dispute notice-dispute@amazon.com stating: "We received an email from Amazon today stating that TP-Link is asserting that items sold by us (under the storefront "Universal Goods and Sales", merchant ID A1Q1VKNP5VVQEY, ASIN B01DXVK3KY, Complaint ID: 1359628881) are counterfeit."  Thimes has not produced the referenced email received from Amazon.

- **THIMES00397 1/19/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID#1361098691 (ASIN B01DXVK3KY (TP-Link product)) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal: []."  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00398 1/20/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID#1360991921 (ASIN B01DXVK3KY) stating: "We cannot accept your appeal because it does not address the claim we received. Please provide the following information so we can process your appeal: []."  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00405 1/20/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1362495481 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []."  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00389 1/25/2020 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1379227541 (ASIN B01DXVK3KY) stating: "We reviewed your appeal and reinstated the following content: ASIN: B01DXVK3KY."  Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00379 1/26/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID#

1362495481 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []." Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00404 3/14/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1525794601 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []." Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00396 4/2/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1577934581 (ASIN B01DXVK3KY) stating: "We reviewed your appeal and reinstated the following content: ASIN: B01DXVK3KY []." Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00387 4/5/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1587479311 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []." Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

- **THIMES00387-THIMES00388 4/5/2018 email** from Amazon to avi@thimessolutions.com for Complaint ID# 1587732841 (ASIN B01DXVK3KY) stating: "Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal []." Thimes has not produced any corresponding communications with Amazon, including the email it received from Amazon leading to Thimes's "appeal" or Thimes's corresponding "appeal."

Thanks,
Heather

---

**From:** Heather Auyang
**Sent:** Friday, July 22, 2022 9:03 AM
**To:** Victor Meng <vmeng@gawpoe.com>; Randolph Gaw <rgaw@gawpoe.com>; Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production

Victor,

Thanks for the L.R. 37-1 conference call yesterday concerning Thimes's responses to TP-Link's First Set of Interrogatories and Document Requests. Below are some points that we discussed.

By July 28, Thimes agrees to supplement its written discovery responses and will try to supplement its document production.  TP-Link's position is that both should occur by **July 28** given the impending deadlines.

- Format of Production:
  - Thimes has not produced ESI as the information is kept in the usual course of business. Thimes must produce load files with metadata, including ESI from the Gmail account, rather than PDFs with no metadata.  Note that TP-Link's production from a Gmail account was produced as a load file with metadata.
  - You also stated that there is no proprietary software involved.  However, the Excels (**THIMES00001**, **THIMES00256** - All FBA Sales, and **THIMES00257** - All MFN Sales – CONFIDENTIAL) were extracted and generated by InventoryLabs' software, which Thimes uses to handle inventory and financials for its Amazon sales.  As stated below, Thimes should export and produce the InventoryLabs files and not extractions.
  - Thimes represents that it is not withholding any documents based on an inspection requirement.
- Thimes represents that it is not withholding any information or documents based on privilege.
- Interrogatory No. 12 and Request Nos. 2, 10, and 11—these discovery requests relate to Thimes and Mr. Eisenberg's Amazon account(s).
  - Thimes has not fully responded to these discovery requests and there are huge gaps in the production.  One example that we discussed was Amazon sent a June 28, 2018 notice to Thimes that Amazon had <u>closed</u> Thimes's account: "Your account has been closed due to violations of our Seller Policies.  Your use of the Mobile App to extract dangerous goods (hazmat) information from our systems is prohibited by our policies." **THIMES00311**—attached.  Amazon's notice states:

> Because **we have warned you about similar activities in the past**, your account has been suspended and will not be reactivated unless you acknowledge that you understand our policies, reaffirm your commitment to adhere to them, and communicate your plan of action to avoid these activities (and any similar activities) in the future. To sell on Amazon.com, please send us a plan that explains how you will address this problem.

> First, Thimes has not produced the full correspondence with Amazon regarding this violation, *e.g.*, Thimes's response and further correspondence with Amazon. Second, Thimes has not produced documents related to Amazon's warnings about "similar activities in the past."

> As another example, Thimes produced a July 1, 2018 email to Amazon (**THIMES00264-THIMES00265**—attached) that refers to a violation notice from Amazon received on June 29, 2018: "We received a violation regarding our use of the Amazon API on 06/29/2018."  Thimes has not produced the June 29, 2018 violation notice or other related correspondence.

> Thimes's July 1, 2018 email to Amazon also refers to another "issue" from "at least a year ago": "Additionally, our former developer was responsible for testing a large volume of ASINs for safety risks and hazmat status. ***In the past, we addressed this issue with your team and had in fact ceased any actions that may have altered the***

*accuracy of the Amazon platform at least one year ago (shipment creation)*." **THIMES00264-THIMES00265**.

Thimes's July 1, 2018 email also refers to working with Amazon: "We have immediately ceased the use of MWS services as we work with your team to resolve this issue."

Thimes has not produced anything (including correspondence with Amazon) about the above or any other such violations.  Please produce by July 28.

- ○ For Interrogatory No. 12, Thimes agrees to supplement to provide identification of the alleged entity who filed the complaint and details of the complaint, concern or claim. However, TP-Link maintains its objections as to Thimes's unilateral limitation of the scope of the request.

- Financials—Thimes sold products starting in 2015, and therefore financials from 2015 to 6/30/2022 are relevant ("relevant period").
  - ○ Request Nos. 18 and 20—these requests seek detailed sales and revenue information:
    - ■ **THIMES00001**, **THIMES00256** and **THIMES00257** show just Amazon sales. Thimes's 2019 and 2020 P/L show sales but Thimes has not provided evidence where it was selling post-August 2018 when Thimes was allegedly expelled from Amazon.  You are checking into this.
    - ■ You are checking if Thimes sold products on other platforms besides Amazon.
    - ■ Please explain the difference between **THIMES00001** and **THIMES00256**— both files are the purported complete FBA sales.
    - ■ You are considering whether to produce *in Excel* detailed sales transactions (like THIMES00001) that show *all sales across all platforms* (and indicating the platform or other means of sales) that *tie to the profit and loss statements* for the relevant period.  TP-Link's position is that Thimes should produce this information.
    - ■ TP-Link's position is that Thimes should export and produce its QuickBooks files and InventoryLabs files.
  - ○ Request No. 19: this request seeks financial statements.
    - ■ Thimes agrees to produce Balance Sheets.  None have been produced.  As discussed, Thimes should produce detailed Balance Sheets in Excel (as of 12/31) for 2015, 2016, 2017, 2018, 2019, 2020, 2021 and as of 6/30/2022.
    - ■ Thimes agrees to produce a complete set of profit and loss statements.  The following P&L statements are missing from Thimes's production:
      - • Annual P&L for 2015, 2016, 2021
      - • Monthly P&L 2015, 2016, 2019, 2020, 2021 (in Excel)
      - • P&L as of 6/30/2022
    - ■ Thimes agrees to produce a complete set of tax returns.  The following tax returns are missing from Thimes's production:
      - • 2015, 2016, 2021 (including supporting schedules and K-1s).
- Interrogatory No. 12—Thimes agrees to amend to include the "Statement" in Paragraph 47 of the Fifth Amended Complaint.
- Request No. 5: Thimes agrees to amend its response to state it does not have possession of

any documents and communication showing Amazon purchased any products as a customer of Thimes due to lack of access to its Amazon account to show Amazon's orders made through Vendor Express.

- Request No. 8—Thimes represents that it has produced all invoices for its source of TP-Link products.  The first invoice is for 360 units of C5400 from The Surplus Company and the second invoice from Imaginari (**THIMES00260**).
- Request No. 22: although you are checking with your client about sales on any other platforms beside Amazon, Thimes will amend its response to state it is not in possession of any responsive documents because it does not have access to its Amazon account.

Thanks,
Heather

---

**From:** Victor Meng <vmeng@gawpoe.com>
**Sent:** Wednesday, July 20, 2022 3:55 PM
**To:** Heather Auyang <Heather.Auyang@ltlattorneys.com>; Randolph Gaw <rgaw@gawpoe.com>; Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production

> [EXTERNAL EMAIL] This email originated from outside of the **LTL Attorneys** organization. **DO NOT CLICK** links or open attachments unless you recognize the sender and know the content is safe.

Okay, talk with you tomorrow at 1pm.

Thanks,
Victor

---

**From:** Heather Auyang <Heather.Auyang@ltlattorneys.com>
**Sent:** Wednesday, July 20, 2022 2:55 PM
**To:** Victor Meng <vmeng@gawpoe.com>; Randolph Gaw <rgaw@gawpoe.com>; Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production

Hi Victor,

Sorry, let's do tomorrow at 1 pm instead.

Thanks,
Heather

---

**From:** Heather Auyang <Heather.Auyang@ltlattorneys.com>
**Sent:** Wednesday, July 20, 2022 2:31 PM
**To:** Victor Meng <vmeng@gawpoe.com>; Randolph Gaw <rgaw@gawpoe.com>; Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production

Hi Victor,

Tomorrow (7/21) at 11 am works.

Let's use this dial-in—

(213) 612-8911
Conference ID #: 426
Participants' PIN: 254368

Thanks,
Heather

---

**From:** Victor Meng <vmeng@gawpoe.com>
**Sent:** Wednesday, July 20, 2022 10:07 AM
**To:** Heather Auyang <Heather.Auyang@ltlattorneys.com>; Randolph Gaw <rgaw@gawpoe.com>; Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production

[EXTERNAL EMAIL] This email originated from outside of the **LTL Attorneys** organization. **DO NOT CLICK** links or open attachments unless you recognize the sender and know the content is safe.

Hi Heather,

We are available to meet and confer concerning the issues raised in TP-Link's letter tomorrow (7/21) or Friday (7/22) from 11-2. Let me know what works for you.

Thanks,
Victor

Victor Meng

Gaw | Poe LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Direct: 415.895.0862
Main: 415.766.7451
Fax: 415.737.0642

---

**From:** Heather Auyang <Heather.Auyang@ltlattorneys.com>
**Sent:** Wednesday, July 13, 2022 5:54 PM
**To:** Randolph Gaw <rgaw@gawpoe.com>; Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Victor Meng <vmeng@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** RE: request for conference of counsel - TP-Link responses to interrogatories//Thimes responses to interrogatories and requests for production

Counsel,

TP-Link requests a Local Rule 37-1 conference concerning Thimes's deficient responses to TP-Link's First Set of Interrogatories and Requests for Production--please see the attached letter.   TP-Link intends to move to compel on every Interrogatory and Request, except Request Nos. 15, 16 and 21.

We can meet and confer concerning the issues raised in TP-Link's letter at the same time as we confer about Thimes's issues raised below.

We are generally available on Friday (7/15) from 11-3 pm or Monday (7/18) from 11-3 pm.

Thanks,
Heather

---

**From:** Randolph Gaw <rgaw@gawpoe.com>
**Sent:** Wednesday, July 6, 2022 12:53 PM
**To:** Joe Tuffaha <joe.tuffaha@ltlattorneys.com>; Heather Auyang <Heather.Auyang@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>
**Cc:** Mark Poe <mpoe@gawpoe.com>; Victor Meng <vmeng@gawpoe.com>; Mark Schlachet <markschlachet@me.com>
**Subject:** request for conference of counsel - TP-Link responses to interrogatories

**[EXTERNAL EMAIL]** This email originated from outside of the **LTL Attorneys** organization. **DO NOT CLICK** links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

Pursuant to Local Rule 37-1, Thimes requests a prefiling conference of counsel regarding TP-Link's responses to Thimes's first set of interrogatories.  Please let me know when you are available for a conference call next week.

Plaintiffs intends to move to compel further responses as to the following interrogatories.

**Interrogatories 1 & 3**:  It appears that TP-Link has not fully responded to those interrogatories on the grounds that it "lacks sufficient knowledge or information" as to whether complaints were submitted to Amazon on its behalf alleging counterfeiting by Thimes.  It is hard to see how that objection was made in good faith considering (i) Winfred Shu stated in his declaration that Thimes hired Amazzia, (ii) Mr. Fikhman admitted in his declaration that Amazzia did file counterfeiting complaints against Thimes as part of its brand protection services for TP-Link, and (iii) TP-Link made judicial admissions in its Answer that TP-Link hired Amazzia and also that Amazzia submitted complaints to Amazon concerning Thimes (*see, e.g.*, ECF 175 para. 17, 19.)

Therefore, TP-Link needs to respond to those interrogatories by either identifying the facts that they, or their agents (i.e., Amazzia) contemporaneously relied upon to support the counterfeiting complaints against Thimes, or by stating that it has no knowledge because it was not involved in any way in the submission of those complaints.

**Interrogatories 2, 4, 7, 9, 11, and 12**:  TP-Link has responded to each of these interrogatories by stating that the information will be derived or ascertained from TP-Link's forthcoming document production pursuant to FRCP 33(d).  These are improper responses for the following reasons.

1. Rogs 2, 4, 7, and 9 specifically request identification, by bates number, of specific documents. It defeats the point of the interrogatory for TP-Link to just generally point to its entire document production.

2. A party may use FRCP 33(d) only if the burden of deriving the answer from the documents is substantially the same for either party.  There is no credible explanation as to how it is equally burdensome for Thimes to figure out from the document production what documents support TP-Link's response to other interrogatories (Rogs 2, 4, 7, and 9), what documents support TP-Link's contention that its warranty does not extend to the TP-Link routers sold by Thimes on Amazon (Rog 11), or every documented instance in which TP-Link refused to honor its warranty on a product because that product had been bought on Amazon from someone other than an unauthorized reseller (Rog 12).   "[TP-Link's] argument is untenable.  It is obvious that the burdens are not equal under the circumstances.  '[D]ocuments themselves rarely, if ever, reveal contentions of fact or law.  A party reveals its contentions.'"  *Santillan v. Verizon Connect, Inc.*, No. 21CV1257-H-KSC, 2022 WL 428170, at *2 (S.D. Cal. Feb. 10, 2022)

3. Invoking FRCP 33(d) without identifying specific documents is itself an improper use of that rule.  *See Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (finding that responding to an interrogatory by agreeing to "provide documents in accordance with Rule 33(d)" does not comply with the Rule); *Blake Assocs., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 289-90 (D. Mass. 1988) (finding that an answer to an interrogatory stating that the party

"will make available for examination by counsel documents responsive to this interrogatory" was "patently insufficient" under Rule 33).  Courts in this and the Northern District routinely order responding parties to comply with the requirements of Rule 33(d) by identifying documents by bates numbers.  *See Core Nutritionals, LLC v. Performance Nutrition Formulators*, LLC, No. CV1600705TJHAFMX, 2016 WL 10771272, at *2 (C.D. Cal. Oct. 26, 2016) (ordering defendants to supplement interrogatory responses by providing bates numbers of the pertinent documents pursuant to Rule 33(d) within eight days of order); *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, No. C-10-04783 LHK PSG, 2011 WL 1483706, at *4 (N.D. Cal. Apr. 19, 2011) (finding that defendant's interrogatory response "fails to specify the particular documents it relies on, in violation of Fed. R. Civ. P. 33(d)" and ordering defendant to provide the Bates number of documents relied upon within 10 days of order); *Palmdale 3D, LLC v. Calamos*, No. CR147523MWFPLAX, 2015 WL 12832140, at *1 (C.D. Cal. June 24, 2015) (ordering party to "identify which specific documents, by Bates number, are responsive to which specific interrogatories, in full compliance with Fed. R. Civ. P. 33(d)(1)" within 14 days of order).

4. To the extent that TP-Link is contending that identification of "all" documents is unduly burdensome, courts automatically read such interrogatories so that they are limited to identification only of "material" documents.  *See e.g.*, *In re Questcor Pharms., Inc. Sec. Litig.*, No. SACV121623DMGJPRX, 2014 WL 12570960, at *2 (C.D. Cal. Nov. 18, 2014); *Santillan*, 2022 WL 428170, at *2.

**Interrogatory 13**:  It is unclear how this interrogatory is outside the scope of discovery.  But Thimes agrees to limit this interrogatory to seek identification for only those policies, procedures, and practices utilized by TP-Link in deciding to respond or not respond to Thimes's communications about the Amazon complaints.

Thank you,
Randy

**Randolph Gaw**
**Gaw | Poe LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: 415.766.7451
Direct: 415.766.9317
Fax: 415.737.0642
E-mail: rgaw@gawpoe.com
www.gawpoe.com

# EXHIBIT F

# Notice: Policy Warning

1 message

**Amazon** <notice@amazon.com>                                                    Wed, Aug 22, 2018 at 7:56 PM
Reply-To: Amazon <notice-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

We are contacting you because we received a report of trademark
infringement from the rights owner listed below. Sellers on Amazon.com are
not allowed to imply listings on product detail pages are trademarked when
they are not. We removed the rights owner's trademark(s) from the detail
page(s) for the content listed at the end of this email.

If a product you are listing is compatible with a brand-name product, the
product detail page(s) must clearly identify that the product is
compatible with the trademarked product.

If you believe this complaint was made in error, please respond directly
to this email and provide an invoice as confirmation.

If you believe that the reported content does not infringe the rights
owner's trademark, you may email notice-dispute@amazon.com with supporting
information.

We may restore this content if we receive a retraction from the rights
owner. Their contact information can be found below.

-- 3PM Solutions
-- rob@3pm.ai

If the rights owner agrees to retract their complaint, they must send the
retraction to us at notice-dispute@amazon.com.

We consider intellectual property infringements a serious matter. If we
receive more complaints about your listings, we may not allow you to sell
on Amazon.com.

To learn more about this policy, search for "Intellectual Property
Violations" in Seller Central Help.

ASIN: B00723ZXWI, B006K2SRPM, B009WU54AK, B00C7CUVYE, B00DS0BUQ2,
B00C7CV1TI, B00CTEL6IA, B00C7CUMP2, B00C7CU0SG, B00CHU7X1K, B00C7CTVUY,
B00AL9OUGA, B00A9COZH8, B00C7CU8RO, B00C7CUXMO, B07BGW4KKW, B01BNUXQM4,
B00TOLW2PM, B00TOLVYE2, B00TOLVYCO, B00IN0LE1I, B00C7CV40Y, B00C7CV256,
B00C7CU7BQ, B009RUDOH0, B001AVXZGE, B079VL5S2S, B00TOLW2TI, B00DUDSH9K,
B079VVHFP1, B000GHDQ04, B072J8XD3D, B00MYF6EBS, B074XN1SQX, B0722QXJG8,
B0776R1MWH, B074R3ZZQ9, B06WLGRYSF, B01N3CD6C5, B01N3CD2ER, B00ZW5WJH0,
B016UC7HT8, B0143LWYCS, B013CWSHWU, B07BB3HS98, B0769F1SJ7, B00Y39ZCAW,
B00N556MDQ, B00F6FM9TY, B004TB3OZE, B004TB3OOA, B003S9VW84, B002N7WJ7U,
B00115CW00, B079D6SV1G, B01MQYBQV5, B002N7XQXG, B00N559512, B01I4SUC7U,
B06XG63X35, B06XGCM7VZ, B071Z6T1GM, B07288RM77, B00BL6NGVM, B07C84KKB8,
B071FTK8V8, B0716JXNNZ, B01HQKSA2Q, B01KTX7G0Y, B004LJ40TS, B000GKBMMO,
B0007U837A, B01AACPFY8, B075ZG8BFT, B07C7V3LYN, B07CJVWJPN, B07C7V9D2R,
B07C7QQGP9, B07B4NWB7J, B07B3ZFQRY, B079XSMKTC, B0777T8W6L, B076F5PX4Q,
B076F7P5T1, B076F4G9ZZ, B076F667B8, B0766257PN, B0758SVBKL, B0758NBNCT,

```
B06Y18QWZQ, B06XXLLB71, B01N0ANRU8, B01N14OPCV, B01KYGD5UQ, B003MQMEEO,
B016VMOY8E, B011OUWIXG, B07CP357XP, B07C8P1VCJ4, B07CKR7TX5, B07CKPL1FH,
B07CKHNG8H, B07CJYPPTP, B07CJWYTL7, B07CJVZV2D, B07CGK9JQC, B07CFWD1PS,
B07C7YL6DK, B07C7WV97K, B07C7FZV52, B07C5LH7XK, B07C5L7NKV, B07C5KP3CQ,
B07BK936NQ, B07BHTV7Y6, B07B67NXHW, B076F9FXLY, B076F98VJ4, B076F8M328,
B076F5Q9VX, B076F5193X, B076F48KYG, B076F44FYS, B076F41BH5, B076F29NJH,
B076F21348, B076DZP5YB, B01BT3DP62, B00SXHJZ94, B00Q62YWJ6, B00OLC5QJ8,
B00GMTSE7Y, B00FZZPNFM, B00FZZN4EO, B00FZZLXGA, B00FXI0892, B00EDOZCPM,
B00DRHJ59U, B00CLVD87S, B00CD84EVS, B00CD84DAA, B00BIFW5WW, B00A7WD1XO,
B008YOBKTY, B008YOBJWC, B008N9DLX8, B008IEFJNI, B00881CT4I, B005O00OJO,
B003NEH8TG, B003MQMEEE, B00390GO3Q, B07B4M4L8M, B07B43LNJW, B07B3ZM3VB,
B07B3ZKX7S, B07B3ZDBCH, B079Y6G1XJ, B079XYXYV2, B079XVKDQG, B079XVK73S,
B079H5MR6X, B079H5FC24, B079H3SVYP, B074WWBZ2J, B07C7V4QYY, B0002MJCIM,
B001PYK1BS, B002B8B79W, B01MTKIY3R, B074VFBP85, B075KMQG1Q, B076F8Z93Q,
B079XRKKM6, B07C54DPBD, B07BZ6QS6M, B076TFD6W7, B079V23HR1, B07B42C3DM,
B07C7MT6Q4, B01KQ7DXJ6, B07816QFZX, B0766362FL, B07662P9R2, B07662C2YB,
B07661QDLW, B07661PK74, B0758NWZ85, B0758J19PK, B0758HGYX3, B074XBSHSJ,
B074VGTVJ1, B074KHSC97, B074KGJHYH, B074KFG8PZ, B0741JGJ9M, B073JWNRNV,
B0722D3LJ6, B06Y2HT77C, B06Y1DFPX6, B06XY62D89, B06XXKJB15, B06XKLBJKQ,
B06XKC6X5B, B01NBWCF7L, B01N6SX7VU, B01N3WH9OB, B01N30KNXC, B01MZ8JJ4S,
B01MZ6GRH5, B01MYR6GER, B01MY6HSGU, B01MY4WKIT, B01MXE1DQO, B01MTCSOFD,
B01MRHDLWI, B01KYGD5TW, B01GKE6AA8
```

Title: n/a
Infringement type: Trademark
Complaint ID: 5304333291


Sincerely,
Seller Performance Team
Amazon.com
Http://www.amazon.com

THIMES00287

# EXHIBIT G

Avi Eisenberg <avi@thimessolutions.com>

## Your amazon.com selling privileges have been removed

**Amazon** <product-quality-policy@amazon.com>                                    Fri, Jul 20, 2018 at 1:43 PM
Reply-To: Amazon <product-quality-policy@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

You currently may not sell on Amazon.com because of concerns about the authenticity of the item listed at the end of this email. Funds will not be transferred to you but will stay in your account while we work with you to address this issue.

To sell on Amazon again, please send the following information to product-quality-policy@amazon.com:

-- The issue that caused the concerns
-- Steps you have taken to resolve the concerns
-- Details how you will prevent similar concerns

Here are a few things to consider as you work on resolving this:

--Sourcing — Are you sourcing the product from a trusted supplier?
--Listing — Is the product accurately described on Amazon? Have you ensured that there is no ambiguity and the customer is well informed?

We will review your plan and decide if you may sell on Amazon again. If you do not send an acceptable plan within 17 days, or after two unsuccessful appeals (whichever occurs sooner), we may not allow you to sell on Amazon. Failure to successfully appeal this decision may result in us permanently withholding any payments to you and any FBA inventory of the items that caused "inauthentic" complaints may be destroyed at your expense.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please write to payments-funds@amazon.com.

Learn more about our policies in Seller Central Help:
--Amazon Anti-Counterfeiting Policy (https://sellercentral.amazon.com/gp/help/201165970)
--Policies and Agreements (https://sellercentral.amazon.com/gp/help/521)

You can see the health of your account in the Performance section of Seller Central: https://sellercentral.amazon.com/gp/customer-experience/perf-notifications.html

To talk to someone about this email, ask our Seller Support team to contact you (https://sellercentral.amazon.com/hz/contact-us/performance).
-------------------------------------
ASIN: B0097BEG1C
-----------------------------

Sincerely,                                                       THIMES00308
Seller Performance Team

THIMES00309

# EXHIBIT H

Avi Eisenberg <avi@thimessolutions.com>

## A1Q1VKNP5VVQEY - POA for inauthentic suspension

**Avi Eisenberg** <avi@thimessolutions.com>                                          Sat, Jul 21, 2018 at 1:01 PM
To: product-quality-policy@amazon.com, seller-performance-policy@amazon.com, seller-performance@amazon.com

Dear Team:

This is in regard to inauthentic complaints on ASIN B0097BEG1C. All units we sold are authentic.

On May 31, 2018, we replied to a previous inauthentic complaint with invoices proving authenticity. These invoices were accepted on June 5th, 2018 and we were permitted to continue selling.

On June 23rd, we were informed of an investigation for this ASIN, in Case ID 5158952701. On July 9th, we were sent the following in that case:

"We have checked a sample of your inventory for ASIN B0097BEG1C and found no defects. We have reinstated your offer and closed the investigation."

As such, this shows that our inventory as of Jul 9th was completely authentic. We have not had any sales on ASIN B0097BEG1C after Jul 9th and we have not shipped any units of ASIN B0097BEG1C to Amazon after Jul 9th. Any concerns about authenticity are therefore related to units from before July 9th, which was inspected by Amazon and confirmed to be completely authentic.

As we have demonstrated in the past, and have had confirmed by Amazon in the past, we purchased all our units of this product from a trusted supplier and the product is accurately described, and the detail page and condition correctly describes the product. I have additionally attached copies of our invoices for this product to this email, that as mentioned were all previously verified by Amazon

Therefore, please reinstate our account.

Thank you.

---

**7 attachments**

**Invoice-33277r.pdf**
79K

**Invoice-33338r.pdf**
86K

**Invoice-33314r.pdf**
86K

**Invoice-33268r.pdf**
86K

**Invoice-33388r.pdf**
79K

**Invoice-1563.pdf**
58K

**Invoice-1566.pdf**
58K

THIMES00263

# EXHIBIT I

M Gmail

Avraham Eisenberg <613ike@gmail.com>

## Reinstatement of your Amazon.com offer(s)

1 message

**notice-request-dispute@amazon.com** <notice-request-dispute@amazon.com>                    Mon, Jun 26, 2017 at 1:16 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-TF4V4J02IBWO@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-TF4V4J02IBWO@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

We reviewed your appeal and reinstated the following content:

ASIN: B01MSITACV
Complaint ID: 996385701

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

# EXHIBIT J

 Gmail                                                    Avi Eisenberg <avi@thimessolutions.com>

---

**Your Amazon.com Inquiry**

---

**Amazon.com** <notice@amazon.com>                          Sun, Jun 24, 2018 at 10:55 AM
Reply-To: notice+AB0AGNNYTRHG@amazon.com
To: avi@thimessolutions.com

---

amazon                                              Your Account | Amazon.com

Message From Customer Service

Hello,

We received a report from a rights owner that claims the items at the end of this email infringe their trademark.

Please provide the following information so that we can process your request :

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID. It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

ASIN: B00ED2OQIS

Complaint ID: 5162654761

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).

Sincerely,

Best regards,
**Amazon.com**

THIMES00303

# EXHIBIT K

M Gmail                                          **Avraham Eisenberg <613ike@gmail.com>**

---

# Reinstatement of your Amazon.com offer(s)

1 message

---

**notice-request-dispute@amazon.com** <notice-request-dispute@amazon.com>                  Mon, Jun 26, 2017 at 1:16 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-TF4V4J02IBWO@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-
TF4V4J02IBWO@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

We reviewed your appeal and reinstated the following content:

ASIN: B01MSITACV
Complaint ID: 996385701

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

THIMES00315

# EXHIBIT L

M Gmail                                                    Avraham Eisenberg <613ike@gmail.com>

---

**Your Amazon.com Seller Account**

---

**notice-dispute@amazon.com** <notice-dispute@amazon.com>                    Thu, Oct 19, 2017 at 8:58 PM
Reply-To: Amazon Notifications <seller-evaluation@amazon.com>
To: "613ike@gmail.com" <613ike@gmail.com>

Hello,

We reviewed your appeal and reinstated the following content:

ASIN: B01D1ZULK4
Complaint ID: 1026446571

Sincerely,
Amazon.com

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

THIMES00318

# EXHIBIT M

**(no subject)**

**Avi Eisenberg** <avi@thimessolutions.com>                                                          Fri, Jan 19, 2018 at 10:28 PM
To: us-compliance@tp-link.com, notice-dispute <notice-dispute@amazon.com>

We received an email from Amazon today stating that TP-Link is asserting that items sold by us (under the storefront "Universal Goods and Sales", merchant ID A1Q1VKNP5VVQEY, ASIN B01DXVK3KY, Complaint ID: 1359628881 ) are counterfeit. We take all reports of Intellectual Property Rights Infringement seriously.

These items were purchased from a reputable distributor and are not counterfeit.

Please be aware that Amazon has stated that our account is under review as a result of the allegations. If we suffer damages as a result of your incorrect allegations, you may be liable.

We respectfully request for a retraction to be sent to notice-dispute@amazon.com stating that the original allegations were made in error. If you believe the allegations are correct, please provide us with all evidence you have obtained to support your claim of infringement. We are aware of one purchase by TP-link of 2 of our units that were offered; as of the time of this email, Jan 19th, this has not been delivered and is currently in transit. Please advise if any other units have been purchased by TP-link.

# EXHIBIT N

# Your Amazon.com Seller Account

**notice@amazon.com** <notice@amazon.com>                                                 Fri, Jan 19, 2018 at 11:38 PM
Reply-To: "notice+C2ADVL0LZG34K-TH28IU7GSRSVQ@amazon.com" <notice+C2ADVL0LZG34K-TH28IU7GSRSVQ@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be sent to notice-dispute@amazon.com:

-- us-compliance@tp-link.com

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID. It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

Your plan of action is missing the following information:

-- The reason(s) you were selling allegedly infringing products and/or uploaded allegedly infringing content.
-- What you have done to ensure you are no longer selling infringing content.
-- How you plan on preventing the sale of infringing content in the future.
-- Any other pertinent information.

ASIN: B01DXVK3KY
Complaint ID: 1361098691

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

THIMES00397

# EXHIBIT O

Avi Eisenberg <avi@thimessolutions.com>

---

## Your Amazon.com Seller Account

---

**notice@amazon.com** <notice@amazon.com>                          Sat, Jan 20, 2018 at 3:51 AM
Reply-To: "notice-dispute+C2ADVL0LZG34K-T1T7S6VJPACNCK@amazon.com" <notice-dispute+C2ADVL0LZG34K-T1T7S6VJPACNCK@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

We cannot accept your appeal because it does not address the claim we received. Please provide the following information so we can process your appeal:

-- A valid retraction from the rights owner who reported the infringing content listed at the end of this email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request a retraction.

-- us-compliance@tp-link.com

If the rights owner agrees to retract the complaint, they must send the retraction to us at notice-dispute@amazon.com.

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity clearly proves that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

ASIN:  B01DXVK3KY
Complaint ID: 1360991921

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

Please ship any open orders. If you have funds in your account, they will be available after any amounts paid for A-to-z claims or chargebacks have been deducted. This usually takes about 90 days, but funds may be held longer.
[Quoted text hidden]

THIMES00398

# EXHIBIT P

Avi Eisenberg <avi@thimessolutions.com>

---

# Your Amazon.com Seller Account

---

**notice-dispute@amazon.com** <notice-dispute@amazon.com>                Sat, Jan 20, 2018 at 2:11 PM
Reply-To: "notice-dispute+C2ADVL0LZG34K-T3K2NHB7R8NS4J@amazon.com" <notice-dispute+C2ADVL0LZG34K-
T3K2NHB7R8NS4J@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be sent to notice-dispute@amazon.com:

-- us-compliance@tp-link.com

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID. It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

ASIN: B01DXVK3KY
Complaint ID: 1362495481

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

THIMES00405

# EXHIBIT Q

Avi Eisenberg <avi@thimessolutions.com>

---

## Your Amazon.com Seller Account

---

**notice-request-dispute@amazon.com** <notice-request-dispute@amazon.com>                    Thu, Jan 25, 2018 at 10:09 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T1FE75Y9NTE95A@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-
T1FE75Y9NTE95A@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

We reviewed your appeal and reinstated the following content:

ASIN: B01DXVK3KY
Title: TP-Link AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router – Powerful Wi–Fi for Gaming and 4K Streaming, Comprehensive
Antivirus and Security, Works with Alexa and IFTTT (Archer C5400)
Complaint ID: 1379227541

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

THIMES00389

# EXHIBIT R

 Gmail

Avi Eisenberg <avi@thimessolutions.com>

---

## Your Amazon Enquiry

---

**notice-dispute@amazon.com** <notice-dispute@amazon.com>                    Fri, Jan 26, 2018 at 12:06 PM
Reply-To: notice-dispute+A1SS0Q4VDG10C2@amazon.com
To: avi@thimessolutions.com

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the
following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this
email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be
sent to notice-dispute@amazon.com:

 -- us-compliance@tp-link.com

ASIN: B01DXVK3KY
Complaint ID: 1380974551

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those,
please send an email to payments-funds@amazon.com.

Sincerely,
Amazon.com


--------------------------------------
From: avi@thimessolutions.com
Sent: Friday, January 26, 2018 7:52 AM (PST)
Subject: "[UNVERIFIED SENDER]Complaint ID: 1380553801

Dear Team,

This message is in response to :Complaint ID: 1380553801

These items are authentic. Please see attached invoice, which shows proof
of purchase of items in brand new condition.

Please reinstate.

Please note this is the third time that this false claim has been made.
Please take action and prevent future false claims from being made by this
sender.

# EXHIBIT S

**Your Amazon.com Seller Account**

1 message

---

**notice-request-dispute@amazon.com** <notice-request-dispute@amazon.com>                  Wed, Mar 14, 2018 at 7:18 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T2HVKY1KVZ8JU6@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-T2HVKY1KVZ8JU6@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal:


-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be sent to notice-dispute@amazon.com:

-- TP-Link, ,Compliance
-- compliance-us@tp-link.com


-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID. It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.


ASIN: B01DXVK3KY

Complaint ID: 1525794601

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

Sincerely,


Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

# EXHIBIT T



---

## Your Amazon.com Seller Account

---

**notice-request-dispute@amazon.com** <notice-request-dispute@amazon.com>                    Mon, Apr 2, 2018 at 6:43 AM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T16XS1DT0YZEG6@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-
T16XS1DT0YZEG6@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

We reviewed your appeal and reinstated the following content:

ASIN(s): B01DXVK3KY
Complaint ID: 1577934581

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

THIMES00396

# EXHIBIT U

 Gmail

Avi Eisenberg <avi@thimessolutions.com>

# Your Amazon.com Seller Account

2 messages

---

notice-request-dispute@amazon.com <notice-request-dispute@amazon.com>                    Thu, Apr 5, 2018 at 6:08 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T1VU4DRLYX067L@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-T1VU4DRLYX067L@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be sent to notice-dispute@amazon.com:

-- compliance-usa@tp-link.com

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID. It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

ASIN: B010S6SG3S B01DXVK3KY B01DXVK3KY

Complaint ID: 1587479311

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

---

notice-request-dispute@amazon.com <notice-request-dispute@amazon.com>                    Thu, Apr 5, 2018 at 8:30 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T1Z5T2B47G48UR@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-T1Z5T2B47G48UR@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be sent to notice-dispute@amazon.com:

-- TP-Link, ,Compliance
-- compliance-usa@tp-link.com

THIMES00387

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID. It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any

ASIN: B01DXVK3KY

Complaint ID: 1587732841

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).

Sincerely,
[Quoted text hidden]

THIMES00388

# EXHIBIT V

Avi Eisenberg <avi@thimessolutions.com>

---

## Your Amazon.com Seller Account

2 messages

---

notice-request-dispute@amazon.com <notice-request-dispute@amazon.com>          Thu, Apr 5, 2018 at 6:08 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T1VU4DRLYX067L@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-
T1VU4DRLYX067L@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the
following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this
email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be
sent to notice-dispute@amazon.com:

-- compliance-usa@tp-link.com

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID.
It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any
other documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

ASIN: B010S6SG3S B01DXVK3KY B01DXVK3KY

Complaint ID: 1587479311

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those,
please send an email to payments-funds@amazon.com.

Sincerely,

Seller Performance Team
Amazon.com
https://www.amazon.com

---

notice-request-dispute@amazon.com <notice-request-dispute@amazon.com>          Thu, Apr 5, 2018 at 8:30 PM
Reply-To: "notice-request-dispute+C2ADVL0LZG34K-T1Z5T2B47G48UR@amazon.com" <notice-request-dispute+C2ADVL0LZG34K-
T1Z5T2B47G48UR@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

Thank you for your concern, but we cannot accept your appeal because it does not address the claim we received. Please provide the
following information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights owner who reported the infringing content listed at the end of this
email. We do not accept forwarded or attached retractions. Please contact the rights owner listed below to request that a retraction be
sent to notice-dispute@amazon.com:

-- TP-Link, ,Compliance
-- compliance-usa@tp-link.com

THIMES00387

-- Proof of product authenticity (e.g., invoice or Order ID). Please ensure that your proof of authenticity includes an invoice or order ID.
It must clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any

ASIN: B01DXVK3KY

Complaint ID: 1587732841

If you believe an error took place, please send an explanation and supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).

Sincerely,
[Quoted text hidden]

THIMES00388

# EXHIBIT W

LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | CASE NO.: 2:19-cv-10374-SB-E |
| Plaintiff, | **DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM FOR VIOLATION OF THE LANHAM ACT** |
| v. | |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, | |
| Defendants. | **JURY TRIAL DEMANDED** |
| | Judge: Hon. Stanley Blumenfeld Jr. |
| | Trial Date: January 9, 2023 |
| TP-LINK USA CORPORATION, | |
| Counterclaimant, | |
| v. | |
| THIMES SOLUTIONS INC., | |
| Counter-Defendant. | |

**ANSWER**

Defendant TP-Link USA Corporation ("TP-Link USA" or "Defendant"), by and through its counsel, hereby answers each allegation of the Amended Fifth Amended Complaint ("5AC") (ECF No. 173-3) of Thimes Solution, Inc. ("Thimes" or "Plaintiff") as follows.

1. Defendant states that this paragraph does not contain allegations to which a response is required, and on that basis it denies the allegations set forth in ¶ 1.

2. Defendant states that this paragraph does not contain allegations to which a response is required, and on that basis it denies the allegations set forth in ¶ 2.

3. Paragraph 3 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 3.

4. Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 4, except upon information and belief, Thimes did not purchase TP-Link products from an authorized distributor.

5. Paragraph 5 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 5.

6. Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 6.

7. Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 7.

8. Defendant admits that ¶ 8 asserts jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1). Defendant denies the remaining allegations in ¶ 8.

9. As to Thimes and Amazzia, Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 9. Defendant admits that it is a California corporation, having its principal place of business located at 10

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

Mauchly, Irvine, California, 92618.

10. Paragraph 10 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 10.

11. Defendant admits that ¶ 11 asserts venue is proper pursuant to 28 U.S.C. § 1391 (b), (c) and (d). Defendant admits that it is a resident in this district. Defendant denies the remaining allegations in ¶ 11.

12. Paragraph 12 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 12.

13. Defendant admits it is a subsidiary of TP-Link UK Limited. Defendant admits that it markets and sells networking products. Defendant denies the remaining allegations in ¶ 13.

14. Defendant refers the Court to the referenced URL for its contents, and otherwise denies the allegations set forth in ¶ 14.

15. Paragraph 15 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 15.

16. Paragraph 16 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 16.

17. Defendant admits that Amazzia submitted complaints to Amazon concerning Thimes. Otherwise, ¶ 17 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 17.

18. Paragraph 18 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a

response is required, Defendant denies the allegations in ¶ 18.

19.     Defendant admits it retained third-party Amazzia to monitor the sale of certain TP-Link products on Amazon.  Defendant denies the remaining allegations in ¶ 19.

20.     Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 20.

21.     Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 21.

22.     Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 22.

23.     Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 23.

24.     Defendant refers the Court to the referenced document for its contents, and otherwise denies the allegations set forth in ¶ 24.

25.     Defendant denies the allegations in ¶ 25, except Defendant admits it lacks control over Amazzia's business operations.

26.     Paragraph 26 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  Defendant refers the Court to the referenced documents for their contents.  To the extent a response is required, Defendant denies the allegations in ¶ 26.

27.     Paragraph 27 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 27.

28.     Defendant admits that Thimes lists four email addresses using the tp-link.com domain, but otherwise denies the allegations set forth in ¶ 28.

29.     Defendant states that this paragraph does not contain allegations to which a response is required, and on that basis it denies the allegations set forth in ¶ 29.

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

30.     Paragraph 30 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 30.

31.     Paragraph 31 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 31.

32.     Paragraph 32 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 32.

33.     Defendant states that the allegations set forth in ¶ 33 contain legal conclusions to which no response is required; otherwise, Defendant denies the allegations set forth therein.

34.     Paragraph 34 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 34.

35.     Paragraph 35 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 35.

36.     Paragraph 36 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 36.

37.     Paragraph 37 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 37.

38.     Defendant states that the allegations set forth in ¶ 38 contain legal conclusions to which no response is required; otherwise, Defendant denies the allegations set forth therein.

No. 2:19-cv-10374-SB-E

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

39.     Paragraph 39 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 39.

40.     Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 40.  Defendant denies Thimes is entitled to any damages.

41.     Defendant refers the Court to the referenced document for its contents, and otherwise denies the allegations set forth in ¶ 41.

42.     Paragraph 42 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 42.

43.     Defendant refers the Court to the referenced document for its contents, and otherwise denies the allegations set forth in ¶ 43.

44.     Defendant refers the Court to the referenced document for its contents, and otherwise denies the allegations set forth in ¶ 44.

45.     Defendant refers the Court to the referenced document for its contents, and otherwise denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 45.

46.     Paragraph 46 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 46.

47.     Defendant refers the Court to the referenced URL for its contents, admits that Amazzia submitted complaints to Amazon concerning Thimes, and otherwise denies the allegations set forth in ¶ 47.

48.     Paragraph 48 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 48.

No. 2:19-cv-10374-SB-E

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

49.     Paragraph 49 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 49.

50.     Paragraph 50 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 50.

51.     Paragraph 51 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 51.

52.     Defendant denies sufficient knowledge or information to form a belief as to the truth of the allegations in ¶ 52.

53.     Defendant states that this paragraph does not contain allegations to which a response is required, and on that basis it denies the allegations set forth in ¶ 53.

54.     Paragraph 54 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 54.

55.     Paragraph 55 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in ¶ 55.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

56.     Defendant incorporates its responses to each and every allegation, as set forth above.

57.     Defendant states that the allegations set forth in ¶ 57 contain legal conclusions to which no response is required; otherwise, Defendant denies the allegations set forth therein.

58.     Paragraph 58 contains Thimes's characterizations of its claims, legal

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 58.

59. Paragraph 59 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 59.

60. Paragraph 60 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 60.

61. Paragraph 61 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 61.

62. Paragraph 62 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 62.

63. Paragraph 63 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 63.

64. Paragraph 64 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 64.

## CLAIM II:  TRADE LIBEL

65. Defendant incorporates its responses to each and every allegation, as set forth above.

66. Paragraph 66 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 66.

67. Paragraph 67 contains Thimes's characterizations of its claims, legal

assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 67. Moreover, in *TP-Link USA Corporation v. Careful Shopper*, the parties amicably resolved all differences.

68. Paragraph 68 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 68.

69. Paragraph 69 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 69.

70. Defendant states that the allegations set forth in ¶ 70 contain legal conclusions to which no response is required; otherwise, Defendant denies the allegations set forth therein.

71. Paragraph 71 contains Thimes's characterizations of its claims, legal assertions, and/or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in ¶ 71.

## **PRAYER FOR RELIEF**

TP-Link USA denies that Thimes is entitled to any relief from TP-Link USA or the Court.

## **DEFENSES AND AFFIRMATIVE DEFENSES**

TP-Link USA asserts the following defenses and affirmative defenses (collectively "defenses") as to each claim alleged in the 5AC without assuming the burden of proof on such defenses that would otherwise fall on Thimes. TP-Link USA reserves the right to supplement and/or amend these defenses, including to assert new defenses, as discovery is conducted.

## **FIRST DEFENSE**

The 5AC fails to state a claim upon which relief can be granted. For example, Thimes's claims are barred in whole or in part because any statements, as alleged by

Thimes, were not directed at consumers.

## SECOND DEFENSE

Thimes is not entitled to relief because its violation of TP-Link's intellectual property rights constitutes, in part, trademark infringement and trademark counterfeiting. Thimes's claims are barred, in whole or in part, because TP-Link USA's conduct and statements did not misrepresent the nature, characteristics or qualities of Thimes's goods and/or commercial activities.

## THIRD DEFENSE

Each of the purported claims set forth in the 5AC is barred by the doctrines of waiver, acquiescence, and estoppel.

## FOURTH DEFENSE

Thimes's claims are barred in whole or in part by laches, in that Thimes has unreasonably delayed to enforce its rights, if any, despite its full awareness of TP-Link USA's actions.

## FIFTH DEFENSE

Thimes's claims are barred in whole or in part by the doctrine of unclean hands.

## SIXTH DEFENSE

Thimes's claims are barred in whole or in part by the First Amendment to the Constitution of the United States.

## SEVENTH DEFENSE

Thimes's claims are barred in whole or in part because Thimes's injuries or damages, if any, were directly and proximately caused and contributed to by Thimes's own conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct.

## EIGHTH DEFENSE

Thimes's claims are barred in whole or in part because TP-Link USA is not liable for the acts of others over whom it has no control and/or agency relationship.

## NINTH DEFENSE

Thimes's claims are barred in whole or in part by the applicable statute of limitations.

## TENTH DEFENSE

Thimes seeks to recover lost profits or damages that are completely speculative in nature.

## ADDITIONAL DEFENSES

TP-Link USA reserves the right to assert additional defenses.

WHEREFORE, TP-Link USA prays for judgment as follows:

1.      That Thimes takes nothing by way of its 5AC;

2.      That the 5AC, and each of its claims for relief, be dismissed with prejudice;

3.      That TP-Link USA be awarded its costs of suit incurred herein, including attorneys' fees and expenses; and

4.      For such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

For its counterclaim of violation of the Lanham Act, Defendant and Counterclaimant TP-Link USA Corporation ("TP-Link USA") complains and alleges as follows against Plaintiff and Counter-defendant Thimes Solution Inc. ("Thimes").

## PRELIMINARY STATEMENT

1.      For more than 20 years, TP-Link has been engaged in the marketing and sale of high-quality computer networking products, including routers.  TP-Link and its affiliates sell products throughout the United States and internationally, including in this district.

2.      To protect this brand recognition, TP-Link obtained numerous registered

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

trademarks in connection with computer networking products, including U.S. Trademark Registration No. 3,175,495 ("TP-LINK® Mark").

3. TP-Link USA is the exclusive licensee of the TP-LINK® Mark. Pursuant to the license agreement, TP-Link has the exclusive right to market, sell, distribute or offer products and services in connection with the TP-LINK® Mark. TP-Link also has the right to sublicense or assign the use of the TP-LINK® Mark to any third-party for use in the United States.

4. TP-Link USA has the right to take all actions necessary to protect the rights in the TP-LINK® Mark, including, without limitation, making demands and claims and filing suit in connection with any alleged infringement and unfair competition, including for past, present or future claims, and is entitled to retain all damages, fees and any other amounts awarded.

5. This action arises out of Thimes's unauthorized incorporation and infringing use of the TP-LINK® Mark in connection with the sale and advertising of networking products, including routers.

6. In stark contrast to TP-Link's innovation and brand building, Thimes admits it has built a business based on the unauthorized sales of third-party products. On information and belief, this business model has resulted in Thimes being accused of violating others' intellectual property rights, as well as resulted in issues with Amazon and other marketplace platforms.

7. Thimes has been on notice of its infringement of TP-Link's intellectual property, including the TP-LINK® Mark, since at least January 2018, when it alleges that it received notices from Amazon. Thimes also alleges that it continued to receive numerous notices from Amazon regarding violations of TP-Link's intellectual property rights. Despite receiving such notices, Thimes willfully continued to market and sell TP-Link products.

8. Upon information and belief, Thimes's conduct has created a likelihood

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

of substantial confusion among consumers as to the source or origin of TP-Link products and has deceived consumers into thinking that Thimes is affiliated with, sponsored by, or endorsed by TP-Link. It is not. TP-Link has not and does not consent to Thimes's use of its marks in the sale of products. Thimes's actions harm consumers who mistakenly believe that its products convey the manufacturer's original warranty and service when it does not.

9. Consistent with a pattern of violating the rights of others, upon information and belief, the founder and President of Thimes, Avraham "Avi" Eisenberg, is accused of defrauding at least $14 million from investors. *See*  https://karlstack.substack.com/p/anatomy-of-an-alleged-dao-scam?s=r  which states:

**Summary:** Avraham Mayer Eisenberg is a New York resident, who during the period of December 2021 to April 2022 defrauded ~6,000 FortressDAO (FORT) investors https://discord.gg/7xnFkU3PSN https://twitter.com/FortressDAO out of millions of dollars through the following actions. He conned $14M of investor treasury funds into his solely owned and controlled US-Dollar pegged cryptocurrency stablecoin project FUSD, and succeeded in keeping at least $7M of it for himself. He did this by pitching FortressDAO investors a stablecoin project FortressUSD (FUSD), without disclosing that this project would be solely controlled and owned by himself. After creation of FUSD, he converted the entire treasury into FUSD and thereby conned the community out of their funds. After the community raised hell on twitter about this, he decided to offer back as little of the funds as possible so that people would be satisfied. At the time of this writing (April 8 2022), he has distributed back approximately $6-7M and has kept at least $7M for himself. This document will outline some of the actions taken by Avraham that can hopefully serve as a basis for investigation.

*See also* "Another Fork Bites the Dust: The Looming Fall of Fortress DAO and the Perils of Off-Chain Governance" ("The problem is that the $14M isn't really in its treasury anyway. It's in a separate project, one that was funded by the Fortress DAO treasury, but is now completely in control of its chief technical officer, Avraham Eisenberg, who has shown no interest in giving it back."), https://thedefiant.io/fall-fortress-dao-olympus-forking/ (attached hereto as **Exhibit 1**).

10. Accordingly, by its Counterclaim, TP-Link USA seeks to recover against Thimes for its willful and intentional trademark infringement and trademark

counterfeiting. In doing so, TP-Link USA is standing by its commitment to its customers that it will protect the value and quality of TP-Link products. TP-Link USA brings this action for infringement of the TP-LINK® Mark in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.

## THE PARTIES

11. Counterclaimant TP-Link USA Corporation is a California corporation, having its principal place of business located at 10 Mauchly, Irvine, California, 92618.

12. Upon information and belief, Counter-defendant Thimes Solutions Inc. is a New York corporation having its principal place of business at 431 Audubon Avenue, Suite 53, New York, New York, 10033. Upon information and belief, Avraham "Avi" Eisenberg (the Founder and President of Thimes), is the alter ego of Thimes, and has willfully aided and abetted Thimes in the wrongful concerted action described herein, or acted with or in furtherance of that action, or assisted in carrying out its purpose alleged in this Counterclaim.

## JURISDICTION AND VENUE

13. This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act").

14. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) and 15 U.S.C. § 1121.

15. This Court has personal jurisdiction over Thimes because Thimes brought this action in this Court and thereby consented to its jurisdiction. Alternatively, this Court has personal jurisdiction over Thimes because, upon information and belief, Thimes, either directly or through its agents, transacts business in the State of California and in this district, directed its activities to the State of California and this district, committed the tort of infringement in this district, and/or expected or should reasonably have expected its acts to have consequences in the State of California and this district.

No. 2:19-cv-10374-SB-E

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

16.     Venue is proper in this district because Thimes brought this action in this Court and thereby consented to venue.  Alternatively, venue is proper in this district under 28 U.S.C. § 1391 because this action arises out of wrongful acts, including advertising, offering for sale, and selling and distributing products, by Thimes within this judicial district, and/or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### A.     TP-Link's Registered Trademarks

17.     TP-Link is the exclusive licensee with all rights to enforce U.S. Trademark Registration No. 3,175,495 (the "TP-LINK® Mark").  A copy of the TP-LINK® Mark is attached hereto as **Exhibit 2**.

18.     U.S. Trademark Registration No. 3,175,495 is the registration for "TP-LINK" in International Class 9 for goods including "routers."  On December 8, 2011, TP-Link filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 with the United States Patent and Trademark Office for this mark.  Accordingly, the TP-LINK® Mark is valid, subsisting, and incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b).

19.     TP-Link USA has continuously used the TP-LINK® Mark in interstate commerce in connection with the sale, distribution, promotion, and advertising of its high-quality computer networking products, including routers and other computer accessories products since at least 2008.

## THIMES'S INFRINGING CONDUCT

20.     Upon information and belief since at least 2018, Thimes has been marketing and selling, and continues to market and sell, networking products bearing the infringing TP-LINK® Mark.

21.     Thimes is an unauthorized re-sellers of products bearing the TP-LINK® Mark.  Thimes's annual sales were, in part, gained by the unauthorized listing and

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

selling of goods bearing the TP-LINK® Mark. Unauthorized sales of products bearing the TP-LINK® Mark do not convey the manufacturer's original warranty or service from TP-Link USA, and as such are materially different than genuine TP-Link products.

22.     Upon information and belief, Thimes caused hundreds of products infringing the TP-LINK® Mark to enter into interstate commerce, including California and this judicial district.

23.     Upon information and belief, Thimes's use and incorporation of the TP-LINK® Mark is likely to cause confusion, mistake or deception in the minds of consumers as to the source of Thimes's products, as to TP-Link's affiliation, connection, or association with Thimes, and/or as to TP-Link's approval or sponsorship of Thimes's products or commercial activities.

24.     Upon information and belief, Thimes's infringing use of the TP-LINK® Mark has and will financially harm TP-Link by diminishing the value of the TP-LINK® Mark as an indicator of the source of TP-Link networking products.

25.     Upon information and belief, Thimes's use and incorporation of the TP-LINK® Mark will and did increase the popularity and profitability of Thimes's sale of products and business.

26.     Upon information and belief, Thimes has offered for sale, advertised, and sold products bearing the TP-LINK® Mark in connection with networking products with the intent to benefit from TP-Link's goodwill and reputation in the networking products market, to deceive the public as to the source or origin of Thimes's networking products, and to profit from the demand created by TP-Link's specialized, high-quality computer networking products.

27.     Thimes is well-aware of TP-Link's rights in the TP-LINK® Mark. Indeed, Thimes claims it was sent numerous notices by Amazon that its use of the TP-LINK® Mark violates TP-Link's intellectual property rights.

28. Upon information and belief, Thimes has had issues with the unauthorized sales and violation of the intellectual property rights of third parties, as well as had numerous issues with Amazon not involving TP-Link products.

29. Thimes's actions have been deliberate, willful, malicious and intentional and conducted with the intent of trading on the goodwill that inures to the TP-LINK® Mark and reputation of TP-Link.

30. This is an exceptional case entitling TP-Link USA to treble damages and attorneys' fees as allowed for under the Lanham Act.

## CAUSE OF ACTION

### (Violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*)

31. The foregoing allegations are incorporated as if re-alleged herein.

32. The TP-LINK® Mark is incontestable. The TP-LINK® Mark is nationally recognized as being affixed to goods of high quality and originating from TP-Link. Purchasers associate the TP-LINK® Mark only with genuine TP-Link products that convey with the original manufacturer's warranty and service.

33. Upon information and belief, Thimes's unauthorized use of TP-LINK® Mark is likely to lead to and result in confusion, mistake or deception, and is likely to cause the public to believe that TP-Link has sponsored, authorized, licensed or is otherwise connected or affiliated with the products bearing the TP-LINK® Mark sold by Thimes in violation of 15 U.S.C. § 1114, which at a minimum constitute trademark infringement and trademark counterfeiting.

34. Upon information and belief, Thimes's ongoing acts of infringement and counterfeiting are willful and deliberate, and are intended to confuse the public as to the source of good bearing the TP-LINK® Mark and to injure TP-Link and reap the benefit of TP-Link's goodwill associated with the TP-LINK® Mark.

35. As a direct and proximate result of Thimes's willful and unlawful conduct, TP-Link USA has been injured and will continue to suffer injury to its business and

reputation unless Thimes is restrained by this Court from infringing the TP-LINK® Mark.

36.     Thimes's foregoing acts are causing irreparable harm to TP-Link for which there is no adequate remedy at law.

37.     In light of the foregoing, TP-Link USA is entitled to injunctive relief prohibiting Thimes from using the TP-LINK® Mark, or any marks confusingly similar thereto, for any purpose, and to recover from Thimes all damages that TP-Link USA has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Thimes as a result thereof, in an amount to be determined, as well as the costs of this action, attorneys' fees and treble damages, and/or statutory damages pursuant to 15 U.S.C. § 1117.

## **PRAYER FOR RELIEF**

WHEREFORE, TP-Link USA prays for judgment and relief against Thimes as follows:

1.     Injunctive relief where appropriate;

2.     An accounting by Thimes of its profits for all infringement of the TP-LINK® Mark;

3.     Actual damages in an amount to be proven at trial;

4.     Punitive or exemplary damages where appropriate;

5.     Reasonable costs and attorneys' fees pursuant to applicable law;

6.     Pre and post-judgment interest as applicable; and

7.     Any other relief the Court deems appropriate.

## **DEMAND FOR A JURY TRIAL**

Defendant and Counterclaimant TP-Link USA Corporation hereby demands a jury trial of all issues raised in its Counterclaim which are triable by jury.

Dated: May 27, 2022

LTL ATTORNEYS LLP

By:  */s/ Heather F. Auyang*
Joedat H. Tuffaha
Prashanth Chennakesavan
Heather F. Auyang

*Attorneys for Defendant and
Counterclaimant TP-Link USA
Corp.*

DEFENDANT TP-LINK USA'S ANSWER, DEFENSES, AND COUNTERCLAIM

# EXHIBIT 1



# Get Smarter on DeFi and Web3

Get the 5-minute newsletter keeping 60K+ crypto innovators in the loop.

**Join Free**

No spam. Unsubscribe anytime.

🔍 Search...

# Another Fork Bites the Dust: The Looming Fall of Fortress DAO and the Perils of Off-Chain Governance

By Brady Dale     February 18, 2022     DeFi News, Dive



F ortress DAO is doomed. The question is how it dies.

The crux of the matter is that this particular decentralized autonomous organization (DAO) isn't really decentralized at all, and its investors are paying the price for getting in on a governance token, FORT, that has power in rhetoric only.

Fortress is an also-ran fork of Olympus DAO running on the Avalanche blockchain with a mere $14M in its treasury (a shadow of the more than $500M+ still backing Olympus's OHM), but feelings are running very high right now over what should happen with that money.

The problem is that the $14M isn't really in its treasury anyway. It's in a separate project, one that was funded by the Fortress DAO treasury, but is now completely in control of its chief technical officer, Avraham Eisenberg, who has shown no interest in giving it back.

## Inevitable Collapse

Community members that spoke to The Defiant predicted the matter could very well find its way to court. But for now, code is very much law and that particular law is not on the Fortress DAO community's side.

But the story also raises a question much larger than this tiny DAO: Does its inevitable collapse foreshadow future meltdowns at other DAOs whose governance does not, in fact, run on-chain?

That Fortress DAO is doomed in a matter of months is something that no one The Defiant spoke to disagreed with. Not the retail investors who want to close it now or the primary developer who built it, Eisenberg, who refuses to comply,.

Fortress DAO followed Olympus DAO and Wonderland and forked the code of Olympus to make a "reserve currency" on Avalanche. Much like those projects, it promised to flatten the world of investing, creating an opportunity open to regular people and pulling an end run on the fat cat investors that have become so unpopular in crypto Discords.

These projects were meant to go out and build or invest or supply liquidity in ways that had a bright future, a future with such much potential that their tokens would be worth far more than the underlying assets the tokens governed. But those underlying assets would also create a floor for how far the tokens' value could, in theory, fall.

Nothing about that narrative has really held up recently.

*None of the parties disputed this point: As things are going right now, Fortress will die in roughly five months as its hardwired supply expansion dilutes the value of FORT to the point where it automatically closes.*

But the implications go further. Anyone paying attention knows that many of crypto's DAOs aren't really that decentralized. Sure, they all have a governance token, but the power to spend money and change code still, in all too many cases, actually rests in a small group of insiders who have control of a mult-sig wallet that makes decisions. Just because groups like this tend to honor their communities' wishes now, doesn't mean they always will.

It's like a small republic that spent too much money on their military. At a certain point, the legislature only remains in charge as long as the generals let them say they are. In nations, those with the guns have the actual power. On the blockchain, those who can sign transactions do.

So clashes of communities and multi-sigs could one day break out all over decentralized finance, but Fortress DAO has reached that breaking point now. It remains to be seen if we later say the project reached it early.

Because Fortress DAO is small, there are only a few parties to the conflict. The community investors and the small team that built it. Most of the founding team has gone silent, the community members say, with only its technical staffer, Eisenberg, remaining. We spoke to a few of the investors, looked at the documentation of the conflict online, and spoke to Eisenberg himself.

None of the parties disputed this point: As things are going right now, Fortress will die in roughly five months as its hardwired supply expansion dilutes the value of FORT to the point where it automatically closes. As things stand now, if it takes that long it will drive returns for its founding CTO until it hits that trigger.

There is much, much more to this story that The Defiant is leaving out, but we are sticking to these two core threads: what's in Fortress DAO's treasury and who controls its smart contracts. As one former community manager, who goes by Curiously Cory in the Fortress DAO world said over Telegram, "There's an astounding level of subterfuge and spy games happening revolving around the drama."

## Half the Treasury

# Half the Treasury

Here's the crux of the dispute between Eisenberg and FORT holders: Close enough to 100% of Fortress DAO's treasury is held in a interest-bearing stablecoin spun up and governed by Eisenberg called Fortress USD (FUSD). That stablecoin runs basically like a hedge fund, with profits distributed out to FUSD holders in intermittent rebases, as Eisenberg described it.

Until  Jan. 28, the $14M FortressDAO treasury was held in the Magic Internet Money (MIM) stablecoin. When the scandal about the alleged true identity of Frog Nation Chief Financial Officer, Sifu, rocked everything he was associated with, including the Abracadabra project

which made MIM. The token looked shaky, Eisenberg said, so half the treasury was moved into FUSD and half into the very stable stablecoin, USDC. Then on Feb. 11, the USDC was swapped into FUSD as well (these dates are according to a timeline provided by Cory).

The shifts can be seen clearly on FortressDAO dashboard, which has a graph showing which assets are in its treasury. For a while, it was mostly MIM with part of the assets in a pool on Trader Joe, an Avalanche automated market maker, earning trading fees. Then it diversified a bit, bringing in USDC and FUSD. Now it is basically entirely FUSD, with just a little bit in that Trader Joe pool.



DeFi 2.0 Primer: Decentralized Finance is Poised to Expand its

## DeFi 2.0 Primer: Decentralized #2652ce is Poised to Expand Its Reach But Challenges Loom

In this DeFi 2.0 primer, Mason Marcabello explores the next iteration of the DeFi story.

For Fortress DAO, its treasury is ostensibly controlled by its governance token, FORT, which is what people get when they put funds in Fortress DAO. It isn't really, though. More on that later.

FORT continually expands its supply, which dilutes FORT, but the dilution goes to FORT holders, so that would be fine if Fortress DAO's assets were growing in value. But, since it's not growing (or at least not much) and no one has any faith in it fundamentally, that expansion of FORT's supply is a sure slow death for reasons that will become clear.

## What is FUSD?

But first, if Eisenberg controls FUSD, that means that he basically controls all of Fortress DAO's trustworthy assets, its so-called "protocol controlled value" is not really in the protocol's control. The assets with a track record, USDC and MIM or whatever they have, are in fact in a separate smart contract completely in Eisenberg's control.

Regardless, Fortress DAO was built from the beginning to shut down if the value of FORT hit $1. At that point, it would just share out all its assets to FORT holders, pro-rata. Since the value of Fortress DAO's assets are growing more slowly than its supply is expanding, that end is sure to come.

The project's dashboard shows it having just under 150 days to go at the current rate of supply expansion. Despite granting that its demise is inevitable, Eisenberg dismissed as illegitimate any attempt to close out Fortress DAO now.

So what is FUSD? Tough to say. That relates to what FortressDAO is.

These Olympus forks are all meant to gather up a bunch of assets and then do something with the money that makes them grow.

There's a vote on Snapshot that ended in mid-December to fund the creation of

FUSD out of the Fortress treasury. The community seemed to believe that it was funding the creation of a project it would control, giving Fortress DAO a small amount of inherent value. But Eisenberg built the thing, controlled all its smart contracts and he says that it is his and his alone. If he controls the keys, there's nothing anyone can do.

Indeed, he describes FUSD as entirely his project. "My general pitch was that it's basically modeled after a lot of the CeFi lenders," Eisenberg said. "But it also gives you a token on-chain that represents, effectively, your deposit."

So setting aside the question of who should own FUSD, is it a good place for all the DAO's funds to go?

Well, how FUSD makes money is opaque. Eisenberg told The Defiant both that there was no reason for community members to worry about FUSD because it's fully backed, but he also admitted that closing out all of FUSD's positions now would mean losing millions of dollars, because of exit fees on many of the positions he's taken.

"My goal is to make money, and if I'm able to produce yield, then I make money that way," he said. By Eisenberg's own admission, any deposits in FUSD that aren't from the Fortress treasury have been negligible. Without Fortress's $14M, FUSD would be nothing.

# Underlying Assets

He said the positions he has taken with the funds are largely yield farming strategies. In many cases ones where the underlying assets have been swapped for something else. There's also a certain amount of over-the-counter (OTC) trading he has been doing as well.

He's farming those assets and keeping a portion of their yield. So far, he said, he's paid out to FUSD holders once, a 2% return in only a month, which of course isn't bad in a world where many savings-like instruments earn much less than 2% in a year.

Eisenberg argues that this makes it better for Fortress to hold FUSD than something like USDC, because it earns a return, which extends the runway.

But why bother to extend the runway when no one believes that Fortress can last?

Eisenberg compared Fortress's slow unwinding to the plummeting values of all the forks that

Eisenberg compared Fortress's slow unwinding "the plummeting values of all the forks that followed Olympus DAO."There's nothing really unique about the situation," he said.

Asked if he could see an outcome in which FortressDAO could turn things around, he said early on they thought it could be a very big thing if it got a lot of capital, but that seems hopeless now. "The markets turned out differently," he said.



**DeFi, NFT & Web3 Insights - The Defiant**

The essential content platform for DeFi, NFT, Web3 and Open Economy insights. Join 60K+ DeFi | NFT | Web3 enthusiasts. Guides, news, analysis, opinion and a private Discord for Defiant Premium members.

Type your email…    Subscribe

substack

It's better, he contends, to hold FUSD and let him try to earn FORT holders money, than to just keep MIM and let the project drift to its doom. "That runway gets a little bit extended if FUSD pays out those yields," Eisenberg said. "That's how I see this ending."

All of which is why current holders would rather just unwind it now.

Xibumi is a former member of the staff of Fortress who has been keeping the community updated in its Discord. He also bought FORT in the very first sale. He pushed for an immediate redemption of all the assets early this year, but he failed to make it happen. He shared with The Defiant a message he wrote in the Discord on Feb. 2:

"The redemption plan was an ideal end to this project, where many people would end happily," he wrote. "I apologize for everyone who trusted me and stayed here because of me. I had a learning of a lifetime in 2 months here."

# Governance Token

T he truth is, no one can force a shutdown of Fortress DAO. The true problem for
FORT holders who are not Eisenberg: FORT was never truly a governance token.
"From a technical perspective there's no on-chain governance for Fortress,"
Eisenberg said.

FortressDAO is run by a multi-sig. That multi-sig has all the actual power in FortressDAO.
Forcing a vote on Fortress DAO's Snapshot page is useless unless the multi-sig honors it. There

is however a separate vote on Snapshot set up by a community member asking Eisenberg to
leave, and 245K FORT have voted in its favor.

This condition is hardly unusual across various DAOs. It's surprising more haven't ended up in
a similar place.

"If the community trusted Avraham the calls for redemption would be fewer. In fact,
Wonderland serves as an example. Wonderland trades under backing price yet the community
recently voted not to redeem," Mark Davie, the community member who first alerted The
Defiant to the issue, wrote in an email.

But the real power in Fortress DAO isn't even its own smart contracts, it's the assets. The real
assets, the assets that could actually be traded outside of the Fortress DAO ecosystem, all the
$14M worth of stuff that left its smart contracts and went into FUSD.

So, Eisenberg has everyone over a barrel, because all the real FortressDAO assets are inside
FUSD and FORT holders have no direct power to make him give those funds back.

Supporters of many other DAOs may be in a very similar situation, it's just that no one has held
them out over a barrel yet.

## Enjoying this article?

Stay up-to-date with The Defiant Newsletter. We do the research for you.

# EXHIBIT 2

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

**United States Patent and Trademark Office**

Reg. No. 3,175,495

Registered Nov. 21, 2006

TRADEMARK
PRINCIPAL REGISTER

# TP-LINK

TP-LINK TECHNOLOGIES CO., LTD. (CHINA LTD LIAB CO)
BUILDING 7, SECTION 2
HONGHUALING INDUSTRIAL PARK, NANSHAN DISTRICTTRICT
SHENZHEN, CHINA

FOR: MODEMS, OPTICAL FIBER CONVERTERS, OPTICAL TRANSMITTERS, OPTICAL RECEIVERS, OPTICAL SWITCHES, TRANSMITTERS OF ELECTRONIC SIGNALS, NETWORK SWITCHES, NETWORK HUBS, RECEIVER SERVERS, ROUTERS, VIDEOPHONES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 11-22-2005; IN COMMERCE 11-22-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF CHINA REG. NO. 1747624, DATED 4-14-2002, EXPIRES 4-13-2012.

SN 78-662,345, FILED 7-1-2005.

MARIA-VICTORIA SUAREZ, EXAMINING ATTORNEY

# EXHIBIT X

Gmail                                                     Avi Eisenberg <avi@thimessolutions.com>

---

## re Complaint ID: 1359628881

---

**Avi Eisenberg** <avi@thimessolutions.com>                    Fri, Jan 19, 2018 at 4:40 PM
To: notice-dispute <notice-dispute@amazon.com>

re Complaint ID: 1359628881

These items are authentic. Please see attached invoice.

Please reinstate.

---

**Invoice-33063.pdf**
113K

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338



THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901

# I N V O I C E

| | |
|---|---|
| **Invoice #** | 33063 |
| **Invoice Date** | 01/08/2018 |
| **Due Date** | 01/08/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|------|-------------|-----------|----------|--------|
| Product | TP-Link AC5400<br>UPC: 845973094577<br>CONDITION:<br>NEW. In manufacturers case pack. master carton. | 164.00 | 480.00 | 78,720.00 |

NOTES: ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS

All Shortages must be reported within 48 hours.

Credit cards will be charged 2.9%

Please include Invoice number in wire description.

| | |
|---|---|
| **Subtotal** | 78,720.00 |
| **Total** | 78,720.00 |
| **Amount Paid** | 0.00 |
| **Balance Due** | $78,720.00 |

# EXHIBIT Y

Avi Eisenberg <avi@thimessolutions.com>

---

# tp-link B01DXVK3KY abusive RO issues

**Avi Eisenberg** <avi@thimessolutions.com>                    Mon, Jun 4, 2018 at 11:49 PM
To: copyright@amazon.com

We have received dozens of complaints on ASIN B01DXVK3KY from tp-link. We have been reinstated on this ASIN many, many times, but tp-link continues to file new, false, abusive complaints. I've attached yet again an invoice, which shows items purchased are authentic and not counterfeit.  As you can see, the quantity purchased was 360, which is the same inventory that was shipped to Amazon.

Please reinstate and stop accepting these false complaints once and for all. Thank you.

---



**0b8aaab7-0def-42c6-bf79-92f64605cf94.jpeg**
66K

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338

**PAID**



THE
**SURPLUS**
C O M P A N Y

THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901
845-475-8642
AVI@THIMESSOLUTIONS.COM

# INVOICE

| | |
|---|---|
| **Invoice #** | 33063 |
| **Invoice Date** | 01/08/2018 |
| **Due Date** | 01/08/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|------|-------------|------------|----------|--------|
| Product | TP-Link AC5400<br>UPC: 845973094577<br>CONDITION:<br>NEW. In manufacturers case pack. master carton. | 164.00 | 360.00 | 59,040.00 |

<u>NOTES:</u> ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS

All Shortages must be reported within 48 hours.

Credit cards will be charged 2.9%

Please include Invoice number in wire description.

| | |
|---|---|
| Subtotal | 59,040.00 |
| Total | 59,040.00 |
| Amount Paid | 59,040.00 |
| Balance Due | $0.00 |

# EXHIBIT Z

Avi Eisenberg <avi@thimessolutions.com>

---

## Your Order #33063 Has Shipped!

**Fitz S** <fitz@thesurpluscompany.com>                                    Wed, Jan 24, 2018 at 11:14 AM
To: Avi Eisenberg <avi@thimessolutions.com>

On Thu, Jan 11, 2018 at 11:56 AM, Shmar Richler <shmar@thesurpluscompany.com> wrote:

Hi,

We are reaching out to notify you that your order **#33063** has been picked up and scanned by **HWP Trucking** and is en route to the destination.

Your Order:

**360-TP-Link AC5400 UPC: 845973094577**

Please note that it may take up to 24hrs or until end of following business day for tracking to update.

Feel free to contact us with any questions or concerns.

Thanks,

--



Shmar Richler

*Director Of Operations*
**The Surplus Company, LLC**
p:  800.606.2338   d: 718.701.6987
a:  5904 Ave D. Brooklyn NY 11203
w:  TheSurplusCompany.com

--

THIMES00313

Fitz S.
**Sales Manager**, The Surplus Company, LLC

p: 800.606.2338x208 m: 323-839-4459 a: 5904 Avenue D. Brooklyn, NY 11203
s: www.TheSurplusCompany.com e: Fitz@TheSurplusCompany.com

---

**Invoice-33063 (3).pdf**
124K

THIMES00314

# EXHIBIT AA


Avi Eisenberg <avi@thimessolutions.com>

## A1Q1VKNP5VVQEY - POA for inauthentic suspension

**Avi Eisenberg** <avi@thimessolutions.com>                                           Sat, Jul 21, 2018 at 1:01 PM
To: product-quality-policy@amazon.com, seller-performance-policy@amazon.com, seller-performance@amazon.com

Dear Team:

This is in regard to inauthentic complaints on ASIN B0097BEG1C. All units we sold are authentic.

On May 31, 2018, we replied to a previous inauthentic complaint with invoices proving authenticity. These invoices were accepted on June 5th, 2018 and we were permitted to continue selling.

On June 23rd, we were informed of an investigation for this ASIN, in Case ID 5158952701. On July 9th, we were sent the following in that case:

"We have checked a sample of your inventory for ASIN B0097BEG1C and found no defects. We have reinstated your offer and closed the investigation."

As such, this shows that our inventory as of Jul 9th was completely authentic. We have not had any sales on ASIN B0097BEG1C after Jul 9th and we have not shipped any units of ASIN B0097BEG1C to Amazon after Jul 9th. Any concerns about authenticity are therefore related to units from before July 9th, which was inspected by Amazon and confirmed to be completely authentic.

As we have demonstrated in the past, and have had confirmed by Amazon in the past, we purchased all our units of this product from a trusted supplier and the product is accurately described, and the detail page and condition correctly describes the product. I have additionally attached copies of our invoices for this product to this email, that as mentioned were all previously verified by Amazon

Therefore, please reinstate our account.

Thank you.

---

**7 attachments**

📄 **Invoice-33277r.pdf**
79K

📄 **Invoice-33338r.pdf**
86K

📄 **Invoice-33314r.pdf**
86K

📄 **Invoice-33268r.pdf**
86K

📄 **Invoice-33388r.pdf**
79K

📄 **Invoice-1563.pdf**
58K

📄 **Invoice-1566.pdf**
58K

THIMES00263

# EXHIBIT BB

RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
MARK POE (S.B. #223714)
mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>Defendant. | Case No. 2:19-cv-10374-SB-E<br><br>**THIMES SOLUTIONS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION** |

PROPOUNDING PARTY:      Defendant TP-Link USA Corporation

RESPONDING PARTY:       Plaintiff Thimes Solutions Inc.

SET NO.:                            One

THIMES RESPONSE TO
TP-LINK FIRST RFP
CASE NO. 2:19-CV-10374-SB-E

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Thimes Solutions Inc. hereby objects and responds to Defendant TP-Link USA Corporation's First Set of Interrogatories to Plaintiff, served on June 2, 2022. Plaintiff anticipates completing its production by August 5, 2022.

## **GENERAL OBJECTIONS**

1.      Plaintiff objects to the Requests and to each definition, instruction, and Request therein to the extent they purport to impose on Plaintiff obligations that differ from or exceed those of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California, or any order or ruling by the Court in this action.  Plaintiff will respond to the Requests in conformity with applicable rules and orders and not necessarily in accordance with the instructions, definitions, or other statements in the Requests.

2.      Plaintiff objects to the Requests and to each Request therein to the extent they seek information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.      Plaintiff objects to the Requests and to each Request therein to the extent that it calls for a search and production of documents for which the burden is disproportional to the needs of the case, considering the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4.      Plaintiff objects to the Requests and to each Request therein to the extent they purport to call for information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

5.      Plaintiff objects to the Requests and to each Request therein to the extent they request information solely in the possession, custody, or control of Defendants or third parties.

THIMES RESPONSE TO
TP-LINK FIRST RFP
CASE NO. 2:19-CV-10374-SB-E

6.      Plaintiff's responses are made without conceding the relevance of any information provided.  Plaintiff reserves the right to object on any ground to the admission of the Requests or any information produced in response to the Requests.

7.      Plaintiff's responses are not intended to be, and should not be construed as agreement or concurrence with any characterization of the facts, circumstances, or legal arguments contained in the Requests.  Plaintiff reserves the right to contest such characterizations.  Plaintiff also objects to the Requests to the extent they contain express or implied assumptions of fact or law with respect to matters at issue in this litigation.  Any answer by Plaintiff is not an admission that any factual or legal predicate stated in the Requests is accurate.

8.      These General Objections are incorporated into Plaintiff's response to each Request.  To the extent that Plaintiff responds to any Request covered by these General Objections and any specific objections, Plaintiff's response is without waiver of those objections.

## **FORMAT OF PRODUCTION**

Pursuant to Rule 34(b)(2)(D), Plaintiff objects to the form of the production as specified in the Requests.  While Plaintiff will endeavor to produce any electronically stored information as it is kept in the usual course of business, some of the requested documents in this action are not readily susceptible to production in their original from (e.g. where such information can only be viewed through proprietary software that is not widely used).  For such documents, Plaintiff will produce them in a reasonably useable form, such as Adobe Portable Document Format or Microsoft Excel.  Documents that do not presently exist in electronic form will be made available for inspection at Plaintiff's place of business on a mutually agreeable date.

# RESPONSES TO INTERROGATORIES

**REQUEST NO. 1:**

All DOCUMENTS and COMMUNICATIONS CONCERNING TP-LINK
USA, including TP-Link products.

**RESPONSE TO REQUEST NO. 1:**

Plaintiff objects to this Request as overbroad, unduly burdensome, and
disproportional to the needs of the case insofar as it seeks "all" documents and
communications concerning every TP-Link product Plaintiff has ever purchased or
sold.  Plaintiff also objects on grounds of relevance to the extent that this Request
demands documents concerning Plaintiff's purchases of TP-Link products from
sellers other than TP-Link, as liability on Plaintiff's claims turns on TP-Link's
conduct, not Plaintiff's purchase of TP-Link products from other sellers.  Plaintiff
further objects that any relevance of "all" documents and communications is
minimal, is greatly outweighed by the burden of tracking down all such documents
and communications, and on that ground, is disproportional to the needs of the case,
considering the parties' resources, the importance of the discovery in resolving the
issues, and whether the burden or expense of the proposed discovery outweighs its
likely benefit.  Plaintiff also objects to this Request to the extent it calls for the
production of information protected from disclosure by the attorney-client privilege,
the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as
follows:  Plaintiff will produce all responsive, non-privileged documents in its
possession, custody, or control that are located after a reasonably diligent search (1)
reflecting Plaintiff's purchases of TP-Link products that it subsequently re-sold on
Amazon or (2) reflecting Plaintiff's sales on Amazon of TP-Link products.

**REQUEST NO. 2:**

All DOCUMENTS and COMMUNICATIONS related to any concerns,
claims, or complaints regarding THIMES or any account run by AVRAHAM

1  EISENBERG, including, but not limited to, intellectual property violations

2  (trademark, patent, or copyright), negative customer feedback, account issues (e.g.,

3  inadequate product descriptions, insufficient security, or performance evaluations),

4  warnings (including the "Amazon's warning letter" referred to in 5AC ¶ 26 and

5  "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and

6  expulsions.

7  **RESPONSE TO REQUEST NO. 2:**

8      Plaintiff objects to the terms "concerns, claims, or complaints regarding

9  Thimes or any account run by AVRAHAM EISENBERG," "negative customer

10  feedback," "account issues," and "warnings" as vague and ambiguous.  Plaintiff

11  further objects that any relevance of "all" such documents and communications is

12  minimal, is greatly outweighed by the burden of tracking down those documents,

13  and on that ground, is disproportional to the needs of the case, considering the

14  parties' resources, the importance of the discovery in resolving the issues, and

15  whether the burden or expense of the proposed discovery outweighs its likely

16  benefit.  Plaintiff further objects to the definition of "THIMES" as overbroad, and

17  interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff

18  also objects to this Request to the extent it calls for the production of information

19  protected from disclosure by the attorney-client privilege, the work product doctrine,

20  or other applicable protections and privileges.

21      Subject to and without waiving the foregoing objections, Plaintiff responds as

22  follows:  Plaintiff will produce all e-mails sent to it by Amazon regarding

23  complaints, policy warning notices, notices of intellectual property violations, or

24  negative feedback.

25  **REQUEST NO. 3:**

26      All DOCUMENTS and COMMUNICATIONS between THIMES and any

27  third-party (including, but not limited to, AMAZON and customers)

28  CONCERNING TP-LINK USA or any TP-Link product.

THIMES RESPONSE TO
TP-LINK FIRST RFP
CASE NO. 2:19-CV-10374-SB-E

**RESPONSE TO REQUEST NO. 3:**

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS and COMMUNICATIONS" concerning every TP-Link product Plaintiff has ever purchased or sold. Plaintiff further objects that any relevance of "all" documents and communications is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges. Plaintiff further objects to this Request as duplicative of Request No. 1.

**REQUEST NO. 4:**

All DOCUMENTS and COMMUNICATIONS between AVRAHAM EISENBERG and any third-party (including, but not limited to, AMAZON and customers) CONCERNING TP-LINK USA or any TP-Link product.

**RESPONSE TO REQUEST NO. 4:**

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS and COMMUNICATIONS" concerning every TP-Link product Plaintiff has ever purchased or sold. Plaintiff further objects that any relevance of "all" documents and communications is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

1    expense of the proposed discovery outweighs its likely benefit.  Plaintiff further

2    objects to the definition of "AVRAHAM EISENBERG" as overbroad, and interprets

3    it to mean Avraham Eisenberg.  Plaintiff also objects to this Request to the extent it

4    calls for the production of information protected from disclosure by the attorney-

5    client privilege, the work product doctrine, or other applicable protections and

6    privileges.

7    **REQUEST NO. 5:**

8         All DOCUMENTS and COMMUNICATIONS showing that AMAZON

9    purchased any products as a customer of THIMES, including invoices and

10   purchase orders.

11   **RESPONSE TO REQUEST NO. 5:**

12        Plaintiff objects to the term "as a customer of THIMES" as vague and

13   ambiguous.  Plaintiff further objects to the definition of "THIMES" as overbroad,

14   and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

15        Subject to and without waiving the foregoing objections, Plaintiff responds as

16   follows:  Plaintiff will produce all responsive, non-privileged documents in its

17   possession, custody, or control that are located after a reasonably diligent search

18   reflecting Plaintiff's sales of TP-Link branded wireless router products on the

19   Amazon Marketplace.

20   **REQUEST NO. 6:**

21        All DOCUMENTS and COMMUNICATIONS concerning statements made

22   by TP-LINK USA to customers (or entities alleged to be customers) of THIMES.

23   **RESPONSE TO REQUEST NO. 6:**

24        Plaintiff objects to this Request as vague and ambiguous as it does not know

25   what would be a document or communication "concerning statements made by TP-

26   Link USA to customers" and it similarly does not know what would constitute an

27   "entit[y] alleged to be [a] customer[ ]."  Plaintiff further objects that documents

28   reflecting statements made by TP-Link to customers are equally in TP-Link's

THIMES RESPONSE TO
TP-LINK FIRST RFP
CASE NO. 2:19-CV-10374-SB-E

1   possession, and considering the parties' relative access to relevant information per

2   Rule 26(b)(1), are more easily collected by TP-Link itself.  Plaintiff further objects

3   to the definition of "THIMES" as overbroad, and interprets it to mean Thimes

4   Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff also objects to this Request

5   to the extent it calls for the production of information protected from disclosure by

6   the attorney-client privilege, the work product doctrine, or other applicable

7   protections and privileges.

8        Subject to and without waiving the foregoing objections, Plaintiff responds as

9   follows:  Plaintiff no longer has access to its Amazon account and it does not have

10  any way of accessing Amazon listings as they were displayed back in 2018.

11  Plaintiff similarly has no way of accessing TP-Link's websites and social media

12  accounts as they were displayed back in 2018.  Therefore, apart from the various

13  complaints that TP-Link / Amazzia submitted to Amazon regarding Plaintiff during

14  2018, Plaintiff is not in possession of any other documents or communications that

15  reflect any communications made by TP-Link to any customers or potential

16  customers of Plaintiff.

17  **REQUEST NO. 7:**

18       All DOCUMENTS and COMMUNICATIONS concerning statements made

19  by AMAZZIA to customers (or entities alleged to be customers) of THIMES.

20  **RESPONSE TO REQUEST NO. 7:**

21       Plaintiff objects to this Request as vague and ambiguous as it does not know

22  what would be a document or communication "concerning statements made by

23  AMAZZIA to customers" and it similarly does not know what would constitute an

24  "entit[y] alleged to be [a] customer[ ]."  Plaintiff further objects that documents

25  reflecting statements made by Amazzia to customers are equally in Amazzia's

26  possession, and considering the parties' relative access to relevant information per

27  Rule 26(b)(1), are more easily collected by Amazzia.  Plaintiff further objects to the

28  definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions

- 7 -

1    Inc. d/b/a Universal Goods & Sales.  Plaintiff also objects to this Request to the

2    extent it calls for the production of information protected from disclosure by the

3    attorney-client privilege, the work product doctrine, or other applicable protections

4    and privileges.

5         Subject to and without waiving the foregoing objections, Plaintiff responds as

6    follows:  Plaintiff no longer has access to its Amazon account and it does not have

7    any way of accessing Amazon listings as they were displayed back in 2018.

8    Plaintiff similarly has no way of accessing Amazzia's websites and social media

9    accounts as they were displayed back in 2018.  Therefore, apart from the various

10   complaints that TP-Link / Amazzia submitted to Amazon regarding Plaintiff during

11   2018, Plaintiff is not in possession of any other documents or communications that

12   reflect any communications made by Amazzia to any customers or potential

13   customers of Plaintiff.

14   **REQUEST NO. 8:**

15        All DOCUMENTS CONCERNING the sourcing of any TP-Link product,

16   including the "360 TP-Link AC5400 Routers" cited in 5AC ¶ 26.

17   **RESPONSE TO REQUEST NO. 8:**

18        Plaintiff objects to the term "sourcing of any TP-Link product" as vague and

19   ambiguous.  Plaintiff also objects to this Request to the extent it calls for the

20   production of information protected from disclosure by the attorney-client privilege,

21   the work product doctrine, or other applicable protections and privileges.

22        Subject to and without waiving the foregoing objections, Plaintiff responds as

23   follows:  Plaintiff will produce all responsive, non-privileged documents in its

24   possession, custody, or control that are located after a reasonably diligent search

25   reflecting Plaintiff's purchases of the "360 TP-Link AC5400 Routers" referenced in

26   paragraph 26 of the Amended Fifth Amended Complaint.

27   **REQUEST NO. 9:**

28        DOCUMENTS sufficient to show the sourcing of THIMES's products sold

1   on AMAZON, including any TP-Link products.

2   **RESPONSE TO REQUEST NO. 9:**

3       Plaintiff objects to this Request on grounds of relevance, as the source of non-

4   TP-Link branded products that Plaintiff sold on the Amazon Marketplace has no

5   bearing on any issue on Plaintiff's claims or TP-Link's counterclaim.  Plaintiff

6   further objects to the term "sourcing of Thimes's products" as vague and

7   ambiguous.  Plaintiff further objects to the definition of "THIMES" as overbroad,

8   and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

9   Plaintiff also objects to this Request to the extent it calls for the production of

10  information protected from disclosure by the attorney-client privilege, the work

11  product doctrine, or other applicable protections and privileges.

12      Subject to and without waiving the foregoing objections, Plaintiff responds as

13  follows:  Plaintiff will produce responsive, non-privileged documents in its

14  possession, custody, or control that are located after a reasonably diligent search

15  reflecting Plaintiff's purchases of TP-Link products.

16  **REQUEST NO. 10:**

17      All DOCUMENTS and COMMUNICATIONS with AMAZON

18  CONCERNING THIMES's account, including, but not limited to, the signed

19  Amazon's standard Business Solutions Agreement (referred to in ¶ 6 of the 5AC),

20  "appeal" (referred to in ¶ 45 of the 5AC: "Plaintiff appealed and got reinstated

21  from the May 7th suspension."), and "administrative options" (referred to in ¶ 51

22  of the 5AC: "Plaintiff exhausted all possible administrative options at Amazon,

23  including appellate procedures.").

24  **RESPONSE TO REQUEST NO. 10:**

25      Plaintiff objects to this Request as overbroad, unduly burdensome, and

26  disproportional to the needs of the case insofar as it seeks "all" documents and

27  communications concerning Thimes's account.  Plaintiff further objects that any

28  relevance of "all" such documents and communications is minimal, is greatly

1  outweighed by the burden of tracking down all such documents and

2  communications, and on that ground, is disproportional to the needs of the case,

3  considering the parties' resources, the importance of the discovery in resolving the

4  issues, and whether the burden or expense of the proposed discovery outweighs its

5  likely benefit.  Plaintiff further objects to the definition of "THIMES" as overbroad,

6  and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

7  Plaintiff also objects to this Request to the extent it calls for the production of

8  information protected from disclosure by the attorney-client privilege, the work

9  product doctrine, or other applicable protections and privileges.

10      Subject to and without waiving the foregoing objections, Plaintiff responds as

11  follows:  Plaintiff will produce all e-mails that it sent to, or received from, Amazon

12  concerning Amazon's standard Business Solutions Agreement, the appeal referred to

13  in paragraph 45 of the Amended Fifth Amended Complaint, and the administrative

14  options referred to in paragraph  51 of the Amended Fifth Amended Complaint.

15  **REQUEST NO. 11:**

16      All DOCUMENTS and COMMUNICATIONS with AMAZON

17  CONCERNING any account run by AVRAHAM EISENBERG (including under

18  other names or aliases).

19  **RESPONSE TO REQUEST NO. 11:**

20      Plaintiff objects to this Request on grounds of relevance, as liability on

21  Plaintiff's claims turns on TP-Link's conduct, not Mr. Eisenberg's, and any

22  relevance of the documents requested is minimal, is greatly outweighed by the

23  burden of tracking down all such documents and communications, and on that

24  ground, is disproportional to the needs of the case, considering the parties'

25  resources, the importance of the discovery in resolving the issues, and whether the

26  burden or expense of the proposed discovery outweighs its likely benefit.  Plaintiff

27  further objects to the definition of "AVRAHAM EISENBERG" as overbroad, and

28  interprets it to mean Avraham Eisenberg.  Plaintiff also objects to this Request to the

- 10 -

1  extent it calls for the production of information protected from disclosure by the

2  attorney-client privilege, the work product doctrine, or other applicable protections

3  and privileges.

4  **REQUEST NO. 12:**

5       DOCUMENTS sufficient to show THIMES business activities and source of

6  income since August 27, 2018.

7  **RESPONSE TO REQUEST NO. 12:**

8       Plaintiff objects to the terms "business activities" and "source of income" as

9  vague and ambiguous.  Plaintiff further objects to the definition of "THIMES" as

10 overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods &

11 Sales.

12      Subject to and without waiving the foregoing objection, Plaintiff states that it

13 will produce responsive, non-privileged documents in its possession, custody, or

14 control that are located after a reasonably diligent search.

15 **REQUEST NO. 13:**

16      DOCUMENTS sufficient to show AVRAHAM EISENBERG's business

17 activities and source of income since August 27, 2018.

18 **RESPONSE TO REQUEST NO. 13:**

19      Plaintiff objects to the terms "business activities" and "source of income" as

20 vague and ambiguous.  Plaintiff further objects to this Request on grounds of

21 relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Mr.

22 Eisenberg's, and any relevance of the documents requested is minimal, is greatly

23 outweighed by the burden of tracking down all such documents and

24 communications, and on that ground, is disproportional to the needs of the case,

25 considering the parties' resources, the importance of the discovery in resolving the

26 issues, and whether the burden or expense of the proposed discovery outweighs its

27 likely benefit.  Plaintiff further objects to the definition of "AVRAHAM

28 EISENBERG" as overbroad, and interprets it to mean Avraham Eisenberg.

**REQUEST NO. 14:**

All DOCUMENTS and COMMUNICATIONS about Fortress DAO
CONCERNING investors' contention that millions of dollars in investors' funds
have been improperly retained (*see* Counterclaims ¶ 9).

**RESPONSE TO REQUEST NO. 14:**

Plaintiff objects to this Request because the relevance of the documents
requested is nonexistent and is also greatly outweighed by the burden of tracking
down all such documents and communications, and on that ground, is
disproportional to the needs of the case, considering the parties' resources, the
importance of the discovery in resolving the issues, and whether the burden or
expense of the proposed discovery outweighs its likely benefit.

**REQUEST NO. 15:**

All DOCUMENTS supporting Thimes's allegation in ¶ 7 of the 5AC that it
"sold over 175,000 products to customers on Amazon with a 98% lifetime positive
feedback rating. Plaintiff reached $2 million in sales during the first six months of
2018. As of its expulsion from Amazon, TSI was selling around $400,000-500,000
per month on amazon.com. Net margins were roughly 20%."

**RESPONSE TO REQUEST NO. 15:**

Plaintiff objects to this Request to the extent it calls for the production of
information protected from disclosure by the attorney-client privilege, the work
product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as
follows:  Plaintiff will produce all responsive, non-privileged documents in its
possession, custody, or control that are located after a reasonably diligent search.

**REQUEST NO. 16:**

All DOCUMENTS supporting Thimes's allegation in ¶ 52 of the 5AC that
"[b]y reason of the expulsion Plaintiff was unable to sell its aging inventory (at
least $1.1 million) or access its funds in Amazon's hands (about $80,000). Plaintiff

1    was forced to hire counsel at substantial expense."

2    **RESPONSE TO REQUEST NO. 16:**

3         Plaintiff objects to this Request to the extent it calls for the production of

4    information protected from disclosure by the attorney-client privilege, the work

5    product doctrine, or other applicable protections and privileges.

6         Subject to and without waiving the foregoing objection, Plaintiff responds as

7    follows:  Plaintiff will produce all responsive, non-privileged documents in its

8    possession, custody, or control that are located after a reasonably diligent search.

9    **REQUEST NO. 17:**

10        All DOCUMENTS CONCERNING YOUR assets, including, but not limited

11   to, funding and bank account balances, since formation.

12   **RESPONSE TO REQUEST NO. 17:**

13        Plaintiff objects to this Request as overbroad, unduly burdensome, and

14   disproportional to the needs of the case insofar as it seeks "all" documents

15   concerning Plaintiff's finances.  Plaintiff also objects on grounds of relevance, as

16   liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's "assets" or

17   "funding and bank account balances."  Plaintiff further objects that any relevance of

18   "all" documents is minimal, is greatly outweighed by the burden of tracking down

19   all such documents and communications, and on that ground, is disproportional to

20   the needs of the case, considering the parties' resources, the importance of the

21   discovery in resolving the issues, and whether the burden or expense of the proposed

22   discovery outweighs its likely benefit.  Plaintiff further objects to the definition of

23   "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a

24   Universal Goods & Sales.  Plaintiff further objects to this Request to the extent it

25   calls for the production of information protected from disclosure by the attorney-

26   client privilege, the work product doctrine, or other applicable protections and

27   privileges.

28

**REQUEST NO. 18:**

All DOCUMENTS, such as ledgers, invoices, or merchant account summaries, since THIMES began selling products, evidencing purchases and sales of any products that YOU advertised, marketed, promoted, or listed for sale.

**RESPONSE TO REQUEST NO. 18:**

Plaintiff objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS" concerning every product Plaintiff has ever "advertised, marketed, promoted, or listed for sale." Plaintiff also objects on grounds of relevance to the extent that this Request demands documents concerning Plaintiff's purchases and sales of non-TP-Link branded products, as such documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim. Plaintiff further objects that any relevance of the requested documents is minimal, is greatly outweighed by the burden of tracking down all such documents and communications, and on that ground, is disproportional to the needs of the case, considering the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

**REQUEST NO. 19:**

All financial statements for THIMES, including year-end and interim balance sheets, income statements, monthly profit and loss statements, and statements of cash flow.

**RESPONSE TO REQUEST NO. 19:**

Plaintiff objects to this Request as overbroad, unduly burdensome, and

1   disproportional to the needs of the case insofar as it seeks "all" of Plaintiff's

2   financial statements.  Plaintiff further objects to the definition of "THIMES" as

3   overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods &

4   Sales.

5        Subject to and without waiving the foregoing objection, Plaintiff responds as

6   follows:  Plaintiff will produce its annual profit and loss statements and balance

7   sheets.

8   **REQUEST NO. 20:**

9        DOCUMENTS sufficient to show financial information CONCERNING

10  YOUR sales, on a monthly basis, by product description, units sold, month-end

11  inventory details by product, total revenue collected, costs, gross profits, and net

12  profits.

13  **RESPONSE TO REQUEST NO. 20:**

14       Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to

15  mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects

16  to this Request as overbroad, unduly burdensome, and disproportional to the needs

17  of the case insofar as it seeks documents and information concerning Plaintiff's sales

18  of non-TP-Link branded products.

19  **REQUEST NO. 21:**

20       All DOCUMENTS and COMMUNICATIONS CONCERNING the TP-

21  LINK® MARK, including any trademark search, clearance, or other inquiry

22  conducted by or on behalf of YOU related to the TP-LINK® MARK.

23  **RESPONSE TO REQUEST NO. 21:**

24       Plaintiff objects to the definition of "YOU" as overbroad, and interprets it to

25  mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff also objects to

26  this Request to the extent it calls for the production of information protected from

27  disclosure by the attorney-client privilege, the work product doctrine, or other

28  applicable protections and privileges.

- 15 -

1    Subject to and without waiving the foregoing objections, Plaintiff responds as

2    follows:  No responsive documents exist as Plaintiff never performed a trademark

3    search, clearance, or other similar inquiry related to any trademarks held by TP-

4    Link.

5    **REQUEST NO. 22:**

6    All DOCUMENTS CONCERNING any advertising, marketing, promotion,

7    or listing for sale of any TP-Link products by YOU on any platform (including

8    without limitation on AMAZON), including any agreements between YOU and

9    any platform.

10   **RESPONSE TO REQUEST NO. 22:**

11   Plaintiff objects to this Request as overbroad, unduly burdensome, and

12   disproportional to the needs of the case insofar as it seeks "all" documents

13   concerning every TP-Link product Plaintiff has ever purchased or sold.  Plaintiff

14   also objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-

15   Link's conduct, not Plaintiff's "advertising, marketing, promotion, or listing for

16   sale" of TP-Link products.  Plaintiff further objects that any relevance of "all" such

17   documents is minimal, is greatly outweighed by the burden of tracking down all

18   such documents and communications, and on that ground, is disproportional to the

19   needs of the case, considering the parties' resources, the importance of the discovery

20   in resolving the issues, and whether the burden or expense of the proposed discovery

21   outweighs its likely benefit.  Plaintiff further objects to the definition of "YOU" as

22   overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods &

23   Sales.  Plaintiff also objects to this Request to the extent it calls for the production of

24   information protected from disclosure by the attorney-client privilege, the work

25   product doctrine, or other applicable protections and privileges.

26   Subject to and without waiving the foregoing objections, Plaintiff responds as

27   follows:  Plaintiff will produce responsive, non-privileged documents in its

28   possession, custody, or control that are located after a reasonably diligent search

sufficient to show Plaintiff's listings of TP-Link wireless router products on the Amazon Marketplace.

**REQUEST NO. 23:**

ALL DOCUMENTS and COMMUNICATIONS CONCERNING warranties related to any TP-Link product that YOU advertised, marketed, promoted, or listed for sale.

**RESPONSE TO REQUEST NO. 23:**

Plaintiff objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects to the term "warranties related to any TP-Link product" as vague and ambiguous. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Plaintiff states that it no longer has access to its Amazon account and therefore is not in possession of any documents or communications concerning warranties related to any TP-Link product that it sold on Amazon.

**REQUEST NO. 24:**

All DOCUMENTS CONCERNING YOUR disclosures to end consumers about any limitations or restrictions for any TP-Link product purchased from YOU.

**RESPONSE TO REQUEST NO. 24:**

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects to the term "limitations or restrictions for any TP-Link product purchased from YOU" as vague and ambiguous.  Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff states that it no longer has access to its Amazon account and therefore is not in possession of any disclosures related to any TP-Link product that it sold on Amazon.

**REQUEST NO. 25:**

All DOCUMENTS CONCERNING any authorization YOU have to advertise, market, promote, or list for sale any product, including TP-Link products.

**RESPONSE TO REQUEST NO. 24:**

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to the term "authorization YOU have to advertise, market, promote, or list for sale any product" as vague and ambiguous. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable protections and privileges.

**REQUEST NO. 26:**

All DOCUMENTS CONCERNING YOUR formation and operation including, but not limited to, articles of organization, articles of incorporation, bylaws, operating agreements and amendments, statements of information, shareholder ledgers, stock certificates, members units, and minutes.

**RESPONSE TO REQUEST NO. 26:**

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to this Request on grounds of relevance, as the requested documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim. Plaintiff also objects to this Request to the extent it calls for the production of information protected from disclosure by the attorney-client privilege, the work product doctrine,

1    or other applicable protections and privileges.

2    **REQUEST NO. 27:**

3        All DOCUMENTS identified in THIMES's Initial Disclosures.

4    **RESPONSE TO REQUEST NO. 27:**

5        Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

6    to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

7        Subject to and without waiving the foregoing objections, Plaintiff responds as

8    follows:  Plaintiff will produce all responsive, non-privileged documents in its

9    possession, custody, or control that are located after a reasonably diligent search.

10   **REQUEST NO. 28:**

11       All DOCUMENTS and COMMUNICATIONS YOU intend to rely on as

12   part of YOUR claims and defenses in this action.

13   **RESPONSE TO REQUEST NO. 28:**

14       Plaintiff objects to the definition of "YOU" and "YOUR" as overbroad, and

15   interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

16   Plaintiff also objects to this Request to the extent it calls for the production of

17   information protected from disclosure by the attorney-client privilege, the work

18   product doctrine, or other applicable protections and privileges.

19       Subject to and without waiving the foregoing objections, Plaintiff responds as

20   follows:  Plaintiff will produce all responsive, non-privileged documents in its

21   possession, custody, or control that are located after a reasonably diligent search.

22   **REQUEST NO. 29:**

23       All DOCUMENTS reviewed, identified, or described in responding to TP-

24   LINK USA's Interrogatories to THIMES, Set One.

25   **RESPONSE TO REQUEST NO. 29:**

26       Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

27   to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

28       Subject to and without waiving the foregoing objections, Plaintiff responds as

THIMES RESPONSE TO
TP-LINK FIRST RFP
CASE NO. 2:19-CV-10374-SB-E

1    follows:  Plaintiff will produce all responsive, non-privileged documents in its

2    possession, custody, or control that are located after a reasonably diligent search.

3

4    Dated:  July 5, 2022                           GAW | POE LLP

5                                                   By:_____

6                                                       Randolph Gaw
                                                        Attorneys for Plaintiff
7                                                       Thimes Solutions Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIMES RESPONSE TO
TP-LINK FIRST RFP
CASE NO. 2:19-CV-10374-SB-E

# CERTIFICATE OF SERVICE

I am over 18 years of age and not a party to the action.  I hereby certify that on July 5, 2022, I served the following document(s) on the parties in the above-entitled action:

**THIMES SOLUTIONS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION**

**Via E-mail:**  The document(s) described above were transmitted by electronic mail to the addresses on record for the following parties and their counsel:

| | |
|---|---|
| Heather Auyang<br>Heather.Auyang@ltlattorneys.com<br>Prashanth Chennakesavan<br>Prashanth.Chennakesavan@ltlattorneys.com<br>Patice Gore<br>patice.gore@ltlattorneys.com | Joshua A. Waldman<br>jwaldman@bkcglaw.com<br>M. Michelle Rohani<br>mrohani@bkcglaw.com |
| LTL Attorneys LLP<br>600 California St. \| 15th Floor<br>San Francisco, California 94108 | Burkhalter Kessler Clement & George LLP<br>2020 Main Street, Suite 600<br>Irvine, CA 92614 |
| Attorneys for Defendant<br>TP Link USA Corporation | Attorneys for Defendant<br>Auction Brothers, Inc. |

I declare under penalty of perjury that the foregoing is a true and correct statement.

Dated:  July 5, 2022

Randolph Gaw

# EXHIBIT CC

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>                    Plaintiffs,<br><br>       v.<br><br>TP-LINK USA CORPORATION,<br>and AUCTION BROTHERS, INC.<br>d/b/a AMAZZIA<br><br>                    Defendant. | Case No. 2:19-cv-10374-SB-E<br><br>**THIMES SOLUTIONS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:     Defendant TP-Link USA Corporation

RESPONDING PARTY:     Plaintiff Thimes Solutions Inc.

SET NO.:     One

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

2   Plaintiff Thimes Solutions Inc. hereby objects and responds to Defendant TP-Link

3   USA Corporation's First Set of Interrogatories to Plaintiff, served on June 2, 2022.

4   **GENERAL OBJECTIONS**

5    1.    Plaintiff objects to the Interrogatories and to each definition,

6   instruction, and Interrogatory therein to the extent they purport to impose on

7   Plaintiff obligations that differ from or exceed those of the Federal Rules of Civil

8   Procedure, the Local Rules of the United States District Court for the Central

9   District of California, or any order or ruling by the Court in this action.  Plaintiff will

10  respond to the Interrogatories in conformity with applicable rules and orders and not

11  necessarily in accordance with the instructions, definitions, or other statements in

12  the Interrogatories.

13   2.    Plaintiff objects to the Interrogatories and to each Interrogatory therein

14  to the extent they seek information that is not relevant and not reasonably calculated

15  to lead to the discovery of admissible evidence.

16   3.    Plaintiff objects to the Interrogatories and to each Interrogatory therein

17  to the extent they purport to call for information protected from disclosure by the

18  attorney-client privilege, the work product doctrine, or other applicable protections

19  and privileges.

20   4.    Plaintiff objects to the Interrogatories and to each Interrogatory therein

21  to the extent they request information solely in the possession, custody, or control of

22  Defendants TP-Link USA Corporation or Auction Brothers, Inc. d/b/a Amazzia or

23  third parties.

24   5.    Plaintiff's responses are made without conceding the relevance of any

25  information provided.  Plaintiff reserves the right to object on any ground to the

26  admission of the Interrogatories or any information produced in response to the

27  Interrogatories.

28   6.    Plaintiff's responses are not intended to be, and should not be construed

THIMES RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

1  as agreement or concurrence with any characterization of the facts, circumstances,

2  or legal arguments contained in the Interrogatories.  Plaintiff reserves the right to

3  contest such characterizations.  Plaintiff also objects to the Interrogatories to the

4  extent they contain express or implied assumptions of fact or law with respect to

5  matters at issue in this litigation.  Any answer by Plaintiff is not an admission that

6  any factual or legal predicate stated in the Interrogatories is accurate.

7       7.      These General Objections are incorporated into Plaintiff's response to

8  each Interrogatory.  To the extent that Plaintiff responds to any Interrogatory

9  covered by these General Objections and any specific objections, Plaintiff's

10  response is without waiver of those objections.

11              **RESPONSES TO INTERROGATORIES**

12  **INTERROGATORY NO. 1:**

13       Describe in detail element-by-element all facts and circumstances that

14  support or otherwise relate to YOUR claim for interference with existing and

15  prospective business relationships.

16  **RESPONSE TO INTERROGATORY NO. 1:**

17       Plaintiff objects to this Interrogatory as overbroad and unduly burdensome

18  because it requires the statement of "all" facts "that support or otherwise relate to"

19  Plaintiff's claim.  Plaintiff will construe this Interrogatory as requesting the

20  statement of "all material facts" supporting the claim.  Plaintiff also objects to this

21  Interrogatory as premature because discovery only recently commenced.  Plaintiff

22  further objects to the definition of "YOUR" as overbroad, and interprets it to mean

23  Thimes Solutions Inc. d/b/a Universal Goods & Sales.

24       Subject to and without waiving the foregoing objections, based on

25  information reasonably available at this time, Plaintiff responds as follows:

26  Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the

27  factual basis for Plaintiff's claim for interference with existing and prospective

28  business relationships.  Thimes has had an established economic relationship with

1  Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with

2  a 98% lifetime positive feedback rating, and had $2 million in sales during the first

3  six months of 2018.  TP-Link knew of Thimes's successful sales on the Amazon

4  Marketplace, as evidenced by TP-Link's entering into the Amazon Brand

5  Protection Agreement with Amazzia for the specific purpose of eliminating third-

6  party resellers—like Thimes—of TP-Link branded products on the Amazon

7  Marketplace.  Defendants submitted 28 complaints to Amazon alleging that

8  Thimes was selling counterfeit products for the specific purpose of disrupting and

9  stopping Thimes's sales on the Amazon Marketplace.  Amazzia has admitted that it

10 submitted the 28 complaints to Amazon with the goal of "[i]mmediate removal of

11 the seller's offer of this counterfeit product."  As a result of Defendants'

12 complaints, Amazon suspended and expelled Thimes from the Amazon

13 Marketplace.  As a result of the expulsion, Thimes was unable to sell its aging

14 inventory, access its funds stored with Amazon, and continue its profitable sales

15 track record on the Amazon Marketplace.

16      Plaintiff will supplement this Interrogatory response as appropriate after

17 discovery is substantially complete.

18 **INTERROGATORY NO. 2:**

19      Describe in detail element-by-element all facts and circumstances that support

20 or otherwise relate to YOUR claim for trade libel.

21 **RESPONSE TO INTERROGATORY NO. 2:**

22      Plaintiff objects to this Interrogatory as overbroad and unduly burdensome

23 because it requires the statement of "all" facts "that support or otherwise relate to"

24 Plaintiff's claim.  Plaintiff will construe this Interrogatory as requesting the

25 statement of "all material facts" supporting the claim.  Plaintiff also objects to this

26 Interrogatory as premature because discovery only recently commenced.  Plaintiff

27 further objects to the definition of "YOUR" as overbroad, and interprets it to mean

28 Thimes Solutions Inc. d/b/a Universal Goods & Sales.

THIMES RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

1    Subject to and without waiving the foregoing objections, based on

2    information reasonably available at this time, Plaintiff responds as follows:

3    Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the

4    factual basis for Plaintiff's claim for trade libel.  Each of the 28 complaints

5    Defendants submitted to Amazon alleging that Thimes was selling counterfeit

6    products constitutes a disparaging statement that was published to others in writing

7    and induced Amazon not to deal with Plaintiff.  Each of Defendants' 28 complaints

8    constitutes libel per se under California law.

9    In addition, Defendants' counterfeiting allegations are false, and TP-Link

10   knew they were false.  Thimes purchased the authentic, factory-sealed TP-Link

11   AC5400 routers from The Surplus Company, a reputable supplier that Thimes had

12   dealt with extensively, and TP-Link confirmed the authenticity of the products by

13   purchasing eight of those routers itself.  Furthermore, Defendants submitted the

14   first complaint to Amazon on January 19, 2018, three days before the routers TP-

15   Link purchased from Thimes on the Amazon Marketplace were even delivered to

16   TP-Link.  TP-Link then twice ignored Thimes's requests for the specific basis for

17   TP-Link's counterfeit allegations.

18   Plaintiff will supplement this Interrogatory response as appropriate after

19   discovery is substantially complete.

20   **INTERROGATORY NO. 3:**

21   Describe in detail all facts and circumstances that support or otherwise relate

22   to YOUR claim for compensatory damages, including YOUR damages calculations.

23   **RESPONSE TO INTERROGATORY NO. 3:**

24   Plaintiff objects to this Interrogatory as overbroad and unduly burdensome

25   because it requires the statement of "all" facts "that support or otherwise relate to"

26   Plaintiff's claim.  Plaintiff will construe this Interrogatory as requesting the

27   statement of "all material facts" supporting the claim.  Plaintiff also objects to this

28   Interrogatory as premature because discovery only recently commenced.  Plaintiff

further objects to this Interrogatory as duplicative of Interrogatory Nos. 1 and 2. Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for compensatory damages, based on information reasonably available at this time.  Specifically, TP-Link tortiously interfered with Thimes's economic relationship with Amazon by submitting to Amazon 28 complaints alleging that Thimes was selling counterfeit products, for the specific purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace. Thimes had an established economic relationship with Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and had $2 million in sales during the first six months of 2018.  TP-Link knew of Thimes's successful sales on the Amazon Marketplace, and entered into the Amazon Brand Protection Agreement with Amazzia for the specific purpose of eliminating third-party resellers like Thimes of TP-Link branded products on the Amazon Marketplace.

TP-Link's conduct constitutes trade libel, as each of the 28 complaints Defendants submitted to Amazon alleging that Thimes was selling counterfeit products constitutes a disparaging statement that was published to others in writing and induced Amazon not to deal with Plaintiff, and is libel per se under California law.

As a result of TP-Link's complaints, Amazon suspended and expelled Thimes from the Amazon Marketplace.  Plaintiff has been damaged by TP-Link's tortious interference because Plaintiff had to sell much of its inventory at a loss, could not access its funds stored with Amazon, and could not continue its profitable sales track record on the Amazon Marketplace.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 4:**

Describe in detail all facts and circumstances relating to the specific conduct by TP-LINK USA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "relating to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim. Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced. Plaintiff further objects to this Interrogatory as duplicative of Interrogatory No. 1. Plaintiff further objects to the definition of "YOU" and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for interference with existing and prospective business relationships. Thimes has had an established economic relationship with Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and had $2 million in sales during the first six months of 2018. TP-Link knew of Thimes's successful sales on the Amazon Marketplace, as evidenced by TP-Link's entering into the Amazon Brand Protection Agreement with Amazzia for the specific purpose of eliminating third-party resellers—like Thimes—of TP-Link branded products on the Amazon Marketplace. TP-Link instructed Amazzia to submit 28 complaints to Amazon alleging that Thimes was selling counterfeit products for the specific purpose of

disrupting and stopping Thimes's sales on the Amazon Marketplace. TP-Link had no reasonable basis for alleging to Amazon that Thimes sold counterfeit TP-Link branded products, as TP-Link lodged such complaints before it ever received any orders of TP-Link products from Thimes. Furthermore, after TP-Link received orders of TP-Link products from Thimes and had an opportunity to inspect them, it knew that these products were still factory-sealed and thus unaltered in any way, yet it continued to knowingly or recklessly allege to Amazon that Thimes sold counterfeit TP-Link branded products. Actual disruption occurred, as Amazon suspended and expelled Thimes from the Amazon Marketplace. As a result of the expulsion, Thimes was unable to sell its aging inventory, access its funds stored with Amazon, and continue its profitable sales track record on the Amazon Marketplace.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 5:**

Describe in detail all facts and circumstances relating to the specific conduct by AMAZZIA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "relating to" Plaintiff's claim. Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim. Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced. Plaintiff further objects to this Interrogatory as duplicative of Interrogatory No. 1. Plaintiff further objects to the definition of "YOU" and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

1   Subject to and without waiving the foregoing objections, based on

2   information reasonably available at this time, Plaintiff responds as follows:

3   Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the

4   factual basis for Plaintiff's claim for interference with existing and prospective

5   business relationships.  Thimes has had an established economic relationship with

6   Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with

7   a 98% lifetime positive feedback rating, and had $2 million in sales during the first

8   six months of 2018.  Amazzia knew of Thimes's successful sales on the Amazon

9   Marketplace, as evidenced by Amazzia's entering into the Amazon Brand

10   Protection Agreement with TP-Link for the specific purpose of eliminating third-

11   party resellers—like Thimes—of TP-Link branded products on the Amazon

12   Marketplace.  Amazzia submitted 28 complaints to Amazon, per instruction from

13   TP-Link, alleging that Thimes was selling counterfeit products for the specific

14   purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace.

15   Amazzia has admitted that it submitted the 28 complaints to Amazon with the goal

16   of "[i]mmediate removal of the seller's offer of this counterfeit product."  Amazzia

17   had no reasonable basis for alleging to Amazon that Thimes sold counterfeit TP-

18   Link branded products, as Amazzia lodged such complaints before it ever received

19   any orders of TP-Link products from Thimes.  Furthermore, after TP-Link received

20   orders of TP-Link products from Thimes and had an opportunity to inspect them, it

21   knew that these products were still factory-sealed and thus unaltered in any way,

22   yet Amazzia continued to knowingly or recklessly allege to Amazon that Thimes

23   sold counterfeit TP-Link branded products.  Actual disruption occurred, as Amazon

24   suspended and expelled Thimes from the Amazon Marketplace.  As a result of the

25   expulsion, Thimes was unable to sell its aging inventory, access its funds stored

26   with Amazon, and continue its profitable sales track record on the Amazon

27   Marketplace.

28   Plaintiff will supplement this Interrogatory response as appropriate after

1   discovery is substantially complete.

2   **INTERROGATORY NO. 6:**

3       Identify each statement made by TP-LINK USA to customers (or entities

4   alleged to be customers) of THIMES (including, but not limited to, the date of the

5   statement, the manner in which the statement was conveyed, and the speaker).

6   **RESPONSE TO INTERROGATORY NO. 6:**

7       Plaintiff objects to this Interrogatory to the extent it seeks information solely

8   in the possession of TP-Link or Amazzia.  Plaintiff further objects to the term

9   "customers (or entities alleged to be customers) of THIMES" as vague and

10  ambiguous.  Plaintiff further objects to this Interrogatory on grounds of relevance.

11  Plaintiff also objects to this Interrogatory as premature because discovery only

12  recently commenced.  Plaintiff further objects to the definition of "THIMES" as

13  overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods &

14  Sales.  Plaintiff also alleges that the Interrogatory is unduly burdensome and not

15  proportional to the legitimate needs of discovery to the extent it seeks Plaintiff to

16  describe "the manner in which" TP-Link made any statement to any "customer" of

17  Thimes.

18      Subject to and without waiving the foregoing objections, based on

19  information reasonably available at this time, Plaintiff responds as follows:

20  Amazzia submitted complaints to Amazon on behalf of TP-Link via Amazon's

21  Notice Infringement Process on the following dates: January 19, 2018, January 21,

22  January 26, 2018, February 14, 2018, February 21, 2018, February 28, 2018, March

23  2, 2018, March 3, 2018, March 10, 2018, March 13, 2018, March 21, 2018, March

24  31, 2018, April 2, 2018, April 5, 2018, April 6, 2018, April 7, 2018, April 9, 2018,

25  April 10, 2018, April 11, 2018, April 12, 2018, April 24, 2018, April 25, 2018, April

26  26, 2018, April 30, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 21,

27  2018.

28      Plaintiff will supplement this Interrogatory response as appropriate after

THIMES RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

1  discovery is substantially complete.

2  **INTERROGATORY NO. 7:**

3      Identify each statement made by AMAZZIA to customers (or entities alleged

4  to be customers) of THIMES (including, but not limited to, the date of the statement,

5  the manner in which the statement was conveyed, and the speaker).

6  **RESPONSE TO INTERROGATORY NO. 7:**

7      Plaintiff objects to this Interrogatory to the extent it seeks information solely

8  in the possession of Amazzia.  Plaintiff further objects to the term "customers (or

9  entities alleged to be customers) of THIMES" as vague and ambiguous.  Plaintiff

10 further objects to this Interrogatory on grounds of relevance.  Plaintiff also objects to

11 this Interrogatory as premature because discovery only recently commenced.

12 Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets

13 it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff also

14 alleges that the Interrogatory is unduly burdensome and not proportional to the

15 legitimate needs of discovery to the extent it seeks Plaintiff to describe "the manner

16 in which" Amazzia made any statement to any "customer" of Thimes.

17     Subject to and without waiving the foregoing objections, based on

18 information reasonably available at this time, Plaintiff responds as follows:

19 Amazzia submitted complaints to Amazon on behalf of TP-Link via Amazon's

20 Notice Infringement Process on the following dates: January 19, 2018, January 21,

21 January 26, 2018, February 14, 2018, February 21, 2018, February 28, 2018, March

22 2, 2018, March 3, 2018, March 10, 2018, March 13, 2018, March 21, 2018, March

23 31, 2018, April 2, 2018, April 5, 2018, April 6, 2018, April 7, 2018, April 9, 2018,

24 April 10, 2018, April 11, 2018, April 12, 2018, April 24, 2018, April 25, 2018, April

25 26, 2018, April 30, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 21,

26 2018.

27     Plaintiff will supplement this Interrogatory response as appropriate after

28 discovery is substantially complete.

**INTERROGATORY NO. 8:**

Identify each customer that YOU contend did not do business with YOU due to a statement by AMAZZIA and the circumstances of that transaction.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this Interrogatory to the extent it seeks information solely in the possession of third parties. Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous. Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Amazzia's submission of the 28 complaints on behalf of TP-Link to Amazon accusing Plaintiff of selling counterfeit goods induced Amazon to suspend and expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the Amazon Marketplace, the largest e-commerce platform in the world and where half of all online retail sales take place. Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 9:**

Identify each customer that YOU contend did not do business with YOU due to a statement by TP-LINK USA and the circumstances of that transaction.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this Interrogatory to the extent it seeks information solely in the possession of third parties. Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous. Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc.

1   d/b/a Universal Goods & Sales.

2       Subject to and without waiving the foregoing objections, Plaintiff responds as

3   follows:  per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

4   accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

5   expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the

6   ability to market and transact on the Amazon Marketplace, the largest e-commerce

7   platform in the world and where half of all online retail sales take place.  Following

8   Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018,

9   each customer searching on the Amazon Marketplace for any product that Plaintiff

10  had in stock in its inventory, or would have eventually purchased for re-sale on

11  Amazon in the ordinary course of its business, is a lost transaction.

12      Plaintiff will supplement this Interrogatory response as appropriate after

13  discovery is substantially complete.

14  **INTERROGATORY NO. 10:**

15      Identify each transaction (including sales) which YOU contend did not occur

16  due to a statement by AMAZZIA and the circumstances of that transaction.

17  **RESPONSE TO INTERROGATORY NO. 10:**

18      Plaintiff objects to this Interrogatory to the extent it seeks information

19  concerning a "transaction" that "did not occur."  Plaintiff further objects to the term

20  "circumstances of that transaction" as vague and ambiguous.  Plaintiff further

21  objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes

22  Solutions Inc. d/b/a Universal Goods & Sales.

23      Subject to and without waiving the foregoing objections, Plaintiff responds

24  as follows:  per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

25  accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

26  expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the

27  ability to market and transact on the Amazon Marketplace, the largest e-commerce

28  platform in the world and where half of all online retail sales take place.  Following

1  Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018,

2  each customer searching on the Amazon Marketplace for any product that Plaintiff

3  had in stock in its inventory, or would have eventually purchased for re-sale on

4  Amazon in the ordinary course of its business, is a lost transaction.

5       Plaintiff will supplement this Interrogatory response as appropriate after

6  discovery is substantially complete.

7  **INTERROGATORY NO. 11:**

8       Identify each transaction (including sales) which YOU contend did not occur

9  due to a statement made by TP-LINK USA and the circumstances of that

10  transaction.

11  **RESPONSE TO INTERROGATORY NO. 11:**

12       Plaintiff objects to this Interrogatory to the extent it seeks information

13  concerning a "transaction" that "did not occur."  Plaintiff further objects to the term

14  "circumstances of that transaction" as vague and ambiguous.  Plaintiff further

15  objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes

16  Solutions Inc. d/b/a Universal Goods & Sales.

17       Subject to and without waiving the foregoing objections, Plaintiff responds

18  as follows:  per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

19  accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

20  expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the

21  ability to market and transact on the Amazon Marketplace, the largest e-commerce

22  platform in the world and where half of all online retail sales take place.  Following

23  Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018,

24  each customer searching on the Amazon Marketplace for any product that Plaintiff

25  had in stock in its inventory, or would have eventually purchased for re-sale on

26  Amazon in the ordinary course of its business, is a lost transaction.

27       Plaintiff will supplement this Interrogatory response as appropriate after

28  discovery is substantially complete.

1  **INTERROGATORY NO. 12:**

2     Describe in detail any concerns, claims, or complaints regarding THIMES or

3  any account run by AVRAHAM EISENBERG, including, but not limited to,

4  intellectual property violations (trademark, patent or copyright), negative customer

5  feedback, account issues (e.g., inadequate product descriptions, insufficient security,

6  or performance evaluations), warnings (including the "Amazon's warning letter"

7  referred to in 5AC ¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58),

8  suspensions, removals, and expulsions.

9  **RESPONSE TO INTERROGATORY NO. 12:**

10     Plaintiff objects to this Interrogatory as compound.  Plaintiff further objects to

11  the terms "concerns … regarding THIMES or account run by AVRAHAM

12  EISENBERG," "negative customer feedback," "account issues," and "warnings" as

13  vague and ambiguous.  Plaintiff further objects to the Interrogatory to the extent it

14  seeks information solely in the possession of third parties.  Plaintiff further objects

15  to this Interrogatory as overbroad and unduly burdensome because it requires a

16  description "in detail any concerns, claims or complaints" regarding Plaintiff.

17  Plaintiff will construe this Interrogatory as requesting Plaintiff to describe "claims,

18  or complaints" that Plaintiff is aware of.  Plaintiff further objects to the definition of

19  "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a

20  Universal Goods & Sales.  Plaintiff further objects that any relevance of identifying

21  "each" communication it received from Amazon for "intellectual property violations

22  (trademark, patent or copyright), negative customer feedback, account issues (e.g.,

23  inadequate product descriptions, insufficient security, or performance evaluations),

24  warnings, suspensions, removals, and expulsions" is minimal, is greatly outweighed

25  by the burden of tracking down all such communications, and on that ground, is

26  disproportional to the needs of the case, considering the parties' resources, the

27  importance of the discovery in resolving the issues, and whether the burden or

28  expense of the proposed discovery outweighs its likely benefit.  Plaintiff will only

1   identify the e-mails it received from Amazon containing warnings or complaints of

2   intellectual property infringement (such as trademark infringement or

3   counterfeiting), suspensions, removals, or expulsion.

4        Subject to and without waiving the foregoing objections, based on

5   information reasonably available at this time, Plaintiff responds as follows:

6   Amazzia submitted complaints to Amazon on behalf of TP-Link via Amazon's

7   Notice Infringement Process on the following dates: January 19, 2018, January 21,

8   January 26, 2018, February 14, 2018, February 21, 2018, February 28, 2018, March

9   2, 2018, March 3, 2018, March 10, 2018, March 13, 2018, March 21, 2018, March

10  31, 2018, April 2, 2018, April 5, 2018, April 6, 2018, April 7, 2018, April 9, 2018,

11  April 10, 2018, April 11, 2018, April 12, 2018, April 24, 2018, April 25, 2018, April

12  26, 2018, April 30, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 21,

13  2018.

14       Plaintiff also received an e-mail from Amazon on May 7, 2018 notifying

15  Plaintiff about Amazon's suspension of Plaintiff for alleged infringement of

16  intellectual property rights.

17       Plaintiff also received an e-mail from Amazon on August 27, 2018 notifying

18  Plaintiff that it had been permanently expelled from the Amazon marketplace.

19       Plaintiff also received an e-mail from Amazon containing a Notice of

20  Intellectual Property Rights Infringement on January 13, 2017, and a subsequent e-

21  mail on October 19, 2017 stating that Amazon had reinstated that content following

22  Plaintiff's appeal.  Plaintiff also received e-mails from Amazon on June 26, 2017

23  and May 11, 2018 containing a Notice of Intellectual Property Rights Infringement.

24  Plaintiff additionally received e-mails from Amazon containing a notice of

25  trademark infringement on the following dates: May 31, 2018; June 24, 2018, and

26  August 22, 2018.  Plaintiff also received e-mails from Amazon regarding purported

27  counterfeit Prevagen products on June 9, 2018, June 10, 2018, June 21, 2018, and

28  June 23, 2018.

THIMES RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

Dated:  July 5, 2022

GAW | POE LLP

By:

Randolph Gaw
Attorneys for Plaintiff
Thimes Solutions Inc.

1

## **<u>VERIFICATION</u>**

2      I, Avraham Eisenberg, declare that I am authorized to make this verification

3 on behalf of Plaintiff Thimes Solutions Inc.  I have read **THIMES SOLUTIONS**

4 **INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA**

5 **CORPORATION'S FIRST SET OF INTERROGATORIES**, know their

6 contents, and certify that the same are true of my own knowledge, and as to those

7 things of which I do now have personal knowledge, I am informed and believe

8 them to be true.

9      I declare under penalty of perjury under the laws of the United States of

10 America that the foregoing is true and correct, and this verification was executed on

11 July 5, 2022, at Monsey, New York.

12

13

*Avraham Eisenberg*

14 _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EISENBERG VERIFICATION
CASE NO. 2:19-CV-10374-SB-E

# CERTIFICATE OF SERVICE

I am over 18 years of age and not a party to the action.  I hereby certify that on July 5, 2022, I served the following document(s) on the parties in the above-entitled action:

**THIMES SOLUTIONS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF INTERROGATORIES**

**Via E-mail:**  The document(s) described above were transmitted by electronic mail to the addresses on record for the following parties and their counsel:

| | |
|---|---|
| Heather Auyang<br>Heather.Auyang@ltlattorneys.com<br>Prashanth Chennakesavan<br>Prashanth.Chennakesavan@ltlattorneys.com<br>Patice Gore<br>patice.gore@ltlattorneys.com | Joshua A. Waldman<br>jwaldman@bkcglaw.com<br>M. Michelle Rohani<br>mrohani@bkcglaw.com |
| LTL Attorneys LLP<br>600 California St. | 15th Floor<br>San Francisco, California 94108 | Burkhalter Kessler Clement & George LLP<br>2020 Main Street, Suite 600<br>Irvine, CA 92614 |
| Attorneys for Defendant<br>TP Link USA Corporation | Attorneys for Defendant<br>Auction Brothers, Inc. |

I declare under penalty of perjury that the foregoing is a true and correct statement.

Dated:  July 5, 2022

Randolph Gaw

# EXHIBIT DD



LTL ATTORNEYS LLP
300 S. GRAND AVENUE, 14TH FLOOR
LOS ANGELES, CALIFORNIA 90071
TEL: 213-612-8900  |  FAX: 213-612-3773
WWW.LTLATTORNEYS.COM

LOS ANGELES  |  SAN FRANCISCO  |  NEW YORK  |  ORANGE COUNTY

Email:  heather.auyang@ltlattorneys.com

July 13, 2022

**VIA EMAIL**
Randolph Gaw rgaw@gawpoe.com
Mark Poe mpoe@gawpoe.com
Victor Meng vmeng@gawpoe.com
**GAW | POE LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111

**VIA EMAIL**
Mark Schlachet markschlachet@me.com
**Law Offices of Mark Schlachet**
43 West 43d Street, Suite 220
New York, New York 10036

   Re: Local Rule 37-1 Meet and Confer
   *Thimes Solutions Inc. v. TP-Link USA Corporation and Auction Brothers, Inc.*
   Case No. 2:19-cv-10374-SB-E

Dear Counsel:

Pursuant to Local Rule 37-1, TP-Link seeks a prefiling conference to discuss Thimes's discovery responses to TP-Link's First Set of Interrogatories and Requests for Documents.  As discussed below, Thimes's responses are largely deficient and must be amended or supplemented.  We can discuss at the same time as your request to confer with respect to the issues raised in your July 6, 2022 email, with the goal of eliminating the necessity for hearing the motion or to eliminate as many of the disputes as possible.

As an initial matter, the date Thimes expects to complete production is unacceptable: "Plaintiff anticipates completing its production by August 5, 2022."  The deadline for initial expert disclosures is August 1 and rebuttal August 8.  Essentially, Thimes proposes completing its production after expert reports.  This gamesmanship is improper, especially because Thimes has already been producing cherry-picked documents.  Thimes should complete its document production and provide amended and complete responses to the Interrogatories by **July 22, 2022**.

Thimes includes a statement about the "Format of Production" that does not comply with FRCP 34.  Thimes states that "[w]hile Plaintiff will endeavor to produce any electronically stored information as it is kept in the usual course of business, some of the requested documents in this action are not readily susceptible to production in their original from (e.g. where such information can only be viewed through proprietary software that is not widely used).  For such documents, Plaintiff will produce them in a reasonably useable form, such as Adobe Portable Document Format or Microsoft Excel."  TP-Link reserves the right to object to Thimes's chosen format as such conversion will remove metadata.  Thimes also purports to require inspection of documents rather than just simply producing: "Documents that do not presently exist in electronic form will



be made available for inspection at Plaintiff's place of business on a mutually agreeable date."
Thimes must identify such documents and the basis for why copies cannot be made.  It appears
Thimes is attempting to improperly burden TP-Link and deter the production of responsive
documents.  Finally, Thimes must also produce documents as they are kept in the usual course of
business and this includes the production of metadata for ESI, (including invoices sent or
received).

Thimes also limits or refuses to respond to numerous discovery requests based on the objection:
"Plaintiff objects to this Request on grounds of relevance, as liability on Plaintiff's claims turns
on TP-Link's conduct."  *See, e.g.*, RFP Nos. 1, 11, 13, 17, and 22.  However, Thimes ignore that
TP-Link has asserted trademark infringement and trademark counterclaims to which such requests
are clearly relevant.  Thimes cannot unilaterally determine what case issues it will respond to and
limit its response on that basis.

Other deficiencies are discussed in detail below. For ease of reference the interrogatories and
requests are grouped into categories, but such groupings are not mutually exclusive, *e.g.*, requests
related to Thimes's trade libel claims are also relevant to TP-Link's counterclaims.  This letter is
not an exhaustive recital of the deficiencies in Thimes's responses and TP-Link reserves the right
to address additional deficiencies.

## I.      GLOBAL ISSUES

### A.  General Objections

Thimes asserts a series of "General Objections" to each of its responses. Such "general . . .
objections . . . are not proper objections," and fail to satisfy Thimes's burden of "clarifying,
explaining, and supporting its objections."  *U.S. ex rel. O'Connell v. Chapman University*, 245
F.R.D. 646, 648-649 (C.D. Cal. 2007).  Courts decline to consider general objections to requests
for production.  *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc*., No. 2:10-CV-1207-GEB-
AC, 2014 WL 5093398, at *5 (E.D. Cal. Oct. 9, 2014).  Accordingly, such objections will be
disregarded.

### B.  "Privilege" Objections

Thimes objects to most of the discovery requests based on privilege, including "attorney-client
privilege, the work product doctrine, or other applicable protections and privileges," even when
such objection does not make sense.  For example, Request No. 6 seeks documents and
communications made by TP-Link to customers of Thimes.  Thimes nonsensically objects based
on privilege.

Under Rule 34(b)(2)(C), a party objecting on grounds of "privilege" must "state whether any
responsive materials are being withheld on the basis of that objection."  *In re Rivera*, No. CV 16-
4676-JAK (SSX), 2017 WL 5163695, at *2 (C.D. Cal. Apr. 14, 2017).



Thimes has not specified whether it has withheld responsive documents on the basis of privilege. Thimes must either promptly withdraw this objection or provide a sufficiently detailed privilege log.

### C.  Burdensome Objections

Thimes objects throughout its response as to burden, but has not demonstrated why, in fact, such requests are burdensome.  Blanket, unsupported objections that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and should be disregarded. A party objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome.  *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B).

This objection should be withdrawn and Thimes should supplement its responses.

### D.  Thimes is "No Longer in Possession" of Responsive Documents

For Request Nos. 6, 7, 23, and 24, Thimes states it is "not in possession" of responsive documents because it no longer has access to its Amazon account.  However, it is not clear from the responses if responsive documents never existed or if the documents previously existed, but are no longer in Thimes's possession custody or control, or have otherwise been destroyed.  Thimes must amend its responses.

## II.    THIMES'S TORTIOUS INTERFERENCE CLAIM

### A.  Interrogatory Nos. 1, 4, and 5

**Interrogatory No. 1**: *Describe in detail element-by-element all facts and circumstances that support or otherwise relate to YOUR claim for interference with existing and prospective business relationships.*

**Interrogatory No. 4**: *Describe in detail all facts and circumstances relating to the specific conduct by TP-LINK USA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.*

**Interrogatory No. 5**: *Describe in detail all facts and circumstances relating to the specific conduct by AMAZZIA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.*

Thimes's responses simply refer to and copy language from the amended Fifth Amended Complaint (5AC) and fail to fully respond to these interrogatories.

Under California law, interference with prospective economic advantage requires that the plaintiff allege an act that is wrongful independent of the interference itself.  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).  In other words, plaintiff must show



that the defendant engaged in conduct that was wrongful by some legal measure other than the fact
of interference itself.

Thimes's response fails to identify how TP-Link engaged in conduct that was wrongful by some
legal measure other than the fact of interference itself.  If Thimes is replying on its trade libel claim
to satisfy this element, Thimes should amend to state this.  If Thimes cannot identify conduct that
was wrongful by some legal measure other than the fact of interference itself, Thimes should
amend to state that independent wrongful conduct does not exist.

### B.  Interrogatory No. 12 and Request Nos. 2, 10, and 11

**<u>Interrogatory No. 12</u>**:  *Describe in detail any concerns, claims, or complaints regarding THIMES
or any account run by AVRAHAM EISENBERG, including, but not limited to, intellectual property
violations (trademark, patent or copyright), negative customer feedback, account issues (e.g.,
inadequate product descriptions, insufficient security, or performance evaluations), warnings
(including the "Amazon's warning letter" referred to in 5AC ¶ 26 and "single imposter's
complaint" referred to in 5AC ¶ 58), suspensions, removals, and expulsions.*

**<u>Request No. 2</u>**:  *All DOCUMENTS and COMMUNICATIONS related to any concerns, claims, or
complaints regarding THIMES or any account run by AVRAHAM EISENBERG, including, but not
limited to, intellectual property violations (trademark, patent, or copyright), negative customer
feedback, account issues (e.g., inadequate product descriptions, insufficient security, or
performance evaluations), warnings (including the "Amazon's warning letter" referred to in 5AC
¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and
expulsions.*

**<u>Request No. 10</u>**:  *All DOCUMENTS and COMMUNICATIONS with AMAZON CONCERNING
THIMES's account, including, but not limited to, the signed Amazon's standard Business Solutions
Agreement (referred to in ¶ 6 of the 5AC), "appeal" (referred to in ¶ 45 of the 5AC: "Plaintiff
appealed and got reinstated from the May 7th suspension."), and "administrative options"
(referred to in ¶ 51 of the 5AC: "Plaintiff exhausted all possible administrative options at Amazon,
including appellate procedures.").*

**<u>Request No. 11</u>**:  *All DOCUMENTS and COMMUNICATIONS with AMAZON CONCERNING
any account run by Avraham Eisenberg (including under other names or aliases).*

Thimes's responses are deficient as it refuses to meaningfully respond to these requests.

In response to Interrogatory No. 12 and Request No. 2, Thimes improperly limits its response
based on a number of terms it considers overbroad, vague and ambiguous: (i) "concerns …
regarding THIMES or account run by AVRAHAM EISENBERG;" (ii) "negative customer
feedback;" (iii) "account issues;" and (iv) "warnings."    Thimes has not satisfied its burden "to
show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and
common sense are necessary to attribute ordinary definitions to terms and phrases."  *Local.com
Corp. v. Fry's Elecs., Inc*., No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal.



Feb. 22, 2013).   Please either withdraw these objections, supplement the interrogatory, and produce withheld documents, or be prepared to discuss during the parties' meet and confer why such terms are overbroad, vague and ambiguous.

Moreover, Thimes improperly objects to Interrogatory No. 12 as to the relevance and proportionality of identifying each "intellectual property violations (trademark, patent or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings, suspensions, removals, and expulsions."

Thimes accuses TP-Link of tortious interference as the reason it was supposedly suspended and expelled from Amazon.  However, as Thimes admits, Amazon could suspend or expel Thimes for any reason, including based on what Thimes characterizes as "bizarre behavior":

> To become an Amazon seller [Thimes] signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate [Thimes] as a seller for any reason or for no reason at all." ECF No. 178 (5AC), Paragraph. 6.
>
> *        *        *
>
> Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, restated repeatedly, and often have nothing to do with the reason for the suspension or expulsion…."

*Id*. at para. 1.

These requests seek "[a]ny concerns, claims, or complaints," which could have impacted Thimes's standing with Amazon resulting in "terminat[ing] [Thimes] as a seller for any reason or for no reason at all," are relevant and proportional to Thimes's claim (and TP-Link's defense) for tortious interference.

In response to Interrogatory No. 12, Thimes improperly limits its response: "Plaintiff will only identify the e-mails it received from Amazon containing warnings or complaints of intellectual property infringement (such as trademark infringement or counterfeiting), suspensions, removals, or expulsion."

Thimes then lists dates of such supposed emails without any identification of the alleged entity who filed the complaint or details.  Such information is clearly within the knowledge and possession of Thimes.  Thimes's responses must be amended to, at minimum, identify the complainant and the substance of the complaint, concern, or claim.

**LTL ATTORNEYS**

Similarly, in response to Request No. 2, Thimes improperly limits its response to intellectual property violations: "Plaintiff will produce all e-mails sent to it by Amazon regarding complaints, policy warning notices, notices of intellectual property violations, or negative feedback."

Likewise, for Request No. 10, Thimes improperly limits it response to emails related to only three specific issues: "Plaintiff will produce all e-mails that it sent to, or received from, Amazon concerning Amazon's standard Business Solutions Agreement, the appeal referred to in paragraph 45 of the Amended Fifth Amended Complaint, and the administrative options referred to in paragraph 51 of the Amended Fifth Amended Complaint."

Thimes unilateral narrowing of the scope is improper. Please amend the interrogatories and produce documents without any objections.

Request No. 11—Thimes flatly refuses to respond based on relevance. However, Thimes contends that complete "financial ruination" of a one person business, i.e., Mr. Eisenberg was the basically running the entire operation. If Mr. Eisenberg was also running other Amazon accounts, this is relevant to Thimes's lost profits argument. Accordingly, Thimes's refusal to respond is improper. Please produce in response to this request without objections.

### III.   DAMAGES CLAIMS (Interrogatory No. 3 and Request Nos. 12, 13, 17, 18, 19, 20 and 26)

These interrogatories and requests seek information relevant to Thimes's damages claim for $5 million dollars in compensatory damages, as well as TP-Link's counterclaim. This information is relevant and discoverable under Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

<u>**Interrogatory No. 3**</u>: *Describe in detail all facts and circumstances that support or otherwise relate to YOUR claim for compensatory damages, including YOUR damages calculations.*

<u>**Request No. 12**</u>: *DOCUMENTS sufficient to show THIMES business activities and source of income since August 27, 2018.*

<u>**Request No. 13**</u>: *DOCUMENTS sufficient to show AVRAHAM EISENBERG's business activities and source of income since August 27, 2018.*

<u>**Request No. 17**</u>: *All DOCUMENTS CONCERNING YOUR assets, including, but not limited to, funding and bank account balances, since formation.*

<u>**Request No. 18**</u>: *All DOCUMENTS, such as ledgers, invoices, or merchant account summaries, since THIMES began selling products, evidencing purchases and sales of any products that YOU advertised, marketed, promoted, or listed for sale.*

<u>**Request No. 19**</u>: *All financial statements for THIMES, including year-end and interim balance sheets, income statements, monthly profit and loss statements, and statements of cash flow.*



**Request No. 20**: *DOCUMENTS sufficient to show financial information CONCERNING YOUR sales, on a monthly basis, by product description, units sold, month-end inventory details by product, total revenue collected, costs, gross profits, and net profits.*

**Request No. 26**: *All DOCUMENTS CONCERNING YOUR formation and operation including, but not limited to, articles of organization, articles of incorporation, bylaws, operating agreements and amendments, statements of information, shareholder ledgers, stock certificates, members units, and minutes.*

Thimes objects to Interrogatory No. 3 as "premature because discovery only recently commenced." Thimes then just recycles the same general statements about Thimes's past sales and its inability to sell inventory made in the 5AC "based on reasonably available at this time."

However, Thimes filed its original complaint on May 29, 2019 seeking "Compensatory damages of at least $5,000,000." Thimes should have a basis for its damages claims beyond general statements (especially because Thimes was required to plead special damages for a trade libel claim) to meet its Rule 11 obligations. Thimes must supplement its responses to address these deficiencies.

Request No. 12—Thimes "objects to the terms "business activities" and "source of income" as vague and ambiguous but agrees to produce. Thimes must withdraw these objections, explain why these terms are vague and ambiguous, or identify documents Thimes has withheld based on these objections.

Request No. 13—Thimes outright refuses to produce based on improper objection, including: "Plaintiff further objects to this Request on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Mr. Eisenberg's."

This request is relevant to Thimes's damages claims. Thimes's term business model was "buying something cheaply from a down-stream distributor [] and selling it at an enhanced price point online []." ECF No. 178 (amended 5AC), ¶ 3. Thimes claims complete "financial ruination" and lost profits based on constant sales and static income: "Assuming a 10-year income stream for [Thimes], **constant sales** and **static income** of $900,000 per year, discounted at 3%, we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000." ECF No. 178, ¶ 64.

As relevant to Thimes's damages claim, this request seeks documents as to whether Thimes (essentially a sole proprietorship run by Mr. Eisenberg) had a willingness to continue the business after Thimes was supposedly expelled from the Amazon platform in August 2018 to support "constant sales" and "static income."

Request No. 17—Thimes outright refuses to produce based on improper objections. Thimes makes the same improper objection addressed above that "Plaintiff also objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's 'assets' or 'funding and



bank account balances.'"  For at least the same reasons for Interrogatory No. 3 and Requests Nos. 13 and 18, Thimes should withdraw its objections and produce responsive documents.

Request No. 18—Thimes outright refuses to produce based on improper objections, including "Plaintiff also objects on grounds of relevance to the extent that this Request demands documents concerning Plaintiff's purchases and sales of non-TP-Link branded products, as such documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim.'"

Thimes seeks $5 million dollars in compensatory damages for its supposed "financial ruination" (5AC ¶ 5).  *See also* 5AC, ¶ 7 ("Now . . . there is only ruin."); 5AC, ¶ 54 ("The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month.  Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.").  Thus far, Thimes has only produced the following cherry-picked documents—an Excel summary of its supposed Amazon sales, 2017 and 2018 tax returns, and profit and loss statements for 2017, 2018, 2019, and 2020, but no underlying supporting documents.  TP-Link is entitled to challenge Thimes's lost profit claims based on more than just cherry-picked documents.

Thimes must produce underlying documentation (all underlying books and records, including, but not limited to, QuickBooks files, account ledgers, cash flows, and financial statements).  Indeed, the veracity of Thimes's production is already questionable. For example, Thimes produced two invoices which it submitted to Amazon from The Surplus Company LLC: Bates Nos. THIMES00065 and THIMES00068.  Both invoices have the same Invoice #33063 and date (01/08/2018), but for different quantities of products, and are therefore highly suspect.  Thimes must provide files with the metadata for these two invoices, as well as for any other invoices for the purchases **or** sales of products.

In addition, for at least the same reasons for Interrogatory No. 3 and Requests Nos. 13 and 17, Thimes should withdraw its objections and produce responsive documents.

Request No. 19—Thimes limits its production to "its annual profit and loss statements and balance sheets."  It is unclear which balance sheets (*e.g.*, monthly, quarterly or yearly) Thimes has agreed to produce, please clarify.  Moreover, this request seeks more than Thimes's limited production.  Thimes must also produce all financial statements without objections for the same reasons applicable to Request Nos. 13, 17, and 18.

Request No. 20— Thimes outright refuses to produce based on improper objections, including "Plaintiff further objects to this Request as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks documents and information concerning Plaintiff's sales of ***non-TP-Link branded products***."  Thimes must produce responsive documents without objections for the same reasons applicable to Request Nos. 13, 17, and 18.

Request No. 26—Thimes outright refuses to produce based on improper objections, including: "Plaintiff further objects to this Request on grounds of relevance, as the requested documents have no possible bearing on Plaintiff's claims or TP-Link's counterclaim."



This request is relevant to Thimes's damages claims. Thimes's business model was "buying something cheaply from a down-stream distributor [] and selling it at an enhanced price point online []." ECF No. 178 (amended 5AC), ¶ 3. Thimes claims complete "financial ruination" and lost profits. This request seeks documents as to whether Thimes was essentially a sole proprietorship run by Mr. Eisenberg, in other words, was this business model entirely dependent on Mr. Eisenberg—relevant to Thimes's lost profit claim.

This request is also relevant to TP-Link's counterclaim for violation of its intellectual property rights, and in particular related to piercing the corporate veil. Thimes has not provided any evidence that there are multiple shareholders. Mr. Eisenberg, as the Founder and CEO of Thimes, is thus the sole (if not majority) owner of Thimes and cannot hide behind a corporate structure to shield his wrongdoing.

Closely held corporations are most susceptible to piercing the corporate veil, in particular if there is no real separation between the company and its single owner and the corporation is used for illegal activities, *i.e.*, to violate intellectual property rights of others. For example, commingling of assets, the corporation was inadequately capitalized and depended on personal funds from Mr. Eisenberg (e.g., products purchased using personal accounts), Mr. Eisenberg paid bills unrelated to Thimes from the business accounts, Mr. Eisenberg deposited funds payable to Thimes into his personal bank account or a business account unrelated to Thimes, Mr. Eisenberg personally guaranteed payment of the Thimes's debts/loans, the basis for any salary or dividends paid to Mr. Eisenberg, and expenses or loans (including the documents and terms of any loans). Thimes must withdraw its objections and produce responsive documents.

## IV. THIMES'S TRADE LIBEL CLAIM

### A. Interrogatory No. 2

**Interrogatory No. 2**: *Describe in detail element-by-element all facts and circumstances that support or otherwise relate to YOUR claim for trade libel.*

In response to Interrogatory No. 2, Thimes fails to provide the facts that support its claim for trade libel. To be actionable, a trade libel claim requires a claimant to, at a minimum, "identify the time and place of publication as well as the speaker, the recipient of the statement, ***the substance of the statements***." *Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13–4539 RSWL (MANx), 2013 WL 5405706, at *4 (dismissing trade libel claim when "[p]laintiff failed to identify" the specific time and location of each alleged statement) (emphasis added). A trade libel claim is deficient when it fails to "give[] any indication of who from [defendant] made the allegedly libelous statements, to whom they made those statements, when they made the statements, ***or what exactly they said***". *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (emphasis added); *see also, Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1081, n.8 (C.D. Cal. 1998) (In "the Ninth Circuit, a product defamation or ***trade libel claim must be based on specific statements***," and "[t]he defamatory character of the language must be apparent from the words themselves.") (emphasis added).



Thimes response fails to provide the exact statements made by any Defendant, yet identifies such statements in paragraph 47 of the 5AC (ECF No. 178). Thimes must amend its response to provide the exact statements, or state that it does not know the exact statements made by any Defendant.

### B. Interrogatory Nos. 6 and 7 and Request Nos. 6 and 7

**Interrogatory No. 6**: *Identify each statement made by TP-LINK USA to customers (or entities alleged to be customers) of THIMES (including, but not limited to, the date of the statement, the manner in which the statement was conveyed, and the speaker).*

**Interrogatory No. 7**: *Identify each statement made by AMAZZIA to customers (or entities alleged to be customers) of THIMES (including, but not limited to, the date of the statement, the manner in which the statement was conveyed, and the speaker).*

**Request No. 6**: *All DOCUMENTS and COMMUNICATIONS concerning statements made by TP-LINK USA to customers (or entities alleged to be customers) of THIMES.*

**Request No. 7**: *All DOCUMENTS and COMMUNICATIONS concerning statements made by AMAZZIA to customers (or entities alleged to be customers) of THIMES.*

Thimes limits its responses to these interrogatories and requests based on its objection that it does not understand what "customer" means. What "customer" means is clear—*e.g.*, Merriam Webster defines customer as "one that *purchases* a commodity or service." Thimes has not satisfied its burden "to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Local.com Corp. v. Fry's Elecs., Inc.*, No. 12-cv-0976-JGB (JPRx), 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013). Notably, Thimes does feign confusion about what "customer" means in response to co-defendant Amazzia's Requests for Admission Nos. 5 and 6, but inexplicably admits that Amazzia made no statements to Thimes's customers, but denies as to TP-Link.

> **REQUEST NO. 5:**
> Admit that YOU do not know of any statements made by Amazzia to YOUR **customers** regarding TP-Link products sold and/or offered for sale by YOU on Amazon.
>
> **RESPONSE TO REQUEST NO. 5**:
> Plaintiff objects to the definition of "YOU" and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.
>
> Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that it is not aware if Amazzia made any statements directly to any **customers** that purchased from Plaintiff's Amazon Marketplace account. Unless expressly admitted, Plaintiff denies this Request for Admission.
>
> **REQUEST NO. 6**:

 **ATTORNEYS**

> Admit that YOU do not know of any statements made by TP-Link to YOUR customers
> regarding TP-Link products sold and/or offered for sale by YOU on Amazon.
>
> **RESPONSE TO REQUEST NO. 6**:
> Plaintiff objects to the definition of "YOU" and "YOUR" as overbroad, and interprets them
> to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.
>
> Subject to and without waiving the foregoing objections, Plaintiff responds as follows:
> Deny.

To establish a claim for trade libel, Thimes must prove that a particular customer refused to deal
with Thimes because the customer was influenced by the supposed at-issue statements made by
TP-Link or Amazzia. *Erlich v. Etner*, 224 Cal.App.2d 69, 75 (1964).

In response to Interrogatory Nos. 6 and 7, Thimes limits its responses based on the objection it
does not understand what "customer" means: "Plaintiff further objects to the term "customers (or
entities alleged to be customers) of THIMES" as vague and ambiguous." And likewise objects as
to relevance: "Plaintiff further objects to this Interrogatory on grounds of relevance." Thimes then
limits its responses to statements made ***to Amazon***.

Thimes again relies on the same "customer" objection to Request Nos. 6 and 7: "Plaintiff objects
to this Request as vague and ambiguous as it does not know what would be a document or
communication 'concerning statements made by TP-Link USA to customers' and it similarly does
not know what would constitute an 'entit[y] alleged to be [a] customer[ ].'" *See* also section
"Thimes is 'No Longer in Possession' of Responsive Documents." Thimes then limits its
responses to statements made ***to Amazon*** ("Therefore, apart from the various complaints that TP-
Link / Amazzia ***submitted to Amazon*** regarding Plaintiff during 2018, Plaintiff is not in possession
of any other documents or communications that reflect any communications made by TP-Link to
any customers or potential customers of Plaintiff.") (emphasis added). Thimes's re-writes clearly
do not respond to these requests.

Thimes's attempt to limit it responses to statements made ***to Amazon*** is improper. The Ninth
Circuit, in affirming dismissal of Thimes's Lanham Act claim, held that Amazon is ***not*** a customer,
*i.e.*, purchaser. ECF No. 155 at 3. Likewise, the Court's Order in denying Thimes's request to
add a Lanham Act claim to the Fourth Amended Complaint held that Amazon is ***not*** a customer.
ECF No. 125 at 3.

If Thimes cannot identify any statements made to customers (i.e., not Amazon) by either TP-Link
or Amazzia or produce corresponding documents, then Thimes must amend its responses to so
state.

### C.  Interrogatory Nos. 8, 9, 10, and 11 and Request No. 5

**Interrogatory No. 8**:  *Identify each customer that YOU contend did not do business with YOU due
to a statement by AMAZZIA and the circumstances of that transaction.*



**Interrogatory No. 9**: *Identify each customer that YOU contend did not do business with YOU due to a statement by TP-LINK USA and the circumstances of that transaction.*

**Interrogatory No. 10**: *Identify each transaction (including sales) which YOU contend did not occur due to a statement by AMAZZIA and the circumstances of that transaction.*

**Interrogatory No. 11**: *Identify each transaction (including sales) which YOU contend did not occur due to a statement made by TP-LINK USA and the circumstances of that transaction.*

**Request No. 5**: *All DOCUMENTS and COMMUNICATIONS showing that AMAZON purchased any products as a customer of THIMES, including invoices and purchase orders.*

As Thimes is aware, in order to establish a claim for trade libel, Thimes must "identify the ***particular purchasers*** who have refrained from dealing with him" and "specify the transactions of which he claims to have been deprived." *Erlich v. Etner*, 224 Cal.App.2d 69, 73 (1964) (emphasis added). Thimes must establish that a particular customer refused to deal with Thimes because the customer was influenced by the supposed at-issue statements made by TP-Link or Amazzia. *Id.* at 75. Moreover, allegations of a "general decline" in business are not sufficient to plead special damages, "even when no other cause for it is apparent." *Id.* at 73; *see also*, *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV181882JGBSHKX, 2019 WL 2619666, at *13 (C.D. Cal. 2019) (citing *Elec. Waveform Lab Inc. v. Work-Loss Data Inst., LLC*, 2015 WL 12684232, at *4 (C.D. Cal. 2015).

Thimes responses to Interrogatory Nos. 8, 9, 10 and 11 fail to "specify the transactions of which [Thimes] claims to have been deprived." *Erlich*, 224 Cal.App.2d at 73. Thimes's responses to Interrogatory Nos. 8 and 9 are entirely inadequate: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction." Same deficient issues with Thimes's responses to Interrogatory Nos. 10 and 11: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased for re-sale on Amazon in the ordinary course of its business, is a lost transaction."

If Thimes cannot identify any the specific transaction(s) to customers for which it was deprived, then Thimes must amend its responses to so state.

Thimes asserts the same "customer" objection for Request No. 5: "Plaintiff objects to the term 'as a customer of THIMES' as vague and ambiguous." Thimes then limits its response producing document for sales made ***on the Amazon Marketplace*** for just TP-Link products: "reflecting Plaintiff's sales of TP-Link branded wireless router products on the Amazon Marketplace." This re-write clearly does not respond to this request. If Thimes has no evidence that Amazon purchased any products from Thimes, then Thimes must amend its responses to so state.



### D.  Request No. 9

**Request No. 9**:  *DOCUMENTS sufficient to show the sourcing of THIMES's products sold on AMAZON, including any TP-Link products.*

Thimes objects based on relevance.  While Thimes agrees to produce documents "reflecting Plaintiff's purchases of TP-Link products," this unilateral narrowing is improper.  Thimes must clarify what it means by "reflecting."

This request is relevant to Thimes's business model that forms the basis for its state law claims. Specifically, Thimes's business model "is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount."  ECF No. 178 (5AC), Paragraph 3.  Based on this business model, Thimes's claims that it only deals with "authentic" products from "a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer," and therefore "[TP-Link] and Amazzia published written complaints to Amazon, [were] libelous per se, charging Plaintiff with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods (on 27 occasions) on amazon.com or otherwise infringing a trademark (on one occasion) ("IP Complaints")," resulting in tortious interference with prospective business relations.  Accordingly, Thimes should produce documents sufficient to show the sourcing of its supposedly "authentic" products sold on Amazon to support its state law claims.

Moreover, Thimes claims that it "purchased the authentic, factory-sealed TP-Link AC5400 routers from The Surplus Company, a reputable supplier that ***Thimes had dealt with extensively***…." Thimes Response to Interrogatory No. 2.  Thimes produced two invoices which it submitted to Amazon from The Surplus Company LLC: Bates Nos. THIMES00065 and THIMES00068.  As discussed above, these two invoices have the same Invoice #33063 and date (01/08/2018), except list different quantities of products, and thus their authenticity is highly questionable.  Given these discrepancies, Thimes should also provide the metadata for documents produced in response to this request.

This request is also relevant to TP-Link's counterclaim as Thimes's products were not genuine and therefore infringed TP-Link's intellectual property rights.

Thimes should produce documents without any objections.

### V.  TP-LINK'S LANHAM ACT COUNTERCLAIM

### A.  Request Nos. 1, 3, and 4

**Request No. 1**: *All DOCUMENTS and COMMUNICATIONS CONCERNING TP-LINK USA, including TP-Link products.*

**LTL** ATTORNEYS

PAGE 14 OF 18
JULY 13, 2022 37-1 LETTER RE: THIMES'S DISCOVERY RESPONSES TO TP-LINK'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR DOCUMENTS

Thimes limits this request based on its nonsensical objection: "Plaintiff also objects on grounds of relevance to the extent that this Request demands documents concerning Plaintiff's purchases of TP-Link products from sellers other than TP-Link, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's purchase of TP-Link products from other sellers."

First, Thimes ignores TP-Link's counterclaim for trademark infringement and trademark counterfeiting. This request is relevant to (at a minimum) Thimes's intentional and willful infringement of TP-Link's Mark, Thimes's marketing/listings for TP-Link products, as well as whether Thimes informed consumers that TP-Link's original manufacturer's warranty did not convey to consumers who purchased from Thimes and that Thimes did not have authorization from TP-Link to sell any products. These issues are likewise relevant to TP-Link's defense of Thimes's state law claims.

Second, please produce documents evidencing Thimes purchased TP-Link products directly from TP-Link given Thimes's objection: "Plaintiff's purchases of TP-Link products from sellers other than TP-Link . . . not Plaintiff's purchase of TP-Link products from other sellers").

Third, Thimes discovery requests sought documents for essentially any document referring to Thimes. Thimes attempt to avoid responding to these requests is disingenuous. Thimes should produce any documents even on social media (e.g., Facebook and Twitter) in which Mr. Eisenberg made any comments about TP-Link, including this litigation.

Third, Thimes responds that it will produce documents: "(1) reflecting Plaintiff's purchases of TP-Link products that it subsequently re-sold on Amazon or (2) reflecting Plaintiff's sales on Amazon of TP-Link products." Please clarify what "reflecting" means and what Thimes is withholding based on this definition. Moreover, this request is not limited to products sold on Amazon. Thimes should produce documents for TP-Link products sold in any sales channel, not just Amazon. If Thimes is referring to the documents already produced, this production is deficient.

**Request No. 3**: *All DOCUMENTS and COMMUNICATIONS between THIMES and any third-party (including, but not limited to, AMAZON and customers) CONCERNING TP-LINK USA or any TP-Link product.*

Thimes refuses to produce on the basis that "this Request as duplicative of Request No. 1." For the same reasons detailed for Request No. 1, Thimes must supplement its production to include responsive documents without objections. Moreover, this request is relevant to TP-Link's defense to Thimes's tortious interference claim and whether Amazon or customers had issues with TP-Link products sold by Thimes, which factors into damages for harm to business and goodwill.

**Request No. 4**: *All DOCUMENTS and COMMUNICATIONS between AVRAHAM EISENBERG and any third-party (including, but not limited to, AMAZON and customers) CONCERNING TP-LINK USA or any TP-Link product.*

Thimes objects to this request "as overbroad, unduly burdensome, and disproportional to the needs of the case insofar as it seeks "all DOCUMENTS and COMMUNICATIONS" concerning every



TP-Link product Plaintiff has ever purchased or sold."  Thimes simply refuses to produce any responsive documents.  For the same reasons detailed for Request No. 1, Thimes must supplement its production to include responsive documents without objections.

### B.  Request No. 8

**Request No. 8**:  *All DOCUMENTS CONCERNING the sourcing of any TP-Link product, including the "360 TP-Link AC5400 Routers" cited in 5AC ¶ 26.*

This request seeks documents for any TP-Link product purchased by Thimes.  Thimes improperly narrows the scope by agreeing to only produce documents "reflecting Plaintiff's purchases of the "360 TP-Link AC5400 Routers" referenced in paragraph 26 of the Amended Fifth Amended Complaint."

Thimes sold at least nine different TP-Link products, including, but not limited to, the following ASINs:  B01DXVK3KY; B01IUDUJE0; B000FNFSPY; B004UBU8IE; B00A121WN6; B00BP0SSAS; B00JZFG6QS; B00K4DS5KU; and B010S6SG3S.  *See* Excel spreadsheet (Bates No. THIMES00001).  Thimes may have sold products in other sales channels than the Amazon Marketplace.

Thimes must produce documents for all TP-Link products, not just the routers referenced in paragraph 26 of the 5AC.  This request is relevant, in part, to Thimes's claim that the TP-Link products sold were genuine and therefore Thimes did not infringement upon TP-Link's intellectual property rights.

### C.  Request No. 14

**Request No. 14**:  *All DOCUMENTS and COMMUNICATIONS about Fortress DAO CONCERNING investors' contention that millions of dollars in investors' funds have been improperly retained (see Counterclaims ¶ 9).*

Plaintiff flat out object to responding: "Plaintiff objects to this Request because the relevance of the documents requested is nonexistent" and feigns disproportionality.  The Court denied Thimes's motion to strike.  ECF No. 194.

As explained, Paragraph 9 has a direct bearing on TP-Link's trademark infringement counterclaim.  The Ninth Circuit permits recovery of actual damages for trademark infringement, including damages for injury to business reputation and loss of goodwill.  *Deckers Outdoor Corporation v. Ego Shoes Ltd*., No. CV 20-11351-MWF (Ex), 2021 WL 5933111, at *2 (C.D. Cal. November 19, 2021) (finding plaintiff was entitled to recover damages for injury to its business reputation and loss of goodwill) (citing Model Civ. Jury Instr. 9th Cir. 15.27 (2021) ("recognizing loss of profits and injury to reputation and goodwill as actual damages in a trademark action")).  Here, Mr. Eisenberg's negative reputation as the Founder and CEO of Thimes is relevant to the harm to TP-Link's business reputation and loss of goodwill, as Mr. Eisenberg and Thimes affiliated themselves with TP-Link in order to sell TP-Link products.



Mr. Eisenberg's LinkedIn page (https://www.linkedin.com/in/avraham-eisenberg-1a909b107) informs consumers that he is the Founder and CEO of Thimes Solutions Inc.  *See* Declaration of Heather F. Auyang ("Auyang Decl."), Ex. A.  Paragraph 9 cites both a blog and article (also attached as ECF No. 175-1) that detail Mr. Eisenberg's success in absconding with investors' money—certainly issues for which TP-Link does not want to be associated.

Thimes claims to hold in inventory 100 units of "TP-Link AC5400 Wireless Tri-Band Wi-Fi Router (Archer C5400)" (Bates No. THIMES00085), and in its Fifth Amended Complaint (ECF No. 168) filed on May 23, 2022 asserted "Claim III Declaratory Judgement of Non-Infringement." The basis for Claim III is that "Plaintiff seeks to exercise its property rights and sell online products ***bearing trademarks belonging to Defendants*** and their privies, free of threat of harassment and harm from Defendants." ECF No. 168, ¶ 74.  Thimes seeks "[t]his Court's declaration of Plaintiff's right to sell online and at wholesale Defendants' (and privies') trademarked goods online will clarify and settle legal relations between the parties, terminate and afford relief from any uncertainty, insecurity or controversy."  *Id*. at ¶ 76.

Thimes also filed for Declaratory Judgment of Non-Infringement in its Original Complaint (ECF No. 1 (filed May 29, 2019)), as well as the First Amended Complaint (ECF No. 32 (filed July 2, 2019), Second Amended Complaint (ECF No. 78 (filed January 13, 2020)), Third Amended Complaint (ECF No. 112 (filed July 8, 2020)), and Fourth Amended Complaint (ECF No. 126 (filed September 7, 2020)).

Accordingly, unless Thimes violated its Rule 11 obligations, it is clear that Thimes intends to continue selling products online, including TP-Link products.  Any continued sales by Thimes is relevant to the harm to TP-Link's business reputation and loss of goodwill.

Thimes must remove it objections and produce responsive documents.

### D.  Request No. 22

**Request No. 22**:  *All DOCUMENTS CONCERNING any advertising, marketing, promotion, or listing for sale of any TP-Link products by YOU on any platform (including without limitation on AMAZON), including any agreements between YOU and any platform.*

Thimes limits this request based on its nonsensical objection: "Plaintiff also objects on grounds of relevance, as liability on Plaintiff's claims turns on TP-Link's conduct, not Plaintiff's 'advertising, marketing, promotion, or listing for sale' of TP-Link products."  Thimes then limits its production to documents "sufficient to show Plaintiff's listings of TP-Link wireless router products on the Amazon Marketplace."

First, Thimes ignores TP-Link's counterclaim for trademark infringement and trademark counterfeiting.  This request is relevant to (at a minimum) Thimes's intentional and willful infringement of TP-Link's Mark, Thimes's marketing/listings for TP-Link products, as well as whether Thimes informed consumers that TP-Link's original manufacturer's warranty did not



convey to consumers who purchased from Thimes and that Thimes did not have authorization from TP-Link to sell any products. TP-Link's counterclaims are not limited to Thimes's sales of TP-Link products sold only on Amazon. Thimes also needs to produce any agreements with such platforms.

Thimes must withdraw its objections and produce responsive documents.

### E.   Request Nos. 23 and 24

**Request No. 23**:  *ALL DOCUMENTS and COMMUNICATIONS CONCERNING warranties related to any TP-Link product that YOU advertised, marketed, promoted, or listed for sale.*

**Request No. 24**:  *All DOCUMENTS CONCERNING YOUR disclosures to end consumers about any limitations or restrictions for any TP-Link product purchased from YOU.*

In response to Request No. 23, Thimes objects to "the term 'warranties related to any TP-Link product' as vague and ambiguous." Likewise, for Request No. 24, TP-Link objects to "the term 'limitations or restrictions for any TP-Link product purchased from YOU' as vague and ambiguous." These requests seek, *e.g.*, documents and communications showing what warranty policies and warranties that Thimes provided and whether Thimes informed customers that TP-Link did not authorize such sales. Please clarify why these terms are vague and ambiguous, otherwise, Thimes should produce without objections or state that no such documents exist.

Thimes also responds that "it no longer has access to its Amazon account and therefore is not in possession of any documents or communications concerning warranties related to any TP-Link product that it sold on Amazon." *See* section above concerning Thimes is 'No Longer in Possession' of Responsive Documents.

### F.   Request No. 25

**Request No. 25**:  *All DOCUMENTS CONCERNING any authorization YOU have to advertise, market, promote, or list for sale any product, including TP-Link products*

Thimes outright refuses to produce based on improper objections, including (as addressed above): "Plaintiff further objects to the term "authorization YOU have to advertise, market, promote, or list for sale any product" as vague and ambiguous." During the parties' conference, Thimes should be prepared to explain why this term is vague and ambiguous. Thimes also inexplicably objects based on privilege.

Thimes does not make a relevance objection, which is thus waved. In any case, Thimes has admitted that it does not have authorization from rights holders to sell any products, including TP-Link products, which is relevant to TP-Link's defense and counterclaim. If Thimes has no documents, then it should amend its response to so state.



PAGE 18 OF 18
JULY 13, 2022 37-1 LETTER RE: THIMES'S DISCOVERY RESPONSES TO TP-LINK'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR DOCUMENTS

Regards,

Heather F. Auyang