CHRISTOPHER FROST, SBN 200336
chris@wgfcounsel.com
ASHLEY MORRIS, SBN 225455
ashley@wgfcounsel.com
WEINBERG GONSER FROST LLP
10866 Wilshire Blvd., Suite 1650
Los Angeles, CA 90024
Telephone: (424) 239-2851
Facsimile: (424) 238-3060

Attorneys for Defendant,
AUCTION BROTHERS, INC.
dba AMAZZIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIMES SOLUTIONS INC.,<br><br>    Plaintiff<br><br>vs.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA,<br><br>    Defendants.<br><br>TP-LINK USA CORPORATION,<br><br>    Counterclaimant,<br><br>vs.<br><br>THIMES SOLUTIONS INC.,<br><br>    Counter-Defendant. | **Case No.: 2:19-CV-10374-SB-E**<br><br>**DEFENDANT AUCTION BROTHERS, INC. dba AMAZZIA'S NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §877.6**<br><br>[Filed concurrently with Compendium of Evidence; Motion to Seal]<br><br>Date: September 23, 2022<br>Time: 8:30 a.m.<br>Courtroom: 6C |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................5

II. PROCEDURAL BACKGROUND.......................................................................6

III. FACTUAL BACKGROUND ...............................................................................6

    A. Thimes and TP Link Allegations Against Each Other ......................................6

    B. Amazzia Reports Inauthentic Products to Amazon, Pursuant to Amazon's Policies, and Amazon Determines the Appropriate Response to its Sellers ....7

    C. Thimes Sold TP Link Products as "New" Despite the Lack of Manufacturers' Warranty..............................................................................................................8

    D. Amazzia Prepared Reports Using Terminology Within Amazon's Condition Guidelines and Anti-Counterfeiting Policy.........................................................8

    E. Only Amazon Suspended or Terminated Seller Accounts .................................9

    F. TP Link Established Actual Confusion of Consumers Who Bought Product from Unauthorized Sellers ................................................................................10

IV. LEGAL ARGUMENT .......................................................................................11

    A. This Court Has the Authority to Approve this Motion for Good Faith Settlement Determination Between Amazzia and Thimes...............................11

    B. California Law Provides a Framework of Elements to Consider When Determining Whether the Settlement is in Good Faith......................................12

    C. Amazzia's Potential Liability is Minimal as a Matter of Law .......................14

        1. TP Link's Likelihood of Prevailing on its Trademark Counter Claims................... 14

        2. The Unavailability of a Warranty Rises to the Level of "Material Difference"....... 16

V. CONCLUSION ...................................................................................................18

DEFENDANT'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

# TABLE OF AUTHORITIES

**Cases**

*Abbott Ford, Inc. v. Sup.Ct. (Ford Motor Co.)* (1987) 43 Cal. 3d 858 .......................... 11, 12

*Am. Circuit Breaker Corp. v. Or. Breakers Inc.*, 406 F.3d 577, 584 (9th Cir. 2005) ....... 16

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979) ............................................. 15

*Beltronics USA, Inc. v. Midwest Inventory Dist., LLC*, 562 F.3d 1067 (10th Cir. 2009) .. 17

*City of Grand Terrace v. Superior Court* (1987) 192 Cal. App. 3d 1251 ......................... 13

*Everman v. Supreme Court* (1992) 8 Cal. 4th 466 ............................................................ 11

*Fischer v. Supreme Court* (1980) 103 Cal. App. 3d 434 ................................................... 11

*Harman Int'l Indus., Inc v. Pro Sound Gear, Inc.*, No. 2:17-CV-06650-ODW-FFMx,
    2018 WL 1989518, (C.D. Cal. Apr. 24, 2018) ............................................................ 17

*Hem and Thread, Inc. et al. v. Wholesalefashionsquare.com*, 2021 WL 3868779 ........... 17

*Herbalife International of America, Inc. v. Healthy1 Inc.*, 2019 WL 7169795 ................ 17

*HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-CV-2884-MMA (WMC),
    2013 WL 12074966, (S.D. Cal. Oct. 3, 2013) ............................................................. 17

*Hokto Kinoko Co. v. Concorde Farms Inc.*, 810 F.Supp. 2d 1013 (9th Cir. 2011) ..... 14, 16

*Lowell v. Mothers Cake & Cookie Co.* (1978) 79 Cal. App. 3d 13 .................................... 14

*Mason and Dixon Intermodal, Inc. v. Lapmasher Int'l LLC* (2011) 623 F. 3d 1056 ........ 11

*Mattco Forge, Inc. v. Arthur Young & Co.* (1995) Cal. App. 4th 1337 ............................ 11

*Michael Andrew Robinson et al. v. Best Price Distributors, LLC et al.*,
    2022 WL 3013182 ........................................................................................................ 17

*Patagonia, Inc. v. McHugh*, 2020 WL 4258818 .......................................................... 14, 17

*PepsiCo, Inc. v. Reyes*, 70 F.Supp. 2d 1057, 1059 (C.D.Cal.1999). ................................. 16

*RolexWatch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444 ............................................... 17

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995) ............... 15

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633(1st Cir.1992) ..... 15

*SoftMan Prod. Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075 (C.D. Cal. 2001) ..... 15

*Summit Tech. v. High–Line Med. Instruments Co.*, 922 F.Supp. 299 (C.D.Cal. 1996) ..... 16

DEFENDANT'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal. 3d 488 .................... 4, 12

**Statutes**

(§ 877.6 ............................................................................................................... 11

15 U.S.C. §1051 *et seq*. ........................................................................................ 6

Code Civ. Proc., § 877(b) .................................................................................. 11

Code Civ. Proc., § 877.6(c) ............................................................................... 11

- iv -

DEFENDANT'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on September 23, 2022 at 8:30 a.m., or as soon thereafter as the matter may be heard, and Defendant AUCTION BROTHERS, INC. doing business as AMAZZIA (hereinafter referred to as "Amazzia") will and hereby does move this Court, for an order determining that Amazzia's settlement with Plaintiff THIMES SOLUTIONS INC. (hereinafter referred to as "Thimes") has been made in good faith.

This motion is made on the grounds that Amazzia's settlement satisfies all factors set forth in *Tech-Bilt, Inc. v. Woodward-Clydie & Assoc.* (1985) 38 Cal. 3d. 488, 499 and its progeny. Under the terms of the Settlement Agreement, Amazzia has agreed to pay the sum of $40,000 to Thimes in exchange for a general release and the dismissal of its Complaint against Amazzia, with prejudice. The amount of the settlement is well within the ballpark of Amazzia's potential proportionate share of liability, if any, in this action.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the declaration of Chris Frost, the Compendium of Exhibits, and all papers and pleadings on file herein, and upon such oral and/or documentary evidence as may be presented at the time of the hearing.

DATED: August 19, 2022                          **WEINBERG GONSER FROST LLP**

                                                By:   */s/ Christopher Frost*
                                                      Christopher Frost
                                                      Ashley Morris

                                                      Attorneys for Defendant,
                                                      AUCTION BROTHERS, INC. dba
                                                      AMAZZIA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

This heavily-litigated matter arises from a claim alleging Thimes Solution, Inc. ("Thimes") lost profits after it was removed from the Amazon Marketplace ("Amazon") for allegedly selling inauthentic products. Thimes claims interference with its business on the basis that Defendants reported its products to be "counterfeit" rather than simply "trademark infringing." Defendants assert that they properly reported Thimes' products to Amazon consistent with Amazon's terms, definitions, and policies.

Thimes is an unauthorized reseller of products manufactured by Defendant TP-Link USA Corporation ("TP Link"). TP Link products come with a limited warranty which does not apply to products that are sold by unauthorized resellers. TP Link asserts that Thimes advertised TP Link products as "new" which would, and did, lead to customer confusion regarding the availability of the manufacturer's warranty.

Thimes sold TP Link products on Thimes' Amazon virtual store. Amazon has policies in place that prohibit the selling of inauthentic or "infringing" products. Pursuant to Amazon policy, the availability of TP Link's warranty is required to advertise TP Link products as "new." Neither Amazzia nor TP Link has control over Amazon's method for defining product conditions or the application of its anti-counterfeit policy.

TP Link retained Amazzia to monitor TP Link's products being sold to report any unauthorized sellers that were distributing products in a manner that could confuse TP Link consumers. Such reporting was performed in a manner, and using terminology, dictated by Amazon. Defendants had no role in Amazon's decision to suspend or terminate any Amazon account, including Thimes' account. After several reports that TP Link was selling "inauthentic" products, as defined by Amazon, Thimes was "delisted" from Amazon due to improper reporting. Thimes alleges that it sustained injury in the form of lost profits.

Thimes and Amazzia have now settled their differences and seek a good faith settlement determination.

## II.   PROCEDURAL BACKGROUND

This matter was originally filed by Thimes in the Southern District of New York in 2019. The Complaint initially stated state law claims but was amended to assert federal law claims. Thimes' original pleading was the subject matter of extensive law and motion practice. Ultimately, all federal claims were dismissed. On December 6, 2019, at a Case Management Conference in S.D.N.Y., the court transferred this matter to the Central District of California. Once transferred to the Central District, Thimes' Complaint was amended on multiple occasions. Thimes' operative Fifth Amended Complaint was filed with this Court on or about May 27, 2022 alleging state law causes of action for (i) interference with existing and prospective business relationships; (ii) trade libel; and (iii) declaratory judgment of non-infringement. ECF No. 178.

In addition, TP Link asserted a cross-complaint against Thimes for violation of the Lanham Act, 15 U.S.C. §1051 *et seq*. alleging trademark counterfeiting when Thimes advertised TP Link products for sale as "new" despite those products missing what TP Link deemed an essential part of TP Link's well-known brand – namely, a TP Link product warranty and availability of replacements. ECF No. 175.

Defendant Amazzia maintains no cross-claims. The parties engaged in preliminary settlement discussions and ultimately participated in a mediation on June 30, 2022. While the matter did not settle at mediation, Thimes and Amazzia subsequently reached a settlement of $40,000 in exchange for a general release of all claims against Amazzia, which were set forth in a long-form settlement agreement and submitted for this Court's consideration. Ex. 1.

## III.   FACTUAL BACKGROUND

### A.   Thimes and TP Link Allegations Against Each Other

As set forth in Thimes' Complaint, Thimes began selling TP Link products on Amazon in 2016 and signed Amazon's Standard Business Solutions Agreement which allowed Amazon to terminate Thimes's account at Amazon's discretion. ECF. No. 178, ¶ 6. Thimes alleges that, at all times, it purchased TP Link product in the manufacturer's

- 6 -
DEFENDANT'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

original packaging and did not repackage, modify or otherwise change the product for resale. *Id.* at ¶ 4. However, Thimes admits that it is not an "authorized" seller of TP Link products and is instead a "gray market" seller. *Id.* at ¶¶ 3-4; 32, fn. 12; 36.

TP Link is an exclusive licensee with all rights to enforce US Trademark Registration No. 3,175,495 (the "TP-LINK® Mark"). ECF No. 175, ¶¶ 2-3. TP Link asserts Thimes' "gray market" unauthorized selling of "new" TP Link products deceives customers into thinking that Thimes is affiliated with TP Link, which would convey an expectation that products are covered by the manufacturer's warranty. *Id.* at ¶ 8. TP Link does not provide a warranty for products purchased through an unauthorized seller regardless of whether the products remain in their original packaging or are not otherwise modified. *Ibid.*; Ex. 2.

TP Link alleges that Thimes has infringed on TP Link's trademark and engaged in trademark counterfeiting. ECF No. 175, ¶ 10. In bringing its counterclaim, TP Link asserts it is protecting the value and quality of its products and brand. *Ibid.*; see also *Id.* at ¶¶ 18-19. When Thimes sells "new" TP Link products without any indication of how that sale impacts the product warranty, it is alleged that Thimes causes confusion, mistake or deception in the minds of consumers that harms TP Link's brand by diminishing the value of its mark, which is associated with a reputation for specialized, high-quality computer networking products that carry a limited warranty honored by the company. *Id.* at ¶¶ 10, 26-27; 32.

### B. Amazzia Reports Inauthentic Products to Amazon, Pursuant to Amazon's Policies, and Amazon Determines the Appropriate Response to its Sellers

At all times relevant herein, Thimes has acknowledged that Amazzia was an outside vendor contracted to provide services to monitor specific TP Link products and report unauthorized sellers allegedly causing unnecessary confusion to consumers. ECF No. 178, ¶¶ 19-24. Amazzia reported the presence of unauthorized sellers consistent with Amazon's policies regarding product "Condition" labeling and Anti-Counterfeiting policies. Thimes

asserts, in its Fifth Amended Complaint, that Amazzia sent "fraudulent IP complaints to Amazon charging Thimes with counterfeiting…." *Id*. at ¶ 18. Unfortunately, as set forth in detail below, Thimes conflates their purported legal definition of counterfeiting with Amazon's *use* of the term.

Regardless, as set forth below, Amazzia operated within its understanding of Amazon's Anti-Counterfeiting Policy and Condition Guidelines, which define terms Amazon uses to identify "inauthentic" products and/or product advertisements. Ex. 3; Anti-Counterfeiting Policies; Ex. 4, Condition Guidelines. There is no evidence to support a claim that Amazzia engaged in reporting to Amazon with some underlying nefarious intent against Thimes or unauthorized sellers in general. However, it is undisputed that Amazzia only submitted reports to Amazon but that Amazon generated and enforces its policies regarding the reporting of "inauthentic" products. Amazzia had no authority or ability to suspend or terminate any seller's account on the Amazon Marketplace, including Thimes' account.

### C. Thimes Sold TP Link Products as "New" Despite the Lack of Manufacturers' Warranty

As a matter of course, Amazzia would receive information from its clients that a seller on Amazon was attempting to sell inauthentic products. In this case, for example, Thimes – using its Amazon marketplace account named Universal Goods and Sales – would advertise the sale of "new" TP Link products. Ex. 5.

Universal Goods and Sales would advertise the sale of TP Link products as "new". That information would be provided to Amazzia which would report the seller to Amazon pursuant to Amazon policies as set forth below.

### D. Amazzia Prepared Reports Using Terminology Within Amazon's Condition Guidelines and Anti-Counterfeiting Policy

All reports made by Amazzia to Amazon were consistent with Amazon's published guidelines, despite Thimes' mischaracterization that the reports were "false". For example, Amazon's "Seller's Condition Guidelines" identifies a "new" product as "[a] brand-new

- 8 -

item. **Original manufacturer's warranty**, if any, still applies, with warranty details included in the listing comments." "Unacceptable and prohibited items" include "item[s]… **Missing essential accompanying material or parts**."

Amazon also maintained an Anti-Counterfeiting Policy which requires all sellers to sell only authentic and legal products. **"Prohibited"** products include products that **"infringe any other party's intellectual property rights."** "Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products **or your authorization to list them for sale**." The consequence of selling "inauthentic" products may include suspension or termination of the Amazon's own account. Whether or not infringing on another party's intellectual property rights rises to the legal definition of "counterfeit" is a red herring. Amazon clearly identified products that infringed on intellectual property rights as "prohibited" products under its Anti-Counterfeiting Policy, which formulated the basis for Amazzia's reports.

Amazon Anti-Counterfeiting Policy also acknowledges that it "works with manufacturers" and its vendors to detect and prevent inauthentic products from being sold on Amazon. Manufacturers are encouraged to notify Amazon if they believe "inauthentic" products are being sold. Therefore, Amazzia's business model of handling the various reporting requested by Amazon is not inappropriate and is encouraged by Amazon.

TP Link alleges that Thimes sold TP Link products as "new" which did not satisfy Amazon's Condition Guidelines and which further made the product's listing "inauthentic". Thus, Amazzia's reporting was meant to be consistent with *Amazon guidelines* based on those factors deemed important *to Amazon* as it protected its own brand, customer relations and customer expectations regarding quality and authenticity.

E. **Only Amazon Suspended or Terminated Seller Accounts**

The crux of Thimes' complaint assert Defendants reported the selling of inauthentic products as "counterfeit" when it was actually selling products that were merely "trademark infringing." This is a distinction without a difference. Thimes asserts that the use of the term "counterfeit" is legally inapposite to the product being distributed by Thimes. However,

DEFENDANT'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

Amazzia's reports were made under a good faith, reasonable interpretation of Amazon's above-stated policies and verbage.

Furthermore, discovery has revealed that Thimes was in repeated contact with Amazon which continually asked for information consistent with these policies. As demonstrated in documents produced in discovery, Thimes began receiving notification of complaints regarding product authenticity in January 2018 and disputed their contents **to Amazon directly**. Ex. 6. In response to Amazon notifications, Thimes continually proffered evidence that it had purchased TP Link products from a known distributor and insisted that the claims that products were inauthentic were "false". However, Thimes' proffered evidence did not satisfy Amazon as repeatedly communicated by Amazon to Thimes.

For example, in May 2018, Thimes sought to "appeal" Amazon's efforts to remove an offending product. Ex. 6. Within Amazon's response, the company was clear that it found the listing to require "proof of product authenticity", which – as set forth above – is defined as a product missing "essential" material. Since Amazon found production of an invoice showing purchase of TP Link products to be insufficient to prove authenticity, ***Amazon determined*** Thimes' listing to require suspension, and ultimately termination, of Thimes' selling platform.

### F. TP Link Established Actual Confusion of Consumers Who Bought Product from Unauthorized Sellers

As this matter progressed, discovery was exchanged. In response to Thimes' requests, TP Link produced repeated and extensive evidence of customer service support conversations with purchasers of TP Link products whose replacement and warranty requests were denied because the products were purchased by unauthorized sellers. See, *e.g.*, Ex. 7. Thus, it is undisputed that an unauthorized seller of TP Link products, promoting its product as "new" and failing to disclose the lack of manufacturer's warranty, causes actual customer confusion.

## IV. LEGAL ARGUMENT

### A. This Court Has the Authority to Approve this Motion for Good Faith Settlement Determination Between Amazzia and Thimes

"When the district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason and Dixon Intermodal, Inc. v. Lapmasher Int'l LLC* (2011) 623 F. 3d 1056, 1060. Under the California Code of Civil Procedure, § 877.6(a), a defendant who has settled a claim with a plaintiff is entitled to a hearing on the issue of the good faith of the settlement. If the court finds the settlement to be in good faith, all present and future claims against the settling defendant for a contribution or total or partial equitable indemnity are barred. Code Civ. Proc., § 877.6(c); *Abbott Ford, Inc. v. Sup.Ct. (Ford Motor Co.)* (1987) 43 Cal. 3d 858, 885; see also Code Civ. Proc., § 877(b).

The purpose of a good faith determination is to encourage "an equitable allocation of costs among multiple tortfeasors [while]…furthering the policy in favor of settlements." *Everman v. Supreme Court* (1992) 8 Cal. 4th 466, 468. As observed in *Fischer v. Supreme Court* (1980) 103 Cal. App. 3d 434, "[t]he best way to encourage settlement of cases involving alleged concurrent tortfeasors where one of them wishes to settle with plaintiff and the 'good faith' of that settlement is, or may be, questioned, is to make a judicial determination of the merits of the good faith of the parties involved."

Section 877.6 has two primary goals: (1) to encourage settlements and, equally important, (2) to ensure the equitable sharing of costs among defendants. See *Mattco Forge, Inc. v. Arthur Young & Co.* (1995) Cal. App. 4th 1337  Those two goals are "inextricably linked" in evaluating whether a settlement is in good faith pursuant to § 877.6. "The party asserting the lack of good faith shall have the burden of proof on that issue." (§ 877.6, subd. (d).) As indicated above, an equitable sharing of costs among defendants would be accomplished upon the granting of the instant motion.

### B. California Law Provides a Framework of Elements to Consider When Determining Whether the Settlement is in Good Faith

Amazzia's settlement agreement with Thimes is fair and reasonable to non-settling TP Link, the product manufacturer and contractor of Amazzia services. The settlement is well within the "ballpark" value of the case and Amazzia's potential share of liability in this matter. See *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal. 3d 488, 499. In determining whether a settlement is made in good faith, the court must apply various factors to establish a "reasonable range" for the settling parties' share of liability. To pass muster, these settlements have to meet the *Tech-Bilt* standards above and the additional standards discussed below. *Abbott Ford*, *supra*, 43 Cal. 3d 858, 874.

Those factors include:

(1) a rough approximation of the total recovery;

(2) the settlers' proportionate share of liability;

(3) the amount paid in settlement;

(4) the allocation of settlement proceeds among plaintiffs;

(5) recognition that a settler should pay less in settlement than it would if found liable after trial;

(6) the settler's financial condition and insurance policy limits; and

(7) the existence of collusion, fraud or tortious conduct meant to injure the interests of non-settling defendants. (*Tech-Bilt, Inc., supra*, 38 Cal. 3d at 492-93, 495.)

In considering the settlement amount, the court is not required to simply accept the amount of damages prayed for by Thimes, but must consider the facts of the case to determine what Thimes' probable recovery will be. *Tech-Bilt, supra*, 38 Cal. 3d at 499. Moreover, due consideration must be given to the fact that in settling, it is reasonable for parties to accept less than they might recover at trial in order to avoid the uncertainty and expense of litigation. *Id*. In evaluating the amount of a settlement, so long as the settlement amount represents a reasonable approximation of the settling defendant's proportionate share of liability, the amount will be considered in good faith. (*Tech-Bilt,*

*supra*, 38 Cal. 3d at 499.) "The ultimate determination of good faith is whether the settlement is grossly disproportionate to what a reasonable person at the time of the settlement would estimate the settlers' liability to be." *City of Grand Terrace v. Superior Court* (1987) 192 Cal. App. 3d 1251, 1262.

In this case, Thimes alleges that it will have incurred $5 million in "lost profit" damages based on Amazon's removal of Thimes' offending product listings. Thimes is alleged to have to infringed on TP Link's trademark for repeatedly selling TP Link's products as "new" despite its undisputed non-compliance with Amazon's Conditions Guidelines. The only question to ask regarding Amazzia's actions is: Was Amazzia justified in reporting Thimes' selling of TP Link products whose condition was described as "new" but which did not carry the manufacturer's warranty because Thimes was an unauthorized reseller. The evidence clearly establishes Amazzia was justified in its conduct.

There is a reasonable good-faith basis to believe that – based on Amazon's use of terminology and definitions – a trier of fact will determine that Amazzia did not submit "libelous per se" reports. Furthermore, since Amazzia (i) did not terminate Thimes' virtual store, did not develop the policies upon which Amazon make such decisions, and (ii) was not the product manufacturer developing the parameters of a limited warranty, Amazzia shares in a *de minimis* proportionate share of liability, if any. Amazon encourages the reporting of intellectual property rights violations pursuant to "Anti-Counterfeiting Policy" – a policy exclusively drafted and applied by Amazon. Amazzia simply followed Amazon's suggested protocols.

Furthermore, as set forth in detail below, Thimes is an admitted "gray market" seller. Gray market selling of products that lose a manufacturer's warranty in the process are considered to be trademark infringements. Thus, Thimes' selling of TP Link products as "new" is a "violation of [TP Link's] intellectual property rights" which makes the products "prohibited" under Amazon's *Anti-Counterfeiting* Policy.

When considering the likelihood of Thimes' prevailing on its claims, this court should also consider (i) the fact that Amazzia was reporting in a manner consistent with

Amazon policy, and (ii) the likelihood of TP Link prevailing on its counter claims for trademark infringement and trademark copyrighting.[1]

### C. Amazzia's Potential Liability is Minimal as a Matter of Law

Trademark infringement claims and unfair competition claims under California law are the same in many aspects. "The test for infringement of a federally registered mark under §32 (1), 15 U.S.C. §1114 (1), infringement of a common-law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same." *Patagonia, Inc. v. McHugh*, 2020 WL 4258818, *2 citing *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986).

"Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical: is there a likelihood of confusion?" *Hokto Kinoko Co. v. Concorde Farms Inc.*, 810 F.Supp. 2d 1013, 1032 (9th Cir. 2011) citing *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979). Thus, whether Defendants "interfered" with Thimes' legitimate business practice and, conversely, whether Thimes infringed on TP Link's trademark, will be analyzed through the same lens.

#### 1. TP Link's Likelihood of Prevailing on its Trademark Counter Claims

There is a strong chance that Defendants will be successful in defending itself against Thimes' claims that reports made to Amazon were "false" and intended to *unjustifiably* "interfere" with Thimes' current and prospective business.[2] In fact, there is no reasonable argument that Defendant's efforts made to protect TP Link's mark were "unjustified" whatsoever. At all times, TP Link took steps to protect its mark from consumer confusion which has been demonstrated in communications with its customers that were denied warranty because they purchased products from an unauthorized seller. See *e.g.*, Ex. 7.

---

[1] In addition, there is no insurance coverage available to Amazzia for Thimes' claims and any further contribution toward settlement would have significant negative financial impacts on Amazzia as established by its Amazzia's profit and loss statement submitted for consideration to this Court. Ex. 5; see also Amazzia's Motion to Seal. Should this matter proceed to trial and should Thimes prevail, the likelihood of collecting on any judgment from Amazzia is extraordinarily low.

[2] For an interference claim to be actionable, the alleged interference must be "unjustified and/or without privilege." *Lowell v. Mothers Cake & Cookie Co.* (1978) 79 Cal. App. 3d 13, 17-18.

Generally, the right of a manufacturer to control distribution of its trademarked products does not extend beyond the first sale of the product. "Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). This is commonly referred to as the "first sale doctrine."

That doctrine does not apply, however, when a party sells trademarked goods "that are materially different than those sold by the trademark owner." *SoftMan Prod. Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075, 1092 (C.D. Cal. 2001). In a trademark infringement claim involving "gray goods," the court is necessarily required to evaluate subtle differences between products, "for it is by subtle differences that consumers are most easily confused." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir.1992) ["Nestlé"]. In this case, Thimes admits that it is a "gray market" seller of TP Link products and further admitting it uses TP Link's mark.

The Ninth Circuit has identified eight factors to determine whether there is a likelihood of confusion: (1) the similarity of the mark, (2) the strength of the mark, (3) evidence of actual confusion, (4) the proximity or relatedness of the goods, (5) the degree to which the marketing channels used for the goods converge, (6) the type of goods and the degree of care likely to be exercised by the purchasers, (7) the defendant's intent in selecting the mark, and (8) the likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979).

Thimes acknowledges it has purchased and resold "genuine" TP Link products. To that end, Thimes acknowledges that it uses TP Link's trademark and that the products are proximate and "related". TP Link has established the strength of its mark in prior filings by noting it is the exclusive licensee of the subject trademark in the United States. ECF No. 175, ¶ 17; TP Link's Ex. 2 to its counterclaim.

TP Link has also produced in discovery evidence of actual consumer confusion when seeking to exercise product warranties and replacement request. Ex. 7. All parties agree that TP Link products are "available at substantially all major electronics retailers" and enjoy a

wide array of consumers for its well-known and broadly distributed products. EMF No. 168, ¶ 14. It is clear that Thimes has selected re-selling TP Link products because of its wide popularity within the industry.

### 2. The Unavailability of a Warranty Rises to the Level of "Material Difference"

The core element of trademark infringement is a likelihood of confusion to the consumer. Meaning, "whether the similarity of the marks is likely to confuse customers about the source of the products." *Hokto Kinoko Co, supra*, 810 F.Supp. 2d at 1023 (9th Cir. 2011) citing *E. & J. Gallo Winery v. Gallo Cattle Co.* (9th Cir. 1992). In the "gray market", the likelihood of confusion relates to the existence of "material differences" between the allegedly infringing good and the manufacturer's product. *Hokto Kinoko, supra*, 810 F.Supp. 2d at 1024 citing *Grupo Gamesa S.A. De C.V. v. Dulceria El Molino, Inc.*, 39 U.S.P.Q.2d 1531, 1533 (C.D. Cal. 1996); *Am. Circuit Breaker Corp. v. Or. Breakers Inc.*, 406 F.3d 577, 584 (9th Cir. 2005); *Summit Tech. v. High–Line Med. Instruments Co.*, 922 F.Supp. 299, 308 (C.D.Cal. 1996); *PepsiCo, Inc. v. Reyes*, 70 F.Supp. 2d 1057, 1059 (C.D.Cal.1999)

As the court noted in *PepsiCo*, "[t]he threshold of materiality 'is always quite low.'" *Id*. at 1059 citing *Nestlé, supra*, 982 F.2d at 641. "[T]he existence of **any difference** between registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Trade Mark Act claim." *Nestlé, supra,* 982 F.2d at 641 [emphasis added].

This Court has found that "[m]aterial differences can relate to a product's quality control standards, packaging, and price." *Hokto Kinoko Co., supra,* 810 F.Supp. 2d at 1025 citing *Nestlé, supra,* 982 F.2d at 641. In *Hokto Kinoko Co.*, this Court was required to determine whether mushrooms grown by a plaintiff Japanese company were materially different from US produced mushrooms package with its mark. Ultimately, this Court found

that there were "material differences" between the products, including "warranty and customer support". *Id*. at 1026.

In fact, the lack of a warranty on a product due to the nature of resale has been found to constitute a "material difference" in multiple matters. *Harman Int'l Indus., Inc v. Pro Sound Gear, Inc.*, No. 2:17-CV-06650-ODW-FFMx, 2018 WL 1989518, at *4 (C.D. Cal. Apr. 24, 2018); *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-CV-2884-MMA (WMC), 2013 WL 12074966, at *3 (S.D. Cal. Oct. 3, 2013).

*Beltronics USA, Inc. v. Midwest Inventory Dist., LLC*, 562 F.3d 1067, 1073-1074 (10th Cir. 2009) is also instructive. In connection with a preliminary injunction, the court was asked to review a trial court's determination that Beltronics had a substantial likelihood of prevailing on the merits of the trademark infringement claim. *Id*. at 1070. After reviewing many of the above-stated cases, the *Beltronics* court held as follows:

> Similarly, the First Circuit has observed that "the appropriate test [for materiality was bracket should not be strictly limited to physical differences," but should include other differences such as "warranty protection or service commitments [that] may well render products non-identical in the relevant Lanham Trade-Mark Act sense." [Citation omitted] We are aware of no federal circuit court that has held or observed otherwise when considering the specific question of whether material differences may include warranties and service commitments. Accordingly, we conclude that the district court did not commit an error of law in concluding that material differences may include warranties and services associated with Beltronic's radar detectors. *Beltronics*, supra, 562 F.3d at 1073 citing *Nestlé, supra,* 982 F.2d at 641.[3]

---

[3] Beltronics has been relied upon repeatedly in the Central District. See, *Herbalife International of America, Inc. v. Healthy1 Inc.*, 2019 WL 7169795, *4; *Patagonia, Inc. v. McHugh*, 2020 WL 4258818, *3; *RolexWatch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444, *11; *Harman Int'l Ind., Inc. v. Pro Sound Gear, Inc*., 2018 WL 1989518, *3; *Hem and Thread, Inc. et al. v. Wholesalefashionsquare.com*, 2021 WL 3868779, *3; *Michael Andrew Robinson et al. v. Best Price Distributors, LLC et al.*, 2022 WL 3013182, *2.

As a matter of law, Thimes' unauthorized sale of TP Link products as "new", which did not convey the original manufacturer's warranty was a violation of Amazon's Condition Guidelines, Amazon's Anti-Counterfeiting Policy, and case law regarding materiality. There is no evidence of a collusive effort to make "false" allegations. At all times herein, Amazzia simply reported potential violations to Amazon – using Amazon's guidelines, policies and terms – to prompt further investigation. Any decision to suspend or terminate Thimes' Amazon account was made exclusively by Amazon after its own communications with Thimes. Since Amazzia was justified in reporting Thimes pursuant to Amazon terms, definitions, and policies, prevailing on any claims alleged is unlikely and a $40,000 settlement between Thimes and Amazzia is reasonably within the ballpark of its liability.

## V.    CONCLUSION

Thimes and Amazzia reached a settlement of $40,000 after years of discovery, law and motion practice, appellate practice, and mediation. There is a significant chance that Thimes' claims will not be supported by a finding of fact by the jury of libelous conduct. Rather, there is significant evidence to establish that Amazzia's reporting to Amazon was in strict compliance with their policies, guidelines, terms, and definitions. It is also undisputed that only Amazon decides whether to suspend or terminate a seller's account for repeatedly selling "inauthentic" products. Finally, given the policy of encouraging settlements and understanding that a settling party "pays less" and that all parties "buy their peace", the settlement between Thimes and Amazzia should be determined to have been reached in good faith and to constitute a settlement in good faith.

DATED: August 19, 2022

**WEINBERG GONSER FROST LLP**

By:   */s/ Christopher Frost*
Christopher Frost
Ashley Morris

Attorneys for Defendant,
AUCTION BROTHERS, INC. dba AMAZZIA

# CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2022, I caused a true and correct copy of the foregoing **DEFENDANT AUCTION BROTHERS, INC. dba AMAZZIA'S NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §877.6** to be served via electronic mail on the following:

| | |
|---|---|
| Caleb H. Liang<br>Heather F. Auyang<br>Joedat H. Tuffaha<br>Patice A. Gore<br>Prashanth Chennakesavan<br>**LTL ATTORNEYS**<br>300 South Grand Ave, 14th Fl.<br>Los Angeles, CA 90071<br>caleb.liang@ltlattorneys.com<br>heather.auyang@ltlattorneys.com<br>joe.tuffaha@ltlattorneys.com<br>patice.gore@ltlattorneys.com<br>prashanth.chennakesavan@ltlattorneys.com | Randolph Gaw<br>Mark Poe<br>Victor Meng<br>**GAW \| POE LLP**<br>4 Embarcadero Center, Suite 1400<br>San Francisco, CA 9411<br>rgaw@gawpoe.com<br>mpoe@gawpoe.com<br>vmeng@gawpoe.com |
| | Mark Schlachet<br>**LAW OFFICE OF MARK SCHLACHET**<br>43 West 43rd Street, Suite 220<br>New York, NY 10036<br>markschlachet@me.com |

        By:  */s/ Jenni Bain*
              Jenni Bain
              Paralegal