LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.,<br><br>Plaintiff,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA,<br><br>Defendants. | CASE NO.: 2:19-cv-10374-SB-E<br><br>**DEFENDANT TP-LINK USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO AUCTION BROTHERS, INC.'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>[*Declaration of Heather Auyang Filed Concurrently*]<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br><br>Date:      Sept. 23, 2022<br>Time:      8:30 a.m.<br>Courtroom: 6C |

| | |
|---|---|
| Complaint Filed: | May 29, 2019 |
| Amended 5th Amended Complaint Filed: | May 27, 2022 |
| Trial Date: | Jan. 9, 2023 |

TP-LINK USA CORPORATION,

Counterclaimant,

v.

THIMES SOLUTIONS INC.,

Counter-Defendant.

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. AMAZZIA HAS NOT ESTABLISHED A *PRIMA FACIE* CASE THAT THE SETTLEMENT WAS IN GOOD FAITH UNDER THE *TECH-BILT* FACTORS ................................................................................................................ 2

    A. Amazzia's $40,000 Settlement Amount Does Not Fairly Approximate Its Proportionate Liability for Thimes's Potential Total Recovery. ............. 3

    B. Recognition that Amazzia Should Pay Less than if Found Liable After Trial Weighs Heavily Against Good Faith. .................................................. 7

    C. Amazzia Has Not Produced Competent Evidence of Its Claimed Dire Financial Condition. ...................................................................................... 7

    D. There is Evidence of Collusion, Fraud, or Tortious Conduct Aimed to Injure TP-Link and the Court should Require Discovery from Thimes and Amazzia. .................................................................................................. 9

III. AMAZZIA FAILED TO COMPLY WITH L.R. 7-3 ....................................... 12

IV. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Brashear v. Magnet Media, Inc.*, No. 17-06026-AB (AFMx),
 2018 WL 6242169 (C.D. Cal. Sept. 19, 2018)..................................................2, 3

*City of Colton v. American Promotional Events, Inc.*, No. CV 09-01864-PSG (SSx),
 2012 WL 13013154 (C.D. Cal. Sept. 7, 2012)......................................................12

*J. Allen Radford Co. v. Sup. Ct. (La Mirada Partners)*,
 216 Cal.App.3d 1418 (1989)................................................................................11

*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*,
 38 Cal. 3d 488 (1985).................................................................................2, 7, 9

*Toyota Motor Sales U.S.A., Inc. v. Sup. Ct.*,
 220 Cal. App. 3d 864 (1990).................................................................................3

**Statutes**

California Code of Civil Procedure § 877 .....................................................................2

California Code of Civil Procedure § 877.6 ..................................................................2

Defendant TP-Link USA Corporation ("TP-Link") respectfully submits its Opposition to Auction Brothers, Inc. d/b/a Amazzia's ("Amazzia") Motion for Determination of Good Faith Settlement.

## I. INTRODUCTION

Amazzia's 18-page Motion—which spends less than two-pages on a cursory analysis of the *Tech-Bilt* factors—fails to put forth a *prima facie* case that its $40,000 settlement with Thimes was made in good faith and is at best dubious. The purpose of the equitable good faith determination is to protect the interests of the non-settling defendant, here TP-Link, and to determine whether the settlement is equitable to immunize Amazzia against TP-Link's claims for indemnification and contribution. Amazzia's settlement is far "out of the ballpark" in relation to the *Tech-Bilt* factors and inconsistent with the equitable objectives of Cal. Code Civ. Proc. § 877.6.

Here, the *Tech-Bilt* proportionality and collusion factors weigh decisively against a finding of good faith. In short, Amazzia argues its $40,000 settlement is fair and reasonable based on assigning zero value to Thimes's case and characterizing its role as "*de minimis*" (in sharp contrast to Thimes's allegations). On the other hand, Thimes "anticipates" it has "provable damages of at least $5,000,000" (to which Thimes alleges Amazzia played a central role), such that a $40,000 settlement would constitute less than 1% of total potential liability. Either calculation does not support a finding of good faith.

Amazzia has also failed to show the settlement was the product of arms-length negotiations. TP-Link's counsel and Amazzia's former counsel were working cooperatively, until Amazzia abruptly replaced its counsel and went radio silent. It is now apparent what occurred. TP-Link was excluded from any settlement discussions between Thimes and Amazzia leading to this $40,000 settlement. TP-Link only learned of this settlement when Amazzia notified the Court on August 2, 2022. *See* ECF No. 200-3. Notably absent from Amazzia's Motion is any substantive details about these

negotiations. The Court should require Thimes and Amazzia to produce all documents and communications related to its settlement negotiations in considering Amazzia's Motion, including responding to discovery served by TP-Link on August 3, 2022.

The other applicable *Tech-Bilt* factors likewise do nothing to support Amazzia's request for the Court to make a determination of good faith in its favor. Respectfully, the Court should deny Amazzia's Motion.

## II. AMAZZIA HAS NOT ESTABLISHED A *PRIMA FACIE* CASE THAT THE SETTLEMENT WAS IN GOOD FAITH UNDER THE *TECH-BILT* FACTORS

Amazzia's failure to provide sufficient evidence and proper analysis of the *Tech-Bilt* factors warrants denial of its Motion. In deciding whether to approve Amazzia's settlement agreement and enter a bar order, the Court must determine whether the settlement has been reached in good faith within the meaning of California Code of Civil Procedure §§ 877 and 877.6, applying the factors in *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499-500 (1985). The relevant *Tech-Bilt* factors include:

(1) a rough approximation of plaintiff's potential recovery and the settler's proportionate liability;
(2) the amount paid in settlement;
(3) the allocation of the settlement proceeds among plaintiffs;[1]
(4) a recognition that a settler should pay less in settlement than if found liable after trial;
(5) the financial conditions and insurance policy limits of settling defendants; and
(6) any evidence of collusion, fraud, or tortious conduct between the settling parties aimed to injure the interests of nonsettling defendants.

*Brashear v. Magnet Media, Inc.*, No. 17-06026-AB (AFMx), 2018 WL 6242169, at *2 (C.D. Cal. Sept. 19, 2018) (enumerating *Tech-Bilt* factors).

---

[1] This factor is not at issue because Thimes is the only plaintiff in this action.

### A. Amazzia's $40,000 Settlement Amount Does Not Fairly Approximate Its Proportionate Liability for Thimes's Potential Total Recovery.

"The settling party's proportionate liability is one of the most important factors going to whether the settlement is in good faith." *Brashear*, 2018 WL 6242169 at *3. If "there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion." *Toyota Motor Sales U.S.A., Inc. v. Sup. Ct.*, 220 Cal. App. 3d 864, 871 (1990). Consequently, while the party opposing the settlement has the burden of proof, that burden does not arise unless and until the party seeking a good faith determination of the settlement has adequately shown to the court the factual basis for concluding that its settlement is in the "ballpark" of reasonableness.

In analyzing the first and second *Tech-Bilt* factors together to evaluate whether the amount paid in settlement roughly approximates Amazzia's proportionate liability of Thimes's (potential) total recovery, the answer here is that it does not. This analysis requires consideration of two issues—Amazzia's potential liability to Thimes and Amazzia's culpability vis-à-vis its alleged joint tortfeasor TP-Link. *See Brashear*, 2018 WL 6242169 at *3. To adequately assess Amazzia's proportionate liability, the Court must know the total liability arising from Thimes's claims and consider Amazzia and TP-Link's relative culpability for it. *Id*. Amazzia fails to adequately address any aspect of proportionality.

In terms of Thimes's (potential) total recovery, Amazzia argues that while "Thimes alleges it will have incurred $5 million in 'lost profit' damages based on Amazon's removal of Thimes' offending product listings" (ECF No. 208, Page ID #:3240: 5-6), on the other hand, Thimes's case has no merit because "[t]here is a significant chance that Thimes' claims will not be supported by a finding of fact by the

jury of libelous conduct" (*id.*, Page ID #:3245:14-15)) and TP-Link will prevail on its counterclaims (*see id.*, Page ID #:3241:3-3245:11)).

Accordingly, Amazzia's apparent argument is that its $40,000 settlement is "fair and reasonable to non-settling TP-Link" based on assigning no value to Thimes's case (which although TP-Link agrees, this has yet to be determined). As discussed below, Thimes's allegations supporting its remaining claims for trade libel and tortious interference with an existing at-will contract and prospective business relationships apply equally to Amazzia and TP-Link. Thus following Amazzia's reasoning, the Court should likewise find that TP-Link's (as the asserted joint tortfeasor) potential liability to Thimes is zero (or a maximum of $40,000).

Otherwise, based on what Thimes "anticipates" as "provable damages of at least $5,000,000" (Declaration of Heather Auyang (Auyang Decl.), Ex. A at 3 (Thimes's Rule 26 Initial Disclosures),[2] Amazzia contends its responsibility of less than 1% of the total potential liability constitutes a good faith settlement. This is far from fair and reasonable to TP-Link in view of Amazzia's alleged central role in this case.

Amazzia argues its proportionate share of liability to TP-Link is "*de minimis*" because "it was not the product manufacturer developing the parameters of a limited warranty" (ECF No. 208, Page ID #:3240:15-18) and TP-Link was the "contractor of Amazzia services" (*id.*, Page ID #:3239:3-4). This is a strawman argument. Amazzia's critical assumption ignores Thimes's allegations of its central role in causing Thimes's harm, which based on such allegations expose Amazzia to at least 50% of total damages.

Thimes was an unauthorized reseller of TP-Link products on Amazon. ECF No. 178 (amended Fifth Amended Complaint ("5AC")), ¶¶ 6, 36. Thimes characterizes

---

[2] Thimes's Damages Expert opines $6.1 million in lost profits with prejudgment interest of $1.1 million, for total damages amount of $7.2 million. Auyang Decl., Ex. B, ¶ 25 (Expert Report of Alan Goedde).

Amazzia as "the Amazon expert" who "planned this conspiracy with expressed knowledge and intent" to remove unauthorized resellers. *Id.*, ¶ 34. The 5AC alleges that "TP-Link retained Amazzia, to monitor specific TP-Link products on the Amazon marketplace and do a 'third-party seller clean up' of those selling TP-Link products outside TP-Link's authorized distribution channels." *Id.*, ¶ 19. Thimes cites Amazzia's marketing materials describing Amazzia's business model as a "dedicated partner":

> As your *dedicated partner*, *we keep your brand safe from unauthorized agents*, *ensure Amazon compliant distribution* and amazing growth through price protection, optimization and targeted marketing.
>
> . . . .
>
> **Removing Un-Authorized Sellers**
> *Effective and proven strategies* to report and remove Un-Authorized Resellers from your listings.

*Id.*, ¶ 20 (italics added, bold in original); *see also id.*, ¶¶ 21-22 (describing how Amazzia "ensure[s] protection of [its] clients' brands"). Thimes further elaborates on Amazzia's role in this case (far from *de minimis*):

> Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) *Amazzia* committed to an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) *Amazzia* promised to "report noncompliant sellers to Amazon until they are removed by Amazon" (iv) *Amazzia's* commitment was to rid the Marketplace of "resellers" as follows: "50% of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) *Amazzia* promised TP-Link "full access to our team for any questions regarding the cleanup project."

*Id.*, ¶ 24 (emphasis added). Thimes further alleges with respect to Amazzia that it directly caused harm to Thimes:

> Unable to eliminate [Thimes] sales as "unauthorized" or "discounted"—all perfectly lawful--*Amazzia* sent fraudulent IP complaints to Amazon charging Plaintiff with counterfeiting, at all times acting in concert with and on behalf of TP-Link, and

> with the latter's actual authority and instructions.
>
> *Amazzia directly caused* Plaintiff's May suspension and permanent expulsion from the Amazon Marketplace in coordination with the following scheme [].

*Id.*, ¶¶ 25-26 (emphasis added). Further the 5AC alleges that "TP-Link/Amazzia used four (4) different identities in complaining to Amazon, *indicating a combination and conspiracy*, to wit: []." *Id.*, ¶ 28 (emphasis added). And that "TP-Link/TPN/Amazzia acted maliciously and intentionally in reporting to Amazon that [Thimes] was listing counterfeit products and, in fact, about two dozen reports were issued in conscious disregard of the truth." *Id.*, ¶ 31.

Thimes seeks punitive damages from Amazzia:

> Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing, is (along with TP-Link) subject to punitive damages herein.

*Id.*, ¶ 40; *see also id.*, ¶¶ 50-55 (Thimes's allegations applicable to co-defendants: "But for Defendants' IP complaints to Amazon [Thimes] would not have been expelled from the Amazon Marketplace"); ¶ 64 (allegations concerning Amazzia and TP-Link's "acts" resulted in "damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000"); ¶ 67 (allegations concerning "defendants' scheme").

Thimes's prayer for relief is "against Defendants, jointly and severally" for "[c]ompensatory damages of at least $5,000,000," "[t]reble damages of $15,000,000," and "[p]unitive damages of not less than $5,000,000," as well as attorneys' fees and costs. *Id.*, Prayer for Relief.

In sum, Thimes has alleged that Amazzia's role was far from *de minimis* as the "Amazon expert." Accordingly, a $40,000 settlement does not constitute good faith,

especially in view of Thimes's eight-figure monetary claim. Rather, Amazzia should be liable for at least 50% of any total damages.

### B. Recognition that Amazzia Should Pay Less than if Found Liable After Trial Weighs Heavily Against Good Faith.

The next relevant *Tech-Bilt* factor acknowledges that "a settlor should pay less in settlement than [it] would if [it] were found liable after a trial." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. Amazzia devotes only one conclusory sentence to this factor simply citing *Tech-Bilt*: "Moreover, due consideration must be given to the fact that in settling, it is reasonable for parties to accept less than they might recover at trial in order to avoid the uncertainty and expense of litigation." ECF No. 208, Page ID #:3239:24-26 (citing *Tech-Bilt*). This is insufficient.

As discussed in Section II.A., *supra*, this factor weighs heavily against a finding of good faith given that Amazzia's total exposure is at least 50%, yet it is has assigned itself less than 1% of the total (potential) liability. A payment of less than 1% of total exposure is outside the realm of a reasonable settlement range.

### C. Amazzia Has Not Produced Competent Evidence of Its Claimed Dire Financial Condition.

As for the fifth *Tech-Bilt* factor, Thimes drops a footnote about its financial condition and concludes that "any further contribution toward settlement would have significant negative financial impacts on Amazzia as established by its Amazzia's profit and loss statement submitted for consideration to this Court. [] Should this matter proceed to trial and should Thimes prevail, the likelihood of collecting on any judgment from Amazzia is extraordinarily low." ECF No. 208, Page ID#:3241, n.1.[3] Amazzia's "evidence" to support this statement is the submission of its Profit & Loss statement

---

[3] Amazzia represents "there is no insurance coverage available … for Thimes's claims" (ECF No. 208, Page ID #:3241, n.1), but this should not detract from its questionable financial condition.

from January 1, 2020 through June 30, 2022. ECF No. 208-1 (Declaration of Amazzia's CEO Mikhail Fikhman, Exhibit A, filed under seal (*see* ECF No. 213)).

Amazzia's conclusory statements and "evidence" do not pass muster and should be viewed with skepticism. Amazzia's bare Profit & Loss statement provides no underlying details as to what constitutes each category of supposed expenses or any corroboration. A party feigning bankruptcy should not be rewarded.

Moreover, Amazzia's P&L statement lists Total "Compensation & Outside Labor" as constituting **91%** of its gross profit, *i.e.*, the majority of expenses are payroll, resulting in a negative Net Income. As is obvious, "Compensation & Outside Labor" can easily be manipulated, *e.g.*, Amazzia runs at a supposed loss year after year, but its C-suite and "Outside Labor" are over-compensated. Indeed, Amazzia appears to be a family run operation that fills the C-suite—Mikhail Fikhman (CEO), George Fikhman (Secretary), and William Fikhman (Chief Financial Officer). Auyang Decl., Ex. C (8/9/2022 CA SOS Statement of Information). The sole director of Auction Brothers is Mikhail Fikhman. *Id*. Otherwise, running Amazzia year after year with what appears to be not insignificant losses makes little financial sense. Regardless, Mikhail Fikhman's Declaration provides no further details as to Amazzia's financial condition aside from its bare Profit & Loss statement.

Not surprisingly, Amazzia did not submit any balance sheets showing its assets, cash in the bank, or attest that it is insolvent because it is not true, and explains why Amazzia only devoted a footnote to this *Tech-Bilt* factor. Amazzia should not be permitted to submit any additional "evidence" to backtrack.

Leaving TP-Link holding the bag because it potentially has deeper pockets "does nothing to show that [TP-Link] would not be prejudiced by a good faith determination extinguishing its claims and benefiting the settling defendant [Amazzia]." *Brashear*, 2018 WL 6242169 at *4.

### D. There is Evidence of Collusion, Fraud, or Tortious Conduct Aimed to Injure TP-Link and the Court should Require Discovery from Thimes and Amazzia.

The sixth *Tech-Bilt* factor determines whether there is any "collusion, fraud, or tortious conduct aimed to injure the interests of any non-settling defendant." *Tech-Bilt*, 38 Cal. 3d at 499. There is a strong indication that this factor exists here—notably absent are any details about the parties' discussions leading to the settlement. Amazzia simply makes general statements that the parties talked and settled. *See* ECF No. 208, Page ID#:3233:17-22; *see also* ECF No. 208-1, Frost Decl., ¶ 2. Amazzia makes no mention that the settlement was the product of arms-length negotiation—because it cannot.

Amazzia fails to elucidate how the $40,000 figure was reached, or why essentially less than 1% of the total (potential) liability is appropriate in light of Amazzia's alleged central and extensive role in causing Thimes's harm. If Amazzia was justified in its accused actions, so too was TP-Link. Apparently, Thimes also believes its case has no merit and zero value in agreeing to a $40,000 settlement, while seeking eight-figures in damages, especially given Mr. Eisenberg's (sole proprietor of Thimes) staunch position that he is "suing for millions and won't settle for cheap," "I'm not looking for a small settlement either," and "I feel I have really strong case." Auyang Decl., Ex. D.

TP-Link was excluded from any settlement discussions between Thimes and Amazzia leading to this $40,000 settlement. Auyang Decl., ¶ 6. TP-Link had no knowledge of this settlement agreement and related discussions until August 2, 2022, when Amazzia filed a Notice to Advise the Court of Conditional Settlement (ECF No. 200-3). *Id*. This is consistent given how Amazzia transitioned its counsel. TP-Link's counsel and Amazzia's former counsel, Burkhalter Kessler Goodman and George LLP ("BKCG"), were working cooperatively. Auyang Decl., ¶ 7. Then abruptly on July 21,

2022, BKCG sent an email stating: "Amazzia just informed us that our office will no longer represent it on this matter. New counsel will be retained and substituted shortly." Auyang Decl., Ex. E.

Amazzia's new counsel, Weinberg Gonser Frost LLP ("WGF"), represents that it was "retained to represent Amazzia at or around the middle of July 2022. Upon substitution, my office received the complete litigation file from former counsel including all pleadings, discovery requests and responses, and produced documents from all parties." ECF No. 208-1, Frost Decl., ¶ 3. WGF filed a request for substitution on July 25, 2022. *See* ECF No. 196.[4] On August 1, 2022, Amazzia and Thimes signed their settlement agreement. *See* ECF No. 208-1. On August 2, 2022, Amazzia filed a Notice to Advise of Conditional Settlement. *See* ECF No. 200-3.

The timing of Amazzia's change of counsel shows that the talks between Amazzia and Thimes were far from extensive. In less than two weeks, Amazzia's new counsel reviewed the case file and produced documents, as well as negotiated, drafted, and the parties signed a $40,000 agreement (*see* ECF No. 208-1 Frost Declaration, ¶ 2) for a case with total potential liability in the eight-figure range (and anyhow not less than Thimes's "provable damages of at least $5,000,000" (Auyang Decl., Ex. A)). WGF never mentioned or discussed the settlement terms with TP-Link's counsel. Auyang Decl., ¶ 6.

In view of the questionable circumstances, TP-Link promptly served (on August 3, 2022) narrowly-tailored document requests on both parties seeking the settlement agreement, as well as all documents and communications related to the settlement agreement.

**REQUEST FOR PRODUCTION NO. 1**:
ALL DOCUMENTS and COMMUNICATIONS between THIMES and AMAZZIA concerning settlement.

---

[4] The Court did not grant substitution until August 5, 2022. *See* ECF No. 204.

TP-LINK'S OPPOSITION TO AUCTION BROTHERS, INC.'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

**REQUEST FOR PRODUCTION NO. 2**:
YOUR and THIMES's settlement agreement, including drafts.

Auyang Decl., Exs. F and G.

That same day, TP-Link filed an *ex parte* application to shorten the time for both parties to respond since TP-Link was concerned that it would not have an opportunity to obtain discovery before the deadline to file an opposition or hearing on Amazzia's Motion. *See* ECF No. 202. As it turns out, Amazzia and Thimes's deadline to respond to TP-Link's discovery requests is September 2, 2022, which is the same day this opposition is due. Auyang Decl., ¶¶ 8-9.

While Magistrate Judge Eick denied the *ex parte* application, the Order stated: "This denial is not intended, and shall not be construed, as any limitation on the District Judge's discretion to require the submission of appropriate information before ruling on the anticipated motion for a good faith settlement." ECF No. 203.

On August 3, 2022, TP-Link's counsel spoke with Amazzia's counsel at WGF, Christopher Frost, in order to provide notice of the *ex parte* application. Auyang Decl., ¶ 10. During this conversation, TP-Link's counsel asked Amazzia to stipulate to producing documents in response to TP-Link's discovery requests by August 10, 2022 in lieu of an *ex parte* application. *Id*. Amazzia's counsel refused. *Id*. Amazzia's counsel also responded that he would have no issue producing the settlement agreement because this would be disclosed to the Court, but Amazzia was not open to providing any related documents and communications and he would have to confer with his client. *Id*. Amazzia has not provided any further response. *Id*.

Amazzia's refusal to provide documents and communications related to the settlement agreement, including drafts, is a strong indication of collusion. At best discovery may reveal the reasons for this grossly disproportionate settlement (unless the Court assigns a zero value to Thimes's case) or lack of adequate consideration of the *Tech-Bilt* factors, such as an analysis of comparative fault.

1     Non-settling defendants are entitled to discovery related to settlement in order to meet their statutory burden of proof on the issue of lack of "good faith." *See J. Allen Radford Co. v. Sup. Ct. (La Mirada Partners),* 216 Cal.App.3d 1418, 1423-1424 (1989). Such discovery includes the settlement agreement and any communications. *See City of Colton v. American Promotional Events, Inc.*, No. CV 09-01864-PSG (SSx), 2012 WL 13013154, at * 2 (C.D. Cal. Sept. 7, 2012) (finding "[o]nce these Motions [for good faith determination of settlement] are filed, it is clear that communications or documents concerning settlement negotiations with the [settling party] will become relevant and discoverable" and "the nature of the settlement negotiations is critical in assessing whether the settlement was fair and entered into in good faith.").

    The Court should require Amazzia and Thimes to produce documents in response to TP-Link's discovery requests before ruling on Amazzia's Motion unless TP-Link's opposition alone sets forth sufficient bases to deny Amazzia's Motion.

## III. AMAZZIA FAILED TO COMPLY WITH L.R. 7-3

    As noted by the Court, Amazzia failed to comply with Local Rule 7-3. *See* ECF No. 209. TP-Link and Amazzia did not conduct a L.R. 7-3 conference. Auyang Decl. ¶ 11. This is yet another indication that the settlement was not made in good faith warranting denial of Amazzia's Motion.

## IV. CONCLUSION

    For the foregoing reasons, co-defendant TP-Link respectfully requests that the Court deny Amazzia's Motion for Determination of Good Faith Settlement.

Date:  September 2, 2022

LTL ATTORNEYS LLP

By: */s/ Heather F. Auyang*
Joe H. Tuffaha
Prashanth Chennakesavan

1  
2  Heather F. Auyang  
   Patice A. Gore  
3  
   Counsel for Defendant and  
4  Counterclaimant  
   TP-Link USA Corporation  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28