LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel:  (213) 612-8900
Fax:  (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

(additional counsel listed on following page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | CASE NO.: 2:19-cv-10374-SB-E |
| Plaintiff, | **JOINT BRIEF RE: TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, | Judge: Hon. Stanley Blumenfeld, Jr. |
| Defendants. | Date:      Friday Oct. 7, 2022<br>Time:      8:30 a.m.<br>Courtroom:  6C |
| | Complaint Filed:      May 29, 2019<br>Amended 5th Amended<br>Complaint Filed:      May 27, 2022<br>Trial Date:      Jan. 9, 2023 |

No. 2:19-cv-10374-SB-E

1
2
3
4   TP-LINK USA CORPORATION,
5                   Counterclaimant,
6
7          v.
8   THIMES SOLUTIONS INC.,
9                   Counter-Defendant.
10
11
12          Pursuant to the Court's May 23, 2022 Order re: Motions for Summary Judgment
13   (ECF No. 172), Defendant TP-Link USA Corporation and Plaintiff Thimes Solutions,
14   Inc. hereby submit this Joint Brief regarding TP-Link's Motion for Summary Judgment
15   or Partial Summary Judgment.
16
17
18
19
20
21
22
23
24
25
26
27
28

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

JOINT BRIEF RE: TP-LINK'S MOTION FOR SUMMARY JUDGMENT

1

**TABLE OF CONTENTS**

2   I.   TP-LINK'S INTRODUCTORY STATEMENT ................................................... 1

3   II.  THIMES'S INTRODUCTORY STATEMENT ................................................ 4

4   III. TP-LINK'S STATEMENT OF RELEVANT FACTS ........................................ 7

5
6       A.  Thimes's Violations of Amazon's Policies and Amazon's Decision to
            Expel Thimes .......................................................................................... 7

7
8       B.  Thimes Cannot Identify Specific Customers Who Relied on the At-Issue
            Complaints (Made Only to Amazon) as the Reason for Not Making a
9           Purchase From Thimes ......................................................................... 11

10  IV.  THIMES'S STATEMENT OF ADDITIONAL FACTS ................................... 13

11  V.   LEGAL STANDARD FOR SUMMARY JUDGMENT .................................. 13

12  VI.  ISSUE ONE—THIMES'S COUNT II FOR TRADE LIBEL FAILS
13       BECAUSE IT CANNOT MEET ITS BURDEN TO PROVE SPECIAL
         DAMAGES ................................................................................................. 14
14
15      A.  TP-Link's Legal Argument: Thimes Fails to Identify Any Particular
            Purchaser Who Relied on Any At-Issue Statements Made Only to Amazon
16          in Deciding Not to Purchase Products from Thimes .............................. 14

17      B.  Thimes's Legal Argument: ................................................................... 18

18          1.  Thimes Has Identified the Customers and Transactions It Lost as a
19              Result of TP-Link's False Counterfeiting Complaints. ................. 18

20          2.  TP-Link Fails to Cite Authority that Supports its Contentions. .... 21

21  VII. ISSUE TWO—COUNT II FAILS FOR A SECOND INDEPENDENT
22       REASON THAT NON-ACTIONABLE STATEMENTS OF LEGAL OPINION
23       CANNOT SUPPORT A TRADE LIBEL CLAIM ...................................... 23

24      A.  TP-Link's Legal Argument: Complaints About Intellectual Property
            Violations to Amazon Are Not Statements of Fact, but Rather Constitute
25          Statements of Legal Opinion ................................................................ 23

26      B.  Thimes's Legal Argument: ................................................................... 25

27          1.  TP-Link Improperly Relies Upon Non-Trade Libel Cases. ........... 25
28

JOINT BRIEF RE: TP-LINK'S MOTION FOR SUMMARY JUDGMENT

2.   TP-Link Lacks Evidence of the Contents of Their Complaints...................26

3.   TP-Link's Complaints Can Be "Provably False." .......................................26

VIII. ISSUE THREE—THIMES'S TORTIOUS INTERFERENCE (COUNT I) CLAIMS FAIL AS DERIVATIVES OF ITS TRADE LIBEL CLAIM....................29

A.   TP-Link's Legal Argument: Thimes's Claims for Intentional Interference with an Existing *At-Will* Contract and Prospective Business Relationships Fail Because these Derivative Tort Claims Rely on Count II (Trade Libel) for the Requirement of an Independently Wrongful Act ....................................29

B.   Thimes's Legal Argument: TP-Link's Complaints to Amazon are Independently Wrongful in Multiple Ways. ........................................................32

IX.   ISSUE FOUR—THIMES'S CANNOT SHOW CAUSATION FOR ITS SUPPOSED LOST PROFITS; NOR IS IT ASCERTAINABLE WITH ANY REASONABLE DEGREE OF CERTAINTY ............................................................34

A.   TP-Link's Legal Argument: Thimes's Claim for Lost Profits Fails as it Relies on Layer Upon Layer of Impermissible Speculation ...............................34

B.   Thimes's Legal Argument:  Thimes Has Presented Triable Issues as to Causation and Damages. ........................................................................................39

1.   TP-Link Failed to Meet and Confer Regarding Causation. ..........................39

2.   TP-Link Argues the Wrong Standard for Proximate Causation. ..................39

3.   TP-Link's Complaints Played More than an Infinitesimal Role in Causing Amazon to Expel Thimes................................................................41

4.   Dr. Goedde's Damages Model Is Valid. .......................................................44

5.   Mr. Eisenberg May Opine as to Thimes's Damages. ...................................48

X.   CONCLUSION ....................................................................................................49

A.   TP-Link's Conclusion .......................................................................................49

B.   Thimes's Conclusion ........................................................................................49

JOINT BRIEF RE: TP-LINK'S MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Cas. and Sur. Co., Inc. v. Centennial Ins. Co.*,
 838 F.2d 346 (9th Cir. 1988)...............................................................................19, 25

*AK Futures v. Limitless Trading Co., LLC*,
 No. 21-cv-01154-JVS (ADSx), 2021 WL 5238588 (C.D. Cal. Oct. 6, 2021).........32

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
 No. 18-CV-2133 MWF (MRWx), 2021 WL 1146029 (C.D. Cal. Feb. 8, 2021) ....45

*Am. Circuit Breaker Corp. v. Oregon Breakers Inc.*,
 406 F.3d 577 (9th Cir. 2005)......................................................................................27

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ...................................................................................4, 13, 14

*Automatic Poultry Feeder Co. v. Wedel*,
 213 Cal. App. 2d 509 (1963)......................................................................................35

*Bockrath v. Aldrich Chemical Co., Inc.*,
 21 Cal. 4th 71 (1999)..................................................................................................41

*Bustillos v. W. Covina Corp. Fitness, Inc.*,
 No. 2:21-CV-04433-SB-AFM, 2022 WL 423396 (C.D. Cal. Jan. 3, 2022)......39, 40

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ...............................................................................................14

*ChromaDex, Inc. v. Elysium Health, Inc.*,
 No. 16-02277-CJC (DFMx) (C.D. Cal. Jan. 16, 2020)...................37, 38, 46, 47, 48

*Cisco Systems, Inc. v. Dexon Computer, Inc.*,
 No. 20-cv-04926-CRB, 2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) ...................18

*City of Costa Mesa v. D'Alessio Invs., LLC*,
 214 Cal. App. 4th 358 (2013)....................................................................................19

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
 173 F.3d 725 (9th Cir. 1999).............................................................23, 25, 26, 27

*ComputerXpress, Inc. v. Jackson*,
 93 Cal. App. 4th 993 (2001)................................................................................23, 26

*Core-Vent Corp. v. Nobel Industries Sweden A.B.*,
   163 F.3d 605 (9th Cir. 1998)......................................................................17

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
   479 F.3d 1099 (9th Cir. 2007)....................................................................33

*Daw Industries, Inc. v. Hanger Orthopedic Group, Inc.*,
   556 Fed. Appx. 604 (9th Cir. Feb. 24, 2014) (unpublished)........................21

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020)..............................................................33, 34

*Erlich v. Etner*,
   224 Cal. App. 2d 69 (1964)..............................14, 15, 16, 17, 18, 20, 22

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
   771 F.3d 1119 (9th Cir. 2014).................................................................4, 5

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ..................................................................................38

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
   No. 15-CV-04125 MMM (JEMx),
   2015 WL 12731920 (C.D. Cal. Sept. 21, 2015)........................................33

*Good Gov't Group of Seal Beach, Inc. v. Superior Court*,
   22 Cal. 3d 672 (1978)................................................................................26

*Goodness Films, LLC v. TV One, LLC*,
   No. CV 12-8688-GW (JEMx),
   2014 WL 12594201 (C.D. Cal. Aug. 28, 2004)....................38, 39, 47, 48

*Grancare, LLC v. Thrower by and through Mills*,
   889 F.3d 543 (9th Cir. 2018).................................................................6, 41

*Greenwich S.F., LLC v. Wong*,
   190 Cal. App. 4th 739 (2010).....................................................................35

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021).....................................................................40

*Ixchel Pharma, LLC v. Biogen*, Inc.,
   9 Cal. 5th 1130 (2020)..........................................................................30, 33

JOINT BRIEF RE: TP-LINK'S MOTION FOR SUMMARY JUDGMENT

*Kajeet, Inc. v. Qustodio, LLC*,
  No. CV18-01519-JAK (PLAx),
  2019 WL 13149928 (C.D. Cal. August 22, 2019) ....................................... 16, 17, 22

*Kao v. Snow Monster Inc.*,
  No. CV 17-08934-RSWL-GJS, 2019 WL 13031928 (C.D. Cal. Nov. 1, 2019) ..... 48

*Kids' Universe v. In2Labs*,
  95 Cal. App. 4th 870 (2002) .................................................................................... 35

*Kona Enterprises, Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ............................................................................. 19, 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ........................................................................................... 30

*Luxul Techn. Inc. v. Nectarlux, LLC*,
  78 F. Supp. 3d 1156 (N.D. Cal. 2015) .................................................................... 34

*Muddy Waters, LLC v. Superior Court*,
  62 Cal. App. 5th 905 (2021) .......................................... 5, 14, 17, 18, 19, 21, 22, 25

*NEC Electronics v. CAL Circuit Abco*,
  810 F.2d 1506 (9th Cir. 1987) ................................................................................. 27

*Nixon-Egli Equip. Co. v. John A. Alexander Co.*,
  949 F. Supp. 1435 (C.D. Cal. 1996) ............................................................... 2, 38, 39

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ................................................................................ 28

*Open Source Security, Inc. v. Perens*,
  No. 17-cv-04002-LB, 2017 WL 6539874 (N.D. Cal. Dec. 21, 2017) .................... 31

*Orozco v. WPV San Jose, LLC*,
  36 Cal. App. 5th 375 (2019) ...................................................................................... 7

*Oumere LLC v. Zarpas*,
  No. 8:21-cv-00224-DOC (JDEx), 2021 WL 2894643 (C.D. Cal. June 29, 2021) ..31

*Prostar Wireless Group, LLC v. Domino's Pizza, Inc.*,
  360 F. Supp. 3d 994 (N.D. Cal. 2018) .................................................................... 31

*Rausch v. Blair*,
  No. 15-CV-4212-DSF(AGRX), 2015 WL 13283839 (C.D. Cal. Oct. 1, 2015) ...... 32

*Royal Holdings Technologies Corp. v. IP Video Market Info Inc.,*
  No. 2:20-cv-04093-SB (PLAx),
  2020 WL 8225666 (C.D. Cal. Dec. 18, 2020) ............................................ 14, 15, 22

*Rutherford v. Owens-Illinois, Inc.,*
  16 Cal. 4th 953 (1997) ................................................................................ 41

*S.C. Anderson, Inc. v. Bank of Am.,*
  24 Cal. App. 4th 529 (1994) .......................................................... 35, 38, 45

*San Jose Construction, Inc. v. S.B.C.C., Inc.,*
  155 Cal. App. 4th 1528 (2007) ......................................................................... 32

*Santa Clarita Valley Water Agency v. Whittaker Corp.,*
  No. 2:18-CV-06825-SB-RAO, 2021 WL 2549066 (C.D. Cal. Apr. 5, 2021) ......... 45

*Sargon Enterprises, Inc. v. Univ. of S. California,*
  55 Cal. 4th 747 (2012) ............................................... 7, 37, 39, 40, 45, 46

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,*
  53 F.3d 1073 (9th Cir. 1995) ......................................................................... 27

*Sebastian Intern., Inc. v. Russolillo,*
  No. CV 00–3476-SVW (JWJx), 2005 WL 1323127 (C.D. Cal. Feb. 22, 2005) ..... 35

*Storm Mfg. Group Inc. v. Weather Tec Corp.,*
  No. CV 12–10849-CAS (FFMx),
  2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) ................................................. 18, 23

*Tolan v. Cotton,*
  572 U.S. 650, 651 (2014) ......................................................................... 21

*Tommy Bahama Grp., Inc. v. Sexton,*
  No. C07-06360 EDL, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009),
  *aff'd,* 476 F. App'x 122 (9th Cir. 2012) .................................... 24, 25, 26, 28, 31, 32

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
  809 F.2d 626 (9th Cir. 1987) ......................................................................... 13

*United States v. Kapp,*
  564 F.3d 1103 (9th Cir. 2009) ......................................................................... 13

**Statutes**

18 U.S.C. § 1621 ......................................................................................... 34

JOINT BRIEF RE: TP-LINK'S MOTION FOR SUMMARY JUDGMENT

Cal. Civ. Code. § 45 ........................................................................32

Cal. Fin. Code § 17200 ....................................................................23

Cal. Penal Code § 118 ......................................................................34

**Other Authorities**

Advisory Committee Notes—2000 ..................................................48

CACI 430 ..........................................................................................40

CACI 3903N ...............................................................................35, 40

CACI VF-1721 ..................................................................................21

**Rules**

Fed. R. Civ. P. 36 .............................................................................18

Fed. R. Civ. P. 56 .................................................................13, 29, 42

Fed. R. Evid. 701 .............................................................................48

Fed. R. Evid. 702 .............................................................................35

# I.    TP-LINK'S INTRODUCTORY STATEMENT

Plaintiff Thimes Solutions, Inc. ("Thimes") has three remaining claims in this action: trade libel, intentional interference with an existing *at-will* contract, and intentional interference with prospective business relationships. The central question for the Court is whether Thimes has a right to have a jury decide whether any supposed complaints about its violations of TP-Link USA Corporation's ("TP-Link") intellectual property rights made ***only to Amazon*** constitute trade libel. The answer is no. As such, Thimes's other asserted derivative claims for tortious inference must also fall as Thimes cannot meet its burden to show the requisite independently wrongful act.

Although Noticed Issue Nos. 1-3 are sufficient grounds to dispose of this case, another independent ground exists—while Thimes contends it lost profits because it was expelled from Amazon, its proposed damages are entirely uncertain and speculative, warranting disposal of this case in its entirety.

**Noticed Issue No. 1 (Trade Libel)**:

TP-Link is entitled to judgment as a matter of law on Thimes's Count II for trade libel because there is no material dispute that Thimes cannot meet its burden to prove special damages. Specifically, Thimes fails to identify any specific customers who assigned the alleged at-issue complaints *made only to Amazon* as the reason for *not* making a purchase. Naming purported customers with conclusory statements that those customers would have continued to purchase products, but cannot because Thimes no longer has an Amazon account, fails to meet the requirement that the complaints made directly to Amazon had a material and substantial part in influencing these customers not to purchase products from Thimes.

**Noticed Issue No. 2 (Trade Libel):**

As a separate and independent ground for finding Thimes's Count II for trade libel fails, TP-Link is also entitled to judgment as a matter of law because any at-issue statements about Thimes's violations of TP-Link's intellectual property rights are not

1  statements of fact, but rather non-actionable statements of legal opinion about an issue

2  not yet decided by a court. Statements of opinion cannot constitute trade libel.

3  **Noticed Issue No. 3 (Tortious Interference):**

4  TP-Link is entitled to judgment as a matter of law on Thimes's Count I for

5  intentional interference with an existing *at-will* contract and prospective business

6  relationships because these derivative tort claims rely on Count II (trade libel) for the

7  requirement of an independently wrongful act, and therefore likewise fail.

8  **Noticed Issue No. 4 (Lost Profits)**:

9  Thimes's claim for lost profits of either $2.17 million or $6.12 million dollars is

10  entirely speculative and lacks evidence sufficient to show, with reasonable certainty,

11  both *causation* and *extent* of the claimed lost profits. Thimes's case should be

12  dismissed; otherwise, it "would invite the jury to engage in wholesale speculation as to

13  the amount of damages." *Nixon-Egli Equip. Co. v. John A. Alexander Co.*, 949 F. Supp.

14  1435, 1446 (C.D. Cal. 1996).

15  Thimes's claims find no support in the undisputed record. This case is about Mr.

16  Eisenberg's (the sole proprietor of Thimes) attempt to profiteer from a failed business

17  of his own doing, posting on social media (Twitter) in May 2020 that he has a $29

18  million dollar lawsuit against TP-Link.

19

20

21

22  

23

24

25

26

27

28

To orchestrate this ruse, from the beginning Thimes unwaveringly represented to the Court that it had a spotless record with Amazon until the "counterfeit" complaints about TP-Link products: "As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints to Amazon alleging [Thimes's] sale of counterfeit products were the work of TP-Link and Amazzia." ECF No. 78 (Second Amended Complaint), ¶ 59; *see also* ECF No. 178 (amended Fifth Amended Complaint), ¶ 58 (same). This is simply not true.

Rather through discovery, TP-Link uncovered substantial evidence of unabashed misconduct by Thimes on the Amazon Marketplace entirely unrelated to TP-Link. Thimes's business operations were troubled from the beginning—in 2017, Thimes received violation notices from Amazon (via email), including for selling third-party counterfeit products, and in 2018 received around 20 other counterfeit complaints.[1] Thimes also faced a plethora of violations and account issues both before and after the date Thimes contends the last complaint concerning a TP-Link product was made on June 21, 2018. ECF No. 178, ¶ 27. Egregiously, Thimes was caught data mining Amazon's Application Program Interface (potentially impacting the accuracy of the platform) in violation of Amazon's policies and suspended on June 28, 2018.

---

[1] While Thimes started selling on the Amazon platform in 2015 and incorporated in 2016, it produced no emails from 2015 and 2016, and only four emails from 2017. This and many other issues with Thimes's deficient discovery responses were the subject of TP-Link's motion to compel. *See* ECF Nos. 201 and 206.

On August 16, Magistrate Judge Eick issued an Order compelling Thimes to, among other issues, produce any "concerns, claims or complaints" and communications with Amazon by August 31, 2022. *See* ECF No. 207. Judge Eick's Order noted that "the discovery thus far provided by [Thimes] in response to many of the subject discovery requests appears to have been seriously insufficient, as well as untimely." *Id.* at 1.

1  Amazon's June 28, 2018 suspension notice mentioned other prior violations leading to
2  the suspension and required a plan from Thimes for reinstatement.[2]

3      Other violations (all unrelated to TP-Link) included numerous complaints made
4  by third parties for violations of their intellectual property rights (trademark and
5  patent), repeated suspensions and expulsions from the Amazon platform (including for
6  account and particular product listings due to customer complaints or third-party
7  complaints), and negative customer feedback (for issues such as defective and
8  inauthentic products). As these adverse issues accumulated, Amazon again expelled
9  Thimes from the Amazon Marketplace on August 3, 2018 (due to authenticity and
10 counterfeit issues). Then on August 27, 2018, Amazon permanently expelled Thimes
11 without explanation.

12      There is no evidence Thimes can point to that it was any TP-Link conduct (as
13 opposed to the scores of other blatant and repetitive violations) that caused any harm.
14 Nor can it point to any credible evidence demonstrating quantum of harm. Grant of
15 summary judgment (or partial summary judgment) is warranted as to Counts I and II
16 of the amended Fifth Amended Complaint.

17 **II.   THIMES'S INTRODUCTORY STATEMENT**

18      The "central question" on this motion for summary judgment is whether TP-
19 Link has established the absence of a "genuine dispute as to any material fact" to the
20 four issues noticed. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119,
21 1125 (9th Cir. 2014). In answering that question, the Court "views the evidence in the
22 light most favorable to [Thimes] to determine if there are any genuine issues of material
23 fact and whether [TP-Link] is entitled to judgment as a matter of law." *Id*. In addition,
24 the Court "draws all justifiable inferences in favor of [Thimes]." *Anderson v. Liberty*
25 *Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is improper "where

26

27 ---
[2] Thimes has withheld producing anything related to these prior violations and related
28 communications with Amazon, except one response email.

1   divergent ultimate inferences may reasonably be drawn from the undisputed facts."
2   *Fresno Motors, LLC*, 771 F.3d at 1125.

3        Here, the evidence establishes genuine issues of material fact as to each issue.

4        **Issue No. 1**: TP-Link argues that "Thimes fails to identify any specific customers
5   who assigned the alleged at-issue complaints *made only to Amazon* as the reason for
6   *not* making a purchase." *Supra* at 1 (emphasis original).  This a straw-man argument.

7        California law requires only that Thimes "identify the particular purchasers who
8   have refrained from dealing with [it], and specify the transactions of which [it] claims
9   to have been deprived." *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905,
10  925 (2021).  Thimes did so.  First, it identified Amazon.  Discovery has revealed that
11  TP-Link instructed Amazzia to submit to Amazon 73 false counterfeiting complaints
12  against Thimes, which resulted in Amazon serially suspending, and ultimately
13  terminating, Thimes's account on the Amazon Marketplace.  The evidence thus shows
14  that TP-Link's complaints caused Amazon to "refrain[] from dealing with [Thimes]."

15       Additionally, Thimes further identified (i) by name its top 87 repeat customers
16  that purchased products up to 17 times from it, (ii) by name an additional 4,000+ repeat
17  customers that had purchased products between 2-3 times from it, and (iii) the product
18  transactions Thimes would have likely consummated via Amazon's Buy Box option
19  had it not been expelled from the Amazon Marketplace.  Nothing more is required.

20       **Issue No. 2**: according to TP-Link, the dozens of complaints it submitted to
21  Amazon accusing Thimes of selling counterfeit TP-Link products are "non-actionable
22  statements of legal opinion about an issue not yet decided by a court." *Supra* at 2.  To
23  support this argument, however, TP-Link cites only cases dealing with defamation.
24  When analyzing a trade libel claim, "citations to authorities addressing traditional libel
25  or other types of defamation claims are misguided." *Muddy Waters*, 62 Cal. App. 5th
26  at 925.  Moreover, TP-Link fails to submit the actual complaints themselves into
27  evidence.  Without their complete contents in the record, the Court cannot determine
28  as a matter of law whether TP-Link was merely expressing an opinion because the law

1    requires considering both the language and the context to make that determination.

2         Furthermore, TP-Link's primary basis for claiming its complaints are mere

3    opinions is based on the notion that no court has ever specifically decided that Thimes's

4    sales of TP-Link products on Amazon constitute either trademark infringement or

5    counterfeiting.  Again, TP-Link cites no authority requiring such specificity. More

6    importantly, the Ninth Circuit has repeatedly held for 35 years that sale of **genuine**

7    goods by unauthorized resellers is not trademark infringement.

8         **Issue No. 3**:  TP-Link asserts that Thimes's intentional interference claims rely

9    solely on its trade libel claim to satisfy the independent wrongful act requirement.  It's

10   unclear why TP-Link would make that claim when Thimes has already told it that TP-

11   Link's complaints also constitute (1) libel per se, (2) fraud, and (3) a violation of

12   California's Unfair Competition Law.

13        **Issue No. 4**:  TP-Link conflates the issues of proximate causation with proof of

14   damages, and thus fails to make a coherent argument as to either.  For proximate

15   causation, California law only requires Thimes to show that TP-Link's submission of

16   73 false counterfeiting complaints to Amazon over a six-month period played more

17   than a "infinitesimal" role in causing Amazon to expel Thimes.  *Grancare, LLC v.*

18   *Thrower by and through Mills*, 889 F.3d 543, 551 (9th Cir. 2018).  The record contains

19   abundant evidence—including sworn statements from various Amazzia principals—

20   that it did.  As for the other supposed incidents on Thimes's record, when presented

21   with all of the evidence, it's clear that none of those purported "egregious violations"

22   caused Amazon to expel Thimes, let alone negated TP-Link's 73 complaints.  Each of

23   the "examples" TP-Link references were either notices Amazon sent to Thimes in error

24   (because Thimes never sold the product at issue), or Amazon reinstated Thimes's

25   account after a successful appeal.  Viewing this evidence in the light most favorable to

26   Thimes and drawing all inferences in favor of it, TP-Link cannot credibly contend that

27   there is no evidence of proximate causation.

28        As to TP-Link's criticisms of Thimes's damages expert Dr. Goedde's

calculations, controlling California law holds that "historical data" and "evidence of []
past profits"—i.e., Thimes's profit and loss statements from transactions on the
Amazon Marketplace that Dr. Goedde relied upon in creating his damages model—
constitute "an acceptable basis for ascertaining lost future profits." *Orozco v. WPV San
Jose, LLC*, 36 Cal. App. 5th 375, 398 (2019); *Sargon Enterprises, Inc. v. Univ. of S.
California*, 55 Cal. 4th 747, 778 (2012). In any event, summary judgment is
unwarranted because Thimes will also present Mr. Eisenberg's opinion regarding its
lost profits because he was the owner and operator of the company.

## III. TP-LINK'S STATEMENT OF RELEVANT FACTS[3]

### A. Thimes's Violations of Amazon's Policies and Amazon's Decision to Expel Thimes

Thimes represents its business model as buying goods "cheaply" and "selling it
at an enhanced price point online." (JAF 54). Thimes "became a third-party seller on
Amazon in 2016." (JAF 55). "To become an Amazon seller [Thimes] signed Amazon's
standard Business Solutions Agreement that, among other things, allowed Amazon to
terminate [Thimes] as a seller for any reason or for no reason at all." (JAF 35).

In early 2018, Thimes started offering for sale TP-Link products on the Amazon
Marketplace. (JAF 24). Thimes was an unauthorized reseller of TP-Link products.
(JAF 25). For decades, TP-Link has been engaged in the marketing and sale of high-
quality computer networking products, including electronics sold throughout the
United States and internationally, including in this district. To protect this brand
recognition, TP-Link obtained numerous registered trademarks in connection with
computer networking products, including the incontestable U.S. Trademark
Registration No. 3,175,495 ("TP-LINK® Mark"). (JAF 26).

---

[3] References to the Joint Appendix of Facts are indicated as "JAF." Where there is no
citation to the JAF, the information is cited for background only.

Thimes received notices from Amazon about its violation of TP-Link's intellectual property rights from January 19, 2018 to June 21, 2018 ("Amazon IP Complaints"). (JAF 27). On January 19, 2018, Thimes received a notice from Amazon about a TP-Link product with the subject line: "Warning: Notice of Intellectual Property Rights Infringement." (JAF 28). Amazon's January 19, 2018 notice stated, in part: "We are contacting you because we received a report from a rights owner that you are listing counterfeit items. Examples of these items are listed below: [] We consider allegations of intellectual property infringement a serious matter and your account is under review." (JAF 29). Amazon also notified Thimes that TP-Link's complaints were based on the TP-LINK® Mark. (JAF 30).

Thimes admits that the Amazon IP Complaints were made using Amazon's online automated Report Infringement Form found here: https://www.amazon.com/gp/help/reports/infringement. (JAF 31). Amazon's online automated Report Infringement Form contains this language:

> **Statements**
> I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law.
>
> I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above.

(JAF 32). The Amazon Report Infringement Form contains the heading "Allegation of Infringement" directly before the user completes the form. (JAF 33). There has been no ruling from a court (or otherwise) ascertaining whether Thimes's sales of TP-Link products on Amazon constitute trademark infringement or counterfeiting. (JAF 34).

Thimes's troubled business operations received numerous violation notices (unrelated to TP-Link) followed by closure of its Seller's Account. For example, in response to TP-Link's Interrogatory No. 12 seeking "any concerns, claims, or

complaints regarding" Thimes's Amazon account, Thimes identified over a hundred documents from its (still deficient) production. (JAF 36).

To illustrate with a few examples, on May 5, 2018, Amazon notified Thimes: "Your Amazon.com selling privileges have been removed []. We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner: [] dr.seuss@ybrandprotection.com [list of over 40 products] Infringement type: Counterfeit …." (JAF 37). On May 7, 2018, Amazon expelled Thimes: "Your Amazon.com selling privileges have been removed. [] You have listings that infringe on the intellectual property rights of others. This is against our policies. [] As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site." (JAF 38). The May 7 notice from Amazon does not mention TP-Link. *Id.*

Thimes was reinstated, but after receiving additional intellectual property complaints, including for counterfeit products (JAF 39), on May 9, 2018, Amazon once again expelled Thimes: "Notice: Policy Warning [] We reviewed your account and the information you provided, and we have decided that you may not sell on Amazon.com" (JAF 40). The May 9 notice from Amazon does not mention TP-Link. *Id.* Thimes was expelled once again on May 10, 2018: "We reviewed your account and decided that you may no longer sell on Amazon." (JAF 41). The May 10 notice from Amazon does not mention TP-Link. *Id.*

Thimes was caught data mining Amazon's Application Program Interface in violation of Amazon's policies and Amazon closed its account on June 28, 2018:

> Your account has been closed due to violations of our Seller Policies. Your use of the Mobile App to extract dangerous goods (hazmat) information from our systems is prohibited by our policies. As stated on the Prohibited Seller Activities and Actions page in Seller Central [Amazon URL], if you upload excessive amounts of data repeatedly, or otherwise use our services in an excessive or unreasonable way, Amazon may restrict or block

1
2
3
4
5

your access to product feeds or any other functions that are being misused until you stop your misuse. In addition, as stated in our Conditions of Use [Amazon URL], you are not authorized to use any Amazon service to collect product listings or descriptions or use data mining, robots, or similar data gathering and extraction tools. Any derivative use of any Amazon service or its contents is also prohibited.

6

(JAF 42).

7
8
9
10
11
12
13
14
15
16
17

On August 3, 2018, Amazon notified Thimes that "Your amazon.com selling privileges have been removed" based on "concerns about the authenticity of the items sold at the end of this email [] ASIN: B0097BEG1C, B073TLKQB9, B00OQLMJR6, B07DMSK4R9." (JAF 43). Amazon's August 3, 2018 expulsion notice stated "[t]he sale of counterfeit products on Amazon is strictly prohibited." (JAF 44). On August 22, 2018, Thimes received a notice from Amazon in which a third-party (3PM Solutions) lodged a trademark complaint for over 200 ASINs (products). (JAF 45). Prior to Thimes's permanent expulsion, 3PM had not retracted its violation of intellectual property rights complaint. (JAF 46). According to Thimes, 3PM Solutions' August 22, 2018 trademark infringement complaint "vigorously advanced" with Amazon and "was particularly harmful to [Thimes]." (JAF 47).

18
19
20
21
22
23

Thimes admits that the August 22, 2018 3PM Solutions trademark infringement complaint, "played a critical role in Plaintiff's final expulsion from the Amazon Marketplace. It was 'the straw that broke the camel's back' just prior to Plaintiff's non-appealable expulsion on August 27, 2018." (JAF 48). Amazon's August 27, 2018 expulsion notice did not provide any reason for the permanent removal of selling privileges. (JAF 49).

24
25
26
27
28

**B.**    **Thimes Cannot Identify Specific Customers Who Relied on the At-Issue Complaints (Made Only to Amazon) as the Reason for Not Making a Purchase From Thimes**

Thimes cannot identify any specific customer who relied on any statements by Defendants as the reason for not purchasing products from Thimes.

TP-Link's Interrogatory No. 9 requested that Thimes (with respect to TP-Link): "Identify *each customer* that YOU contend did not do business with YOU *due to a statement by TP-LINK USA* and the circumstances of that transaction." (JAF 1) (emphasis added). Thimes responded: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, *each customer searching* on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or *would have eventually purchased* for re-sale on Amazon in the ordinary course of its business, *is a lost transaction*." (JAF 2) (emphasis added).

Thimes provided the same responses concerning co-defendant Amazzia. TP-Link's Interrogatory No. 8 requested: "Identify *each customer* that YOU contend did not do business with YOU *due to a statement by AMAZZIA* and the circumstances of that transaction." (JAF 3). Thimes again responded: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, *each customer searching* on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory *is a lost transaction*." (JAF 4) (emphasis added).

Thimes responded in a similar manner to TP-Link's Interrogatory No. 11, which requested with respect to TP-Link: "Identify *each transaction* (including sales) which YOU contend did not occur *due to a statement made by TP-LINK USA* and the circumstances of that transaction." (JAF 5) (emphasis added). Thimes responded: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, *each customer searching* on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or *would have eventually purchased* for re-sale

on Amazon in the ordinary course of its business, *is a lost transaction*." (JAF 6) (emphasis added).

Thimes provided the same responses concerning co-defendant Amazzia. TP-Link's Interrogatory No. 10 requested: "Identify *each transaction* (including sales) which YOU contend *did not occur due to a statement by AMAZZIA* and the circumstances of that transaction." (JAF 7) (emphasis added).  Thimes responded: "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, *each customer searching* on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or *would have eventually* purchased for re-sale on Amazon in the ordinary course of its business, *is a lost transaction*." (JAF 8) (emphasis added).

On August 16, 2022, Magistrate Judge Eick issued an Order requiring Thimes to supplement its response to TP-Link's Interrogatory Nos. 8-11, and "if [Thimes] cannot identify any such customer [or transaction], [Thimes] may so state." (JAF 9). Instead of stating that it could not identify any customer or transaction to prove special damages, Thimes repeated its original responses, plus added "repeat" customer names followed by the following statements: (i) "[Thimes] contends that but for its expulsion from the Amazon Marketplace, these customers would have continued to make repeated purchases of various products from [Thimes]" (JAF 10-13); (ii) "Since [Thimes] regularly qualified for the 'Buy Box,' every customer in North America searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory was effectively a customer of Plaintiff, and Plaintiff's expulsion from the Amazon Marketplace meant that it lost the opportunity to transact with those customers" (JAF 14-17); and (iii) "Following its expulsion from the Amazon Marketplace, each purchase from an Amazon customer of any product that was formerly sold by Plaintiff is a lost transaction, since Plaintiff had qualified as a Buy Box seller on the majority of those products" (JAF 18-19).

Thimes has stated it has no knowledge whether Count I (tortious interference) is based on any statements made to any of Thimes's customers. (JAF 20). Thimes likewise has stated that it has no knowledge whether Count II (trade libel) is based on any statements made to any of Thimes's customers. (JAF 21).

Thimes lacks proof that Amazon was a customer, including purchasing any products (including TP-Link products) directly from Thimes. (JAF 22). The Ninth Circuit affirmed a ruling by this Court that Amazon was not a purchaser of Thimes. (JAF 23).

## IV.   THIMES'S STATEMENT OF ADDITIONAL FACTS

In its respective integrated portions of this brief, Thimes cites to additional facts in the Joint Appendix of Facts that establish a triable issue of fact and/or demonstrate that TP-Link has omitted material facts in this brief.

## V.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *United States v. Kapp,* 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  *Anderson,* 477 U.S. at 248.

The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth

1  facts showing that a genuine issue of disputed fact remains. *Celotex,* 477 U.S. at 322.

2  The nonmoving party cannot oppose a properly supported summary judgment motion

3  by "rest[ing] on mere allegations or denials of his pleadings." *Anderson,* 477 U.S. at

4  256.

5  **VI.   ISSUE ONE—THIMES'S COUNT II FOR TRADE LIBEL FAILS**

6  **BECAUSE IT CANNOT MEET ITS BURDEN TO PROVE SPECIAL**

7  **DAMAGES**

8      **A.    TP-Link's Legal Argument: Thimes Fails to Identify Any**

9           **Particular Purchaser Who Relied on Any At-Issue Statements**

10          **Made Only to Amazon in Deciding Not to Purchase Products**

11          **from Thimes**

12     Thimes's trade libel claim is foreclosed because it cannot identify any specific

13  customers who relied on any statements by Defendants as the reason for not making a

14  purchase. "Trade libel is the intentional disparagement of the quality of property that

15  results in pecuniary damage to the plaintiff." *Royal Holdings Technologies Corp. v. IP*

16  *Video Market Info Inc*., Case No. 2:20-cv-04093-SB (PLAx), 2020 WL 8225666, at

17  *10 (C.D. Cal. Dec. 18, 2020) (citation omitted). "To state a claim for trade libel,

18  Thimes must show: (1) a statement that (2) was false, (3) disparaging, (4) published to

19  others in writing, (5) induced others not to deal with it, and (6) caused special

20  damages." *Id*. (citation and quotations omitted).

21     "[The] plaintiff must prove in all cases that the publication has played a material

22  and substantial part in inducing others not to deal with him, and that as a result he has

23  suffered special damages.'" *Muddy Waters, LLC v. Superior Ct*., 62 Cal. App. 5th 905,

24  925 (2021) (quoting *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964)). "[T]rade libel

25  requires as an essential element that plaintiff suffered direct financial harm because

26  someone else acted in reliance on the defendant's statement." *Id*. (citing CACI No.

27  1731). It "'is not enough to show a general decline in [plaintiff's] business resulting

28  from the falsehood, even where no other cause for it is apparent ... it is only the loss of

specific sales that can be recovered. This means, in the usual case, that the ***plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived***.'" *Id*. (quoting *Erlich*, 224 Cal. App. 2d at 73 (emphasis added)).

In *Royal Holdings Technologies Corp.*, this Court dismissed the plaintiff's trade libel claim at the pleading stage because the plaintiff did not "identif[y] customers that refused to deal with it because of the alleged trade libel." 2020 WL 8225666 at *11. The plaintiff's deficient allegations included the bald statement: "'a customer that is an international American publicly traded web hosting company' and 'an American social media corporation customer and a Japanese e-commerce company' suspended their orders." *Id*. at 11. This Court also found that "[a]s for those customers or potential customers that are identified (e.g., Exxon Mobil, BP America, U.S. Foods, Coca-Cola, Major League Baseball, the New Mexico Government, and Westrock [], [plaintiff] fails to allege damages." *Id*.

This Court's holding in *Royal Holdings* is equally applicable here at the summary judgment stage where the parties have engaged in extensive discovery and Thimes cannot identify any particular purchasers for whom the at-issue complaints made to Amazon played a material and substantial (or any) part in inducing those purchasers not to do business with Thimes. This makes sense since the at-issue statements were made directly to Amazon—a platform—not any end consumer. In fact, there is not a *single document in the record* that suggests any communication by TP-Link or Amazzia to anyone other than Amazon.

Rather, Thimes contends this element is satisfied by customers searching on Amazon for inventory (in stock and hypothetical future inventory): "Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased for re-sale on Amazon in the ordinary course of its business, is a lost transaction."  (JAF 2; JAF 4; JAF 6, JAF

8). Thimes proves too much; it demonstrates that the only impact of any at-issue statement was Amazon's decision to no longer provide a platform to Thimes, not a decision by any previous customer to cease doing business. A conclusory statement about "customers searching" who "would have eventually purchased" is insufficient to meet the special damages requirement to support a trade libel claim.

Even after Thimes was ordered to supplement Interrogatory Nos. 8-11 (JAF 9), all Thimes could do to try and save its case was to provide a longer (yet just as insufficient) response. Thimes cannot meet its burden by simply listing customers and making conclusory statements that: (i) "these customers would have continued to make repeated purchases of various products" (JAF 10-13);  (ii) "every customer in North America searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory was effectively a customer of Plaintiff, and Plaintiff's expulsion from the Amazon Marketplace meant that it lost the opportunity to transact with those customers" (JAF 14-17); and (iii) "each purchase from an Amazon customer of any product that was formerly sold by Plaintiff is a lost transaction, since Plaintiff had qualified as a Buy Box seller on the majority of those products" (JAF 18-19).

Thimes has stated it has no knowledge whether Count I (tortious interference) is based on any statements made to any of Thimes's customers. (JAF 20). Thimes likewise has stated that it has no knowledge whether Count II (trade libel) is based on any statements made to any of Thimes's customers. (JAF 21).

In applying a Fed. R. Civ. P. 56 standard in deciding a special motion to strike pursuant to Fed. R. Civ. P. 12(f) and Cal. Civ. Proc. Code § 425.16, Judge Kronstadt's analysis in *Kajeet, Inc. v. Qustodio, LLC* is illustrative. No. CV18-01519-JAK (PLAx), 2019 WL 13149928 (C.D. Cal. August 22, 2019). There, as here, the court (citing *Erlich*) found that the plaintiff failed to "identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived" in either its complaint or in response to the motion to strike. *Id*. at *12. Rather, the plaintiff pleaded its damages in general terms:

> [Defendant's] bald assertions of invalidity of the [plaintiff's] patents and that they are directed only to abstract ideas diminishes the value of [plaintiff's] patent portfolio, which is the result of many years of innovative work and financial investment by [plaintiff]. Upon information and belief, this along with the reputational harm and loss of market share ***caused by [defendant's] false and defamatory press release have or will result in a loss of opportunities to obtain investment capital by [plaintiff's], going forward***.

*Id.* (emphasis added). The court held that this was insufficient to satisfy the special damages element for a trade libel claim. *Id.*

Like *Kajeet*, Thimes's trade libel claim is premised on the same speculation that complaints made only to Amazon caused a "lost transaction" for "each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory, or would have eventually purchased." (JAF 2; JAF 4; JAF 6; JAF 8; *see also* JAF 10-19).

Other courts have likewise found that the failure to identify specific customer and transactions warrants dismissal of a trade libel claim. In *Muddy Waters*, the court affirmed dismissal of a trade libel claim because plaintiff had not identified any specific customers that were lost. *Muddy Waters*, 62 Cal. App. 5th at 925-926; *see also Core-Vent Corp. v. Nobel Industries Sweden A.B.*, 163 F.3d 605, n.6 (9th Cir. 1998) (finding a trade libel claim requires a showing of special damages and affirming dismissal because plaintiff "could not identify any particular purchaser who refrained from buying its implants, its claim fails. *See Erlich v. Etner,* 224 Cal.App.2d 69, 36 Cal.Rptr. 256, 259-60 (Ct.App.1964) (general claims of lost business are not enough).")

Similarly in *Cisco Systems, Inc. v. Dexon Computer, Inc*., the court dismissed Dexon's counterclaim for trade libel finding insufficient "general allegations that the Cisco 'made false and misleading statements about Dexon and the products it sells to these customers in order to disrupt the contractual relationship and to cause these customers to purchase product from Cisco authorized resellers.'" No. 20-cv-

04926-CRB, 2021 WL 5848080, at *9 (N.D. Cal. Dec. 9, 2021); *see also Storm Mfg. Group Inc. v. Weather Tec Corp.*, No. CV 12–10849-CAS (FFMx), 2013 WL 5352698, at *9 (C.D. Cal. Sept. 23, 2013) (dismissing trade libel claim based on insufficient allegations that "defendants' statements 'caused [p]laintiff to lose business,'" and "that plaintiff has 'lost prospective contracts' and 'suffered substantial injury' to its business [] do not rise to the level of identifying 'particular purchasers' or 'specif[ic] transactions.'") (citing *Erlich,* 224 Cal. App. 2d at 73–74).

Thimes's relies on customers who might have bought products (or products not yet in inventory) as lost transactions because it no longer has an Amazon account. This is insufficient: Thimes has not named any specific customer or specific sale that it lost due to that customer's reliance on any of the at-issue statements made directly to Amazon. Thimes's trade libel claim fails as a matter of law.

## B.   Thimes's Legal Argument:

### 1.   Thimes Has Identified the Customers and Transactions It Lost as a Result of TP-Link's False Counterfeiting Complaints.

As an initial matter, to establish special damages for trade libel under California law, Thimes need only "identify the particular purchasers who have refrained from dealing with [it], and specify the transactions of which [it] claims to have been deprived." *Muddy Waters*, 62 Cal. App. 5th at 925.

Thimes did just that.  It identified Amazon, because TP-Link's complaints "induced Amazon to terminate its business relationship with [Thimes]" and "permanently depriv[ed] [Thimes] of the ability to do business with Amazon."  (JAF 67.)  TP-Link attempts to sidestep this fact by asserting that "Thimes lacks proof that Amazon was a customer" that "purchas[ed] any products… directly from Thimes." (JAF 22.)  There are several problems with that assertion, however.

*First*, TP-Link cites a combination of Thimes's admissions and denials to various RFAs as purported evidence for this assertion.  But denials are not "evidence," as the Federal Rules only contemplate the use of admissions.  *See* Fed. R. Civ. P. 36(b).

**Second**, as for the admissions, they only pertain to "Amazon.com Services LLC."  Thimes sold products directly to an Amazon entity called Amazon Vendor Express. (JAF 22.) TP-Link's reference to the Ninth Circuit's "affirm[ing] a ruling by this Court" that "Amazon was not a purchaser of Thimes" is likewise misplaced, as that ruling only affirmed this Court's finding that Amazon never purchased **TP-Link** products from Thimes.  (JAF 23.) So to the extent that special damages under this trade libel claim requires a  "customer" that "purchased any products directly from Thimes," Thimes has satisfied that requirement for Amazon.

**Third** and most importantly, the scope of special damages is not limited to "customers" who "purchased any products directly from" the plaintiff.  The *Muddy Waters* court qualified its language regarding "particular purchasers who have refrained from dealing with [the plaintiff]" to apply to "the usual case," as opposed to "every case."  62 Cal. App. 5th at 925.  That is, the typical trade libel case involves a disparaging statement that induces customers not to buy the plaintiff's products, but trade libel is not limited to those cases as a matter of law.

The *Muddy Waters* court also cited the Judicial Council instruction for trade libel, which uses the far broader language that the plaintiff "suffered direct financial harm because someone else acted in reliance on the statement." *Id.* (citing CACI 1731). *See also City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 376 (2013) ("The tort [of trade libel] encompasses 'all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm **and in fact do so**.'") (citation omitted) (emphasis added).  Controlling Ninth Circuit precedent similarly defined trade libel as "injurious falsehoods that interfere with business" and that the publication is one "which induces others not to deal with plaintiff[.]" *Aetna Cas. and Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). *See also Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n. 7 (9th Cir. 2000) ("Our interpretation of [California] law remains binding in the Ninth Circuit 'in the absence of any subsequent indication from the [California] courts

that our interpretation was incorrect.'") (citation omitted).  Amazon was induced not to do business with Thimes, and Thimes suffered special damages by not being able to make further sales on the Amazon Marketplace.

In addition, separate and apart from identifying Amazon, Thimes also identified by name individual businesses and customers "who have refrained from dealing with [it]." (JAF 68.)  Based on its analysis of its sales transaction history on the Amazon Marketplace, Thimes identified 87 existing customers that had repeatedly (between 4 and 17 times) purchased products from Thimes.  (*Id.*)  Thimes further identified an additional 4,092 repeat customers that had purchased products two to three times from Thimes.  (*Id.*)  Because TP-Link's complaints deprived Thimes of the ability market and transact on the Amazon Marketplace, each of these 4,179 customers "consist[s] of loss of prospective contracts with the plaintiff's customers." *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964).  The evidence thus shows that, but for Thimes's expulsion from the Amazon Marketplace, these customers would have continued their practice of buying products from Thimes.

As for "the transactions of which [it] claims to have been deprived," Thimes provided evidence showing that it had been deprived of sales of specific products from its inventory that qualified for Amazon's "Buy Box" option.  (JAF 69-74.)  The Buy Box enables Amazon customers to add the product to the shopping cart via the "Add to Cart" button. (JAF 69.)  Resellers compete for the Buy Box option and eligibility is determined by "performance-based requirements."  (JAF 70.)  Thimes regularly qualified for Amazon's Buy Box option when selling many of the different products it carried. (JAC 71.)  Amazon acknowledges that being eligible for the Buy Box can lead to increased sales.  (JAF 72.)  Indeed, many of Thimes's sales on the Amazon Marketplace occurred through the Buy Box option.  (JAF 73.)  And around 75% of all sales made on the Amazon Marketplace go through the Buy Box.  (JAF 74.)  At summary judgment, "the evidence of the nonmovant is to be believed," and the Court must view the evidence "in the light most favorable to the opposing party" and draw

1  "all justifiable inferences" its "favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 657 (2014).

2  Given that Thimes regularly qualified for Amazon's Buy Box option, and that it had

3  over 4,000 repeat customers, the justifiable inference from the record evidence is that

4  each purchase from an Amazon customer of any product that Thimes had in its

5  inventory can be a lost transaction.

6                    2.    TP-Link Fails to Cite Authority that Supports its Contentions.

7         TP-Link also contends that Thimes's evidence is "insufficient," because

8  "Thimes has not named any specific customer or specific sale that it lost due to

9  that customer's reliance on any of the at-issue statements made directly to

10  Amazon." *Supra* at 18.  But TP-Link cites no authority suggesting that a trade libel

11  plaintiff must establish that *every* customer it lost relied on the defendant's

12  statement.   Again, *Muddy Waters* and other cases show that trade libel requires

13  evidence that someone refrained from doing business with the plaintiff due to the

14  injurious publication; those authorities do not correspondingly limit damages

15  solely to customers that received and relied upon that publication.[4]

16         Instead, courts have consistently held that trade libel requires proof of

17  "special damages," nothing more.  *Muddy Waters*, 62 Cal. App. 5th at 925.  Special

18  damages means only that a plaintiff "'may not rely on a general decline in business

19  arising from the [alleged] falsehood, and must instead identify particular customers

20  and transactions of which it was deprived as a result of the libel.'"  *Daw Industries,*

21  *Inc. v. Hanger Orthopedic Group, Inc.*, 556 Fed. Appx. 604, 605 (9th Cir. Feb. 24,

22  2014) (unpublished) (citations omitted).  Notably, the California Judicial Council's

23  verdict form asks the jury "Was the statement made to a person other than

24  [plaintiff]," and "Did [plaintiff] suffer direct financial harm because **someone else**

25  acted in reliance on the statement?"  *See* CACI VF-1721 (emphasis added).  If a

26  _____

27  [4] If such a rule existed, that would mean that competitors could freely disparage any
business that relied upon intermediaries to sell products or services because of the
28  absence of a direct transactional link between the business and the purchaser.

trade libel plaintiff must establish that every customer it lost relied on defendant's statement, the Judicial Council would not instruct juries with terms like "a person other than [plaintiff]" and "someone else acted in reliance on the statement."

Here, the evidence reveals that Amazon "refrained from dealing with [Thimes]" because of the counterfeiting complaints TP-Link submitted to Amazon. Thimes further identified by name its 4,000+ repeat customers that it lost and Thimes also identified the types of transactions it likely would have consummated via Amazon's Buy Box option had it not been expelled from the Amazon Marketplace because of TP-Link's complaints. The evidence establishes that Thimes has "identif[ied] the particular purchasers who have refrained from dealing with [it] and specif[ied] the transactions of which [it] claims to have been deprived." *Muddy Waters*, 62 Cal. App. 5th at 925. Nothing more is required.

TP-Link's cited authorities are inapposite. This Court in *Royal Holdings Technologies Corp.* took no issue with plaintiff's identifying "potential customers" to satisfy the special damages requirement, only that plaintiff "fail[ed] to allege damages." 2020 WL 8225666, at 11; *see also Erlich*, 224 Cal. App. 2d at 73 ("Usually, ... the damages claimed have consisted of loss of **prospective** contracts with the plaintiff's customers.") (emphasis added). And *Kajeet* is hardly "illustrative"; it held, without analysis, that allegations based "[u]pon information and belief" of "reputational harm," "loss of market share," and "loss of opportunities to obtain investment capital" were insufficient to state a claim for trade libel. 2019 WL 13149928, at * 12. The evidence shows that Thimes has done much more than that. *Cisco Systems*, another pleading challenge decision, is similarly distinguishable. The court there dismissed defendant's trade libel claim because allegations that counter-defendant "disrupt[ed] the contractual relationship and [] cause[d] these customers to purchase product from Cisco authorized resellers" were "far too unspecific" under Rule 9(b). 2021 WL 5848080, at *9. That is a far cry from the evidence Thimes has presented.

# VII. <u>ISSUE TWO</u>—COUNT II FAILS FOR A SECOND INDEPENDENT REASON THAT NON-ACTIONABLE STATEMENTS OF LEGAL OPINION CANNOT SUPPORT A TRADE LIBEL CLAIM

### A. TP-Link's Legal Argument: Complaints About Intellectual Property Violations to Amazon Are Not Statements of Fact, but Rather Constitute Statements of Legal Opinion

The at-issue complaints to Amazon concerning Thimes's violation of TP-Link's intellectual property rights are not statements of fact, but rather non-actionable statements of opinion. To state a claim for trade libel, an intentional disparagement of the quality of the plaintiff's property must take the form of a statement of fact, not opinion. *Storm Mfg. Group Inc. v. Weather Tec Corp*., 2013 WL 5352698 at \*9 (citation omitted). "In most cases, whether a statement is fact or opinion is a question of law." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1011 (2001) (citation omitted). "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context." *Id*. Importantly, "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 731 (9th Cir. 1999).

In *Coastal Abstract*, an officer of First American stated that Coastal "was not licensed in California" to engage in the escrow business. *Id*. at 729. The Ninth Circuit held that "[a]s a matter of law, the statement that Coastal was operating without the necessary license in California did not constitute defamation" because the correct application of Cal. Fin. Code § 17200 as to whether Coastal was required to have a license was "not knowable to the parties at the time that First American made the licensure statements"; instead, this would require determination by a court. *Id*. at 732.

The same outcome applies here where the at-issue statements were based on a layperson's subjective belief about trademark infringement and trademark counterfeiting within the limits of the Amazon online reporting form. (*See* JAF 31-22). It is undisputed that there has been no ruling from a court (or otherwise) ascertaining whether Thimes's sales of TP-Link products on Amazon constitute trademark infringement or counterfeiting. (JAF 34). Moreover, the at-issue complaints to Amazon were made based on "a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law." (JAF 32). Amazon also considered such complaints as only "allegations of intellectual property infringement" as stated in both Amazon's notices to Thimes (JAF 29) and Amazon's online Report Infringement Form (JAF 33). These are precisely the types of statements of opinion that constitute non-actionable trade libel.

In *Tommy Bahama Grp., Inc. v. Sexton*, the court addressed a nearly identical issue as here. No. C07-06360 EDL, 2009 WL 4673863, at *14 (N.D. Cal. Dec. 3, 2009), *aff'd*, 476 F. App'x 122 (9th Cir. 2012). Tommy Bahama ("TBG") monitored eBay for unauthorized resellers and reported violators using eBay's Verified Rights Owner ("VeRO") program, which (like complaints to Amazon) "is highly automated, and contains an internet-based reporting tool." *Id*. at *2. VeRO was "initiated by eBay as a 'notice and takedown' system that allows registered rights owners to report to eBay any listing offering potentially infringing items, so that eBay can remove such reported listings." *Id*. "TBG notifies eBay of the suspected infringing item with a Notice of Claimed Infringement ('NOCI') form, a form drafted by eBay that can be submitted in either paper or electronic format." *Id*. at 3. Importantly, "[b]y sending the NOCI to eBay, TBG does not make a definitive factual finding that the listed item is counterfeit, and has only a subjective belief that a particular item is counterfeit." *Id*.

In a five-year period, TBG "reported to eBay hundreds of items that it believed infringed its intellectual property." *Id*. As part of the process of submitting an electronic

infringement complaint, like here, "TBG declares, 'under penalty of perjury that I am the owner (or its agent) of intellectual property rights pertaining to this listing, and I have a good faith belief that this listing infringes these rights.'" *Id*. TBG filed a complaint through VeRO that the defendant was selling counterfeit goods. *Id*. at *4.

The court found the qualified language that TBG had submitted the complaint with a "good faith belief" was "not a 'provably false' statement of fact; it is a statement of opinion that is not actionable as defamation, even if ultimately proven false." *Id*. at 14. The court granted TBG's motion for summary judgment and dismissed defendant's defamation claim based in part on this finding.

As in *Tommy Bahama*, the at-issue complaints here made using Amazon's online reporting form and upon "a good faith belief that the content(s) described above violate(s) my rights described above [], and that the use of such content(s) is contrary to law" (JAF 32) are non-actionable statements of legal opinion.

**B.   Thimes's Legal Argument:**

1.   TP-Link Improperly Relies Upon Non-Trade Libel Cases.

In arguing that its complaints to Amazon are "non-actionable statements of opinion[,]" TP-Link principally relies upon *Coastal Abstract* and *Tommy Bahama*.  But both of those cases involved **defamation** claims, not trade libel claims.  "Despite its name, ''trade libel' is not true libel and is not actionable as defamation.'  Thus, as an initial matter, [TP-Link's] numerous citations to authorities addressing traditional libel or other types of defamation claims are misguided." *Muddy Waters*, 62 Cal. App. 5th at 925 (citations omitted).  *See also Aetna Cas.*, 838 F.2d at 351 ("Trade libel is not, however, a true libel and is not actionable as defamation.  It is more akin to unfair competition.") (citations omitted).

Thus, per the California Court of Appeal, any argument that TP-Link's complaints are inactionable as a matter of law based on *Coastal Abstract* or *Tommy Bahama* is "misguided.".  And under California law, in determining for a trade libel claim "whether a statement is fact or opinion, a court must put itself in the place of an

average reader and determine the natural and probable effect of the statement, considering both the language and the context." *ComputerXpress*, 93 Cal. App. 4th at 1011.  TP-Link does not explain why an average reader would think that it accusing Thimes of selling counterfeit TP-Link products 73 times was an expression of opinion.

2.    TP-Link Lacks Evidence of the Contents of Their Complaints.

In any event, TP-Link's argument that it was merely expressing an opinion fails because the actual complaints are not in evidence, nor has anyone averred as to the complete contents of those complaints.  Similar to how the Court previously held that it was unable to perform an analysis as to whether TP-Link's complaints were "objectively baseless" under the *Noerr-Pennington* doctrine due to the absence of those complaints in evidence (*see* ECF No. 103 at 5-6), the Court likewise cannot determine, as a matter of law, that TP-Link was merely expressing an opinion without reviewing the language and context of the complaints.

TP-Link attempts to bypass its evidentiary deficiencies by submitting examples of Amazon's Report Infringement Form template as it purportedly existed on January 17, 2020.  (JAF 32.)  The problem, of course, is that TP-Link's complaints were submitted from January to July **2018**, and TP-Link does not submit any evidence that Amazon used an identical template during that time period.  Moreover, even if TP-Link had submitted complaints with the prefatory language stating that it had a "good faith belief" that Thimes was selling counterfeit TP-Link products, a jury could still decide that the overall context of the statement meant that TP-Link was stating a fact rather than an opinion.  *Cf. Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d 672, 682 (1978) (for libel cases, if the remark "could have been understood by the average reader" to be a statement of "either fact or opinion[,]" then "the issue must be left to the jury's determination).

3.    TP-Link's Complaints Can Be "Provably False."

Even assuming that *Coastal Abstract* and *Tommy Bahama* are applicable, the standard set out in those cases make clear that a triable issue of fact exists here.

*Coastal Abstract* held that a statement that the plaintiff was operating without a required license was a matter of opinion because no court or regulatory agency had ever interpreted the statute in question. 173 F.3d at 731-32. TP-Link contends that *Coastal Abstract* settles the issue here because no court has ever specifically held that Thimes's sales of TP-Link products on Amazon constitute either trademark infringement or counterfeiting. (JAF 34.) The problem for TP-Link is that the Ninth Circuit has long held that an unauthorized reseller of a manufacturer's goods selling genuine goods is not trademark infringement. Nearly 40 years ago in *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987), the Ninth Circuit held that a "grey market" reseller—i.e., a business that buys a manufacturer's products overseas (usually at a substantially lower cost) for re-sale in the United States in competition with the manufacturer—is not engaging in trademark infringement. *Id.* at 1507-08, 1510. As the court noted: "Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *Id.* at 1509. Since the goods were genuine, the Ninth Circuit held there was no trademark violation even though the reseller was not an authorized distributor. *Id.* at 1510.

*NEC* has been reaffirmed and expanded by the Ninth Circuit many times, and *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995) is controlling here. There, the court held that under the "first sale" doctrine, a retailer that merely stocked and resold genuine trademarked goods that it lawfully acquired on the open market does not violate the Lanham Act. *Id.* at 1076. That the retailer was not an authorized reseller of the manufacturer was irrelevant. *Id.* at 1075-77. The Ninth Circuit accordingly reversed the entry of a preliminary injunction preventing the defendant retailer from reselling the plaintiff's products. *See also Am. Circuit Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 585-586 (9th Cir. 2005) (holding that district court properly dismissed Lanham Act claims brought by manufacturer against gray market importer because the imported goods were genuine).

Here, Thimes only sold genuine TP-Link products on the Amazon Marketplace.

(JAF 75.)  TP-Link knew that those products were genuine, as it made several test buys of those products.  (JAF 76.)  Given decades of precedent on this issue, TP-Link's repeated complaints that Thimes was selling "counterfeit" TP-Link products were provably false (and made in bad faith).

*Tommy Bahama* is similarly favorable for Thimes.  As an initial matter, the Northern District of California noted that "a statement is deemed an unactionable opinion if it is not 'provably false,' i.e., if it cannot 'reasonably [be] interpreted as stating actual facts' about an individual."  2009 WL 4673863, at *14 (citing *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1050 (2008)) (alteration in original). *Nygard*, in turn, noted that "[t]o ascertain whether the statements in question are provably false factual assertions, courts consider the 'totality of the circumstances.'" 159 Cal. App. 4th at 1049 (cleaned up).  Under that standard, the Northern District held that TBG's single report to eBay was "a statement of opinion that is not actionable as defamation" because the report merely identified defendant's listings as a "**potential** trademark infringement" and "[s]uch qualified language is not a 'provably false' statement of fact."  2009 WL 4673863, at *14 (emphasis added).

Here, by contrast, there is no evidence that even a single complaint TP-Link submitted to Amazon contained "qualified language" of "potential" infringement. Instead, it appears that each of the complaints would have expressed the factual assertion that Thimes is selling counterfeit products in unconditional, matter-of-fact terms.  (JAF 80.)

Nor can TP-Link rely on its purported "good faith belief" in submitting the complaints.  *Supra* at 24.  As an initial matter, one stating that they have a good faith belief does not mean that they actually have a good faith belief, or automatically turn a statement into an inactionable opinion.[5]  And here, even though TP-Link attested

---

[5] If Coke ran an advertisement stating that it had a "good faith belief" that Pepsi was flavored with motor oil, no reasonable court would find that the statement qualified as an inactionable opinion.  Again, context matters.

1    under penalty of perjury as to the accuracy of the information in its complaints, it had

2    submitted complaints to Amazon before the routers it test bought from Thimes were

3    even delivered.  (JAF 77.)  The record also shows that TP-Link did not have any

4    counterfeiting concerns about Thimes at all.  (JAF 81.)  Rather, TP-Link wanted to

5    eliminate Thimes simply because Thimes's low prices for TP-Link products was

6    interfering with TP-Link's own efforts to run a sales promotion.  (*Id.*)  Thus, under the

7    "totality of the circumstances," it is a triable issue of fact whether TP-Link's complaints

8    should be deemed statements of fact or statements of opinion.

9         Finally, it should be noted that Thimes attempted to take the deposition of

10   Antoine Liu, the TP-Link executive responsible for corresponding with Amazzia

11   regarding its efforts to remove Thimes from the Amazon Marketplace.  (JAF 82-83.)

12   Two days before the deposition was to take place, TP-Link announced without prior

13   warning that Mr. Liu was not available and that they would provide alternate dates.

14   (JAF 84.)  TP-Link still has not provided any dates at all.  (JAF 85.)  If the Court is

15   inclined to find that, as a matter of law, TP-Link was making a statement of opinion

16   because it possessed a "good faith belief" that Thimes was selling counterfeit TP-Link

17   products, then the Court should defer considering this motion until after Thimes has

18   had the opportunity to take Mr. Liu's deposition.  Fed. R. Civ. P. 56(d).

19   **VIII. <u>ISSUE THREE</u>—THIMES'S TORTIOUS INTERFERENCE**

20   **(COUNT I) CLAIMS FAIL AS DERIVATIVES OF ITS TRADE LIBEL**

21   **CLAIM**

22        **A.    TP-Link's Legal Argument: Thimes's Claims for Intentional**

23             **Interference with an Existing *At-Will* Contract and Prospective**

24             **Business Relationships Fail Because these Derivative Tort Claims**

25             **Rely on Count II (Trade Libel) for the Requirement of an**

26             **Independently Wrongful Act**

27        Thimes's tortious interference claims for an existing *at-will* contract and

28   prospective business relationships fail because both require that Defendants' conduct

was independently wrongful—which Thimes cannot show. "The two torts are related but distinct. Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Ixchel Pharma, LLC v. Biogen*, Inc., 9 Cal. 5th 1130, 1141 (2020) (citations omitted).

"Tortious interference with prospective economic advantage, on the other hand, does not depend on the existence of a legally binding contract. A plaintiff asserting this tort must show that the defendant knowingly interfered with an 'economic relationship between the plaintiff and some third party, [which carries] the probability of future economic benefit to the plaintiff.'" *Id*. (citing *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003)); *see also Tensor Law P.C. v. Rubin*, No. 2:18-cv-01490-SVW (SK), 2019 WL 3249595, at *10 (C.D. Cal. Apr. 10, 2019) (reciting elements for tortious interference with prospective economic advantage).

Importantly, the California Supreme Court held that "to state a claim for interference with an ***at-will contract*** by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." *Ixchel Pharma*, 9 Cal. 5th at 1148 (emphasis added). The same applies to a claim for interference with prospective economic advantage, the plaintiff must allege that the defendant engaged in an act that is wrongful apart from the interference itself. *Korea Supply*, 29 Cal. 4th at 1154. "An act is not independently wrongful merely because [the] defendant acted with an improper motive." *Id.* at 1158. Rather, an act is "independently wrongful if it is unlawful, that is, if it proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard." *Id.* at 1158-59; *see also Ixchel Pharma*, 9 Cal. 5th at 1142.

Here, there is no dispute that there was an at-will contractual relationship between Thimes and Amazon. Under Amazon's standard Business Solutions

1    Agreement, Amazon was permitted "to terminate [Thimes] as a seller for any reason
2    or for no reason at all." (JAF 35). *See Oumere LLC v. Zarpas*, Case No. 8:21-cv-00224-
3    DOC (JDEx), 2021 WL 2894643, at *4-5 (C.D. Cal. June 29, 2021) (striking
4    intentional interference with contractual relations claim based on regularly renewed
5    one-time contracts due to no independent wrongful act (defamation), citing *Ixchel*
6    *Pharma*). Indeed, Thimes's multiple expulsions (and reinstatements) from the Amazon
7    platform (*see* JAF 36-48) until its final expulsion on August 27, 2018 without any
8    explanation (*see* JAF 49) demonstrate the at-will nature of the contract.

9           Thimes's bases for independent wrongfulness is its Count II for trade libel:
10   "[Thimes] brings this suit following its commercial and financial ruination resulting
11   from Defendants' libelous statements to Amazon and consequential tortious
12   interference with Plaintiff's existing and prospective business relationship with
13   Amazon Services LLC." (JAF 50; *see also* JAF 51 ("Defendants' libelous IP
14   complaints to Amazon proximately caused Amazon to expel Plaintiff from the
15   Marketplace on August 27, 2018 with no right of appeal, thereby destroying Plaintiff's
16   enjoyment of its contract with Amazon, as identified in ¶7 *supra*."); JAF 52-53). As
17   discussed, Count II fails because Thimes cannot support a claim for special damages.
18   Likewise, "[t]he alleged unjustified acts are the non-actionable opinions. This claim—
19   which alleges adverse consequences flowing from the non-actionable opinions—fails
20   because the [trade libel] claim fails." *Open Source Security, Inc. v. Perens*, Case No.
21   17-cv-04002-LB, 2017 WL 6539874, at *10 (N.D. Cal. Dec. 21, 2017); *see also*
22   *Prostar Wireless Group, LLC v. Domino's Pizza, Inc*., 360 F. Supp. 3d 994, 1015-16
23   (N.D. Cal. 2018) (granting summary judgment against tortious interference claim
24   because (in part) the asserted "independently wrongful act" for fraud fails); *Tommy*
25   *Bahama,* 2009 WL 4673863 at *14 (finding on summary judgment "there is no
26   evidence of any independent wrongful conduct because, as discussed above, [the
27   plaintiff's] defamation claim (the only predicate wrongful act he has alleged) fails as a
28   matter of law.")

Thimes has not sufficiently pleaded (or proven) any viable independently wrongful conduct to support its claims for intentional interference with an existing at-will contract and prospective business relationships. Respectfully, the Court should grant TP-Link's motion on Count I.

**B.     Thimes's Legal Argument: TP-Link's Complaints to Amazon are Independently Wrongful in Multiple Ways.**

TP-Link contends that "Thimes's bases for independent wrongfulness is its Count II for trade libel." *Supra* at 31.  TP-Link is wrong.

Under California law, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."' *San Jose Construction, Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544-1545 (2007).  The complaints TP-Link submitted to Amazon are independently wrongful for multiple reasons.

***First***, TP-Link's complaints constitute libel per se, which courts in this district hold to be an independently wrongful act.  *See Rausch v. Blair*, No. 15-CV-4212-DSF(AGRX), 2015 WL 13283839, at *2 (C.D. Cal. Oct. 1, 2015) ("Defamation is independently wrongful conduct that can support an action for interference with prospective economic advantage.").  A statement is libel per se when it is "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a.  Judge Selna's recent decision in *AK Futures v. Limitless Trading Co., LLC*, No. 21-cv-01154-JVS (ADSx), 2021 WL 5238588, at *4 (C.D. Cal. Oct. 6, 2021), is on all fours.  There, the court held that one business accusing another of "selling fake products" is libel per se, because "[n]o extrinsic information is required to understand that meaning. Accusations that a company is selling fake products, an act of dishonesty, has a natural tendency to injure its business reputation." *Id.*

***Second***, TP-Link's complaints constitute fraud, which also qualifies as an independently wrongful act.  *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic*

*Fabricators, Inc.*, No. 15-CV-04125 MMM (JEMx), 2015 WL 12731920, at *17 (C.D. Cal. Sept. 21, 2015) ("Fraud qualifies as an independently wrongful act, but only if it adequately pled."). To establish fraud under California law, a party must establish (1) a knowingly false representation; (2) an intent to deceive or induce reliance; (3) justifiable reliance; and (4) resulting damages. *GeoData Sys. Mgmt., Inc.*, 2015 WL 12731920, at *19.

Here, each complaint accusing Thimes of selling counterfeit products constitutes an intentional or negligent misrepresentation, as TP-Link knew the complaints were false, or had no reasonable basis for believing that the TP-Link products Thimes offered for sale on the Amazon Marketplace was counterfeit. The evidence shows that TP-Link made some of those statements without first performing a test buy of Thimes's TP-Link products; when TP-Link did receive the test bought products, it confirmed that Thimes's TP-Link products were all factory-sealed and unaltered. (JAF 76-77.) And TP-Link intended for Amazon to rely on the complaints submitted to de-list Thimes's listings of TP-Link products. (JAF 86.)

**Third**, TP-Link's complaints also violate California's Unfair Competition Law. The UCL prohibits any "unlawful, unfair, or fraudulent business act," Cal. Bus. & Prof. § 17200, and "embraces anything that can properly be called a business practice and that at the same time is forbidden by law." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007). A violation of the UCL can serve as the predicate for the independently wrongful act requirement. *CRST*, 479 F.3d at 1110. *See also Ixchel Pharma, LLC v. Biogen, Inc.*, 930 F.3d 1031, 1036 (9th Cir. 2019) ("A violation of the UCL constitutes an independently wrongful act").

With respect to the "unfair" prong of the UCL, it can be satisfied in any number of ways, including whether the challenged business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[.]" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (citation omitted). TP-Link making false representations to Amazon that Thimes sold counterfeit products is an

1  unfair business practice under the UCL, even if those statements are ultimately deemed

2  not to be libelous or fraudulent.  *See Luxul Techn. Inc. v. Nectarlux, LLC*, 78 F. Supp.

3  3d 1156, 1174 (N.D. Cal. 2015) (holding that defendants' representations to plaintiff's

4  customers about the validity of its patents stated a UCL claim under the unfair prong,

5  even if was ultimately not unlawful).  TP-Link's practice is also immoral, unethical,

6  and unscrupulous—and it additionally injured consumers—as TP-Link specifically

7  aimed to eliminate Thimes because its lower prices were undercutting TP-Link's

8  promotional sales plans.  (JAF 86.)

9       As for the "unlawful" prong, it is satisfied upon a showing that TP-Link violated

10  any other law.  *CVS Pharmacy*, 982 F.3d at 1214.  Here, TP-Link falsely submitted

11  statements under penalty of perjury that Thimes was selling counterfeit TP-Link

12  products.  That violates both federal and state law and states a claim under the

13  "unlawful" prong of the UCL.  *See* 18 U.S.C. § 1621(2); Cal. Penal Code § 118(a).

14       Thus, for these three independent reasons, the Court should deny TP-Link's

15  motion for summary judgment on issue three.  Thimes also notes that it previously

16  identified these three independently wrongful acts to TP-Link, making it especially

17  puzzling as to why TP-Link decided to tell the Court that Thimes's interference claims

18  were grounded solely upon its trade libel claim.  (JAF 87.)

19  **IX.   ISSUE FOUR—THIMES'S CANNOT SHOW CAUSATION FOR**

20  **ITS SUPPOSED LOST PROFITS; NOR IS IT ASCERTAINABLE**

21  **WITH ANY REASONABLE DEGREE OF CERTAINTY**

22       **A.   TP-Link's Legal Argument: Thimes's Claim for Lost Profits**

23            **Fails as it Relies on Layer Upon Layer of Impermissible**

24            **Speculation**

25       Setting aside the adverse issues that Thimes had with Amazon unrelated to

26  Defendants (*see, e.g.*, JAF 36-49), Thimes has no basis for damages caused by any of

27  Defendants' actions. Under California law, "[t]he damages recoverable in any case

28  must be susceptible of ascertainment with a reasonable degree of certainty." *Automatic*

*Poultry Feeder Co. v. Wedel*, 213 Cal. App. 2d 509, 516 (1963) (citation omitted). A claim for lost profits fails when it is based on assumptions that are "inherently uncertain, contingent, unforeseeable and speculative." *Greenwich S.F., LLC v. Wong*, 190 Cal. App. 4th 739, 766 (2010). Expert testimony must be "based on sufficient facts or data," be "the product of reliable principles and methods," and be the result of the expert's reliable application of "the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). And while the law does not require "absolute precision," a party seeking lost profits is still "obliged to demonstrate its loss with reasonable certainty." *S.C. Anderson, Inc. v. Bank of Am*., 24 Cal. App. 4th 529, 536–38 (1994). This is not merely an issue for a future *Daubert* motion. Because a plaintiff has the burden to prove damages—including causation—summary judgment is proper when a party fails "to raise a triable issue of material fact as to their ability to prove lost profits," including because its evidence is speculative. *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 874 (2002). Such is the case here.

Thimes's proposed damages are inherently uncertain and speculative for two independent reasons: (i) Thimes simply assumes causation; and (ii) there is no competent factual support for Thimes's supposition that it would have grown its Amazon sales (from mid-2018 (when it was expelled) to 2022) and suffered "Lost Amazon Sales" of either $15.8 million or $36.4 million, depending on whether indexed to inflation or a made-up growth factor is used. (JAF 56).

*First,* Thimes has a burden of demonstrating that it was as a result of TP-Link's conduct that it suffered damages. *See, e.g., Sebastian Intern., Inc. v. Russolillo*, No. CV 00–3476-SVW (JWJx), 2005 WL 1323127, at *7 (C.D. Cal. Feb. 22, 2005) (to obtain lost profits, a plaintiff must show it "suffered damages *as a result of* interference by the defendant") (emphasis in original). That requires, among other things, proving a "but for" world that excludes only the at-issue notifications to Amazon. *See* CACI 3903N. Thimes and its expert do not even try to reconstruct this world. Thimes has no evidence suggesting: (a) Amazon expelled it from the platform *because of* the at-issue

infringement notifications (as opposed to the numerous other egregious violations of Amazon's policies); (b) Thimes would have continued operating on Amazon but for the notifications; and (c) Thimes was somehow precluded from selling on other platforms or through other channels. Thimes has not put forth any evidence from Amazon about the reasons for its termination to demonstrate relevant causation. Nor is there any evidence suggesting that Thimes was prohibited from using any other retail platform to continue selling products, including eBay, Walmart.com, or the scores of other websites that allow third-party sellers. There is no basis to conclude either that the at-issue notifications caused Thimes's expulsion or that Thimes lost any profits.

*Second*, Thimes's lost profits claim is unsustainable because it rests on layer upon layer of speculation about the optimism of Thimes's viability and growth as a company. Thimes's expert—relying not on facts or accepted methods, but rather unsupported bases—creates two models seemingly tied to the growth of eCommerce sales and Amazon sales *generally* (neither of which are specific to Thimes) and indexed to inflation. (JAF 57).

Goedde explains his opinion is based on Thimes's "business model" which "involves purchasing products at a discount from down-stream distributors, typically at close out, and then selling the products [] at a discounted price via online means such as Amazon." (JAF 58). In other words, Thimes was entirely dependent on third-party vendors for products to sell and finding those deals. Goedde states that Thimes "became a third-party seller on Amazon in 2016" (JAF 59) and was permanently expelled on August 27, 2018 (JAF 60).

Goedde then creates his damages models based on just the "profit and loss statements provided by Amazon and reported in [Thimes's] accounting software (inventorylabs.com) through July 2018," *i.e.*, profit and loss statement *specific to Amazon* sales and not the overall company P&Ls. (JAF 61). In other words, Goedde does not take into account the profits and losses for the company as a whole, including looking at other business expenses, which creates an unrealistic damages model.

1  Goedde calculates Thimes's growth rate from 2016 to July 2018 as 679%. (JAF 62). In

2  an attempt to justify the growth rate from 2019-2022, Goedde opines, without any

3  factual support, that "[c]onsidering the quantity of offers [Thimes] received to purchase

4  products from many regular, continuing customers, it is reasonable to expect there to

5  be sufficient supply of products for [Thimes] to continue strong retail sales growth had

6  TP-Link not interfered." (JAF 63).

7      In the next step to forecast Thimes's sales for 2019-2022, Goedde compares

8  Thimes's growth rate to the growth rate of ECommerce and Amazon sales (both

9  unrelated to Thimes) and on this basis "decreased [Thimes's] sales growth by half in

10  each successive year from 2019 to 2022 to be in the range of the Ecommerce and

11  Amazon growth rates by 2022." (JAF 64).

12      From these "data" assumptions, Goedde concludes "Lost Amazon Sales" of

13  either $15.8 million or $36.4 million dollars, depending on whether indexed to inflation

14  or a made-up growth factor is used. (JAF 65). Goedde concludes that Thimes's "Lost

15  Profits" is either $2.1 million or $6.1 million dollars. (JAF 66). As evident, Goedde's

16  purported analysis "involve[s] numerous variables that [make] any calculation of lost

17  profits inherently uncertain." *Sargon Enterprises, Inc. v. University of Southern*

18  *California*, 55 Cal. 4th 747, 780 (2012).

19      Thimes also fails to account for competitors in a business model involving

20  "purchasing products at a discount from down-stream distributors, typically at close

21  out" and then reselling online, as well as the competition for its "many regular,

22  continuing customers." In *ChromaDex, Inc. v. Elysium Health, Inc*., the court found an

23  expert's lost profits analysis on summary judgment was "simply too speculative,"

24  including the failure to properly analyze comparisons to competitors, finding "[t]here

25  are too many variables involved, including the amount and proportion of nonidentical

26  ingredients, subscription versus single purchase, and price, not to mention the vagaries

27  of consumer choice, to make any reliable prediction as to what consumers would

28  choose if no competitors existed under these circumstances." Case No. 16-02277-CJC

(DFMx), at \*7-8 (C.D. Cal. Jan. 16, 2020). Here, Goedde does not analyze Thimes's competitors who likewise sell products purchased "at a discount from down-stream distributors, typically at close out" and then resell on Amazon, and how that may weigh on future profitability—in other words, there is a no to low barrier of entry for this type of business that was not taken into consideration given that there is nothing unique about the products Thimes sold. (JAF 58). Goedde also fails to take into consideration that customers could buy the same products from other resellers. (JAF 63).

Thimes has the "burden to produce the best evidence available in the circumstances to attempt to establish a claim for loss of profits." *S.C. Anderson*, 24 Cal. App. 4th at 536-538 (affirming nonsuit where plaintiff failed to present best evidence available to establish extent of lost profits). Thimes failed to "offer lost-profit evidence based on more relevant comparators, a rigorous accounting, or expert testimony fit to the facts and supported by a reliable methodology. Instead, [Thimes] relied on wildly-optimistic and conclusory expert valuations, which, rather than the best evidence available, offer no reasonable basis for realistically assessing [Thimes's] lost profits." *Goodness Films, LLC v. TV One, LLC*, No. CV 12-8688-GW (JEMx), 2014 WL 12594201, at \*4 (C.D. Cal. Aug. 28, 2004) (granting partial summary judgment where there was no admissible evidence capable of proving plaintiff's lost profits with reasonable certainty).

Summary judgment should be granted; otherwise, it "would invite the jury to engage in wholesale speculation as to the amount of damages." *Nixon-Egli Equip.*, 949 F. Supp. at 1446; *see also Goodness Films*, 2014 WL 12594201, at \*4 (same). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**B.     Thimes's Legal Argument:  Thimes Has Presented Triable Issues as to Causation and Damages.**

TP-Link conflates the separate elements of causation and damages.  This is due to tactical reasons, as it never conferred with counsel as to the issue of causation and is thus trying to sweep it under the topic of damages.  But regardless, TP-Link's arguments as to both fail to establish that no triable issue exists as a matter of law.

1.     <u>TP-Link Failed to Meet and Confer Regarding Causation</u>.

On August 15, 2022, counsel for the parties engaged in the requisite conference of counsel by videoconference.  (JAF 88.)   During that conference, the lawyers thoroughly discussed all the issues raised in TP-Link's motion for summary judgment, except that with respect to issue four, TP-Link's counsel only stated that Thimes's claims for lost profits was entirely speculative and lacks admissible evidence to show reasonable certainty for its claimed damages.  (JAF 89.)   TP-Link's counsel also specifically identified three cases to support that argument—*Sargon*, *Goodness*, and *Nixon-Egli*.  (*Id.*)  As the Court can see for itself in this brief, TP-Link has not cited any of those cases for anything relating to proximate causation.

Whether due of gamesmanship or inadvertence, TP-Link's failure to discuss its arguments regarding causation with Thimes is a violation of Local Rule 7-3 and this Court's MSJ Order.  (ECF No. 172 at 3.)  The Court should summarily deny TP-Link's motion with respect to the causation issue.  *See Bustillos v. W. Covina Corp. Fitness, Inc.*, No. 2:21-CV-04433-SB-AFM, 2022 WL 423396, at *2 (C.D. Cal. Jan. 3, 2022) (denying motion for class certification partly due to failure to comply with LR 7-3).

2.     <u>TP-Link Argues the Wrong Standard for Proximate Causation</u>.

TP-Link begins with the non-controversial proposition that "Thimes has a burden of demonstrating that it was as a result of TP-Link's conduct that it suffered damages"—i.e., proximate causation.  *Supra* at 36.  But it veers off into the wholly unsupported notion that Thimes must prove a "'but for' world that excludes only the at-issue notifications to Amazon," and that Thimes and its damages expert does not try

1    to reconstruct this world. *Id.*

2           This is a confusing argument for many reasons. For one, this is not Thimes's

3    motion, so it does not need to "prove" proximate causation. For another, Dr. Goedde

4    does not try to prove proximate causation because he is **a damages expert**. Thimes

5    has consistently alleged that it was expelled from the Amazon Marketplace because of

6    TP-Link's false counterfeiting complaints, and that its damages are its lost profits from

7    not being allowed to sell on the Amazon Marketplace. (*See, e.g.*, ECF No. 178 ¶¶ 64,

8    71.) As TP-Link admits, Dr. Goedde's damages model calculates those lost profits

9    based on the assumption that in a but-for world, Thimes would have continued to sell

10   on the Amazon Marketplace. (JAF 56.)

11          TP-Link's argument is also confusing because it cites CACI 3903N in support

12   of its proximate causation argument. *Supra* at 36. CACI 3903N, however, is a jury

13   instruction about how to calculate lost profits, not an instruction about proximate

14   causation. As is clear from the language of the instruction itself, as well as its

15   accompanying Sources and Authority section, the instruction is intended to inform the

16   jury that lost profits cannot be grounded on overly speculative assumptions about a

17   nascent business or venture that the defendant disrupted. That is, "'where the operation

18   of an **unestablished** business is prevented or interrupted, damages for prospective

19   profits that might otherwise have been made from its operation are not recoverable for

20   the reason that their occurrence is uncertain, contingent, and speculative.'" *Sargon*, 55

21   Cal. 4th at 774 (emphasis added). Here, TP-Link never argues that Thimes was an

22   unestablished business. To the contrary, TP-Link admits that Dr. Goedde calculated

23   his damages models from Thimes's historical financial statements. (JAF 61.)

24          Now, the actual jury instruction that pertains to proximate causation is CACI

25   430. *Hardeman v. Monsanto Co.*, 997 F.3d 941, 968-69 (9th Cir. 2021). Under

26   California law, "[a] substantial factor in causing harm is a factor that a reasonable

27   person would consider to have contributed to the harm. It must be more than a remote

28   or trivial factor. **It does not have to be the only cause of the harm**." *See* CACI 430

(emphasis added).  *See also Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968-69 (1997) ("California has definitively adopted the substantial factor test of the Restatement Second of Torts for cause-in-fact determinations.  Under that standard, a cause in fact is something that is a substantial factor in bringing about the injury.") (internal citations omitted).  Thimes need only show that "the contribution of the individual cause be more than negligible or theoretical… a very minor force that does cause harm is a substantial factor."  *Bockrath v. Aldrich Chemical Co., Inc.*, 21 Cal. 4th 71, 79 (1999) (cleaned up) (citations omitted).  *See also Grancare*, 889 F.3d at 551 ("California applies a broad 'substantial factor' test for legal causation, and Thrower's heirs need only demonstrate a reasonable possibility that Rhode's actions played a role in Thrower's death that was not merely 'infinitesimal' or 'theoretical.'") (citing *Bockrath*, 21 Cal. 4th at 79).

Therefore, for this motion, TP-Link needs to demonstrate that the undisputed evidence shows that, as a matter of law, its submission of 73 complaints played only a "negligible," "infinitesimal," or "theoretical" role in causing Amazon to expel Thimes.  But TP-Link has not even tried to do that.  It instead impermissibly attempted to shift the burden to Thimes under an erroneous standard.  For that reason, the Court should deny TP-Link's motion for summary judgment as to proximate causation.

> 3. <u>TP-Link's Complaints Played More than an Infinitesimal Role in Causing Amazon to Expel Thimes</u>.

Even if the Court decides to substantively consider the issue of proximate causation, the evidence nevertheless establishes that there is a triable issue of fact as to proximate causation, as shown below.

***First***, TP-Link submitted 73 different complaints to Amazon, between January 12, 2018 and July 20, 2018, alleging that Thimes was selling counterfeit TP-Link products.  (JAF 90.)  TP-Link points out that Thimes identified over a hundred documents pertaining to "any concerns, claims, or complaints regarding" Amazon. (JAF 36.)  But using simple arithmetic, and even if one assumes that each document

represented a single complaint, one can see that TP-Link was single-handedly responsible for at least half of all the total complaints.  The reality, as shown below, is that TP-Link represented almost all of the complaints that had been filed against Thimes.  This is not surprising as TP-Link had Amazzia submit complaint after complaint, day after day, with the specific goal of removing Thimes.  (JAF 90-91.)

**Second**, as experienced Amazon sellers are aware, the more intellectual property complaints that are filed against an Amazon seller, the more likely that Amazon will suspend and then expel that seller from the Amazon Marketplace.  (JAF 92.)[6]

**Third**, none of TP-Link's examples of Thimes's supposed violations of Amazon's policies establish that, as a matter of law, Thimes's expulsion from Amazon could only have been caused by something other than TP-Link's complaints. For example, TP-Link contends that, on May 5, 2018, Amazon sent Thimes a notice concerning Complaint ID 5027462061 where a rights owner contested the authenticity of numerous products.  *Supra* at 9.  But the evidence reveals that Amazon sent this May 5, 2018 notice to Thimes in error, as Thimes did not list or sell—and had never sold—any of the products identified in the "list of over 40 products." (JAF 93.)  Thimes informed Amazon of the error after receiving that May 5, 2018 notice (and had notified Amazon of the same concerning a previous notice also sent in error).  (JAF 94.)  Moreover, Thimes has produced in discovery an Excel spreadsheet identifying every product it sold on the Amazon Marketplace and none of the ASINs listed in the May 5, 2018 notice appear in these spreadsheets.  (JAF 93.)

TP-Link next points to a May 7, 2018 notice where Amazon informed Thimes that its "selling privileges have been removed," arguing that "[t]he May 7 notice from Amazon does not mention TP-Link."  *Supra* at 9.  TP-Link tells only half the story. Thimes appealed this suspension and, on May 9, 2018, Amazon responded by asking for more information and identifying TP-Link as the source of the complaint.  (JAF

---

[6] Thimes will be subpoenaing William Fikhman for a deposition.  Fed. R. Civ. P. 56(d).

96.)  And in any event, as TP-Link admits, Amazon subsequently reinstated Thimes. Amazon has also admitted to sending out erroneous notices to Thimes.  (JAF 95.)

TP-Link then points to a series of notices where Amazon told Thimes of rights owners complaining about the authenticity of products.  *Supra* at 9.  These notices concern Complaint IDs 5032701841, 5035577421, 5039733671, 5041593911, 85900737, and 5028597371, each identifying various products by ASINs that Thimes was allegedly selling counterfeit versions of.  (JAF 39 & 40.)  Like the May 5, 2018 notice discussed above, Amazon sent these notices to Thimes in error, as Thimes did not list or sell—and had never sold—any of the products identified therein.  (JAF 98.) Thimes's sales transaction history confirms this fact.  (*Id.*)  That "[t]he May 10 notice from Amazon does not mention TP-Link" is thus irrelevant.  *Supra* at 9. Furthermore, after May 11, 2018, Thimes did not receive any counterfeiting notices concerning products it did not sell, so the implication is that none of those prior notices played a role in its permanent suspension.  (JAF 99.)

TP-Link's reference to Thimes's suspension on May 9, 2018, and the fact that the notice "does not mention TP-Link," is likewise irrelevant.  *Id.*  That is because the evidence shows that Amazon reinstated Thimes on May 11.  (JAF 97.)

TP-Link next argues that Thimes was "caught data mining" and "Amazon closed its account on June 28, 2018."  *Supra* at 9.  Again, TP-Link tells only half the story.  Thimes successfully appealed this policy warning, explaining that its former developer used a script on Thimes's seller account to identify the hazardous material status of products Thimes listed on the Amazon Marketplace for "cross checking potential safety violations in a preventative manner."  (JAF 100-101.)  Amazon accepted Thimes's appeal and reinstated its account on July 8, 2018.  (JAF 102.)

Regarding the August 3, 2018 notice concerning four products Thimes sold, Thimes promptly responded to Amazon and provided the information requested, i.e., "[c]opies of invoices or receipts from [its] supplier" and "[c]ontact information for [its] supplier."  (JAF 103.)  Thimes also provided Amazon with a "Plan of Action to

prevent future authenticity concerns," which included only purchasing from "authorized distributors" and performing "a gull inspection of orders … to ensure product is authentic." (JAF 104.) As to the August 22, 2018 notice from 3PM Solutions, 3PM subsequently retracted its complaint against Thimes and stated that it "never intended to file an infringement complaint against Thimes." (JAF 105.) But with TP-Link having filed 73 complaints against Thimes up to that point, the 3PM complaint was "the straw that broke the camel's back." (JAF 48.)

Finally, TP-Link argues that Thimes has not shown why it was "somehow precluded from selling on other platforms or through other channels." *Supra* at 36. TP-Link provides no explanation as to why, even if true, that would somehow entitle it to summary judgment as to Thimes's damages claims. But nonetheless, publicly available sources show that Amazon dominates online retail in the United States. (JAF 106.) Given Amazon's sheer dominance in online retail, forcing Thimes to only "sell[] on other platforms or through other channels" means less customer exposure and fewer sales. There is also a more practical concern: Amazon offers logistical services not offered by its competitors like Wal-Mart and eBay. (JAF 107.) Without Amazon's "Fulfillment by Amazon (FBA)" service, Thimes would need to maintain employees and warehousing to handle logistics. (JAF 108.) Such overhead costs would make it impossible for Thimes to stay cost-competitive against sellers with existing logistics departments. (JAF 109.)

With all justifiable inferences drawn in Thimes's favor, TP-Link cannot credibly contend that the evidence shows, that as a matter of law, TP-Link's 73 complaints played only a "negligible" or "infinitesimal" or "theoretical" role in causing Amazon to expel Thimes.

### 4.    Dr. Goedde's Damages Model Is Valid.

Turning from proximate causation to damages, TP-Link criticizes Thimes's lost profit calculations as "speculation about the optimism of Thimes's viability and growth as a company." *Supra* at 36. TP-Link's critiques are contrary to law, and its

1    reliance on the authorities cited are misplaced.

2           ***First***, all of TP-Link's arguments are based on its own (self-serving) perception

3    as to how damages should be calculated—i.e., that Dr. Goedde improperly assumes

4    Thimes would continue to receive product from third party vendors, that he did not

5    calculate lost profits based on Thimes's entire business history, that he should have

6    calculated some other growth rate besides inflation or Amazon's sales, etc.  These are

7    all critiques that go to the weight of Dr. Goedde's expert opinion, not to its

8    admissibility (and certainly not to whether, as a matter of law, Thimes has failed to

9    prove damages at all).  *See Santa Clarita Valley Water Agency v. Whittaker Corp.*,

10   No. 2:18-CV-06825-SB-RAO, 2021 WL 2549066, at *3 (C.D. Cal. Apr. 5, 2021)

11   ("While Plaintiff's 'numerous criticisms' of the expert's opinion 'are not to be taken

12   lightly,' the 'weight to be given' to that opinion 'is an issue best left to the jurors to

13   decide in trial.'") (citation omitted).  Moreover, Mr. Eisenberg will be supplying the

14   foundation behind the assumptions made by Dr. Goedde (e.g., the ease in which

15   Thimes was obtaining close-out offers from third-party vendors during the 2+ years it

16   sold on the Amazon Marketplace).

17          ***Second*** and strikingly, TP-Link omits any discussion as to what it means to

18   calculate damages with "reasonable certainty."  California law holds that "[i]t is

19   enough to demonstrate a reasonable probability that profits would have been earned

20   except for the defendant's conduct." *S. C. Anderson*, 24 Cal. App. 4th at 536.  "The

21   law requires only that **some reasonable basis** of computation of damages be used,

22   and the damages may be computed even if the result reached is an approximation."

23   *Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. 18-CV-2133 MWF (MRWx), 2021 WL

24   1146029, at *8 (C.D. Cal. Feb. 8, 2021) (emphasis in original).  The type of evidence

25   necessary to support business damages turns on whether the business was established.

26   *Id.* (citing  *Sargon*, 55 Cal. 4th at 774.  A business is established if there is "a 'track

27   record' by which to base the projections of future lost profits[.]" *Orozco*, 36 Cal.

28   App. 5th at 399.  "Historical data, such as past business volume, supply an acceptable

1  basis for ascertaining lost future profits." *Id.* at 398.

2       Again, there is no dispute that Thimes was an "established" business. *See id.*
3  (finding business that had operated for at least one year was mischaracterized as
4  "unestablished" and there was sufficient evidence "to support the occurrence of lost
5  profits damages"). Thimes has a multi-year "track record" of sales on the Amazon
6  Marketplace, which began in 2016 and continued until Amazon expelled Thimes on
7  August 27, 2018. (JAF 59-61.) And here, Dr. Goedde based his calculations on
8  Thimes's "past volume of business" and "other provable data relevant to the probable
9  future sales"—i.e., Thimes's profit and loss statements from its sales history on the
10  Amazon Marketplace. *Sargon Enterprises*, 55 Cal. 4th at 774, 778 ("[a]n established
11  company may base its claim to future profits on evidence of its past profits."). (*See
12  also* JAF 61.) Those profit and loss statements were provided by InventoryLab,
13  which Amazon describes as "an all-in-one set of mobile and web-based tools you can
14  use to streamline your business." (JAF 112.) InventoryLab generates financial
15  reports for sellers by pulling and syncing the seller's data from Amazon's Merchant
16  Web Services Application Programming interface. (JAF 113.) Such "historical data"
17  and "evidence of its past profits" constitutes "an acceptable basis for ascertaining lost
18  future profits" under California law.[7] *Orozco*, 36 Cal. App. 5th at 398; *Sargon
19  Enterprises*, 55 Cal. 4th at 778. TP-Link's critique that Dr. Goedde failed to consider
20  "the profits and losses for the company as a whole" also misses the mark. *Supra* at
21  37. Thimes's sales on the Amazon Marketplace constituted almost all of its business
22  prior to its expulsion from that platform. (JAF 114.)

23       ***Fourth***, all of TP-Link's cited cases are inapposite. Starting with *ChromaDex*,
24  while TP-Link accurately copied-and-pasted favorable language from the opinion, it
25  strategically excluded the Court's reasoning that led to the cited conclusion. At issue

26

27  ────────────────
28  [7] In addition, Amazon is in the process of delivering to Thimes a copy of its native
    Amazon-generated sales records (as well as the actual TP-Link complaints).

1  was defendant's counterclaim alleging that plaintiff breached the exclusivity provision
2  of a supply agreement by allowing defendant's competitors to sell products containing
3  certain drug ingredients.  2020 WL 1279236, at *6.  Defendant faced the "major
4  obstacle" of trying to "assess how many people who bought competing products would
5  have bought [defendant's] product … in the but-for world in which none of these
6  [competing] products were available." *Id.* at *7.  The Court found the expert's
7  methodology a "tenuous stretch," "too speculative," and "a shot in the dark riddled
8  with speculation" because the competitor's products (1) were "not exactly equivalent"
9  to defendant's, (2) offered different "characteristics and features," (3) offered "very
10 different proportions" of drug ingredients, (4) were sold as "single purchase" (versus
11 defendant's "continuing subscription"), and (5) cost $12 less per bottle than
12 defendant's product.  *Id.*  The Court further found that the expert "made several
13 assumptions that 'were inherently uncertain, contingent, unforeseeable and
14 speculative," e.g., "that consumers would regard [the drug ingredients] as equivalent
15 in terms of therapeutic effect," and "that a competing product … is equivalent to 40
16 percent of [defendant's product]." *Id.* at *8.  The Court found the expert's analysis
17 "too speculative" because "[t]here are too many variables involved." *Id.*

18        Literally none of these "variables" or "assumptions" the *ChromaDex* court found
19 to be "speculative"  applies here.  That's because the products Thimes sold on the
20 Amazon Marketplace are fungible and "exactly equivalent" to the products sold by
21 other resellers on the Amazon Marketplace—there are no "variables" involved.
22 Indeed, TP-Link admits that "there is nothing unique about the products Thimes sold,"
23 and that "customers could buy the same products from other resellers." *Supra* at 38.
24 *ChromaDex* is inapposite.

25         TP-Link fares no better with *Goodness Films*.  Plaintiffs there sought to recover
26 lost profits "for lost screen credits and new-media licensing royalties."  2014 WL
27 12594201, at *2.  Because the Court had previously granted defendant's *Daubert*
28 motion that prohibited plaintiffs' experts from testifying about the amount of those

1   damages, the Court found that "Plaintiffs do not have *any* admissible evidence

2   regarding the *amount* of their lost profit damages."  *Id* (emphasis in original).  Like

3   *ChromaDex*, literally nothing from the reasoning in *Goodness Films* applies here.  As

4   Dr. Goedde makes clear, his calculations of Thimes's lost profits are based solely on

5   "case-specific evidence" that are "tethered to the facts of the case"—i.e., he "calculated

6   profits from sales of [Thimes] products on Amazon from profit and loss statements

7   provided   by   Amazon   and   reported   in   [Thimes's]   accounting   software

8   (inventorylab.com) through July 2018."  (JAF 61.)

9              5.    Mr. Eisenberg May Opine as to Thimes's Damages.

10       Finally, TP-Link's motion fails because it is premised on the incorrect belief

11   that only Dr. Goedde may testify as to damages.  Mr. Eisenberg, as the owner-

12   operator of Thimes, may also testify as to its lost profits.  *See* Fed. R. Evid. 701,

13   Advisory Committee Notes—2000 Amendment ("For example, most courts have

14   permitted the owner or officer of a business to testify to the value or projected profits

15   of the business, without the necessity of qualifying the witness as an accountant,

16   appraiser, or similar expert.").  *See also Kao v. Snow Monster Inc.*, No. CV 17-

17   08934-RSWL-GJS, 2019 WL 13031928, at *1 (C.D. Cal. Nov. 1, 2019) ("Courts

18   have routinely allowed owners or officers of businesses to testify to the profits of the

19   business without qualifying the witness as an expert.").

20       Here, Mr. Eisenberg is also presenting an opinion about Thimes's lost profits

21   that is rationally based on his perception and experience in running the company.

22   (JAF 116.)  At the time of Thimes's suspension, it was making $100,000 in net

23   monthly profits.  (JAF 117.)  It was always putting its profits into purchasing

24   additional inventory and growing the business, due to the abundant supply

25   opportunities that Mr. Eisenberg always received.  (JAF 118-119.)  Thimes was a

26   lean operation (due to Amazon's logistics) and it also had access to substantial

27   amounts of capital.  (JAF 120-121.)  Accordingly, if TP-Link had not caused

28   Thimes's expulsion from the Amazon Marketplace, Mr. Eisenberg opines that

Thimes would have continued to have at least $100,000 in monthly profits from August 2018 through December 2022—likely far more than that, given the opportunities to purchase more and more inventory with the added cash flow.  (JAF 122-126.)  Indeed, just from the loss of the opportunity to sell TP-Link products (which was very lucrative for Thimes and which Thimes continuously received supply offers), Mr. Eisenberg opines that Thimes would have had nearly $2 million in lost profits during that time.  (JAF 127-132.)  The reasonableness of Mr. Eisenberg's opinion is one for the jury to decide.

## X.  CONCLUSION

### A.  TP-Link's Conclusion

For the foregoing reasons, TP-Link respectfully requests that the Court grant its motion for summary judgment (or partial summary judgment) and dismiss Counts I and II of Thimes's Amended Fifth Amended Complaint.

### B.  Thimes's Conclusion

For the foregoing reasons, the Court should deny TP-Link's motion for summary judgment in its entirety.

1   Dated:  September 9, 2022        LTL ATTORNEYS LLP

2

3                                   By:    /s/ Heather F. Auyang

4                                          Joe H. Tuffaha (SBN 253723)
                                           joe.tuffaha@ltlattorneys.com
5                                          Prashanth Chennakesavan (SBN 284022)
                                           prashanth.chennakesavan@ltlattorneys.com
6                                          Heather F. Auyang (SBN 191776)
                                           heather.auyang@ltlattorneys.com
7                                          LTL ATTORNEYS LLP
8                                          300 South Grand Ave., 14th Floor
9                                          Los Angeles, CA 90071
                                           Telephone: (213) 612-8900
10                                         Facsimile: (213) 612-3773

11                                         Attorneys for Defendant TP-Link USA
12                                         Corporation

13

14  Dated:  September 5, 2022        GAW | POE LLP

15

16                                  By:   /s/ Randolph Gaw

17                                         Randolph Gaw (S.B. #223718)
                                            rgaw@gawpoe.com
18                                         GAW | POE LLP
                                           4 Embarcadero, Suite 1400
19                                         San Francisco, CA 94111
                                           Telephone: (415) 766-7451
20                                         Facsimile: (415) 737-0642
21
                                           Attorneys for Plaintiff Thimes Solutions
22

23

24

25

26

27

28

JOINT BRIEF RE: TP-LINK'S MOTION FOR SUMMARY JUDGMENT