1  LTL ATTORNEYS LLP
2  Joe H. Tuffaha (SBN 253723)
     joe.tuffaha@ltlattorneys.com
3  Prashanth Chennakesavan (SBN 284022)
     prashanth.chennakesavan@ltlattorneys.com
4  Heather F. Auyang (SBN 191776)
     heather.auyang@ltlattorneys.com
5
6  Patice A. Gore (SBN 258776)
     patice.gore@ltlattorneys.com
7  300 South Grand Ave., 14th Floor
8  Los Angeles, CA 90071
   Tel: (213) 612-8900
9  Fax: (213) 612-3773

10
11  Attorneys for Defendant and
   Counterclaimant TP-Link USA Corporation
12
   (additional counsel listed on following page)
13

14

15              UNITED STATES DISTRICT COURT
16              CENTRAL DISTRICT OF CALIFORNIA

17                  WESTERN DIVISION

18  THIMES SOLUTIONS INC.,              CASE NO.: 2:19-cv-10374-SB-E

19
20              Plaintiff,             **JOINT APPENDIX OF EVIDENCE
                                       REGARDING TP-LINK USA'S
21       v.                            MOTION FOR SUMMARY
                                       JUDGMENT OR PARTIAL
22  TP-LINK USA CORPORATION, and       SUMMARY JUDGMENT**
23  AUCTION BROTHERS, INC. d/b/a
   AMAZZIA,                            Judge: Hon. Stanley Blumenfeld, Jr.
24
25              Defendants.            Date: Friday Oct. 7, 2022
                                       Time: 8:30 a.m.
26                                     Courtroom:6C

27
                                       Complaint Filed:May 29, 2019
28                                     Amended 5th Amended

                                                     No. 2:19-cv-10374-SB-E

1
2
3
4
5
6
7
8
9
10
11

Complaint Filed:May 27, 2022
Trial Date:Jan. 9, 2023

TP-LINK USA CORPORATION,

Counterclaimant,

v.

THIMES SOLUTIONS INC.,

Counter-Defendant.

12   Pursuant to the Court's May 23, 2022 Order Re: Motions for Summary Judgment
13   (ECF No. 172), Defendant TP-Link USA Corporation and Plaintiff Thimes Solutions,
14   Inc. hereby submit this Joint Appendix of Evidence in connection with TP-Link's
15   Motion for Summary Judgment or Partial Summary Judgment.
16   Exhibits 1-23 are referenced in the Declaration of Heather F. Auyang filed
17   concurrently herewith as Exhibit 24.

18
19
20
21
22
23
24
25
26
27
28

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

No. 2:19-cv-10374-SB-E

# JOINT APPENDIX OF EVIDENCE

| TABLE OF CONTENTS | |
|---|---|
| **EXHIBIT** | **EVIDENCE** |
| 1 | Excerpts from Thimes's <u>First</u> Supplemental Responses to TP-Link's Interrogatories, Set One, served on July 28, 2022 |
| 2 | Magistrate Judge Eick's August 16, 2022 Order (ECF No. 207) |
| 3 | Excerpts from Thimes's <u>Second</u> Supplemental Responses to TP-Link's Interrogatories, Set One, served on August 19, 2022 |
| 4 | Excerpts from Thimes's Responses to TP-Link's Requests for Admission, Set One, served July 27, 2022 |
| 5 | Ninth Circuit Memorandum (ECF No. 155) |
| 6 | Order on a Motion Dismiss (ECF No. 125) |
| 7 | Excerpts from Thimes's Amended Fifth Amended Complaint (ECF No. 178), filed on May 27, 2022 |
| 8 | TP-Link's U.S. Trademark Registration No. 3,175,495 |
| 9 | Bates No. THIMES00302 |
| 10 | Excerpts from Thimes's Original Complaint (ECF No. 1), filed on May 29, 2018 |
| 11 | Bates Nos. THIMES01119-THIMES01120 |
| 12 | Bates No. THIMES00310 |
| 13 | Bates Nos. THIMES00756, THIMES00738, THIMES00732, THIMES00734, and THIMES00736 |
| 14 | Bates No. THIMES00741 |
| 15 | Bates Nos. THIMES00739-THIMES00740 |
| 16 | Bates No. THIMES00311 |
| 17 | Bates Nos. THIMES01130-THIMES01131 |

| 18 | Bates Nos. THIMES00286-THIMES00287 |
|----|-----|
| 19 | Bates No. THIMES00307 |
| 20 | Thimes's Damages Expert Report of Alan Goedde |
| 21 | Copy of the webpage, entitled "Report Infringement," located at https://www.amazon.com/gp/help/reports/infringement. |
| 22 | Copy of the webpage, entitled "Report Infringement," located at https://www.amazon.com/gp/help/reports/infringement, with the dropdown menu listing the types of infringement reports. |
| 23 | Copy of the webpage, entitled "Report Infringement," located at https://www.amazon.com/gp/help/reports/infringement, with the dropdown menu for "[t]he primary complaint pertains to trademark concerns." |
| 24 | Declaration of Heather F. Auyang |
| 25 | Declaration of Alan Goedde |
| 26 | Declaration of Victor Meng |
| 27 | Copy of the webpage entitled "Featured Offer eligibility," located at https://sellercentral.amazon.com/help/hub/reference/external/G200418100. |
| 28 | Copy of the webpage, entitled "How the Featured Offer works," located at https://sellercentral.amazon.com/help/hub/reference/external/G37911. |
| 29 | Copy of the webpage entitled "FBA: Let Amazon pick, pack, and ship your orders," located at https://sell.amazon.com/fulfillment-by-amazon. |
| 30 | Excerpts of Thimes Solutions Inc.'s second supplemental responses to TP-Link's First Set of Interrogatories |
| 31 | Copy of market share data, entitled *Market share of leading retail e-commerce companies in the United States as of June 2022*, available |

| | | |
|---|---|---|
| 32 | | Copy of the webpage entitled "InventoryLab," located at the Amazon Selling Partner Appstore at https://sellercentral.amazon.com/selling-partner-appstore/dp/amzn1.sellerapps.app.b7119005-ffec-4c66-bfcd-11ecb0cfd889. |
| 33 | | Copy of the webpage entitled "Amazon Anti-Counterfeiting Policy," located at https://sellercentral.amazon.com/help/hub/reference/external/201165970 |
| 34 | | Excerpts of transcript of the deposition of William Fikhman, the FRCP 30(b)(6) person most knowledgeable for Amazzia, taken in the matter of *Solu-Med, Inc. v. Youngblood Skin Care Products, LLC* No. 0:19-CV-60487-RKA (S.D. Fla). |
| 35 | | Complaint submitted to Amazon by Amazzia on behalf of Youngblood. |
| 36 | | Bates No. TP000005-TP000006 |
| 37 | | Aug. 17, 2022 e-mail from Heather Auyang to Victor Meng, et al., Subject: RE: Thimes Solutions Inc. v. TP-Link: 30(b)(6) Depo Notice |
| 38 | | Declaration of Avi Eisenberg |
| 39 | | Bates Nos. THIMES486658, THIMES508144, THIMES466632, THIMES483643, THIMES479847, THIMES524239, and THIMES466612 |
| 40 | | Bates No. THIMES001367 (Microsoft Excel file, manually lodged) |
| 41 | | Bates No. THIMES001368 (Microsoft Excel file, manually lodged) |
| 42 | | Bates No. THIMES001369 (Microsoft Excel file, manually lodged) |
| 43 | | Bates No. THIMES001370 (Microsoft Excel file, manually lodged) |

(row before 32:) from the website Statista at https://www.statista.com/statistics/274255/market-share-of-the-leading-retailers-in-us-e-commerce/.

| 44 | Bates No. THIMES001371 (Microsoft Excel file, manually lodged) |
| 45 | Bates No. THIMES00256 (Microsoft Excel file, manually lodged) |
| 46 | Bates No. THIMES00257 (Microsoft Excel file, manually lodged) |
| 47 | Bates No. THIMES184331 – 184333 |
| 48 | Bates No. THIMES185565 |
| 49 | Bates No. THIMES00304 |
| 50 | Bates No. THIMES00305 |
| 51 | Bates No. THIMES00264 – THIMES00265 |
| 52 | Bates No. THIMES00306 |
| 53 | Bates No. THIMES00604 – THIMES00624 |
| 54 | Bates No. THIMES00066 |
| 55 | Screenshot from Thimes's Priceyak account re January 18, 2018 purchase by "Tom Lei" of TP-Link AC5400 wi-fi router |
| 56 | January 19, 2019 e-mail from Amazon to Avi Eisenberg, Subject: Amazon.com has shipped the item you sold |
| 57 | UPS delivery notification for Tracking Identification Number 1Z975W3X0306934504 |
| 58 | Bates No. THIMES01325 |
| 59 | Declaration of Mikhail Fikhman |
| 60 | Bates No. AMAZZIA000070 – AMAZZIA000072 |
| 61 | Sample complaint submitted by Amazzia to Amazon for Youngblood |
| 62 | Bates No. AMAZZIA000001 – AMAZZIA000002 |
| 63 | Bates No. AMAZZIA000010 – AMAZZIA000013 |
| 64 | Bates No. AMAZZIA000053 – AMAZZIA000057 |
| 65 | Bates No. AMAZZIA000058 – AMAZZIA000059 |
| 66 | Bates No. AMAZZIA000061 – AMAZZIA000064 |

1  Dated:  September 9, 2022      LTL ATTORNEYS LLP

2

3                                          By:    /s/ Heather F. Auayang

4                                               Joe H. Tuffaha (SBN 253723)
                                               joe.tuffaha@ltlattorneys.com
5                                               Prashanth Chennakesavan (SBN 284022)
                                               prashanth.chennakesavan@ltlattorneys.com
6                                               Heather F. Auyang (SBN 191776)
                                               heather.auyang@ltlattorneys.com
7                                               LTL ATTORNEYS LLP
8                                               300 South Grand Ave., 14th Floor
9                                               Los Angeles, CA 90071
                                               Telephone: (213) 612-8900
10                                              Facsimile: (213) 612-3773

11                                              Attorneys for Defendant TP-Link USA
12                                              Corporation

13

14  Dated:  September 5, 2022      GAW | POE LLP

15

16                                         By:   /s/ Randolph Gaw

17                                              Randolph Gaw (S.B. #223718)
18                                                rgaw@gawpoe.com
                                               GAW | POE LLP
19                                              4 Embarcadero, Suite 1400
                                               San Francisco, CA 94111
20                                              Telephone: (415) 766-7451
                                               Facsimile: (415) 737-0642
21
22                                              Attorneys for Plaintiff Thimes Solutions

23

24

25

26

27

28

1         **<u>Attestation Pursuant to Local Rule 5-4.3.4(a)(2)(i)</u>**

2         I hereby attest that all signatories listed above, and on whose behalf the filing is

3 submitted, concur in the filing's content and have authorized the filing.

4

5 DATED:  September 9, 2022       LTL ATTORNEYS LLP

6

7                  By <u>/s/ Heather F. Auyang</u>

8                      Heather F. Auyang

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JAE RE: TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 1

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>Defendant. | Case No. 2:19-cv-10374-SB-E<br><br>**THIMES SOLUTIONS INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:     Defendant TP-Link USA Corporation

RESPONDING PARTY:     Plaintiff Thimes Solutions Inc.

SET NO.:     One

Marketplace.  Defendants submitted 28 complaints to Amazon alleging that Thimes was selling counterfeit products for the specific purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace.  Amazzia has admitted that it submitted the 28 complaints to Amazon with the goal of "[i]mmediate removal of the seller's offer of this counterfeit product."  As a result of Defendants' complaints, Amazon suspended and expelled Thimes from the Amazon Marketplace.  As a result of the expulsion, Thimes was unable to sell its aging inventory, access its funds stored with Amazon, and continue its profitable sales track record on the Amazon Marketplace.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 2:**

Describe in detail element-by-element all facts and circumstances that support or otherwise relate to YOUR claim for trade libel.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome because it requires the statement of "all" facts "that support or otherwise relate to" Plaintiff's claim.  Plaintiff will construe this Interrogatory as requesting the statement of "all material facts" supporting the claim.  Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced.  Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Plaintiff's Amended Fifth Amended Complaint (ECF No. 178) describes the factual basis for Plaintiff's claim for trade libel.  Each of the 28 complaints Defendants submitted to Amazon alleging that Thimes was selling counterfeit products constitutes a disparaging statement that was published to others in writing

1  and induced Amazon not to deal with Plaintiff.  Each of Defendants' 28 complaints

2  constitutes libel per se under California law.

3       In addition, each of the 28 complaints included a statement, submitted under

4  penalty of perjury, that Defendants had a good-faith belief that the content of the

5  complaint is correct and accurate.  Defendants submitted the counterfeiting

6  complaints to Amazon despite knowing the allegations were false.  Thimes

7  purchased the authentic, factory-sealed TP-Link AC5400 routers from The Surplus

8  Company, a reputable supplier that Thimes had dealt with extensively, and TP-

9  Link confirmed the authenticity of the products by purchasing eight of those

10 routers itself.  Furthermore, Defendants submitted the first complaint to Amazon

11 on January 19, 2018, three days before the routers TP-Link purchased from Thimes

12 on the Amazon Marketplace were even delivered to TP-Link.  TP-Link then twice

13 ignored Thimes's requests for the specific basis for TP-Link's counterfeit

14 allegations.

15      Plaintiff will supplement this Interrogatory response as appropriate after

16 discovery is substantially complete.

17 **INTERROGATORY NO. 3:**

18      Describe in detail all facts and circumstances that support or otherwise relate

19 to YOUR claim for compensatory damages, including YOUR damages calculations.

20 **RESPONSE TO INTERROGATORY NO. 3:**

21      Plaintiff objects to this Interrogatory as overbroad and unduly burdensome

22 because it requires the statement of "all" facts "that support or otherwise relate to"

23 Plaintiff's claim.  Plaintiff will construe this Interrogatory as requesting the

24 statement of "all material facts" supporting the claim.  Plaintiff also objects to this

25 Interrogatory as premature because discovery only recently commenced.  Plaintiff

26 further objects to this Interrogatory as duplicative of Interrogatory Nos. 1 and 2.

27 Plaintiff further objects to the definition of "YOUR" as overbroad, and interprets it

28 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

THIMES SUPP. RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

to be customers) of THIMES (including, but not limited to, the date of the statement, the manner in which the statement was conveyed, and the speaker).

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this Interrogatory to the extent it seeks information solely in the possession of Amazzia.  Plaintiff further objects to the term "customers (or entities alleged to be customers) of THIMES" as vague and ambiguous.  Plaintiff further objects to this Interrogatory on grounds of relevance.  Plaintiff also objects to this Interrogatory as premature because discovery only recently commenced. Plaintiff further objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff also alleges that the Interrogatory is unduly burdensome and not proportional to the legitimate needs of discovery to the extent it seeks Plaintiff to describe "the manner in which" Amazzia made any statement to any "customer" of Thimes.

Subject to and without waiving the foregoing objections, based on information reasonably available at this time, Plaintiff responds as follows: Amazzia submitted complaints to Amazon on behalf of TP-Link via Amazon's Notice Infringement Process on the following dates: January 19, 2018, January 21, January 26, 2018, February 14, 2018, February 21, 2018, February 28, 2018, March 2, 2018, March 3, 2018, March 10, 2018, March 13, 2018, March 21, 2018, March 31, 2018, April 2, 2018, April 5, 2018, April 6, 2018, April 7, 2018, April 9, 2018, April 10, 2018, April 11, 2018, April 12, 2018, April 24, 2018, April 25, 2018, April 26, 2018, April 30, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 21, 2018.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 8:**

Identify each customer that YOU contend did not do business with YOU due to a statement by AMAZZIA and the circumstances of that transaction.

THIMES SUPP. RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this Interrogatory to the extent it seeks information solely in the possession of third parties.  Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous.  Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Amazzia's submission of the 28 complaints on behalf of TP-Link to Amazon accusing Plaintiff of selling counterfeit goods induced Amazon to suspend and expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the Amazon Marketplace, the largest e-commerce platform in the world and where half of all online retail sales take place.  Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 9:**

Identify each customer that YOU contend did not do business with YOU due to a statement by TP-LINK USA and the circumstances of that transaction.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this Interrogatory to the extent it seeks information solely in the possession of third parties.  Plaintiff further objects to the term "circumstances of that transaction" as vague and ambiguous.  Plaintiff further objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

1   accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

2   expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the

3   ability to market and transact on the Amazon Marketplace, the largest e-commerce

4   platform in the world and where half of all online retail sales take place.  Following

5   Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018,

6   each customer searching on the Amazon Marketplace for any product that Plaintiff

7   had in stock in its inventory, or would have eventually purchased for re-sale on

8   Amazon in the ordinary course of its business, is a lost transaction.

9        Plaintiff will supplement this Interrogatory response as appropriate after

10   discovery is substantially complete.

11   **INTERROGATORY NO. 10:**

12        Identify each transaction (including sales) which YOU contend did not occur

13   due to a statement by AMAZZIA and the circumstances of that transaction.

14   **RESPONSE TO INTERROGATORY NO. 10:**

15        Plaintiff objects to this Interrogatory to the extent it seeks information

16   concerning a "transaction" that "did not occur."  Plaintiff further objects to the term

17   "circumstances of that transaction" as vague and ambiguous.  Plaintiff further

18   objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes

19   Solutions Inc. d/b/a Universal Goods & Sales.

20        Subject to and without waiving the foregoing objections, Plaintiff responds

21   as follows:  per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

22   accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

23   expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the

24   ability to market and transact on the Amazon Marketplace, the largest e-commerce

25   platform in the world and where half of all online retail sales take place.  Following

26   Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018,

27   each customer searching on the Amazon Marketplace for any product that Plaintiff

28   had in stock in its inventory, or would have eventually purchased for re-sale on

1   Amazon in the ordinary course of its business, is a lost transaction.

2       Plaintiff will supplement this Interrogatory response as appropriate after

3   discovery is substantially complete.

4   **INTERROGATORY NO. 11:**

5       Identify each transaction (including sales) which YOU contend did not occur

6   due to a statement made by TP-LINK USA and the circumstances of that

7   transaction.

8   **RESPONSE TO INTERROGATORY NO. 11:**

9       Plaintiff objects to this Interrogatory to the extent it seeks information

10  concerning a "transaction" that "did not occur."  Plaintiff further objects to the term

11  "circumstances of that transaction" as vague and ambiguous.  Plaintiff further

12  objects to the definition of "YOU" as overbroad, and interprets it to mean Thimes

13  Solutions Inc. d/b/a Universal Goods & Sales.

14       Subject to and without waiving the foregoing objections, Plaintiff responds

15  as follows:  per TP-Link's instruction, Amazzia submitted 28 complaints to Amazon

16  accusing Plaintiff of selling counterfeit goods that induced Amazon to suspend and

17  expel Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the

18  ability to market and transact on the Amazon Marketplace, the largest e-commerce

19  platform in the world and where half of all online retail sales take place.  Following

20  Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018,

21  each customer searching on the Amazon Marketplace for any product that Plaintiff

22  had in stock in its inventory, or would have eventually purchased for re-sale on

23  Amazon in the ordinary course of its business, is a lost transaction.

24       Plaintiff will supplement this Interrogatory response as appropriate after

25  discovery is substantially complete.

26  **INTERROGATORY NO. 12:**

27       Describe in detail any concerns, claims, or complaints regarding THIMES or

28  any account run by AVRAHAM EISENBERG, including, but not limited to,

Dated:  July 28, 2022

GAW | POE LLP

By:

Randolph Gaw
Attorneys for Plaintiff
Thimes Solutions Inc.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10374-SB(Ex) | Date | August 16, 2022 |
|---|---|---|---|
| Title | THIMES SOLUTIONS, INC. V. TP-LINK USA CORPORATION, ET AL. | | |

| Present: The Honorable | Charles F. Eick, United States Magistrate Judge | |
|---|---|---|
| Valencia Munroe | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**        (IN CHAMBERS)

The Magistrate Judge has read and considered all papers filed in support of and in opposition to "TP-Link USA's Motion to Compel Discovery" ("the Motion") filed August 3, 2022. The August 26, 2022 hearing is vacated. The Magistrate Judge has taken the Motion under submission without oral argument.

In opposing the Motion, Plaintiff argues, inter alia, that Defendant TP-Link USA ("Defendant") has failed to comply timely with its own discovery obligations. Such argument presents a non sequitur in the context of the present Motion. See, e.g., Harrison v. Comm'r Gary Lanigan, 2016 WL 3626524, at *2 (D. N.J. July 1, 2016) ("there is no place for 'tit-for-tat' in a court of law. One party's failure to comply with certain rules and procedures is not an excuse for another party to do the same"); Genentech, Inc. v. Trustees of University of Pennsylvania, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011) ("A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent. Nor may a party condition its compliance with discovery obligations on receiving discovery from its opponent.") (citations and quotations omitted).

The Magistrate Judge observes that neither party's positions in the present dispute are entirely reasonable. For example, some of the subject discovery requests seek, without limitation, "all facts and circumstances that . . . relate to [Plaintiff's] claim . . ." (Interrogatories Nos. 1 and 2) and "all documents concerning [Plaintiff's] . . . operation . . ." (Document Request No. 26). Such discovery requests are unreasonably overbroad and disproportionate. See Fed. R. Civ. P. 26(b)(1); Gondola v. USMD PPM, LLC, 223 F. Supp. 3d 575, 589-91 (N.D. Tex. 2016); Yeager v. Fort Knox Security Products, Inc., 2012 WL 1898876, at *3 (D. Utah May 23, 2012). Even so, the discovery thus far provided by Plaintiff in response to many of the subject discovery requests appears to have been seriously insufficient, as well as untimely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374-SB(Ex) | Date | August 16, 2022 |
|---|---|---|---|
| Title | THIMES SOLUTIONS, INC. V. TP-LINK USA CORPORATION, ET AL. | | |

The Motion is granted in part and denied in part as follows:

Interrogatory No. 1:  Denied as not proportional.

Interrogatory No. 2:  Denied as not proportional.

Interrogatory No. 3:  Denied as not proportional.

Interrogatory No. 4:  Granted.

Interrogatory No. 5:  Granted.

Interrogatory No. 8:  Granted, although, if Plaintiff cannot identify any such customer, Plaintiff may so state.

Interrogatory No. 9:  Granted, although, if Plaintiff cannot identify any such customer, Plaintiff may so state.

Interrogatory No. 10:  Granted, although, if Plaintiff cannot identify any such transaction, Plaintiff may so state.

Interrogatory No. 11:  Granted, although, if Plaintiff cannot identify any such transaction, Plaintiff may so state.

Interrogatory No. 12:  Granted, limited to "concerns, claims or complaints regarding" Plaintiff.

Document Request No. 1:  Granted.

Document Request No. 2:  Granted, limited to "concerns, claims or complaints regarding" Plaintiff.

Document Request No. 3:  Granted.

Document Request No. 4:  Granted.

Document Request No. 5:  Granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374-SB(Ex) | Date | August 16, 2022 |
|---|---|---|---|
| Title | THIMES SOLUTIONS, INC. V. TP-LINK USA CORPORATION, ET AL. | | |

Document Request No. 9: Granted as to "TP-Link products," but otherwise denied as not proportional.

Document Request No. 10: Granted.

Document Request No. 11: Denied as not proportional.

Document Request No. 12: Granted as to the request for documents sufficient to show Plaintiff's source of income, but otherwise denied as vague and ambiguous.

Document Request No. 13: Denied as vague, ambiguous and not proportional.

Document Request No. 14: Denied as not proportional.

Document Request No. 17: Denied as not proportional.

Document Request No. 18: Denied as not proportional.

Document Request No. 19: Granted.

Document Request No. 20: Granted.

Document Request No. 22: Granted.

Document Request No. 25: Denied as not proportional.

Document Request No. 26: Denied as not proportional.

To the extent the Motion is granted, on or before August 31, 2022, Defendant must serve supplemental responses and produce all responsive documents other than those documents withheld under claim of the attorney-client privilege or the work product doctrine. Such withheld documents must be identified with particularity on a privilege log served on or before August 31, 2022.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10374-SB(Ex) | Date | August 16, 2022 |
|---|---|---|---|
| Title | THIMES SOLUTIONS, INC. V. TP-LINK USA CORPORATION, ET AL. | | |

On or before August 31, 2022, Plaintiff also shall produce the original metadata for previously produced and currently produced electronically stored information.  See, e.g., Nova Measuring Instruments Ltd. v. Nanometrics, Inc., 417 F. Supp. 2d 1121, 1122 (N.D. Cal. 2006); Williams v. Sprint/United Management Co., 230 F.R.D. 640, 652-56 (D. Kan. 2005).

On or before August 31, 2022, Plaintiff also shall do that which Plaintiff previously promised to do with respect to the subject discovery requests, to the extent Plaintiff has not done so before now.

Except as expressly stated herein, the Motion is denied.

cc:    Judge Blumenfeld
       All Counsel of Record

Initials of Deputy Clerk   VMUN

# EXHIBIT 3

RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
MARK POE (S.B. #223714)
  mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
  markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| THIMES SOLUTIONS INC. | Case No. 2:19-cv-10374-SB-E |
| Plaintiffs, | **THIMES SOLUTIONS INC.'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF INTERROGATORIES** |
| v. | |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA | |
| Defendant. | |

PROPOUNDING PARTY:     Defendant TP-Link USA Corporation

RESPONDING PARTY:     Plaintiff Thimes Solutions Inc.

SET NO.:     One

1   was selling counterfeit products since TP-Link made some of those statements

2   without first performing a test buy of Plaintiff's TP-Link products.  TP-Link also

3   had no basis to have Amazzia assert that Plaintiff was selling counterfeit products

4   because TP-Link's test buys of Plaintiff's TP-Link products showed they were all

5   factory-sealed and unaltered.

6       Each complaint accusing Plaintiff of selling counterfeit products was also an

7   intentional or negligent misrepresentation, as TP-Link knew the complaints were

8   false, or had no reasonable basis for believing that Thimes was selling counterfeit

9   products, when it instructed Amazzia to submit the complaint(s) to Amazon, and

10   TP-Link intended for Amazon to rely on the complaints submitted to take down

11   Plaintiff's listings of TP-Link products so that Plaintiff could not re-sell them on

12   the Amazon Marketplace to consumers.

13       Additionally, Amazzia's repeatedly submitting complaints to Amazon, per

14   instruction from TP-Link, falsely accusing Plaintiff of selling counterfeit TP-Link

15   products is an example of both an "unfair" and a "fraudulent" business practice

16   within the meaning of California's unfair competition law.

17       Plaintiff will supplement this Interrogatory response as appropriate after

18   discovery is substantially complete.

19   **INTERROGATORY NO. 8:**

20       Identify each customer that YOU contend did not do business with YOU due

21   to a statement by AMAZZIA and the circumstances of that transaction.

22   **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

23       Amazzia's submission of the 28 complaints on behalf of TP-Link to Amazon

24   accusing Plaintiff of selling counterfeit goods induced Amazon to terminate its

25   business relationship with Plaintiff, thereby permanently depriving Plaintiff of the

26   ability to do business with Amazon.

27       Amazon's termination of its business relationship also involved it suspending

28   and expelling Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of

the ability to market and transact on the largest e-commerce platform in the world and where half of all online retail sales take place.  Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction.  In reviewing its sales records, concurrently produced as THIMES001367, THIMES001368, THIMES001369, THIMES001370, THIMES001371, Plaintiff has identified the following customers as examples of repeat customers that had purchased various products from Plaintiff between 4 and 17 times: Daniel Robertson, Direct Ordering, Kim Allen, Debbie [last name unknown], Tara Bingham, Frances G. Baker, Timothy John Helland, Omg Procurement, Brankstore Ood, Phyllis Smith-Crossley, Nery Ramirez, Camille Hansen, Paula Tullos, Zeeshan Khan, Amy Overton, David Mcdonald, Sam [last name unknown], Meg Sakka, Kevin Crabtree, Melissa [last name unknown], H. Buehner, Sneha Kabaria, Rigoberto Flores, Jennifer A. Holme, Matthew Roos, Adriana Joyner, Hon C Wong, Steve Pipes, Bridget Estrada, Jon D Friedland, Lisa Hamlin, Nick Santos, Debbie Drobot, Ashley Chan, Kaori Johnson, Christina Ditore, Levi Varner, Guy Underwood, Susan A Floyd, Robert McCormick, Barbara Alesch, Hammad Malik, Lisa [last name unknown], Jessica Wilder, Herbert Hamilton, Randy Black, Cart2india Online, Michael G Argiro, Rick Desmarteau, Wireless Revolution, Zeke Rierson, Mark Zwicker, Jonathan Kirk, Michelle Jenkinson, Hartin, Inc, Yin Kin Yep, Emilia [last name unknown], Joanna Majewska, Katie Pfalz, Laura Simmons-Simon, Annette Marino, Cheryl Klase, Belinda Rivers, Deborah A. Burkholder, Donna F McCreary, Reagann Sweaks, William Valle, Christopher A. Schussler, Kin Yeung, John L Becker, Jennifer M Liebmann, Cynthia Ramey, Alen Boksan, Southwest Community Center, Vic [last name unknown], Igor Golden, Paula Gonzalez, Tamatha Johnson, David Munroe, Fahim Aziz, Nixon Nishimura, Linda [last name unknown], Christine Sato, Omid Davidyan, Katie P, David Chen.  Plaintiff contends that but for its expulsion from

THIMES 2ND SUPP. RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

the Amazon Marketplace, these customers would have continued to make repeated purchases of various products from Plaintiff.

In addition, in reviewing its sales records, Plaintiff has identified approximately 4,092 additional customers that had purchased various products from Plaintiff between two and three times.  As the burden of deriving or ascertaining the names of these specific customers from Plaintiff's sales records will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff hereby directs TP-Link to those sales records: THIMES001367, THIMES001368, THIMES001369, THIMES001370, THIMES001371.

Additionally, many of Plaintiff's sales on Amazon came via the "Buy Box." The "Buy Box" is a purchasing option for Amazon customers to automatically add certain products to their shopping cart, and a seller that qualified for the Buy Box would have customers purchase products directly from them without the customer needing to first click on the seller's webpage.  Since Plaintiff regularly qualified for the "Buy Box," every customer in North America searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory was effectively a customer of Plaintiff, and Plaintiff's expulsion from the Amazon Marketplace meant that it lost the opportunity to transact with those customers.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 9:**

Identify each customer that YOU contend did not do business with YOU due to a statement by TP-LINK USA and the circumstances of that transaction.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Per TP-Link's instruction, Amazzia's submission of the 28 complaints to Amazon accusing Plaintiff of selling counterfeit goods induced Amazon to terminate its business relationship with Plaintiff, thereby permanently depriving Plaintiff of the ability to do business with Amazon.

Amazon's termination of its business relationship also involved it suspending and expelling Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the largest e-commerce platform in the world and where half of all online retail sales take place.  Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction.  In reviewing its sales records, concurrently produced as THIMES001367, THIMES001368, THIMES001369, THIMES001370, THIMES001371, Plaintiff has identified the following customers as examples of repeat customers that had purchased various products from Plaintiff between 4 and 17 times: Daniel Robertson, Direct Ordering, Kim Allen, Debbie [last name unknown], Tara Bingham, Frances G. Baker, Timothy John Helland, Omg Procurement, Brankstore Ood, Phyllis Smith-Crossley, Nery Ramirez, Camille Hansen, Paula Tullos, Zeeshan Khan, Amy Overton, David Mcdonald, Sam [last name unknown], Meg Sakka, Kevin Crabtree, Melissa [last name unknown], H. Buehner, Sneha Kabaria, Rigoberto Flores, Jennifer A. Holme, Matthew Roos, Adriana Joyner, Hon C Wong, Steve Pipes, Bridget Estrada, Jon D Friedland, Lisa Hamlin, Nick Santos, Debbie Drobot, Ashley Chan, Kaori Johnson, Christina Ditore, Levi Varner, Guy Underwood, Susan A Floyd, Robert McCormick, Barbara Alesch, Hammad Malik, Lisa [last name unknown], Jessica Wilder, Herbert Hamilton, Randy Black, Cart2india Online, Michael G Argiro, Rick Desmarteau, Wireless Revolution, Zeke Rierson, Mark Zwicker, Jonathan Kirk, Michelle Jenkinson, Hartin, Inc, Yin Kin Yep, Emilia [last name unknown], Joanna Majewska, Katie Pfalz, Laura Simmons-Simon, Annette Marino, Cheryl Klase, Belinda Rivers, Deborah A. Burkholder, Donna F McCreary, Reagann Sweaks, William Valle, Christopher A. Schussler, Kin Yeung, John L Becker, Jennifer M Liebmann, Cynthia Ramey, Alen Boksan, Southwest Community Center, Vic [last name unknown], Igor Golden, Paula Gonzalez, Tamatha Johnson, David Munroe,

Fahim Aziz, Nixon Nishimura, Linda [last name unknown], Christine Sato, Omid Davidyan, Katie P, David Chen.  Plaintiff contends that but for its expulsion from the Amazon Marketplace, these customers would have continued to make repeated purchases of various products from Plaintiff.

In addition, in reviewing its sales records, Plaintiff has identified approximately 4,092 additional customers that had purchased various products from Plaintiff between two and three times.  As the burden of deriving or ascertaining the names of these specific customers from Plaintiff's sales records will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff hereby directs TP-Link to those sales records: THIMES001367, THIMES001368, THIMES001369, THIMES001370, THIMES001371.  Plaintiff contends that but for its expulsion from the Amazon Marketplace, these customers would have continued to make repeated purchases of various products from Plaintiff.

Additionally, many of Plaintiff's sales on Amazon came via the "Buy Box." The "Buy Box" is a purchasing option for Amazon customers to automatically add certain products to their shopping cart, and a seller that qualified for the Buy Box would have customers purchase products directly from them without the customer needing to first click on the seller's webpage.  Since Plaintiff regularly qualified for the "Buy Box," every customer in North America searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory was effectively a customer of Plaintiff, and Plaintiff's expulsion from the Amazon Marketplace meant that it lost the opportunity to transact with those customers.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 10:**

Identify each transaction (including sales) which YOU contend did not occur due to a statement by AMAZZIA and the circumstances of that transaction.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Per TP-Link's instruction, Amazzia's submission of the 28 complaints to Amazon accusing Plaintiff of selling counterfeit goods induced Amazon to terminate its business relationship with Plaintiff, thereby permanently depriving Plaintiff of the ability to do business with Amazon.

Amazon's termination of its business relationship also involved it suspending and expelling Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the largest e-commerce platform in the world and where half of all online retail sales take place. Following Amazon's expulsion of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory is a lost transaction. In reviewing its sales records, concurrently produced as THIMES001367, THIMES001368, THIMES001369, THIMES001370, THIMES001371, Plaintiff has identified the following customers as examples of repeat customers that had purchased various products from Plaintiff between 4 and 17 times: Daniel Robertson, Direct Ordering, Kim Allen, Debbie [last name unknown], Tara Bingham, Frances G. Baker, Timothy John Helland, Omg Procurement, Brankstore Ood, Phyllis Smith-Crossley, Nery Ramirez, Camille Hansen, Paula Tullos, Zeeshan Khan, Amy Overton, David Mcdonald, Sam [last name unknown], Meg Sakka, Kevin Crabtree, Melissa [last name unknown], H. Buehner, Sneha Kabaria, Rigoberto Flores, Jennifer A. Holme, Matthew Roos, Adriana Joyner, Hon C Wong, Steve Pipes, Bridget Estrada, Jon D Friedland, Lisa Hamlin, Nick Santos, Debbie Drobot, Ashley Chan, Kaori Johnson, Christina Ditore, Levi Varner, Guy Underwood, Susan A Floyd, Robert McCormick, Barbara Alesch, Hammad Malik, Lisa [last name unknown], Jessica Wilder, Herbert Hamilton, Randy Black, Cart2india Online, Michael G Argiro, Rick Desmarteau, Wireless Revolution, Zeke Rierson, Mark Zwicker, Jonathan Kirk, Michelle Jenkinson, Hartin, Inc, Yin Kin Yep, Emilia [last name unknown], Joanna

1  Majewska, Katie Pfalz, Laura Simmons-Simon, Annette Marino, Cheryl Klase,

2  Belinda Rivers, Deborah A. Burkholder, Donna F McCreary, Reagann Sweaks,

3  William Valle, Christopher A. Schussler, Kin Yeung, John L Becker, Jennifer M

4  Liebmann, Cynthia Ramey, Alen Boksan, Southwest Community Center, Vic [last

5  name unknown], Igor Golden, Paula Gonzalez, Tamatha Johnson, David Munroe,

6  Fahim Aziz, Nixon Nishimura, Linda [last name unknown], Christine Sato, Omid

7  Davidyan, Katie P, David Chen.  Plaintiff contends that but for its expulsion from

8  the Amazon Marketplace, these customers would have continued to make repeated

9  purchases of various products from Plaintiff.

10  In addition, in reviewing its sales records, Plaintiff has identified

11  approximately 4,092 additional customers that had purchased various products from

12  Plaintiff between two and three times.  As the burden of deriving or ascertaining the

13  names of these specific customers from Plaintiff's sales records will be substantially

14  the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff

15  hereby directs TP-Link to those sales records: THIMES001367, THIMES001368,

16  THIMES001369, THIMES001370, THIMES001371.  Plaintiff contends that but for

17  its expulsion from the Amazon Marketplace, these customers would have continued

18  to make repeated purchases of various products from Plaintiff.

19  Additionally, many of Plaintiff's sales on Amazon came via the "Buy Box."

20  The "Buy Box" is a purchasing option for Amazon customers to automatically add

21  certain products to their shopping cart, and a seller that qualified for the Buy Box

22  would have customers purchase products directly from them without the customer

23  needing to first click on the seller's webpage.  Since Plaintiff regularly qualified for

24  the "Buy Box," every customer in North America searching on the Amazon

25  Marketplace for any product that Plaintiff had in stock in its inventory was

26  effectively a customer of Plaintiff, and Plaintiff's expulsion from the Amazon

27  Marketplace meant that it lost the opportunity to transact with those customers.

28  Following its expulsion from the Amazon Marketplace, each purchase from

an Amazon customer of any product that was formerly sold by Plaintiff is a lost transaction, since Plaintiff had qualified as a Buy Box seller on the majority of those products.  Examples of such products include, but are not limited to:   Apple MD827LL/A EarPods with Remote and Mic; Samsung Fast Charger EP-TA20JBE and USB Type C Cable EP-DG950CBE for Galaxy S8; VTech CS6719-2 DECT 6.0 Phone with Caller ID/Call Waiting, Silver/Black with 2 Cordless Handsets; VTech DECT 6.0 Expandable Cordless Phone with Bluetooth Connect to Cell and Answering System, Silver/Black with 3 Handsets and 1 Cordless Headset; Panasonic EW3109W Portable Upper Arm Blood Pressure Monitor White/Grey; Paw Patrol Figure Set 6 Piece; Apple Lightning to USB Cable (2 Pack); Apple A1385 USB Cube Adapter 5W Wall Charger for iPod; iPad, iPhone 5/5c/5s/6/6s/7 Plus; Panasonic Wired Earphones - Wired , Red (RP-HJE125-R); Zootopia Judy's Carrot Recorder And Badge.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO.11:**

Identify each transaction (including sales) which YOU contend did not occur due to a statement made by TP-LINK USA and the circumstances of that transaction.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Per TP-Link's instruction, Amazzia's submission of the 28 complaints to Amazon accusing Plaintiff of selling counterfeit goods induced Amazon to terminate its business relationship with Plaintiff, thereby permanently depriving Plaintiff of the ability to do business with Amazon.

Amazon's termination of its business relationship also involved it suspending and expelling Plaintiff from the Amazon Marketplace, thereby depriving Plaintiff of the ability to market and transact on the largest e-commerce platform in the world and where half of all online retail sales take place.  Following Amazon's expulsion

1  of Plaintiff from the Amazon Marketplace on August 27, 2018, each customer

2  searching on the Amazon Marketplace for any product that Plaintiff had in stock in

3  its inventory is a lost transaction.  In reviewing its sales records, concurrently

4  produced as THIMES001367, THIMES001368, THIMES001369, THIMES001370,

5  THIMES001371, Plaintiff has identified the following customers as examples of

6  repeat customers that had purchased various products from Plaintiff between 4 and

7  17 times: Daniel Robertson, Direct Ordering, Kim Allen, Debbie [last name

8  unknown], Tara Bingham, Frances G. Baker, Timothy John Helland, Omg

9  Procurement, Brankstore Ood, Phyllis Smith-Crossley, Nery Ramirez, Camille

10  Hansen, Paula Tullos, Zeeshan Khan, Amy Overton, David Mcdonald, Sam [last

11  name unknown], Meg Sakka, Kevin Crabtree, Melissa [last name unknown], H.

12  Buehner, Sneha Kabaria, Rigoberto Flores, Jennifer A. Holme, Matthew Roos,

13  Adriana Joyner, Hon C Wong, Steve Pipes, Bridget Estrada, Jon D Friedland, Lisa

14  Hamlin, Nick Santos, Debbie Drobot, Ashley Chan, Kaori Johnson, Christina

15  Ditore, Levi Varner, Guy Underwood, Susan A Floyd, Robert McCormick, Barbara

16  Alesch, Hammad Malik, Lisa [last name unknown], Jessica Wilder, Herbert

17  Hamilton, Randy Black, Cart2india Online, Michael G Argiro, Rick Desmarteau,

18  Wireless Revolution, Zeke Rierson, Mark Zwicker, Jonathan Kirk, Michelle

19  Jenkinson, Hartin, Inc, Yin Kin Yep, Emilia [last name unknown], Joanna

20  Majewska, Katie Pfalz, Laura Simmons-Simon, Annette Marino, Cheryl Klase,

21  Belinda Rivers, Deborah A. Burkholder, Donna F McCreary, Reagann Sweaks,

22  William Valle, Christopher A. Schussler, Kin Yeung, John L Becker, Jennifer M

23  Liebmann, Cynthia Ramey, Alen Boksan, Southwest Community Center, Vic [last

24  name unknown], Igor Golden, Paula Gonzalez, Tamatha Johnson, David Munroe,

25  Fahim Aziz, Nixon Nishimura, Linda [last name unknown], Christine Sato, Omid

26  Davidyan, Katie P, David Chen.  Plaintiff contends that but for its expulsion from

27  the Amazon Marketplace, these customers would have continued to make repeated

28  purchases of various products from Plaintiff.

In addition, in reviewing its sales records, Plaintiff has identified approximately 4,092 additional customers that had purchased various products from Plaintiff between two and three times.  As the burden of deriving or ascertaining the names of these specific customers from Plaintiff's sales records will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff hereby directs TP-Link to those sales records: THIMES001367, THIMES001368, THIMES001369, THIMES001370, THIMES001371.  Plaintiff contends that but for its expulsion from the Amazon Marketplace, these customers would have continued to make repeated purchases of various products from Plaintiff.

Additionally, many of Plaintiff's sales on Amazon came via the "Buy Box." The "Buy Box" is a purchasing option for Amazon customers to automatically add certain products to their shopping cart, and a seller that qualified for the Buy Box would have customers purchase products directly from them without the customer needing to first click on the seller's webpage.  Since Plaintiff regularly qualified for the "Buy Box," every customer in North America searching on the Amazon Marketplace for any product that Plaintiff had in stock in its inventory was effectively a customer of Plaintiff, and Plaintiff's expulsion from the Amazon Marketplace meant that it lost the opportunity to transact with those customers.

Following its expulsion from the Amazon Marketplace, each purchase from an Amazon customer of any product that was formerly sold by Plaintiff is a lost transaction, since Plaintiff had qualified as a Buy Box seller on the majority of those products.  Examples of such products include, but are not limited to:   Apple MD827LL/A EarPods with Remote and Mic; Samsung Fast Charger EP-TA20JBE and USB Type C Cable EP-DG950CBE for Galaxy S8; VTech CS6719-2 DECT 6.0 Phone with Caller ID/Call Waiting, Silver/Black with 2 Cordless Handsets; VTech DECT 6.0 Expandable Cordless Phone with Bluetooth Connect to Cell and Answering System, Silver/Black with 3 Handsets and 1 Cordless Headset; Panasonic EW3109W Portable Upper Arm Blood Pressure Monitor White/Grey;

Paw Patrol Figure Set 6 Piece; Apple Lightning to USB Cable (2 Pack); Apple A1385 USB Cube Adapter 5W Wall Charger for iPod; iPad, iPhone 5/5c/5s/6/6s/7 Plus; Panasonic Wired Earphones - Wired , Red (RP-HJE125-R); Zootopia Judy's Carrot Recorder And Badge.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 12:**

Describe in detail any concerns, claims, or complaints regarding THIMES or any account run by AVRAHAM EISENBERG, including, but not limited to, intellectual property violations (trademark, patent or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings (including the "Amazon's warning letter" referred to in 5AC ¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and expulsions.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Amazzia submitted complaints to Amazon on behalf of TP-Link via Amazon's Notice Infringement Process on the following dates: January 19, 2018, January 21, January 26, 2018, February 14, 2018, February 21, 2018, February 28, 2018, March 2, 2018, March 3, 2018, March 10, 2018, March 13, 2018, March 21, 2018, March 31, 2018, April 2, 2018, April 5, 2018, April 6, 2018, April 7, 2018, April 9, 2018, April 10, 2018, April 11, 2018, April 12, 2018, April 24, 2018, April 25, 2018, April 26, 2018, April 30, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 21, 2018.

Plaintiff also received an e-mail from Amazon on May 7, 2018 notifying Plaintiff about Amazon's suspension of Plaintiff for alleged infringement of intellectual property rights.

Plaintiff also received an e-mail from Amazon on August 27, 2018 notifying Plaintiff that it had been permanently expelled from the Amazon marketplace.

Plaintiff also received an e-mail from Amazon containing a Notice of Intellectual Property Rights Infringement from True Touch on January 13, 2017, and a subsequent e-mail on October 19, 2017 stating that Amazon had reinstated that content following Plaintiff's appeal.  Plaintiff also received e-mails from Amazon containing Notices of Intellectual Property Rights Infringement on June 26, 2017 from J&L and on May 11, 2018 from Apple.   Plaintiff additionally received e-mails from Amazon containing a notice of trademark infringement on the following dates: May 31, 2018; June 24, 2018, and August 22, 2018.  Plaintiff also received e-mails from Amazon regarding purported counterfeit Prevagen products on June 9, 2018, June 10, 2018, June 21, 2018, and June 23, 2018.

For all other "concerns, claims, or complaints" regarding Plaintiff, as the burden of deriving or ascertaining the answer to this Interrogatory will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff hereby directs TP-Link to the following communications it received from Amazon: THIMES00268, THIMES00280, THIMES00286, THIMES00287, THIMES00303, THIMES00308, THIMES00315, THIMES00316, THIMES00318, THIMES00330, THIMES00333, THIMES00354, THIMES00379, THIMES00387, THIMES00388, THIMES00389, THIMES00396, THIMES00397, THIMES00398, THIMES00404, THIMES00405, THIMES00553, THIMES00561, THIMES00562, THIMES00567, THIMES00582, THIMES00584, THIMES00587, THIMES00590, THIMES00591, THIMES00594, THIMES00596, THIMES00598, THIMES00599, THIMES00602, THIMES00604, THIMES00625, THIMES00631, THIMES00635, THIMES00639, THIMES00642, THIMES00647, THIMES00654, THIMES00658, THIMES00660, THIMES00670, THIMES00685, THIMES00692, THIMES00698, THIMES00703, THIMES00714, THIMES00717, THIMES00726, THIMES00728, THIMES00729, THIMES00730, THIMES00731, THIMES00732, THIMES00733, THIMES00734, THIMES00736, THIMES00736, THIMES00737, THIMES00738, THIMES00839, THIMES00741, THIMES00742, THIMES00743, THIMES00744,

1  THIMES00745, THIMES00746, THIMES00747, THIMES00749, THIMES00750,

2  THIMES00752, THIMES00754, THIMES00755, THIMES00756, THIMES00757,

3  THIMES00758, THIMES00759, THIMES00762, THIMES00763, THIMES00768,

4  THIMES00771, THIMES00772, THIMES00773, THIMES00775, THIMES00776,

5  THIMES00777, THIMES00778, THIMES00779, THIMES00780, THIMES00781,

6  THIMES00782, THIMES00783, THIMES00786, THIMES00791, THIMES00798,

7  THIMES00801, THIMES00806, THIMES00815, THIMES00820, THIMES00824,

8  THIMES00827, THIMES00829, THIMES00838, THIMES00840, THIMES00845,

9  THIMES00851, THIMES00856, THIMES00865, THIMES00872, THIMES00876,

10  THIMES00884, THIMES00887, THIMES00895, THIMES00897, THIMES00901,

11  THIMES00905, THIMES00913, THIMES00915, THIMES00922, THIMES00929,

12  THIMES00936, THIMES00941, THIMES00943, THIMES00945, THIMES00947,

13  THIMES00956, THIMES00959, THIMES00963, THIMES00968, THIMES00973,

14  THIMES00981, THIMES00991, THIMES01000, THIMES01007, THIMES01014,

15  THIMES01023, THIMES01027, THIMES01033, THIMES01036, THIMES01038,

16  THIMES01040, THIMES01044, THIMES01048, THIMES01051, THIMES01056,

17  THIMES01060, THIMES01064, THIMES01067, THIMES01069, THIMES01071,

18  THIMES01074, THIMES01075, THIMES01076, THIMES01077, THIMES01078,

19  THIMES01079, THIMES01080, THIMES01081, THIMES01082, THIMES01083,

20  THIMES01084, THIMES01085, THIMES01086, THIMES01087, THIMES01089,

21  THIMES01090, THIMES01091, THIMES01092, THIMES01093, THIMES01094,

22  THIMES01095, THIMES01096, THIMES01097, THIMES01098, THIMES01100,

23  THIMES01111, THIMES01113, THIMES01114, THIMES01115, THIMES01117,

24  THIMES01118, THIMES01119, THIMES01121, THIMES01124, THIMES01125,

25  THIMES01127, THIMES01129, THIMES01130.

26  \\\

27  \\\

28  \\\

1    Plaintiff will supplement this Interrogatory response as appropriate after

2    discovery is substantially complete.

3

4    Dated:  August 19, 2022                    GAW | POE LLP

5                                               By: _____

6                                                   Randolph Gaw
                                                    Attorneys for Plaintiff
7                                                   Thimes Solutions Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 4

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>Defendant. | Case No. 2:19-cv-10374-SB-E<br><br>**THIMES SOLUTIONS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF REQUESTS FOR ADMISSION** |

PROPOUNDING PARTY:     Defendant TP-Link USA Corporation

RESPONDING PARTY:     Plaintiff Thimes Solutions Inc.

SET NO.:     One

- 1 -

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that THIMES has never been an "authorized distributor"—as that phrase is used in paragraph 3 of YOUR 5AC—of TP-LINK products.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff objects to the definition of "YOUR" and "THIMES" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Admit that Plaintiff did not enter into any agreements with TP-Link USA Corporation concerning distribution of TP-Link branded wireless router products. Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 2:**

Admit that TP-LINK never communicated to THIMES that it was an authorized distributor of TP-LINK products.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Admit that Plaintiff did not enter into any agreements with TP-Link USA Corporation concerning distribution of TP-Link branded wireless router products. Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 3:**

Admit that TP-LINK never communicated to THIMES that it was authorized to sell TP-LINK products.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

THIMES RESPONSE TO
TP-LINK FIRST RFA
CASE NO. 2:19-CV-10374-SB-E

1    Subject to and without waiving the foregoing objection, Plaintiff responds as

2    follows:  Admit that Plaintiff did not enter into any agreements with TP-Link USA

3    Corporation concerning distribution of TP-Link branded wireless router products.

4    Unless expressly admitted, Plaintiff denies this Request for Admission.

5    **REQUEST FOR ADMISSION NO. 4:**

6    Admit that before THIMES started selling TP-LINK products, THIMES was

7    aware that it was not an "authorized distributor"—as that phrase is used in

8    paragraph 3 of YOUR 5AC—of TP-LINK products.

9    **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

10    Plaintiff objects to the definition of "YOUR" and "THIMES" as overbroad,

11    and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

12    Subject to and without waiving the foregoing objection, Plaintiff responds as

13    follows:  Admit that Plaintiff did not enter into any agreements with TP-Link USA

14    Corporation concerning distribution of TP-Link branded wireless router products.

15    Unless expressly admitted, Plaintiff denies this Request for Admission.

16    **REQUEST FOR ADMISSION NO. 5:**

17    Admit that before THIMES started selling TP-LINK products, THIMES was

18    *not* aware that it was not an "authorized distributor"—as that phrase is used in

19    paragraph 3 of YOUR 5AC—of TP-LINK products.

20    **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

21    Plaintiff objects to the definition of "YOUR" and "THIMES" as overbroad,

22    and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

23    Plaintiff further objects that Request's use of the double negative makes it

24    ambiguous and unintelligible.

25    Subject to and without waiving the foregoing objections, Plaintiff responds as

26    follows:  Admit that Plaintiff did not enter into any agreements with TP-Link USA

27    Corporation concerning distribution of TP-Link branded wireless router products.

28    Unless expressly admitted, Plaintiff denies this Request for Admission.

THIMES RESPONSE TO
TP-LINK FIRST RFA
CASE NO. 2:19-CV-10374-SB-E

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

2        Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

3 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

4        Subject to and without waiving the foregoing objection, Plaintiff responds as

5 follows:  Admit that Plaintiff did not enter into any agreements with TP-Link USA

6 Corporation concerning distribution of TP-Link branded wireless router products.

7 Unless expressly admitted, Plaintiff denies this Request for Admission.

8    **REQUEST FOR ADMISSION NO. 24:**

9        Admit that THIMES did not communicate to its customers that THIMES

10 would provide any warranty independent of TP-LINK's manufacturer's warranty.

11    **RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

12        Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

13 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further

14 objects to the term "warranty independent of TP-LINK's manufacturer's warranty"

15 as vague and ambiguous.

16        Subject to and without waiving the foregoing objections, Plaintiff responds as

17 follows:  Admit that Plaintiff offered for sale on the Amazon Marketplace authentic

18 TP-Link branded wireless router products in their unopened, original manufacturer's

19 packaging.  Unless expressly admitted, Plaintiff denies this Request for Admission.

20    **REQUEST FOR ADMISSION NO. 25:**

21        Admit that THIMES did not sell any products to Amazon.com Services

22 LLC.

23    **RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

24        Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

25 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

26        Subject to and without waiving the foregoing objection, Plaintiff responds as

27 follows:  Admit.

28

**REQUEST FOR ADMISSION NO. 26:**

Admit that THIMES did not sell any TP-LINK products to Amazon.com Services LLC.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Admit.

**REQUEST FOR ADMISSION NO. 27:**

Admit that THIMES does not have any document reflecting any sale by THIMES in which Amazon.com Services LLC is identified as the purchaser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects to the term "identified as the purchaser" as vague and ambiguous.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Admit that Plaintiff did not sell any products to Amazon.com Services LLC.  Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 28:**

Admit that Amazon.com Services LLC is not THIMES's customer.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects to the term "is not Thimes's customer" as vague and ambiguous.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Plaintiff has made a good faith, reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

THIMES RESPONSE TO
TP-LINK FIRST RFA
CASE NO. 2:19-CV-10374-SB-E

1 **REQUEST FOR ADMISSION NO. 29:**

2     Admit that THIMES did not sell any products to Amazon.com, Inc.

3 **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

4     Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

5 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

6     Subject to and without waiving the foregoing objection, Plaintiff responds as

7 follows:  Plaintiff has made a good faith, reasonable inquiry and that the information

8 it knows or can readily obtain is insufficient to enable it to admit or deny.

9 **REQUEST FOR ADMISSION NO. 30:**

10     Admit that THIMES did not sell any TP-LINK products to Amazon.com,

11 Inc.

12 **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

13     Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

14 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

15     Subject to and without waiving the foregoing objection, Plaintiff responds as

16 follows:  Admit.

17 **REQUEST FOR ADMISSION NO. 31:**

18     Admit that THIMES does not have any document reflecting any sale by

19 THIMES in which Amazon.com, Inc. is identified as the purchaser.

20 **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

21     Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

22 to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further

23 objects to the term "identified as the purchaser" as vague and ambiguous.

24     Subject to and without waiving the foregoing objection, Plaintiff responds as

25 follows:  Plaintiff has made a good faith, reasonable inquiry and that the information

26 it knows or can readily obtain is insufficient to enable it to admit or deny.

27 **REQUEST FOR ADMISSION NO. 32:**

28     Admit that Amazon.com, Inc. is not THIMES's customer.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Admit that Plaintiff does not have paper copies of any Amazon policy. Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 35:**

Admit there is no "Amazon polic[y]" that authorizes "Gray Market sellers," as those phrases are used in paragraph 37 of YOUR 5AC.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Plaintiff objects to the definition of "THIMES" and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales. Plaintiff further objects to this Request to the extent is calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Deny.

**REQUEST FOR ADMISSION NO. 36:**

Admit there is no "Amazon polic[y]" that authorizes "Gray Market sellers" to infringe intellectual property rights.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Plaintiff objects to this Request to the extent it calls for a legal conclusion. Plaintiff further objects to the term "infringe intellectual property rights" as vague and ambiguous.  Plaintiff further objects to this Request to the extent is calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Admit that Plaintiff is not aware of any Amazon policy that expressly permits sellers on the Amazon Marketplace "to infringe intellectual property rights." Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 37:**

Admit that Claim I of YOUR 5AC is not based on any statement to any of THIMES's customers.

- 15 -

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects to the term "any statement to any of Thimes's customers" as vague and ambiguous.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Plaintiff has made a good faith, reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 38:**

Admit that Claim II of YOUR 5AC is not based on any statement to any of THIMES's customers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further objects to the term "any statement to any of Thimes's customers" as vague and ambiguous.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Plaintiff has made a good faith, reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 39:**

Admit that each communication THIMES alleges is actionable in this case included the phrase: "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that use of such content(s) is contrary to law," as alleged in Paragraph 47 of YOUR 5AC.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Plaintiff objects to the definition of "THIMES" and "YOUR" as overbroad, and interprets them to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Plaintiff has made a good-faith, reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny.

1    Subject to and without waiving the foregoing objection, Plaintiff responds as

2    follows:  Admit.

3    **REQUEST FOR ADMISSION NO. 55:**

4    Admit that Thimes sold at least nine different ASINs of TP-LINK products.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

6    Plaintiff objects to the term "ASIN" as vague and ambiguous, and interprets it

7    to mean Amazon Standard Identification Number.

8    Subject to and without waiving the foregoing objection, Plaintiff responds as

9    follows:  Admit.

10   **REQUEST FOR ADMISSION NO. 56:**

11   Admit that THIMES did not seek reinstatement of its Amazon.com Services

12   LLC account after August 27, 2018.

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

14   Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

15   to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further

16   objects to the term "seek reinstatement" as vague and ambiguous.

17   Subject to and without waiving the foregoing objections, Plaintiff responds as

18   follows:  Deny.

19   **REQUEST FOR ADMISSION NO. 57:**

20   Admit that THIMES was not provided a reason for its expulsion from the

21   Amazon Marketplace on August 27, 2018.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

23   Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

24   to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

25   Subject to and without waiving the foregoing objection, Plaintiff responds as

26   follows:  Admit that the email Amazon sent to Plaintiff on August 27, 2018 at 11:22

27   am did not state why Amazon "decided that [Plaintiff] may no longer sell on

28

**REQUEST FOR ADMISSION NO. 63:**

Admit that the Amazon correspondence THIMES received concerning TP-LINK products identified U.S. Trademark Registration No. 3,175,495.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Admit that Plaintiff received emails from Amazon on March 13, 2018, March 18, 2018, April 5, 2018, April 11, 2018, April 24, 2018, April 25, 2018, April 26, 2018, May 28, 2018, May 30, 2018, June 7, 2018, and June 2, 2018, that stated, among other things, "Trademark asserted: 3175495."  Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 64:**

Admit that "Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018," stated in Paragraph 26 of YOUR 5AC, refers to Amazon Complaint ID: 1359628881.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

Plaintiff objects to the definition of "YOUR" as overbroad, and interprets it to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows:  Admit that Plaintiff received an email from Amazon on January 19, 2018 that stated, among other things, "Complaint ID: 1359628881."  Unless expressly admitted, Plaintiff denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 65:**

Admit that THIMES received "Amazon's warning letter" for Amazon Complaint ID: 1359628881.

1    Subject to and without waiving the foregoing objection, Plaintiff responds as

2    follows:  Admit that Plaintiff received an email from Amazon on June 21, 2018 that

3    stated, among other things, "Complaint ID: 5145696941" and "Trademark asserted:

4    3175495."  Unless expressly admitted, Plaintiff denies this Request for Admission.

5    **REQUEST FOR ADMISSION NO. 163:**

6    Admit that THIMES marketed TP-LINK products from January 14, 2018 to

7    July 19, 2018.

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 163:**

9    Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

10   to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

11   Subject to and without waiving the foregoing objection, Plaintiff responds as

12   follows:  Admit that Plaintiff offered TP-Link branded wireless router products for

13   sale on the Amazon Marketplace between January and June 2018.  Unless expressly

14   admitted, Plaintiff denies this Request for Admission.

15   **REQUEST FOR ADMISSION NO. 164:**

16   Admit that THIMES sold TP-LINK products from January 14, 2018 to July

17   19, 2018.

18   **RESPONSE TO REQUEST FOR ADMISSION NO. 164:**

19   Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

20   to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

21   Subject to and without waiving the foregoing objection, Plaintiff responds as

22   follows:  Admit that Plaintiff offered TP-Link branded wireless router products for

23   sale on the Amazon Marketplace between January and June 2018.  Unless expressly

24   admitted, Plaintiff denies this Request for Admission.

25   **REQUEST FOR ADMISSION NO. 165:**

26   Admit that THIMES marketed TP-LINK products from January 19, 2018 to

27   June 21, 2018.

28

THIMES RESPONSE TO
TP-LINK FIRST RFA
CASE NO. 2:19-CV-10374-SB-E

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 165:**

2      Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

3  to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

4      Subject to and without waiving the foregoing objection, Plaintiff responds as

5  follows:  Admit that Plaintiff offered TP-Link branded wireless router products for

6  sale on the Amazon Marketplace between January and June 2018.  Unless expressly

7  admitted, Plaintiff denies this Request for Admission.

8  **REQUEST FOR ADMISSION NO. 166:**

9      Admit that THIMES sold TP-LINK products from January 19, 2018 to June

10  21, 2018.

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 166:**

12      Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

13  to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.

14      Subject to and without waiving the foregoing objection, Plaintiff responds as

15  follows:  Admit that Plaintiff offered TP-Link branded wireless router products for

16  sale on the Amazon Marketplace between January and June 2018.  Unless expressly

17  admitted, Plaintiff denies this Request for Admission.

18  **REQUEST FOR ADMISSION NO. 167:**

19      Admit that the only invoices THIMES submitted to AMAZON concerning

20  its source of TP-LINK products are Bates Nos. THIMES00065 and

21  THIMES00068.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 167:**

23      Plaintiff objects to the definition of "THIMES" as overbroad, and interprets it

24  to mean Thimes Solutions Inc. d/b/a Universal Goods & Sales.  Plaintiff further

25  objects to the definition of "AMAZON" as overbroad, and interprets it to mean

26  Amazon.com Services LLC.

27      Subject to and without waiving the foregoing objection, Plaintiff responds as

28  follows:  Admit that Plaintiff submitted invoices from The Surplus Company, LLC,

THIMES RESPONSE TO
TP-LINK FIRST RFA
CASE NO. 2:19-CV-10374-SB-E

1    as reflected in the documents Bates labelled THIMES00065 and THIMES00068, to

2    Amazon.  Unless expressly admitted, Plaintiff denies this Request for Admission.

3

4     Dated:  July 27, 2022                          GAW | POE LLP

5                                                    By:

6                                                          Randolph Gaw
                                                          Attorneys for Plaintiff
7                                                          Thimes Solutions Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIMES RESPONSE TO
TP-LINK FIRST RFA
CASE NO. 2:19-CV-10374-SB-E

# EXHIBIT 5

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THIMES SOLUTIONS, INC., | No.   21-55407 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-10374-SB-E |
| v. | |
| TP LINK USA CORPORATION; AUCTION BROTHERS, INC., DBA Amazzia, | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| MIKHAIL J. FIKHMAN, DBA Amazzia; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted April 7, 2022
Pasadena, California

Before:  MURGUIA, Chief Judge, and GRABER and BEA, Circuit Judges.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff Thimes Solutions, Inc., timely appeals the judgment in favor of Defendants TP-Link USA Corporation and Auction Brothers, Inc., d.b.a. Amazzia. We review de novo the legal issues on appeal.  See Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643 (9th Cir. 2009) (failure to state a claim); id. (granting of a motion to strike under California's anti-SLAPP statute); id. (the Noerr-Pennington doctrine); Wochos v. Tesla, Inc., 985 F.3d 1180, 1197 (9th Cir. 2021) (futility of amending a complaint).  We affirm in part, reverse in part, and remand.

1.  The district court erred in granting Defendants' anti-SLAPP special motion to strike.  Even if Defendants prevail at step one of the inquiry, see Kettler v. Gould, 231 Cal. Rptr. 3d 580, 592 (Cal. Ct. App. 2018) (starting the anti-SLAPP analysis, in similar circumstances, by considering the litigation privilege at step two), Defendants fail at step two.  Step two of the anti-SLAPP inquiry requires Plaintiff to show that it has a probability of success on its claims.  Olivares v. Pineda, 253 Cal. Rptr. 3d 213, 221 (Cal. Ct. App. 2019).  Plaintiff's complaint states a prima facie case on the state-law claims, and Defendants' sole argument to the contrary is that California's litigation privilege shields their complaints to Amazon from all litigation.  But California's litigation privilege applies only to communications preliminary to "proposed" litigation that was seriously contemplated at the time of the communication.  E.g., Makaeff v. Trump Univ., LLC, 715 F.3d 254, 264 (9th Cir. 2013); Strawn v. Morris Polich & Purdy, LLP,

242 Cal. Rptr. 3d 216, 224 (Cal. Ct. App. 2019).  Defendants' complaints to Amazon did not propose litigation.  Nor, taking the facts in the light most favorable to Plaintiff, did Defendants seriously contemplate litigation at that time.  California's litigation privilege therefore does not shield Defendants' complaints to Amazon from litigation.  Accordingly, Plaintiff prevails on the anti-SLAPP inquiry.

    2.  The district court correctly dismissed Plaintiff's claim under the Lanham Act.  The Lanham Act applies only to communications that are disseminated to the "relevant purchasing public."  Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999).  The only recipient of the communication, Amazon, is not a purchaser.  No circuit precedent supports Plaintiff's argument that dissemination to a non-purchaser suffices.  And nothing in the Act supports Plaintiff's unduly broad reading of the Act's requirement of "commercial advertising or promotion," 15 U.S.C. § 1125(a)(1)(B), as encompassing private communications to a single non-purchasing entity.

    3.  The district court correctly dismissed Plaintiff's claims under the Sherman Antitrust Act.  Plaintiff failed to allege plausibly either that Defendant TP-Link restricted output or that manufacturers lack the capacity to increase output.  Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1434, 1441 (9th Cir. 1995).

3

4.  The district court correctly held that the <u>Noerr-Pennington</u> doctrine does not apply.  The doctrine protects a person's ability to petition the government, including the courts, for redress.  The doctrine prohibits lawsuits challenging communications made during litigation.  In order to provide persons with "breathing space" to exercise the right to petition, we have extended the doctrine to encompass prelitigation settlement demands and cease-and-desist letters sent to potential defendants.  <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 929–32, 942 (9th Cir. 2006).  But we have never applied, and we see no justification to apply, the doctrine to the communications sent here, which were delivered solely to a third party and which did not propose or threaten litigation.

5.  In sum, we affirm the dismissal of the federal-law claims, we reverse the dismissal of the state-law claims, and we remand for further proceedings.  Because we reverse the dismissal of the state-law claims, we also reverse the district court's related award of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c)(1).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**Each party shall bear its own costs on appeal.**

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 19-10374 PA (Ex) | Date | August 31, 2020 |
|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| T. Jackson | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          IN CHAMBERS - COURT ORDER

Before the Court is a (1) Motion for Leave to file Fourth Amended Complaint filed by Plaintiff Thimes Solutions Inc., (Dkt. 113), and (2) Motion to Dismiss the Third Amended Complaint filed by defendants TP Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia, (Dkt. 118). The parties have filed their respective Opposition and Reply briefs. (Dkts. 119, 121, 122, 123.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

## I.        Background

When Plaintiff commenced this action in May 2019, it alleged claims for (1) interference with existing and prospective business relationships, (2) interference with contract, (3) libel per se, and (4) declaratory judgment of non-infringement. (Dkt. 1.) Plaintiff amended its complaint on July 2, 2019 to add Amazzia as a defendant, but it did not add any new claims. (Dkt. 32.) After the action was transferred to this Court in January 2020, the Court dismissed the First Amended Complaint for lack of subject matter jurisdiction. (Dkts. 71, 73.) Plaintiff filed a Second Amended Complaint on January 13, 2020, dropping its claim for interference with contract and adding a claim for per se violation of Section 1 of the Sherman Antitrust Act. (Dkt. 78.) On June 8, 2020, the Court struck Plaintiff's remaining state law claims under California's anti-SLAPP statute, and dismissed the Section 1 antitrust claim with leave to amend. (Dkt. 103.) The Court instructed Plaintiff to seek leave from the Court before asserting any new claims.

On July 8, 2020, Plaintiff filed a Third Amended Complaint that stated a single claim for declaratory judgment of non-infringement, which Plaintiff has maintained since the beginning of this litigation. (Dkt. 112.) That same day, Plaintiff also filed a Motion for Leave to File a Fourth Amended Complaint, seeking leave to add the following new claims: (1) false advertising under Section 43(a) of the Lanham Act; (2) association-in-fact enterprise under the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (3) RICO conspiracy; (4) monopolization under Section 2 of the Sherman Antitrust Act; and (5) attempted monopolization under Section 2. On July 27, 2020, Defendants filed a Motion to Dismiss the Third Amended Complaint.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 19-10374 PA (Ex) | | Date | August 31, 2020 |
|---|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | | |

## II. Legal Standard

The Court has not yet issued a Scheduling Order. Therefore, Plaintiff's motion is considered under Federal Rule of Civil Procedure 15, which allows amendment to a party's pleading by leave of the court at any time, and such leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); DCD Programs, Ltd., v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (leave to amend should be granted with "extreme liberality" to "facilitate decision on the merits rather than on pleadings or technicalities"). The Court considers five factors for a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

## III. Analysis

The Court finds that Defendants have not made a strong enough showing of bad faith, undue delay, or prejudice to overcome the presumption in favor of Plaintiff granting leave to amend. The Court has not issued a Scheduling Order setting pretrial deadlines for discovery or dispositive motions. Nor has the Court set a trial date for this action. Although permitting an amended complaint to be filed might delay the resolution of this matter, this is not sufficient to overcome the "extreme liberality" with which the Court must grant leave to amend. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). In evaluating the final factor of futility, the Court finds that Plaintiff's proposed claims under the Lanham Act and RICO Act are futile. Therefore, the Court denies the leave to amend on those grounds.

A motion for leave to amend should be denied on futility grounds when "no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim or defense." B-K Lighting, Inc. v. Fresno Valves & Casting, 2008 WL 11338299, at *3 (C.D. Cal. Jan. 7, 2008); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend."). "A proposed amendment is futile if the new claim could be defeated by a motion to dismiss or a motion for summary judgment." California v. Neville Chem. Co., 213 F. Supp. 2d 1142, 1144-45 (C.D. Cal. 2002) (citing Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987)). "Futility alone can justify a court's refusal to grant leave to amend." Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015); Hanlon v. Hartford Life & Accident Ins. Co., 81 F. App'x 961, 961 (9th Cir. 2003) (same).

### A. Lanham Act Claim is Futile

Plaintiff must set forth non-conclusory facts that show the existence of a false statement of fact by the defendant in a commercial advertisement about its own product. See Champion Labs., Inc. v. Parker-Hannifin Corp., 2011 U.S. Dist. LEXIS 52853, *45-46 n.20 (E.D. Cal. May 16, 2011) (quoting Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997). The false statement

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10374 PA (Ex) | | Date | August 31, 2020 |
|---|---|---|---|---|
| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. | | | |

must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.  See Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999)).

Plaintiff concedes that "the proposed new claims all stem from the same set of facts that TSI pled in its previous complaints, so the proposed amendments would not alter the nature of the litigation." (Dkt. 113 at 6.)  According to Plaintiff, Defendants' complaints to Amazon about Plaintiff selling counterfeit goods "are considered to be 'advertisements' under the Lanham Act.  They were commercial speech by TP-Link."  (Dkt. 113, Ex. A ¶59.)  But Defendants' complaints were made directly to Amazon—who is not a consumer—and the complaints were not disseminated to the relevant purchasing public (i.e., Amazon users who might purchase Plaintiff's products).  "A reasonable inference cannot be made that by contacting Amazon, Defendant[s] ha[ve] made a commercial speech for the purpose of influencing consumers."  Sky Billiards, Inc. v. WolVol, Inc., 2016 U.S. Dist. LEXIS 193629, at *7 (C.D. Cal. Feb. 22, 2016) (dismissing Lanham Act claim with prejudice where "Plaintiff only alleges Defendant contacted Amazon and alleged thirty-two of Plaintiff's products violated Defendant's intellectual property rights."); see also BLM Prods. v. Covves, LLC, 2017 U.S. Dist. LEXIS 222229, at *16 (C.D. Cal. Oct. 26, 2017) (dismissing Lanham Act claim and reasoning, "Covves made representations to Amazon by filling out an infringement form on Amazon.com. . . . it was not 'disseminated sufficiently to the relevant purchasing public' . . . [I]nstead, the representation was made only to Amazon, out of view of the general public.").  Accordingly, the Court finds that the proposed Lanham Act claim is futile, and therefore denies leave to amend on this basis.

### B.    RICO Claims are Futile

To prevail on a civil RICO claim, Plaintiff must prove that Defendants engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) Defendants caused injury to plaintiff's business or property.  Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002). Courts "should [] strive to flush out frivolous RICO allegations at an early stage of the litigation."  Wagh v. Metris Direct Servs., Inc., 348 F.3d 1102, 1108 (9th Cir. 2003) (quotations omitted), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007).  Courts have overwhelmingly rejected attempts to characterize routine commercial relationships, in which the parties transact to provide services, as RICO enterprises.  See, e.g., Gomez v. Gunthy-Renker, LLC, 2015 U.S. Dist. LEXIS 90725, at *22-23 (C.D. Cal. July 13, 2015) ("[V]ery few Courts have been willing to . . . treat allegations of routine commercial relationships as sufficient to support a RICO claim") (collecting cases); Woodell v. Expedia Inc., 2019 U.S. Dist. LEXIS 121633, at *21 (W.D. Wash July 22, 2019) ("Allegations that are consistent with ordinary business activities or purposes are insufficient when pleading an association-in-fact RICO enterprise.").

Plaintiff alleges that "TP-Link and Amazzia were members of an association-in-fact RICO enterprise.  The goal of this enterprise was to eliminate all third-party sellers of TPLink WLAN products on the Amazon Marketplace . . . so that TP-Link could prevent anyone on Amazon from selling TP-Link WLAN products at a price lower than TP-Link's MSRP or MAP."  (Dkt. 113 Ex. A ¶68.)  When the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10374 PA (Ex) | Date | August 31, 2020 |
|----------|---------------------|------|-----------------|

| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. |
|-------|--------------------------------------------------------|

Court sets aside Plaintiff's various legal conclusions, all that remains is a routine contract for services between Defendants. Under the TP-Link-Amazon Brand Protection Agreement, Amazzia promised to report non-compliant sellers to Amazon until they are removed. TP-Link hired Amazzia to perform certain services, and Amazzia would be compensated in exchange for those services. "Parties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise.'" In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., 2012 U.S. Dist. LEXIS 184429, at *29 (C.D. Cal. June 29, 2012) (collecting cases); In re WellPoint, Inc. Out–of–Network UCR Rates Litig., 865 F. Supp. 2d 1002, 1034-35 (C.D. Cal. 2011). In light of the facts presented, Plaintiff's enterprise allegations have not risen "from the realm of the possible to the plausible." Shaw v. Nissan North America, Inc., 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (dismissing RICO claim without leave to amend).

In addition, Plaintiff has not plausibly alleged "racketeering activity" to support a viable RICO claim. Plaintiff "must establish that Defendants had the specific intent to defraud, and Plaintiff[] may establish that intent by showing the existence of a plausible fraudulent scheme." Eclectic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (affirming dismissal of RICO claim under Federal Rule 8(a) and 9(b) for failure to support a plausible inference that defendants had the required specific intent to defraud). Because Defendants' business relationship is "facially legitimate," and Defendants "operate legitimate businesses" and "otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." Id. at 997-98 (emphasis added).

Plaintiff alleges that Defendants "engaged in wire fraud by sending to Amazon, by electronic mail, complaints falsely attesting under penalty of perjury that TSI was selling counterfeit TP-Link WLAN products." (Dkt. 113 Ex. A at ¶74.) Defendants "knew that these complaints were false at the time they submitted them to Amazon. . . . [and] intended to deceive Amazon into thinking that TSI was selling counterfeit product." (Id. at ¶¶75-76.) However, Defendants have alleged throughout this litigation that they had a good faith basis to believe Plaintiff was an unauthorized reseller of TP-Link products that lacked the original manufacturer's warranty. Defendants therefore complained to Amazon that Plaintiff's products were counterfeit. "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." In re Century Aluminum Co. Secs. Litig., 729 F.3d 1104, 1108 (9th Cir. 2013).

Plaintiff's allegations illustrate a private business dispute that does not rise to the level of a viable RICO claim. See Manos v. MTC Fin., Inc., 2018 U.S. Dist. LEXIS 226227, at *17 (C.D. Cal. Apr. 2, 2018); Bhatti v. Goldman, 2014 U.S. Dist. LEXIS 167699, at *5 (C.D. Cal. Dec. 2, 2014) (dismissing RICO claim and finding "[t]here is no question that a dispute exists between the parties, but it is a run-of-the-mill business dispute involving fraud, and the case squarely belongs in state court."). Because Plaintiff has not presented a viable RICO claim, the Court finds that Plaintiff's proposed conspiracy claim is also deficient. See Howard v. America Online, 208 F.3d 741, 751 (9th Cir. 2000)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10374 PA (Ex) | Date | August 31, 2020 |
|----------|---------------------|------|-----------------|

| Title | Thimes Solutions Inc. v. TP Link USA Corporation et al. |
|-------|--------------------------------------------------------|

("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."). The Court therefore denies Plaintiff leave to amend on these bases.

### C.    Sherman Antitrust Act Claims are Not Futile

To state a claim under Section 2 of the Sherman Antitrust Act, Plaintiff must allege that: "(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co., 99 F.3d 937, 949 (9th Cir. 1996). And to support a claim for attempted monopolization, Plaintiff must adequately plead: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury. Id. at 949-50.

In the proposed Fourth Amended Complaint, Plaintiff alleges Defendant TP-Link possesses monopoly power in the relevant market—i.e., Amazon Marketplace. Defendant TP-Link had a 44.08% global market share for all WLAN products in 2017, and TP-Link represents that it is "the world's number one provider of consumer Wi-Fi networking devices." (Dkt. 113 Ex. A ¶90.) Therefore, Plaintiff alleges that "[TP-Link] had at least a 50% market share of the global, United States, and New York-centered Amazon marketplace for sales of new/factory-sealed consumer WLAN products." (Id.) "TP-Link willfully maintained monopoly power in the aforementioned markets by engaging in anticompetitive conduct, such as by working with Amazzia to repeatedly submit false complaints to Amazon that TSI, and other third-party sellers, were selling counterfeit TP-Link WLAN products in order to get Amazon to expel these sellers from the Amazon Marketplace." (Id. at ¶91.) This conduct "caused injury to competition and to consumers." (Id. at ¶94.) "TP-Link's conduct has allowed it to charge supracompetitive prices for its consumer WLAN products. . . . reduce the output of such products to consumers . . . [and] eliminate[] consumer choice for different consumer WLAN products." (Id. at ¶¶94-95.) Defendants have also allegedly harmed Plaintiff by filing allegedly false complaints that resulted in Amazon expelling Plaintiff from selling the Marketplace website. (Id. at ¶97.) Based on these allegations in the proposed Fourth Amended Complaint, the Court finds that Plaintiff's Sherman Antitrust Act claims are not futile. The Court therefore grants leave to amend on this basis.

### Conclusion

The Court grants Plaintiff leave to amend the complaint and add claims for monopolization and attempted monopolization. The Court denies Plaintiff leave to add claims for violation of the Lanham Act and RICO Act. Plaintiff shall file an amended complaint, if any, no later than seven (7) days from the date this order is entered. No new claims may be asserted without leave of Court. The failure to file an amended complaint by the deadline specified in this order may result, without further warning, in dismissal of this action. Defendants' Motion to Dismiss the Third Amended Complaint is hereby denied as moot.

IT IS SO ORDERED.

# EXHIBIT 7

MARK POE (S.B. #223714)
 mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

FILED
CLERK, U.S. DISTRICT COURT

May 27, 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ igr _____ DEPUTY

Attorneys for Plaintiff
Thimes Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

THIMES SOLUTIONS, INC.,

           Plaintiff,

    v.

TP-LINK USA CORPORATION and
AUCTION BROTHERS, INC. d/b/a
AMAZZIA

           Defendants.

Case No. 2:19-CV-10374-SB-E

**AMENDED FIFTH AMENDED
COMPLAINT**

JURY TRIAL DEMANDED

2.   Unscrupulous brand owners, well aware of the above Notice Infringement landscape, take unilateral action and use "brand protection services" to assist them in "knocking off unwanted sellers."  *Id.*

3.   Plaintiff Thimes Solutions Inc. dba Universal Goods & Sales ("TSI") is a  Suffern, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy.  Succinctly, the model is buying something cheaply from a down-stream distributor—typically a close out purchaser or the like that purchased sealed product exactly as put into the stream of commerce by the manufacturer--and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount.  Manufacturers, their "authorized distributors," and their "brand protectors" often seek means—some unlawful-- to eliminate such niche market competition.[1]

4.   Plaintiff TSI ordinarily buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale.

5.   TSI  brings this suit following its commercial and financial ruination resulting from Defendants' libelous statements to Amazon and consequential tortious

---

[1]A copyright or trademark holder enjoys a "distribution right" and may initially sell, or not sell, copies of a copyrighted or trademarked item to others on such terms as he or she sees fit. However, the IP holder's exclusive distribution right is limited to the first sale of the coyprighted or trademarked item. Under the "first sale" docrine, codified at 17 U.S.C. § 109(a) "the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of such copies."  The Fair Use Doctrine, similar to the First Sale Doctrine, permits a seller to use a another's trademark to identify the former's goods, provided that no likelihood of confusion results as to the source of the product or the trademark holder's sponsorship or affiliation.  15 U.S.C. §115(b)(5)(A)-(C).  The First Sale Doctrine [also] protects resellers of genuine trademarked goods from claims of infringement. *Davidoff & CIE, S.A. v. PLD Int'l. Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Hidalgo Corp. v. J. Kugel Designs, Inc.,* No. 05-20476-CIV-JORDAN/TORRES, 2006 U.S. Dist. LEXIS 96647, at *12 (S.D. Fla. 2006)

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

interference with Plaintiff's existing and prospective business relationship with Amazon Services LLC.

6.    TSI became a third-party seller on Amazon in 2016.  To become an Amazon seller TSI signed Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate TSI as a seller for any reason or for no reason at all.

7.    TSI sold over 175,000 products to customers on Amazon with a 98% lifetime positive feedback rating.  Plaintiff reached $2 million in sales during the first six months of 2018. As of its expulsion from Amazon, TSI was selling around $400,000-500,000 per month on amazon.com. Net margins were roughly 20%.  Now . . . there is only ruin.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

9.    Thimes Solutions Inc. was duly incorporated in New York on November 21, 2016 and maintains its principal place of business at 3 Litman Lane, Suffern, New York.  TP-Link USA Corporation was duly incorporated in California on October 15, 2008 and maintains its principal place of business at 145 South College Blvd., Suite 400, in Brea, CA 92821.Auction Brothers, Inc. dba Amazzia was duly incorporated in California on May 31, 2005 and maintains its principal place of business at 19528 Ventura Blvd, #229, Tarzana, CA 91356.

10.    Defendant's activities were within the flow of, were intended to, and had a substantial effect on, interstate commerce because Plaintiff conducted business all over the country.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), (c) and (d).  A substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Amazzia and TP-Link are residents of this district and their challenged

AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router

- o Amazon's warning letter, which recites an earlier IP complaint from TP-Link, was received at 4:33 PM on 19 January 2018
- o Amazon lodged the Router with UPS for delivery to TP-Link on January 19, 2018 (Exhibit 3)
- o The Router was not delivered to Mr. Lei until January 22, 2018, three days *after* swearing to Amazon that the Router was test-purchased and found to be counterfeit (Exhibit 4).

TP-Link *targeted* TSI for elimination and in its haste lodged its libelous IP complaint before receiving the Routers![8]

27. During 2018 TP-Link complained to Amazon on at least 28 separate occasions, all or substantially all of which alleged counterfeiting:

- Jan 19th: us-compliance@tp-link.com
- Jan 21st: us-compliance@tp-link.com
- Jan 26th: us-compliance@tp-link.com
- Feb 14th: compliance-us@tp-link.com
- Feb 21st: compliance-us@tp-link.com
- Feb 28th: compliance-us@tp-link.com[9]
- Mar 2nd: compliance-us@tp-link.com
- Mar 3rd: compliance-us@tp-link.com
- Mar 10th: compliance-us@tp-link.com
- Mar 13th: compliance-us@tp-link.com
- Mar 21st: compliance-us@tp-link.com
- Mar 31st: compliance-usa@tp-link.com
- Apr 2nd: compliance-usa@tp-link.com
- Apr 5th: compliance-usa@tp-link.com
- Apr 6th: compliance-usa@tp-link.com
- Apt 7th: compliance-usa@tp-link.com

---

[8] After receiving the first TP-Link-instigated Notice from Amazon, Plaintiff researched its sales of the TP-Link AC 5400 Router and searched the purchaser's address on Google, thereby identifying TP-Link as the purchaser of two (2) AC5400 Routers.

[9] On this instance alone, TP-Link claimed trademark infringement, but not counterfeiting.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Apr 9th: compliance-usa@tp-link.com
- Apr 10th: compliance-usa@tp-link.com
- Apr 11th: compliance-usa@tp-link.com
- Apr 12th: compliance-usa@tp-link.com
- Apr 24th: compliance-usa@tp-link.com
- Apr 25th: compliance-usa@tp-link.com
- Apr 26th: compliance-usa@tp-link.com
- Apr 30th: compliance-usa@tp-link.com
- May 28th: compliance-usa@tp-link.com
- May 30th: compliance-usa@tp-link.com
- Jun 7th: compliance-us@tp-link.com
- June 21st: compliance.usa@tp-link.com

28. TP-Link/Amazzia used four (4) different identities in complaining to Amazon, indicating a combination and conspiracy, to wit: compliance-us@tp link.com, compliance-usa@tp-link.com, us-compliance@tp-link.com and compliance.usa@tp-link.com[10] On information and belief, the only email address available to Amazzia was compliance-usa@tp-link.com.

## FALSE INFRINGEMENT CLAIMS AT AMAZON

29. In the April 2018 article by Chris McCabe ("McCabe"), discussed *supra,* the renowned expert in Amazon Seller Performance issues, McCabe summarizes "[h]ow unethical sellers abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> **Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes

---

[10] TP-Link has admitted in other litigation Amazzia's use of compliance-usa@tp-link.com. See Exhibit 9 hereto at ¶4.

[11] McCabe is a former Investigation Specialist for Amazon's Seller Performance team. His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

1     conspiracy with expressed knowledge and intent to "remove" Gray Market sellers.

2        35.    For the reasons stated in the next three (3) paragraphs hereof, TP-Link's

3     sole predicate for its wrongdoing, i.e. that its limited warranty did not convey to TSI

4     purchasers (which would not justify a *counterfeit* IP complaint in any event), is a

5     pretext , a mere illusion to justify some complaint--any complaint--with unauthorized

6     below-MAP sellers.[13]

7        36.    TSI was not an "unauthorized seller" except in the commonly-

8     understood sense that it was not specifically authorized under any distributorship

9     agreement (or similar agreement) by TP-Link to purchase TP-Link products directly

10     from TP-Link and thereafter resell such products. In all other respects, TSI was

11     "authorized" by law to sell genuine TP-Link products.

12        37.    TSI was authorized under its agreement with Amazon to sell TP-Link

13     products on amazon.com; *and TP-Link consented in its agreement with Amazon to*

14     *abide by Amazon's policies which authorized Gray Market sellers to resell the*

15     *trademarked goods of others without restraint on the Amazon Marketplace.*

16        38.    Under the First Sale Doctrine TSI was fully within its rights in lawfully

17     acquiring authentic TP-Link products, as it did in all instances of purchase of TP-link

18     products, and listing and selling such products on Amazon.

19        39.    Moreover, TSI sales of TP-Link products on Amazon *did* convey the

20     manufacturer's warranty (because under NYGBL §369-b any disclaimer was

21     invalid); hence, such products were *not* materially different than other genuine TP-

22     Link products, because:

23          •    TP-Link never enforced any such disclaimer against any of its Gray
24            Market customers prior to the advent of this litigation. Based on
            discovery received to date in *Careful Shopper*, TP-Link did not require,
25            from registered owners of TP-Link products seeking warranty
            assistance, proof of purchase disclosing seller identity until September
26            2019 at the earliest.

27

28

---

[13] A **MAP price** is a minimum amount that resellers agree not to advertise below.

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

- Purchasers of TP-Link products on Amazon designated (in the registration temple) their seller as Amazon. TP-Link had no way—and sought no way-- to distinguish as between Amazon purchasers of TP-Link products sourced from "authorized" and "unauthorized" sellers.

- Most significant, as a matter of law Section 369-b of New York's General Business Law, invalidating any warranty limitation actuated because "such merchandise is sold by a particular dealer," preserved the warranty for all Careful Shopper customers. *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp.2d 208, 228 (S.D.N.Y. 2011); see also *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261 n.3 (S.D.N.Y. 2012)

40. Amazzia is generally malevolent toward the public, has conducted itself as above described with respect to numerous innocent vendors, wantonly destroys businesses of others for pay and, by reason of the foregoing, is (along with TP-Link) subject to punitive damages herein. For example upon information and belief, Amazzia directly or indirectly sells products on Amazon through multiple seller accounts, often buying them from the same brands they contract with to provide "brand protection services," and subsequently files false counterfeit complaints against their competitors on Amazon.

41. Immediately upon receipt of the first IP-complaint of January 19, 2018 Plaintiff emailed TP-Link at the designated address in an effort to satisfy TP-Link that TSI's product was authentic and not counterfeit (Exhibit 5):

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E



42.     TP-Link did not respond to Plaintiff's letter, Exhibit 5; nor did Amazzia. During this litigation TSI has disclosed its sources of product to TP-Link.  TP-Link has not challenged the reputability of Plaintiff's sources of product, although it filed a Rule 26(f) Report since being so advised.

43.     Plaintiff then engaged expert Amazon counsel who emailed a letter to TP-Link on February 1, 2018 (Exhibit 6):

> In accordance with Amazon policy, in order to report an item is counterfeit, a test buy must be performed in order to verify the claimed differences are present between the accused product and the rights owner's product. As such, we are writing to request the specific basis for your counterfeit claims, including the test buy purchase information provided to Amazon to support your claims.

> TP-Link did not respond to counsel's letter.

44.     On May 7, 2018 Plaintiff was suspended (with appeal rights) from selling on Amazon by reason of TP-Link's IP complaints (Exhibit 7):

> You have listings that infringe on the intellectual property rights of others. This is against our policies. The removed items can be seen on the Performance

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

45. Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link continued its onslaught on May 28 and 30, and on June 14 and 21. Exhibit 8.

46. The record of TP-Link complaints, subject to Amazon's algorithmic surveil, caused Plaintiff's permanent expulsion (without appeal rights) from the Amazon Marketplace on August 27, 2018. This result from Amazzia's IP reporting was predictable to Amazon experts. *McCabe, supra.*

47. All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's counterfeiting, were filed under false attestation:[14]

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

48. Conspirators TP-Link and Amazzia had ample opportunity and did in fact, albeit surreptitiously, test purchase many of TSI's TP-Link offerings to determine authenticity. Exhibit 1 hereto. All were authentic and TP-Link has never stated to the contrary except, of course, as necessary to incite Amazon's punitive measures upon TSI. It chose to allege TSI's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications. Such actions were malicious.

49. TP-Link, having sought refuge in Noerr-Pennington in Careful-Shopper, we will plead to the issue here. The series of events pled within were a "sham" within Noerr Pennington parlance, and satisfy Noerr-Pennington's "sham

---

[14] https://www.amazon.com/gp/help/reports/infringement

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

determined by the Court.

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

56. Plaintiff incorporates the allegations above as though the same were re-written at length.

57. "The elements of tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1153. *Fresno Motors, Ltd. Liab. Co. v. Mercedes-Benz USA, Ltd. Liab. Co.*, 852 F. Supp. 2d 1280, 1292 n.12 (E.D. Cal. 2012)

58. As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints alleging sale of counterfeit products received by TSI from Amazon were the work of TP-Link and Amazzia.

59. Experts believe that Amazon third-party sellers who pass a threshold of <$1MM in annual sales, known as "Top Sellers" (such as TSI), have considerable longevity in their Amazon business relationship. *See* https://www.marketplacepulse.com/articles/veteran-amazon-sellers-still-at-the-top For TSI "the sky was the limit."

60. Defendants' accusations of counterfeiting, wrongful *per se*, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's existing and prospective business relationship with Amazon.

61. The accusations aforesaid proximately caused Plaintiff's expulsion.

62.     The statements were made maliciously and with ill will, as business entities do not lie dozens of times and turn a stone deaf ear to pleas for moderation absent a strong measure of ill will

63.     Amazon stated that it would act favorably if TP-Link/Amazzia would retract the accusations; but, despite TSI requesting a retraction and asking for evidence of TP-Link/Amazzia's claims, both directly and through counsel, TP-Link/Amazzia refused to retract the IP Complaints or even respond to TSI or counsel at all and indeed continued to file dozens of new complaints afterwards."

64.     Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon business.  TSI's last six (6) months of unimpeded Amazon-related operations showed net profits of $368,000. Using a 20% profit figure because our net profits ($368,000) derived from $1.819. Assuming a 10-year income stream for TSI, constant sales and static income of $900,000 per year, discounted at 3%,  we calculate damages at a Present Value of $7,785,270, after discounting by $1,214,730 total cash flows of $9,000,000.

## CLAIM II:  TRADE LIBEL

65.     Plaintiff incorporates the above allegations as though the same were rewritten at length.

66.     Under California law:

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259, 217 Cal. Rptr. 3d 234 (2017) (quoting *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312, 206 Cal. Rptr. 3d 60 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." *John Doe 2*, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

to injure him in his occupation." <u>Cal. Civ. Code § 45</u>.' *Schmidt v. Baldy*, No. CV 16-9368-DSF (AGRx), <u>2019 U.S. Dist. LEXIS 182826, at *18</u> (C.D. Cal. Oct. 19, 2019Defendants' libelous IP complaints to Amazon proximately caused Amazon to expel Plaintiff from the Marketplace on August 27, 2018 with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract with Amazon, as identified in ¶7 *supra*.

67.     TP-Link /Amazzia's scheming accusations falsely charged TSI with a serious crime or crimes.  Advertising falsely over the interstate wires may violate 18 U.S.C. 1343 because members of the public part with their money by reason of advertising. Moreover, this is not the only instance of defendants' scheme, to wit: there is pending in this Court the case of *TP-Link USA Corporation v. Careful Shopper*,[17] with counterclaims and third-party complaint premised on the same essential allegations as this case.

68.     The Amazzia promotional material and contract evidence a high probability that many more third-party sellers have fallen victim to this scheme but, as the conspirators calculated, those victims are unable to mount a lawsuit against the largest wi-fi manufacturer in the world, i.e. TP-Link.  Thus, on information and belief, plaintiff alleges that the conspiracy alleged herein was effected through a pattern of wrongful acts and conduct.

69.     Defendants' accusations against Plaintiff to Amazon directly injured Plaintiff in its business and trade because, as they knew, Amazon will not tolerate repeat counterfeiters as Amazon sellers.

70.     Defendants' accusations against Plaintiff constitute trade libel *per se*.

71.     Although injury may be presumed due to libel *per se,* Plaintiff suffered above and beyond presumed damages, e.g. loss of profits.  See ¶7 *supra*.  Further, TSI lost good will specific to the TSI-Amazon relationship that cannot be recovered including, *inter alia,* Plaintiff's right to sell a broad range of products on

---

[17] CASE NO:  8:19-cv-00082-JLS-KES

AMENDED FIFTH AMENDED COMPLAINT
CASE NO. 2:19-CV-10374-SB-E

amazon.com, much of which entitlement was grandfathered.[18]

## **PRAYER**

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

A.     Compensatory damages of at least $5,000,000;

B.     Treble damages of $15,000,000;

C.     Punitive damages of not less than $5,000,000;

D.     Attorney fees and costs; and

E.     Such other and further relief as the Court may order.

Dated: May 23, 2022          GAW | POE LLP

By:     _____

Mark Poe

Attorneys for Plaintiff
Thimes Solutions, Inc.

---

[18] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

# EXHIBIT 8

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

**United States Patent and Trademark Office**

Reg. No. 3,175,495

Registered Nov. 21, 2006

## TRADEMARK
### PRINCIPAL REGISTER

# TP-LINK

TP-LINK TECHNOLOGIES CO., LTD. (CHINA LTD LIAB CO)
BUILDING 7, SECTION 2
HONGHUALING INDUSTRIAL PARK, NANSHAN DISTRICTTRICT
SHENZHEN, CHINA

FOR: MODEMS, OPTICAL FIBER CONVERTERS, OPTICAL TRANSMITTERS, OPTICAL RECEIVERS, OPTICAL SWITCHES, TRANSMITTERS OF ELECTRONIC SIGNALS, NETWORK SWITCHES, NETWORK HUBS, RECEIVER SERVERS, ROUTERS, VIDEOPHONES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 11-22-2005; IN COMMERCE 11-22-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF CHINA REG. NO. 1747624, DATED 4-14-2002, EXPIRES 4-13-2012.

SN 78-662,345, FILED 7-1-2005.

MARIA-VICTORIA SUAREZ, EXAMINING ATTORNEY

# EXHIBIT 9

M Gmail                                                                          Avi Eisenberg <avi@thimessolutions.com>

---

## Warning: Notice of Intellectual Property Rights Infringement

---

**seller-evaluation@amazon.com** <seller-evaluation@amazon.com>                    Fri, Jan 19, 2018 at 4:33 PM
Reply-To: "seller-evaluation+C3CWBKYI0CKLY3-T1SYKNXRR1PS41@amazon.com" <seller-evaluation+C3CWBKYI0CKLY3-
T1SYKNXRR1PS41@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

We are contacting you because we received a report from a rights owner that you are listing counterfeit items. Examples of these items
are listed below:

ASIN: B01DXVK3KY, TP-Link AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router - Powerful Wi-Fi for Gaming and 4K Streaming,
Comprehensive Antivirus and Security, Works with Alexa and IFTTT (Archer C5400)

We may let you list this content again if we receive a retraction from the rights owner. Their contact information can be found below.

TP-Link, ,Compliance
us-compliance@tp-link.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.
If you believe that the reported content does not infringe the rights owner's intellectual property rights, you may email notice-
dispute@amazon.com with supporting information.

We consider allegations of intellectual property infringement a serious matter and your account is under review. If we receive more
complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

Complaint ID: 1359628881

Sincerely,

# EXHIBIT 10

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THIMES SOLUTIONS INC.                    )
3 Litman Lane                            )
Suffern, NY 10901                        )
      Plaintiff,            ) CASE NO.
                                         )
    v.                           ) JUDGE
                                         )
TP LINK USA CORPORATION                  )
145 South State College Blvd., Suite 400 )
Brea, California 92821                    )
                                         ) **COMPLAINT**
    and                          )
                                         ) **DEMAND FOR JURY TRIAL**
MIKHAIL J FIKHMAN                        )
dba AMAZZIA                               )
19321 Califa St., Unit 301               )
Tarzana, CA 91356-3135                   )
                                         )
Also serve:                              )
Mikhail J. Fikhman                       )
dba AMAZZIA                               )
7040 Darby Avenue                        )
Reseda, CA 91335                         )
    and                          )
                                         )
3PM SHIELD LLC                           )
c/o Michael B. Gray, Registered Agent    )
2 N LaSalle St., Ste 1700                )
Chicago, IL 60602-4000                   )
                                         )
    and                          )
                                         )
PREVAGEN, INC.                           )
c/o CORPORATION SERVICE CO.              )
501 Louisiana Ave.                       )
Baton Rouge, LA 70802-5921               )
                                         )
      Defendants.           )

present between the accused product and the rights owner's product. As such, we are writing to request the specific basis for your counterfeit claims, including the test buy purchase information provided to Amazon to support your claims.

TP-Link did not respond to counsel's letter.

35.  On May 7, 2018 Plaintiff was suspended (with appeal rights) from selling on

Amazon by reason of TP-Link's IP complaints (Exhibit 7):

> You have listings that infringe on the intellectual property rights of others. This is against our policies. The removed items can be seen on the Performance Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

36.  Plaintiff appealed and got reinstated from the May 7th suspension, but TP-Link

continued its onslaught on May 28 and 30, and on June 14 and 21.  Exhibit 8.

37.  The record of TP-Link complaints, together with other and, to a lesser extent, IP

complaints of Defendants Prevagen and 3PM, caused Plaintiff's permanent

expulsion (without appeal rights) from the Amazon Marketplace on August 27,

2018.

38.  All IP complaints (i) filed by TP-Link and/or Amazzia, and (ii) alleging TSI's

counterfeiting, were filed under false attestation:

**Statements**
"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

dozens of sellers—**without exception--**were simultaneously infringing the AKG mark.  Further and in light of the foregoing, 3PM's complaint reflects its dedication to eliminating third-party seller competition based solely upon the 3PM's commitment to ridding the market of any online seller not specifically authorized by his client to sell items bearing such client's trademark.

65. Plaintiff immediately sought to communicate with 3PM and 3PM responded with the following (Exhibit 12):

> Thank you for the email. Please submit your response by clicking on the link below:
>
> https://3pm.ai/sellerportal/login.php
>
> password:  **ufw80VlQ**
>
> We will review your submission once received.
>
> Regards,
>
> 3PM Enforcement Team

66. Plaintiff responded to 3PM promptly, including seller ID, ASIN, and statements assuring that the AKG headsets were purchased from a reputable source.

67. 3PM never responded to TSI's engagement of the process prescribed by 3PM for resolution of its serious charges; nor did 3PM retract its IP complaint.

68. In reviewing and evaluating third-party seller accounts against intellectual property claims, Amazon regards complaints as to sellers with high sales volumes as warranting heightened scrutiny and discipline.  3PM's August 22d complaint, vigorously advanced while 3PM refused to engage with Plaintiff, was particularly harmful to TSI in light of TSI's 1,949 unit sales of the ASIN at issue.

69. TPL and Prevagen had lodged IP complaints against Plaintiff antecedent to 3PM's

August 22, 2018 IP complaint on June 21, 2018 (TP-Link) and June 21and 23,

2018 (Prevagen), all of which stated as follows:

> **We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.**

70. 3PM played a critical role in Plaintiff's final expulsion from the Amazon

Marketplace.  It was "the straw that broke the camel's back" just prior to

Plaintiff's non-appealable expulsion on August 27, 2018.

71. 3PM's IP Complaint alleging TSI's infringements, were filed under false

attestation:

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

As the IP complaints were filed over interstate wires, their filing violated 18

U.S.C. 1343 and 3PM thereby used criminal means to accomplish its goal of

Plaintiff's elimination.

72.  The purpose and effect of 3 PM's IP Complaint to Amazon was to inhibit

competition and artificially raise prices. In fact, the following occurred:[11]

- The Official Galaxy S8/S8+ In-Ear Headphones sold for as low as $7.93 as of August 22nd;
- Immediately upon the august 22d IP Complaint, competitive offers vanished;

---

[11] https://keepa.com/#!product/1-B072J8XD3D

parties, terminate and afford relief from any uncertainty, insecurity or

controversy.

WHEREFORE, Plaintiff prays for relief against Defendants, jointly and severally, as

follows:

A.     Compensatory damages of at least $5,000,000;

B.     Punitive damages of not less than $5,000,000;

C.     A declaration that Plaintiff did not infringe the trademark or other
       intellectual property rights of Defendants or their privies;

D.     Attorney fees and costs; and

E.     Such other and further relief as the Court may order.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

/s/Mark Schlachet_____
Mark Schlachet
Law Offices of Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390
Email:markschlachet@me.com

Counsel to Plaintiff Thimes Solutions Inc.

# EXHIBIT 11

Avi Eisenberg <avi@thimessolutions.com>

## Your Amazon.com selling privileges have been removed

**Amazon** <notice@amazon.com>                                    Sat, May 5, 2018 at 1:41 PM
To: avi@thimessolutions.com

Hello,

We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:

karin@yellowbp.com
dr.seuss@ybrandprotection.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.

If you believe that the reported content is authentic, you may email notice-dispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.

We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for &Ldquo;Intellectual Property Violations&rdquo; in Seller Central Help (https://sellercentral.amazon.com/gp/help/external/201361070).

ASIN: B01LYWSZK2
B01LYWSZK2
B0774H64GV
B0774H64GV
B0773YLPY8
B0773XP59Q
B0773YC5QJ
B0773XYKKQ
B0773ZL4X4
B0773Y2V2G
B0773ZZK39
B0773Y4HTR
B0773YYMCK
B0773YN9FV
B01D5XRYQ6
B075FF3T3M
B07585NZQB
B01KSWUV80
B019KMKUH6
B019KMKUH6
B01M16U38R
B01M16U38R
B019KMKUGM
B019KMKUGM
B01FAKO2US
B01FAKO2US
B01KSWR8D6
B01KSWR8BI
B01DBGMD8G
B01N8SUR64
B01N02KV65
B01LY9DMNR
B01LYL7FG0
B01LXXRZPA
B078FXYFMQ
B078FXYFMQ
B01LWYJUG4
B01HKM74Z4
B01FTTMSB0
B01FTTMSB0

B01FTTMSAG
B01FTTMSAG
B01LX5Y7VH
B01KX3ZLMU
B01KX3ZLMU
B01KX3ZLMU
B01KX3ZLMU
B075CY9ZXC
B075CXWNX6
B075CWLC51
B075CXY249
B075CST3QH
B075CYBRL8
B075CXWGWS
B075CYLSRJ
B075CXLBTS
B075CSQ8NZ
B075CXY8FH
B075CXWL74
B075CSRWYD
B075CXQGY7

Infringement type: Counterfeit
Trademark asserted: 85406593
Complaint ID:5027462061

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).

Sincerely,
Seller Performance Team
Amazon.com

THIMES01120

# EXHIBIT 12

Avi Eisenberg <avi@thimessolutions.com>

# Your Amazon.com selling privileges have been removed

**notice-request-dispute@amazon.com** <notice-request-dispute@amazon.com>                Mon, May 7, 2018 at 11:42 AM
Reply-To: "notice-request-dispute@amazon.com" <notice-request-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Hello,

You have listings that infringe on the intellectual property rights of others. This is against our policies. The removed items can be seen on the Performance Notifications page in Seller Central. As a result, you may no longer sell on Amazon.com, and your listings have been removed from our site.

If you have funds in your account, they will be available after any amounts paid for A-to-z claims or chargebacks have been deducted. This usually takes about 90 days, but funds may be held longer.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please send an email to payments-funds@amazon.com.

If you want to appeal this decision, click the Appeal button next to this message on the Performance Notifications page in Seller Central (https://sellercentral.amazon.com/gp/customer-experience/perf-notifications.html).

Sincerely,

Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00310

# EXHIBIT 13

 Gmail

---

## Notice: Policy Warning

---

**Amazon** <notice@amazon.com>                                                                Mon, May 7, 2018 at 2:50 PM
To: avi@thimessolutions.com

Hello,

We received a report from a rights owner that claims the items at the end of this email infringe their utility patent rights. We consider allegations of intellectual property infringement a serious matter. We have provided the rights owner&rsquo;s contact information below:

Ted, ,Luymes
ted@tedlawfirm.com
Patent number: 9,060,588

Please work directly with the rights owner to resolve this dispute. We encourage you to resolve this dispute promptly. Failure to do so may result in removal of your offers or your Amazon.com selling privileges.

ASIN: B071P2HQ31, B0725QML6Y, B071VT9JQ5, B07289WT69, B071F9CXTW
Complaint ID: 5032701841

Sincerely,
Seller Performance Team

THIMES00756



## Notice: Policy Warning

**Amazon** <notice@amazon.com>                                            Tue, May 8, 2018 at 1:19 PM
To: avi@thimessolutions.com

Hello,
 
We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:
 
--  ArganMagicME@jocottbrands.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.
 
If you believe that the reported content is authentic, you may email notice-dispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.
 
We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.
 
To learn more about this policy, search for &ldquo;Intellectual Property Violations&rdquo; in Seller Central Help (https://sellercentral.amazon.com/gp/help/external/201361070).
 
ASIN: B00AT3CM3G  B00VEYVG2W  B00AT3FQUW  B00CDZDVJM
Infringement type: Counterfeit
Trademark asserted: 4100014
Complaint ID: 5035577421
 
You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).
 
Sincerely,
Amazon.com



---

## Notice: Policy Warning

---

**Amazon** <notice@amazon.com>                                                                    Wed, May 9, 2018 at 5:59 AM
To: avi@thimessolutions.com

Hello,

We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:

-- amirus@foxmail.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.

If you believe that the reported content is authentic, you may email notice-dispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.

We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for &ldquo;Intellectual Property Violations&rdquo; in Seller Central Help (https://sellercentral.amazon.com/gp/help/external/201361070).

ASIN: B01J2URCMW
Infringement type: Counterfeit
Trademark asserted: 4935169
Complaint ID: 5039733671

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).

Sincerely,
Seller Performance Team
Amazon.com



Avi Eisenberg <avi@thimessolutions.com>

---

## Notice: Policy Warning

**Amazon** <notice@amazon.com>                                        Wed, May 9, 2018 at 9:31 AM
To: avi@thimessolutions.com

Hello,
 
We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:
 
-- austin@magicalbutter.com
 
If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.
 
If you believe that the reported content is authentic, you may email notice-dispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.
 
We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.
 
To learn more about this policy, search for &ldquo;Intellectual Property Violations&rdquo; in Seller Central Help (https://sellercentral.amazon.com/gp/help/external/201361070).
 
ASIN: B00PBFZNHY
Infringement type: Counterfeit
Trademark asserted: 4379234
Complaint ID: 5041593911
 
You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).
 
Sincerely,
Amazon.com

 Gmail

Avi Eisenberg <avi@thimessolutions.com>

## Notice: Policy Warning

**notice@amazon.com** <notice@amazon.com>
Reply-To: "notice-dispute@amazon.com" <notice-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>

Wed, May 9, 2018 at 10:55 AM

Hello,

We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:

-- etudehouse.compliance@hellocos.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.

If you believe that the reported content is authentic, you may email notice-dispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.

We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

ASIN: B016AEC63I  B00MOBJLHQ  B009SD1LK8  B00BPDE9PS  B005TTXOU0  B006LWSAR6  B013P10QHW
Infringement type: Counterfeit
Trademark asserted:85900737

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).


Sincerely,

Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00736

EXHIBIT 14

 Avi Eisenberg <avi@thimessolutions.com>

## Notice: Policy Warning

**Amazon** <notice-request-dispute@amazon.com>                                 Wed, May 9, 2018 at 12:52 PM
Reply-To: Amazon <notice-request-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

We reviewed your account and the information you provided, and we have decided that you may not sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help (https://sellercentral.amazon.com/gp/help/external/201361070).

Please ship any open orders. If you have funds in your account, they will be available after any amounts paid for A-to-z claims or chargebacks on your orders have been deducted. This usually takes about 90 days, but funds may be held longer.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please write to payments-funds@amazon.com.

Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

# EXHIBIT 15

Avi Eisenberg <avi@thimessolutions.com>

**Notice: Policy Warning**

**Amazon** <notice-dispute@amazon.com>                                         Thu, May 10, 2018 at 8:15 AM
Reply-To: Amazon <notice-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

We reviewed your account and decided that you may no longer sell on
Amazon.

If you do not appeal this decision within 90 days, we will permanently
withhold any payments to you. Any FBA inventory of the items that caused
"inauthentic" complaints will be destroyed at your expense.

To learn more about our policies, search for "Amazon Anti-Counterfeiting
Policy" or "Intellectual Property Violations" in Seller Central Help
(https://sellercentral.amazon.com/gp/help/external/201361070).

------------------------------------
ASIN:  B01MDLGCDL,
B0172C6P1G,
B01AMR2VUC,
B00VVT8PEC,
B00VKSSWTC,
B075JNZQHN,
B075VCY4HB,
B013KV2VPW,
B01DFFCHUM,
B00KL80VK0,
B0149IH1BY,
B00Q5K0JDW,
B00SGR9C8K,
B00USCI70U,
B00Q5K0JJ6,
B00NX1LBJC,
B01N2KCDJQ,
B01LCNENI8,
B01AIRDNIK,
B077SQGFZX,
B01A8AXMP6,
B01M082DQY,
B01IUXM1PU,
B011596F12,
B00NX1LBHO,
B01N0AI30J,
B01LCOZ53O,
B00VKSSVXE,
B00USCIBN8,
B01CKLXZQC,
B00IS4INQS,
B014E4ECWO,
B01A9ETWRI,
B075B285PP,
B018SVYS2S,
B00J8BX8SS,
B00ZAJWUQS,

THIMES00739

```
B01N44FM3I,
B02VK00WU,
B01AIR8G0Q,
B075JNV73T,
B0747Z2KJW,
B01LE7DP5O,
B00Q5K0JHI,
B00KW2R82Y,
B00SGR9CB2,
B00S5J3I3Y
```

Complaint ID:  5028597371


Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00740

# EXHIBIT 16

Avi Eisenberg <avi@thimessolutions.com>

# Your Amazon.com Selling Privileges have been removed

**Amazon** <seller-evaluation@amazon.com>                                     Thu, Jun 28, 2018 at 8:07 PM
Reply-To: Amazon <seller-evaluation@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

Your account has been closed due to violations of our Seller Policies.
Your use of the Mobile App to extract dangerous goods (hazmat) information
from our systems is prohibited by our policies. As stated on the
Prohibited Seller Activities and Actions page in Seller Central
(https://sellercentral.amazon.com/gp/help/G200386250), if you upload excessive
amounts of data repeatedly, or otherwise use our services in an excessive
or unreasonable way, Amazon may restrict or block your access to product
feeds or any other functions that are being misused until you stop your
misuse. In addition, as stated in our Conditions of Use
(https://www.amazon.com/gp/help/customer/display.html?nodeId=508088), you are not
authorized to use any Amazon service to collect product listings or
descriptions or use data mining, robots, or similar data gathering and
extraction tools. Any derivative use of any Amazon service or its contents
is also prohibited.

Funds will not be transferred to you but will stay in your account while
we work with you to address this issue. If you have any open orders,
please ship them.

Because we have warned you about similar activities in the past, your
account has been suspended and will not be reactivated unless you
acknowledge that you understand our policies, reaffirm your commitment to
adhere to them, and communicate your plan of action to avoid these
activities (and any similar activities) in the future. To sell on
Amazon.com, please send us a plan that explains how you will address this
problem.

For help creating your plan, search for "Appeal the Removal of Selling
Privileges" in Seller Central Help. When you are ready to send us your
plan, click the Appeal button next to this message on the Performance
Notifications page in Seller Central (https://sellercentral.amazon.com/gp/customer-
experience/perf-notifications.html).

Once we receive your plan, we will review it and decide whether you may
sell on Amazon.com again. If you do not send an acceptable plan within 17
days, or if we agree to reinstate your account and later detect you
engaging in these activities (or similar activities), we may cancel your
listings and hold any funds in your account for up to 90 days.

Have questions? We can help right away. Contact us (https://sellercentral.amazon.
com/cu/contact-us/performance)

Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00311

# EXHIBIT 17

| | |
|---|---|
| **From:** | Amazon |
| **To:** | avi@thimessolutions.com |
| **Subject:** | Your amazon.com selling privileges have been removed |
| **Date:** | Friday, August 3, 2018 8:23:28 AM |



Hello,

You may no longer sell on Amazon.com because of concerns about the authenticity of the items at the end of this email. Your listings have been removed from our site, and we are withholding any funds available in your account. If you have FBA inventory of the items causing "inauthentic" concerns, they are currently ineligible for removal.

If you do not appeal this decision within 90 days, we will permanently withhold any payments to you.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please write to payments-funds@amazon.com.

To appeal this decision, click the Appeal button next to this message on the Performance Notifications page in Seller Central (https://sellercentral.amazon.com/gp/customer-experience/perf-notifications.html).

Please include the following information for each ASIN reported:
-- Copies of invoices or receipts from your supplier issued in the last 365 days. These should reflect your sales volume during that time.
-- Contact information for your supplier, including name, phone number, address, and website.

You can send .pdf, .jpg, .png, or .gif files. These documents must be authentic and unaltered. We may call your supplier to verify the documents. You may remove pricing information, but the rest of the document must be visible. We will maintain the confidentiality of your supplier's contact information.

THIMES01130

The sale of counterfeit products on Amazon is strictly prohibited. If you cannot provide valid invoices or receipts for the items listed below, we will permanently hold funds equivalent to the amount you earned from the sale of these items in the last 180 days. If the equivalent amount is greater than the total amount available in your account, then the total amount will be held. If you have FBA inventory of these items, they will be destroyed at your expense.

Learn more about our policies in Seller Central Help:
--Amazon Anti-Counterfeiting Policy
(https://sellercentral.amazon.com/gp/help/201165970)
--Policies and Agreements (https://sellercentral.amazon.com/gp/help/521)

--------------------------------------
Concern type: Inauthentic
ASIN: B0097BEG1C, B073TLKQB9, B00OQLMJR6, B07DMSK4R9
--------------------------------------

Sincerely,
Seller Performance Team
amazon.com
http://www.amazon.com



THIMES01131

# EXHIBIT 18

Avi Eisenberg <avi@thimessolutions.com>

---

# Notice: Policy Warning

1 message

---

**Amazon** <notice@amazon.com>                                                          Wed, Aug 22, 2018 at 7:56 PM
Reply-To: Amazon <notice-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

We are contacting you because we received a report of trademark
infringement from the rights owner listed below. Sellers on Amazon.com are
not allowed to imply listings on product detail pages are trademarked when
they are not. We removed the rights owner's trademark(s) from the detail
page(s) for the content listed at the end of this email.

If a product you are listing is compatible with a brand-name product, the
product detail page(s) must clearly identify that the product is
compatible with the trademarked product.

If you believe this complaint was made in error, please respond directly
to this email and provide an invoice as confirmation.

If you believe that the reported content does not infringe the rights
owner's trademark, you may email notice-dispute@amazon.com with supporting
information.

We may restore this content if we receive a retraction from the rights
owner. Their contact information can be found below.

-- 3PM Solutions
-- rob@3pm.ai

If the rights owner agrees to retract their complaint, they must send the
retraction to us at notice-dispute@amazon.com.

We consider intellectual property infringements a serious matter. If we
receive more complaints about your listings, we may not allow you to sell
on Amazon.com.

To learn more about this policy, search for "Intellectual Property
Violations" in Seller Central Help.

ASIN: B00723ZXWI, B006K2SRPM, B009WU54AK, B00C7CUVYE, B00DS0BUQ2,
B00C7CV1TI, B00CTEL6IA, B00C7CUMP2, B00C7CU0SG, B00CHU7X1K, B00C7CTVUY,
B00AL9OUGA, B00A9COZH8, B00C7CU8RO, B00C7CUXMO, B07BGW4KKW, B01BNUXQM4,
B00TOLW2PM, B00TOLVYE2, B00TOLVYCO, B00IN0LE1I, B00C7CV40Y, B00C7CV256,
B00C7CU7BQ, B009RUDOH0, B001AVXZGE, B079VL5S2S, B00TOLW2TI, B00DUDSH9K,
B079VVHFP1, B000GHDQ04, B072J8XD3D, B00MYF6EBS, B074XN1SQX, B0722QXJG8,
B0776R1MWH, B074R3ZZQ9, B06WLGRYSF, B01N3CD6C5, B01N3CD2ER, B00ZW5WJH0,
B016UC7HT8, B0143LWYCS, B013CWSHWU, B07BB3HS98, B0769F1SJ7, B00Y39ZCAW,
B00N556MDQ, B00F6FM9TY, B004TB3OZE, B004TB3OOA, B003S9VW84, B002N7WJ7U,
B00115CW00, B079D6SV1G, B01MQYBQV5, B002N7XQXG, B00N559512, B01I4SUC7U,
B06XG63X35, B06XGCM7VZ, B071Z6T1GM, B07288RM77, B00BL6NGVM, B07C84KKB8,
B071FTK8V8, B0716JXNNZ, B01HQKSA2Q, B01KTX7G0Y, B004LJ40TS, B000GKBMMO,
B0007U837A, B01AACPFY8, B075ZG8BFT, B07C7V3LYN, B07CJVWJPN, B07C7V9D2R,
B07C7QQGP9, B07B4NWB7J, B07B3ZFQRY, B079XSMKTC, B0777T8W6L, B076F5PX4Q,
B076F7P5T1, B076F4G9ZZ, B076F667B8, B0766257PN, B0758SVBKL, B0758NBNCT,

```
B06Y18QWZQ, B06XXLLB71, B01N0ANRU8, B01N14OPCV, B01KYGD5UQ, B003MQMEEO,
B07CKHNG8H, B07CJWTXX1, B07JZXP4RX, B07TZ5VKF50, B07QVK73G0,
B016VMOY8E, B011OUWIXG, B07CP357XP, B07CP1VCJ4, B07CKR7TX5, B07CKPL1FH,
B07CKHNG8H, B07CJYPPTP, B07CJWYTL7, B07CJVZV2D, B07CGK9JQC, B07CFWD1PS,
B07C7YL6DK, B07C7WV97K, B07C7FZV52, B07C5LH7XK, B07C5L7NKV, B07C5KP3CQ,
B07BK936NQ, B07BHTV7Y6, B07B67NXHW, B076F9FXLY, B076F98VJ4, B076F8M328,
B076F5Q9VX, B076F5193X, B076F48KYG, B076F44FYS, B076F41BH5, B076F29NJH,
B076F21348, B076DZP5YB, B01BT3DP62, B00SXHJZ94, B00Q62YWJ6, B00OLC5QJ8,
B00GMTSE7Y, B00FZZPNFM, B00FZZN4EO, B00FZZLXGA, B00FXI0892, B00EDOZCPM,
B00DRHJ59U, B00CLVD87S, B00CD84EVS, B00CD84DAA, B00BIFW5WW, B00A7WD1XO,
B008YOBKTY, B008YOBJWC, B008N9DLX8, B008IEFJNI, B00881CT4I, B005O0OOJO,
B003NEH8TG, B003MQMEEE, B00390GO3Q, B07B4M4L8M, B07B43LNJW, B07B3ZM3VB,
B07B3ZKX7S, B07B3ZDBCH, B079Y6G1XJ, B079XYXYV2, B079XVKDQG, B079XVK73S,
B079H5MR6X, B079H5FC24, B079H3SVYP, B074WWBZ2J, B07C7V4QYY, B0002MJCIM,
B001PYK1BS, B002B8B79W, B01MTKIY3R, B074VFBP85, B075KMQG1Q, B076F8Z93Q,
B079XRKKM6, B07C54DPBD, B07BZ6QS6M, B76TFD6W7, B079V23HR1, B07B42C3DM,
B07C7MT6Q4, B01KQ7DXJ6, B07816QFZX, B0766362FL, B07662P9R2, B07662C2YB,
B0766IQDLW, B07661PK74, B0758NWZ85, B0758J19PK, B0758HGYX3, B074XBSHSJ,
B074VGTVJ1, B074KHSC97, B074KGJHYH, B074KFG8PZ, B0741JGJ9M, B073JWNRNV,
B0722D3LJ6, B06Y2HT77C, B06Y1DFPX6, B06XY62D89, B06XXKJB15, B06XKLBJKQ,
B06XKC6X5B, B01NBWCF7L, B01N6SX7VU, B01N3WH9OB, B01N30KNXC, B01MZ8JJ4S,
B01MZ6GRH5, B01MYR6GER, B01MY6HSGU, B01MY4WKIT, B01MXE1DQO, B01MTCSOFD,
B01MRHDLWI, B01KYGD5TW, B01GKE6AA8
Title: n/a
Infringement type: Trademark
Complaint ID: 5304333291


Sincerely,
Seller Performance Team
Amazon.com
```

http://www.amazon.com

# EXHIBIT 19

Avi Eisenberg <avi@thimessolutions.com>

## Your amazon.com selling privileges have been removed

**Amazon** <product-quality-policy@amazon.com>                                    Mon, Aug 27, 2018 at 11:22 AM
Reply-To: Amazon <product-quality-policy@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

We reviewed your account and the information you provided, and we have
decided that you may no longer sell on Amazon.com.

For privacy reasons, we do not provide details about our investigation
methods. We may not reply to further emails about this issue.

You can see your balance and settlement information in the Payments
section of Seller Central. If you have questions about those, please write
to payments-funds@amazon.com.


Sincerely,
Seller Performance Team
amazon.com
http://www.amazon.com

THIMES00307

# EXHIBIT 20

THIMES SOLUTIONS, INC.,
a New York corporation

Plaintiff,

v.

TP-LINK USA CORPORATION,
a California corporation and
AUCTION BROTHERS, INC. d/b/a AMAZZIA
a California corporation,

Defendants.

In the U.S. District Court
Western District of California
Case No. 2:19-CV-10374-SB-E

## EXPERT REPORT OF ALAN G. GOEDDE, PH.D.

Freeman & Mills, Incorporated
629 Wilshire Blvd, Suite 900
Los Angeles, CA 90017

Alan G. Goedde

August 1, 2022

# Expert Witness Report
## Alan G. Goedde, Ph.D.

### I. Personal Qualifications

**1.**   I, Alan G. Goedde, am a member of the firm of Freeman & Mills, Incorporated, an accounting, economics, and management consulting firm headquartered in Los Angeles, California.

**2.**   I have over twenty-five years of experience developing financial and economic analyses to solve business problems. I have worked in business and in government. My educational background includes a BS in Engineering and an MA and Ph.D. in Economics, all from Duke University. I have been qualified as an expert witness and have testified in both federal and state courts. My professional resume, which includes a summary of my testimony experience, is attached to this report under Tab 1.

### II. Scope of Opinions

**3.**   I have been engaged by the law firm of Gaw|Poe LLP on behalf of Thimes Solutions, Inc. in connection with the matter *Thimes Solutions, Inc. v. TP-Link USA Corporation and Auction Brothers, Inc. d/b/a Amazzia,* Case No. 2:19-CV-10374-SB-E in the U.S. District Court, Central District of California, Western Division. This report is prepared in compliance with Rule 26 of the Federal Rules of Civil Procedure.

**4.**   At the request of Gaw|Poe LLP, I have been asked to form an opinion regarding the damages suffered by Thimes Solutions, Inc. ("TSI") as a result of the actions of TP-Link USA Corporation and Auction Brothers, Inc d/b/a Amazzia ("TP-Link") and the amount TP-Link should be required to disgorge if Defendants are found liable for the claims asserted by TSI in this matter.

### III. Summary of Conclusions

**5.**   TSI suffered lost profits totaling $6,115,226 with prejudgment interest of 1,147,981 for a total damage amount of $7,263,206 due to the actions of TP-Link.

**6.**   As an alternative, I also calculated TSI's lost profits assuming growth in Amazon sales after 2018 would be limited to inflation alone. Under this scenario, TSI suffered lost profits totaling $2,169,323 with prejudgment interest of $500,019 for a total damage amount of $2,669,342 due to the actions of TP-Link.

### IV. Data or Other Information Considered in Forming Opinions

**7.**   My opinions are based on information of the type reasonably relied upon by experts in my field in forming opinions or inferences, including my own education, knowledge and experience. I have reviewed and relied upon a number of documents, which are listed in Tab 3.

**8.**   In support of my opinions, I may use at trial the exhibits and information listed in this disclosure as well as other exhibits or demonstrative aides made or derived from the exhibits or information listed in this disclosure, or other materials obtained in discovery or otherwise in this action.

**9.**   I am aware of my ongoing obligation under Rule 26 to revise or supplement this report as, and if, additional information becomes available.

### V. Statement of Opinions and Reasons and Bases Therefor

**10.**   Plaintiff TSI is a New York corporation with its principal place of business in Suffern, New York.[1]  TSI's business model involves purchasing products at a discount from down-stream distributors, typically at close out, and then selling the products in the manufacturer's original packaging at a discounted price via online means such as Amazon.[2]

---

[1] Complaint ¶3.
[2] Complaint ¶3.

*Thimes Solutions, Inc. v. TP-Link Corporation et al.*                    *Expert Report of Alan G. Goedde, PhD*

**11.** TP-Link is a California corporation with its principal place of business in Brea, California.[3] TPI supplies networking products for home and small business including switches, routers, and wireless systems components whose parent corporation, TP-Link, is the world's largest provider of Wi-Fi products to substantially all major electronics retailers and online distributors.[4]

**12.** TSI became a third-party seller on Amazon in 2016[5].

**13.** TP-Link entities published written complaints to Amazon charging TSI with at least 28 instances of infringing TP-Link intellectual property by listing or selling counterfeit goods on amazon.com or infringing a TP-Link trademark.[6]

**14.** The record of TP-Link complaints, subject to Amazon's algorithmic surveil, caused TSI's permanent expulsion (without appeal rights) on August 27, 2018.[7]

**15.** I calculated profits from sales of TSI products on Amazon from profit and loss statements provided by Amazon and reported in TSI's accounting software (inventorylabs.com) through July 2018. But for the actions of TP-Link these sales and profits would have continued. To be conservative, I extended sales only to year-end 2022.

**16.** TSI experienced high growth during its time with Amazon. For example, TSI sales grew from $283,932 in 2016 to $1,930,283 by the time of TSI's July 2018 termination, a growth rate of 679%.

**17.** After TSI was terminated as a seller by Amazon in August 2018, TSI continued to receive multiple offers for goods from TSI's regular product suppliers, indicative of continued growth opportunities unable to be fulfilled due to the actions of TP-Link.

**18.** However, TSI found that the only viable, non-trivial distribution channels available were wholesale at substantially smaller margins.[8]

**19.** Not only were TSI's margins smaller selling on wholesale channels but many of the products TSI was purchasing from its regular suppliers were not requested by wholesalers because the margins were too small to justify an intermediate supplier like TSI, thus limiting

---

[3] Complaint ¶8.
[4] Complaint ¶12,13.
[5] Complaint ¶6.
[6] Complaint ¶17.
[7] Complaint ¶46.
[8] Interviews with Avi Eisenberg, President Thimes Solutions, Inc. 7/15/22 – 7-30/22

*Thimes Solutions, Inc. v. TP-Link Corporation et al.*                    *Expert Report of Alan G. Goedde, PhD*

TSI's ability to grow its business.[9] Therefore, therefore I projected TSI sales made through alternative wholesale channels in the 2020 - 2022 period to be limited to inflation growth.

**20.** These wholesale distribution channel sales are considered mitigation and as such are subtracted from projected Amazon sales to determine net lost sales.

**21.** Considering the quantity of offers TSI received to purchase products from many regular, continuing customers, it is reasonable to expect there to be sufficient supply of products for TSI to continue strong retail sales growth had TP-Link not interfered.

**22.** To forecast TSI's sales from 2019 to 2022 I first reviewed the growth of Ecommerce sales and Amazon sales. TSI sales growth far exceeded these indices from 2016 to 2018.

**23.** For example, from 2016 to 2017 TSI's Amazon sales growth increased by 319%, and sales growth increased by 154.8% from 2017 to 2018 while Ecommerce growth increased 14% and 16% respectively and Amazon sales growth increased 43% and 19%.

**24.** To be conservative, I decreased the TSI sales growth by half in each successive year from 2019 to 2022 to be in the range of the Ecommerce and Amazon growth rates by 2022. The details of my analyses are shown in Tab 2.

**25.** My results show TSI's lost profits total $6,115,226 with prejudgment interest of $1,147,981 for a total damage amount of $7,263,206.

**26.** As an alternative, I also calculated TSI's lost profits assuming growth in Amazon sales after 2018 would be limited to inflation alone. Mitigation sales would also increase only at the rate of inflation. Under this scenario, TSI lost profits through 2022 total $2,169,323 with prejudgment interest of $500,019 for a total damage amount of $2,669,342.


## VI. Compensation to be Paid for the Report and Testimony

**27.** Freeman & Mills is compensated based on the standard billing rate for the staff employed on this engagement and the actual hours incurred by each person. Out-of-pocket expenses are billed as incurred. My compensation is not contingent on the conclusions reached or on the ultimate resolution of the case. My hourly billing rate is $600.

---

[9] Interviews with Avi Eisenberg, President Thimes Solutions, Inc. 7/15/22 – 7-30/22

*Thimes Solutions, Inc. v. TP-Link Corporation et al.*          *Expert Report of Alan G. Goedde, PhD*

**Tab 1**

**ALAN G. GOEDDE**                                                                    **Vice President**

Alan G. Goedde is a member of the firm of Freeman & Mills, a consulting firm offering services in the areas of accounting, finance, economics and business practices and procedures.  He has over 20 years of experience developing financial and economic analyses to solve business problems.  Dr. Goedde was formerly a vice president of Putnam, Hayes & Bartlett, Inc., an economic and management consulting firm.  Before joining Putnam, Hayes & Bartlett and its predecessor firm, Freeman & Mills, Incorporated, Dr. Goedde had extensive business and regulatory experience while in industry and government.  He was president of a technology marketing and licensing company, head of strategic planning for the NutraSweet Company and vice president-strategic planning for a division of First National Bank of Chicago.   While at the U.S. Treasury, his responsibilities included corporate fraud, technology licensing, business valuation and transfer pricing. He has testified in U.S. Tax Court.

A considerable part of Dr. Goedde's practice involves intellectual property issues including patent, trademark, copyright, trade secret and unfair competition matters as well as business valuations. His background in engineering and economics combined with his work experience in profit planning, budgeting, product marketing and acquisitions analysis has enabled him to assist clients in a wide range of intellectual property litigation.  Dr. Goedde can also draw upon his experience as a patent examiner at the U.S. Patent and Trademark Office.

His testimony experience in patent infringement matters includes economic analysis of the *Panduit* factors, applying *Georgia Pacific* factors to evaluate reasonable royalty; and, developing RAND royalty rates considering such issues as scope of the royalty base, lump sum and running royalties, royalty stacking, license comparability, university licensing agreements, exclusive licensing, and apportionment of profits to non-infringing components.

Dr. Goedde has consulted and testified on numerous high technology matters including semiconductors, wired and wireless media, internet media delivery systems, cell phone component manufacture, telecommunications, software and biotechnology.  His analysis and testimony have involved accelerated product life cycles, first-mover advantages, economics of startup and development stage companies, market power, product development costs, and distribution economics.

In copyright, trademark and  trade secret matters,  Dr. Goedde has testified to lost profits, unjust enrichment, causal connections between the plaintiff's loss and the defendant actions, apportionment of direct and indirect profits, price erosion, incremental costs and spoiling the market.

In the entertainment industry, Dr. Goedde has testified and consulted on numerous copyright and trademark matters as well as such issues as rights of publicity, motion picture rights, visual artist rights, credit/idea misappropriation, celebrity endorsement value, and the value of motion picture and photography libraries.

## ALAN G. GOEDDE

Dr. Goedde has testified on issues involving employment compensation, employment agreements, performance benchmarks, and wrongful discharge in a variety of industries. In franchising matters, his experience includes franchise growth, business viability, and trademark value.  His industry expertise includes manufacturing, pharmaceuticals, biotechnology, industrial products, foods, automotive aftermarket, airlines, electronics and software. Dr. Goedde has also developed numerous product pricing analyses to define markets and assess competition.

In antitrust matters, Dr. Goedde has provided analysis and expert testimony on the definition of relevant markets, the competitive impact of mergers, market power, price discrimination, predatory pricing, as well as the presence and extent of price fixing.  He has testified in a number of patent/antitrust matters involving inequitable conduct including Walker Process fraud.  In addition to providing testimony in federal and state courts, Dr. Goedde has also appeared before the Federal Trade Commission and the United States Court of International Trade.

Dr. Goedde has testified on financial and economic matters involving Superfund and hazardous waste sites including stigma damages.  He has also testified to the use of statistical methods, sampling and economic analysis in developing damage claims and in identifying markets.  His experience also includes analyses in securities pricing, bankruptcy, business interruption, dealer termination, and valuation of minority holdings.

Dr. Goedde has served as an arbitrator for the American Arbitration Association.

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 2000–present | Freeman & Mills Incorporated |
| 1994–2000 | Putnam, Hayes & Bartlett (Freeman & Mills was acquired in 1994 and spun off in 2000) |
| 1990–1994 | Freeman & Mills Incorporated |
| 1988–1990 | Manager, Coopers & Lybrand |
| 1987–1988 | President, Mentor International Group |
| 1986–1987 | Director of Strategic Planning, The NutraSweet Co. |
| 1984–1986 | Vice President, First National Bank of Chicago |
| 1981–1984 | Manager, Arthur Andersen & Co. |
| 1979–1981 | Financial Economist, U.S. Export-Import Bank |
| 1976–1979 | Industry Economist, U.S. Treasury Department |
| 1970–1971 | Patent Examiner, U.S. Patent Office |

**ALAN G. GOEDDE**

**PROFESSIONAL AFFILIATIONS AND MEMBERSHIPS**

- American Bar Association
- National Association For Business Economics
- Board of Directors, Associated Foundations, Inc.

Dr. Goedde holds a B.S. in engineering  and an M.A. and Ph.D. in economics from Duke University.

**PUBLICATIONS AND PRESENTATIONS**

Goedde, Alan G. and Freeman, Neill W.  Article reviews.  In *Manual on the Economics of Antitrust Law*, Ninth and Eleventh Supplements, edited by Robert H. Lande.  Chicago: American Bar Association, 1991, 1993.

Roach, George P. and Goedde, Alan G., "CEO Compensation in the Pharmaceutical Industry: Market Value, the Number of Employees and Total Return Underpin CEO Pay at Pharmaceutical Companies", *Compensation and Benefits Review*,  Vol. 35, No. 5, 66-81, 2003.

American Institute of Certified Public Accountants, Conferences on Fraud and Litigation, "Regression Analysis in Litigation", 2004.

Los Angeles County Bar Association, "Recovering Damages in Credit Deprivation Cases", 1996.

Los Angeles Intellectual Property Law Association, "Economic Damages in Copyright, Trademark and Trade Secret Litigation", 1994.

**CONTACT:**

(213) 576-1815
agoedde@freemanmills.com

**ALAN G. GOEDDE**

### RULE 26(A)(2)(B) DISCLOSURE OF
### DEPOSITION/TRIAL TESTIMONY

| DATE | CASE | COURT | D/T |
|------|------|-------|-----|
| 1/90 | Chicago Specialty v. Dortmunder (DAB) | Cir. Ct., Cook Cty., IL | T |
| 1/90 | Game & Playtime v. Gametime | USDC N IL | D |
| 5/90 | Nedlog, Inc. v. ARA Services, Inc. | USDC N IL | D |
| 9/90 | Cella v. United States | USDC N IN | T |
| 12/90 | Edgerly v. State Farm Insurance | OCSC | D |
| 4/91 | Euroconcepts v. Aderans | LASC | D |
| 5/91 | Benjamin v. Levenfeld | LASC | D |
| 6/91 | Benjamin v. Levenfeld | LASC | T |
| 9/91 | Cummins-Allison, Inc. v. Brandt, Inc. | USDC N IL | T |
| 11/91 | PIC v. Kodak | USDC C Ca | T |
| 6/92 | Cummins-Allison, Inc. v. Brandt, Inc. | USDC N IL | T |
| 3/93 | Intersection Dev. Corp. v. McCain Traffic Supply | USDC C Ca | D |
| 6/93 | Bell v. G.T.E. | Ventura SC | D |
| 9/93 | Yes Clothing v. Cigna | Arbitration | T |
| 3/94 | Glamour Boutique v. Arbonne, Inc. | OCSC | D |
| 4/94 | Acton, et al. v. Merle Norman Cosmetics | USDC C Ca | D |
| 9/94 | Acton, et al. v. Merle Norman Cosmetics | USDC C Ca | D |
| 10/94 | Catalina Marketing Co. v. APT | USDC C Ca | D |
| 1/95 | Micro Pen v. Sunmex | USDC C Ca | D |
| 2/95 | California Sports, Inc. v. Transamerica, et al. | LASC | D |
| 2/95 | Guitars & Concepts v. Gibson Guitar Corp. | USDC C Ca | D |
| 4/95 | R. Murdock v. Murdock, Inc. | LASC | T |
| 6/95 | Fournier, et al. v. Lockheed | Arbitration | T |
| 10/95 | Tomen America v. Chauvin International | USDC C Ca | D |
| 1/96 | Vitablend v. Boost Products, et al. | LASC | T |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 5/96 | MCI Telecomm. Corp. v. Liberty Digital Network | Arbitration | T |
| 6/96 | Taylor Tire Co., et al. v. Goodyear Tire Co. | USDC S Ca | D |
| 6/96 | Dive N' Surf, Inc. v. Heatmax, Inc. | USDC C Ca | D |
| 6/96 | GAB Business Services, Inc. v. Lindsey-Newsom | OCSC | D |
| 8/96 | Polaris Pool Systems, Inc. v. Letro Products, Inc. | USDC C Ca | D |
| 9/96 | Swift & Associates v. M/A-COM, et al. | LASC | D |
| 10/96 | Polaris Pool Systems, Inc. v. Letro Products, Inc. | USDC C Ca | T |
| 10/96 | GAB Business Services, Inc. v. Lindsey-Newsom | OCSC | D |
| 11/96 | GAB Business Services, Inc. v. Lindsey-Newsom | OCSC | T |
| 1/97 | Swift & Associates v. M/A-COM, et al. | LASC | D |
| 5/97 | Allergan, Inc. v. Pharmacia & Upjohn Company | USDC S Ca | D |
| 9/97 | Reebok International v. TRISTAR | USDC C Ca | D |
| 4/98 | American Telecom v. RSL Communications | Arbitration | D |
| 5/98 | Microtek Lab, Inc. v. JK Technology, Inc. | LASC | D |
| 9/98 | Amylin Pharmaceuticals v. Regents of the University of Minnesota | USDC S Ca | D |
| 10/98 | Cacique, Inc. v. Stella Foods, Inc. | LASC | D |
| 1/99 | Skechers, Inc. v. Candies, Inc. | USDC C Ca | D |
| 5/99 | In Re: The Ant Farm | Arbitration | T |
| 8/99 | Cacique, Inc. v. Stella Foods, Inc. | LASC | T |
| 12/99 | Porter, et al. v. City of Los Angeles | LASC | D |
| 4/00 | Iron Grip Barbell Co. v. Ivanko Barbell Company | USDC C Ca | D |
| 7/00 | Cellular 101, Inc. v. Santa Barbara Cellular Systems Ltd. et al. | USDC C Ca | D |
| 9/00 | Pharmavite Corp. v. Omega Nutrition et al. | USDC C Ca | D |
| 9/00 | Crystal Jukebox, et al. v. Anheuser Busch | USDC C Ca | D |
| 10/00 | Sea Star Clock International v. Direct Marketing Enterprises, Ltd. | USDC C Ca | D |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 3/01 | Wechsler v. Macke International Trade, Inc. et al. | USDC C Ca | D |
| 4/01 | Frazier v. Roessel Cine Photo Tech, Inc. et al. | USDC C Ca | D |
| 7/01 | Clayton Industries, Inc. v. SPX Corporation | Arbitration | D/T |
| 7/01 | RSKCo Claims Service, Inc. v. Miller et al. | LASC | D |
| 10/01 | Amazon.com v. Amazon Cosmetics and Tan Products | USDC C Ca | D |
| 11/01 | Customedia Technologies, LLC v. Hughes et al. | USDC Harris County, TX | D |
| 6/02 | NPI Medical Group v. State Compensation Insurance Fund et al. | LASC | D |
| 9/02 | Trustee of Bank Of New England Corp. v. Ernst & Young et al. | USDC Massachusetts | D |
| 9/02 | Manning Riddell Insurance et al. v. Coastal Interactive, LLC. | LASC | D |
| 12/02 | Mitsubishi Caterpillar Forklift America v. Power Lift Corporation et al. | USDC C Ca | D |
| 12/02 | ECC Systems, Inc. v. Mallinckrodt, Inc, et al. | US Bankruptcy Court Central District LA | D |
| 1/03 | Tel-Rom, Inc. v. Pacific Bell Telephone Company | LASC | D |
| 2/03 | Customedia Technologies, LLC v. Hughes et al. | USDC Harris County, TX | D |
| 3/03 | Unitherm Food Systems, Inc. v. Conagra Foods, Inc. | USDC Western District, OK | T |
| 4/03 | Martin Manufacturing, Inc. v. Currie Technologies, Inc. et al. | USDC C Ca | D |
| 4/03 | NPI Medical Group, et al. v. State Compensation Insurance Fund, et al. | LASC | D |
| 4/03 | B. Braun Medical, Inc. v. Rozi Medical Devices Limited, et al. | USDC S Ca | D |
| 5/03 | Tel-Rom, Inc. v. Pacific Bell Company | LASC | T |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 6/03 | B. Braun Medical, Inc. v. Rozi Medical Devices Limited, et al. | USDC S Ca | T |
| 7/03 | Scott O'Grady v. Twentieth Century Fox Film Corporation, and Discovery Communications, Inc. | USDC Eastern District, TX | D |
| 10/03 | Perfect 10, Inc. v. Net Management Services, Inc., et al. | USDC C Ca | D |
| 10/03 | NPI Medical Group, et al. v. State Compensation Insurance Fund, et al. | LASC | D |
| 10/03 | Nitro Leisure Products, LLC, et al. v. Acushnet Company | USDC Southern District, FL | D |
| 6/04 | Bruselas, Ltd., v. Harriscope of Los Angeles, Media Resources, International, et al. | USDC C Ca | D |
| 7/04 | Wechsler v. Macke International Trade, Inc. et al. | USDC C Ca | D |
| 10/04 | Wechsler v. Macke International Trade, Inc. et al. | USDC C Ca | T |
| 4/05 | Ventana Medical Systems, Inc. v. BioGenex Laboratories, Inc. | USDC, Az | D |
| 8/05 | Ride & Show Engineering, Inc. v. Universal City Development Partners, Ltd. et al. | USDC C Ca | D |
| 9/05 | JAMDAT Mobile, Inc. v. Jamster International, et al. | USDC C Ca | D |
| 10/05 | LML Patent Corp. v. Nova Information Systems, Inc., Telecheck Services, et al. | USDC Delaware | D |
| 10/05 | The Home Depot, USA, Inc. v. The United States | U.S. Court of International Trade | T |
| 11/05 | Sharper Image Corporation v. Ionic Pro, LLC et al. | USDC N Ca | D |
| 11/05 | Katzkin Leather, Inc. v. Nissan North America, Inc. | USDC C Ca | D |
| 5/06 | M. Richman, Twin Cities Cardiothoracic Surgery v. Rideout Memorial Hospital, et al. | Superior Court of California, County of Yuba | T |
| 5/06 | H. Khalil, M.D. v. A. Kaul, M.D. | AAA, Los Angeles | D |

**ALAN G. GOEDDE**

| 8/06 | Core Wealth Management, LLC v. Heller et al. | Superior Court of California, County of Santa Barbara | D |
|---|---|---|---|
| 9/06 | Gray et al. v. Ford Motor Company | Superior Court of California, County of Sacramento | D |
| 9/06 | Sputtered Films, Inc. v. Advanced Modular Sputtering, Inc., Agilent Technologies, Inc., Avago Technologies U.S., Inc. | Superior Court of California, County of Santa Barbara | D |
| 11/06 | Core Wealth Management, LLC v. Heller et al. | Superior Court of California, County of Santa Barbara | T |
| 5/07 | D. Hannah et al. v. Classified Cosmetics, LLC et al. | JAMS | T |
| 8/07 | Gray et al. v. Ford Motor Company | Superior Court of California, County of Sacramento | T |
| 8/07 | In re: Oracle Corporation Securities Litigation | USDC N Ca San Francisco Division | D |
| 2/08 | Elijah Asset Management v. RS Investment Trust et al. | Superior Court of California, County of San Francisco | D |
| 3/08 | Great American Marketing, Inc. v. American HealthCare Products, Inc. | USDC C Ca | D |
| 6/08 | Contessa Premium Foods, Inc. v. Thai Union International, Chicken of the Sea Frozen Foods, Bryan Rosenberg, et al. | LASC | D |
| 8/08 | Net2EZ Managed Data Centers v. Vendare Media Corp | LASC | D |
| 9/08 | Contessa Premium Foods, Inc. v. Thai Union International, Chicken of the Sea Frozen Foods, Bryan Rosenberg, et al. | LASC | T |
| 9/08 | Roger Plumley v. Doug Mockett & Company, Inc. et al. | USDC C Ca | D |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 11/08 | First Capitol Consulting, Inc. v. LVX, Inc. et al. | LASC | D |
| 12/08 | Accuride International Inc. v. Matco Tools Corporation | USDC C Ca | D |
| 9/09 | Star Telecom v. Telephone Electronics Corp. et al. | USDC  Northern District of Texas, Dallas Division | T |
| 1/10 | PDM Steel Service Centers, Inc. v. St Paul Travelers, Inc. et al. | Superior Court of California, County of Fresno | D |
| 2/10 | The Acting Corps et al. v. Talent Ventures of California, Inc. | LASC, Central District | D/T |
| 3/10 | Weiner et al. v. Snapple Beverage Corporation | USDC Southern District of New York | D |
| 4/10 | Grand General Accessories Mfg. v. United Pacific Industries, and Lucidity Enterprise Co. | USDC C Ca (Western Division) | D |
| 6/10 | Dykstra v. JPMorgan Chase | U.S. Bankruptcy Court Central District of California, San Fernando Valley Division | T |
| 11/10 | Eon Corp. IP Holdings, LLC v. Skyguard LLC | U.S. Bankruptcy Court Central District of California, San Fernando Valley Division | T |
| 12/10 | In re: McConnell (value of a patent) | Superior Court of California, County of Orange | T |
| 1/11 | Carlyle/Galaxy Wilshire L.P. v. Galaxy Southbrook Holdings, LLC | LASC, Central District | D |
| 1/11 | Petroplast Petrofisa Plasticos, S.A. Petrofisa do Brasil, Ltda. v. Ameron International Corporation | Court of the Chancery of the State of Delaware | D |
| 2/11 | Skycam, Inc. v. Actioncam, LLC et al. | USDC Northern District OK | D |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 3/11 | Cooner Sales Company, LLC v. <u>New England Wire Corporation</u> | American Arbitration Association, Los Angeles | D |
| 6/11 | <u>Chang</u> v. County of Los Angeles et al. | LASC,Central District | D |
| 7/11 | <u>Chang</u> v. County of Los Angeles et al. | LASC, Central District | T |
| 8/11 | <u>FAJATE-Virtual Sensuality</u> v. Bautista et al. | USDC C Ca (Western Division) | D |
| 8/11 | Global Truss America LLC v. <u>GLP German Light Products, Inc.</u> | USDC C Ca (Western Division) | D |
| 8/11 | Skycam, Inc. v. <u>Actioncam, LLC et al.</u> | USDC Northern District OK | T |
| 9/11 | Syntellect, Inc. v. <u>Southern California Gas Company</u> | USDC S Ca | D |
| 9/11 | Global Truss America LLC v. <u>GLP German Light Products, Inc.</u> | USDC C Ca (Western Division) | D |
| 11/11 | Petroplast Petrofisa Plasticos, S.A. Petrofisa do Brasil, Ltda. v. <u>Ameron International Corporation</u> | Court of the Chancery of the State of Delaware | T |
| 1/12 | <u>Spin Master, Ltd. et al.</u> v. Zobmondo Entertainment, LLC et al. | USDC C Ca | D |
| 1/12 | <u>FAJATE-Virtual Sensuality</u> v. Bautista et al | USDC C Ca (Western Division) | T |
| 3/12 | Cooner Sales Company, LLC v. <u>New England Wire Corporation</u> | American Arbitration Association, Los Angeles | T |
| 4/12 | Gucci America, Inc. v. <u>Guess?, Inc. et al.</u> | USDC NY Southern District | T |
| 5/12 | Eslinger, et al. v. <u>United Studios of Self Defense, LLC</u> | Superior Court, County of Orange, Central Justice Center | T |
| 6/12 | <u>LMA North America, Inc.</u> v. National Union Fire Ins. Company of Pittsburgh, PA. | USDC  Southern District of California | D |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 6 /12 | Out of the Box Enterprises LLC v. El Paseo Jewelry Exchange, Inc. et al. | USDC C Ca | D |
| 7/12 | Out of the Box Enterprises LLC v. El Paseo Jewelry Exchange, Inc. et al. | USDC C Ca | T |
| 8/12 | Orange County Water District v. Soco West, Brenntag North America, et al. | Superior Court of California, County of Orange | D |
| 10/12 | Spin Master, Ltd. et al. v. Zobmondo Entertainment, LLC et al. | USDC C Ca | T |
| 1/13 | Kayne et al. v. Cottonsmith, LLC et al. | LASC Central District | D |
| 2/13 | Leigh Robinson et al. v. U-Haul Co. of California, et al. | Superior Court of California, County of Solano | D |
| 5/13 | L.M. Scofield Company v. Windes McClaughry Accountancy Group | LASC Central District | D |
| 6/13 | Kayne et al. v. Cottonsmith, LLC et al. | LASC Central District | T |
| 8/13 | Leigh Robinson et al. v. U-Haul Co. of California, et al | Superior Court of California, County of Solano | T |
| 9/13 | Barton et al. v. RCI, LLC | US DC New Jersey | D |
| 11/13 | LMA North America, Inc. v. National Union Fire Insurance Co. | US DC Southern District of California | T |
| 2/14 | Virco Mfg. Corporation v. Hertz Furniture Systems, LLC et al. | US DC Central District of California, Western Division | D |
| 3/14 | SA Recycling, LLC v. Kramar's Iron & Metal, Inc. | US DC Central District of California, Southern Division | D |
| 4/14 | Weinsaft, et al. v. Arise, LLC | AAA Arbitration Los Angeles, CA | T |
| 5/14 | Reeves, et al. v. Finton Construction, Inc. | Superior Court of | D |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| | | California, County of Orange | |
| 8/14 | Barton et al. v. RCI, LLC | US DC New Jersey | D |
| 12/14 | LegalZoom.com v. Rocket Lawyer, Inc. | US DC Central District of California, Western Division | D |
| 8/14 | Barton et al. v. RCI, LLC | US DC New Jersey | D |
| 12/14 | LegalZoom.com v. Rocket Lawyer, Inc. | US DC Central District of California, Western Division | D |
| 10/15 | BBC, DWTS Productions v. Stander & Assoc. | US DC Central District of California, Western Division | D |
| 12/15 | DTS, Inc. et al. v. Nero AG and Nero, Inc. | US DC Central District of California Western Division | D |
| 3/16 | Advanced Marketing Systems, LLC v. HyVee, Inc. | US DC Western District of Wisconsin | D |
| 12/17 | MAP Company v. Lebanese Arak Corporation | US DC Central District of California | D |
| 12/17 | Robert E. Romeo v. Academy of Country Music | JAMS Arbitration | D |
| 3/18 | Brooks Automation, Inc. v. PTB Sales, Inc. | US DC Central District of California | D |
| 6/18 | Robert E. Romeo v. Academy of Country Music | JAMS Arbitration | T |
| 2/19 | Hilsley et al. v Ocean Spray Cranberries, Inc. | US DC Southern District of California | D |
| 3/19 | Beasley et al. v. Cognizant Technology Solutions, Inc., Molina Healthcare, Inc. | Superior Court of California, County of Los Angeles, South District | D |
| 5/19 | Hilsley et al. v. Ocean Spray Cranberries, Inc. | US DC Southern District of California | D |

**ALAN G. GOEDDE**

| | | | |
|---|---|---|---|
| 6/19 | Sumotext Corp. v. Zoove, Inc., StarStar Mobile, Virtual Hold Technology, LLC | US DC Northern District of California | D |
| 6/19 | Beasley et al. v. Cognizant Technology Solutions, Inc., Molina Healthcare Inc. | Superior Court of California, County of Los Angeles, South District | T |
| 7/19 | Epafrodito Pascua v. Joseph Merhi | Superior Court of California, County of Los Angeles, Central District | D |
| 11/19 | Wong et al. v. The Vons Companies et al. | Superior Court of California, County of Alameda | D |
| 12/19 | DMF, Inc. v. Elco Lighting, Inc. | US DC Central District of California | D |
| 2/20 | Sumotext Corp. v. Zoove, Inc., StarStar Mobile, Virtual Hold Technology, LLC | US DC Northern District of California | T |
| 5/20 | Lifespeed, Inc. v. Perkins Coie LLP, Jonathan Atzen | Superior Court of California, County of Los Angeles, Central District | D |
| 11/20 | Soco West et al. v. C&D Technologies, Inc | Superior Court of California, County of Orange | T |
| 11/20 | Oki Electric Industry Co., Ltd. v. Shenzhen Yihua Computer Co., Ltd. | UN Commission on International Trade Law | T |
| 1/21 | Soco West et al. v. Ocean County Water District | Superior Court of California, County of Orange | D |
| 4/21 | Bomatic, Inc. v. Evolution, Inc., Starbucks Corp. | Judicate West | D |
| 6/21 | Bomatic, Inc. v. Evolution, Inc., Starbucks Corp. | Judicate West | T |

**ALAN G. GOEDDE**

| 8/21 | Beasley et al. v. Cognizant Technology Solutions, Inc., Molina Healthcare, Inc. | Superior Court of California, County of Los Angeles, South District | D |
| 8/21 | Energy Intelligence Group, Inc. v. Kirby Inland Marine, LP | US DC Southern District Of Texas Houston Division | D |
| 12/21 | Re-Marketing Group, Inc. v. WOW Bargains and Closeouts | US DC Central District of California | D |
| 1/22 | Takeya USA Corporation v. Justin Schmidt, et al. | Superior Court of California, County of Orange, Central Justice Center | D |
| 4/22 | Soco West et al. v. Orange County Water District | Superior Court of California, County of Orange | T |
| 5/22 | Office Create Corp. v. Planet Entertainment LLC, et al. | International Chamber of Commerce, International Court of Arbitration | A |
| 6/22 | Lifespeed, Inc. v. Perkins Coie LLP, Jonathan Atzen | Superior Court of California, County of Los Angeles, Central District | T |

Tab 2

**Thimes Solutions, Inc. v. TP-Link USA Corporation and Auction Brothers, Inc.**
**Lost Profits Indexed to Inflation**

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Amazon Sales [1] [2] | $ 2,239 | $ 283,932 | $ 1,175,272 | $ 1,930,283 | $ - | $ - | $ - | $ - | $ 3,391,727 |
| Refunds/Reimbursements/Credits /Rebates etc | $ 140 | $ (2,961) | $ 3,489 | $ 36,356 | $ - | $ - | $ - | $ - | $ 37,024 |
| Amazon Net Sales | $ 2,379 | $ 280,971 | $ 1,178,761 | $ 1,966,639 | $ - | $ - | $ - | $ - | $ 3,428,751 |
| Amazon Expected Net Sales [3] [4] | $ 2,379 | $ 280,971 | $ 1,178,761 | $ 3,371,381 | $ 3,432,470 | $ 3,474,816 | $ 3,638,063 | $ 3,871,368 | $ 19,250,210 |
| **Lost Amazon Sales** | $ - | $ - | $ - | **$ 1,404,742** | **$ 3,432,470** | **$ 3,474,816** | **$ 3,638,063** | **$ 3,871,368** | **$ 15,821,459** |
| Mitigation Sales [5] | | | | | $ 844,664 | $ 1,151,835 | $ 1,205,949 | $ 1,283,285 | $ 4,485,733 |
| Net Lost Sales | $ - | $ - | $ - | **$ 1,404,742** | **$ 2,587,806** | **$ 2,322,980** | **$ 2,432,114** | **$ 2,588,083** | **$ 11,335,726** |
| Profits (%) on Amazon Sales [6] | | | | 19.14% | 19.14% | 19.14% | 19.14% | 19.14% | |
| TSI Lost Profits | | | | $ 268,826 | $ 495,230 | $ 444,550 | $ 465,435 | $ 495,283 | $ 2,169,323 |
| Prejudgment Interest (10% Simple) | | | | $ 120,972 | $ 173,330 | $ 111,137 | $ 69,815 | $ 24,764 | $ 500,019 |
| Total | | | | $ 389,798 | $ 668,560 | $ 555,687 | $ 535,250 | $ 520,047 | **$2,669,342** |

Notes:
[1] Per profit and loss statements of Amazon Sales
[2] 2018 Sales are only through July
[3] Expected Sales for 2018 are prorated for the period Aug-Dec 2018
[4] Expected sales after 2018 grow with inflation per the CPI-U data accessed at:data.bls.gov/cpi/data.htm on 7/26/2022
[5] Per Thimes Solutions profit and loss statements (Thimes 00128-131)
[6] Per Amazon Sales 2018 Profit Rate

**Thimes Solutions, Inc. v. TP-Link USA Corporation and Auction Brothers, Inc.**
**Lost Profits with Growth Factor**

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Amazon Sales [1] [2] | 2,239 | 283,932 | 1,175,272 | 1,930,283 | - | - | - | - | 3,391,727 |
| Refunds/Reimbursements/Credits /Rebates etc | 140 | (2,961) | 3,489 | 36,356 | - | - | - | - | 37,024 |
| Amazon Net Sales | 2,379 | 280,971 | 1,178,761 | 1,966,639 | - | - | - | - | 3,428,751 |
| Growth Factor [2] | | | 3 | 2 | 1 | 0 | 0 | 0 | |
| Amazon Expected Net Sales [3] | 2,379 | 280,971 | 1,178,761 | 3,371,381 | 5,980,890 | 8,295,547 | 9,900,773 | 10,858,694 | 39,869,397 |
| **Lost Amazon Sales** | - | - | - | **1,404,742** | **5,980,890** | **8,295,547** | **9,900,773** | **10,858,694** | **36,440,647** |
| Mitigation Sales [4] | | | | | 844,664 | 1,151,835 | 1,205,949 | 1,283,285 | 4,485,733 |
| Net Lost Sales | - | - | - | **1,404,742** | **5,136,226** | **7,143,712** | **8,694,824** | **9,575,409** | **31,954,913** |
| Profits (%) on Amazon Sales [5] | | | | 0 | 0 | 0 | 0 | 0 | 0 |
| TSI Lost Profits | | | | 268,826 | 982,922 | 1,367,095 | 1,663,932 | 1,832,450 | 6,115,225 |
| Prejudgment Interest (10% Simple) | | | | 120,972 | 344,023 | 341,774 | 249,590 | 91,623 | 1,147,981 |
| Total | | | | 389,798 | 1,326,944 | 1,708,869 | 1,913,522 | 1,924,073 | **7,263,206** |

Notes:
[1] Per profit and loss statements of Amazon Sales
[2] 2018 Sales are only through July
[3] Growth Factor is calculated by halfing the growth of the previous period, starting from the period of July 2017- July 2018
[4] Expected Sales for 2018 are prorated for the period Aug-Dec 2018
[5] Per Thimes Solutions profit and loss statements (Thimes 00128-131)
[6] Per Amazon Sales 2018 Profit Rate





## Thimes Solutions vs Ecommerce vs Amazon Growth

| | 2016 | 2017 | 2018 |
|---|---|---|---|
| Ecommerce Growth | 13.71% | 14.35% | 16.56% |
| Amazon Growth | 25.33% | 43.52% | 18.51% |
| Thimes Growth | 11708.99% | 319.53% | 154.80% |

Ecommerce Growth   Amazon Growth   Thimes Growth

## Projected Thimes Solutions vs. Ecommerce vs Amazon Growth

| | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|
| Ecommerce Growth | 9.32% | 20.04% | 46.66% | 6.62% |
| Amazon Growth | 13.50% | 14.85% | 39.72% | 12.53% |
| Thimes Growth | 77.40% | 38.70% | 19.35% | 9.68% |

Ecommerce Growth   Amazon Growth   Thimes Growth

**Thimes Solutions, Inc. v. TP-Link USA Corporation and Auction Brothers, Inc.**

**Calculations**

**CPI-U Data 2018-2022 retrieved from data.bls.gov/cpi/data.htm on 7/26/2022**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Annual | HALF1 | HALF2 | Annual Growth |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|-------|-------|---------------|
| 2018 | 247.867 | 248.991 | 249.554 | 250.546 | 251.588 | 251.989 | 252.01 | 252.15 | 252.44 | 252.89 | 252.04 | 251.23 | 251.11 | 250.09 | 252.13 | N/A |
| 2019 | 251.712 | 252.776 | 254.202 | 255.548 | 256.092 | 256.143 | 256.57 | 256.56 | 256.76 | 257.35 | 257.21 | 256.97 | 255.66 | 254.41 | 256.9 | 1.81% |
| 2020 | 257.971 | 258.678 | 258.115 | 256.389 | 256.394 | 257.797 | 259.1 | 259.92 | 260.28 | 260.39 | 260.23 | 260.47 | 258.81 | 257.56 | 260.07 | 1.23% |
| 2021 | 261.582 | 263.014 | 264.877 | 267.054 | 269.195 | 271.696 | 273 | 273.57 | 274.31 | 276.59 | 277.95 | 278.8 | 270.97 | 266.24 | 275.7 | 4.70% |
| 2022 | 281.148 | 283.716 | 287.504 | 289.109 | 292.296 | 296.311 | | | | | | | | 288.35 | | 6.41% |

| Profit Percentage = Total Sales / Net Profit | | | | |
|------|------|------|------|------|
| Year | 2015 | 2016 | 2017 | 2018 |
| Total Sales | $ 2,379.30 | $ 280,971.20 | $ 1,178,761.20 | $ 1,966,639.05 |
| Net Profit | $ 2,006.31 | $ 151,095.37 | $ 226,003.83 | $ 376,356.56 |
| Profit Percentage | 84.32% | 53.78% | 19.17% | 19.14% |

FRED Graph Observations
Federal Reserve Economic Data
Link: https://fred.stlouisfed.org
Help: https://fredhelp.stlouisfed.org
Economic Research Division
Federal Reserve Bank of St. Louis

ECOMSA E-Commerce Retail Sales, Millions of Dollars, Quarterly, Seasonally Adjusted

Frequency: Quarterly                 Source:https://ir.aboutamazon.com/sec-filings/default.aspx

| Year | | ECOMSA | ECOMSA Growth Rates | Thimes Growth Rates | Thimes Total Sales | Online Sales (in millions) | Amazon Growth Rate |
|------|------|--------|---------------------|---------------------|-------------------|----------------------------|--------------------|
| | 2015 | $ 80,365 | | | $ 2,379 | $ 50,834 | |
| | 2016 | $ 91,385 | 13.71% | 11708.99% | $ 280,971 | $ 63,708 | 25.33% |
| | 2017 | $ 104,503 | 14.35% | 319.53% | $ 1,178,761 | $ 91,431 | 43.52% |
| | 2018 | $ 121,808 | 16.56% | 154.80% | $ 3,003,525 | $ 108,354 | 18.51% |
| | 2019 | $ 133,162 | 9.32% | 77.40% | $ 5,328,307 | $ 122,987 | 13.50% |
| | 2020 | $ 159,853 | 20.04% | 38.70% | $ 7,390,409 | $ 141,247 | 14.85% |
| | 2021 | $ 234,440 | 46.66% | 19.35% | $ 8,820,486 | $ 197,346 | 39.72% |
| | 2022 | $ 249,970 | 6.62% | 9.68% | $ 9,673,888 | $ 222,075 | 12.53% |

| Year | | Ecommerce Growth | Amazon Growth | Thimes Growth | | | |
|------|------|------------------|---------------|---------------|------|------|------|
| | 2016 | 13.71% | 25.33% | 11708.99% | | | |
| | 2017 | 14.35% | 43.52% | 319.53% | | | |
| | 2018 | 16.56% | 18.51% | 154.80% | | | |
| | 2019 | 9.32% | 13.50% | 77.40% | 38.70% | 19.35% | 9.68% |
| | 2020 | 20.04% | 14.85% | 38.70% | | | |
| | 2021 | 46.66% | 39.72% | 19.35% | | | |
| | 2022 | 6.62% | 12.53% | 9.68% | | | |
| Mean 2019-2022 | | 20.66% | 20.15% | 36.28% | | | |
| Geo Mean 2019-2 | | 15.50% | 17.77% | 27.37% | | | |

# Tab 3

# Thimes Solutions, Inc. v. TP-Link USA Corporation and Auction Brothers, Inc.
# Documents Considered

**Pleadings**
1. Amended Fifth Complaint 5/27/2022

**Thimes Solution Documents**
1. Inventory Lab Financials
   Profit and Loss 2015.xlsx
   Profit and Loss 2016.xlsx
   Profit and Loss 2017.xlsx
   Profit and Loss 2018.xlsx
2. Thimes Quickbooks P&Ls
   THIMES00128-THIMES00128.pdf
   THIMES00129-THIMES00129.pdf
   THIMES00130-THIMES00130.pdf
   THIMES00131-THIMES00131.pdf
3. Tax Documents
   THIMES00002-THIMES00029.pdf
   THIMES00030-THIMES00063.pdf
   THIMES00152-THIMES00153.pdf
   THIMES00154-THIMES00155.pdf
   THIMES00156-THIMES00208.pdf
   THIMES00209-THIMES00255.pdf
4. Other
   THIMES00001 - CONFIDENTIAL.xlsx
   THIMES00002-THIMES00029.pdf
   THIMES00030-THIMES00063.pdf
   THIMES00085.csv
   THIMES00127.csv
   THIMES00128-THIMES00128.pdf
   THIMES00129-THIMES00129.pdf
   THIMES00130-THIMES00130.pdf
   THIMES00131-THIMES00131.pdf
   THIMES00132-THIMES00132.pdf
   THIMES00133-THIMES00134.pdf
   THIMES00135-THIMES00135.pdf
   THIMES00136-THIMES00136.pdf
   THIMES00137-THIMES00137.pdf
   THIMES00138-THIMES00140.pdf
   THIMES00141-THIMES00141.pdf
   THIMES00142-THIMES00142.pdf
   THIMES00143-THIMES00143.pdf
   THIMES00144-THIMES00145.pdf
   THIMES00146-THIMES00150.pdf
   THIMES00151-THIMES00151.pdf

**Research**
1. Inflation Data: data.bls.gov/cpi/data.htm  retrieved 7/26/2022
2. Ecommerce Stats: https://fred.stlouisfed.org/series/ECOMSA retrieved on 7/28/2022
3. Amazon 10-Ks: https://ir.aboutamazon.com/sec-filings/default.aspx retrieved on 7/29/2022

# EXHIBIT 21

1/17/2020
Case 2:19-cv-10374-SB-E   Document 217-3   Filed 09/09/22   Page 144 of 332   Page ID #:4153
Case 8:19-cv-00082-JLS-KES   Document 82-9 Filed 06/29/19 Report Infringement   Page 2 of 5   Page ID #:502



**amazon** Try Prime

Heather's Amazon.com   Prime Video   Help

All

Hello, Heather
Account & Lists

Returns
& Orders

Try Prime

Cart

Shop **Galentine's** gifts

## Report Infringement

ⓘ If you are a rights owner with a registered trademark, you may be eligible to enroll your brand in the Amazon Brand Registry. Amazon Brand Registry provides access to powerful tools including proprietary text and image search, predictive automation based on your reports of suspected intellectual property rights violations, and increased authority over product listings with your brand name. To learn more and start the enrollment process, click here.

**Sign in Required**

Not Heather? Sign out

**About Amazon's Report Infringement Form**
Amazon's Report Infringement form is intended for use by intellectual property rights owners and their agents to notify Amazon of alleged intellectual property infringements such as copyright and trademark concerns. If you are not an intellectual property rights owner or their agent, Amazon will not be able to process complaints submitted through this form. Please report your concerns to Amazon through the appropriate venue:

- Sellers may use this contact us form to report inappropriate listings, other sellers, policy violations, etc.
- Buyers may use this contact us form to report problems with orders, seller policy violations, etc.

**We Do Not Enforce**
**Detail Page Ownership and Image Restrictions:** When a detail page is created, it becomes a permanent catalog page on Amazon.com that will remain even if the creator's inventory sells out. Additionally, when you add your copyrighted image to a detail page, you grant Amazon and its affiliates a non-exclusive, worldwide, royalty-free, perpetual, irrevocable right to exercise all rights of publicity over the material.

Other sellers can list their items for sale against pages that you have created or added your copyrighted images to. However, we do require sellers to list only against detail pages that exactly match their items. If you believe sellers are listing against detail pages that do not exactly match their items, we ask that you report the violation directly by using the contact us form.

If your copyrighted image has been added to our catalog without your consent, please complete the form below.

**Exclusive or Selective Distribution:** Amazon respects a manufacturer's right to enter into exclusive distribution agreements for its products. However, violations of such agreements do not constitute intellectual property rights infringement. As the enforcement of these agreements is a matter between the manufacturer and the retailers, it would not be appropriate for Amazon to assist in enforcement activities.

Please review the Amazon Intellectual Property Policy to learn more about different infringement types.

## Allegation of Infringement

Are you the Rights Owner or an Agent?
○ Rights Owner   ○ Agent

The primary complaint pertains to

| copyright concerns - unauthorized use of copyrighted material ... ⌄ |
|---|

The specific concern is

| the physical product or its packaging includes unauthorized co... ⌄ |
|---|

Name of Brand

[                    ]

Please provide one of the following:
A written description of the copyrighted work

**-OR-**

A link to the copyrighted work

Copyright registration # (optional)

Additional Information

1000

The ASIN (Amazon Standard Identification Number) or the URL of each product you are reporting. You can report up to 50 products for the same specific concern in 1 form. If you have different concerns to report, please submit 1 form for each concern.

ASIN/ISBN-10 -**OR**- Product URL

GO!

**Your Contact Details**
This is the contact **Amazon** will use.

Are you a seller on Amazon?
◯ Yes    ◯ No

First Name
Heather

Last Name
Auyang

Company(Optional)

Address Line 1

Address Line 2(Optional)

City

State(Optional)

ZIP Code

Country/Region
United States ▼

Phone Number

1/17/2020   Case 2:19-cv-10374-SB-E   Document 217-3   Filed 09/09/22   Page 146 of 332   Page ID
#:4154
Case 8:19-cv-00082-JLS-KES   Document 82-3   Filed 01/17/20   Page 4 of 5   Page ID #:705



E-mail Address

heather.auyang@ltlattorneys.com

**Secondary Contact Details**

The contact details which we will provide to **Third Party Sellers** (if relevant) for queries regarding this notification.

☐ Use the contact details provided above

Name

E-mail Address

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

☐ I have read and accept the statements above.

Submit

Back to top

**Get to Know Us**
Careers
Blog
About Amazon
Press Center
Investor Relations
Amazon Devices
Amazon Tours

**Make Money with Us**
Sell on Amazon
Sell Under Amazon Accelerator
Sell on Amazon Handmade
Sell Your Services on Amazon
Sell on Amazon Business
Sell Your Apps on Amazon
Become an Affiliate
Advertise Your Products
Self-Publish with Us
› See More

**Amazon Payment Products**
Amazon Rewards Visa Signature Cards
Amazon.com Store Card
Amazon Business Card
Amazon.com Corporate Credit Line
Shop with Points
Credit Card Marketplace
Reload Your Balance
Amazon Currency Converter

**Let Us Help You**
Your Account
Your Orders
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Content and Devices
Amazon Assistant
Help

amazon

🌐 English

🇺🇸 United States

Amazon Music
Stream millions
of songs

Amazon
Advertising

Amazon Drive
Cloud storage
from Amazon

6pm
Score deals
on fashion brands

AbeBooks
Books, art
& collectibles

ACX

Alexa
Actionable Analytics
for the Web

Case 8:19-cv-02082-JLS-KES    Document 62-1    Filed 04/09/20    Page 5 of 6    Page ID #:706

Find, attract, and engage customers

| | | | | | | Audiobook Publishing Made Easy |

| Amazon Business | Amazon Fresh | AmazonGlobal | Home Services | Amazon Ignite | Amazon Rapids | Amazon Web Services |
|---|---|---|---|---|---|---|
| Everything For Your Business | Groceries & More Right To Your Door | Ship Orders Internationally | Handpicked Pros Happiness Guarantee | Sell your original Digital Educational Resources | Fun stories for kids on the go | Scalable Cloud Computing Services |
| Audible | Book Depository | Box Office Mojo | ComiXology | CreateSpace | DPReview | East Dane |
| Listen to Books & Original Audio Performances | Books With Free Delivery Worldwide | Find Movie Box Office Data | Thousands of Digital Comics | Indie Print Publishing Made Easy | Digital Photography | Designer Men's Fashion |
| Fabric | Goodreads | IMDb | IMDbPro | Kindle Direct Publishing | Prime Now | Amazon Photos |
| Sewing, Quilting & Knitting | Book reviews & recommendations | Movies, TV & Celebrities | Get Info Entertainment Professionals Need | Indie Digital Publishing Made Easy | FREE 2-hour Delivery on Everyday Items | Unlimited Photo Storage Free With Prime |
| Prime Video Direct | Shopbop | Amazon Warehouse | Whole Foods Market | Woot! | Zappos | Ring |
| Video Distribution Made Easy | Designer Fashion Brands | Great Deals on Quality Used Products | America's Healthiest Grocery Store | Deals and Shenanigans | Shoes & Clothing | Smart Home Security Systems |
| eero WiFi | Neighbors App | Subscribe with Amazon | PillPack | Amazon Renewed | Amazon Second Chance | |
| Stream 4K Video in Every Room | Real-Time Crime & Safety Alerts | Discover & try subscription services | Pharmacy Simplified | Like-new products you can trust | Pass it on, trade it in, give it a second life | |

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996-2020, Amazon.com, Inc. or its affiliates

# EXHIBIT 22



☰ **amazon** Try Prime

All | 🔍 | 🌐▾    Hello, Heather   Returns   Try Prime ▾   🛒 Cart
Account & Lists ▾   & Orders

Heather's Amazon.com    Prime Video    Help    Browsing History ▾      ✦✦ Shop **Galentine's** gifts

## Report Infringement

ⓘ  If you are a rights owner with a registered trademark, you may be eligible to enroll your brand in the Amazon Brand Registry. Amazon Brand Registry provides access to powerful tools including proprietary text and image search, predictive automation based on your reports of suspected intellectual property rights violations, and increased authority over product listings with your brand name. To learn more and start the enrollment process, click here.

### Sign in Required

[ Not Heather? Sign out ]

### About Amazon's Report Infringement Form

Amazon's Report Infringement form is intended for use by intellectual property rights owners and their agents to notify Amazon of alleged intellectual property infringements such as copyright and trademark concerns. If you are not an intellectual property rights owner or their agent, Amazon will not be able to process complaints submitted through this form. Please report your concerns to Amazon through the appropriate venue:

- Sellers may use this contact us form to report inappropriate listings, other sellers, policy violations, etc.
- Buyers may use this contact us form to report problems with orders, seller policy violations, etc.

### We Do Not Enforce

**Detail Page Ownership and Image Restrictions:** When a detail page is created, it becomes a permanent catalog page on Amazon.com that will remain even if the creator's inventory sells out. Additionally, when you add your copyrighted image to a detail page, you grant Amazon and its affiliates a non-exclusive, worldwide, royalty-free, perpetual, irrevocable right to exercise all rights of publicity over the material.

Other sellers can list their items for sale against pages that you have created or added your copyrighted images to. However, we do require sellers to list only against detail pages that exactly match their items. If you believe sellers are listing against detail pages that do not exactly match their items, we ask that you report the violation directly by using the contact us form.

If your copyrighted image has been added to our catalog without your consent, please complete the form below.

**Exclusive or Selective Distribution:** Amazon respects a manufacturer's right to enter into exclusive distribution agreements for its products. However, violations of such agreements do not constitute intellectual property rights infringement. As the enforcement of these agreements is a matter between the manufacturer and the retailers, it would not be appropriate for Amazon to assist in enforcement activities.

Please review the Amazon Intellectual Property Policy to learn more about different infringement types.

### Allegation of

Are you the R...

○ Rights Ow...

The primary c...

| copyright concerns - unauthorized use of copyrighted material such as text, photos, product designs, videos, music, software. |
|---|
| trademark concerns - unauthorized use of a word, phrase, symbol, and/or design that identifies and distinguishes the source of the goods. |
| patent concerns |
| other concerns |

[ copyright concerns - unauthorized use of copyrighted material such as t... ▾ ]

The specific concern is

[ the physical product or its packaging includes unauthorized copyrighte... ▾ ]

Name of Brand

[                                        ]

Please provide one of the following:
A written description of the copyrighted work

[                                        ]

-OR-

A link to the copyrighted work

[                                        ]

Copyright registration # (optional)

Amazon.com - Report Infringement

Additional Information

1000

The ASIN (Amazon Standard Identification Number) or the URL of each product you are reporting. You can report up to 50 products for the same specific concern in 1 form. If you have different concerns to report, please submit 1 form for each concern.

ASIN/ISBN-10 -OR- Product URL

GO!

### Your Contact Details
This is the contact **Amazon** will use.

Are you a seller on Amazon?
○ Yes    ○ No

First Name
Heather

Last Name
Auyang

Company(Optional)

Address Line 1

Address Line 2(Optional)

City

State(Optional)

ZIP Code

Country/Region
United States ∨

Phone Number

E-mail Address
heather.auyang@ltlattorneys.com

### Secondary Contact Details
The contact details which we will provide to **Third Party Sellers** (if relevant) for queries regarding this notification.

☐ Use the contact details provided above

Name

E-mail Address

1/17/2020
Case 2:19-cv-10374-SB-E Document 217-3 Filed 09/09/22 Page 151 of 332 Page ID
Case 8:19-cv-00082-JLS-KES Document 1 Filed 01/14/25 Page 4 of 4 Page ID #:710
#:4159

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

☐ I have read and accept the statements above.

Submit

---

Back to top

**Get to Know Us**
Careers
Blog
About Amazon
Press Center
Investor Relations
Amazon Devices
Amazon Tours

**Make Money with Us**
Sell on Amazon
Sell Under Amazon Accelerator
Sell on Amazon Handmade
Sell Your Services on Amazon
Sell on Amazon Business
Sell Your Apps on Amazon
Become an Affiliate
Advertise Your Products
Self-Publish with Us
› See More

**Amazon Payment Products**
Amazon Rewards Visa Signature Cards
Amazon.com Store Card
Amazon Business Card
Amazon.com Corporate Credit Line
Shop with Points
Credit Card Marketplace
Reload Your Balance
Amazon Currency Converter

**Let Us Help You**
Your Account
Your Orders
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Content and Devices
Amazon Assistant
Help

**amazon**

🌐 English        🇺🇸 United States

**Amazon Music**
Stream millions of songs

**Amazon Advertising**
Find, attract, and engage customers

**Amazon Drive**
Cloud storage from Amazon

**6pm**
Score deals on fashion brands

**AbeBooks**
Books, art & collectibles

**ACX**
Audiobook Publishing Made Easy

**Alexa**
Actionable Analytics for the Web

**Amazon Business**
Everything For Your Business

**Amazon Fresh**
Groceries & More Right To Your Door

**AmazonGlobal**
Ship Orders Internationally

**Home Services**
Handpicked Pros Happiness Guarantee

**Amazon Ignite**
Sell your original Digital Educational Resources

**Amazon Rapids**
Fun stories for kids on the go

**Amazon Web Services**
Scalable Cloud Computing Services

**Audible**
Listen to Books & Original Audio Performances

**Book Depository**
Books With Free Delivery Worldwide

**Box Office Mojo**
Find Movie Box Office Data

**ComiXology**
Thousands of Digital Comics

**CreateSpace**
Indie Print Publishing Made Easy

**DPReview**
Digital Photography

**East Dane**
Designer Men's Fashion

**Fabric**
Sewing, Quilting & Knitting

**Goodreads**
Book reviews & recommendations

**IMDb**
Movies, TV & Celebrities

**IMDbPro**
Get Info Entertainment Professionals Need

**Kindle Direct Publishing**
Indie Digital Publishing Made Easy

**Prime Now**
FREE 2-hour Delivery on Everyday Items

**Amazon Photos**
Unlimited Photo Storage Free With Prime

**Prime Video Direct**
Video Distribution Made Easy

**Shopbop**
Designer Fashion Brands

**Amazon Warehouse**
Great Deals on Quality Used Products

**Whole Foods Market**
America's Healthiest Grocery Store

**Woot!**
Deals and Shenanigans

**Zappos**
Shoes & Clothing

**Ring**
Smart Home Security Systems

**eero WiFi**
Stream 4K Video in Every Room

**Neighbors App**
Real-Time Crime & Safety Alerts

**Subscribe with Amazon**
Discover & try subscription services

**PillPack**
Pharmacy Simplified

**Amazon Renewed**
Like-new products you can trust

**Amazon Second Chance**
Pass it on, trade it in, give it a second life

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996-2020, Amazon.com, Inc. or its affiliates

# EXHIBIT 23

1/17/2020    Case 2:19-cv-10374-SB-E    Document 217-3    Filed 09/09/22    Page 153 of 332    Page ID
#:4161
Case 8:19-cv-00082-JLS-KES    Document 62    Filed 02/26/2011    Report Infringement    Page 3 of 48    Page ID #:947



≡    **amazon** Try Prime    | All ▾ |           🔍      🌐 ▾   Hello, Heather
Account & Lists ▾   Returns
& Orders ▾   Try Prime ▾    🛒 Cart

Heather's Amazon.com    Prime Video    Help         ✧✦ Shop **Galentine's** gifts

## Report Infringement

ⓘ   If you are a rights owner with a registered trademark, you may be eligible to enroll your brand in the Amazon Brand Registry. Amazon Brand Registry provides access to powerful tools including proprietary text and image search, predictive automation based on your reports of suspected intellectual property rights violations, and increased authority over product listings with your brand name. To learn more and start the enrollment process, click here.

### Sign in Required

**Not Heather? Sign out**

### About Amazon's Report Infringement Form

Amazon's Report Infringement form is intended for use by intellectual property rights owners and their agents to notify Amazon of alleged intellectual property infringements such as copyright and trademark concerns. If you are not an intellectual property rights owner or their agent, Amazon will not be able to process complaints submitted through this form. Please report your concerns to Amazon through the appropriate venue:

- Sellers may use this contact us form to report inappropriate listings, other sellers, policy violations, etc.
- Buyers may use this contact us form to report problems with orders, seller policy violations, etc.

### We Do Not Enforce

**Detail Page Ownership and Image Restrictions:** When a detail page is created, it becomes a permanent catalog page on Amazon.com that will remain even if the creator's inventory sells out. Additionally, when you add your copyrighted image to a detail page, you grant Amazon and its affiliates a non-exclusive, worldwide, royalty-free, perpetual, irrevocable right to exercise all rights of publicity over the material.

Other sellers can list their items for sale against pages that you have created or added your copyrighted images to. However, we do require sellers to list only against detail pages that exactly match their items. If you believe sellers are listing against detail pages that do not exactly match their items, we ask that you report the violation directly by using the contact us form.

If your copyrighted image has been added to our catalog without your consent, please complete the form below.

**Exclusive or Selective Distribution:** Amazon respects a manufacturer's right to enter into exclusive distribution agreements for its products. However, violations of such agreements do not constitute intellectual property rights infringement. As the enforcement of these agreements is a matter between the manufacturer and the retailers, it would not be appropriate for Amazon to assist in enforcement activities.

Please review the Amazon Intellectual Property Policy to learn more about different infringement types.

### Allegation of Infringement

Are you the Rights           | a product detail page is unlawfully using my trademark (e.g. in product title, product images, product description)
◯ Rights Owner                 | a product or its packaging has my trademark on it
                              | a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)

The primary complaint pertains to

| trademark concerns - unauthorized use of a word, phrase, sym... ▾ |

The specific concern is

| a product detail page is unlawfully using my trademark (e.g. in ... ▾ |

Name of Brand

| |

Is the Trademark registered?
◯ Yes    ◯ No

1/17/2020
Case 2:19-cv-10374-SB-E   Document 217-3   Filed 09/09/22   Page 154 of 332   Page ID #:4162
Case 8:19-cv-00082-JLS-KES   Document 82-6   Filed 01/17/20   Page 3 of 5   Page ID #:718

Amazon.com Report Infringement

Additional Information

1000

The ASIN (Amazon Standard Identification Number) or the URL of each product you are reporting. You can report up to 50 products for the same specific concern in 1 form. If you have different concerns to report, please submit 1 form for each concern.

ASIN/ISBN-10 -**OR**- Product URL

GO!

## Your Contact Details
This is the contact **Amazon** will use.

Are you a seller on Amazon?
◯ Yes   ◯ No

First Name
Heather

Last Name
Auyang

Company(Optional)

Address Line 1

Address Line 2(Optional)

City

State(Optional)

ZIP Code

Country/Region
United States ⌄

Phone Number

E-mail Address
heather.auyang@ltlattorneys.com

## Secondary Contact Details
The contact details which we will provide to **Third Party Sellers** (if relevant) for queries regarding this notification.

☐ Use the contact details provided above

Name



E-mail Address

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

☐ I have read and accept the statements above.

Submit

Back to top

**Get to Know Us**
- Careers
- Blog
- About Amazon
- Press Center
- Investor Relations
- Amazon Devices
- Amazon Tours

**Make Money with Us**
- Sell on Amazon
- Sell Under Amazon Accelerator
- Sell on Amazon Handmade
- Sell Your Services on Amazon
- Sell on Amazon Business
- Sell Your Apps on Amazon
- Become an Affiliate
- Advertise Your Products
- Self-Publish with Us
- › See More

**Amazon Payment Products**
- Amazon Rewards Visa Signature Cards
- Amazon.com Store Card
- Amazon Business Card
- Amazon.com Corporate Credit Line
- Shop with Points
- Credit Card Marketplace
- Reload Your Balance
- Amazon Currency Converter

**Let Us Help You**
- Your Account
- Your Orders
- Shipping Rates & Policies
- Amazon Prime
- Returns & Replacements
- Manage Your Content and Devices
- Amazon Assistant
- Help

amazon English United States

| | | | | | | |
|---|---|---|---|---|---|---|
| Amazon Music Stream millions of songs | Amazon Advertising Find, attract, and engage customers | Amazon Drive Cloud storage from Amazon | 6pm Score deals on fashion brands | AbeBooks Books, art & collectibles | ACX Audiobook Publishing Made Easy | Alexa Actionable Analytics for the Web |
| Amazon Business Everything For Your Business | Amazon Fresh Groceries & More Right To Your Door | AmazonGlobal Ship Orders Internationally | Home Services Handpicked Pros Happiness Guarantee | Amazon Ignite Sell your original Digital Educational Resources | Amazon Rapids Fun stories for kids on the go | Amazon Web Services Scalable Cloud Computing Services |
| Audible Listen to Books & Original Audio Performances | Book Depository Books With Free Delivery Worldwide | Box Office Mojo Find Movie Box Office Data | ComiXology Thousands of Digital Comics | CreateSpace Indie Print Publishing Made Easy | DPReview Digital Photography | East Dane Designer Men's Fashion |
| Fabric Sewing, Quilting & Knitting | Goodreads Book reviews & recommendations | IMDb Movies, TV & Celebrities | IMDbPro Get Info Entertainment Professionals Need | Kindle Direct Publishing Indie Digital Publishing Made Easy | Prime Now FREE 2-hour Delivery on Everyday Items | Amazon Photos Unlimited Photo Storage Free With Prime |

1/17/2020 Case 2:19-cv-10374-SB-E   Document 212-3   Filed 09/09/22   Page 156 of 332   Page ID
amazon.com report of infringement
#:4164

**Prime Video Direct**
Video Distribution
Made Easy

**Shopbop**
Designer
Fashion Brands

**Amazon Warehouse**
Great Deals on
Quality Used
Products

**Whole Foods Market**
America's
Healthiest
Grocery Store

**Woot!**
Deals and
Shenanigans

**Zappos**
Shoes &
Clothing

**Ring**
Smart Home
Security Systems

**eero WiFi**
Stream 4K Video
in Every Room

**Neighbors App**
Real-Time Crime
& Safety Alerts

**Subscribe with Amazon**
Discover & try
subscription services

**PillPack**
Pharmacy
Simplified

**Amazon Renewed**
Like-new products
you can trust

**Amazon Second Chance**
Pass it on, trade it in,
give it a second life

Conditions of Use    Privacy Notice    Interest-Based Ads   © 1996-2020, Amazon.com, Inc. or its affiliates

# EXHIBIT 24

LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | CASE NO.: 2:19-cv-10374-SB-E |
| Plaintiff, | **DECLARATION OF HEATHER F. AUYANG IN SUPPORT OF TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, | |
| Defendants. | Judge: Hon. Stanley Blumenfeld, Jr. |
| | Date:       Friday Oct. 7, 2022 |
| | Time:       8:30 a.m. |
| | Courtroom: 6C |
| | Complaint Filed:       May 29, 2019 |
| | Amended 5th Amended |
| | Complaint Filed:       May 27, 2022 |
| | Trial Date:       Jan. 9, 2023 |

No. 2:19-cv-10374-SB-E

1  TP-LINK USA CORPORATION,

2         Counterclaimant,

3

4    v.

5  THIMES SOLUTIONS INC.,

6         Counter-Defendant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AUYANG DECLARATION ISO TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT

## DECLARATION OF HEATHER F. AUYANG

I, Heather F. Auyang, hereby declare and state as follows:

1.      I submit this Declaration in support of TP-Link's Motion for Summary Judgment or Partial Summary Judgment.  I am an attorney admitted to practice before this Court and am a partner with LTL Attorneys LLP, counsel of record for Defendant and Counterclaimant TP-Link USA Corporation in the above-captioned case. I submit this Declaration based upon my personal knowledge, and if called as a witness could and would testify to the matters set forth.

2.      Attached as **Exhibit 1** to the Joint Appendix of Evidence ("JAE") is a true and correct copy of excerpts from Thimes's First Supplemental Responses to TP-Link's Interrogatories, Set One, served on July 28, 2022.

3.      Attached as **Exhibit 2** to the JAE is a true and correct copy of Magistrate Judge Eick's August 16, 2022 Order compelling Thimes to respond to TP-Link's discovery requests (ECF No. 207).

4.      Attached as **Exhibit 3** to the JAE is a true and correct copy of excerpts from Thimes's Second Supplemental Responses to TP-Link's Interrogatories, Set One, served on August 19, 2022.

5.      Attached as **Exhibit 4** to the JAE is a true and correct copy of excerpts from Thimes's Responses to TP-Link's Requests for Admission, Set One, served July 27, 2022.

6.      Attached as **Exhibit 5** to the JAE is a true and correct copy of the Ninth Circuit's Memorandum in this case stating Amazon is not a purchaser of Thimes (ECF No. 155).

7.      Attached as **Exhibit 6** to the JAE is a true and correct copy of this Court's Order on a Motion Dismiss stating Amazon is not a consumer of Thimes (ECF No. 125).

8.      Attached as **Exhibit 7** to the JAE is a true and correct copy of excerpts from Thimes's Amended Fifth Amended Complaint (ECF No. 178), filed on May 27,

2022.

9.      Attached as **Exhibit 8** to the JAE is a true and correct copy of TP-Link's incontestable U.S. Trademark Registration No. 3,175,495 ("TP-LINK® Mark"). TP-Link has filed concurrently a Request for Judicial Notice.

10.     Attached as **Exhibit 9** to the JAE is a true and correct copy of Bates No. THIMES00302, which was produced by Thimes.

11.     Attached as **Exhibit 10** to the JAE is a true and correct copy of excerpts from Thimes's Original Complaint (ECF No. 1), filed on May 29, 2018.

12.     Attached as **Exhibit 11** to the JAE is a true and correct copy of Bates Nos. THIMES01119-THIMES01120, which was produced by Thimes.

13.     Attached as **Exhibit 12** to the JAE is a true and correct copy of Bates No. THIMES00310, which was produced by Thimes.

14.     Attached as **Exhibit 13** to the JAE are true and correct copies of Bates Nos.  THIMES00756,  THIMES00738,  THIMES00732,  THIMES00734,  and THIMES00736, which were produced by Thimes.

15.     Attached as **Exhibit 14** to the JAE is a true and correct copy of Bates No. THIMES00741, which was produced by Thimes.

16.     Attached as **Exhibit 15** to the JAE is a true and correct copy of Bates Nos. THIMES00739-THIMES00740, which was produced by Thimes.

17.     Attached as **Exhibit 16** to the JAE is a true and correct copy of Bates No. THIMES00311, which was produced by Thimes.

18.     Attached as **Exhibit 17** to the JAE is a true and correct copy of Bates Nos. THIMES01130-THIMES01131, which was produced by Thimes.

19.     Attached as **Exhibit 18** to the JAE is a true and correct copy of Bates Nos. THIMES00286-THIMES00287, which was produced by Thimes.

20.     Attached as **Exhibit 19** to the JAE is a true and correct copy of Bates No. THIMES00307, which was produced by Thimes.

21.     Attached as **Exhibit 20** to the JAE is a true and correct copy of Thimes's

Damages Expert Report of Alan Goedde, which was served by Thimes on August 1, 2022.

22.    On January 17, 2020, I visited the webpage cited in paragraph 47, n.14 of Thimes's Amended Fifth Amended Complaint (ECF No. 178), located at https://www.amazon.com/gp/help/reports/infringement. I printed a true and correct copy of the webpage, entitled "Report Infringement," which is attached to the JAE as **Exhibit 21**. I have also highlighted relevant portions where Amazon explains the purpose of the form in "About Amazon's Report Infringement Form," that the form is to report "Allegation of Infringement," and the attestation "Statements."

23.    On January 17, 2020, I visited the webpage cited in paragraph 47, n.14 of Thimes's Amended Fifth Amended Complaint (ECF No. 178), located at https://www.amazon.com/gp/help/reports/infringement, and selected the dropdown menu listing the types of infringement reports, specifically, when the "[t]he primary complaint pertains to" is selected, the dropdown menu provides four options: "copyright concerns," "trademark concerns," "patent concerns," and "other concerns." I printed a true and correct copy of this webpage, entitled "Report Infringement," which is attached to the JAE as **Exhibit 22**. I have also highlighted relevant portions showing the four options and the attestation "Statements."

24.    On January 17, 2020, I visited the webpage cited in paragraph 47, n.14 of Thimes's Amended Fifth Amended Complaint (ECF No. 178), located at https://www.amazon.com/gp/help/reports/infringement, and selected in the dropdown menu "[t]he primary complaint pertains to trademark concerns," which then resulted in the dropdown menu for "[t]he specific concern is" to provide three options—one of which includes "a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)." I printed a true and correct copy of this webpage, entitled "Report Infringement," which is attached to the JAE as **Exhibit 23**. I have also highlighted relevant portions showing the three options and the attestation "Statements."

25.     There has been no ruling from a court (or otherwise) ascertaining whether Thimes's sales of TP-Link products on Amazon constitute trademark infringement or counterfeiting.

I declare under penalty of perjury that the foregoing is true and correct.  Executed August 22, 2022 in Mill Valley, California.

By:   */s/ Heather F. Auyang*

AUYANG DECLARATION ISO TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT

# Exhibit 25

RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
MARK POE (S.B. #223714)
mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff Thimes Solutions Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>      Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA<br><br>      Defendant. | Case No. 2:19-CV-10374-SB-E<br><br>**DECLARATION OF ALAN GOEDDE IN OPPOSITION TO TP-LINK'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br><br>Date:  Friday Oct. 7, 2022<br>Time:  8:30 a.m.<br>Courtroom: 6C |

1    I, Alan Goedde, Ph.D., declare as follows:

2    1.    I am a member of Freeman & Mills, an accounting, economics, and

3    management consulting firm.  I been engaged as an expert witness on behalf of

4    plaintiff Thimes Solutions Inc. ("Thimes") to provide an opinion regarding the

5    damages suffered by Thimes as a result of the actions of Defendants TP-Link and

6    Auction Brothers, Inc. d/b/a Amazzia.  If called to testify at a hearing or trial, I

7    could and would testify to the following, which is based on my personal

8    knowledge.  I submit this declaration in opposition to defendant TP-Link USA

9    Corporation's ("TP-Link") motion for summary judgment or partial summary

10   judgment.

11   2.    I have over 25 years of experience developing financial and economic

12   analyses to solve business problems.  I have worked in business and in government.

13   My educational background includes a BS in Engineering and a Ph.D. in

14   Economics, all from Duke University.  I have been qualified as an expert witness

15   and have testified in both federal and state courts.

16   3.    I understand that TP-Link has argued that my damages model did not

17   take into account the profits and losses for Thimes as a whole, including looking at

18   other business expenses, and was based solely off of the Amazon-specific financial

19   statements.  TP-Link is incorrect.

20   4.    As reflected in my expert report, I reviewed Thimes's financial

21   statements for its entire business for each year from 2017 to 2020.  In tab 3 of my

22   expert report, I point them out as THIMES00128 – 131.  I also reviewed multiple

23   tax filings, including Thimes's annual tax returns from 2017 to 2020.  In tab 3 of

24   my expert report, I point them out as THIMES00002 – 29, THIMES000030 – 63,

25   THIMES00156 – 208, and THIMES00209 – 00255.

26   5.    In my view from reviewing these financial documents, Thimes's

27   revenue and expenses from non-Amazon business activities were immaterial

28   relative to its Amazon activities, and thus my damages report did not include them

GOEDDE DECL. IN OPP. TO TP-LINK'S MSJ
CASE NO. 2:19-CV-10374-SB-EX

as separate line items.  Moreover, I made some simplifying assumptions that were conservative in nature, such as by cutting off all sales after 2022 and by including annual mitigation sales for each year from 2019 to 2022, that had the effect of reducing Thimes's potential damages.

6.      I also understand that TP-Link is arguing that I had no factual support to assume that Thimes would continue to receive offers to purchase products from different suppliers.  TP-Link is incorrect.

7.      As reflected in my expert report, I reviewed multiple invoices sent to Thimes reflecting that it was consistently getting, and partaking in, offers from other sellers to buy large quantities of consumer goods.  In tab 3 of my expert report, I point them out as documents ranging from THIMES00128 – 151.  Based on these documents and based on my conversations with Mr. Avi Eisenberg, I felt comfortable in opining that it was reasonable to expect that there would be a sufficient supply of products for Thimes to continue its strong retail sales growth trend prior to its expulsion from the Amazon Marketplace.

8.      I have continued to obtain additional data since I prepared my report, and this information has given me additional grounds to support my opinions.  I am fully prepared to discuss my opinions and those related matters should TP-Link decide to take my deposition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on September 1, 2022, at Los Angeles, California.

_____
Alan Goedde

GOEDDE DECL. IN OPP. TO TP-LINK'S MSJ
CASE NO. 2:19-CV-10374-SB-EX

# EXHIBIT 24

LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., | CASE NO.: 2:19-cv-10374-SB-E |
| Plaintiff, | **DECLARATION OF HEATHER F. AUYANG IN SUPPORT OF TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, | Judge: Hon. Stanley Blumenfeld, Jr. |
| Defendants. | Date:       Friday Oct. 7, 2022 |
| | Time:       8:30 a.m. |
| | Courtroom: 6C |
| | Complaint Filed:       May 29, 2019 |
| | Amended 5th Amended |
| | Complaint Filed:       May 27, 2022 |
| | Trial Date:       Jan. 9, 2023 |

1   TP-LINK USA CORPORATION,

2            Counterclaimant,

3

4       v.

5   THIMES SOLUTIONS INC.,

6            Counter-Defendant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF HEATHER F. AUYANG</u>

I, Heather F. Auyang, hereby declare and state as follows:

1. I submit this Declaration in support of TP-Link's Motion for Summary Judgment or Partial Summary Judgment. I am an attorney admitted to practice before this Court and am a partner with LTL Attorneys LLP, counsel of record for Defendant and Counterclaimant TP-Link USA Corporation in the above-captioned case. I submit this Declaration based upon my personal knowledge, and if called as a witness could and would testify to the matters set forth.

2. Attached as **Exhibit 1** to the Joint Appendix of Evidence ("JAE") is a true and correct copy of excerpts from Thimes's <u>First</u> Supplemental Responses to TP-Link's Interrogatories, Set One, served on July 28, 2022.

3. Attached as **Exhibit 2** to the JAE is a true and correct copy of Magistrate Judge Eick's August 16, 2022 Order compelling Thimes to respond to TP-Link's discovery requests (ECF No. 207).

4. Attached as **Exhibit 3** to the JAE is a true and correct copy of excerpts from Thimes's <u>Second</u> Supplemental Responses to TP-Link's Interrogatories, Set One, served on August 19, 2022.

5. Attached as **Exhibit 4** to the JAE is a true and correct copy of excerpts from Thimes's Responses to TP-Link's Requests for Admission, Set One, served July 27, 2022.

6. Attached as **Exhibit 5** to the JAE is a true and correct copy of the Ninth Circuit's Memorandum in this case stating Amazon is not a purchaser of Thimes (ECF No. 155).

7. Attached as **Exhibit 6** to the JAE is a true and correct copy of this Court's Order on a Motion Dismiss stating Amazon is not a consumer of Thimes (ECF No. 125).

8. Attached as **Exhibit 7** to the JAE is a true and correct copy of excerpts from Thimes's Amended Fifth Amended Complaint (ECF No. 178), filed on May 27,

2022.

9.      Attached as **Exhibit 8** to the JAE is a true and correct copy of TP-Link's incontestable U.S. Trademark Registration No. 3,175,495 ("TP-LINK® Mark"). TP-Link has filed concurrently a Request for Judicial Notice.

10.     Attached as **Exhibit 9** to the JAE is a true and correct copy of Bates No. THIMES00302, which was produced by Thimes.

11.     Attached as **Exhibit 10** to the JAE is a true and correct copy of excerpts from Thimes's Original Complaint (ECF No. 1), filed on May 29, 2018.

12.     Attached as **Exhibit 11** to the JAE is a true and correct copy of Bates Nos. THIMES01119-THIMES01120, which was produced by Thimes.

13.     Attached as **Exhibit 12** to the JAE is a true and correct copy of Bates No. THIMES00310, which was produced by Thimes.

14.     Attached as **Exhibit 13** to the JAE are true and correct copies of Bates Nos.  THIMES00756,  THIMES00738,  THIMES00732,  THIMES00734,  and THIMES00736, which were produced by Thimes.

15.     Attached as **Exhibit 14** to the JAE is a true and correct copy of Bates No. THIMES00741, which was produced by Thimes.

16.     Attached as **Exhibit 15** to the JAE is a true and correct copy of Bates Nos. THIMES00739-THIMES00740, which was produced by Thimes.

17.     Attached as **Exhibit 16** to the JAE is a true and correct copy of Bates No. THIMES00311, which was produced by Thimes.

18.     Attached as **Exhibit 17** to the JAE is a true and correct copy of Bates Nos. THIMES01130-THIMES01131, which was produced by Thimes.

19.     Attached as **Exhibit 18** to the JAE is a true and correct copy of Bates Nos. THIMES00286-THIMES00287, which was produced by Thimes.

20.     Attached as **Exhibit 19** to the JAE is a true and correct copy of Bates No. THIMES00307, which was produced by Thimes.

21.     Attached as **Exhibit 20** to the JAE is a true and correct copy of Thimes's

Damages Expert Report of Alan Goedde, which was served by Thimes on August 1, 2022.

22.     On January 17, 2020, I visited the webpage cited in paragraph 47, n.14 of Thimes's Amended Fifth Amended Complaint (ECF No. 178), located at https://www.amazon.com/gp/help/reports/infringement. I printed a true and correct copy of the webpage, entitled "Report Infringement," which is attached to the JAE as **Exhibit 21**. I have also highlighted relevant portions where Amazon explains the purpose of the form in "About Amazon's Report Infringement Form," that the form is to report "Allegation of Infringement," and the attestation "Statements."

23.     On January 17, 2020, I visited the webpage cited in paragraph 47, n.14 of Thimes's Amended Fifth Amended Complaint (ECF No. 178), located at https://www.amazon.com/gp/help/reports/infringement, and selected the dropdown menu listing the types of infringement reports, specifically, when the "[t]he primary complaint pertains to" is selected, the dropdown menu provides four options: "copyright concerns," "trademark concerns," "patent concerns," and "other concerns." I printed a true and correct copy of this webpage, entitled "Report Infringement," which is attached to the JAE as **Exhibit 22**. I have also highlighted relevant portions showing the four options and the attestation "Statements."

24.     On January 17, 2020, I visited the webpage cited in paragraph 47, n.14 of Thimes's Amended Fifth Amended Complaint (ECF No. 178), located at https://www.amazon.com/gp/help/reports/infringement, and selected in the dropdown menu "[t]he primary complaint pertains to trademark concerns," which then resulted in the dropdown menu for "[t]he specific concern is" to provide three options—one of which includes "a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)." I printed a true and correct copy of this webpage, entitled "Report Infringement," which is attached to the JAE as **Exhibit 23**. I have also highlighted relevant portions showing the three options and the attestation "Statements."

1       25.    There has been no ruling from a court (or otherwise) ascertaining whether

2   Thimes's sales of TP-Link products on Amazon constitute trademark infringement or

3   counterfeiting.

4

5       I declare under penalty of perjury that the foregoing is true and correct.  Executed

6   August 22, 2022 in Mill Valley, California.

7

8                                 By:  */s/ Heather F. Auyang*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AUYANG DECLARATION ISO TP-LINK USA'S MOTION FOR SUMMARY JUDGMENT

# Exhibit 27

  

English   Sign in   Sell on Amazon

---

This article applies to selling in: **United States**

---

Seller Central Help  >  Manage Inventory  >  How the Featured Offer works  >
Featured Offer eligibility

# Featured Offer eligibility

**On this page**
What is the Featured Offer?
How can I become eligible?
How do I check if my items are eligible?

## What is the Featured Offer?

The Featured Offer is an offer for new products that we display on a product detail page with an **Add to Cart** button that customers can use to add items to their shopping carts. When one of your items appears in this way on a product page, we call it the Featured Offer.

There are two steps to selecting offers to feature. First, we determine which items are eligible to be featured based on criteria that are designed to give customers a great shopping experience. Second, we select compelling offers to feature from among this pool of eligible offers.

This Help topic deals with that first step, eligibility. Becoming eligible for the Featured Offer doesn't guarantee that you will get featured. However, there are a few things that you can do to increase your chances. To learn more, see Becoming the Featured Offer.

## How can I become eligible?

Your offers are eligible for the Featured Offer if you have a Professional selling account. Check your current account type if you're not sure and upgrade if required. To ensure that customers have a great shopping experience and to guard against abuse, we remove eligibility based on account performance and other risk factors.

THIMES001530

# How do I check if my items are eligible?

You can find out if any of your items are eligible for the Featured Offer:

1. First, ensure seller eligibility (see above).
2. In Seller Central, go to your **Manage Inventory** page and then click **Preferences**.
3. Select **Featured Offer (Buy Box) Eligible**, and at the bottom of the page, click **Save Changes**.

The **Featured Offer (Buy Box) Eligible** column will display the status for each of your ASINs.

## Related articles

Offer placement

Becoming the Featured Offer

How do I check if I am the Featured Offer (Buy Box)?

## Need more help?

Visit Seller Forums

See more on Seller Central



**Reach Hundreds of
Millions of Customers**

Start Selling On Amazon

THIMES001531

© 1999-2022, Amazon.com, Inc. or its affiliates

THIMES001532

# Exhibit 28

  

amazon seller central

| English ⌄ | | Sign in | Sell on Amazon |

---

This article applies to selling in: **United States**

---

Seller Central Help  ›  Manage Inventory  ›  How the Featured Offer works

# How the Featured Offer works

The **Featured Offer** is the offer near the top of a product detail page, which customers can buy now or add to their shopping carts.

A key feature of the Amazon website is that multiple sellers can offer the same product. If more than one eligible seller offers a product, they may compete to become the Featured Offer for that product (as long as it can be shipped to the customer's address).

To give customers the best possible shopping experience, sellers must meet performance-based requirements to be eligible to compete for Featured Offer placement. For many sellers, Featured Offer placement can lead to increased sales.

## How is the Featured Offer percentage calculated?

The Featured Offer percentage is calculated as the total page views in which you are the Featured Offer divided by the total page views received by products you list. Only active items are considered. You will see '—' if we are unable to calculate your Featured Offer percentage.

## How the Featured Offer works

- Featured Offer eligibility
- Offer placement
- Becoming the Featured Offer
- How do I check if I am the Featured Offer (Buy Box)?

---

**Related articles**

Create and manage inventory

THIMES001533

Manage your inventory one at a time

Manage your inventory in bulk

Price your item

Catalog and drafts

## Need more help?

Visit Seller Forums

See more on Seller Central



### Reach Hundreds of
### Millions of Customers

Start Selling On Amazon

© 1999-2022, Amazon.com, Inc. or its affiliates

THIMES001534

# Exhibit 29

Amazon Accelerate 2022: September 14-15. **Register now**



Start ∨    Grow ∨    Learn ∨    Pricing ∨    Blog ∨

English    Log in

**Sign up**

Fulfillment by Amazon

# FBA: Let Amazon pick, pack, and ship your orders



Already selling on Amazon?

**Get started**

New to Amazon?


**Sign up**

$39.99 a month + selling fees

---

**? FAQ:**

## What is Fulfillment by Amazon (FBA)?

Fulfillment by Amazon (FBA) is a service that allows businesses to outsource order fulfillment to Amazon. Businesses send products to Amazon fulfillment centers and when a customer makes a purchase, we pick, pack, and ship the order. We can also provide customer service and process returns for those orders.

**Learn more about ecommerce fulfillment  →**

---

✦ **New Seller Incentives** ✦

# Try FBA and get



Amazon Accelerate 2022: September 14-15. **Register now**

⊕ English        🔒 Log in



Start ⌄    Grow ⌄    Learn ⌄    Pricing ⌄    Blog ⌄        **Sign up**    🔍

Amazon's New Seller Incentives offer free promotional clicks on ads, free shipping to fulfillment centers, free storage, free liquidations, and free return processing. Conditions apply.

**Learn more** →

# How FBA works

Fulfillment by Amazon can help decrease fulfillment headaches as you scale your business.

▷ **Watch video**

**Step 1:**    ### Set up FBA
Create your Amazon selling account, and login to Seller Central to set up FBA.

**Step 2:**    ### Create product listings
Once you add products to the Amazon catalog, specify FBA inventory.

**Step 3:**    ### Prepare products
Prepare the products for safe and secure transportation to a fulfillment center, according to Amazon packing guidelines and shipping and routing requirements.

**Step 4:**    ### Ship products to Amazon
Create a shipping plan, print Amazon shipment ID labels, and send shipments to Amazon fulfillment centers. Learn more about sending inventory to Amazon.

Once Amazon receives products at the fulfillment center, the items are available for customers to buy. Visit Seller Central Help to learn about how to manage FBA orders

THIMES001544

Amazon Accelerate 2022: September 14-15. **Register now**

English | Log in

amazon   Start ⌄   Grow ⌄   Learn ⌄   Pricing ⌄   Blog ⌄   **Sign up**

# FBA Benefits



## Your products are eligible for Amazon Prime FREE Two-Day Shipping, FREE Shipping, and more.

Prime members love FREE Two-Day Shipping, and all Amazon.com customers can get free shipping on eligible orders. When you list products for FBA, they are eligible for free shipping, too. Qualified FBA listings are displayed with the Prime logo, so customers know that Amazon handles packing, delivery, customer service, and returns.

THIMES001545



Amazon Accelerate 2022: September 14-15.   **Register now**

🌐 English          🔒 Log in

amazon        Start ⌄   Grow ⌄   Learn ⌄   Pricing ⌄   Blog ⌄          **Sign up**          🔍



## Customers get Amazon's trusted customer service and returns.

FBA leverages the Amazon customer service network stretching around the globe, managing customer inquiries, refunds, and returns for your FBA orders.

- **FBA customer support:** Customers can contact our customer support via phone or email, day or night. This service is provided at no extra charge to you, with the exception of the Returns Processing Fee for select product categories. When you use FBA, your time can be spent growing your business or taking a vacation, rather than managing customer service

- **FBA returns:** For orders from the Amazon.com website that Amazon fulfills, we will manage all customer service associated with fulfillment of your FBA products. Our online returns center provides customers with help pages and details about how to contact us in case of concerns. If the customer wants to return a product, we direct them to our convenient online returns center. Read more about FBA customer returns policies.



## Our services let your business scale quickly

Our fulfillment centers are built with your inventory in mind, and there's no minimum for the number of products you send. We handle the details to save you time, so you can focus on your business. FBA's specialized services can help you grow your business without new investments in capital or staffing:

- **FBA Small and Light:** Reduce the cost of fulfilling orders for low-cost, small, and lightweight FBA inventory.

- **FBA Subscribe & Save:** Offer discounts on eligible FBA products for repeat customers.

- **FBA Pan-EU:** Offer fast delivery in Prime-eligible European countries.

- **FBA Export:** At no extra charge, expand your FBA

THIMES001546

Amazon Accelerate 2022: September 14-15. **Register now**



🌐 English          🔒 Log in

Start ⌄    Grow ⌄    Learn ⌄    Pricing ⌄    Blog ⌄          **Sign up**    🔍

packing, and shipping to your customers.



## It's cost-effective

Shipping with FBA costs **32% less per unit** than the slowest shipping options offered by major U.S. carriers. FBA two-day shipping costs **72% less per unit** than their two-day options. Pay as you go—you are charged for storage space and the orders we fulfill. The cost of shipping is included in your fees, with **no extra charge for Amazon Prime FREE Two-Day Shipping** and free shipping on eligible orders. Fees for Selling on Amazon and optional services may apply.

# FBA storage and fulfillment fees

### Inventory storage fees

Charged for all items stored in an Amazon fulfillment center, and based on your daily average volume of inventory measured in cubic feet. See how to determine the product size tier for your items.

### Long-term storage fees

Assessed monthly for all items stored in a fulfillment center for more than 365 days. Maintaining sound inventory health can help you avoid long-term storage fees.

### Fulfillment fees

Charged per unit for picking and packing your orders, shipping and handling, customer service, and product returns. Use the FBA revenue calculator to estimate fees and see how to preview your fees.

### Unplanned services fees

Charged when inventory arrives at a fulfillment center without proper preparation or labeling, making unplanned services required.

THIMES001547



Amazon Accelerate 2022: September 14-15. **Register now**

🌐 English          🔒 Log in

Start ⌄     Grow ⌄     Learn ⌄     Pricing ⌄     Blog ⌄     **Sign up**     🔍

your inventory in a fulfillment center for a per-item fee.

customer with free return shipping.

Learn more about the cost of FBA. Use the **Fulfillment by Amazon Revenue Calculator** on Seller Central to estimate your FBA fees.

# FBA inventory management

Use the tools in your seller account to list products, create shipping plans, send in shipments, track and monitor your shipments, and remove inventory from Amazon fulfillment centers.

**Learn more about inventory management** →

**Inventory Performance Dashboard**

Manage excess inventory

Track inventory age

Fix stranded inventory

Restock inventory

**Inventory Performance Dashboard**

Your Inventory Performance Dashboard displays your Inventory Performance Index (IPI) score, along with key influencing factors. Be sure to check your IPI score regularly—a low score could lead to overage fees and limit your ability to send more inventory.

**Manage excess inventory**

Optimize your inventory levels by knowing when to mark down or remove your products. Monitor detailed information about storage fees, opportunities to drive sales, and suggestions to help improve returns on your inventory.




THIMES001548

Amazon Accelerate 2022: September 14-15. **Register now**

English    Log in

amazon    Start ⌄    Grow ⌄    Learn ⌄    Pricing ⌄    Blog ⌄    Sign up





## Track inventory age

Improve sell-through rates and avoid long-term storage fees. Use Inventory Age tools to understand how much inventory you're holding, and see how long it's been in fulfillment centers.



## Fix stranded inventory

Amazon Accelerate 2022: September 14-15. **Register now**

🌐 English   🔒 Log in

**amazon**

Start ⌄   Grow ⌄   Learn ⌄   Pricing ⌄   Blog ⌄

**Sign up**   🔍



SELLER UNIVERSITY

**What is FBA's Stranded Inventory Percentage?**

▶ **Watch**

## Restock inventory

Maintaining your FBA inventory at the right level is key to offering fast delivery to Prime customers. Amazon's restock tools on Seller Central can help you:

- Get more one day and same day orders

- Reduce out-of-stocks

- Protect your sales rank

- Minimize excess inventory

The tools offer recommendations based on your sales history, demand forecast and seasonality, and your inputs to help you determine how much inventory to send and when to send it. They are free to use, and directly integrated into Seller Central's shipment creation workflow.

**Download the Amazon FBA restock guide** 

THIMES001550

Amazon Accelerate 2022: September 14-15. **Register now**

amazon

Start ⌄    Grow ⌄    Learn ⌄    Pricing ⌄    Blog ⌄

🌐 English    🔒 Log in

**Sign up**



EXPLAINER

## What is the FBA Restock Tool?



SELLER UNIVERSITY

## What is FBA In-Stock Rate?

# Save time and help grow your business with FBA

You sell it, we ship it. Amazon has one of the most advanced fulfillment networks in the world. With FBA, you store products in Amazon's fulfillment centers, and we pick, pack, ship, and provide customer service for these products. FBA can help you scale your ecommerce business and reach more customers.



THIMES001551



Amazon Accelerate 2022: September 14-15. **Register now**

🌐 English     🔒 Log in

Start ⌄   Grow ⌄   Learn ⌄   Pricing ⌄   Blog ⌄          **Sign up**   🔍

# Frequently Asked Questions

Get answers to the frequently asked questions about Fulfillment by Amazon

What is FBA?                                     +

How much does FBA cost per item?                 +

What is an FBA seller?                           +

How to sell using Amazon FBA?                    +

What to sell with Amazon FBA?                    +

What is "fulfillment"?                           +

# Help grow your business with Fulfillment by Amazon



THIMES001552



Amazon Accelerate 2022: September 14-15. **Register now**

English Log in

amazon Start Grow Learn Pricing Blog **Sign up**

English United States Feedback

**Sell with Amazon**

How much does it cost?

Beginner's guide

Intro to ecommerce

Inventory management

How to sell books

Online business ideas

**Selling Programs**

Fulfillment by Amazon

Amazon Advertising

Global selling

Amazon Business

Black Business Accelerator

More programs

**Amazon for Brands**

Build an online store

Tips for brands on Amazon

Brand case studies

Amazon Brand Registry

Ecommerce storefronts

Ecommerce Fulfillment

**Resources**

Selling Partner Blog

Seller University

Seller Central Help

Accelerate Seller Event

Seller FAQs

More ways to make money

**Tools**

Login to your seller account

Amazon Seller App

Seller Central

Seller Central Partner Network

Amazon fee calculator

Automated pricing

amazon Terms of Service Privacy Policy

© 2022, Amazon.com Services LLC.

# Exhibit 30

1   RANDOLPH GAW (S.B. #223718)          MARK SCHLACHET (*pro hac vice*)
2    rgaw@gawpoe.com                       markschlachet@me.com
    MARK POE (S.B. #223714)               43 West 43d Street, Suite 220
3    mpoe@gawpoe.com                      New York, New York 10036
    VICTOR MENG (S.B. #254102)            Telephone: (216) 225-7559
4    vmeng@gawpoe.com                     Facsimile: (216) 932-5390
5   GAW | POE LLP
6   4 Embarcadero Center, Suite 1400
    San Francisco, CA 94111
7   Telephone: (415) 766-7451
8   Facsimile: (415) 737-0642

9   Attorneys for Plaintiff
    Thimes Solutions Inc.
10

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13                  **WESTERN DIVISION**

14

15   THIMES SOLUTIONS INC.            Case No. 2:19-cv-10374-SB-E

16              Plaintiffs,           **THIMES SOLUTIONS INC.'S**
                                      **SECOND SUPPLEMENTAL**
17        v.                          **RESPONSES TO DEFENDANT TP-**
                                      **LINK USA CORPORATION'S**
18   TP-LINK USA CORPORATION,         **FIRST SET OF**
     and AUCTION BROTHERS, INC.       **INTERROGATORIES**
19   d/b/a AMAZZIA

20              Defendant.

21

22

23   PROPOUNDING PARTY:      Defendant TP-Link USA Corporation

24   RESPONDING PARTY:       Plaintiff Thimes Solutions Inc.

25   SET NO.:                One

26

27

28

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Thimes Solutions Inc. hereby issues the following second supplemental responses to Defendant TP-Link USA Corporation's First Set of Interrogatories to Plaintiff, served on June 2, 2022.

**SECOND SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 4:**

Describe in detail all facts and circumstances relating to the specific conduct by TP-LINK USA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Thimes has had an established economic relationship with Amazon since 2016, sold over 175,000 products on the Amazon Marketplace with a 98% lifetime positive feedback rating, and had $2 million in sales during the first six months of 2018.  TP-Link knew of Thimes's successful sales on the Amazon Marketplace, as evidenced by TP-Link's entering into the Amazon Brand Protection Agreement with Amazzia for the specific purpose of eliminating third-party resellers—like Thimes—of TP-Link branded products on the Amazon Marketplace.  TP-Link instructed Amazzia to submit 28 complaints to Amazon alleging that Thimes was selling counterfeit products for the specific purpose of disrupting and stopping Thimes's sales on the Amazon Marketplace.  TP-Link had no reasonable basis for alleging to Amazon that Thimes sold counterfeit TP-Link branded products, as TP-Link lodged such complaints before it ever received any orders of TP-Link products from Thimes.  Furthermore, after TP-Link received orders of TP-Link products from Thimes and had an opportunity to inspect them, it knew that these products were still factory-sealed and thus unaltered in any way, yet it continued to knowingly or recklessly allege to Amazon that Thimes sold counterfeit TP-Link branded products.  Actual disruption occurred, as Amazon suspended and expelled Thimes from the Amazon Marketplace.  As a result of the expulsion, Thimes was

unable to sell its aging inventory, access its funds stored with Amazon, and continue its profitable sales track record on the Amazon Marketplace.

Each of the 28 complaints TP-Link instructed Amazzia to submit to Amazon accusing Plaintiff of selling counterfeit products constitutes libel per se, because each is a statement that defames Plaintiff by asserting that Plaintiff is guilty of an illegal act. TP-Link had no basis to have Amazzia assert that Plaintiff was selling counterfeit products since TP-Link made some of those statements without first performing a test buy of Plaintiff's TP-Link products. TP-Link also had no basis to have Amazzia assert that Plaintiff was selling counterfeit products because TP-Link's test buys of Plaintiff's TP-Link products showed they were all factory-sealed and unaltered.

Each complaint accusing Plaintiff of selling counterfeit products was also an intentional or negligent misrepresentation, as TP-Link knew the complaints were false, or had no reasonable basis for believing that Thimes was selling counterfeit products, when it instructed Amazzia to submit the complaint(s) to Amazon, and TP-Link intended for Amazon to rely on the complaints submitted to take down Plaintiff's listings of TP-Link products so that Plaintiff could not re-sell them on the Amazon Marketplace to consumers.

Additionally, TP-Link's instructing Amazzia to repeatedly submit complaints to Amazon falsely accusing Plaintiff of selling counterfeit TP-Link products is an example of both an "unfair" and a "fraudulent" business practice within the meaning of California's unfair competition law.

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

**INTERROGATORY NO. 5:**

Describe in detail all facts and circumstances relating to the specific conduct by AMAZZIA which YOU contend was wrongful in connection with YOUR claim for interference with existing and prospective business relationships.

THIMES 2ND SUPP. RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

Plaintiff will supplement this Interrogatory response as appropriate after discovery is substantially complete.

Dated:  August 19, 2022

GAW | POE LLP

By: _____

Randolph Gaw
Attorneys for Plaintiff
Thimes Solutions Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>VERIFICATION</u>**

I, Avraham Eisenberg, declare that I am authorized to make this verification on behalf of Plaintiff Thimes Solutions Inc.  I have read **THIMES SOLUTIONS INC.'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT TP-LINK USA CORPORATION'S FIRST SET OF INTERROGATORIES**, know their contents, and certify that the same are true of my own knowledge, and as to those things of which I do now have personal knowledge, I am informed and believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and this verification was executed on August 18, 2022, at San Juan, Puerto Rico.

*Avraham Eisenberg*
_____

# Exhibit 31

# Market share of leading retail e-commerce companies in the United States as of June 2022



| | |
|---|---|
| Amazon | 37.8% |
| Walmart | 6.3% |
| Apple | 3.9% |
| eBay | 3.5% |
| Target | 2.1% |
| The Home Depot | 2.1% |
| Best Buy | 1.6% |
| Costco | 1.6% |
| Carvana | 1.5% |
| Kroger | 1.4% |
| Wayfair | 1.1% |
| Chewy | 1% |
| Macy's | 0.9% |
| Lowe's | 0.9% |
| Qurate Retail Group | 0.7% |

Share of retail e-commerce sales

**Source**
eMarketer
© Statista 2022

Additional Information:
United States; June 2022


THIMES001554

# Exhibit 32

Case 2:19-cv-10374-SB-E    Document 217-3    Filed 09/09/22    Page 203 of 332    Page ID #:4211



**amazon** seller central

Software Partners

Categories ▾ | Search the Appstore | 🔍 | $ USD ▾

‹ Back to Home Page



# InventoryLab

by InventoryLab Inc.

**InventoryLab is an all-in-one set of mobile and web-based tools you can use to streamline your business.**

⭐⭐⭐⭐⭐ ▾ 93 customer ratings

Starting at $49.00 / month - FREE TRIAL



## Features

- Mobile and web-based product sourcing and profitability research
- FBA or Merchant Fulfilled product listing and replenishments
- Print barcode labels from any DYMO Labelwriter printer
- Build FBA shipments
- Integrated inventory cost, purchase date, supplier, and business expense tracking
- Automated profitability, Profit & Loss, and Sales Velocity analysis

## Description

InventoryLab is an all-in-one set of mobile and web-based tools you can use to streamline your business.

Scoutify simplifies product sourcing from your mobile device. Enjoy the experience of sourcing profitable products with confidence. When you're ready to list your profitable items, Stratif information. Power-up the process when you account for your expenses and track product suppliers. Drive results and unify the workflow of your business with automated accounting, res

Automated communication begins when you connect your InventoryLab and Amazon Pro Seller accounts. Through Amazon's Marketplace Web Services API your inventory, refunds, reimb account, revealing ongoing actionable insight.

## Who should use this?

- Amazon FBA and Merchant Fulfilled Sellers
- Sellers with many uniue SKUs
- Sellers that need a way to track cost of goods
- Sellers that need a way to source/analyze ASINs one at a time

InventoryLab works on any browser and our mobile app works on both Android and iOS.

## Pricing information

Monthly subscription starting at $49. Save two months with an annual subscription

## Additional information

All transactions are directly between you and the provider of this solution (application or service). The provider may set its own policies on pricing, usage, and cancellation related to their resource. Any prices shown are for reference only. Because Amazon is not directly involved in the development or sale of this solution, you will need to contact the provider for any techni any provider or solution.

THIMES001535

## Sellers also viewed



**Jungle Scout**

Jungle Scout helps sellers locate profitable opportunities on Amazon, find suppliers, launch new products then…

★★★★☆ 25

Contact developer for quote



**ChannelMAX**

ChannelMAX is a best-in-class Algorithmic BuyBox maximization Amazon repricer that comes with features such as Busine…

★★★★★ 57

Contact developer for quote



## Customer reviews

★★★★★
5 out of 5 stars

| | | |
|---|---|---|
| 5 star | ████████ | 99% |
| 4 star | | 1% |
| 3 star | | 0% |
| 2 star | | 0% |
| 1 star | | 0% |

Sign in to write a review.

Write a customer review

See all verified purchase reviews

## Recent reviews

Organized Boots

★★★★★ **Business Essential**

July 20, 2022

Verified User

Can not see us doing business without IL! Initially signed up for inventory accuracy (both count and cost) and have been enjoying the additional features. Generates easy to read and dige: use of Scoutify 2.0 while out sourcing is invaluable - much needed to ensure great sourcing buys. Highly recommended for anyone selling on Amazon and/or eCommerce sites.

Helpful | Report abuse

Humble Servants

★★★★★ **Inventory Lab is the most helpful software I use**

July 20, 2022

Verified User

Amazing tools for managing inventory.
Excellent ,positive, and encouraging customer support
User friendly
It is valuable to me to have IL as an Amazon seller!
I probably wouldn't sell on Amazon without IL as it makes selling on Amazon relatively easy.

Helpful | Report abuse

Gladness!

★★★★★ **Best Inventory Management Tool**

July 20, 2022

Verified User

IL stands head and shoulders above the competition for inventory management. Makes pulling reports and staying on top of restocking a breeze.

Helpful | Report abuse

General eStore

★★★★★ **An invaluable tool for any Amazon seller!**

July 20, 2022

Verified User

We have been using Inventory Lab since 2014 and they have proven to be a necessity if you want to streamline your inbound shipments, have accurate profit numbers, and have very usal allows you to scan a product and instantly tell if it's profitable and whether you're approved to sell it. I can't imagine selling on Amazon without Inventory Lab.

Helpful | Report abuse

Brent's Bargain Outlet

⭐⭐⭐⭐⭐ **Best Program to Run Your Business**

July 20, 2022

Verified User

This is program is a must to give an accurate picture of your business.

Helpful | Report abuse

---

Triello LLC

⭐⭐⭐⭐⭐ **Practicality**

July 20, 2022

Verified User

A software that helps us a lot in decision making in analyzing a product, in the financial part, in listing a product and all the management part of your business on Amazon.

Helpful | Report abuse

---

Onez for All

⭐⭐⭐⭐⭐ **Very easy to use**

July 19, 2022

Verified User

Very easy to use & very helpful for shipping

Helpful | Report abuse

---

Birdie Looks

⭐⭐⭐⭐⭐ **Makes Listing and Keeping Track of Inventory a Snap!**

July 19, 2022

Verified User

Without Inventory Labs I wouldn't have been able to start my Amazon business sending items to FBA so smoothly and so efficiently! I appreciate their attention to detail, offering all of th
tools I use, Inventory Lab is one of the most valuable and indispensible!

Helpful | Report abuse

---

True Goods Unlimited

⭐⭐⭐⭐⭐ **Love this app**

July 19, 2022

Verified User

This app is amzinggggggg GAME CHANGER!!!!

Helpful | Report abuse

---

TaggTeam Sales

⭐⭐⭐⭐⭐ **simple. affordable**

July 19, 2022

Verified User

Inventory Lab meets my needs. It makes managing inventory simple. I can see my profit instantly and I can drill down to see results on any given product in a few key strokes. IL is afforda

Helpful | Report abuse

---

See all 93 reviews

Sign in to write a review.

Write a customer review

---

© 1999-2022, Amazon.com, Inc. or its affiliates

THIMES001537

Exhibit 33

 seller central

English ▾        Sign in        Sell on Amazon

This article applies to selling in: United States

Seller Central Help  ›  Policies, agreements, and guidelines  ›  Program Policies  ›  Amazon Anti-Counterfeiting Policy

# Amazon Anti-Counterfeiting Policy

**Products offered for sale on Amazon must be authentic. The sale of counterfeit products is strictly prohibited. Failure to abide by this policy may result in loss of selling privileges, funds being withheld, and disposal of inventory in our possession.**

It is each seller's and supplier's responsibility to source, sell, and fulfill only authentic products. Prohibited products include bootlegs, fakes, or pirated copies of products or content; products that have been illegally replicated, reproduced, or manufactured; and products that infringe another party's intellectual property rights. If you sell or supply inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts) and dispose of any inauthentic products in our fulfillment centers at your expense. In addition, we do not pay sellers until we are confident our customers have received the authentic products they ordered. We may withhold payments if we determine that an Amazon account has been used to sell inauthentic goods, commit fraud, or engage in other illegal activity.

We work with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result, we remove suspect listings based on our own review of products. We also work with rights holders and law enforcement worldwide to take and support legal action against sellers and suppliers that knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

Amazon strives to ensure a trustworthy shopping experience for our customers. By selling on Amazon, you agree that:

- The sale of counterfeit products is strictly prohibited.
- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured
- You must provide records about the authenticity of your products if Amazon requests that documentation

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfillment centers, and other legal consequences.

# More information

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:
  - Bootlegs, fakes, or pirated copies of products or content
  - Products that have been illegally replicated, reproduced, or manufactured
  - Products that infringe another party's intellectual property rights
- Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.
- Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), dispose of any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.
- Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:
  - Remove suspect listings.
  - Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of

any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

## Related articles

Account Health Rating program policy

FBA inventory reimbursement policy

Unsuitable inventory investigations policy

Amazon Business invoicing policy

U.S. Income Reporting & Tax Identity Collection FAQ

ASIN creation policy

Selling on Amazon fee schedule

Product guidelines

Convenience Store Payment Service Terms of Use

Product safety alerts, recalls, stop sales, and market withdrawal policy for sellers

Customization Program Terms for Sellers

Important information for international sellers

Countries accepted for seller registration

Guidelines for use of the Available at Amazon Badge by Sellers

Intellectual Property Policy for Sellers

Report a Violation

Parallel Imported Products

Communication Guidelines

Amazon Currency Converter for Sellers Terms and Conditions

Tax policies

Supply Chain Standards

Consumption Tax Indication

Standards for Brands Selling in the Amazon Store

Amazon Imaging Services Terms and Conditions

Amazon Points Services Terms and Conditions

Tax Registration Agreement (VAT or GST)

E.U. Value Added Tax (EU VAT) Registration Agreement

Fulfillment by Amazon Policies and Requirements

Cash On Delivery terms of use

Pay by Invoice Policies

Amazon Launchpad Program Terms

Selling Services Terms

Textbook Rental Policy

Fine Jewelry Terms and Conditions

FBA Inventory Placement Service Terms and Conditions

Selling Services on Amazon Policies

Subscribe With Amazon Program Agreement

Tax Calculation Services Terms

Amazon Renewed Quality Policy

Amazon Renewed Program Policies

The Renewed Guarantee

Seller Fee Tax Invoice

Important information for international sellers

Get Paid Faster Service Terms for Invoiced Orders

FBA Dangerous Goods Program Terms and Conditions

Prime Launches program terms

Get Paid Faster service terms for invoiced orders

Ship-to-Store Terms

Ship-to-Store Policies

Customer product reviews policies

EU Geo-blocking regulation

Amazon Brand Analytics Terms and Conditions

Additional policies and guidance for Prime Now sellers

Amazon Vine Terms and Conditions

Referral fees reimbursement policy

Customer Service by Amazon Terms & Conditions

Amazon Services Provider – Program Policies

Selling on Amazon fees guide

Amazon Accelerator

Amazon Brand Referral Bonus Terms and Conditions

A-to-z Claims Process for Property Damage and Personal Injury

Amazon Services Provider – program policies

Local Selling Program Policies

Local Selling Terms

Amazon Generic Product Policy

Lab Central Program Policy

Black-Owned Business badge

## Need more help?

Visit Seller Forums

See more on Seller Central



**Reach Hundreds of Millions of Customers**

Start Selling On Amazon

© 1999-2022, Amazon.com, Inc. or its affiliates

# Exhibit 34

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                    December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                              1–4

**Page 1**

```
1                UNITED STATES DISTRICT COURT
2                SOUTHERN DISTRICT OF FLORIDA
3
4    SOLU-MED, INC.,              )
                                  )
5              Plaintiff,    )Case No.
                             )0:10-cv-60487
6         vs.                )
                             )
7    YOUNGBLOOD SKIN CARE PRODUCTS  )
     LLC,                     )
8                            )
               Defendants.   )
9    _____ )
10
11            * * * CONFIDENTIAL * * *
12
13        VIDEOTAPED 30(b)(6) DEPOSITION OF
14      THIRD-PARTY, AMAZZIA, BY AND THROUGH
15         PERSON MOST KNOWLEDGEABLE
16             WILLIAM FIKHMAN
17
18            DECEMBER 10, 2019
19               10:18 A.M.
20
21          16501 Ventura Boulevard
22            Encino, California
23
24
25        Susan Pobor, CSR No. 5132
```

**Page 2**

```
1              APPEARANCES OF COUNSEL
2
3    ON BEHALF OF PLAINTIFF, SOLU-MED, INC.:
4        GOODMAN & SAPERSTEIN
         BY:  STANLEY R. GOODMAN, ESQ.
5        666 OLD COUNTRY ROAD
         SUITE 200
6        GARDEN CITY, NEW YORK  11530
         (516) 227-2100
7        GSESQ@AOL.COM
8          -- AND --
9    BLACK LAW, P.A.
         BY:  KELSEY K. BLACK, EQ.
10           (Via telephone)
         1401 East Broward Boulevard
11       Suite 204
         Fort Lauderdale, Florida  33301
12       (954) 320-6220
         Kelsey@kkbpa.com
13
14   ON BEHALF OF DEFENDANT, YOUNGBLOOD SKIN CARE
     PRODUCTS LLC:
15
         COLE, SCOTT & KISSANE, P.A.
16       BY:  JONATHAN VINE, ESQ.
         222 Lakeview Avenue
17       Suite 120
         West Palm Beach, Florida  33401
18       (561) 383-9200
         Jonathan.Vine@csklegal.com
19
20   ON BEHALF OF THIRD-PARTY, Amazzia:
21       BURKHALTER KESSLER CLEMENT & GEORGE LLP
         BY:  ANDREW M. CUMMINGS, ESQ.
22       2020 Main Street
         Suite 600
23       Irvine, California  92614
         (949) 975-7500
24       Acummings@bkcglaw.com
25
```

**Page 3**

```
1               APPEARANCES (CONTINUED):
2
3    VIDEOGRAPHER:  DANIEL ROCCO
4
     ALSO PRESENT:  JASON TOTH
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
1               I N D E X
2
3    WITNESS         EXAMINATION        PAGE
4    WILLIAM FIKHMAN   BY MR. VINE        7
5              BY MR. GOODMAN    108
6              BY MR. VINE       164
7
8
9               E X H I B I T S
10   EXHIBITS         DESCRIPTION        PAGE
11   Exhibit 1   Notice of Deposition,      10
         attaching a document
12       entitled "Scheduled 'A'
         Areas of Inquiry
13
14   Exhibit 2   Document entitled,         26
         "Youngblood Skin Care
15       Products, LLC
16   Exhibit 3   Amazon Management Agreement  29
         between Youngblood and
17       Amazzia
18   Exhibit 4   Condition Guidelines from   42
         Amazon
19
20   Exhibit 5   Document entitled,         45
         "Cosmetics & Skin/Hair
21       Care"
22   Exhibit 6   Document entitled, Amazon   50
         Product Authenticity and
23       Quality
24   Exhibit 7   Document entitled, "Amazon  68
         Anti-Counterfeiting Policy"
25
```



**EXHIBIT 3**

Case 2:19-cv-10874-SB-E   Document 217-3   Filed 09/09/22   Page 213 of 332   Page ID
#:4281
Case 0:19-cv-60487-RKA   Document 101-7   Entered on FLSD Docket 03/06/2020   Page 29 of
42

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                    December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                              5—8

Page 5

E X H I B I T S (CONTINUED)
1
2  Exhibit 8   Document entitled, "Selling      82
3               Policies and Seller Code of
                Conduct
4  Exhibit 9   Complaint submitted to          86
                Amazon on behalf of
5               Youngblood
6  Exhibit 10  E-mail correspondence, top      94
                e-mail from Brand
7               Protection to Daniel Le
                Blanc, dated 7/15/19,
8               Subject: Fw: Solu-Med,
                Inc./Youngblood - Amazon
9               Complaint ID #5518323151
10 Exhibit 11  Correspondence relating to      98
                a retraction request
11
   Exhibit 12  E-mail correspondence, top     102
12              e-mail from Brand
                Protection to Daniel Le
13              Blanc, dated 7/15/19,
                Subject: Fw: Complaint ID:
14              5519411921
15
           INFORMATION REQUESTED
16
                  (NONE)
17
18
19      QUESTIONS INSTRUCTED NOT TO ANSWER
20          PAGE   LINE
21           162    13
22
23
24
25

Page 6

1         DEPOSITION ON WILLIAM FIKHMAN
2             DECEMBER 10, 2019
3             ---o0o---
4         THE VIDEOGRAPHER:  Here begins Volume I,
5  Media one, deposition of William Fikhman, in the
6  matter of Solu-Med, Inc. versus Youngblood Skin
7  Care Products LLC.  Case number is 0:10-cv-60487.
8         Today's date is Tuesday, December 10, 2019.
9  The time on the video monitor is 10:18 a.m.
10        The video operator today is Daniel Rocco,
11 contracted by Esquire Deposition Solutions.
12        This video deposition is taking place at
13 16501 Ventura Boulevard, Suite 400, Encino,
14 California.
15        Counsel, please identify yourselves and
16 state whom you represent.
17        MR. GOODMAN:  Stanley R. Goodman for the
18 plaintiff, Solu-Med.
19        MS. BLACK:  Kelsey Black with Stanley
20 Goodman for the plaintiff, Solu-Med.
21        MR. VINE:  Jonathan Vine with the law firm
22 of Cole, Scott & Kissane on behalf of Youngblood.
23        MR. CUMMINGS:  Andrew Cummings from
24 Burkhalter Kessler Clement & George here for
25 third-party deponent, Amazzia.

Page 7

1         THE VIDEOGRAPHER:  The court reporter today
2  is Susan Pobor of Esquire.
3         Will the reporter please swear in the
4  witness.
5              * * *
6         WILLIAM FIKHMAN,
7    having been first duly sworn, was
8    examined and testified as
9    follows:
10
11           EXAMINATION
12 BY MR. VINE:
13   Q.  Okay.
14       Can you please state your name for the
15 record?
16   A.  William Fikhman.
17   Q.  Did you say "Fikhman"?
18   A.  Fikhman.
19   Q.  Thank you.
20       Mr. Fikhman, have you ever sat for a
21 deposition before?
22   A.  No.
23   Q.  Okay.
24       Today, I'll be asking you a series of
25 questions.

Page 8

1         If you don't understand any of my
2  questions, feel free to let me know, but I'm going
3  to assume that you understood them unless you tell
4  me to rephrase the question.
5         Is that good?
6    A.  Yes.
7    Q.  It's also important for you to keep your
8  questions as verbal responses, as the
9  court reporter can't take down nods or gestures.
10        Okay?
11   A.  Okay.
12   Q.  It's also important for you to let me
13 complete my question, even if you anticipate the
14 answer, as the court reporter can't take the two of
15 us speaking at the same time.
16        Does that sound good?
17   A.  Yes.
18   Q.  And then, lastly -- well, not lastly -- but
19 you're going to be hearing, from time to time,
20 object -- potentially, objections from counsel,
21 whether it be your counsel or Mr. Goodman.  You're
22 still required to respond to the question unless
23 they direct you not to answer.
24        Okay?
25   A.  Uh-huh, yes.



Case 2:19-cv-10874-SB-E Document 217-3 Filed 09/09/22 Page 214 of 332 Page ID
#:4282
Case 8:19-cv-00488-RKA Document 107-21 Entered on FLSD Docket 03/06/2020 Page 30 of
42

PMK WILLIAM FIKHMAN 30(b)(6), Confidential
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE

December 10, 2019
9–12

Page 9

1    Q.   Okay.
2        And, lastly, any time you need a break,
3  feel free to let your counsel know, and we can take
4  a break.
5        Okay?
6    A.  Okay.
7    Q.  Okay.  Great.
8        Can you give me your current address?
9    A.  Business or --
10   Q.   Business is fine.
11   A.   7040 Darby Avenue, Reseda, California,
12  91335.
13   Q.   Where -- Where are you employed?
14   A.   Auction Brothers, Inc. doing business as
15  Amazzia.
16   Q.   Okay.
17        And are you one of the owners of the
18  company?
19   A.  I am.
20   Q.   Okay.
21        How many owners are there at the company?
22   A.   Three.
23   Q.   And who are the owners?
24   A.   Mike Fikhman, George Fikhman and
25  William Fikhman.

Page 10

1        (Whereupon Exhibit 1 was marked
2         for identification)
3  BY MR. VINE:
4    Q.   Okay.  We've marked as Exhibit 1 -- it's a
5  Notice of Deposition with an Exhibit A with areas
6  that we seek to depose you on.
7        Can you take a look at it and tell me if
8  you've seen this before?
9    A.  Yes.
10   Q.   Okay.  If you could stay on the third page.
11        The third page is an exhibit that lists
12  areas of a potential inquiry.
13        Correct?
14   A.  Yes.
15   Q.   Okay.
16        Do you -- Are you the designee from Amazzia
17  to answer questions regarding those listed on -- in
18  Exhibit 1?
19   A.  Yes.
20   Q.   Okay.
21        Can you just give me a brief description of
22  your educational background?
23   A.   I have a bachelors in accounting and
24  business honors --
25   Q.   Okay.

Page 11

1    A.  -- from Cal State Northridge.  Cal State
2  Northridge.
3    Q.   Okay.
4        And how long have you been working at
5  Amazzia?
6    A.   The corporation is 15 years old.  So the
7  entire 15 years.
8    Q.   Okay.
9    A.   It has not always been Amazzia.
10   Q.   Okay.
11        So why -- why don't we start --
12        How -- When was -- When did Amazzia become
13  first incorporated or began?
14   A.   Amazzia became a dba of Auction Brothers
15  maybe two years ago.
16   Q.   Okay.
17        Prior to that, it was some -- it was
18  Auction Brothers?
19   A.   It was just Auction Brothers.
20   Q.   What -- What was the nature of the business
21  for Auction Brothers?
22   A.   It was Amazon reselling.
23   Q.  Amazon.
24        And -- And why --
25        About two years ago, you said, 2017?

Page 12

1        Is that correct?
2    A.  (No audible response).
3    Q.  You have to respond verbally.
4    A.  Yes.
5    Q.  Okay.
6        About two years ago?
7    A.  Yes.
8    Q.  Okay.
9        And why did it change its name to "Amazzia"
10  or use a dba?
11   A.   We created -- We pivoted the business
12  model towards more of the Amazon brand protection
13  and management model.
14        Prior to that, it was just purely
15  reselling products on Amazon without any exclusive
16  relationships with brands.
17   Q.   Okay.
18        When did you begin --
19        Strike that.
20        Would you agree with me that you handled
21  brand protection prior to converting into the name
22  of "Amazzia"?
23   A.  Yes.
24   Q.  Okay.
25        When did Auction Brothers or the



Case 2:19-cv-10874-SB-E   Document 217-3   Filed 09/09/22   Page 215 of 332   Page ID
#:4283
Case 8:19-cv-00481-RKR   Document 107-1   Entered on FLSD Docket 03/06/2020   Page 32 of
42

PMK WILLIAM FIKHMAN  30(b)(6), Confidential          December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                        17–20

Page 17

1       Do -- Does Amazzia become a distributor
2   with companies such as Youngblood --
3       A.  Yes.
4       Q.  -- to sell products online?
5       A.  Yes.
6       Q.  Okay.
7           So what percentage of the business is that,
8   do you think, for Amazzia?
9           Because that's reselling.
10      A.  Where it becomes a --
11      Q.  Yes.
12      A.  -- distributor of the product?
13      Q.  Sure.
14      A.  97 percent, maybe.
15      Q.  Okay.
16          And 3 percent is about brand protec --
17      A.  3 percent, we operate --
18      COURT REPORTER:  I'm sorry.
19          What you need to do is wait until the very
20  last word of his question, please, and then give
21  your answer.  And --
22      Q.  So let me just start over.
23          Would you say about 3 percent is brand
24  protection?
25      A.  Our entire business includes brand

Page 18

1   protection.
2       Q.  Okay.
3       A.  97 percent is distributed business, like
4   our relationship with Youngblood.
5       Q.  Okay.
6       A.  The smaller part is sometimes we offer a
7   service, only, where we don't distribute the
8   products, but some companies will hire us to do the
9   brand protection service for a monthly retainer.
10      Q.  Okay.  So now I understand.
11          So, typically, the services that you
12  provide are both brand protection and distribution,
13  and that's about 97 percent, and about 3 percent is
14  brand protection, only?
15      A.  Correct.
16      Q.  Okay.
17          And where is Amazzia located?
18      A.  Reseda, California.
19      Q.  Okay.
20          And has it always been there?
21      A.  Amazzia has always been there.
22          We were in Tarzana prior to that for many
23  years.
24      Q.  And do you sell services for brand
25  protection and distribution on other platforms

Page 19

1   other than Amazon?
2       A.  We do offer a Walmart service.
3       Q.  And what's that?
4       A.  Same thing.  We help a brand clean up the
5   Walmart channel.
6           That's the only other brand protection
7   area we serve today.
8           We have one client in that --
9       Q.  Okay.
10      A.  -- aspect.
11      Q.  Okay.
12          Does Amazzia protect brands or provide
13  protection services of brands that sell on Amazon
14  from competitors who sell counterfeit products?
15      A.  Can you repeat that?
16      Q.  Sure.
17          One of the services that you provide is
18  providing protection from inauthentic or
19  counterfeit products.
20          Correct?
21      A.  Yes.
22      Q.  Okay.
23          And how -- What is the process in which
24  Amazzia goes by to look for inauthentic,
25  counterfeit or used products that are not

Page 20

1   authorized?
2       A.  Okay.  So when we partner with a brand,
3   whether we are distributing that product or purely
4   providing the -- the brand protection service, part
5   of our agreement will stipulate what is their what
6   we call enforcement rule.
7           So every brand defines the enforcement
8   rule differently.  In this case --
9           I think it's on that form there.
10      Q.  I'll -- I'll show it to you in a second.
11      A.  Okay.
12          So --
13      Q.  I'm just talking generally, and then we're
14  going to do specifics.
15      A.  Okay.  So, in general, we would identify
16  that Amazzia will be removing all resellers except
17  authorized resellers.
18          And then we start to look at, okay, who is
19  in the market that is not authorized.
20          On a beauty product, specifically one in
21  cosmetics like Youngblood, Amazon actually doesn't
22  allow you to list the product unless it is new.
23          So used products that go on the body are
24  not allowed, by policy, to be listed on Amazon.
25          So all sellers list this type of a product



PMK WILLIAM FIKHMAN 30(b)(6), Confidential
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE

December 10, 2019
57–60

Page 57

1   ships it to the consumer.
2       Q.   Okay.
3           Under "Types of Violations" section on the
4   first page, what does it say about violations
5   relating to product authenticity?
6       A.   Which bullet point is that?
7       Q.   Under "Types of violations", about
8   "Amazon enforces sellers who violate..."
9           Do you see that?
10      A.   "Violations related to product
11  authenticity are categorized as intellectual
12  property violations".
13      Q.   And then --
14          So what does that mean to you?
15      A.   It means that if a product is not
16  authentic or inauthentic, that is an intellectual
17  property violation.
18      Q.   Like counterfeit.
19          Correct?
20      A.   Correct.
21      Q.   And then on the next page, if you take a
22  look at it, it has "Best Practices in Product
23  Authenticity and Quality".
24      A.   Correct.
25      Q.   Do you see that?

Page 58

1       A.   Yes.
2       Q.   And that's helping Amazon --
3           Do you understand Amazon to putting these
4   out, to help the sellers comply with Amazon's
5   guidelines?
6       A.   Yes.
7       Q.   And it's important for a seller, before
8   they start listing and selling products on this, to
9   be familiar with these guidelines.
10          Correct?
11      A.   Absolutely.
12      Q.   In fact, what does it say under the
13  paragraph under the head, "Best Practices in
14  Product Authenticity and Quality"?
15      A.   It says: All Amazon sellers are
16  responsible for complying with the law along with
17  Amazon's policies.  Customers trust that they can
18  buy with confidence on Amazon and receive authentic
19  products that arrive in the condition as
20  advertised.  In order to ensure that both sellers
21  and customers have the best experience, here are
22  some tips..."
23      Q.   Okay.
24          So would Solu-Med be required to be
25  complying with Amazon policies --

Page 59

1           MR. GOODMAN:  Objection.
2   BY MR. VINE:
3       Q.   -- based upon this document?
4           Were they required to comply with Amazon's
5   policies?
6       A.   All sellers, including Solu-Med, are
7   required to comply with Amazon policy.
8       Q.   I appreciate that.
9           I'm only asking about Solu-Med, so let me
10  just ask again.
11          Was Solu-Med required to comply with
12  Amazon's policies if it's --
13      A.   Yes.
14          MR. CUMMINGS:  Let him finish the question.
15  BY MR. VINE:
16      Q.   Was Solu-Med required to comply with
17  Amazon's policies if it's selling products on the
18  Amazon platform?
19      A.   Yes.
20          MR. GOODMAN:  Objection.
21          MR. VINE:  What's the form of the objection
22  for that?
23          MR. GOODMAN:  No foundation.
24          MR. VINE:  Okay.
25      Q.   What was the basis of your opinion on that,

Page 60

1   that they're requir -- that Solu-Med is required to
2   comply with Amazon policies?
3       A.   (No audible response).
4       Q.   This policy is one of them where it says
5   it.
6           Right?
7       A.   Yes.  I mean, every experienced seller on
8   Amazon knows that if you don't comply with the
9   policy, sooner or later, you will simply be
10  suspended from the platform.
11      Q.   And do you often see that sellers are
12  suspended from the platform?
13      A.   Yes, absolutely.
14          I mean, I have many friends in the Amazon
15  business that have had businesses suspended off
16  Amazon.
17          We have personally had Amazon accounts in
18  our history suspended on Amazon.
19          It's a known thing in -- in the Amazon
20  selling industry, that suspension is a very feared
21  thing because it's pretty hard to get back.
22          Amazon is very strict with their rules,
23  with following their rules.
24      Q.   So one of the source --
25          One of the items under Best Practices



PMK WILLIAM FIKHMAN 30(b)(6), Confidential
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE

December 10, 2019
73–76

Page 73

1    A. Correct.
2        MR. GOODMAN: Objection.
3    Q. So what happens if a product is not
4    authentic?
5    A. What do you mean?
6    Q. Is a product infringing on another
7    property's [sic] intellectual property rights if
8    it's not authentic?
9    A. Yes.
10    Q. Then under the anti-counter -- under
11    Amazon's Anti-Counterfeiting Policy, it has a
12    bullet point talking about consequences of selling
13    inauthentic products.
14        What are the consequences of selling
15    inauthentic products as defined by Amazon?
16    A. "If you sell inauthentic products, we may
17    immediately suspend or terminate your Amazon
18    selling account... destroy any inauthentic
19    products... and/or withhold payments to you".
20    Q. Okay.
21        Did that happen to Solu-Med?
22    A. Yes.
23    Q. And do you know why it happened to
24    Solu-Med?
25    A. I don't exactly know.

Page 74

1        Only Amazon knows why they suspended
2    Solu-Med.
3    Q. Okay.
4        You -- Amazzia reported that Solu-Med was
5    selling inauthentic and counterfeit products.
6    Right?
7    A. Yes. That, we did.
8    Q. Okay.
9    A. Can I add to that?
10        It usually -- For -- For --
11        The suspension of an account is usually
12    related to its history.
13        Like let's say you have a brand-new
14    account that has one intellectual property
15    violation. They would be instantly suspended.
16        But an account like Solu-Med, that was
17    probably running for many years with lots of
18    transactions, it would have taken multiple
19    complaints at the same time from different brands,
20    potentially, to -- to be shut down.
21    Q. So in Amazzia's experience, when does
22    Amazon shut down a storefront?
23    A. When they -- Again, it depends on history.
24        So if you have a newer storefront, one or
25    two violations could be enough.

Page 75

1        But if you have an aged storefront over
2    lots of transactions, hundreds or thousands of
3    transactions with some history, there could be a
4    multitude of policy violations that an investigator
5    looks at to shut down.
6    Q. Okay.
7        So, so far, we've seen a number of
8    different guidelines that are promulgated by
9    Amazon.
10        Correct?
11    A. Yes.
12    Q. Okay.
13        And, again, Amazzia relies on these
14    guidelines and rules and regulations that are
15    issued by Amazon when it reported violations of
16    Solu-Med in November of 2018 to Amazon?
17    A. Yes.
18        MR. GOODMAN: Objection.
19    BY MR. VINE:
20    Q. Okay.
21        Let me say it this way.
22        Did --
23        Because this is a form objection, so I've
24    got to redo it.
25        Did Amazzia rely on all of the exhibit

Page 76

1    Amazon guidelines that I've shown you when it
2    reported Solu-Med to Amazon in November of 2018?
3    A. Yes.
4    Q. Okay.
5        Now, I want to talk about -- expand upon
6    Amazzia's reporting strategy and methods for -- for
7    identifying sellers that are not authorized or
8    diluting some of these product.
9        Can you talk about that a little bit more?
10    A. What -- What, specifically, about it?
11    Q. What is the steps and processes -- process
12    that Amazzia goes by to identify an unauthorized
13    seller, and in this case Solu-Med, to determine
14    whether a product is counterfeit or inauthentic?
15        MR. CUMMINGS: I'd just like to interject
16    that I'd like to mark this section as confidential.
17        MR. VINE: Not a problem.
18        MR. CUMMINGS: Okay.
19        THE WITNESS: So in the beginning of our
20    engagement, based on a brand's rule, they'll tell
21    us who the authorized sellers are, and then
22    everybody else besides those authorized sellers
23    becomes unauthorized and is therefore selling
24    inauthentic product, because we know they're not
25    selling new items. So it's, therefore, inauthentic



PMK WILLIAM FIKHMAN  30(b)(6), Confidential
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE

December 10, 2019
85–88

**Page 85**

1    You're all set?
2    A.  Yes.  I just didn't want confusion around
3  is Solu-Med a seller.
4        We had it as Life and Health Source, and
5  that's --
6    Q.  Is Life and Health Source a seller?
7    A.  Yes.
8    Q.  And, obviously, the owner of Life and
9  Health Source, that would go -- the Seller Policy
10  and Code of Conduct would apply.
11        Correct?
12    A.  Yes.
13    Q.  Okay.
14        So the seller would be required to comply
15  with the Code of Conduct issued by Amazon?
16    A.  Absolutely.
17    Q.  And one of the items that Amazon has in the
18  first bullet point talks about providing accurate
19  information to its customers?
20    A.  Yes.
21    Q.  Would selling a product as new without a
22  warranty and a guarantee be inaccurate
23  information --
24    A.  No.
25    Q.  -- to its customers?

**Page 86**

1    A.  That would be a -- That would be
2  inaccurate.
3    Q.  Okay.
4        (Whereupon Exhibit 9 was marked
5        for identification)
6  BY MR. VINE:
7    Q.  Marked as Exhibit 9 is a complaint that was
8  submitted to Amazon on behalf of Youngblood.
9        After you've had an opportunity to review
10  this, let me know when you're done.
11    A.  I'm done.
12    Q.  Okay.
13        This is a complaint --
14        What is this?
15        Sorry.
16    A.  This looks like verbiage that may have
17  been used when we submit a complaint to Amazon.
18    Q.  All right.
19        I understand when you submit it, it's on a
20  website platform?
21    A.  Correct.
22    Q.  Okay.
23        And you input information within specific
24  categories?
25    A.  Correct.  We would insert this message

**Page 87**

1  into the box --
2    Q.  Okay.
3    A.  -- on a -- on the platform.
4    Q.  So it says:  "We have researched
5  Youngblood's listings and found the following ASINs
6  are in violation of our trademark..."
7        Do you see that?
8    A.  Yes.
9    Q.  Okay.
10        And that's Youngblood's trademark?
11    A.  I don't know for sure, but I'm assuming.
12    Q.  Okay.
13        This is an item that was drafted by
14  Amazzia.
15        Correct?
16    A.  I don't know for sure.
17        I'm -- I'm not deny -- disputing that, but
18  I -- I would need a -- if we want to know if that
19  trademarks --
20    Q.  I'm not asking that.
21    A.  Okay.
22    Q.  I changed --
23        Youngblood hired Amazzia for brand
24  protection.
25        Correct?

**Page 88**

1    A.  Yes.
2    Q.  Amazzia is the one who filed the complaint
3  about Solu-Med or Life and Health Source to Amazon.
4        Correct?
5    A.  Yes.
6    Q.  Okay.
7        And so if this is the complaint that Amazon
8  relied on, this would be the document that was
9  drafted by Amazzia.
10        Correct?
11    A.  Yes.
12    Q.  Okay.
13        And if you look, it talks about
14  authenticity.
15        Do you see that?
16    A.  Yes.
17    Q.  And the request was to remove the sellers
18  from selling just this product.
19        Correct?
20    A.  Correct.
21    Q.  Okay.
22        You weren't asking that the seller's store
23  be shut down.
24        Correct?
25    A.  Correct.



Case 2:19-cv-10874-SB-E   Document 217-3   Filed 09/09/22   Page 219 of 332   Page ID #:4287
Case 0:19-cv-60487-RKA   Document 107-17   Entered on FLSD Docket 03/06/2020   Page 70 of 127

PMK WILLIAM FIKHMAN  30(b)(6), Confidential                    December 10, 2019
SOLU-MED, INC., vs YOUNGBLOOD SKIN CARE                        169–170

Page 169

```
 1              DEPOSITION ERRATA SHEET

 2

 3   Page No.____Line No._____Change to: _____

 4   _____

 5   Reason for change: _____

 6   Page No.____Line No._____Change to: _____

 7   _____

 8   Reason for change: _____

 9   Page No.____Line No._____Change to: _____

10   _____

11   Reason for change: _____

12   Page No.____Line No._____Change to: _____

13   _____

14   Reason for change: _____

15   Page No.____Line No._____Change to: _____

16   _____

17   Reason for change: _____

18   Page No.____Line No._____Change to: _____

19   _____

20   Reason for change: _____

21   Page No.____Line No._____Change to: _____

22   _____

23   Reason for change: _____

24   SIGNATURE:_____DATE:_____

25        [WILLIAM FIKHMAN] [JOB NO. J4663289]
```

Page 170

```
 1   STATE OF CALIFORNIA    )
                            )   ss.
 2   COUNTY OF LOS ANGELES  )

 3        I, SUSAN POBOR, Certified Shorthand Reporter

 4   No. 5132 for the State of California, do hereby

 5   certify:

 6        That prior to being examined, the witness named

 7   in the foregoing deposition, was duly sworn to

 8   testify the truth, the whole truth, and nothing but

 9   the truth;

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced by me to typewritten form and

13   that the same is a true, correct, and complete

14   transcript of said proceedings.

15        Before completion of the deposition, review of

16   the transcript [ ] was [ ] was not requested.  If

17   requested, any changes made by the deponent (and

18   provided to the reporter) during the period allowed

19   are appended hereto.

20        I further certify that I am not interested in

21   the outcome of the action.

22        Witness my hand this 15th day of December,

23   2019.

24

25            Susan Pobor, CSR No. 5132
```



# Exhibit 35

**Name and Contact Info of entity that submitted take down notice**:

Complaint ID 5518323151 submitted by RO contact: brandprotection@ybskin.com;
Brand Name Youngblood.


"Hello,

We have researched Youngblood's listings and found the following ASINs are in violation of our trademark, 3812755.

• Counterfeit products are being sold on the following listings

• Please immediate action and remove these sellers currently listing counterfeit product.

According to Amazon's robust and aggressive anti-counterfeit policy, sellers must list items that match the detail pages exactly. The indicated sellers are not selling the authentic products as shown in the ASIN(s) referenced.

We know that Amazon takes product authenticity very seriously and Amazon requires sellers to list items that exactly match the detail pages. Therefore, we respectfully request that Amazon immediately and proactively remove these sellers from the mentioned ASIN(s) and prohibit these sellers from listing against these ASIN(s) in the future.


Thank You,

Youngblood


PLFS EXHIBIT _5_ FOR ID
WENDY J. WRIGHT, CSR
DATE __12-9-19__
WITNESS __Toth__
PAGE __1__ OF __1__

CONFIDENTIAL AMZN_00003

Exhibit 36

| | |
|---|---|
| **From:** | Antoine Liu |
| **Sent:** | Tuesday, April 24, 2018 9:31 AM PDT |
| **To:** | Shane De La Cruz |
| **CC:** | Brand Protection |
| **Subject:** | RE: Market Place Report 0423 |

Hi Shane

Thanks for your response. While can I get prediction if it will be removed this week? Cause now our promotion plan are all postponed or canceled because of the price.

Best Regards
-------------------------
**Antoine**



---

**From:** Shane De La Cruz <shane@amazzia.com>
**Sent:** 2018年4月23日 16:54
**To:** Antoine Liu <antoine.liu@tp-link.com>
**Cc:** Brand Protection <brandprotection@amazzia.com>
**Subject:** RE: Market Place Report 0423

Good Afternoon Antoine,

We will have ▮▮▮▮▮▮ added to the whitelist and send out any necessary retractions.

As for Universal Goods and Sales, they were last reported earlier today. Since January 12th, they have been reported a total of 47 times and have been removed 5 times. Currently, they are only on 1 listing.

Thank you,

**Shane De La Cruz** | Brand Ambassador
818.928.3844 | www.amazzia.com
*Your partner in brand protection, growth, and distribution.*



---

**From:** Antoine Liu <antoine.liu@tp-link.com>
**Sent:** Monday, April 23, 2018 4:24 PM
**To:** Shane De La Cruz <shane@amazzia.com>
**Cc:** Brand Protection <brandprotection@amazzia.com>
**Subject:** Market Place Report 0423

TP000005

Hi Shane

Good afternoon!

Please help to add one reseller [Nonresponsive] into whitelist and retract all the claims related.

And is there any update regarding Universal Goods and Sales? Thanks.

### ASIN: B01DXVK3KY



Best Regards

------------------------

**Antoine**



**CONFIDENTIAL**

# Exhibit 37

**Randolph Gaw**

| | |
|---|---|
| **From:** | Heather Auyang <Heather.Auyang@ltlattorneys.com> on behalf of Heather Auyang |
| **Sent:** | Wednesday, August 17, 2022 12:07 PM |
| **To:** | Victor Meng; Prashanth Chennakesavan; Patice Gore |
| **Cc:** | Chris Frost; ashley@wgfcounsel.com; Debora Duran; Randolph Gaw; Mark Schlachet; Mark Poe; Joe Tuffaha |
| **Subject:** | RE: Thimes Solutions Inc. v TP-Link: 30(b)(6) Depo Notice |

Counsel,

Thimes noticed the deposition of Antoine Liu for August 19.  Mr. Liu is unavailable.  We will revert with available dates.

Thanks,
Heather

---

**From:** Victor Meng <vmeng@gawpoe.com>
**Sent:** Monday, August 8, 2022 12:02 PM
**To:** Heather Auyang <Heather.Auyang@ltlattorneys.com>; Prashanth Chennakesavan <Prashanth.Chennakesavan@ltlattorneys.com>; Patice Gore <patice.gore@ltlattorneys.com>
**Cc:** Chris Frost <chris@wgfcounsel.com>; ashley@wgfcounsel.com; Debora Duran <debora@wgfcounsel.com>; Randolph Gaw <rgaw@gawpoe.com>; Mark Schlachet <markschlachet@me.com>; Mark Poe <mpoe@gawpoe.com>
**Subject:** RE: Thimes Solutions Inc. v TP-Link: 30(b)(6) Depo Notice

> [EXTERNAL EMAIL] This email originated from outside of the **LTL Attorneys** organization. **DO NOT CLICK** links or open attachments unless you recognize the sender and know the content is safe.

Hi all,

Attached please find Thimes's depo notice of Antoine Liu.  Thimes will re-notice the 30(b)(6) depo of TP-Link, currently noticed for August 16, 2022, to another date.

Thanks,
Victor

Victor Meng
Gaw | Poe LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Direct: 415.895.0862
Main: 415.766.7451
Fax: 415.737.0642

---

**From:** Victor Meng <vmeng@gawpoe.com>
**Sent:** Thursday, June 23, 2022 12:55 PM
**To:** 'Heather Auyang' <Heather.Auyang@ltlattorneys.com>; 'Prashanth Chennakesavan' <Prashanth.Chennakesavan@ltlattorneys.com>; 'Patice Gore' <patice.gore@ltlattorneys.com>
**Cc:** 'Josh Waldman' <jwaldman@bkcglaw.com>; 'M. Michelle Rohani' <mrohani@bkcglaw.com>; 'Randolph Gaw'

<rgaw@gawpoe.com>; 'Mark Schlachet' <markschlachet@me.com>; Mark Poe <mpoe@gawpoe.com>

**Subject:** Thimes Solutions Inc. v TP-Link: 30(b)(6) Depo Notice

Hi all,

Attached please find Thimes's 30(b)(6) depo notice to TP-Link.

Thanks,
Victor


Victor Meng
Gaw | Poe LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Direct: 415.895.0862
Main: 415.766.7451
Fax: 415.737.0642

Exhibit 38

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (*pro hac vice*)
 markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

THIMES SOLUTIONS INC.

                    Plaintiffs,

        v.

TP-LINK USA CORPORATION,
and AUCTION BROTHERS, INC.
d/b/a AMAZZIA

                    Defendant.

Case No. 2:19-CV-10374-SB-E

**DECLARATION OF AVRAHAM EISENBERG IN OPPOSITION TO TP-LINK'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

Judge: Hon. Stanley Blumenfeld, Jr.

Date:        Friday Oct. 7, 2022
Time:        8:30 a.m.
Courtroom:   6C

I, Avraham Eisenberg, declare as follows:

1.      I am the founder and owner of plaintiff Thimes Solutions Inc. ("Thimes").  If called to testify at a hearing or trial, I could and would testify to the following, which is based on my personal knowledge.  I submit this declaration in support of Thimes's opposition to defendant TP-Link USA Corporation's motion for summary judgment or partial summary judgment.

2.      Thimes began selling products on the Amazon Marketplace in August 2015.  Thimes was incorporated in November 2016.  Aside from temporary suspensions, Thimes continuously sold on the Amazon Marketplace starting in 2016 until its expulsion on August 27, 2018.  Thimes began selling TP-Link products on the Amazon Marketplace on or around January 13, 2018.

3.      Thimes increased its business on Amazon each year.  Thimes's sales revenue on Amazon increased from $1,178,761 in 2017 to $1,966,639 in 2018 (which, again, was cut short before the end of the third quarter that year).  Thimes's net profit increased from $226,003.83 in 2017 to $376,356.56 in 2018.

4.      Thimes sold products directly to Amazon Vendor Express, as reflected in the purchase orders Thimes produced in this litigation bearing Bates labels THIMES486658, THIMES508144, THIMES466632, THIMES483643, THIMES479847, THIMES524239, and THIMES466612, true and correct copies of which are attached as **Exhibit 39**.

5.      I am familiar with Amazon's "Buy Box" option, based on my experience of selling products through Thimes on the Amazon Marketplace. Amazon's "Buy Box" is a purchasing option for Amazon customers to automatically add certain products to their shopping cart.

6.      How the "Buy Box" works is that when an Amazon customer is looking at a product on Amazon's website, that customer often has the option to purchase the product by clicking the "Add to Cart" or "Buy Now" option.  That is the "Buy Box."  When a customer clicks on those options, the order is fulfilled by

EISENBERG DECL. IN OPP.
TO TP-LINK'S MSJ
CASE NO. 2:19-CV-10374-SB-EX

1   the Amazon seller that has qualified for that "Buy Box" and the customer never

2   even visits the seller's page or specific listing for that product.  It appears as if the

3   customer is buying directly from Amazon, but in reality, the customer is buying

4   from the "Buy Box" seller and the order is fulfilled by Amazon.

5          7.      Below is an example of an Amazon listing for the TP-Link AC5400

6   wi-fi router.  The "Buy Box" literally looks like a vertical box to the right of the

7   listing, where it has the "Add to Cart" and "Buy Now" buttons.

8

9   

10

11

12

13

14

15

16

17

18

19

20

21   //

22   //

23   //

24

25

26

27

28

EISENBERG DECL. IN OPP.
TO TP-LINK'S MSJ
CASE NO. 2:19-CV-10374-SB-EX

8.     Below is another part of that same Amazon listing, but further down on the page.  Below the "Buy Box" is a smaller box that lists "Other Sellers on Amazon."  These are alternate sources to buy the same product (here, the TP-Link ACT5400 wi-fi router) from sellers that did not qualify for the "Buy Box."



9.     Thimes sold over 175,000 products to customers on the Amazon Marketplace with a 98% lifetime positive customer feedback rating.  As a result of that performance-based metric, Thimes regularly qualified for Amazon's "Buy Box" option when selling many of the different products Thimes listed and offered for sale on the Amazon Marketplace.  Many of Thimes's sales on the Amazon Marketplace occurred through the Buy Box option.

10.     Examples of products that Thimes sold through the "Buy Box" include, but are not limited to: Apple MD827LL/A EarPods with Remote and Mic; Samsung Fast Charger EP-TA20JBE and USB Type C Cable EP-DG950CBE for Galaxy S8; VTech CS6719-2 DECT 6.0 Phone with Caller ID/Call Waiting, Silver/Black with 2 Cordless Handsets; VTech DECT 6.0 Expandable Cordless Phone with Bluetooth Connect to Cell and Answering System, Silver/Black with 3

Handsets and 1 Cordless Headset; Panasonic EW3109W Portable Upper Arm Blood Pressure Monitor White/Grey; Paw Patrol Figure Set 6 Piece; Apple Lightning to USB Cable (2 Pack); Apple A1385 USB Cube Adapter 5W Wall Charger for iPod; iPad, iPhone 5/5c/5s/6/6s/7 Plus; Panasonic Wired Earphones - Wired , Red (RP-HJE125-R); Zootopia Judy's Carrot Recorder And Badge.

11.     Thimes had many repeat customers on the Amazon Marketplace. In reviewing its sales records, which were produced in this litigation bearing Bates labels THIMES001367, THIMES001368, THIMES001369, THIMES001370, and THIMES001371, I have identified the following customers that had purchased various products from Thimes between 4 and 17 times: Daniel Robertson, Direct Ordering, Kim Allen, Debbie [last name unknown], Tara Bingham, Frances G. Baker, Timothy John Helland, Omg Procurement, Brankstore Ood, Phyllis Smith-Crossley, Nery Ramirez, Camille Hansen, Paula Tullos, Zeeshan Khan, Amy Overton, David Mcdonald, Sam [last name unknown], Meg Sakka, Kevin Crabtree, Melissa [last name unknown], H. Buehner, Sneha Kabaria, Rigoberto Flores, Jennifer A. Holme, Matthew Roos, Adriana Joyner, Hon C Wong, Steve Pipes, Bridget Estrada, Jon D Friedland, Lisa Hamlin, Nick Santos, Debbie Drobot, Ashley Chan, Kaori Johnson, Christina Ditore, Levi Varner, Guy Underwood, Susan A Floyd, Robert McCormick, Barbara Alesch, Hammad Malik, Lisa [last name unknown], Jessica Wilder, Herbert Hamilton, Randy Black, Cart2india Online, Michael G Argiro, Rick Desmarteau, Wireless Revolution, Zeke Rierson, Mark Zwicker, Jonathan Kirk, Michelle Jenkinson, Hartin, Inc, Yin Kin Yep, Emilia [last name unknown], Joanna Majewska, Katie Pfalz, Laura Simmons-Simon, Annette Marino, Cheryl Klase, Belinda Rivers, Deborah A. Burkholder, Donna F McCreary, Reagann Sweaks, William Valle, Christopher A. Schussler, Kin Yeung, John L Becker, Jennifer M Liebmann, Cynthia Ramey, Alen Boksan, Southwest Community Center, Vic [last name unknown], Igor Golden, Paula Gonzalez, Tamatha Johnson, David Munroe, Fahim Aziz, Nixon Nishimura, Linda

[last name unknown], Christine Sato, Omid Davidyan, Katie P, and David Chen.

12.    Furthermore, in reviewing those same sales records, I have identified approximately 4,092 additional customers that had purchased various products from Thimes between 2-3 times.  The names of these specific customers are in the sales records themselves.  These records exist as Excel spreadsheets and would be extremely voluminous to attach to this declaration, so I am having electronic copies of these records lodged with the Court as **Exhibits 40-44**, respectively.

13.    Numerous analysts and Amazon Marketplace consultants have estimated that between 75-85% of all sales on Amazon take place through the "Buy Box."  Examples of such analysts include: https://sarasanalytics.com/blog/amazon-buybox/; https://www.bigcommerce.com/blog/win-amazon-buy-box/#the-changing-buy-box; and https://www.webfx.com/blog/marketing/amazon-buy-box-algorithm/.  The vast majority of Thimes's sales in 2018 took place through the "Buy Box."

14.    In my opinion, since Thimes regularly qualified for the "Buy Box," every customer in North America searching on the Amazon Marketplace for any of the many consumer products that Thimes had in stock in its inventory was effectively one of its customers.  Thimes's expulsion from the Amazon Marketplace meant that it lost the opportunity to transact with those customers.

15.    At all times, Thimes has only sold genuine products on the Amazon Marketplace, including TP-Link products.

16.    Thimes would buy, in bulk, factory-sealed, new consumer products from reputable wholesalers and liquidators.  Those products would be delivered directly to Amazon's warehouses and Amazon would, in turn, handle all shipping of those products to Thimes's customers through Amazon's "Fulfillment by Amazon" service.

17.    By 2018, due to my lengthy history in selling on Amazon, I was receiving these bulk purchase offers on a repeated basis from multiple sources.

18.     The logistical services offered by Amazon were not similarly offered by its competitors like Wal-Mart and eBay.  Without Amazon's "Fulfillment by Amazon" service, Thimes would have to maintain employees and warehousing to handle its logistics.

19.     If Thimes had to pay overhead costs for employees and warehousing, it would not be able to stay cost-competitive against sellers that have existing logistics departments, and thus would not have been able to profitably do business on Amazon itself.

20.     Thimes used an Amazon-endorsed software tool called InventoryLab. InventoryLab's website can be found here: https://inventorylab.com/.

21.     Among other services, InventoryLab generates financial reports for Amazon sellers by pulling and syncing the seller's data from Amazon's Merchant Web Services Application Programming interface.  Copies of these reports generated by InventoryLab for Thimes were provided by me to Thimes's expert witness, Dr. Alan Goedde.

22.     Prior to its expulsion from the Amazon Marketplace, Thimes did negligible business outside of the Amazon Marketplace.

23.     In addition to my personal experience in selling on the Amazon Marketplace for several years, I have also spoken to numerous high-volume Amazon sellers about their experiences in selling on the Amazon Marketplace.  I am part of a private group of sellers who do at least $1 million in annual sales on Amazon and regularly correspond with its members, both in writing and in-person at various events and meetups held by the group.

24.     I have also spoken at two different conferences regarding Amazon and have met and spoken with various Amazon employees at those conferences and at other conferences for Amazon sellers.

25.     One of the topics that I have frequently discussed with these people who are knowledgeable about Amazon's workings is the filing of trademark

infringement / counterfeiting allegations by brands against Amazon resellers.  It is a topic that has come up frequently, because more and more brands have been engaging in that tactic against "unauthorized" resellers.

26.     Based on my personal knowledge and my discussions with others, it is my understanding that the amount and frequency of trademark infringement / counterfeiting allegations plays a large factor in Amazon deciding to suspend or permanently expel a seller from the Amazon Marketplace.  It has not gone unnoticed by me, or by others, that Amazon will suspend or permanently expel a seller shortly after receiving a series of such complaints against them, even though the seller has not done anything differently compared to its normal operations.

27.     Regarding Amazon's May 5, 2018 notice concerning Complaint ID 5027462061, that appeared to have been sent in error because Thimes has never listed or sold any of the products identified by Amazon in that notice.  In reviewing Thimes's records reflecting all products it has ever carried and sold, which were produced in this litigation bearing Bates labels THIMES00256 and THIMES00257, I have confirmed that Thimes has never carried any of those products.  These records exist as Excel spreadsheets and would be extremely voluminous to attach to this declaration, so I am having electronic copies of these records lodged with the Court as **Exhibits 45-46**, respectively.

28.     I contemporaneously notified Amazon that Thimes had never carried any of the products listed in its May 5, 2018 notice, as reflected in the document Thimes produced in this litigation bearing the Bates label THIMES184331-33, a true and correct copy of which is attached as **Exhibit 47**.  In any event, Amazon apparently did not suspend Thimes on May 5, as Thimes's sales records show that it continued to have sales on May 6 and May 7.

29.     There were many times where Amazon sent Thimes erroneous trademark violation notices.  One such example is reflected in the document Thimes produced in this litigation bearing the Bates label THIMES185565, a true and

1    correct copy of which is attached as **Exhibit 48**.

2         30.    Regarding Amazon's trademark violation notice to Thimes on May 7,

3    2018, it subsequently identified TP-Link as the source of that complaint, as

4    reflected in the document Thimes produced in this litigation bearing the Bates label

5    THIMES00304, a true and correct copy of which is attached as **Exhibit 49**.

6         31.    Amazon reinstated Thimes to the Amazon Marketplace on May 11,

7    2018, as reflected in the document Thimes produced in this litigation bearing Bates

8    label THIMES00305, a true and correct copy of which is attached as **Exhibit 50**.

9         32.    Regarding Amazon's series of notices concerning Complaint IDs

10   5032701841, 5035577421, 5039733671, 5041593911, 85900737, and 5028597371,

11   none of the identified products in these notices were ever listed or sold by Thimes.

12   In reviewing Thimes's records reflecting all products it has ever carried and sold,

13   which were produced in this litigation bearing Bates labels THIMES00256 and

14   THIMES00257 (and again, manually filed with the Court as **Exhibits 45-46**), I

15   have confirmed that Thimes has never carried any of those products.

16        33.    After Thimes's reinstatement on May 11, 2018, there were no further

17   notices sent by Amazon erroneously stating that Thimes was selling counterfeit

18   products that it did not even carry.

19        34.    As for Thimes's June 28, 2018 suspension from the Amazon

20   Marketplace for purported "data mining," Thimes appealed that suspension as

21   reflected in the document Thimes produced in this litigation bearing Bates label

22   THIMES00264, a true and correct copy of which is attached as **Exhibit 51**.

23        35.    Amazon subsequently reinstated Thimes's account after Thimes

24   submitted its appeal, as reflected in the document Thimes produced in this litigation

25   bearing Bates label THIMES00306, a true and correct copy of which is attached as

26   **Exhibit 52**.

27        36.    In response to Amazon's August 3, 2018 notice, Thimes promptly

28   responded to Amazon by providing copies of invoices and receipts from its supplier

and contact information for its supplier.  Thimes also provided Amazon with a "Plan of Action to prevent future authenticity concerns[.]"  Thimes's responses is reflected in the document Thimes produced in this litigation bearing Bates label THIMES00604, a true and correct copy of which is attached as **Exhibit 53**.

37.     3PM Solutions retracted its intellectual property complaint against Thimes, as reflected in the document Thimes produced in this litigation bearing Bates label THIMES00066, a true and correct copy of which is attached as **Exhibit 54**.

38.     On January 19, 2018, I received an e-mail notification from Amazon that TP-Link had filed an accusation that Thimes was selling counterfeit TP-Link AC5400 wi-fi routers.  I received another complaint on January 21, 2018.  By my count, I received at least 28 separate notifications from Amazon between January 19, 2018 and June 21, 2018.

39.     After receiving these notifications about TP-Link, I began reviewing Thimes's sales records to see if any its sales of TP-Link products had been made to TP-Link itself.  Attached as **Exhibit 55** is a true and correct copy of a screenshot taken at the time from Thimes's Priceyak software account, which was previously filed as ECF No. 168-2 in this action.  As reflected in Exhibit 55, on January 18, 2018, a "Tom Lei" had ordered two TP-Link AC5400 wi-fi routers for delivery to 10725 Sierra Avenue, Suite #100, Fontana, CA 92337.

40.     Attached as **Exhibit 56** is a true and correct copy of an e-mail sent to me by Amazon on January 19, 2018, which was previously filed as ECF No. 168-4 in this action.  Exhibit 56 reflects that Mr. Lei's order of 2 TP-Link AC5400 wi-fi routers was shipped out by Amazon on January 19, 2018, or the same day that TP-Link submitted its first counterfeiting complaint.

41.     Attached as **Exhibit 57** is a true and correct copy of UPS's delivery confirmation of Mr. Lei's order (it has the same tracking identification number as is shown in Exhibit 56), which was previously filed as ECF No. 168-3 in this action.

EISENBERG DECL. IN OPP.
TO TP-LINK'S MSJ
CASE NO. 2:19-CV-10374-SB-EX

The delivery confirmation shows that Mr. Lei's address was that of a TP-Link office and that his order was delivered on January 22, 2018.  In other words, TP-Link submitted its first two counterfeiting complaints before it even received, let alone inspected, the TP-Link AC5400 wi-fi routers it had ordered from Amazon.

42.     Thimes is using Dr. Goedde to present an expert opinion to calculate its lost profits resulting from TP-Link's actions in helping to get Thimes permanently suspended from the Amazon Marketplace.  But if Dr. Goedde is not permitted to testify for any reason, I am also prepared to offer my opinion as to Thimes's damages based on my knowledge and experience as Thimes's owner-operator.

43.     I have an opinion as to the total lost profits that Thimes should be entitled to because of TP-Link's actions in causing Thimes to be permanently suspended from the Amazon Marketplace, as described below.

44.     At the time of Thimes's suspension in 2018, it was making approximately $100,000 in net monthly profits.  For example, in June 2018 alone, despite being suspended for multiple days, Thimes had $102,829 in net profit.

45.     During 2017 and 2018, Thimes was plowing substantially all of its profits into purchasing additional inventory, in order to grow sales. I went to multiple trade shows each year to meet new suppliers (including Toy Fair New York and ASD Market Week Trade Show).

46.     Because of my efforts to meet new suppliers, Thimes always had adequate supplies of consumer products and I was able to spend all of Thimes's available capital on inventory.

47.     From January 2018 through August 2018, Thimes had purchased about $1.3 million in inventory.

48.     As of Thimes's permanent suspension in August 2018, it still had around $500,000 in inventory left.

49.     As I explained earlier, I relied primarily on Amazon's "Fulfillment by

- 10 -

Amazon" service for logistics, warehousing, shipping, payments, customer service, and customer returns.  I also relied on several third-party logistics providers.  All of this meant that Thimes did not need to maintain any warehouses, and third parties handled everything except for procurement of products.

50.     Because of Amazon's FBA service and these third-party logistics providers, I could run Thimes by myself with no employees and with needing the help of only two contractors.

51.     Thus, prior to Thimes's permanent suspension, all I needed to do in order to keep Thimes's business growing was to obtain enough capital to purchase inventory, finding suppliers that had enough suitable inventory, and handling the initial logistics to get the products shipped to an Amazon warehouse.  I've already explained how I handled the other functions, but with respect to capital, in addition to using cash generated by Thimes, I also had access to loans.  In 2019, Thimes obtained over $300,000 in additional financing despite having been permanently suspended from Amazon.

52.     Therefore, in my opinion, if Thimes had not been permanently suspended from Amazon, it would have likely continued its growth trajectory.  By the end of 2018, even assuming no additional growth due to reinvested profits and sales increases during Q4 2018, Thimes would likely have made at least $100,000 in monthly net profits from August 2018 – December 2018.

53.     With these profits, Thimes would have been well positioned to begin 2019 with an inventory budget of $1 million.  With a 100% increase in inventory, based on historical performance, Thimes would have had at least a 50% increase in sales and profits.  This would mean about $700,000 in average monthly sales, and $150,000 in monthly net profits.

54.     But to be conservative, I'll reduce my monthly net profit estimate for 2019 from $150,000 to $125,000.  That means that, in my opinion, Thimes had lost profits of $500,000 for 2018 (i.e., $100,000 each month from August to December)

1    and an additional $1.5 million in lost profits for 2019.

2         55.    Including the $300,000 in additional financing that I actually received

3    in 2019, plus the free cash flow from 2018's sales, I believe Thimes would have

4    increased its inventory budget in 2020 to $1.5 million.  At that inventory budget,

5    Thimes would have had sales of $1 million per month and would have had about $2

6    million in profit for 2020.  This assumes I would have hired about 2 employees to

7    help with Thimes's increasing sales, thereby reducing Thimes's margins a little.

8         56.    Thimes would have been able to increase its inventory budgets by an

9    additional $500,000 per year in 2021 and 2022, based on the trajectory it was on.

10        57.    In 2021, with an inventory budget of $2 million, Thimes would have

11   had monthly sales of $1.35 million and would have had about $2.5 million in profit

12   for that year.

13        58.    In 2022, with an inventory budget of $2.5 million, Thimes would have

14   been able to sell $1.6 million per month, and thus earned about $3 million in profit

15   for the year.

16        59.    Thus, it is my opinion that, for the reasons I've given, Thimes would

17   have had total lost profits of $9.5 million from August 2018 through December

18   2022.  My opinion does not even factor in any increase in sales due to the COVID-

19   19 pandemic, which as most people understand, led to dramatic increases in sales

20   revenue for e-commerce businesses and for Amazon in particular.  For example, in

21   Amazon's 2021 annual report, it disclosed that its net product sales in from the

22   2019 to 2021 fiscal years increased from $160.4 billion to $215.9 billion to $241.7

23   billion.

24        60.    I also have an opinion as to the total lost profits that Thimes would

25   have had just from selling TP-Link products if Thimes had not been permanently

26   suspended.

27        61.    I regularly received offers from my suppliers to buy large quantities of

28   many different new or certified refurbished TP-Link products.  Attached as **Exhibit**

**58** is a true and correct copy of an e-mail sent to me by The Surplus Company on September 5, 2018, and which was produced by Thimes in this litigation as THIMES01325.  Exhibit 58 is just one of the many examples of supply offers for TP-Link products that I regularly received.

62.     Moreover, as Thimes's business continued to grow, I would have met and worked with additional suppliers, many of whom would have carried TP-Link products.

63.     Most of Thimes's TP-Link products, apart from the AC 5400 wi-fi router, sold out over approximately a month.  For example, based on Thimes's sales records, from February 24, 2018 through March 27, 2018, it earned a profit of $3,869.53 from selling TP-Link products.

64.     The AC5400 wi-fi router had sales over several different periods, as it was repeatedly de-listed from Amazon due to TP-Link's complaints.  Based on Thimes's sales records, there were 30 days in 2018 were Thimes sold at least 3 units of this product, for a total of $10,431 in net profit.

65.     Thimes's actual profit on sales of TP-Link products during 2018 was $17,486, despite being repeatedly de-listed from Amazon.

66.     Had Thimes been able to continuously sell TP-Link products on Amazon throughout all of 2018, it would have had about $173,083 in net profit from those products.  This is based on an extrapolation from the periods that Thimes did sell TP-Link products during that year and does not assume any sales growth during that year.  Subtracting the $17,486 in actual profits from this amount, my opinion is that Thimes had $155,597 in lost profits in 2018 just from not being able to sell TP-Link products.

67.     Based on the same sales growth that I described above, I think total lost profits from not being able to sell TP-Link products would have been $1,777,500 from 2019 through the end of 2022.  Thus, my opinion is that Thimes had $1,933,097 in lost profits just from not being able to sell TP-Link products.

1       I declare under penalty of perjury under the laws of the United States that the

2   foregoing is true and correct.  Executed on September 5, 2022, at San Juan, Puerto

3   Rico.

4

5   *Avraham Eisenberg*
                _____

6                   Avraham Eisenberg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 39

# You have a new PO from Vendor Express!

Mon, Mar 6, 2017 at 4:21 AM EST (GMT-05:00)

**From: Amazon Vendor Express <vendor-express-no-reply@amazon.com>**
To: avi <613ike@gmail.com>



Products    Orders    Payments    Reports

## You have a new PO from Vendor Express!

Hello avi,

You have a new purchase order that's **due in three days!** Please confirm and ship your products to us as soon as possible. To ensure your products are packed correctly, review our prep instructions.

This purchase order incorporates the Amazon standard terms and any signed agreement between you and Amazon. For more information, see the Business Agreement. For more information on purchase orders, visit the Help Center.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



THIMES466612

# You have a new PO from Vendor Express!

Wed, Mar 1, 2017 at 3:49 AM EST (GMT-5:00)

**From:** Amazon Vendor Express <vendor-express-no-reply@amazon.com>
To: avi <613ike@gmail.com>



Products        Orders        Payments        Reports

## You have a new PO from Vendor Express!

Hello avi,

You have a new purchase order that's **due in three days!** Please confirm and ship your products to us as soon as possible. To ensure your products are packed correctly, review our prep instructions.

This purchase order incorporates the Amazon standard terms and any signed agreement between you and Amazon. For more information, see the Business Agreement. For more information on purchase orders, visit the Help Center.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



# You have a new PO from Vendor Express!

Mon, Jan 9, 2017 at 8:15 AM EST (GMT-05:00)

**From: Amazon Vendor Express <vendor-express-no-reply@amazon.com>**
To: avi <613ike@gmail.com>



Products      Orders      Payments      Reports

## You have a new PO from Vendor Express!

Hello avi,

You have a new purchase order that's **due in three days!** Please confirm and ship your products to us as soon as possible. To ensure your products are packed correctly, review our prep instructions.

This purchase order incorporates the Amazon standard terms and any signed agreement between you and Amazon. For more information, see the Business Agreement. For more information on purchase orders, visit the Help Center.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



THIMES479847

# You have a new PO from Vendor Express!

Mon, Feb 27, 2017 at 4:20 AM EST (GMT-05:00)

**From: Amazon Vendor Express <vendor-express-no-reply@amazon.com>**
To: avi <613ike@gmail.com>



Products     Orders     Payments     Reports

## You have a new PO from Vendor Express!

Hello avi,

You have a new purchase order that's **due in three days!** Please confirm and ship your products to us as soon as possible. To ensure your products are packed correctly, review our prep instructions.

This purchase order incorporates the Amazon standard terms and any signed agreement between you and Amazon. For more information, see the Business Agreement. For more information on purchase orders, visit the Help Center.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



THIMES483643

# You have a new order from Amazon Vendor Express!

Wed, Jan 4, 2017 at 1:12 AM EST (GMT-05:00)

**From: Amazon Vendor Express <vendor-express-no-reply@amazon.com>**
To: avi <613ike@gmail.com>



Products     Orders     Payments     Reports

## You have a new order from Vendor Express!

Hello avi,

Congratulations on setting up a new product in Amazon Vendor Express. This is a reminder that your order from us is due. If you haven't done so already, please confirm and ship your products as soon as possible. You can do this from the Orders page in your Amazon Vendor Express account. This will help us determine customer demand more quickly.

If you are not able to fill the entire order, send us what you can using the prepaid UPS shipping label provided through Amazon Vendor Express. Our fulfillment centers use the UPS tracking system to identify the origin and contents of your shipment. To ensure your products are packed correctly, review our prep instructions.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



# You have a new order from Amazon Vendor Express!

Tue, Jan 17, 2017 at 5:22 AM EST (GMT-05:00)

**From: Amazon Vendor Express <vendor-express-no-reply@amazon.com>**
To: avi <613ike@gmail.com>



Products     Orders     Payments     Reports

## You have a new order from Vendor Express!

Hello avi,

Congratulations on setting up a new product in Amazon Vendor Express. This is a reminder that your order from us is due. If you haven't done so already, please confirm and ship your products as soon as possible. You can do this from the Orders page in your Amazon Vendor Express account. This will help us determine customer demand more quickly.

If you are not able to fill the entire order, send us what you can using the prepaid UPS shipping label provided through Amazon Vendor Express. Our fulfillment centers use the UPS tracking system to identify the origin and contents of your shipment. To ensure your products are packed correctly, review our prep instructions.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



# You have a new PO from Vendor Express!

Mon, Feb 20, 2017 at 4:20 AM EST (GMT-05:00)

**From: Amazon Vendor Express <vendor-express-no-reply@amazon.com>**
To: avi <613ike@gmail.com>



Products     Orders     Payments     Reports

## You have a new PO from Vendor Express!

Hello avi,

You have a new purchase order that's **due in three days!** Please confirm and ship your products to us as soon as possible. To ensure your products are packed correctly, review our prep instructions.

This purchase order incorporates the Amazon standard terms and any signed agreement between you and Amazon. For more information, see the Business Agreement. For more information on purchase orders, visit the Help Center.

Thank you,
**Amazon Vendor Express**

*This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.*



THIMES524239

Exhibit 47

# Re: "[UNVERIFIED SENDER]Re: Your Amazon.com selling privileges have been removed

---

**From: Amazon.in <nobody@bounces.amazon.com>**       Sat, May 5, 2018 at 1:58 PM EDT (GMT-04:00)
To: Avi Eisenberg <avi@thimessolutions.com>

---

Hello,

We received your email. Amazon respects the intellectual property rights of others. After we process your notice, we will notify you by email. This usually takes 1 to 2 days.

P.S. You received this message because Amazon.com received the following message:

Date: Sat, 5 May 2018 13:57:05 -0400
From: Avi Eisenberg <avi@thimessolutions.com>
To: Amazon <notice@amazon.com>, notice-dispute <notice-dispute@amazon.com>,
    seller-performance@amazon.com, copyright@amazon.com
Subject: "[UNVERIFIED SENDER]Re: Your Amazon.com selling privileges have been removed

We have not listed any of these. Please provide us with the date these were allegedly offered by us, and the order id of any test buys. Or, remove from our account if the complaint is determined to be in error.


On Sat, May 5, 2018 at 1:41 PM, Amazon <notice@amazon.com> wrote:

> Hello,
>
> We received a report from a rights owner concerning the authenticity of
> the products listed at the end of this email. We removed this content, but
> we may let you list these product(s) again if we receive a retraction of
> the complaint from the rights owner:
>
> karin@yellowbp.com
> dr.seuss@ybrandprotection.com
>
> If the rights owner agrees to retract their complaint, they must send the
> retraction to us at notice-dispute@amazon.com.
>
> If you believe that the reported content is authentic, you may email
> notice-dispute@amazon.com with proof of authenticity. This includes, but
> is not limited to, an invoice or Order ID.
>
> We consider allegations of intellectual property infringement a serious
> matter. If we receive more complaints about your listings, we may not allow
> you to sell on Amazon.com.
>
> To learn more about this policy, search for &ldquo;Intellectual Property
> Violations&rdquo; in Seller Central Help (https://sellercentral.amazon.
> com/gp/help/external/201361070).
>
> ASIN: B01LYWSZK2
> B01LYWSZK2
> B0774H64GV
> B0774H64GV
> B0773YLPY8
> B0773XP59Q
> B0773YC5QJ

THIMES184331

> B0773XYKKQ
> B0773ZL4X4
> B0773Y2V2G
> B0773ZZK39
> B0773Y4HTR
> B0773YYMCK
> B0773YN9FV
> B01D5XRYQ6
> B075FF3T3M
> B07585NZQB
> B01KSWUV80
> B019KMKUH6
> B019KMKUH6
> B01M16U38R
> B01M16U38R
> B019KMKUGM
> B019KMKUGM
> B01FAKO2US
> B01FAKO2US
> B01KSWR8D6
> B01KSWR8BI
> B01DBGMD8G
> B01N8SUR64
> B01N02KV65
> B01LY9DMNR
> B01LYL7FG0
> B01LXXRZPA
> B078FXYFMQ
> B078FXYFMQ
> B01LWYJUG4
> B01HKM74Z4
> B01FTTMSB0
> B01FTTMSB0
> B01FTTMSAG
> B01FTTMSAG
> B01LX5Y7VH
> B01KX3ZLMU
> B01KX3ZLMU
> B01KX3ZLMU
> B01KX3ZLMU
> B075CY9ZXC
> B075CXWNX6
> B075CWLC51
> B075CXY249
> B075CST3QH
> B075CYBRL8
> B075CXWGWS
> B075CYLSRJ
> B075CXLBTS
> B075CSQ8NZ
> B075CXY8FH
> B075CXWL74
> B075CSRWYD
> B075CXQGY7
>
> Infringement type: Counterfeit
> Trademark asserted: 85406593
> Complaint ID:5027462061
>
> You can learn more about your account health in the Performance section of
> Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/
> performance-summary.html).
>

THIMES184332

> Sincerely,
> Seller Performance Team
> Amazon.com

THIMES184333

Exhibit 48

# Your Amazon.com Selling Account

**From: Amazon <notice-dispute@amazon.com>**                    Thu, Apr 26, 2018 at 12:48 PM EDT (GMT-04:00)
To: <avi@thimessolutions.com>

Hello from Amazon.com.

We have reviewed the message, and determined that you were sent incorrect correspondence stating that your account was warned for trademark violation, We apologize for the inconvenience this has caused.

We appreciate your cooperation in this important matter.

ASIN: B00EOWKTHE, B00UJTJL8Y

Complaint Id: 5018486101

Sincerely,

Seller Performance Team

Sincerely,

Seller Performance Team

Amazon.com

http://www.amazon.com



# Exhibit 49

Avi Eisenberg <avi@thimessolutions.com>

# Your Amazon.com Inquiry

---

**Amazon** <notice@amazon.com>                                                            Wed, May 9, 2018 at 1:03 AM
Reply-To: Amazon <notice-request@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

Thank you for your concern, but we cannot accept your appeal because it
does not address the claim we received. Please provide the following
information so that we can process your appeal:

-- A valid retraction sent to Amazon directly from the original rights
owner who reported the infringing content listed at the end of this email.
We do not accept forwarded or attached retractions. Please contact the
rights owner listed below to request that a retraction be sent to notice-
dispute@amazon.com:

--   compliance-usa@tp-link.com

-- Proof of product authenticity (e.g., invoice or Order ID). Please
ensure that your proof of authenticity includes an invoice or order ID. It
must clearly prove that your products do not infringe on the intellectual
property of the rights owner. Please send this information, any other
documentation, and a list of impacted ASINS to notice-dispute@amazon.com.

ASIN:  B01DXVK3KY
Complaint ID:  5024504931

To learn more about this policy, search for "Intellectual Property
Violations" in Seller Central Help (https://sellercentral.amazon.
com/gp/help/external/201361070).


If you believe an error took place, please send an explanation and
supporting information to notice-dispute@amazon.com.

You can see your balance and settlement information in the Payments
section of Seller Central. If you have questions about those, please send
an email to payments-funds@amazon.com.

You can learn more about your account health in the Performance section of
Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-
summary.html).


Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00304

# Exhibit 50

Avi Eisenberg <avi@thimessolutions.com>

## Your Amazon.com Selling Account

**Amazon** <notice-request-dispute@amazon.com>                         Fri, May 11, 2018 at 5:22 PM
Reply-To: Amazon <notice-request-dispute@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

Thank you for submitting your appeal. We reviewed the information you
provided and have reinstated your account.

If you have any funds in your account, they are now available.

To learn more about our policies, search for "Selling Policies" or
"Intellectual Property Violations" in Seller Central Help
(https://sellercentral.amazon.com/gp/help/external/201361070).

You can learn more about your account health in the Performance section of
Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-
summary.html).


Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

THIMES00305

# Exhibit 51



---

# Appeal for the Reinstatement of Selling Privileges | Seller ID A1Q1VKNP5VVQEY

---

**Avi Eisenberg** <avi@thimessolutions.com>                                    Sun, Jul 1, 2018 at 12:44 PM
To: seller-performance@amazon.com, seller-performance-policy@amazon.com

Account Name: Universal Goods and Sales
Seller ID: A1Q1VKNP5VVQEY
Date: July 1st, 2018

Dear Team,
I am writing on behalf of seller account Universal Goods and Sales, Merchant ID A1Q1VKNP5VVQEY, to appeal the removal of our selling privileges. We received a violation regarding our use of the Amazon API on 06/29/2018.
We would like to communicate the following points to your team in this appeal for reinstatement:
1) We fully understand both the Amazon policies and MWS policies;
2) We are fully committed to practicing the utmost adherence to these policies;
3) Provide your team with the reason this violation occurred; and
4) Present our complete plan of action, which we have implemented within our business to avoid these activities and any other misuse of the Amazon services in the future


ROOT CAUSE OF VIOLATION
The violation that occurred on our account was regarding proper use of the Amazon API. The cause of this activity was due to our former developer, who carried out the violating actions by using a script on our seller account. The reason for this script was to identify hazmat status of ASINs in the catalog.
We chose to identity those particular ASINs solely so we could ensure that our items were properly shipped, prepped and packaged by our team. The data gathered when a script was used in the past to collect the hazmat status of many ASINs has never been used or intended to be used for any reason other than forecasting for our business and cross checking potential safety violations in a preventative manner.
We now acknowledge and understand that although our intentions were not harmful, this practice was still in violation of MWS policy. Our developer utilized the MWS services in a manner that violated the Amazon Conditions of Use as follows:
Conditions of Use: Prohibits any use of data mining, robots, or similar data gathering and extraction tools
Additionally, our former developer was responsible for testing a large volume of ASINs for safety risks and hazmat status. In the past, we addressed this issue with your team and had in fact ceased any actions that may have altered the accuracy of the Amazon platform at least one year ago (shipment creation).
All violating actions regarding shipment eligibility for specific ASINs and all misuse of the Amazon mobile app have been ceased in full approximately 2 weeks prior to this notice of suspension.
REASONS FOR UNINTENTIONAL MISUSE OF AWS
We had always intended to utilize the data provided by the script used by our former developer for strictly our own purposes. These business purposes included:
1) Scaling our business growth into new categories;
2) Ensuring the safety status of all ASINs that were identified as Hazmat;
3) Ensuring safe production, packing, shipping and storing methods of such products
Our former developer had failed to understand how the Amazon platform works, and we failed to ensure that he was properly trained on the Amazon Conditions of Use. As CEO of the company, I acknowledge that this practice may have caused a risk to the buyer experience overall.
CORRECTIVE ACTIONS
I did not fully understand that these changes were in fact 1) in violation of the complex Conditions of Use, 2) potentially harmful to the customer experience; and 3) potentially live in the system. I have fully re-read and can confirm my complete understanding of the MWS Developer Agreement and the Amazon Conditions of Use.
Additionally, as stated previously, I have ensured that the violating actions were immediately ceased. I have implemented the proper actions to avoid any and all MWS misuse moving forward.
Below, you will find our completed plan of action to eliminate this issue and any similar issues upon the successful reinstatement of selling privileges.


PREVENTATIVE MEASURES
We have immediately terminated the developer who had managed this account's MWS activities during the time of the violations
We have immediately ceased the use of MWS services as we work with your team to resolve this issue.
We have removed all the user permissions, and have had our account reviewed by a specialist to ensure it is 100% secure and free of all MWS activity
We have employed the assistance of a specialized team to work with us on site to review our account, ensure 100% compliance of every aspect of our account, and advise our team on compliance issues moving forward.
Our team has been instructed to print and study all of the following documents both individually and as a team. Each staff member has been required to attend a training session so they each are fully aware of the following areas of seller compliance:
Amazon Conditions of Use

Policies and agreements
Product guidelines
Listing Policies
FBA Regulations
Shipment Creation Policies
MWS Agreement

Assigned a vice principal highly skilled in web development and other technology applicable to our seller account. This VP has been fully trained on how to lead our company and manage our Amazon seller account in case of future issues or absences.

All our existing and new employees have completed Amazon Seller University.

We have hired an e-commerce consulting company who specializes in Amazon account management to come and work with us on site.

As a company, we have chosen to completely eliminate the use of all MWS activity permanently, as we value our privilege to sell on the Amazon marketplace above all else

SUMMARY
This process of overhauling our prior MWS use and implementing new automation free strategies has allowed us to obtain the skills, methods and knowledge sellers need to succeed on the marketplace. We have taken the proper actions to ensure that the reason we were suspended from the marketplace was both fully understood and removed in its entirety. At the same time, we've implemented the proper preventative measures in the case another emergency situation occurs. With this thorough plan of action, we have ensured that only the best buyer experience is delivered to each and every customer.

Thank you very much for your time and understanding.

Kind regards,
Thimes Solutions Inc.
Founder & CEOs; Universal Goods and Sales
(845) 475-8642

THIMES00265

# Exhibit 52

Avi Eisenberg <avi@thimessolutions.com>

## Your Amazon.com Selling Privileges have been reinstated

**Amazon** <listings-evaluation@amazon.com>                                  Sun, Jul 8, 2018 at 3:27 PM
Reply-To: Amazon <listings-evaluation@amazon.com>
To: "avi@thimessolutions.com" <avi@thimessolutions.com>



Hello,

We reviewed your account and the information you provided, and we have
decided that you may sell on Amazon.com again.

If you have any funds in your account, they are now available.

To learn more about our policies, search for "Selling Policies" in Seller
Central Help.

You can learn more about your account health in the Performance section of
Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-
summary.html).


Sincerely,
Seller Performance Team
Amazon.com
http://www.amazon.com

# Exhibit 53

| From: | Avi Eisenberg |
|---|---|
| To: | Amazon; seller-performance@amazon.com |
| Subject: | Re: Your amazon.com selling privileges have been removed |
| Date: | Sunday, August 5, 2018 11:17:06 PM |
| Attachments: | Inv_1567_from_JG_Deals_7564.pdf |
| | Invoice_1289_from_Prime_Accessories_USA_LLC.pdf |
| | Invoice-33277r.pdf |
| | Invoice-33338r.pdf |
| | Invoice-33314r.pdf |
| | Invoice-33268r.pdf |
| | Invoice-33388r.pdf |
| | Invoice-1563.pdf |
| | Invoice-1566.pdf |
| | IAS - INV # 2315 (AVI EISENBERG).pdf |
| | Inv_1558_from_JG_Deals_9004.pdf |
| | IAS - INV # 2274 (AVI EISENBERG).pdf |
| | 2289.pdf |
| | invoice-2309.pdf |
| | IAS - INV # 2311 (AVI EISENBERG).pdf |
| | invoice-2300.pdf |

We understand that we have received inauthentic complaints on several ASINs. Invoices are attached showing authenticity of all units sold.

Here is our Plan Of Action to prevent future authenticity concerns:

1. We have gone through all our suppliers and now only purchase from authorized distributors.

2. We do a full inspection of orders prior to shipping to Amazon or to customers to ensure the product is authentic and in the correct condition as per Amazon policies. We also confirm that the packaging matches the correct packaging on the listing.

Invoices are attached for 4 ASINs that we have inauthentic concerns on:

ASIN: B0097BEG1C - we have invoices showing purchase of 29675 units, from The Surplus Company (invoice numbers 33277, 33338, 33314, 33268, 33388), and from JG Deals (invoice numbers 1563, 1566, 1567). This is more than we sold on this ASIN.

ASIN: B073TLKQB9 - we have invoices showing purchase of 20950 units. from Interad Services Corp (invoice numbers 2315, 2309, 2274, and 2289) and from JG Deals (invoice number 1558)

ASIN: B00OQLMJR6 - we have invoices showing purchase of 4705 units, from Interad Services (invoice numbers 2300, 2311, 2315)

ASIN: B07DMSK4R9 - we have invoices showing purchase of 2080 units, from Prime Accessories USA (invoice number 1289), which is more than we sold on this ASIN.

There are 4 suppliers in total on these emails. Their contact info is as follows:


  1. The Surplus Company, LLC
     5904 Avenue D.
     Brooklyn, NY 11203
     Sales@TheSurplusCompany.com
     www.TheSurplusCompany.com
     1.800.606.2338
  2. JG Deals
     1 50th Street
     Building 57, 2nd Fl.

Brooklyn NY, 11232
646.400.1677
Joel@jgdeals.com
3. INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970
9179408582
4. Prime Accessories USA, LLC
4851 NW 79TH AVE, SUITE 10
DORAL, FL 33166 US
3056398000
info@primeaccessoriesusa.com
www.primeaccessoriesusa.com

As we have now fully addressed all ASINs mentioned with proof of purchase, please release our funds and reinstate our account.


On Fri, Aug 3, 2018 at 11:23 AM, Amazon <product-quality-policy@amazon.com> wrote:



Hello,

You may no longer sell on Amazon.com because of concerns about the authenticity of the items at the end of this email. Your listings have been removed from our site, and we are withholding any funds available in your account. If you have FBA inventory of the items causing "inauthentic" concerns, they are currently ineligible for removal.

If you do not appeal this decision within 90 days, we will permanently withhold any payments to you.

You can see your balance and settlement information in the Payments section of Seller Central. If you have questions about those, please write to payments-funds@amazon.com.

To appeal this decision, click the Appeal button next to this message on the Performance Notifications page in Seller Central (https://sellercentral.amazon.com/gp/customer-experience/perf-notifications.html).

Please include the following information for each ASIN reported:
-- Copies of invoices or receipts from your supplier issued in the last 365 days. These should reflect your sales volume during that time.
-- Contact information for your supplier, including name, phone number, address, and website.

THIMES00605

You can send .pdf, .jpg, .png, or .gif files. These documents must be authentic and unaltered. We may call your supplier to verify the documents. You may remove pricing information, but the rest of the document must be visible. We will maintain the confidentiality of your supplier's contact information.

The sale of counterfeit products on Amazon is strictly prohibited. If you cannot provide valid invoices or receipts for the items listed below, we will permanently hold funds equivalent to the amount you earned from the sale of these items in the last 180 days. If the equivalent amount is greater than the total amount available in your account, then the total amount will be held. If you have FBA inventory of these items, they will be destroyed at your expense.

Learn more about our policies in Seller Central Help:
--Amazon Anti-Counterfeiting Policy (https://sellercentral.amazon.com/gp/help/201165970)
--Policies and Agreements (https://sellercentral.amazon.com/gp/help/521)

------------------------------------
Concern type: Inauthentic
ASIN: B0097BEG1C, B073TLKQB9, B00OQLMJR6, B07DMSK4R9
------------------------------------

Sincerely,
Seller Performance Team
amazon.com
http://www.amazon.com



THIMES00606



JG Deals

1 50th Street
Building 57, 2nd Fl.
Brooklyn NY, 11232

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/24/2018 | 1567 |

| Bill To | Ship To |
|---------|---------|
| Thimes Solutions<br>3 Litman Lane,<br>Suffern NY, 10901,<br>8454758 | |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | wire | | 4/24/2018 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|-----------|--------|
| 10,000 | IP6SBUK | Apple Iphone 6s Earpods Bulk | 5.00 | 50,000.00 |

| | **Total** | $50,000.00 |
|--|-----------|-----------|

THIMES00607

**Prime Accessories USA, LLC**
4851 NW 79TH AVE, SUITE 10
DORAL, FL  33166 US
3056398000
info@primeaccessoriesusa.com
www.primeaccessoriesusa.com



# INVOICE

**BILL TO**
Thimes Solutions Inc
3 Litman Lane,
Suffern, New York  10901

**INVOICE #** 1289
**DATE** 05/14/2018
**DUE DATE** 05/14/2018
**TERMS** Due on receipt

| ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|
| **Accessories:APP IP 5/6 OEM EarPods MD827**<br>Apple EarPods MD827LL/A Headphones w/ Remote & Mic | 2,080 | 5.50 | 11,440.00 |
| **Bank Information**<br>Bank of America<br>Acc: 898090560678<br>ACH Routing: 063100277<br>Wire: 026009593<br>Swift: BOFAUS3N | 1 | 0.00 | 0.00 |

BALANCE DUE      **$11,440.00**

THIMES00608

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338



THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901
845-475-8642
AVI@THIMESSOLUTIONS.COM

# INVOICE

| | |
|---|---|
| **Invoice #** | 33277 |
| **Invoice Date** | 03/21/2018 |
| **Due Date** | 03/21/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|------|-------------|------------|----------|--------|
| Product | EAR PODS, IN JEWEL CASE, WHITE | | 1500.00 | |

NOTES: ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS
All Shortages must be reported within 48 hours.

A 3% SURCHARGE APPLIES TO ALL CREDIT CARD CHARGES

You can now pay your invoices online with your credit or debit card.
Please click on the link below and follow the instructions:

https://secure.cardknox.com/thesurpluscompany

For wire please include invoice number.

| | |
|---|---|
| **Subtotal** | |
| **Total** | |
| **Amount Paid** | |
| **Balance Due** | |

THIMES00609

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338



THE
SURPLUS
COMPANY

THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901
845-475-8642
AVI@THIMESSOLUTIONS.COM

# INVOICE

| | |
|---|---|
| **Invoice #** | 33338 |
| **Invoice Date** | 04/16/2018 |
| **Due Date** | 04/16/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|---|---|---|---|---|
| Product | "EAR PODS, IN JEWEL CASE, WHITE COLOR" | | 2575.00 | |

NOTES: ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS
All Shortages must be reported within 48 hours.

A 3% SURCHARGE APPLIES TO ALL CREDIT CARD CHARGES

You can now pay your invoices online with your credit or debit card.
Please click on the link below and follow the instructions:

https://secure.cardknox.com/thesurpluscompany

For wire please include invoice number.

| | |
|---|---|
| **Subtotal** | |
| **Total** | |
| **Amount Paid** | |
| **Balance Due** | |

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338



THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901
845-475-8642
AVI@THIMESSOLUTIONS.COM

# INVOICE

| | |
|---|---|
| **Invoice #** | 33314 |
| **Invoice Date** | 04/09/2018 |
| **Due Date** | 04/09/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|---|---|---|---|---|
| Product | "EAR PODS, IN JEWEL CASE, WHITE COLOR" | | 5000.00 | |

NOTES: ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS
All Shortages must be reported within 48 hours.

A 3% SURCHARGE APPLIES TO ALL CREDIT CARD CHARGES

You can now pay your invoices online with your credit or debit card.
Please click on the link below and follow the instructions:

https://secure.cardknox.com/thesurpluscompany

For wire please include invoice number.

| | |
|---|---|
| **Subtotal** | |
| **Total** | |
| **Amount Paid** | |
| **Balance Due** | |

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338



THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901
845-475-8642
AVI@THIMESSOLUTIONS.COM

# INVOICE

| | |
|---|---|
| **Invoice #** | 33268 |
| **Invoice Date** | 03/19/2018 |
| **Due Date** | 03/19/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|---|---|---|---|---|
| Product | "EAR PODS, IN JEWEL CASE, WHITE COLOR" | | 1000.00 | |

NOTES: ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS
All Shortages must be reported within 48 hours.

A 3% SURCHARGE APPLIES TO ALL CREDIT CARD CHARGES

You can now pay your invoices online with your credit or debit card.
Please click on the link below and follow the instructions:

https://secure.cardknox.com/thesurpluscompany

For wire please include invoice number.

| | |
|---|---|
| **Subtotal** | |
| **Total** | |
| **Amount Paid** | |
| **Balance Due** | |

THIMES00612

The Surplus Company, LLC
5904 Avenue D.
Brooklyn, NY 11203
Sales@TheSurplusCompany.com
www.TheSurplusCompany.com
1.800.606.2338



THIMES SOLUTIONS INC.
3 LITMAN LANE
SUFFERN, NY 10901
845-475-8642
AVI@THIMESSOLUTIONS.COM

# INVOICE

| | |
|---|---|
| **Invoice #** | 33388 |
| **Invoice Date** | 05/01/2018 |
| **Due Date** | 05/01/2018 |

| Item | Description | Unit Price | Quantity | Amount |
|------|-------------|-----------|----------|--------|
| Product | EAR PODS, IN JEWEL CASE, WHITE COLOR | | 2600.00 | |

NOTES: ALL Products are being sold AS-IS
ALL SALES ARE FINAL, NO RETURNS
All Shortages must be reported within 48 hours.

A 3% SURCHARGE APPLIES TO ALL CREDIT CARD CHARGES

You can now pay your invoices online with your credit or debit card.
Please click on the link below and follow the instructions:

https://secure.cardknox.com/thesurpluscompany

For wire please include invoice number.

| | |
|---|---|
| **Subtotal** | |
| **Total** | |
| **Amount Paid** | |
| **Balance Due** | |

THIMES00613

# JG Deals

**JGDEALS** 1 50th Street
Building 57, 2nd Fl.
Brooklyn NY, 11232

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/19/2018 | 1563 |

**PAID 05/10/2018**

**Bill To**

Thimes Solutions Inc,
3 Litman Lane,
Suffern NY, 10901,
845-475-8642

**Ship To**

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  | wire |  | 3/19/2018 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1,000 | IP6SBUK | apple earpods new Iphone 6s Bulk |  |  |

| | | | | Total | |
|--|--|--|--|-------|--|

THIMES00614



JG Deals

**JGDEALS**  1 50th Street
Building 57, 2nd Fl.
Brooklyn NY, 11232

# Invoice

PAID 05/10/2018

| Date | Invoice # |
|------|-----------|
| 3/27/2018 | 1566 |

**Bill To**

Thimes Solutions Inc,
3 Litman Lane,
Suffern NY, 10901,
845-475-8642

**Ship To**

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | wire | | 3/27/2018 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 6,000 | IP6SBUK | Apple Iphone 6s Earphones Bulk | | |

**Total**

THIMES00615

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970

| | | |
|---|---|---|
| Thimes Solutions Inc | Invoice # | 2315 |
| 3 Litman Lane | Invoice Date | May 24, 2018 |
| Suffern NY 10901 | PO # | Avi - Verbal |
| | **Balance Due (USD)** | |

| Item | Description | Unit Cost | Quantity | Line Total |
|---|---|---|---|---|
| EP-TA20JWE | SAMSUNG FAST CHARGE ADAPTER W/ECB-DU4EBE CABLE | | 600 | |
| EPTA20JBE | SAMSUNG CHARGER WITH EP-DG950CBE USB CABLE | | 1950 | |
| MD836LL/A | APPLE 12W ADAPTERS | | 5200 | |
| EAD63849204 | LG TYPE C USB DATA CABLE | | 1500 | |
| PREP | PACKAGING AND LABELING FEE FOR MERAX CD'S | | 5000 | |
| STORAGE | STORAGE RENT FROM CLIFTON,NJ (MERAX CD FROM MAY 1 - JULY 1 | | 3 | |
| PREP | PACKAGING AND LABELING FEE FOR 20JWE/DU4EBE | | 600 | |
| PREP | PACKAGING AND LABELING FEE FOR 20JBE/DG950 | | 1950 | |
| PREP | PACKAGING AND LABELING FEE FOR 12W SINGLE PACK | | 1200 | |
| PREP | PACKAGING AND LABELING FEE FOR 12W 2 PACK | | 2000 | |
| CREDIT | LESS CREDIT WIRE TRANSFER BALANCE FROM #2311 | | 1 | |

**Total**
Amount Paid

**Balance Due (USD)**

**Terms**
ACH WIRE TRANSFER - PARTIAL PAYMENT RECEIVED ON 5/25.
INCLUDES BALANCE PAYMENT FOR INV # 2311

**Notes**
Thank you for your Business

This invoice was sent using  **FRESHBOOKS**

THIMES00616

--------------------------------------------------------------------------------------------------------------

# PAYMENT STUB

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY  10970

| | |
|---|---|
| **Client** | Thimes Solutions Inc |
| **Client Phone** | (845) 475-8642 |
| **Invoice #** | 2315 |
| **Invoice Date** | May 24, 2018 |

**Balance Due (USD)**

**Amount Enclosed**

THIMES00617



JG Deals

1 50th Street
Building 57, 2nd Fl.
Brooklyn NY, 11232

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/15/2018 | 1558 |

| Bill To | Ship To |
|---------|---------|
| Thimes Solutions | FBA |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | wire | | 1/15/2018 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 10,000 | SAMFCRGKIT7 | Samsung Fast Wall Adapter Black Bulk + Samsung Type C USB Black Bulk | | |
| 10,000 | REPACK | | | |

| | | | | **Total** | |

THIMES00618

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970

| | |
|---|---|
| Thimes Solutions Inc | Invoice # |
| 3 Litman Lane | Invoice Date |
| Suffern NY 10901 | PO # |

Invoice # 2274
Invoice Date January 28, 2018
PO # Avi - Verbal

**Balance Due (USD)**

| Item | Description | Unit Cost | Quantity | Line Total |
|------|-------------|-----------|----------|------------|
| EPTA20JBE | SAMSUNG CHARGER WITH EP-DG950CBE USB CABLE | | 2000 | |
| PREP | PACKAGING AND LABELING FEE | | 2000 | |

**Total**
Amount Paid

**Balance Due (USD)**

**Terms**
ACH WIRE

**Notes**
Thank you for your Business

This invoice was sent using **FRESHBOOKS**

-----------------------------------------------------------------------------------------------------

# PAYMENT STUB

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970

| | |
|---|---|
| **Client** | Thimes Solutions Inc |
| **Client Phone** | (845) 475-8642 |
| **Invoice #** | 2274 |
| **Invoice Date** | January 28, 2018 |

**Balance Due (USD)**

**Amount Enclosed**

THIMES00619

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970

| | | |
|---|---|---|
| Thimes Solutions Inc | Invoice # | 2289 |
| 3 Litman Lane | Invoice Date | March 7, 2018 |
| Suffern NY 10901 | PO # | Avi - Verbal |
| | **Balance Due (USD)** | |

| Item | Description | Unit Cost | Quantity | Line Total |
|---|---|---|---|---|
| MD818LL/A | APPLE LIGHTNING USB CABLE | | 3000 | |
| MD818LL/A(2) | APPLE LIGHTING USB CABLE (2 PACK) | | 1080 | |
| EPTA20JBE | SAMSUNG CHARGER WITH EP-DG950CBE USB CABLE | | 5000 | |
| PREP | PACKAGING AND LABELING FEE (APPLE) | | 5160 | |
| PREP | PACKAGING AND LABELING FEE (SAMSUNG) | | 5000 | |
| PREP | PACKAGING AND LABELING FEE ( YOUR 10K PCS) | | 10000 | |

**Total**
Amount Paid

**Balance Due (USD)**

**Terms**
ACH Wire Transfer

CREDIT DUE -
CREDIT APPLIED ON INV # 2300

**Notes**
Thank you for your Business

This invoice was sent using **FRESHBOOKS**

THIMES00620

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970

| Thimes Solutions Inc | Invoice # | 2309 |
| --- | --- | --- |
| 3 Litman Lane | Invoice Date | April 18, 2018 |
| Suffern NY 10901 | PO # | Avi - Verbal |

**Balance Due (USD)**

| Item | Description | Unit Cost | Quantity | Line Total |
| --- | --- | --- | --- | --- |
| MD818LL/A | APPLE LIGHTNING USB CABLE | | 10000 | |
| MCS-H05WD | LG V10/G5 CHARGER | | 2000 | |
| ET-DQY1WEBUS | SAMSUNG USB CABLE | | 2000 | |
| EPTA20JBE | SAMSUNG CHARGER | | 2000 | |
| EP-DG950CBE | SAMSUNG USB CABLE | | 2000 | |
| PREP | PACK & LABELING (MD818) | | 10000 | |
| PREP | PACK & LABEL (ET-DQY1WEBUS) | | 2000 | |
| PREP | PACK & LABELING (EP-TA20JBE & DG950) | | 2000 | |
| CREDIT | LESS CREDIT FOR WIRE PAYMENT | | 1 | |

**Total**
Amount Paid

**Balance Due (USD)**

**Terms**
ACH WIRE TRANSFER

**Notes**
Thank you for your Business

This invoice was sent using  **FreshBooks**

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970



Thimes Solutions Inc
3 Litman Lane
Suffern NY 10901

| | |
|---|---|
| Invoice # | 2311 |
| Invoice Date | May 4, 2018 |
| PO # | Avi - Verbal |
| **Balance Due (USD)** | |

| Item | Description | Unit Cost | Quantity | Line Total |
|---|---|---|---|---|
| EP-TA20JWE | SAMSUNG FAST CHARGE ADAPTER | | 3200 | |
| ECBDU4EWE | Samsung USB Cables | | 3200 | |
| SM-N910 | SAMSUNG NOTE 4 BATTERY | | 2985 | |
| EO-EG920BW | SAMSUNG S7 EARPHONES (WHITE) | | 3987 | |
| EB-BG900BBU | SAMSUNG S5 BATTERY | | 1000 | |
| PREP | PACKAGING AND LABELING FEE FOR TA20JWE & CABLE | | 3200 | |
| PREP | PACKAGING AND LABELING FEE FOR S7 EARPHONES | | 3987 | |
| PREP | PACKAGING AND LABELING FEE FOR S5 BATTERIES | | 1000 | |
| PREP | LABOR FEE TO PACK NOTE 4 BATTERIES | | 5 | |
| PREP | PREP CHARGE FOR MEREX CD'S | | 3000 | |
| SHIPPING | SHIPPING FEE FOR CD'S TO MY WAREHOUSE | | 1 | |
| CREDIT | LESS CREDIT FOR WIRE FROM 5/8 | | 1 | |
| CREDIT | LESS CREDIT FOR WIRE FOM 5/25 | | 1 | |

**Total**
Amount Paid

**Balance Due (USD)**

**Terms**
ACH WIRE TRANSFER                INCLUDES PAYMENT FOR BALANCE ON IN'

**Notes**
Thank you for your Business

THIMES00622

This invoice was sent using FreshBooks

THIMES00623

INTERAD SERVICES CORP
P.O. BOX 596
Pomona NY 10970

| | | |
|---|---|---|
| Thimes Solutions Inc | Invoice # | 2300 |
| 3 Litman Lane | Invoice Date | March 29, 2018 |
| Suffern NY 10901 | PO # | Avi - Verbal |
| | **Balance Due (USD)** | |

| Item | Description | Unit Cost | Quantity | Line Total |
|---|---|---|---|---|
| MD836LL/A | APPLE 12W ADAPTERS | | 5000 | |
| ETA-U90JWS | SAMSUNG 2.0AMP ADAPTERS | | 1000 | |
| ECBDU4EWE | Samsung USB Cables | | 1000 | |
| SM-N910 | SAMSUNG NOTE 4 BATTERY | | 720 | |
| MD818LL/A(2) | APPLE LIGHTING USB CABLE (2 PACK) | | 2160 | |
| PREP | PACKAGING AND LABELING FEE (MD836LL/A) | | 5000 | |
| PREP | PACKAGING AND LABELING FEE (ETAU90 +ECBDU4EWE) | | 1000 | |
| PREP | PACKAGING AND LABELING FEE FOR MD818LL/A 2 PACK | | 2160 | |
| CREDIT | LESS CREDIT FOR INV # 2297 | | 1 | |
| CREDIT | LESS CREDIT FOR INV # 2289 | | 1 | |

**Total**
Amount Paid

**Balance Due (USD)**

**Terms**
ACH WIRE TRANSFER

**Notes**
Thank you for your Business

This invoice was sent using **FRESHBOOKS**

THIMES00624

Exhibit 54

## Thimes Solutions Inc., seller ID (https://www.amazon.com/sp?seller=A1Q1VKNP5VVQEY)

**Enforcement 3PM** <enforcement@3pm.ai>                               Thu, Jun 27, 2019 at 1:20 PM
To: notice-dispute@amazon.com
Cc: avi@thimessolutions.com


Please be advised that 3PM never intended to file an infringement complaint against Thimes Solutions Inc/Universal goods and sales.  Please retract any 3PM complaint registered against that account.


Sincerely,

Rob Dunkel

rob@3pm.ai

# Exhibit 55



# Exhibit 56

From: **Avi Eisenberg** avi@thimessolutions.com
Subject: Fwd: Amazon.com has shipped the item you sold
Date: February 13, 2019 at 2:41 PM
To: Mark Schlachet markschlachet@me.com

This is the email with tracking for that first test order.

---------- Forwarded message ----------
From: **Amazon.com** <fba-ship-confirm@amazon.com>
Date: Fri, Jan 19, 2018 at 12:39 AM
Subject: Amazon.com has shipped the item you sold
To: 613ike@gmail.com <613ike@gmail.com>



Greetings from Amazon.com

We thought you'd like to know that we completed and shipped your Amazon.com Fulfillment Order (111-9452184-8129860) to one of your customers:

FONTANA, CA 92337-7667 US

You can track the status of this order, and all your orders, online by visiting Seller Central

The following items have been shipped by Amazon.com:

| Package: 1 | Shipped by:UPS<br>Tracking: 1Z975W3X0306934504 |
|---|---|
| Qty | Order Item |
| 2 | TP-Link AC5400 Wireless Wi-Fi MU-MIMO Tri-Band Router - Powerf... |

As stated on our Web site, there is no weekend service for our Second or Next Day delivery options. Therefore, a package that leaves our fulfillment center on a Saturday or Sunday does not actually reach the shipper until Monday morning.

If you've examined your order via Seller Central but still need assistance with your order, you'll find links to e-mail or call Technical Account Management through Contact Us in Seller Central

Please note: this email was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

Thank you for using Fulfillment by Amazon.

Fulfillment by Amazon, professional packing, shipping and servicing of online orders.

Was this email helpful?

If you have any questions visit: Seller Central

To change your email preferences visit: Notification Preferences

We hope you found this message to be useful. However, if you'd rather not receive future e-mails of this sort from Amazon.com, please opt-out here.

Copyright 2018 Amazon, Inc, or its affiliates. All rights reserved.

Amazon.com, 410 Terry Avenue North, Seattle, WA 98109-5210

# Exhibit 57



February 25, 2019
Shipper 975W3X
Page 1 of 1

**ATTN :** AVI X
**PHONE :** (845)475-8642

## DELIVERY NOTIFICATION

INQUIRY FROM:   **AMAZON.COM.KYDC INC.**
**333 BOREN AVE N**
**SEATTLE  WA 98109**

SHIPMENT TO:   **TP LINK**
**10725 SIERRA AVE STE 100**
**FONTANA CA 92337**

Shipper Number...........................**975W3X**       Tracking Identification Number...**1Z975W3X0306934504**

According to our records **1** parcel was delivered on **01/22/18** at **10:10 A.M.**.  The shipment was received by **LI** as follows:

| SHIPPER NUMBER | PKG ID NO. | TRACKING NUMBER | ADDRESS (NO/STREET,CITY) | SIGNATURE |
|---|---|---|---|---|
| 975W3X | | 1Z975W3X0306934504 | 10725 SIERRA AVE STE 100 FONTANA | |

NPT1REG:000A0000

Exhibit 58

| | |
|---|---|
| **From:** | Fitz S <fitz@thesurpluscompany.com> |
| **Sent:** | Wednesday, September 5, 2018 10:45 AM |
| **To:** | Fitz Shpigelman |
| **Subject:** | TP LINK DEAL-RE270K |

BRAND NEW
3-4 DAYs AWAY
900 PCS
$22

https://www.amazon.com/AC750-Wi-Fi-Extender-TP-Link-Built/dp/B01NAYKWR9

 

--



Fitz S.
**Sales Manager** The Surplus Company, LLC
p: 800.606.2338 x208  m: 323-839-4459  a: 5904 Avenue D. Brooklyn, NY 11203
s: www.TheSurplusCompany.com  e: Fitz@TheSurplusCompany.com

THIMES01325

1  RANDOLPH GAW (S.B. #223718)     MARK SCHLACHET (*pro hac vice*)
2   rgaw@gawpoe.com                 markschlachet@me.com
   MARK POE (S.B. #223714)         43 West 43d Street, Suite 220
3   mpoe@gawpoe.com                New York, New York 10036
   VICTOR MENG (S.B. #254102)      Telephone: (216) 225-7559
4   vmeng@gawpoe.com               Facsimile: (216) 932-5390
5  GAW | POE LLP
6  4 Embarcadero Center, Suite 1400
   San Francisco, CA 94111
7  Telephone: (415) 766-7451
8  Facsimile: (415) 737-0642

9
   Attorneys for Plaintiff Thimes Solutions Inc.
10

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13                  **WESTERN DIVISION**

14

15  THIMES SOLUTIONS INC.            Case No. 2:19-CV-10374-SB-E

16              Plaintiffs,          **DECLARATION OF MIKHAIL**
                                     **FIKHMAN**
17       v.
                                     Date: October 7, 2022
18  TP-LINK USA CORPORATION,         Time: 8:30 am
    and AUCTION BROTHERS, INC.       Courtroom: 6C
19  d/b/a AMAZZIA
20              Defendants.
21

22

23

24

25

26

27

28

I, Mikhail Fikhman, declare as follows:

1.     I am a co-founder and the Chief Executive Officer of Defendant Auction Brothers, Inc. d/b/a Amazzia.  I have personal knowledge of the facts set forth in this Declaration, and, if called as a witness, I could and would testify competently thereto.

2.     As Amazzia's Chief Executive Officer, my duties and responsibilities include the day-to-day oversight of management and operations of the company.

3.     Although a very small part of Amazzia's overall business has been the authorized resale of certain consumer products on the Amazon Marketplace, Amazzia has historically provided brand protection services.  Amazzia's brand protection process involved searching for client-identified listings on the Amazon Marketplace to find the clients' products that were being sold by unauthorized resellers.  Amazzia would then file complaints with Amazon with the goal of having the offers of these unauthorized resellers removed from Amazon's listings.

4.     During the relevant time period, much of Amazzia's brand protection team was based in Los Angeles County and some were based overseas in the Philippines.  That way, Amazzia could provide coverage for its clients outside of typical business hours.

5.     One of Amazzia's clients was defendant TP-Link USA Corporation. Amazzia entered into several brand protection service agreements with TP-Link. Attached as Exhibit 60 is a true and correct copy of one (1) of those contracts that Amazzia had with TP-Link.

6.     As reflected in the attached agreement, TP-Link engaged Amazzia to monitor the Amazon listings for specific TP-Link products.  One of those products was the Archer C5400 wireless router, which has the Amazon Standard Identification Number (ASIN) B01DXVK3KY.

7.     As reflected in the attached agreement, TP-Link provided Amazzia with a list of authorized resellers of its products.  TP-Link instructed Amazzia that any other seller of a new TP-Link product on the Amazon Marketplace that was not on

DECLARATION OF M. FIKHMAN
CASE NO. 2:19-CV-10374-SB-E

this list was deemed to be an unauthorized reseller.  Amazzia would report these unauthorized sellers to Amazon until Amazon removed their TP-Link product offers from the listings on the Amazon Marketplace.

8.     Amazon has a web-based form where manufacturers can report violations of their intellectual property that they believe are taking place on the Amazon Marketplace.  The form first asks the user to select one of three issues: copyright infringement, patent infringement, and trademark infringement.  It was Amazzia's practice to select the "trademark infringement" option on this form.

9.     After selecting the "trademark infringement" option, Amazon's form would then take the user to another page where they had to select from one of three options: (1) a product detail page is unlawfully using my trademark, (2) a product or packaging has my trademark on it, or (3) "a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark."

10.     Attached as Exhibit 61 is a true and correct copy of a counterfeiting complaint that Amazzia submitted to Amazon sometime during the year 2018 for a client called Youngblood.  The language used by Amazzia in this document is typical of the language it used when reporting a counterfeiting violation to Amazon during the year 2018.

11.     I am not a lawyer, nor were the other members of Amazzia's brand protection services team.  I and my Amazzia brand protection service team members would always select the "counterfeit product" option because Amazon's options on its web form were limited, and, given the language of Amazon's anti-counterfeiting policy, it was clear to us that this was the closest option for us to identify for Amazon an unauthorized reseller of one of our clients.

12.     During 2018, in providing brand protection services for TP-Link, we saw Amazon Marketplace listings for the TP-Link AC5400 wireless router that belonged to a seller called Universal Goods and Sales (which was the dba of Thimes).

13.     Per our brand protection services contract with TP-Link, between

DECLARATION OF M. FIKHMAN
CASE NO. 2:19-CV-10374-SB-EX

January 12, 2018 and July 20, 2018, Amazzia filed numerous complaints with Amazon identifying designated products sold by Universal Goods and Sales as violating Amazon's anti-counterfeiting policy.  Attached as Exhibit C is a true and correct printout from one of Amazzia's business records tracking all the complaints we had filed against Universal Goods and Sales.  As reflected in that document, during that seven-month period, Amazzia filed 73 complaints with Amazon, with 67 complaints concerning the TP-Link AC5400 wireless router and 6 complaints concerning a different TP-Link product.

14.     As the Chief Executive Officer of Amazzia, I have access to the brandprotection@amazzia.com email account.  I have attached hereto three emails that are located at that email address account (in the same form in which they were kept in the ordinary course of business) including:

- Exhibit 62: an e-mail from Amazzia employee Shane De La Cruz on April 10, 2018, with a cc: to brandprotection@amazzia.com, along with the earlier e-mails in that thread.

- Exhibit 63: an e-mail to Mr. De La Cruz on April 17, 2018, with a cc: to brandprotection@amazzia.com, along with the earlier e-mails in that thread.

- Exhibit 64: an e-mail to Mr. De La Cruz on April 26, 2018, with a cc: to brandprotection@amazzia.com, along with the earlier e-mails in that thread.

- Exhibit 65: an e-mail to Mr. De La Cruz on June 18, 2018, with a cc: to brandprotection@amazzia.com, along with the earlier e-mails in that thread.

15.     I do not know the specifics of how, when, or why, Amazon will suspend sellers from the Amazon Marketplace, because Amazon keeps that information internally confidential, but I do know that a risk of Amazon noncompliance is suspension. I have seen Amazon suspend sellers from the Amazon Marketplace. Because Amazon keeps its information confidential, I do not know of a guaranteed

way to ensure one is able to get back on the Amazon Marketplace once suspended.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on September _5_, 2022, at __Tarzana, California.

*Mikhail Fikhman*
_____
Mikhail Fikhman

DECLARATION OF M. FIKHMAN
CASE NO. 2:19-CV-10374-SB-EX

# Exhibit 60



AMAZZIA
7040 Darby Avenue
Reseda, CA 91335

## Amazon Brand Protection Service Agreement – TP- Link

Thank you for choosing Amazzia!  Please review the details of this agreement which includes our terms, services, what we'll need from you, and our next steps.  If everything looks good, please sign and email to me at sandy@amazzia.com so we can get started!

## Terms

- Three Month Agreement
- Option to swap ASINs and extend agreement after 3-month term
- Amazon Brand Protection (Monitoring, Enforcement, & Unauthorized Seller Elimination) - Executed for **Non-Responsive** per month
- Unauthorized sellers reported to Amazon, until they are removed by Amazon
- Payment to be continued via ACH information on-file with Amazzia
- TP-Link Will Limit Retractions to a maximum of 1 per month
- Amazzia will send TP-Link (Antoine) a list of violators every Monday and Thursday for him to confirm and send back
- Enforcement Terms: TP-Link will decide which sellers to report twice per week
- Authorized Seller(s): on file with Amazzia
- 31 ASINs to be Protected, Including Product Titles:

| ASIN | Product Title | MAP Price |
|---|---|---|
| Non-Responsive | Non-Responsive | Non-Responsive |
| B01DXVK3KY | Archer C5400 | 269.99 |
| Non-Responsive | | |


your partner in brand protection, growth, and distribution.

AMAZZIA000070



AMAZZIA
7040 Darby Avenue
Reseda, CA 91335



| B07FZ6PLJG | KC120 | 89.99 |



your partner in brand protection, growth, and distribution.

AMAZZIA000071



AMAZZIA
7040 Darby Avenue
Reseda, CA 91335

## Services

- ASIN pages monitored and protected, 24/7/365
- Dedicated Account Manager
- Unauthorized sellers reported to Amazon, until they are removed by Amazon
- 65% reduction of unauthorized sellers in 60 days (once enforcement begins)
- Product review increase & improvement within Amazon policies
- Sample 14 Day Reseller Warning Letter for your customers to be provided
- Sample Responses to Sellers provided
- Sample Warranty Verbiage for your website provided
- Total transparency & Monthly Brand Progress Report provided
- Access to Our Team of Real People, Not Software

*I agree to the terms of this agreement and the outlined timeline and I'm ready to be Amazed!*

Name _Yongsheng Liu_          Company _TP-Link USA CORPORATION_

Title _CEO_          Today's Date _2019 / 3 / 14_

Signature _____



your partner in brand protection, growth, and distribution.

3 of 4

AMAZZIA000072

# Exhibit 61

Case 0:19-cv-60487-RKA   Document 104-2   Entered on FLSD Docket 03/05/2020   Page 1 of 1

**Name and Contact Info of entity that submitted take down notice**:

Complaint ID 5518323151 submitted by RO contact: brandprotection@ybskin.com;
Brand Name Youngblood.

"Hello,

We have researched Youngblood's listings and found the following ASINs are in violation of our trademark, 3812755.

• Counterfeit products are being sold on the following listings

• Please immediate action and remove these sellers currently listing counterfeit product.

According to Amazon's robust and aggressive anti-counterfeit policy, sellers must list items that match the detail pages exactly. The indicated sellers are not selling the authentic products as shown in the ASIN(s) referenced.

We know that Amazon takes product authenticity very seriously and Amazon requires sellers to list items that exactly match the detail pages. Therefore, we respectfully request that Amazon immediately and proactively remove these sellers from the mentioned ASIN(s) and prohibit these sellers from listing against these ASIN(s) in the future.

Thank You,

Youngblood

PLFS EXHIBIT __5__ FOR ID

WENDY J. WRIGHT, CSR

DATE __12-9-19__

WITNESS __Toth__

PAGE __1__ OF __1__

CONFIDENTIAL AMZN_00003

X-9

# Exhibit 63

# Confirm Report Status on ASIN: B01DXVK3KY

Printed from Asana

☑ **Priscilla:** ~~Confirm Report Status on ASIN: B01DXVK3KY~~

From: Shane De La Cruz

Sent: Tuesday, April 10, 2018 12:18 PM

To: 'Antoine' <antoine.liu@tp-link.com>

Cc: Brand Protection <brandprotection@amazzia.com>

Subject: RE: White List

Hi Antoine,

I have passed this along to brand protection to look further in to "Universal Goods and Sales". I should have an update for you soon.

Thank you,

Shane De La Cruz | Brand Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com>

Your partner in brand protection, growth, and distribution.

From: Antoine <antoine.liu@tp-link.com> <mailto:antoine.liu@tp-link.com>>

Sent: Tuesday, April 10, 2018 10:53 AM

To: Shane De La Cruz <shane@amazzia.com> <mailto:shane@amazzia.com>>

Cc: Brand Protection <brandprotection@amazzia.com> <mailto:brandprotection@amazzia.com>>

Subject: RE: White List

Hi Shane

Good morning!

Really appreciate for your quick actions and explanations. Would you help to take a look at the 3PL below. Thanks.

ASIN:

B01DXVK3KY

See attached screen shot

Best Regards

 **Shane created this task.**  Apr 10, 2018

**Shane** assigned to Shane.  Apr 10, 2018

 **Shane** 📎 **attached**  Apr 10, 2018

image003.jpg · Download

**Shane** added to Brand Protection Tasks.  Apr 10, 2018

**Shane** assigned to Priscilla.  Apr 10, 2018

**Shane** added to TP-Link.  Apr 10, 2018

 **Priscilla**  Apr 10, 2018

@Shane, Universal Goods and Sales is shaping up to be a really sticky seller. They have been reported 40 times since Jan. 12, 2018, last reported on April 9, 2018. It also looks like they have been removed from the listing 4 times since then. I will submit another report today but chances are they're going to pop back up.

AMAZZIA000001

**Priscilla** moved this Task from Backlog to Done in Brand Protection Tasks.   Apr 10, 2018

**Priscilla completed this task.**   Apr 10, 2018

AMAZZIA000002

Exhibit 63

# Report Update

Printed from Asana

☑ **Priscilla:** ~~Report Update~~

Good Evening Antoine,

I have reached out to our brand protection department for an update on Universal. I will provide the update for you as soon as I receive it.

Thank you,

Shane De La Cruz | Brand
Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com>

Your partner in brand protection, growth, and distribution.

From: Antoine <antoine.liu@tp-link.com>

Sent: Tuesday, April 17, 2018 5:20 PM

To: Shane De La Cruz <shane@amazzia.com>

Cc: Brand Protection <brandprotection@amazzia.com>

Subject: RE: Market Place Report 0416

Hi Shane
Good afternoon!
Just want to check if there is any progress with Universal Goods and Sales?

Best Regards

------------------------

Antoine

From: Shane De La Cruz <shane@amazzia.com> <mailto:shane@amazzia.com>>

Sent: Monday, April 16, 2018 11:45

To: Antoine <antoine.liu@tp-link.com> <mailto:antoine.liu@tp-link.com>>

Cc: Brand Protection <brandprotection@amazzia.com> <mailto:brandprotection@amazzia.com>>

Subject: RE: Market Place Report 0416

Good Morning Antoine,

AMAZZIA000010

It looks as tough Universal Goods and Sales is one of those stick unauthorized resellers that jump on and off listings. I have forwarded this over to the Brand Protection department for reporting. This is a matter that has been on our radar and we are continuously working towards removal.

Thank you,

Shane De La Cruz | Brand
Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com>

Your partner in brand protection, growth, and distribution.

From: Antoine <antoine.liu@tp-link.com> <mailto:antoine.liu@tp-link.com>>

Sent: Monday, April 16, 2018 11:14 AM

To: Shane De La Cruz <shane@amazzia.com> <mailto:shane@amazzia.com>>

Cc: Brand Protection <brandprotection@amazzia.com> <mailto:brandprotection@amazzia.com>>

Subject: Market Place Report 0416

Hi Shane
Good morning!
Please could you help with below market place. Universal goods and sales disappeared for a while but is now live again.
ASIN:
B01DXVK3KY

Best Regards

-------------------------

Antoine

**Sh** **Shane created this task.**  Apr 17, 2018

  Shane assigned to Shane.  Apr 17, 2018

**Sh** **Shane 📎 attached**  Apr 17, 2018



AMAZZIA000011

image005.jpg · Download

**Shane** assigned to Priscilla.   Apr 17, 2018
**Shane** added to Brand Protection Tasks.   Apr 17, 2018

**Priscilla**   Apr 18, 2018
@Shane, Universal was taken down on the 13th of April, and has popped back up. They have been reported twice since they relisted, the last time was earlier today.

**Shane**   Apr 19, 2018
Good Afternoon Antoine,

Universal Goods and Sales were last taken down on the 13th of April and had sine popped back on the listings. As of yesterday, they had been reported twice since they relisted and are still on our hit list. We are working diligently to have them removed as soon as possible.

Thank you,

**Shane De La Cruz |** Brand Ambassador
818.928.3844 **|** www.amazzia.com
*Your partner in brand protection, growth, and distribution.*

**Priscilla**   Apr 23, 2018
@Shane

**Priscilla** 📎 **attached**   Apr 26, 2018



3KY.jpg · Download

**Priscilla**   Apr 26, 2018
@Shane, Universal Goods and Sales has been kicked off the listing.

AMAZZIA000012

Report Update Status

**Priscilla** moved this Task from Backlog to Done in Brand Protection Tasks.   Apr 26, 2018

**Priscilla completed this task.**   Apr 26, 2018

AMAZZIA000013

# Exhibit 64

# Add Voip Mart To Whitelist

Printed from Asana

☑ **Priscilla:** Add Voip Mart To Whitelist

Good Morning Antoine,

We are glad to have them off the listing as well!

**Also, we will be updating our Whitelist to include** Non-Responsive

Thank you,

Shane De La Cruz | Brand Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com>

Your partner in brand protection, growth, and distribution.

From: Antoine Liu <antoine.liu@tp-link.com>

Sent: Thursday, April 26, 2018 7:23 PM

To: Shane De La Cruz <shane@amazzia.com>

Cc: Brand Protection <brandprotection@amazzia.com>

Subject: RE: Market Place Report 0423

Hi Shane

It's glad to see that Universal was blocked finally. Thanks for your efforts.

Please help to add Non-Responsive into whitelist and retract the claims for the reseller.

Complaint ID: 5005125421

Best Regards

-------------------------

Antoine

From: Antoine Liu

Sent: 2018年4月25日 14:19

To: 'Shane De La Cruz' <shane@amazzia.com <mailto:shane@amazzia.com>>

Cc: 'Brand Protection' <brandprotection@amazzia.com <mailto:brandprotection@amazzia.com>>

Subject: RE: Market Place Report 0423

Good afternoon, Shane

I checked in the morning that Universal was not there but somehow it managed to come back with an even lower price. Just curious, do you have idea why it could come back after being blocked?

Best Regards

------------------------

Antoine

From: Antoine Liu

Sent: 2018年4月24日 17:18

To: Shane De La Cruz <shane@amazzia.com <mailto:shane@amazzia.com>>

Cc: Brand Protection <brandprotection@amazzia.com <mailto:brandprotection@amazzia.com>>

Subject: RE: Market Place Report 0423

Good afternoon, Shane.

Well noted. Thanks for your efforts.

Best Regards

------------------------

Antoine

From: Shane De La Cruz <shane@amazzia.com <mailto:shane@amazzia.com>>

Sent: 2018年4月24日
17:17

To: Antoine Liu <antoine.liu@tp-link.com> <mailto:antoine.liu@tp-link.com>>

Cc: Brand Protection <brandprotection@amazzia.com> <mailto:brandprotection@amazzia.com>>

Subject: RE: Market Place Report 0423

Good Afternoon Antoine,

Universal Goods and Sales were last removed on Friday, April 13th. But they were back on the listing since last Monday, April 16th. Since then they have been reported 5 times, and will be reported
again tonight or tomorrow morning. We have also sent an individual report today against Universal Goods. I can ensure that Universal is being reported daily in effort to have them removed sooner than later.

Thank you,

Shane De La Cruz | Brand
Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com>

Your partner in brand protection, growth, and distribution.

From: Antoine Liu <antoine.liu@tp-link.com> <mailto:antoine.liu@tp-link.com>>

Sent: Tuesday, April 24, 2018 9:31 AM

To: Shane De La Cruz <shane@amazzia.com> <mailto:shane@amazzia.com>>

Cc: Brand Protection <brandprotection@amazzia.com> <mailto:brandprotection@amazzia.com>>

Subject: RE: Market Place Report 0423

Hi Shane

Thanks for your response. While can I get prediction if it will be removed this week? Cause now our promotion plan are all postponed or canceled because of the price.

Best Regards

-------------------------

Antoine

From: Shane De La Cruz <shane@amazzia.com> <mailto:shane@amazzia.com>>

AMAZZIA000055

Sent: 2018年4月23日 16:54

To: Antoine Liu <antoine.liu@tp-link.com <mailto:antoine.liu@tp-link.com>>

Cc: Brand Protection <brandprotection@amazzia.com <mailto:brandprotection@amazzia.com>>

Subject: RE: Market Place Report 0423

Good Afternoon Antoine,

We will have [Non-Responsive] added to the whitelist and send out any necessary retractions.

As for Universal Goods and Sales, they were last reported earlier today. Since January 12th, they have been reported a total of 47 times and have been removed 5 times. Currently, they are only on 1 listing.

Thank you,

Shane De La Cruz | Brand Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com>

Your partner in brand protection, growth, and distribution.

From: Antoine Liu <antoine.liu@tp-link.com <mailto:antoine.liu@tp-link.com>>

Sent: Monday, April 23, 2018 4:24 PM

To: Shane De La Cruz <shane@amazzia.com <mailto:shane@amazzia.com>>

Cc: Brand Protection <brandprotection@amazzia.com <mailto:brandprotection@amazzia.com>>

Subject: Market Place Report 0423

Hi Shane
Good afternoon!
Please help to add one reseller [Non-Responsive] into whitelist and retract all the claims related.
And is there any update regarding Universal Goods and Sales? Thanks.
ASIN: B01DXVK3KY

Best Regards

-------------------------

Antoine

AMAZZIA000056

**Sh** ~~Shane created this task.~~ Apr 27, 2018

**Shane** assigned to Shane. Apr 27, 2018

**Sh** ~~Shane~~ 📎 ~~attached~~ Apr 27, 2018



**image003.png · Download**

**Sh** ~~Shane~~ 📎 ~~attached~~ Apr 27, 2018



**image004.jpg · Download**

**Shane** assigned to you. Apr 27, 2018
**Shane** added to Brand Protection Tasks. Apr 27, 2018

**Sh** ~~Shane~~ Apr 27, 2018
~~Add VOIP mart to the Whitelist and Issue retractions if needed~~

✅ **Priscilla completed this task.** May 18, 2018

**Priscilla** moved this Task from "Backlog" to "Done" in Brand Protection Tasks. May 18, 2018

AMAZZIA000057

Exhibit 65

# Market Place Report 0618

Printed from Asana

☑ **Priscilla:** Market Place Report 0618

We will work to have them removed as soon as possible.

To schedule a call click

HERE <http://t.sidekickopen12.com/e1t/c/5/f18dQhb0S7lM8dDMPbW2n0x6l2B9nMJN7t5X-FfhMynW4WrMk84Xr5cCW56dT_k3Wjpbj102?t=https%3A%2F%2Fmeetings.hubspot.com%2Fshane67%3F_ga%3D2.113214343.26069026.1527019093-1176882698.1523901961&si=7000000001087112&pi=475a498a-6096-404c-819b-c9fdae22fc62>

All calls are recorded for training and quality assurance purposes

Shane De La Cruz | Brand
Ambassador

818.928.3844 | www.amazzia.com <http://www.amazzia.com/>

Your partner in brand protection, growth, and distribution.

From: Antoine Liu <antoine.liu@tp-link.com>

Sent: Monday, June 18, 2018 3:39 PM

To: Shane De La Cruz <shane@amazzia.com>

Cc: Brand Protection <brandprotection@amazzia.com>; Ronnie Rong <ronnie.rong@tp-link.com>; Kevin Ryu <kevin.ryu@tp-link.com>

Subject: Market Place Report 0618

Hi Shane

It's found that Universal Goods and Sales came back again. Please help.

ASIN:
B01DXVK3KY

Best Regards

------------------------

Antoine

Sh   Shane created this task.  Jun 18, 2018

AMAZZIA000058

**Shane** assigned to Shane.  Jun 18, 2018
**Shane** added to Brand Protection Tasks.  Jun 18, 2018
**Shane** added to TP-Link.  Jun 18, 2018

 Shane  Jun 18, 2018

@Priscilla, please report Universal Goods and Sales on ASIN B01DXVK3KY

**Shane** assigned to you.  Jun 18, 2018

 Priscilla  Jun 18, 2018

@Shane, Just submitted a report against Universal Goods and Sales. I'll ensure they're reported daily until they're removed.

 **Priscilla completed this task.**  Jul 5, 2018

**Priscilla** moved this Task from "Backlog" to "Done" in Brand Protection Tasks.  Jul 5, 2018
**Sendi** removed from Brand Protection Tasks.  Jul 9, 2018

↔ **Priscilla** mentioned this task in another task: TP-Link Timeline.  4 days ago

AMAZZIA000059

Exhibit 66

(Exhibit C) to Fikhman Declaration

| ASIN | Date Submitted | Seller Name | | | | | |
|------|---------------|-------------|---|---|---|---|---|
| B01DXVK3KY | 1/12/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/13/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/14/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/15/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/16/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/17/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/18/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/19/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/20/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/21/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 1/26/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/2/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/3/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/4/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/5/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/7/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/10/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/12/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/14/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/21/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/22/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/23/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/24/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 2/26/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/2/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/3/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/5/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/7/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/8/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/12/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/15/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/16/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/17/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 3/31/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/3/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/4/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/5/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/6/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/7/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/9/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/11/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/12/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/16/2018 | Universal Goods and Sales | | | | | |

AMAZZIA000061

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

AMAZZIA000062

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| B01DXVK3KY | 4/18/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/20/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/21/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 4/23/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 5/4/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 5/5/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 5/27/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 5/28/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 5/30/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/7/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/11/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/20/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/22/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/23/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/25/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/27/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 6/28/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/12/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/13/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/14/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/16/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/18/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/19/2018 | Universal Goods and Sales | | | | | |
| B01DXVK3KY | 7/20/2018 | Universal Goods and Sales | | | | | |
| B00BP0SSAS | 3/12/2018 | Universal Goods and Sales | | | | | |
| B00BP0SSAS | 3/14/2018 | Universal Goods and Sales | | | | | |
| B00BP0SSAS | 3/15/2018 | Universal Goods and Sales | | | | | |
| B00BP0SSAS | 3/16/2018 | Universal Goods and Sales | | | | | |
| B00BP0SSAS | 3/17/2018 | Universal Goods and Sales | | | | | |
| B00BP0SSAS | 3/19/2018 | Universal Goods and Sales | | | | | |

AMAZZIA000063

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

AMAZZIA000064