LTL ATTORNEYS LLP
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Patice A. Gore (SBN 258776)
  patice.gore@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendant and
Counterclaimant TP-Link USA Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA, <br><br> Defendants. | CASE NO.: 2:19-cv-10374-SB-E <br><br> **DISCOVERY MATTER** <br><br> **TP-LINK USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TERMINATING, OR IN THE ALTERNATIVE ISSUE SANCTIONS, MOTION TO COMPEL RESPONSES TO DISCOVERY, AND REQUEST FOR MONETARY SANCTIONS** <br><br> Date:       Oct. 7, 2022 <br> Time:       9:30 a.m. <br> Courtroom: 750, 7th Floor |

| | |
|---|---|
| Discovery Cutoff: | Sept. 30, 2022 |
| Pretrial Conference: | Dec. 30, 2022 |
| Trial Date: | Jan. 9, 2023 |
| | |
| Complaint Filed: | May 29, 2019 |
| Am. 5th Am. Com. Filed: | May 27, 2022 |

TP-LINK USA CORPORATION,

        Counterclaimant,

    v.

THIMES SOLUTIONS INC.,

        Counter-Defendant.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF ISSUES PRESENTED................................................ 2

III.   RELEVANT FACTS AND PROCEDURAL HISTORY ........................ 5

  A. Thimes Files Five Complaints Alleging Various Theories of
     Liability; the District Court Rejects All of Them and the Ninth
     Circuit Permits Only the Original State Law Claims to Proceed .......... 5

  B. Thimes's False Narrative Is Belied by Its Troubled Amazon
     Business Operations ............................................................................. 5

  C. Thimes Violation of the Court's Discovery Order and
     Concealment of Documents Damaging to Its Case............................... 7

     1.  TP-Link's Discovery Requests and This Court's August 16
         Discovery Order............................................................................ 7

     2.  Thimes's Withholding of Highly Relevant Information and
         Documents in Response to TP-Link's Interrogatory No. 12
         and RFP Nos. 1, 2 and 10 ............................................................. 8

         a)  Thimes's Continued Failure to Provide Discovery About
             Thimes's Violation of Amazon's Platform by Repeated
             Unauthorized Data Mining........................................................ 8

         b)  REDACTED
             Concealed by Thimes ............................................................ 10

     3.  Thimes's Improper Claim of Work Product Protection ............... 12

     4.  The Parties' Meet and Confer Process ......................................... 13

IV.    TERMINATING SANCTIONS ARE APPROPRIATE ......................... 15

V.     IN THE ALTERNATIVE THE COURT SHOULD ORDER ISSUE
       SANCTIONS AND FOR PLAINTIFF TO COMPLY WITH ITS PRIOR ORDER . 20

VI.    THE COURT SHOULD ORDER ADDITIONAL MONETARY
       SANCTIONS ...................................................................................... 20

VII.   CONCLUSION .................................................................................. 21

TP-LINK USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
TERMINATING

# TABLE OF AUTHORITIES

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. 1990) .................................................................16

*Anheuser–Busch, Inc. v. Natural Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) ...................................................................16

*Computer Task Group, Inc. v. Brotby*,
  364 F.3d 1112 (9th Cir. 2004) .........................................................16, 19

*Fulton v. Foley*, No. 17-CV-8696
2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) .........................................17

*In re Application of Republic of Ecuador*,
  280 F.R.D. 506 (N.D. Cal. 2012) ..........................................................17

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ..............................................................................16

*Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*
295 F.R.D. 1 (E.D.N.Y. 2013) ..............................................................20

*United States v. Di Mucci*,
  879 F.2d 1488 (7th Cir. 1989).................................................................16

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998)...................................................................1

*Von Brimer v. Whirlpool Corp.*.
  536 F.2d 838 (9th Cir. 1976)..................................................................20

**Rules**

Fed. R. Civ. P. 26...................................................................................17

Fed. R. Civ. P. 26(b)(1) .........................................................................18

Fed. R. Civ. P. 26(b)(3)(A)..................................................................3, 17

Fed. R. Civ. P. 27............................................................................15, 16

Fed. R. Civ. P. 37(a)(5)(A) .....................................................................21

Fed. R. Civ. P. 37(b) .............................................................................. 13

Fed. R. Civ. P. 37(b)(2)(A)(ii) ............................................................... 20

Fed. R. Civ. P. 37(b)(2)(A)(v) ................................................................ 16

TP-LINK USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TERMINATING

## I.    INTRODUCTION

"There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). For years, Thimes has maintained this suit based on a false narrative that it was expelled by Amazon because of TP-Link's complaints about intellectual property violations. It turns out that during the discovery period, Thimes and its counsel *have intentionally hidden documents* revealing the truth *and continue to do so.* Despite their efforts at gamesmanship, their most recent document dump[1] revealed that REDACTED                                                                there is no evidence that TP-Link's complaints played any role. Even after being caught red-handed, instead of complying with their obligations Thimes and its counsel continue to hide the ball, claiming that the fact of the REDACTED

REDACTED                                                   is somehow "privileged." This Court issued an order instructing the production of *all* documents related to complaints about Thimes and communications with Amazon about Thimes's account. Thimes and its counsel apparently believe this Court's orders permit them to withhold and hide documents that hurt their case.

This egregious conduct must stop. TP-Link moves for terminating sanctions, or in the alternative issue sanctions as to the element causation and an order compelling full compliance with the Court's August 16, 2022 Discovery Order (ECF No. 207). TP-Link further requests an award of fees and costs associated with remedying Thimes's discovery violations.[2]

---

[1] Thimes dumped over 200,000 documents (after TP-Link served its portion of the joint brief for summary judgment) in response to this Court's August 16 Discovery Order granting TP-Link's motion to compel.

[2] This motion is directed at the Magistrate Judge. To the extent the order is dispositive, TP-Link respectfully requests a report and recommendation.

## II.    SUMMARY OF ISSUES PRESENTED

Pending before this Court are Thimes's claims for trade libel and intentional interference with an existing *at-will* contract, and intentional interference with prospective business relationships against TP-Link and Amazzia.[3] *See* ECF No. 178. Thimes's entire case hangs on its bare theory that the at-issue intellectual property complaints were submitted as trademark "counterfeit" because Amazon rejects complaints of trademark infringement. *See* ECF No. 178, ¶ 34. And that it was this number of "counterfeit" complaints about TP-Link products that resulted in Thimes's expulsion. *Id.*, ¶ 69. Thimes has unwaveringly represented that it had a clean record with Amazon until the "counterfeit" complaints about TP-Link products. This is simply not true. Avraham Eisenberg (Thimes's founder and sole proprietor) and his counsel knew its allegations were not true. Thimes knew that it had hundreds of other adverse issues with Amazon unrelated to TP-Link products, including Amazon's expulsion of Thimes due to data mining Amazon's software in violation of Amazon policies (a violation Thimes had previously committed multiple times) that occurred two months before Thimes's permanent expulsion.

TP-Link just learned from Thimes's August 31 document dump that Thimes ***intentionally concealed*** it REDACTED

REDACTED

REDACTED        in Thimes's production. Instead, TP-Link discovered the existence of the

# REDACTED

REDACTED                                            If so, there is no

case against TP-Link.

---

[3] TP-Link's motion for summary judgment filed today addresses why each of these claims fail.

1   Setting aside that Thimes should have disclosed these facts months ago (or at the
2   very least in compliance with the Court's August 16 Discovery Order), Thimes
3   continues its obstructionist behavior. When TP-Link inquired whether Thimes had
4   produced the REDACTED                                    Thimes invoked the
5   protection of work product because "it is a communication with a REDACTED      and
6   was prepared in anticipation of trial" and refused to respond to TP-Link's inquiry
7   because "[y]our queries about the identification of specific documents appear to stem
8   from [the at-issue email], and so given that we are not waiving work product protection,
9   we decline to answer those questions." During the parties' meet and confer, Thimes
10  refused to respond to any questions about the REDACTED   until TP-Link could point to
11  a document produced by Thimes that it deemed was not subject to any privilege or
12  work product doctrine.

13   The fact of the REDACTED                               are of course not
14  privileged; the assertion is a bad-faith attempt to hide documents. Separately, TP-Link
15  challenges Thimes's work product (or any other privilege) designation. A
16  communication by a plaintiff to a REDACTED

17  REDACTED                              is not a document prepared in anticipation of trial
18  and is not work product under FRCP 26(b)(3)(A). Even if it were, the email is
19  discoverable under FRCP 26(b)(3)(A)(i) and (ii).[4]

20   The facts here are simple—Thimes had a long history of violating Amazon's
21  policies and the rights of others. Amazon apparently had enough and kicked Thimes
22  off its platform REDACTED

23  REDACTED

24

25

26  [4] Thimes should be required to produce REDACTED

27  REDACTED

28

1   plainly relevant especially because there is *no evidence* that complaints at issue in this

2   case were a substantial factor.

3      REDACTED                            Thimes and its lawyers have shifted their focus to

4   TP-Link. To gain an advantage, they have hidden documents relevant to the real

5   reasons for the expulsion. Mr. Eisenberg viewed TP-Link as a "billion dollar Chinese

6   company" to shake down and in fact has encouraged others to pursue claims against

7   brand-name companies to see whether they could be "throw[n] 1-200k."[5]

8         Thimes had an obligation to search for and produce all relevant documents early

9   in discovery.[6]  It failed to do so, forcing TP-Link to move to compel discovery related

10   to causation, including all "concerns, claims or complaints" and any documents and

11   communications about Thimes's Amazon account (Interrogatory No. 12 and RFP Nos.

12   2 and 10), and all documents and communications about TP-Link (RFP No. 1). ECF

13   Nos. 201, 206. In granting TP-Link's motion, the Court found that Thimes's "response

14   to many of the subject discovery requests appears to have been ***seriously insufficient***,

15   ***as well as untimely***." ECF No. 207 at 1 (emphasis added).

16         Yet, Thimes continues to defy the Court's order in at least two egregious ways—

17   (1) it has purposefully concealed key documents clearly responsive to RFP Nos. 1, 2,

18   and 10—as evidenced by its failure to produce documents related to REDACTED

19   REDACTED

20   REDACTED and (2) Thimes still has not fully and truthfully responded to Interrogatory No.

21   12—in particular Thimes refuses to provide additional information about its data

22

23   [5] After starting with state law claims, Thimes and its lawyers began indiscriminately
     asserting a variety of federal claims, including under the Lanham Act, Sherman Act,
24   and RICO statutes. Over three years later, countless hours of judicial and party
     resources defending against rounds of pleadings, and a Ninth Circuit appeal, Thimes
25   ended back where it started—with state law claims in its ***Amended Fifth*** Amended
     Complaint (ECF No. 178).
26

27   [6] Thimes identified Amazon in its Initial Disclosures (served June 13, 2022) but made
     no mention of the REDACTED
28

TP-LINK USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
TERMINATING

mining violations of Amazon's software that resulted in an expulsion. The only reason TP-Link even knows about the REDACTED is because of vague references in a privilege log and a document Thimes now claims was "inadvertently produced."

## III.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Thimes Files Five Complaints Alleging Various Theories of Liability; the District Court Rejects All of Them and the Ninth Circuit Permits Only the Original State Law Claims to Proceed

Thimes filed this action on May 29, 2019 asserting the same currently at-issue state law claims. ECF No. 1. In its ever-evolving pleadings, Thimes asserted various federal claims, now all dismissed.[7] *See* ECF Nos. 32, 78, 112, 126. Thimes refused to amend its Fourth Amended Complaint in the manner order by the Court and instead filed an appeal to the Ninth Circuit. *See* ECF Nos. 141, 144-146. The Ninth Circuit affirmed dismissal of federal law claims but reversed as to the state law claims. *See* ECF No. 155.

The reason why this case exists is because Mr. Eisenberg sees TP-Link as a "[b]illion dollar Chinese company" from which "[w]e'll win and we'll collect millions" (Auyang Decl., Ex. 1; *see also id.*, Ex. 2 (same)) and he plans to "throw a big party once tp-link pays for [his] retirement (*id.*, Ex. 3). Mr. Eisenberg targets (and encourages other to do the same) specific companies: "if they're [referring to target companies] big enough to focus on Amazon they're big enough to throw you 1-200k." *Id.*, Ex. 4. The judicial system is not a means for extortion.

### B.   Thimes's False Narrative Is Belied by Its Troubled Amazon Business Operations

Although Thimes's discovery responses remain deficient (in violation of the Court's August 16 Order), what discovery has thus far revealed is that Thimes

---

[7] Such claims were filed by Thimes, in part, on advice to cause "a headache" for TP-Link. Auyang Decl., Ex. 5.

continues to falsely represent that it had an unblemished record with Amazon until the trademark "counterfeit" complaints about TP-Link products: "As of the spring of 2018 Plaintiff was a third-party seller on Amazon and thriving. Aside from a single imposter's complaint, the only IP complaints to Amazon alleging [Thimes's] sale of counterfeit products were the work of TP-Link and Amazzia." ECF No. 78 (Second Amended Complaint)), ¶ 59; *see also* ECF No. 178 (amended Fifth Amended Complaint)), ¶ 58 (same)).

From what can be gleaned from Thimes's deficient discovery responses, Amazon decided to permanently expel Thimes on August 27, 2018 because of its failure to sell authentic products and as a result of a trademark complaint by 3PM Solutions for over 200 products. The last notice that Thimes received from Amazon concerning a TP-Link product was on June 21, 2018. *See* ECF No. 178, ¶ 27. But on July 25, 2018, Amazon sent a follow-up email to Thimes stating that Amazon "still need[ed] more information about [Thimes's] plan to address Inauthenticity complaints." Auyang Decl., Ex. 6. On July 26, Mr. Eisenberg responded, in part, that going forward: "We have instituted the following practices []: 1. We ***now*** only purchase from authorized distributors that are trusted to sell only authentic products. [] We also inspect the condition to ensure it is in full compliance with the Condition Guidelines." *Id*. (emphasis added).

Amazon again expelled Thimes from the Amazon Marketplace on August 3, 2018 (due to authenticity and counterfeit issues unrelated to TP-Link). *See* Auyang Decl., Ex. 7 ("You may no longer sell on Amazon.com because of concerns about the authenticity of the items at the end of this email. [] The sale of counterfeit products on Amazon is strictly prohibited."). On August 8, Amazon closed a product listing for a ***TP-Link product*** due to "a high rate of negative customer experiences," including "2.4GHZ no longer broadcasts. I have tried everything reset back to default settings without success. I paid $279 for a premium product that has failed after 2-1 2 weeks. I

1    want a total refund;" "junk []: i have yet to get this to work. thinking of returning it.

2    had to resort to my trusty asus which cannot keep up;" and "not working good." Auyang

3    Decl., Ex. 8.

4        On August 22, Thimes received a trademark infringement complaint for over

5    200 products (ASINs) made by 3PM Solutions. Auyang Decl., Ex. 9. Thimes admits

6    that the 3PM Solutions' trademark infringement complaint "vigorously advanced" with

7    Amazon and "was particularly harmful to [Thimes]." ECF No. 1, ¶ 68. Indeed, Thimes

8    contends that this complaint "played a critical role in [Thimes's] final expulsion from

9    the Amazon Marketplace. It was 'the straw that broke the camel's back' just prior to

10   Plaintiff's non-appealable expulsion on August 27, 2018." ECF No. 1, ¶ 70. However,

11   to maintain its false narrative against a "billion dollar Chinese company," Thimes

12   quickly dismissed 3PM Solutions and amended its complaint. *See* ECF Nos. 30, 32.

13      **C.**    **Thimes Violation of the Court's Discovery Order and**

14           **Concealment of Documents Damaging to Its Case**

15         **1.**    **TP-Link's Discovery Requests and This Court's August 16**

16             **Discovery Order**

17        On June 2, 2022, TP-Link propounded discovery seeking all "concerns, claims

18   or complaints" regarding Thimes's Amazon account (Interrogatory No. 12 and RFP

19   No. 2), all documents and communications with Amazon concerning Thimes's account

20   (RFP No. 10), and all documents and communications about TP-Link (RFP No. 1).

21   Auyang Decl., Ex. 10. Thimes's refusal to cooperate in the discovery process, including

22   its refusal to produce documents kept in the usual course of business, forced TP-Link

23   to move to compel. *See* ECF Nos. 201, 206.

24        On August 16, 2022, the Court granted TP-Link's motion to compel and ordered

25   supplemental responses and the production of all responsive documents by August 31,

26   2022. ECF No. 207 at 2-3. The Court also ordered for any documents withheld under

27   the claim of attorney-client privilege or the work product doctrine that such documents

28

must be identified with particularity on a privilege log served on or before August 31, 2022. *Id*. at 3. The Court noted that "the discovery thus far provided by [Thimes] in response to many of the subject discovery requests appears to have been ***seriously insufficient***, ***as well as untimely***." *Id*. at 1 (emphasis added).

      **2.**      **Thimes's Withholding of Highly Relevant Information and Documents in Response to TP-Link's Interrogatory No. 12 and RFP Nos. 1, 2 and 10**

           **a)**      **Thimes's Continued Failure to Provide Discovery About Thimes's Violation of Amazon's Platform by Repeated Unauthorized Data Mining**

On August 19, 2022, Thimes served its *second* supplemental response to Interrogatory No. 12. Auyang Decl., Ex. 11.[8] Of particular relevance and responsive to Interrogatory No. 12 was the revocation of Thimes's selling privileges on <u>June 28, 2018</u> (just two months before Thimes was permanently expelled on August 27, 2018) due to prohibited conduct with respect to data mining Amazon's software. This particular issue was brought to Thimes's attention numerous times in reference to Interrogatory No. 12, including during the parties' previous L.R. 37-1 meet and confer conference, as well as in follow-up emails (Auyang Decl., Ex. 12), TP-Link's Motion to Compel (ECF No. 201-1, 18:7-19:10) and Supplemental Memo (ECF No. 206, 2:16-20), and TP-Link's Opposition to Thimes's Motion to Compel (ECF No. 205, at 3:12-20).

The data mining violation demonstrates Thimes's disregard for the rules of the Amazon platform. Indeed, Amazon called out Thimes's past violations over the same activity:

---

[8] Although the Court's August 16 Discovery Order required Thimes to supplement by August 31, Thimes served its *second* supplemental response early to try and obviate issues raised during the parties' August 15 meet and confer concerning TP-Link's impending motion for summary judgment.

Because **we have warned you about similar activities in the past**, your account has been suspended and will not be reactivated unless you acknowledge that you understand our policies, reaffirm your commitment to adhere to them, and communicate your plan of action to avoid these activities (and any similar activities) in the future. To sell on Amazon.com, please send us a plan that explains how you will address this problem.

Auyang Decl., Ex. 13. Thimes produced only one email dated July 1, 2018 to Amazon concerning violation of Amazon's API that refers to a different violation notice on <u>June 29</u>, 2018. Auyang Decl., Ex. 14 ("[Thimes] received a violation regarding our use of the Amazon API on 06/29/2018."). Thimes's July 1, 2018 email to Amazon also refers to a past violation that involved improperly "altering" the Amazon platform: "Additionally, our former developer was responsible for testing a large volume of ASINs for safety risks and hazmat status. ***In the past, we addressed this issue with your team and had in fact ceased any actions that may have altered the accuracy of the Amazon platform at least one year ago (shipment creation)***." *Id*. (emphasis added). Furthermore, Thimes's July 1, 2018 email refers to working with Amazon: "We have immediately ceased the use of MWS services as we work with your team to resolve this issue." *Id*.

Yet, Thimes continues to avoid providing any additional information or documents. Thimes's *third* supplemental response to Interrogatory No. 12 added approximately over 200 additional cites to documents related to "concerns, claims or complaints" regarding Thimes's Amazon account for a total of approximately 320 documents. Auyang Decl., Ex. 15. But this third supplemental response continues to remain deficient with respect to the data mining violations. Specifically, Thimes's simply added documents cites pursuant to FRCP 33(d), but none of these documents show a relation to the data mining issue: Bates Nos. THIMES180569 (Amazon's July 5, 2018 removal of Thimes's account selling privileges due to the sale of inauthentic *Apple charging USB cables*); THIMES180795 (appeal of a suspension with invoices

1  for certain products); THIMES00306 (July 8, 2018 email from Amazon reinstating

2  Thimes's selling privileges, with no explanation about which of the numerous

3  suspensions this relates); and THIMES180919 (same content as THIMES00306).

4  Auyang Decl., Ex. 16.

5      As would be responsive to RFP Nos. 2 and 10, TP-Link has thus far found

6  nothing else in Thimes's production about the data mining issue, such as the past

7  violations mentioned in Amazon's email, the violation notice from Amazon received

8  by Thimes on June 29, 2018, Thimes work with Amazon to resolve the issue (as

9  mentioned in Thimes's email), and when and why Amazon reinstated Thimes's

10 account. Amazon's closure of Thimes's account for a serious and recurring issue

11 unrelated to Defendants two months before Amazon expelled Thimes from the Amazon

12 Marketplace on August 27, 2018 and multiple related warnings are relevant to TP-

13 Link's defense.

14      **b)**  REDACTED

15          **Concealed by Thimes**

16      Responsive to RFP Nos. 2 and 10, TP-Link discovered on September 1, 2022,

17 that Thimes had intentionally concealed that it REDACTED

18 REDACTED

19 REDACTED                                                                  when it

20 discovered an email referring to the REDACTED as part of Thimes's belated dump of

21 200,000 documents on August 31. Auyang Decl., ¶ 18.

22      It appears from Thimes's privilege log[9] that the REDACTED

23 REDACTED

24 _____

25 [9] Thimes's 195-page privilege log was produced as a PDF and is not in chronological
   order or Bates No. order, making it more difficult to review. During the parties'
26 September 7 meet and confer, TP-Link's counsel asked for Thimes to provide its
   privilege log in Excel. Auyang Decl., ¶ 19. Thimes's counsel responded that he would
27 consider it. *Id*.

28

1  (Auyang Decl., ¶ 20). This case was filed in May 2019, and it would be implausible for

2  Thimes's counsel to not know of its existence and/or inquire with their client about the

3  REDACTED

4      On June 2, 2022, TP-Link served these key discovery requests (after rounds of

5  motion practice and Thimes's Ninth Circuit appeal). Yet, Thimes continued to conceal

6  the REDACTED          and when caught refused to engage because it argued that TP-

7  Link learned about the REDACTED in an email covered by work product protection and

8  the REDACTED    s not responsive to TP-Link's requests (such that Thimes did not need

9  to produce), and it had not yet taken an inventory of its own production. Auyang Decl.,

10  Ex. 17.

11      How Thimes could plausibly argue that the REDACTED

12  REDACTED                  s not within the scope of TP-Link's discovery requests sums

13  up its counsel's behavior throughout this litigation.

14      RFP No. 2 requests: "All DOCUMENTS and COMMUNICATIONS related to

15  any *concerns, claims, or complaints regarding THIMES* …."

16      RFP No. 10 requests: "All DOCUMENTS and COMMUNICATIONS with

17  AMAZON *CONCERNING THIMES's account* …."

18      The Court's August 16 Discovery Order compelled Thimes on these requests.

19  Yet, TP-Link has not been able to locate any documents related to the REDACTED

20  REDACTED                   in Thimes's production. Thimes is in clear violation

21  of the Court's August 16 Discovery Order.

22      Moreover, Thimes's Initial Disclosures (served June 13, 2022) never identified

23  the REDACTED   Instead, Thimes identified Amazon as likely to be in possession of

24  discoverable information for two issues: "[TP-Link's] communications and

25  interactions with Amazon regarding resolution of intellectual property complaints, and

26  Amazon has "[d]ocuments regarding the submission and resolution of intellectual

27  property complaints with Amazon." Auyang Decl., Ex. 18.

28

### 3. Thimes's Improper Claim of Work Product Protection

Thimes produced an email thread with the subject line REDACTED

# REDACTED

REDACTED        *See* Auyang Decl., Ex. 19 (*see* TP-Link's Motion to Seal filed concurrently). Both are not lawyers. There is no attorney included on this email thread. No legal advice was sought. REDACTED

REDACTED

# REDACTED

---

[10] This is not true and disputed in TP-Link's motion for summary judgment, otherwise, such "evidence" would be front and center in any one of Thimes's five complaints.

# REDACTED

*Id.*

# REDACTED

Thimes's failure to produce any documents related to the REDACTED reeks of bad faith and is in violation of the Court's August 16 Discovery Order.

### 4. The Parties' Meet and Confer Process

Because Thimes's *second* supplemental response to Interrogatory No. 12 remained deficient as the data mining issue, on August 29, TP-Link sent an email requesting a L.R. 7-3 meet and confer stating: "Pursuant to FRCP 37(b) TP-Link will seek at least the following—issue sanctions regarding causation, an order finding Thimes in contempt, and reasonable expenses (including attorneys' fees)." Auyang Decl., Ex. 20.

Thimes did not acknowledge TP-Link's meet and confer request until August 31, 2022, when Thimes served its *third* supplemental response to Interrogatory No. 12 stating that its third supplemental response "moots TP-Link's request for a meet and confer regarding the second supplemental interrogatory responses." Auyang Decl., Ex.

17. Thimes also dumped approximately 200,000 documents that it been withholding. Auyang Decl. ¶ 18.

On Sept. 1, TP-Link sent an email stating: "We are working on processing and reviewing Thimes's 8/31 production. In considering whether to conduct a L.R. 7-3 conference, please let us know the following: []." TP-Link also asked for Thimes's availability: "Please let us know today, otherwise, we are available for a L.R. 7-3 conference tomorrow (9/2) from 9:30 am – noon PT." Auyang Decl., Ex. 17.

Later that evening, when TP-Link discovered in Thimes's August 31 document dump that Thimes had REDACTED

REDACTED

REDACTED        TP-Link sent a follow-up email asking about these highly relevant documents. *Id*. TP-Link asked Thimes about its "availability for a L.R. 7-3 conference tomorrow (9/2) concerning Thimes's document production." *Id*.

In response on Sept. 2, Thimes's counsel invoked work product protection:

> Regarding THIMES189260,[11] it looks like that was inadvertently produced. That document is covered by **work product, as it is a** REDACTED
>
> REDACTED

*Id*. Thimes's counsel refused to respond to TP-Link's questions because (1) the questions "stem" from protected work product; and (2) it did not know what was in its August 31 document dump:

> Your queries about the identification of specific documents appear to stem from THIMES189260, and so given that we are not waiving work product protection, we decline to

---

[11] THIMES189260 is part of the same at-issue email thread. A more complete version of the email thread is THIMES189245-THIMES189249. Auyang Decl., Ex. 19.

1   answer those questions. But in general, as for whether we
2   have produced any specific documents, due the volume of
3   the production and the limited time we had to gather, process,
4   and produce these documents in order to comply with the
5   court order, **we have not made an inventory of our**
6   **production**. We therefore are unable to tell you at this time
7   as to the bates number of any specific document, should you
8   make any additional document identification requests.

9   *Id*. (emphasis added). The names REDACTED do not appear on
10  Thimes's August 31, 2022 privilege log. Auyang Decl., ¶ 20. As part of the ongoing
11  meet and confer process, the parties held a conference call on September 8. Auyang
12  Decl. ¶ 21. Thimes refused to respond to any questions about the REDACTED until TP-
13  Link could point to a document produced by Thimes that it deemed was not subject to
14  any privilege or work product doctrine. *Id*. As the parties meet and confer process
15  continued, Thimes's counsel made various unacceptable offers, including avoiding the
16  production of any REDACTED Auyang Decl.,
17  Ex. 21.

18  **IV.   TERMINATING SANCTIONS ARE APPROPRIATE**

19      To maintain its false narrative, Thimes failed to obey the Court's August 16
20  Discovery Order requiring it to respond to key discovery related to causation served
21  over three months ago—requests that seek all "concerns, claims or complaints"
22  regarding Thimes's Amazon account (Interrogatory No. 12 and RFP No. 2), all
23  documents and communications with Amazon concerning Thimes's account (RFP No.
24  10), and all documents and communications about TP-Link (RFP No. 1). Auyang
25  Decl., Ex. 10. TP-Link requests that the Court impose terminating sanctions.

26      Federal Rule of Civil Procedure 37 states that "[i]f a party ... fails to obey an
27  order to provide or permit discovery ... the court where the action is pending may issue
28

1   further just orders" including "dismissing the action or proceeding in whole or in part."

2   Fed. R. Civ. P. 37(b)(2)(A)(v). Rule 37 sanctions "must be both 'just' and specifically

3   related to the particular 'claim' that was at issue in the discovery order." *Ins. Corp. of*

4   *Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982).

5     "Before imposing the harsh sanction of dismissal, the district court must weigh

6   several factors: (1) the public's interest in expeditious resolution of the litigation; (2)

7   the court's need to manage its docket; (3) the risk of prejudice to the party seeking

8   sanctions; (4) public policy favoring disposition of cases on their merits; and (5) the

9   availability of less drastic sanctions." *Anheuser–Busch, Inc. v. Natural Beverage*

10  *Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (internal citations omitted). Where, as

11  here, "a court order is violated, the first two factors support sanctions and fourth factor

12  cuts against [case dispositive sanctions]. Therefore, it is the third [prejudice] and fifth

13  [availability of less drastic sanctions] factors that are decisive." *Adriana Int'l Corp. v.*

14  *Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

15    "(F)ailure to produce documents as ordered … is considered sufficient

16  prejudice." *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004).

17  Thus, the third factor weighs in favor of imposition of sanctions. Some cases uphold

18  dismissal where discovery violations have prejudiced the opposing party without

19  considering lesser sanctions. *See, e.g., United States v. Di Mucci,* 879 F.2d 1488, 1494-

20  95 (7th Cir. 1989).

21    In issuing its August 16 Discovery Order, the Court had already determined that

22  "the discovery thus far provided by [Thimes] in response to many of the subject

23  discovery requests appears to have been ***seriously insufficient***, ***as well as untimely***."

24  ECF No. 207 at 1 (emphasis added). Belatedly dumping 200,000 documents near the

25  end of discovery does little to address "seriously insufficient" responses when critical

26  documents (*i.e.*, REDACTED    related to causation are purposefully

27  concealed. When TP-Link dared to question if Thimes produced such documents,

28

1     Thimes hides behind a sham work product claim and forces TP-Link to expend
2     additional resources to challenge.

3        **First**, Thimes failed to produce and refuses to produce (in compliance with
4     FRCP 26) documents related to REDACTED

5     REDACTED                        —the very causation issue the
6     parties are litigating here. Thimes has the burden of proving causation; its attempt to
7     hide documents relevant to the issue—even after this Court ordered production—is
8     undoubtedly prejudicial.

9        **Second**, Thimes's refusal to produce the documents because an email revealing
10     the fact is supposedly "work product" is in bad faith (and a red herring). As an initial
11     matter, the facts of the REDACTED
12     are not privilege. Independently, Thimes's contention that email between REDACTED
13     REDACTED            constitutes work product is meritless. "The work product
14     doctrine is to be narrowly construed as 'its application can derogate from the search for
15     the truth.' The party seeking to invoke the work product doctrine bears the burden of
16     establishing all the requisite elements, and any doubts regarding its application must
17     be resolved against the party asserting the protection." *In re Application of Republic of*
18     *Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012) (citation omitted). Thimes cannot meet
19     this burden. Communications between two-non lawyers for the sole purpose of seeking
20     REDACTED        do not constitute work product. Auyang Decl., Ex. 19. *See Fulton v.*
21     *Foley*, No. 17-CV-8696, 2019 WL 6609298, at *4 (N.D. Ill. Dec. 5, 2019) (ordering
22     plaintiff to produce "***any statements provided by plaintiff directly***, if any, that was
23     provided to [the funder].") (emphasis added).

24        This communication also does not constitute a document or tangible thing
25     prepared in anticipation of trial. And even if the Court were to find the at-issue email
26     constitutes "factual" work product, if this case moves forward, such a communication
27     can be discovered under FRCP 26(b)(3)(A)(i) and (ii). The email is discoverable under
28

Rule 26(b)(1) as this communication is directly relevant to causation and not privileged. TP-Link also has a substantial need for this communication to prepare its case, and cannot, without undue hardship, obtain equivalent information by other means—asking Thimes if its case has causation issues will not elicit the same response found in the email. Thimes should also be required to produce all such similar documents, *i.e.*, REDACTED                                           Thus, the Court need look no further to find terminating sanctions are warranted.

   ***Third***, even if analysis of the availability of less drastic sanctions is required, this factor also weighs in favor of termination because lesser sanctions would not address prejudice already suffered by TP-Link and prejudice to TP-Link going forward.

   Allowing Thimes to proceed with litigating this action has already prejudiced TP-Link because Thimes should have disclosed and produced documents related the REDACTED          months ago, and most certainly prior to TP-Link serving its motion for summary judgment on August 22. TP-Link's motion for summary judgement raises causation issues to which REDACTED

REDACTED                                             is certainly pertinent. The Court's Order re: Motions for Summary Judgment does not permit supplementation to TP-Link's Joint Appendix of Facts "in any way." ECF No. 172, 4. Yet, Thimes's opposition to TP-Link's motion for summary judgment relies heavily on the complaints about TP-Link products to speculate that this was ***the*** definitive cause of its permanent expulsion—submitting three declarations in support (Eisenberg, Victor Meng, and Mikhail Fikhman), but conspicuously omits any reference to the REDACTED REDACTED or that it served a *third* supplemental response to Interrogatory No. 12).

   Thimes's third supplemental response to Interrogatory No. 12 (served on August 31) *added* over 200 additional documents cites relying on FRCP 33(d) concerning "concerns, claims or complaints" regarding Thimes's Amazon account for a total of approximately 320 documents (Auyang Decl., Ex. 15)—documents that TP-Link

1  would need time to review and in any case TP-Link is not permitted under the Court's

2  rules to supplement its motion for summary judgment.

3  Importantly, the documents Thimes are hiding are directly relevant to rebutting

4  Thimes's misleading representations to the Court about the number of adverse issues

5  it had with Amazon and the reason for its expulsion. "An important purpose of

6  discovery is to reveal what evidence the opposing party has, thereby helping determine

7  which facts are undisputed—perhaps paving the way for a summary judgment

8  motion—and which facts must be resolved at trial." *Computer Task Group*, 364 F.3d

9  at 1117. Thimes's gamesmanship should not be rewarded.

10  Even if, as requested by TP-Link in the alternative below, Thimes is precluded

11  from arguing that TP-Link conduct was not a substantial factor in causing Thimes's

12  harm, TP-Link will still be prejudiced both with regards to its motion for summary

13  judgement and trial. The names REDACTED lo not appear on Thimes's

14  privilege log. Auyang Decl., ¶ 20. It is apparent that Thimes intended to conceal this

15  communication that was "inadvertently produced."

16  Moreover, the fact that Thimes cited Bates Nos. in response to Interrogatory No.

17  12 in its *third* supplemental response unrelated to the data mining issues after repeated

18  requests by TP-Link for discovery on this issue, demonstrates a continual and willful

19  obstructionist behavior. It is obvious that Thimes refuses to provide discovery as to its

20  ongoing violations of the Amazon platform and issues with Amazon because it cuts

21  into its false narrative.

22  Moving forward, Thimes's representations to both the Court and TP-Link cannot

23  be trusted. Lesser sanctions will not address the prejudice to TP-Link and therefore

24  should not be considered.

TP-LINK USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
TERMINATING

## V.     IN THE ALTERNATIVE THE COURT SHOULD ORDER ISSUE SANCTIONS AND FOR PLAINTIFF TO COMPLY WITH ITS PRIOR ORDER

For failure to obey a discovery order, the court may order the disobedient party "precluded" from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence. FRCP 37(b)(2)(A)(ii); *Von Brimer v. Whirlpool Corp.*. 536 F.2d 838, 844 (9th Cir. 1976); *Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc*. 295 F.R.D. 1, 5 (E.D.N.Y. 2013) (preclusion of evidence warranted due to willful obstruction and obfuscation).

If the Court does not impose terminating sanctions on Plaintiff, TP-Link requests that issue sanctions be imposed such that Thimes is barred from introducing in opposition to TP-Link's motion for summary judgment or at trial any evidence that TP-Link was the supposed cause of any purported harm to Thimes.

Thimes should also be ordered to respond in compliance with the Court's August 16, 2022 Discovery Order by providing complete responses to Interrogatory No. 12 and RFP Nos. 1, 2, and 10, including any communications or documents related to the REDACTED                                                                                          Its production should also be specifically indexed in folders to provide clear guidance as to the subject matter of the documents, rather than allowing Thimes to just dump a massive number of documents as it did on August 31 in order to obfuscate deficiencies.

Thimes should also be required to produce an Excel copy of its 195-page privilege log (which was produced in PDF and not in chronological or Bates No. order).

## VI.    THE COURT SHOULD ORDER ADDITIONAL MONETARY SANCTIONS

If a Motion to Compel a party to answer a question at a deposition, respond to an interrogatory, or produce documents in response to demand for inspection is granted, or if the disclosure or requested discovery is provided after the motion was

filed, the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A) and Fed. R. Civ. P. 37(b)(2)(C).

TP-Link requests attorneys' fees and costs as a result of Thimes's failure to abide by its discovery obligations. If the Court so grants, TP-Link will provide the Court with the necessary information.

## VII. CONCLUSION

For the foregoing reasons, TP-Link respectfully requests that the Court dismiss Thimes's claims with prejudice or in the alternative, issue an order: (1) precluding Thimes from proffering evidence in opposition to TP-Link's motion for summary judgment or at trial that TP-Link in anyway caused harm to Thimes; (2) requiring Thimes to comply with the Court's prior discovery order, ECF No. 207, within three days, including by providing complete responses to Interrogatory No. 12 and RFP Nos. 1, 2, and 10; and (3) requiring Thimes to pay monetary sanctions to TP-Link in the amount to be determined by the Court.

Date:  September 9, 2022

LTL ATTORNEYS LLP

By:  */s/ Heather F. Auyang*
Joe H. Tuffaha
Prashanth Chennakesavan
Heather F. Auyang
Patice A. Gore

Counsel for Defendant and
Counterclaimant
TP-Link USA Corporation