1  LTL ATTORNEYS LLP
2  Joe H. Tuffaha (SBN 253723)
     joe.tuffaha@ltlattorneys.com
3  Prashanth Chennakesavan (SBN 284022)
     prashanth.chennakesavan@ltlattorneys.com
4  Heather F. Auyang (SBN 191776)
     heather.auyang@ltlattorneys.com
5
6  Patice A. Gore (SBN 258776)
     patice.gore@ltlattorneys.com
7  300 South Grand Ave., 14th Floor
8  Los Angeles, CA 90071
   Tel: (213) 612-8900
9  Fax: (213) 612-3773
10
11 Attorneys for Defendant and
   Counterclaimant TP-Link USA Corporation
12
13 (additional counsel listed on following page)
14
15             UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
16
                    WESTERN DIVISION
17
   THIMES SOLUTIONS INC.,               CASE NO.: 2:19-cv-10374-SB-E
18
19          Plaintiff,                  **<u>DISCOVERY MATTER</u>**
20      v.                              **JOINT STIPULATION REGARDING
                                        TP-LINK USA'S MOTION FOR
21 TP-LINK USA CORPORATION, and         TERMINATING, OR IN THE
22 AUCTION BROTHERS, INC. d/b/a         ALTERNATIVE ISSUE
   AMAZZIA,                             SANCTIONS, MOTION TO
23                                      COMPEL RESPONSES TO
                                        DISCOVERY, AND REQUEST FOR
24          Defendants.                 MONETARY SANCTIONS**
25
26                                      **THIMES'S REQUEST FOR AN
                                        ORDER TO SHOW CAUSE AND
27                                      MONETARY SANCTIONS**
28
                                        No. 2:19-cv-10374-SB-E

1
2
3
4
5
6
7
8

Date:          Oct. 14, 2022
Time:          9:30 a.m.
Courtroom:  750, 7th Floor

Discovery Cutoff:        Sept. 30, 2022
Pretrial Conference:    Dec. 30, 2022
Trial Date:                  Jan. 9, 2023

Complaint Filed:        May 29, 2019
Am. 5th Am. Com. Filed: May 27, 2022

9
10      TP-LINK USA CORPORATION,
11                       Counterclaimant,
12              v.
13      THIMES SOLUTIONS INC.,
14
15                       Counter-Defendant.
16
17
18
19
20
21
22
23
24
25
26
27
28

RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
MARK POE (S.B. #223714)
 mpoe@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

MARK SCHLACHET (pro hac vice)
markschlachet@me.com
43 West 43d Street, Suite 220
New York, New York 10036
Telephone: (216) 225-7559
Facsimile: (216) 932-5390

Attorneys for Plaintiff
Thimes Solutions Inc.

# **TABLE OF CONTENTS**

I.     TP-LINK'S INTRODUCTORY STATEMENT .......................................... 1

II.    THIMES'S INTRODUCTORY STATEMENT ........................................... 2

III.   TP-LINK'S POSITION ON THE ISSUES IN DISPUTE ........................ 5

       A.  THIMES'S WITHHOLDING OF HIGHLY RELEVANT
           INFORMATION AND DOCUMENTS IN RESPONSE TO TP-
           LINK'S INTERROGATORY NO. 12 AND RFP NOS. 1, 2 AND
           10 IN VIOLATION OF THE COURT'S AUGUST 16
           DISCOVERY ORDER ................................................................. 5

           1.  Summary of Issues Presented ........................................ 5

           2.  Relevant Facts and Procedural History .......................... 8

               a)  Thimes Files Five Complaints Alleging Various Theories
                   of Liability; the District Court Rejects All of Them and
                   the Ninth Circuit Permits Only the Original State Law
                   Claims to Proceed .................................................... 8

               b)  Thimes's False Narrative Is Belied by Its Troubled
                   Amazon Business Operations ...................................... 9

               c)  Thimes Violation of the Court's Discovery Order and
                   Concealment of Documents Damaging to Its Case .............. 10

                   (1) TP-Link's Discovery Requests and This Court's
                       August 16 Discovery Order ................................ 10

                   (2) Thimes's Continued Failure to Provide Discovery
                       About Thimes's Violation of Amazon's Platform by
                       Repeated Unauthorized Data Mining ..................... 12

                   (3 REDACTED
                       Concealed by Thimes ......................................... 15

                   (4) Thimes's Improper Claim of Work Product
                       Protection ..................................................... 17

                   (5) The Parties' Meet and Confer Process .................... 18

       B.  TERMINATING SANCTIONS ARE APPROPRIATE .................... 20

       C.  IN THE ALTERNATIVE THE COURT SHOULD ORDER
           ISSUE SANCTIONS AND FOR PLAINTIFF TO COMPLY
           WITH ITS PRIOR ORDER ....................................................... 25

D. THE COURT SHOULD ORDER ADDITIONAL MONETARY SANCTIONS ........................................................................ 25

IV. THIMES'S POSITION ON THE ISSUES IN DISPUTE .......................... 26

A. STATEMENT OF FACTS. ....................................................... 26

1. Thimes's Objections to TP-Link's Document Requests. ............. 26

2. Thimes Collects, Logs, and Produces Documents. ..................... 27

3. TP-Link Meets and Confers with Thimes. ............................... 30

B. TP-LINK FRIVOLOUSLY ARGUES THAT THIMES' THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 IS INCOMPLETE. .................................................................... 33

C. TP-LINK COMPLIED WITH ITS DOCUMENT PRODUCTION AND DISCOVERY OBLIGATIONS. ........................................... 36

D. THIMES'S DOCUMENTS ARE ATTORNEY-CLIENT PRIVILEGED OR WORK PRODUCT. ...................................... 39

E. TERMINATING SANCTIONS AGAINST THIMES WOULD CONSTITUTE REVERSIBLE ERROR EVEN IF THIMES HAD VIOLATED THE DISCOVERY ORDER. .................................... 42

F. TP-LINK'S REQUESTED PRECLUSION SANCTIONS AGAINST THIMES WOULD ALSO CONSTITUTE REVERSIBLE ERROR. ................................................................ 46

G. THE COURT SHOULD SANCTION TP-LINK FOR ITS WILLFUL AND REPEATED USE OF A DOCUMENT THIMES HAS DESIGNATED AS WORK PRODUCT. .................... 48

V. TP-LINK'S CONCLUSION ........................................................ 52

VI. THIMES'S CONCLUSION ........................................................ 52

# TABLE OF AUTHORITIES

**Cases**

*Adriana Int'l Corp. v. Thoeren,*
  913 F.2d 1406 (9th Cir. 1990) ......................................................................21
*Am. Unites for Kids v. Rousseau,*
  985 F.3d 1075 (9th Cir. 2021) ......................................................................43
*Anheuser–Busch, Inc. v. Natural Beverage Distributors,*
  69 F.3d 337 (9th Cir. 1995) ..........................................................................21
*Bockrath v. Aldrich Chemical Co., Inc.,*
  21 Cal. 4th 71 (1999) ....................................................................................46
*Cerner Middle E. Ltd. v. Belbadi Enterprises LLC,*
  939 F.3d 1009 (9th Cir. 2019) .........................................................37, 38, 46
*Clark v. Superior Court,*
  196 Cal. App. 4th 37 (2011) .........................................................................50
*Compass Bank v. Morris Cerullo World Evangelism,*
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) ........................................................45
*Computer Task Group, Inc. v. Brotby,*
  364 F.3d 1112 (9th Cir. 2004) ...........................................................21, 24, 44
*Continental Circuits,*
  435 F. Supp. 3d 1023 .....................................................................................41
*Devon It, Inc. v. IBM Corp.,*
  No. CIV.A. 10-2899, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012).............40
*Doe v. Soc'y of Missionaries of Sacred Heart,*
  No. 11-CV-02518, 2014 WL 1715376, (N.D. Ill. May 1, 2014) ...................40
*Eldridge v. Block,*
  832 F.2d 1132 (9th Cir. 1987) .......................................................................45
*Everett v. Am. Gen. Life. Ins. Co.,*
  703 F. App'x 481 (9th Cir. 2017) ..................................................................44
*Fulton v. Foley,*
  No. 17-CV-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ..............22, 41
*Gomez v. Vernon,*
  255 F.3d 1118 (9th Cir. 2001) ....................................................................4, 50
*Grancare, LLC v. Thrower by and through Mills,*
  889 F.3d 543 (9th Cir. 2018) .........................................................................46
*Henry v. Gill Industries, Inc.,*
  983 F.2d 943 (9th Cir. 1993) .........................................................................43
*Hernandez v. City of El Monte,*
  138 F.3d 393 (9th Cir. 1998) .........................................................................45
*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.,*
  No. EDCV-17-1388-ABK(KX), 2018 WL 8193374 (C.D. Cal. May 14, 2018)....40

*In re Application of Republic of Ecuador*,
  280 F.R.D. 506 (N.D. Cal. 2012) ........................................................................22
*In re Exxon Valdez*,
  102 F.3d 429 (9th Cir. 1996) .................................................................................4
*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) .............................................................................33
*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)..............................................................................................21
*Jensen v. Indianapolis Pub. Sch.*,
  No. 116CV02047TWPDLP, 2019 WL 911241, (S.D. Ind. Feb. 22, 2019) ......49, 51
*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
  No. CV 16-538, 2018 WL 466045 (W.D. Pa. Jan. 18, 2018) .................................40
*Liberty Ins. Corp. v. Brodeur*,
  41 F.4th 1185 (9th Cir. 2022 .............................................................42, 43, 45, 46
*Marshall v. McGill*,
  No. CV 10-01436-PHX-ECV, 2011 WL 13118589 (D. Ariz. June 8, 2011) ...49, 51
*McDermott Will & Emery LLP v. Superior Court*,
  10 Cal. App. 5th 1083 (2017) ..............................................................................50
*Muro v. Target Corp.*,
  250 F.R.D. 350 (N.D. Ill. 2007)...........................................................................39
*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ...............................................................................46
*Perez v. DirecTV Grp. Holdings, LLC*,
  No. SACV1601440JLSDFMX, 2020 WL 2078257 (C.D. Cal. Mar. 5, 2020).......40
*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
  673 F.2d 1240 (9th Cir. 2012) .............................................................................47
*Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*,
  335 F.R.D. 371 (E.D. Mich. 2020) ......................................................................49
*Rainey v. Plainfield Cmty. Consol. Sch. Dist.*
  No. 202, 2009 WL 1033654  (N.D. Ill. Apr. 16, 2009).........................................39
*Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*
  295 F.R.D. 1 (E.D.N.Y. 2013)..............................................................................25
*STO Home Delivery Inc. v. Blue Package Delivery, LLC*,
  No. 2:19-CV-00314-SB-JEM, 2021 WL 3598723 (C.D. Cal. March 23, 2021) 4, 42
*Stockman v. Oakcrest Dental Ctr.*,
  480 F.3d 791 (6th Cir. 2007) ...............................................................................51
*Sw. Reg'l Council of Carpenters v. Limon*,
  No. 17-CV-6582-DSF (MRWX), 2018 WL 6003618 (C.D. Cal. May 4, 2018) ....51
*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  No. CV 08-1885-GHK AGRX, 2013 WL 2278122 (C.D. Cal. May 20, 2013) ....50

*U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
  857 F.2d 600 (9th Cir. 1988) ..............................................................42, 43, 44, 45
*United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*,
  502 F. Supp. 3d 62 (D.D.C. 2020)......................................................................49
*United States v. Di Mucci*,
  879 F.2d 1488 (7th Cir. 1989) ...........................................................................21
*United States v. Sierra Pac. Indus., Inc.*,
  862 F.3d 1157 (9th Cir. 2017) ...........................................................................37
*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998) .............................................................................1
*Von Brimer v. Whirlpool Corp.*.
  536 F.2d 838 (9th Cir. 1976) .............................................................................25
*Willis Elec. Co. v. Polygroup Trading Ltd.*,
  No. 15-CV-3443-WMW-KMM, 2021 WL 568454 (D. Minn. Feb. 16, 2021).......39
*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ...........................................................................47

**Rules**

Fed. R. Civ. P. 26.............................................................................................20, 49
Fed. R. Civ. P. 26(a)(1)(A)(i).................................................................................37
Fed. R. Civ. P. 26(a)(1)(A)(ii)................................................................................37
Fed. R. Civ. P. 26(b)(3)(A)..................................................................................6, 40
Fed. R. Civ. P. 26(b)(3)(A)(i) and (ii)...................................................................6, 23
Fed. R. Civ. P. 26(b)(5)..........................................................................47, 48, 50, 52
Fed. R. Civ. P. 26(b)(5)(B)..............................................................................passim
Fed. R. Civ. P. 33(d)..............................................................................................14
Fed. R. Civ. P. 37..................................................................................................21
Fed. R. Civ. P. 37(a)(5)(A)....................................................................................26
Fed. R. Civ. P. 37(a)(5)(B)....................................................................................51
Fed. R. Civ. P. 37(b).............................................................................................18
Fed. R. Civ. P. 37(b)(2)(A)(ii)...............................................................................25
Fed. R. Civ. P. 37(b)(2)(A)(v)...............................................................................21
Fed. R. Civ. P. 37(c)(1).........................................................................................47

**Other Authorities**

Fed. R. Evid. 408 .................................................................................................51

TP-LINK USA'S JOINT STIPULATION RE: MOTION FOR SANCTIONS

## I.   TP-LINK'S INTRODUCTORY STATEMENT

"There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). For years, Thimes has maintained this suit based on a false narrative that it was expelled by Amazon because of TP-Link's complaints about intellectual property violations. It turns out that during the discovery period, Thimes and its counsel *have intentionally hidden documents* revealing the truth *and continue to do so.* Despite their efforts at gamesmanship, their most recent document dump[1] revealed that REDACTED                                                                      there is no evidence that TP-Link's complaints played any role. Even after being caught red-handed, instead of complying with their obligations Thimes and its counsel continue to hide the ball, claiming that the fact of the

REDACTED                                                      s somehow "privileged." This Court issued an order instructing the production of *all* documents related to complaints about Thimes and communications with Amazon about Thimes's account. Thimes and its counsel apparently believe this Court's orders permit them to withhold and hide documents that hurt their case.

This egregious conduct must stop. TP-Link moves for terminating sanctions, or in the alternative issue sanctions as to the element causation and an order compelling full compliance with the Court's August 16, 2022 Discovery Order (ECF No. 207). TP-Link further requests an award of fees and costs associated with remedying Thimes's discovery violations.[2]

---

[1] Thimes dumped over 200,000 documents (after TP-Link served its portion of the joint brief for summary judgment) in response to this Court's August 16 Discovery Order granting TP-Link's motion to compel. Attached hereto as Ex. 1 to the Declaration of Heather Auyang ("Auyang Decl.") is the Scheduling Order in this matter (ECF No. 170).

[2] This motion is directed at the Magistrate Judge. To the extent the order is dispositive, TP-Link respectfully requests a report and recommendation.

## II.    THIMES'S INTRODUCTORY STATEMENT

TP-Link's ridiculous—and untimely[3]—motion reflects the dire straits it faces before a jury starting January 9, 2023.  Discovery has uncovered that, between January 12 to July 20, 2018, TP-Link caused the filing of **73** complaints with Amazon falsely accusing Thimes of selling counterfeit TP-Link products—nearly **3 times** what Thimes had suspected when it filed this lawsuit.  (Fikhman Decl. ¶ 13, ECF No. 224 at page 301 of 330.)  Discovery has also revealed that TP-Link expected that these complaints would result in Amazon expelling Thimes from the Amazon Marketplace.  (Fikhman Decl., Ex. 64, ECF No. 224 at page 321 of 330 ("[When] can I get prediction if [Thimes] will be removed this week?").  And discovery has unearthed that TP-Link never had any counterfeiting concerns; rather, it wanted Thimes removed because "our promotion plan are all postponed or cancelled because of the price" Thimes offered to sell TP-Link products.  (*Id.*)  TP-Link's underhanded methods worked, as they were a substantial factor in causing Amazon to terminate its relationship with Thimes, thereby destroying a business that had achieved over $3 million in sales revenue on the Amazon Marketplace at the time of its expulsion.[4]

Hoping to avoid having to answer for its actions, TP-Link first filed an ill-advised motion for summary judgment where it misrepresented facts to the Court.  In a second attempt at a kill shot, TP-Link now doubles down on such tactics by adding on deliberate ethical violations.  Make no mistake, TP-Link was planning to file this motion no matter what Thimes did or did not do, using the Court's prior order

---

[3] TP-Link has noticed the motion hearing for October 14, 2022, which is after the October 7 motion hearing deadline.  (ECF No. 170 at 2.)  The Court should deny this motion for that reason alone.

[4] By comparison, TP-Link apparently plans to defend itself before the jury by showing that Thimes's owner, Mr. Eisenberg, was full of braggadocio and anger after TP-Link destroyed his business.  *Infra* at 8.

1  compelling discovery as its cover.  Its counsel admits as much: taking their

2  assertions at face value, TP-Link was already requesting to confer with Thimes about

3  this sanctions motion as of August 29, due to the purportedly fatal deficiencies in

4  Thimes's discovery responses and document production that were not yet due until

5  August 31.

6       Accordingly, the Court will not be surprised that TP-Link's motion fails on

7  multiple levels.  The first reason the Court should deny it is because there is no

8  violation of August 16, 2022 Discovery Order (the "Order").  Starting with the

9  supposedly deficient supplemental response to Interrogatory No. 12, TP-Link *offers*

10 *no evidence that Thimes has withheld any information*.  The crux of TP-Link's

11 argument is that "there just has to be" additional documents concerning the data

12 mining issue, without even considering the possibility that this issue was not nearly

13 as important to Amazon as TP-Link wishes it were.

14      As for the                     documents, they are not responsive to any discovery

15 requests in the first instance and, furthermore, every communication attaching an

16 REDACTED document had been sent to, or received by, either a lawyer or REDACTED

17 REDACTED But rather than "conceal" their existence on non-relevance grounds, Thimes

18 erred on the side of caution and openly listed them in its privilege log.  (Gaw Decl. ¶

19 2, Ex. 25 at 1, 4 & 5.)  The Order specifically permitted Thimes to withhold

20 documents "under claim of the attorney-client privilege or the work product

21 doctrine" as long as they are "identified with particularity on a privilege log served

22 on or before August 31, 2022."  (Order at 3.)  Thimes did that, and thus complied

23 with the Order.

24      Second, this Court should also deny this motion because even if Thimes did

25 something wrong by identifying the REDACTED elated documents on a privilege log,

26 the fact remains that these documents are protected by either the attorney-client

27 privilege or work product doctrine.  Indeed, the majority of courts have held that

28

communications with a REDACTED        are protected by either the work product doctrine or the common interest privilege.

Third, the Court should deny this motion because even if the Court finds that Thimes violated the Order, as Judge Blumenfeld recently held, terminating sanctions are "authorized only in 'extreme circumstances' and only where the violation is 'due to willfulness, bad faith, or fault of the party.'" *STO Home Delivery Inc. v. Blue Package Delivery, LLC*, No. 2:19-CV-00314-SB-JEM, 2021 WL 3598723, at *1 (C.D. Cal. March 23, 2021) (quoting *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996)). Judge Blumenfeld denied such sanctions in *STO*, and a similar result should issue here "because Defendant[ ] ha[s] failed to show misconduct justifying the extraordinary penalty of dismissal." *Id.* Among other things, there is no prejudice to TP-Link here because if the Court decides that Thimes's documents are not protected from disclosure, it can simply order their production months ahead of the trial date.

Finally, the Court should deny this motion and additionally impose sanctions upon TP-Link for their egregious ethical violations. TP-Link has based this motion upon the contents of a communication that Thimes has ***thrice*** told TP-Link (i) was covered by work product, (ii) was inadvertently disclosed, and (iii) was being clawed back under FRCP 26(b)(5)(B). TP-Link's obligations under the Federal Rules and this Court's Protective Order are clear—it "must not use or disclose the information until the [work product] claim is resolved." Fed. R. Civ. P. 26(b)(5). (*See also* Protective Order (ECF No. 137) at 11.) The Ninth Circuit has stated this straightforward rule: "The path to ethical resolution is simple: when in doubt, ask the court." *Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001). TP-Link willingly ignored the binding precedent, federal rules, and protective order. Instead, it apparently decided that it could be the unilateral arbiter of Thimes's claim of work product. Due to this willfully improper conduct, the Court should, among other things, consider the disqualification of TP-Link's counsel and also award Thimes its attorneys fees in opposing this motion.

## III.   TP-LINK'S POSITION ON THE ISSUES IN DISPUTE

### A.   Thimes's Withholding of Highly Relevant Information and Documents in Response to TP-Link's Interrogatory No. 12 and RFP Nos. 1, 2 and 10 in Violation of the Court's August 16 Discovery Order

#### 1.   Summary of Issues Presented

Pending before this Court are Thimes's claims for trade libel and intentional interference with an existing *at-will* contract, and intentional interference with prospective business relationships against TP-Link and Amazzia.[5] *See* ECF No. 178. Thimes's entire case hangs on its bare theory that the at-issue intellectual property complaints were submitted as trademark "counterfeit" because Amazon rejects complaints of trademark infringement. *See* ECF No. 178, ¶ 34. And that it was this number of "counterfeit" complaints about TP-Link products that resulted in Thimes's expulsion. *Id.*, ¶ 69. Thimes has unwaveringly represented that it had a clean record with Amazon until the "counterfeit" complaints about TP-Link products. This is simply not true. Avraham Eisenberg (Thimes's founder and sole proprietor) and his counsel knew its allegations were not true. Thimes knew that it had hundreds of other adverse issues with Amazon unrelated to TP-Link products, including Amazon's expulsion of Thimes due to data mining Amazon's software in violation of Amazon policies (a violation Thimes had previously committed multiple times) that occurred two months before Thimes's permanent expulsion.

TP-Link just learned from Thimes's August 31 document dump that Thimes *intentionally concealed*

# REDACTED

in Thimes's production. Instead, TP-Link discovered the existence of the

---

[5] TP-Link's motion for summary judgment filed today addresses why each of these claims fail.

REDACTED                                         If so, there is no

case against TP-Link.

Setting aside that Thimes should have disclosed these facts months ago (or at the

very least in compliance with the Court's August 16 Discovery Order), Thimes

continues its obstructionist behavior. When TP-Link inquired whether Thimes had

produced  the REDACTED                                         Thimes invoked the

protection of work product because "it is a communication with a REDACTED       and

was prepared in anticipation of trial" and refused to respond to TP-Link's inquiry

because "[y]our queries about the identification of specific documents appear to stem

from [the at-issue email], and so given that we are not waiving work product protection,

we decline to answer those questions." During the parties' meet and confer, Thimes

refused to respond to any questions about the REDACTED    until TP-Link could point to

a document produced by Thimes that it deemed was not subject to any privilege or

work product doctrine.

The fact of the REDACTED                          are of course not

privileged; the assertion is a bad-faith attempt to hide documents. Separately, TP-Link

challenges Thimes's work product (or any other privilege) designation. A

communication by a plaintiff to a

REDACTED                         is not a document prepared in anticipation of trial

and is not work product under FRCP 26(b)(3)(A). Even if it were, the email is

discoverable under FRCP 26(b)(3)(A)(i) and (ii).[6]

---

[6] Thimes should be required to produce

REDACTED

The facts here are simple—Thimes had a long history of violating Amazon's policies and the rights of others. Amazon apparently had enough and kicked Thimes off its platform.

REDACTED

plainly relevant especially because there is *no evidence* that complaints at issue in this case were a substantial factor.

REDACTED                              Thimes and its lawyers have shifted their focus to TP-Link. To gain an advantage, they have hidden documents relevant to the real reasons for the expulsion. Mr. Eisenberg viewed TP-Link as a "billion dollar Chinese company" to shake down and in fact has encouraged others to pursue claims against brand-name companies to see whether they could be "throw[n] 1-200k."[7]

Thimes had an obligation to search for and produce all relevant documents early in discovery.[8] It failed to do so, forcing TP-Link to move to compel discovery related to causation, including all "concerns, claims or complaints" and any documents and communications about Thimes's Amazon account (Interrogatory No. 12 and RFP Nos. 2 and 10), and all documents and communications about TP-Link (RFP No. 1). ECF Nos. 201, 206. In granting TP-Link's motion, the Court found that Thimes's "response to many of the subject discovery requests appears to have been *seriously insufficient, as well as untimely*." ECF No. 207 at 1 (emphasis added).

Yet, Thimes continues to defy the Court's order in at least two egregious ways— (1) it has purposefully concealed key documents clearly responsive to RFP Nos. 1, 2,

---

[7] After starting with state law claims, Thimes and its lawyers began indiscriminately asserting a variety of federal claims, including under the Lanham Act, Sherman Act, and RICO statutes. Over three years later, countless hours of judicial and party resources defending against rounds of pleadings, and a Ninth Circuit appeal, Thimes ended back where it started—with state law claims in its *Amended Fifth* Amended Complaint (ECF No. 178).

[8] Thimes identified Amazon in its Initial Disclosures (served June 13, 2022) but made no mention of the REDACTED

1   and 10—as evidenced by its failure to produce documents related to the

2   # REDACTED

3   and (2) Thimes still has not fully and truthfully responded to Interrogatory No.

4   12—in particular Thimes refuses to provide additional information about its data

5   mining violations of Amazon's software that resulted in an expulsion. The only reason

6   TP-Link even knows about the REDACTED is because of vague references in a privilege

7   log and a document Thimes now claims was "inadvertently produced."

8   **2.**     **Relevant Facts and Procedural History**

9         **a)**     **Thimes Files Five Complaints Alleging Various**

10                 **Theories of Liability; the District Court Rejects All of**

11                 **Them and the Ninth Circuit Permits Only the**

12                 **Original State Law Claims to Proceed**

13       Thimes filed this action on May 29, 2019 asserting the same currently at-issue

14   state law claims. ECF No. 1. In its ever-evolving pleadings, Thimes asserted various

15   federal claims, now all dismissed.[9] *See* ECF Nos. 32, 78, 112, 126. Thimes refused to

16   amend its Fourth Amended Complaint in the manner order by the Court and instead

17   filed an appeal to the Ninth Circuit. *See* ECF Nos. 141, 144-146. The Ninth Circuit

18   affirmed dismissal of federal law claims but reversed as to the state law claims. *See*

19   ECF No. 155.

20       The reason why this case exists is because Mr. Eisenberg sees TP-Link as a

21   "[b]illion dollar Chinese company" from which "[w]e'll win and we'll collect millions"

22   (Auyang Decl., Ex. 3; *see also id.*, Ex. 4 (same)) and he plans to "throw a big party

23   once tp-link pays for [his] retirement (*id.*, Ex. 5). Mr. Eisenberg targets (and encourages

24   other to do the same) specific companies: "if they're [referring to target companies]

25

26

27   ―――――――――――

    [9] Such claims were filed by Thimes, in part, on advice to cause "a headache" for TP-

28   Link. Auyang Decl., Ex. 2.

1  big enough to focus on Amazon they're big enough to throw you 1-200k." *Id*., Ex. 6.

2  The judicial system is not a means for extortion.

3      **b)      Thimes's False Narrative Is Belied by Its Troubled**

4          **Amazon Business Operations**

5      Although Thimes's discovery responses remain deficient (in violation of the

6  Court's August 16 Order), what discovery has thus far revealed is that Thimes

7  continues to falsely represent that it had an unblemished record with Amazon until the

8  trademark "counterfeit" complaints about TP-Link products: "As of the spring of 2018

9  Plaintiff was a third-party seller on Amazon and thriving. Aside from a single

10  imposter's complaint, the only IP complaints to Amazon alleging [Thimes's] sale of

11  counterfeit products were the work of TP-Link and Amazzia." ECF No. 78 (Second

12  Amended Complaint)), ¶ 59; *see also* ECF No. 178 (amended Fifth Amended

13  Complaint)), ¶ 58 (same)).

14      From what can be gleaned from Thimes's deficient discovery responses,

15  Amazon decided to permanently expel Thimes on August 27, 2018 because of its

16  failure to sell authentic products and as a result of a trademark complaint by 3PM

17  Solutions for over 200 products. The last notice that Thimes received from Amazon

18  concerning a TP-Link product was on June 21, 2018. *See* ECF No. 178, ¶ 27. But on

19  July 25, 2018, Amazon sent a follow-up email to Thimes stating that Amazon "still

20  need[ed] more information about [Thimes's] plan to address Inauthenticity

21  complaints." Auyang Decl., Ex. 7. On July 26, Mr. Eisenberg responded, in part, that

22  going forward: "We have instituted the following practices []: 1. We *now* only purchase

23  from authorized distributors that are trusted to sell only authentic products. [] We also

24  inspect the condition to ensure it is in full compliance with the Condition Guidelines."

25  *Id*. (emphasis added).

26      Amazon again expelled Thimes from the Amazon Marketplace on August 3,

27  2018 (due to authenticity and counterfeit issues unrelated to TP-Link). *See* Auyang

28  Decl., Ex. 8 ("You may no longer sell on Amazon.com because of concerns about the

authenticity of the items at the end of this email. [] The sale of counterfeit products on Amazon is strictly prohibited."). On August 8, Amazon closed a product listing for a ***TP-Link product*** due to "a high rate of negative customer experiences," including "2.4GHZ no longer broadcasts. I have tried everything reset back to default settings without success. I paid $279 for a premium product that has failed after 2-1 2 weeks. I want a total refund;" "junk []: i have yet to get this to work. thinking of returning it. had to resort to my trusty asus which cannot keep up;" and "not working good." Auyang Decl., Ex. 9.

On August 22, Thimes received a trademark infringement complaint for over 200 products (ASINs) made by 3PM Solutions. Auyang Decl., Ex. 10. Thimes admits that the 3PM Solutions' trademark infringement complaint "vigorously advanced" with Amazon and "was particularly harmful to [Thimes]." ECF No. 1, ¶ 68. Indeed, Thimes contends that this complaint "played a critical role in [Thimes's] final expulsion from the Amazon Marketplace. It was 'the straw that broke the camel's back' just prior to Plaintiff's non-appealable expulsion on August 27, 2018." ECF No. 1, ¶ 70. However, to maintain its false narrative against a "billion dollar Chinese company," Thimes quickly dismissed 3PM Solutions and amended its complaint. *See* ECF Nos. 30, 32.

    **c)**  **Thimes Violation of the Court's Discovery Order and Concealment of Documents Damaging to Its Case**

    **(1)**  **TP-Link's Discovery Requests and This Court's August 16 Discovery Order**

On June 2, 2022, TP-Link propounded discovery seeking all "concerns, claims or complaints" regarding Thimes's Amazon account (Interrogatory No. 12 and RFP No. 2), all documents and communications with Amazon concerning Thimes's account (RFP No. 10), and all documents and communications about TP-Link (RFP No. 1). Auyang Decl., Ex. 11.

    **Interrogatory No. 12** requests:

Describe in detail any concerns, claims, or complaints regarding THIMES or any account run by AVRAHAM EISENBERG, including, but not limited to, intellectual property violations (trademark, patent or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings (including the "Amazon's warning letter" referred to in 5AC ¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and expulsions.

**RFP No. 1** requests:

All DOCUMENTS and COMMUNICATIONS CONCERNING TP-LINK USA, including TP-Link products.

**RFP No. 2** requests:

All DOCUMENTS and COMMUNICATIONS related to any concerns, claims, or complaints regarding THIMES or any account run by AVRAHAM EISENBERG, including, but not limited to, intellectual property violations (trademark, patent, or copyright), negative customer feedback, account issues (e.g., inadequate product descriptions, insufficient security, or performance evaluations), warnings (including the "Amazon's warning letter" referred to in 5AC ¶ 26 and "single imposter's complaint" referred to in 5AC ¶ 58), suspensions, removals, and expulsions.

**RFP No. 10** requests:

All DOCUMENTS and COMMUNICATIONS with AMAZON CONCERNING THIMES's account, including, but not limited to, the signed Amazon's standard Business Solutions Agreement (referred to in ¶ 6 of the 5AC), "appeal" (referred to in ¶ 45 of

the 5AC: "Plaintiff appealed and got reinstated from the May 7[th] suspension."), and "administrative options" (referred to in ¶ 51 of the 5AC: "Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures.").

*Id*. Thimes's refusal to cooperate in the discovery process, including its refusal to produce documents kept in the usual course of business, forced TP-Link to move to compel. *See* ECF Nos. 201, 206.

On August 16, 2022, the Court granted TP-Link's motion to compel[10] and ordered supplemental responses and the production of all responsive documents by August 31, 2022. ECF No. 207 at 2-3; Auyang Decl., Ex. 12. The Court also ordered for any documents withheld under the claim of attorney-client privilege or the work product doctrine that such documents must be identified with particularity on a privilege log served on or before August 31, 2022. *Id*. at 3. The Court noted that "the discovery thus far provided by [Thimes] in response to many of the subject discovery requests appears to have been ***seriously insufficient***, ***as well as untimely***." *Id*. at 1 (emphasis added).

**(2)     Thimes's Continued Failure to Provide Discovery About Thimes's Violation of Amazon's Platform by Repeated Unauthorized Data Mining**

Of particular relevance and responsive to Interrogatory No. 12 and RFP Nos. 2 and 10, was the revocation of Thimes's selling privileges on <u>June 28, 2018</u> (just two months before Thimes was permanently expelled on August 27, 2018) due to prohibited conduct with respect to data mining Amazon's software. This particular issue was brought to Thimes's attention numerous times in reference to Interrogatory No. 12, including during the parties' previous L.R. 37-1 meet and confer conference,

---

[10] For Interrogatory No. 12 and RFP No. 2, the Court's Order: "Granted, limited to 'concerns, claims or complaints regarding' Plaintiff," but granted unconditionally for RFP Nos. 1 and 10.  ECF. No. 207 at 2-3.

as well as in follow-up emails (Auyang Decl., Ex. 13), TP-Link's Motion to Compel (ECF No. 201-1, 18:7-19:10) and Supplemental Memo (ECF No. 206, 2:16-20), and TP-Link's Opposition to Thimes's Motion to Compel (ECF No. 205, at 3:12-20).

The data mining violation demonstrates Thimes's disregard for the rules of the Amazon platform. Indeed, Amazon called out Thimes's past violations over the same activity:

> Because **we have warned you about similar activities in the past**, your account has been suspended and will not be reactivated unless you acknowledge that you understand our policies, reaffirm your commitment to adhere to them, and communicate your plan of action to avoid these activities (and any similar activities) in the future. To sell on Amazon.com, please send us a plan that explains how you will address this problem.

Auyang Decl., Ex. 14. Thimes produced only one email dated July 1, 2018 to Amazon concerning violation of Amazon's API that refers to a different violation notice on June 29, 2018. Auyang Decl., Ex. 15 ("[Thimes] received a violation regarding our use of the Amazon API on 06/29/2018."). Thimes's July 1, 2018 email to Amazon also refers to a past violation that involved improperly "altering" the Amazon platform: "Additionally, our former developer was responsible for testing a large volume of ASINs for safety risks and hazmat status. *In the past, we addressed this issue with your team and had in fact ceased any actions that may have altered the accuracy of the Amazon platform at least one year ago (shipment creation)*." *Id.* (emphasis added). Furthermore, Thimes's July 1, 2018 email refers to working with Amazon: "We have immediately ceased the use of MWS services as we work with your team to resolve this issue." *Id.*

Yet, Thimes continues to avoid providing any additional information or documents. On August 19, 2022, Thimes served its *second* supplemental response to

Interrogatory No. 12, yet this response remained deficient. Auyang Decl., Ex. 16.[11] Specifically, the responses added a list of documents identified by Bates Nos., but nothing more about the data mining violation. *Id.*

Thimes's *third* supplemental response to Interrogatory No. 12 added approximately over 200 additional cites to documents related to "concerns, claims or complaints" regarding Thimes's Amazon account for a total of approximately 320 documents. Auyang Decl., Ex. 17. But this third supplemental response continues to remain deficient with respect to the data mining violations. Specifically, Thimes's added documents cites pursuant to FRCP 33(d).

| | | | |
|---|---|---|---|
| 24 | | Complaint ID 5162054701 | |
| 25 | 2018.06.28 | Notice from Amazon removing selling privileges for "use of the Mobile App to extract dangerous goods (hazmat) information." Plaintiff successfully appealed the policy warning it received on June 28, 2018, explaining that its former developer used a script on Plaintiff's seller account to identify the hazardous material status | THIMES00311 |
| 26 | 2018.07.01 | | THIMES00264 |
| 27 | 2018.07.05 | | THIMES180569 |
| 28 | 2018.07.08 | | THIMES180795 |
| | | | THIMES00306 |

- 3 -

THIMES 3RD SUPP. RESPONSE TO
TP-LINK FIRST ROGS
CASE NO. 2:19-CV-10374-SB-E

| | | |
|---|---|---|
| 1 | of products Plaintiff listed on the Amazon Marketplace for "cross checking potential safety violations in a preventative manner." Amazon accepted Plaintiff's appeal and reinstated its account on July 8, 2018. | THIMES180919 |
| 2 | | |
| 3 | | |
| 4 | | |
| | 2018.08.03 | Notice from Amazon removing selling privileges | THIMES01120 |

First, TP-Link had already identified THIMES00311 and THIMES00264 to Thimes in the previous meet and confer and court filings mentioned above, so this added nothing new. The additional four documents cited show no apparent relation to the data mining issue: Bates Nos. THIMES180569 (Amazon's July 5, 2018 removal of

---

[11] Although the Court's August 16 Discovery Order required Thimes to supplement by August 31, Thimes served its *second* supplemental response early to try and obviate issues raised during the parties' August 15 meet and confer concerning TP-Link's impending motion for summary judgment.

1  Thimes's account selling privileges due to the sale of inauthentic *Apple charging USB*
2  *cables*); THIMES180795 (appeal of a suspension with invoices for certain products);
3  THIMES00306 (July 8, 2018 email from Amazon reinstating Thimes's selling
4  privileges, with no explanation about which of the numerous suspensions this relates);
5  and THIMES180919 (same content as THIMES00306). Auyang Decl., Ex. 18.

6  As would be responsive to RFP Nos. 2 and 10, TP-Link has thus far found
7  nothing else in Thimes's production about the data mining issue, such as the past
8  violations mentioned in Amazon's email, the violation notice from Amazon received
9  by Thimes on June 29, 2018, Thimes work with Amazon to resolve the issue (as
10 mentioned in Thimes's email), and when and why Amazon reinstated Thimes's
11 account. Amazon's closure of Thimes's account for a serious and recurring issue
12 unrelated to Defendants two months before Amazon expelled Thimes from the Amazon
13 Marketplace on August 27, 2018 and multiple related warnings are relevant to TP-
14 Link's defense.

15                                        **(3)**
16                           REDACTED  **oncealed by Thimes**

17 Responsive to RFP Nos. 2 and 10, TP-Link discovered on September 1, 2022,
18 that Thimes had intentionally concealed that

19
20 # REDACTED
                                                                          when it
21 discovered an email referring to the REDACTED   as part of Thimes's belated dump of
22 200,000 documents on August 31. Auyang Decl., ¶ 20.

23 It appears from Thimes's privilege log[12] that the
24 # REDACTED

25
26
27 [12] Thimes's 195-page privilege log was produced as a PDF and is not in chronological
28 order or Bates No. order, making it more difficult to review. During the parties'
   September 7 meet and confer, TP-Link's counsel asked for Thimes to provide its

1  (Auyang Decl., ¶ 22). This case was filed in May 2019, and it would be implausible for

2  Thimes's counsel to not know of its existence and/or inquire with their client about the

3  REDACTED

4      On June 2, 2022, TP-Link served these key discovery requests (after rounds of

5  motion practice and Thimes's Ninth Circuit appeal). Yet, Thimes continued to conceal

6  the REDACTED        and when caught refused to engage because it argued that TP-

7  Link learned about the REDACTED    in an email covered by work product protection and

8  the REDACTED    is not responsive to TP-Link's requests (such that Thimes did not need

9  to produce), and it had not yet taken an inventory of its own production. Auyang Decl.,

10  Ex. 19.

11      How Thimes could plausibly argue that the

12  REDACTED is not within the scope of TP-Link's discovery requests sums

13  up its counsel's behavior throughout this litigation.

14      RFP No. 2 requests: "All DOCUMENTS and COMMUNICATIONS related to

15  any *concerns, claims, or complaints regarding THIMES* …."

16      RFP No. 10 requests: "All DOCUMENTS and COMMUNICATIONS with

17  AMAZON *CONCERNING THIMES's account* …."

18      The Court's August 16 Discovery Order compelled Thimes on these requests.

19  Yet, TP-Link has not been able to locate any documents related to the

20  REDACTED         in Thimes's production. Thimes is in clear violation

21  of the Court's August 16 Discovery Order.

22      Moreover, Thimes's Initial Disclosures (served June 13, 2022) never identified

23  the REDACTED    Instead, Thimes identified Amazon as likely to be in possession of

24  discoverable information for two issues: "[TP-Link's] communications and

25  interactions with Amazon regarding resolution of intellectual property complaints, and

26

27  privilege log in Excel. Auyang Decl., ¶ 21. Thimes's counsel responded that he would

28  consider it. *Id.*

1   Amazon has "[d]ocuments regarding the submission and resolution of intellectual
2   property complaints with Amazon." Auyang Decl., Ex. 20.

3   **(4)   Thimes's Improper Claim of Work Product**
4   **Protection**

5   Thimes produced an email thread with the subject line

# REDACTED

8   *See* Auyang Decl., Ex. 21 (*see* TP-Link's Motion to Seal filed
9   concurrently). Both are not lawyers. There is no attorney included on this email thread.
10  No legal advice was sought.

# REDACTED

---

27  [13] This is not true and disputed in TP-Link's motion for summary judgment, otherwise,
28  such "evidence" would be front and center in any one of Thimes's five complaints.

# REDACTED

*Id.*

# REDACTED

Thimes's failure to produce any documents related to the REDACTED reeks of bad faith and is in violation of the Court's August 16 Discovery Order.

**(5)** **The Parties' Meet and Confer Process**

Because Thimes's *second* supplemental response to Interrogatory No. 12 remained deficient as the data mining issue, on August 29, TP-Link sent an email requesting a L.R. 7-3 meet and confer stating: "Pursuant to FRCP 37(b) TP-Link will seek at least the following—issue sanctions regarding causation, an order finding Thimes in contempt, and reasonable expenses (including attorneys' fees)." Auyang Decl., Ex. 22.

Thimes did not acknowledge TP-Link's meet and confer request until August 31, 2022, when Thimes served its *third* supplemental response to Interrogatory No. 12

1  stating that its third supplemental response "moots TP-Link's request for a meet and

2  confer regarding the second supplemental interrogatory responses." Auyang Decl., Ex.

3  19. Thimes also dumped approximately 200,000 documents that it been withholding.

4  Auyang Decl. ¶ 20.

5        On Sept. 1, TP-Link sent an email stating: "We are working on processing and

6  reviewing Thimes's 8/31 production. In considering whether to conduct a L.R. 7-3

7  conference, please let us know the following: []." TP-Link also asked for Thimes's

8  availability: "Please let us know today, otherwise, we are available for a L.R. 7-3

9  conference tomorrow (9/2) from 9:30 am – noon PT." Auyang Decl., Ex. 19.

10        Later that evening, when TP-Link discovered in Thimes's August 31 document

11  dump that Thimes had

12  # REDACTED

13          TP-Link sent a follow-up email asking about these highly relevant

14  documents. *Id*. TP-Link asked Thimes about its "availability for a L.R. 7-3 conference

15  tomorrow (9/2) concerning Thimes's document production." *Id*.

16        In response on Sept. 2, Thimes's counsel invoked work product protection:

17              Regarding  THIMES189260,[14]  it  looks  like  that  was

18              inadvertently produced. That document is covered by **work**

19              **product, as it is a**

20  ## REDACTED

21

22  *Id*. Thimes's counsel refused to respond to TP-Link's questions because (1) the

23  questions "stem" from protected work product; and (2) it did not know what was in its

24  August 31 document dump:

25              Your queries about the identification of specific documents

26              appear to stem from THIMES189260, and so given that we

27  _____

28  [14] THIMES189260 is part of the same at-issue email thread. A more complete version
   of the email thread is THIMES189245-THIMES189249. Auyang Decl., Ex. 21.

1                are not waiving work product protection, we decline to

2                answer those questions. But in general, as for whether we

3                have produced any specific documents, due the volume of

4                the production and the limited time we had to gather, process,

5                and produce these documents in order to comply with the

6                court order, ***we have not made an inventory of our***

7                ***production***. We therefore are unable to tell you at this time

8                as to the bates number of any specific document, should you

9                make any additional document identification requests.

10 *Id.* (emphasis added). The names               do not appear on

11 Thimes's August 31, 2022 privilege log. Auyang Decl., ¶ 22. On Sept. 6, TP-Link sent

12 an email with the summary of meet and confer events and confirming the parties'

13 conference call: "We are available for a meet and confer/pre-filing conference pursuant

14 to Local Rules 7-3 and 37-1 today (except noon-2:30 pm). Please let us know." Auyang

15 Decl., Ex. 19. As part of the ongoing meet and confer process, the parties held a

16 conference call on Sept. 8. Auyang Decl. ¶ 23. Thimes refused to respond to any

17 questions about the REDACTED until TP-Link could point to a document produced by

18 Thimes that it deemed was not subject to any privilege or work product doctrine. *Id*.

19 As the parties meet and confer process continued, Thimes's counsel made various

20 unacceptable offers, including avoiding the production of any REDACTED

21 REDACTED             Auyang Decl., Ex. 23. Thimes cannot skirt its

22 obligation under FRCP 26.

23      **B.   TERMINATING SANCTIONS ARE APPROPRIATE**

24     To maintain its false narrative, Thimes failed to obey the Court's August 16

25 Discovery Order requiring it to respond to key discovery related to causation served

26 over three months ago—requests that seek all "concerns, claims or complaints"

27 regarding Thimes's Amazon account (Interrogatory No. 12 and RFP No. 2), all

28 documents and communications with Amazon concerning Thimes's account (RFP No.

1    10), and all documents and communications about TP-Link (RFP No. 1). Auyang

2    Decl., Ex. 11. TP-Link requests that the Court impose terminating sanctions.

3        Federal Rule of Civil Procedure 37 states that "[i]f a party ... fails to obey an

4    order to provide or permit discovery ... the court where the action is pending may issue

5    further just orders" including "dismissing the action or proceeding in whole or in part."

6    Fed. R. Civ. P. 37(b)(2)(A)(v). Rule 37 sanctions "must be both 'just' and specifically

7    related to the particular 'claim' that was at issue in the discovery order." *Ins. Corp. of*

8    *Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982).

9        "Before imposing the harsh sanction of dismissal, the district court must weigh

10   several factors: (1) the public's interest in expeditious resolution of the litigation; (2)

11   the court's need to manage its docket; (3) the risk of prejudice to the party seeking

12   sanctions; (4) public policy favoring disposition of cases on their merits; and (5) the

13   availability of less drastic sanctions." *Anheuser–Busch, Inc. v. Natural Beverage*

14   *Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (internal citations omitted). Where, as

15   here, "a court order is violated, the first two factors support sanctions and fourth factor

16   cuts against [case dispositive sanctions]. Therefore, it is the third [prejudice] and fifth

17   [availability of less drastic sanctions] factors that are decisive." *Adriana Int'l Corp. v.*

18   *Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

19       "(F)ailure to produce documents as ordered … is considered sufficient

20   prejudice." *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004).

21   Thus, the third factor weighs in favor of imposition of sanctions. Some cases uphold

22   dismissal where discovery violations have prejudiced the opposing party without

23   considering lesser sanctions. *See, e.g., United States v. Di Mucci,* 879 F.2d 1488, 1494-

24   95 (7th Cir. 1989).

25       In issuing its August 16 Discovery Order, the Court had already determined that

26   "the discovery thus far provided by [Thimes] in response to many of the subject

27   discovery requests appears to have been ***seriously insufficient***, ***as well as untimely***."

28   ECF No. 207 at 1 (emphasis added); Auyang Decl., Ex. 12. Belatedly dumping 200,000

documents near the end of discovery does little to address "seriously insufficient" responses when critical documents (*i.e.*, REDACTED                    related to causation are purposefully concealed. When TP-Link dared to question if Thimes produced such documents, Thimes hides behind a sham work product claim and forces TP-Link to expend additional resources to challenge.

**First**, Thimes failed to produce and refuses to produce (in compliance with FRCP 26) documents related to

REDACTED

—the very causation issue the parties are litigating here. Thimes has the burden of proving causation; its attempt to hide documents relevant to the issue—even after this Court ordered production—is undoubtedly prejudicial.

**Second**, Thimes's refusal to produce the documents because an email revealing the fact is supposedly "work product" is in bad faith (and a red herring). As an initial matter, the facts of the REDACTED

are not privilege. Independently, Thimes's contention that email between

REDACTED constitutes work product is meritless. "The work product doctrine is to be narrowly construed as 'its application can derogate from the search for the truth.' The party seeking to invoke the work product doctrine bears the burden of establishing all the requisite elements, and any doubts regarding its application must be resolved against the party asserting the protection." *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012) (citation omitted). Thimes cannot meet this burden. Communications between two-non lawyers for the sole purpose of seeking REDACTED        do not constitute work product. Auyang Decl., Ex. 19. *See Fulton v. Foley*, No. 17-CV-8696, 2019 WL 6609298, at *4 (N.D. Ill. Dec. 5, 2019) (ordering plaintiff to produce "***any statements provided by plaintiff directly***, if any, that was provided to [the funder].") (emphasis added).

This communication also does not constitute a document or tangible thing prepared in anticipation of trial. And even if the Court were to find the at-issue email

1  constitutes "factual" work product, if this case moves forward, such a communication

2  can be discovered under FRCP 26(b)(3)(A)(i) and (ii). The email is discoverable under

3  Rule 26(b)(1) as this communication is directly relevant to causation and not

4  privileged. TP-Link also has a substantial need for this communication to prepare its

5  case, and cannot, without undue hardship, obtain equivalent information by other

6  means—

7  REDACTED. Thimes should also be required to produce all such similar

8  documents, *i.e.*, REDACTED                                                      Thus,

9  the Court need look no further to find terminating sanctions are warranted.

10     **Third**, even if analysis of the availability of less drastic sanctions is required,

11  this factor also weighs in favor of termination because lesser sanctions would not

12  address prejudice already suffered by TP-Link and prejudice to TP-Link going forward.

13     Allowing Thimes to proceed with litigating this action has already prejudiced

14  TP-Link because Thimes should have disclosed and produced documents related the

15  REDACTED            months ago, and most certainly prior to TP-Link serving its

16  motion for summary judgment on August 22. TP-Link's motion for summary

17  judgement raises causation issues to which

18  REDACTED                                          is certainly pertinent. The

19  Court's Order re: Motions for Summary Judgment does not permit supplementation to

20  TP-Link's Joint Appendix of Facts "in any way." ECF No. 172, 4. Yet, Thimes's

21  opposition to TP-Link's motion for summary judgment relies heavily on the complaints

22  about TP-Link products to speculate that this was **the** definitive cause of its permanent

23  expulsion—submitting three declarations in support (Eisenberg, Victor Meng, and

24  Mikhail Fikhman), but conspicuously omits any reference to the

25  REDACTED (or that it served a *third* supplemental response to Interrogatory No. 12).

26     Thimes's third supplemental response to Interrogatory No. 12 (served on August

27  31) *added* over 200 additional documents cites relying on FRCP 33(d) concerning

28  "concerns, claims or complaints" regarding Thimes's Amazon account for a total of

approximately 320 documents (Auyang Decl., Ex. 17)—documents that TP-Link would need time to review and in any case TP-Link is not permitted under the Court's rules to supplement its motion for summary judgment.

Importantly, the documents Thimes are hiding are directly relevant to rebutting Thimes's misleading representations to the Court about the number of adverse issues it had with Amazon and the reason for its expulsion. "An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed—perhaps paving the way for a summary judgment motion—and which facts must be resolved at trial." *Computer Task Group*, 364 F.3d at 1117. Thimes's gamesmanship should not be rewarded.

Even if, as requested by TP-Link in the alternative below, Thimes is precluded from arguing that TP-Link conduct was not a substantial factor in causing Thimes's harm, TP-Link will still be prejudiced both with regards to its motion for summary judgement and trial. The names REDACTED do not appear on Thimes's privilege log. Auyang Decl., ¶ 22. It is apparent that Thimes intended to conceal this communication that was "inadvertently produced."

Moreover, the fact that Thimes cited Bates Nos. in response to Interrogatory No. 12 in its *third* supplemental response unrelated to the data mining issues after repeated requests by TP-Link for discovery on this issue, demonstrates a continual and willful obstructionist behavior. It is obvious that Thimes refuses to provide discovery as to its ongoing violations of the Amazon platform and issues with Amazon because it cuts into its false narrative.

Moving forward, Thimes's representations to both the Court and TP-Link cannot be trusted. Lesser sanctions will not address the prejudice to TP-Link and therefore should not be considered.

**C.    IN THE ALTERNATIVE THE COURT SHOULD ORDER ISSUE SANCTIONS AND FOR PLAINTIFF TO COMPLY WITH ITS PRIOR ORDER**

For failure to obey a discovery order, the court may order the disobedient party "precluded" from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence. FRCP 37(b)(2)(A)(ii); *Von Brimer v. Whirlpool Corp.*. 536 F.2d 838, 844 (9th Cir. 1976); *Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.* 295 F.R.D. 1, 5 (E.D.N.Y. 2013) (preclusion of evidence warranted due to willful obstruction and obfuscation).

If the Court does not impose terminating sanctions on Plaintiff, TP-Link requests that issue sanctions be imposed such that Thimes is barred from introducing in opposition to TP-Link's motion for summary judgment or at trial any evidence that TP-Link was the supposed cause of any purported harm to Thimes.

Thimes should also be ordered to respond in compliance with the Court's August 16, 2022 Discovery Order by providing complete responses to Interrogatory No. 12 and RFP Nos. 1, 2, and 10, including any communications or documents related to the REDACTED . Its production should also be specifically indexed in folders to provide clear guidance as to the subject matter of the documents, rather than allowing Thimes to just dump a massive number of documents as it did on August 31 in order to obfuscate deficiencies.

Thimes should also be required to produce an Excel copy of its 195-page privilege log (which was produced in PDF and not in chronological or Bates No. order).

**D.    THE COURT SHOULD ORDER ADDITIONAL MONETARY SANCTIONS**

If a Motion to Compel a party to answer a question at a deposition, respond to an interrogatory, or produce documents in response to demand for inspection is granted, or if the disclosure or requested discovery is provided after the motion was filed, the court must, after giving an opportunity to be heard, require the party or

1  deponent whose conduct necessitated the motion, to pay the movant's reasonable
2  expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P.
3  37(a)(5)(A) and Fed. R. Civ. P. 37(b)(2)(C).

4       TP-Link requests attorneys' fees and costs as a result of Thimes's failure to abide
5  by its discovery obligations. If the Court so grants, TP-Link will provide the Court with
6  the necessary information.

7  **IV.   THIMES'S POSITION ON THE ISSUES IN DISPUTE**

8       **A.     STATEMENT OF FACTS.**

9            **1.     Thimes's Objections to TP-Link's Document Requests.**

10       As TP-Link recounts in this motion, it propounded numerous requests for
11  production including one for "All DOCUMENTS and COMMUNICATIONS
12  CONCERNING TP-LINK USA, including TP-Link products" and one for "All
13  DOCUMENTS and COMMUNICATIONS with AMAZON CONCERNING
14  THIMES's account[.]" *Supra* at 11-12.  Thimes had begun selling products on the
15  Amazon Marketplace in August 2015 and had annual sales revenue of nearly $1.2
16  million in 2017 and nearly $2 million in 2018.  (Eisenberg Decl. ¶¶ 2-3.)  In short,
17  Thimes had numerous sales on Amazon and each transaction generated multiple e-
18  mails from Amazon and other third parties.  (*Id.* ¶ 4.)  Additionally, following TP-
19  Link's successful campaign of filing counterfeiting allegations to expel Thimes from
20  the Amazon Marketplace, Thimes's owner had vented his frustration and anger about
21  this development to many fellow Amazon sellers (including on social media), and
22  also sought assistance about potential recourse against TP-Link from various lawyers
23  and REDACTED            (*Id.* ¶ 5.)

24       Thimes thus objected to both RFP 1 and RFP 10, given the staggering number
25  of e-mails and social media postings that were potentially responsive to TP-Link's
26  broad RFPs:

27       [A]ny relevance of "all" documents and communications is minimal,
28       is greatly outweighed by the burden of tracking down all such

documents and communications, and on that ground, is

disproportional to the needs of the case, considering the parties'

resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs

its likely benefit.

(Gaw Decl. ¶ 3, Ex. 26 at Responses to RFPs 1 & 10.)

The Court, however, disagreed with Thimes's objections and on August 16, granted in full TP-Link's motion to compel with respect to both RFPs 1 and 10. (Order at 2-3.) And the day prior, TP-Link's counsel had conferred with Thimes's counsel about its forthcoming motion for summary judgment, which would be served on August 22 and for which Thimes needed to serve its full opposition papers in response thereto by September 5. (Gaw Decl. ¶ 4.) Thus, in the span of little over two weeks, Thimes was required to (i) produce and/or log approximately 200,000 documents, (ii) serve supplemental interrogatory responses that required it to specifically identify certain documents within its existing and forthcoming document production, and (iii) respond to a 25-page motion for summary judgment.

**2.     Thimes Collects, Logs, and Produces Documents.**

Mr. Eisenberg collected and produced responsive documents to comply with the Order. (Eisenberg Decl. ¶ 6.) Using the advanced search functionality provided by his Google e-mail accounts, he searched for all e-mails from or to amazon.com from his e-mail accounts called avi@thimessolutions.com and 613ike@gmail.com. (*Id.* ¶ 7.) He also searched for all e-mails from those accounts using the search term "tp-link." (*Id.* ¶ 8.) The resulting e-mails yielded from these searches were exported in their entirety as .mbox files (to preserve metadata) to an e-discovery vendor called Goldfynch. (*Id.* ¶ 9.) Mr. Eisenberg also separately searched his Facebook and Telegram accounts and collected all responsive communications, and also looked through Thimes's financial records to locate and produce responsive documents. (*Id.* ¶ 10.) The Facebook messages were loaded onto Goldfynch for production. (*Id.* ¶

11.)  Some of the Telegram messages had embedded audio recordings; to collect and produce those audio recordings, the Telegram messages were separately produced to TP-Link outside of Goldfynch.  (*Id.* ¶ 12.)

Next, Mr. Eisenberg had Goldfynch "tag" all e-mails that had been addressed to, or received from, his various lawyers or various REDACTED as attorney-client privileged. (*Id.* ¶ 13.) Using Goldfynch's functionality, Mr. Eisenberg assigned a bates number to each of these tagged documents. (*Id.* ¶ 14.)  The Goldfynch software then exported a privilege log listing all the tagged e-mails and their attachments. (*Id.* ¶ 15.) Mr. Eisenberg sent that log to Thimes's counsel. (*Id.* ¶ 16.)  The documents listed in the log were listed in whatever order the Goldfynch software presented them—it was impossible to sort those documents by date or by bates number without breaking the linkage between the e-mails listed in the log and their associated attachments (because Goldfynch apparently did not process and bates stamp documents in their chronological order, and because the dates for the attachments were not always the same as the dates for the e-mails for which they are attached). (Gaw Decl. ¶ 5.)  Thimes's attorneys then reviewed the log to ensure each listed e-mail was either attorney-client privileged or work product (and removed some e-mails that they deemed were neither).  (*Id.* ¶ 6.)

Concurrently, however, Mr. Eisenberg continued his efforts to locate and produce responsive documents. (Eisenberg Decl. ¶ 17.) He belatedly realized that he had missed some older e-mails, and also e-mails that had been forwarded from the avi@thimessolutions.com account to the 613like@gmail.com when Thimes temporarily used a non-Google hosting provider. (Eisenberg Decl. ¶ 17.)  Mr. Eisenberg was thus spending considerable time in running new searches and collecting additional documents to upload to Goldfynch. (*Id.*) He was also responding to multiple e-mails each day, and sending documents and other information, to Thimes's lawyers in connection with their preparation of Thimes's opposition to TP-Link's summary judgment motion. (*Id.* ¶ 18.) At some point during this period, when he was doing his own review of Thimes's forthcoming document production, he saw that he had

1   inadvertently omitted to "tag" in Goldfynch his communications with

2   _(Id. ¶ 19.)_

3   # REDACTED

4   _(Id. ¶¶_

5   20-21 & Ex. 24.)

6          Mr. Eisenberg proceeded to manually remove the REDACTED e-mails that he saw

7   from the upcoming production. _(Id. ¶ 22.)_ But given the ongoing flurry of activity and

8   communications between him and Thimes's counsel, he forgot to inform Thimes's

9   counsel about that action or that the privilege log that he had provided to them omitted

10  the withheld REDACTED communications. _(Id.)_ Neither he nor Thimes's counsel,

11  however, concealed the fact that there had been an REDACTED —at least

12  one non-privileged document had been produced that openly referenced the fact there

13  was an REDACTED [15] (Gaw Decl. ¶¶ 7-8.) Similarly, Thimes left unaltered the file

14  names of all attachments to all e-mails listed in the privilege log. _(Id.)_ Thus, this log

15  has multiple entries making it clear that an REDACTED between Thimes and Amazon

16  had taken place:

17
18  | THIMES206250 | E-mail | 2020-05-04 09:42:38 | Discussion of litigation strategy, case developments, and/or factual issues relating to litigation | "Mark Berkowitz" <mberkowitz@ARELAW.com> |
    | THIMES206252 | Attachment | | REDACTED | |
19
20  | THIMES209570 | E-mail | 2020-09-25 16:19:17 | Discussion of litigation strategy, case developments, and/or factual issues relating to litigation | "Mark Berkowitz" <mberkowitz@ARELAW.com> |
21  | THIMES209571 | Attachment | | REDACTED | |

22

23  _____

[15] Thimes has not asserted privilege or work product over any document merely
24  referencing the fact there was an REDACTED But to Thimes's knowledge, there are no
     produced documents that discuss the subject matter, results, or anything else related to
25  that REDACTED and thus, to avoid any waiver of their work product claim, Thimes is
     not discussing those topics in their portion of this brief, even though it puts them at a
26  disadvantage. Moreover, the contents of the REDACTED e-mails should not be discussed
     at all because the merits of Thimes's clawback request has not yet been decided by this
27  Court. _Infra_ at 48-51.
28

| | | | Discussion of litigation strategy, case developments, and/or factual issues relating to litigation | |
|---|---|---|---|---|
| THIMES203341 | E-mail | 2019-10-04 17:08:08 | | "Mark Berkowitz" <mberkowitz@ARELAW.com> |
| THIMES203342 | Attachment | | REDACTED | |

(Gaw Decl. ¶ 2, Ex. 25 at 1, 4 & 5.)  The privilege log is text searchable, and during the parties' conference of counsel, Thimes informed TP-Link as to the identity of Thimes's lawyer that handled the REDACTED [16] (*Id.* ¶ 9.)  A simple "Control-F" search on the privilege log with that attorney's name would have very quickly yielded all the examples that Thimes is presenting to the Court.  (*Id.*)

On August 31, 2022, Thimes produced over 200,000 documents in compliance with the Order.  (*Id.* ¶ 10.)  Because of the sheer volume of the document production, and because of ongoing motion practice pushed by TP-Link (first the MSJ and now this motion), Thimes's attorneys could only do a spot review of its document production and have no inventory as to what e-mails were produced. (*Id.* ¶ 11.)  With the exception of 17 documents being produced in connection with Thimes's expert report, the entirety of this document production stemmed from the collection that began shortly after the Court issued the Order on August 16.  (*Id.* ¶ 12.)  TP-Link does not contend that any document produced by Thimes is non-responsive.  (*Id.* ¶ 13.)

### 3.     TP-Link Meets and Confers with Thimes.

On August 29, 2022, counsel for TP-Link sent an e-mail to counsel for Thimes requesting to meet and confer over Thimes's purported failure to properly supplement its response to Interrogatory No. 12 as required under the Order.  (Auyang Decl., Ex. 22.)  TP-Link specifically identified three supposed deficiencies with Thimes's latest response: (i) identification of documents discussing the "data mining" issue and providing a narrative response concerning that topic, (ii) failing to identify THIMES00739-00740, and (iii) identifying bates numbers for documents Thimes intended to produce on August 31 that were responsive to this Interrogatory.  (*Id.*)

---

[16] Thimes's counsel was not involved in the REDACTED in any way. (Gaw Decl. ¶ 9.)

Thimes served its Third Supplemental Responses to TP-Link's Interrogatories on August 31. (Auyang Decl., Ex. 17; Ex. 19 at 7.) These supplemental responses fully mooted TP-Link's supposed concerns. (*Id.*) Thimes identified additional documents regarding the "data mining" issue and provided a narrative response. (Auyang Decl., Ex. 17 at 3-4.) Thimes listed THIMES00739. (*Id.* at 3.) And Thimes identified, by bates number, the documents from its concurrent August 31 production that were responsive to Interrogatory 12. (*Id.* at 6.)

On September 1, TP-Link's counsel followed up with questions regarding Thimes's August 31 production, and requested a L.R. 7-3 conference over an unidentified motion the next day (the Friday of Labor Day weekend) during the specific window of 9:30 am – noon. (Auyang Decl., Ex. 19 at 6.) At 10:45 pm that evening, TP-Link's counsel again requested a L.R. 7-3 conference and asked questions regarding the contents of an e-mail between REDACTED (*Id.* at 5.) The next day, Thimes's counsel answered all the prior questions about the RFPs, stated they were unavailable that day for a conference, and stated that the REDACTED communication was work product. (*Id.* at 4.) Invoking FRCP 26(b)(5), Thimes requested that TP-Link destroy all copies of the communication as well as any other e-mails that are part of the same e-mail thread, and not use or disclose the information found in the communication and those other e-mails until the claim of work product was resolved. (*Id.* at 4.)

Later that afternoon, TP-Link's counsel responded by referencing the contents of the REDACTED communication and claiming that on August 29, it had already requested a L.R. 7-3 conference "concerning Thimes's failure to comply with Magistrate Judge Eick's Order." (*Id.* at 4.) TP-Link asserted that Thimes's third supplemental response to Interrogatory No. 12 "remains deficient," but failed to explain why. (*Id.*) TP-Link also claimed that Thimes had failed to produce required documents about the REDACTED and that it would "note Thimes's refusal to

meet and confer in our motion for sanctions." (*Id.* at 4.)  Thimes's counsel responded on Saturday morning as follows:

> So if I understand you correctly, you plan to tell the Court that you've adequately requested a LR 7-3 meet and confer on August 29 concerning the inadequacy of a document production that did not take place until August 31, as well as the sufficiency of supplemental interrogatory responses that were not due until August 31.

(*Id.* at 3-4.)  Thimes also pointed out that TP-Link gave little advance notice for its requested conference of counsel before a holiday weekend and that one of TP-Link's lawyers was, in fact, himself out of office that Friday.  (*Id.* at 4.)  Thimes also pointed out that TP-Link did not explain what was deficient about Thimes's third supplemental response to Interrogatory No. 12 and was improperly using information from the REDACTED communication in violation of the clawback request.  (*Id.*)  Thimes then offered various dates to confer the following week.  (*Id.*)

Three days later, TP-Link's counsel responded by again asserting that it had requested a L.R. 7-3 conference regarding the substance of the instant motion back on August 29.  (*Id.* at 2.)  TP-Link again repeatedly referenced the contents of the REDACTED communication throughout its e-mail.  (*Id.* at 3.)

The same day, Thimes's counsel replied by pointing out that TP-Link still had not identified any deficiency with Thimes's third supplemental responses to Interrogatory No. 12.  (*Id.* at 1.)  Thimes also again reminded TP-Link that it was violating FRCP 26(b)(5)(B) by using and referencing the contents of the REDACTED communication after Thimes had repeatedly given clawback notices.  (*Id.* at 2.)

Counsel for the parties proceeded to have their L.R. 7-3 conference on September 6. (Gaw Decl. ¶ 8.)

## B.   TP-LINK FRIVOLOUSLY ARGUES THAT THIMES' THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 IS INCOMPLETE.

A frivolous argument is one where the "legal or factual contentions [are] so weak as to constitute objective evidence of improper purpose." *In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010).  As demonstrated below, TP-Link's claim that Thimes should face terminating sanctions—the most extreme sanction possible—for purportedly withholding information in response to Interrogatory No. 12, crosses over the line into frivolousness given the complete absence of factual support.  Indeed, it appears that the sole reason why TP-Link even made this argument in the first place was so that it could claim that it had requested a conference with counsel about a terminating sanctions motion within the deadlines imposed by the Case Management Order.

Here, TP-Link's improper purpose is demonstrated by the fact that nowhere in this brief does it point to evidence showing that Thimes has given an incomplete response to Interrogatory No. 12.  TP-Link does not discuss Interrogatory No. 12 in its introduction, and the entirety of its first reference to this subject comes by way of the conclusory assertion: "Thimes still has not fully and truthfully responded to Interrogatory No. 12—in particular, Thimes refuses to provide additional information about its data mining violation of Amazon's software that resulted in an expulsion." *Supra* at 8.

Four pages later, TP-Link substantively discusses the data mining issue for the first and only time.  *Supra* at 12-15.  What had happened was that on June 28, 2018, Amazon sent a suspension notice to Thimes stating that Thimes had used Amazon's mobile app "to extract dangerous goods (hazmat) information from our systems" and that Thimes is not "authorized to use any Amazon service to collect product listings or descriptions or use data mining, robots, or similar data gathering and extraction tools." (Auyang Decl., Ex. 14.)  The suspension notice invited Thimes to submit an appeal by "send[ing] us a plan that explains how you will address this problem." (*Id.*)  Thimes

did so.  (Auyang Decl., Ex. 15 at 1-2.)  Thimes's appeal specifically explained why it had used a script "to identify hazmat status" of products it was selling, acknowledged that the Amazon conditions of use "[p]rohibits any use of data mining," and imposed corrective and preventive measures to prevent any future violations.  (*Id* at 1.)  The bates numbers for these e-mails (THIMES00311 and THIMES00264), as TP-Link acknowledges, were fully disclosed in both Thimes's second and third supplemental responses to Interrogatory No. 12.  *Supra* at 14.

From there, TP-Link leaps to the conclusion that "this third supplemental response continues to remain deficient with respect to the data mining violations."  *Id.* As an initial matter, it is not clear whether this is inadvertent or deliberate, but TP-Link falsely asserts there were "violation**s**" (plural) instead of the single instance of data mining.  The Amazon suspension notice does not state there were multiple violations, only that there had been a warning about "similar activities" out of a broad set of "Seller Policies."  (Auyang Decl., Ex. 14.)  Nor did Thimes's appeal acknowledge prior "data mining" violations—it stated that it had previously addressed actions it had taken during **"shipment creation"** that "may have altered the accuracy of the Amazon platform."  (Auyang Decl., Ex. 15 at 1.)  In any event, Mr. Eisenberg is only aware of the single data mining violation that Amazon sent on June 28, 2018, and his reference in Thimes's appeal to a June 29 notice date was merely a typo (which is obvious when one reads the contents of the appeal).  (Eisenberg Decl. ¶ 23.)

The rest of TP-Link's argument is essentially that Thimes must be withholding information about the data mining issue because (i) TP-Link does not think that the other documents cited by Thimes regarding that topic are relevant and (ii) "TP-Link has thus far found nothing else in Thimes's product about the data mining issue[.]" *Supra* at 14-15.  The four other cited documents, however, prove Thimes's point that the "data mining" concern was a non-issue and were included in the response for that reason.  The July 5 notice shows that Amazon apparently had never even suspended Thimes for that "data mining" issue, and the subsequent appeal and subsequent July 8

1   notice show that Amazon *reinstated* Thimes notwithstanding that issue.  *Id.*  In short,

2   the "data mining" violation did not cause Amazon to expel Thimes.  The absence of

3   other documents in Thimes's production does not prove anything, especially since TP-

4   Link has already obtained a document production from Amazon and thus knows that

5   there are no other documents on this topic.  (Gaw Decl. ¶ 14, Ex. 27.  Indeed, the

6   absence of other documents is consistent with Thimes's point that it had no other

7   documents to identify in response to Interrogatory No. 12.

8        TP-Link does not substantively discuss Interrogatory No. 12 after that, and the

9   only other meaningful reference of that topic is a brief mention in TP-Link's request in

10  the alternative for issue sanctions regarding causation.  *Supra* at 24.  Here, TP-Link

11  simply asserts that Thimes's citation of what it deems to be unrelated documents to the

12  data mining issue "demonstrates a continual and willful obstructionist behavior."  *Id.*

13       Now, faced with this stark illustration as to the utter lack of evidence to support

14  its accusations regarding Interrogatory No. 12, TP-Link may argue that there must be

15  more about the data mining issue because, as TP-Link claims, the last notice that

16  Thimes received from Amazon regarding a TP-Link product was sent on June 21, 2018.

17  *Supra* at 9.  But while that may have been the last *notice* that Thimes received, that was

18  not the last time that TP-Link had sent false counterfeiting allegations about Thimes.

19  In fact, as reflected in the declaration of Amazzia's principal, Mikhail Fikhman, TP-

20  Link had made additional counterfeiting complaints against Thimes *12* more times after

21  June 21, 2018, with the last complaint having been made on July 20, 2018.  (Fikhman

22  Decl. ¶ 13 & Ex. 66; ECF No. 224 at pages 300-301 and 329 of 330.)  TP-Link is well

23  aware of that fact.  And in raising the allegations about a trademark infringement

24  complaint issued by 3PM, *supra* at 10, TP-Link fails to tell the Court the fact that 3PM

25  subsequently recanted that allegation.  (ECF No. 224 at page 288 of 330.)

26

27

28

## C. TP-LINK COMPLIED WITH ITS DOCUMENT PRODUCTION AND DISCOVERY OBLIGATIONS.

Turning to the issue of the REDACTED -related documents, Thimes first addresses the repeated accusation that it did a "document dump" upon TP-Link.  Notably, TP-Link does not claim that even a single document produced on August 31 is non-responsive—it would not be able to do so, as every such document is literally either a communication with Amazon or a communication about TP-Link.  And as stated earlier, all but 17 of the documents in its August 31 production came entirely from the collection that began shortly after the Court issued the Order on August 16. (Gaw Decl. ¶ 12.)  Thimes had no interest in searching for and producing these documents because they have no material relevance to the claims and counterclaim in this lawsuit, and it had specifically objected to their production on the grounds that it was unduly burdensome and disproportional to the needs of the case. (*Id.*, Ex. 26 at 2-6.)  But not only did TP-Link press for these documents over Thimes's objection, however, it even filed a supplemental memorandum complaining about how Thimes "has produced <u>no</u> emails from 2016 and only <u>four</u> emails from 2017." (ECF No. 206 at 2.)  The Court granted TP-Link's request, and at great time and expense to Thimes—including the cost of diverting substantial attention away from its effort to oppose TP-Link's summary judgment motion—Thimes collected and produced all non-privileged documents it could find that were responsive to the requests listed in the Order.  TP-Link learned for itself the hard way that Thimes had previously not produced any e-mails from 2016 because there were no complaints during that year, and that it had produced only four e-mails for 2017 because that was the sum total of all complaints or concerns for that year. (Auyang Decl., Ex. 17 at 2.)  Of course, had Thimes withheld this "document dump," TP-Link would now be seeking terminating sanctions against Thimes for purposefully withholding nearly two hundred thousand responsive documents.  As far as TP-Link is concerned, it is always a "heads I win, tails you lose" situation when it comes to discovery.

1      TP-Link also recklessly throws around the charge that Thimes "concealed" the

2  existence of the REDACTED   For example, TP-Link states that Thimes's initial

3  disclosures never identified the REDACTED *Supra* at 16.   For initial disclosures,

4  however, a party is only required to disclose the identities of witnesses "likely to have

5  discoverable information—along with the subjects of that information—that the

6  disclosing party may use *to support its claims or defenses*, unless the use would solely

7  be for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).   Similarly, a

8  party must disclose a description of documents "in its possession, custody or control

9  and *may use to support its claims or defenses*, unless the use would solely be for

10  impeachment."   Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).   At no point,

11  however, has Thimes ever planned to use anything from the REDACTED "to support its

12  claims or defenses."   As an initial matter, TP-Link was not a party to this REDACTED

13  so there is no conceivable way Thimes could use anything from the REDACTED    against

14  TP-Link.   More importantly, any factual findings made by an REDACTED    would be

15  inadmissible hearsay as a matter of law.   *Cerner Middle E. Ltd. v. Belbadi Enterprises*

16  *LLC*, 939 F.3d 1009, 1015 (9th Cir. 2019) ("Defendants contend that the factual

17  findings in the REDACTED           could affect the outcome of this case. Those findings

18  would be inadmissible if and when this case proceeds to a factual adjudication.").

19      Furthermore, TP-Link has not identified any RFP specifically requiring Thimes

20  to produce any REDACTED            it has ever had with Amazon (or anyone

21  else), nor did TP-Link propound any interrogatories requesting Thimes to identify such

22  information.   Thus, while TP-Link argues that it is prejudiced "because Thimes should

23  have disclosed and produced documents related [to] the REDACTED        months

24  ago, and most certainly prior to TP-Link serving its motion for summary judgment," it

25  pointedly fails to cite to any discovery request, court order, or legal rule imposing any

26  such obligation upon Thimes. *Supra* at 23.   A party has no freestanding obligation to

27  disclose information "beyond its standard discovery obligations."   *United States v.*

28  *Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1171 (9th Cir. 2017).   TP-Link certainly has

1   not *sua sponte* disclosed to Thimes any adverse information about itself.  As just one

2   example, in its own initial disclosures, TP-Link identified its employee Antoine Liu as

3   someone with knowledge about Thimes's supposed trademark infringement, but does

4   not state anything about how Mr. Liu knew about (i) TP-Link's repeated efforts to

5   remove Thimes from Amazon or (ii) TP-Link's non-infringement related reasons for

6   seeking Thimes's removal.  (Gaw Decl. ¶ 15, Ex. 28.)  *See also supra* at 2 (both cited

7   e-mails involve Antoine Liu).  Not only does TP-Link waste the Court's time on a

8   terminating sanctions motion that clearly falls below the standards needed to grant such

9   an extraordinary remedy, but it displays rank hypocrisy regarding that motion.

10      Thus, to the extent any "standard discovery obligation" arose for Thimes to

11   produce any documents about the REDACTED    it did so only upon the issuance of the

12   Order on August 16.  Now, TP-Link argues that such documents are responsive to RFPs

13   2 and 10.  *Supra* at 16.  But they are not responsive to RFP 10, as

14   REDACTED                  re not documents or communications with Amazon.  Nor are they responsive

15   to RFP 2, unless one takes an extremely broad reading of the phrase "concerns, claims,

16   or complaints"—an interpretation so expansive that practically almost any kind of

17   document about Thimes could be responsive.  And had TP-Link sought production of

18   such documents in their own right, the Court likely would have denied the motion to

19   compel because (1) the REDACTED        are inadmissible (*see Cerner Middle*, 939

20   F.3d at 1015) and (2) TP-Link could always subpoena Amazon regarding its reasons

21   for expelling Thimes.  In fact, TP-Link *did subpoena* Amazon for documents and

22   deposition testimony about this very topic.  (Gaw Decl. ¶ 16, Ex. 29 at page 15 of 36

23   (Topic No. 10).)  For whatever reason, TP-Link has elected not to follow through on

24   that subpoena, so its claims of prejudice are galling given that it is deliberately

25   refraining from seeking the same information directly from the source.

26      In any event, Mr. Eisenberg maintained the confidentiality of all attorney-client

27   privileged communications he had about the REDACTED      (Eisenberg Decl. ¶ 24.)  He

28   never received anything directly from Amazon or from the REDACTED    (*Id.*)  Thimes

1   disclosed the existence these documents on its privilege log per the Order.  *Supra* at

2   29-30.  Therefore, there are no possible grounds for any sanctions as Thimes complied

3   with the Order—either because the documents are not responsive or because Thimes

4   properly withheld them pursuant to a privilege log.  The only issue is whether, if these

5   documents are in fact responsive, they are protected under attorney-client privilege or

6   as work product.  As demonstrated in the next section, the answer is yes.

   **D.   THIMES'S DOCUMENTS ARE ATTORNEY-CLIENT**
   **PRIVILEGED OR WORK PRODUCT.**

9       It goes without saying that all e-mails exchanged between Thimes and any of its

10   counsel about anything to do with any  REDACTED   are attorney-client privileged and

11   non-discoverable.  And while ***pre-existing*** documents that a litigant possesses ***prior*** to

12   a communication with an attorney do not become privileged merely by the fact that

13   those documents are forwarded on to an attorney, that is not the case with Thimes's

14   documents here.  *See, e.g., Willis Elec. Co. v. Polygroup Trading Ltd.*, No. 15-CV-

15   3443-WMW-KMM, 2021 WL 568454, at *8 (D. Minn. Feb. 16, 2021) (declining to

16   order party to produce attachments to privileged e-mail, but instructing party to search

17   for version of the same attachments "that are not tied to any privileged

18   communication"); *Rainey v. Plainfield Cmty. Consol. Sch. Dist. No. 202*, No. 07 C

19   3566, 2009 WL 1033654, at *2 (N.D. Ill. Apr. 16, 2009) ("The communications,

20   including any attachments, sent to the attorney are privileged.   However, the

21   communications as originally received from the media or parents still must be disclosed

22   to the extent they are responsive to a proper discovery request."); *Muro v. Target Corp.*,

23   250 F.R.D. 350, 363 (N.D. Ill. 2007) ("[E]ven though one e-mail is not privileged, a

24   second e-mail which forwards that prior e-mail to counsel might be privileged in its

25   entirety.  In this respect, the forwarded material is similar to prior conversations or

26   documents that are quoted verbatim in a letter to a party's attorney.").

27       Here, because Thimes never received any REDACTED   directly from an

28   REDACTED or from Amazon, the attorney-client privilege attaches to those filings

1  because Thimes did not independently possess them before receiving the privileged

2  communication. Any REDACTED                sent by Thimes to any REDACTED      remain

3  protected for the same reason.

4         As for Thimes's work product claim, TP-Link appears to dismiss it simply

5  because the participants in the REDACTED                              The work

6  product doctrine is not limited to lawyers, however.  *See* Fed. R. Civ. P.

7  26(b)(3)(A)("Ordinarily, a party may not discover documents and tangible things that

8  are prepared in anticipation of litigation or for trial ***by or for another party*** or its

9  representative[.]");  *Perez   v.   DirecTV   Grp.   Holdings,   LLC*,   No.

10 SACV1601440JLSDFMX, 2020 WL 2078257, at *2 (C.D. Cal. Mar. 5, 2020) ("That

11 SIRs   are   prepared   by non-attorneys   does   not   tip   the   scale   in   Plaintiff's

12 favor.  Work product protection extends to any materials prepared in anticipation of

13 litigation by or for a party.").

14        Furthermore, the majority of courts have held that communications exchanged

15 REDACTED                              are protected as work product.  Some courts

16 have done so on the grounds that the information was confidentially shared pursuant to

17 a non-disclosure agreement (like what Thimes had, *see* Eisenberg Decl. ¶ 21 & Ex. 24)

18 and because both the litigant and the REDACTED       have a common interest in the

19 outcome of the litigation.  *See, e.g., Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l,*

20 *Inc.*, No. EDCV-17-1388-ABK(KX), 2018 WL 8193374, at *8 (C.D. Cal. May 14,

21 2018); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL

22 1714304, at *3 (E.D. Tex. May 4, 2011); *Doe v. Soc'y of Missionaries of Sacred Heart*,

23 No. 11-CV-02518, 2014 WL 1715376, at *4 (N.D. Ill. May 1, 2014); *Devon It, Inc. v.*

24 *IBM Corp.*, No. CIV.A. 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012).

25 Other courts have reasoned that communications with REDACTED      are inherently

26 work product because they were "primarily, perhaps exclusively, for the purpose of

27 preparing for litigation." *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US)*

28 *Holdings, Inc.*, No. CV 16-538, 2018 WL 466045, at *5 (W.D. Pa. Jan. 18, 2018). *See*

1   *also Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Az. 2020)

2   (litigation funding agreement was covered by work product because its existed solely

3   because of litigation).

4        In response, TP-Link cites a single case, *Fulton v. Foley*, No. 17-CV-8696, 2019

5   WL 6609298, *4 (N.D. Ill. Dec. 5, 2019) for the proposition that Thimes's

6   communications with REDACTED  is not protected work product.  *Supra* at 22.  As an

7   initial matter, *Fulton* is in the minority amongst the courts that have addressed the issue.

8   More importantly, TP-Link overstates its actual holding, which actually blocked

9   production of all materials provided by the plaintiff to the REDACTED          except for

10  "non-mental impressions, fact-based information and documents including any

11  statements provided by Plaintiff directly" to the REDACTED .  *Id.*  The REDACTED

12  communication, however, is Mr. Eisenberg's mental impressions about the mental

13  impressions and conclusions made by others regarding an ongoing litigation.  There is

14  no "fact-based information" being communicated.  Thus, even under *Fulton*, disclosure

15  is not appropriate here.

16       Finally, TP-Link cannot demonstrate a "substantial need" for any of these

17  requested documents as none of them are "essential to an element of their defense or

18  the preparation of their case."  *Continental Circuits*, 435 F. Supp. 3d at 1023.  Indeed,

19  TP-Link has filed a motion for summary judgment advancing various arguments that

20  have nothing to do with these documents.  And even in this brief, for whatever reason,

21  TP-Link has opined that a number of things other than its 73 false counterfeiting

22  allegations were responsible for Amazon's expulsion of Thimes. *Supra* at 9-10, 14-15.

23  TP-Link cannot, on the one hand, argue in good faith that the evidence of these other

24  issues demonstrates that Thimes cannot establish proximate causation, and then

25  contend with a straight face that it has a "substantial need" for Thimes's work product

26  in order to prevail in its defense.  Most importantly, TP-Link does not need Thimes's

27  work product to show that Amazon expelled Thimes for other reasons when TP-Link

28

1 can get that information directly from Amazon.  TP-Link can also depose Mr.
2 Eisenberg if it wants his lay opinions as to proximate causation.

3    **E.    TERMINATING SANCTIONS AGAINST THIMES WOULD**
4         **CONSTITUTE REVERSIBLE ERROR EVEN IF THIMES HAD**
5         **VIOLATED THE DISCOVERY ORDER.**

6         It is hard to take TP-Link's request for terminating sanctions seriously in light
7 of the considerable precedent on this topic, and TP-Link implicitly recognizes that it is
8 making a gross overreach by the fact it barely discusses the case law regarding the
9 "extraordinary penalty of dismissal." *STO Home Delivery*, 2021 WL 3598723, at *1.
10 *See also U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d
11 600, 603 (9th Cir. 1988) ("Dismissal and default judgment are authorized only in
12 'extreme circumstances.'") (citation omitted).  Of course, it duly acknowledges the
13 five-factor test set forth by the Ninth Circuit. *Supra* at 21.  But reflective of its overall
14 lack of candor, TP-Link conspicuously fails to mention that "[w]hen a district court
15 imposes a sanction that amounts to dismissal, it is required to consider whether the
16 noncompliance justifying the sanction 'involved willfulness, fault, or bad faith.'"
17 *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (citation omitted).
18 TP-Link never discusses either willfulness or fault, apart from a brief reference to
19 "continual and willful obstructionist behavior" with respect to Thimes's responses to
20 Interrogatory No. 12. *Supra* at 24.  The Ninth Circuit, however, has specifically held
21 that TP-Link's notion of willful conduct (i.e., that Thimes did not act accidentally) is
22 wrong:

23         The court did "not find the Brodeurs' disclosures to be in bad faith."
24         But it concluded that the deficiencies were both willful and the fault of
25         the Brodeurs.  In the court's view, the Brodeurs acted "willfully" and
26         were at "fault"—not because they acted disobediently, deceitfully,
27         knowingly, or otherwise dishonestly—but because the disclosures
28         "were within their control, they had enough information to make

appropriate disclosures, and there was nothing accidental about them."
In other words, the district court found the Brodeurs were disobedient
because they complied with Rule 26 and served disclosures, but did so
improperly.  Not only is the district court's view of willfulness and fault
contrary to *Henry*, but it would also render the *R & R Sails* willfulness
and fault analysis meaningless—every initial disclosure served by
every party in every case is nonaccidental and within the serving party's
control.  Such a view is plainly erroneous.

*Liberty Ins.*, 41 F.4th at 1193 (internal citations omitted).  *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) ("'***disobedient conduct*** not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault.") (emphasis added).  TP-Link's sole argument for bad faith is that Thimes should not have designated the REDACTED communications as work product, even though it only cited a single case (for a misleading proposition no less, as *Fulton* upheld the work product designation) whereas Thimes has cited numerous cases supporting its position.  Thus, TP-Link's failure to demonstrate Thimes's willfulness, fault, or bad faith necessitates denial of any terminating sanctions.  *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1091 (9th Cir. 2021) (district court abused discretion in imposing preclusion sanctions when there was no evidence of bad faith).

As for the five factors, they all end in Thimes's favor and that is a separate reason why dismissal is unwarranted.  For the first two factors (the public's interest in expeditious resolution of litigation and the court's need to manage its docket), "cases in which we have upheld orders of dismissal have often involved serious disruptions of the district court's trial schedule."  *Wiltec Guam*, 857 F.2d at 603.  Here, there is no serious disruption at all as ***discovery is not yet even finished***.  TP-Link can resume its efforts to depose or seek documents from Amazon, and it can also depose Thimes and Mr. Eisenberg.  If the Court ultimately orders production of some or all of the documents at issue, or orders yet another supplemental response to Interrogatory No.

12 (though about what, Thimes cannot fathom), TP-Link will have them months before the January 9, 2023 trial date.

Regarding the third factor, there is no prejudice to TP-Link here for the same reasons—literally the worst-case scenario is that TP-Link can still get the requested materials and information months before the start of trial. *Wiltec Guam*, 857 F.2d at 604 ("The third factor, prejudice, looks to whether the appellants' actions impaired Wiltec's ability to go to trial or threatened to interfere with the rightful decision of the case."). TP-Link could also get admissible evidence directly from Amazon as to its reasons for expelling Thimes, as opposed to the inadmissible evidence TP-Link contends Thimes should have turned over. Moreover, if TP-Link has already taken Thimes or Mr. Eisenberg's deposition by the time this motion is decided, the Court could always give TP-Link leave to take a second deposition with the newly produced materials/information at hand. *See Everett v. Am. Gen. Life. Ins. Co.*, 703 F. App'x 481, 483 (9th Cir. 2017) (unpublished) (no prejudice from late disclosure of affidavit because affiant had already been deposed by the moving party).

To support its claim of prejudice, TP-Link cites *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004) for the proposition that "failure to produce documents as ordered… is considered sufficient prejudice." *Supra* at 21. That case, however, illustrates the kind of extreme behavior that warrants dismissal. In that case, the defendant had violated *five* different discovery orders by failing to answer interrogatories, refusing to produce important documents (or produced fabricated documents), and repeatedly made "absurd" and "completely unbelievable" objections and excuses for non-compliance over a period of two years. *Computer Task Group*, 364 F.3d at 1115-16. And with respect to the only argument TP-Link advances as to its prejudice, it claims that Thimes was required to produce these documents prior to TP-Link serving its August 22 motion for summary judgment. *Supra* at 23. But TP-Link provides no authority or explanation why that is the case when the Court issued the Order on August 16 and required compliance by August 31.

As for the fourth factor, TP-Link concedes that public policy favors disposition of cases on their merits and thus cuts against sanctions. *Supra* at 21. That leaves the fifth factor—the availability of lesser sanctions. But in a particularly disingenuous move, TP-Link cites the Seventh Circuit for the proposition that a court need not always consider lesser sanctions, *supra* at 21, when TP-Link knows that the precedent of the **Ninth Circuit** is that lesser sanctions must **always** be considered. *See*, *e.g.*, *Liberty Ins.*, 41 F.4th at 1192 ("When a district court imposes a sanction that amounts to dismissal, it is required… also to consider the availability of lesser sanctions.'"); *Wiltec Guam*, 857 F.2d at 605 ("The judge's 'understandable pique' at defense counsel's lapses cannot excuse his failure to consider alternative sanctions, nor can it overcome the strong policy favoring disposition of cases on their merits."); *Hernandez v. City of El Monte*, 138 F.3d 393, 400 (9th Cir. 1998) ("In particular, the district court abused its discretion by failing to consider less drastic sanctions for judge-shopping than dismissal of both actions."); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("Moreover, before dismissing an action, a court should always be certain that other less drastic alternatives are not available.").

Here, lesser sanctions are available—the Court can order production of whatever information and materials that it deems that TP-Link is entitled to. And if need be, the Court can always give an adverse jury instruction as a lesser sanction. *See*, *e.g* *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1060 (S.D. Cal. 2015) (despite prior warning that continued gamesmanship could result in sanctions, declining to impose terminating sanctions and issuing adverse jury instruction instead).

TP-Link, however, tries to argue that lesser sanctions are inadequate because it was unable to use this information in connection with its motion for summary judgment. *Supra* at 23. This is a ridiculous argument considering that it subpoenaed Amazon back on June 10, 2022 (*see* Gaw Decl., Ex. 29 at page 3 of 36) and has not tried to enforce that subpoena for over three months. Nor did it try to depose Thimes

1  or Mr. Eisenberg.  Had TP-Link done any of these things, it could have easily used the

2  fruits of its labor in connection with its motion for summary judgment.  Moreover, TP-

3  Link attempts to give a misimpression as to the standard for proving proximate

4  causation.  "California applies a broad 'substantial factor' test for legal causation, and

5  [Thimes] need only demonstrate a reasonable possibility that [TP-Link's] actions

6  played a role in [Thimes's permanent suspension] that was not merely 'infinitesimal'

7  or 'theoretical.'"  *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 551

8  (9th Cir. 2018) (citing *Bockrath v. Aldrich Chemical Co., Inc.*, 21 Cal. 4th 71, 79

9  (1999)).  TP-Link presents no evidence that even with its sought-after information, it

10  conclusively would have demonstrated as a matter of law that its 73 false counterfeiting

11  allegations played only an "infinitesimal" or "theoretical" role in causing Thimes's

12  expulsion from the Amazon Marketplace.  And that required showing certainly cannot

13  be proved through any factual findings made by an arbitrator, which, as stated already,

14  is inadmissible hearsay as a matter of law.  *See Cerner Middle*, 939 F.3d at 1015 (9th

15  Cir. 2019).

16    F.    **TP-LINK'S REQUESTED PRECLUSION SANCTIONS**

17        **AGAINST THIMES WOULD ALSO CONSTITUTE**

18        **REVERSIBLE ERROR.**

19    TP-Link requests in the alternative for preclusion sanctions that bars Thimes

20  from introducing any evidence showing that TP-Link was the proximate cause of any

21  harm to Thimes.  *Supra* at 25.  As the Court knows, proximate causation is one of the

22  required elements of Thimes's intentional interference claims.  *Navellier v. Sletten*, 262

23  F.3d 923, 939 (9th Cir. 2001).  So TP-Link's alternate sanction is just a *de facto*

24  terminating sanction that it tries to sneak in under the slightly more relaxed threshold

25  for imposing a preclusion sanction instead of a formal terminating sanction.

26    The Ninth Circuit, of course, calls a spade a spade.  Accordingly, any preclusion

27  sanction "that amounts to dismissal" requires a showing of "willfulness, fault, or bad

28  faith."  *Liberty Ins.*, 41 F.4th at 1192.  The Court is also required to "consider the

1    availability of lesser sanctions." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.2d

2    1240, 1247 (9th Cir. 2012).  Predictably, TP-Link does not mention either requirement

3    in its efforts to invite the Court to commit reversible error.  *Supra* at 25.  That is

4    sufficient grounds for the Court to deny the alternate request for preclusion sanctions.

5    And to the extent that TP-Link intends to simply rely upon the same evidence and

6    arguments it presented as to those issues in connection with the request for terminating

7    sanctions, such evidence and arguments are manifestly inadequate for the reasons

8    already discussed.

9        Even if the preclusion sanction did not amount to dismissal, it would also be

10   unwarranted if Thimes's "failure to disclose the required information is substantially

11   justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

12   1106 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1).  Thimes was substantially justified

13   in its actions here, as it has a good faith belief in its work product designation over the

14   materials in question and it identified those materials on its privilege log (except for

15   the REDACTED communication, but as explained above, that was inadvertent and due to

16   the exigent circumstances where Thimes was concurrently responding to a just-served

17   motion for summary judgment and a just-issued order compelling the production of

18   nearly 200,000 documents).  Moreover, any failure to disclose is harmless because the

19   Court could always order the production of these materials with months to go before

20   the trial, and because TP-Link can simply obtain the same underlying information

21   directly from Amazon.

22       Finally, Thimes notes that TP-Link's request for preclusion sanctions

23   specifically on the issue of proximate causation is expressly tied to their contemptuous

24   and sanctionable use of materials currently subject to a FRCP 26(b)(5) clawback

25   request, as discussed in the next section.  As that information should not have been

26   used at all, there is no foundation to request any preclusion sanction as to this topic.

27

28

**G.    THE COURT SHOULD SANCTION TP-LINK FOR ITS
WILLFUL AND REPEATED USE OF A DOCUMENT THIMES
HAS DESIGNATED AS WORK PRODUCT.**

The rules governing the treatment of privileged materials and work product are long established and unambiguous.  When a litigant notifies its opponent that there has been an inadvertent disclosure of work product, "[a]fter being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has, must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim."  Fed. R. Civ. P. 26(b)(5).  Furthermore, the Protective Order for this case expressly provides that the parties' obligations regarding inadvertently produced material "are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  (Protective Order at 11.)

As clearly reflected in Auyang Exhibit 19, Thimes informed TP-Link, pursuant to FRCP 26(b)(5), (i) that Mr. Eisenberg's correspondence with the REDACTED was work product, (ii) that Thimes was clawing back this correspondence and all other e-mails that were part of that thread, and (iii) that TP-Link was not to use or disclose the information found in that correspondence until the work product claim was resolved.  (Auyang Decl., Ex. 17 at 5.)  One day later, in the same e-mail thread, Thimes reiterated that it had provided a clawback notice regarding this correspondence.  (*Id.* at 4.)  Then after TP-Link proceeded to characterize the contents of this correspondence (*see id.* at 2-3.), Thimes issued a ***third*** reminder to TP-Link about its FRCP 26(b)(5) obligations.  (*Id.* at 2.)

After the first, second, and third clawback notice, "[TP-Link] has two choices: it may accept the claim or it may challenge the claim by providing the material under seal to the Court for determination of the issue of privilege; it may not, however, review the material to determine for itself whether the claimed privilege applies."

1   *United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*, 502 F.

2   Supp. 3d 62, 74 (D.D.C. 2020).  TP-Link did neither.  While it is filing this motion

3   under seal, TP-Link plainly "use[d] or disclose[d] the information" prior to Thimes's

4   claim of work product being resolved.  TP-Link repeatedly references, characterizes,

5   and quotes from the REDACTED                          in support of its arguments for

6   terminating sanctions, *see supra* at 5-8, 15-19, 22-23, instead of presenting the

7   matter for a resolution of Thimes's work product claim as it was required to do.  *See*,

8   *e.g.*, *Jensen v. Indianapolis Pub. Sch.*, No. 116CV02047TWPDLP, 2019 WL

9   911241, at *3 (S.D. Ind. Feb. 22, 2019) ("The Court concludes that the Plaintiff

10  attempts to use Exhibit 27 in Footnote 1 to justify his Motion to Compel, thereby

11  violating the Federal Rules."); *Radiance Aluminum Fence, Inc. v. Marquis Metal*

12  *Material, Inc.*, 335 F.R.D. 371, 377 (E.D. Mich. 2020) ("While the status of the

13  documents were in dispute, Radiance not only declined to return, sequester, or

14  destroy the documents, but proceeded to use the disputed material in deposing a

15  Marquis witness and in support of its response to Marquis' motion to compel.  The

16  claw-back provision of Rule 26(b) cannot be read to allow the recipient to continue

17  to use the disputed materials pending a finding of privilege by the Court.") (internal

18  citations omitted).

19      TP-Link tries to justify its use of the REDACTED             (and its

20  counsel's e-mails characterizing or quoting from that correspondence) by arguing

21  that Thimes asserted work product protection in "bad faith" and as a "red herring."

22  *Supra* at 22.  "Nothing in the protective order suggests that [TP-Link] would be the

23  arbiter of what is and what is not privileged.  Faced with a claw-back request, '[i]t

24  was not [TP-Link's] prerogative to unilaterally determine whether the information

25  received… was truly proprietary, confidential, privileged, or some combination of

26  those labels, and use the information it deemed appropriate.'" *Radiance Aluminum*

27  *Fence*, 335 F.R.D. at 377 (citation omitted). *See also Marshall v. McGill*, No. CV

28  10-01436-PHX-ECV, 2011 WL 13118589, at *3 (D. Ariz. June 8, 2011)

("Defendants obviously disputed Plaintiff's claim that the document was privileged but that issue was for the court, not Defendants, to resolve.").  In short, TP-Link did not "ask the court" as it was ethically required to do.  *Gomez*, 255 F.3d at 1135.  And in so doing, TP-Link also engaged in contempt of the Protective Order by willfully using the contents of this correspondence for its advantage in this lawsuit. (Protective Order at 11.)

Any number of sanctions—monetary and otherwise—are warranted for TP-Link's willful violation of FRCP 26(b)(5) and this Court's Local Rules.  *See* L.R. 83-7.  And should the Court agree with Thimes that the REDACTED                     is work product, disqualification of TP-Link's attorneys could be appropriate given the severe prejudice to Thimes.  *See*, *e.g.*, *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK AGRX, 2013 WL 2278122, at *3 (C.D. Cal. May 20, 2013) (attorneys disqualified for quoting privileged material in pleadings and failing to consult with court about privilege determination).  *See also Clark v. Superior Court*, 196 Cal. App. 4th 37, 55 (2011) (attorney properly disqualified for excessively reviewing privileged material because it was an appropriate prophylactic measure to protect opposing party from information the attorney should not have possessed); *McDermott Will & Emery LLP v. Superior Court*, 10 Cal. App. 5th 1083, 1110 (2017) (noting that ethical obligations regarding attorney-client privileged documents also apply to work product) & 1118-19 (Gibson Dunn properly disqualified when it deliberately used privileged material during deposition after receiving clawback notice).  Thimes respectfully encourages the Court to issue an Order to Show Cause to TP-Link as to why disqualification is not an appropriate remedy.

1   Certainly, at a minimum, the Court should strike Auyang Exhibits 17, 19, and

2   21[17] from the record and any reference or use of them in connection with this motion.

3   *See Sw. Reg'l Council of Carpenters v. Limon*, No. 17-CV-6582-DSF (MRWX), 2018

4   WL 6003618, at *9 (C.D. Cal. May 4, 2018) ("Paragraphs 60, 93(e)(iii), and 93(e)(iv)

5   are stricken from the Counterclaim because they rely on the privileged

6   communications[.]"); *Jensen*, 2019 WL 911241, at *3 (striking privileged material

7   from record and not considering it in deciding motion to compel).  Given TP-Link's

8   repeated reliance on these documents for this motion, denial of this motion is warranted

9   when these documents are excluded from consideration.

10   Additionally, monetary sanctions are deserved.  *Marshall*, 2011 WL 13118589,

11   at *3 ("Given the clear violation of Rule 26(b)(5)(B) and ER 4.4(b), a sanction is

12   warranted. The court will, therefore, order Defendants' counsel to pay the attorney's

13   fees incurred by Plaintiff in presenting this issue to the court.").  *See also* L.R. 83-7

14   (attorney's fees may be awarded if "conduct rises to the level of bad faith and/or a

15   willful disobedience of a court order"); Fed. R. Civ. P. 37(a)(5)(B) (attorney's fees

16   awarded to successful opposition to motion to compel unless movant was substantially

17   justified in bringing the motion).  Here, Thimes has incurred $12,500 in attorney's fees

18   in having to prepare its opposition to TP-Link's motion for sanctions.  (Gaw Decl. ¶

19   17.)  The Court should order TP-Link to pay this amount.

20

21   [17] Thimes also notes that Exhibit 21 is an offer to compromise the disputed claim

22   underlying this motion.  It is therefore inadmissible for TP-Link to prove the merits of

23   its sanctions motion. Fed. R. Evid. 408.  It is unclear whether TP-Link's deliberate use

     of Exhibit 21 is unethical, but it constitutes a sharp practice at the very least.  And it

24   disincentivizes parties to attempt to do any kind of pre-motion resolution.  *See*

25   *Stockman v. Oakcrest Dental Ctr.*, 480 F.3d 791, 798-99 (6th Cir. 2007) ("It would be

     unreasonable to expect a party to ever make a settlement offer if doing so forced it into

26   choosing between conceding one or more elements of liability or damages or having

27   the offer admitted against it.").  In any event, if Exhibit 21 is considered on its merits,

     it shows that TP-Link has not suffered any prejudice because it declined to receive

28   documents in favor of bringing this motion instead.

## V.    TP-LINK'S CONCLUSION

For the foregoing reasons, TP-Link respectfully requests that the Court dismiss Thimes's claims with prejudice or in the alternative, issue an order: (1) precluding Thimes from proffering evidence in opposition to TP-Link's motion for summary judgment or at trial that TP-Link in anyway caused harm to Thimes; (2) requiring Thimes to comply with the Court's prior discovery order, ECF No. 207, within three days, including by providing complete responses to Interrogatory No. 12 and RFP Nos. 1, 2, and 10; and (3) requiring Thimes to pay monetary sanctions to TP-Link in the amount to be determined by the Court.

## VI.   THIMES'S CONCLUSION

For the reasons stated herein, the Court should deny Defendant TP-Link's motion for sanctions in its entirety.  The Court should also issue an Order to Show Cause as to why TP-Link's counsel should not be disqualified for violating Federal Rule of Civil Procedure 26(b)(5) and the Protective Order.  The Court should additionally award monetary sanctions in the amount of $12,500 in attorney's fees to Plaintiff Thimes Solutions Inc.

| | | |
|---|---|---|
| 1 | Dated: September 19, 2022 | GAW \| POE LLP |
| 2 | | |
| 3 | | By:   _/s/ Randolph Gaw_ |
| 4 | | RANDOLPH GAW (S.B. #223718) |
| 5 | | rgaw@gawpoe.com |
| | | GAW \| POE LLP |
| 6 | | 4 Embarcadero, Suite 1400 |
| | | San Francisco, CA 94111 |
| 7 | | Telephone: (415) 766-7451 |
| | | Facsimile: (415) 737-0642 |
| 8 | | |
| 9 | | Attorneys for Plaintiff Thimes Solutions Inc. |
| 10 | | |
| 11 | | |
| 12 | Dated: September 12, 2022 | LTL ATTORNEYS LLP |
| 13 | | By:   _/s/ Heather F. Auyang_ |
| 14 | | |
| 15 | | HEATHER AUYANG (S.B. #191776) |
| | | heather.auyang@ltlattorneys.com |
| 16 | | LTL ATTORNEYS LLP |
| | | 300 South Grand Ave., 14th Floor |
| 17 | | Los Angeles, CA 90071 |
| | | Telephone: (213) 612-8900 |
| 18 | | Facsimile: (213) 612-3773 |
| 19 | | |
| 20 | | Attorneys for Defendant TP-Link USA Corporation |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |