| | |
|---|---|
| RANDOLPH GAW (S.B. #223718) | MARK SCHLACHET (*pro hac vice*) |
| rgaw@gawpoe.com | markschlachet@me.com |
| MARK POE (S.B. #223714) | 3515 Severn Road |
| mpoe@gawpoe.com | Cleveland, OH 44118 |
| VICTOR MENG (S.B. #254102) | Telephone: (216) 225-7559 |
| vmeng@gawpoe.com | Facsimile: (216) 932-5390 |
| GAW | POE LLP | |
| 4 Embarcadero Center, Suite 1400 | |
| San Francisco, CA 94111 | |
| Telephone: (415) 766-7451 | |
| Facsimile: (415) 737-0642 | |

Attorneys for Plaintiff Thimes Solutions Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| THIMES SOLUTIONS INC.<br><br>      Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, et al.<br><br>      Defendants.<br>_____<br>TP-LINK USA CORPORATION, et al..<br><br>      Counterclaimant,<br><br>v.<br><br>THIMES SOLUTIONS INC.<br><br>      Counter-defendant. | Case No. 2:19-cv-10374-SB (Ex)<br><br>**THIMES SOLUTIONS INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO TP-LINK'S MOTION FOR TERMINATING SANCTIONS**<br><br>Courtroom: Courtroom 750<br>Date:      October 14, 2022<br>Time:     9:30 am |

**INTRODUCTION**

TP-Link's supplemental memorandum tries to get in the last word on practically every topic, but conspicuously glides over one notable subject—whether TP-Link violated the clawback requirements of FRCP 26(b)(5) by repeatedly and deliberately using the Lexshares communication without first seeking a judicial determination as to Thimes's claim of work product. TP-Link says very little on that subject because its actions are indefensible. Its use of the Lexshares communication necessitates sanctions, the striking of Auyang Exhibits 17, 19, and 21 from the record, and denial of this motion.

Separately, TP-Link's continued misrepresentations of the record and its failure to even come close to meeting the exacting standards for a terminating sanctions motion also require denial of this motion.

**I.  TP-LINK'S CONDUCT WAS IMPERMISSIBLE AND UNETHICAL.**

The entirety of TP-Link's defense of its violation of FRCP 26(b)(5)'s clawback rule is a rote assertion that it "is entitled to discuss the relevance and contents of the email in order to challenge Thimes's designation[.]" (Mem. at 5.) TP-Link cites no authority for this assertion, nor does it attempt to distinguish the authorities cited by Thimes apart from pointing out that *Hartpence* (which resulted in attorney disqualification) involved attorney-client privileged materials instead of work product. Nor does TP-Link distinguish the authorities Thimes cites holding that, in fact, a party cannot discuss the relevance and contents of a privileged communication even on a motion to compel production of the same. (ECF No. 229-1 at page 57 of 61.) And, of course, as seen in the joint stipulation itself, TP-Link's discussion of the Lexshares communication was not just in the context of any argument over the production of that document, but was the primary basis for their request for terminating sanctions and/or an issue sanction precluding introduction of evidence regarding causation. (*Id.* at pages 30-31 of 61.)

TP-Link's inability to defend its actions is not inadvertent. The Court should

1  also consider that, under the procedural requirements for the parties' joint
2  stipulation, TP-Link had Thimes's responding inserts in advance of filing it.  That
3  means TP-Link had extra time to find contrary authority, and that it was willful in
4  filing its motion for terminating sanctions, as it did so after knowing that Thimes
5  would be seeking sanctions for TP-Link's violation of FRCP 26(b)(5) and the
6  Protective Order.  As detailed in the many authorities Thimes cites, the Federal
7  Rules of Civil Procedure, and the ethics rules, require TP-Link to first obtain a
8  determination from this Court as to Thimes's claim for work product over the
9  Lexshares communication.  (ECF No. 229-1 at pages 56-58 of 61.)  Had it
10 prevailed, TP-Link could then seek leave to file a motion for terminating sanctions
11 after the motion cut-off.[1]  That is the proper sequence of events that TP-Link needs
12 to follow.  "The path to ethical resolution is simple: when in doubt, ask the court."
13 *Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001).  TP-Link did not do this
14 and does not attempt to justify its conduct.

15       Regardless of the Court's ruling on Thimes's claim of work product, the
16 bottom line is that TP-Link is not entitled to decide for itself the merits of that
17 claim.  As reflected in Thimes's cited authorities, the Court should strike Auyang
18 Exhibits 17, 19, and 21 and issue monetary sanctions against TP-Link in the amount
19 of $15,000, after including Thimes's time spent on this supplemental memorandum.
20 (ECF No. 229-1 at page 59 of 61; Supp. Gaw Decl. ¶ 10.)  The Court should also
21 issue an order to show cause as to why TP-Link's counsel should not be
22 disqualified.  (ECF No. 229-1 at page 58 of 61.)

23 **II.   TP-LINK'S SUPPLEMENTAL MEMORANDUM SHOWS THAT NOTHING WAS CONCEALED.**
24
25       In its supplemental memorandum, TP-Link apparently discovered the use of
26 the "Control-F" function and points the Court to other entries in the privilege log

---

[1] TP-Link similarly did not seek leave to file this motion even though it is noticed to be heard after the October 7, 2022 cutoff for all motions in this action.

1  that disclose the existence of the arbitration.² (ECF No. 234 ¶ 2.) That only
2  supports Thimes's point—it did not "conceal" anything but duly listed these
3  documents on a privilege log after designating them as attorney-client privileged or
4  work product. (ECF No. 229-1 at pages 46-47 of 61.) That is what was the Court
5  permitted Thimes to do in its August 16, 2022 Discovery Order. (Order at 3.) And
6  TP-Link never responds to Thimes's point that it cannot be sanctioned for literally
7  complying with the Order. (ECF No. 229-1 at page 47 of 61.) A prerequisite for
8  any sanctions order stemming from a discovery order is that there must have been
9  non-compliance with that order. Fed. R. Civ. P. 37(b)(2)(A). And a terminating
10 sanctions order based upon the failure to comply with any other discovery obligation
11 requires "willfulness, fault, or bad faith." (ECF No. 229-1 at pages 50-51 of 61.)
12 TP-Link does not even come close to meeting either requirement (nor does it
13 acknowledge its failure to identify those standards to the Court).

14     Perhaps recognizing the futility of this sanctions motion, TP-Link's counsel
15 attempts to salvage it by making several bad-faith accusations against Thimes's
16 counsel. The first is when they claim that Thimes's arbitration counsel "was in
17 communications with Thimes's litigation counsel[.]" (ECF No. 234-1 ¶ 4.) This
18 accusation is false. Again, Thimes's litigation counsel has had no role or
19 involvement in anything related to Thimes except for this lawsuit. (Supp. Gaw
20 Decl. ¶ 2.) Thimes's litigation counsel has never met, spoken with, or discussed
21 anything with Thimes's arbitration counsel. (*Id.* ¶ 3.) The privilege log entry in
22 question references an e-mail first sent **by Mr. Eisenberg** to his litigation counsel,
23 which cc-ed his arbitration counsel and then a "***reply-all***" e-mail sent back from his
24 litigation counsel to Mr. Eisenberg. (*Id.* ¶ 4.)

25     The second bad-faith accusation is that Thimes's counsel supposedly claimed

---

² Again, Thimes does not contend that the fact of the arbitration is privileged or work product. (ECF No. 229-1 at page 37 of 61, n.15.) That is why this document and the Supplemental Gaw Declaration are not filed under seal.

- 3 -

THIMES SUPP MEMO IN OPP
TO TP-LINK MOT. FOR SANC.
CASE NO. 2:19-CV-10374-SB (Ex)

1  that he was unaware as to whether there was a final award. (ECF No. 234-1 ¶ 3.)
2  This allegation is also false. During that conference of counsel, Thimes's counsel
3  said that he was aware that an award had been issued but he did not know if it was
4  ever confirmed, or how the arbitration itself ended.[3] (Supp. Gaw Decl. ¶¶ 8-9 & Ex.
5  30 at 1-2.) TP-Link's misrepresentation is particularly brazen considering that
6  concurrently with its motion, it attached as an exhibit an e-mail from Thimes's
7  counsel acknowledging the existence of the award. (ECF No. 229-5 at page 4 of 4.)

### III. THIMES PROPERLY ANSWERED INTERROGATORY NO. 12.

In the joint stipulation, Thimes pointed out that TP-Link's contention that Thimes had withheld information in its response to Interrogatory No. 12 was legally frivolous as there was literally no evidence to support that contention. (ECF No. 229-1 at pages 41-43 of 61.) TP-Link's only response is to argue that several of the documents cited in the response do not facially address the data mining issue, while ignoring the reason why Thimes included those documents in the response. (*Id.* at pages 42-43 of 61.) Interrogatory No. 12 is not a "data mining" interrogatory, after all, but instead called for Thimes to "describe in detail any concerns, claims, or complaints regarding THIMES[.]" Thimes did just that in its response by also including information and documents that showed that certain "concerns, claims, or complaints" were withdrawn or mistaken in the first place. The interrogatory did not ask Thimes to limit its answer to merely identifying the complaints themselves.

### IV. TP-LINK'S REMAINING ARGUMENTS ARE MERITLESS.

TP-Link does not even try to ameliorate its failure to meet the exacting standards for granting terminating sanctions. It never acknowledges that (1) an arbitration award is inadmissible evidence (*see* ECF No. 229-1 at page 45 of 61),

---

[3] The Court will note that TP-Link's counsel carefully hedges by claiming that Thimes's counsel made "state[ments] to the effect" of those supposed representations. (ECF No. 234-1 ¶ 3.) This is not the first time TP-Link has not been forthright to Thimes or to the Court, as detailed in other court filings. (*See, e.g.*, ECF No. 189 at page 2 of 7; ECF No. 217-1 at pages 44, 49 of 60.)

(2) that it was not prejudiced because it still had time—but chose not to—obtain discovery from Amazon regarding its reasons for expelling Thimes or depose Mr. Eisenberg / Thimes about the arbitration (*see id.* at page 51 of 61), (3) that it was not prejudiced because even if the Court compels production of additional documents, TP-Link will have them months before the trial (*see id.* at page 52 of 61), or (4) that there are a multitude of lesser sanctions that the Court is required to first consider before imposing terminating sanctions. (*Id.* at page 53 of 61.) TP-Link also does not rebut that an issue sanction pertaining to proximate causation is grossly overbroad considering the minimal standards for proving such, or the evidence in the record supporting causation. (*Id.* at page 54 of 61.)

Of course, all that assumes that Thimes has to produce such documents in the first instance, which it does not. TP-Link ***fails to rebut or distinguish a single case Thimes cites as to why its documents*** are protected from disclosure. (ECF No. 229-1 at pages 47-49 of 61.) In addition to proving Thimes's point, it also shows there could not have been any bad faith on its part, as TP-Link could not locate even any persuasive authority against Thimes's position. TP-Link also again claims that work product protection extends only to lawyers—but Thimes already showed this claim to be wrong. (*Id.* at page 48 of 61.) TP-Link also argues that attachments to e-mails may not themselves be privileged, but ignores that such authority concerns ***pre-existing*** documents already in one's possession. (*Id.* at page 47 of 61.) And in terms of the scope of the RFPs, apart from the ridiculous idea that they encompass discovery requests or deposition transcripts from a different proceeding, TP-Link cites no authority for its claim that Thimes was supposed to get a different lawyer for a different case to turn over documents exclusively in their possession.

Dated: September 30, 2022

GAW | POE LLP

By: _____
Randolph Gaw
Attorneys for Plaintiff
Thimes Solutions Inc.