UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIMES SOLUTIONS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TP-LINK USA CORPORATION, and AUCTION BROTHERS, INC. d/b/a AMAZZIA,<br><br>    Defendants. | Case No. 2:19-cv-10374-SB-E<br><br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 217] |

     Plaintiff Thimes Solutions, Inc. (Thimes) was a reseller of goods on Amazon.com (Amazon), an online retailer that allows others to list products for sale to the public. Joint Appendix of Facts (JAF) 24, Dkt. No. 217-2. Some of the products Thimes listed on Amazon's site were manufactured by Defendant TP-Link Corporation (TP-Link). JAF 24–25. To prevent the unauthorized sale of its products, TP-Link hired Defendant Auction Brothers, Inc. d/b/a Amazzia (Amazzia) to monitor Thimes's activity and report to Amazon any sales of TP-Link's products that violated Amazon's anti-counterfeiting policy. Dkt. No. 217, Ex. 59 ¶¶ 12–13. Thimes was permanently expelled from the Amazon Marketplace on August 27, 2018. *Id.*, Ex. 38 ¶ 2. Claiming that it was expelled because of TP-Link's complaints to Amazon,[1] Thimes sued Defendants to recover its lost profits. Thimes's remaining claims allege that TP-Link's complaints constitute trade libel, intentional interference with contract, and intentional interference with prospective economic advantage.[2] Dkt. No. 178 (Amended

---

[1] Although Amazzia submitted complaints to Amazon on TP-Link's behalf, the Court refers to complaints about Thimes selling TP-Links products as TP-Link's complaints.

[2] The latter two theories are combined in a single claim, but the parties largely treat them as separate.

1

5AC). TP-Link moved for summary judgment, which Thimes opposes. Dkt. Nos. 217, 231. Because Thimes has not demonstrated that triable issues exist as to its causes of action, TP-Link's motion for summary judgment is granted.[3]

I.

TP-Link is a manufacturer of wireless internet products. Amended 5AC ¶ 12. Thimes is an unauthorized reseller of TP-Link's products. JAF 24–25. Thimes sold TP-Link's products on Amazon. JAF 24. Thimes hired Amazzia to monitor TP-Link products on Amazon's site to limit sales of TP-Link products by third parties. Amended 5AC ¶ 19. Starting in January 2018, Amazon notified Thimes that it had received complaints of sales of counterfeit TP-Link items. *See* JAF 28–30. Thimes received 28 such notices. Amended 5AC ¶ 27. The complaints were made using Amazon's online automated infringement reporting form. JAF 31. The form had dropdown fields where a complainant could select the reasons for making a report of infringement. *See* Dkt. No. 217-3, Exs. 21–23. One of these dropdown fields asks the complainant to select the "primary concern," and lists as options "copyright concerns," "trademark concerns," "patent concerns," and "other concerns." Dkt. No. 217-3, Ex. 22. When the "trademark concern" option was selected, the field for "specific concern" would populate with the following options: (1) "a product detail page is unlawfully using my trademark (e.g. in product title, product images, product description)," (2) "a product or its packaging has my trademark on it," and (3) "a product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)." Dkt. No. 217-3, Ex. 23. When submitting infringement reports to Amazon, Defendants selected the "trademark concerns" option in the primary concern field and then the "a product is counterfeit . . ." option in the secondary concern field. Dkt. No. 217-3, Ex. 59 ¶¶ 8, 11 (Fikhman Decl.). Each of the complaints included a statement that the complainant had a good-faith belief as to the contents of the complaint. JAF 32.

---

[3] The Court grants TP-Link's Request for Judicial Notice (RJN) of U.S. Trademark Registration No. 3175495. Dkt. No. 218. Fed. R. Evid. 201 permits the Court to take judicial notice of "a fact that is not subject to reasonable dispute." Trademark registrations fall within that category. *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993). The Court does not address the parties' numerous factual disputes because the motion can be resolved as a matter of law based on the undisputed facts discussed in this order.

Amazon first revoked Thimes's selling privileges on May 5, 2018, and did so again on May 7, May 9, and May 10. JAF 37–38, 40–41. Thimes was reinstated as a seller on Amazon on May 11. JAF 99. Amazon again barred Thimes from selling through its marketplace on June 28. JAF 42. Amazon reinstated Thimes on July 8. JAF 102. Amazon again removed Thimes on August 3, JAF 43–44, and permanently expelled Thimes on August 27. JAF 49.

Thimes sued Defendants in the Southern District of New York on May 29, 2019. Dkt. No. 1. On December 6, 2019, the case was transferred to the Central District of California and assigned to the Honorable Percy Anderson. Dkt. Nos. 50, 53. Following several rounds of dispositive motions, the case was transferred to this Court on September 28, 2020. Dkt. No. 129. On March 22, 2021, the Court dismissed the case. Dkt. No. 145. The Ninth Circuit reversed in part, allowing Thimes's state law claims to proceed. Dkt. No. 155. Thimes filed the 5AC on May 27, 2022. Dkt. No. 178.

## II.

Summary judgment is appropriate where the record, read in the light most favorable to the nonmoving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" based on the issue. *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See id*. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies this initial requirement, the burden then shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine

issue for trial. *Celotex*, 477 U.S. at 324. If the nonmovant "fails to properly address another party's assertions of fact as required by Rule 56(e), the court may . . . consider the fact undisputed for the purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III.

The parties focus primarily on Thimes's trade libel claim. In California, trade libel is "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff." *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). Whereas ordinary libel serves to protect against injury to one's personal reputation that results from a false statement, trade libel is concerned with protecting against injury to one's property that results from a false statement. W. Page Keeton et al., *Prosser and Keeton on Torts* § 128, p. 962 (5th ed. 1984). To succeed on a trade libel claim, a plaintiff must prove (1) that the defendant made a false and disparaging statement that (2) induced others not to deal with the plaintiff and (3) caused special damages. *Muddy Waters, LLC v. Superior Ct.*, 62 Cal. App. 5th 905, 925 (2021).

### A.

As a threshold matter, the parties dispute whether TP-Link's complaints are statements of fact, which can sustain a trade libel claim, or statements of opinion, which cannot. This dispute raises a question of law. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1194 (9th Cir. 1989). To determine whether a statement is one of fact or one of opinion, courts look to the total circumstances in which the statement was made, including the statement's general context (such as the tenor, subject matter, setting, and format), specific context (such as any figurative or hyperbolic language and reasonable audience expectations), and whether the statement itself is "sufficiently factual to be susceptible of being proved true or false." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).[4]

---

[4] Thimes urges the Court to follow the rule in *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1011 (2001): "a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context." There is no material difference between this

4

Before addressing the merits of the opinion defense, the Court considers two objections raised by Thimes.

First, Thimes relies on language in *Muddy Waters*—which it takes out of context—to suggest that TP-Link cannot rely on traditional defamation law to support its defense. In that case, the court noted that the "plaintiff's numerous citations to authorities addressing traditional libel or other types of defamation claims are misguided." 62 Cal. App. 5th at 925. But the court immediately went on to explain why the plaintiff was misguided—namely, because of "the greater burden of proof" applicable to proving trade libel, including the need to show "special damages" resulting from the publication. *Id*. (cleaned up). In pointing to this greater burden, the court did not suggest any material difference between proving a false representation in a libel case and proving one in a trade libel case. *Industrial Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1156 (2016). Thus, the general rules applicable to determining whether a statement is one of fact or one of opinion apply here. See *ComputerXpress*, 93 Cal. App. 4th at 1011 ("opinions will not support a cause of action for trade libel").

Second, Thimes argues that TP-Link has not shown that the challenged statements constitute an opinion because TP-Link has not produced the actual complaints at issue. TP-Link submitted printouts of Amazon's infringement-reporting form created in 2020 (rather than in 2018 when the complaints were lodged). Dkt. No. 217-3, Exs. 21–23. But TP-Link has submitted uncontroverted evidence that the 2020 complaint form is identical in all material respects to the one used in 2018. Fikhman Decl. ¶¶ 8–10. Amazzia used an online form on Amazon's site to make the complaints at issue. The online form included several dropdown menus requiring a complainant to select the basis for a complaint. These menus do not offer the ability to change the language of the options presented. Dkt. No. 217-3, Exs. 21–23. Amazzia selected the "trademark infringement" option when submitting complaints to Amazon on TP-Link's behalf. Fikhman Decl. ¶¶ 8–11. When Amazon's trademark infringement form then appeared, Amazzia selected the option indicating that "a product is counterfeit (the product or packaging has unlawful reproduction of a registered trademark)." *Id*. It is undisputed that Amazon's infringement report form required the complainant to check a box prior to submission indicating that the complainant had a "good faith

---

formulation and the Ninth Circuit's formulation in *Underwager*, at least as applied in this case.

belief" that the content of the complaint was true. JAF 32; *see* Dkt. No. 217-3, Exs. 21–23. In short, Thimes's second objection lacks merit.

The Court now turns to the merits of the issue. A statement that is expressly qualified as being a "good faith belief" that another is committing intellectual property infringement generally is not a statement of fact. *See HGCI, Inc. v. Luxx Lighting, Inc.*, 2020 WL 5913851, at *4 (C.D. Cal. Sept. 10, 2020) (speaker's belief that plaintiff was committing patent infringement was an opinion not actionable as trade libel); *Tommy Bahama Grp., Inc. v. Sexton*, 2009 WL 4673863, at *14 (N.D. Cal. Dec. 3, 2009) ("good faith belief" that plaintiff's listings was a "potential trademark infringement" expressed an opinion). TP-Link's complaints were not merely that Thimes was selling "counterfeit" goods (as Thimes's suggests), but rather that the goods Thimes was selling infringed TP-Link's trademark rights. Amazon's Anti-Counterfeiting Policy adopts a broad definition of "counterfeiting" that includes the sale of "products that infringe another party's intellectual property rights[.]" Dkt. No. 217-3, Ex. 33. Amazon, the recipient of TP-Link's complaints, would have understood TP-Link's complaints that Thimes's products were "counterfeit" as alleging a form of intellectual property infringement. Given the context of Amazon's web form, which does not allow a complainant to modify the language used to describe a report of possible wrongdoing, and which includes a qualifier that complaints are made pursuant to the complainant's good faith belief, TP-Link's complaints constitute opinions.

Thimes argues that TP-Link's complaints can be provably false because there is a long line of cases denying trademark infringement claims against "gray market" resellers like Thimes. *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509–10 (9th Cir. 1987); *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995); *Am. Circuit Breaker Corp. v. Oregon Breakers, Inc.*, 406 F.3d 577, 585–86 (9th Cir. 2005).[5] This argument misses the

---

[5] At oral argument, Thimes's counsel claimed that *NEC Electronics* and *Yamaha Corp. of Am. v. ABC Int'l Traders, Corp.*, 703 F. Supp. 1398 (C.D. Cal. 1988), establish that if a consumer is unable to obtain a warranty for a resold product, there is no material difference between the resold product and the one with a manufacturer's warranty. These cases, however, do not expressly address this issue. The parties in *NEC Electronics* did not dispute whether the goods were genuine, 810 F.2d at 1508; and the plaintiff in *Yamaha Corp.* was estopped from disputing the genuineness of defendant's goods because it had alleged that the

point. The question whether Thimes was a "gray market" reseller of genuine goods is a legal one that requires an analysis of the resold products to determine if they are materially different from the ones sold by TP-Link (and, incidentally, "the threshold for determining a material difference is low"). See *Hotko Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1093 (9th Cir. 2013). Deciding whether Thimes was selling genuine goods is not the question before the Court. Rather, the issue is whether, for purposes of trade libel, the statement that the speaker has a good faith belief that another party is infringing its trademark is a factual one. The parties agree that "[t]here has been no ruling from a court (or otherwise) ascertaining whether Thimes's sales of TP-Link products on Amazon constitute trademark infringement or counterfeiting." JAF 34. In these circumstances, Thimes cannot prove to a jury that TP-Link's infringement complaint was false as a matter of fact.

In sum, TP-Link's complaints contain unactionable opinion statements. The statements were made in the general context of an Amazon-hosted online form that invites complaints of commercial abuse. The complaints are directed solely to Amazon, and Amazon limits a complainant's allegations to generic statements. The descriptions are legal in nature and must be supported by a good-faith belief; and the foreseeable complainants, as in this case, are business people rather than lawyers. In the overall context, TP-Link's assertion of a trademark infringement is not "sufficiently factual to be susceptible of being proved true or false." *Underwager*, 69 F.3d at 366. Accordingly, Thimes's trade libel claim fails.

### B.

Even if the complaints were shown to be provably false facts, Thimes still could not prevail on its trade libel claim because it cannot satisfy the last element of that claim—special damages.[6]

---

defendant was selling genuine goods, 703 F. Supp. At 1401–02. In any event, this is a legal issue. *See* discussion *infra*.

[6] TP-Link also contends that Thimes cannot establish the second element of the claim requiring proof that "the publication has played a material and substantial part in inducing others not to deal with him." *Muddy Waters*, 62 Cal. App. 5th at 925. According to TP-Link, this element can only be satisfied by identifying at least one customer who did not conduct business with the plaintiff based on the false statement. Thimes argues that the element only requires proof that the statement induced "someone else" (e.g., Amazon)—and not necessarily a

Trade libel imposes on the plaintiff a "greater burden of proof" than defamation, including "the necessity for special damage in all cases." *Muddy Waters*, 62 Cal. App. 5th at 925 (cleaned up). To prove special damages for purposes of this claim, a plaintiff must "identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." *See id*. (cleaned up). It is "only the loss of specific sales to identified persons that [can] be recovered." Keeton et al., *Prosser and Keeton on Torts* § 128, p. 972; *see also* Dan B. Dobbs, *The Law of Torts* § 659, p. 627 (2d ed. 2011) ("[T]o allege and prove pecuniary loss, the injurious falsehood plaintiff must make specific allegations and adduce evidence of specific, named lost customers or other specific pecuniary harms such as the loss of credit with particular persons.").[7] For special damages, "it is not enough to show a general decline in [a plaintiff's] business resulting from the falsehood, even where no other cause for it is apparent," because "it is only the loss of specific sales that can be recovered." *Erlich*, 224 Cal. App. 2d at 73 (cleaned up).

Thimes prays for $5 million in compensatory damages for the destruction of its business as a result of Amazon's revocation of Thimes's selling privileges. Amended 5AC at 20. Thimes alleges:

---

customer—to avoid dealing with the plaintiff. The Court does not decide this issue because other flaws defeat the trade libel claim here.

[7] Thimes seizes on the court's statement in *Muddy Waters* that the requirement of identifying specific lost customers or purchases applies "in the usual case." 62 Cal. App. 5th at 925. But Thimes cites no trade libel case in which this requirement was found unnecessary. And the cases requiring this specific showing are legion. *See, e.g., Mann v. Quality Old Time Service, Inc.*, 120 Cal. App. 4th 90, 109–110 (2004) (to demonstrate special damages, plaintiff "must identify particular customers and transactions of which it was deprived as a result of the libel"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154–55 (N.D. Cal. 2019) (finding that plaintiff must identify particular customers associated with sales); *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (a trade libel plaintiff "must identify particular customers and transactions of which it was deprived as a result of the libel") (internal citation omitted); *Heartland Payment Sys., Inc. v. Mercury Payment Sys., Inc.*, 2016 WL 304764, at *10–*11 (N.D. Cal. Jan. 26, 2016) (same).

> The above cascade of adversities drove Plaintiff to financial ruination, destroying a business producing, just prior to expulsion, profit of approximately $100,000 per month. Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above in the approximate amount of $5,000,000.

*Id*. ¶ 54.

Since Thimes's theory of damage reflects a general decline in business, it cannot constitute special damages even if proven. *Erlich*, 224 Cal. App. 2d at 73. Thimes nevertheless contends that it has adequately shown special damages because (1) Amazon stopped purchasing products directly from Thimes after TP-Link complained to Amazon and (2) Amazon's delisting of Thimes prevented Thimes from making any sales to numerous repeat customers, of which it has identified more than 4,000. Neither contention has merit.

Thimes's first argument lacks record support. The Ninth Circuit already stated on appeal in this case that Amazon "is not a purchaser." Dkt. No. 155 at 3. Thimes now produces evidence that an entity called "Amazon Vendor Express" purchased goods from Thimes in early 2017. Dkt. No. 217, Ex. 39. This evidence consists of emails from Amazon Vendor Express to Thimes CEO Avraham Eisenberg sent between January and March 2017 indicating that Amazon Vendor Express was submitting new purchase orders to Thimes. *Id*. These purchases predate both Thimes's offer of TP-Link products for sale, which began in early 2018, and TP-Link's complaints to Amazon, which Thimes first received notice of on January 18, 2018. JAF 24, 28. There is no evidence that Amazon Vendor Express was an existing customer of Thimes at the time of TP-Link's complaints, much less that Amazon Vendor Express intended to continue making purchases from Thimes. In fact, the undisputed evidence strongly suggests that the decision not to purchase from Thimes was part of Amazon's larger business strategy, as Amazon appears to have notified all customers—not just Thimes—that it "stopped accepting purchase orders on May 21, 2018." Dkt. No. 231, Ex. A (notifying Thimes in a generic email that "[i]f you used Vendor Express to access your Amazon Marketing Services . . . , your access will be changing as Vendor Express stopped accepting purchase orders on May 21, 2018"). Thus, Thimes has not produced any evidence of special damages based on lost purchases directly from Amazon.

Thimes's second argument—that it has produced evidence of special damages based on the potential sales to other customers it lost when Amazon

terminated Thimes's selling privileges—fares no better. Thimes has identified the names of customers who "had purchased various products from Thimes between 4 and 17 times" and thousands of repeat customers who had purchased various products from Thimes two or three times, all of whom were prevented from making further purchases of Thimes's products on Amazon's platform. Dkt. No. 217-3, Ex. 38 ¶¶ 11–12 (Eisenberg Decl.), Exs. 40–44. See *Muddy Waters*, 62 Cal. App. 5th at 925–26 (finding that trade libel claim failed where plaintiff failed to identify specific customer, "let alone any specific contract or sale that it claims was lost as a result of the [false report]"). Thimes's reliance on its repeat customers and historic sales in the aggregate—including sales of non-TP-Link products—is insufficient, as such evidence amounts only to a "general decline in . . . business." *Erlich*, 224 Cal. App. 2d at 73.

In sum, Thimes has not produced any evidence of special damages. Instead, it claims damages based on a general theory of business destruction. It has produced no evidence of any particular transaction with any particular customer that Thimes would have completed but for the customer's reliance on TP-Link's allegedly false complaints. Accordingly, TP-Link is entitled to summary judgment on Thimes's trade libel claim.

IV.

Thimes's remaining claims are for tortious interference with an at-will contract and with prospective economic advantage, which require an independently wrongful act under California law. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54 (2003). To address this requirement, Thimes claims that TP-Link's statements are independently wrongful because they constitute trade libel, libel per se, fraud, and violations of California's Unfair Competition Law (UCL). None of these theories is legally viable.

The Court already has addressed the defects in the trade libel claim, including that the challenged statements are nonactionable opinions. That defect serves to defeat the libel per se and fraud theories as well. *E.g. Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 732 (9th Cir. 1999) (statement that plaintiff was operating illegally could not be defamatory because it was an opinion); *GeoData Systems Mgt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2015 WL 12731920, at *19 (C.D. Cal. Sept. 21, 2015) (fraud in California requires a false statement of fact).

Nor does the UCL provide an independent basis to support Thimes's interference claims. The UCL prohibits acts that are "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200. Thimes argues that TP-Link's complaints are unfair because TP-Link made false statements to Amazon that Thimes sold counterfeit products. Thimes further argues that TP-Link's complaints are unlawful because they constitute perjury. However, as TP-Link contends, where speech is concerned, the UCL only applies to commercial speech. *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal. App. 4th 135, 140 (2004) ("California's consumer protection laws, like the unfair competition law, govern only *commercial* speech."), *disapproved of on other grounds by* *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 166, 148 (2019); *see also* *Mahaffa v. McGraw*, B300108, 2021 WL 2677897, at *15 (Cal. Ct. App. June 30, 2021) ("The UCL protects only commercial speech . . . and does not extend to noncommercial speech."); *Bernardo v. Planned Parenthood Fed. Of Am.*, 115 Cal. App. 4th 322, 342 (2004) (finding that noncommercial speech is "fully protected under the First Amendment . . . and not actionable under . . . the UCL . . . .").

"[C]ommercial speech is speech that does no more than propose a commercial transaction." *Rezec*, 116 Cal. App. 4th at 141 (internal citation omitted). The California Supreme Court has held that, in the context of consumer protection, commercial speech generally "must consist of factual representations about the business operations, products, or services of the speaker . . . made for the purpose of promoting sales of, or other commercial transactions in, the speaker's products or services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 962 (2002). In determining whether speech is commercial, California courts consider "the speaker, the intended audience, and the content of the message." *Serova v. Sony Music Ent.*, 13 Cal. 5th 859, 873–74 (2022) (internal citation omitted).

The speaker here, TP-Link, is a commercial enterprise in the business of selling wireless internet products. However, this factor does not support a finding that TP-Link's complaints are commercial speech since the audience for the complaints is not the public. Rather, the complaints were submitted to a single non-purchaser, Amazon. The content of TP-Link's complaints is not promotional speech, but rather allegations of legal wrongdoing. The complaints do not concern TP-Link's operations, products, or services (except in the broadest sense); they do not propose that TP-Link conduct business with anyone; and they do not seek to promote sales of TP-Link products. Thus, they do not constitute commercial speech under California law. For this reason, Thimes's UCL theory fails. *See Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 103–04 (speech that was not "directed at actual or potential buyers or customers of some good or service"

11

and that had political content was noncommercial speech); *Mahaffa*, 2021 WL 2677897 at *15 (allegations that a television producer misrepresented the television program host's willingness to conduct business with plaintiff was noncommercial speech).

Because TP-Link's complaints are nonactionable statements of opinion and are not commercial speech, Thimes is unable to raise a genuine issue of material fact as to any independently wrongful act. TP-Link is therefore entitled to summary judgment on Thimes's tortious interference claims.

V.

For the foregoing reasons, TP-Link's motion for summary judgment is GRANTED, and Thimes's claims against TP-Link for trade libel, intentional interference with contract, and intentional interference with prospective economic advantage are DISMISSED on the merits with prejudice.[8]

Date: November 3, 2022

                                        Stanley Blumenfeld, Jr.
                                    United States District Judge

---

[8] Since Thimes is unable to demonstrate triable issues as to liability, the Court does not reach the parties' arguments about damages.