1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE STANLEY BLUMENFELD, JR., JUDGE PRESIDING

4  THIMES SOLUTIONS, INC.,          )
                                    )
5                                   )
                                    )
6                  Plaintiff,       )
                                    )
7                                   )
                                    )
8        Vs.                        )   No. CV19-10374-SB
                                    )
9                                   )
                                    )
10 TP LINK USA CORPORATION, ET AL.. )
                                    )
11                                  )
                                    )
12                 Defendants.      )
                                    )
13 _____  )

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17             MOTION HEARING

18          LOS ANGELES, CALIFORNIA

19          FRIDAY, OCTOBER 7, 2022

20

21

22

23        MIRIAM V. BAIRD, CSR 11893, CCRA
       OFFICIAL U.S. DISTRICT COURT REPORTER
24      350 WEST FIRST STREET, FOURTH FLOOR
          LOS ANGELES, CALIFORNIA 90012
25              MVB11893@aol.com

1                        A P P E A R A N C E S

2

3    **IN BEHALF OF THE PLAINTIFF,**      RANDOLPH GAW
     **THIMES SOLUTIONS, INC.,:**         GAW POE LLP
4                                         4 EMBARCADERO CENTER SUITE
                                          1400
5                                         SAN FRANCISCO, CA 94111

6

7

8

9

10   **IN BEHALF OF THE DEFENDANT,**      CHRISTOPHER L. FROST
     **AUCTION BROTHERS:**                WEINBERG GONSER FROST LLP
                                          10866 WILSHIRE BOULEVARD
11                                        SUITE 1650
                                          LOS ANGELES, CA 90024
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 7, 2022; 9:49 A.M.

 2                              ---

 3

 4            THE CLERK:  Calling CV19-10374-SB Thimes Solutions,

 5   Inc., v. TP Link USA Corporation, et al.

 6            Counsel, please state your appearance for the

 7   record.

 8            MR. GAW:  Good morning, Your Honor.  Randall Gaw

 9   for the plaintiff.

10            MR. AMMONS:  Good morning, Your Honor.

11            David Ammons for defendant TP link.

12            THE COURT:  Good morning.  This matter -- yes.

13            MR. FROST:  Yes.

14            THE COURT:  Counsel for Amazzia, please.

15            MR. FROST:  Christopher Frost of Weingberg Frost.

16   Before we jump into the middle of this matter, I was going to

17   inform the Court that my firm is a big believer in pro bono

18   work.  I heard what was happening on the Forister matter.  If

19   somebody can provide us information so we can run conflicts,

20   we may be able to step in and serve as a settlement counsel

21   on that.

22            THE COURT:  Very well.  The Court appreciates that.

23   Thank you, Counsel.

24            Let us address the good-faith settlement issue.  So

25   I want to hear from TP Link with regard to the objection to
```

the good-faith settlement determination.  Explain to the

Court how I should take into account your position on the

summary judgment motion in deciding whether to overrule your

objection?  In other words, you're arguing to the Court that

I should grant TP Link summary judgment.  You're arguing that

there is no basis for this lawsuit, correct?

        MR. AMMONS:  Correct.

        THE COURT:  One of the Tech-Bilt factor

considerations that the Court takes into account -- I believe

that's T-e-c-h-b-i-l-t with a hyphen between -- is whether

the case has merit that the Court does consider the merits of

the case, do I not?

        MR. AMMONS:  Yes.

        THE COURT:  So if I were to grant TP Link's summary

judgment motion, what should do I with regard to the

good-faith settlement?

        MR. AMMONS:  I believe if the Court is inclined to

grant TP Link's motion for summary judgment, certainly that

would satisfy that factor with respect to the merits of the

suit, and I believe that it should grant it in that instance.

        THE COURT:  Let us turn to the summary judgment

motion.  I'd like to direct first my questions to plaintiff's

counsel.  So with regard to the remaining claims, you have

you have a trade libel claim; is that correct?

        MR. GAW:  Yes, Your Honor.

|       |                                                        |
|-------|--------------------------------------------------------|
| 1     | THE COURT:  And then there's also an interference      |
| 2     | claim or claims.  Basically, two interference claims; is that |
| 3     | correct?                                               |
| 4     | MR. GAW:  Yes, Your Honor.                             |
| 5     | THE COURT:  Then there's also a 17200 claim?           |
| 6     | MR. GAW:  No, Your Honor.                              |
| 7     | THE COURT:  But you're relying upon 17200.  You're     |
| 8     | relying on upon libel per se and you're relying upon fraud in |
| 9     | order to support the interference claims under Dellapenna, |
| 10    | D-e-l-l-a-p-e-n-n-a; is that right?                    |
| 11    | MR. GAW:  Yes, Your Honor, in addition to a perjury   |
| 12    | claim.                                                 |
| 13    | THE COURT:  All right.  And the -- what is the         |
| 14    | perjury claim?  That the complaints themselves were    |
| 15    | perjurious?                                            |
| 16    | MR. GAW:  They were attested to under the penalty     |
| 17    | of perjury, and they were knowingly false when made.   |
| 18    | THE COURT:  Explain to the Court how they were         |
| 19    | knowingly false starting with what the perjurious statement |
| 20    | was precisely?  What was was the perjurious and libelous |
| 21    | statement precisely?                                   |
| 22    | MR. GAW:  Precise statement that we're identifying    |
| 23    | as libelous is that Thimes sold counterfeit TP Link outers. |
| 24    | The word counterfeit has a specific meaning.  As a common lay |
| 25    | understanding independent of any statute, that lay     |

understanding is that the product is fake; it's a knock-off.

They asserted that we sold counterfeit products as opposed to to asserting that we violated the trademark infringement.

09:53AM    THE COURT:  Slow down, please.

MR. GAW:  I'm sorry, Your Honor.

They asserted that we've sold counterfeit products as opposed to asserting that we violated their trademark rights.  Amazon gives you the option to do both.  This is 09:54AM Exhibit 23, the form that they had submitted.  By stating that we sold counterfeit products, they were representing that we sold knock-offs, goods that were not genuine; that we had put their mark on a product that they had not manufactured.  That's what people understand counterfeiting 09:54AM to mean.  That's what Amazon understands counterfeiting to mean.

If you look at Exhibit 23, again, this is the Amazon form, it describes -- it specifically describes counterfeit as the product or packaging has unlawful 09:54AM reproduction of a registered trademark.  There is no question that we had never had an unlawful reproduction or any reproduction of a registered trademark by anybody.  We sold factory sealed, genuine goods.  So under the Ninth Circuit's precedent and under Amazon's own understanding, that's not a 09:55AM counterfeit good.  It's not even a trademark infringement.

It's genuine.  They knew that.  They submitted -- well, they submitted 73 complaints, Your Honor.

The first two or three complaints they submitted before making a test buy.  So they were stating that we sold counterfeit products without even seeing what products we, in fact, sold.  So that is a false statement.  Then after they received the test buys, they saw for themselves that they were not knock-offs.  We did not take someone else's wireless router and claim it to be a TP Link router.  We had TP Link routers that we were selling as TP Link routers.

THE COURT:  Was your client an authorized reseller?

MR. GAW:  No, Your Honor.  And Amazon, in Exhibit 23, makes it very clear.  They have that -- that is not an issue.  They have a specific paragraph where they say that violations of exclusive distribution agreements do not constitute intellectual property rights infringement.

THE COURT:  So if a customer purchased a resold item from your client, would they also obtain the warranty?

MR. GAW:  Under New York General Business Law 36 -- I believe it is 369, they would, but Ninth Circuit actually addressed that in in the NEC case that we cited in the joint brief, Your Honor.  The Ninth Circuit held that that is an issue in contract or tort.  It's not a trademark claim.  Page 1510 of that opinion.

THE COURT:  All right.  So are you -- is it your

1    position that your client was selling grey market goods?

2              MR. GAW:  There -- yes, Your Honor.  The only --

3    the only hesitation is that grey market can be broadly

4    defined by different people in different ways, but yes, I

09:56AM  5    would say it would be -- they are a reseller of genuine

6    goods.  Whether that is gray market or not, that's what they

7    were.

8              THE COURT:  Is it at least a reasonable argument on

9    your part that these were grey market goods?

09:57AM  10              MR. GAW:  Yes, under Sebastian and NEC, they would

11    be considered grey market.

12              THE COURT:  And in order for goods to be -- to

13    qualify as gray market goods, they cannot have any material

14    difference between the goods; is that correct?

09:57AM  15              MR. GAW:  Not precisely, Your Honor.  For a good to

16    be genuine -- for a gray market good to be genuine, it cannot

17    have a material difference from the so-called authentic good.

18              THE COURT:  And what happens if there is a material

19    difference from the perspective of the consumer?

09:57AM  20              MR. GAW:  Then it's not genuine -- well, it's not

21    genuine, and then trademark remedies apply.

22              THE COURT:  So if a consumer is not able to get a

23    warranty from this product, is there any material difference

24    between the products?

09:58AM  25              MR. GAW:  No.  According to the -- according to the

|  |  |
|---|---|
| 1 | Ninth Circuit in NEC, it is not -- again, 810 F.2nd at pages |
| 2 | 1508 and 1510.  In fact, Judge Lew of this Court 1988 had a |
| 3 | published opinion on that very issue in a case called Yamaha |
| 4 | Corp v. ABC International Traders, 703 F. Supp. 1398.  On |
| 09:58AM  5 | page 1404 specifically, there was an argument brought by the |
| 6 | plaintiff that consumers were confused because the |
| 7 | reseller-sold version of a genuine product wouldn't convey |
| 8 | the plaintiff's warranty.  Judge Lew held that NEC controlled |
| 9 | that question, and there was no Lanham Act claim in question |
| 09:58AM 10 | because whether or not the product conveyed a warranty, |
| 11 | didn't affect whether it was genuine. |
| 12 | THE COURT:  And let's say that they were mistaken |
| 13 | about the violation.  They claimed it was counterfeit or that |
| 14 | it was -- there was a trademark violation.  So they're |
| 09:59AM 15 | potentially wrong about their legal conclusion there, but |
| 16 | they're arguably correct that there is a legal violation, a |
| 17 | warranty or some other kind of violation. |
| 18 | What happens to your trade libel claim then? |
| 19 | MR. GAW:  If they were arguably correct -- if the |
| 09:59AM 20 | Court found that they were arguably correct, if their |
| 21 | position was not, quote, provably false, I believe under the |
| 22 | precedent, it would be considered a statement of opinion. |
| 23 | It's not. |
| 24 | THE COURT:  How could this not be a statement of |
| 09:59AM 25 | opinion, Counsel?  That is to say, if someone is claiming |

1  that this violates a law, I get claims all of the time before

2  me, some of which I dismiss because they clearly have no

3  merit.  Some have merit.  They proceed.  You brought claims

4  in this case, some of which clearly had no merit.  You have

5  brought a claim that at least should have survived the

6  pleading stage.

7          So are you stating facts when you plead a claim for

8  trade libel or, in your instance, antitrust?

9          MR. GAW:  We are stating facts, Your Honor.  That's

10  a separate issue, because it's protected by the litigation

11  privilege in *Noerr-Pennington.*

12          THE COURT:  Put aside the privilege issues.  When a

13  party is saying that -- they have a good-faith belief that

14  there is a legal violation, is that a legal opinion, or is

15  that a statement of fact?

16          MR. GAW:  Under -- it can be either a statement

17  opinion, or it can be a statement of fact.  The reason why I

18  hedge that way is because the case law both under California

19  and federal authority is that it's contextual.  The Court

20  needs to look at the overall circumstances surrounding the

21  statement and the statement, you know -- and the statement

22  itself.  Analyze it under that context and decide under those

23  circumstances, the overall context, was it a statement of

24  opinion or was it a statement of fact?  And here, under the

25  specific context of this case, there -- there -- there is

```
 1    evidence giving rise to a reasonable inference that this was
 2    a statement of fact because, again, the Amazon form
 3    specifically defined counterfeiting in a way that they knew
 4    did not apply to Thimes, yet they submitted it anyway 73
 5    times accusing us of selling a product that had unlawful
 6    reproduction.  We did not have a reproduction of any
 7    trademark.
 8          More importantly, the NEC case and Sebastian case,
 9    to the extent anyone has an opinion as to that time, I
10    believe Coastal Abstract says --
11          THE COURT:  Slower, please.
12          MR. GAW:  I'm sorry.  I believe Coastal Abstract
13    stands for the proposition that if the Court has not yet
14    decided the issue, then it may be a lay person's statement as
15    to whether a law applies.  Maybe a statement of opinion.  The
16    Ninth Circuit has addressed this issue.  It has addressed
17    this issue at least three times since 19 -- well, 1980
18    something when the NEC case was decided.  Yamaha, this
19    Court's decision, in 1988 is directly on point.
20          THE COURT:  So is it your view that whether a
21    statement is an opinion or a fact depends upon whether in
22    this context there is clearly established law that addresses
23    the point?
24          MR. GAW:  In this particular instance, yeah.
25          THE COURT:  Is there any other way of looking at
```

The timestamps in the left margin: 10:01AM (line 5), 10:01AM (line 10), 10:01AM (line 15), 10:02AM (line 20), 10:02AM (line 25).

the divide between fact and opinion in the context of a claim

that there is some type of legal violation?

MR. GAW:  I think for this case there is,

Your Honor.  The reason for that is one, it's not just that

10:02AM  they said that the product was counterfeit.  It's that they

specifically said there was an unlawful reproduction of a

trademark.  There was no reproduction of any trademark by

Thimes.  That's what they specifically claimed Thimes to have

done.

10:02AM  THE COURT:  By the way, did the parties produce to

the Court the allegedly libelous statement?

MR. GAW:  No.  Amazon is still working on producing

them.

THE COURT:  How could you prove a trade libel claim

10:03AM  without producing the actual libelous statement?

MR. GAW:  Because they've already admitted,

Your Honor, they submitted -- that they specifically alleged

us to be counterfeit.  They submitted evidence in form of

Exhibit 23 showing that the specific selection that they

10:03AM  chose 73 times states that there was an unlawful reproduction

of a registered trademark.

THE COURT:  Haven't you objected to that suggesting

that I should sustain the objection and not consider that?

MR. GAW:  That is true, Your Honor.  There's other

10:03AM  evidence as well.  There's Exhibit 61, which was the

1    complaint filed by Amazia in the Youngblood matter, which

2    there was no qualified language.  They just simply said that

3    this is a counterfeit product.  There's testimony in both

4    declaration and in Mr. William Fikhman prior deposition

5    testimony that this is generally the type of content that

6    they applied.  Their clients hired them to file these

7    complaints, and they just file these complaints seriatim

8    claiming that these are counterfeit.

9         THE COURT:  Let me have you turn to the issue of

10   special damages.  Can you cite to the Court a case which has

11   sustained your position that the allegedly falsely statement

12   could be made and relied upon by someone other than the

13   consumer or purchaser?  I'm not asking you about language

14   from Muddy Waters.  I'm asking you if you can cite the Court

15   to a case that actually applies the position that you're

16   claiming, which is that it doesn't have to be a consumer.

17   It doesn't have to be a purchaser.  It could be Amazon, or if

18   it is not Amazon, it is when they were purchasing the actual

19   product from Thimes.  Please cite a case if there is a case

20   or cases.

21        MR. GAW:  There is no direct case on point.  I

22   would cite Aetna v. Centennial Insurance Company from the

23   Ninth Circuit, which was stated in the joint brief.  The

24   Ninth Circuit held that the requirement is that the libelous

25   publication induces others not to deal with plaintiff,

unquote.

THE COURT:  Was it addressing the specific issue, Counsel?

MR. GAW:  It was -- I believe, it was on the issue of special damages, yes.

THE COURT:  But was it addressing not the issue of special damages, which this Court, for example, addressed in Rail Holdings, but in that case, there wasn't this issue. There wasn't an issue of a third party relying upon it and then stopping all of the sales essentially.  There was no evidence at the pleadings stage, from what I recall, of any customer -- anybody that relied upon it.

So that was the thrust of the Court's holding.  My question to you is, do you have any case that would support the position that you're posturing or positing before this Court?

MR. GAW:  No, Your Honor, because I've not found a single case that addressed any trade libel case where the intermediary was the one that relied on the statement and cut off future business transactions, you know, between the libelled party and their eventual customers.

THE COURT:  Why should this Court go there then when all of the cases seem to require reliance by the purchaser essentially or the consumer in order for there to be a demonstration of cause, reliance, and then the special

damages?

MR. GAW:  Well, for one thing, Your Honor, the cases all carefully qualify this particular reliance requirement as to say in the usual case or in the typical case, because in the usual case of trade libel, which is actually a rarely litigated -- at least, rarely litigated to the appellate court level where you have opinions.  The typical case is one where the libelous publication was made directly to consumers or purchasers.  And, therefore, it's an easy kind of way to say okay, well, you sell directly to consumers.  The libelous publication was made.  You have to show that consumers saw it, read it, and decided not to purchase.  That's a pretty simple direct causation issue.

There simply are no cases that I'm aware of that has dealt with an intermediary an Amazon, an Ebay, a department store, for example, that might carry like a specialized manufacturer's products.  It does not make any sense from a logical standpoint that a competitor could just say whatever they want false, you know, about it, completely cut off that -- the injured party's ability to get any redress under the trade libel laws because of a requirement that the statement had to be made directly to the purchaser itself.

Like there are many instances, many businesses that do not sell directly to purchasers, but are harmed by trade

|    |    |
|----|----|
| 1  | libel because the party that does hear the libelous statement |
| 2  | and relies on it, they're induced not to do business anymore |
| 3  | with the party that was libelled.  That injuries the party |
| 4  | that was libelled. |
| 5  | THE COURT:  One last question, then I'm going to |
| 6  | turn it to the moving party.  You're claiming that you are |
| 7  | permitted to proceed with the interference claims based upon |
| 8  | trade libel, libel per se, fraud, perjury, and 17200; is that |
| 9  | right? |
| 10 | MR. GAW:  Yes, Your Honor. |
| 11 | THE COURT:  And have you pleaded any allegations |
| 12 | with respect to libel per se, fraud, 17200, or perjury? |
| 13 | MR. GAW:  We don't specifically use the words libel |
| 14 | per se or fraud or anything to that effect in the complaint. |
| 15 | We've alleged facts that would satisfy the independent |
| 16 | wrongful requirement.  That would show fraud.  That would |
| 17 | show libel per se, perjury, and so forth. |
| 18 | THE COURT:  Now, but as a pleading matter, you're |
| 19 | required under California law, as well as I think Ninth |
| 20 | Circuit law, to actually plead the independent wrongful act, |
| 21 | are you not? |
| 22 | MR. GAW:  I believe actually we're required to |
| 23 | plead facts that would be independently wrongful by some |
| 24 | measure other than the act itself. |
| 25 | THE COURT:  As opposed to pleading the wrongful |

10:08AM (line 5)
10:08AM (line 10)
10:09AM (line 15)
10:09AM (line 20)
10:09AM (line 25)

conduct as here 17200, fraud, perjury, et cetera?  That's your position?

MR. GAW:  Yeah.  As far as I'm aware, you don't have to literally plead that this is a 17200 claim.  You plead the facts.  Then you could show that the facts are independently wrongful by reference to either common law, a statute, or some other measure other than the fact that of the act itself.

THE COURT:  If you're wrong about that, under the law, I should reject your position, correct?

MR. GAW:  If we're wrong about that under the law, Your Honor, we would request leave to amend to conform to proof to specifically allege libel per se, fraud, and all of the other issues.

THE COURT:  It's too late at this point.  It's well beyond the point where you're going to get leave to amend.

MR. GAW:  I --

THE COURT:  Let me move on to defense counsel.

So, first of all, explain to the Court why counsel is wrong, if he is, concerning the case law specifically under NEC and the like.

MR. AMMONS:  Because the materials here are not genuine goods.  That is the distinction.

THE COURT:  How are they not genuine goods?

MR. AMMONS:  If they materially differ from the

```
 1   original product in the sense that there is no warranty for
 2   these products resold, that that would be the key aspects.
 3           THE COURT:  And so address, please, his argument
 4   concerning Ninth Circuit case law.
 5           MR. AMMONS:  Well, I think Ninth Circuit case law
 6   supports the moving party' position here, which is that under
 7   Hokto -- I'm having a hared -- H-o-k-t-o --
 8           THE COURT:  Counsel, let me just stop you.  I'm
 9   very familiar with those cases and generally with the
10   proposition that the products have to be essentially the same
11   products.  There can be no material difference.  The concept
12   of material difference is a broad concept in terms of what a
13   consumer would view as being materially different, and the
14   threshold for whether something is materially different under
15   Ninth Circuit law.  I believe it is Hokto, H-o-k-t-o, I,
16   quote, low.  So I'm familiar with that area of the law.
17           What counsel has just indicated is that under NEC
18   the Ninth Circuit has excepted out warranty as a category
19   where there could be a material difference.
20           So if you would kindly address that point.
21           MR. AMMONS:  I -- my understanding is that the
22   materials are different based on the fact that they aren't a
23   genuine reseller of TP Link and the warranty issue.  That
24   those would be the two bases for our position.
25           THE COURT:  And the the material difference has to
```

| | |
|---|---|
| 1 | be from the perspective of the consumer, correct? |
| 2 | MR. AMMONS:  I would agree with that, yes. |
| 3 | THE COURT:  So why would this be material? |
| 4 | MR. AMMONS:  Well, a product that does not contain |
| 10:12AM 5 | a warranty, or that is not genuine from the original |
| 6 | manufacturer, I think a consumer would believe that that -- |
| 7 | those are material differences. |
| 8 | THE COURT:  And if counsel is right about NEC, |
| 9 | you're just left with your argument that this is not genuine |
| 10:13AM 10 | because it's not from the original manufacturer? |
| 11 | MR. AMMONS:  Correct. |
| 12 | THE COURT:  And do you have any authority that |
| 13 | supports that position or any record evidence that would be |
| 14 | construed or as immaterial or material from the perspective |
| 10:13AM 15 | of a consumer? |
| 16 | MR. AMMONS:  I cannot cite to a specific authority |
| 17 | for that proposition, Your Honor. |
| 18 | THE COURT:  So if you lose on that point, what |
| 19 | happens to your summary judgment motion? |
| 10:13AM 20 | MR. AMMONS:  Well, I think that the motion should |
| 21 | still be denied even if the Court were to find against us on |
| 22 | that issue, because it just raises the issue with respect to |
| 23 | the statement.  The question is the statement at issue here |
| 24 | by a lay person stating, I believe.  So I think, you know, |
| 10:14AM 25 | again, even if the Court were to find against the movant on |

that issue, I think just reinforces the point that you have a

statement by a lay person with respect to, you know, a legal

conclusion, essentially, which is opinion.

THE COURT:  Well, the fact that someone qualifies a

statement with, "I believe," is not in and of itself

dispositive, is it?

MR. AMMONS:  It is not.

THE COURT:  So you could defame someone, libel

someone by putting, "I believe"?

MR. AMMONS:  Correct.

THE COURT:  So why does not that adequately address

and defeat your argument here?

MR. AMMONS:  Because it's not just, "I believe" or

what the example that the Court gave.  It is, "I believe"

with respect to a specific legal issue here that the

company's rights are being violated, which under Tommy Bahama

and other authorities has been found not to be actionable.

THE COURT:  What if the position is frivolous as a

matter of law?  So let's say someone says -- your client

says, I believe that your product violates federal securities

laws?  And assume for purposes of this hypothetical that that

is clearly frivolous, absolutely frivolous.  There's no

basis, legal basis for making that assertions?  What is your

position then as to whether that's a viable trade libel

claim, or whether it's protected somehow as opinion?

|     |     |
| --- | --- |
|  | 1 |

          MR. AMMONS:  I believe -- I think it still would be
protected as opinion, because it relates specifically to a
legal issue by a lay person.  As the example that the Court
gave to opposing counsel, lawyers come into courtrooms and
make all kinds of legal claims that are frivolous, but those
are legal claims.  It's -- it's opinion.  It's argument as
well as opinion.  It's protected.
          THE COURT:  All right.  And so if the Court
disagrees with that view, what should the Court do with
regard to your motion?  Let's assume I disagree with you.
I'm not saying I do.
          MR. AMMONS:  Sure.
          THE COURT:  But I disagree with respect to your
arguments concerning the opinion and I disagree with your
interpretation of law with respect to trade libel, should I
at that point deny your motion, or do you have some other
basis for the Court to consider?
          MR. AMMONS:  I believe that if the Court disagrees
with it on the trade libel claim, there is still the issue of
causation with respect to the claims that are being made here
that there is no evidence that anyone besides Amazon was
aware of the statement.  There's no evidence that Amazon
decided to stop doing business with Thimes because of such
statement.
          So even if the Court were to conclude that this is

1   not protected opinion, nevertheless it's our position that

2   the motion should be granted.

3       THE COURT:  All right.  I'll give plaintiff's

4   counsel just a minute or two to reply.  Go ahead.

5       MR. GAW:  Thank you, Your Honor.  I'll stick my --

6   confine my reply to the issue of leave to amend just because

7   I wanted to point out that the Ixchel case.  That is the case

8   that the California Supreme Court expanded Della Penna to

9   require an independent wrongful requirement to intentional

10  interference with existing contracts as opposed to just

11  prospective contracts.

12      The Ixchel opinion was issued in 2020.  This case

13  was filed in 2019.  So when my prior -- my predecessor

14  alleged the issues, the facts and claims that are issue now,

15  they didn't have the benefit of the Ixchel opinion.  They

16  didn't know that was a requirement if one existed that they

17  have to literally plead, you know, other claims to satisfy

18  the independent wrongful requirement.

19      So we would just ask leave to amend should be

20  granted for reasons of justice because we never had the

21  opportunity nor the knowledge to allege some claims in the

22  first place.  As Your Honor might recall, after the state law

23  claims were dismissed, there absolutely was no reason for us

24  to try to allege them again.  After the Ninth Circuit

25  reinstated this case, we only could just bring back the

second amended complaint, you know, wholesale, which we did

not modify other than by calling it a fifth amended complaint

striking out certain extraneous allegations.

THE COURT:  You certainly could have included that

10:18AM in your latest pleadings or requested that you be permitted

to?

MR. GAW:  We could have requested that we be

permitted, I guess, have leave to amend, but we couldn't just

do it as of right.

10:19AM THE COURT:  But you didn't ask me to amend the

pleadings.  You knew about the Ixchel case, correct?

MR. GAW:  I did know about the Ixchel case, yes.

THE COURT:  Do you have anything further you wish

to address with respect to the arguments that were made by

10:19AM the moving party?

MR. GAW:  Well, I mean other than the Hokto case, I

think Your Honor alluded to is not apposite at all.  That was

organic mushrooms versus non-organic mushrooms in different

packaging.

10:19AM THE COURT:  I will give the parties just very

briefly further address the 87.6, the good-faith settlement

issue.  I know we started there.

Let me hear from counsel about the -- I'll address

this to plaintiff's counsel -- about the appropriateness of

10:19AM the Court granting that motion?  If I were to conclude that

                1   this case may have merit, you're requesting $25 million?

                2           MR. GAW:  No.

                3           THE COURT:  How much are you requesting in this

                4   case?

    10:20AM     5           MR. GAW:  I think the -- the max damages we've

                6   requested is between 6- to 8 million dollars or something

                7   like that.

                8           THE COURT:  The settlement that you've reached is

                9   in the amount of $40,000?

    10:20AM    10           MR. GAW:  Yes, Your Honor.

               11           THE COURT:  So you're alleging joint several

               12   liability?

               13           MR. GAW:  Yes, Your Honor.

               14           THE COURT:  Doesn't the Court's determination

    10:20AM    15   depend pretty heavily on whether I view your claims against

               16   TP Link essentially being meritless?

               17           MR. GAW:  That is one of the factors, Your Honor.

               18           THE COURT:  So why shouldn't I just grant the

               19   motion then if you're claiming that your case is -- doesn't

    10:20AM    20   really have much merit such that you can settle it will for

               21   $40,000?  And yet you're opposing the summary judgment motion

               22   suggesting that you have a multi-million dollar case?

               23           MR. GAW:  Well, first, it's not our motion.

               24   Second, the reason why we entered into a settlement for a

    10:21AM    25   less than obviously, you know, the amount that we're claiming

1    is for issues of practicality, Your Honor.  It was

2    represented to us that Auction Brothers was in financial

3    distress, and that if this matter had proceeded -- if this

4    matter had proceeded further, and if we had -- if this matter

10:21AM    5    had proceeded further and they would have to continue

6    expending attorney fees, there's a very real threat of a

7    bankruptcy filing, which would obviously come with an

8    automatic stay of this case.

9         So as a result of those non-merit, you know,

10:21AM    10    considerations that had nothing to do with the merits of this

11    case, TP Link is obviously fully solvent and could satisfy

12    any judgment reached against it, you know, we made the

13    decision -- all right; let's -- it's better to get something

14    rather than nothing especially if getting nothing also would

10:21AM    15    lead to a stay of this lawsuit by a perhaps a year --

16         THE COURT:  I think I understand the point.

17         What due diligence did you do to see whether they,

18    in fact, were in dire financial straits?

19         MR. GAW:  Well, it was represented to us multiple

10:21AM    20    times.  We also received their financial statements.

21         THE COURT:  Did you produce those financial

22    statements?  We received some.  The materials that we

23    received were not very informative?

24         MR. GAW:  They were produced to the Court, as far

10:22AM    25    as I understand.

1    THE COURT:  So the information that we have is the

2    information that you relied upon in determining that they

3    were in either about to be insolvent or at least in pretty

4    dire financial straits?

10:22AM  5    MR. GAW:  That's part of what we relied upon.

6    Also, opposing Auction Brothers' new counsel Mr. Frost and I

7    go a long ways back.  We've worked together.  Were we

8    colleagues at O'Melveny & Myers.  So there is already an

9    implicit level of trust, you know, between us.  So that

10:22AM  10   relationship along with the financial statements was what

11   ultimately led to us agreeing to it because, you know, we --

12   I know Mr. Frost to be an honest and honorable person.  That

13   weighed heavily on evaluating the information that was

14   provided to us.

10:23AM  15   THE COURT:  All right.  Let me hear from Mr. Frost

16   on this, please.

17   MR. FROST:  Good, morning, Your Honor.  If the

18   Court were to grant the summary judgment motion, then I think

19   Your Honor is correct, you should also grant the motion for

10:23AM  20   good-faith settlement.  The opposite is not necessarily true.

21   Even on the merits alone, just because there's not a basis

22   for a summary judgment motion, does not mean that there are

23   not very thick and thorny issues that have to be decided for

24   the plaintiff to recover.

10:23AM  25   One of the factors that the Court should consider

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 1   | on a good-faith settlement motion is whether this -- whether           |
| 2   | there should be that risk.  Whether there should be the                |
| 3   | opportunity for the plaintiff to recover something in light            |
| 4   | of that risk.  We also -- there were also another -- a number          |
| 5   | of other factors, of course, that the Court should look at,            |
| 6   | including; for instance, the fact that Auction Brothers                |
| 7   | d.b.a. Amazzia is in dire financial straits.                           |
| 8   | I can represent to you that we will be filing                          |
| 9   | bankruptcy if the case continues.  I have been authorized to           |
| 10  | do that.  The bankruptcy court will sort out what the                  |
| 11  | remedies associated with that are.  That is where we're                |
| 12  | headed.  It will cause a substantial delay in these                    |
| 13  | proceedings; therefore, a substantial delay in the ability of          |
| 14  | the plaintiffs to recover.                                             |
| 15  | So those are the two primary considerations that                       |
| 16  | when we stepped in, we took a look at it and said, you know,           |
| 17  | there is a way to work around this.                                    |
| 18  | Now, here's the other thing I will note.  When you                     |
| 19  | look at the papers that TP Link filed, they came after us              |
| 20  | very aggressively when the client pivoted and went to a                |
| 21  | settlement with the plaintiff.  There were opportunities for           |
| 22  | TP Link to settle as well.  They just chose not to do that.            |
| 23  | There were -- there was a mediation.  There were                       |
| 24  | conversations.  I can't get into specifics, both because of            |
| 25  | mediation privilege and also because I wasn't involved at the          |

time.  We got to this point because there wasn't a global

mediation -- there wasn't a global settlement because TP Link

wouldn't allow that to happen.

So this they had an opportunity to participate.

10:25AM  They chose not to.  So we had to chose this path.  Those are

the reasons we filed that motion and entered into the

settlement.

THE COURT:  Let me hear from TP Link's counsel

lastly on this.  We'll conclude this matter.

10:25AM  First of all, Counsel, do you have any information

or evidence that would contradict the dire financial straits

that Mr. Frost suggested his client is in?

MR. AMMONS:  Do I have any information -- no, I do

not have any information.  Our only point here would be that

10:25AM  the evidence has not been produced as part of the record

supporting this motion of such dire financial straits.

THE COURT:  Is there really any benefit in the

Court allowing more process on this issue?  That is to say,

do you have any genuine reason to doubt what you've just now

10:26AM  heard from counsel?

MR. AMMONS:  I don't know counsel.  And all I can

say is if such dire financial straits actually existed, why

weren't they produced as part of the motion?

THE COURT:  Well, there was some evidence that was

10:26AM  produced in that regard; is that correct?

1      MR. AMMONS:  Correct, but I -- I don't believe that

2  evidence demonstrates the -- what has been represented in

3  court here this morning.

4      THE COURT:  Do you have anything further you wish

10:26AM   5  to address with respect to the good-faith settlement motion

6  filed by Auction Brothers?

7      MR. AMMONS:  Just briefly, Your Honor.  The balance

8  of factors under Tech-Bilt.  I appreciate the Court's

9  indulgence on this is that the Court is well aware of what

10:26AM  10  those factors are.  If you just go down the list, they

11  mentioned one factor.  We're going to file for bankruptcy.

12  That is just one of the elements, but if you look at the

13  other factors, I think they weigh heavily against granting

14  the motion.

10:27AM  15      THE COURT:  With regard to my analysis of their

16  motion, should I also take into account not the ultimate

17  result with regard to your summary judgment motion, but just

18  the risks associated with the motion that you presented?  You

19  have presented, I think a serious motion.  I should consider

10:27AM  20  the fact that this case could go away on motion in

21  considering whether the settlement was in good faith and

22  should be granted.

23      Would you agree or disagree with that?

24      MR. AMMONS:  I would agree with that, Your Honor.

10:27AM  25      THE COURT:  As opposed to making a decision on the

1    results of your summary judgment motion and then working

2    backwards to their motion?

3            MR. AMMONS:  That's correct.  I would just say that

4    there's the whole picture here of when the plaintiff filed

10:27AM  5    their complaint, and we're now on the fifth amended complaint

6    in this action, that the allegations of joint and several

7    liability, the amount of damages that plaintiff is seeking in

8    this case, the lack of evidence of, you know, said dire

9    financial straits.  $40,000 seems a paucity to the claims

10:28AM  10   that have been made.

11           THE COURT:  One last thing along those lines.  I'm

12   not looking for you to acknowledge that there is exposure

13   here.  I know you believe that your client has no exposure

14   here.  If there were exposure, what would be a reasonable

10:28AM  15   range of exposure, would you suggest?

16           MR. AMMONS:  With respect to -- are you just

17   talking with respect to my client or --

18           THE COURT:  That you would be subject to joint and

19   several liability for?  I'm trying to assess essentially what

10:28AM  20   the potential value of the case is so I can look at the

21   motion in that light.

22           MR. AMMONS:  It's hard for me to answer that,

23   Your Honor, I -- the claim is in -- on the order of several

24   million dollars.  We've made arguments with respect to the

10:29AM  25   speculative nature of these claims and lost profits and such.

1   But that is the state of the record.  That's what they're

2   seeking.

3            THE COURT:  Fair enough.  I will take the matters

4   under submission.  We are in recess.  Have a good weekend.

5            (Proceedings concluded at 10:29 a.m.)

6                          CERTIFICATE

7   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

8   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

9   THE ABOVE MATTER.

10  FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

11  REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

12  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14  /s/ Miriam V. Baird          01/10/2023

15  MIRIAM V. BAIRD                        DATE
    OFFICIAL REPORTER
16

17

18

19

20

21

22

23

24

25

**$**

**$25** [1] - 24:1
**$40,000** [3] - 24:9, 24:21, 30:9

**/**

**/s** [1] - 31:14

**0**

**01/10/2023** [1] - 31:14

**1**

**10866** [1] - 2:10
**10:29** [1] - 31:5
**11893** [1] - 1:23
**1398** [1] - 9:4
**1400** [1] - 2:4
**1404** [1] - 9:5
**1508** [1] - 9:2
**1510** [2] - 7:24, 9:2
**1650** [1] - 2:11
**17200** [6] - 5:5, 5:7, 16:8, 16:12, 17:1, 17:4
**19** [1] - 11:17
**1980** [1] - 11:17
**1988** [2] - 9:2, 11:19

**2**

**2019** [1] - 22:13
**2020** [1] - 22:12
**2022** [1] - 3:1
**23** [4] - 6:10, 6:17, 7:13, 12:19

**3**

**350** [1] - 1:24
**36** [1] - 7:19
**369** [1] - 7:20

**4**

**4** [1] - 2:4

**6**

**6** [1] - 24:6
**61** [1] - 12:25

**7**

**7** [1] - 3:1
**703** [1] - 9:4
**73** [3] - 7:2, 11:4, 12:20

**8**

**8** [1] - 24:6
**810** [1] - 9:1
**87.6** [1] - 23:21

**9**

**90012** [1] - 1:24
**90024** [1] - 2:11
**94111** [1] - 2:5
**9:49** [1] - 3:1

**A**

**a.m** [1] - 31:5
**A.M** [1] - 3:1
**ABC** [1] - 9:4
**ability** [2] - 15:20, 27:13
**able** [2] - 3:20, 8:22
**ABOVE** [1] - 31:9
**absolutely** [2] - 20:22, 22:23
**Abstract** [2] - 11:10, 11:12
**according** [2] - 8:25
**account** [3] - 4:2, 4:9, 29:16
**accusing** [1] - 11:5
**acknowledge** [1] - 30:12
**act** [3] - 16:20, 16:24, 17:8
**Act** [1] - 9:9
**action** [1] - 30:6
**actionable** [1] - 20:17
**actual** [2] - 12:15, 13:18
**addition** [1] - 5:11
**address** [8] - 3:24, 18:3, 18:20, 20:11, 23:14, 23:21, 23:23, 29:5
**addressed** [5] - 7:21, 11:16, 14:7, 14:18
**addresses** [1] - 11:22
**addressing** [2] - 14:2, 14:6
**adequately** [1] - 20:11
**admitted** [1] - 12:16
**Aetna** [1] - 13:22
**affect** [1] - 9:11
**aggressively** [1] - 27:20
**agree** [3] - 19:2, 29:23, 29:24
**agreeing** [1] - 26:11
**agreements** [1] - 7:15
**ahead** [1] - 22:4
**al** [1] - 3:5
**AL.** [1] - 1:10
**allegations** [3] - 16:11, 23:3, 30:6
**allege** [3] - 17:13, 22:21, 22:24
**alleged** [3] - 12:17, 16:15, 22:14
**allegedly** [2] - 12:11, 13:11
**alleging** [1] - 24:11

**allow** [1] - 28:3
**allowing** [1] - 28:18
**alluded** [1] - 23:17
**alone** [1] - 26:21
**Amazia** [1] - 13:1
**Amazon** [11] - 6:9, 6:15, 6:18, 7:12, 11:2, 12:12, 13:17, 13:18, 15:15, 21:21, 21:22
**Amazon's** [1] - 6:24
**Amazzia** [2] - 3:14, 27:7
**amend** [6] - 17:12, 17:16, 22:6, 22:19, 23:8, 23:10
**amended** [3] - 23:1, 23:2, 30:5
**AMMONS** [27] - 3:10, 4:7, 4:13, 4:17, 17:22, 17:25, 18:5, 18:21, 19:2, 19:4, 19:11, 19:16, 19:20, 20:7, 20:10, 20:13, 21:1, 21:12, 21:18, 28:13, 28:21, 29:1, 29:7, 29:24, 30:3, 30:16, 30:22
**Ammons** [1] - 3:11
**amount** [3] - 24:9, 24:25, 30:7
**analysis** [1] - 29:15
**analyze** [1] - 10:22
**AND** [1] - 31:7
**AND/OR** [1] - 31:11
**ANGELES** [4] - 1:18, 1:24, 2:11, 3:1
**answer** [1] - 30:22
**antitrust** [1] - 10:8
**ANY** [1] - 31:10
**anyway** [1] - 11:4
**appearance** [1] - 3:6
**appellate** [1] - 15:7
**applied** [1] - 13:6
**applies** [2] - 11:15, 13:15
**apply** [2] - 8:21, 11:14
**apposite** [1] - 23:17
**appreciate** [1] - 29:8
**appreciates** [1] - 3:22
**appropriateness** [1] - 23:24
**ARE** [1] - 31:11
**area** [1] - 18:16
**arguably** [3] - 9:16, 9:19, 9:20
**arguing** [2] - 4:4, 4:5
**argument** [6] - 8:8, 9:5, 18:3, 19:9, 20:12, 21:6
**arguments** [3] - 21:14, 23:14, 30:24
**aside** [1] - 10:12
**aspects** [1] - 18:2
**asserted** [2] - 6:2, 6:7
**asserting** [2] - 6:3, 6:8
**assertions** [1] - 20:23

**assess** [1] - 30:19
**associated** [2] - 27:11, 29:18
**assume** [2] - 20:21, 21:10
**attested** [1] - 5:16
**attorney** [1] - 25:6
**AUCTION** [1] - 2:10
**Auction** [4] - 25:2, 26:6, 27:6, 29:6
**authentic** [1] - 8:17
**authorities** [1] - 20:17
**authority** [3] - 10:19, 19:12, 19:16
**authorized** [2] - 7:11, 27:9
**automatic** [1] - 25:8
**aware** [4] - 15:14, 17:3, 21:22, 29:9

**B**

**backwards** [1] - 30:2
**Bahama** [1] - 20:16
**BAIRD** [2] - 1:23, 31:15
**Baird** [1] - 31:14
**balance** [1] - 29:7
**bankruptcy** [4] - 25:7, 27:9, 27:10, 29:11
**based** [2] - 16:7, 18:22
**bases** [1] - 18:24
**basis** [5] - 4:6, 20:23, 21:17, 26:21
**BEHALF** [2] - 2:3, 2:9
**belief** [1] - 10:13
**believer** [1] - 3:17
**benefit** [2] - 22:15, 28:17
**better** [1] - 25:13
**between** [7] - 4:10, 8:14, 8:24, 12:1, 14:20, 24:6, 26:9
**beyond** [1] - 17:16
**big** [1] - 3:17
**Bilt** [2] - 4:8, 29:8
**BLUMENFELD** [1] - 1:3
**bono** [1] - 3:17
**BOULEVARD** [1] - 2:10
**brief** [2] - 7:22, 13:23
**briefly** [2] - 23:21, 29:7
**bring** [1] - 22:25
**broad** [1] - 18:12
**broadly** [1] - 8:3
**BROTHERS** [1] - 2:10
**Brothers** [3] - 25:2, 27:6, 29:6
**Brothers'** [1] - 26:6
**brought** [3] - 9:5, 10:3, 10:5
**business** [3] - 14:20, 16:2, 21:23
**Business** [1] - 7:19
**businesses** [1] - 15:24
**buy** [1] - 7:4

**buys** [1] - 7:7

# C

**CA** [2] - 2:5, 2:11
**CALIFORNIA** [4] - 1:2, 1:18, 1:24, 3:1
**California** [3] - 10:18, 16:19, 22:8
**cannot** [3] - 8:13, 8:16, 19:16
**carefully** [1] - 15:3
**carry** [1] - 15:16
**case** [44] - 4:11, 4:12, 7:21, 9:3, 10:4, 10:18, 10:25, 11:8, 11:18, 12:3, 13:10, 13:15, 13:19, 13:21, 14:8, 14:14, 14:18, 15:4, 15:5, 15:8, 17:20, 18:4, 18:5, 22:7, 22:12, 22:25, 23:11, 23:12, 23:16, 24:1, 24:4, 24:19, 24:22, 25:8, 25:11, 27:9, 29:20, 30:8, 30:20
**cases** [5] - 13:20, 14:23, 15:3, 15:14, 18:9
**category** [1] - 18:18
**causation** [2] - 15:13, 21:20
**CCRA** [1] - 1:23
**Centennial** [1] - 13:22
**CENTER** [1] - 2:4
**CENTRAL** [1] - 1:2
**certain** [1] - 23:3
**certainly** [2] - 4:18, 23:4
**CERTIFICATE** [1] - 31:6
**CERTIFY** [1] - 31:7
**cetera** [1] - 17:1
**CHARGED** [1] - 31:10
**chose** [4] - 12:20, 27:22, 28:5
**CHRISTOPHER** [1] - 2:9
**Christopher** [1] - 3:15
**Circuit** [12] - 7:20, 7:22, 9:1, 11:16, 13:23, 13:24, 16:20, 18:4, 18:5, 18:15, 18:18, 22:24
**CIRCUIT** [1] - 31:10
**Circuit's** [1] - 6:23
**circumstances** [2] - 10:20, 10:23
**cite** [5] - 13:10, 13:14, 13:19, 13:22, 19:16
**cited** [1] - 7:21
**claim** [17] - 4:24, 5:2, 5:5, 5:12, 5:14, 7:9, 7:23, 9:9, 9:18, 10:5, 10:7, 12:1, 12:14, 17:4, 20:25, 21:19, 30:23
**claimed** [2] - 9:13, 12:8
**claiming** [6] - 9:25, 13:8, 13:16, 16:6, 24:19, 24:25
**claims** [17] - 4:23, 5:2, 5:9,

10:1, 10:3, 16:7, 21:5, 21:6, 21:20, 22:14, 22:17, 22:21, 22:23, 24:15, 30:9, 30:25
**clear** [1] - 7:13
**clearly** [4] - 10:2, 10:4, 11:22, 20:22
**CLERK** [1] - 3:4
**client** [8] - 7:11, 7:18, 8:1, 20:19, 27:20, 28:12, 30:13, 30:17
**clients** [1] - 13:6
**Coastal** [2] - 11:10, 11:12
**colleagues** [1] - 26:8
**common** [2] - 5:24, 17:6
**Company** [1] - 13:22
**company's** [1] - 20:16
**competitor** [1] - 15:18
**complaint** [6] - 13:1, 16:14, 23:1, 23:2, 30:5
**complaints** [5] - 5:14, 7:2, 7:3, 13:7
**completely** [1] - 15:18
**concept** [2] - 18:11, 18:12
**concerning** [3] - 17:20, 18:4, 21:14
**conclude** [3] - 21:25, 23:25, 28:9
**concluded** [1] - 31:5
**conclusion** [2] - 9:15, 20:3
**conduct** [1] - 17:1
**CONFERENCE** [1] - 31:12
**confine** [1] - 22:6
**conflicts** [1] - 3:19
**conform** [1] - 17:12
**CONFORMANCE** [1] - 31:11
**confused** [1] - 9:6
**consider** [5] - 4:11, 12:23, 21:17, 26:25, 29:19
**considerations** [3] - 4:9, 25:10, 27:15
**considered** [2] - 8:11, 9:22
**considering** [1] - 29:21
**constitute** [1] - 7:16
**construed** [1] - 19:14
**consumer** [9] - 8:19, 8:22, 13:13, 13:16, 14:24, 18:13, 19:1, 19:6, 19:15
**consumers** [4] - 9:6, 15:9, 15:11, 15:12
**contain** [1] - 19:4
**content** [1] - 13:5
**context** [5] - 10:22, 10:23, 10:25, 11:22, 12:1
**contextual** [1] - 10:19
**continue** [1] - 25:5
**continues** [1] - 27:9
**contract** [1] - 7:23
**contracts** [2] - 22:10, 22:11

**contradict** [1] - 28:11
**controlled** [1] - 9:8
**conversations** [1] - 27:24
**convey** [1] - 9:7
**conveyed** [1] - 9:10
**Corp** [1] - 9:4
**Corporation** [1] - 3:5
**CORPORATION** [1] - 1:10
**correct** [17] - 4:6, 4:7, 4:24, 5:3, 8:14, 9:16, 9:19, 9:20, 17:10, 19:1, 19:11, 20:10, 23:11, 26:19, 28:25, 29:1, 30:3
**CORRECT** [1] - 31:7
**counsel** [17] - 3:6, 3:14, 3:20, 4:23, 17:18, 17:19, 18:8, 18:17, 19:8, 21:4, 22:4, 23:23, 23:24, 26:6, 26:8, 28:20, 28:21
**Counsel** [4] - 3:23, 9:25, 14:3, 28:10
**counterfeit** [13] - 5:23, 5:24, 6:2, 6:7, 6:11, 6:19, 6:25, 7:5, 9:13, 12:5, 12:18, 13:3, 13:8
**counterfeiting** [3] - 6:14, 6:15, 11:3
**course** [1] - 27:5
**court** [3] - 15:7, 27:10, 29:3
**COURT** [78] - 1:1, 1:23, 3:12, 3:14, 3:22, 4:8, 4:14, 4:21, 5:1, 5:5, 5:7, 5:13, 5:18, 6:5, 7:11, 7:17, 7:25, 8:8, 8:12, 8:18, 8:22, 9:12, 9:24, 10:12, 11:11, 11:20, 11:25, 12:10, 12:14, 12:22, 13:9, 14:2, 14:6, 14:22, 16:5, 16:11, 16:18, 16:25, 17:9, 17:15, 17:16, 17:24, 18:3, 18:8, 18:25, 19:3, 19:8, 19:12, 19:18, 20:4, 20:8, 20:11, 20:18, 21:8, 21:13, 22:3, 23:4, 23:10, 23:13, 23:20, 24:3, 24:8, 24:11, 24:14, 24:18, 25:16, 25:21, 26:1, 26:15, 28:8, 28:17, 28:24, 29:4, 29:15, 29:25, 30:11, 30:18, 31:3
**Court** [36] - 3:17, 3:22, 4:2, 4:4, 4:9, 4:11, 4:17, 5:18, 9:2, 9:20, 10:19, 11:13, 12:11, 13:10, 13:14, 14:7, 14:16, 14:22, 17:19, 19:21, 19:25, 20:14, 21:3, 21:8, 21:9, 21:17, 21:18, 21:25, 22:8, 23:25, 25:24, 26:18, 26:25, 27:5, 28:18, 29:9
**Court's** [4] - 11:19, 14:13, 24:14, 29:8
**courtrooms** [1] - 21:4

**CSR** [1] - 1:23
**customer** [2] - 7:17, 14:12
**customers** [1] - 14:21
**cut** [2] - 14:19, 15:20
**CV19-10374-SB** [2] - 1:8, 3:4

# D

**d.b.a** [1] - 27:7
**damages** [6] - 13:10, 14:5, 14:7, 15:1, 24:5, 30:7
**DATE** [2] - 1:19, 31:15
**David** [1] - 3:11
**DAY** [1] - 1:19
**deal** [1] - 13:25
**dealt** [1] - 15:15
**decide** [1] - 10:22
**decided** [5] - 11:14, 11:18, 15:12, 21:23, 26:23
**deciding** [1] - 4:3
**decision** [3] - 11:19, 25:13, 29:25
**declaration** [1] - 13:4
**defame** [1] - 20:8
**defeat** [1] - 20:12
**DEFENDANT** [1] - 2:9
**defendant** [1] - 3:11
**defendants** [1] - 1:12
**defense** [1] - 17:18
**defined** [2] - 8:4, 11:3
**delay** [2] - 27:12, 27:13
**Della** [1] - 22:8
**Dellapenna** [1] - 5:9
**DELLAPENNA** [1] - 5:10
**demonstrates** [1] - 29:2
**demonstration** [1] - 14:25
**denied** [1] - 19:21
**deny** [1] - 21:16
**department** [1] - 15:16
**DEPOSIT** [1] - 31:11
**deposition** [1] - 13:4
**describes** [2] - 6:18
**determination** [2] - 4:1, 24:14
**determining** [1] - 26:2
**differ** [1] - 17:25
**difference** [8] - 8:14, 8:17, 8:19, 8:23, 18:11, 18:12, 18:19, 18:25
**differences** [1] - 19:7
**different** [6] - 8:4, 18:13, 18:14, 18:22, 23:18
**diligence** [1] - 25:17
**dire** [7] - 25:18, 26:4, 27:7, 28:11, 28:16, 28:22, 30:8
**direct** [3] - 4:22, 13:21, 15:13
**directly** [5] - 11:19, 15:9, 15:10, 15:22, 15:25
**disagree** [4] - 21:10, 21:13,

21:14, 29:23
**disagrees** [2] - 21:9, 21:18
**dismiss** [1] - 10:2
**dismissed** [1] - 22:23
**dispositive** [1] - 20:6
**distinction** [1] - 17:23
**distress** [1] - 25:3
**distribution** [1] - 7:15
**DISTRICT** [3] - 1:1, 1:2, 1:23
**divide** [1] - 12:1
**dollar** [1] - 24:22
**dollars** [2] - 24:6, 30:24
**done** [1] - 12:9
**doubt** [1] - 28:19
**down** [2] - 6:5, 29:10
**due** [1] - 25:17

### E

**easy** [1] - 15:10
**Ebay** [1] - 15:15
**effect** [1] - 16:14
**either** [3] - 10:16, 17:6, 26:3
**elements** [1] - 29:12
**EMBARCADERO** [1] - 2:4
**entered** [2] - 24:24, 28:6
**especially** [1] - 25:14
**essentially** [6] - 14:10,
  14:24, 18:10, 20:3, 24:16,
  30:19
**established** [1] - 11:22
**et** [2] - 3:5, 17:1
**ET** [1] - 1:10
**evaluating** [1] - 26:13
**eventual** [1] - 14:21
**evidence** [12] - 11:1, 12:18,
  12:25, 14:11, 19:13, 21:21,
  21:22, 28:11, 28:15, 28:24,
  29:2, 30:8
**example** [4] - 14:7, 15:16,
  20:14, 21:3
**excepted** [1] - 18:18
**exclusive** [1] - 7:15
**Exhibit** [5] - 6:10, 6:17, 7:13,
  12:19, 12:25
**existed** [2] - 22:16, 28:22
**existing** [1] - 22:10
**expanded** [1] - 22:8
**expending** [1] - 25:6
**explain** [3] - 4:1, 5:18, 17:19
**exposure** [4] - 30:12, 30:13,
  30:14, 30:15
**extent** [1] - 11:9
**extraneous** [1] - 23:3

### F

**F.2nd** [1] - 9:1
**fact** [14] - 7:6, 9:2, 10:15,
  10:17, 10:24, 11:2, 11:21,

12:1, 17:7, 18:22, 20:4,
  25:18, 27:6, 29:20
**factor** [3] - 4:8, 4:19, 29:11
**factors** [6] - 24:17, 26:25,
  27:5, 29:8, 29:10, 29:13
**factory** [1] - 6:23
**facts** [7] - 10:7, 10:9, 16:15,
  16:23, 17:5, 22:14
**fair** [1] - 31:3
**faith** [9] - 3:24, 4:1, 4:16,
  10:13, 23:21, 26:20, 27:1,
  29:5, 29:21
**fake** [1] - 6:1
**false** [5] - 5:17, 5:19, 7:6,
  9:21, 15:19
**falsely** [1] - 13:11
**familiar** [2] - 18:9, 18:16
**far** [2] - 17:3, 25:24
**federal** [2] - 10:19, 20:20
**FEE** [1] - 31:10
**fees** [1] - 25:6
**FEES** [1] - 31:10
**fifth** [1] - 23:2, 30:5
**Fikhman** [1] - 13:4
**file** [3] - 13:6, 13:7, 29:11
**filed** [6] - 13:1, 22:13, 27:19,
  28:6, 29:6, 30:4
**filing** [1] - 25:7, 27:8
**financial** [11] - 25:2, 25:18,
  25:20, 25:21, 26:4, 26:10,
  27:7, 28:11, 28:16, 28:22,
  30:9
**firm** [1] - 3:17
**FIRST** [1] - 1:24
**first** [6] - 4:22, 7:3, 17:19,
  22:22, 24:23, 28:10
**FLOOR** [1] - 1:24
**FOR** [1] - 31:10
**FOREGOING** [1] - 31:7
**Forister** [1] - 3:18
**form** [4] - 6:10, 6:18, 11:2,
  12:18
**forth** [1] - 16:17
**FOURTH** [1] - 1:24
**FRANCISCO** [1] - 2:5
**fraud** [7] - 5:8, 16:8, 16:12,
  16:14, 16:16, 17:1, 17:13
**FRIDAY** [1] - 3:1
**frivolous** [4] - 20:18, 20:22,
  21:5
**FROST** [5] - 2:9, 2:10, 3:13,
  3:15, 26:17
**frost** [4] - 26:6, 26:12, 26:15,
  28:12
**Frost** [2] - 3:15
**fully** [1] - 25:11
**future** [1] - 14:20

### G

**GAW** [49] - 2:3, 2:3, 3:8,
  4:25, 5:4, 5:6, 5:11, 5:16,
  5:22, 6:6, 7:12, 7:19, 8:2,
  8:10, 8:15, 8:20, 8:25,
  9:19, 10:9, 10:16, 11:12,
  11:24, 12:3, 12:12, 12:16,
  12:24, 13:21, 14:4, 14:17,
  15:2, 16:10, 16:13, 16:22,
  17:3, 17:11, 17:17, 22:5,
  23:7, 23:12, 23:16, 24:2,
  24:5, 24:10, 24:13, 24:17,
  24:23, 25:19, 25:24, 26:5
**Gaw** [1] - 3:8
**General** [1] - 7:19
**generally** [2] - 13:5, 18:9
**genuine** [16] - 6:12, 6:23,
  7:1, 8:5, 8:16, 8:20, 8:21,
  9:7, 9:11, 17:23, 17:24,
  18:23, 19:5, 19:9, 28:19
**global** [2] - 28:1, 28:2
**GONSER** [1] - 2:10
**good-faith** [8] - 3:24, 4:1,
  4:16, 10:13, 23:21, 26:20,
  27:1, 29:5
**goods** [10] - 6:12, 6:23, 8:1,
  8:6, 8:9, 8:12, 8:13, 8:14,
  17:23, 17:24
**grant** [7] - 4:5, 4:14, 4:18,
  4:20, 24:18, 26:18, 26:19
**granted** [3] - 22:2, 22:20,
  29:22
**granting** [2] - 23:25, 29:13
**gray** [3] - 8:6, 8:13, 8:16
**grey** [4] - 8:1, 8:3, 8:9, 8:11
**guess** [1] - 23:8

### H

**hard** [1] - 30:22
**hared** [1] - 18:7
**harmed** [1] - 15:25
**headed** [1] - 27:12
**hear** [5] - 3:25, 16:1, 23:23,
  26:15, 28:8
**heard** [2] - 3:18, 28:20
**HEARING** [1] - 1:17
**heavily** [3] - 24:15, 26:13,
  29:13
**hedge** [1] - 10:18
**held** [3] - 7:22, 9:8, 13:24
**HEREBY** [1] - 31:7
**hesitation** [1] - 8:3
**hired** [1] - 13:6
**Hokto** [3] - 18:7, 18:15,
  23:16
**HOKTO** [2] - 18:7, 18:15
**holding** [1] - 14:13
**Holdings** [1] - 14:8

**honest** [1] - 26:12
**Honor** [33] - 3:8, 3:10, 4:25,
  5:4, 5:6, 5:11, 6:6, 7:2,
  7:12, 7:22, 8:2, 8:15, 10:9,
  12:4, 12:17, 12:24, 14:17,
  15:2, 16:10, 17:12, 19:17,
  22:5, 22:22, 23:17, 24:10,
  24:13, 24:17, 25:1, 26:17,
  26:19, 29:7, 29:24, 30:23
**HONORABLE** [1] - 1:3
**honorable** [1] - 26:12
**hyphen** [1] - 4:10
**hypothetical** [1] - 20:21

### I

**identifying** [1] - 5:22
**immaterial** [1] - 19:14
**implicit** [1] - 26:9
**importantly** [1] - 11:8
**IN** [4] - 2:3, 2:9, 31:8, 31:11
**Inc** [1] - 3:5
**INC** [2] - 1:4, 2:3
**inclined** [1] - 4:17
**included** [1] - 23:4
**including** [1] - 27:6
**independent** [5] - 5:25,
  16:15, 16:20, 22:9, 22:18
**independently** [2] - 16:23,
  17:6
**indicated** [1] - 18:17
**induced** [1] - 16:2
**induces** [1] - 13:25
**indulgence** [1] - 29:9
**inference** [1] - 11:1
**inform** [1] - 3:17
**information** [7] - 3:19, 26:1,
  26:2, 26:13, 28:10, 28:13,
  28:14
**informative** [1] - 25:23
**infringement** [3] - 6:4, 6:25,
  7:16
**injured** [1] - 15:20
**injuries** [1] - 16:3
**insolvent** [1] - 26:3
**instance** [4] - 4:20, 10:8,
  11:24, 27:6
**instances** [1] - 15:24
**Insurance** [1] - 13:22
**intellectual** [1] - 7:16
**intentional** [1] - 22:9
**interference** [5] - 5:1, 5:2,
  5:9, 16:7, 22:10
**intermediary** [2] - 14:19,
  15:15
**International** [1] - 9:4
**interpretation** [1] - 21:15
**involved** [1] - 27:25
**IS** [1] - 31:7
**issue** [27] - 3:24, 7:14, 7:23,

9:3, 10:10, 11:14, 11:16,
11:17, 13:9, 14:2, 14:4,
14:6, 14:8, 14:9, 15:13,
18:23, 19:22, 19:23, 20:1,
20:15, 21:3, 21:19, 22:6,
22:14, 23:22, 28:18
**issued** [1] - 22:12
**issues** [5] - 10:12, 17:14,
22:14, 25:1, 26:23
**item** [1] - 7:18
**itself** [5] - 10:22, 15:23,
16:24, 17:8, 20:5
**Ixchel** [4] - 22:7, 22:12,
22:15, 23:11, 23:12

## J

**joint** [5] - 7:21, 13:23, 24:11,
30:6, 30:18
**JR** [1] - 1:3
**Judge** [1] - 9:2
**JUDGE** [1] - 1:3
**judge** [1] - 9:8
**judgment** [12] - 4:3, 4:5,
4:15, 4:18, 4:21, 19:19,
24:21, 25:12, 26:18, 26:22,
29:17, 30:1
**JUDICIAL** [1] - 31:12
**jump** [1] - 3:16
**justice** [1] - 22:20

## K

**key** [1] - 18:2
**kind** [2] - 9:17, 15:10
**kindly** [1] - 18:20
**kinds** [1] - 21:5
**knock** [3] - 6:1, 6:12, 7:8
**knock-off** [1] - 6:1
**knock-offs** [2] - 6:12, 7:8
**knowingly** [2] - 5:17, 5:19
**knowledge** [1] - 22:21

## L

**lack** [1] - 30:8
**language** [2] - 13:2, 13:13
**Lanham** [1] - 9:9
**last** [2] - 16:5, 30:11
**lastly** [1] - 28:9
**late** [1] - 17:15
**latest** [1] - 23:5
**Law** [1] - 7:19
**law** [17] - 10:1, 10:18, 11:15,
11:22, 16:19, 16:20, 17:6,
17:10, 17:11, 17:20, 18:4,
18:5, 18:15, 18:16, 20:19,
21:15, 22:22
**laws** [2] - 15:21, 20:21
**lawsuit** [2] - 4:6, 25:15

**lawyers** [1] - 21:4
**lay** [6] - 5:24, 5:25, 11:14,
19:24, 20:2, 21:3
**lead** [1] - 25:15
**least** [5] - 8:8, 10:5, 11:17,
15:6, 26:3
**leave** [5] - 17:12, 17:16, 22:6,
22:19, 23:8
**led** [1] - 26:11
**left** [1] - 19:9
**legal** [11] - 9:15, 9:16, 10:14,
12:2, 20:2, 20:15, 20:23,
21:3, 21:5, 21:6
**LESS** [1] - 31:10
**less** [1] - 24:25
**level** [2] - 15:7, 26:9
**Lew** [2] - 9:2, 9:8
**liability** [3] - 24:12, 30:7,
30:19
**libel** [19] - 4:24, 5:8, 9:18,
10:8, 12:14, 14:18, 15:5,
15:21, 16:1, 16:8, 16:12,
16:13, 16:17, 17:13, 20:8,
20:24, 21:15, 21:19
**libelled** [3] - 14:21, 16:3,
16:4
**libelous** [8] - 5:20, 5:23,
12:11, 12:15, 13:24, 15:8,
15:11, 16:1
**light** [2] - 27:3, 30:21
**lines** [1] - 30:11
**LINK** [1] - 1:10
**Link** [13] - 3:5, 3:25, 4:5,
5:23, 7:9, 7:10, 18:23,
24:16, 25:11, 27:19, 27:22,
28:2
**link** [1] - 3:11
**Link's** [3] - 4:14, 4:18, 28:8
**list** [1] - 29:10
**literally** [2] - 17:4, 22:17
**litigated** [2] - 15:6
**litigation** [1] - 10:10
**LLP** [2] - 2:3, 2:10
**logical** [1] - 15:18
**look** [7] - 6:17, 10:20, 27:5,
27:16, 27:19, 29:12, 30:20
**looking** [2] - 11:25, 30:12
**LOS** [4] - 1:18, 1:24, 2:11,
3:1
**lose** [1] - 19:18
**lost** [1] - 30:25
**low** [1] - 18:16

## M

**manufactured** [1] - 6:14
**manufacturer** [2] - 19:6,
19:10
**manufacturer's** [1] - 15:17
**mark** [1] - 6:13

**market** [7] - 8:1, 8:3, 8:6, 8:9,
8:11, 8:13, 8:16
**material** [11] - 8:13, 8:17,
8:18, 8:23, 18:11, 18:12,
18:19, 18:25, 19:3, 19:7,
19:14
**materially** [3] - 17:25, 18:13,
18:14
**materials** [3] - 17:22, 18:22,
25:22
**matter** [10] - 3:12, 3:16, 3:18,
13:1, 16:18, 20:19, 25:3,
25:4, 28:9
**MATTER** [1] - 31:9
**matters** [1] - 31:3
**max** [1] - 24:5
**mean** [4] - 6:15, 6:16, 23:16,
26:22
**meaning** [1] - 5:24
**measure** [2] - 16:24, 17:7
**mediation** [3] - 27:23, 27:25,
28:2
**mentioned** [1] - 29:11
**merit** [7] - 4:11, 10:3, 10:4,
24:1, 24:20, 25:9
**meritless** [1] - 24:16
**merits** [4] - 4:11, 4:19, 25:10,
26:21
**middle** [1] - 3:16
**might** [2] - 15:16, 22:22
**million** [4] - 24:1, 24:6,
24:22, 30:24
**minute** [1] - 22:4
**MIRIAM** [2] - 1:23, 31:15
**Miriam** [1] - 31:14
**mistaken** [1] - 9:12
**modify** [1] - 23:2
**morning** [5] - 3:8, 3:10, 3:12,
26:17, 29:3
**MOTION** [1] - 1:17
**motion** [30] - 4:3, 4:15, 4:18,
4:22, 19:19, 19:20, 21:10,
21:16, 22:2, 23:25, 24:19,
24:21, 24:23, 26:18, 26:19,
26:22, 27:1, 28:6, 28:16,
28:23, 29:5, 29:14, 29:16,
29:17, 29:18, 29:19, 29:20,
30:1, 30:2, 30:21
**movant** [1] - 19:25
**move** [1] - 17:18
**moving** [5] - 16:6, 18:6,
23:15
**MR** [77] - 3:8, 3:10, 3:13,
3:15, 4:7, 4:13, 4:17, 4:25,
5:4, 5:6, 5:11, 5:16, 5:22,
6:6, 7:12, 7:19, 8:2, 8:10,
8:15, 8:20, 8:25, 9:19,
10:9, 10:16, 11:12, 11:24,
12:3, 12:12, 12:16, 12:24,
13:21, 14:4, 14:17, 15:2,

16:10, 16:13, 16:22, 17:3,
17:11, 17:17, 17:22, 17:25,
18:5, 18:21, 19:2, 19:4,
19:11, 19:16, 19:20, 20:7,
20:10, 20:13, 21:1, 21:12,
21:18, 22:5, 23:7, 23:12,
23:16, 24:2, 24:5, 24:10,
24:13, 24:17, 24:23, 25:19,
25:24, 26:5, 26:17, 28:13,
28:21, 29:1, 29:7, 29:24,
30:3, 30:16, 30:22
**Muddy** [1] - 13:14
**multi** [1] - 24:22
**multi-million** [1] - 24:22
**multiple** [1] - 25:19
**mushrooms** [2] - 23:18
**MVB11893@aol.com** [1] -
1:25
**Myers** [1] - 26:8

## N

**nature** [1] - 30:25
**NEC** [9] - 7:21, 8:10, 9:1, 9:8,
11:8, 11:18, 17:21, 18:17,
19:8
**necessarily** [1] - 26:20
**needs** [1] - 10:20
**never** [2] - 6:21, 22:20
**nevertheless** [1] - 22:1
**new** [1] - 26:6
**New** [1] - 7:19
**Ninth** [13] - 6:23, 7:20, 7:22,
9:1, 11:16, 13:23, 13:24,
16:19, 18:4, 18:5, 18:15,
18:18, 22:24
**Noerr** [1] - 10:11
**Noerr-Pennington** [1] -
10:11
**non** [2] - 23:18, 25:9
**non-merit** [1] - 25:9
**non-organic** [1] - 23:18
**note** [1] - 27:18
**nothing** [3] - 25:10, 25:14
**number** [1] - 27:4

## O

**O'Melveny** [1] - 26:8
**objected** [1] - 12:22
**objection** [3] - 3:25, 4:4,
12:23
**obtain** [1] - 7:18
**obviously** [3] - 24:25, 25:7,
25:11
**OCTOBER** [1] - 3:1
**OF** [9] - 1:2, 1:16, 1:19, 2:3,
2:9, 31:8, 31:12
**OFFICIAL** [2] - 1:23, 31:15
**offs** [2] - 6:12, 7:8

one [12] - 4:8, 12:4, 14:19, 15:2, 15:8, 16:5, 22:16, 24:17, 26:25, 29:11, 29:12, 30:11
opinion [20] - 7:24, 9:3, 9:22, 9:25, 10:14, 10:17, 10:24, 11:9, 11:15, 11:21, 12:1, 20:3, 20:25, 21:2, 21:6, 21:7, 21:14, 22:1, 22:12, 22:15
opinions [1] - 15:7
opportunities [1] - 27:21
opportunity [3] - 22:21, 27:3, 28:4
opposed [5] - 6:3, 6:8, 16:25, 22:10, 29:25
opposing [3] - 21:4, 24:21, 26:6
opposite [1] - 26:20
option [1] - 6:9
order [4] - 5:9, 8:12, 14:24, 30:23
organic [2] - 23:18
original [3] - 18:1, 19:5, 19:10
outers [1] - 5:23
overall [2] - 10:20, 10:23
overrule [1] - 4:3
own [1] - 6:24

**P**

packaging [2] - 6:19, 23:19
page [2] - 7:23, 9:5
pages [1] - 9:1
papers [1] - 27:19
paragraph [1] - 7:14
part [4] - 8:9, 26:5, 28:15, 28:23
participate [1] - 28:4
particular [2] - 11:24, 15:3
parties [2] - 12:10, 23:20
party [8] - 10:13, 14:9, 14:21, 16:1, 16:3, 16:6, 23:15
party' [1] - 18:6
party's [1] - 15:20
path [1] - 28:5
paucity [1] - 30:9
penalty [1] - 5:16
Penna [1] - 22:8
Pennington [1] - 10:11
people [2] - 6:14, 8:4
per [6] - 5:8, 16:8, 16:12, 16:14, 16:17, 17:13
perhaps [1] - 25:15
perjurious [2] - 5:15, 5:19, 5:20
perjury [7] - 5:11, 5:14, 5:17, 16:8, 16:12, 16:17, 17:17
permitted [3] - 16:7, 23:5,

23:8
person [4] - 19:24, 20:2, 21:3, 26:12
person's [1] - 11:14
perspective [3] - 8:19, 19:1, 19:14
picture [1] - 30:4
pivoted [1] - 27:20
place [1] - 22:22
plaintiff [8] - 3:9, 9:6, 13:25, 26:24, 27:3, 27:21, 30:4, 30:7
Plaintiff [1] - 1:6
PLAINTIFF [1] - 2:3
plaintiff's [4] - 4:22, 9:8, 22:3, 23:24
plaintiffs [1] - 27:14
plead [6] - 10:7, 16:20, 16:23, 17:4, 17:5, 22:17
pleaded [1] - 16:11
pleading [3] - 10:6, 16:18, 16:25
pleadings [3] - 14:11, 23:5, 23:11
POE [1] - 2:3
point [13] - 11:19, 11:23, 13:21, 17:15, 17:16, 18:20, 19:18, 20:1, 21:16, 22:7, 25:16, 28:1, 28:14
positing [1] - 14:15
position [14] - 4:2, 8:1, 9:21, 13:11, 13:15, 14:15, 17:2, 17:10, 18:6, 18:24, 19:13, 20:18, 20:24, 22:1
posturing [1] - 14:15
potential [1] - 30:20
potentially [1] - 9:15
practicality [1] - 25:1
precedent [2] - 6:24, 9:22
precise [1] - 5:22
precisely [3] - 5:20, 5:21, 8:15
predecessor [1] - 22:13
presented [2] - 29:18, 29:19
PRESIDING [1] - 1:3
pretty [3] - 15:13, 24:15, 26:3
primary [1] - 27:15
privilege [3] - 10:11, 10:12, 27:25
pro [1] - 3:17
proceed [2] - 10:3, 16:7
proceeded [3] - 25:3, 25:4, 25:5
PROCEEDING [2] - 1:19
proceedings [2] - 27:13, 31:5
PROCEEDINGS [2] - 1:16, 31:8
process [1] - 28:18
produce [2] - 12:10, 25:21

produced [4] - 25:24, 28:15, 28:23, 28:25
producing [2] - 12:12, 12:15
product [13] - 6:1, 6:13, 6:19, 8:23, 9:7, 9:10, 11:5, 12:5, 13:3, 13:19, 18:1, 19:4, 20:20
products [10] - 6:2, 6:7, 6:11, 7:5, 8:24, 15:17, 18:2, 18:10, 18:11
profits [1] - 30:25
proof [1] - 17:13
property [1] - 7:16
proposition [3] - 11:13, 18:10, 19:17
prospective [2] - 22:11
protected [5] - 10:10, 20:25, 21:2, 21:7, 22:1
provably [1] - 9:21
prove [1] - 12:14
provide [1] - 3:19
provided [1] - 26:14
publication [3] - 13:25, 15:8, 15:11
published [1] - 9:3
purchase [1] - 15:13
purchased [1] - 7:17
purchaser [4] - 13:13, 13:17, 14:24, 15:22
purchasers [2] - 15:9, 15:25
purchasing [1] - 13:18
purposes [1] - 20:21
put [2] - 6:13, 10:12
putting [1] - 20:9

**Q**

qualified [1] - 13:2
qualifies [1] - 20:4
qualify [2] - 8:13, 15:3
questions [1] - 4:22
quote [2] - 9:21, 18:16

**R**

Rail [1] - 14:8
raises [1] - 19:22
Randall [1] - 3:8
RANDOLPH [1] - 2:3
range [1] - 30:15
rarely [2] - 15:6
rather [1] - 25:14
reached [2] - 24:8, 25:12
read [1] - 15:12
real [1] - 25:6
really [2] - 24:20, 28:17
reason [5] - 10:17, 12:4, 22:23, 24:24, 28:19
reasonable [3] - 8:8, 11:1, 30:14

reasons [2] - 22:20, 28:6
received [4] - 7:7, 15:20, 25:22, 25:23
recess [1] - 31:4
record [4] - 3:7, 19:13, 28:15, 31:1
RECORDED [1] - 31:8
recover [3] - 26:24, 27:3, 27:14
redress [1] - 15:21
REDUCTION [1] - 31:11
reference [1] - 17:6
regard [7] - 3:25, 4:15, 4:23, 21:10, 28:25, 29:15, 29:17
registered [3] - 6:20, 6:22, 12:21
REGULATIONS [1] - 31:12
reinforces [1] - 20:1
reinstated [1] - 22:25
reject [1] - 17:10
relates [1] - 21:2
relationship [1] - 26:10
reliance [3] - 14:23, 14:25, 15:3
relied [5] - 13:12, 14:12, 14:19, 16:2, 26:5
relies [1] - 16:2
relying [4] - 5:7, 5:8, 14:9
remaining [1] - 4:23
remedies [2] - 8:21, 27:11
reply [2] - 22:4, 22:6
REPORTER [2] - 1:23, 31:15
REPORTER'S [1] - 1:16
represent [1] - 27:8
represented [3] - 25:2, 25:19, 29:2
representing [1] - 6:11
reproduction [8] - 6:20, 6:21, 6:22, 11:6, 12:6, 12:7, 12:20
request [1] - 17:12
requested [3] - 23:5, 23:7, 24:6
requesting [2] - 24:1, 24:3
require [2] - 14:23, 22:9
required [2] - 16:19, 16:22
requirement [7] - 13:24, 15:4, 15:21, 16:16, 22:9, 22:16, 22:18
reseller [4] - 7:11, 8:5, 9:7, 18:23
reseller-sold [1] - 9:7
resold [2] - 7:17, 18:2
respect [13] - 4:19, 16:12, 19:22, 20:2, 20:15, 21:13, 21:15, 21:20, 23:14, 29:5, 30:16, 30:17, 30:24
result [2] - 25:9, 29:17
results [1] - 30:1

rights [3] - 6:9, 7:16, 20:16
rise [1] - 11:1
risk [2] - 27:2, 27:4
risks [1] - 29:18
router [2] - 7:9
routers [2] - 7:10
run [1] - 3:19

## S

sales [1] - 14:10
SAN [1] - 2:5
satisfy [4] - 4:19, 16:15, 22:17, 25:11
saw [2] - 7:7, 15:12
se [6] - 5:8, 16:8, 16:12, 16:14, 16:17, 17:13
sealed [1] - 6:23
Sebastian [2] - 8:10, 11:8
second [2] - 23:1, 24:24
securities [1] - 20:20
see [1] - 25:17
seeing [1] - 7:5
seeking [2] - 30:7, 31:2
seem [1] - 14:23
selection [1] - 12:19
sell [2] - 15:10, 15:25
selling [3] - 7:10, 8:1, 11:5
sense [2] - 15:18, 18:1
separate [1] - 10:10
seriatim [1] - 13:7
serious [1] - 29:19
serve [1] - 3:20
settle [2] - 24:20, 27:22
settlement [14] - 3:20, 3:24, 4:1, 4:16, 23:21, 24:8, 24:24, 26:20, 27:1, 27:21, 28:2, 28:7, 29:5, 29:21
several [4] - 24:11, 30:6, 30:19, 30:23
show [4] - 15:12, 16:16, 16:17, 17:5
showing [1] - 12:19
simple [1] - 15:13
simply [2] - 13:2, 15:14
single [1] - 14:18
slow [1] - 6:5
slower [1] - 11:11
so-called [1] - 8:17
sold [9] - 5:23, 6:2, 6:7, 6:11, 6:12, 6:22, 7:4, 7:6, 9:7
Solutions [1] - 3:4
SOLUTIONS [2] - 1:4, 2:3
solvent [1] - 25:11
someone [7] - 7:8, 9:25, 13:12, 20:4, 20:8, 20:9, 20:19
sorry [2] - 6:6, 11:12
sort [1] - 27:10

special [4] - 13:10, 14:5, 14:7, 14:25
specialized [1] - 15:17
specific [7] - 5:24, 7:14, 10:25, 12:19, 14:2, 19:16, 20:15
specifically [10] - 6:18, 9:5, 11:3, 12:6, 12:8, 12:17, 16:13, 17:13, 17:20, 21:2
specifics [1] - 27:24
speculative [1] - 30:25
stage [2] - 10:6, 14:11
standpoint [1] - 15:18
stands [1] - 11:13
STANLEY [1] - 1:3
started [1] - 23:22
starting [1] - 5:19
state [3] - 3:6, 22:22, 31:1
statement [3] - 5:19, 5:21, 5:22, 7:6, 9:22, 9:24, 10:15, 10:16, 10:17, 10:21, 10:23, 10:24, 11:2, 11:14, 11:15, 11:21, 12:11, 12:15, 13:11, 14:19, 15:22, 16:1, 19:23, 20:2, 20:5, 21:22, 21:24
statements [3] - 25:20, 25:22, 26:10
STATES [2] - 1:1, 31:12
states [1] - 12:20
stating [5] - 6:10, 7:4, 10:7, 10:9, 19:24
statute [2] - 5:25, 17:7
stay [2] - 25:8, 25:15
STENOGRAPHICALLY [1] - 31:8
step [1] - 3:20
stepped [1] - 27:16
stick [1] - 22:5
still [4] - 12:12, 19:21, 21:1, 21:19
stop [2] - 18:8, 21:23
stopping [1] - 14:10
store [1] - 15:16
straits [7] - 25:18, 26:4, 27:7, 28:11, 28:16, 28:22, 30:9
STREET [1] - 1:24
striking [1] - 23:3
subject [1] - 30:18
submission [1] - 31:4
submitted [7] - 6:10, 7:1, 7:2, 7:3, 11:4, 12:17, 12:18
substantial [2] - 27:12, 27:13
suggest [1] - 30:15
suggested [1] - 28:12
suggesting [2] - 12:22, 24:22
suit [1] - 4:20
SUITE [2] - 2:4, 2:11

summary [11] - 4:3, 4:5, 4:14, 4:18, 4:21, 19:19, 24:21, 26:18, 26:22, 29:17, 30:1
Supp [1] - 9:4
support [2] - 5:9, 14:14
supporting [1] - 28:16
supports [2] - 18:6, 19:13
Supreme [1] - 22:8
surrounding [1] - 10:20
survived [1] - 10:5
sustain [1] - 12:23
sustained [1] - 13:11

## T

Tech [2] - 4:8, 29:8
Tech-Bilt [2] - 4:8, 29:8
TECHBILT [1] - 4:10
terms [1] - 18:12
test [2] - 7:4, 7:7
testimony [2] - 13:3, 13:5
THAT [1] - 31:7
THE [85] - 2:3, 2:9, 3:4, 3:12, 3:14, 3:22, 4:8, 4:14, 4:21, 5:1, 5:5, 5:7, 5:13, 5:18, 6:5, 7:11, 7:17, 7:25, 8:8, 8:12, 8:18, 8:22, 9:12, 9:24, 10:12, 11:11, 11:20, 11:25, 12:10, 12:14, 12:22, 13:9, 14:2, 14:6, 14:22, 16:5, 16:11, 16:18, 16:25, 17:9, 17:15, 17:18, 17:24, 18:3, 18:8, 18:25, 19:3, 19:8, 19:12, 19:18, 20:4, 20:8, 20:11, 20:18, 21:8, 21:13, 22:3, 23:4, 23:10, 23:13, 23:20, 24:3, 24:8, 24:11, 24:14, 24:18, 25:16, 25:21, 26:1, 26:15, 28:8, 28:17, 28:24, 29:4, 29:15, 29:25, 30:11, 30:18, 31:3, 31:7, 31:8, 31:9, 31:11, 31:12
themselves [2] - 5:14, 7:7
therefore [2] - 15:9, 27:13
they've [1] - 12:16
thick [1] - 26:23
THIMES [2] - 1:4, 2:3
Thimes [7] - 3:4, 5:23, 11:4, 12:8, 13:19, 21:23
third [1] - 14:9
THIS [1] - 31:10
thorny [1] - 26:23
threat [1] - 25:6
three [2] - 7:3, 11:17
threshold [1] - 18:14
thrust [1] - 14:13
together [1] - 26:7
Tommy [1] - 20:16

took [1] - 27:16
tort [1] - 7:23
TP [18] - 1:10, 3:5, 3:11, 3:25, 4:5, 4:14, 4:18, 5:23, 7:9, 7:10, 18:23, 24:16, 25:11, 27:19, 27:22, 28:2, 28:8
trade [12] - 4:24, 9:18, 10:8, 12:14, 14:18, 15:5, 15:21, 15:25, 16:8, 20:24, 21:15, 21:19
trademark [12] - 6:3, 6:8, 6:20, 6:22, 6:25, 7:23, 8:21, 9:14, 11:7, 12:7, 12:21
Traders [1] - 9:4
transactions [1] - 14:20
TRANSCRIPT [3] - 1:16, 31:8, 31:10
TRUE [1] - 31:7
true [2] - 12:24, 26:20
trust [1] - 26:9
try [1] - 22:24
trying [1] - 30:19
turn [3] - 4:21, 13:9, 16:6
two [5] - 5:2, 7:3, 18:24, 22:4, 27:15
type [2] - 12:2, 13:5
typical [2] - 15:4, 15:8

## U

U.S [1] - 1:23
ultimate [1] - 29:16
ultimately [1] - 26:11
under [23] - 5:9, 5:16, 6:23, 6:24, 7:19, 8:10, 9:21, 10:16, 10:18, 10:22, 10:24, 15:21, 16:19, 17:9, 17:11, 17:21, 18:6, 18:14, 18:17, 20:16, 29:8, 31:4
UNITED [2] - 1:1, 31:12
unlawful [5] - 6:19, 6:21, 11:5, 12:6, 12:20
unquote [1] - 14:1
USA [1] - 1:10, 3:5
usual [2] - 15:4, 15:5

## V

value [1] - 30:20
version [1] - 9:7
versus [1] - 23:18
viable [1] - 22:24
view [4] - 11:20, 18:13, 21:9, 24:15
violated [3] - 6:3, 6:8, 20:16
violates [2] - 10:1, 20:20
violation [6] - 9:13, 9:14, 9:16, 9:17, 10:14, 12:2
violations [1] - 7:15

**Vs** [1] - 1:8

## W

**warranty** [9] - 7:18, 8:23, 9:8, 9:10, 9:17, 18:1, 18:18, 18:23, 19:5
**Waters** [1] - 13:14
**ways** [2] - 8:4, 26:7
**weekend** [1] - 31:4
**weigh** [1] - 29:13
**weighed** [1] - 26:13
**WEINBERG** [1] - 2:10
**Weingberg** [1] - 3:15
**WEST** [1] - 1:24
**whole** [1] - 30:4
**wholesale** [1] - 23:1
**William** [1] - 13:4
**WILSHIRE** [1] - 2:10
**wireless** [1] - 7:8
**wish** [2] - 23:13, 29:4
**WITH** [1] - 31:11
**word** [1] - 5:24
**words** [2] - 4:4, 16:13
**wrongful** [7] - 16:16, 16:20, 16:23, 16:25, 17:6, 22:9, 22:18

## Y

**Yamaha** [2] - 9:3, 11:18
**year** [1] - 25:15
**YEAR** [1] - 1:19
**York** [1] - 7:19
**Youngblood** [1] - 13:1